# EXHIBIT 2

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3                 FORT PIERCE DIVISION


 4


 5          CASE NO. 23-80101-CRIMINAL-CANNON

 6

 7   UNITED STATES OF AMERICA,

 8
                 Plaintiff,              FORT PIERCE, FLORIDA
 9
         vs.
10                                       JULY 18, 2023
     DONALD J. TRUMP and
11   WALTINA NAUTA,                      PAGES 1 - 83

12              Defendants.
     _____/
13

14

15

16           TRANSCRIPT OF MOTION HEARING

17      BEFORE THE HONORABLE AILEEN M. CANNON

18           UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25
```

<u>APPEARANCES:</u>

FOR THE PLAINTIFF:      JAY BRATT, ESQ.
                       DAVID HARBACH, ESQ.
                       JULIE EDELSTEIN, ESQ.
                       U.S. Department of Justice
                       Office of Special Counsel
                       950 Pennsylvania Avenue NW
                       Washington, D.C.  20530


FOR DEFT. TRUMP:       CHRISTOPHER KISE, ESQ.
                       Continental PLLC
                       101 North Montroe Street
                       Suite 750
                       Tallahassee, FL  32301

                       TODD BLANCHE, ESQ.
                       Blanche Law
                       99 Wall Street
                       Suite 4460
                       New York, NY  10005


FOR DEFT. NAUTA:       STANLEY  WOODWARD, ESQ.
                       Brand Woodward Law
                       400 Fifth Street Northwest
                       Suite 300
                       Washington, D.C.  20001

                       SASHA DADAN, ESQ.
                       Dadan Law Firm, PLLC
                       201 S. 2nd Street
                       Suite 202
                       Fort Pierce, FL  34950


REPORTED BY:           DIANE M. MILLER, RMR, CRR, CRC
                       Official Court Reporter
                       diane_miller@flsd.uscourts.gov

1                       P-R-O-C-E-E-D-I-N-G-S

2            THE COURT:  Thank you.  You may be seated.

3            Is it necessary to have this screen up, Ms. Casissi,

4    or can I bring it down?

5            THE COURTROOM DEPUTY:  You can bring it down, Your

6    Honor.

7            THE COURT:  All right.  Good afternoon, everybody.

8    I'll call the case.

9            This is case number 23-CR-80101, United States of

10   America vs. Donald J. Trump and Waltine Nauta.

11           Let's have appearances of counsel, starting with the

12   Government.

13           MR. BRATT:  Good afternoon, Your Honor; Jay Bratt,

14   David Harbach, and Julie Edelstein from the special counsel's

15   office on behalf of the United States.

16           THE COURT:  Good afternoon.

17           MR. BLANCHE:  Good afternoon, Your Honor; Todd

18   Blanche for President Trump.

19           THE COURT:  Good afternoon.

20           MR. KISE:  Good afternoon, Your Honor; Christopher

21   Kise for President Trump.

22           MR. WOODWARD:  Good afternoon, Your Honor; Stanley

23   Woodward and Sasha Dadan for Mr. Nauta, who's also present

24   today.

25           THE COURT:  Good afternoon to you both.

```
 1              And good afternoon to you, Mr. Nauta.

 2              DEFENDANT NAUTA:  Good afternoon, Your Honor.

 3              THE COURT:  All right.  Before we get started, some

 4    preliminary remarks about decorum and compliance.

 5              Of course, there is no permitted possession of cell

 6    phones or other electronic equipment in the courthouse.  There

 7    shall be no broadcasting, video recording, photographing, or

 8    filming of any kind either in this courtroom or anywhere in the

 9    courthouse.  And, of course, no circumvention of that rule

10    either by folks here in the courtroom or in the overflow room.

11              For those who are seated in the courtroom, I ask that

12    you remain seated during the duration of the proceeding to

13    avoid disruption and distraction.

14              This is, as everybody is aware, a pretrial conference

15    pursuant to Section 2 of the Classified Information Procedures

16    Act, or CIPA for short.  Classified information won't be

17    discussed at this hearing except at a very high level, as

18    already referenced in public filings.

19              The purpose of this hearing is to establish a

20    schedule in accordance with the procedures of CIPA and more

21    broadly to establish at least a partial pretrial schedule for

22    deadlines in this case, based on the interests of the parties

23    and the actual needs of the litigation.

24              At this point -- can everybody hear me okay?

25              UNIDENTIFIED SPEAKER:  Your Honor, if I may, the
```

```
 1   audio and the screen in the overflow room has been cut off.
 2            THE COURT:  Perhaps that's because I -- okay.
 3            There might be a need to restart this?
 4            THE COURTROOM DEPUTY:  One moment, Your Honor.
 5            UNIDENTIFIED SPEAKER:  Your Honor, is it okay if I
 6   may approach for IT?
 7            THE COURT:  Yes, that's fine.  Thank you.
 8            I think we might have to rejoin the meeting.
 9            UNIDENTIFIED SPEAKER:  Yes.
10            (Brief pause in proceeding)
11            THE COURT:  All right.  Okay.  I will repeat those
12   preliminary remarks because the audio, I understand, was not
13   transmitting to the overflow room.
14            There shall be no recording of this hearing in any
15   form.  No broadcasting, photographing, audio recording, or
16   filming of any kind in this courtroom or anywhere in the
17   courthouse, including in the media overflow room.  And no
18   attempt to circumvent those rules.
19            This is a pretrial conference pursuant to Section 2
20   of CIPA.  The purpose of today's hearing is to establish a
21   schedule in accordance with that statute along with a broader
22   schedule to advance this case with due regard to the interests
23   of all parties and the particular circumstances of the case.
24            Pending before the Court now are two motions.  The
25   first is the Government's motion to continue the current trial
```

```
 1    date.  The current trial date is mid August of this year with
 2    pretrial motions due in about six days, I believe.  The
 3    Government seeks to continue that trial date to December 11th
 4    of this year.  I've reviewed the motion along with all related
 5    filings.  I'm prepared to hear argument on that motion both
 6    specific to CIPA and the benchmarks in CIPA as well as more
 7    broadly.  I'd also note that there's a separate pending motion
 8    filed by the Government.  This was filed yesterday.  It seeks a
 9    protective order under Section 3 of CIPA.  That motion is not
10    yet ripe, and it doesn't appear that it has been the subject of
11    meaningful conferral.  I understand there are objections to
12    certain provisions of that protective order.
13            So with that very brief background, let me turn it
14    over first to Mr. Bratt.  What I'd like to start off with,
15    Mr. Bratt, is an overall view of the discovery that has been
16    provided thus far.  I understand there have been two
17    productions, the first on the 21st of June, I think it is, and
18    one yesterday with specifics in terms of volume as well as any
19    anticipated production.
20            MR. BRATT:  Yes, Your Honor.  Do you want me to speak
21    from here or from the podium?
22            THE COURT:  Whatever you prefer.
23            MR. BRATT:  I'll go up to the podium.
24            Good afternoon again, Your Honor.
25            THE COURT:  Good afternoon.
```

1          MR. BRATT:  So we have now made two productions of

2     discovery to the Defense.  The first was on June 21st to

3     President Trump's counsel, and then last week, July 6, to

4     Mr. Nauta's counsel.  The first production consists of about

5     800,000 pages, although as we note in our reply to the motion

6     for continuance, a significant portion of that is noncontent

7     from headers and footers of emails that were received pursuant

8     to 2703(d) orders.

9          In producing the discovery --

10          THE COURT:  I'm sorry, what do you mean by

11     "noncontent"?

12          MR. BRATT:  Just showing the "to/from" on emails.

13          THE COURT:  Okay.

14          MR. BRATT:  So nothing as to what is in the body of

15     the emails themselves.

16          When we produced the discovery to both counsel, we

17     also gave them a discovery log showing the sources of all the

18     information we are providing.  We identified what we believed

19     to be key documents in the case, which is a subset of about

20     4500 pages.  The contents of what we provided included all

21     search warrants and corresponding applications for search

22     warrants; the evidence, the scoped evidence that we obtained

23     from the search warrants and subpoenas; all witness statements

24     through May 2nd of this year; all grand jury testimony

25     transcripts from both the D.C. grand jury and the Southern

1    District of Florida grand jury; all of the CCTV footage was

2    obtained through the date of the indictment.  And we also

3    produced, in another separate folder subfile and on a hard

4    drive, what we believe again to be key footage for the Defense.

5         The second production that we sent out yesterday is

6    about 300,000 pages.  It provides the relevant content from

7    three devices that were provided to us voluntarily, all witness

8    statements between May 2nd and June 23rd, a number of FBI

9    forms, and a number of materials, primarily emails, that we

10   obtained from the Secret Service.

11        What is left, we have two devices for Mr. Nauta.  We

12   were able to search those devices in one form, but we were not

13   able to search it sort of more forensically.  We now have the

14   ability to do that.  It is undergoing filtering and then

15   scoping.  And once we are done with that process, we will be

16   providing to the Defense that content as well.

17        In addition, there is some CCTV footage that was

18   obtained post-indictment and then, of course, there's certain

19   *Jencks* materials that we have yet to gather together.

20        In sum, we produced about 1.1 million pages, we

21   identified key documents, and we've given the relevant content

22   from all devices we acquired during the course of the

23   investigation, except some subset of Mr. Nauta's devices.

24        So that is the status of unclassified discovery.

25        THE COURT:  So what's the projected timeline for the

1    production of any additional nonclassified material?

2            MR. BRATT:  So I would think the Nauta materials

3    should be producible in the next couple weeks, we hope.  And

4    certainly in a case like this, we do talk to witnesses from

5    time to time, so those would generate new witness reports.

6    Those types of things we'll provide on a rolling basis as they

7    occur.  But once we provide the Nauta device -- the Nauta

8    devices, I should say, the remaining content, that is in the

9    main the Government's discovery.

10           THE COURT:  All right.  So I've heard about I think

11   you said 1.1 million pages, did you say?

12           MR. BRATT:  Correct.

13           THE COURT:  Okay.  And in terms of the footage, how

14   many months does that run through?

15           MR. BRATT:  So it covers a nine-month period, but not

16   all the cameras were -- but it is not all the cameras at

17   Mar-a-Lago or Bedminster; not all the cameras were always

18   running.  And the retention period that the Trump organization

19   had varied from camera to camera, so it is not a solid

20   nine months of video footage.

21           THE COURT:  Do you have a sense for just straight up

22   viewing time?

23           MR. BRATT:  Let me confer with my colleagues.

24           *(Off record discussion amongst Governmental Counsel)*

25           MR. BRATT:  We don't know, Your Honor.  And these are

Tuesday, July 18, 2023.

1   motion-activated cameras, so there can be long periods of time

2   when they're just not active and then something happens.

3          THE COURT:  Okay.

4          Okay.  Now, as far as the classified discovery, I

5   know that has not yet begun.  It appears to be contingent upon

6   finalization of the Section 3 protective order, is that

7   correct?

8          MR. BRATT:  That is correct.

9          THE COURT:  Okay.  And that could itself spawn

10  additional litigation depending on what's contested?

11         MR. BRATT:  In terms of the Section 3 protective

12  order?

13         THE COURT:  Correct.

14         MR. BRATT:  As things currently stand, Your Honor, we

15  filed our motion.  We've been advised by the Defense that they

16  have some objections.  We've asked that the time limit for

17  responding be shortened.  We're obviously open to hearing what

18  their concerns are; and to the extent we can address them,

19  we'll try to address them.  But at the same time, it may be

20  that the Court has to resolve those differences.  But I would

21  think that presumably some time in the next of couple weeks,

22  that will have been resolved and we'll be in a position to

23  produce the first tranche of classified discovery.

24         THE COURT:  Now, when I was reading the Section 3

25  protective order as proposed by the Government -- is it the

```
 1   Government's intention to withhold certain portions of

 2   classified discovery from the defendants themselves?

 3           MR. BRATT:  Not at this point, Your Honor.  So that

 4   would be the subject of a Section 4 motion that we would bring

 5   to the Court, if we feel that there is any potentially

 6   discoverable classified materials that we think either needs to

 7   be deleted or needs to be provided in the form of a summary or

 8   stipulation.  But in terms of what we have to produce, we are

 9   producing all of it, as proposed in the -- in both our motion

10   and in the protective order.

11           THE COURT:  I thought there was a provision in the

12   proposed Section 3 protective order that did contemplate

13   potentially withholding certain documents from Defendants

14   themselves as distinct from Defense Counsel.

15           MR. BRATT:  Yes, sorry, Your Honor.  Yes, yes, I'm

16   sorry, I misunderstood.

17           Yes, in terms of once Defense Counsel have access to

18   it, there are times when the clients, the defendants, will seek

19   to see it, and we have provisions in the protective order that

20   addresses those situations when the defendants are seeking

21   access.  And I can just tell you, at least with respect to the

22   former president that we likely, upon request, would agree

23   to -- in order for him to assist his counsel, for him, since

24   he's already seen the documents, to be able to review them with

25   his counsel.
```

```
 1            THE COURT:  All right.  Okay.  It wasn't clear to me

 2   to what extent the Government was going to be seeking to

 3   withhold any information from either former president Trump or

 4   Mr. Nauta; but it does appear, at least on the text of the

 5   proposed order, that that could happen based on the proposed

 6   language.

 7            MR. BRATT:  That's correct.

 8            So I mean, we have, particularly with respect to

 9   Mr. Nauta, somebody who no longer has a clearance, the former

10   president never had a clearance, so they're different from

11   their counsel in that respect.  And again, it can happen in

12   these types of matters that there are instances when counsel

13   want to share something with their client or the client wants

14   to see something and discuss it with counsel, and that's what

15   that portion of the protective order is meant to address.

16            THE COURT:  Okay.  Well, I haven't seen what the

17   objections are to that.  Was there meaningful conferral on the

18   Section 3?  I wasn't sure why it was filed without meaningful

19   conferral pursuant to the rules.

20            MR. BRATT:  So we tried.  We reached out to them.

21            THE COURT:  When did you try?

22            MR. BRATT:  So we had an email exchange on Friday --

23   trying to set up a call on Friday, and we were advised by

24   Counsel that they were tied up.  I suggested that we could make

25   some time over the weekend to talk, if that was possible.  We
```

```
 1    did not hear a response from them.

 2              THE COURT:  All right.  So you tried to confer on a

 3    Friday before filing on a Monday something that is presumably

 4    quite important.  That seems a bit rushed.

 5              All right.

 6              MR. BRATT:  And we're still happy to talk to them.

 7              THE COURT:  Certainly, and I think that's going to be

 8    necessary so that the Court has a more crystalized view of

 9    what's actually contested, if anything.  Perhaps there are no

10    disagreements and that would streamline things, but I'm not

11    sure, at this point, given the lack of conferral.

12              All right.  Now, as far as I think you said Section 4

13    litigation, you don't anticipate any Section 4 litigation?  Did

14    I hear correctly?

15              MR. BRATT:  So no, we don't anticipate extensive

16    Section 4 litigation.  It may be very little.  We are in the

17    process of reviewing things that are potentially discoverable,

18    but that would be something that we think, at least in terms of

19    our initial Section 4, would be fairly minimal.

20              THE COURT:  Okay.

21              MR. BRATT:  It is possible, as sometimes happens in

22    these cases, that the defense will make discovery requests and

23    some of those discovery requests may hit on things that could

24    cause us to, as part of our response to them, seek to either

25    delete discovery or provide the information in the form of a
```

1    summary or stipulation.  So there could be sort of follow on

2    Section 4 litigation; but in terms of what we're looking at for

3    our initial filing, we don't anticipate it to be very

4    extensive.

5            THE COURT:  Okay.

6            Now, in terms of the classified discovery, just big

7    picture in terms of volume, can you provide any guidance?

8            MR. BRATT:  I can tell you what is currently ready to

9    be produced, once the protective order is in place and a

10   location is identified for us to provide it to the Defense.

11   There are 1,545 pages of classified material.  And what Counsel

12   will be getting access to is what their interim clearances will

13   permit them to see.  So they'll be seeing -- getting access to

14   about 80 percent of the documents that went from the White

15   House to Mar-a-Lago.  And for purposes of kind of dividing them

16   up, that consists of documents that were returned to NARA in

17   January of 2022, some of the documents of the 38 that were

18   provided in response to our May 11th grand jury subpoena, and

19   then documents that were seized on August 8th of 2022.

20           In addition, there are classified 302s and interview

21   notes and some transcripts of classified interviews.  There are

22   about 375 pages related to the interviews and about 250 pages

23   of some interview transcripts.  There are some additional

24   documents we received from NARA, and they will be receiving the

25   unredacted photograph that is pictured in paragraph 31 of the

1   indictment.

2          They will not see any of what I'll call Mar-a-Lago

3   documents that are classified at a higher level than what their

4   interim clearances permit.  And there are some of the 302

5   interview transcripts that also have information at a higher

6   level than that.

7          THE COURT:  All right.  Okay.

8          In terms of any pretrial motions anticipated by the

9   Government, does your team anticipate any pretrial motions from

10  your side?

11         MR. BRATT:  The only things that I think we would

12  do -- and we read Your Honor's omnibus order -- is we would

13  have some form of omnibus motion in limine relating to

14  evidentiary and issues relating to proper argument and

15  defenses.

16         THE COURT:  All right.

17         MR. BRATT:  But otherwise, we don't anticipate filing

18  any affirmative motions on our own.

19         THE COURT:  So in terms of looking at the proposed

20  schedule you offered, I think at docket entry 34-2, we're

21  already I guess behind according to that proposal because that

22  would have contemplated an initial production of classified

23  discovery as of July 10th.

24         MR. BRATT:  That is correct.

25         THE COURT:  Okay.

1          MR. BRATT:  We've looked at this, Your Honor, and we

2     do think that if we move the dates two weeks forward -- and the

3     assumption on that is that it will take the full period of time

4     for the final clearances, the 60 days, so my understanding as

5     of last Thursday, the 13th, all of the forms were submitted,

6     and some of the interim clearances have been approved, that --

7     assuming that it takes another 60 days for the final

8     clearances, and hopefully it will be less than that, that even

9     assuming that period of time, and on September 12th, the

10    Defense gets access to the remaining classified discovery, that

11    if we move the dates two weeks forward that we could still

12    finish the CIPA process before the December 11th -- before the

13    December 11th date that we propose to begin jury selection.

14          THE COURT:  I guess, but nowhere in this proposal do

15    I see any allowance for nonclassified Rule 12(b) motions, for

16    example, or any Court review or any hearings, and so which

17    leads me to my next question.  Can you point the Court to any

18    other similar cases involving classified information that have

19    gone to trial following production of discovery in less than

20    six months?

21          MR. BRATT:  So going to trial in less than

22    six months, no.  I think we gave the Court two examples from

23    the Eastern District of Virginia where -- and particularly the

24    one case out of Norfolk, where in about eight months, they went

25    from the beginning of the case to verdict.

 1              THE COURT:  Yeah, I think I took -- let me go and see

 2     that case.  Hold on.

 3              MR. BRATT:  It's *United States vs. Hoffman*, Your

 4     Honor.

 5              THE COURT:  Uh-huh.

 6              Yes, I saw that case.  I think it was a four-count

 7     case, if I'm not mistaken, involving a very small number of

 8     documents with no substantive pretrial motions, at least that I

 9     could tell, which really is the nature of my question.

10              In your experience, I know you provided a declaration

11     and you're familiar with CIPA litigation, these matters often

12     require more time simply given the classified nature of some of

13     the materials.

14              Do you have any other I guess authority for the Court

15     on such a compressed timetable?

16              MR. BRATT:  So I would say not beyond what we

17     presented the Court.  My observation, Your Honor, is that we

18     acknowledge we have presented an aggressive schedule.  This

19     case is unique in a number of different ways.  We are committed

20     to doing the work that is necessary to achieve the schedule.

21     At the same time, we recognize that there could be some things

22     that come up that throw the schedule off.  There could be

23     things that -- there could be a Defense discovery demand that

24     reveals something that is more complicated and understandably

25     that would throw the schedule off.

1          And Mr. Harbach will address in more detail the

2   motion to continue, but we feel it's very important to have a

3   trial date to work from understanding that that trial date may

4   not be set in stone.

5          THE COURT:  All right.  Thank you.

6          Let's see if I have any other questions at this time.

7          All right.  I'll get back to your team, Mr. Bratt

8   unless --

9          Mr. Harbach, do you have particular observations with

10  respect to the motion to continue that you'd like to offer now,

11  before I turn to the defense attorneys?

12         MR. HARBACH:  I'd be happy to, Your Honor, if it

13  suits the Court.

14         THE COURT:  All right, so I guess any additional

15  argument you wish to offer on your motion to continue.  Like I

16  said, I've read the papers.

17         MR. HARBACH:  Yes, Your Honor.

18         Just a few points that I'd like to make, Your Honor.

19  One is a framing issue.  As Your Honor may have seen from the

20  response the defendants filed to our motion to continue, they

21  have repeatedly framed this as the Government seeking an

22  expedited trial, and in our view, they have inverted the

23  analysis.  I won't belabor this since it's adequately addressed

24  in our papers, but the simple point is that it is not a speedy

25  trial that has to be justified, it's deviation from a speedy

```
1    trial that has to be justified.  We think the statute provides
2    a framework for that analysis and that none of the framework
3    that is in place as a result of the statute or interpretive
4    case law requires the Government to substantiate a need to move
5    expeditiously, is what the framework contemplates.  So that's
6    the first point.
7            The second thing I'd like to address briefly is
8    something that is plainly intentioned here, and that is the
9    Defense's view that Mr. Trump in particular should be treated
10   differently in light of the circumstances, whether it's the
11   fact that he's a former president or the fact that he's running
12   for president or what have you.  In our view, he should be
13   treated like anybody else, and so we see that plainly as
14   attention here; but our view we think is supported by the
15   Constitution, the United States Court of Appeals for the
16   Eleventh Circuit, not to mention a fundamental tenet of the
17   republic.  In short, Mr. Trump is not the president.  He is a
18   private citizen who has been indicted by a lawfully empaneled
19   grand jury in this district, and his case should be governed by
20   the Constitution, the United States Code, and the Federal Rules
21   of Criminal Procedure, just like anyone else's.
22           Third thing, the fact that he's running for
23   president, how should the Court take that into account?  We
24   think there are two possibilities, neither of which would
25   justify this Court doing so.  The first is Mr. Trump's own
```

interests in running for president.  In short, it would be

unfair to force him to go to trial because his schedule will

not allow him to do it.  He has too much to do.  At that level

alone, our position is that he is no different from any other

busy important person who has been indicted.

The second possibility is a putative public interest

in his candidacy or his running for president and the effects

that putting him to trial might have on that public interest,

and our -- the point we would like to emphasize on this, Your

Honor, is that it is important that the Court and nobody else

conflate the public interest, as they might argue it here, with

the public interest formulation that is in the Speedy Trial

Act.  We think it's important to keep those distinct, because

the latter isn't just the public interest writ large.

According to the Speedy Trial Act, it is the ends of justice

finding that Your Honor, this Court, will have to make if

excluding time as a result of the continuance, it references

the best interests of the public and the defendant or

defendants in a speedy trial.

So it is abundantly clear, as I know the Court knows,

Your Honor has a whole lot of discretion in setting a trial

date and deciding whether to grant a continuance.  The case law

is very clear on that.  However, in light of the relief that

the Defense has sought here, namely indefinite deferral of even

discussion of setting a trial date because the Defendant is

1    running for office would be unwise, and so we would urge the

2    Court not to indulge the relief that Defendants seek for those

3    reasons.

4         THE COURT:  On the speedy trial issue specifically

5    and the designation of this case as complex, I take it the

6    Government objects to designation of this case as complex?

7         MR. HARBACH:  Yes, Your Honor, and it's because we

8    don't think it meets any of the requirements for that

9    designation in the statute.  The number of defendants is two.

10   The novelty or complexity of the legal issues that are

11   involved, we don't believe obtains in this case for the reasons

12   we set out in our pleading.  And I'll make a brief side point

13   here that the observation of Counsel for the Defense that they

14   think they may have a couple of potentially dispositive motions

15   that might, might, were the Court to rule in their favor,

16   obviate the need for a trial is no reason not to set a trial

17   date in the first instance.

18        THE COURT:  I'm not so sure it's the merit of the

19   potential motion as it is the extensive motion practice which

20   nonetheless would have to be conducted.  Of course, the Court

21   would need adequate time to review, so focusing just on that

22   coupled with the very voluminous discovery plus the classified

23   information aspect of the case.  I looked around so see if the

24   government had ever objected to a complex designation in a CIPA

25   case, I wasn't able to find any such objection, and so that's

Tuesday, July 18, 2023.

```
 1    the reason for my question.

 2            Precisely why don't you think it would fall within

 3    that complex designation under the act?

 4            MR. HARBACH:  Can I have just a moment to grab the

 5    statute, Judge?

 6            THE COURT:  Yes.

 7            MR. HARBACH:  Okay.  So I'm going to answer Your

 8    Honor's questions by reference to the statute.

 9            So the pertinent portion there -- and I know Your

10    Honor is familiar with it -- says whether the case is so

11    unusual or so complex due to -- and then there's a litany of

12    things.  The first one is the number of defendants which we've

13    already talked about and does not merit designation in this

14    case.  The second is the nature of the prosecution, which I'll

15    come back to in a moment.  The third is the existence of novel

16    questions of fact or law.  And in any of those instances such

17    that it's unreasonable to expect adequate preparation for trial

18    within the time limits.  So that's the framework.

19            To the point Your Honor was just raising a moment ago

20    about the potentially dispositive pretrial motions -- and Your

21    Honor is right, it's not just a question of the merits, of

22    course not, but it is -- according to the statute, it is -- the

23    Court should take into account to some degree the novelty of

24    the type of relief that's being sought.  This is something that

25    we address in our brief.  The two subjects that are noted by
```

1   the Defense as, in their view, filling the bill here are,

2   number one, an attack on the special counsel's ability to

3   maintain this action in the first instance as a matter of

4   jurisdiction and power without regard to anything else.  And as

5   we point out in our brief, that, while an important legal

6   issue, please don't misunderstand me, is not something that is

7   being writ on an entirely blank slate.  It has been litigated

8   extensively both in the Supreme Court of the United States and

9   in the Court of Appeals for the D.C. Circuit.

10          Now, I'll readily acknowledge that in the Southern

11   District of Florida and perhaps even in the Eleventh Circuit,

12   there's a degree to which this is a new topic; but my point is

13   that it's not tabula rasa.  And so on the ultimately pertinent

14   question of, well, gosh, can we possibly get to trial while

15   still briefing this issue, we think the answer is yes.

16          And the other important point we make -- and I'll get

17   to their second motion in just a second.  The other point we

18   make is that neither the discovery schedule nor anything

19   related to classified information being produced or the

20   timeliness of CIPA proceedings should impact the Defense's

21   ability to make that motion.  Whether the special counsel has

22   authority to bring this action is a motion they could have been

23   working on since they got the indictment over a month ago.  So

24   when evaluating whether their need or their desire to file this

25   motion necessarily has to impact the trial schedule, we just

1    ask Your Honor to keep that in mind, first of all.

2         So the other motion that they mentioned was a --

3         THE COURT:  I think at the intersection of the --

4         MR. HARBACH:  Thank you.  The intersection of the

5    Presidential Records Act and the statute.

6         Now, we took a potshot in our brief at their legal

7    theory and, in our view, that was justified because we don't --

8    on the face of it, we genuinely don't believe that there is any

9    reasonable argument to be made that the Presidential Records

10   Act could either, A, form a basis for dismissal of the

11   indictment; or B, justify the relief that they're seeking,

12   namely an indefinite deferral of consideration of the trial

13   date.  Now, that one, there's a degree to which it's new, I

14   suppose, which is one might say that the argument has never

15   been made in precisely that way before.  I mean, I'm shooting

16   in the dark a little bit because I don't know the full contours

17   of their theory, but I do know that to some extent, the

18   intersection of the Presidential Records Act with Mr. Trump's

19   ability to retain the materials in question has been the

20   subject of some litigation before this Court and some briefing

21   by this -- before this Court, including by Mr. Kise, one of

22   President Trump's counsel.

23        And so why do I mention that?  I mention that only as

24   another factor for the Court to consider in deciding whether

25   these are really the types of pretrial motion issues that

```
 1    necessitate putting off trial indefinitely or by a number of

 2    months in the way that the statute contemplates.

 3              So I apologize for that detour about their pretrial

 4    motions, but I want to circle back to the first factor that's

 5    listed in the statute, which is the nature of the prosecution.

 6              Obviously, circumstantially this is an unusual case

 7    because of the identity of the defendants and the conduct

 8    that's at issue.  What's not unusual about it is the theories

 9    of liability.  They're pretty straightforward.  Whether it's

10    793 or any of the variations on obstruction that the indictment

11    alleges Defendants engaged in, that part is not complicated.

12    So in our view, the nature of the case is not -- it's pretty

13    standard fair as those types of cases go.  So it's a

14    long-winded way of hopefully answering your question which was

15    why doesn't the Government agree this case should be designated

16    as complex, and so those are the reasons.

17              I need to sit down, but the one last point, with Your

18    Honor's indulgence, I'd like to make is about a point that

19    Defendants have made about the difficulty -- or the potential

20    difficulty in selecting a jury here.  And the reason I think

21    it's worth emphasizing is because it's not an overstatement to

22    say -- and they have said it in their brief that in their view,

23    they would not be able to get a fair trial during a

24    presidential election cycle because essentially it would be

25    impossible for this Court to a select a jury.  There is
```

Tuesday, July 18, 2023.

1    doctrine on this subject, but the cases they point to in their

2    brief involving heinous acts of violence and so forth don't

3    help them for the reasons we lay out in our brief, and I'm not

4    going to reiterate them here.  Suffice it to say, this isn't

5    the type of issue that would ordinarily justify continuance on

6    these facts.

7           The division of opinion in our country over Mr. Trump

8    I think it's fair to say long predated his indictment and will

9    long post date the election, however it turns out.  As with the

10   trial of any public figure, whether it is a politician or a

11   movie star or a corporate executive, whatever, there will be

12   surely be a need for more thorough and careful voir dire.

13   There's no question about that.  But in the Government's view,

14   none of that means that the Court should just throw up its

15   hands and say, "Well, I guess we can't have a trial until after

16   the election."  We think that's -- would be far too rash of a

17   reaction, and that's especially so -- it's especially so when

18   there's no reason to believe that the situation, vis-a-vis

19   public differences about Mr. Trump, is going to be any better

20   after the election than it is right now.

21          So the real question here in our view is whether this

22   Court can rely on the mechanisms that judges have used in this

23   country for generations to select fair and impartial juries.

24   That's the first thing.  And then the second thing the Court

25   will have to rely on, as it does in any case, is the honesty

 1    and fairness of ordinary citizens who take an oath to judge the

 2    case based only on the evidence that's presented to them and

 3    instructions on the law from the Court.  And if the question is

 4    whether those two things are adequate enough to rely on to

 5    ensure a fair jury trial in this case, the Government's view is

 6    that the answer has to be yes.

 7            I know you said you read our pleadings, Your Honor,

 8    so those are all the remarks I'd like to make at this point.

 9            THE COURT:  Thank you.  If I have further questions,

10    I'll turn back to you.

11            Let me turn now to the Defense attorneys starting

12    with Mr. Blanche.  I'm not sure if there's a division of labor

13    here contemplated.

14            MR. BLANCHE:  Thank you, Your Honor.

15            Your Honor, just starting with a question you asked

16    Mr. Bratt a while ago about just one part of the discovery,

17    which is the CCTV footage, which is extraordinarily significant

18    to this case, not only as what's obvious from the indictment,

19    but it also in part gave rise to the search warrant, the

20    affidavit, and the probable cause to search Mar-a-Lago.  As of

21    this morning, there's 1,186 days of footage that we have

22    uploaded so far, and our vendor is not finished uploading it.

23    And again, I'm not questioning Mr. Bratt's position about the

24    time period, but there's multiple cameras that were subpoenaed

25    and that have been produced to us as Rule 16 discovery; and as

1    of today, it's over three years' worth of video.

2          Now, I'm not suggesting to the Court that we're going

3    to sit for three years and watch three years' worth of video,

4    but it's a tremendous amount of data and information, and we're

5    just -- I'm just talking right now about the CCTV footage.

6    While the Government is correct that they have pointed us to

7    the few days that they believe are the most significant to them

8    as it relates to the charges in the indictment and presumably

9    the search warrant, they're not the most significant to us.  I

10   mean, the movement of boxes and where boxes were on given days

11   is extraordinarily significant not only to the justification

12   for the search warrant of the President's residence but also to

13   the defense of the case.  And so the CCTV footage alone, over

14   1,186 days, makes the schedule the Government proposed pretty

15   disingenuous, Your Honor.

16         Secondly, there's over 400 -- including yesterday's

17   production, Your Honor, over 450 gigabytes of data.  And I

18   accept the representation of the Government that a chunk of

19   those emails are going to be blank pages that just say to/from,

20   but that doesn't change the fact that I have an obligation, as

21   does the rest of my colleagues, to make sure that that's right.

22   And the fact that the Government has identified the material

23   that they believe is the most significant to them and to the

24   indictment is significant and helpful, and the discovery is

25   relatively organized.  But not the question that we believe the

1    Court needs to address or answer when considering the volume of

2    discovery, and the amount of discovery, and the manner in which

3    it was produced, and the timing of which it's produced.  We

4    received -- we have over 190,000 emails.  And it doesn't

5    matter, Your Honor, that many or even most of those emails are

6    not going to be significantly relevant to the defense of this

7    case.  It doesn't excuse our obligation to view them and to

8    look at them or to at least have a process in place to

9    understand who they're from, what they are.  There's nearly 100

10   custodians, Your Honor, that we've received so far from the

11   Government; and, again, we're talking about as recently as

12   yesterday.  So the sheer volume of discovery that has been

13   provided to us just in the past couple of weeks is very, very

14   significant.  And putting aside -- and I think I'm stating the

15   obvious, but this is an unusual case.

16         This isn't a case that's like many of the cases in

17   federal courtrooms around this country.  The fact that

18   President Trump was indicted and the reason why he was indicted

19   for possession of classified -- purportedly classified

20   documents in a series of boxes in his residence, many of which

21   were moved, we believe, before President Trump even left

22   office.  Some of them were maybe there afterwards, we don't

23   know, that's something that we're looking at in discovery.

24         This is not a normal case.  This is not a usual case.

25   And the fact that the Government stands in front of the Court

```
 1    today and put in their papers that the schedule they suggested,

 2    which is that motions should be due in two weeks, and that we

 3    don't have clearances -- I found out today that I have an

 4    interim clearance, but we haven't looked at any of the

 5    classified discovery which I'll get to in a moment, but the

 6    fact that we're supposed to consider and review all of the

 7    evidence that they have provided to us over the past two weeks

 8    and be prepared to file substantive motions in two weeks is

 9    disingenuous, Your Honor.

10         THE COURT:  And I can appreciate that more time is

11    necessary, but we need to set a schedule, and so I guess my

12    question for you would be:  What can you offer the Court in

13    terms of concrete specific projected timelines that actually

14    suit the needs of the case and the defendants' interests in

15    reviewing this discovery?  Because at least some deadlines, I

16    think, clearly can be established now.  And your motion at this

17    point, although it speaks to some of these concerns in fairly

18    general terms, really doesn't provide the Court with any

19    specific road map.  So I think it is incumbent upon the defense

20    team to offer more in the form of particulars so the Court can

21    establish an appropriate schedule that adequately takes into

22    account all parties' needs, along with the Court's obligation

23    to review any motions filed appropriately.

24         MR. BLANCHE:  Of course, and completely understood,

25    Your Honor.
```

1          This is in our opposition paperwork, but just to

2     briefly address it now, just talking about Counsel's schedule

3     which isn't the only primary concern but should be an

4     appropriate concern given the circumstances of this case.

5     There is no -- and I'm happy for Mr. Kise and Mr. Woodward to

6     address their own schedules, but there's no meaningful way that

7     the Defense can prepare and file motions on either CIPA

8     Section 5 motions or as it relates to the 12(b) substantive

9     motions in this case until at least December.  And let me step

10    back for a moment and explain why I say that date as even being

11    the potentially first date.

12         The number of -- and the amount of discovery that I

13    just laid forth doesn't get into the actual nature of the

14    discovery which, to be honest, we obviously haven't gotten our

15    way through yet, but we've gotten through some of it.  There

16    are meaningful substantive motions beyond the two that

17    Mr. Harbach mentions, although we very strongly believe that

18    both of those motions are something that the Court will need

19    time to consider, and we don't believe that they're in any way

20    frivolous and we think --

21         THE COURT:  Do those motions depend on sort of

22    detailed granular review of discovery?  Are there some that are

23    just more discrete legal issues that could be filed now or

24    close to now?

25         MR. BLANCHE:  I mean certainly there are potentially

1    some motions that are separate and apart from the discovery

2    produced, absolutely, Your Honor, of course; but it's a little

3    bit -- you know, to the extent that we're writing substantive

4    motions that don't require our review and consideration of the

5    materials provided by the Government, that's time that we're

6    not reviewing -- we very strongly believe that it's much more

7    efficient, not only for the Defense but also for the Court, to

8    do those motions at one time.

9         Just by way of one example, as the Court knows from

10   the indictment, one of the Government's main witnesses in this

11   case is President Trump's lawyer, and the Government was

12   investigating this -- the grand jury, initially in this case,

13   was in D.C., and everything regarding the grand jury and what

14   happened there was in D.C.  There's a U.S. Attorney manual

15   provision that states very clearly that a case should not be

16   presented to a grand jury in the district unless venue for the

17   offense lies in that district.  There's no scenario under which

18   most of the statutes charged against President Trump that would

19   have ever lied in the District of Columbia; but that being

20   said, that's where this case was presented, and it still

21   continues to be, at least in part, presented there based on our

22   understanding.  That's a significant issue, but it requires

23   review of the discovery.

24        It requires us to read the briefing and the grand

25   jury transcript and what happened that led to that very

1    significant issue that talk about something that this Court

2    doesn't see very often and indeed none of us see very often,

3    the President's personal lawyer is required to testify about

4    conversations, privileged communications that he had with the

5    President.  That's a significant issue that requires our review

6    of discovery.

7            Similarly, the search warrant that Your Honor is

8    somewhat familiar with of Mar-a-Lago, but there were multiple

9    search warrants executed in this matter mostly for cell phones

10   and computers.  And the affidavits that gave rise and that gave

11   probable cause purportedly for those search warrants are all in

12   some way similar but in some ways very different, we need to be

13   able to review those, and not only review the warrants and the

14   affidavits but also the material that was collected from many

15   of the witnesses or for -- fair enough, for some of the

16   witnesses that involved a team of lawyers at the Department of

17   Justice that were -- that could taint team because there were

18   privileged materials.  That's all something that we have to

19   look at as well.  But we can't make a motion based upon any

20   potentially improper conduct as it relates to that until we

21   review those materials and until we've had a chance to think

22   about that.

23           And I'm not trying to lay it on too thick, Your

24   Honor.  That's just two -- two, three motions that we're

25   talking about.  That's not actually talking about the actual

```
1   evidence in this case which is purportedly -- while the
2   indictment speaks to over 100 documents that had classified
3   markings on them, 30 documents that were interspersed between
4   multiple boxes at various locations at Mar-a-Lago that we need
5   to understand.  And this gets a little bit into the CIPA
6   litigation, Your Honor, but that we need to understand the
7   circumstances under which they were found, which box they were
8   found in, where in the residence they were found.  That
9   matters, and that's something that also goes to -- will
10  ultimately go to potentially a pretrial motion but also just
11  our understanding of the evidence in this case.
12          Beyond that, Your Honor, I just -- I'd very much
13  disagree with the Government, very much so, that they expect
14  and they ask the Court to treat President Trump like any other
15  defendant that walks in here.  I do not think it's appropriate
16  for the Court or for the Government to ignore the fact that he
17  is running for president and that the next year is a
18  presidential election year which, right now, he's -- you know,
19  we don't know what's going to happen in the primaries, of
20  course; but right now, he's the leading candidate and if all
21  things go as we expect, the person he is running against, his
22  administration is prosecuting him.  And so the idea that the
23  Government is putting forward that the Court should just ignore
24  that and say, "well, you're like any other defendant," I very
25  much disagree with that, Your Honor.
```

```
 1              And I appreciate that there's tension and that Your

 2     Honor has a tremendous amount of discretion in how to address

 3     that issue, but it's, in my view, intellectually dishonest to

 4     stand up in front of this Court and say that this case is just

 5     like any other case, Your Honor.  It is not.

 6              And the reality is, as we saw from earlier today,

 7     there appears to be even more charges coming against

 8     President Trump from the special counsel.  He has already been

 9     indicted and has a trial scheduled in March in New York.  As we

10     put in our letter, but Mr. Kise can certainly address more

11     substantively, he has been charged civilly by the New York

12     attorney general.  There are depositions that Mr. Kise is

13     attending next several weeks and then motion practice and a

14     two-month trial that starts in October of this year of

15     Mr. Trump and his companies.

16              In the middle of all that, President Trump, he is

17     running for reelection.  And I do need to spend time with him

18     preparing him for this case and understanding the evidence, and

19     understanding what the evidence can mean as it relates to a

20     criminal trial in this courtroom.  And so the fact that we're

21     talking about the volume of discovery, the schedules that we

22     have, and the schedule of President Trump, we're not asking for

23     special treatment.  That's the reality.  That's not something

24     that -- I'm not making that schedule up, I'm not making up any

25     facts here, Your Honor.
```

1          And so when we asked in our papers -- we didn't ask

2     for an indefinite date.  We didn't just say put it off until

3     never, never land.  At the time that we wrote our opposition

4     brief, we hadn't processed most of the discovery.  We now have

5     more discovery.  We still don't know the nature of the

6     classified documents.  We now understand there's over a

7     thousand pages, but we don't understand, you know, what that

8     means or what they are.  And so what we asked is to return to

9     the Court at a date when we can speak intelligently about

10    what --

11          THE COURT:  So how much time would you need to do

12    sort of at least an initial triage of the discovery?

13          MR. BLANCHE:  So we will be prepared to file motions

14    in December, Your Honor, and that will give us time to --

15          THE COURT:  That's not my question.  My question is:

16    How much time do you need to do an initial triage of the

17    discovery so that you can formulate a more refined proposal in

18    terms of schedule?

19          MR. BLANCHE:  Understood; sorry, Your Honor, for not

20    answering.

21          Given what was represented today, Your Honor, and

22    given -- and I'll let Mr. Woodward speak to his schedule for

23    Mr. Nauta; but Mr. Kise's schedule, at least until early

24    November, Your Honor, to review -- and this includes the

25    classified information as well, Your Honor -- and come back at

```
 1   talk about what we've seen.
 2           On the classified information, this is -- and you
 3   asked Mr. Bratt about this, there's no case like this.  I mean,
 4   the President has original declassification authority.  He's
 5   one of a few people in this country that possess that as
 6   President.  Whether that's part of the review of classified
 7   materials, we don't know yet.  And Your Honor is right, the
 8   proposed protective order right now doesn't allow us to discuss
 9   anything with our client as it relates to any of the materials
10   that we see that are classified, without getting permission
11   from the Government.  And so there are complicated Section 5
12   motion practice for things that will take place that we can't
13   speak intelligently about yet because we haven't seen the
14   documents.  But it's not like a typical case when somebody has
15   classification authority, illegally possesses documents and
16   then is arrested for it.  That's not just what this case is.
17           THE COURT:  All right.  So in terms of security
18   clearances, there has been I think a good amount of progress on
19   that front, and I want to thank the litigation security group
20   for all that it's done to move those along expeditiously.
21           Does the Defense anticipate any additional members of
22   the defense team working on this case such -- what I don't want
23   to run into is a scenario where three months from now, all of a
24   sudden there are five new people, and we're now delayed on
25   account of additional clearance processing.
```

1          MR. BLANCHE:  Your Honor, possibly, but I can

2     represent to the Court that we will not seek a delay, given

3     what I've said today in connection with the timing that we've

4     requested if new people are added meaning we will not come back

5     to this Court and say, oh, geez, we just added a new lawyer,

6     reset deadlines.  We're here, and we may add members to our

7     team, but we will work with the Department of Justice and the

8     security folks to do that quickly, and we have one potential

9     new member who already has security clearance and so that will

10    be very efficient.  But I commit to the Court that that will

11    absolutely not happen.

12         THE COURT:  In terms of that March 2024 trial in

13    New York, do you know if that's a firm trial date?  Has that

14    that previously been continued?  Do you have any information

15    about scheduling as far as that case is concerned?

16         MR. BLANCHE:  You mean as far as like how long it

17    will last and whatnot?

18         THE COURT:  Yes, and whether it's really going to go

19    in March.

20         MR. BLANCHE:  Yes, Your Honor, our understanding from

21    the judge is that -- from the state judge is that he has

22    instructed all lawyers to -- and President Trump to clear the

23    schedule and to be prepared to go to trial on that date.  And

24    we do not anticipate that date moving.  We believe, based upon

25    the people of New York, the people's representations, that it's

 1    approximately a three-week trial with some potential give, of

 2    course.  That -- sorry to jump around.  That's the other thing

 3    about this case, Your Honor.  It's potentially a six- or

 4    seven-week trial.

 5              The Government indicated when filing the indictment

 6    that their case is 21 days.  When you work in jury selection --

 7    and I have no idea, if any, what Defense case there would be,

 8    but let's assume it's a couple days to a week, you're talking

 9    about a very significant amount of time for the Court that

10    should also be considered, especially as it relates to

11    President Trump and his ongoing campaign for president.

12              THE COURT:  All right, thank you.

13              Let me hear from Mr. Woodward, unless Mr. Kise has

14    particular commentary with respect to Mr. Trump.

15              MR. KISE:  Thank you, Judge.  Good afternoon.  Good

16    to see you, albeit under the circumstances.

17              I'm going to be brief, and I'll try not to cover

18    things that Mr. Blanche covered.  Just a couple points that

19    Mr. Harbach raised that are also raised in their reply that I

20    think are worth the Court's at least consideration a little bit

21    in this context.

22              The Government in its reply brushes away the *Sheppard*

23    and *Coleman* cases that we cite, and they focus really more on

24    the crime that was at issue.  But really, the focus of those

25    cases is the actual publicity, it's not really what's causing

1    the publicity.  The Court's focus is on the publicity and the

2    impact of that publicity on a fair trial.  And the press

3    coverage in both *Sheppard* and *Coleman* was indeed significant,

4    as they lay out in those cases, but it really doesn't compare

5    to this case.  I don't think anything does, and I'm going to

6    get to that just briefly in a second.

7          But the *Sheppard* court made something very clear, and

8    that is that where there's a reasonable likelihood that

9    prejudicial news will prevent or impede a fair trial, then the

10   Court should continue the trial until the threat abates.  It

11   doesn't say that it should continue it until it goes away

12   completely, but it does say that it should continue it or at

13   least consider continuing until it abates.

14         Here, you have what can easily be described, I think

15   fairly, as extraordinary and unrelenting press coverage.  As

16   Mr. Blanche pointed out, you have essentially the two right now

17   leading candidates for the presidency of the United States

18   squaring off against each other in the courtroom, at least

19   that's how the public views it.  That's certainly how the media

20   views it, and there's really no way right now to contain this.

21         I had some basic research done of what's called

22   Brandwatch data which helps reveal a little bit of the extent

23   of this coverage.  The federal indictment alone, just from the

24   38 days from June 8 until July 16th, generated 88,306 news

25   stories, that's over 2300 stories a day; 2,070,111 social media

1   posts, that's almost 55,000 social media posts per day.  Every

2   motion, every hearing, everything generates a story.

3          I filed a motion for pro hac vice admission for

4   Mr. Blanche's partner, Mr. Weiss, the other day, that generated

5   a news story.  I've never in my career seen a pro hac vice

6   motion generate a news story, but it generated a news story.

7   So there's no way to escape this.  And as Mr. Blanche pointed

8   out, what the Government is trying to ask this Court to do —

9   and I appreciate the Court is in a challenging position here,

10  but I think these factors should respectfully be considered and

11  weighed carefully and not in a hurry.

12          We have to recognize the reality of where we are, and

13  they certainly have this sort of Oz-like approach that they

14  just want to compartmentalize this.  And so every word that's

15  spoken in this courtroom is going to generate hundreds if not

16  thousands of stories.  There's going to be pundits and experts

17  during the course of the election, where we are at the peak,

18  the zenith of interest, focused on this, and it will be just

19  like in the *Sheppard* case, very difficult to separate the facts

20  that are going to be developed in the courtroom from the facts

21  that are going to be developed outside on the courthouse steps

22  in the media.  You see it already now.  There is pundit after

23  pundit after pundit, expert after expert after expert on TV

24  24/7 talking about — they're going to do it today.  They're

25  going to talk about the arguments the Government made, they're

1  going to talk about the arguments that we made; and there's

2  going to be all of this subjective commentary that is going to

3  find its way into the jury pool.

4          THE COURT:  But won't that just continue?  I mean --

5          MR. KISE:  Respectfully, I think it will abate

6  somewhat post-election, I do.  And if you'd like us to develop

7  that argument further, then perhaps we can.  But I think it

8  will simply because the interest is at its peak, and it will

9  remain at its peak as long as these two individuals are squared

10  off directly against each other.  It will never go away.

11          THE COURT:  So your position is that there can be no

12  trial until it's after the election.

13          MR. KISE:  I certainly think that's the best course

14  of action for a fair trial for this defendant because this

15  defendant, like the defendant in *Sheppard* and like the

16  defendant in *Coleman*, deserves to have the evidence in the

17  courtroom and only the courtroom dictate the outcome.  And so

18  that's a very difficult thing in this context, and so I would

19  ask the Court to carefully consider this and let's think about

20  this before we make any final decision.  But as the *Sheppard*

21  court made clear, where there is a reasonable likelihood that

22  the prejudicial news will prevent or impede a fair trial, the

23  Court really should continue the trial until that abates.

24          THE COURT:  I think, at least it seems to me, that we

25  should be focused on the volume of discovery, the legal issues

1    that are expected to be presented, the extent of motion

2    practice, the complexity of the classified information, if it

3    is complex, and those sorts of CIPA procedures.  I think that

4    framework guides the Court's continuance inquiry in a more

5    concrete way, and one that I think is more suitable to the

6    Speedy Trial Act.

7            Anything further, Mr. Kise?

8            MR. KISE:  I want to talk about the schedule conflict

9    to your points, Your Honor.  And the schedule conflict -- they

10   cite two cases in their papers, the *Hanhardt* case and the

11   *DeCastro-Font* case, and I just want to point out that there's a

12   different context here as well.  We're not talking about

13   schedule conflicts, at least not with respect to me and with

14   former President Trump.  We're talking about schedule conflicts

15   that involve the same client.  So it's not that I have a case

16   for Client X or Client Y that is precluding me from being here.

17   I think that's a very relevant consideration and a real one,

18   but I think it's even more focused with respect to

19   President Trump.

20           The trial that I have beginning in October involves

21   him and his companies.  There is another trial scheduled with

22   him and his companies in January in the Southern District of

23   New York.  There is the trial that you know about in March of

24   2024 with Mr. Blanche.  So these are the same lawyers dealing

25   with the same client trying to prepare for the same sort of

1   exercises, and so I think that's highly relevant.

2           The *Hanhardt* case involved different clients.  It

3   involved a commercial arbitration versus a criminal trial, and

4   the conflict there between the two was really very different

5   than the context here.

6           The *DeCastro-Font* case also involved a conflict

7   between two different trial schedules for two different

8   clients, and the complexity and the volume of discovery there,

9   to Your Honor's point, is nowhere near comparable.  There,

10  there were 20,000 pages of documents and 10,000 emails.  We

11  have 1.1 million pages of documents and counting, 190,000

12  emails.  None of this is present here, so I would say that the

13  only cases cited by the Government are simply inapposite, and I

14  think that's very relevant for Your Honor's consideration.

15          In terms of the schedule here and my own schedule for

16  this same client, we are involved as of today, in fact.  I

17  mean, I'm missing the depositions.  We have expert depositions

18  every single day this month until the end of the month, until

19  July 28th.  Summary judgment motions are due on August 4th, and

20  they will be comprehensive.  The oppositions are due several

21  weeks later, on September 1st.  The witness and exhibit list is

22  due November 8th.  The summary judgment reply is

23  September 15th.  The summary judgment hearing is

24  September 22nd, that is the same day that we will have to file

25  all of our pretrial motions, including *Daubert* motions.  The

1    final pretrial conference is only five days later, on

2    September 27th; and the trial begins on October 2nd.  It is an

3    extraordinarily compacted schedule.

4            The trial itself involves well more than 20 fact

5    witnesses and 18 experts.  My experience in the New York State

6    Supreme Court leads me to conclude that we're going to have

7    roughly six hours of trial per day.  So this is why we

8    anticipate the trial to go at least through mid November to

9    Thanksgiving.  All of that is by way of saying that it would be

10   extraordinarily difficult to prepare effectively to participate

11   in this proceeding, even as to the Presidential Records Act

12   issues Mr. Harbach mentioned.  I think we need time to

13   understand the documents at issue; I certainly do.  Yes, those

14   arguments were touched upon when we were last before Your

15   Honor, but the real issue was that since we never knew what the

16   documents were, it was very difficult to frame those arguments

17   in sort of the esoteric environment that we were operating in.

18   I'm going to need to understand -- Defense Counsel is going to

19   need to understand exactly which documents are at issue and how

20   those relate to the charges in order to advance the argument.

21   So it is a legal argument, but that legal argument is dependent

22   upon the facts that don't become clear until at least we see

23   what it is that we're talking about.  So we need time to do

24   that.

25            I would also say that, as Mr. Blanche mentioned, the

```
 1    target letter that has become public today, there are other
 2    proceedings that we're going to be involved in.  We don't know,
 3    because the investigation is ongoing, even in this particular
 4    context, whether the Government plans on any superseding
 5    indictment.  They haven't said so, but certainly the fact that
 6    they're continuing to subpoena individuals and send out target
 7    letters might lead you to conclude that that's a possibility.
 8            And lastly, I would just reiterate again, Your Honor,
 9    that the novel questions that we have here --
10            THE COURT:  Can you articulate more precisely what
11    those novel questions are from your perspective?
12            MR. KISE:  I can, Your Honor.
13            The Presidential Records Act is a novel question,
14    despite the dismissive nature with which the Government
15    presents it.  There is a structure in place for presidents --
16    unfortunately, there is -- while there is some guidance under
17    the Presidential Records Act, what is lacking with respect to
18    classified information or purportedly classified information
19    that's at issue here, what is lacking for all chief executives
20    of the United States and has been lacking since the
21    Presidential Records Act was adopted is what happens after the
22    fact.  What happens to these classified records?
23            There's actually no -- that's what's going to get
24    developed in this trial -- there's no real guidance.  This is
25    why you see Vice President Pence, President Biden,
```

```
 1    President Obama, President Bush -- I mean every president that

 2    has had to wrestle with these issues because there really

 3    actually is no direction and guidance.  For all of the care and

 4    concern that the Government brings to this courtroom and says

 5    that they protect this information, when a chief executive

 6    leaves office, there isn't a whole lot of direction.

 7             What is governing --

 8             THE COURT:  So what's the novel question?

 9             MR. KISE:  The novel question is, is which takes

10    priority?  The novel question is:  Does the Presidential

11    Records Act govern how the president makes decisions about his

12    documents or her documents, as the case might be, or do these

13    other laws intersect and govern?

14             We are going to maintain the position that the

15    Presidential Records Act governs because that is what governs

16    how the president manages and disposes of information in his

17    possession during his term of office.  And once he makes

18    decisions about that information, whether it be classification

19    decisions, whether it be presidential records versus personal

20    records, those decisions are not assailable except under the

21    Presidential Records Act.

22             I mean that's the sum and substance of it.

23             THE COURT:  All right.  Thank you.

24             This is my last question, then I'd like to hear from

25    Mr. Woodward.
```

1          MR. KISE:  Yes, Your Honor.

2          THE COURT:  There's a reference in your opposition to

3    a careful and complete review being necessary of the, quote,

4    procedures that led to this indictment.  Can you put any more

5    meat on the bones to that?

6          MR. KISE:  Your Honor, I think that's what

7    Mr. Blanche was referencing, sort of the search warrant and

8    those procedures, the grand jury procedure that he mentioned,

9    Washington versus South Florida, and all of the issues

10   surrounding Mr. Corcoran's testimony and the appropriateness or

11   not of that testimony.

12         And lastly, Your Honor, respectfully, I would urge

13   the Court still to please do consider the publicity aspects of

14   this and perhaps maybe not postpone it until post-election, but

15   I think that they are permissible for consideration under 3116.

16         Thank you, Your Honor.

17         THE COURT:  Thank you.

18         All right.  Mr. Woodward.

19         MR. WOODWARD:  Thank you, Your Honor.

20         Just picking up where Mr. Kise left off, I have

21   serious questions about how an investigation that had been

22   pending for months and months and months in the District of

23   Columbia ended up here, in the Southern District.  You know, as

24   the Court is aware, I was personally involved in a fair amount

25   of litigation in the District of Columbia, and so I'm

1    especially curious, as we see discovery, to know what was done

2    in D.C. and then what was done in Miami and whether there's a

3    motion for abuse of grand jury process in this case.  Those are

4    rare, I understand that; but this is a new case, and we can't

5    bring such a motion before Your Honor without understanding

6    whether there's any merit there, and the only way for us to

7    understand whether there's merit is to review the discovery.

8           And so, you know, to state the obvious, my client is

9    not running for election, and so I'm not going to stand before

10   you and talk about why a trial of my client couldn't happen

11   until after the election.  Instead, I agree with the Court that

12   we can talk today about the practicalities of a trial.  I don't

13   know how much it's worth our time discussing a December trial

14   because the Government stood before you just a short while ago

15   and told you that they have not provided us with my client's

16   cell phones.

17          They seized my client's cell phones pursuant to a

18   search warrant in November, and they're telling you today that

19   they can't make forensic copies of my client's cell phones

20   available to us.  Why did they indict a case that they don't

21   have the cell phones to produce in discovery the minute that

22   this indictment is returned?  And the Government --

23          THE COURT:  Mr. Bratt made some comments about

24   potentially not being able to fully access the phone until a

25   later date which might explain why it has taken longer for them

```
 1   to produce or to try to at least process.

 2           MR. WOODWARD:  Well, that's the first I'm hearing of

 3   that, and it leads to a broader issue in this case.  I mean,

 4   they seized my client's cell phones despite knowing that he was

 5   represented by counsel and counsel that was engaged in frequent

 6   discussions with the Government.  Now, that's their prerogative

 7   if they decide that they want to seize cell phones regardless

 8   of whether they could have gotten a grand jury subpoena, I

 9   understood that; but those are the types of questions that

10   we're going to ask this Court to take a close look and to

11   scrutinize.

12           With respect to --

13           THE COURT:  So from your perspective, the pretrial

14   motions that you envision, do they match up with the types of

15   pretrial motions that have already been discussed or are there

16   additional motions that you see in the future?

17           MR. WOODWARD:  There's one very important motion that

18   is going to be unique to Mr. Nauta, and that's whether he moves

19   to sever, and he cannot make an informed decision and I cannot

20   advise him on how to make that decision until we've seen the

21   discovery and, in particular, until we've seen the classified

22   discovery because there are 32, I think, counts involving

23   classified discovery as against former President Trump that do

24   not relate to Mr. Nauta.

25           And so the idea that the Government would rush ahead
```

1    to having motions being filed -- and, again, I don't know how

2    much it's worth our time to talk about a deadline in two weeks

3    or in six days, as the Court's current order is, but how can I

4    advise my client?  How can I provide him effective counsel

5    under the Sixth Amendment when I don't know what the discovery

6    is that's going to be admitted as against his codefendant?

7              I'm not suggesting we will be filing the motion

8    because I don't know, and that's what I think the theme of this

9    hearing is today.  There's so much that we don't know and --

10   you know, so respectfully, I think our ask is that we'll come

11   back as often as the Court would like, whether that's in 30,

12   45 days to just check in and let the Government tell us where

13   we are in discovery.  And Your Honor, I have no doubt, is going

14   to ask me where I am in my review of discovery; and if I come

15   before you in 45 days and say, Your Honor, you know, I've made

16   no progress, I don't think you're going to allow that.  You

17   know, I don't think you're going to allow an indefinite

18   continuance of a trial in this case.  I think you're going to

19   want us to provide you with real practicalities.

20             Your Honor, I want to comment on the video in this

21   case, as well, because that is a critical element of discovery,

22   and I didn't know before my co-defense counsel shared with me

23   that there's a thousand days of video.  And I actually take

24   issue with the suggestion that I won't be reviewing it all.

25   Now, maybe I personally won't be reviewing it all, but this

1    case is about what was happening on that video.

2           It's curious to me to learn that the Government

3    doesn't have all of the video because their allegation that my

4    client was moving boxes and that that is the sum and substance

5    of the obstruction count, well, we need to see what was on that

6    video in order to understand what they allege my client to have

7    done or not to have done.

8           As Your Honor is well aware -- and I want to thank

9    the Court for understanding my schedule last week, I was in

10   trial in a case involving video last week.  In that case, Your

11   Honor, my client was alleged to have been captured on video for

12   less than a total of two hours, and that client was arrested in

13   March of 2021 and, for almost three years, this United States

14   Department of Justice came before a federal court and said that

15   that case was complex because of video.  And so for them to

16   come today and say that this case isn't complex because 500,000

17   documents and a million pages of discovery and a thousand days

18   worth of video isn't a lie, we have a hard time reconciling

19   that.

20          Now, yes, I have a busy schedule; and, yes, I

21   understand the Government has cited a 20-year-old case and a

22   15-year-old case that suggests that that's not reason enough

23   for the Court to push off a trial, but the Court doesn't have

24   to rely simply on my busy schedule.  The Court can rely on the

25   fact that we have a lot of discovery issues left unresolved.

```
 1    It may take them time to get access to Mr. Nauta's phones, but

 2    for us to come to you and commit to a briefing day when we

 3    don't know when we're going to get the phones, I think

 4    that's --

 5              THE COURT:  I think what I heard was a couple of

 6    weeks hopefully on the phones, but Mr. Bratt I'm sure will

 7    clarify that if I'm mistaken.

 8              As far as the complexity under the Speedy Trial Act,

 9    this opposition, I don't have a separate motion to declare this

10    case complex.  So my question for you, Mr. Woodward and

11    potentially for your colleagues, is whether that's built in or

12    subsumed within this opposition?

13              MR. WOODWARD:  Yes, Your Honor, I believe it is.  I

14    believe that under 3161, when the Court is considering the

15    interests of justice, complex is one of the factors that the

16    Court is to conclude.  And so if Your Honor is asking whether

17    we're prepared to toll under the Speedy Trial Act based on the

18    complexity of the case, the answer is yes.

19              Now, I would also observe that tolling is happening

20    right now.  The Government yesterday filed a motion and that

21    automatically tolls time under the Speedy Trial Act.

22              THE COURT:  Are you aware of any other CIPA case with

23    voluminous discovery that hasn't been deemed unusually complex?

24              MR. WOODWARD:  I'm not, Your Honor.

25              And the CIPA issues I think are issues that we need
```

Tuesday, July 18, 2023.

```
 1   to resolve for the reasons I've already said.  You know, I
 2   appreciate that the Government is working -- all aspects of the
 3   Government are working studiously dealing with the security
 4   clearance issues, but I think it's premature for any of us to
 5   assume that there won't be extensive CIPA briefing because I
 6   don't know what I don't know.
 7            I'm told today that I have an interim security
 8   clearance; but, as the Court is aware, I have concerns about
 9   where that goes next.  You know, we'll discuss with the
10   Government the proposed protective order, but I have serious
11   concerns about, as Mr. Nauta's counsel, consenting to a
12   protective order that doesn't give him access to the discovery.
13   I feel like as a defense counsel, we have a role not to make
14   such a concession.  Now, if the Court orders it --
15            THE COURT:  I think the Section 3 needs to be
16   conferred upon by the parties, and if there are any lingering
17   disputes, that would be potentially the subject of additional
18   litigation.  But at this point, I have an unripe motion that
19   wasn't truly conferred upon.
20            All right.  Anything further, Mr. Woodward?
21            MR. WOODWARD:  No, Your Honor.  Thank you.
22            THE COURT:  Okay.
23            All right.  Let me hear from the Government with any
24   rebuttal.
25            MR. HARBACH:  Thank you.  You predicted my question.
```

Tuesday, July 18, 2023.

1              Thank you, Your Honor.

2              I'm going to address a number of things that were

3    mentioned by our counterparts, but to the extent the Court

4    might have any questions in particular on specific subjects, my

5    colleague, Mr. Bratt, is going to handle questions or issues

6    that were raised related to classified production, the volume

7    of video footage, and those sorts of things.

8              I would like to make a few comments starting with

9    where Mr. Blanche started.  Actually, I should rephrase that --

10   where the Court started.

11             The Court's first question to Mr. Blanche was a

12   request for a more concrete road map and some more particulars

13   about the type of delay that they're requesting here and the

14   reasons for it.  And what Your Honor got in response to that

15   was, at first at least December, although it wasn't clear what

16   the "at least December" deadline was.  And then later,

17   Mr. Blanche said at least early November to file motions; and

18   it occurred to me, as we were hearing the colloquy about

19   motions that need to be filed, that it might be worth a brief

20   detour to potentially bifurcate the types of motions we're

21   talking about.

22             When I said earlier that the majority of the pretrial

23   motions that they've -- they had mentioned in their written

24   papers up to this point were not the types of motions that

25   necessitated a thorough review of discovery, it's also the case

1    that if you look at Rule 12, it's Rule 12(b)(3), the motions

2    that must be made before trial.  There is a list there, and

3    almost none of them require a fulsome review of discovery.  The

4    one potential exception to that is a motion for suppression of

5    evidence; and as Defense Counsel have acknowledged, we've

6    provided all of the search warrants, search warrant

7    applications, and the fruits of stuff that were seized.

8          So my point of mentioning that is that to the extent

9    the Court is considering setting interim deadlines for pretrial

10   motions writ large, one option that the Court might consider is

11   setting a deadline for motions that in the Court's view do not

12   require extensive review of discovery and set purely legal

13   motions, motions about the sufficiency of the indictment,

14   severance motions, the catalog of -- I don't know how quite to

15   put an umbrella over them, but some abuse of process

16   allegations that they've been talking about.  Those types of

17   things don't require extensive review of discovery, and there's

18   no reason to hold them up, certainly no reason to hold them up

19   until November at the earliest in the Government's view.

20         I further take issue with Mr. Blanche's suggestion to

21   the Court that it would be more efficient to do all of them at

22   one time.  I'm not sure quite what the rationale is there, but

23   for the reasons I just stated, we think there are plenty of

24   motions that could be handled sooner rather than later.

25         The Government more broadly does not take issue with

1    the notion that discovery has to be reviewed and has to be

2    reviewed thoroughly by Defense Counsel in order to discharge

3    their duties, of course.  But let's not forget, part of the

4    reason we're here is that it is the Government that sought a

5    four-month continuance from Your Honor's currently operative

6    trial date in part for that very reason, in order to

7    accommodate both parties having enough time to review

8    discovery, not to mention the CIPA procedures.

9         I reiterate that only to let Your Honor know that we

10   are sensitive to that issue, and that factored into our own

11   determination about a date to recommend to the Court that

12   attempted to take into account those issues while still moving

13   things along.

14        Briefly, I would like to address Mr. Blanche's claim

15   that it was intellectually dishonest for the Court to -- or for

16   the Government -- excuse me -- to suggest to the Court that

17   Mr. Trump is like any other defendant.  I've already made my

18   point about that; but, suffice it to say that this is not just

19   a philosophical musing about his station.  This is an important

20   principle that, as I said earlier, we think the Constitution,

21   the Eleventh Circuit, and all associated case law made quite

22   clear about how a private citizen who has been indicted should

23   be treated by the rules, by this Court, and by the United

24   States Code.  So I don't think there's anything intellectually

25   dishonest about it because the bedrocks that we stand on are

1    the ones that I mentioned earlier.

2          Both Mr. Blanche and Mr. Kise made reference to the

3    fact that this case is being maintained by one political

4    opponent as squaring off against another political opponent.

5    Mr. Kise went so far as to say that the media has latched on to

6    that and, in his view, is propounding that narrative.

7          For the Court's benefit, the Defendants, and to the

8    extent that any of the media are in here today, the Government

9    says that the claim is flat out false.  That is not the case.

10          The Attorney General appointed the special counsel to

11    remove this investigation from political influence, and there

12    has been none, none.

13          It is worth pointing out that all of us who are

14    sitting at the table today and all of our teammates are career

15    prosecutors.  No one on the team is or has been a political

16    appointee, and none of us would be here working on this case if

17    we thought we were just doing somebody's political bidding.

18          There has been lots of rhetoric about this in all of

19    the media outlets that Mr. Kise mentioned, in social media and

20    so forth, but that is all intended perhaps for the court of

21    public opinion.  In a court of law, that rhetoric has no legal

22    construct.  There's nothing for it to latch on to.

23          We are here because a grand jury of citizens in this

24    district returned an indictment against these defendants, and

25    the law requires a trial.  If they want to make a motion about

1    some sort of abuse of process because that's what they think is

2    going on, they can make a motion, and we can respond

3    accordingly.  But for present purposes, this argument, this

4    claim is nothing more than that.  It doesn't even purport to be

5    more than that.  It is just a naked argument.  It is false --

6           THE COURT:  I think it's an argument about publicity

7    and how that would impact jury selection.

8           MR. HARBACH:  Yes.

9           THE COURT:  So I don't know if we need to get ahead

10   of ourselves here.  I'd like to stay focused again on the

11   issues related to the continuance, the pretrial schedule, the

12   demands of this case in particular.  I think that's really what

13   needs to guide the Court's inquiry.

14          Anything further on those subjects?

15          MR. HARBACH:  Yes, Your Honor, and thank you for the

16   nudge.  I just wanted to put on the record that the claim is

17   false.

18          You're absolutely right that Mr. Kise also talked

19   about the degree of publicity about the case in general and the

20   extent the Court should take that into account.  He made a

21   point of attempting to distinguish the -- excuse me -- of

22   attempting to dismiss our distinguishing of the two cases they

23   put in their brief.  As I mentioned earlier, our view is those

24   cases are distinguishable because of the crimes that were at

25   issue.  And yes, the cases aren't necessarily restricted to

1    cases involving violence or heinous crimes or that sort of

2    thing, but the familiar principle that is common in case law

3    typically tends to emanate from cases like that.

4            More to the point, the publicity surrounding

5    President Trump is chronic and almost permanent.  There is no

6    reason to think that it's going to get any better.  Perhaps to

7    the contrary, depending on the result of the election.  Who

8    knows what's going to happen?  And all we're saying is, the

9    fact that there is publicity is something that courts routinely

10   deal with not only in selecting juries but also in conducting

11   trials.  It is commonplace to issue instructions to a jury

12   saying "don't pay attention to social media, don't pay

13   attention to what's in the news, don't pay attention to this

14   and that."  And if we're in a world where we can't trust juries

15   to abide by courts' instructions along those lines, then we

16   would never be able to pick a jury with any party of any public

17   notoriety at all.

18           And so although, as I said earlier, we fully

19   acknowledge the importance of voir dire here, and perhaps the

20   need for some creative additional procedures to make sure both

21   sides and the Court are satisfied that there's an impartial

22   jury, we're not denying any of that.  All we're saying is that

23   is not enough of a reason to continue the case indefinitely or

24   even for any significant period of time.

25           The last thing I would like to say before I turn it

```
 1    over to my colleague is -- I would like to briefly touch on the

 2    other obligations of Counsel and how the Court should take that

 3    into consideration.

 4              It is -- the cases that we have cited to Your

 5    Honor -- Mr. Kise has pointed them out -- both of those cases

 6    and the standards that were involved there were, in fact, cases

 7    where lawyers had -- I was about to call it an actual conflict,

 8    but I don't mean it in the ethical sense, I mean it in terms of

 9    their calendar, where they were -- you know, they had two

10    trials scheduled on the same day, or something like that, and

11    were physically unable to be at both.  And even in those

12    circumstances, the courts concluded that the defendant's

13    limited Sixth Amendment right to counsel of choice had to give

14    way.  So we cited those courts just for that proposition -- we

15    cited those opinions just for that proposition.

16              I should point out that there is a Fifth Circuit

17    case, a presplit Fifth Circuit case called Gandy vs. Alabama

18    that is mentioned essentially by extension in the Hanhardt case

19    because Hanhardt cites another case called Hughey which is

20    another Fifth Circuit case that in turn cites Gandy.  I mention

21    that citation to the Court only to the extent it might inform

22    the Court because it also includes some of the factors that

23    courts consider in deciding whether to grant a continuance when

24    there is a situation of an actual conflict.  And to the extent

25    the Court finds those factors informative here, it might be
```

```
 1    useful for Your Honor.  That citation is 569 F.2d 1318, and
 2    it's Fifth Circuit, 1978.
 3              Now, Mr. Woodward chided us for the age of some of
 4    the cases we cited, and I have an Eleventh Circuit case from
 5    2000 that cites *Gandy*.  It's called *United States vs. Bowe*,
 6    B-O-W-E, 221 F.3d 1183.  Suffice it to say that some of the
 7    most well-established principles in the law are actually quite
 8    old.
 9              I'm just checking my notes, Your Honor.  Can I please
10    have one moment?
11              THE COURT:  You may.
12              *(Brief pause in proceedings)*
13              MR. HARBACH:  Unless Your Honor has any questions,
14    I'll turn it over to my colleague.
15              THE COURT:  Thank you.
16              MR. BRATT:  Thank you, Your Honor.  I'll try to be
17    brief.  We've been here for a while.
18              First, one response that I actually should have given
19    to you when I was up here previously about other cases that
20    have gone to trial this quickly, and it was really something
21    that should have been obvious to me that I should have pointed
22    out which is one way in which this case is different is I can't
23    think of any other case that we've done where essentially from
24    day one, we've had all the discovery and been able to produce
25    it and to have the case ready from our perspective to go to
```

Tuesday, July 18, 2023.

```
 1   trial.

 2           Just to turn to the Mallory case by contrast which

 3   went to trial again within a year and that's a case I'm very

 4   familiar with.  In Mallory, some of the most inculpatory

 5   evidence that was used in that case was acquired in the search

 6   warrant that was executed on the day that he was arrested.  And

 7   things had to be processed on the basis of searches of his

 8   house, of his devices that were recovered in his house.  That

 9   was not the situation here.  We were able to -- our key search

10   we did now almost a year ago, we were able to compile all the

11   evidence and have it ready to be produced right at the outset

12   of the case.  So that does make it different from our other

13   cases.

14           THE COURT:  But even there, you're talking about

15   11 months and no substantive pretrial motions.  Were there in

16   Mallory?

17           MR. BRATT:  There was motions.  There was extensive

18   CIPA hearings in that case.

19           THE COURT:  Other than CIPA specific motions.

20           MR. BRATT:  I would have to go back and look, Your

21   Honor.  Like it is rare for -- and federal public defenders

22   were representing Mr. Mallory, it's rare for them not to file

23   any substantive motions; but I can go back and check.

24           Just to touch briefly on Mr. Nauta's phone, we had

25   the phone, we searched it thoroughly.  We provided the scope
```

Tuesday, July 18, 2023.

```
 1    results of those searches to Defense Counsel.  Evidence from

 2    that phone is in the indictment.  The picture I referred to in

 3    paragraph 31 of the indictment, that is from Mr. Nauta's phone.

 4    Text messages that are in the indictment are from Mr. Nauta's

 5    phone.

 6              THE COURT:  When is that material going to be turned

 7    over?

 8              MR. BRATT:  It already has been turned over.

 9              THE COURT:  Okay.

10              Any other device productions that you anticipate and

11    when?

12              MR. BRATT:  Just to sort of explain what occurred is

13    that we did a search of Mr. Nauta's devices, also searched his

14    iCloud and had those results and already produced them.  There

15    came a point in time when certain software was necessary to

16    continue the searches.  It took -- for reasons that I don't

17    understand, it took a few months to get that software.  We got

18    the software right around the time of the indictment which has

19    enabled us to do an even more thorough search of the phone, and

20    that is what is occurring now, and that is what should be

21    producible within the next couple of weeks.  But they have

22    received extensive evidence from Mr. Nauta's phone already, and

23    we offered defense counsel for Mr. Nauta a forensic copy.  On

24    July 6th, we offered them a hard drive that had a forensic copy

25    of the phones and said, "Where can we send them?"  We still
```

```
 1    have not heard from them where they want us to send the

 2    forensic images.  But they have a considerable amount of

 3    evidence from Mr. Nauta's phones.

 4         With respect to the closed circuit television and the

 5    movement of boxes, I would just note that the movement of boxes

 6    occurred between May 24th and June 2nd.  So it's not years'

 7    worth of video with respect to the movement of boxes.

 8         With respect to the classified information, I know

 9    Mr. Blanche --

10         THE COURT -- the Defense would have to review all of

11    the footage to be properly informed about the scope of the

12    footage.  I mean, it's not the case that they're going to zoom

13    in on whatever period of time the Government isolates as

14    critical.

15         MR. BRATT:  Of course, but a lot of what they're

16    going to be doing is having -- not themselves, having somebody

17    run through the video and seeing essentially nothing happening

18    or, you know, seeing somebody walk across a particular area and

19    being filmed, none of the people who have any relevance to this

20    case.  But, yes, that takes time, but it's also -- it's not --

21    you know, it's not like reading documents.  It is, you know,

22    it's viewing something.

23         With respect to the classified materials that the

24    Defense will see, understand it's their right to not concede

25    that they are classified.  They refer to them -- Mr. Blanche
```

1    referred to them as "purportedly classified."  I would just

2    advise the Court and Defense Counsel that all the documents

3    have now, at this point, gone through a classification review.

4    They are classified.  In the course of our investigation, we

5    saw no evidence from NARA or other records that any of these

6    documents ever were declassified.  We do have evidence that

7    they have or will see about declassification, some of it in

8    unclassified discovery they already have, some of it in the

9    classified discovery they'll be receiving.  And, yes, there

10   were things that were declassified, and there was a process for

11   it; not these particular documents.

12              And then finally, just to touch briefly on the PRA,

13   and we'll obviously have another forum to brief that to the

14   Court, but the PRA is very clear.  In fact, I believe it's the

15   initial provision in the PRA which is that, at the end of a

16   president's term, the presidential records belong to NARA,

17   belong to the U.S. Government.  Prior counsel for

18   President Trump have made statements both in pleadings and

19   publicly that there's a two-year period to review, that there's

20   a period for negotiation with NARA.  None of that is correct.

21   All presidential records belong to the U.S. government at the

22   end of a president's term.

23              Unless the Court has other questions.

24              THE COURT:  No.  Thank you very much.

25              All right.  Unless the Defense attorneys have focused

```
 1    and brief rebuttal...

 2               MR. BLANCHE:  Very brief, Your Honor.

 3               THE COURT:  Okay, very briefly.

 4               MR. BLANCHE:  Very quickly, just to be clear, we do

 5    believe this should be a complex case given our briefing on

 6    behalf of President Trump.

 7               And to the extent there was confusion about our ask,

 8    as Mr. Harbach just alluded to, our ask is that we come back at

 9    some point around November, having had a chance to do a

10    preliminary review of the CIPA classified discovery and the

11    discovery -- Rule 16 discovery and talk about a schedule then.

12               The Court then asked me about when we could file

13    motions.  I asked for December.  We do not think a trial date

14    should be scheduled today or at this time.  If the Court wants

15    to and believes a trial date does need to be scheduled at this

16    point, we ask for it to be at some point in mid November or

17    later of next year.

18               THE COURT:  All right.

19               MR. BLANCHE:  Thank you, Your Honor.

20               THE COURT:  All right.  Mr. Woodward, anything

21    further?

22               MR. WOODWARD:  Not unless the Court has questions.

23    And we're happy to come back whenever you'll have us.  So if we

24    come back in 30 or 45 days and we check on the status of

25    discovery, that's acceptable to us, and we can set motions
```

```
 1   deadlines then; or, if the Court wanted to set motions

 2   deadlines and bring us back in November, that's okay.  We're

 3   not going to ask the Court to -- we'll come back whenever

 4   you'll have us, Your Honor.

 5            MR. BRATT:  Your Honor, I'm sorry.

 6            THE COURT:  Yes.

 7            I'd like to wrap this up.

 8            MR. BRATT:  My colleagues just advised me that I

 9   misstated something about what we offered Mr. Woodward last

10   week.  It was a hard drive with the CCTV, but we gave them the

11   contact information for the filter attorney who currently has

12   the forensic image of the phone.  I just wanted to correct that

13   for the record.

14            And one other thing I also neglected to mention,

15   while I was sitting there, Your Honor, when I was first up, had

16   said, are there any motions that the Government intends to

17   file?  And actually, we don't expect this will be a

18   significantly complex proceeding, but there are some *Garcia*

19   issues that we're going to have to bring to the Court's

20   attention.

21            THE COURT:  All right.  Okay.

22            Okay.  Well, thank you all for that overview of the

23   scheduling concerns.  It will assist me in thinking about and

24   reviewing what an appropriate schedule in this case will look

25   like.  I will issue an order promptly following this hearing.
```

Tuesday, July 18, 2023.

```
 1              As far as the pending motion for protective order is
 2   concerned, because of the lack of meaningful conferral and
 3   because I think it would help the parties to sit down and go
 4   through those provisions carefully rather than file a motion
 5   without that careful conferral, I'm going to deny that motion
 6   without prejudice to be refiled following meaningful conferral
 7   pursuant to the local rules.
 8              Any questions before we adjourn, Mr. Bratt?
 9              MR. BRATT:  Not for the Government, Your Honor.
10              THE COURT:  Any from the Defendants?
11              MR. BLANCHE:  No, Your Honor.  Thank you.
12              THE COURT:  Okay.
13              MR. WOODWARD:  No, Your Honor.
14              THE COURT:  All right.  Thank you all for being here.
15   Safe travels back home.  The Court is in recess.
16              (PROCEEDINGS ADJOURNED AT 3:43 P.M.)
17
18
19
20
21
22
23
24
25
```

Tuesday, July 18, 2023.

1          **C-E-R-T-I-F-I-C-A-T-E**

2              I hereby certify that the foregoing is

3          an accurate transcription and proceedings in the

4          above-entitled matter.

5

   **_7/10/2023_**                    **_/s/DIANE MILLER_**
6   DATE                         DIANE MILLER, RMR, CRR, CRC
                                 Official Court Reporter
7                                United States District Court
                                 101 South U.S. Highway 1
8                                Fort Pierce, FL  34950
                                 772-467-2337
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Tuesday, July 18, 2023.

Page 71

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.

Case 9:23-cr-80101-AMC   Document 104-2   Entered on FLSD Docket 08/09/2023   Page 72 of
1/5 84

**DEFENDANT NAUTA: [1]** 4/2
**MR. BLANCHE: [13]** 3/17 27/14 30/24 31/25 36/13 36/19 38/1 38/16 38/20 67/2 67/4 67/19 69/11
**MR. BRATT: [39]** 3/13 6/20 6/23 7/1 7/12 7/14 9/2 9/12 9/15 9/23 9/25 10/8 10/11 10/14 11/3 11/15 12/7 12/20 12/22 13/6 13/15 13/21 14/8 15/11 15/17 15/24 16/1 16/21 17/3 17/16 62/16 63/17 63/20 64/8 64/12 65/15 68/5 68/8 69/9
**MR. HARBACH: [10]** 18/12 18/17 21/7 22/4 22/7 24/4 54/25 59/8 59/15 62/13
**MR. KISE: [9]** 3/20 39/15 42/5 42/13 43/8 46/12 47/9 48/1 48/6
**MR. WOODWARD: [9]** 3/22 48/19 50/2 50/17 53/13 53/24 54/21 67/22 69/13
**THE COURT: [82]**
**THE COURTROOM DEPUTY: [2]** 3/5 5/4
**UNIDENTIFIED SPEAKER: [3]** 4/25 5/5 5/9

**/**
**/s/DIANE [1]** 70/5

**1**
**1,186 days [2]** 27/21 28/14

**1,545 [1]** 14/11
**1.1 million [3]** 8/20 9/11 44/11
**10,000 [1]** 44/10
**100 [2]** 29/9 34/2
**10005 [1]** 2/12
**101 [2]** 2/8 70/7
**10th [1]** 15/23
**11 months [1]** 63/15
**1183 [1]** 62/6
**11th [4]** 6/3 14/18 16/12 16/13
**12 [4]** 16/15 31/8 56/1 56/1
**12th [1]** 16/9
**1318 [1]** 62/1
**13th [1]** 16/5
**15-year-old [1]** 52/22
**15th [1]** 44/23
**16 [2]** 27/25 67/11
**16th [1]** 40/24
**18 [2]** 1/10 45/5
**190,000 [2]** 29/4 44/11
**1978 [1]** 62/2
**1st [1]** 44/21

**2**
**2,070,111 [1]** 40/25
**20 [1]** 45/4
**20,000 [1]** 44/10
**20-year-old [1]** 52/21
**2000 [1]** 62/5
**20001 [1]** 2/15
**201 [1]** 2/17
**202 [1]** 2/18
**2021 [1]** 52/13
**2022 [2]** 14/17 14/19
**2023 [2]** 1/10 70/5
**2024 [2]** 38/12 43/24
**20530 [1]** 2/5
**21 days [1]** 39/6
**21st [2]** 6/17 7/2
**221 F.3d 1183 [1]** 62/6
**22nd [1]** 44/24
**23-80101-CRIMINAL-CANNON [1]**

**23-CR-80101 [1]** 3/9
**2300 [1]** 40/25
**2337 [1]** 70/8
**23rd [1]** 8/8
**24/7 [1]** 41/24
**24th [1]** 65/6
**250 [1]** 14/22
**2703 [1]** 7/8
**27th [1]** 45/2
**28th [1]** 44/19
**2nd [5]** 2/17 7/24 8/8 45/2 65/6

**3**
**30 [3]** 34/3 51/11 67/24
**300 [1]** 2/15
**300,000 [1]** 8/6
**302 [1]** 15/4
**302s [1]** 14/20
**31 [2]** 14/25 64/3
**3116 [1]** 48/15
**3161 [1]** 53/14
**32 [1]** 50/22
**32301 [1]** 2/9
**34950 [2]** 2/18 70/8
**375 [1]** 14/22
**38 [1]** 14/17
**38 days [1]** 40/24
**3:43 [1]** 69/16

**4**
**400 [2]** 2/14 28/16
**4460 [1]** 2/11
**45 days [3]** 51/12 51/15 67/24
**450 [1]** 28/17
**4500 [1]** 7/20
**4th [1]** 44/19

**5**
**500,000 [1]** 52/16
**55,000 [1]** 41/1
**569 F.2d 1318 [1]** 62/1

**6**
**60 days [2]** 16/4 16/7
**6th [1]** 64/24

**7**
**7/10/2023 [1]** 70/5
**750 [1]** 2/8
**772-467-2337 [1]** 70/8
**793 [1]** 25/10

**8**
**80 percent [1]** 14/14
**800,000 [1]** 7/5
**80101 [1]** 3/9
**83 [1]** 1/11
**88,306 [1]** 40/24
**8th [2]** 14/19 44/22

**9**
**950 [1]** 2/4
**99 [1]** 2/11

**A**
**abate [1]** 42/5
**abates [3]** 40/10 40/13 42/23
**abide [1]** 60/15
**ability [4]** 8/14 23/2 23/21 24/19
**above [1]** 70/4
**above-entitled [1]** 70/4
**absolutely [3]** 32/2 38/11 59/18
**abundantly [1]** 20/20
**abuse [3]** 49/3 56/15 59/1
**accept [1]** 28/18
**acceptable [1]** 67/25
**access [8]** 11/17 11/21 14/12 14/13 16/10 49/24 53/1 54/12
**accommodate [1]** 57/7
**accordance [2]** 4/20 5/21
**according [3]** 15/21 20/15 22/22
**accordingly [1]** 59/3
**account [6]** 19/23

**22/23 30/22 37/25 57/12 59/20
**achieve [1]** 17/20
**acknowledge [3]** 17/18 23/10 60/19
**acknowledged [1]** 56/5
**acquired [2]** 8/22 63/5
**across [1]** 65/18
**act [18]** 4/16 20/13 20/15 22/3 24/5 24/10 24/18 43/6 45/11 46/13 46/17 46/21 47/11 47/15 47/21 53/8 53/17 53/21
**action [3]** 23/3 23/22 42/14
**activated [1]** 10/1
**acts [1]** 26/2
**add [1]** 38/6
**added [2]** 38/4 38/5
**addition [2]** 8/17 14/20
**address [13]** 10/18 10/19 12/15 18/1 19/7 22/25 29/1 31/2 31/6 35/2 35/10 55/2 57/14
**addresses [1]** 11/20
**adequate [3]** 21/21 22/17 27/4
**adequately [2]** 18/23 30/21
**adjourn [1]** 69/8
**ADJOURNED [1]** 69/16
**administration [1]** 34/22
**admission [1]** 41/3
**admitted [1]** 51/6
**adopted [1]** 46/21
**advance [2]** 5/22 45/20
**affidavit [1]** 27/20
**affidavits [2]** 33/10 33/14
**affirmative [1]**

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.

## A

affirmative... [1]
15/18

afternoon [13]
3/7 3/13 3/16 3/17
3/19 3/20 3/22
3/25 4/1 4/2 6/24
6/25 39/15

afterwards [1]
29/22

age [1]  62/3

aggressive [1]
17/18

AILEEN [1]  1/17

Alabama [1]
61/17

albeit [1] 39/16

allegation [1]
52/3

allegations [1]
56/16

allege [1]  52/6

alleged [1]  52/11

alleges [1]  25/11

allow [4]  20/3
37/8 51/16 51/17

allowance [1]
16/15

alluded [1]  67/8

almost [5]  41/1
52/13 56/3 60/5
63/10

alone [3]  20/4
28/13 40/23

although [5]  7/5
30/17 31/17 55/15
60/18

Amendment [2]
51/5 61/13

AMERICA [2]  1/7
3/10

America vs [1]
3/10

amongst [1]  9/24

amount [8]  28/4
29/2 31/12 35/2
37/18 39/9 48/24
65/2

analysis [2]  18/23
19/2

answer [5]  22/7
23/15 27/6 29/1

## 
53/18

anticipate [9]
13/13 13/15 14/3
15/9 15/17 37/21
38/24 45/8 64/10

anticipated [2]
6/19 15/8

apologize [1]
25/3

Appeals [2]  19/15
23/9

appearances [2]
2/1 3/11

applications [2]
7/21 56/7

appointed [1]
58/10

appointee [1]
58/16

appreciate [4]
30/10 35/1 41/9
54/2

approach [2]  5/6
41/13

appropriately [1]
30/23

appropriateness
[1] 48/10

approved [1]  16/6

arbitration [1]
44/3

area [1]  65/18

aren't [1]  59/25

argue [1]  20/11

argument [12]
6/5 15/14 18/15
24/9 24/14 42/7
45/20 45/21 45/21
59/3 59/5 59/6

arguments [4]
41/25 42/1 45/14
45/16

arrested [3]  37/16
52/12 63/6

articulate [1]
46/10

aspect [1]  21/23

aspects [2]  48/13
54/2

assailable [1]
47/20

assist [2]  11/23
68/23

## 
associated [1]
57/21

assume [2]  39/8
54/5

assuming [2]
16/7 16/9

assumption [1]
16/3

attack [1]  23/2

attempt [1]  5/18

attempted [1]
57/12

attempting [2]
59/21 59/22

attending [1]
35/13

attorney [4]  32/14
35/12 58/10 68/11

attorneys [2]
18/11 27/11 66/25

audio [3]  5/1 5/12
5/15

August 4th [1]
44/19

August 8th [1]
44/19

authority [4]
17/14 23/22 37/4
37/15

automatically [1]
53/21

Avenue [1]  2/4

avoid [1]  4/13

## B

B-O-W-E [1]  62/6

background [1]
6/13

basic [1]  40/21

basis [3]  9/6
24/10 63/7

Bedminster [1]
9/17

bedrocks [1]
57/25

behind [1]  15/21

belabor [1]  18/23

belong [3]  66/16
66/17 66/21

benchmarks [1]
6/6

benefit [1]  58/7

beyond [3]  17/16

## 
31/16 34/12

bidding [1]  58/17

Biden [1]  46/25

bifurcate [1]
55/20

bill [1]  23/1

BLANCHE [16]
2/10 2/10 3/18
27/12 39/18 40/16
41/7 43/24 45/25
48/7 55/9 55/11
55/17 58/2 65/9
65/25

Blanche's [3]
41/4 56/20 57/14

blank [2]  23/7
28/19

body [1]  7/14

bones [1]  48/5

Bowe [1]  62/5

box [1]  34/7

boxes [8]  28/10
28/10 29/20 34/4
52/4 65/5 65/5
65/7

Brand [1]  2/14

Brandwatch [1]
40/22

BRATT [11]  2/2
3/13 6/14 6/15
18/7 27/16 37/3
49/23 53/6 55/5
69/8

Bratt's [1]  27/23

brief [18]  5/10
6/13 21/12 22/25
23/5 24/6 25/22
26/2 26/3 36/4
39/17 55/19 59/23
62/12 62/17 66/13
67/1 67/2

brief that [1]
25/22

briefing [6]  23/15
24/20 32/24 53/2
54/5 67/5

broadcasting [2]
4/7 5/15

broader [2]  5/21
50/3

broadly [3]  4/21
6/7 56/25

brushes [1]  39/22

## 
built [1]  53/11

Bush [1]  47/1

busy [3]  20/5
52/20 52/24

## C

C-E-R-T-I-F-I-C-A-
T-E [1]  69/17

calendar [1]  61/9

camera [2]  9/19
9/19

cameras [5]  9/16
9/16 9/17 10/1
27/24

campaign [1]
39/11

candidacy [1]
20/7

candidate [1]
34/20

candidates [1]
40/17

CANNON [2]  1/5
1/17

captured [1]
52/11

career [2]  41/5
58/14

careful [3]  26/12
48/3 69/5

carefully [3]
41/11 42/19 69/4

case such [1]
37/22

Casissi [1]  3/3

catalog [1]  56/14

CCTV [6]  8/1 8/17
27/17 28/5 28/13
68/10

cell [8]  4/5 33/9
49/16 49/17 49/19
49/21 50/4 50/7

certify [1]  70/2

challenging [1]
41/9

chance [2]  33/21
67/9

charged [2]  32/18
35/11

charges [3]  28/8
35/7 45/20

chided [1]  62/3

chief [2]  46/19

Page 73

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.

Case 9:23-cr-80101-AMC    Document 104-2    Entered on FLSD Docket 08/09/2023    Page 74 of 84

# C

chief... [1]  47/5
choice [1]  61/13
CHRISTOPHER
 [2]  2/7 3/20
chronic [1]  60/5
chunk [1]  28/18
CIPA [20]  4/16
 4/20 5/20 6/6 6/6
 6/9 16/12 17/11
 21/24 23/20 31/7
 34/5 43/3 53/22
 53/25 54/5 57/8
 63/18 63/19 67/10
circle [1]  25/4
circuit [10]  19/16
 23/9 23/11 57/21
 61/16 61/17 61/20
 62/2 62/4 65/4
circumstances [6]
 5/23 19/10 31/4
 34/7 39/16 61/12
circumstantially
 [1]  25/6
circumvent [1]
 5/18
circumvention [1]
 4/9
citation [2]  61/21
 62/1
cite [2]  39/23
 43/10
cited [6]  44/13
 52/21 61/4 61/14
 61/15 62/4
cites [3]  61/19
 61/20 62/5
citizen [2]  19/18
 57/22
citizens [2]  27/1
 58/23
civilly [1]  35/11
claim [4]  57/14
 58/9 59/4 59/16
clarify [1]  53/7
classification [3]
 37/15 47/18 66/3
classified [40]
 4/15 4/16 10/4
 10/23 11/2 11/6
 14/6 14/11 14/20
 14/21 15/3 15/22

 16/10 16/18 17/12
 21/22 23/19 29/19
 29/19 30/5 34/2
 36/6 36/25 37/2
 37/6 37/10 43/2
 46/18 46/18 46/22
 50/21 50/23 55/6
 65/8 65/23 65/25
 66/1 66/4 66/9
 67/10
clear [11]  12/1
 20/20 20/23 38/22
 40/7 42/21 45/22
 55/15 57/22 66/14
 67/4
clearance [7]
 12/9 12/10 30/4
 37/25 38/9 54/4
 54/8
clearances [7]
 14/12 15/4 16/4
 16/6 16/8 30/3
 37/18
client [15]  12/13
 12/13 37/9 43/15
 43/16 43/16 43/25
 44/16 49/8 49/10
 51/4 52/4 52/6
 52/11 52/12
Client X [1]  43/16
Client Y [1]  43/16
client's [4]  49/15
 49/17 49/19 50/4
clients [3]  11/18
 44/2 44/8
close [2]  31/24
 50/10
closed [1]  65/4
co [1]  51/22
co-defense [1]
 51/22
Code [2]  19/20
 57/24
codefendant [1]
 51/6
Coleman [3]
 39/23 40/3 42/16
colleague [3]
 55/5 61/1 62/14
colleagues [4]
 9/23 28/21 53/11
 68/8
collected [1]

 33/18
colloquy [1]
 55/18
Columbia [3]
 32/19 48/23 48/25
comment [1]
 51/20
commentary [2]
 39/14 42/2
comments [2]
 49/23 55/8
commercial [1]
 44/3
commit [2]  38/10
 53/2
committed [1]
 17/19
common [1]  60/2
commonplace [1]
 60/11
communications
 [1]  33/4
compacted [1]
 45/3
companies [3]
 35/15 43/21 43/22
comparable [1]
 44/9
compare [1]  40/4
compartmentalize
 [1]  41/14
compile [1]  63/10
complete [1]  48/3
complex [14]
 21/5 21/6 21/24
 22/3 22/11 25/16
 43/3 52/15 52/16
 53/10 53/15 53/23
 67/5 68/18
complexity [5]
 21/10 43/2 44/8
 53/8 53/18
compliance [1]
 4/4
complicated [3]
 17/24 25/11 37/11
comprehensive
 [1]  44/20
compressed [1]
 17/15
computers [1]
 33/10
concede [1]

 65/24
concern [2]  31/3
 31/4 47/4
concerns [5]
 10/18 30/17 54/8
 54/11 68/23
concession [1]
 54/14
conclude [3]  45/6
 46/7 53/16
concluded [1]
 61/12
concrete [3]
 30/13 43/5 55/12
conduct [2]  25/7
 33/20
conducted [1]
 21/20
conducting [1]
 60/10
confer [2]  9/23
 13/2
conference [3]
 4/14 5/19 45/1
conferral [7]  6/11
 12/17 12/19 13/11
 69/2 69/5 69/6
conferred [2]
 54/16 54/19
conflate [1]  20/11
conflict [6]  43/8
 43/9 44/4 44/6
 61/7 61/24
conflicts [2]
 43/13 43/14
confusion [1]
 67/7
connection [1]
 38/3
consenting [1]
 54/11
considerable [1]
 65/2
consideration [7]
 24/12 32/4 39/20
 43/17 44/14 48/15
 61/3
consists [2]  7/4
 14/16
Constitution [3]
 19/15 19/20 57/20
construct [1]
 58/22

contain [1]  40/20
contemplate [1]
 11/12
contemplated [2]
 15/22 27/13
contemplates [2]
 19/5 25/2
content [4]  8/6
 8/16 8/21 9/8
contents [1]  7/20
contested [2]
 10/10 13/9
context [5]  39/21
 42/18 43/12 44/5
 46/4
Continental [1]
 2/7
contingent [1]
 10/5
continuance [9]
 7/6 20/17 20/22
 26/5 43/4 51/18
 57/5 59/11 61/23
continued [1]
 38/14
continuing [2]
 40/13 46/6
contours [1]
 24/16
contrary [1]  60/7
contrast [1]  63/2
Corcoran's [1]
 48/10
corporate [1]
 26/11
corresponding [1]
 7/21
counsel's [3]
 3/14 23/2 31/2
count [2]  17/6
 52/5
counterparts [1]
 55/3
country [4]  26/7
 26/23 29/17 37/5
counts [1]  50/22
court [102]
Court's [10]
 30/22 39/20 40/1
 43/4 51/3 55/11
 56/11 58/7 59/13
 68/19
courthouse [4]

**C**

courthouse... [4]
4/6 4/9 5/17 41/21
courtroom [11]
4/8 4/10 4/11 5/16
35/20 40/18 41/15
41/20 42/17 42/17
47/4
courtrooms [1]
29/17
courts [4] 60/9
61/12 61/14 61/23
courts' [1] 60/15
cover [1] 39/17
coverage [3] 40/3
40/15 40/23
covered [1] 39/18
covers [1] 9/15
CR [1] 3/9
CRC [2] 2/24 70/6
creative [1] 60/20
crime [1] 39/24
crimes [2] 59/24
60/1
criminal [4] 1/5
19/21 35/20 44/3
critical [2] 51/21
65/14
CRR [2] 2/24 70/6
crystalized [1]
13/8
curious [2] 49/1
52/2
custodians [1]
29/10
cut [1] 5/1
cycle [1] 25/24

**D**

D.C [7] 2/5 2/15
7/25 23/9 32/13
32/14 49/2
DADAN [3] 2/16
2/17 3/23
dark [1] 24/16
data [3] 28/4
28/17 40/22
Daubert [1] 44/25
DAVID [2] 2/2
3/14
deadline [3] 51/2
55/16 56/11
deadlines [6]

4/22 30/15 38/6
56/9 68/1 68/2
DeCastro [2]
43/11 44/6
DeCastro-Font [2]
43/11 44/6
December 11th
[3] 6/3 16/12
16/13
decide [1] 50/7
decision [3]
42/20 50/19 50/20
decisions [4]
47/11 47/18 47/19
47/20
declaration [1]
17/10
declare [1] 53/9
declassification
[2] 37/4 66/7
declassified [2]
66/6 66/10
decorum [1] 4/4
deemed [1] 53/23
defendant [9]
20/18 20/25 34/15
34/24 42/14 42/15
42/15 42/16 57/17
defendant's [1]
61/12
defendants [16]
1/12 11/2 11/13
11/18 11/20 18/20
20/19 21/2 21/9
22/12 25/7 25/11
25/19 58/7 58/24
69/10
defendants' [1]
30/14
defenders [1]
63/21
defense [34] 7/2
8/4 8/16 10/15
11/14 11/17 13/22
14/10 16/10 17/23
18/11 20/24 21/13
23/1 27/11 28/13
29/6 30/19 31/7
32/7 37/21 37/22
39/7 45/18 51/22
54/13 56/5 57/2
64/1 64/23 65/10
65/24 66/2 66/25

Defense's [2]
19/9 23/20
defenses [1]
15/15
deferral [2] 20/24
24/12
DEFT [2] 2/7 2/13
delay [2] 38/2
55/13
delayed [1] 37/24
delete [1] 13/25
deleted [1] 11/7
demand [1] 17/23
demands [1]
59/12
deny [1] 69/5
denying [1] 60/22
Department [4]
2/3 33/16 38/7
52/14
depend [1] 31/21
dependent [1]
45/21
depending [2]
10/10 60/7
depositions [3]
35/12 44/17 44/17
deserves [1]
42/16
designated [1]
25/15
designation [6]
21/5 21/6 21/9
21/24 22/3 22/13
desire [1] 23/24
despite [2] 46/14
50/4
detail [1] 18/1
detailed [1] 31/22
determination [1]
57/11
detour [2] 25/3
55/20
develop [1] 42/6
developed [3]
41/20 41/21 46/24
deviation [1]
18/25
device [2] 9/7
64/10
devices [8] 8/7
8/11 8/12 8/22
8/23 9/8 63/8

64/13
diane [4] 2/24
2/25 70/5 70/6
dictate [1] 42/17
differences [2]
10/20 26/19
difficult [4] 41/19
42/18 45/10 45/16
difficulty [2]
25/19 25/20
dire [2] 26/12
60/19
direction [2] 47/3
47/6
disagree [2]
34/13 34/25
disagreements
[1] 13/10
discharge [1]
57/2
discoverable [2]
11/6 13/17
discovery [69]
6/15 7/2 7/9 7/16
7/17 8/24 9/9 10/4
10/23 11/2 13/22
13/23 13/25 14/6
15/23 16/10 16/19
17/23 21/22 23/18
27/16 27/25 28/24
29/2 29/2 29/12
29/23 30/5 30/15
31/12 31/14 31/22
32/1 32/23 33/6
35/21 36/4 36/5
36/12 36/17 42/25
44/8 49/1 49/7
49/21 50/21 50/22
50/23 51/5 51/13
51/14 51/21 52/17
52/25 53/23 54/12
55/25 56/3 56/12
56/17 57/1 57/8
62/24 66/8 66/9
67/10 67/11 67/11
67/25
discrete [1] 31/23
discretion [2]
20/21 35/2
discussion [2]
9/24 20/25
discussions [1]
50/6

dishonest [3]
35/3 57/15 57/25
disingenuous [2]
28/15 30/9
dismiss [1] 59/22
dismissal [1]
24/10
dismissive [1]
46/14
disposes [1]
47/16
dispositive [2]
21/14 22/20
disputes [1]
54/17
disruption [1]
4/13
distinct [2] 11/14
20/13
distinguish [1]
59/21
distinguishable
[1] 59/24
distinguishing [1]
59/22
distraction [1]
4/13
district [16] 1/1
1/2 1/18 8/1 16/23
19/19 23/11 32/16
32/17 32/19 43/22
48/22 48/23 48/25
58/24 70/7
dividing [1] 14/15
division [3] 1/3
26/7 27/12
docket [1] 15/20
doctrine [1] 26/1
documents [29]
7/19 8/21 11/13
11/24 14/14 14/16
14/17 14/19 14/24
15/3 17/8 29/20
34/2 34/3 36/6
37/14 37/15 44/10
44/11 45/13 45/16
45/19 47/12 47/12
52/17 65/21 66/2
66/6 66/11
DONALD [2] 1/10
3/10
doubt [1] 51/13
duration [1] 4/12

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.
Case 9:23-cr-80101-AMC   Document 104-2   Entered on FLSD Docket 08/09/2023   Page 76 of 84

Page 75

**D**

**duties [1]** 57/3

**E**

**earliest [1]** 56/19
**early [2]** 36/23
55/17
**easily [1]** 40/14
**Eastern [1]** 16/23
**EDELSTEIN [2]**
2/3 3/14
**effective [1]** 51/4
**effectively [1]**
45/10
**effects [1]** 20/7
**efficient [3]** 32/7
38/10 56/21
**eight [1]** 16/24
**eight months [1]**
16/24
**election [12]**
25/24 26/9 26/16
26/20 34/18 41/17
42/6 42/12 48/14
49/9 49/11 60/7
**electronic [1]** 4/6
**element [1]** 51/21
**Eleventh [4]**
19/16 23/11 57/21
62/4
**else's [1]** 19/21
**email [1]** 12/22
**emails [9]** 7/7
7/12 7/15 8/9
28/19 29/4 29/5
44/10 44/12
**emanate [1]** 60/3
**empaneled [1]**
19/18
**emphasize [1]**
20/9
**emphasizing [1]**
25/21
**enabled [1]** 64/19
**engaged [2]**
25/11 50/5
**ensure [1]** 27/5
**entirely [1]** 23/7
**entitled [1]** 70/4
**entry [1]** 15/20
**entry 34-2 [1]**
15/20
**environment [1]**

45/17
**envision [1]**
50/14
**equipment [1]** 4/6
**escape [1]** 41/7
**esoteric [1]** 45/17
**especially [4]**
26/17 26/17 39/10
49/1
**ESQ [7]** 2/2 2/2
2/3 2/7 2/10 2/13
2/16
**essentially [5]**
25/24 40/16 61/18
62/23 65/17
**establish [4]** 4/19
4/21 5/20 30/21
**established [2]**
30/16 62/7
**ethical [1]** 61/8
**evaluating [1]**
23/24
**everybody [3]** 3/7
4/14 4/24
**evidence [17]**
7/22 7/22 27/2
30/7 34/1 34/11
35/18 35/19 42/16
56/5 63/5 63/11
64/1 64/22 65/3
66/5 66/6
**evidentiary [1]**
15/14
**examples [1]**
16/22
**exception [1]**
56/4
**exchange [1]**
12/22
**excluding [1]**
20/17
**excuse [3]** 29/7
57/16 59/21
**executed [2]** 33/9
63/6
**executive [2]**
26/11 47/5
**executives [1]**
46/19
**exercises [1]** 44/1
**existence [1]**
22/15
**expedited [1]**

18/2
**expeditiously [2]**
19/5 37/20
**experience [2]**
17/10 45/5
**expert [4]** 41/23
41/23 41/23 44/17
**experts [2]** 41/16
45/5
**extension [1]**
61/18
**extensive [8]**
13/15 14/4 21/19
54/5 56/12 56/17
63/17 64/22
**extensively [1]**
23/8
**extent [13]** 10/18
12/2 24/17 32/3
40/22 43/1 55/3
56/8 58/8 59/20
61/21 61/24 67/7
**extraordinarily [4]**
27/17 28/11 45/3
45/10
**extraordinary [1]**
40/15

**F**

**F.2d [1]** 62/1
**F.3d [1]** 62/6
**face [1]** 24/8
**fact [20]** 19/11
19/11 19/22 22/16
28/20 28/22 29/17
29/25 30/6 34/16
35/20 44/16 45/4
46/5 46/22 52/25
58/3 60/9 61/6
66/14
**factor [2]** 24/24
25/4
**factored [1]** 57/10
**factors [4]** 41/10
53/15 61/22 61/25
**facts [5]** 26/6
35/25 41/19 41/20
45/22
**fairness [1]** 27/1
**fall [1]** 22/2
**false [3]** 58/9 59/5
59/17
**favor [1]** 21/15

**FBI [1]** 8/8
**federal [5]** 19/20
29/17 40/23 52/14
63/21
**Fifth [5]** 2/14
61/16 61/17 61/20
62/2
**figure [1]** 26/10
**file [10]** 23/24
30/8 31/7 36/13
44/24 55/17 63/22
67/12 68/17 69/4
**filings [2]** 4/18
6/5
**filling [1]** 23/1
**filmed [1]** 65/19
**filming [2]** 4/8
5/16
**filter [1]** 68/11
**filtering [1]** 8/14
**final [4]** 16/4 16/7
42/20 45/1
**finalization [1]**
10/6
**finally [1]** 66/12
**finish [1]** 16/12
**finished [1]** 27/22
**five days [1]** 45/1
**FL [3]** 2/9 2/18
70/8
**flat [1]** 58/9
**FLORIDA [5]** 1/2
1/8 8/1 23/11 48/9
**flsd.uscourts.gov
[1]** 2/25
**focus [3]** 39/23
39/24 40/1
**focused [5]** 41/18
42/25 43/18 59/10
66/25
**focusing [1]**
21/21
**folder [1]** 8/3
**folks [2]** 4/10
38/8
**Font [2]** 43/11
44/6
**footage [12]** 8/1
8/4 8/17 9/13 9/20
27/17 27/21 28/5
28/13 55/7 65/11
65/12
**footers [1]** 7/7

**force [1]** 20/2
**foregoing [1]**
70/2
**forensic [5]** 49/19
64/23 64/24 65/2
68/12
**forensically [1]**
8/13
**forget [1]** 57/3
**form [7]** 5/15 8/12
11/7 13/25 15/13
24/10 30/20
**former [6]** 11/22
12/3 12/9 19/11
43/14 50/23
**forms [2]** 8/9 16/5
**formulate [1]**
36/17
**formulation [1]**
20/12
**FORT [4]** 1/3 1/8
2/18 70/8
**forum [1]** 66/13
**four-count [1]**
17/6
**four-month [1]**
57/5
**frame [1]** 45/16
**framework [5]**
19/2 19/2 19/5
22/18 43/4
**frequent [1]** 50/5
**Friday [3]** 12/22
12/23 13/3
**frivolous [1]**
31/20
**front [3]** 29/25
35/4 37/19
**fruits [1]** 56/7
**fulsome [1]** 56/3
**fundamental [1]**
19/16

**G**

**Gandy [3]** 61/17
61/20 62/5
**Gandy vs [1]**
61/17
**Garcia [1]** 68/18
**gather [1]** 8/19
**geez [1]** 38/5
**general [4]** 30/18
35/12 58/10 59/19

Page 76

Case 9:23-cr-80101-AMC   Document 104-2   Entered on FLSD Docket 08/09/2023   Page 77 of
FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.
84

## G

generate [3]  9/5 41/6 41/15
generated [3] 40/24 41/4 41/6
generates [1] 41/2
generations [1] 26/23
genuinely [1] 24/8
gets [2]  16/10 34/5
gigabytes [1] 28/17
gosh [1]  23/14
gotten [3]  31/14 31/15 50/8
govern [2]  47/11 47/13
governed [1] 19/19
governing [1] 47/7
government [52] 3/12 6/3 6/8 10/25 12/2 15/9 18/21 19/4 21/6 21/24 25/15 28/6 28/14 28/18 28/22 29/11 29/25 32/5 32/11 34/13 34/16 34/23 37/11 39/5 39/22 41/8 41/25 44/13 46/4 46/14 47/4 49/14 49/22 50/6 50/25 51/12 52/2 52/21 53/20 54/2 54/3 54/10 54/23 56/25 57/4 57/16 58/8 65/13 66/17 66/21 68/16 69/9
Government's [7] 5/25 9/9 11/1 26/13 27/5 32/10 56/19
Governmental [1] 9/24
governs [2]  47/15 47/15
grab [1]  22/4
grand [13]  7/24
7/25 8/1 14/18 19/19 32/12 32/13 32/16 32/24 48/8 49/3 50/8 58/23
grant [2]  20/22 61/23
granular [1] 31/22
group [1]  37/19
guidance [4]  14/7 46/16 46/24 47/3
guide [1]  59/13
guides [1]  43/4

## H

hac [2]  41/3 41/5
handle [1]  55/5
handled [1]  56/24
Hanhardt [4] 43/10 44/2 61/18 61/19
happy [4]  13/6 18/12 31/5 67/23
HARBACH [8]  2/2 3/14 18/1 18/9 31/17 39/19 45/12 67/8
headers [1]  7/7
hearing [12]  1/16 4/17 4/19 5/14 5/20 10/17 41/2 44/23 50/2 51/9 55/18 68/25
hearings [2] 16/16 63/18
heinous [2]  26/2 60/1
helpful [1]  28/24
hereby [1]  70/2
higher [2]  15/3 15/5
highly [1]  44/1
Highway [1]  70/7
hit [1]  13/23
Hoffman [1]  17/3
hold [3]  17/2 56/18 56/18
home [1]  69/15
honest [1]  31/14
honesty [1]  26/25
Honor [94]
Honor's [6]  15/12 22/8 25/18 44/9
44/18 57/5
HONORABLE [1] 1/17
hope [1]  9/3
hopefully [3]  16/8 25/14 53/6
hours [2]  45/7 52/12
house [3]  14/15 63/8 63/8
Hughey [1]  61/19
huh [1]  17/5
hundreds [1] 41/15
hurry [1]  41/11

## I

iCloud [1]  64/14
identity [1]  25/7
ignore [2]  34/16 34/23
illegally [1]  37/15
image [1]  68/12
images [1]  65/2
impact [4]  23/20 23/25 40/2 59/7
impartial [2] 26/23 60/21
impede [2]  40/9 42/22
importance [1] 60/19
impossible [1] 25/25
improper [1] 33/20
inapposite [1] 44/13
inculpatory [1] 63/4
incumbent [1] 30/19
indeed [2]  33/2 40/3
indefinite [4] 20/24 24/12 36/2 51/17
indefinitely [1] 25/1 60/23
indict [1]  49/20
indicted [6]  19/18 20/5 29/18 29/18 35/9 57/22

indictment [23] 8/2 8/18 15/1 23/23 24/11 25/10 26/8 27/18 28/8 28/24 32/10 34/2 39/5 40/23 46/5 48/4 49/22 56/13 58/24 64/2 64/3 64/4 64/18
individuals [2] 42/9 46/6
indulge [1]  21/2
indulgence [1] 25/18
influence [1] 58/11
information [21] 4/15 4/16 7/18 12/3 13/25 15/5 16/18 21/23 23/19 28/4 36/25 37/2 38/14 43/2 46/18 46/18 47/5 47/16 47/18 65/8 68/11
informative [1] 61/25
informed [2] 50/19 65/11
initial [6]  13/19 14/3 15/22 36/12 36/16 66/15
initially [1]  32/12
inquiry [2]  43/4 59/13
instance [2] 21/17 23/3
instances [2] 12/12 22/16
Instead [1]  49/11
instructed [1] 38/22
instructions [3] 27/3 60/11 60/15
intellectually [3] 35/3 57/15 57/24
intelligently [2] 36/9 37/13
intended [1] 58/20
intends [1]  68/16
intention [1]  11/1
intentioned [1] 19/8

indictment [23]
interest [7]  20/6 20/8 20/11 20/12 20/14 41/18 42/8 42/9
interests [6]  4/22 5/22 20/1 20/18 30/14 53/15
interim [6]  14/12 15/4 16/6 30/4 54/7 56/9
interpretive [1] 19/3
intersect [1] 47/13
intersection [3] 24/3 24/4 24/18
interspersed [1] 34/3
interview [3] 14/20 14/23 15/5
interviews [2] 14/21 14/22
inverted [1]  18/22
investigating [1] 32/12
investigation [5] 8/23 46/3 48/21 58/11 66/4
isolates [1]  65/13
issue [23]  18/19 21/4 23/6 23/15 25/8 26/5 32/22 33/1 33/5 35/3 39/24 45/13 45/15 45/19 46/19 50/3 51/24 56/20 56/25 57/10 59/25 60/11 68/25
issues [16]  15/14 21/10 24/25 31/23 42/25 45/12 47/2 48/9 52/25 53/25 53/25 54/4 55/5 57/12 59/11 68/19

## J

JAY [2]  2/2 3/13
Jencks [1]  8/19
judge [6]  1/18 22/5 27/1 38/21 38/21 39/15
judges [1]  26/22
judgment [3] 44/19 44/22 44/23

Page 77

Case 9:23-cr-80101-AMC   Document 104-2   Entered on FLSD Docket 08/09/2023   Page 78 of

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.

## J

**JULIE [2]**  2/3 3/14
**July 10th [1]**
15/23
**July 16th [1]**
40/24
**July 28th [1]**
44/19
**July 6 [1]**  7/3
**July 6th [1]**  64/24
**jump [1]**  39/2
**June 21st [1]**  7/2
**June 23rd [1]**  8/8
**June 2nd [1]**  65/6
**June 8 [1]**  40/24
**juries [3]**  26/23
60/10 60/14
**jurisdiction [1]**
23/4
**jury [23]**  7/24
7/25 8/1 14/18
16/13 19/19 25/20
25/25 27/5 32/12
32/13 32/16 32/25
39/6 42/3 48/8
49/3 50/8 58/23
59/7 60/11 60/16
60/22
**justice [6]**  2/3
20/15 33/17 38/7
52/14 53/15
**justification [1]**
28/11
**justified [3]**  18/25
19/1 24/7
**justify [3]**  19/25
24/11 26/5

## K

**key [4]**  7/19 8/4
8/21 63/9
**KISE [14]**  2/7
3/21 24/21 31/5
35/10 35/12 39/13
43/7 48/20 58/2
58/5 58/19 59/18
61/5
**Kise's [1]**  36/23
**knowing [1]**  50/4
**knows [3]**  20/20
32/9 60/8

## L

**labor [1]**  27/12
**lack [2]**  13/11
69/2
**lacking [3]**  46/17
46/19 46/20
**Lago [6]**  9/17
14/15 15/2 27/20
33/8 34/4
**laid [1]**  31/13
**land [1]**  36/3
**language [1]**  12/6
**large [2]**  20/14
56/10
**lastly [2]**  46/8
48/12
**latch [1]**  58/22
**latched [1]**  58/5
**latter [1]**  20/14
**law [12]**  2/10 2/14
2/17 19/4 20/22
22/16 27/3 57/21
58/21 58/25 60/2
62/7
**lawfully [1]**  19/18
**laws [1]**  47/13
**lay [3]**  26/3 33/23
40/4
**lead [1]**  46/7
**leading [2]**  34/20
40/17
**leads [3]**  16/17
45/6 50/3
**learn [1]**  52/2
**led [2]**  32/25 48/4
**legal [9]**  21/10
23/5 24/6 31/23
42/25 45/21 45/21
56/12 58/21
**letter [2]**  35/10
46/1
**letters [1]**  46/7
**liability [1]**  25/9
**lied [1]**  32/19
**light [2]**  19/10
20/23
**likelihood [2]**
40/8 42/21
**limine [1]**  15/13
**limit [1]**  10/16
**limited [1]**  61/13
**limits [1]**  22/18

lines [1]  60/15
**lingering [1]**
54/16
**list [2]**  44/21 56/2
**litany [1]**  22/11
**litigated [1]**  23/7
**litigation [12]**
4/23 10/10 13/13
13/13 13/16 14/2
17/11 24/20 34/6
37/19 48/25 54/18
**local [1]**  69/7
**location [1]**  14/10
**locations [1]**  34/4
**log [1]**  7/17
**long-winded [1]**
25/14

## M

**main [2]**  9/9
32/10
**maintain [2]**  23/3
47/14
**maintained [1]**
58/3
**majority [1]**  55/22
**Mallory [4]**  63/2
63/4 63/16 63/22
**manages [1]**
47/16
**manner [1]**  29/2
**manual [1]**  32/14
**map [2]**  30/19
55/12
**Mar [6]**  9/17 14/15
15/2 27/20 33/8
34/4
**March 2024 [1]**
38/12
**markings [1]**  34/3
**match [1]**  50/14
**material [5]**  9/1
14/11 28/22 33/14
64/6
**materials [12]**  8/9
8/19 9/2 11/6
17/13 24/19 32/5
33/18 33/21 37/7
37/9 65/23
**matter [4]**  23/3
29/5 33/9 70/4
**matters [3]**  12/12
17/11 34/9

**May 11th [1]**
14/18
**May 24th [1]**  65/6
**May 2nd [2]**  7/24
8/8
**meaningful [7]**
6/11 12/17 12/18
31/6 31/16 69/2
69/6
**meat [1]**  48/5
**mechanisms [1]**
26/22
**media [10]**  5/17
40/19 40/25 41/1
41/22 58/5 58/8
58/19 58/19 60/12
**meeting [1]**  5/8
**member [1]**  38/9
**members [2]**
37/21 38/6
**merit [4]**  21/18
22/13 49/6 49/7
**merits [1]**  22/21
**messages [1]**
64/4
**Miami [1]**  49/2
**mid [3]**  6/1 45/8
67/16
**middle [1]**  35/16
**miller [2]**  2/24
2/25 70/5 70/6
**million [4]**  8/20
9/11 44/11 52/17
**minimal [1]**  13/19
**missing [1]**  44/17
**misstated [1]**
68/9
**mistaken [2]**  17/7
53/7
**misunderstand
[1]**  23/6
**misunderstood
[1]**  11/16
**moment [7]**  5/4
22/4 22/15 22/19
30/5 31/10 62/10
**Monday [1]**  13/3
**month [6]**  9/15
23/23 35/14 44/18
44/18 57/5
**months [12]**  9/14
9/20 16/20 16/22
16/24 25/2 37/23

48/22 48/22 48/22
63/15 64/17
**Montroe [1]**  2/8
**mostly [1]**  33/9
**motion [46]**  1/16
5/25 6/4 6/5 6/7
6/9 7/5 10/1 10/15
11/4 11/9 15/13
18/2 18/10 18/15
18/20 21/19 21/19
23/17 23/21 23/22
23/25 24/2 24/25
30/16 33/19 34/10
35/13 37/12 41/2
41/3 41/6 43/1
49/3 49/5 50/17
51/7 53/9 53/20
54/18 56/4 58/25
59/2 69/1 69/4
69/5
**motion-activated
[1]**  10/1
**motions [51]**  5/24
6/2 15/8 15/9
15/18 16/15 17/8
21/14 22/20 25/4
30/2 30/8 30/23
31/7 31/8 31/9
31/16 31/18 31/21
32/1 32/4 32/8
33/24 36/13 44/19
44/25 44/25 50/14
50/15 50/16 51/1
55/17 55/19 55/20
55/23 55/24 56/1
56/10 56/11 56/13
56/13 56/14 56/24
63/15 63/17 63/19
63/23 67/13 67/25
68/1 68/16
**movement [4]**
28/10 65/5 65/5
65/7
**movie [1]**  26/11
**Mr. [86]**
**Mr. Blanche [13]**
27/12 39/18 40/16
41/7 43/24 45/25
48/7 55/9 55/11
55/17 58/2 65/9
65/25
**Mr. Blanche's [3]**
41/4 56/20 57/14

Page 78
FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.
Case 9:23-cr-80101-AMC   Document 104-2   Entered on FLSD Docket 08/09/2023   Page 79 of
84

## M

Mr. Bratt [9]  6/14
6/15 18/7 27/16
37/3 49/23 53/6
55/5 69/8
Mr. Bratt's [1]
27/23
Mr. Corcoran's [1]
48/10
Mr. Harbach [6]
18/1 18/9 31/17
39/19 45/12 67/8
Mr. Kise [12]
24/21 31/5 35/10
35/12 39/13 43/7
48/20 58/2 58/5
58/19 59/18 61/5
Mr. Kise's [1]
36/23
Mr. Mallory [1]
63/22
Mr. Nauta [9]
3/23 4/1 8/11 12/4
12/9 36/23 50/18
50/24 64/23
Mr. Nauta's [10]
7/4 8/23 53/1
54/11 63/24 64/3
64/4 64/13 64/22
65/3
Mr. Trump [7]
19/9 19/17 26/7
26/19 35/15 39/14
57/17
Mr. Trump's [2]
19/25 24/18
Mr. Weiss [1]
41/4
Mr. Woodward
[10] 31/5 36/22
39/13 47/25 48/18
53/10 54/20 62/3
67/20 68/9
Ms. [1]  3/3
Ms. Casissi [1]
3/3
multiple [3]  27/24
33/8 34/4
musing [1]  57/19

## N

naked [1]  59/5
namely [2]  20/24
24/12
NARA [5]  14/16
14/24 66/5 66/16
66/20
narrative [1]  58/6
nature [8]  17/9
17/12 22/14 25/5
25/12 31/13 36/5
46/14
NAUTA [15]  1/11
2/13 3/10 3/23 4/1
8/11 9/2 9/7 9/7
12/4 12/9 36/23
50/18 50/24 64/23
Nauta's [10]  7/4
8/23 53/1 54/11
63/24 64/3 64/4
64/13 64/22 65/3
near [1]  44/9
nearly [1]  29/9
necessary [6]  3/3
13/8 17/20 30/11
48/3 64/15
necessitate [1]
25/1
necessitated [1]
55/25
neglected [1]
68/14
negotiation [1]
66/20
neither [2]  19/24
23/18
New York [6]
35/9 35/11 38/13
38/25 43/23 45/5
news [7]  40/9
40/24 41/5 41/6
41/6 42/22 60/13
nine [2]  9/15 9/20
nine months [1]
9/20
nine-month [1]
9/15
nobody [1]  20/10
nonclassified [2]
9/1 16/15
noncontent [2]
7/6 7/11
none [10]  19/2
26/14 33/2 44/12
56/3 58/12 58/12
58/16 65/19 66/20
North [1]  16/24
North [1]  2/8
Northwest [1]
2/14
notion [1]  57/1
notoriety [1]
60/17
novel [7]  22/15
46/9 46/11 46/13
47/8 47/9 47/10
novelty [2]  21/10
22/23
November 8th [1]
44/22
nowhere [2]
16/14 44/9
nudge [1]  59/16
number [11]  3/9
8/8 8/9 17/7 17/19
21/9 22/12 23/2
25/1 31/12 55/2
number one [1]
23/2
NW [1]  2/4
NY [1]  2/12

## O

oath [1]  27/1
Obama [1]  47/1
objected [1]
21/24
objection [1]
21/25
objections [3]
6/11 10/16 12/17
objects [1]  21/6
obligation [3]
28/20 29/7 30/22
obligations [1]
61/2
observation [2]
17/17 21/13
observations [1]
18/9
observe [1]  53/19
obstruction [2]
25/10 52/5
obtained [4]  7/22
8/2 8/10 8/18
obtains [1]  21/11
obviate [1]  21/16
obvious [4]  27/18
29/15 49/8 62/21
October 2nd [1]
45/2
offense [2]  32/17
offer [4]  18/10
18/15 30/12 30/20
office [6]  2/4 3/15
21/1 29/22 47/6
47/17
Official [2]  2/25
70/6
oh [1]  38/5
omnibus [2]
15/12 15/13
ongoing [2]  39/11
46/3
open [1]  10/17
operating [1]
45/17
operative [1]  57/5
opinion [2]  26/7
58/21
opinions [1]
61/15
opponent [2]
58/4 58/4
opposition [5]
31/1 36/3 48/2
53/9 53/12
oppositions [1]
44/20
option [1]  56/10
order [23]  6/9
6/12 10/6 10/12
10/25 11/10 11/12
11/19 11/23 12/5
12/15 14/9 15/12
37/8 45/20 51/3
52/6 54/10 54/12
57/2 57/6 68/25
69/1
orders [2]  7/8
54/14
ordinarily [1]
26/5
ordinary [1]  27/1
organization [1]
9/18
organized [1]
28/25
original [1]  37/4
outcome [1]
42/17
outlets [1]  58/19
outset [1]  63/11
overall [1]  6/15
overflow [4]  4/10
5/1 5/13 5/17
overstatement [1]
25/21
overview [1]
68/22
Oz [1]  41/13
Oz-like [1]  41/13

## P

P-R-O-C-E-E-D-I-
N-G-S [1]  3/1
P.M [1]  69/16
pages [14]  1/11
7/5 7/20 8/6 8/20
9/11 14/11 14/22
14/22 28/19 36/7
44/10 44/11 52/17
papers [6]  18/16
18/24 30/1 36/1
43/10 55/24
paperwork [1]
31/1
paragraph [2]
14/25 64/3
paragraph 31 [2]
14/25 64/3
part [8]  13/24
25/11 27/16 27/19
32/21 37/6 57/3
57/6
partial [1]  4/21
participate [1]
45/10
particulars [2]
30/20 55/12
parties [5]  4/22
5/23 54/16 57/7
69/3
parties' [1]  30/22
partner [1]  41/4
party [1]  60/16
pause [2]  5/10
62/12
pay [3]  60/12
60/12 60/13
peak [3]  41/17
42/8 42/9
Pence [1]  46/25
pending [4]  5/24
6/7 48/22 69/1

**P**

**Pennsylvania [1]** 2/4

**people [5]** 37/5 37/24 38/4 38/25 65/19

**people's [1]** 38/25

**perhaps [8]** 5/2 13/9 23/11 42/7 48/14 58/20 60/6 60/19

**period [9]** 9/15 9/18 16/3 16/9 27/24 60/24 65/13 66/19 66/20

**periods [1]** 10/1

**permanent [1]** 60/5

**permissible [1]** 48/15

**permission [1]** 37/10

**permit [2]** 14/13 15/4

**permitted [1]** 4/5

**person [2]** 20/5 34/21

**personal [2]** 33/3 47/19

**perspective [3]** 46/11 50/13 62/25

**pertinent [2]** 22/9 23/13

**philosophical [1]** 57/19

**phone [9]** 49/24 63/24 63/25 64/2 64/3 64/5 64/19 64/22 68/12

**phones [13]** 4/6 33/9 49/16 49/17 49/19 49/21 50/4 50/7 53/1 53/3 53/6 64/25 65/3

**photograph [1]** 14/25

**photographing [2]** 4/7 5/15

**pick [1]** 60/16

**picking [1]** 48/20

**picture [2]** 14/7

64/2

**pictured [1]** 14/25

**PIERCE [4]** 1/3 1/8 2/18 70/8

**place [5]** 14/9 19/3 29/8 37/12 46/15

**plainly [2]** 19/8 19/13

**Plaintiff [2]** 1/8 2/2

**plans [1]** 46/4

**pleading [1]** 21/12

**pleadings [2]** 27/7 66/18

**plenty [1]** 56/23

**PLLC [2]** 2/7 2/17

**plus [1]** 21/22

**podium [2]** 6/21 6/23

**point [32]** 4/24 11/3 13/11 16/17 18/24 19/6 20/9 21/12 22/19 23/5 23/12 23/16 23/17 25/17 25/18 26/1 27/8 30/17 43/11 44/9 54/18 55/24 56/8 57/18 59/21 60/4 61/16 64/15 66/3 67/9 67/16 67/16

**points [3]** 18/18 39/18 43/9

**political [5]** 58/3 58/4 58/11 58/15 58/17

**politician [1]** 26/10

**pool [1]** 42/3

**position [6]** 10/22 20/4 27/23 41/9 42/11 47/14

**possess [1]** 37/5

**possesses [1]** 37/15

**possession [3]** 4/5 29/19 47/17

**possibilities [1]** 19/24

**possibility [2]** 20/6 46/7

**post [4]** 8/18 26/9 42/6 48/14

**post-election [2]** 42/6 48/14

**post-indictment [1]** 8/18

**postpone [1]** 48/14

**posts [2]** 41/1 41/1

**potential [5]** 21/19 25/19 38/8 39/1 56/4

**potentially [14]** 11/5 11/13 13/17 21/14 22/20 31/11 31/25 33/20 34/10 39/3 49/24 53/11 54/17 55/20

**potshot [1]** 24/6

**power [1]** 23/4

**PRA [3]** 66/12 66/14 66/15

**practicalities [2]** 49/12 51/19

**practice [4]** 21/19 35/13 37/12 43/2

**precisely [3]** 22/2 24/15 46/10

**precluding [1]** 43/16

**predated [1]** 26/8

**predicted [1]** 54/25

**prefer [1]** 6/22

**prejudice [1]** 69/6

**prejudicial [2]** 40/9 42/22

**preliminary [3]** 4/4 5/12 67/10

**premature [1]** 54/4

**preparation [1]** 22/17

**prepared [5]** 6/5 30/8 36/13 38/23 53/17

**prerogative [1]** 50/6

**present [3]** 3/23 44/12 59/3

**presidency [1]** 40/17

**president [41]** 3/18 3/21 7/3 11/22 12/3 12/10 19/11 19/12 19/17 19/23 20/1 20/7 24/22 29/18 29/21 32/11 32/18 33/5 34/14 34/17 35/8 35/16 35/22 37/4 37/6 38/22 39/11 39/11 43/14 43/19 46/25 46/25 47/1 47/1 47/1 47/11 47/16 50/23 60/5 66/18 67/6

**President Biden [1]** 46/25

**President Bush [1]** 47/1

**President Obama [1]** 47/1

**President Pence [1]** 46/25

**president Trump [18]** 3/18 3/21 12/3 29/18 29/21 32/18 34/14 35/8 35/16 35/22 38/22 39/11 43/14 43/19 50/23 60/5 66/18 67/6

**President Trump's [3]** 7/3 24/22 32/11

**president's [4]** 28/12 33/3 66/16 66/22

**presidential [15]** 24/5 24/9 24/18 25/24 34/18 45/11 46/13 46/17 46/21 47/10 47/15 47/19 47/21 66/16 66/21

**presidents [1]** 46/15

**presplit [1]** 61/17

**press [2]** 40/2 40/15

**pretrial [19]** 4/14 4/21 5/19 6/2 15/8 15/9 17/8 22/20 24/25 25/3 34/10 44/25 45/1 50/13

50/15 55/22 56/9 59/11 63/15

**prevent [2]** 40/9 42/22

**primaries [1]** 34/19

**primarily [1]** 8/9

**primary [1]** 31/3

**principle [2]** 57/20 60/2

**principles [1]** 62/7

**priority [1]** 47/10

**private [2]** 19/18 57/22

**privileged [2]** 33/4 33/18

**pro [2]** 41/3 41/5

**probable [2]** 27/20 33/11

**procedure [2]** 19/21 48/8

**procedures [7]** 4/15 4/20 43/3 48/4 48/8 57/8 60/20

**proceeding [4]** 4/12 5/10 45/11 68/18

**proceedings [5]** 23/20 46/2 62/12 69/16 70/3

**process [9]** 8/15 13/17 16/12 29/8 49/3 50/1 56/15 59/1 66/10

**processed [2]** 36/4 63/7

**processing [1]** 37/25

**produce [5]** 10/23 11/8 49/21 50/1 62/24

**producible [2]** 9/3 64/21

**producing [2]** 7/9 11/9

**production [8]** 6/19 7/4 8/5 9/1 15/22 16/19 28/17 55/6

**productions [3]** 6/17 7/1 64/10

# P

progress [2]
37/18 51/16
projected [2]  8/25
30/13
promptly [1]
68/25
proper [1]  15/14
properly [1]  65/11
proposal [3]
15/21 16/14 36/17
proposed [9]
10/25 11/9 11/12
12/5 12/5 15/19
28/14 37/8 54/10
proposition [2]
61/14 61/15
propounding [1]
58/6
prosecuting [1]
34/22
prosecution [2]
22/14 25/5
prosecutors [1]
58/15
protect [1]  47/5
protective [14]
6/9 6/12 10/6
10/11 10/25 11/10
11/12 11/19 12/15
14/9 37/8 54/10
54/12 69/1
provision [3]
11/11 32/15 66/15
provisions [3]
6/12 11/19 69/4
public [14]  4/18
20/6 20/8 20/11
20/12 20/14 20/18
26/10 26/19 40/19
46/1 58/21 60/16
63/21
publicity [9]
39/25 40/1 40/1
40/2 48/13 59/6
59/19 60/4 60/9
publicly [1]  66/19
pundit [3]  41/22
41/23 41/23
pundits [1]  41/16
purely [1]  56/12
purport [1]  59/4

purportedly [5]
29/19 33/11 34/1
46/18 66/1
purposes [2]
14/15 59/3
pursuant [6]  4/15
5/19 7/7 12/19
49/17 69/7
push [1]  52/23
putative [1]  20/6

# Q

question [23]
16/17 17/9 22/1
22/21 23/14 24/19
25/14 26/13 26/21
27/3 27/15 28/25
30/12 36/15 36/15
46/13 47/8 47/9
47/10 47/24 53/10
54/25 55/11
questioning [1]
27/23
questions [14]
18/6 22/8 22/16
27/9 46/9 46/11
48/21 50/9 55/4
55/5 62/13 66/23
67/22 69/8
quickly [3]  38/8
62/20 67/4
quote [1]  48/3

# R

raised [3]  39/19
39/19 55/6
raising [1]  22/19
rare [3]  49/4
63/21 63/22
rasa [1]  23/13
rash [1]  26/16
rationale [1]
56/22
reached [1]  12/20
reaction [1]  26/17
readily [1]  23/10
ready [3]  14/8
62/25 63/11
reality [3]  35/6
35/23 41/12
rebuttal [2]  54/24
67/1
recently [1]  29/11

recess [1]  69/15
recognize [2]
17/21 41/12
recommend [1]
57/11
reconciling [1]
52/18
record [3]  9/24
59/16 68/13
recording [3]  4/7
5/14 5/15
records [16]  24/5
24/9 24/18 45/11
46/13 46/17 46/21
46/22 47/11 47/15
47/19 47/20 47/21
66/5 66/16 66/21
recovered [1]
63/8
reelection [1]
35/17
reference [3]  22/8
48/2 58/2
referenced [1]
4/18
references [1]
20/17
referencing [1]
48/7
refiled [1]  69/6
refined [1]  36/17
reiterate [3]  26/4
46/8 57/9
rejoin [1]  5/8
relatively [1]
28/25
relevance [1]
65/19
relief [4]  20/23
21/2 22/24 24/11
rely [5]  26/22
26/25 27/4 52/24
52/24
remain [2]  4/12
42/9
remaining [2]  9/8
16/10
remarks [3]  4/4
5/12 27/8
remove [1]  58/11
rephrase [1]  55/9
reply [4]  7/5
39/19 39/22 44/22

Reporter [2]  2/25
70/6
reports [1]  9/5
representation [1]
28/18
representations
[1]  38/25
republic [1]  19/17
request [2]  11/22
55/12
requested [1]
38/4
requests [2]
13/22 13/23
required [1]  33/3
requirements [1]
21/8
research [1]
40/21
reset [1]  38/6
residence [3]
28/12 29/20 34/8
resolve [2]  10/20
54/1
resolved [1]
10/22
respectfully [4]
41/10 42/5 48/12
51/10
response [6]  13/1
13/24 14/18 18/20
55/14 62/18
rest [1]  28/21
restart [1]  5/3
restricted [1]
59/25
result [3]  19/3
20/17 60/7
results [2]  64/1
64/14
retain [1]  24/19
retention [1]  9/18
return [1]  36/8
reveal [1]  40/22
reveals [1]  17/24
review [26]  11/24
16/16 21/21 30/6
30/23 31/22 32/4
32/23 33/5 33/13
33/13 33/21 36/24
37/6 48/3 49/7
51/14 55/25 56/3
56/12 56/17 57/7

65/10 66/3 66/19
67/10
rhetoric [2]  58/18
58/21
ripe [1]  6/10
rise [2]  27/19
33/10
RMR [2]  2/24 70/6
road [2]  30/19
55/12
role [1]  54/13
rolling [1]  9/6
room [4]  4/10 5/1
5/13 5/17
routinely [1]  60/9
rule [7]  4/9 16/15
21/15 27/25 56/1
56/1 67/11
Rule 12 [2]  16/15
56/1
Rule 16 [2]  27/25
67/11
rules [5]  5/18
12/19 19/20 57/23
69/7
rush [1]  50/25
rushed [1]  13/4

# S

Safe [1]  69/15
SASHA [2]  2/16
3/23
satisfied [1]
60/21
scenario [2]
32/17 37/23
schedule [36]
4/20 4/21 5/21
5/22 15/20 17/18
17/20 17/22 17/25
20/2 23/18 23/25
28/14 30/1 30/11
30/21 31/2 35/22
35/24 36/18 36/22
36/23 38/23 43/8
43/9 43/13 43/14
44/15 44/15 45/3
52/9 52/20 52/24
59/11 67/11 68/24
scheduled [5]
35/9 43/21 61/10
67/14 67/15
schedules [3]

# S

schedules... [3]
31/6 35/21 44/7
scheduling [2]
38/15 68/23
scope [2]  63/25
65/11
scoped [1]  7/22
scoping [1]  8/15
screen [2]  3/3 5/21
scrutinize [1]
50/11
search [20]  7/21
7/21 7/23 8/12
8/13 27/19 27/20
28/9 28/12 33/7
33/9 33/11 48/7
49/18 56/6 56/6
63/5 63/9 64/13
64/19
searched [2]
63/25 64/13
searches [3]  63/7
64/1 64/16
second [8]  8/5
19/7 20/6 22/14
23/17 23/17 26/24
40/6
Secret [1]  8/10
Section [17]  4/15
5/19 6/9 6/9 10/6
10/11 10/24 11/4
11/12 12/18 13/12
13/13 13/16 13/19
14/2 31/8 37/11
54/15
Section 2 [2]  4/15
5/19
Section 3 [7]  6/9
10/6 10/11 10/24
11/12 12/18 54/15
Section 4 [6]  11/4
13/12 13/13 13/16
13/19 14/2
Section 5 [2]  31/8
37/11
security [6]  37/17
37/19 38/8 38/9
54/3 54/7
seek [4]  11/18
13/24 21/2 38/2
seeking [4]  11/20

seeks [2]  6/3 6/8
seize [1]  50/7
seized [4]  14/19
49/17 50/4 56/7
select [2]  25/25
26/23
selecting [2]
25/20 60/10
selection [3]
16/13 39/6 59/7
sense [2]  9/21
61/8
sensitive [1]
57/10
September 12th
[1]  16/9
September 15th
[1]  44/23
September 1st [1]
44/21
September 22nd
[1]  44/24
September 27th
[1]  45/2
series [1]  29/20
serious [2]  48/21
54/10
Service [1]  8/10
setting [4]  20/21
20/25 56/9 56/11
seven [1]  39/4
seven-week [1]
39/4
sever [1]  50/19
severance [1]
56/14
shall [2]  4/7 5/14
share [1]  12/13
shared [1]  51/22
sheer [1]  29/12
Sheppard [6]
39/22 40/3 40/7
41/19 42/15 42/20
shooting [1]
24/15
short [4]  4/16
19/17 20/1 49/14
shortened [1]
10/17
side [2]  15/10
21/12
sides [1]  60/21

simple [1]  18/24
single [1]  44/18
situation [3]
26/18 61/24 63/9
situations [1]
11/20
six days [2]  6/2
51/3
six hours [1]  45/7
six months [2]
16/20 16/22
Sixth [2]  51/5
61/13
slate [1]  23/7
small [1]  17/7
social [4]  40/25
41/1 58/19 60/12
software [3]
64/15 64/17 64/18
solid [1]  9/19
somebody's [1]
58/17
sooner [1]  56/24
sorts [2]  43/3
55/7
sought [3]  20/24
22/24 57/4
sources [1]  7/17
South [2]  48/9
70/7
South Florida [1]
48/9
SOUTHERN [5]
1/2 7/25 23/10
43/22 48/23
spawn [1]  10/9
special [7]  2/4
3/14 23/2 23/21
35/8 35/23 58/10
specific [5]  6/6
30/13 30/19 55/4
63/19
specifics [1]  6/18
speedy [10]  18/24
18/25 20/12 20/15
20/19 21/4 43/6
53/8 53/17 53/21
spend [1]  35/17
spoken [1]  41/15
squared [1]  42/9
squaring [2]
40/18 58/4
stand [4]  10/14

35/4 49/9 57/25
standard [1]
25/13
standards [1]
61/6
stands [1]  29/25
STANLEY [2]
2/13 3/22
star [1]  26/11
starting [4]  3/11
27/11 27/15 55/8
starts [1]  35/14
state [3]  38/21
45/5 49/8
stated [1]  56/23
statements [3]
7/23 8/8 66/18
states [16]  1/1
1/7 1/18 3/9 3/15
17/3 19/15 19/20
23/8 32/15 40/17
46/20 52/13 57/24
62/5 70/7
States vs [1]  62/5
station [1]  57/19
status [2]  8/24
67/24
statute [10]  5/21
19/1 19/3 21/9
22/5 22/8 22/22
24/5 25/2 25/5
statutes [1]  32/18
stay [1]  59/10
step [1]  31/9
steps [1]  41/21
stipulation [2]
11/8 14/1
stone [1]  18/4
stood [1]  49/14
stories [3]  40/25
40/25 41/16
story [4]  41/2
41/5 41/6 41/6
straight [1]  9/21
straightforward
[1]  25/9
streamline [1]
13/10
Street [4]  2/8 2/11
2/14 2/17
strongly [2]  31/17
32/6
structure [1]

46/15
studiously [1]
54/3
subfile [1]  8/3
subjective [1]
42/2
submitted [1]
16/5
subpoena [3]
14/18 46/6 50/8
subpoenaed [1]
27/24
subpoenas [1]
7/23
subset [2]  7/19
8/23
substance [2]
47/22 52/4
substantiate [1]
19/4
substantive [7]
17/8 30/8 31/8
31/16 32/3 63/15
63/23
substantively [1]
35/11
subsumed [1]
53/12
sudden [1]  37/24
suffice [3]  26/4
57/18 62/6
sufficiency [1]
56/13
suggest [1]  57/16
suggested [2]
12/24 30/1
suggesting [2]
28/2 51/7
suggestion [2]
51/24 56/20
suggests [1]
52/22
suit [1]  30/14
suitable [1]  43/5
Suite [4]  2/8 2/11
2/15 2/18
suits [1]  18/13
sum [3]  8/20
47/22 52/4
summary [5]  11/7
14/1 44/19 44/22
44/23
superseding [1]

**S**

**superseding... [1]**
46/4
**supported [1]**
19/14
**suppression [1]**
56/4
**Supreme [2]** 23/8
45/6
**surely [1]** 26/12
**surrounding [2]**
48/10 60/4

**T**

**table [1]** 58/14
**tabula [1]** 23/13
**taint [1]** 33/17
**Tallahassee [1]**
2/9
**target [2]** 46/1
46/6
**team [8]** 15/9
18/7 30/20 33/16
33/17 37/22 38/7
58/15
**teammates [1]**
58/14
**television [1]**
65/4
**tends [1]** 60/3
**tenet [1]** 19/16
**tension [1]** 35/1
**term [3]** 47/17
66/16 66/22
**terms [18]** 6/18
9/13 10/11 11/8
11/17 13/18 14/2
14/6 14/7 15/8
15/19 30/13 30/18
36/18 37/17 38/12
44/15 61/8
**testimony [3]**
7/24 48/10 48/11
**text [2]** 12/4 64/4
**thank [25]** 3/2 5/7
18/5 24/4 27/9
27/14 37/19 39/12
39/15 47/23 48/16
48/17 48/19 52/8
54/21 54/25 55/1
59/15 62/15 62/16
66/24 67/19 68/22
69/11 69/14

**Thanksgiving [1]**
45/9
**theme [1]** 51/8
**theories [1]** 25/8
**theory [2]** 24/7
24/17
**thick [1]** 33/23
**thinking [1]** 68/23
**thorough [3]**
26/12 55/25 64/19
**thoroughly [2]**
57/2 63/25
**thought [2]** 11/11
58/17
**thousand [3]** 36/7
51/23 52/17
**thousands [1]**
41/16
**threat [1]** 40/10
**three months [1]**
37/23
**three years [2]**
28/3 52/13
**three years' [2]**
28/1 28/3
**three-week [1]**
39/1
**throw [3]** 17/22
17/25 26/14
**Thursday [1]** 16/5
**thus [1]** 6/16
**tied [1]** 12/24
**time [42]** 9/5 9/5
9/22 10/1 10/16
10/19 10/21 12/25
16/3 16/9 17/12
17/21 18/6 20/17
21/21 22/18 27/24
30/10 31/19 32/5
32/8 35/17 36/3
36/11 36/14 36/16
39/9 45/12 45/23
49/13 51/2 52/18
53/1 53/21 56/22
57/7 60/24 64/15
64/18 65/13 65/20
67/14
**timeline [1]** 8/25
**timelines [1]**
30/13
**timeliness [1]**
23/20
**times [1]** 11/18

**timetable [1]**
17/15
**timing [2]** 29/3
38/3
**today's [1]** 5/20
**TODD [2]** 2/10
3/17
**toll [1]** 53/17
**tolling [1]** 53/19
**tolls [1]** 53/21
**topic [1]** 23/12
**total [1]** 52/12
**touch [3]** 61/1
63/24 66/12
**touched [1]** 45/14
**tranche [1]** 10/23
**transcript [2]**
1/16 32/25
**transcription [1]**
70/3
**transcripts [4]**
7/25 14/21 14/23
15/5
**transmitting [1]**
5/13
**travels [1]** 69/15
**treat [1]** 34/14
**treated [3]** 19/9
19/13 57/23
**treatment [1]**
35/23
**tremendous [2]**
28/4 35/2
**triage [2]** 36/12
36/16
**trial [72]**
**trials [2]** 60/11
61/10
**TRUMP [29]** 1/10
2/7 3/10 3/18 3/21
9/18 12/3 19/9
19/17 26/7 26/19
29/18 29/21 32/18
34/14 35/8 35/15
35/16 35/22 38/22
39/11 39/14 43/14
43/19 50/23 57/17
60/5 66/18 67/6
**Trump's [5]** 7/3
19/25 24/18 24/22
32/11
**trust [1]** 60/14
**TV [1]** 41/23

**two hours [1]**
52/12
**two weeks [6]**
16/2 16/11 30/2
30/7 30/8 51/2
**two-month [1]**
35/14
**two-year [1]**
66/19
**typical [1]** 37/14
**typically [1]** 60/3

**U**

**U.S [2]** 2/3 70/7
**U.S. [3]** 32/14
66/17 66/21
**U.S. Attorney [1]**
32/14
**U.S. Government
[2]** 66/17 66/21
**Uh [1]** 17/5
**Uh-huh [2]** 17/5
**ultimately [2]**
23/13 34/10
**umbrella [1]**
56/15
**unable [1]** 61/11
**unclassified [2]**
8/24 66/8
**undergoing [1]**
8/14
**understandably
[1]** 17/24
**understood [1]**
50/9
**understanding [9]**
16/4 18/3 32/22
34/11 35/18 35/19
38/20 49/5 52/9
**unfair [1]** 20/2
**unfortunately [1]**
46/16
**unique [2]** 17/19
50/18
**UNITED [15]** 1/1
1/7 1/18 3/9 3/15
17/3 19/15 19/20
23/8 40/17 46/20
52/13 57/23 62/5
70/7
**unless [7]** 18/8
32/16 39/13 62/13
66/23 66/25 67/22

**unreasonable [1]**
22/17
**unredacted [1]**
14/25
**unrelenting [1]**
40/15
**unresolved [1]**
52/25
**unripe [1]** 54/18
**unusual [4]** 22/11
25/6 25/8 29/15
**unusually [1]**
53/23
**unwise [1]** 21/1
**uploaded [1]**
27/22
**uploading [1]**
27/22
**urge [2]** 21/1
48/12
**us [29]** 8/7 13/24
14/10 27/25 28/6
28/9 29/13 30/7
32/24 33/2 36/14
37/8 42/6 49/6
49/15 49/20 51/12
51/19 53/2 54/4
58/13 58/16 62/3
64/19 65/1 67/23
67/25 68/2 68/4
**useful [1]** 62/1
**usual [1]** 29/24

**V**

**variations [1]**
25/10
**varied [1]** 9/19
**vendor [1]** 27/22
**venue [1]** 32/16
**verdict [1]** 16/25
**versus [3]** 44/3
47/19 48/9
**vice [3]** 41/3 41/5
46/25
**video [16]** 4/7
9/20 28/1 28/3
51/20 51/23 52/1
52/3 52/6 52/10
52/11 52/15 52/18
55/7 65/5 65/17
**violence [2]** 26/2
60/1
**Virginia [1]** 16/23

FAMILY FIRST LLC vs. DAVID RUTSTEIN, et al.

**vis [2]** 26/18 26/18
**voir [2]** 26/12 60/19
**volume [8]** 6/18 14/7 29/1 29/12 35/21 42/25 44/8 55/6
**voluminous [2]** 21/22 53/23
**voluntarily [1]** 8/7
**vs [5]** 1/9 3/10 17/3 61/17 62/5

**W**

**walk [1]** 65/18
**walks [1]** 34/15
**Wall [1]** 2/11
**WALTINA [1]** 1/11
**Waltine [1]** 3/10
**warrant [8]** 27/19 28/9 28/12 33/7 48/7 49/18 56/6 63/6
**warrants [7]** 7/21 7/22 7/23 33/9 33/11 33/13 56/6
**Washington [3]** 2/5 2/15 48/9
**watch [1]** 28/3
**weekend [1]** 12/25
**weighed [1]** 41/11
**Weiss [1]** 41/4
**well-established [1]** 62/7
**whenever [2]** 67/23 68/3
**White [1]** 14/14
**who's [1]** 3/23
**winded [1]** 25/14
**wish [1]** 18/15
**withhold [2]** 11/1 12/3
**withholding [1]** 11/13
**witnesses [5]** 9/4 32/10 33/15 33/16 45/5
**WOODWARD [13]** 2/13 2/14 3/23

31/5 36/22 39/13 47/25 48/18 53/10 54/20 62/3 67/20 68/9
**world [1]** 60/14
**worth [10]** 25/21 28/1 28/3 39/20 49/13 51/2 52/18 55/19 58/13 65/7
**wrap [1]** 68/7
**wrestle [1]** 47/2
**writ [3]** 20/14 23/7 56/10

**Y**

**years' [3]** 28/1 28/3 65/6
**yesterday's [1]** 28/16
**York [7]** 2/12 35/9 35/11 38/13 38/25 43/23 45/5
**you'd [2]** 18/10 42/6

**Z**

**zenith [1]** 41/18
**zoom [1]** 65/12