UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA,  and
CARLOS DE OLIVEIRA,**

    Defendants.
_____/

## UNITED STATES' REPLY IN SUPPORT OF RENEWED MOTION FOR PROTECTIVE ORDER PURSUANT TO SECTION 3 OF THE CLASSIFIED INFORMATION PROCEDURES ACT

The United States of America files this reply in support of its Renewed Motion for Protective Order Pursuant to Section 3 of the Classified Information Procedures Act ("CIPA") (ECF No. 84, "Mot.").

The Government's proposed protective order, ECF No. 84-1, reflects standard procedures for handling classified information in criminal cases and is consistent with the law.  Defendant Trump's opposition (ECF No. 104, "Trump Resp."), on the other hand, seeks special treatment that no other criminal defendant would receive and that is unsupported by law or precedent.  It also rests on a misrepresentation of the proposed protective order's requirements.  The proposed protective order requires that any discussion of classified information between Trump and his attorneys take place in a sensitive compartmented information facility ("SCIF"); it does *not* require, as Trump maintains, that all discussions take place in the same SCIF where classified

discovery will be housed. As such, there is no need to modify the proposed protective order on that basis—much less to include in the order approval to "re-establish[]" a secure area at an unidentified location used during Trump's presidency, which is likely a reference to one of his homes. Creating a secure location in Trump's residence—which is also a social club—so he can discuss classified information would be an unnecessary and unjustified accommodation that deviates from the normal course of cases involving classified discovery.

The opposition filed by Defendant Waltine Nauta (ECF No. 105, "Nauta Resp.") seeks Nauta's unfettered personal access to classified discovery, even though he is not charged with any offense under 18 U.S.C. § 793, no longer has a security clearance, and has not established that he has a need to know the sensitive information in the classified documents. The proposed protective order permits Nauta's cleared counsel to view the classified discovery and to obtain permission, on a case-by-case basis, to share that classified discovery with his client, should such a need arise. That procedure more than satisfies the constitutional concerns that Nauta invokes, while also complying with CIPA.

I. **Defendant Trump's Objections**

According to his opposition, Trump "opposes any portion of the Proposed CIPA Protective Order that prohibits counsel from simply discussing the relevant purportedly classified material with President Trump inside an approved secure location other than the designated SCIFs in the Southern District of Florida where the classified discovery will be housed." Trump Resp. at 1. The Government's proposed protective order, however, contains no such requirement. Rather, the Government's proposed protective order (ECF No. 84-1) contains the following provisions:

- Paragraph 3.f defines "SCIF" as "a sensitive compartmented information facility approved by a designated CISO for the storage, handling, and control of classified information."

- Paragraph 8 requires that "[a]ny classified information the defense discusses with the Defendants in any way shall be handled in accordance with this Order, including such requirements as confining all discussions, documents, and materials to an accredited SCIF."

- Paragraph 26.f requires the defense to "discuss classified information only within the SCIF or in an area authorized by the CISO."[1]

None of these provisions requires that the only SCIF in which defense counsel may discuss classified information with Trump is the SCIF where classified discovery will be housed. In the Government's view, the particular SCIF(s) that can be used for such discussions should be determined by the CISO in consultation with the defense, and if necessary, the Court, just as in any other criminal case involving classified information.

Trump asks the Court to insert language in the protective order "to approve re-establishment of a secure facility" at an unidentified location where Trump was permitted to review classified information during his presidency. Trump Resp. at 2. In making this request for the creation of a secure location for his personal use, Trump continues to seek special treatment that no other criminal defendant would receive. In essence, he is asking to be the only defendant ever in a case involving classified information (at least to the Government's knowledge) who would be able to discuss classified information in a private residence. And of course, The Mar-a-Lago Club is even less suited than most residences to host a secure location, because it is a social club. In addition to Trump's residence and office, The Mar-a-Lago Club contains more than 25 guest rooms, two ballrooms, a spa, a gift store, exercise facilities, office space, and an outdoor pool and patio. *See* ECF No. 85 at 5. As of January 2021, The Mar-a-Lago Club had hundreds of members and was staffed by more than 150 full-time, part-time, and temporary employees. *Id.*

---

[1] As noted in the Government's motion, the CISO may authorize the defense to discuss classified information at an *in camera* hearing, for example. *See* Mot. at 7.

3

Between January 2021 and August 2022, The Mar-a-Lago Club hosted more than 50 social events, including weddings, movie premieres, and fundraisers that together drew tens of thousands of guests. *Id.* Trump also provides no specifics in either his response or the attached declaration about what steps (including cost or time) would be required to create a secure space at his proposed location. The Government reiterates that as long as the classified information at issue—which includes a significant amount of SCI—is discussed in an accredited SCIF in compliance with Intelligence Community Directive ("ICD") 705 and applicable laws and regulations, the Government defers to the CISO to aid the defense in determining the appropriate locations in which discussion of classified information may occur, including consultation with the Court if necessary. There is no reason to use the protective order as a vehicle to address these fact-intensive logistical questions.

Finally, the Government notes that Trump has mischaracterized the scope of classified information counsel is currently authorized to view.[2] *See* Trump Resp. at 5 ("SCI-level documents can only be viewed after full security clearance is secured."). As the Government indicated in previous filings, counsel with interim clearances may view certain SCI compartments—SI, SI-G, and TK. *See, e.g.,* ECF No. 84-1 at 7. The Government has confirmed with the CISO that Trump's counsel are currently authorized to view such documents.

---

[2] This is not the only misstatement in Trump's filing. For example, the Government never took the position that Trump was not entitled to review the classified information in the case. *See* Trump Resp. at 4. The Government had previously proposed a standard protective order provision permitting the Government to designate whether classified discovery could be provided to the defendants personally. *See* ECF No. 79-1. The Government represented to counsel during a meet-and-confer session that it was the Government's intention to designate all classified discovery of which it presently was aware as releasable to Trump, consistent with its representations to the Court at the July 18 hearing. *See* Trump Resp. Ex. 2 at 12. Counsel for Trump was unsatisfied with this representation, and given the Government's intention, the Government modified the proposed protective order to avoid unnecessary litigation.

Immediately upon the entry of a Section 3 protective order, defense counsel may access, as the Government represented at the July 18 hearing, "about 80 percent of the documents that went from the White House to Mar-a-Lago," Trump Resp. Ex. 2 at 15, as well as other classified records that comprise the Government's first production of classified discovery.

## II.     Defendant Nauta's Objections

Nauta objects to the protective order because it does not grant him unfettered personal access to the classified discovery. He ignores the relevant language in the Government's proposed protective order and proposes no alternative language for the Court. The relevant portions of the Government's protective order do not impose a wholesale prohibition on Nauta seeing any information provided to his counsel in classified discovery, as Nauta's opposition implies. Rather, the relevant proposed provisions are as follows:

- Paragraph 8 prohibits the defense from disclosing classified information to Nauta "unless that same information has been previously disclosed to the defense by Defendant Nauta or the information has been approved for disclosure to Defendant Nauta pursuant to the procedure set forth in paragraph 26.j."

- Paragraph 26.j prohibits the defense from disclosing classified information to Defendant Nauta, other than materials designated as releasable to him personally, "unless either (1) the defense seeks and obtains permission from the government, or (2) the Court orders the government to permit the information to be shared with Defendant Nauta, and the government informs the defense that it does not intend to exercise any further rights under CIPA."

These provisions, which Nauta does not address, fully satisfy his constitutional concerns, which are themselves largely based on the speculative possibility that the content of the classified discovery could affect his defense, even though he is not charged in any count under Section 793. Nauta undoubtedly has the right to be meaningfully present at his trial and to assist in his defense. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Geders v. United States*, 425 U.S. 80, 89-91 (1976). But the cases Nauta cites in support of this uncontroversial proposition have

nothing to do with access to discovery, let alone applicability to the classified information protective order issue before the Court. *Holmes* presented "the question whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt" under certain circumstances, 547 U.S. at 321, and *Geders* considered whether a court order directing the defendant not to consult his attorney during an overnight trial recess violated his Sixth Amendment rights, 425 U.S. at 81. Likewise, as Nauta concedes, *United States v. Nunez*, 1 F. 4th 976, 991-92 (11th Cir. 2021), addressed evidentiary rulings at trial—not pretrial discovery rulings—and found no infringement of defendants' rights.

Nauta claims that unless he is granted blanket access to the classified evidence, he "cannot reasonably determine whether to pursue a severance" and "cannot understand how evidence he may offer in his own behalf will be viewed by the jury absent an understanding of the case to be presented in its entirety by the government." Nauta Resp. at 4-5. Nauta also speculates that if a classified "document reveals some form of bias," he would need to see it to participate meaningfully in jury selection. *Id.* at 5. But those arguments conflate counsel's access to discovery with Nauta's personal access. Nauta's cleared counsel will be able to review all classified discovery presently identified. As discussed below, courts presume that counsel are qualified to make assessments such as these, and if after viewing the classified discovery, counsel believe there is a need to discuss with Nauta specific classified information not already designated for release to him, the Government's proposed protective order provides a mechanism to do so on a case-by-case basis.

Nauta provides two other reasons why he must personally view several thousands of pages of classified documents, neither of which is persuasive. First, Nauta asserts that he needs to determine whether he has ever seen them before. Nauta Resp. at 5-6. The classified discovery

6

in this case goes well beyond the charged documents[3] and includes documents so sensitive that Nauta would not have been permitted to view them even when he possessed a security clearance. The Government intends to disclose to Nauta the classified discovery that it has reason to believe Nauta has previously seen—the unredacted version of the picture included in paragraph 32 of the superseding indictment and the document charged in Count 8. The mere possibility that Nauta previously may have seen another classified document does not establish a need for him to have access to several thousand pages of highly classified discovery containing some of the United States' most sensitive secrets. Furthermore, unlike Trump, Nauta is not charged with the unlawful retention of national defense information. Nauta is charged with obstruction and false statements offenses related to the investigation of Trump's unlawful retention of classified documents, the resolution of which does not turn on the classification of the documents he is alleged to have helped Trump conceal—establishing that information is classified or national defense information is not an element of any of the crimes with which he is charged. His second argument, that he must personally review the charged documents because he may have information about whether the documents would have "been deemed classified," *see* Nauta Resp. at 6, similarly fails—there is no reason to believe that Nauta would know any such information, and even if he did, that would not bear on any of the charges against him.

Permitting Nauta automatic access to all classified discovery would be inconsistent with laws governing access to classified information and applicable case law. Classified information may lawfully be provided only to individuals who have a "need to know" the information. *See*

---

[3] For example, the classified discovery will include other classified documents that were brought from the White House to Mar-a-Lago, classified emails about highly classified briefings given to then-President Trump, and classified witness statements about then-President Trump's knowledge about classified information.

Mot. at 3 (citing Exec. Order 13526 §§ 4.1(a), 6.1(dd); *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014)). Nauta would turn this principle on its head—instead of articulating a need to know as a condition precedent for blanket access to several thousand pages of classified information, he asks this Court to presume a need to know simply by virtue of his being a defendant—a defendant who is not even charged with retaining national defense information.

Case law also forecloses Nauta's arguments that he must have personal access to all classified discovery. He cites *United States v. Aref* for the proposition that the Government may not deprive a defendant of material or helpful evidence (and in that case, the court held the Government had not done so). 533 F.3d 72, 79-81 (2d Cir. 2008). But *Aref* did not address the defendant's personal access to classified discovery, and in fact, just a few months after deciding *Aref*, the Second Circuit in *In re Terrorist Bombings* referenced its holding in *Aref* and stated that it was "now hold[ing] that CIPA authorizes district courts to limit access to classified information to persons with a security clearance as long as the application of this requirement does not deprive the defense of evidence that would be 'useful to counter the government's case or to bolster a defense.'" 552 F.3d 93, 122 (2d Cir. 2008) (quoting *Aref*, 533 F.3d at 80). If, in reviewing the classified discovery, counsel encounter specific information that would meet this standard, counsel can seek authorization to share that information with Nauta on a case-by-case basis, as the protective order allows.

As discussed in the Government's motion, courts have consistently rejected due process and Sixth Amendment challenges like Nauta's. *See* Mot. 4-5. Nauta attempts to distinguish the Government's cases because he is not "accused of violent, terrorist crimes or the transmission of national defense information to foreign and enemy nations . . . ." Nauta Resp. at 6. The cases cited in the Government's motion, however, stand for the generally applicable proposition that

8

counsel is presumed to be able to make assessments based on classified discovery without the input of defendants in many situations, and when that occurs, no due process or Sixth Amendment violation results. *See In re Terrorist Bombings*, 552 F.3d at 123-28 (rejecting defendant's argument that his Fifth and Sixth Amendment rights were violated by a "mandatory clearance requirement" that "placed off-limits to him 'important evidence which could not adequately be interpreted by counsel alone'"); *United States v. Moussaoui*, 591 F.3d 263, 289-90 (4th Cir. 2010) (rejecting an argument similar to the one defendant makes here that under cases such as *Geders*, *supra*, defendant had been deprived of his Sixth Amendment right to discuss evidence with counsel); *United States v. Hausa*, 232 F. Supp. 3d 257, 264 (E.D.N.Y 2017) (rejecting defendant's argument that his due process rights were violated because he was personally denied access to evidence that only he could explain to counsel); *United States v. Rezaq*, 156 F.R.D. 514, 525 & n.20 (D.D.C. 1994) (holding that limiting to counsel disclosure of classified information did not violate defendant's constitutional rights and citing several cases in which courts rejected due process or Sixth Amendment challenges to limitations on sharing information with defendants personally); *see also United States v. Al Fawwaz*, No. S7 98-CR-1023, 2014 WL 6997604, at *1-4 (S.D.N.Y. Dec. 8, 2014) (denying defendant's motion to modify Section 3 protective order to permit counsel to disclose to defendant various classified materials). Moreover, the classified discovery the defendants in these cases were not permitted to view was much more germane to the charges against them than what Nauta may not see here.

     Nauta's attempt to distinguish these cases because the Government has not alleged that he is a terrorist or a spy misses the point, as does his attempt to shift the burden to the Government to show that he previously mishandled classified information or that he presents a disclosure risk. *See* Nauta Resp. at 3-4, 6-10.   For classified information, the burden is not on the Government to

show why a defendant should not have access. Instead, the defendant, like anyone who accesses classified information, must have a demonstrable need to know it. As several courts of appeals have observed, disclosures of classified information even to cleared individuals can put the information at risk, which is another reason why the dissemination of such information must be limited. *See Daoud*, 755 F.3d at 484 (rejecting argument that defense counsel's security clearance eliminated government's national security interest in nondisclosure); *see also United States v. Asgari*, 940 F.3d 188, 191 (6th Cir. 2019) ("Defense counsel's security clearance becomes relevant if and only if the court determines the material should be disclosed."); *United States v. Sedaghaty*, 728 F.3d 885, 909 (9th Cir. 2013) (even if defense counsel hold appropriate security clearances, it "does not mean that [they are] entitled to access the government's classified filings").

Finally, Nauta faults the Government for relying on prior protective orders with similar provisions to those proposed here where the order was not opposed. Yet he offers no alternative language in the protective order and cites no case where that alternative language was included in a protective order. And he offers no case in which a defendant charged with only obstruction and false statements offenses obtained unfettered access to classified information.

### Conclusion

The Government's proposed protective order (1) provides sufficient flexibility for counsel for Defendant Trump to discuss with him in any SCIF authorized by the CISO classified information, (2) permits Defendant Nauta to view classified information for which he has demonstrated a need to know, and (3) is consistent with standard practice and established law governing how classified information is normally handled in criminal cases. For these reasons, the United States respectfully requests that the Court enter the Government's proposed protective order.

        Respectfully submitted,

        JACK SMITH
        Special Counsel

By:    */s/ Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946
        950 Pennsylvania Avenue, NW
        Washington, D.C. 20530

        Julie A. Edelstein
        Senior Assistant Special Counsel
        Special Bar ID #A5502949

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>s/ Julie A. Edelstein</u><br>
Julie A. Edelstein<br>
Senior Assistant Special Counsel