UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON/REINHART

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) ) ) |
| DONALD J. TRUMP, and | ) ) |
| WALTINE NAUTA, | ) ) |
| Defendant. | ) ) |

**OPPOSITION TO MOTION FOR *GARCIA* HEARING**

"Assistance of counsel is the bedrock of a fair criminal justice system." *Dallas v. Warden*, 964 F.3d 1285, 1302 (11th Cir. 2020).  The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  In *Wheat v. United States*, 486 U.S. 153 (1988), the Supreme Court interpreted this clause to mean that a defendant who does not require the appointment of counsel has the right to counsel of choice. *Id.* at 159.  As the Supreme Court more recently articulated, the Sixth Amendment, "commands, not [only] that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 156 (2006).

This right is not, however, absolute and, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." *Wheat*, 486 U.S. at 162.  "The effective assistance of counsel demands not only a minimally competent lawyer, but also counsel unburdened by a conflict of interest that

impedes zealous representation." *Dallas*, 964 F.3d at 1302. *See also United States v. Rodriquez*, 982 F.2d 474, 477 (11th Cir. 1993) (A defendant's right to effective assistance of counsel is violated when the defendant's attorney has an actual conflict of interest that impacts the defendant adversely).

Accordingly, Rule 44(c)(2) of the Federal Rules of Criminal Procedure *requires* an inquiry of the Court where, "two or more defendants . . . are represented by the same counsel, or counsel who are associated in law practice" for the purpose of, "personally advis[ing] each defendant of the right to the effective assistance of counsel, including separate representation." Specifically, subdivision (c), "establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." Fed. R. Crim. P. 44, Notes of Advisory Committee on 1979 Amendment. The procedure – first formally adopted in 1979 – was, "generally consistent with the current state of the law in several circuits," including the procedure set forth by the Fifth Circuit in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). There, on interlocutory appeal of a disqualification order of three criminal defense counsel each representing multiple defendants, the Fifth Circuit remanded to the district court for a hearing on whether the defendants had knowingly and intelligently waived the right to conflict-free counsel and the attendant potential conflicts of interest that may arise from defense counsel's representation of multiple defendants in their cases. *Id.* at 273-274. And specifically, as quoted in the Notes of Advisory Committee on Rules accompanying the addition of subdivision (c), the *Garcia* court directed the district court to conduct an inquiry akin to a plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure. *See United States v. Valois*, 915 F.3d 717, 727 (11th Cir. 2019) ("*Garcia* provides that,

in the case of a potential conflict of interest, the court should conduct an inquiry, akin to the plea colloquy under Federal Rule of Criminal Procedure 11, to determine whether a defendant wishes to waive the conflict.").

*Garcia* and Rule 44 (c) hearings are thus inextricably intertwined insofar as they require a hearing concerning the joint representation of two or more *defendants*. *See United States v. Mers*, 701 F.2d 1321, 1326 (11th Cir. 1983) (holding that a district court's violation of *Garcia* and Federal Rule of Criminal Procedure 44(c) was harmless error because there was no actual conflict).

Here, the government seeks a *Garcia* hearing without reference to Rule 44(c). It does so, of course, because defense counsel does not now propose the joint representation of two or more defendants. Moreover, the government concedes, as it must, that it is unaware of any actual conflict of interest in defense counsel's representation of Defendant Waltine Nauta, and therefore also does not seek the disqualification of defense counsel. Nevertheless, defense counsel does not now – and would not ever – oppose an inquiry of Mr. Nauta by the Court to assure the Court that Mr. Nauta has been advised of all his rights, including the right to conflict-free counsel, so long as such inquiry is conducted *ex parte* and under seal. Here, the government intimates – defense counsel is aware of no case law so requiring, *see Dallas*, 964 F.3d at 1303 (A duty to inquire arises where the district court, "knows or reasonably should know *that a particular conflict exists – whether that conflict relates to joint representation of codefendants or to other conflicts . . .*" (emphasis added) (citing *Mickens v. Taylor*, 535 U.S. 162, 168-74 (2002)) – that it would be prudent for the Court to inquire as to whether Mr. Nauta waives his right to conflict free counsel because of the potential that a conflict may arise in defense counsel's representation of mere witnesses who may be called to testify in Mr. Nauta's case. *See Wood v. Georgia*, 450 U.S. 261, 272 (1981) ("[T]he record does demonstrate that the *possibility* of a conflict of interest was

3

sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further."). *See also United States v. Tatum*, 943 F.2d 370, 379 (4th Cir. 1991) ("When the risk of a conflict of interest is brought to the attention of the trial court, however, the court has the responsibility to investigate further, to advise the defendant personally, and to receive a knowing waiver if that is the expressed wish of the defendant.").

With this legal predicate in mind, defense counsel does dispute two contentions by the government in its submission to the Court. Mot. (Aug. 2, 2023) (ECF No. 97).

*First*, no potential conflict of interest likely arises from defense counsel's prior representation of Trump Employee 4. The government's superseding indictment alleges: "De Oliveira told Trump Employee 4 that 'the boss' wanted the server deleted" – purportedly in reference to the computer server housing security camera footage of Mar-a-Lago, which had recently been subpoenaed by a grand jury. Superseding Indictment at 29 ¶ 84(c) (July 27, 2023) (ECF No. 85). The government submits that a potential conflict arises insofar as the superseding indictment charges Mr. Nauta, "with obstruction-of-justice offenses stemming from their attempt to have Trump Employee 4 delete security camera footage at Mar-a-Lago." Mot. at 3 (Aug. 2, 2023) (ECF No. 97). Yet, the government also acknowledges, upon advising defense counsel that his concurrent representation of Trump Employee 4 and Mr. Nauta raised a potential conflict of interest, that defense counsel advised that, "he was unaware *of any testimony* that Trump Employee 4 would give that would incriminate Nauta and had advised Trump Employee 4 and Nauta of the Government's position about a possible conflict." Mot. at 3 (Aug. 2, 2023) (ECF No. 97) (emphasis added).

Moreover, even were a conflict to arise from Trump Employee 4's anticipated testimony, the Court should exercise its authority to preclude his testimony to avoid any conflict of interest

insofar as the charges against Mr. Nauta that relate to Trump Employee 4 were brought only after, "a grand jury in the District of Columbia continued to investigate further obstructive activity." Mot. at 2 (Aug. 2, 2023) (ECF No. 97).[1]  *See United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999) ("District courts have been given broad discretion to fashion remedies to avoid conflicts of interest.  The government goes a tad too far when it contends that a district court's discretion to remedy a conflict is limited to choosing among the three traditional remedies of limiting examination of the witness, disqualifying the defense attorney, or ensuring that the defendant waives his right to conflict-free counsel.  None of the cases cited by the government precludes the use of other appropriate remedies.  Since district courts have been given discretion both to exclude evidence and to remedy conflicts of interest, we decline to create a per se rule against excluding evidence to remedy a conflict of interest.").

Specifically, where, as here, a grand jury has returned an indictment against a defendant, neither that grand jury nor one in another district may be used for the purpose of garnering additional evidence to support the already-issued indictment, or to obtain pretrial discovery or engage in trial preparation.  *See, e.g., Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972) ("'It is improper to use the grand jury for the purpose of preparing an already pending indictment for trial.' . . .  It is a misuse of the grand jury to use it as a substitute for discovery.") (quoting *United States v. Dardi*, 330 F2d 316, 336)(2d Cir. 1964)).  *See also United States v. US Infrastructure, Inc.,* 576 F.3d 1195, 1214 (11th Cir. 2009) (citing *Beverly v. United States*, 468 F.2d at 743); *In re Grand Jury Proceedings*, 632 F.2d 1033, 1041 (3d Cir. 1980) ("It is a firmly

---

[1] Former President Trump, though counsel, joins in this submission to the extent it addresses the legal propriety of using an out-of-district grand jury proceeding to continue to investigate and/or to seek post-indictment hearings on matters pertinent to the instant indicted matter in this District.  Former President Trump reserves his rights to seek relief, including seeking additional discovery, based on the Special Counsel's conduct and actions during the grand jury investigative process after counsel completes its review and investigation.

entrenched rule that once a defendant has been indicted, a prosecutor may not use a grand jury's investigative powers for the purpose of securing additional evidence against the defendant for use in the upcoming trial."). *See also* Justice Manual § 9-11.12 Power of a Grand Jury Limited By Its Function (Feb. 2020) (citing *Costello v. United States*, 350 U.S. 362 (1956); *United States v. Woods,* 544 F.2d 242, 250 (6th Cir. 1976); *United States v. Star*, 470 F.2d 1214 (9th Cir. 1972)).[2] Nor may grand jury proceedings be used, after issuance of an indictment, as a subterfuge to place pressure on a witness in order to obtain information and leads for use at trial. *See United States v. Dardi*, 330 F.2d at 336; *United States v. Fisher*, 455 F.2d 1101, 1104-05 (2d Cir. 1972) (improper to call coconspirator before grand jury after indictment has been filed and investigation of charged bank robbery and related bank robberies concluded).

To that end, it is well established that, "it is the responsibility of courts to supervise grand juries to prevent abuse of their powers." *In Matter of Archuleta*, 432 F. Supp. 583, 596 (S.D.N.Y. 1977) (citing *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973)). In *Archuleta*, the district court highlighted the distinction between the circumstances in that case, which reflected no grand jury abuse, with those of *In re National Window Glass Workers*, a case in which such abuse had occurred. *Id.* at 596-97 (citing *In re National Window Glass Workers*, 287 F. 219 (N.D. Ohio 1922)). In *In re National Window Glass Workers*, the district court concluded convening a grand jury in a federal district different than the district in which another grand jury had already issued

---

[2] The Department of Justice has, in fact, long specified that, "[a] case should not be presented to a grand jury in a district unless venue for the offense lies." *Compare* U.S. Justice Manual 9-11.121 (2020), *with* U.S. Attorney's Manual 9-11.121 (2009). And the improper venue of a grand jury is grounds for dismissal. *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017) (citing *United States v. Cabrales*, 524 U.S. 1, 10 (1998)). Grand jury investigation of crimes within the district in which they have been empaneled comports with the roots of the grand jury as a local institution. *Id.* at 372 (citing Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process*, 24 FLA. ST. U. L. REV. 1, 6–11 (1996)). As a district court recognized in *United States v. Flotron*, No. 3:17-cr-00220 (JAM), 2018 WL 1951117 (D. Conn. Apr. 25, 2018), the Constitution "expressly protects the right of a criminal defendant to be tried only in the state or district where the alleged crime was committed." *Id.* at *4 (dismissing indicted charges without prejudice where government improperly requested a grand jury in one district to return charges for which venue lay only in another district).

an indictment—a scenario analogous to the circumstances here—was an abuse of the grand jury process, given that, "[t]he major purpose of the second grand jury there was to gather evidence in support of an existing indictment in another federal district in which trial was imminent." *Id.* at 596.  Moreover, "no trial in the second district was contemplated unless the first indictment was dismissed; and the same Assistant United States Attorney was handling both investigations." *Id.* As a consequence, the district court in *In re National Window Glass Workers* ordered the grand jury investigation in its jurisdiction to be restrained and the outstanding subpoenas vacated and set aside, "until the Government either has tried the defendants on the [previously-issued] New York indictment, or has filed in this court a stipulation in satisfactory form evidencing an intention to try the defendants here first upon any new indictment that may be obtained."  287 F. at 227-28.

The First Circuit has similarly described *In re National Window Glass Workers*, as "the classic case," explaining that it, "dealt with a grand jury subpoenaing the same witnesses and documents as had a prior grand jury which issued an indictment, where the court's compelled conclusion was that the 'dominating, if not the only, object' was to prepare for trial of the earlier indictment."  *United States v. Doe*, 455 F.2d 1270, 1273 (1st Cir. 1972) (citing *In re National Window Glass Workers*, 287 F. at 227); *Id.* (citing *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir.), *cert. denied* 379 U.S. 845 (1964), as enunciating the test that "it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial"). *See also Branzburg v. Hayes*, 408 U.S. 665, 747-48 (1972) (Stewart, J. dissenting) (recognizing that a new charge "could not, subsequent to the indictment, be investigated by a grand jury") (citing *In re National Window Glass Workers*, 287 F. at 227; *Dardi*, 330 F.2d at 336)).  In light of these established principles, and in order to protect against similar grand jury abuse faced by the defendant, the First Circuit held:

> We do have and therefore exercise our power here to require the prosecutors who are presenting matters to the Boston grand jury to make available to the District Court of Central California the transcripts of testimony of each witness, if any, whom the government intends to call at trial in California, as seasonably as feasible. This will allow that court the opportunity, if it wishes to avail itself of it, to survey the proposed testimony to judge whether, at least as to the putative witnesses, the Boston grand jury was decoyed into serving primarily as a discovery device for the government's trial preparation.

*Doe*, 455 F.2d at 1276.

The need to exercise supervisory power is substantial in this case, where the government has engaged in multiple improprieties including, *inter alia*, convening a grand jury in a far-away district ostensibly to obtain evidence with respect to an indictment that was previously returned in the instant district. The government asserts in its motion that it merely seeks, "to protect the integrity of the Court's proceedings," Mot. at 9 (Aug. 2, 2023) (ECF No. 97), when its actions reveal nothing less than an attempt to diminish the Court's authority over the proceedings in this case and to undermine attorney-client relationships without any basis specific to the facts of such representation. The exercise of this Court's supervisory power is warranted to exclude Trump Employee 4's testimony as a remedy for the improper use of out-of-district proceedings or, at the least, to allow discovery with regard to this matter. Such relief would comport with measures taken in similar instances of perceived or potential grand jury abuse.

*Second*, the government cites no authority for the proposition that the Court must conduct any inquiry of *mere witnesses* currently or formally represented by defense counsel. For it is beyond dispute that mere witnesses (as opposed to either cooperating codefendants or witnesses with criminal culpability) do not enjoy the right to counsel under the Sixth Amendment. *See Michigan v. Harvey*, 494 U.S. 344, 348 (1990) (summarizing the Supreme Court's Sixth Amendment jurisprudence). Indeed, in those cases in this Circuit to have considered the propriety of a *Garcia* hearing, reference is exclusively made to a *defendant*'s ability to waive the right to

conflict free counsel. *See United States v. Medko*, 2022 U.S. App. LEXIS 32505 (11th Cir. 2022) ("The holding in *United States v. Garcia*, requires a district court to conduct an inquiry when a potential conflict of interest exists between an attorney and her client. If a conflict exists, a '*Garcia* hearing' ensures *that the defendant* 'knowingly, intelligently, and voluntarily' waives s right to conflict-free counsel." (emphasis added)); *Valois*, 915 F.3d at 727 ("*Garcia* provides that, in the case of a potential conflict of interest, the court should conduct an inquiry, akin to the plea colloquy under Federal Rule of Criminal Procedure 11, to determine *whether a defendant wishes to waive the conflict*." (emphasis added)). *See also United States v. Chinnici*, 2018 U.S. Dist. LEXIS 119154, at *6-7 (D.Vt. 2018) ("Neither the United States Supreme Court nor the Second Circuit have recognized Defendant's right to have witnesses represented by conflict-free counsel."). Accordingly, Mr. Nauta respectfully opposes the government's request that Witness 1 or 2 be summoned before the Court for an inquiry concerning their representation by defense counsel.

## CONCLUSION

For the foregoing reasons, Defendant Waltine Nauta does not oppose an *ex parte* under seal inquiry by the Court of Mr. Nauta to assure the Court that Mr. Nauta has been advised of all his rights, including the right to conflict-free counsel; but Mr. Nauta does reserve the right to seek the exclusion of any testimony by Trump Employee 4 at a trial in this matter and further objects to the necessity of the Court conducting any inquiry of any mere witnesses that may also be represented by defense counsel.

[SIGNATURE ON NEXT PAGE]

Dated: August 17, 2023 		Respectfully submitted,

        */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
400 Fifth Street Northwest, Suite 350
Washington, District of Columbia  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
stanley@brandwoodwardlaw.com

        */s/ Sasha Dadan*
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

**Certificate of Electronic Service**

I hereby certify that on August 17, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

*/s/ Sasha Dadan*
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*