UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,　　　　　　Case No. 23-80101-CR
　　　　　　　　　　　　　　　　　　　　CANNON/REINHART
vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

　　　　　Defendants.
_____

**PRESIDENT DONALD J. TRUMP'S MOTION FOR A REVISED SCHEDULE
FOR MOTIONS TO COMPEL AND CIPA § 4 LITIGATION**

　　President Donald J. Trump respectfully submits this motion and the accompanying Classified Supplement (filed under seal), pursuant to the Court's instructions on September 12, 2023, seeking an adjusted schedule for defense discovery requests, motions to compel, and motions pursuant to § 4 of the Classified Information Procedures Act ("CIPA").[1]

　　This motion arises from unjust efforts by the Special Counsel's Office to foist rushed CIPA litigation on the Court, President Trump, and his co-defendants. Early in these proceedings, the Office boldly asserted that it "had all the discovery," was "able to produce it," and was "ready to go to trial." (7/18/23 Tr. 62). Twice, the Office committed to "promptly" producing "all" witness

---

[1] Defendants Waltine Nauta and Carlos De Oliveira join this motion. Although the parties have conferred in good faith, the Special Counsel's Office opposes this motion and requests an opportunity to respond within one week of this submission. President Trump respectfully requests three business days after the Office's opposition to file any reply. While this motion addresses specific aspects of the current schedule at the invitation of the Court, President Trump reserves the right to seek adjournments of other aspects of the schedule, including filings pursuant to CIPA §§ 5 and 6 as well as well as the trial, based on his review of discovery and the status of productions by the Special Counsel's Office.

statements, "even if [the statements] would not be deemed discoverable under 18 U.S.C. § 3500." (Dkt. No. 30 at 2; Dkt. No. 76 at 5).

The current schedule for discovery litigation and CIPA § 4 practice would only have been feasible if the Special Counsel's Office made good on those promises. Yet, two months later, it has not done so. And there appear to be significant unresolved disputes regarding the appropriate scope of discovery that will require substantive briefing and judicial intervention. Therefore, the hurried and unprecedented approach by the Office is no longer viable.

Nevertheless, the Special Counsel's Office has not backed away from its assertion that on October 10, 2023, pursuant to the current schedule, it will seek permission to withhold materials from President Trump that are subject to the Office's discovery obligations in this case. The Office has indicated that it intends to rely on CIPA § 4 in connection with that motion, and to ask the Court to determine based on an *ex parte* submission whether the material at issue is, *inter alia*, "relevant or helpful" to the defense. *Ex parte* proceedings are generally disfavored, and this type of motion presents the additional challenge of requiring the Court to assess potential defenses to the pending charges without the benefit of a truly adversarial process or any prior substantive motion practice.

To mitigate the risks associated with applying that standard based on an *ex parte* CIPA § 4 motion, courts routinely permit defendants to make parallel *ex parte* submissions describing their defense theories. The current schedule would deprive President Trump of a fair opportunity to prepare such a submission because he has not had enough time to review the discovery, the promised productions are not yet complete, and there are additional materials to which he is entitled. Accordingly, President Trump respectfully requests that the Court adopt the proposed schedule set forth below so that general discovery disputes can be resolved prior to CIPA § 4

litigation that will require the Court to anticipate and apply defense arguments in response to a request by the Special Counsel's Office to "delete" some of the evidence in this case.

## BACKGROUND

Just 15 weeks ago, on June 8, 2023, the Special Counsel's Office unsealed a 44-page, 38-count Indictment charging President Trump and Waltine Nauta. (Dkt. No. 3). In a discovery status report on June 21, 2023, the Office undertook to "disclose promptly all witness statements and associated memorialization of those statements, even if they would not be deemed discoverable under 18 U.S.C. § 3500." (Dkt. No. 30 at 2; *see also* Dkt. No. 76 at 5 (same); *id.* at 6 ("[T]he Government has promptly produced thorough discovery in an organized manner, to include early production of Jencks Act materials.")).).

On June 23, 2023, the Special Counsel's Office sought a CIPA § 2 hearing and a continuance. (Dkt. Nos. 32, 34). In the continuance motion, the Office asserted that it had "moved swiftly to produce all unclassified discovery, including Jencks Act material, to the defense." (Dkt. No. 34 at 3 ¶ 7). Based on that representation and others—without addressing classified Jencks Act and *Giglio* material—the Office proposed an unprecedented, compressed schedule for pretrial litigation, which included an August 14, 2023 deadline for its "first" motion pursuant to CIPA § 4. (Dkt. No. 34-2).

At a CIPA § 2 conference on July 18, 2023, the Special Counsel's Office represented to the Court that, "essentially from day one, we've had all the discovery and been able to produce it and to have the case ready from our perspective to go to trial." (7/18/23 Tr. 62-63). The Office described an "initial" filing pursuant to CIPA § 4 as "fairly minimal," but added:

> It is possible, as sometimes happens in these cases, that the defense will make discovery requests and some of those discovery requests may hit on things that could cause us to, as part of our response to them, seek to either delete discovery or provide the information in

the form of a summary or stipulation. So there could be sort of follow on Section 4 litigation . . . .

(*Id.* at 13-14).

On July 21, 2023, the Court accurately characterized the schedule proposed by the Special Counsel's Office as "atypically accelerated" and set a schedule for CIPA filings and other motion practice. (Dkt. No. 83 at 2). Less than a week after the Court set that schedule, the Office obtained a Superseding Indictment adding an additional defendant, Carlos De Oliveira, and additional counts. (Dkt. No. 85).

As of this filing, and as set forth in more detail in the Classified Supplement, President Trump and his co-defendants still do not have access to significant portions of the materials that the Special Counsel's Office has characterized as classified and conceded are discoverable—much less the additional classified materials to which President Trump is entitled following anticipated discovery litigation.

## APPLICABLE LAW

### I. Collection, Review, And Production Of Discoverable Materials

Rule 16 requires prosecutors to produce items that are "material to the defense." Fed. R. Crim. P. 16(a)(1)(E). "Specifically, the rule covers evidence that 'refute[s] the Government's arguments that the defendant committed the crime charged.'" *United States v. Khan*, 2023 WL 4349248, at *1 (S.D. Fla. 2023) (quoting *United States v. Armstrong*, 517 U.S. 456, 462 (1996)). Under Rule 16, the government must disclose discoverable "materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). "The Eleventh Circuit follows the prosecution team standard, which considers the relationship between the government entity and the prosecutor's office, looking at the nature of the assistance provided and the extent of cooperation on a particular

investigation." *United States v. Saab Moran*, 2022 WL 4291417, at *3 (S.D. Fla. 2022) (cleaned up).

Section 9-5.002 of the Justice Manual provides guidance on the scope of the prosecution team and required disclosures of materials possessed by the prosecution team.[2] With respect to scope, relevant considerations include (1) "[w]hether the prosecutor knows of and has access to discoverable information held by the agency," and (2) "[w]hether the prosecutor has obtained other information and/or evidence from the agency." *Id.* Prosecutors must review and produce as appropriate, among other things, "substantive case-related communications" by members of the prosecution team, including communications "among prosecutors and/or agents." *Id.*

## II. Prudential Search Reviews

In cases involving national security issues, prosecutors must conduct Prudential Search Reviews of materials possessed by members of the U.S. intelligence community ("USIC") and elsewhere in the Executive Branch to determine whether the agencies possess discoverable classified information. *See, e.g.*, *In re Extradition of Ameen*, 378 F. Supp. 3d 902, 906 & n.8 (E.D. Cal. 2009). Pursuant to Section 9-90.210 of the Justice Manual, a Prudential Search Review "shall be undertaken" where "there are documents or information within the intelligence community that fall reasonably within the scope of the prosecutor's affirmative discovery obligations to the defendant, as that scope has been defined by the Federal courts."[3]

> That the information within the possession of the intelligence community is classified shall have no effect either on the prosecutor's obligation to undertake the review of [USIC] files or on the legally-mandated scope of that review. Similarly, except as modified by CIPA, the prosecutor's obligation to produce to the defendant information found during that

---

[2] *See* https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings (last accessed Sept. 22, 2023).

[3] *See* https://www.justice.gov/jm/jm-9-90000-national-security (last accessed Sept. 22, 2023).

review is unaffected by the classified nature of that information.

*Id.*

### III. CIPA § 4

CIPA § 4 authorizes prosecutors to seek a protective order with respect to discoverable classified information. CIPA § 4 has been interpreted to require prosecutors to demonstrate that the materials are classified, to invoke the state-secrets privilege, and to demonstrate that the materials are not "relevant or helpful" to the defense. *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 79 (2d Cir. 2008). This standard is "below 'the level that would trigger the Government's obligation under *Brady* . . . to disclose exculpatory information.'" *United States v. Asainov*, 618 F. Supp. 3d 105, 112 (E.D.N.Y. 2022) (quoting *Aref*, 533 F.3d at 80).

CIPA § 4 provides the Court with discretion to review some, or all, of an application for a protective order *ex parte* and *in camera*, but it does not require that the Court choose that course. *See United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020). At least one Court of Appeals has reversed a district court's decision to permit prosecutors to proceed *ex parte* when seeking a CIPA § 4 protective order. *See United States v. Stillwell*, 986 F.3d 196, 201 (2d Cir. 2021) ("It was only after Defendants were able to review the previously undisclosed material [covered by a CIPA § 4 protective order] that they were in a position to even determine whether to pursue such a claim.").

Where courts permit prosecutors to proceed *ex parte* under CIPA § 4, corresponding *ex parte* submissions by the defense are also appropriate so that the defendant has an opportunity to disclose defense strategy to aid the court's determination of whether the materials at issue are "relevant or helpful." *See Al-Farekh*, 956 F.3d at 109 ("[T]he District Court met *ex parte* with defense counsel so that counsel could present [defendant's] theory of the case and his potential defenses.").

## PROPOSED MODIFIED SCHEDULE

President Trump respectfully submits that the following revised schedule for discovery litigation and CIPA § 4 practice is necessary to provide sufficient time for the Special Counsel's Office to complete the discovery it has conceded is appropriate, for the defense to review that discovery and seek any additional materials to which the defendants are entitled, and for the Court to address any resulting motions.

| Date | Event |
|---|---|
| Oct. 6, 2023 | Completion of classified discovery described at status conferences and the September 13, 2023 production letter by the Special Counsel's Office |
| Oct. 20, 2023 | Defense discovery requests submitted to Special Counsel's Office |
| Nov. 3, 2023 | Special Counsel's responses to defense discovery requests |
| Nov. 17, 2023 | Defense motions to compel discovery |
| Dec. 1, 2023 | Special Counsel's responses to discovery motions |
| Dec. 8, 2023 | Defense replies in support of discovery motions |
| Jan. 5, 2024 | Deadline for Special Counsel's CIPA § 4 motion (following time for the Court's consideration of discovery motions and any necessary supplemental productions) |
| Jan. 12, 2024 | Defense responses to CIPA § 4 motion (including any objections to *ex parte* proceedings and submissions relating to defense theories) |
| Jan. 19, 2024 | Special Counsel's reply in support of CIPA § 4 motion |

## DISCUSSION

The proposed revised schedule is necessary to ensure fairness in these proceedings, to conserve judicial resources and allow for efficient resolution of existing disputes, and in light of the fact that the Special Counsel's Office has not produced discovery in the manner that it described to the Court in June and July 2023.

### I. The Special Counsel's Office Has Not Met Its Discovery Commitments

The current schedule follows the initial proposal by the Special Counsel's Office to dual-track litigation over defense discovery requests and pursuant to CIPA § 4. (*Compare* Dkt. No. 83 at 5-6, *with* Dkt. No. 34-2). At the time the schedule was set, President Trump did not object to

that approach based on the Office's representations about its approach to discovery in this case, including:

- June 21, 2023: "[We will] disclose promptly *all witness statements* . . . even if they would not be deemed discoverable under 18 U.S.C. § 3500." (Dkt. No. 30 at 2 (emphasis added)).

- June 23, 2023: "[We have] moved swiftly to produce *all unclassified discovery, including Jencks Act material*." (Dkt. No. 34 at 3 ¶ 7 (emphasis added)).

- July 18, 2023: "[W]e've *had all the discovery and been able to produce it* and to have the case ready from our perspective to go to trial." (7/18/23 Tr. 62-63 (emphasis added)).

- July 18, 2023: "[O]n September 12th, the Defense gets access to the remaining classified discovery." (*Id.* at 16).

Had these statements been accurate, it was at least conceivable that defense discovery requests and any related motions to compel would have been circumscribed. And, had these statements been accurate, President Trump and the other defendants would have had at least some time to review a complete production of all discovery, including Jencks Act material, prior to addressing the "initial" CIPA § 4 motion contemplated by the Special Counsel's Office. (7/18/23 Tr. at 14).

But these statements were not accurate. The Special Counsel's Office "appears to have looked with tunnel vision at limited issues that it believed were relevant." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013). For example, the Office has not produced any materials relating to the classification reviews that it described to the Court. (*See* 7/18/23 Tr. at 66 ("[A]ll the documents have now, at this point, gone through a classification review.")). The Office estimated that classified discovery would be complete by September 12, 2023, and the Court's scheduling order emphasized "the need for the Defendants . . . to adequately review the classified discovery." (Dkt. No. 83 at 4). As explained in the Classified Supplement, however, President

Trump and his defense team do not even have access to 16 of the 32 documents at issue in the alleged violations of 18 U.S.C. § 793(e).

The Classified Supplement also demonstrates that potential witnesses exchanged electronic communications contemporaneously with the briefings and document handling at issue. The Special Counsel's Office told the Court that it had produced "all" such "witness statements," as well as "all" of the "Jencks Act material," but only a few of those communications have been made available to President Trump thus far. Similarly, the Classified Supplement provides an example of a communication involving a member of the prosecution team that was included in classified discovery and is subject to, at least, the Office's *Giglio* obligations relating to impeachment material. But it does not appear that the Office has produced any of the Jencks Act or *Giglio* material by law enforcement witnesses whose testimony regarding critical investigative steps will be central at the trial.

Although the Justice Manual required the Special Counsel's Office to collect and review all "substantive case-related communications" by members of the prosecution team, the Office declined to explain to President Trump's counsel how it had defined the prosecution team during a meet-and-confer session on September 21, 2023. *See* Justice Manual § 9-5.002. Finally, President Trump illustrated in the Classified Supplement why the Prudential Search Reviews mandated by the Justice Manual are particularly appropriate in this case with respect to, among other things, the "national defense information" element of § 793(e). During the September 21 meet-and-confer, however, the Special Counsel's Office declined to disclose whether and to what extent it had undertaken Prudential Search Reviews. Thus, although the Special Counsel's Office committed publicly to construing its obligations broadly and producing discovery promptly, the Office has not done so thus far. Accordingly, the requested relief is appropriate.

II.  **In Light Of The Gaps In Existing Productions, President Trump Anticipates Extensive Discovery Requests**

President Trump's preliminary review of the discovery produced thus far suggests that extensive discovery requests, and potentially litigation, will be necessary to address existing gaps in the productions by the Special Counsel's Office.

For example, President Trump intends to seek information relating to Prudential Search Reviews, additional electronic communications, the scope of the prosecution team, and related case-file reviews by the Special Counsel's Office to comply with its discovery obligations.  Based on review of witness statements that have been produced, President Trump also intends to seek discovery relating to an anticipated selective prosecution motion, as well as information relating to historical practices of the National Archives and Records Administration and under the Presidential Records Act.

President Trump's expected discovery requests will likely require Prudential Search Reviews, which could necessitate additional delays.  *See, e.g.*, *United States v. Doe No. 2*, 2009 WL 10720338, at *3 (S.D. Fla. 2009) (noting that, in response to a defense request, prosecutors had "launched inquiries, seeking damage assessments, to all United States governmental entities that reasonably could be expected to have such assessments if such assessments exist"); *see also United States v. Kuciapinski*, 2022 WL 3081928, at *6 (D. Colo. Aug. 3, 2022) ("Pursuant to CIPA, the Counterintelligence and Export Control Section made a Prudential Search Request with the federal agencies . . . controlling the discovery that K. Kuciapinski requested . . . .").  *Kuciapinski* illustrates the extensive delays that such Reviews can cause in cases involving classified information and CIPA litigation.  *See* 2022 WL 3081928, at *6 ("[T]he Government anticipated that based on [defendant's] discovery requests, it would take at a minimum four months for the

agencies to disclose the materials requested, for the Government to review them, and for the Government to file a CIPA Section 4 motion.").

**III.     The Court Should Resolve Motions To Compel Prior To CIPA § 4 Filings**

Despite the gaps in discovery and need for additional time to meet and confer regarding current disputes, the Special Counsel's Office seeks to press ahead with an *ex parte* CIPA § 4 filing currently that is due in less than three weeks, on October 10, 2023. The Court should resolve existing discovery disputes before addressing such a motion.

President Trump does not concede that *ex parte* filings are appropriate in light of his previous access to much of the material at issue and the security clearances granted to his attorneys. While CIPA § 4 confers discretion on the Court to address the motion in that fashion, there are obvious risks to that approach—particularly in light of the fact that the Special Counsel's Office will ask the Court to stand in the defendant's shoes and evaluate whether discoverable information is "relevant or helpful" to the defense. *See, e.g.*, *United States v. Belfast*, 2007 WL 9705938, at *2 (S.D. Fla. 2007) ("[E]*x parte* communications from the Government to the Court are disfavored because of the general concern that the Government's information will be less reliable than if it is disclosed to the Defendant." (citing *United States v. Napue*, 834 F.2d 1311, 1322 (7th Cir. 1987)). As noted above, courts faced with an *ex parte* CIPA § 4 motion typically mitigate these risks by offering the defense an opportunity to make a corresponding *ex parte* submission describing defense theories that may be implicated. *See, e.g.*, *United States v. Kotey*, 545 F. Supp. 3d 331, 337-38 (E.D. Va. 2021) ("[I]n order to allow full consideration of defendants' perspectives in the adjudication of the government's motion, defendants will be given an opportunity to present, *ex*

*parte*, any defenses they plan to assert and their theory of the case in general.").[4] The current schedule contemplates that type of filing on October 10, 2023, which is 10 days before the deadline for motions to compel and long before those motions will be fully briefed and resolved.

      Under the current circumstances, President Trump cannot reasonably be expected to meet that deadline. Requiring him to do so in service of the rush to trial by the Special Counsel's Office would only result in unnecessary substantive and scheduling problems. First, the defendants cannot articulate defense theories in a manner that will facilitate the Court's consideration of a CIPA § 4 motion prior to obtaining and reviewing the materials to which they are entitled. Motions to compel should be resolved beforehand. Second, the Special Counsel's Office has already previewed that defense discovery requests may necessitate additional CIPA § 4 practice, which would require the Court and the defendants to address the same type of motion multiple times. (*See* 7/18/23 Tr. at 13-14). Third, on the current schedule, subsequent disclosures could cause President Trump or the other defendants to supplement or revise defense strategies, which could in turn require the Court to revisit any prior protective orders issued under CIPA § 4. These are all scenarios that could, in the words of the Special Counsel's Office, "throw the schedule off." (7/18/23 Tr. 17). They can be easily avoided by adopting the proposed revised schedule.

---

[4] *See also, e.g.*, *United States v. Liu*, 2021 WL 3374535, at *1 (S.D.N.Y. 2021); *United States v. Chi Ping Ho*, 2018 WL 6082514, at *3 (S.D.N.Y. 2018); *United States v. Ying Lin*, 2018 WL 3404137, at *1 (E.D.N.Y. 2018); *United States v. Ng Lap Seng*, 2017 WL 2715213, at *1 (S.D.N.Y. 2017); *United States v. Hausa*, 232 F. Supp. 3d 257, 260-61 (E.D.N.Y. 2017); *United States v. Mostafa*, 992 F. Supp. 2d 335, 337-38 (S.D.N.Y. 2014); *United States v. Babafemi*, 2014 WL 1515277, at *3 (E.D.N.Y. 2014); *United States v. Kim*, 2013 WL 3866542, at *1 (D.D.C. 2013); *United States v. Libby*, 429 F. Supp. 2d 18, 26 (D.D.C. 2006); *United States v. Pointdexter*, 727 F. Supp. 1470, 1479 (D.D.C. 1989); *United States v. North*, 698 F. Supp. 322, 324 (D.D.C. 1988).

### IV. The Proposed Revised Schedule Is Consistent With DOJ Practice

The proposed revised schedule requires motions to compel less than six months after the Special Counsel's Office charged President Trump in this case, and a single set of CIPA § 4 litigation approximately six months after the Indictment was filed. This schedule is consistent with the Court's complex-case determination under the Speedy Trial Act (Dkt. No. 85 at 4), as well as schedules in other complex cases.

For example, in *United States v. Arcangel Pretel Ortiz, et al.*, which relates to the assassination of Haitian president Jovenel Moïse, the first defendant was arrested in January 2022, and the prosecutors' CIPA § 4 brief is not due until October 20, 2023. (*See* Dkt. Nos. 5, 408, No. 22 Cr. 20104 (S.D. Fla. Sept. 15, 2023)). The Court authorized that extended schedule notwithstanding that the prosecutors had been "working diligently to address potential issues of classified discovery since before any defendant was charged in this case." (Dkt. No. 290, *id.*). In *United States v. Diaz Guillen*, the defendant's first court appearance took place in May 2022, and the prosecutors filed a CIPA § 4 motion in October 2022, on the eve of trial. (*See* Dkt. Nos. 53, 189, No. 18 Cr. 80160 (S.D. Fla. Oct. 13, 2022)).[5] In *United States v. Padilla*, the defendant was charged in November 2005, his first court appearance took place in January 2006, and the prosecutors filed a CIPA § 4 motion in March 2007. (Dkt. Nos. 141, 155, 914, No. 04 Cr. 60001 (S.D. Fla. Mar. 14, 2007)). In *United States v. Teixeira*, which involves charges relating to the disclosure of national defense information, the defendant was arrested in April 2023, the

---

[5] *Diaz Guillen* is also an example of a case in which the prosecutors failed to timely identify discoverable information through the type of Prudential Search Reviews that are necessary in this case. (*See* Dkt. No. 162 at 10, No. 18 Cr. 80160 (S.D. Fla. Oct. 3, 2022) (Judge Dimitrouleas admonishing prosecutors that "finding out two or three weeks before the trial that you want to call witnesses that have national security concerns about their testimony is not something that I'm impressed with")).

- 13 -

prosecutors asserted in a September 19, 2023 filing that "it is premature to set any deadlines under the Classified Information Procedures Act," and the next status conference is not scheduled to occur until December 21, 2023.  (Dkt. Nos. 105-106, No. 23 Cr. 10159 (D. Mass. Sept. 19, 2023)). These examples illustrate that the approach of the Special Counsel's Office thus far has been the exception, not the rule.  That approach is no longer feasible given the status of discovery and the need for fairness and efficiency in anticipated CIPA litigation.

## CONCLUSION

For the foregoing reasons, President Trump respectfully submits that the Court should adopt the proposed revised schedule set forth above.

Dated: September 22, 2023

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche
Admitted Pro Hac Vice
toddblanche@blanchelaw.com
Blanche Law
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

**CERTIFICATE OF SERVICE**

I, Christopher M. Kise, certify that on September 22, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

<u>/s/ Christopher M. Kise</u><br>Christopher M. Kise