UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**REPLY IN FURTHER SUPPORT OF MOTION FOR REVISED SCHEDULE
FOR MOTIONS TO COMPEL AND CIPA § 4 LITIGATION AND
<u>MOTION FOR ADJOURNMENT OF THE TRIAL DATE</u>**

President Donald J. Trump respectfully submits this memorandum in support of (1) his pending motion for a revised schedule for motions to compel and CIPA § 4 litigation, and (2) an adjournment of the trial date until at least mid-November 2024, in light of additional, ongoing discovery failures by the Special Counsel's Office.[1]

On July 18, 2023, the Special Counsel's Office represented to the Court that "all" discovery would be available on "day one." (7/18/23 Tr. 62).  Following the Court's July 21 scheduling order, the same Office demanded a conflicting schedule in *United States v. Donald J. Trump*, No. 23 Cr. 257 (D.D.C.).  The March 4, 2023 trial date in the District of Columbia, and the underlying schedule in that case, currently require President Trump and his lawyers to be in two places at once.  And, months after the Office's representation to the Court, discovery is not complete in this case—including with respect to the classified documents at issue in more than 25% of the § 793(e) counts in the Superseding Indictment.  This ongoing non-compliance cannot be written off as a

---

[1] President Trump filed the first part of this motion pursuant to the Court's instruction to file "any motion to extend deadlines related to CIPA Section 4" by September 22, 2023.  (Dkt. No. 153 ¶ 5). When considering the opposition submission by the Special Counsel's Office, the status of discovery, and the lack of necessary secure facilities, the defense determined that the current schedule—even beyond the CIPA § 4 litigation—is unworkable.

series of "brief delays," or a "slightly longer than anticipated timeframe."[2] (Opp'n at 1). Nevertheless, clinging to an unprecedented and now untenable trial date, the Office presses the Court to continue with an accelerated schedule that the prosecutors have not followed and that in all likelihood will require multiple rounds of CIPA litigation.

The demands of the Special Counsel's Office must give way to the constitutional rights of the defendants and the interests of judicial economy. Therefore, President Trump respectfully requests that the Court adopt his proposed revised schedule for motions to compel and CIPA § 4 litigation, schedule trial to begin at a date convenient to the Court in or after mid-November 2024, and set further deadlines after the Office is in compliance with its discovery obligations.[3]

## I. The Adjournments Are Warranted To Establish Necessary Facilities In This District

The Court has already admonished the Special Counsel's Office for failing to establish appropriate facilities in this District before bringing this case. (*See, e.g.*, Dkt. No. 83 at 5 n.3 (directing "sufficient security measures" to be "implemented on an expedited basis")). The Court was correct, and there are now additional problems relating to this issue. The Office's failure to timely remedy the situation is alone a basis for granting the requested adjournments.

---

[2] Indeed, the Office's delay has compounded the scheduling challenges previously identified by Christopher M. Kise, co-counsel on this case. Mr. Kise has not yet been cleared fully to review all the CIPA materials and is currently representing President Trump in a trial in New York which is expected to conclude by December 22, 2023, well after expiration of many current deadlines as well as the hearing dates this Court has established. *See People v. Trump, et. al*, Index No. 452564/2022 (N.Y. Sup. Ct. 2022). He has therefore had no opportunity to review any of the CIPA materials or to participate in the preparation of the defense. President Trump should not be denied the assistance of core counsel in a matter of this significance due to the Government's delayed discovery process.

[3] Co-defendants Nauta and De Oliveira join these motions. The Special Counsel's Office objects to the requested adjournments. Counsel for President Trump requests an opportunity to be heard regarding the timing and sequencing of the additional events contemplated by the current scheduling order after the filing of any responsive submission by the Office and replies thereto.

We understand that it will be more than three months before a secure facility is established in the Northern Division. Thus, while the Special Counsel's Office urges the Court to accept a CIPA § 4 filing in less than a week, it does not appear that there is a place for the Court to maintain that submission in its custody while the motion is under consideration. Even more problematic, we understand that the Court currently lacks access in the Northern Division to (1) electronic facilities necessary to write opinions and orders relating to the classified information at issue, and (2) physical space to conduct hearings relating to any CIPA § 4 motion or pursuant to CIPA §§ 5-6.

Copies of the classified discovery have not been transported to the Miramar facility, which we also understand has not yet been approved for review and storage of the classified discovery. This, along with the fact that the defense only has access to a small, temporary facility in Miami, has delayed President Trump's personal review of the classified discovery under procedures that the Court approved on September 12, 2023.

The Special Counsel's Office also waited until the day after filing its opposition submission to notify President Trump that "the owners" of the documents at issue in four of the § 793(e) charges had required those documents to be removed from the Miami SCIF "until further notice." We have not been provided with an estimate of when those materials will be returned. While the Office has offered to make those documents available in Washington, D.C., the logistics of that arrangement are unworkable because the other classified discovery is in this District. The documents at issue must be reviewed in conjunction with those additional materials, and we have no way of transporting classified notes and other work product from the District of Columbia to this District. The prejudice to President Trump resulting from the current arrangements is

exacerbated by the fact that, to our knowledge, the Office's lawyers, investigators, and support staff face no such issues.

In sum, the Special Counsel's Office has failed to make very basic arrangements in this District for the handling of the relevant classified information, the holding of necessary CIPA hearings, and the production of related work product by the Court and counsel.  The requested adjournments are necessary to allow time for these facilities to be established.

## II. The Special Counsel's Office Has Not Met Its Discovery Undertakings

The Special Counsel's Office did not address, much less defend, its representations to the Court in June and July 2023 that it was prepared to produce "all discovery" from "day one," including "all" witness statements.  (*E.g.*, Dkt. No. 30 at 2; 7/18/23 Tr. 8, 62).  Those representations were the fundamental premise for the current schedule, and they were not accurate. Therefore, the adjournment requests should be granted.  *See Schwarz v. United States*, 828 F. App'x 628, 632 (11th Cir. 2020) ("[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." (cleaned up)); *see also United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995) (reversing conviction based on continuance denial).

### A. Unclassified Rule 16 Discovery Was Not Produced On "Day One"

Since the Court's July 21, 2023 scheduling order—and notwithstanding the "day one" representation of the Special Counsel's Office—the Office further complicated the case by charging a third defendant and producing approximately 23% more unclassified discovery. Specifically, by the time of the order, the Office had made two productions consisting of approximately 550,490 records (in excess of 1.1 million pages), which included (1) approximately 236,740 emails and attachments, (2) more than 313,750 documents from 96 separate custodians,

and (3) 57 terabytes of compressed raw CCTV footage. Since the scheduling order, the Office has produced approximately 131,272 records (totaling nearly 166,554 pages), including (1) approximately 1,375 emails and attachments, (2) more than 129,897 additional documents, and (3) another 19 terabytes of CCTV footage.

The Court observed in the scheduling order that "discovery in this case is exceedingly voluminous and will require substantial time to review and digest in accordance with Defendants' right to a fair trial." (Dkt. No. 83 at 4). In light of the post-order productions, President Trump requires more time to review these materials.

### B. "All" Witness Statements Have Not Been Produced "Promptly"

The Special Counsel's Office fails to acknowledge its written representations to the Court, as early as June 2023, that it would "promptly" produce "all" witness statements, "even if they would not be deemed discoverable under 18 U.S.C. 3500." (Dkt. No. 30 at 2). The Office now declares that it will produce: (1) "agent communications that are Jencks Act materials for testifying agents" at an unspecified "later" date, and (2) "a small volume of classified *Jencks* materials (primarily agent emails)," again without explaining when it will do so. (Opp'n at 5 n.3 and 7). While we are aware of the deadlines imposed by the Jencks Act, the Office itself agreed to much earlier productions when urging the Court to set the current, unprecedentedly accelerated schedule.

### C. More Than 25% Of The Charged Documents And Additional Classified Discovery Is Outstanding

Nine of the documents charged in the 32 pending § 793(e) counts, as well as "several uncharged documents," are not available to the defense in this District. (Opp'n at 6).[4] The

---

[4] As we understand it, documents relating to Counts 6, 22, 26, and 30 have been relocated to the District of Columbia at the request of the documents' "owners." (*See* Opp'n at 6-7 n.4). The documents relating to Counts 5, 9, 17, 20, and 29 are not available to President Trump or counsel at any location.

document relating to Count 19 was made available to President Trump for the first time late in the afternoon of October 3, only after counsel left the District following two days of review at the temporary Miami SCIF. The Special Counsel's Office has also previewed an additional classified production, "[b]y October 6, 2023," of "certain materials that Defendants have described as outstanding," including "information related to the classification reviews conducted in the case." (*Id.* at 7).

Despite all this, the Special Counsel's Office seems pleased to report that it has produced "the majority" of the classified discovery that it "anticipates producing." (Opp'n at 5). This is a marked departure from the Office's representations to the Court months ago, and there is cause for concern that what the Office "anticipates producing" is less than what it is obligated to produce. *See infra* Part II.D (regarding PSRs). In this regard, we note that the as-of-yet unproduced classification reviews are obviously discoverable, and the Office told the Court in July that "all the documents" had been through that process. (7/18/23 Tr. 66). But the Office only agreed to produce these materials after President Trump raised the issue in connection with this motion.

These are not mere "complaints." (Opp'n at 6). The Special Counsel's Office has not provided some of the most basic discovery in the case. Given the current schedule, we cannot understate the prejudice to President Trump arising from his lack of access to these critical materials months after they should have been produced. For example, it is difficult to meaningfully review portions of the classified interviews stored in the temporary Miami SCIF that relate to documents that are not located in the District. Moreover, our discovery requests to the Office will be document specific, and we cannot move forward with that process until we have all of the materials and access to a computer that we can use to write about them to the Office and the Court.

As with the lack of secure facilities for handling the evidence in this case, the Special Counsel's Office seems to disclaim responsibility for the status of classified discovery. (*See* Opp'n at 6). The Office points to no instance in which we have delayed a required read-in that was made available to us—because that has not happened. The Office is responsible for complying with its discovery obligations, including navigating restrictions and concerns from the "owners" and equity holders of the relevant materials that the Office so proudly identified in the Superseding Indictment. (*See* Opp'n at 6 n.4). It is not at all irregular for these types of issues to arise in a case of this nature; what is irregular is the schedule pressed by the Office notwithstanding its failure to make appropriate arrangements on the timeline it demanded.

D. **The Court Should Require Disclosures Regarding Any PSRs**

In response to President Trump's concerns that the current schedule is unworkable because of the need for further discovery and CIPA litigation arising from supplemental Prudential Search Requests, or PSRs, it would have been very simple for the Special Counsel's Office to explain—if true—that it has completed PSRs and incorporated the findings into the Office's plans for classified discovery and CIPA practice. The Office suggests as much, but fails to confirm, by distinguishing *Teixeira* on the basis that those prosecutors "had no time to assess or prepare discovery in the investigative phase." (Opp'n at 9). Instead, with notable vagueness, the Office conceded that PSRs are "sometimes conducted in national security cases" and acknowledged that prosecutors "typically" do this "before charges are filed." (Opp'n at 12). The Office failed to explain whether and to what extent it conducted PSRs in this case. (*Id.* at 13). These are material omissions that must be addressed before the Court resolves this motion.

First, President Trump has identified provisions of the Justice Manual that require PSRs and examples of cases in which prosecutors conducted PSRs. *See, e.g.*, *United States v. Saab*

*Moran*, 2022 WL 4291417, at *3 (S.D. Fla. 2022); *United States v. Doe No. 2*, 2009 WL 10720338, at *3 (S.D. Fla. 2009). If the Special Counsel's Office has declined to collect and review USIC holdings in connection with this case, it should be required to make that clear on the record. In light of the frequency with which PSRs are conducted in cases around the country, the failure to conduct them here would itself be a discoverable fact because, *inter alia*, it would implicate President Trump's due process rights and serve as evidence of the type of prosecutorial intent that is relevant to President Trump's anticipated selective prosecution motion.

Second, the Special Counsel's Office is wrong that PSRs are "not legally required" under the circumstances of this case. (Opp'n at 13). Because some of the documents at issue address topics that are covered in open-source materials, it is extremely likely that at least some USIC holdings undercut the Office's contention that documents dating back to 2017 (and earlier) contain information that was closely held at the time of the alleged unlawful retention in 2021 and 2022.[5] As a result, the Office is on notice of potentially exculpatory information held by the same "owners" it acknowledges communicating with regarding the case (*see* Opp'n at 6 n.4), and it has a constitutional obligation under *Brady* to collect and produce those materials. *See United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980) ("If disclosure were excused in instances where the prosecution has not sought out information readily available to it, we would be inviting and placing a premium on conduct unworthy of representatives of the United States Government. This we decline to do.").

Accordingly, the Court should require the Office to disclose the nature of the PSRs that it has conducted thus far before deciding whether the requested adjournments are necessary.

---

[5] The Special Counsel's Office concedes that it must demonstrate that alleged "national defense information" was "closely held by the Government." (Opp'n at 3).

### III. President Trump's Proposed Litigation Sequence Is The Most Efficient Course

There is no merit to the objections by the Special Counsel's Office to President Trump's request to proceed with motion-to-compel litigation followed by a single round of CIPA § 4 litigation.

Most importantly, the Special Counsel's Office misapprehends the import of *United States v. Stillwell*. (Opp'n at 11). In *Stillwell*, a DOJ component convinced a district court that materials relating to its CIPA § 4 motion were too sensitive to be disclosed to the defense (or the prosecutors). The Second Circuit rejected that contention and ordered the prosecutors to produce "any material" that was discoverable notwithstanding its classification. 986 F.3d 196, 199 (2d Cir. 2021); *see also United States v. Hunter*, 32 F.4th 22, 25 (2d Cir. 2022) ("We vacated the District Court's protective order and ordered those documents disclosed to both parties."). The salient point is that prosecutors often contend that materials subject to a CIPA § 4 motion are too sensitive to be disclosed to the defense, and *Stillwell* is an example of an appellate court rejecting that position without the resulting parade of horribles that the Office is suggesting would follow from disclosure of its CIPA § 4 motion to President Trump's defense team.

Speaking for the entire "Government," the Special Counsel's Office asserts that it is not aware of any case in which a Court has permitted a responsive briefing schedule under CIPA § 4. (Opp'n at 11). The contention is surprising, as DOJ's National Security Division has overseen at least several cases where judges have proceeded in precisely that fashion. (*See* Dkt. Nos. 84-85, *United States v. Alcala-Cordones*, No. 11 Cr. 205 (S.D.N.Y. Feb. 2022); Dkt. No. 193, *United States v. Saipov*, No. 17 Cr. 722 (S.D.N.Y. July 22, 2019); Dkt. No. 26, *United States v. Alimehmeti*, No. 16 Cr. 398 (S.D.N.Y. Dec. 13, 2016)).

The Special Counsel's Office also mischaracterizes *United States v. Campa* as "binding" precedent requiring that the Office be permitted to file its CIPA § 4 motion *ex parte*. (Opp'n at 10). *Campa* stands for the undisputed proposition that the Court has discretion to accept *ex parte* filings in connection with this type of motion. No authority, however, requires that course. President Trump will argue at the appropriate time that, under the unique circumstances of this case, *ex parte* proceedings are not necessary and the appropriate course is attorneys'-eyes-only handling of the classified information at issue to facilitate appropriate adversarial proceedings relating to the application of the "relevant or helpful" standard.

The Special Counsel's Office makes a concerted effort to narrow the permissible substance of any defense submission relating to CIPA § 4, referring to it four times as an "outline." (*See* Opp'n at 3, 4, 10). President Trump does not envision a brief or conclusory submission, and the Court should expect much more in a case involving more than a million pages of discovery where the Office will ask the Court to condone the withholding of otherwise-discoverable information. The Office also argues that, if the Court does not grant the CIPA § 4 motion under the Office's preferred conditions, it "cannot produce the documents *at all*." (Opp'n at 8 (emphasis in original)). That is an empty threat. If the Office cannot use CIPA in a permissible fashion to comply with its discovery obligations, the appropriate remedy will be dismissal.

Finally, the Special Counsel's Office describes two cases that involved multiple CIPA § 4 motions within "four months," and acknowledges that "supplemental" filings under CIPA §§ 4 and 5 may be necessary here. (Opp'n at 4, 7 n.5, 10, 12 n.7). The Office also contends that other cases are distinguishable because they involved "belated revelations of the existence of potentially relevant classified information." (*Id.* at 9). These assertions do not support the Office's position. Rather, the citations underscore that the Office prefers to push ahead with multiple, inefficient

rounds of CIPA practice. That approach is entirely unwarranted where the Office has not made available adequate facilities for the motions it plans to file and related hearings, or disclosed to President Trump all of the materials to which he is entitled, in a case that is destined for additional untimely disclosures in light of the fact that the Office did not even include the classification reviews in its initial classified productions. *United States v. Sedaghaty*, 728 F.3d 885, 906 (9th Cir. 2013) ("[T]he government appears to have looked with tunnel vision at limited issues that it believed were relevant."). There is no good reason to continue on the current path. Therefore, President Trump respectfully submits that the adjournment requests should be granted.

Dated: October 4, 2023

Respectfully submitted,

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*/s/ Todd Blanche*
Todd Blanche
Admitted Pro Hac Vice
toddblanche@blanchelaw.com
Blanche Law
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on October 4, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise