UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.

_____/

**GOVERNMENT'S MOTION FOR WRITTEN JURY QUESTIONNAIRE**

    The Government moves for a written jury questionnaire to be completed by potential jurors in advance of in-person jury selection. Because the pre-trial publicity surrounding this case is substantial, the Government recommends a thorough jury selection process, including a written questionnaire completed by potential jurors before in-person voir dire. A questionnaire—which is "now a common complement to oral examination when selecting an effective and impartial jury," *United States v. Isaacson*, 752 F.3d 1291, 1301 (11th Cir. 2014)—will make jury selection more efficient and effective by allowing the parties and Court to identify uncontested strikes for cause and hardship before in-person voir dire begins, and to conduct informed individual questioning of a winnowed venire. *See United States v. Lehder-Rivas*, 955 F.2d 1510, 1523 (11th Cir. 1992) ("In cases involving extensive publicity, this Circuit has expressed a preference for an individual voir dire conducted by the trial court outside the presence of prospective jurors."). This approach will facilitate the type of "thorough jury-selection process" commended by the Supreme

1

Court in cases of this profile. *See, e.g.*, *United States v. Tsarnaev*, 595 U.S. 302, 312 (2022); *Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991).

The Government is mindful of the Court's prior order that, apart from the dates set forth therein and the dates previously set for calendar call and trial, any further deadlines will be set after a scheduling conference on March 1, 2024. ECF Nos. 215 at 8, 221. However, given the lead time that the Clerk's Office will need to implement a jury questionnaire, beginning the process after March 1 will likely not provide the Court with sufficient time prior to trial. As described below, previous cases in this District in which questionnaires were used suggest that the Clerk's Office requires approximately ten weeks' time for the questionnaire process, which includes mailing questionnaires to potential jurors to be returned to the Clerk's Office in post-marked envelopes. In this case, that means that a final questionnaire would need to be approved before on or about March 11 for a May 20 trial.

As an alternative, the Court could have jurors summoned to the courthouse in advance of the trial date to complete questionnaires—a practice sometimes used in other districts. But that too would require some additional notice to the Clerk's Office, as summonses would have to be issued earlier than they would be for jurors to appear for the first time on May 20.

For these reasons, and those elaborated below, the Government moves the Court to set a deadline of February 2 for the parties to submit a joint proposed jury questionnaire. The Government has conferred with defense counsel about this motion. They oppose the motion because they believe the relief sought is premature and would not be an economical use of the parties' time before the Court has ruled on discovery demands or other motions. The Government disagrees for the reasons discussed herein.

I.  **Using a Juror Questionnaire Protects a Defendant's Sixth Amendment Rights and Facilitates a Fair and Efficient Jury Selection Process When There Is Pre-trial Publicity**

"A trial court protects the defendant's Sixth Amendment right by ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'" *Tsarnaev*, 595 U.S. at 312 (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). "[A]s in any case, the district court's duty is to conduct a thorough jury-selection process that allows the judge to evaluate whether each prospective juror is 'to be believed when he says he has not formed an opinion about the case.'" *Id.* at 313 (quoting *Mu'Min*, 500 U.S. at 425).

A written questionnaire, used as part of a comprehensive voir dire process, is a potent tool to sift out potential jury bias in cases where there has been substantial media attention. "We consider the . . . questionnaire in assessing the quality of voir dire as a whole." *Skilling v. United States*, 561 U.S. 358, 388 (2010) (quoting *United States v. Skilling*, 554 F.3d 529, 562 n.51 (5th Cir. 2009)). "Written questionnaires are now a common complement to oral examination when selecting an effective and impartial jury," *Isaacson*, 752 F.3d at 1301, and are "routinely employ[ed] . . . to facilitate voir dire in a number of circumstances," *id.* (quoting *United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007)), including "where there has been extensive pre-trial publicity." *Quinones*, 511 F.3d at 299.

The district courts' decisions to use prospective juror questionnaires in *Tsarnaev* and *Skilling* are instructive, because the Supreme Court viewed their use favorably in affirming the voir dire process in those highly-publicized cases. *See Tsarnaev*, 595 U.S. at 314 (noting the reasonableness of the district court's approach to voir dire and concluding that "[i]f any doubt remained, the rest of the jury-selection process [which included a thorough jury questionnaire and individualized in-person voir dire] dispels it"); *Skilling*, 561 U.S. at 384 ("Although the widespread

3

community impact necessitated careful identification and inspection of prospective jurors' connections to Enron, the extensive screening questionnaire and follow up voir dire were well suited to that task.").

In *Tsarnaev*, where the defendant was charged with the Boston Marathon bombings, "[i]n preparation for jury selection, the parties jointly proposed a 100-question form to screen the prospective jurors." *Tsarnaev*, 595 U.S. at 308. "The District Court summoned an expanded jury pool of 1,373 prospective jurors and used the 100-question juror form to cull that down to 256. The questionnaire asked prospective jurors what media sources they followed, how much they consumed, whether they had ever commented on the bombings in letters, calls, or online posts, and, most pointedly, whether any of that information had caused the prospective juror to form an opinion about Dzhokhar [Tsarnaev]'s guilt or punishment." *Id.* at 314.

In *Skilling*, in which a former Enron executive was charged with fraud, the district court used a 77-question, 14-page questionnaire. The questionnaire "asked prospective jurors about, *inter alia*, their sources of news and exposure to Enron-related publicity, beliefs concerning Enron and what caused its collapse, opinions regarding the defendants and their possible guilt or innocence, and relationships to the company and to anyone affected by its demise." 561 U.S. at 371. The court then mailed the questionnaire to 400 prospective jurors and received responses from nearly all of them. *Id.* at 372. It granted hardship exemptions to about 90 individuals, and with the court's approval, the parties further winnowed the pool by excusing another 119 for cause, hardship, or physical disability. *Id*.

Courts in this District have similarly used written questionnaires, filled out by jurors in advance of trial, in cases that have generated substantial pre-trial publicity. *See United States v. Guruceaga, et al.*, No. 18-cr-20685-Williams [ECF No. 118] (S.D. Fla. June 18, 2019) ($1 billion

money laundering and embezzlement scheme involving the Venezuelan national oil company); *United States v. Melgen*, No. 15-cr-80049-Marra [ECF No. 187] (S.D. Fla. Dec. 7, 2016) ($73 million Medicare fraud case); *United States v. Robaina*, No. 13-cr-20346-Ungaro [ECF No. 94] (S.D. Fla. March 12, 2014) (former mayor of the City of Hialeah charged with tax fraud); *United States v. Pizzi*, No. 13-cr-20815-Cooke [ECF No. 109] (S.D. Fla. Feb. 26, 2014) (Miami Lakes mayor charged in kickback and bribery scheme); *United States v. Mentor*, No. 11-cr-20351-Graham [ECF No. 123] (S.D. Fla. Apr. 18, 2012) (murder and robbery of U.S. Postal worker); *United States v. Khan, et al.*, No. 11-cr-20331-Scola [ECF Nos. 291 & 293] (S.D. Fla. Apr. 2, 2012) (terrorism financing case); *United States v. Hassoun*, No. 04-60001-CR-Cooke, 2007 WL 4180847, at *3 (S.D. Fla. Nov. 20, 2007) (terrorism case); *United States v. Aguero*, 248 F. Supp. 2d 1150, 1151, (S.D. Fla. 2003) (Miami police officers charged in public corruption scheme).

Given the media coverage this case has received, a written questionnaire that probes exposure and potential bias is a necessary step in the jury selection process. It will make the jury selection process more efficient and aid the Court and the parties in identifying potential bias in the jury venire.

**II.     Jury Questionnaires Must Be Finalized Well in Advance of Trial to Ensure Sufficient Time for the Process**

The Government proposes that the parties confer on potential questions and submit to the Court a joint questionnaire identifying areas of disagreement sufficiently in advance of the date on which it must be finalized, so that the Court can approve a final version, including holding a hearing if necessary. Potential jurors should then complete questionnaires sufficiently in advance of in-person voir dire so that the parties and Court can winnow the venire, as occurred in the cases cited above, and prepare to conduct thorough and informed in-person questioning.

Based on the Government's experience and research, in cases in this District in which written questionnaires have been used, the Court has implemented them by mailing the questionnaires to potential jurors and having them returned to the Clerk in post-marked envelopes. To ensure that there is sufficient time for that to occur, including receiving responses approximately one month before in-person voir dire, judges in this District have stated that questionnaires must be mailed to prospective jurors at least ten weeks before trial. *See Mentor*, No. 11-cr-20351-Graham [ECF No. 123] (April 18, 2012) ("Special Jury Questionnaires need to be sent out at least 10 weeks prior to Trial").

In *Melgen*, a $73 million Medicare fraud case that had substantial pre-trial publicity, the district judge determined that five weeks before trial was too late to deploy a questionnaire:

> I've checked and it seems as if both sides are in agreement with using the questionnaire. There may be some issues about what can be done with the information, but nobody seems to object to it. We've checked with the jury office in terms of how to go about doing this and it is just not feasible to do at this late date. It's too close to the trial date to get anything of this nature circulated to prospective jurors. So, it is just too late.
>
> In order to do something of this nature, they would have to create a separate jury questionnaire, and with the number of jurors we might need to seat a jury in this case, we are told that they would have to send it to about a thousand people, hoping they would get a hundred responses or so, and that has to be done in about two months or more, ten weeks before the scheduled trial date.

*Melgen*, No. 15-cr-80049-Marra [ECF No. 160], Transcript of Aug. 11, 2016 Hearing, pp. 3-4 (S.D. Fla. Aug. 17, 2016). Only because trial was subsequently continued on separate grounds was the district court able to use a questionnaire. *See id.* [ECF No. 187] (Dec. 7, 2016).

If the same procedure were used in this case, to ensure that questionnaires are ready to be mailed to potential jurors ten weeks from the May 20, 2024, trial date, they would need to be finalized by on or about March 11. Accomplishing that requires enough time beforehand to allow

6

for meaningful conferral among the parties and for the Court to consider and resolve disputes. Time may also be required to print questionnaires and conduct other processing.

For these reasons, judges in this District have ordered parties in criminal cases to submit a proposed jury questionnaire three and a half to four months before the start of trial. *See, e.g.*, *Mentor*, No. 11-cr-20351-Graham [ECF No. 123] (April 18, 2012) (ordering parties to submit joint proposed questionnaire three and a half months before trial date); *United States v. Guruceaga, et al.*, No. 18-cr-20685-Williams [ECF No. 118] (S.D. Fla. June 18, 2019) (same, four months before trial date).

Alternatively, the Court could summon the venire to appear in person at the courthouse to fill out written jury questionnaires there, rather than mailing them and having jurors return them. Other jurisdictions endorse this practice. For example, jurors completed questionnaires in person at the courthouse in advance of trial in *United States v. Bowers*, No. 18-292-RJC (W.D. Pa.), *see* https://triblive.com/local/prospective-jurors-in-tree-of-life-case-being-summoned-to-federal-court-to-fill-out-questionnaires/, and in *United States v. Menendez*, No. 2:15-cr-155-WHW (D.N.J.), *see* ECF Nos. 182, 183. This process would have the advantage of ensuring that jurors personally complete the questionnaires and would provide the Court with more up-to-date information about the potential jurors' exposure to media coverage in the run-up to trial. If the Court wished to obtain completed questionnaires before the start of in-person voir dire on May 20, 2024, additional lead time would be necessary to issue a summons for an appropriate date.

Regardless of which procedure the Court selects, the Government respectfully requests that the process begin promptly. This request is not premature, and is intended to avoid an occurrence like the one the court initially experienced in *Melgen*, Transcript of Aug. 11, 2016 Hearing, pp. 3-4, where options were unavailable because there was insufficient time to implement them.

7

Accordingly, the Government requests that the Court order the parties to draft and file a joint proposed questionnaire with indications as to which questions the parties agree on and which they do not, by February 2, 2024—three and a half months before trial. This will allow sufficient time for the parties and Court to finalize the questionnaire and implement either of the procedures set forth above.

**III.     Conclusion**

For these reasons, the Government moves the Court to set a February 2, 2024, deadline for the parties to jointly submit a proposed jury questionnaire identifying areas of disagreement.[1]

                                                            Respectfully submitted,

                                                            JACK SMITH
                                                            Special Counsel
                                                            N.Y. Bar No. 2678084

By:   /s/ *Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946
        950 Pennsylvania Avenue, NW
        Washington, D.C. 20530

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

        Michael E. Thakur
        Assistant Special Counsel
        Florida Bar No. 1011456

December 19, 2023

---

[1] The Government intends to recommend other procedures to protect the identities, privacy, and security of prospective and selected jurors, but those procedures can be addressed in briefing and argument scheduled with other pretrial deadlines, after the March 1, 2024 status conference.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt