# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-cr-80101-AMC

## MOTION OF THE PRESS COALITION TO INTERVENE AND
## UNSEAL DEFENDANTS' MOTIONS TO COMPEL DISCOVERY

Pursuant to Local Rules 7.1 and 77.1, a coalition of local and national news media organizations (the "Press Coalition")[1] that continue to cover the proceedings in this prosecution respectfully moves to intervene for the limited purpose of seeking to unseal Defendants' Motions to Compel Discovery (ECF No. 262), and the exhibits thereto (ECF No. 262-1).[2]  Defendants

---

[1] The coalition includes: Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting Inc. o/b/o CBS News, CMG Media Corporation, Cox Enterprises, Inc. d/b/a The Atlanta Journal-Constitution, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fort Myers Broadcasting Company, Fox News Network, LLC, The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Guardian News & Media Limited, Insider Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, the McClatchy Company, LLC d/b/a the Miami Herald, National Cable Satellite Corporation d/b/a C-SPAN, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Orlando Sentinel Media Group, publisher of the Orlando Sentinel, POLITICO LLC, Radio Television Digital News Association, Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel, TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias Telemundo, Univision Networks & Studios, Inc., WP Company LLC d/b/a The Washington Post, and WPLG, Inc.

[2] In the alternative, the Press Coalition respectfully moves for leave to submit this filing as a brief of amici curiae in support of neither party and in favor of unsealing.  *See, e.g., Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1501 (S.D. Fla. 1991) (denying motion to intervene while granting motion for leave to appear as amicus curiae).

filed those records with extensive redactions on January 16, 2024, asserting that they were required to do so under the operative Protective Order (ECF No. 27) but simultaneously arguing that "[n]o compelling interest in sealing the [records] exists here." *See* Mot. for Temporary Leave to File Redacted Br. at 2 (ECF No. 261). Defendants accordingly sought "approval to file the motions to compel in [substantially] unredacted form," *id.* at 3, noting that "proceedings are public and court filings are 'matters of public record,'" *id.* at 1. The Government opposes unsealing in part, *see* Gov't's Resp. (ECF No. 267), though this Court has already reminded the Government that it must "offer a *particularized* basis to justify sealing [records] from public view," must "explain why . . . means *other* than sealing are unavailable or unsatisfactory," and must "specify the *duration* of any proposed seal." June 26, 2023 Order (ECF No. 41) (emphasis added) (citing S.D. Fla. L.R. 5.4(a), (c)(1)).

Because the Press Coalition agrees that these records are presumptively public and that the Government must carry a heavy burden to justify sealing them in whole or in part, it now moves to intervene in support of unsealing.[3]

## BACKGROUND

On June 8, 2023, a federal Grand Jury indicted former President Donald J. Trump on 37 counts of criminal conduct arising from the relocation of "hundreds of classified documents" from the White House to his South Florida resort and club, known as Mar-a-Lago. *See* ECF No. 3 ¶¶ 1-4. Trump currently faces charges under the Espionage Act for alleged willful retention of national defense information, concealing documents, making false statements, and conspiracy to obstruct justice. *See generally id.* Trump's personal aide Walt Nauta and Mar-a-Lago property manager Carlos de Oliveira were subsequently charged here as well. *See generally* ECF No. 85.

---

[3] For the avoidance of doubt, the Press Coalition does not presently seek to unseal the "Classified Supplement" that Defendants assert they filed with their Motions to Compel (ECF No. 262 at 4).

On January 16, 2024, Defendants moved "for an order regarding the scope of the prosecution team and to compel the Special Counsel's Office to produce certain discoverable materials." ECF No. 262 at 1. Defendants assert that the Special Counsel's Office ("SCO") has engaged in "discovery violations" and aims "to avert its eyes from exculpatory, discoverable evidence in the hands of" other Government officials and agencies. *Id.* at 2-3. In that regard, Defendants seek discovery into the following topics:

(1) Alleged "coordination" between the SCO and the National Archives and Records Administration ("NARA"), *see id.* at 34-38;

(2) The Department of Energy's alleged attempt "to retroactively terminate President Trump's security clearance," *see id.* at 38-42;

(3) The SCO's "contentions . . . that Mar-a-Lago was not secure and that there was a risk that materials stored at those premises could be compromised," *see id.* at 42-43;

(4) Alleged "coordination" between the SCO and the Biden Administration, *see id.* at 43-47;

(5) Alleged "coordination" between the Biden Administration and the Georgia prosecutors who have filed criminal charges against Trump in that state's courts, *see id.* at 47-48;

(6) Trump's allegation "that the Intelligence Community has operated with a bias against him" since "at least" 2019, *see id.* at 48-50;

(7) Trump's allegation that NARA showed "bias" against him and engaged in "improper coordination" with federal prosecutors, *see id.* at 50-51;

(8) Trump's allegation "members of the prosecution team" have shown "bias and/or political animus" toward him, *see id.* at 51-52;

(9) Records relating to attorney Stanley Woodward, *see id.* at 53-55;

(10) Records relating to the execution of the search warrant at Mar-a-Lago, *see id.* at 55-56; and

(11) Surveillance footage recorded at Mar-a-Lago, *see id.* at 56-63.

Defendants filed those motions to compel and the accompanying exhibits with extensive redactions, and simultaneously moved for "temporary leave" to do so on the grounds that the Protective Order in this case compels them to file the papers in redacted form. *See* ECF No. 261 at 1. Defendants effectively sought such leave under protest, however, as they asserted that "[n]o compelling interest in sealing the motions exists here," and that in the absence of the Protective Order, "there would be no legal basis for redacting the motions, other than as provided for by the Federal Rules of Criminal Procedure, Local Rules, and CM/ECF Administrative Procedures." *Id.* at 2. Defendants therefore requested "the Court's approval to file the motions to compel in unredacted form, except for email addresses and personal identifiers or other information requiring redaction" under those same three authorities. *Id.* at 3.

On January 18, 2024, the Government responded that it "objects to the unsealing of any information in the motions brief or its exhibits that (a) reveals the identity of any potential Government witness; (b) reveals personal identifying information for any potential Government witness; or (c) constitutes Jencks Act material for any potential Government witness." ECF No. 267 at 2 (citation omitted). The Government also provided the Court with proposed redactions for the motions and proposed redactions and withholdings for the exhibits. *Id.* at 3.

The Press Coalition now moves to intervene for the limited purpose of asserting the public's right of access to these motions and exhibits and requesting that the Court conduct an "independent review" of the Government's proposed redactions and withholdings to ensure "that the Government has met its burden of showing that its proposed redactions are narrowly tailored to serve the Government's legitimate interest in the integrity of the ongoing [case] and are the least onerous alternative to sealing the entire [records]." *In re Sealed Search Warrant*, 2022 WL 3656888, at *1 (S.D. Fla. Aug. 25, 2022).

# ARGUMENT

## I. The Court Should Permit The Press Coalition To Intervene.

"The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019). Movants have been reporting on this investigation for more than a year since many of them successfully moved to intervene to unseal the Mar-a-Lago search warrant materials. *See In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1259 (S.D. Fla. 2022). Here, too, the press has standing to intervene to seek access to unredacted or less redacted copies of the Motions to Compel and exhibits thereto.

## II. The Court Should Carefully Review The Government's Proposed Redactions To The Motions To Compel And Accompanying Exhibits.

### A. There is a long-standing and powerful presumption of public access to judicial proceedings and records in criminal cases.

As this Court has already noted, there is a "strong presumption in favor of public access to judicial documents." *See* Dec. 4, 2023 Order (ECF No. 231). In line with that presumption, several important principles governing the sealing of judicial records or proceedings in criminal cases generally disfavor the redaction of Defendants' Motions to Compel and exhibits here.

**First**, as the U.S. Supreme Court has explained:

> [T]he historical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open. This is no quirk of history; rather, it has long been recognized as an ***indispensable attribute*** of an Anglo-American trial.

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (plurality opinion) (emphasis added). This collective commitment to transparency is rooted in the recognition that "the means used to achieve justice must have the support derived from public acceptance of both the process and its results." *Id.* at 570. In other words, "[p]eople in an open society do not demand

5

infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* at 572.  In contrast, "[w]hen a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case[.]" *Id.*  This historic expectation, and right, of public access to criminal trials is not merely a matter of tradition; it is also "implicit in the guarantees of the First Amendment." *Id.* at 580.  That is because without the freedom to attend criminal trials, "which people have exercised for centuries, important aspects of freedom of speech and of the press could be eviscerated." *Id.*

**Second**, the right to attend criminal trials has been extended with equal force to a right of access to criminal pretrial proceedings and court records throughout every phrase of proceedings.[4]  As particularly relevant here, that recognition of the strong presumption of access has been extended to motions for pretrial discovery.  *See, e.g.*, *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001) (recognizing a constitutional right of access, though not a common law right of access, to "presumptively confidential discovery materials" filed with a motion seeking relief from the court); *see also United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir. 2003) (granting press motion to intervene for the limited purpose of seeking access to unclassified portions of sealed records related to defendant's motion for pretrial discovery, stating that the court "will carefully compare the redacted version

---

[4] *See, e.g.*, *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1260 (**search warrant**); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991) (same); *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993) (right of access to **preliminary hearings**); *Press-Enter. Co. v. Superior Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 10, 13 (1986) (right of access to **preliminary hearings**); *Press-Enter. Co. v. Superior Ct.* ("*Press-Enterprise I*"), 464 U.S. 501, 505-10 (1984) (right of access to **voir dire**); *United States v. Ochoa-Vasquez,* 428 F.3d 1015, 1030 (11th Cir. 2005) (**sentencing records and proceedings**); *Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (**court records and transcripts**).

of each brief to the unredacted version to ensure that the redactions of unclassified material are no greater than necessary," and observing that the "value of providing to the community at large a sense that justice has been done is particularly relevant" where, as here, "the proceedings have been the subject of intense public interest throughout the country" and "no small amount of interest in the trial stems from concern about whether the government is affording sufficient protection to [defendant's] constitutional rights"); *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (pretrial motions, including those "to compel discovery," are "part of the proceedings to which the traditional First Amendment right of access applies").

**Third**, the Eleventh Circuit "has been resolute" in enforcing the "presumption of public access" to judicial records because "access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1358-59 (11th Cir. 2021).

**Fourth**, the interests in access are at their apex where, like here, public officials are involved and the charged crimes relate to their official duties. As the Supreme Court recognized in *Globe Newspaper Co. v. Superior Court*, underlying the right of access to court records is "the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.'" 457 U.S. 596, 604 (1982) (noting that the right of access ensures that the "constitutionally protected 'discussion of governmental affairs' is an informed one"); *see also United States v. Dimora*, 862 F. Supp. 2d 697, 706 (N.D. Ohio 2012) (permitting release of exhibits in criminal action in part because where "the case centers on the conduct of a public official, the importance of public scrutiny is heightened."); *United States v. Preate*, 927 F. Supp. 163, 168-69 (M.D. Pa. 1996) ("where a defendant was a public official when he or she committed a crime, courts have found that the public's interest in full disclosure . . . may be

sufficient to overcome the need for confidentiality and warrant press access"); *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (unsealing sentencing memorandum of former senator who pleaded guilty to embezzlement of state funds); *United States v. Martin*, 746 F.2d 964, 968 (3rd Cir. 1984) (releasing copies trial transcripts of trial involving "some of the highest-ranking" police officers in the city facing obstruction of justice charges); *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 232 (5th Cir. 2020) (recording of post-settlement conference was wrongly sealed where at least one party was a public official, because the public's interest in monitoring the expenditure of taxpayer money outweighed any privacy interest).

> **B.   The Court should carefully assess the Government's proposed redactions and withholdings in light of the strong presumption of public access.**

The need for public oversight and monitoring of this case is beyond question. Trump stands accused of mishandling some of the Nation's most closely guarded secrets, implicating not only the safety and security of U.S. citizens but the United States' relations with the international community. Whatever the ultimate outcome of this trial, the public must have confidence in the process, and that confidence can only be fostered through transparency from the start to finish of this prosecution.

While "[p]eople in an open society do not demand infallibility from their institutions, [] it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572. For this reason, and as the Eleventh Circuit has explained, a party seeking to prohibit disclosure of judicial records must show there is "compelling governmental interest" in nondisclosure and that the proposed restrictions against the right of access are "narrowly tailored." *See Chicago Trib.*, 263 F.3d at 1310-11. That party must make that showing with arguments "supported by the record." *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983).

Moreover, the Eleventh Circuit has instructed that, "[w]hen sealing proceedings or documents, a court must articulate the overriding interest along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Ochoa-Vasquez,* 428 F.3d at 1030; *see also Chicago Trib. Co.*, 263 F.3d at 1314-15 (reversing district court's sealing order because it failed to make specific factual findings warranting nondisclosure of judicial records).

Meanwhile, the Local Rules of this Court reinforce these stringent requirements, imposed on both the proponents of sealing and the Court itself. For one, the Local Rules recognize that "proceedings in the United States District Court are public and Court filings are matters of public record." Local Rule 5.4(a). Further, they provide that "[a] party seeking to make a filing under seal in a criminal case shall . . . file a motion to seal that sets forth the factual and legal basis for departing from the policy that Court filings be public and that describes the proposed sealed filing with as much particularity as possible without revealing the confidential information." Local Rule 5.4(c). The rules envision that the sealing must be limited not only in scope, but also *duration*. *Id.* ("The motion shall specify the proposed duration of the requested sealing."); *see also* June 26, 2023 Order (ECF No. 41) (noting the same requirement as to limited duration).

Given the vital importance of public access to these proceedings and the clear weight of authority requiring stringent proof to overcome the presumptions of transparency, the Court should conduct an independent review of the Government's proposed redactions and withholdings to ensure that (1) any proposed redactions are as narrow as possible, and (2) the Government has sufficiently explained why each redaction is necessary "to mitigate harms to the integrity of the [prosecution]," such that only those redactions this Court determines meet a compelling need will be permitted. *See, e.g.*, *Chicago Trib.*, 263 F.3d at 1314-15; *United States v. Vives*, 2006 U.S. Dist. LEXIS 92973, at *5 (S.D. Fla. Dec. 21, 2006).

## CONCLUSION

The Press Coalition requests the Court grant its request to intervene in these proceedings for the limited purpose of arguing for openness and opposing attempts to deny public access to records or proceedings throughout this case and to oppose any unwarranted sealing of these particular records, and further requests that the Court promptly provide access to all portions of the Motions to Compel and exhibits as to which the Government has no objection to unsealing.

## CERTIFICATION OF GOOD-FAITH CONFERENCE

Pursuant to Local Rules 7.1(b)(3) and 88.9(a), undersigned counsel certifies that on January 19, 2024, they made reasonable efforts to confer via email with counsel for the Government and counsel for Defendants regarding the relief requested in this motion. Counsel for the Government stated that the Government opposes this motion. Counsel for Defendants Trump, Nauta, and De Oliveira did not respond.

Dated: January 22, 2024

Respectfully submitted,

| THOMAS AND LOCICERO PL | BALLARD SPAHR LLP |
|---|---|
| By: */s/ Carol Jean LoCicero* <br> Carol Jean LoCicero (FBN 603030) <br> 601 South Boulevard <br> Tampa, FL 33606 <br> Telephone: 813.984.3060 <br> clocicero@tlolawfirm.com <br><br> Dana J. McElroy (FBN 845906) <br> Karen Williams Kammer (FBN 771200) <br> Daniela B. Abratt (FBN 118053) <br> 915 Middle River Drive, Suite 309 <br> Fort Lauderdale, FL 33304 <br> Telephone: 954.703.3418 <br> dmcelroy@tlolawfirm.com <br> kkammer@tlolawfirm.com <br> dabratt@tlolawfirm.com <br><br> *Attorneys for CBS Broadcasting Inc., Fort Myers Broadcasting Company, the McClatchy* | By: */s/ Charles D. Tobin* <br> Charles D. Tobin (FBN 816345) <br> 1909 K Street NW, 12th Floor <br> Washington, DC 20006 <br> Telephone: 202.661.2218 <br> tobinc@ballardspahr.com <br><br> *Attorneys for Advance Publications, Inc., the Associated Press, Bloomberg L.P., Cable News Network, Inc., the E.W. Scripps Company, Fox News Network, LLC, Gray Media Group, Inc., Insider Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Cable Satellite Corporation d/b/a C-SPAN, National Public Radio, Inc., NBCUniversal Media, LLC, Radio Television Digital News Association, TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias* |

*Company, LLC d/b/a the Miami Herald, The New York Times Company, Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel, and Times Publishing Company*

SHULLMAN FUGATE PLLC

By: */s/ Rachel E. Fugate*
    Rachel E. Fugate (FBN 144029)
    Deanna K. Shullman (FBN 514462)
    Minch Minchin (FBN 1015950)
    2101 Vista Parkway, Suite 4006
    West Palm Beach, FL 33411
    Telephone: 813.935.5098
    rfugate@shullmanfugate.com
    dshullman@shullmanfugate.com
    mminchin@shulmanfugate.com

*Attorneys for American Broadcasting Companies, Inc., CMG Media Corporation, Dow Jones & Company, Inc., Guardian News & Media Limited, Orlando Sentinel Media Group, publisher of the Orlando Sentinel, and Tribune Publishing Company*

*Telemundo, WP Company LLC d/b/a The Washington Post, and Univision Network & Studios, Inc.*

ATHERTON GALARDI MULLEN & REEDER PLLC

By: */s/ L. Martin Reeder, Jr.*
    L. Martin Reeder, Jr. (FBN 308684)
    1641 Worthington Road, Suite 11
    West Palm Beach, FL 33409
    Telephone: 561.293.2530
    martin@athertonlg.com

*Attorneys for The Palm Beach Post and USA TODAY, publications operated by subsidiaries of Gannett Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January 2024, I caused true and correct copies of the foregoing to be served via ECF on all parties and counsel of record in this matter.

/s/ *Charles D. Tobin*
Charles D. Tobin