UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.
_____/

## GOVERNMENT'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

The Government respectfully submits this surreply to address arguments and evidence first presented in the reply brief (ECF No. 300) defendants filed in support of their motion to compel discovery (ECF No. 262). As set forth below and in the Government's forthcoming opposition to defendant Donald J. Trump's motion to dismiss the indictment based on selective and vindictive prosecution, the defendants' request for discovery should be denied.

### BACKGROUND

On January 16, 2024, the defendants filed (ECF No. 262) a motion to compel discovery under Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), seeking an array of materials that, they speculated, could help substantiate their baseless theories of political animus and bias. In response, the Government explained (ECF No. 277 at 21-23, 31-38) that a request for this sort of discovery falls outside the scope of Rule 16 and *Brady* and is instead governed by the rigorous requirements set forth in *United States v. Armstrong*, 517 U.S. 456, 468 (1996), and cases applying *Armstrong*,

including *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000). The defendants did not cite *Armstrong* or *Smith* in their motion to compel, let alone attempt to satisfy the requisite standard.

In their reply (ECF No. 300), the defendants, for the first time, cited *Armstrong* and attempted to make the showing required by *Armstrong/Smith*. The Government objected on procedural grounds, arguing that it was improper for the defendants to use a reply brief to raise these new arguments and evidence, and asked the Court either to defer consideration of whether the defendants could make the *Armstrong/Smith* showing until pretrial motions were filed (since the defendants had already indicated that they intended to file a motion for dismissal based on selective and vindictive prosecution at that time), or, alternatively, to grant the Government leave to file a surreply. ECF No. 305. The Court granted the motion in part and authorized the Government to file a surreply on or before February 26, 2024. ECF No. 319.

Since the Government asked to file a surreply, Trump, as forecasted, has filed a motion seeking dismissal or discovery on the basis of selective and vindictive prosecution, raising the same arguments that the defendants made in the reply to their motion to compel, as well as some additional arguments. *See* ECF No. 328 at 1-2 (listing motions).[1] Thus, the arguments that were improperly raised in the defendants' reply brief have now properly been raised in Trump's pretrial motion under Federal Rule of Criminal Procedure 12. The Government will use its forthcoming brief in opposition to Trump's dismissal motion to respond to those arguments in depth and show why they fail. The Government nonetheless briefly addresses the standard for discovery on claims of selective and vindictive prosecution in the event that the Court decides to address the discovery issues raised for the first time in the defendants' reply separately from Trump's motion to dismiss.

---

[1] The motion itself has not yet been publicly docketed, pending additional conferral and, if necessary, litigation regarding redactions. *See* ECF No. 320.

**DISCUSSION**

**I.     Applicable Law**

Federal prosecutors are afforded "broad discretion to enforce the Nation's criminal laws," and a "presumption of regularity supports their prosecutorial decisions." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted). The judiciary defers "to the decisions of" federal prosecutors "in part" because of the "relative competence of prosecutors and courts." *Id.* at 465. "'Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). This judicial deference "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Id.* "'Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.'" *Id.* (quoting *Wayte*, 470 U.S. at 607).

Prosecutorial discretion is nonetheless subject to certain "constitutional constraints." *Id.* at 464 (quotation marks omitted). One such constraint, "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment," is the prohibition against selective prosecution: "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quotation marks omitted). Another constraint, grounded in the Due Process Clause, is the prohibition against vindictive prosecution, which prohibits a "charging decision" or other prosecutorial action that is "motivated by a desire

to punish [the defendant] for doing something that the law plainly allowed him to do." *United States v. Goodwin*, 457 U.S. 368, 384 (1982).

In order for a defendant to dispel the presumption that federal prosecutors discharged their official duties properly, the defendant must establish each of the constituent elements of a selective-prosecution or a vindictive-prosecution claim by "clear and convincing evidence." *United States v. Smith*, 231 F.3d 800, 808 (11th Cir. 2000) (discussing selective prosecution); *see United States v. Simbaqueba Bonilla*, No. 07-cr-20897, 2010 WL 11627259, at *4 (S.D. Fla. May 20, 2010) (applying same standard to vindictive-prosecution claim and citing *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006), and *United States v. Sanders*, 211 F.3d 711, 716 (2d Cir. 2000)). To sustain a claim of selective prosecution, a defendant "must demonstrate [1] that the federal prosecutorial policy had a discriminatory effect and [2] that it was motivated by a discriminatory purpose." *Smith*, 231 F.3d at 808 (quotation marks omitted). The first prong requires a showing that "similarly situated individuals were not prosecuted." *Id.* at 809. To make out a claim of vindictive prosecution, a defendant must, as relevant here, demonstrate "that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001); *see United States v. Barner*, 441 F.3d 1310, 1322 (11th Cir. 2006) (citing *Wilson* and stating that the "elements of prosecutorial vindictiveness are animus plus causation").[2] Because a claim of selective or vindictive prosecution "asks a court to exercise judicial power over a special province

---

[2] A defendant may sometimes establish that the circumstances of the case pose a realistic likelihood of vindictiveness and therefore warrant a prophylactic presumption of vindictiveness in all cases of that type, as occurs, for example, when a prosecutor responds to a defendant's successful appeal by increasing the severity of the charges against him. *See Goodwin*, 457 U.S. at 380-81, 384; *Alabama v. Smith*, 490 U.S. 794, 799-800 (1989); *United States v. Kendrick*, 682 F.3d 974, 982 (11th Cir. 2012). Trump does not—and cannot—contend that a presumption of vindictiveness could or should apply here and instead attempts to show actual vindictiveness.

4

of the Executive," *Armstrong*, 517 U.S. at 464 (quotation marks omitted), the standard a defendant must satisfy to establish such a claim is "demanding," *id.* at 463, and "rigorous," *id.* at 468, as it requires a defendant to substantiate his claim with "clear evidence," *id.* at 465; *see United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021); *see also Jarrett*, 447 F.3d at 525 (discussing vindictive prosecution); *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (explaining that a showing of actual vindictiveness is "exceedingly difficult to make").

A defendant must also meet a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468; *see Sanders*, 211 F.3d at 717 (discussing vindictive prosecution). To do so, the defendant must make "a credible showing" to support his claim, which requires providing "some evidence tending to show the existence of the essential elements of the defense." *Armstrong*, 517 U.S. at 470 (quotation marks omitted). This standard "is only slightly lower than for proving the claim itself." *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016) (quotation marks omitted); *see United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008) (the standard "is somewhat below 'clear evidence,' but it is nonetheless fairly high"); *United States v. Rasco*, No. 08-cr-100, 2010 WL 2160836, at *5 (S.D. Ga. May 27, 2010) (the standard for discovery is "quite rigorous") (quotation marks omitted). Given the substantial "costs" of discovery in this context, *Armstrong*, 517 U.S. at 468, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims," *id.* at 464. Courts thus remain vigilant in ensuring that a defendant has made a sufficient showing. *See United States v. Bass*, 536 U.S. 862 (2002) (per curiam) (reversing order granting discovery on selective prosecution claim); *United States v. Thorpe*, 471 F.3d 652, 666 (6th Cir. 2006) (same); *United States v. Hastings*, 126 F.3d 310, 314-16 (4th Cir. 1997) (same); *United States v. Turner*, 104 F.3d 1180, 1185-86 (9th Cir. 1997) (same); *In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) (same via mandamus).

In the decades since *Armstrong*, the Eleventh Circuit has never found such a showing to have been made.[3] *See also United States v. Washington*, 869 F.3d 193, 215 (3d Cir. 2017) ("*Armstrong/Bass* has proven to be a demanding gatekeeper . . . and neither the Supreme Court nor this Court has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices." (quotation marks omitted)). And the one pre-*Armstrong* case in which the Eleventh Circuit made such a finding involved direct evidence of racist statements, combined with corroborating statistical evidence. *See United States v. Gordon*, 817 F.2d 1538, 1540 (11th Cir. 1987) (per curiam), *vacated in part by* 836 F.2d 1312 (11th Cir. 1988) (finding that direct evidence of racial bias—in which a spokesperson "allegedly explained to a college student that the investigations were part of a 'new policy . . . brought on by the "arrogance on the part of blacks" in these counties,'"—"would not be enough" standing alone, but sufficed when combined with "other evidence suggesting a pattern of" discriminatory prosecutions). Circumstantial evidence is virtually never enough to carry the defendant's burden. *See United States v. Brown*, 862 F. Supp. 2d 1276, 1288 (N.D. Ala. 2012) ("The court has found no Eleventh Circuit case in which a defendant has ultimately shown improper motive through circumstantial evidence").

II.     **The Defendants Cannot Satisfy the Requirements for Discovery on a Claim of Either Selective or Vindictive Prosecution.**

As will be discussed in more depth in the Government's forthcoming response to Trump's motion to dismiss, the defendants have not, and cannot, satisfy the requirements for discovery on a claim of either selective or vindictive prosecution.

---

[3]     *Smith* was one of the rare cases that came to the Eleventh Circuit following the grant of discovery and an evidentiary hearing on a selective prosecution claim. *Smith*, 231 F.3d at 808 n.4. The Eleventh Circuit considered the evidence "without implying" that "the district court properly permitted the extensive inquiry it did based upon the showing the defendants had made." *Id.* Given that the defendants "failed to carry their burden of establishing the discriminatory effect or selectivity prong," *id.* at 813, it follows the district court erred by granting discovery.

First, the defendants' attempt to obtain discovery based on selective prosecution fails at the initial step, which requires them to identify someone who "was similarly situated with the defendant[]." *Smith*, 231 F.3d at 810.  The Eleventh Circuit has "define[d] a 'similarly situated' person for selective prosecution purposes as one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Id.*[4]  In *Smith*, for example, the defendants had to—but did not—show that "there [were] other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against" the defendants, because that was "the case the government built against" the defendants. *Id.* at 811 (emphasis in original).  The comparator must "be nearly identical" to the defendant. *United States v. Brantley*, 803 F.3d 1265, 1272 (11th Cir. 2015).

None of the purported comparators the defendants identify is similarly situated.  There have been many government officials who have possessed classified documents after the ends of their terms in office—often inadvertently, sometimes negligently, and very occasionally willfully.  There have also been a very small number of cases in which former government officials who have

---

[4] Although the defendants cite (ECF No. 300 at 7) the first part of this test ("the same basic crime in substantially the same manner"), they entirely omit the test's other requirements, including that "the evidence [against the comparator] was as strong or stronger than that against the defendant." *Smith*, 231 F.3d at 810.

7

been found in possession of classified documents have briefly resisted the government's lawful efforts to recover them.  But there has never been a case in American history in which a former official has engaged in conduct remotely similar to Trump's.  He intentionally took possession of a vast trove of some of the nation's most sensitive documents—documents so sensitive that they were presented to the President—and stored them in unsecured locations at his heavily trafficked social club.  When the National Archives and Records Administration ("NARA") initially sought their return (before learning that they contained classified national defense information), Trump delayed, obfuscated, and dissembled.  Faced with the possibility of legal action, he ostensibly agreed to comply with NARA's requests but in fact engaged in additional deception, returning only a fraction of the documents in his possession while claiming that his production was complete.  Then, when presented with a grand jury subpoena demanding the return of the remaining documents bearing classification markings, Trump attempted to enlist his own attorney in the corrupt endeavor, suggesting that he falsely tell the FBI and grand jury that Trump did not have any documents, and suggesting that his attorney hide or destroy documents rather than produce them to the government.  Failing in his effort to corrupt the attorney, Trump enlisted his trusted body man, codefendant Waltine Nauta, in a scheme to deceive the attorney by moving boxes to conceal his (Trump's) continued possession of classified documents.  As a result, Trump, through his attorney, again returned only a portion of the classified documents in his possession while falsely claiming that his production was complete.  The obstructive conduct even persisted from there.  In June 2022, knowing that he had arranged for Nauta to move boxes to conceal them from Trump's attorney, and knowing that the government had subpoenaed the security video footage that would reveal that surreptitious box movement, Trump, now joined by not only Nauta but also

codefendant Carlos De Oliveira, attempted to have the information-technology manager at Mar-a-Lago delete the video footage that would show the movement of boxes.

The defendants have not identified anyone who has engaged in a remotely similar suite of willful and deceitful criminal conduct and not been prosecuted. Nor could they. Indeed, the comparators on which they rely are readily distinguishable. For example, their primary comparator is Joseph R. Biden, whose conduct is described in the recently issued *Report of the Special Counsel on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.*, by Special Counsel Robert K. Hur ("*Hur Report*"). But as the *Hur Report* itself recognizes, "several material distinctions between Mr. Trump's case and Mr. Biden's are clear." *Hur Report* at 11; *id.* at 250. Most notably, Trump, unlike Biden, is alleged to have engaged in extensive and repeated efforts to obstruct justice and thwart the return of documents bearing classification markings. And the evidence concerning the two men's intent—whether they knowingly possessed and willfully retained such documents—is also starkly different, as reflected in the Hur Report's conclusion that "the evidence falls short of establishing Mr. Biden's willful retention of the classified Afghanistan documents beyond a reasonable doubt." *Hur Report* at 204 (capitalization altered); *see id.* at 250 ("Unlike the evidence involving Mr. Biden, the allegations set forth in the indictment of Mr. Trump, if proven, would clearly establish not only Mr. Trump's willfulness but also serious aggravating facts."). The defendants' request for discovery on a selective prosecution theory can be denied on this basis alone.

Separately, the evidence that defendants have presented falls woefully short of establishing either discriminatory intent (for purposes of a selective prosecution claim) or animus and causation (for purposes of a vindictive prosecution claim). They contend that the incumbent president has

9

secretly directed this prosecution—using the Special Counsel as a "puppet" or "stalking horse," ECF No. 300 at 5, 10)—in order to retaliate against Trump for exercising his right to criticize him and run against him. But the sources on which they rely, even if taken at face value, undercut rather than support this conspiracy theory, as they repeatedly emphasize that the prosecutorial decisions made by the Department of Justice generally, and the Special Counsel specifically, have been made on the basis of the facts and the law, not political considerations. The defendants offer no evidence to the contrary, because there is no such evidence.

Finally, the defendants' baseless theory that the prosecutorial decisions in this case have been made by the incumbent president, communicating his direction via the news media, is inconsistent with their requests for discovery. A defendant must show that the prosecutorial decision was in fact "motivated by a discriminatory purpose" on behalf of "the decisionmaker." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quotation marks omitted). A defendant cannot establish a claim of selective or vindictive prosecution by relying on allegations of animus on the part of investigating agents or others who did not "actually ma[k]e the decision to prosecute." *Hastings*, 126 F.3d at 314; *see United States v. Spears*, 159 F.3d 1081, 1087 (7th Cir. 1998) ("[A]ctions of an investigating agency will not be imputed to a federal prosecutor."). Discovery regarding purported bias on behalf of a referring or investigating agency, or a member of the intelligence community, is irrelevant to a claim of selective or vindictive prosecution, and this disconnect underscores that the defendants are engaged in a fishing expedition.

## CONCLUSION

For the reasons set forth above, as well as in the Government's forthcoming response to Trump's motion to dismiss for selective and vindictive prosecution, the defendants' requests for discovery on this topic should be denied.

                                          Respectfully submitted,

                                          JACK SMITH
                                          Special Counsel
                                          N.Y. Bar No. 2678084

By:     /s/ *David V. Harbach, II*
              David V. Harbach, II
              Assistant Special Counsel
              Special Bar ID #A5503068
              950 Pennsylvania Avenue, N.W.
              Washington, D.C. 20530

              Jay I. Bratt
              Counselor to the Special Counsel
              Special Bar ID #A5502946

February 26, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that on February 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

                                          /s/ *David V. Harbach, II*
                                          David V. Harbach, II