**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

      Defendants.

_____/

**ORDER DENYING DEFENDANTS'**
**MOTIONS FOR ACCESS TO SPECIAL COUNSEL'S CIPA § 4 FILINGS**

**THIS CAUSE** comes before the Court upon Defendants' Motions for Access to CIPA § 4 Filings (the "Motions" or "Motions for Access"), filed on December 6, 2023 [ECF Nos. 237–238]. The Special Counsel filed a consolidated Response in Opposition [ECF No. 241], to which Defendants filed Replies [ECF Nos. 246–247]. The Court conducted several sealed hearings during which many of the arguments raised in Defendants' Motions for Access were discussed in conjunction with defense theories and/or positions taken by the Special Counsel in its Section 4 Motions [ECF Nos. 307–310, 336]. Upon careful review of the Motions; the Special Counsel's Response [ECF No. 241]; Defendants' Replies [ECF Nos. 246–247]; the arguments raised during sealed hearings [ECF Nos. 307–310, 336]; and the full record, Defendants' Motions are **DENIED**. Although the import of the Special Counsel's position effectively changes the unambiguous discretionary language of CIPA § 4 into a prohibition on adversarial litigation in this context—and although Defendants raise compelling arguments in favor of exercising judicial discretion to permit attorneys'-eyes-only access to the CIPA § 4 filings under the circumstances

of this case—the Court ultimately denies Defendants' Motions after concluding, based on a thorough review of the Special Counsel's instant CIPA § 4 submissions [*see* ECF No. 236], that it can fairly resolve the CIPA § 4 requests in an *ex parte* posture, and in a manner that does not impair Defendants' rights.

## BACKGROUND

The Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, "establishes procedures for handling classified information in criminal cases." *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). CIPA § 4—which governs pretrial discovery of classified information—was "intended to 'clarify' a court's existing 'powers under Federal Rule of Criminal Procedure 16(d)(1),'" *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006) (quoting Sen. Rep. No. 96–823, at 6 (1980)), and designed to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial," *Aref*, 533 F.3d at 78 (alterations and internal quotation marks omitted). Section 4 provides, in full:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. III § 4.

Pursuant to CIPA § 4 and Fed. R. Crim. P. 16(d)(1), and consistent with this Court's Order [ECF No. 226], the Special Counsel filed three separate *ex parte* Motions (the

"Section 4 Motions")—one for each Defendant [ECF No. 236].  The Section 4 Motions request authorization to (1) redact, substitute, or delete from cleared counsel for all Defendants four discrete "categories" of classified information; and (2) withhold from Defendants Nauta and De Oliveira personally nearly all classified discovery produced to date.[1]  Additionally, the Special Counsel seeks an order prohibiting the disclosure of the Section 4 submissions (*i.e.*, the Section 4 Motions themselves, along with the accompanying declarations and exhibits) to Defendants or their counsel.

In the instant Motions for Access, Defendants seek attorneys'-eyes-only access to the Special Counsel's Section 4 submissions [ECF Nos. 237–238].[2]  The Motions do not seek access for Defendants personally—only for counsel with the requisite security clearances.[3]  Nor do the Motions purport to seek access to the underlying classified materials that are the subject of the filings themselves, although as the Special Counsel explains, the filings themselves (and associated declarations) are specific to the underlying discovery material at issue [ECF No. 241 p. 9].  In support of their requests, Defendants argue that CIPA § 4's use of "may" in reference to *ex parte* submissions is permissive, and that the "unique facts and circumstances" of this case warrant the exercise of judicial discretion to proceed in an adversarial posture [ECF No. 238 p. 3].  As

---

[1]  The Special Counsel bears the burden to show, in the CIPA § 4 context, that its assertion of privilege is "at least a colorable one," *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989), and if so, that the classified information it seeks to withhold from Defendants is not "relevant and helpful to the defense," *id.* at 622 (quoting *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957)).

[2]  Defendant Trump also seeks an order requiring the Special Counsel "to file redacted versions of its CIPA § 4 submissions on the public docket" [ECF No. 237 p. 2].  The Court addresses that request in a forthcoming Order on the Special Counsel's Section 4 Motion as to Defendant Trump.

[3]  As represented to the Court [ECF No. 336], Defendant Trump would be willing to limit the number of participating cleared attorneys to no more than two, both of whom possess security clearances to review all of the classified discovery in this case, including the most highly sensitive materials that are subject to additional handling requirements.

Defendants further explain, access to the Special Counsel's submissions would allow cleared counsel to "challenge the Office's assertions in adversarial proceedings that will facilitate more reliable decision-making" in the Court's application of applicable standards under CIPA § 4 [ECF No. 237 p. 2; *see* ECF No. 238 p. 8].

The Special Counsel opposes the Motions, arguing that "the statute and governing caselaw preclude attorneys' eyes-only access to the Government's CIPA Section 4 filings" [ECF No. 241 p. 4]. The Special Counsel emphasizes that no district court has granted the relief sought by Defendants, and that circuit courts have uniformly rejected defense challenges to *ex parte* CIPA § 4 proceedings "where—as here—defense access would defeat the motion's purpose" [ECF No. 241 p. 1]. Defendants' Motions are ripe for adjudication [ECF Nos. 246–247].

## DISCUSSION

At issue is the proper interpretation, and application, of the penultimate sentence of CIPA § 4, which provides as follows: "The court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." 18 U.S.C. App. III § 4 (emphasis added). The Supreme Court has "repeatedly observed that the word 'may' *clearly* connotes discretion." *Biden v. Texas*, 597 U.S. 785, 787 (2022) (citation and internal quotation marks omitted) (collecting cases). Moreover, the Supreme Court has "stated time and again" that courts must presume that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Thus, where a "statute's words are unambiguous, the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 91 (2003).

In keeping with these well-settled principles, and finding no ambiguity in the statutory language, the Court is inclined to read the word "may" in CIPA § 4 as conferring on district courts

the discretion—not the requirement—to proceed *ex parte*.  This reading is consistent with district

courts' discretionary authority to regulate discovery under Fed. R. Crim. P. 16(d)(1), the rule that

CIPA § 4 was enacted to clarify and complement.[4]  *See Mejia*, 448 F.3d at 455.  Put another way,

CIPA § 4 "means what it says: 'may' means 'may.'"  *Biden*, 597 U.S. at 807.

The plain language of the statute, however, stands in arguable tension with the Eleventh

Circuit's decision in *United States v. Campa*, 529 F.3d 980 (11th Cir. 2008), and with the

now-commonplace practice of rejecting meaningful defense participation in CIPA § 4

proceedings.[5]  In *Campa*, the Eleventh Circuit affirmed a district court's denial of a cleared defense

attorney's request to participate in CIPA § 4 proceedings.  *Id.* at 994–96.  In doing so, the court

stated that CIPA § 4 "expressly calls for an 'ex parte showing.'" *Id.* at 995 (quoting 18 U.S.C.

App. III § 4).  The court also reasoned that "the right that section four confers on the government

would be illusory if defense counsel were allowed to participate . . . because defense counsel would

be able to see the information that the government asks the district court to keep from defense

counsel's view." *Id.*

---

[4]  Rule 16(d)(1), in expressly permissive terms, states that a court "*may*, for good cause, deny restrict, or defer discovery" and "*may* permit a party to show good cause by a written statement that the court will inspect ex parte." Fed. R. Crim. P. 16(d)(1).  As the Eleventh Circuit stated in *United States v. Campa*, 529 F.3d 980 (11th Cir. 2008), "[n]othing in section four circumscribes this power." *Id.* at 995.  "Like Rule 16(d), . . . CIPA leaves the precise conditions under which the defense may obtain access to discoverable information to the informed discretion of the district court." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008).

[5]  *Campa*'s strong endorsement of *ex parte* proceedings under CIPA § 4 accords with other circuits that have considered the question.  *See, e.g.*, *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (finding "no support for the defendants' claim of the right to participation or access in CIPA or the Federal Rules"); *United States v. Asgari*, 940 F.3d 188, 191–92 (6th Cir. 2019); *Aref*, 533 F.3d at 81.  The Court is unaware of any district court that has granted the relief Defendants seek here, and the cases cited by Defendants as examples are inapposite for the reasons provided by the Special Counsel [ECF No. 237 pp. 6–8; ECF No. 241 pp. 6–8].

The Special Counsel argues that "[t]his Court should follow *Campa* and deny Trump's motion," suggesting that adversarial CIPA § 4 litigation is "preclude[d]" under *Campa* and under the "text and underlying rationale" of the statute [ECF No. 241 pp. 1–2, 4; *see infra* pp. 6–7]. The Court does not read *Campa* as imposing a categorical prohibition on all adversarial Section 4 litigation or as otherwise foreclosing consideration of adversarial testing where appropriate. Such a reading would be irreconcilable with the unambiguous language of the statute, even if consistent with the weight of authority in this area. *See supra* n.4. Again, CIPA § 4 provides that a court "*may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." 18 U.S.C. App. III § 4 (emphasis added). And as emphasized above, "'may' does not just suggest discretion, it '*clearly* connotes' it." *Biden*, 597 U.S. at 802 (quoting *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020)). Reading "may" as permissive is further bolstered by Congress's use of "shall" in the very next sentence of CIPA § 4. *See* 18 U.S.C. App. III § 4 (providing that "the entire text of the statement of the United States *shall* be sealed" (emphasis added)). Courts should not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply," even more so "when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *See Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 341 (2005).[6]

Despite the plain language of the statute, the Special Counsel effectively reads CIPA § 4's permissive "may" as a mandatory "shall." Indeed, after acknowledging that the statute's use of

---

[6] Congress used the term "shall" pervasively throughout the statute where mandatory action was intended. *See* 18 U.S.C. App. III §§ 2–4, 6–9. For example, in CIPA § 3, Congress imposed on district courts a mandatory duty to enter a protective order following such a request from the government: "Upon motion of the United States, the court *shall* issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant . . . ." 18 U.S.C. App. III § 3 (emphasis added).

"may" necessarily contemplates adversarial litigation in at least some situations [*see* ECF No. 310], the Special Counsel could not identify a single example or circumstance, real or hypothetical, in which such adversarial testing would be appropriate [ECF No. 310]. Meanwhile, the Special Counsel emphatically assures the Court that the particular facts of this case do not "remotely justify[] a deviation from the normal process" [ECF No. 241 p. 2]. The Court cannot speak with such confidence in this first-ever criminal prosecution of a former United States President—once the country's chief classification authority over many of the documents the Special Counsel now seeks to withhold from him (and his cleared counsel)—in a case without charges of transmission or delivery of national defense information. If the Special Counsel does not believe adversarial CIPA § 4 litigation is "remotely justif[ied]" under the facts and circumstances of this case, at least as to Defendant Trump [ECF No. 241 p. 2]—and cannot conjure a single example of such a case—the Court is left to believe that the Special Counsel interprets "may" in CIPA § 4 as a mandatory "shall."

The Special Counsel also argues that the "underlying rationale" of CIPA § 4 necessitates *ex parte* litigation of its Section 4 Motions, and that defense requests for access must be rejected "where—as here—defense access would defeat the motion's purpose" [ECF No. 241 p. 1]. This argument fails to sufficiently account for the other half of CIPA's "fundamental purpose," which is to "protect[] and restrict[] the discovery of classified information in a way that *does not impair the defendant's right to a fair trial*." *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002) (emphasis added); [*See, e.g.*, ECF No. 32 p. 5 (acknowledging this dual purpose)]. Viewed in this context, Congress's permissive use of "may" is not inconsistent with CIPA's purpose. The district court should have the discretion afforded by the text of CIPA § 4 to conduct limited adversarial

proceedings if doing so is necessary under the facts and circumstances to ensure that a criminal defendant receives due process and a fair trial.[7]

Finally, the Special Counsel's suggestion that Defendants may participate in the proceedings by filing "their own *ex parte* submission outlining their theory of the defense to aid the Court in the review of the classified materials" [ECF No. 241 p. 17 (citing authorities)]—while commonplace in the CIPA § 4 context—serves as a hollow stand-in for the traditional adversarial posture. Unlike the Special Counsel, Defendants are "forced to argue for the relevance of the material without actually knowing what the classified record contains." *United States v. Sedaghaty*, 728 F.3d 885, 906 (9th Cir. 2013). Even taking its role as "standby counsel" seriously *Amawi*, 695 F.3d at 471—as the Court has done here—defense counsel still is undoubtedly "in the best position to know whether information would be helpful to their defense," *Mejia*, 448 F.3d at 548; *see Amawi*, 695 F.3d at 471 (requiring the court to stand "in the shoes of defense counsel . . . and act with a view to their interests"). These half-measures provide little consolation to criminal defendants, and in the Court's estimation, threaten to "reduce[] the judicial function to a mere ceremonial rite." *Al-Turki v. F.B.I. Document Custodian*, No. 06-CV-1076, 2007 WL 3195129, at *1 (D. Colo. Oct. 26, 2007) (commenting on the "Orwellian" nature and "constitutional frailty" of *ex parte* review under CIPA § 4).

---

[7] Along similar lines, legislative history provides no basis for rewriting the otherwise plain meaning of the statute. The language of CIPA § 4 is unambiguous, and when confronted with a "straightforward statutory command, there is no reason to resort to legislative history." *United States v. Gonzales*, 520 U.S. 1, 6 (1997). In any event, even if consideration of legislative history were appropriate here, the oft-cited footnote from a congressional report is far from dispositive. *See* H.R. Rep. No. 96–831, pt. 1, at 27 n.22. CIPA's legislative history is replete with refences to the central importance of safeguarding a criminal defendant's rights despite the involvement of classified materials in the case [*See, e.g.*, ECF No. 202 p. 7 n.8 (surveying CIPA's legislative history)].

CASE NO. 23-80101-CR-CANNON

Nevertheless, in light of the unrebutted weight of authority in this Circuit and others—and following a thorough review of the subject materials [ECF No. 236], extensive colloquies with defense counsel to understand their theories of the case [ECF Nos. 307, 309, 336], and careful consideration of the good-faith arguments raised by Defendants [ECF Nos. 237–238]—the Court determines at this juncture that it can resolve the Special Counsel's Section 4 Motions in an *ex parte* posture.   CIPA § 4 was designed to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial."   *Aref*, 533 F.3d at 78 (cleaned up).  As best the Court can discern following its rigorous analysis, Defendants' rights will not be impaired by today's ruling.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motions [ECF Nos. 237, 238] are **DENIED**.

2. Should an additional round of CIPA § 4 litigation become necessary in this case, and assuming the Special Counsel moves to proceed *ex parte*, Defendants may file renewed requests for access.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 28th day of February 2024.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

9