**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON-REINHART**

---

UNITED STATES OF AMERICA,

                *Plaintiff,*

      v.

DONALD J. TRUMP, et al.,

                *Defendants.*

---

**BRIEF OF FORMER ATTORNEY GENERAL EDWIN MEESE III,
LAW PROFESSORS STEVEN CALABRESI AND GARY LAWSON,
CITIZENS UNITED, AND CITIZENS UNITED FOUNDATION
AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT TRUMP'S
MOTION TO DISMISS THE INDICTMENT BASED ON
THE UNLAWFUL APPOINTMENT AND FUNDING OF
SPECIAL COUNSEL JACK SMITH [ECF NO. 326]**

GENE C. SCHAERR*
EDWARD H. TRENT (FSB # 957186)
 *Counsel of Record*
JUSTIN A. MILLER*
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
etrent@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Pro hac vice forthcoming*

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Citizens United is a nonprofit corporation headquartered in Washington, D.C., and recognized as a social welfare organization under Section 501(c)(4) of the Internal Revenue Code. It has no parent corporation, has issued no stock, and as such, no publicly held company owns 10 percent or more of its stock.

Citizens United Foundation is a nonprofit corporation headquartered in Washington, D.C., and recognized as an educational organization under Section 501(c)(3) of the Internal Revenue Code. It has no parent corporation, has issued no stock, and as such, no publicly held company owns 10 percent or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................. ii

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION AND INTEREST OF *AMICI CURIAE* ........................................... 1

ARGUMENT ...................................................................................................... 2

    I.    THE LEGALITY OF SMITH'S APPOINTMENT SHOULD BE CONCLUSIVELY RESOLVED PRIOR TO OTHER PRE-TRIAL MOTIONS. ........................................................... 2

    II.    JACK SMITH'S DESIGNATION AS SPECIAL COUNSEL VIOLATES THE APPOINTMENTS CLAUSE. .............................................................................. 4

        A.    Only Congress Can Create a Federal Office. ................................................ 4

        B.    No Statute Authorizes the Position of Special Counsel Supposedly Held by Smith. .......................................................................................... 5

        C.    The Appointments Clause Establishes a Default Rule that All Principal Officers Require Presidential Nomination and Senate Confirmation............. 13

        D.    Even If Special Counsels Were Statutorily Authorized, They Would Need Presidential Nomination and Senate Confirmation. .............................. 14

    III.    THIS COURT IS NOT BOUND BY DICTUM IN *UNITED STATES V. NIXON*. ........................... 16

CONCLUSION.................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Biden* v. *Nebraska*, 143 S. Ct. 2355 (2023) ........................................................ 13

*Bonner* v. *City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ....................................... 3

*Buckley* v. *Valeo,* 424 U.S. 1 (1976)............................................................ 13, 14, 16

*Darden* v. *United States*, 708 F.3d 1225 (11th Cir. 2013)........................................... 17

*Edmond* v. *United States,* 520 U.S. 651 (1997) .................................................... 15

*Farah* v. *U.S. Att'y Gen.*, 12 F.4th 1312 (11th Cir. 2021) ....................................... 16

*Florida* v. *Nixon*, 543 U.S. 175 (2004)............................................................ 17

*Freytag* v. *Comm'r*, 501 U.S. 868 (1991)........................................................... 2

*Gregory* v. *Ashcroft*, 501 U.S. 452 (1991)......................................................... 13

*Kappos* v. *Hyatt*, 566 U.S. 431 (2012)............................................................. 17

*Laskar* v. *Hurd*, 972 F.3d 1278 (11th Cir. 2020) .................................................. 17

*Lucia* v. *SEC*, 585 U.S. 237 (2018)........................................................ 6, 11, 12, 14

*Morrison* v. *Olson,* 487 U.S. 654 (1988) .......................................................... 14

*Powers* v. *Schwartz*, 587 F.2d 783 (5th Cir. 1979)................................................. 3

*Seila Law LLC* v. *CFPB*, 140 S. Ct. 2183 (2020)............................................... 4, 5, 15

*United States* v. *Bloom*, 149 F.3d 649 (7th Cir. 1998)............................................ 17

*United States* v. *Nixon*, 418 U.S. 683 (1974) .................................................... 16

**Constitutional Provisions**

U.S. CONST. art. I, §8, cl. 1 ...................................................................... 4

U.S. CONST. art. II, §1, cl. 1 ..................................................................... 4

U.S. CONST. art. II, §1, cl. 6 .................................................................... 12

U.S. CONST. art. II, §2............................................................................ 13

U.S. CONST. art. II, §4........................................................................... 11

**Statutes**

5 U.S.C. § 301 ................................................................................................. 6, 7

5 U.S.C. § 3101 .................................................................................................... 5

7 U.S.C. § 610 .................................................................................................... 14

18 U.S.C. § 4041 ................................................................................................ 14

20 U.S.C. § 3461 ................................................................................................ 14

28 U.S.C. § 509 ............................................................................................. 3, 6, 7

28 U.S.C. § 510 ............................................................................................. 3, 6, 7

28 U.S.C. § 515 .............................................................................................. 3, 7, 8

28 U.S.C. § 519 ................................................................................................. 8, 9

28 U.S.C. § 532 .................................................................................................. 11

28 U.S.C. § 533 ................................................................................. 3, 10, 11, 12, 16

28 U.S.C. § 534 .................................................................................................. 11

28 U.S.C. § 543 ................................................................................................. 8, 9

42 U.S.C. § 913 .................................................................................................. 14

49 U.S.C. § 323 .................................................................................................. 14

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 ........................................ 6

Ethics in Government Acts Amendments of 1982, Pub. L. No. 97-409, 96 Stat. 2039 ................ 6

**Regulations**

28 C.F.R. § 600.1 ................................................................................................. 6

28 C.F.R. § 600.3 ................................................................................................. 6

Off. of the Att'y Gen., "Appointment of John L. Smith as Special Counsel,"
   Order No. 5559-2022 (Nov. 18, 2022) ...................................................................... 3, 6

*Office of Special Counsel*, 64 Fed. Reg. 37,038-01 (July 9, 1999)
   (codified at 28 C.F.R. §§ 600.1–600.10) .................................................................... 6

**Other Authorities**

Steven G. Calabresi & Gary Lawson,
   THE U.S. CONSTITUTION: CREATION, RECONSTRUCTION, THE PROGRESSIVES,
   AND THE MODERN ERA (1st ed. 2020) ......................................................................... 5

Steven G. Calabresi & Gary Lawson,
   *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*,
   95 Notre Dame L. Rev. 87 (2019) ............................................................................ 4, 5, 14, 16

BRYAN A. GARNER ET AL.,
   THE LAW OF JUDICIAL PRECEDENT (2016) ........................................................................ 16, 17

Gov't Mot. in Limine,
   *United States v. Trump*, No. 1:23-cr-257-TSC (filed D.D.C. Dec. 27, 2023) .......................... 15

Gary Lawson & Christopher D. Moore,
   *The Executive Power of Constitutional Interpretation*,
   81 Iowa L. Rev. 1267 (1996)...................................................................................................... 5

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

Jack Smith does not have authority to prosecute this case. Those actions can be taken only by persons properly appointed as federal officers to properly created federal offices. But neither Smith nor the position of Special Counsel under which he purportedly acts meets those criteria. He wields tremendous power, answerable to no one. And that is a serious problem for the rule of law—whatever one may think of former President Trump or the conduct Smith challenges in the underlying case.

Smith's appointment as Special Counsel violates the Appointments Clause. First, the Appointments Clause requires that all federal offices "not otherwise provided for" in the Constitution must be "established by Law," yet there is no statute establishing the Office of Special Counsel. Second, even if one overlooks the absence of statutory authority for the position, there is no statute specifically authorizing the Attorney General, rather than the President by and with the advice and consent of the Senate, to appoint such a Special Counsel. And third, the Special Counsel, if a valid officer, is a principal rather than inferior officer, and thus cannot be appointed without senatorial confirmation regardless of what any statutes say. The way to appoint a Special Counsel consistent with the Appointments Clause is to follow the normal practice of the past quarter-century, conferring that status upon a person already serving as a U.S. Attorney, which adds a new matter to the portfolio of a Senate-confirmed principal officer. But the Attorney General cannot appoint a private citizen or government employee, who was never confirmed by the Senate, as a substitute United States Attorney under the title "Special Counsel," as happened

---

[1] This brief was not authored in whole or in part by counsel for any party and no person or entity other than *amici curiae* or their counsel has made a monetary contribution toward the brief's preparation or submission. Counsel for Defendant President Donald J. Trump, Counsel for Co-Defendant Waltine Nauta and Counsel for Co-Defendant Carlos de Oliveira consent to the filing of this brief. The United States takes no position on the filing of this brief.

here. That appointment was unlawful, as are all the legal actions that have flowed from it, including Smith's prosecution of President Trump.

Given their interest in and demonstrated commitment to the rule of law, the legal issue this brief addresses is particularly important to *amici*. The Honorable Edwin Meese III served as the seventy-fifth Attorney General of the United States after having served as Counselor to the President, and is now the Ronald Reagan Distinguished Fellow Emeritus at the Heritage Foundation. During his tenure as Attorney General, the Department of Justice steadfastly defended proper limits on federal power. Professors Calabresi and Lawson are scholars of the original public meaning of the Constitution. Finally, Citizens United (a 501(c)(4) social welfare organization) and Citizens United Foundation (a 501(c)(3) educational and legal organization) are dedicated to restoring government to the people through by promoting federalism, free enterprise, individual liberty, and limited government.

## ARGUMENT

### I. THE LEGALITY OF SMITH'S APPOINTMENT SHOULD BE CONCLUSIVELY RESOLVED PRIOR TO OTHER PRE-TRIAL MOTIONS.

The legality of Jack Smith's appointment is a potentially fatal flaw in this entire prosecution, and as such must be resolved before this case proceeds closer to trial. He wields extraordinary power, yet effectively answers to no one. The Supreme Court has "expressly included Appointments Clause objections … in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." *Freytag* v. *Comm'r*, 501 U.S. 868, 878–79 (1991) (collecting cases). It thus has something of a quasi-jurisdictional character that should be treated as a priority over standard defenses. This Court should rule upon the Motion to Dismiss raising this issue, [ECF No. 326], before ruling on other pre-trial motions.

1.      The illegality addressed in this brief started on November 18, 2022, when Attorney General Merrick Garland exceeded his legal authority by purporting to appoint Smith as Special Counsel for the Department of Justice (DOJ). Smith was appointed "to conduct the ongoing investigation into whether any person or entity [including Trump] violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." Off. of the Att'y Gen., "Appointment of John L. Smith as Special Counsel," Order No. 5559-2022 (Nov. 18, 2022). Garland cited as statutory authority for this appointment 28 U.S.C. §§ 509, 510, 515, and 533.  But none of those statutes, nor any other statutory or constitutional provision, remotely authorized the appointment by the Attorney General of a private citizen or government employee to receive extraordinary criminal law enforcement power under the title of Special Counsel.

2.      That flaw goes to the heart of the legitimacy of these proceedings, and should compel this Court to confirm the validity of Smith's sweeping powers before this Court rules on additional motions that may indeed be against what is essentially a non-party in the eyes of the law. If Smith's appointment is invalid, then these proceedings lack the "fundamental Article III requirement" of adverseness between the parties. *Powers* v. *Schwartz*, 587 F.2d 783, 784 (5th Cir. 1979).[2] The implications of the Appointments Clause issue here are nothing short of historic, and it is imperative that no former President of this Nation—especially one who is the presumptive opposition-party candidate to become President once again—go to trial and risk conviction of a crime if his prosecutor is not even authorized to speak for the United States.

---

[2] Precedents from the Fifth Circuit prior to Congress's establishing the Eleventh Circuit (on October 1, 1981) are binding in this Court. *Bonner* v. *City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3.      For these reasons, this question should be resolved prior to this Court's resolving any other grounds for dismissal asserted by former President Trump, as he should not need to litigate any defense against a criminal prosecution led by a private citizen or government employee. This Court should rule on the issue with dispatch, with the expectation of an expedited appeal. But prudence dictates that this Court should conserve scarce judicial resources, obviate the hardship visited upon the Nation by the unprecedented nature of this prosecution, and also personally spare Trump unnecessary expenses in extremely expensive litigation, until this Court is fully assured that the prosecutor in this case lawfully represents the United States.

## II.   JACK SMITH'S DESIGNATION AS SPECIAL COUNSEL VIOLATES THE APPOINTMENTS CLAUSE.

Smith's lack of authority to prosecute Trump follows from first principles. In our constitutional system, Congress alone has the authority to create federal offices not established by the Constitution. And the Attorney General cannot ex nihilo fashion offices as he sees fit. Nor has Congress given the Attorney General power to appoint a Special Counsel of this nature. Thus, without legally holding any office, Smith cannot wield the authority of the United States, including his present attempt to prosecute the former President.

### A.      Only Congress Can Create a Federal Office.

The Constitution vests executive power in the President. U.S. CONST. art. II, §1, cl. 1. It then commits the power to create federal offices to Congress under the Necessary and Proper Clause, *id.* art. I, §8, cl. 18. "Congress has the *exclusive* constitutional power to create federal offices." Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 NOTRE DAME L. REV. 87, 101 & n.74 (2019); *see also Seila Law LLC* v. *CFPB*, 140 S. Ct. 2183, 2227 (2020) (Kagan, J., concurring in judgment with respect to severability and dissenting in part). English monarchs could create offices, but the Founders

consciously denied it to the President. *See* Steven G. Calabresi & Gary Lawson, THE U.S. CONSTITUTION: CREATION, RECONSTRUCTION, THE PROGRESSIVES, AND THE MODERN ERA 382 (1st ed. 2020) (discussing sources). Accordingly, the Constitution does not give the President or department heads power to create any offices of appoint whatever officers they deem appropriate. Instead, it requires that Congress first create *all* offices to which federal officers, principal or inferior, can be appointed.

The Appointments Clause confirms this, providing for the appointment of officers *"which shall be established by Law."* U.S. CONST. art. II, §2, cl. 2 (emphasis added). The Framers deliberately added the emphasized phrase on September 15, 1787. Calabresi & Lawson, *Mueller*, *supra*, at 101 & n.77. The plain import of "law" is a statute, *see Seila Law*, 140 S. Ct. at 2227 (Kagan, J.), consistently so in the Constitution when otherwise unqualified, *see* Gary Lawson & Christopher D. Moore, *The Executive Power of Constitutional Interpretation*, 81 Iowa L. Rev. 1267, 1315 (1996). With no statute, there is no office to which someone can be appointed.

**B.      No Statute Authorizes the Position of Special Counsel Supposedly Held by Smith.**

And here, no statute authorizes such an appointment. DOJ's current statutory structure includes an Attorney General, Deputy Attorney General, Associate Attorney General, and various other officers including U.S. Attorneys, not counting more than 100,000 DOJ employees. And the vast majority of federal workers, including those at DOJ, are not "officers of the United States." They are employees, whose appointments are not governed by the Appointments Clause and who therefore do not require specific statutory authorization. For their appointments, it suffices to provide, as Congress has done, that "[e]ach Executive agency … may employ such number of *employees* of the various classes recognized by chapter 51 of this title as Congress may appropriate for from year to year." 5 U.S.C. § 3101 (emphasis added). But officer positions must be

specifically "established by Law." U.S. Const. art. II, §2, cl. 2. And employees cannot exercise the power of officers. *See Lucia* v. *SEC*, 585 U.S. 237, 245–46 (2018).

1.      The Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 ("EGA"), added to this mix an independent counsel,[3] appointed by a special three-judge court upon referral by the Attorney General. But the statutory provisions for the independent counsel expired in 1999 when Congress failed to reauthorize them.

Shortly before that expiration, Attorney General Janet Reno promulgated regulations—which, if valid, are still in force today—providing for an "Office of Special Counsel." *See Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) (codified at 28 C.F.R. §§ 600.1–600.10) ("Reno Regulations"). Under these regulations, the Attorney General may, in some circumstances, "appoint an *outside* Special Counsel to assume responsibility for the matter." 28 C.F.R. § 600.1 (emphasis added). The regulations clarify that "outside" means someone "from outside the United States Government." *Id.* § 600.3(a). The Reno Regulations, like the independent counsel statute, contemplate appointment, as a putative inferior officer, of a nongovernmental official to an office that is fully the equivalent of a United States Attorney. But only a *statute*—not a regulation—is the kind of "law" that can "establish[]" a federal office under the Appointments Clause. And no *statute* creates a Special Counsel with the jurisdiction and authority Smith wields.

2.      The Reno Regulations cite as authority 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, 515–19. And in his order appointing Smith, Attorney General Garland cited "28 U.S.C. 509, 510, 515, and 533." Order No. 5559-2022 at 1. These statutes, singly or collectively, plainly provide no such authority.

---

[3] The original language, "special prosecutor," was changed to "independent counsel" by the Ethics in Government Acts Amendments of 1982, Pub. L. No. 97-409, 96 Stat. 2039.

*First*, 5 U.S.C. § 301, a general authorization for the issuance of regulations by the Attorney General or any other department head, provides, "The head of an Executive department or military department may prescribe regulations for the government of his department [and] the conduct of its employees …." This general housekeeping provision does not create any offices or authorize the creation of any offices. Indeed, if Section 301 were a general authorization for appointment of officers, the entirety of the more numerous specific provisions for appointment of officers throughout the United States Code would be superfluous.

*Second*, Section 509 merely says that "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General," except for some functions not relevant here. But rather than authorize the creation of offices, it says the Attorney General can control all his subordinates or personally assume and exercise their responsibilities.

*Third* and similarly, Section 510 says, "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." As with Section 509, it provides for shifting authority among DOJ personnel, but it says nothing about who those persons are or how they got there.

*Fourth,* Attorney General Garland also cited 28 U.S.C. § 515, and the Reno Regulations relied on 28 U.S.C. §§ 515–19. Again, alone or singly, none of these provisions comes close to authorizing the creation of a Special Counsel or the Attorney General's appointing a private citizen or government employee to the position.

For its part, Section 515(a) confers only the following power:

The Attorney General *or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law*, may, when

> specifically directed by the Attorney General, conduct any kind of legal proceeding
> … whether or not he is a resident of the district in which the proceeding is brought.

Thus, Section 515(a) does not authorize creating any offices. Instead, it concerns the powers of those properly appointed to offices "under law" pursuant to other statutes, and allows the Attorney General to designate a U.S. Attorney or special attorney appointed "under law" to prosecute a case "whether or not he is a resident." *Id*. Section 515(a) is thus a geographical and jurisdictional allocative provision, not a grant of power to appoint private citizens or government employees as Special Counsels.

> Nor does subsection (b) of Section 515 provide the requisite authority:
>
> Each Attorney specially retained under authority of the Department of Justice shall
> be commissioned as special assistant to the Attorney General or special attorney,
> and shall take the oath required by law…. The Attorney General shall fix the annual
> salary of a special assistant or special attorney.

Again, this does not grant power to retain or to hire new officers, but instead provides that attorneys already hired or retained, and who may be only employees, not officers, can also have a title and salary.

To be sure, Sections 515(a) and 515(b) both assume that there are going to be attorneys "specially appointed by the Attorney General under law" and "specially retained under the authority of the Department of Justice." And indeed, another provision, Section 543 (discussed below), authorizes the Attorney General to hire such persons, who can then be commissioned as "special assistant[s]" or "special attorney[s]" under Section 515(b). But these provisions confer no authority to create offices.

Likewise, Sections 516 through 519 concern the internal allocation of authority among existing DOJ personnel and provide no authority to create offices. Section 519, for example, provides:

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States Attorneys, assistant United States Attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

There is no office-creating power here, either.

*Fifth,* Section 519 points to the Attorney General's statutory authority to appoint Special Counsels, noting that there are "special attorneys appointed under section 543 of this title." Indeed, there are. Section 543 of Title 28 is *explicit* authority for the Attorney General to appoint Special Counsels. Yet neither the Reno Regulations nor the Garland memo appointing Smith makes any mention of this provision because Section 543 does not authorize the kind of Special Counsel contemplated by the Reno Regulations or Garland's appointment of Smith. Section 543 is narrowly cabined, as one would expect from the overall structure of Title 28. The government for decades has steadfastly refused to rely on this provision that explicitly provides the Attorney General with hiring authority, and it continues to refuse to rely on it in current litigation—for the obvious reason that the provision contains internal limitations which the government seeks to avoid.

This is clear from the text, which provides:

> (a) The Attorney General may appoint attorneys *to assist* United States attorneys when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country.

> (b) Each attorney appointed under this section is subject to removal by the Attorney General.

28 U.S.C. § 543 (emphasis added). This is an obvious and explicit authorization for the creation and appointment of "special assistants" or "special counsels" who merely *assist* U.S. Attorneys when the public interest so requires.

There are, moreover, contexts in which the appointment of such persons makes sense. Government often encounters problems for which private lawyers have expertise, who may not want a permanent government position but may be willing to help the government on a limited basis. An appointment as a special assistant or special counsel, under the control and direction of a United States Attorney, is an obvious win-win in such instances.

The problem for the government in the case of the Reno Regulations and the Smith appointment is that those Regulations and the Smith appointment order do not contemplate "special counsels" who *assist* U.S. Attorneys. Instead, they contemplate Special Counsels who *replace* U.S. Attorneys in specific cases. Smith, for example, was not appointed to assist U.S. Attorneys. He was hired as a powerful standalone officer who replaces, rather than assists, the functions of United States Attorneys within the scope of his jurisdiction. This is precisely the role that the EGA authorized for independent counsels. But that statute no longer exists, and in the absence of that statute or a similar one, there is no statutory office of Special Counsel to which Smith could be appointed to function as a stand-in for a U.S. Attorney.

3.      The remainder of Title 28 confirms this conclusion. Section 533, relied upon by Attorney General Garland, is part of a chapter dealing with the FBI and is entitled "Investigative and Other Officials." It says:

> The Attorney General may appoint officials-(1) to detect and prosecute crimes against the United States; (2) to assist in the protection of the person of the President; and (3) to assist in the protection of the person of the Attorney General[;] (4) to conduct such other investigations regarding official matters under the control of the Department of Justice and the Department of State as may be directed by the Attorney General.

But Section 533(1) is not a general authorization to the Attorney General to appoint officers. It specifically and solely authorizes the appointment of "Investigative and Other Officials"—

*officials*, not *officers*—connected with the FBI. This does not include Special Counsels. This is clear for three reasons.

*First*, Section 533 is part of Chapter 33 of Title 28, encompassing Sections 531–540D, which deals with the "Federal Bureau of Investigation." Section 532 is entitled "Director of the Federal Bureau of Investigation," and spells out the Attorney General's authority over the FBI. And Section 534 concerns preserving evidence in criminal cases.

Section 533 thus clearly deals with FBI officials and agents, not Special Counsels. This is how the government has long understood this provision, which has been employed as the basis for the FBI's law enforcement authority.

*Second*, Section 533 concerns the appointment of investigative and prosecutorial "officials." Such officials, as that term is used in the statute,[4] are not Article II "officers of the United States" and cannot perform those functions. They are nonofficer employees, who, as FBI agents, must be subject to the supervision and direction of officers of the United States. The FBI needs office and field personnel to perform its functions, and Section 533 allows the agency to have them. But those personnel are not officers of the United States and lack the range and power of a Special Counsel.

To the contrary, the word "Officer" is a constitutional term of art, not only because it is used that way in the Appointments Clause, but also because Article II, Section 4 allows for the impeachment and removal from office of "all civil Officers of the United States[.]" Congress can try to impeach the Deputy Attorney General or the FBI Director, but no one thinks Congress can

---

[4] An eighteenth-century statute might have used a term such as "officials" to have a broader meaning than applies to § 533. *See Lucia*, 585 U.S. at 252–54 (Thomas, J., concurring). As a matter of statutory interpretation, however, there is no plausible case for reading the term as it appears in Section 533 to be coextensive with the constitutional meaning of "officer."

impeach DOJ trial attorneys or field personnel at the FBI. What is more, officers can be put by Congress in the line of succession to the presidency. *See* U.S. CONST. art. II, §1, cl. 6. But no one thinks investigative officials at the FBI or DOJ trial attorneys can be put in the line of succession to the presidency. That simply is not how Congress was using the term "officials" in Section 533.

*Third*, and perhaps most tellingly, a cavalier reading of Section 533 to authorize hiring beyond its obvious scope obliterates the structure of Title 28. That Title is divided into chapters dealing with the Attorney General; the FBI; U.S. Attorneys; the Marshals Service; U.S. Trustees; the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the now-sunsetted independent counsel. Wide-ranging Special Counsels of the sort represented by Smith are not part of these provisions outside of the now-defunct EGA sections.

4.     At a more granular level, the effect of a loose reading of the statutes is even more bizarre. Congress has provided for the Senate-confirmed presidential appointment of a Deputy Attorney General, Associate Attorney General, Solicitor General, eleven Assistant Attorneys General (plus an Assistant Attorney General for Administration who is in the competitive service, appointed by the Attorney General), and one U.S. Attorney for each judicial district, of which there are ninety-four. A reading of Section 533 to empower creating essentially unlimited inferior officers in the Attorney General wreaks havoc on this structure. It would allow the Attorney General to appoint an entire shadow DOJ to replace the functions of every statutorily specified officer. No wonder the Reno Regulations did not invoke it.

In short, the position supposedly held by Smith was not "established by Law." The authority exercised by him as a so-called "Special Counsel" far exceeds the power exercisable by a mere employee. *See Lucia*, 585 U.S. at 245–47. He is acting as an officer, but aside from the

specific offices listed in the statutes discussed above, there is no office for him to hold. That alone robs him of authority to represent the United States in any capacity, including before this Court.

### C. The Appointments Clause Establishes a Default Rule that All Principal Officers Require Presidential Nomination and Senate Confirmation.

Even though existing statutes authorize appointment of stand-alone Special Counsels with the powers of a U.S. Attorney, Smith was not properly appointed to such an "office." No statute *clearly* authorized his appointment by any mode other than presidential nomination and Senate confirmation.

Any such statute, of course, is governed by the Appointments Clause, which makes three things clear. First, the default mode of appointment for all officers is presidential nomination and Senate confirmation. Second, this default presumption can only be overridden by Congress, for inferior officers. Third, even then, Congress must speak *clearly* to authorize a permissible mode of appointment for those officers other than presidential nomination and Senate confirmation.

This "clear statement" rule is implicit in the Appointments Clause and the constitutional structure. That Clause is both a separation-of-powers and federalism provision. It divides appointment power between the President and Senate—not between the President and Congress as a whole. *See Buckley* v. *Valeo¸* 424 U.S. 1, 127 (1976) (per curiam). The Senate is the body in which States receives equal representation, which guards against large-state Presidents underrepresenting smaller States in the executive and judicial departments. These structural concerns warrant an interpretative presumption in favor of a clear statement of congressional intent to authorize appointment by any means other than presidential nomination and senatorial confirmation. *Cf. Biden* v. *Nebraska*, 143 S. Ct. 2355, 2372–75 (2023) (invoking the major questions doctrine because "the Executive seiz[ed] the power of the Legislature"); *Gregory* v. *Ashcroft,* 501 U.S. 452, 460–61 (1991) (articulating federalism clear-statement rule).

Even without such a presumption, ordinary statutory interpretation demonstrates that the Attorney General received no power to appoint Special Counsels as inferior officers. None of the statutes canvassed in the previous section contains such authorization. In contrast to the DOJ's organic statute, the organic statutes of the Agriculture, Education, Health and Human Services, and Transportation Departments *do contain inferior officer appointment power clauses*. *See* 7 U.S.C. § 610(a) (USDA); 20 U.S.C. § 3461 (DOEd); 42 U.S.C. § 913 (HHS); 49 U.S.C. § 323(a) (DOT).  But Congress gave the Attorney General power to "appoint such additional officers and employees as he deems necessary[,]" 18 U.S.C. § 4041, *only for the Bureau of Prisons*, not other DOJ components. Congress's reasons here are unclear, but also irrelevant when statutes are unambiguous.

### D.   Even If Special Counsels Were Statutorily Authorized, They Would Need Presidential Nomination and Senate Confirmation.

If Smith actually had the power to convene grand juries, issue subpoenas, direct and conduct prosecutions, and litigate in this Court and before the Supreme Court, he would obviously be an "Officer of the United States" rather than a mere employee. *See Lucia*, 585 U.S. at 248; *Buckley*, 424 U.S. at 139–40; Calabresi & Lawson, *Mueller*, *supra*, at 128–34. More than that, he would be principal officer. And by the plain terms of the Appointments Clause, principal officers *must* be Senate-confirmed. That is not how Smith was appointed, and he thus could not serve as Special Counsel even if such a statutory position validly existed.

First, the Special Counsels contemplated by the Reno Regulations are equivalent to, if not more powerful than, U.S. Attorneys. It is obvious that U.S. Attorneys are principal officers, *see* Calabresi & Lawson, *Mueller*, *supra*, at 138–42, and the same is true of the Special Counsels who mirror them. The only plausible argument to the contrary rests not on original meaning but on a wild overreading of *Morrison* v. *Olson,* 487 U.S. 654 (1988), and *Edmond* v. *United States,* 520

U.S. 651 (1997). Those decisions, especially *Edmond,* contain language that some lower courts have read to mean that anyone who had a superior on an agency organization chart must be an "inferior" officer. But if that were true, the Solicitor General, and even the Deputy Attorney General, would be inferior officers, because they answer at some level to the Attorney General. Could Congress therefore let the Attorney General appoint the Solicitor General? Of course not.

Second, one can be a principal rather than inferior officer in two ways. One is to have no decisional superior other than the President. Smith's court filings insist that he is independent from his nominal superior (the Attorney General), and even the President, assuring the courts that "coordination with the Biden Administration"—which includes Attorney General Garland and President Biden—is "non-existent." Gov't Mot. in Limine at 6, *United States v. Trump*, No. 1:23-cr-257-TSC (filed D.D.C. Dec. 27, 2023). Smith thus has no functional superior, necessarily rendering him a principal officer. And this lack of accountability only compounds the invalidity of his purported appointment. *See Seila Law*, 140 S. Ct. at 2197–99. In that vein, as Justice Souter perceptively wrote in his *Edmond* concurrence, "Because the term 'inferior officer' implies an official superior, one who has no superior is not an inferior officer… Having a superior officer is necessary for inferior officer status, but not sufficient to establish it." 520 U.S. at 667 (Souter, J., concurring in part and concurring in the judgment).

Either way, if he is an officer, Smith is a principal officer. He has no superior supervising or directing him. Attorney General Garland does not supervise or direct him, as he said he would not when Smith was appointed Special Counsel.

Yet Smith is appearing in this Court on behalf of the United States. He is prosecuting a former President, the first time that has happened in our Nation's history. Smith is purporting to exercise at least as much power as a U.S. Attorney, and arguably more. That is the hallmark of a

principal officer. The absence of such an appointment means that Smith lacks authority to prosecute Trump on behalf of the United States.

## III.  THIS COURT IS NOT BOUND BY DICTUM IN *UNITED STATES V. NIXON*.

Moreover, for reasons described in depth in Calabresi & Lawson, *Mueller, supra*, the Supreme Court in *United States* v. *Nixon*, 418 U.S. 683 (1974), did not pass on the scope of Section 533. That decision contains dictum regarding Section 533, *see Nixon*, 418 U.S. at 694–95, but it merits no weight. It simply discussed how any DOJ prosecutor could take action against a President, not any particular type of prosecutor or whether that prosecutor was installed in conformity with the Appointments Clause. Anyone tempted to rely on *Nixon* should read the case briefs to see what issues were truly raised there. Those issues involved only the relationship between the President and DOJ as an institution; the same arguments would have been raised if the Attorney General personally, or any particular U.S. Attorney, rather than the special prosecutor, had brought the suit. *See* Calabresi & Lawson, *Mueller, supra,* at 120–23. Moreover, *Nixon* was argued and decided before the modern rebirth of separation of powers and the Appointments Clause, which dates from two years after *Nixon* in *Buckley* v. *Valeo*, 424 U.S. 1 (1976) (per curiam).

The Eleventh Circuit has held that not all dicta are binding on lower courts. As a major treatise by several current and former Supreme Court Justices and other well-respected jurists— including Chief Judge Pryor of the Eleventh Circuit—explained, "not all dicta are created equal." *Farah* v. *U.S. Att'y Gen.*, 12 F.4th 1312, 1323 (11th Cir. 2021) (Pryor, C.J.) (quoting BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT § 4, at 69 (2016)) (alterations omitted). These Justices and judges cite as an example of dictum that should be accorded precedential value an opinion where:

> The question had been briefed by the parties, so the statement was informed[;] that supply more extensive analysis and is not incompatible with any decision before or since… [and would not give] litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.

GARNER, *supra*, § 4, at 61 (quoting *United States* v. *Bloom*, 149 F.3d 649, 653 (7th Cir. 1998)) (Easterbrook, J.). Such judicial dictum must be distinguished from obiter dictum, where a matter was not briefed or analyzed. *Id.* at 62. Such "ill-considered dicta" do not carry as much weight. *Kappos* v. *Hyatt*, 566 U.S. 431, 443 (2012). And Nixon's side-commentary about special prosecutors is merely such obiter dictum.

The Eleventh Circuit has cited that treatise as authoritative on the weight to be accorded dicta. *See, e.g.*, *Laskar* v. *Hurd*, 972 F.3d 1278, 1291 (11th Cir. 2020). As the Eleventh Circuit reasoned in *Laskar*, quoting the Justices' treatise, "'[d]ictum should never be taken as determining an issue of law when it conflicts with a holding on point.'" *Id.* An additional factor is that the weight of older dictum "'depends on the degree to which its underlying principles have been buttressed or weakened by later cases and events.'" *Id.*

All those authorities counsel against treating *Nixon*'s dictum as controlling. The Appointments Clause issue was never briefed or considered. It contained no relevant legal analysis. It had nothing to do with the disposition of that case. Its comments on special prosecutors conflict with modern Appointments Clause cases, which have completely enervated *Nixon*'s commentary. In Smith's inevitable opposition to this brief, Smith "overreads *Nixon*'s dicta." *Darden v. United States*, 708 F.3d 1225, 1232 (11th Cir. 2013) (referring to *Florida* v. *Nixon*, 543 U.S. 175, 187 (2004)). "Without further direction from the Supreme Court," this Court should decline Smith's imminent "invitation to expand what the Court intended to be a limited" decision on whether DOJ can institutionally pursue a President. *Id. Nixon*'s dictum does not control here.

**CONCLUSION**

Smith is the classic "emperor with no clothes." He has no more authority to represent the United States in this Court than Tom Brady, Lionel Messi, or Kanye West. The Court should grant the Motion to Dismiss on the Appointments Clause issue, and do so prior to ruling on the other Motions to Dismiss pending in this case.

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Edward H. Trent*
GENE C. SCHAERR*
EDWARD H. TRENT (FSB #957186)
 *Counsel of Record*
JUSTIN A. MILLER* **
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
etrent@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Counsel for Amici Curiae*

*\*Pro hac vice* forthcoming

\*\*Not yet admitted in D.C.
Practicing under the supervision
of D.C. bar members.

</div>

March 5, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March, 2024, I caused a true and correct copy of

the foregoing to be served via ECF on all parties and counsel of record in this matter.


*/s/ Edward H. Trent*
Edward H. Trent