UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.

Case No. 23-80101-CR
CANNON/REINHART

**PRESIDENT TRUMP'S REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS COUNTS 1–32 BASED ON
UNCONSTITUTIONAL VAGUENESS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

DISCUSSION ................................................................................................................................. 1

    I.    No Amount Of "Judicial Gloss" Can Save § 793(e) As Applied To President Trump .. 1

        A.    The Prosecution Ignores The Rule Of Lenity And Legislative History ......................... 1

        B.    The Authorization Clause Is Indeterminate On These Facts ......................................... 2

        C.    The Court Should Reject Further Judicial Expansion Of The NDI Clause ................... 4

        D.    The "Closely Held" Requirement Does Not Address President Trump's As-Applied Challenges ....................................................................................................................... 5

        E.    The Entitlement Clause Is Not Limited To The "Classification System" ..................... 6

        F.    The "Actual Notice" Arguments Are Inapposite ............................................................ 7

        G.    *Kolender* Supports President Trump's Motion ................................................................ 8

        H.    *Mens Rea* Does Not Cure All Vagueness Ills .................................................................. 9

    II.    Count 19 Should Be Dismissed ....................................................................................... 10

CONCLUSION .............................................................................................................................. 10

## INTRODUCTION

President Donald J. Trump respectfully submits this reply in further support of his motion to dismiss Counts 1–32 of the Superseding Indictment based on the vagueness doctrine and President Trump's "Q" clearance (the "Motion"), and in response to the opposition brief by the Special Counsel's Office, ECF No. 377 (the "Opposition").

The Special Counsel's Office starts out with the baseless and untenable claim that the "statute's prohibitions are clear." Oppn. at 1. Perhaps what the Office meant—and this would be closer to the truth—is that courts facing inapposite factual circumstances have tried to make § 793(e) clearer through "explicat[ions]" and "many judicial decisions" that have broadened the statute's scope beyond the plain meaning of the text Congress chose. Oppn. at 2, 7. However, the Court will be writing on what is essentially a blank slate in the Eleventh Circuit, against the backdrop of the Supreme Court's recent retrenchment on using "judicial gloss" to save statutes that Congress should have written more clearly, and in the context of a former President of the United States who relied on Article II power, Presidential Records Act discretion, executive privilege, and presidential immunity. Section 793(e) is unconstitutionally vague as applied to President Trump in each of Counts 1–32, and Count 19 fails to state a claim.

## DISCUSSION

### I. No Amount Of "Judicial Gloss" Can Save § 793(e) As Applied To President Trump

#### A. The Prosecution Ignores The Rule Of Lenity And Legislative History

The Special Counsel's Office concedes that § 793(e) is vague enough to require recourse to judicial "gloss" applied to a different statute by the Supreme Court more than 80 years ago in *Gorin*, but does not mention the Rule of Lenity—the "junior version of the vagueness doctrine," *United States v. Caldwell*, 655 F. App'x 730, 732 (11th Cir. 2016)—even once. *See* Mot. at 1, 10-

1

11.  The omission is telling because lenity is one of the driving forces behind the Supreme Court's decisions in *Davis* and *Johnson*, which are two of the three recent residual-clause decisions that counsel strongly against continued judicial rewriting of congressional enactments.

The Special Counsel's Office also fails to address the complex and confusing legislative history of § 793(e).  *See* Mot. at 4-5.  Particularly after the recent residual-clause cases, it is significant that the record "raises serious doubts as to whether Congress had even a vague understanding" of the 1917 predecessor to § 793(e), and "virtually no understanding" of the language of § 793(e) itself.  *See id*. at 5 (cleaned up).  Given that history, judicial efforts to achieve a statutory interpretation that legislators in Congress did not agree upon are particularly fraught and, as applied to President Trump, incapable of avoiding constitutional infirmities.  No Eleventh Circuit case requires that course, and the Court must not take it.

**B. The Authorization Clause Is Indeterminate On These Facts**

The term "unauthorized" did not provide fair notice to President Trump, and the Special Counsel's Office is applying the Authorization Clause in the type of arbitrary manner that the vagueness doctrine is intended to protect against.

The Special Counsel's Office wholly mischaracterized the only Espionage Act case they cite in defense of the Authorization Clause, *United States v. Ford*, 288 F. App'x 54 (4th Cir. 2008). Oppn. at 8.  In reality, *Ford* quoted *Morison*, where the Fourth Circuit reasoned that § 793(e) is "definite and clear" as applied to the argument in that case that the statute was limited to "classical spying."  844 F.2d 1057, 1063-64 (4th Cir. 1988).  That is not the issue here.  In *Ford*, the Fourth Circuit concluded that § 793(e) was "definite and clear" with respect to the argument that the statute "does not criminalize retention."  288 F. App'x at 56-57.  Because the text of § 793(e) expressly prohibits retention, the clarity that the *Ford* panel perceived is irrelevant to this motion.

2

The contentions that follow the mischaracterization of *Ford* fare no better. The Special Counsel's Office tried to cobble together dictionary definitions to assert that "unauthorized" means "without *official* approval or permission." Oppn. at 8 (emphasis added). The inclusion of the term "official" is a self-serving leap not supported by the only case they cite, *Nosal*. There, the Ninth Circuit interpreted "without authorization" to mean "without permission," which is a definition that includes lack of permission from the *private party* whose property is at issue. 844 F.3d 1024, 1028 (9th Cir. 2016). However, the Office forced the word "official" into their made-up definition to try to use as a hook for invoking the National Security Act, 50 U.S.C. § 3161(a), which is not referenced in the Espionage Act, and Executive Order 13526, which has no textual basis in § 793(e) either. Oppn. at 9. In an effort to cover these gaps, the Office cites *Department of Navy v. Egan*. *See* Oppn. at 18. However, *Egan* concerned the impropriety of judicial review of Executive Branch security-clearance decisions, and the Court relied in part on the Civil Service Reform Act of 1978. 484 U.S. 518, 520 (1988). *Egan* does not support the Office's argument that national security power derived from Article II serves as a basis for relying on Executive Order 13526 to interpret a statute that makes no reference to Executive Branch input. All the stretching and straining by the Office—from dictionaries, to *Nosal*, to the National Security Act, to Executive Order 13526, to *Egan*—proves the point: upholding § 793(e) over President Trump's individual as-applied vagueness challenges to Counts 1–32 would require putting words in Congress's mouth. That approach is no longer viable after *Davis*, *Dimaya*, and *Johnson*. *See* Mot. at 3, 6.

The cobbled-together attempt by the Special Counsel's Office fails as applied to President Trump. As the Court already observed, President Trump was "once the country's chief classification authority." ECF No. 346 at 7. He occupied that role as to each of the documents at issue in Counts 1–32. The provision of the National Security Act cited by the Special Counsel's

3

Office, 50 U.S.C. § 3161(a), does not authorize regulations binding Presidents or private parties. *See* 50 U.S.C. § 3163. As explained in our submissions relating to the Presidential Records Act, President Trump's retention of the documents was not "unauthorized" under § 793(e), because he designated them as personal records pursuant to the PRA during his first term in Office.

Pursuant to § 6.1(hh), Executive Order 13526 does not apply to "records" that are personal rather than "Presidential." Thus, insofar as Executive Order 13526 applies "equally to former Presidents," *Trump v. United States*, 2022 WL 4366684, at *8 (11th Cir. 2022), it does not apply at all to their personal records—which is exactly how DOJ and NARA treated personal records retained by, for example, President Clinton and President Reagan. Finally, the executive privilege, which is fully enforceable in the post-presidential timeframe, and presidential immunity, which President Trump had every reason to believe applied for the reasons set forth in our motion to dismiss based on that doctrine, made the concept of "unauthorized" possession even more vague with respect to President Trump. For all of these reasons, the Authorization Clause fails to provide fair notice and lacks adequate enforcement criteria.

### C. The Court Should Reject Further Judicial Expansion Of The NDI Clause

The "judicial interpretations" identified by the Special Counsel's Office do not, in fact, "narrow and clarify the text" of the NDI Clause. Oppn. at 12. Instead, these decisions impermissibly increased the scope of the statute in a manner that cannot be condoned. *Gorin* characterized "national defense" as a "generic concept of broad connotations" and asserted that the phrase includes materials "related [to] activities of national preparedness," which itself is a nearly limitless phrase. 312 U.S. 19, 27-29 (1941). In *Hitselberger*, the court acknowledged that it "might be true" that the "judicial gloss" from *Gorin* had caused the NDI Clause to capture "innocuous information of alarming breadth." 991 F. Supp. 2d 101, 105 (D.D.C. 2013). That

4

seems to have been the case in *Rosen*, where the court suggested that the NDI Clause reaches "matters relating to United States foreign policy and intelligence capabilities" that have nothing to do with the statutory term, "national defense." 445 F. Supp. 2d 602, 620 (E.D. Va. 2006) (emphasis added). Perhaps the judge in *Rosen* felt obligated to follow the Fourth Circuit's decision in *Morison*, where the panel seemed to consider the phrases "national defense materials," "secret defense information," and "national interest materials" to be synonymous. 844 F.2d at 1065. That is plainly wrong as a matter of statutory text. So too was the *Morison* panel's assertion that "all vagueness may be corrected by judicial construction which narrows the sweep of the statute within the range of reasonable certainty." *Compare id.* at 1071, *with United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) ("In our constitutional order, a vague law is no law at all."). For these reasons, the Court should not follow the out-of-Circuit judicial extensions of the NDI Clause.

### D. The "Closely Held" Requirement Does Not Address President Trump's As-Applied Challenges

The only arguably restrictive interpretation of the NDI Clause that courts have applied is the "closely held" requirement—which is a judicial invention with no textual basis. The *Gorin* Court created this requirement out of whole cloth in order to address a First Amendment issue: the phrase "national defense information" is so broad that it arguably covers newspaper articles about war efforts and related conversations in the public square. While the "closely held" requirement has relevance to the ongoing discovery violations by the Special Counsel's Office, as discussed in Classified Supplements, it does not fully address the vagueness of the NDI Clause as applied to President Trump.

The position of the Office seems to be that, if a document is presented to a President, then the document contains "national defense information." *See* Oppn. at 20 (arguing that it is an "obvious fact" that documents "presented to the sitting Commander in Chief . . . contained

5

national-security information that the Government keeps closely held"). No intelligible principle could be articulated to explain why, for example, certain documents relating to the President's Daily Brief ("PBD") are charged in the Superseding Indictment, while at the same time the CIA's website includes John Helgerson's book describing specific PDB topics on specific days during President Trump's first term.[1] The Office's "presentation" argument only further illustrates the unconstitutional ambiguity that has been read into the statute and the failure of the NDI Clause to provide enforcement criteria.

### E. The Entitlement Clause Is Not Limited To The "Classification System"

Having argued repeatedly, and correctly, that § 793(e) is not limited to classified information, *e.g.*, ECF No. 373 at 4-5, the Special Counsel's Office nevertheless tries unsuccessfully to defend the Entitlement Clause on the basis that it is governed by the "classification system" of Executive Order 13526. Oppn. at 14-15. The argument has no more merit for the Entitlement Clause than it does for the Authorization Clause. There is no textual basis for that leap in the Espionage Act, and no Eleventh Circuit case requires it.

The Special Counsel's Office seizes on *Rosen* and cases relying on it. *See* Oppn. at 14-15. In *Rosen*, the court interpreted the phrase "*not entitled* to receive," which parallels the Authorization Clause of § 793(e) rather than the Entitlement Clause.[2] The argument that Executive Order 13526 "restricts access" to classified information says nothing about who is "entitled to receive" records that President Trump designated as personal under the PRA.

---

[1] *See* JOHN HELGERSON, GETTING TO KNOW THE PRESIDENT 263 (disclosing that President Trump "seemed particularly interested in three pieces in the PDB," including "manpower available to the ISIS terrorist group" and "oil prices"), https://www.cia.gov/resources/csi/static/Chapter-9-Getting-to-Know-the-President-Fourth-Edition.pdf.

[2] The Special Counsel's Office also makes the puzzling claim that "*Morison* did not rely on CIPA" for its flawed Entitlement Clause reasoning. Oppn. at 17. That is wrong. *See* 844 F.2d at 1074 & n.28. As with *Ford*, the Office misread *Morison*. *See* Oppn. at 8.

President Trump does not need to "claim that he attempted to return the documents . . . to the wrong individual" to demonstrate this aspect of the statute's vagueness. Oppn. at 15 n.6. The issue is that § 793(e) offers no clarity regarding who is "entitled to receive" a former President's personal records under the PRA, pursuant to designations covered by presidential immunity, which are also subject to invocation of the executive privilege. Section 793(e) does not authorize interpretive promulgations by the Executive Branch, and the lone interpretive authority cited by the Office—Executive Order 13526—does not apply to records designated as personal under the PRA. In claiming that there is "no authority" for the existence of this conflict, Oppn. at 16, the Office conveniently overlooks the positions taken by DOJ and NARA with respect to President Reagan and President Clinton, and by the White House Counsel with respect to President Biden.

Finally, Executive Order 13526 adds neither notice nor specificity to the Entitlement Clause (or the Authorization Clause) because it relies on "need to know" determinations that are standardless, entirely subjective, and lacking in enforcement criteria. Time and again in this case, the Special Counsel's Office has cited the "need to know" concept. Not once, however, has the Office identified adequate governing standards to evaluate those determinations other than to assert that the Court and the parties should take their word for it.

F. The "Actual Notice" Arguments Are Inapposite

It is no response to President Trump's arguments regarding the as-applied vagueness in § 793(e) for the Special Counsel's Office to claim that he was, allegedly, "personally on notice concerning the importance of proper handling of classified national defense information," that certain of the documents contained classification markings, and that the "contents of the documents" are sensitive in the Office's view. Oppn. at 19-20. The Office also emphasizes the purported significance of the fact that President Trump "obtained the charged documents during

7

his term . . . through intelligence briefings," *id.* at 19, while at the same time improperly seeking to withhold information regarding these briefings pursuant to CIPA § 4. None of these claims speak to the actual text of § 793(e). They are all emblematic of the Office's position that virtually anything that is arguably classified can be the subject of a § 793(e) prosecution regardless of the vague language chosen by Congress.

As the Court is aware, evidence relating to briefings, classification status, and the handling of these documents is central to the pending motions to compel, and the emphasis on these issues by the Special Counsel's Office in response to a pretrial motion only underscores the extent to which the evidence sought in those motions is discoverable. But these issues are not crucial to President Trump's vagueness motion. These as-applied challenges to each of Counts 1–32 are addressed to the lack of fair notice and enforcement criteria for, collectively, the Authorization Clause, the NDI Clause, and the Entitlement Clause. The alleged sensitivity of documents when they allegedly passed through the Oval Office says nothing with respect to whether President Trump was authorized to retain them, the scope of the NDI Clause, and who was entitled to receive the personal records of a former President for the first time in history. Accordingly, the Office's "personally on notice" arguments miss the mark.

### G.  *Kolender* Supports President Trump's Motion

In response to President Trump's arguments regarding the lack of enforcement criteria in § 793(e), the Special Counsel's Office cites *Kolender v. Lawson* for the proposition that "[d]ue process requires legislatures to 'establish minimal guidelines to govern law enforcement.'" Oppn. at 23 (quoting 461 U.S. 352, 358 (1983)). We could not agree more. The *Kolender* Court added: "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit a *standardless sweep* [that] allows policemen, prosecutors, and juries to pursue their personal

8

predilections." 461 U.S. at 358 (cleaned up).  In *Kolender*, the statute "contain[ed] no standard" for the relevant issue.  *Id.*  Similarly, § 793(e) contains no standards for the three separate clauses challenged by President Trump.  President Trump is being prosecuted "at the whim" of the Office, *id.*, based on prosecutors' subjective and politically motivated views regarding indeterminate statutory terms and standardless concepts in Executive Order 13526 such as "need to know."

### H.  *Mens Rea* Does Not Cure All Vagueness Ills

The Special Counsel's Office argues that the willfulness language in § 793(e) "alleviates" and "may mitigate" the statute's vagueness problems, and that willfulness is "for the jury to resolve."  Oppn. at 21, 22 (cleaned up).  These contentions ignore the Eleventh Circuit's reasoning that "by the requirement of proof beyond a reasonable doubt, the promise of due process later on does not obliterate the vagueness doctrine altogether."  *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 948 (11th Cir. 2023) (cleaned up).

Here, mitigation and alleviation are not enough.  "[T]he presence of a bad purpose or evil intent alone may not be sufficient."  *Screws v. United States*, 325 U.S. 91, 103 (1945).  In *Cohen Grocery*, the Supreme Court struck a statute, notwithstanding a willfulness element, because the remaining language left open "the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against."  255 U.S. 81, 89 (1921).  So too here.

It bears repeating that willfulness was not what persuaded the *Gorin* Court to reject a vagueness challenge.  There, the Court relied on a scienter requirement that required the prosecution to prove something far more specific: "intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or to the advantage of any foreign nation."  312 U.S. at 21 n.1.  The lesser requirement of willfulness, which may have been sufficient

9

in other cases, does not adequately address the *sui generis* problems presented by President Trump's as-applied challenge to § 793(e).

## II. Count 19 Should Be Dismissed

Count 19 fails as a matter of law, pursuant to Rule 12(b)(3)(B)(v), and retention of the document was not "unauthorized," under § 793(e), because the Energy Department's records demonstrate that President Trump maintained a "Q" clearance during the time period alleged in that Count. *See, e.g.*, *United States v. Berdeal*, 595 F. Supp. 2d 1326, 1328 (S.D. Fla. 2009). The Special Counsel's Office has elected to proffer evidence in response to this motion, and courts evaluate such proffers when prosecutors choose to make them. *See* Oppn. at 24; *see also United States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009). If the Court chooses not to evaluate the Office's proffer at this stage, through a hearing or otherwise, then the Office's opposition to this motion has reinforced the need for further disclosures regarding the Energy Department's decision-making relating to President Trump and other Presidents because these disclosures are "material" to an important trial defense and "favorable" to President Trump under *Brady* and *Giglio*. *See* ECF No. 262 at 38-42; ECF No. 300 at 24-25.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts 1–32 of the Superseding Indictment as unconstitutionally vague and, to the extent necessary to resolve factual disputes relating to Count 19, should conduct a hearing regarding President Trump's "Q" clearance.

Dated: March 13, 2024          Respectfully submitted,

<div style="margin-left: 3em;">

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

</div>

## **CERTIFICATE OF SERVICE**

I, Christopher Kise, certify that on March 13, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher Kise*
Christopher Kise