**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,　　　　　**Case No. 23-80101-CR**
　　　　　　　　　　　　　　　　　　　**CANNON/REINHART**
vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

　　　　Defendants.
_____

**PRESIDENT TRUMP'S REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS THE INDICTMENT BASED ON THE UNLAWFUL
APPOINTMENT AND FUNDING OF SPECIAL COUNSEL JACK SMITH**

**TABLE OF CONTENTS**

I. THE SPECIAL COUNSEL'S POSITION VIOLATES THE APPOINTMENTS CLAUSE .................................................................................................................. 1

    A. The Caselaw Cited By The Special Counsel's Office Is Incorrect And Non-Binding ... 1

    B. Section 515 Does Not Authorize The Appointment ......................................................... 2

    C. Section 533 Does Not Authorize The Appointment ......................................................... 3

II. THE SPECIAL COUNSEL'S POSITION VIOLATES THE APPROPRIATIONS CLAUSE .................................................................................................................. 4

III. CONCLUSION ........................................................................................................... 8

President Donald J. Trump respectfully submits this reply in support of his motion to dismiss the Superseding Indictment based on the unlawful appointment of Special Counsel Jack Smith (the "Motion"), and in response to the opposition brief filed by the Special Counsel's Office, ECF No. 374 (the "Opposition").

## I. The Special Counsel's Position Violates The Appointments Clause

The Special Counsel's Office does not dispute that the Special Counsel is an "officer" of the United States, that the default under the Appointments Clause is that an officer is a principal officer, and that the Reno Regulations replaced the expired statutory "Independent Counsel regime," Opp'n at 2, 5. The Office provides no contrary authority suggesting that "established by law" in the Appointments Clause means anything but a congressional enactment. *See Selia Law LLC v. CFPB*, 140 S. Ct. 2183, 2227 (2020) (Kagan, J., concurring) ("[T]he President can appoint principal officers, but only as the legislature 'shall establish by Law.'"). Instead, the Office relies on inapposite caselaw and 28 U.S.C. §§ 515 and 533, which do not confer the authority that the Appointments Clause requires.

### A. The Caselaw Cited By The Special Counsel's Office Is Incorrect And Non-Binding

The *Nixon* Court's citation to § 515 in connection with discussion of an issue that was not in dispute and not central to the Court's holding is not binding here. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed."); *see also* ECF No. 364-1 at 16-18 (further distinguishing *Nixon*).

The Special Counsel's Office cites two cases from the D.C. Circuit that wrongly applied *Nixon* as binding precedent. *See* Opp'n at 4, 8 (citing *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019) and *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)). In *In re Grand Jury*

*Investigation*, the D.C. Circuit was required to apply *In re Sealed Case* as "binding precedent" in a way that this Court is not. 916 F.3d at 1054. In *In re Sealed Case*, the D.C. Circuit acknowledged that the Reno Regulations "do not explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision," and then cited *Nixon* in order to "read [the Reno Regulations] as accommodating the delegation at issue here." 829 F.2d at 55; Opp'n at 8. *In re Sealed Case* reasoned that an Independent Counsel appointed by the Attorney General is an inferior officer yet is "free of ongoing supervision by the Attorney General." 829 F.2d at 56. However, in another case cited by the Office, the Supreme Court made clear that every inferior officer must be subordinate to a superior officer. *Edmond v. United States*, 520 U.S. 651, 662 (1997) ("Whether one is an 'inferior' officer depends on whether he has a superior."); *see also* Opp'n at 5 n.1. *Edmond* serves as another reason, in addition to the fact that *Nixon* is non-binding dicta, for the Court not to follow *In re Sealed Case*.

## B. Section 515 Does Not Authorize The Appointment

Section 515 allows the Attorney General to "specially appoint[]" U.S. Attorneys in certain prosecutions. 28 U.S.C. § 515(a). The statute does not, however, authorize the Attorney General to appoint attorneys *other than* Senate-confirmed U.S. Attorneys to exercise the Department's full prosecutorial authority, as the Special Counsel's Office seeks to do here. Interpreting § 515(a) in that fashion would permit the Attorney General to appoint prosecutors more powerful than a U.S. Attorney without input from Congress, as Jack Smith wields the full prosecutorial power of the United States, yet answers to no one and exercises nationwide jurisdiction. Such unchecked power flies in the face of the well-established and essential limits on the exercise of prosecutorial

2

discretion.[1]  If U.S. Attorneys are principal officers—and they are—then so too must a Special Counsel's appointment require Senate confirmation.

### C.  Section 533 Does Not Authorize The Appointment

Section 533 is not cited in the Reno Regulations and cannot support the Special Counsel's appointment.  The statute is located in a part of the U.S. Code that addresses the FBI, not Special Counsels, and the expansive interpretation assigned to § 533 by the Special Counsel's Office would eviscerate the statutory structure.  *See* Mot. at 5-6.  If, as the Office claims, § 533 "aligns perfectly with a Special Counsel, who combines the typical roles of law enforcement and prosecutors," then the Office would not need to partner with the FBI—as they have done in connection with this case and in the prosecution in the District of Columbia.  Opp'n at 10.

The analogy by the Special Counsel's Office to 49 U.S.C. § 323(a) also fails.  Opp'n at 10. Section 323 specifically provides that the Secretary of Transportation "may appoint . . . officers and employees of the Department of Transportation."  49 U.S.C. § 323(a).  Many department heads have similar authority.  *See, e.g.*, 7 U.S.C. § 610(a) (Agriculture); 20 U.S.C. § 3461 (Education); 42 U.S.C. § 913 (Health and Human Services).  But Congress gave the Attorney General power to "appoint such additional officers and employees as he deems necessary[,]" 18 U.S.C. § 4041, only for the Bureau of Prisons, not other DOJ components.

---

[1] The Special Counsel's Office claims here that Smith is subject to the direction and supervision of the Attorney General, but the Office assured the judge presiding over the District of Columbia prosecution that "coordination with the Biden Administration" is "non-existent."  ECF No. 191 at 6, *United States v. Trump*, No. 23 Cr. 257 (D.D.C. Dec. 27, 2023).  There is significant tension between the Office's assurances to that court that Smith *is* independent, and not prosecuting the Republican nominee for President at the direction of the Biden Administration, and the Office's assurance here that Smith *is not* independent and is instead so thoroughly supervised and accountable to President Biden and Attorney General Garland that this Court should not be concerned about such tremendous power being exercised to alter the trajectory of the ongoing presidential election.

3

## II.     The Special Counsel's Position Violates The Appropriations Clause

The Special Counsel's Office argues that Smith lacks the "same level of independence as the statutory Independent Counsel," but argues that he remains independent enough, even under the Reno Regulations, to qualify for the appropriation. Opp'n at 16. In 2004, however, DOJ told the GAO that Special Counsel Fitzgerald's exclusion from the Reno Regulations "contributes to the Special Counsel's independence." *The Hon. Ted Stevens Chairman Comm. on Appropriations*, 2004 WL 2213560, at *3 (Sept. 30, 2004). Special Counsel Fitzgerald was delegated the full authority of the Attorney General and powers that Acting Attorney General Comey described as "significantly broader" than those given to a Special Counsel subject to the Special Counsel regulations.[2] The more expansive authority granted to Fitzgerald, and his independence from the Attorney General, was decisive for the GAO in its assessment of his access to the permanent appropriation. *See* 2004 WL 2213560, at *3.

Prior to the Reno Regulations, attorneys appointed pursuant to the Independent Counsel statute were permitted to depart from DOJ procedures "where such procedures were 'inconsistent with the purposes' of the law, such as when they would compromise his or her independence by requiring notification and approval of prosecutorial strategy by Justice Department officials or the Attorney General." CRS Report at 6 n.22.[3] The Reno Regulations, applicable to the Special Counsel's Office, created a new type of prosecutor who was much more subordinate to DOJ than Fitzgerald. Although not subject to "day-to-day" supervision, Special Counsels are bound by the Department's "review and approval procedures." 28 C.F.R. § 600.7(a).

---

[2] DOJ Press Conference, Appointment of Special Prosecutor (Dec. 30, 2003), https://irp.fas.org/news/2003/12/doj123003.html.

[3] CRS, RL31246, Independent Counsel Law Expiration and the Appointment of "Special Counsels" (Jan. 15, 2002) (the "CRS Report").

4

Section 600.7(a) of the Reno Regulations contemplates "a variety of levels of review and approval *before the step can be taken*," in order to avoid Special Counsels being "left without relevant controls and without Departmental guidance in the most sensitive situations." 64 Fed. Reg. 37038, 37039 (July 9, 1999) (emphasis added). Special Counsels must notify the Attorney General of significant events "in conformity with the Departmental guidelines with respect to Urgent Reports." 28 C.F.R. § 600.8(b). The notification requirement requires an "opportunity for consultation," so that "the Attorney General can discharge his or her responsibilities with respect to the investigation" with respect to issues such as "seeking an indictment in sensitive cases" and "other significant investigative steps," like executing search warrants targeting public figures. 64 Fed. Reg. at 37040; *see also* Justice Manual §§ 1-13.100 – 1.13.140 (submission of "Urgent Reports" to "Department leadership"); *id.* § 9-90.020 (setting forth prior approval and consultation requirements in "National Security Matters," including for arrests, indictments, and search warrants). In "extraordinary circumstances," only, a Special Counsel may bypass the intermediate layers of review and approval and consult directly with the Attorney General. 28 C.F.R. § 600.7(a). Even then, the Attorney General has an avenue to overrule such action. *See id.* § 600.7(b) ("If the Attorney General concludes that a proposed action by a Special Counsel should not be pursued, the Attorney General shall notify Congress as specified in § 600.9(a)(3).").

Citing these and other provisions, the Congressional Research Service, outside legal experts and even the government have concluded that the Reno Regulations contain provisions inconsistent with independence. *See* CRS Report at 4 ("[I]t seems appropriate that such personnel are called Special Counsels, since their designation as 'independent' counsels might be considered somewhat of a misnomer."); Julian A. Cook, III, *Presidential Crimes Matter*, 68 UCLA L. Rev. Discourse 222, 231 (2020) (finding that the Reno Regulations "deprive special counsels of any

5

meaningful investigative and prosecutorial independence"); Br. of United States at 27, *In re Grand Jury Investigation*, No. 18-3052 (D.C. Cir. Sept. 28, 2018), *available at* 2018 WL 4680139 (defending an Appointments Clause challenge to Special Counsel Mueller by arguing that an "independent counsel . . . was subject to *less* oversight and supervision than is the Special Counsel here") (emphasis in original).

The historical citations by the Special Counsel's Office do not address the specific argument at hand, which is that prosecutors appointed pursuant to the Reno Regulations do not enjoy the requisite level of independence to access the appropriation. The only relevant examples cited by the Office are Jack Danforth and John Durham. Opp'n at 19-20. When Danforth was appointed, the Reno Regulations were brand new. Danforth issued findings in less than 14 months, and the only person he indicted pled guilty without litigation. Thus, no one had an incentive to challenge Danforth's funding. That leaves Durham, which is a single example insufficient to establish a "longstanding practice." Opp'n at 4.

To be clear, offering the Special Counsel a blank check has harmed President Trump's substantial rights, and DOJ simply could not have funded the entirety of Jack Smith's expansive politically motivated witch hunt from an alternative source. *See* Opp'n at 20-21. What has transpired since Smith's appointment by the Attorney General is exactly what caused concern as the Independent Counsel Act expired. *See* Mot. at 9-10 (quoting from Independent Counsel Hearing testimony that "insulation . . . eliminates the incentive to show restraint in the exercise of prosecutorial power" and "provide[s] an impetus to investigate the most trivial matter to an unwarranted extreme, and to resolve all doubt against the subjects of an investigation"). Since the founding, resource constraints on prosecutors have been regarded as an indispensable guarantee of substantive fairness. "The purse & the sword ought never to get into the same hands whether

6

Legislative or Executive." 1 The Records of the Federal Convention of 1787 at 139-40 (M. Farrand ed. 1937). The lack of any such constraints here has allowed the Special Counsel's Office to engage in an unabashed political crusade with zero accountability.

The Special Counsel's Office is pursuing two different cases in two jurisdictions in order to maximize interference in the ongoing presidential election. This tactic is the luxury of a prosecutor facing no resource constraints. And it is far from a forgone conclusion, as the Office seems to treat it, that DOJ "could readily have funded the Special Counsel from other appropriations that were available." *See* Opp'n at 23. In 2019, for example, DOJ was forced to prioritize its antitrust review of Google over Apple because it could not afford to pursue both.[4]

Even if DOJ could shift to alternate funding sources for the Special Counsel's Office, that possibility does not cure the Appropriations Clause defect. *Cf. CFSA v. CFPB*, 51 F.4th 616, 641, 642 (5th Cir. 2022) (rejecting argument that "Congress can alter the Bureau's perpetual self-funding scheme anytime it wants" and reasoning that the constitutional defect had "inflicted harm" and entitled defendant to a remedy). Where an official "exercise[s] . . . power that the actor did not lawfully possess," the "remedy in those cases" is "invalidation of the unlawful actions." *Id.* at 642 (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1787-88 (2021)).

---

[4] McCabe, *U.S. Moves Closer to Filing Sweeping Antitrust Case Against Apple*, NY Times (Jan. 5, 2024).

### III.     Conclusion

For the foregoing reasons, President Trump respectfully submits that the Court should dismiss the Superseding Indictment pursuant to the Appointments Clause and the Appropriations Clause.

Dated: March 24, 2024　　　　　　　　　　Respectfully submitted,

*/s/ Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## **CERTIFICATE OF SERVICE**

I, Christopher Kise, certify that on March 24, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher Kise*
Christopher Kise