UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

       Defendants.
_____

Case No. 23-80101-CR
**CANNON/REINHART**

**PRESIDENT TRUMP'S REPLY BRIEF IN FURTHER SUPPORT OF
MOTION TO DISMISS COUNTS 1 – 32 BASED ON PRESIDENTIAL IMMUNITY**

**TABLE OF CONTENTS**

Introduction .......................................................................................................................... 1
Discussion ............................................................................................................................ 1
    I.    The Court Should Hold The Motion In Abeyance Pending Supreme Court Review ..... 1
    II.   Counts 1 – 32 Are Based In Part On President Trump's Official Acts .......................... 2
    III.  The Motion Is Not Frivolous ....................................................................................... 4
Conclusion ........................................................................................................................... 6

## INTRODUCTION

President Donald J. Trump respectfully submits this reply in support of his motion to dismiss Counts 1 – 32 based on presidential immunity (the "Motion"), and in response to the opposition brief filed by the Special Counsel's Office, ECF No. 376 (the "Opposition").

The same prosecutors who wrongly argued that 18 U.S.C. § 793(e) is "clear," ECF No. 377 at 1, now claim that a motion based on an issue of first impression that is currently on review before the Supreme Court is "frivolous," in an effort to avoid any necessary appellate review. If nothing else, these prosecutors are consistent. Consistent in their willingness to say and do everything in their power to try to rush this novel and flawed case to trial—notwithstanding complex legal issues and ongoing discovery violations—in support of President Biden's election-interference mission against his leading opponent.

This timely motion to dismiss is most certainly not frivolous or dilatory. Based on the allegations in the Superseding Indictment and subsequent concessions by the Special Counsel's Office, Counts 1 – 32 are based in part on President Trump's official acts during his first term in Office. Accordingly, the Court should hold this motion in abeyance pending the Supreme Court's review of the presidential immunity doctrine in *Trump v. United States*, dismiss Counts 1 – 32 after the Supreme Court's decision, and preclude evidence of President Trump's official acts at any potential trial in this case.

## DISCUSSION

I. **The Court Should Hold The Motion In Abeyance Pending Supreme Court Review**

After President Trump filed this motion to dismiss, as the Court is aware, *see* ECF No. 357 at 3, the Supreme Court agreed to address the following question in *Trump v. United States*: "Whether and if so to what extent does a former President enjoy presidential immunity from

criminal prosecution for conduct alleged to involve official acts during his tenure in office." *Trump v. United States*, 2024 WL 833184, at *1 (Feb. 28, 2024).

President Trump filed his opening merits brief with the Supreme Court on March 19, 2024,[1] and we incorporate by reference the arguments therein. Argument is scheduled to occur on April 25. Thus, while we disagree with all of the contentions in Part II.B of the Opposition filed by the Special Counsel's Office, including for the reasons set forth in the Motion as well as the Supreme Court brief, judicial economy considerations favor holding this motion in abeyance pending the Supreme Court's decision.

## II. Counts 1 – 32 Are Based In Part On President Trump's Official Acts

The Special Counsel's Office seeks to dodge the issue entirely by claiming that Counts 1 – 32 are not based on official acts. However, the Office's argument would require the Court to rewrite the operative charging instrument.

The timeframe alleged for each of Counts 1 – 32 begins on January 20, 2021. ECF No. 85 at 32-37. President Trump was the Commander in Chief until noon that day. As alleged by the Office in the Superseding Indictment, President Trump allegedly made the decision to retain the documents in question, by "caus[ing]" them to be removed from the White House, while he was still President. ECF No. 85 ¶ 4. According to the Superseding Indictment, the decision allegedly occurred as President Trump "was preparing to leave the White House," when President Trump "and his White House staff . . . packed items" that the Office believes "contain[ed] hundreds of classified documents." *Id.* ¶ 25. In two court filings in this case, the Office has conceded that these alleged decisions occurred during President Trump's first term. ECF No. 277 at 3 (arguing

---

[1] *See* Petitioner's Br., *Trump v. United States*, No. 23-939 (Mar. 19, 2024), available at https://www.supremecourt.gov/DocketPDF/23/23-939/303418/20240319150454815_23-939%20-%20Brief%20for%20Petitioner.pdf.

that the "genesis" of this case dates back to "the tail end of the Trump Administration itself"); ECF No. 373 at 19 (seeking "[j]udicial review of the records' status here, based on Trump's eleventh-hour actions at the end of his presidency").

When President Trump allegedly made the retention decision, as President, he did so with the authority to designate records as "personal" pursuant to the Presidential Records Act, 44 U.S.C. § 2203(b), and with the ability to declassify records pursuant to Article II of the Constitution and §§ 1.3(1) and 3.1(b)(1) of Executive Order 13526. These decisions were well within the "outer perimeter" of President Trump's "official responsibility." *Nixon v. Fitzgerald*, 457 U.S. 731, 755-56 (1982) (quoting *Barr v. Matteo*, 360 U.S. 564, 575 (1959)). So too was President Trump's July 26, 2018 statement regarding the termination of John Brennan's security clearance, which the Office improperly seeks to use against President Trump in pretrial motions and at trial. ECF No. 85 ¶ 24; *see, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 701 (2018) ("The President of the United States possesses an extraordinary power to speak to his fellow citizens . . . ."); JEFFREY K. TULIS, THE RHETORICAL PRESIDENCY 4 (2017) ("Today it is taken for granted that presidents have a *duty* constantly to defend themselves publicly . . . . And for many, this presidential 'function' is not one duty among many, but rather the heart of the presidency—its essential task." (emphasis in original)).

President Trump is entitled to "every opportunity" to prevent official-acts evidence from being used against him at trial, and the Court must preclude such evidence. *Blassingame v. Trump*, 87 F.4th 1, 22 (D.C. Cir. 2023). Counts 1 – 32 should be dismissed, following the decision in *Trump v. United States*, because these Counts are based on official retention decisions that President Trump made as President.

3

Moreover, evidence of President Trump's official acts is not admissible at any trial—should one be necessary—on the remaining counts. For example, in *United States v. Johnson*, the Supreme Court held that, in a case involving "a criminal statute of general application," the prosecutors could "not draw in question the legislative acts of the defendant member of Congress or his motives for performing them" under the Speech or Debate Clause. 383 U.S. 169, 185 (1966). "[A]ll references to this aspect of the conspiracy" had to be "eliminated" so that the case was "wholly purged of elements offensive to the Speech or Debate Clause." *Id.* The same concept applies in the context of presidential immunity.

### III. The Motion Is Not Frivolous

Wrongly assuming a victory in the Supreme Court, and on this motion, the Special Counsel's Office asks the Court to designate the motion as frivolous in an effort to foreclose potential appellate rights if the Office's predictions come to pass. This is not the first time that the Office has wrongfully sought to deny President Trump access to rights that should be available to all defendants, and the Court should reject this most recent attempt.

The Special Counsel's Office made a similar request to the District Court in the District of Columbia, but the court did not find that President Trump's immunity motion—which is now under review at the Supreme Court—was frivolous. *Compare* Gov't's Br. at 62, *United States v. Trump*, No. 23 Cr. 257 (TSC) (D.D.C. 2023) (ECF No. 139), *with United States v. Trump*, 2023 WL 8359833 (D.D.C. Dec. 1, 2023) (opinion including no finding of frivolousness). Here, the Office's argument is based on the false claim that Counts 1 – 32 "entirely post-date" President Trump's "term of office." Opp'n at 21. As noted above, that argument is refuted by paragraphs 4 and 25 of the Superseding Indictment and written assertions by the Office acknowledging that their

4

theory of the case is based in part on alleged actions and decisions during the "tail end" and "eleventh hour" of President Trump's first term.

Finally, cases such as *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) and its progeny present only a "narrow" exception to the general rule that a "district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1303 (D.C. Cir. 1997). In fact, the Supreme Court recently cited *Dunbar* for the proposition that, "[i]n the Circuits that have considered the issue in the analogous contexts of qualified immunity and double jeopardy, . . . district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 742 (2023). *Coinbase* cited *Dunbar* while reaffirming the well-established mandate rule. *See id.* at 743 ("A right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings is therefore like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible.").

The "narrow" exception created by the *Dunbar* panel in 1980 applies, for example, where a defendant "filed his double jeopardy motion only a few days before the scheduled trial date" and appealed the denial of the motion "on the day of the trial." 611 F.2d at 988. That is plainly not what happened here. Similarly, in *United States v. Schwarz*, the court found a double-jeopardy appeal frivolous because the basis for the motion was "apparent nearly two-years ago" and filed "less than a month before trial." 2022 WL 5183117, at *2 (S.D. Fla. Oct. 5, 2022). Our motion is timely, and we are confident it will be resolved well in advance of any trial in this case. The Special Counsel's Office cites *Andre v. Castor*, where a court applied *Dunbar* to an interlocutory appeal relating to qualified immunity because there was "nothing for the defendants to appeal, in that the Court deferred ruling . . . ." 963 F. Supp. 1169, 1170 (M.D. Fla. 1997); Opp'n at 22. To

5

be clear, we do not intend to proceed in the manner chosen by the appellant in *Andre*, either. *Dunbar* therefore has no application to this motion, which is not frivolous, despite the Office's documented affinity for that meritless argument.

## CONCLUSION

For the foregoing reasons, the Court should hold this motion in abeyance pending the Supreme Court's decision in *Trump v. United States* and, following that decision, dismiss Counts 1 – 32.

Dated: March 24, 2024

Respectfully submitted,

*/s/ Todd Blanche*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## **CERTIFICATE OF SERVICE**

I, Christopher Kise, certify that on March 24, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher Kise*
Christopher Kise