UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 98-721-Cr-LENARD/DUBÉ (s)(s)

UNITED STATES OF AMERICA,       )
                                )
v.                              )
                                )
GERARDO HERNANDEZ,              )
    a/k/a Manuel Viramontez,     )
    a/k/a "Giro,"                )
    a/k/a "Giraldo,"             )
JOHN DOE No. 2,                 )
    a/k/a Luis Medina III,       )
    a/k/a "Allan,"               )
    a/k/a "Johnny,"              )
    a/k/a "Oso,"                 )
RENE GONZALEZ,                  )
    a/k/a "Castor,"              )
    a/k/a "Iselin,"              )
ANTONIO GUERRERO,               )
    a/k/a "Lorient,"             )
JOHN DOE No. 3,                 )
    a/k/a Ruben Campa,           )
    a/k/a "Vicky,"               )
    a/k/a "Camilo,"              )
    a/k/a "Oscar,"               )
_____ )



FILED by ___ D.d.

JUN 4 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in deciding this case. When I have finished you will go to the jury room and begin your discussions – what we call your deliberations.

It will be your duty to decide whether the Government has proved beyond a reasonable doubt

1

the specific facts necessary to find the Defendants guilty of the crimes charged in the indictment.

You must make your decision only on the basis of the testimony and other evidence presented here during the trial; and you must not be influenced in any way by either sympathy or prejudice for or against the Defendants or the Government.

You must also follow the law as I explain it to you whether you agree with that law or not; and you must follow all of my instructions as a whole. You may not single out, or disregard, any of the Court's instructions on the law.

The indictment or formal charge against any Defendant is not evidence of guilt. Indeed, every Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove innocence or to produce any evidence at all; and if a Defendant elects not to testify, you should not consider that in any way during your deliberations. The Government has the burden of proving a Defendant guilty beyond a reasonable doubt, and if it fails to do so you must find that Defendant not guilty.

Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that a Defendant's guilt be proved beyond all possible doubt. It is only required that the Government's proof exclude any "reasonable doubt" concerning the Defendant's guilt.

A "reasonable doubt" is a real doubt, based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. If you are convinced that the Defendant has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.

As I said earlier, you must consider only the evidence that I have admitted in the case. The term "evidence" includes the testimony of the witnesses and the exhibits admitted in the record. Remember that anything the lawyers say is not evidence in the case. It is your own recollection and interpretation of the evidence that controls. What the lawyers say is not binding upon you.

In considering the evidence you may make deductions and reach conclusions which reason and common sense lead you to make; and you should not be concerned about whether the evidence is direct or circumstantial. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Now, in saying that you must *consider* all of the evidence, I do not mean that you must *accept* all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence tending to prove that a witness testified falsely concerning some important fact; or, whether there was evidence that at some other time a witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.

In this case the Government called as one of its witnesses a person named as a co-Defendant in the indictment, with whom the Government has entered into a plea agreement providing for the possibility of a lesser sentence than the witness would otherwise be exposed to. Such plea bargaining, as it's called, has been approved as lawful and proper, and is expressly provided for in the rules of this Court. However, a witness who hopes to gain more favorable treatment may have a reason to make a false statement because the witness wants to strike a good bargain with the Government. So, while a witness of that kind may be entirely truthful when testifying, you should consider such testimony with more caution than the testimony of other witnesses.

And, of course, the fact that a witness has plead guilty to the crime charged in the indictment is not evidence, in and of itself, of the guilt of any other person.

The government and the defendants have stipulated, or agreed, what certain individuals' testimony would be if those individuals were called as witnesses. You should consider that testimony in the same way as if those individuals had given the testimony here in court.

During the trial, certain testimony has been presented by way of depositions. The depositions, conducted pursuant to Court order, consisted of sworn, recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing, or on a videotape, under oath. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

Objections during the video depositions were ruled on by the Court and edited out for your convenience.

At this time I will explain the indictment which charges 26 separate offenses called "counts." I will not read it to you at length because you will be given a copy of the indictment for reference during your deliberations.

In summary, Count 1 charges that the Defendants knowingly and wilfully conspired together to act as agents of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General as required by law, and to defraud the United States of and concerning its governmental functions and rights. Count 2 charges that Defendants Gerardo Hernandez, John Doe No. 2, also known as Luis Medina III, and Antonio Guerrero knowingly and wilfully conspired together to communicate, deliver and transmit, directly and indirectly, to a foreign government, that is, the Republic of Cuba, information relating to the national defense of the United States. Count 3 charges that Defendant Gerardo Hernandez conspired with other persons to perpetrate murder, that is, the unlawful killing of human beings with malice aforethought, and premeditated intent in the special maritime and territorial jurisdiction of the United States.

Counts 4 through 26, respectively, charge the commission of what are referred to as substantive offenses, namely that the Defendants knowingly acted as agents of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General as required by law; that certain of the Defendants caused others so to act; that certain Defendants possessed, accepted, obtained and received documents prescribed by statute and regulation for entry in the United States, which documents the defendants knew to be forged, counterfeited, altered and falsely made, and to have been otherwise procured by fraud and unlawfully obtained; that certain Defendants knowingly

12

possessed in and affecting interstate and foreign commerce, with intent to use unlawfully, five or more identification documents not lawfully issued for the use of the Defendants, and false identification documents, and that a certain Defendant wilfully and knowingly made a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States. I will explain the law governing those substantive offenses in a moment.

First, however, as to Counts 1, 2 and 3, you will note that Defendants are not charged in those Counts with committing a substantive offense; rather, they are charged with having conspired to do so.

Count 1 of the indictment charges defendants Gerardo Hernandez; John Doe No. 2 a/k/a Luis Medina III; Rene Gonzalez; Antonio Guerrero; and John Doe No. 3 a/ka/ Ruben Campa.

Title 18, United States Code, Section 371, makes it a separate Federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would amount to another Federal crime or offense.

Title 18, United States Code, Section 371, also makes it a Federal crime or offense for anyone to conspire or agree with someone else to defraud the United States or any of its agencies. To "defraud" the United States means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery.

So, under this law, a "conspiracy" is an agreement or a kind of "partnership" in criminal purposes in which each member becomes the agent or partner of every other member.

In order to establish a conspiracy offense it is *not* necessary for the Government to prove that all of the people named in the indictment were members of the scheme; *or* that those who *were* members had entered into any formal type of agreement; *or* that the members had planned together *all* of the details of the scheme or the "overt acts" that the indictment charges would be carried out in an effort to commit the intended crime.

Also, because the essence of a conspiracy offense is the making of the agreement itself (followed by the commission of any overt act), it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.

What the evidence in the case *must* show beyond a reasonable doubt is:

14

*First:* That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment;

*Second:* That the Defendant, knowing the unlawful purpose of the plan, wilfully joined in it;

*Third:* That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the indictment; and

*Fourth:* That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

An "overt act" is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme, and without knowing who all of the other members are. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and wilfully joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before, and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

15

In this instance, with regard to the alleged conspiracy charged in Count 1, the indictment charges that the Defendants conspired to act as agents of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General as required by law, and to defraud the United States of and concerning its governmental functions and rights. It is charged, in other words, that they conspired to commit two separate, substantive crimes or offenses.

In such a case it is not necessary for the Government to prove that the Defendant under consideration willfully conspired to commit both of those substantive offenses. It would be sufficient if the government proves, beyond a reasonable doubt, that the Defendant willfully conspired with someone to commit one of those offenses; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the two offenses the Defendant conspired to commit.

In order to conclude that a Defendant was part of a conspiracy to act as agents of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General, you must conclude that the Defendant knew that at least one co-conspirator other than himself acted as an agent of a foreign government, that is, the Republic of Cuba, without prior notification to the Attorney General.

You are further instructed, with regard to the alleged conspiracy offense charged in Count 1, that proof of several separate conspiracies is not proof of the single, overall conspiracy charged in Count 1 of the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges in Count 1.

What you must do is determine whether the single conspiracy charged in Count 1 of the indictment existed between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the Defendants of that charge. However, if you decide that such a conspiracy did exist, you must then determine who the members were; and, if you should find that a particular Defendant was a member of some other conspiracy, and was not a member of the conspiracy charged in Count 1 of the indictment, then you must acquit that Defendant of Count 1.

In other words, to find a Defendant guilty of Count 1 you must unanimously find that such Defendant was a member of the conspiracy charged in Count 1 of the indictment and not a member of some other separate conspiracy.

Count 2 of the indictment charges the defendants Gerardo Hernandez; John Doe No. 2 a/k/a Luis Medina III; and Antonio Guerrero.

Title 18, United States Code, Section 794(c), makes it a Federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would amount to certain particular Federal crimes or offenses, that is, communicating, delivering and transmitting, directly and indirectly, to a foreign government, information relating to the national defense of the United States.

I have already described to you the law of conspiracy, as it pertains to Count 1. This law applies in the same way to Count 2. The difference is that Count 2 charges a conspiracy to violate Title 18, United States Code, Section 794(a).

Title 18, United States Code, Section 794(a) reads, in part:

"Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any foreign government . . . either directly or indirectly, any . . . information relating to the national defense" shall be guilty of an offense against the United States.

In order to establish a violation of Count 2 of the indictment, the government must prove all of the following beyond a reasonable doubt:

*First*, that on or about the dates charged in Count 2 of the indictment, the defendants wilfully and unlawfully combined, conspired, confederated and agreed, with each other and with other

18

persons, to communicate, deliver and transmit, directly and indirectly, information to a foreign government, that is, the Republic of Cuba, as charged in the indictment;

*Second,* that information the defendants conspired to communicate, deliver or transmit related to the national defense;

*Third,* that information the defendants conspired to communicate, deliver or transmit was of a type that the government sought to protect or safeguard from public disclosure;

*Fourth,* that the defendants acted with the intent or with reason to believe that the information would be used to the injury of the United States or to the advantage of a foreign nation; and

*Fifth,* that one or more overt acts in furtherance of the conspiracy was committed.

The term "national defense" is a broad term which refers to the United States military and naval establishments and to all related activities of national preparedness.

To prove that information relates to the national defense, there are two things that the Government must prove. First, it must prove that the disclosure of the material would be potentially damaging to the United States or might be useful to an enemy of the United States. And second, it must prove that the material is closely held by the United States government.

Where the information has been made public by the United States government and is found in sources lawfully available to the general public, it does not relate to the national defense.

Similarly, where sources of information are lawfully available to the public and the United States government has made no effort to guard such information, the information itself does not relate to the national defense.

"Reason to believe" as that term is used in this instruction means that the defendant knew

19

facts from which he concluded or reasonably should have concluded that the information relating to the national defense could be used for the prohibited purposes.

In considering whether or not the defendant acted with intent or having reason to believe that the material would be used to the injury of the United States or to the advantage of a foreign country, you may consider the nature of the information involved.

The Government does not have to prove that the information had been or would be used both to injure the United States and to the advantage of a foreign country. The statute reads in the alternative. So, proof of either will suffice.

Further, the country to whose advantage the information would be used need not be an enemy of the United States. The statute does not distinguish between friend and enemy.

Count 3 charges defendant Gerardo Hernandez.

Title 18, United States Code, Section 1117 makes it a separate federal crime or offense for anyone to conspire or agree with someone else to do something which if actually carried out, would amount to a violation of Title 18, United States Code, Section 1111. So, under this law, a "conspiracy" is an agreement or a kind of "partnership" in criminal purposes in which each member becomes the agent or partner of every other member.

In order to establish a conspiracy offense it is not necessary for the Government to prove that all of the people named in the indictment were members of the scheme; or that those who were members had entered into any formal type of agreement; or that the members had planned together all of the details of the scheme or the "overt acts" that the indictment charges would be carried out in an effort to commit the intended crime.

Also, because the essence of a conspiracy offense is the making of the agreement itself (followed by the commission of any overt act), it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.

What the evidence in the case must show beyond a reasonable doubt is:

First: That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment;

Second: That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it;

Third: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the

21

indictment; and

Fourth:     That such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

An "overt act" is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

A person may become a member of a conspiracy without knowing all of the details of the unlawful scheme, and without knowing who all of the other members are. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before, and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

Title 18, United States Code, Section 1111, makes it a Federal crime or offense for anyone to murder another human being within the special maritime or territorial jurisdiction of the United States.

A Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

| | |
|---|---|
| First: | That the victims named in the indictment are dead: |
| Second: | That the Defendant caused the death of the victims with "malice aforethought"; |
| Third: | That the Defendant did so with "premeditated intent;" and |
| Fourth: | That the killing occurred within the special maritime or territorial jurisdiction of the United States. |

The special maritime or territorial jurisdiction of the United States includes an aircraft, belonging in whole or in part to the United States, or to any citizen thereof, or to any corporation created by or under the laws of the United States or any state, while such aircraft is in flight over the high seas. The high seas include all waters beyond the territorial seas [twelve (12) nautical miles] of the United States and beyond the territorial seas [twelve (12) nautical miles] of the Republic of Cuba.

To kill with "malice aforethought" means to kill another person deliberately and intentionally; but the Government need not prove that a Defendant hated the person killed or felt ill will toward the victim at the time.

Killing with "premeditated intent" is required in addition to proof of malice aforethought in

23

order to establish the offense of first degree murder. Premeditation is typically associated with killing in cold blood and requires a period of time in which the accused deliberates, or thinks the matter over, before acting. The law does not specify or require any exact period of time that must pass between the formation of the intent to kill and the killing itself. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.

You are instructed that the location of the alleged murder, as described in the indictment, if you find beyond a reasonable doubt that such offense occurred there, would be within the special maritime or territorial jurisdiction of the United States.

Count 4 charges Defendant Gerardo Hernandez in connection with purported passport #042259745, bearing his photographic likeness.

Count 6 charges Defendant Gerardo Hernandez in connection with purported passport #Z5823064, bearing the photographic likeness of defendant John Doe No. 4, a/k/a Albert Manuel Ruiz.

Count 7 charges Defendant John Doe No. 3, a/k/a Ruben Campa, in connection with purported passport #043291559, bearing his photographic likeness.

Count 9 charges Defendant John Doe No. 2, a/k/a Luis Medina III, in connection with purported passport #043705311, bearing his photographic likeness.

Count 11 charges Defendant John Doe No. 2, a/k/a Luis Medina III, in connection with passport #044551646, bearing his photographic likeness.

Title 18, United States, Section 1546 makes it a Federal crime or offense for anyone to knowingly possess, accept, obtain or receive a false, counterfeit or fraudulently obtained document prescribed by statute or regulation for entry into the United States.

In order to establish a violation of these counts of the indictment, the government must prove all of the following beyond a reasonable doubt:

*First*, that the Defendant knowingly possessed, accepted, obtained or received a document prescribed by statute or regulation for entry into the United States; and

*Second*, that in so doing the Defendant acted wilfully and with knowledge that such document had been forged, counterfeited, altered or falsely made, or had been procured by means

25

of false claim or statement, or had been otherwise procured by fraud or unlawfully obtained.

With regard to Count 11 only, the second element is that in so doing the Defendant acted wilfully and with knowledge that such document had been procured by means of false claim or statement, or had been otherwise procured by fraud or unlawfully obtained.

A passport is a document prescribed by statute and regulation for entry into the United States.

Count 5 charges Defendant Gerardo Hernandez.

Count 8 charges Defendant John Doe No. 3, a/k/a Ruben Campa.

Count 12 charges Defendant John Doe No. 2, a/k/a Luis Medina III.

Title 18, United States Code, Section 1028, makes it a Federal crime or offense for a person knowingly to possess five or more false identification documents with intent to use them unlawfully.

In order to establish a violation of these counts of the indictment, the government must prove all of the following beyond a reasonable doubt:

*First*, that the defendant possessed five or more identification documents which were false or not issued lawfully for the use of the possessor;

*Second,* that the defendant did so with the wilful intent to use the false identification documents unlawfully; and

*Third,* that the defendant possessed the documents in or affecting interstate or foreign commerce.

"Identification document" means a document made or issued by or under the authority of the United States Government or a state (including the Commonwealth of Puerto Rico) which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals. The definition of "identification document" includes incomplete documents, false documents purporting to be identification documents, and identification documents other than one issued lawfully for the use of the possessor.

When considering whether the defendant possessed five such documents, you must be

27

unanimous as to at least five specific false identification documents the defendant possessed.

To intend to use a document "unlawfully" means that the intended use would violate one or more federal, state or local laws, or is part of the making of a misrepresentation that violates a law.

The term "interstate" commerce means, transportation or movement between one state and another state. The term "foreign" commerce means transportation or movement between someplace within the United States and someplace outside the United States.

The term "in or affecting interstate or foreign commerce" simply means and requires that the prohibited possession has no more than a minimal nexus with interstate or foreign commerce. Such a minimal interstate or foreign commerce nexus means that the document in possession has had to have some effect in interstate or foreign commerce. The prohibited act need not be contemporaneous with the move in or effect upon interstate commerce, nor is it necessary for the purpose of the prohibited act to use or effect interstate or foreign commerce. This requirement is satisfied if you find beyond a reasonable doubt from the evidence in this case that the defendant had an intent to do acts which, if complete would have affected interstate or foreign commerce.

In this regard the government is not required to prove that the defendant was aware of the future effect upon or in interstate or foreign commerce, but only that the full extent of the scheme, if successful, would have had such results.

In other words, the Government is not required to prove the defendant had knowledge of the interstate or foreign commerce nexus.

Count 10 charges Defendant John Doe No. 2, a/k/a Luis Medina III.

Title 18, United States Code, Section 1542, makes it a Federal crime or offense for a person wilfully and knowingly to make a false statement to obtain a United States passport, contrary to the laws and rules regulating the issuance of passports. The rules regulating the issuance of passports provide, in part, that "[t]he passport applicant shall truthfully answer all questions . . ."

In order to establish a violation of these counts of the indictment, the government must prove all of the following beyond a reasonable doubt:

*First,* that the defendant wilfully and knowingly made a false statement in an application for a passport;

*Second,* that the defendant did so with the intent to induce or secure the issuance of a passport under the authority of the United States, for his own use; and

*Third,* that the defendant acted wilfully and with knowledge of the statement's falsity.

A statement is "false" when made if it is untrue and is then known to be untrue by the person making it. It is not necessary to show, however, that the government agency was in fact deceived or misled.

The indictment charges that the defendant made three statements in a passport application knowing each to be false: that his name was Luis Medina III; that his father's name was Luis Ybarra Medina; and that his mother's maiden name was Raquel Guerrero. It is not necessary for the Government to prove that the Defendant made all three statements knowing each to be false. It would be sufficient if the Government proves, beyond a reasonable doubt, that the Defendant

29

knowingly and wilfully made one of these statements, knowing it to be false; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the statements the Defendant wilfully made, knowing it to be false.

Count 13 charges Defendant Gerardo Hernandez.

Count 14 charges Defendant John Doe No. 2, a/k/a Luis Medina III.

Count 15 charges Defendant Rene Gonzalez, and charges Defendant Gerardo Hernandez with aiding and abetting him.

Count 16 charges Defendant Antonio Guerrero, and charges Defendants Gerardo Hernandez; John Doe No. 2, a/k/a Luis Medina III; and John Doe No. 3, a/k/a Ruben Campa, with aiding and abetting him.

Count 17 charges Defendant John Doe No. 3, a/k/a Ruben Campa.

Count 18 charges a defendant who is not present.

Count 19 charges Defendant Gerardo Hernandez with aiding and abetting Juan Pablo Roque.

Counts 20 and 21 charge defendants who are not present.

Count 22 charges Defendant Gerardo Hernandez with aiding and abetting Alejandro Alonso.

Count 23 charges Defendant Gerardo Hernandez with aiding and abetting Nilo Hernandez.

Count 24 charges Defendant Gerardo Hernandez with aiding and abetting Linda Hernandez.

Count 25 charges Defendant John Doe No. 2, a/k/a Luis Medina III with aiding and abetting Joseph Santos.

Count 26 charges Defendant John Doe No. 2, a/k/a Luis Medina III with aiding and abetting Amarylis Silverio Santos.

Title 18, United States Code, Section 951, makes it a Federal crime or offense for a person knowingly to act in the United States as an agent of a foreign government without prior notification

to the Attorney General.

In order to establish a violation of these counts of the indictment, the government must prove all of the following beyond a reasonable doubt:

*First,* that the defendant acted as an agent of a foreign government, in this case the government of Cuba;

*Second,* that the defendant failed to notify the Attorney General that he would be acting as an agent of the government of Cuba in the United States prior to so acting;

*Third,* that the defendant acted knowingly, and knew that he had not provided prior notification to the Attorney General; and

*Fourth,* that the defendant acted, at least in part, as an agent for the government of Cuba in the Southern District of Florida.

An "agent of a foreign government" means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official.

An "agent of a foreign government", however, does not include any officially and publicly acknowledged and sponsored official or representative of a foreign government. The meaning of any officially and publicly acknowledged and sponsored official or representative of a foreign government includes any official of a foreign government on a temporary visit to the United States for the purpose of conducting official business internal to the affairs of that foreign government.

Notification under the statute shall be effective only if it is made by the agent in the form of a letter, telex or facsimile, addressed to the Attorney General, prior to the agent commencing the services in the United States on behalf of the foreign government.

You are instructed that you must return a verdict of not guilty as to any count charging the defendant with acting as a foreign agent, unless the government proves beyond a reasonable doubt that the defendant was not an officially and publicly acknowledged and sponsored official or representative of a foreign government.

Title 18, United States Code, Section 2, provides the guilt of a Defendant in a criminal case may be proved without evidence that the Defendant personally did every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.

So, if the acts or conduct of an agent, employee or other associate of the Defendant are wilfully directed or authorized by the Defendant, or if the Defendant aids and abets another person by wilfully joining together with that person in the commission of a crime, then the law holds the Defendant responsible for the conduct of that other person just as though the Defendant had personally engaged in such conduct.

However, before any Defendant can be held criminally responsible for the conduct of others it is necessary that the Defendant wilfully associate in some way with the crime, and wilfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

In regard to Count 3 of the Second Superseding Indictment, you are instructed that every nation has complete and exclusive sovereignty over the airspace above its territory. The territory of every state consists of the land areas and territorial waters adjacent thereto under the sovereignty and protection of such state. Every nation also has complete and exclusive sovereignty and control over its territorial airspace extending 12 nautical miles out to sea. International rules applicable to civil aircraft are not applicable to state aircraft. Aircraft used in military, customs and police services shall be deemed to be state aircraft. No state aircraft are permitted to fly over the territory of another nation without authorization.

It is for you to determine whether or not an aircraft acted as a state aircraft or a civil aircraft.

.

The International Civil Aviation Organization ("ICAO") has among its provisions the following:

The aims and objectives of ICAO are to develop the principles and techniques of international air navigation and to foster the planning and development of international air transport so as to insure the safe and orderly growth of international civil aviation throughout the world.

Due regard shall be had by States when developing regulations and administrative directives to principles including the following:

Interception of civil aircraft will be undertaken only as a last resort:

If undertaken, an interception will be limited to determining the identity of the aircraft, unless it is necessary to return the aircraft to its planned track, direct it beyond the boundaries of national airspace, guide it away from a prohibited, restricted or danger area or instruct it to effect a landing at a designated aerodrome; navigational guidance and related information will be given to an intercepted aircraft by radiotelephony, whenever radio contact can be established.

States shall publish a standard method that has been established for the maneuvering of aircraft intercepting a civil aircraft. Such method shall be designed to avoid any hazard for the intercepted aircraft.

Special procedures shall be established in order to insure that:

air traffic services units are notified if a military unit observes that an aircraft which is, or might be, a civil aircraft is approaching, or has entered, any area in which interception might become necessary;

37

all possible efforts are made to confirm the identity of the aircraft and to provide it with the navigational guidance necessary to avoid the need for interception.

As soon as an air traffic services unit learns that an aircraft is being intercepted in its area of responsibility, it shall take such of the following steps as are appropriate in the circumstances:

attempt to establish two-way communication with the intercepted aircraft on any available frequency, including the emergency frequency 121.5 MHz, unless such communication already exists;

inform the pilot of the intercepted aircraft of the interception;

establish contact with the intercept control unit maintaining two-way communication with the intercepting aircraft and provide it with available information concerning aircraft;

relay messages between the interception aircraft or the intercept control unit and the intercepted aircraft, as necessary;

in close coordination with the intercept control unit take all necessary steps to ensure the safety of the intercepted aircraft; and

inform air traffic services units serving adjacent flight information regions if it appears that the aircraft has strayed from such adjacent flight information regions.

During the course of this trial you heard references to the Neutrality Act.

The Neutrality Act makes it unlawful for anyone within the United States, to knowingly begin or set on foot or provide or prepare a means for or furnish the money for, or take part in, any military or naval expedition or enterprise to be carried on from thence against the territory or dominion of any foreign prince or state, or of any colony, district, or people with whom the United States is at peace.

You should note these Defendants are not charged with any violations of the Neutrality Act.

The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may also have sole possession or joint possession.

A person who knowingly has direct physical control of something is then in actual possession of it.

A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, that possession is sole. If two or more persons share possession, such possession is joint.

Whenever the word "possession" has been used in these instructions it includes constructive as well as actual possession, and also joint as well as sole possession.

You will note that the indictment charges that the offense was committed "on or about" a certain date. The Government does not have to prove with certainty the exact date of the alleged offense. It is sufficient if the Government proves beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The word "knowingly," as that term is used in the indictment or in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "wilfully," as that term is used in the indictment or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law.

Intent and motive should not be confused. Motive is what prompts a person to act, while intent refers to the state of mind with which the act is done.

So, if you find beyond a reasonable doubt that the acts constituting the crime charged were committed by the Defendant voluntarily as an intentional violation of a known legal duty - that is, with specific intent to do something the law forbids-then the element of "willfulness" as defined in these instructions has been satisfied even though the Defendant may have believed that the conduct was politically or morally required, or that ultimate good would result from such conduct.

On the other hand, if you have a reasonable doubt as to whether the Defendant acted in good faith, sincerely believing himself to be exempt by the law, then the Defendant did not intentionally violate a known legal duty - that is, the Defendant did not act "willfully" - and that essential part of the offense would not be established.

In regard to Count 1 of the Second Superseding Indictment, it is the defendants' theory of defense that they were monitoring the activities of persons and organizations in order to prevent acts of violence and aggression against Cuba. In other words, it is the defendants' theory of defense that they did not act with the necessary bad purpose to disobey or disregard the law because they were acting as agents of the Cuban government in the United States to prevent acts of violence from being carried out.

The Government has the burden of proving beyond a reasonable doubt that the defendant acted with the requisite specific intent to violate the law and if it fails to do so, you must return a verdict of not guilty in favor of the defendant.

A separate crime or offense is charged against one or more of the Defendants in each count of the indictment. Each charge, and the evidence pertaining to it, should be considered separately. Also, the case of each Defendant should be considered separately and individually. The fact that you may find any one or more of the Defendants guilty or not guilty of any of the offenses charged should not affect your verdict as to any other offense or any other Defendant.

I caution you, members of the Jury, that you are here to determine from the evidence in this case whether each Defendant is guilty or not guilty. Each Defendant is on trial only for the specific offense alleged in the indictment.

Also, the question of punishment should never be considered by the jury in any way in deciding the case. If a Defendant is convicted the matter of punishment is for the Judge alone to determine later.

In this case you have been permitted to take notes during the course of the trial, and most of you – perhaps all of you – have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

Any verdict you reach in the jury room, whether guilty or not guilty, must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges--judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.