# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

## CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

_____/

## GOVERNMENT'S RESPONSE TO ORDER REQUIRING PRELIMINARY PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS ON COUNTS 1-32

The Court has issued an order (ECF No. 407) directing the parties to file preliminary proposed jury instructions and verdict forms for Counts 1-32 of the Superseding Indictment, with a specific requirement that the parties "engage with [two] competing scenarios and offer alternative draft text that assumes each scenario to be a correct formulation of the law to be issued to the jury." Both scenarios rest on an unstated and fundamentally flawed legal premise—namely, that the Presidential Records Act ("PRA"), and in particular its distinction between "personal" and "Presidential" records, *see* 44 U.S.C. § 2201 (2), (3), determines whether a former President is "[]authorized," under the Espionage Act, 18 U.S.C. § 793(e), to possess highly classified documents and store them in an unsecure facility, despite contrary rules in Executive Order ("EO") 13526, which governs the possession and storage of classified information.

That legal premise is wrong, and a jury instruction for Section 793 that reflects that premise would distort the trial. The PRA's distinction between personal and presidential records has no

bearing on whether a former President's possession of documents containing national defense information is authorized under the Espionage Act, and the PRA should play no role in the jury instructions on the elements of Section 793. *See* ECF No. 373 at 5-12. Indeed, based on the current record, the PRA should not play any role at trial at all.

Moreover, it is vitally important that the Court promptly decide whether the unstated legal premise underlying the recent order does, in the Court's view, represent "a correct formulation of the law." ECF No. 407 at 2. If the Court wrongly concludes that it does, and that it intends to include the PRA in the jury instructions regarding what is authorized under Section 793, it must inform the parties of that decision well in advance of trial. The Government must have the opportunity to consider appellate review well before jeopardy attaches. *See, e.g.*, *United States v. Wexler*, 31 F.3d 117, 129 (3d Cir. 1994) ("[T]he adoption of a clearly erroneous jury instruction that entails a high probability of failure of a prosecution—a failure the government could not then seek to remedy by appeal or otherwise—constitutes the kind of extraordinary situation in which we are empowered to issue the writ of mandamus."); *In re United States*, 397 F.3d 274, 283 (5th Cir. 2005) (courts "have permitted the Government to obtain writs of mandamus when a proposed criminal jury instruction clearly violated the law, risked prejudicing the Government at trial with jeopardy attached, and provided the Government no other avenue of appeal"); *United States v. Pabon-Cruz*, 391 F.3d 86, 91-92 (2d Cir. 2004) (similar).

If, for example, the Court concludes—as posited in Scenario (a) in the Court's order—that under the Espionage Act a former President is authorized to possess any document that the jury determines qualifies as a personal record as defined by the PRA, that would wrongly present to the jury a factual determination that should have no legal consequence under the elements of Section 793. Likewise, if the Court concludes—as posited in Scenario (b)—that a President has

carte blanche to remove any document from the White House at the end of his presidency; that any document so removed must be treated as a personal record under the PRA as an unreviewable matter of law; and that, also as a matter of law, a former President is forever authorized to possess such a document regardless of how highly classified it may be and how it is stored, that would constitute a "clearly erroneous jury instruction that entails a high probability of failure of a prosecution," *Wexler*, 31 F.3d at 129, and the Government must be provided with an opportunity to seek prompt appellate review.

As in any case, the Court may defer ruling on certain aspects of jury instructions where the applicability or non-applicability of the instructions turns on the evidence that is presented at trial. For example, whether the jury should be instructed on how to evaluate law enforcement testimony or how to evaluate expert witness testimony will turn on whether such witnesses actually testify at trial. Such decisions can obviously be deferred. But the question of whether the PRA has an impact on the element of unauthorized possession under Section 793(e) does not turn on any evidentiary issue, and it cannot be deferred. It is purely a question of law that must be decided promptly. If the Court were to defer a decision on that fundamental legal question it would inject substantial delay into the trial and, worse, prevent the Government from seeking review before jeopardy attaches. *See* Fed. R. Crim. P. 12(d). ("The court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal.").

As instructed by the Court, the Government below provides a clear and well-supported jury instruction for the elements of Section 793(e). The proposed instruction correctly instructs the jury that the element of unauthorized possession depends on the plain language of the statute, Executive Order 13526, and the executive order's implementing regulations, and it makes no mention of purported designations under the PRA. As required by the Court's order, the

Government also provides proposed jury instructions that incorporate the inaccurate legal premises reflected in the Court's order under Scenario (a) and Scenario (b).

Furthermore, even though resolution of the threshold legal question is purely a matter of law, the Court should be aware at the outset that Trump's entire effort to rely on the PRA is not based on any facts. It is a post hoc justification that was concocted more than a year after he left the White House, and his invocation in this Court of the PRA is not grounded in any decision he actually made during his presidency to designate as personal any of the records charged in the Superseding Indictment. Accordingly, before turning to the jury instructions, the Government below provides the Court with the factual context surrounding Trump's attempt to inject the PRA into these proceedings. Importantly, Trump has never represented to this Court that he *in fact* designated the classified documents as personal. He made no such claim in his motion to dismiss, in his reply, or at the hearing on March 14, 2024, despite every opportunity and every incentive to do so. As discussed below, the reason is simple: he never did so. Instead, he has attempted to fashion out of whole cloth a legal presumption that would operate untethered to any facts—without regard to his actual decisions, his actual intent, the unambiguous definition of what constitutes personal records under the PRA, or the plainly non-personal content of the highly classified documents that he retained. There is no basis in law or fact for that legal presumption, and the Court should reject Trump's effort to invent one as a vehicle to inject the PRA into this case.

## BACKGROUND

As the Government has previously explained, there is no colorable argument that any of the documents charged in the Superseding Indictment is a personal record under the PRA—*i.e.*, a document "of a purely private or nonpublic character which do[es] not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the

President."  44 U.S.C. § 2201(3).  To the contrary, the classified documents charged in the Superseding Indictment were all "created or received by the President . . . in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President," *id.* § 2201(2), making them straightforward presidential records.  Trump has not argued otherwise.  Indeed, it would be pure fiction to suggest that highly classified documents created by members of the intelligence community and military and presented to the President of the United States during his term in office were "purely private" and that they "do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President."  *Id.* § 2201(3).

Trump has nevertheless sought to inject the PRA into the trial of this case by suggesting that he may have designated the documents as personal shortly before his term of office ended; that, if he did so, such a designation would be impervious to subsequent judicial review; and that his possession of any documents he designated as personal under the PRA was "[]authorized" for purposes of the Espionage Act, 18 U.S.C. § 793(e), even if contrary to Executive Order 13526.  As the Government has explained (ECF No. 373 at 12-20), those contentions are both meritless and fatally undermined by Trump's concession (ECF No. 327 at 11-13) that the Department of Justice may seek to recover such documents in a civil suit, in which a court would be perfectly free to determine whether a particular contested record was personal or presidential.  Moreover, Trump has never suggested that he *in fact* designated the documents at issue as personal, but has instead sought to convert a statement made during oral argument in *Judicial Watch, Inc. v. NARA*, 845 F. Supp. 2d 288 (D.D.C. 2012), into a legal rule that treats the mere act of transferring documents from the White House to anywhere other than the National Archives and Records Administration

("NARA") as indistinguishable from a considered decision to designate the records as personal.[1] The Government addressed that claim in response to Trump's Rule 12 motion. *See* ECF No. 373 at 13-16. But here, in the context of jury instructions, the Government provides the Court with the factual backdrop showing that the very notion that Trump could benefit from a purported designation under the PRA was invented long after he left the White House.

### A.   Trump Did Not Designate the Documents as Personal While in Office

During its exhaustive investigation, the Government interviewed Trump's own PRA representatives and numerous high-ranking officials from the White House—Chiefs of Staff, White House Counsel and senior members of the White House Counsel's Office, a National Security Advisor, and senior members of the National Security Council. Not a single one had heard Trump say that he was designating records as personal or that, at the time he caused the transfer of boxes to Mar-a-Lago, he believed that his removal of records amounted to designating them as personal under the PRA. To the contrary, every witness who was asked this question had never heard such a thing.

Some of the clearest evidence that Trump did not designate the documents charged in the Superseding Indictment as personal while in office comes from Trump's own statements, and those of his PRA representatives, during the year that followed his departure from office. For example, during nearly a year of correspondence with NARA regarding the return of the boxes taken from

---

[1] In support of his presumptive records designation, Trump has also attempted to rely on the allegation in the Superseding Indictment that he sent the classified documents to Mar-a-Lago. But that simple factual allegation says nothing about his purported legal designation of the records as personal. Indeed, at the hearing on March 14, 2024, the Court noted that Trump's counsel was not even admitting that Trump knowingly sent the classified documents to Mar-a-Lago. 3/14/2024 Hearing Tr. at 113. Thus, he is attempting to obtain the benefit of a designation regarding the classified documents that could flow only from knowing that the documents were being sent to Mar-a-Lago, but he refuses to admit that he knew about them.

the White House, neither Trump nor any of his representatives suggested that Trump had designated all of the records as personal, either deliberately, implicitly, presumptively, or otherwise.  To the contrary, everyone involved in this back-and-forth agreed that there were presidential records that had been taken to Mar-a-Lago that needed to be located and returned to NARA.  Likewise, in his "off the record" interview with a writer and publicist on July 21, 2021, Trump himself never suggested that the classified documents he revealed to them were personal or that he was free to do with them whatever he chose.  ECF No. 85 ¶¶ 34-35.  Instead, he said that they were highly confidential and remained classified, *id.* ¶ 35, despite the fact that he had removed them from the White House and taken them to his personal residence.

Later, after Trump provided fifteen boxes to NARA, the Archivist of the United States advised Congress, in a letter released to the public on February 18, 2022, that NARA had "identified items marked as classified national security information within the boxes" and therefore had "been in communication with the Department of Justice."[2]  Trump released a public statement in response the same day, stating that "[t]he National Archives did not 'find' anything, they were given, upon request, Presidential Records in an ordinary and routine process to ensure the preservation of my legacy and in accordance with the Presidential Records Act."[3]  These were Trump's own words, and there is no hint that he considered the documents to be anything other than "Presidential Records."

---

[2]     https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf.

[3]     https://www.nbcnews.com/politics/donald-trump/white-house-records-taken-trump-contained-classified-information-natio-rcna16890 (quoting Trump's statement).

**B. The Notion that Trump Might Have Designated the Documents as Personal Was First Invented in February 2022**

On February 7, 2022, the *Washington Post* reported that that, in January, NARA had "retrieved 15 boxes of documents and other items from former president Donald Trump's Mar-a-Lago residence because the material should have been turned over to the agency when he left the White House."[4]  That article quoted a statement by the Archivist noting, "'The Presidential Records Act is critical to our democracy, in which the government is held accountable by the people.'"  *Id.*  At that point, the public reporting related only to Trump's non-compliance with the PRA; the fact that he had retained highly classified materials did not become public for several days.

On February 8, 2022, the day after the *Washington Post* article was published, the president of Judicial Watch posted the following two statements on Twitter[5]:

> Fact check: The left media is being dishonest about the Trump records issue. A president has discretion on what docs to retain as presidential records while in office. So the law allows Trump to tear up documents, shred them, and take documents when he left the White House.
>
> 9:06 AM · Feb 8, 2022
>
> **1,489** Retweets   **88** Quote Tweets   **4,380** Likes

> Fun story: @JudicialWatch sued over Bill Clinton's hiding records in his sock drawer. Court told us to pound sand because presidents essentially can do whatever they want with their records. Remember this when you hear anti-Trump media caterwauling about his tearing up documents.
>
> 9:30 AM · Feb 8, 2022
>
> **1,498** Retweets   **75** Quote Tweets   **3,112** Likes

---

[4] https://www.washingtonpost.com/politics/2022/02/07/trump-records-mar-a-lago/.

[5] https://twitter.com/TomFitton/status/1491050688763564037; https://twitter.com/TomFitton/status/1491056826913529858.

Immediately after posting the second Tweet, the Judicial Watch president sent to an employee in Trump's post-presidency office a link to the Tweet and offered to discuss the issue with Trump.  A few hours later, the Judicial Watch president sent the same person his analysis of the case *Judicial Watch v. NARA*, 845 F. Supp. 2d 288 (D.D.C. 2012).  That evening, the Judicial Watch president circulated to the employee a proposed public statement for Trump's consideration, which included language that the PRA and judicial decisions gave Trump the right to keep the documents he returned to NARA.  The statement never issued.

  Around this same time, the Judicial Watch president, who was not an attorney, told another Trump employee that Trump was being given bad advice, and that the records Trump possessed at Mar-a-Lago should have been characterized as personal.  The second employee advised the Judicial Watch president that they disagreed with the Judicial Watch president's analysis: in *Judicial Watch*, former President Clinton had made the designation of certain records personal while President, whereas Trump had not done so.  The second employee further informed Trump that the Judicial Watch president was wrong and explained why.  Nevertheless, on February 10, 2022, Trump released a statement claiming in part, "I have been told I was under no obligation to give the material based on various legal rulings that have been made over the years."[6]  Before this time, the second employee had never heard this theory from Trump.  No other witness recalled Trump espousing this theory until after the Judicial Watch president conveyed it to him in February 2022.

---

[6]      https://www.justsecurity.org/wp-content/uploads/2022/11/Statement-by-Donald-J-Trump-Feb-10-2022.pdf.

### C. Trump and His Attorneys Nevertheless Continued to Acknowledge that the Documents Were Presidential, Not Personal, Records

Even after the February 2022 discussions with the Judicial Watch president, Trump and his attorneys continued to acknowledge that the classified records at issue in this case were presidential rather than personal. For example, in May 2022, Trump's former attorney accepted service of a grand jury subpoena requiring Trump's post-presidency office to produce any documents with classification markings in its or the former President's custody. Trump did not seek to quash the subpoena or argue in any way that he did not have to comply because he had designated any classified records as personal under the PRA. Instead, he hid most of those documents from his lawyer, ECF No. 85 ¶¶ 59-63; made false statements to mask his continued possession of them, *id.* ¶¶ 64-71; and attempted to enlist his lawyer in concealing or destroying the classified records, *id.* ¶¶ 55-56, 66-67.

Around the same time, Trump's former attorney sent the Government a letter setting out, among other things, some legal theories related to the Government's investigation. Trump's counsel requested that the Government include the letter "on any application made in connection with any investigative request concerning this investigation." *See In re Sealed Search Warrant,* 22-mj-8332, ECF No. 156-1 at Exhibit 1. And the Government duly attached it to the affidavit in support of the warrant to search Mar-a-Lago. *Id.* Moreover, in the letter, Trump's former attorney further characterized any documents with classification markings at Mar-a-Lago as follows: "There have been public reports about an investigation by DOJ into *Presidential Records* purportedly marked as classified among materials that were once in the White House and *unknowingly included among the boxes brought to Mar-a-Lago by the movers.*" *Id.* (emphasis supplied). Those were the words of Trump's counsel directly addressing the classified documents at issue in this case. The fictional PRA defense was nowhere to be found.

Trump's attorneys took a similar approach in litigation after the execution of the search warrant at Mar-a-Lago.  For example, in a September 1, 2022, hearing before this Court, Trump's counsel repeatedly described the records at issue as presidential.  *See Trump v. United States*, No. 9:22-cv-81294, 9/1/2022 Hearing Tr. at 8-9 (S.D. Fla.) ("What we are talking about here, in the main, are Presidential records in the hands of the 45th President of the United States at a location that was used frequently, during his term as President, to conduct official business."); *id.* at 9 ("This is, as I say, Presidential records in the hands of 45th President of the United States."); *id.* ("And in there are, again, Presidential records in the hands of 45th President of the United States.").  And he made those representations to the Court not only orally, but in writing.  In Trump's reply filed the day before that hearing, he quoted the definition of personal records under the PRA and distinguished presidential records from documents containing "highly personal information, such as diaries, journals, and medical records."  *See Trump v. United States*, No. 9:22-cv-81294, ECF No. 58 at 15 & n.4 (S.D. Fla.).  The items he identified as personal were plainly not classified documents, and nowhere did he suggest that the classified documents at issue in this case had been designated personal.

The implausibility of Trump's fiction was also readily apparent to the Eleventh Circuit, which also distinguished personal items like "medical documents, correspondence related to taxes, and accounting information" from the highly classified documents at issue in this case:

> For our part, we cannot discern why Plaintiff would have an individual interest in or need for any of the one-hundred documents with classification markings. Classified documents are marked to show they are classified, for instance, with their classification level.  *Classified National Security Information*, Exec. Order No. 13,526, § 1.6, 3 C.F.R. 298, 301 (2009 Comp.), *reprinted in* 50 U.S.C. § 3161 app. at 290-301. They are "owned by, produced by or for, or . . . under the control of the United States Government." *Id.* § 1.1. And they include information the "unauthorized disclosure [of which] could reasonably be expected to cause identifiable or describable damage to the national security." *Id.* § 1.4.

11

*Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *8 (11th Cir. Sep. 21, 2022).  As the Eleventh Circuit concluded, "Plaintiff does not have a possessory interest in the documents at issue, so he does not suffer a cognizable harm if the United States reviews documents he neither owns nor has a personal interest in."  *Id.* at *12.

On February 22, 2024—more than three years after leaving office—Trump advanced the argument to this Court (ECF No. 327) that, because the Superseding Indictment alleged that he "caused" boxes to be transported to Mar-a-Lago, *see* ECF No. 85 ¶ 4, the Court should treat that act as equivalent to a considered decision to designate the records as personal, and should further hold that such a designation is both unreviewable in a criminal trial and dispositive of whether he was legally authorized to possess documents containing classified information for purposes of the Espionage Act.  The Court should reject Trump's post hoc legal invention, and the PRA should play no role in this trial.[7]

## **DISCUSSION**

The Court must decide whether the unstated legal premise embedded in the Court's recent order represents "a correct formulation of the law," ECF No. 407 at 2—that is, whether the PRA's distinction between personal and presidential records determines whether possession is authorized or unauthorized under Section 793(e).  The answer to that question is plainly no, for the reasons

---

[7] The Government has previously acknowledged (ECF No. 373 at 12 n.4) the theoretical possibility that Trump could offer a factual defense at trial "that he did not act willfully because he *in fact* designated the documents as personal and *in fact* mistakenly believed that the PRA provided him with authorization to keep and withhold classified records from NARA and the grand jury."  But moving from theory to an actual trial defense requires evidence, and as the background section shows, Trump has no evidence to support such a factual defense because he and his representatives repeatedly characterized the records as presidential rather than personal long after he left the White House.  Regardless, such a defense, even if available as a factual matter, would have no bearing on the element of "unauthorized possession," and would not require a modification to the Government's proposed jury instructions for Section 793.

set forth at length in the Government's response to Trump's motion to dismiss.  *See* ECF No. 373. In short, during the period charged in the indictment, authorization to possess classified information was governed by Executive Order 13526 and its implementing regulations, which applied to Trump as a former President.  *See* EO § 4.4(a)(3); *Trump v. United States*, 2022 WL 4366684, at *8.  Nothing in the PRA remotely purports to override Executive Order 13526, and construing it in that atextual manner would raise serious constitutional concerns.  *See* ECF No. 373 at 10-12.[8]  The Government's proposed jury instruction presented first below reflects the premise that the PRA is irrelevant to the element of unauthorized possession.

The two scenarios posited by the Court, on the other hand, rest on the incorrect premise that a former President is authorized to possess classified information—regardless of whether he has a security clearance or a need to know, and regardless of whether he complies with applicable safeguarding regulations, *see* 32 C.F.R. § 2001.43—so long as it is contained within a personal record.  As a result, both of the Court's scenarios are fundamentally flawed and any jury instructions that reflect those scenarios would be error.  Nevertheless, as directed by the Court, the Government below provides jury instructions for each of these two legally erroneous scenarios.[9]

Whatever the Court decides, it must resolve these crucial threshold legal questions promptly.  The failure to do so would improperly jeopardize the Government's right to a fair trial

---

[8] Because the PRA and the authorities at issue in this case do not conflict, the PRA does not impliedly repeal the Government's authorities.  *See Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) ("[A]bsent a clearly expressed congressional intention, [a]n implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute.") (quotation marks and ellipses omitted); *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1225 (11th Cir. 2014) ("when Congress passes two statutes that may touch on the same subject, we give effect to both unless doing so would be impossible").

[9] The Government also attaches as Exhibit 1 a draft verdict form for Counts 1-32.  No special verdict form is required.  As such, the Government proposes using a general verdict form for each count, regardless of how the Court resolves the legal questions at issue here.

and deprive it of its right to seek appellate review.  *See* Fed. R. Crim. P. 12(d); *United States v. Wexler*, 31 F.3d 117, 129 (3d Cir. 1994); *In re United States*, 397 F.3d 274, 283 (5th Cir. 2005); *United States v. Pabon-Cruz*, 391 F.3d 86, 91-92 (2d Cir. 2004).

**A. Government's Proposed Jury Instruction: The Jury Is Correctly Instructed that Unauthorized Possession Is Based on Executive Order 13526, Not on the PRA.**

The Government's proposed preliminary instruction for Counts 1 through 32 is as follows:[10]

<u>Counts 1-32: Willful Retention of National Defense Information</u>
<u>18 U.S.C. § 793(e)</u>

Counts 1 through 32 of the Superseding Indictment charge defendant Trump with the willful retention of national defense information in violation of Title 18 of the United States Code, Section 793(e).  The statute provides, in pertinent part: "[w]hoever having unauthorized possession of . . . any document . . . relating to the national defense . . . willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it," commits a crime.

In order to find defendant Trump guilty of the crime of willfully retaining national defense information, the jury must find that the Government proved the following three elements beyond a reasonable doubt:

- First, on or about the dates set forth in the Superseding Indictment, defendant Trump had unauthorized possession of a document;

- Second, the document related to the national defense of the United States; and

---

[10] The Government believes that the jury must decide whether the Government has proved beyond a reasonable doubt each of the three elements listed in the proposed jury instruction above.

- Third, defendant Trump willfully retained the document and failed to deliver the document to an officer or employee of the United States entitled to receive it.[11]

For purposes of Counts 1 through 32, the following definitions apply:

### Unauthorized Possession

"Unauthorized possession" means possession without official approval or permission.[12]  The United States government has adopted rules that govern the possession of classified information.[13]  Those rules do not apply to a sitting President but apply to former Presidents after their term in office has ended.[14]  Under those rules, an individual's possession of classified information is unauthorized if that individual does not hold a security clearance or the individual does not have a need to know the information.[15]  "Need to know" means an appropriate government official has determined that the individual requires access to the classified information in order to perform or assist in a lawful and authorized government function.[16]  In addition, even if an individual holds a security clearance and has a need to know classified information, the individual's possession of the classified information is unauthorized if the individual removes the

---

[11] 18 U.S.C. § 793(e).  *See also* instructions given in *United States v. Ford*, No. 05-cr-235, Filed Copy at 44-47 (D. Md.) ("Ford Instructions"), *available at United States v. Winner*, No. 1:17-cr-34, ECF No. 122-1 (S.D. Ga. Oct. 13, 2017).

[12] *See* ECF No. 373 at 6; *see also* Webster's New World College Dictionary 95 (4th ed. 2002) (defining "authorize" as "to give official approval to or permission for"); Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/authorized (defining "authorized" as "sanctioned by authority: having or done with legal or official approval").

[13] Executive Order 13526.

[14] 50 U.S.C. § 3161(a); EO § 4.4(a)(3); *Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *8 (11th Cir. Sept. 21, 2022).

[15] EO § 4.1(a); *see* Ford Instructions at 45.

[16] EO § 6.1(dd); *see* Ford Instructions at 45.

classified information from a secure facility or possesses the information outside of a secure facility.[17]

"Possession" is a commonly used and commonly understood word.  Basically, to possess something—in this case, documents—means to own or to exert control over it.[18]  The law recognizes several kinds of possession.  A person may have actual or constructive possession of a thing.  "Actual possession" of a thing occurs if a person knowingly has direct physical control of it.  "Constructive possession" of a thing occurs if a person doesn't have actual possession of that thing but has both the power and intention to take control over it later.[19]

### National Defense Information

The term "relating to the national defense" is a broad term that refers to United States military and naval establishments and the related activities of national preparedness; it includes all matters that directly or may be reasonably connected with the defense of the United States against its enemies, as well as matters relating to United States foreign policy and intelligence capabilities. To prove that a document relates to the national defense, there are two additional things the Government must prove.  First, it must prove that the disclosure of the material would be potentially damaging to the United States or might be useful to a foreign nation or an enemy of the United States.  Second, it must prove that the material is "closely held" by the United States government.  A document is "closely held" if the Government has endeavored to keep it from the public.  In determining whether material is "closely held," you may consider whether it has been

---

[17] EO § 4.1(g); 32 C.F.R. § 2001.43(b)(1), (2); *see* Ford Instructions at 45.

[18] 1A Kevin O'Malley et al., *Federal Jury Practice and Instructions* § 16:05 (6th ed.).

[19] Eleventh Circuit Pattern Jury Instructions (Criminal Cases) Instruction S6 (2022).

classified by appropriate authorities and whether it remained classified on the date or dates pertinent to the Indictment.[20]

**Willful Retention**

The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law.  While a person must have acted with the intent to do something the law forbids before you can find that person acted "willfully," the person need not be aware of the specific law or rule that his conduct may be violating.[21]

### B. Scenario (a): The Jury Is Incorrectly Instructed that the Defendant Is Authorized to Possess Any Personal Record, Regardless of Classification, and the Jury Is Then Asked to Determine Whether Each Document Is Personal or Presidential

Any jury instructions premised on the erroneous legal suppositions set forth in Scenario (a) would necessarily be deeply flawed.  Scenario (a) posits that the jury would be instructed to determine as a factual matter whether the documents charged in Counts 1 through 32 qualified as presidential or personal records as defined in the PRA.  But that would be asking the jury to make a factual finding with no proper legal connection to the charges in this case because the PRA designation is irrelevant to the issue of authorization under Section 793, and thus is not relevant to whether Trump was authorized under Executive Order 13526 to possess classified documents at Mar-a-Lago.  The PRA does not speak to authorization to possess classified information, let alone in an unsecured facility.  The Government nonetheless sets forth below draft text for such an

---

[20] *Gorin v. United States*, 312 U.S. 19, 29 (1941); *United States v. Campa*, 529 F.3d 980, 1005 (11th Cir. 2008); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988); *United States v. Rosen*, 445 F. Supp. 2d 602, 620-21 (E.D. Va. 2006); *see* Ford Instructions at 46.

[21] Eleventh Circuit Pattern Jury Instructions (Criminal Cases) Instruction B9.1A (2022); *Bryan v. United States*, 524. U.S. 184, 189-92 (1998).

instruction as directed by the Court, with the status of the documents as presidential or personal records being a question for the jury.

### Unauthorized Possession[22]

"Unauthorized possession" means possession without official approval or permission.  The United States government has adopted rules that govern the possession of classified information.  Those rules do not apply to a sitting President but apply to former Presidents after their term in office has ended.  Under those rules, an individual's possession of classified information is unauthorized if that individual does not hold a security clearance or the individual does not have a need to know the information.  "Need to know" means an appropriate government official has determined that the individual requires access to the classified information in order to perform or assist in a lawful and authorized government function.  In addition, even if an individual holds a security clearance and has a need to know classified information, the individual's possession of the classified information is unauthorized if the individual removes the classified information from a secure facility or possesses the information outside of a secure facility.

I instruct you, however, that, as to a former President, even if he lacks a security clearance, lacks a need to know classified information, and stores information outside of a secure facility, he is authorized to do so if the classified information is contained within a "personal record," as that term is defined by the Presidential Records Act (PRA), a statute that establishes the public ownership of presidential records and ensures the preservation of presidential records for public access after the termination of a President's term in office.[23]

---

[22] The instructions for the other elements, besides "unauthorized possession," would be the same as those set forth in Proposal One above.

[23] *Armstong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991); *see* Presidential Records Act of 1978, Pub. L. No. 95-591, 92 Stat. 2523 (1978).

Therefore, to determine whether the defendant had "unauthorized possession" of the documents charged in Counts 1-32, you must determine whether each document was a "presidential record" or a "personal record" within the meaning of the PRA. I will now instruct you on those terms.

The term "presidential record" means any documentary material, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.[24] Presidential records do not include "personal records."[25]

The term "personal record" means any documentary material, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President, and includes (A) diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal which are not prepared or utilized for, or circulated or communicated in the course of, transacting Government business; (B) materials relating to private political associations, and having no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; and (C) materials relating exclusively to the President's own election to the office of the presidency; and materials directly relating to the election of a particular individual or individuals to Federal, State, or local

---

[24] 44 U.S.C. § 2201(2).

[25] 44 U.S.C. § 2201(2)(B).

19

office, which have no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.[26]

**C. Scenario (b): The Jury Is Incorrectly Instructed that the Defendant Is Authorized to Possess Any Record that He Designated as Personal, and Is Further Incorrectly Instructed that, by Failing to Transfer the Charged Documents to NARA, the Defendant Made the Unreviewable Decision to Designate the Charged Documents as Personal**

Like Scenario (a), proposed Scenario (b) rests on the erroneous and unsupported legal proposition that the designation of records as either personal or presidential under the PRA has an impact on whether a person is authorized to possess classified documents under Section 793(e). It has no such impact. But Scenario (b) also incorporates additional layers of erroneous legal propositions at the core of Trump's legally flawed and factually unsupported PRA defense. As to this scenario, the jury instruction would amount to nothing more than a recitation of Trump's PRA defense as presented in his motion to dismiss and would result in directing a verdict against the Government. As set forth above, the Court should deny Trump's motion to dismiss and reject any such jury instruction. Nevertheless, as directed by the Court, the Government sets forth below a draft jury instruction regarding unauthorized possession that assumes Scenario (b) to be "a correct formulation of the law." ECF No 407 at 2.

**Unauthorized Possession**[27]

"Unauthorized possession" means possession without official approval or permission. The United States government has adopted rules that govern the possession of classified information. Those rules do not apply to a sitting President but apply to former Presidents after their term in office has ended. Under those rules, an individual's possession of classified information is

---

[26] 44 U.S.C. § 2201(3).

[27] The instructions for the other elements, besides "unauthorized possession," would be the same as those set forth in Proposal One above.

unauthorized if that individual does not hold a security clearance or the individual does not have a need to know the information. "Need to know" means an appropriate government official has determined that the individual requires access to the classified information in order to perform or assist in a lawful and authorized government function. In addition, even if an individual holds a security clearance and has a need to know classified information, the individual's possession of the classified information is unauthorized if the individual removes the classified information from a secure facility or possesses the information outside of a secure facility.

I instruct you, however, that, as to a former President, even if he lacks a security clearance, lacks a need to know classified information, and stores information outside of a secure facility, he is authorized to do so if the classified information is contained within a "personal record," within the meaning of the Presidential Records Act (PRA), a statute that establishes the public ownership of presidential records and ensures the preservation of presidential records for public access after the termination of a President's term in office.

The PRA defines the term "personal records" to mean all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President, and includes (A) diaries, journals, or other personal notes serving as the functional equivalent of a diary or journal which are not prepared or utilized for, or circulated or communicated in the course of, transacting Government business; (B) materials relating to private political associations, and having no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President; and (C) materials relating exclusively to the President's own election to the office of the presidency; and materials directly relating to the election of a particular individual or individuals to Federal, State,

or local office, which have no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.

By contrast the PRA defines the term "Presidential records" to mean any documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President. Presidential records do not include "personal records."

I further instruct you that a President has unreviewable authority to designate any record whatsoever as personal, regardless of whether it meets the statutory definitions I have just provided. I further instruct you that, if, before the end of his term in office, a President transfers records from the White House to any location other than the National Archives and Records Administration, as alleged in the Superseding Indictment, he has necessarily exercised his unreviewable authority to designate those records as personal and, as a matter of law, he is authorized to possess them and you may not find him guilty.

## CONCLUSION

For the reasons set forth above and in the Government's opposition to Trump's motion to dismiss based upon the PRA, the Court should reject the legal premise that the PRA's distinction between personal and presidential records has any bearing on the element of unauthorized possession under Section 793(e). As such, it should deny Trump's pending motion to dismiss and adopt preliminary jury instructions as proposed by the Government above. If, however, the Court does not reject that erroneous legal premise, it should make that decision clear now, long before jeopardy attaches, to allow the Government the opportunity to seek appellate review.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:   /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

April 2, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt