FILED BY___scn___D.C.

**Apr 3, 2024**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Fort Pierce

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

        *Plaintiff,*

    v.

DONALD J. TRUMP, et al.,

        *Defendants.*

---

### MOTION FOR LEAVE TO FILE BRIEF BY CONSTITUTIONAL LAWYERS, FORMER GOVERNMENT OFFICIALS, AND STATE DEMOCRACY DEFENDERS ACTION AS *AMICI CURIAE* IN OPPOSITION TO DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS [ECF NO. 326]

The constitutional lawyers and former government officials listed in Exhibit B along with State Democracy Defenders Action respectfully submit this motion for leave to file a brief as *amici curiae*, attached as Exhibit A, in opposition to Trump's Motion to Dismiss the Indictment Based on the Unlawful Appointment and Funding of Special Counsel Jack Smith [ECF No. 326]. In support, *amici curiae* state as follows:

#### Introduction

*Amici curiae*, who are listed in Exhibit B, are former prosecutors, elected officials, other government officials, constitutional lawyers, and organizations dedicated to the rule of law who have collectively spent decades defending the Constitution, the interests of the American people, and the rule of law. As such, *amici* have an interest in the proper scope of executive power and the faithful enforcement of criminal laws enacted by Congress. *Amici* respectfully submit this brief to explain why the appointment of the Special Counsel is consistent with the Appointments Clause of the Constitution and the statutes Congress has enacted pursuant to that constitutional provision.

#### Memorandum of Law

1. "While the Federal Rules of Appellate Procedure and the Supreme Court Rules address the filing of *amicus curiae* briefs, the Federal Rules of Civil Procedure contain no provision

regarding the involvement of *amici* at the trial court level. However, the district court possesses the inherent authority to appoint *amici* to assist in a proceeding." *Garcia v. Stillman*, Case No. 22-cv-24156-BLOOM/Otazo-Reyes, 2023 U.S. Dist. LEXIS 125406, *2-3 (S.D. Fla. July 20, 2023) (citing *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D. Fla. 1991)). "'Inasmuch as an *amicus* is not a party and does not represent the parties but participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of participation by the *amicus*.'" *Id.* (quoting *News & Sun-Sentinel Co. v. Cox*, 700 F. Supp. 30, 31 (S.D. Fla. 1988)). This Court has permitted *amicus curiae* participation where a case concerns issues in which the *amicus* is uniquely interested or where *amicus* expertise is positioned to add value to the Court's analysis of the case. *Id.* (citations omitted).

2. In a paperless order dated March 6, 2024, the Court granted two unopposed motions for leave to file amicus briefs in support of defendant Donald J. Trump's motion, stating that it "finds that the proposed *amici* bring to the Court's attention relevant matter that may be of considerable help to the Court in resolving the cited pretrial motions." In addition, a third amicus brief in support of defendant Donald J. Trump's motion was filed on March 13, 2024, but was not available on the public electronic docket until March 21, 2024.

3. Lead counsel for *amici curiae*, Matthew Seligman, is well-qualified to present this material to assist the Court. He clerked for the Honorable Douglas H. Ginsburg of the United States Court of Appeals for the District of Columbia Circuit. He has filed dozens of briefs in the Supreme Court of the United States, the courts of appeals, and numerous district courts.

4. The brief submitted by *amici curiae* would assist this Court in reaching its decision. *Amici curiae* address the following issues in their attached amicus brief: (1) whether Special Counsel Smith is an inferior officer whose appointment Congress may vest in the Attorney General, and (2) whether Congress authorized the Attorney General to appoint the Special Counsel.

### Conclusion

Based on the foregoing, *amici curiae* respectfully ask leave of this Court for the brief attached as Exhibit A to be entered onto the docket of this case.

2

## **LOCAL RULE 7.1 CERTIFICATION OF GOOD-FAITH CONFERRAL**

In accordance with Local Rule 7.1(a)(3), S.D. Fla. L.R., undersigned counsel, Cristina Alonso, hereby certifies that she has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issue raised in the motion. Counsel for Defendant Donald J. Trump indicated that they consent to the motion. Counsel for the government has indicated that they take no position on the motion.

Counsel for Co-Defendants Waltine Nauta and Carlos De Oliveira have not indicated their position on the motion. Undersigned counsel has made reasonable efforts to confer by sending their respective counsel an e-mail on March 29, 2024. Undersigned counsel also left a voicemail message for Sasha Dadon on March 29, 2024 and spoke with Sasha Dadan on April 1, 2024 and left a voicemail message on March 29, 2024 for Stanley Woodward, counsel for Waltine Nauta. On March 29, 2024, undersigned counsel also left a voicemail message with John S. Irving, counsel for Carlos De Oliveira.

April 1, 2024

Respectfully submitted,

By: /s/ Cristina Alonso
        CRISTINA ALONSO
        Florida Bar No. 327580
        ALONSO APPEALS
        15757 Pines Boulevard, Suite 222
        Pembroke Pines, FL 33027
        (954) 667-8675
        alonso@alonsoappeals.com

        MATTHEW A. SELIGMAN
        STRIS & MAHER LLP
        777 S Figueroa St, Suite 3850
        Los Angeles, CA 90017
        (213) 995-6873
        mseligman@stris.com

        *Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being served on April 1, 2024, via Federal Express with the Clerk of the Court, 101 South U.S. Highway 1, Room #1016, Ft. Pierce, FL 34950, and on Jay I. Bratt, U.S. Department of Justice, 950 Pennsylvania Ave., NW, Washington, DC 20530, *Counsel for Plaintiff USA*, and is being served on the following counsel of record electronically: Christopher Michael Kise (chris@ckise.net), Emil Bove (emil.bove@blachelaw.com), Stephen H. Weiss (Stephen.weiss@blachelaw.com), and Todd Blanche (toddblanche@blanchelaw.com) *Counsel for Defendant Donald J. Trump*; Sasha Dadan (sasha@dadanlawfirm.com) and Stanely E. Woodward (stanley@brandwoodwardlaw.com) *Counsel for Defendant Waltine Nauta*; Larry Donald Murrell, Jr. (ldmpa@bellsouth.net) and John S. Irving (John.Irving@earthandwatergroup.com) *Counsel for Defendant Carlos De Oliveira*. The foregoing document will be served on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF upon posting on the docket by the Clerk of the Court.

By: */s/ Cristina Alonso*
CRISTINA ALONSO
Florida Bar No. 327580
alonso@alonsoappeals.com

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DONALD J. TRUMP, et al.,

*Defendants.*

BRIEF BY CONSTITUTIONAL LAWYERS, FORMER GOVERNMENT
OFFICIALS, AND STATE DEMOCRACY DEFENDERS ACTION AS *AMICI
CURIAE* IN OPPOSITION TO DEFENDANT DONALD J. TRUMP'S
MOTION TO DISMISS THE INDICTMENT BASED ON THE UNLAWFUL
APPOINTMENT AND FUNDING OF SPECIAL COUNSEL JACK SMITH
[ECF NO. 326]

CRISTINA ALONSO
Florida Bar No. 327580
ALONSO APPEALS
15757 Pines Boulevard, Suite 222
Pembroke Pines, FL 33027
(954) 667-8675
alonso@alonsoappeals.com

MATTHEW A. SELIGMAN
STRIS & MAHER LLP
777 S Figueroa St, Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

State Democracy Defenders Action is a nonprofit corporation headquartered in Washington, D.C., and operating as a social welfare organization under Section 501(c)(4) of the Internal Revenue Code. It has no parent corporation, has issued no stock, and as such, no publicly held company owns 10 percent or more of its stock.

## TABLE OF CONTENTS

**Pages**

CORPORATE DISCLOSURE STATEMENT .............................................................................C-1

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION AND INTEREST OF AMICI CURIAE ............................................................1

MEMORANDUM OF LAW ..........................................................................................................3

I.    SPECIAL COUNSEL SMITH IS AN INFERIOR OFFICER WHOSE
APPOINTMENT CONGRESS MAY VEST IN THE ATTORNEY GENERAL..............3

II.   CONGRESS AUTHORIZED THE ATTORNEY GENERAL TO APPOINT THE
SPECIAL COUNSEL...........................................................................................................8

III.  THE SPECIAL COUNSEL IS AN INFERIOR OFFICER WITH AMPLE
AUTHORITY TO PROSECUTE THIS CASE..................................................................12

CONCLUSION.............................................................................................................................17

i

## TABLE OF AUTHORITIES

**Pages**

### Cases

*Auffmordt v. Hedden,*
    137 U.S. 310 (1890)..................................................................................................... 12, 14, 16

*Buckley v. Valeo,*
    424 U.S. 1 (1976)............................................................................................................... 3, 16

*Edmond v. United States,*
    520 U.S. 651 (1997)........................................................................................................... 3, 4, 6

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.,*
    561 U.S. 477 (2010)................................................................................................................... 5

*In re Grand Jury,*
    916 F.3d 1047 (D.C. Cir. 2019) ............................................................................... 3, 6, 11, 12

*In re Sealed Case,*
    829 F.2d 50 (D.C. Cir. 1987)................................................................................................... 6

*Lawson v. FMR LLC,*
    571 U.S. 429 (2014).................................................................................................................. 9

*Lucia v. SEC,*
    585 U.S. 237 (2018)..................................................................................................... 4, 12, 16

*Morrison v. Olsen,*
    487 U.S. 654 (1988)......................................................................................................... passim

*Porter v. Nussle,*
    534 U.S. 516 (2002).................................................................................................................. 9

*Republic of Iraq v. Beaty,*
    556 U.S. 848 (2009)................................................................................................................ 11

*Seila L. LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020)............................................................................................................ 14

*Trainmen v. Baltimore & Ohio R. Co.,*
    331 U.S. 519 (1947).................................................................................................................. 9

*United States v. Donziger,*
    38 F.4th 290 (2d Cir. 2022) ............................................................................................ passim

## TABLES OF AUTHORITIES
### (Continued)

Pages

*United States v. Gantt,*
   194 F.3d 987 (9th Cir. 1999) ........................................................................ 7

*United States v. Germaine,*
   99 U.S. 508 (1878) ........................................................................ 12, 15, 16

*United States v. Hartwell,*
   73 U.S. (6 Wall.) 385 (1867) ........................................................ 13, 15, 16

*United States v. Hilario,*
   218 F.3d 19 (1st Cir. 2000) ......................................................................... 7

*United States v. Manafort,*
   321 F. Supp. 3d 640 (E.D. Va. 2018) ......................................................... 5

*United States v. Maurice,*
   26 F. Cas. 1211 (C.C.D. Va. 1823) ........................................................... 13

*United States v. Nixon,*
   418 U.S. 683 (1974) ........................................................................... 1, 6, 11

*United States v. Ron Pair Enters., Inc.,*
   489 U.S. 235 (1989) .................................................................................... 9

*United States v. W.R. Grace,*
   526 F.3d 499 (9th Cir. 2008) ...................................................................... 7

*Young v. U.S. ex rel. Vuitton et Fils S.A.,*
   481 U.S. 787 (1987) .................................................................................. 16

### Constitutional Provisions

U.S. Const. art. II, § 2 ............................................................................... 1, 3

### Statutes

18 U.S.C. § 201 .......................................................................................... 11

18 U.S.C. § 219 .......................................................................................... 11

2 U.S.C. § 1602 .......................................................................................... 10

26 U.S.C. § 7611 ........................................................................................ 11

28 U.S.C. § 509 .......................................................................................... 11

28 U.S.C. § 510 .......................................................................................... 11

**TABLES OF AUTHORITIES**
(Continued)

**Pages**

28 U.S.C. § 515 .................................................................................................. 11

28 U.S.C. § 515(a) ............................................................................................. 10

28 U.S.C. § 533 ........................................................................................... passim

28 U.S.C. § 547(1) ............................................................................................... 7

28 U.S.C. § 600.7 ............................................................................................... 14

33 U.S.C. § 4010 ............................................................................................... 11

5 U.S.C. § 3110 ................................................................................................. 10

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ............................................................. 8

Ethics in Government Act,
   Pub.L. 95-521, 92 Stat. 1867 (1978) .............................................................. 6

Justice Manual § 1-13.100 .................................................................................. 5

Justice Manual § 9-2.001 .................................................................................... 7

*Office of Special Counsel,*
   64 Fed. Reg. 37,038-01 (July 9, 1999) ........................................................ 5, 6

*Officers of the United States Within the Meaning of the Appointments Clause,*
   31 Op. O.L.C. 73 (2007) ........................................................................ 13, 14, 15

Steven G. Calabresi & Gary Lawson,
   *Why Robert Mueller's Appointment as Special Counsel Was Unlawful,*
   95 Notre Dame L. Rev. 87 (2019) ............................................................... 7, 13

*United States Attorneys—Suggested Appointment Power of the Attorney General—*
   *Constitutional Law (Article II, § 2, cl. 2),*
   2 Op. O.L.C. 58 (1978) ................................................................................... 7

**Regulations**

28 C.F.R. § 0.55 .................................................................................................. 9

28 C.F.R. § 0.85 .................................................................................................. 9

28 C.F.R. § 600.1 ................................................................................................ 3

## TABLES OF AUTHORITIES
### (Continued)

**Pages**

28 C.F.R. § 600.4(a) ........................................................................................ 4

28 C.F.R. § 600.4(b) ........................................................................................ 4

28 C.F.R. § 600.7(a) ..................................................................................... 4, 5

28 C.F.R. § 600.7(b) ........................................................................................ 5

28 C.F.R. § 600.7(d) ........................................................................................ 6

28 C.F.R. § 600.8(a)(2) .................................................................................... 6

28 C.F.R. § 600.8(b) ........................................................................................ 5

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

*Amici* are former prosecutors, elected officials, other government officials, constitutional lawyers, and organizations dedicated to the rule of law who have collectively spent decades defending the Constitution, the interests of the American people, and the rule of law. As such, *amici* have an interest in the proper scope of executive power and the faithful enforcement of criminal laws enacted by Congress. *Amici* respectfully submit this brief to explain why the appointment of the Special Counsel is consistent with the Appointments Clause of the Constitution and the statutes Congress has enacted pursuant to that constitutional provision.

Defendant Donald J. Trump and his *amici* contend that the appointment of Special Counsel John "Jack" Smith is unlawful. That contention is demonstrably incorrect. The Appointments Clause of the Constitution authorizes Congress to vest the power to appoint "inferior officers" in the Attorney General as the head of the Department of Justice. U.S. Const. art. II, § 2, cl. 2. As the Supreme Court has confirmed, a special prosecutor empowered to investigate and prosecute a particular criminal matter is such an inferior officer. *See Morrison v. Olsen*, 487 U.S. 654, 670–71 (1988); *United States v. Nixon*, 418 U.S. 683, 694 (1974). Congress, in turn, exercised that power under the Appointments Clause by vesting the Attorney General with the power to "appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533. Attorney General Merrick Garland, acting pursuant to that statutory authority and consistent with the Department of Justice's regulations, then appointed Special Counsel Smith to "conduct the ongoing investigation referenced and described in the United States' Response to Motion for Judicial Oversight and Additional Relief, *Donald J. Trump v. United States*, No. 9:22-CV-81294-AMC (S.D. Fla. Aug. 30, 2022)." Office of the Att'y Gen., Order No. 5559-2022, Appointment of John L. Smith as Special Counsel, ¶ (c) Nov. 18, 2022 ("Appointment Order").[2] The Constitution,

---

[1] This brief was not authored in whole or in part by counsel for any party and no person or entity other than *amici curiae* or their counsel has made a monetary contribution toward the brief's preparation or submission. Counsel for Defendant President Donald J. Trump consents to the filing of this brief. Counsel for Co-Defendant Waltine Nauta and Counsel for Co-Defendant Carlos de Oliveira have not indicated their position on the filing of this brief. The United States takes no position on the filing of this brief.

[2] The Appointment Order further authorized Special Counsel Smith to "conduct the ongoing investigation into whether any person or entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021." *Id.* ¶ (b).

the statutes enacted by Congress to exercise the power the Constitution confers, and the Attorney General's appointment pursuant to that constitutional and statutory authority unmistakably establish the lawfulness of Special Counsel Smith's appointment.

The arguments to the contrary made by Mr. Trump and his *amici* are wholly without merit. Indeed, their positions are mutually inconsistent. First, Mr. Trump apparently concedes that Attorney General Garland could constitutionally appoint Special Counsel Smith as an inferior officer if Congress had vested him with that power, but he argues that Congress did not do so.[3] But that argument simply ignores the plain text of Section 533, which unambiguously authorizes the Attorney General to appoint "officials" like the Special Counsel to "prosecute crimes against the United States." 28 U.S.C. § 533. Second, *amici* Edwin Meese III, Steven Calabresi, Gary Lawson, and several organizations disagree with Mr. Trump's concession, arguing instead that the Special Counsel's appointment is unlawful because he is a "principal officer" and thus may be lawfully appointed only by the President with the advice and consent of the Senate. But as the Supreme Court held with respect to the Independent Counsel and the D.C. Circuit's decision regarding Special Counsel Robert Mueller confirms, the Special Counsel is an "inferior officer" whose appointment Congress may vest in the Attorney General. Third, *amici* Seth Barrett Tillman and Landmark Legal Foundation disagree with Mr. Trump's position in the opposite direction, arguing that Special Counsel Smith is not an "officer" at all but rather a mere employee who may not lawfully exercise the degree of authority that he has in this matter even though Congress authorized him to do so. But as these *amici* concede, Supreme Court precedent squarely forecloses their arcane argument.

The Constitution, the text of the statutes under which the Attorney General appointed the Special Counsel, and binding Supreme Court precedent decisively refute these confused contentions. Accordingly, the Court should promptly reject this legally unsupportable challenge to the Special Counsel's authority to prosecute Mr. Trump.

---

[3] Mr. Trump's position is unclear and possibly internally inconsistent. On the one hand, he states that "[a]t best" the Special Counsel is "an employee." Trump Br. at 3. But then he claims that "[t]he Special Counsel's Office does not dispute that the Special Counsel is an 'officer' of the United States." Trump Reply Br. at 1.

## MEMORANDUM OF LAW

I.    **SPECIAL COUNSEL SMITH IS AN INFERIOR OFFICER WHOSE APPOINTMENT CONGRESS MAY VEST IN THE ATTORNEY GENERAL**

The Appointments Clause of the Constitution empowers Congress to authorize the Attorney General, as the head of the Department of Justice, to appoint inferior officers including the Special Counsel. The Appointments Clause establishes the framework for the appointment of "Officers of the United States":

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.*

U.S. Const., Art. II, § 2 (emphasis added).

The Clause thus provides that the President must appoint "principal officers" with the advice and consent of the Senate, but Congress may vest the power to appoint "inferior officers" in the President alone without the Senate's consent, the federal courts, or the head of a department like the Attorney General. *Morrison v. Olson*, 487 U.S. 654, 670–71 (1988) (quoting *Buckley v. Valeo*, 424 U.S. 1, 132 (1976)). The Special Counsel, to a much greater degree than the Independent Counsel before him, "clearly falls on the 'inferior officer' side of th[e] line" between principal and inferior officers. *Morrison*, 487 U.S. at 671. *See also In re Grand Jury*, 916 F.3d 1047, 1052 (D.C. Cir. 2019) ("Binding precedent instructs that Special Counsel Mueller is an inferior officer under the Appointments Clause."). Although the Supreme Court's "cases have not set forth an exclusive criterion for distinguishing between principal and inferior officers [under the] Appointments Clause," *Edmond v. United States*, 520 U.S. 651, 661 (1997), every factor the Court has considered weighs in favor of the Special Counsel's status as an inferior officer.

First, the Special Counsel may "perform only certain, limited duties" with jurisdiction circumscribed to the "investigation and, if appropriate, prosecution for certain federal crimes." *Morrison*, 487 U.S. at 671. Department of Justice regulations provide for the appointment of a Special Counsel when the "criminal investigation *of a person or matter* is warranted." 28 C.F.R. § 600.1 (emphasis added). Attorney General Garland's Appointment Order accordingly limited the Special Counsel's jurisdiction to two incidents: the "investigation into whether any person or

3

entity violated the law in connection with efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021," excluding "investigations and prosecutions of individuals for offenses they committed while physically present on the Capitol grounds"; and "the ongoing investigation" into Mr. Trump's retention of documents at issue in this case. Appointment Order at ¶¶ (b)-(c). The Special Counsel may not exceed those strict boundaries without the express authorization by the Attorney General for "additional jurisdiction beyond that specified in his or her original jurisdiction" that he maintains is "necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his . . . investigation." 28 C.F.R. § 600.4(a)-(b). In the course of his investigation and prosecution, he must "comply with the rules, regulations, procedures, practices and policies of the Department of Justice," including "required review and approval procedures by the designated Departmental component[s]," 28 C.F.R. § 600.7(a). As a result, his "grant of authority does not include any authority to formulate policy for the Government or the Executive Branch, nor does it give [him] any administrative duties outside of those necessary to operate [his] office." *Morrison*, 487 U.S. at 671-72. These express limitations reflect the narrow scope of the task assigned to the Special Counsel by the Attorney General: to investigate and, if necessary, prosecute crimes arising from two specific incidents related to the conduct of a single individual.

Second, the Special Counsel's tenure is limited to the performance of those narrow duties within that circumscribed jurisdiction. Once his investigation and prosecution of the cases arising from the two incidents enumerated in the Appointment Order is completed, his office expires. "Unlike other prosecutors, [the Special Counsel] has no ongoing responsibilities that extend beyond the accomplishment of the mission that she was appointed for and authorized by the [the Attorney General] to undertake." *Morrison*, 487 U.S. at 672. His office is thus "'temporary' in the sense that an independent counsel is appointed essentially to accomplish a single task, and when that task is over, the office is terminated, either by the counsel [himself] or by action of the [Attorney General]." *Id. See also Edmond*, 520 U.S. at 661 (Scalia, J.) (holding judges of Coast Guard Court of Criminal Appeals to be inferior officers even though "the office of military judge . . . is not 'limited tenure'"). *Cf. Lucia v. SEC*, 585 U.S. 237, 247-48 (2018) (holding Securities Exchange Commission's administrative law judges to be inferior officers rather than mere

employees in part because, "far from serving temporarily or episodically," they held "a continuing office established by law" that was a "career appointment") (cleaned up).

Third, the Special Counsel is subject to oversight, control, and ultimately removal by the Attorney General. An inferior officer is "directed and supervised *at some level* by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmund*, 520 U.S. at 663 (emphasis added). *See also Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010) ("Whether one is an inferior officer depends on whether he has a superior.") (quotation marks omitted). "The Special Counsel regulations [] make clear that the Special Counsel remains subject to the Attorney General's oversight following the Special Counsel's appointment, notwithstanding the specific grant of original jurisdiction." *United States v. Manafort*, 321 F. Supp. 3d 640, 654 (E.D. Va. 2018). The regulations pursuant to which Attorney General Garland appointed the Special Counsel emphasize "that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General." *Office of Special Counsel*, 64 Fed. Reg. 37,038-01, 37,038 (July 9, 1999). Although the Special Counsel, like many other prosecutors, "shall not be subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b), the regulations ensure that the Attorney General retains ultimate oversight over major investigatory or prosecutorial steps. The Special Counsel must "notify the Attorney General of events in the course of his . . . investigation in conformity with the Departmental guidelines with respect to Urgent Reports," 28 C.F.R. § 600.8(b), which require, among other things, advance reports of "major developments in significant investigations and litigation." Justice Manual § 1-13.100. The Special Counsel must "consult directly with the Attorney General" for authorization if he "conclude[s] that the extraordinary circumstances of any particular decision would render compliance with required review and approval procedures by the designated Departmental component [to be] inappropriate." 28 C.F.R. § 600.7(a). The Special Counsel must "provide an explanation for any investigative or prosecutorial step" to the Attorney General upon request. *Id.* § 600.7(b). And the Special Counsel's prosecutorial decisions are not final, because the Attorney General may block any action he determines "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." *Id. See Office of Special Counsel*, 64 Fed. Reg. at 37,038 ("the regulations explicitly acknowledge the possibility of review of specific decisions reached by the Special Counsel"). As the Supreme Court has explained, "[w]hat is significant is that the [Special Counsel] ha[s] no power to render a final

decision on behalf of the United States unless permitted to do so by other Executive officers."
*Edmond*, 520 U.S. at 665 (Scalia, J.).

The Attorney General's oversight and control is backed by the legal authority to "discipline[] or remove[]" the Special Counsel. 28 C.F.R. § 600.7(d). The regulations provide that at any time, "[t]he Attorney General may remove a Special Counsel for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." *Id.* In addition, each fiscal year the Attorney General must "determine whether the investigation should continue" and thus may terminate the office for any reason at regular intervals. *Id.* § 600.8(a)(2). As the Supreme Court explained with respect to the Independent Counsel, "[a]lthough [she] may not be 'subordinate' to the Attorney General (and the President) insofar as she possesses a degree of independent discretion to exercise the powers delegated to her under the Act, the fact that she can be removed by the Attorney General indicates that she is, to some degree, 'inferior' in rank and authority." *Morrison*, 487 U.S. at 671. Unlike the Independent Counsel, whose "independent discretion" and protection from removal arose from a congressional statute that bound the Attorney General, the Special Counsel's independence arises from departmental regulations. *Compare* Ethics in Government Act, Pub.L. 95-521, 92 Stat. 1867 (1978) (codified at 28 U.S.C. §§ 591-99 (1982)), *with Office of Special Counsel*, 64 Fed. Reg. 37,038-01 (July 9, 1999). As a result, the Special Counsel "is subject to greater executive oversight because the limitations on the Attorney General's oversight and removal powers are in regulations that the Attorney General can revise or repeal." *In re Grand Jury Investigation*, 916 F.3d at 1052. *See also Nixon*, 418 U.S. at 696 (explaining "possib[ility] for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority"); *In re Sealed Case*, 829 F.2d 50, 56 (D.C. Cir. 1987) ("[T]he Independent Counsel: Iran/Contra serves only for so long as the March 5, 1987, regulation remains in force. Subject to generally applicable procedural requirements, the Attorney General may rescind this regulation at any time, thereby abolishing the Office of Independent Counsel: Iran/Contra."). As a result, "Special Counsel [Smith] effectively serves at the pleasure of an Executive Branch officer who was appointed with the advice and consent of the Senate" and "[t]he control thereby maintained means the Special Counsel is an inferior officer." *In re Grand Jury Investigation*, 916 F.3d at 1052-53 (citations omitted).

For that reason, the Special Counsel qualifies as an inferior officer under both Court's decision in *Morrison* and under Justice Scalia's dissent in that case. As Justice Scalia explained,

he would have rejected the Court's conclusion the Independent Counsel appointed pursuant to the Ethics in Government Act was lawfully appointed as an inferior officer because, in his view, that "*statute* does deprive the President of substantial control over the prosecutory functions performed by the independent counsel, and it does substantially affect the balance of powers." *Morrison*, 487 U.S. at 714-15 (Scalia, J., dissenting) (emphasis added). The problem, according to Justice Scalia, was that Congress had encroached upon the constitutional powers of the President by establishing the Independent Counsel as an officer who could not be removed but for cause. No such congressional encroachment is present with respect to the Special Counsel here. There is no statute that protects him from removal by the President or the Attorney General. The Department of Justice has adopted regulations that embody its policy decision about the Special Counsel's removal, but as the Supreme Court has explained the Department could rescind those regulations at any time. Accordingly, the separation of powers problem that Justice Scalia identified with respect to the Independent Counsel in *Morrison* is wholly absent here.

Mr. Trump's *amici* offer only a cursory argument to the contrary. First, they suggest that "the Special Counsels contemplated by the Reno Regulations are equivalent to, if not more powerful than, U.S. Attorneys." Meese Br. at 14. They cite no authority for that contention, which ignores the sharply limited role and jurisdiction of the Special Counsel in contrast to the U.S. Attorney's plenary portfolio. *See* 28 U.S.C. § 547(1) ("[E]ach United States attorney, within his district, shall . . . prosecute for *all* offenses against the United States") (emphasis added); Justice Manual § 9-2.001 ("The United States Attorney, within his/her district, has plenary authority with regard to federal criminal matters."). They then claim that "[i]t is obvious that U.S. Attorneys are principal officers, and the same is true of the Special Counsels who mirror them." Meese Br. at 14 (citing Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87 (2019)). They again cite no authority apart from their own law review article for that assertion, which contradicts the conclusion of the Office of Legal Counsel and every court to have addressed the question. *See United States Attorneys— Suggested Appointment Power of the Attorney General—Constitutional Law (Article II, § 2, cl. 2)*, 2 Op. O.L.C. 58, 59 (1978) ("U.S. Attorneys can be considered to be inferior officers"); *United States v. Hilario*, 218 F.3d 19, 25 (1st Cir. 2000) ("United States Attorneys are inferior officers."); *United States v. Gantt*, 194 F.3d 987, 999 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) ("[W]e conclude that United States Attorneys

are inferior officers."). Second, they suggest that the ongoing policy decision by the Attorney General not to override the Special Counsel means that he "thus has no functional superior, necessarily rendering him a principal officer." Meese Br. at 15. They do not dispute that the Attorney General has the legal authority to reverse the Special Counsel's decisions or to remove him from office. And they offer no argument why the Attorney General's policy-based decision to refrain from exercising that authority, as he similarly does with thousands of other attorneys at the Department of Justice every day, converts the Special Counsel's constitutional status into that of a principal officer. It cannot be the case that an inferior officer who, through his strict compliance with the Department's policies and practices, does nothing that the Attorney General deems to warrant reversal is transformed by that exemplary performance into a principal officer and thereby stripped of all authority and thus suffers relegation to the dustheap of unlawfully appointed officials. The Constitution cannot plausibly be read to give officials so perverse a set of incentives.

The Special Counsel's circumscribed role and jurisdiction, limited tenure, and effective control by the Attorney General render him an inferior officer. Accordingly, the Appointments Clause permits Congress to vest the Attorney General with the authority to appoint the Special Counsel.

## II.   CONGRESS AUTHORIZED THE ATTORNEY GENERAL TO APPOINT THE SPECIAL COUNSEL

Congress authorized the Attorney General to appoint the Special Counsel to investigate and potentially prosecute crimes. Section 533 provides that "[t]he Attorney General may appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533. An "official" is "[s]omeone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." *Official*, Black's Law Dictionary (11th ed. 2019). In the Appointment Order, the Attorney General appointed the Special Counsel and "authorized" him to "conduct the ongoing investigation" into "efforts to interfere with the lawful transfer of power following the 2020 presidential election or the certification of the Electoral College vote held on or about January 6, 2021," to "conduct the ongoing investigation" involving Mr. Trump's retention of documents, and "authorized" him "to prosecute federal crimes arising from the investigation of these matters." Appointment Order, ¶¶ (b), (c), (d). The plain text of Section 533 thus makes clear that it empowers the Attorney General to appoint the Special

Counsel to investigate and prosecute the crimes enumerated in the Appointment Order including those in this case.

Mr. Trump and his *amici*'s attempts to evade this straightforward conclusion fail. First, Mr. Trump and his *amici* suggest that Section 533 could not authorize the Attorney General to appoint the Special Counsel because the chapter of the United States Code in which that section is codified is entitled "Federal Bureau of Investigation." Trump Br. at 5; Meese Br. at 11. This argument is fundamentally mistaken. It incorrectly elevates the statute's heading over its text. As the Supreme Court has often emphasized, a provision's title is "not meant to take the place of the detailed provisions of the text." *Lawson v. FMR LLC*, 571 U.S. 429, 446 (2014). *See also Porter v. Nussle*, 534 U.S. 516, 527-28 (2002) ("[T]he title of a statute and the heading of a section are tools available *for the resolution of a doubt* about the meaning of a statute.") (emphasis added, quotation marks and citation omitted*); Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-529 (1947) (adopting "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text"). And "where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (cleaned up).

The plain text of Section 533 authorizes the Attorney General to appoint "officials . . . to detect *and prosecute crimes* against the United States." 28 U.S.C. § 533 (emphasis). That text is not limited, as Mr. Trump's *amici* insupportably suggest, to "clearly deal[ing] with FBI officials and agents, not Special Counsels." Meese Br. at 11. By regulation, "FBI officials and agents" perform investigations and collect evidence, while the Criminal Division and other litigating components of the Department of Justice "prosecute crimes." *Compare* 28 C.F.R. § 0.85 (listing "General functions" of the Federal Bureau of Investigation, including "[i]nvestigat[ing] violations of the laws, including the criminal drug laws, of the United States and collect[ing] evidence" but not including prosecuting crimes), *with id.* § 0.55 (listing "General functions" of Criminal Division, including "[p]rosecutions for Federal crimes not otherwise specifically assigned"). Accordingly, the plain text of Section 533 authorizes the Attorney General to appoint officials to prosecute crimes who, by law and by definition, are not components of the Federal Bureau of Investigation.

In any event, even if Mr. Trump and his *amici*'s proposed limitation on Section 533 were correct it would be irrelevant. They never explain why the Special Counsel would lack the

authority to "prosecute crimes against the United States" if he resided within the Federal Bureau of Investigation on the organizational chart of the Department of Justice. They point to no legal provision prohibiting that authority. Moreover, Section 515(a) removes any doubt that the Attorney General can direct "any attorney" within Department of Justice, including those within the Federal Bureau of Investigation, to prosecute crimes. That section provides that "[t]he Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal." 28 U.S.C. § 515(a). As explained above, the Special Counsel is an "attorney specially appointed by the Attorney General under law" pursuant to Section 533. Attorney General Garland indisputably "specifically directed" him to "conduct" this "criminal" "legal proceeding." *See* Appointment Order. Accordingly, even on the improperly narrow reading of Section 533 offered by Mr. Trump and his *amici*, it simply does not matter whether the Special Counsel is part of the FBI. The Special Counsel has legal authority to prosecute this case either way.

Second, Mr. Trump and his *amici* argue that Section 533 is "not a general authorization to the Attorney General to create an office or appoint an Officer" like the Special Counsel because it "relates only to the appointment of 'officials.'" Trump Br. at 5. *See also* Meese Br. at 11-12 ("That simply is not how Congress was using the term 'officials' in Section 533."). That argument rests on the manifestly mistaken premise that the capacious statutory term "officials" as it appears in Section 533 does not include inferior officers under the Appointments Clause. They offer no support for that strange statutory interpretation, which dozens of provisions of the United States Code demonstrate cannot be correct.[4]

---

[4] *See, e.g.*, 2 U.S.C. § 1602 ("The term 'covered executive branch official' means—(A) the President; (B) the Vice President; (C) any officer or employee, or any other individual functioning in the capacity of such an officer or employee, in the Executive Office of the President; (D) any officer or employee serving in a position in level I, II, III, IV, or V of the Executive Schedule, as designated by statute or Executive order; (E) any member of the uniformed services whose pay grade is at or above O-7 under section 201 of Title 37; and (F) any officer or employee serving in a position of a confidential, policy-determining, policy-making, or policy-advocating character described in section 7511(b)(2)(B) of Title 5"); 5 U.S.C. § 3110 ("'public official' means an officer (including the President and a Member of Congress), a member of the uniformed service, an employee and any other individual, in whom is vested the authority by law, rule, or regulation, or to whom the authority has been delegated, to appoint, employ, promote, or advance individuals,

Finally, Mr. Trump and his *amici* appear argue that interpreting Section 533 to authorize the Attorney General to appoint inferior officers like the Special Counsel would undermine the statute's structure. *See* Trump Br. at 6 ("[R]eading § 533 to instill virtually limitless inferior Officer appointment power in the Attorney General would render Title 28's appointment structure a nullity."); Meese Br. at 12. On their idiosyncratic view, Congress's creation of specific *principal* officers, like the Assistant Attorneys General and the Solicitor General, somehow conflicts with a general provision authorizing the Attorney General to appoint *inferior* officers. That structural argument is incoherent. It is entirely sensible for Congress to enumerate the most important positions within the Department of Justice and require that those most senior officers be appointed by the President with the advice and consent of the Senate, while delegating to the Attorney General the discretion about whether to appoint an attorney to what Mr. Trump concedes is a lesser office. *See* Trump Br. at 3. And the "whole value" of Section 533 is "that it serves as a catchall for matters not specifically contemplated—known un-knowns." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).

The Supreme Court and the D.C. Circuit's cases confirm this straightforward statutory authority. The Supreme Court affirmed Attorney General's authority to appoint a special counsel in *United States v. Nixon*, 418 U.S. 683 (1974). The Court explained that Congress "vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties." *Id.* at 694 (citing 28 U.S.C. §§ 509, 510, 515, 533). As the D.C. Circuit recently recognized, the Supreme Court's "binding precedent [thus] establishes that Congress has 'by law' vested authority in the Attorney General to appoint the Special Counsel as an inferior officer." *In re Grand Jury Investigation*, 916 F.3d at 1054. Accordingly, for this Court to conclude to contrary

---

or to recommend individuals for appointment, employment, promotion, or advancement, in connection with employment in an agency"); 18 U.S.C. § 201 ("for the purpose of this section 'public official' means Member of Congress, Delegate, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency, or branch of Government thereof"); 18 U.S.C. § 219 (same); 26 U.S.C. § 7611 ("The term 'appropriate high-level Treasury official' means the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region"); 33 U.S.C. § 4010 ("The term 'appropriate Federal official' means—(i) in the case of a marine or coastal hypoxia or harmful algal bloom event, the Under Secretary of Commerce for Oceans and Atmosphere; and (ii) in the case of a freshwater hypoxia or harmful algal bloom event, the Administrator of the Environmental Protection Agency").

would create a conflict that would require the Eleventh Circuit to intervene to correct that dramatic departure from binding precedent.

Because the plain text of the statute and binding authority from the Supreme Court establish that Congress authorized Attorney General Garland to appoint the Special Counsel, the Court should reject Mr. Trump's meritless argument to the contrary.

## III. THE SPECIAL COUNSEL IS AN INFERIOR OFFICER WITH AMPLE AUTHORITY TO PROSECUTE THIS CASE

A different set of Mr. Trump's *amici* argue, in conflict with his other *amici*, that the Special Counsel's actions are *ultra vires* because he is neither a principal nor an inferior officer but a "mere employee" and therefore may not lawfully wield any "significant authority." *See* Tillman Br. at 5. Their sole argument for that remarkable conclusion is that the Special Counsel's position is not "continuing" because it is not permanent. That argument is at war with precedent and with reason. Courts have consistently held that independent and special prosecutors are inferior officers rather than mere employees, and in so holding they have repeatedly affirmed that those positions are "continuous." *See Morrison*, 487 U.S. at 670–71; *United States v. Donziger*, 38 F.4th 290, 296 (2d Cir. 2022); *In re Grand Jury Investigation*, 916 F.3d at 1052-53. To be "continuing," a position need not be eternal. The Special Counsel here, like those who came before him, occupies a "continuing" office and therefore is an inferior officer who lawfully wields the authority to prosecute this case.

"To qualify as an officer, rather than an employee, an individual must occupy a 'continuing' position established by law." *Lucia*, 585 U.S. at 237–38 (2018). *See United States v. Germaine*, 99 U.S. 508, 511–12 (1878) (holding that a civil surgeon was not an officer because his duties were "occasional and temporary," rather than "continuing and permanent"); *see also Auffmordt v. Hedden*, 137 U.S. 310, 327–28 (1890) (holding that a merchant appraiser was not an officer because he "acts only occasionally and temporarily."). The cases thus establish that a position is not "continuing" when it is intermittent, like a part time job or gig work. Consistent with that understanding, a "'continuing position' does not exclusively refer to permanent positions." *Donziger*, 38 F.4th at 296. As the Office of Legal Counsel explained, "'continuance' is not 'permanence'; no case of which we are aware before the Civil War indicates that permanence is required, and the post-Civil War authority . . . is best read as simply confirming that some

temporary, non-personal positions may amount to offices." *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 111 (2007) ("OLC Memorandum").

The Special Counsel satisfies every consideration on which courts rely in determining whether a temporary position is sufficiently continuous to qualify as an inferior office. First, "the position must not depend on the identity of the person occupying it, and the duties should 'continue, though the person be changed.'" *Donziger*, 38 F.4th at 297 (quoting *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823)). As Mr. Trump's other *amici* have explained, the Special Counsel regulations "describe the nature and character of the position, not the identity of the person who holds it." Steven G. Calabresi & Gary Lawson, *Why Robert Mueller's Appointment as Special Counsel Was Unlawful*, 95 Notre Dame L. Rev. 87, 134 (2019) (citing *Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999)). Since the Department adopted the current regulations, there have been six special counsels: Patrick Fitzgerald, John Danforth, Robert Mueller, John Durham, Robert Hur, and Jack Smith. Under the predecessor statute and regulations, there were almost 50 additional special prosecutors. In several of those instances, more than one attorney successively occupied the same office.[5] For example, Archibald Cox, Leon Jaworski, Hank Ruth, and Chuck Ruff all served as special prosecutor for Watergate between May 18, 1973, and June 20, 1977. The Special Counsel's position is therefore an office that is not personal to him.

Second, "an incumbent's tenure should not depend on whether 'the office of his superior' is vacated." OLC Memorandum at 112 (quoting *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867)). History confirms that the Special Counsel would remain in his position even if his "superior," Attorney General Garland, left office. Most recently, John Durham was appointed by Attorney General Bill Barr under Mr. Trump's administration pursuant to the same Department of Justice regulations under which the Special Counsel here was appointed. Mr. Durham continued in that position under Acting Attorney General Jeffrey Rosen after Mr. Barr resigned on December 23, 2020. After Mr. Trump's term in office expired on January 20, 2021, Mr. Durham's position persisted under two acting Attorney Generals until Attorney General Garland took office on March

---

[5] Special Counsel Patrick Fitzgerald was appointed by Acting Attorney General James Comey on December 30, 2003, but the "conferral on [him] of the title of 'Special Counsel' in [the] matter should not be misunderstood to suggest that [his] position and authorities are defined and limited by 28 CFR Part 600." Letter from Acting Attorney General James B. Comey to the Honorable Patrick J. Fitzgerald (February 6, 2004).

11, 2021. Mr. Durham remained in office until his position was abolished after he issued his final report on May 15, 2023. The Special Counsel will persist through a change in his superior officer.

Third, "the position must not be transient or fleeting." *Donziger*, 38 F.4th at 297. *See Auffmordt*, 137 U.S. at 326–27 (holding that a merchant appraiser is not an officer because he had no 'employment which has any duration as to time'"). Both law and history establish that the office of the Special Counsel is far from fleeting. "Although the special prosecutors' duties terminate upon performance, the positions are not transient or fleeting." *Donziger*, 38 F.4th at 297. The regulations pursuant to which the Special Counsel was appointed contemplate an indefinite appointment that must be terminated by an affirmative act by the Attorney General. 28 U.S.C. § 600.7. Those regulations further provide for an annual budgeting process, the hiring of staff, and the filing of regular reports—all hallmarks of an ongoing position rather than a transient job created for piecework like an appraiser hired intermittently to evaluate whatever goods might need inspecting. *See* OLC Memorandum at 115 (the independent counsel's position was "indefinite and expected to last for multiple years, with ongoing duties, the hiring of a staff, and termination only by an affirmative determination that all matters within the counsel's jurisdiction were at least substantially complete."). History has borne out the regulations' expectations. The average tenure of the Special Counsels appointed under the Department's current regulations is 26.2 months. For comparison, the average tenure of Attorneys General during that same period is only 13.4 months. Mr. Trump's *amici* thus advance a position with the apparent nonsensical implication that even the Attorney General of the United States is a "mere employee" who may not lawfully wield the powers assigned to him.

Finally, "the duties of the position must be more than incidental to the regular operations of government." *Donziger*, 28 F.4th at 297–98. The Special Counsel's duties are unquestionably "more than incidental to regular government operations because prosecution generally is a core power of government." *Id.* at 298. *See, e.g., Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2200 (2020) ("[T]he independent counsel in *Morrison* was empowered to initiate criminal investigations and prosecutions, and in that respect wielded core executive power."). Neither Mr. Trump nor his *amici* dispute this point. Indeed, the gravamen of their complaint is that the Special Counsel exercises excessive power. *See* Trump Br. at 7 ("The authority he attempts to employ as Special Counsel far exceeds the power exercisable by a non-superior officer, authority that Congress has not cloaked him with."); Meese Br. at 12 ("The authority exercised by [Smith]

14

as a so-called 'Special Counsel' far exceeds the power exercisable by a mere employee."); Tillman Br. at 22 ("A mere 'employee of the United States,' who is not a principal or even an inferior 'Officer of the United States,' cannot exercise the breadth of power that the Special Counsel has done here.").

The Supreme Court concluded that the independent counsel, whose appointment was comparable in temporal scope to the Special Counsel, is an inferior officer rather than a mere employee. In *Morrison*, the Court noted that although "the office of independent counsel is 'temporary,'" it was "clear that appellant [the independent counsel] is an 'officer' of the United States, not an 'employee.'" *Morrison*, 487 U.S. at 671 n.12, 672. On this point the Court was unanimous. Both the Court and Justice Scalia's dissent agreed that the independent counsel was an officer rather than an employee; they disagreed only about whether she was an inferior officer (according to the Court) or a principal officer (according to Justice Scalia). *Compare id. with id.* at 721 (Scalia, J., dissenting). *See also* OLC Memorandum at 114 (the independent counsel "*was* an officer, even though the position was, by the nature of its duties, temporary and largely case-specific") (emphasis in original).

Mr. Trump's *amici* offer only a convoluted argument to the contrary that defies both logic and binding Supreme Court precedent. They begin that argument by asserting that "temporary" positions do not qualify as "officers of the United States." They extract this supposed requirement from *United States v. Germaine*, 99 U.S. 508 (1878), which held that "civil surgeons [hired] to make the periodical examination of pensioners" were not "officers of the United States" as that phrase was used in a federal statute criminalizing extortion. *Id.* at 508-509. The Court based that holding on its determination that the statutory "term [officer] embraces the ideas of tenure, duration, emolument, and duties, and that the latter were continuing and permanent, not occasional or temporary." *Id.* at 511-12. Because the surgeons "duties [were] not continuing and permanent" but rather were "occasional and intermittent," they were not officers. The *amici* conclude that the Special Counsel's position is similarly "temporary" and thus he cannot be an inferior office.

Mr. Trump's *amici* offer no support at all for this argument aside from that stray line in *Germaine*. They repeatedly acknowledge, as they must, that the Supreme Court rejected their position in *Morrison*. *See, e.g.*, Tillman Br. at 9, 10, 12. They concede that the cases on which they ultimately rely for their requirement, "*Germaine*, and *Hartwell* before it, were not direct interpretations of Article II's definition of 'Officer of the United States.'" *Id.* at 7. *See also id.* at

10 (stating that Justice Scalia's determination that *Germaine* and *Hartwell*'s tests were "dicta" was "perhaps too hasty" while conceding that "those cases were not interpretations of Article II's 'Officer of the United States'-language."). They further concede that the Court's decision in *Lucia* leaves the "open question . . . whether a 'temporary' position can ever be an 'Officer of the United States.'" *Id.* at 12 (citation omitted). They suggest that Justice Sotomayor's dissent in *Lucia* recognized *Germaine*'s supposed permanence requirement but offer no argument why that dissent controls rather than the Court's opinion. *Id.* at 13 ("The majority opinion was less than clear on this point. However, Justice Sotomayor's dissent answered this question unequivocally."). Beyond the case law that forecloses their position, they "take no position on whether the varying definitions of 'Officer of the United States' advanced in *Hartwell*, *Germaine*, *Buckley*, *Morrison*, and *Lucia* are consistent with the original public meaning of the Constitution." *Id.* at 13 n.7. They ultimately offer no reason at all why their view is the law as it is rather than as they wish it to be.

In any event, Mr. Trump's *amici* misapply their own invented test. The piecework surgeons at issue in *Germaine* in no way resemble the Special Counsel. The surgeons were "only to act when called on by the Commissioner of Pensions in some special case, as when some pensioner or claimant of a pension presents himself for examination." *Germaine*, 99 U.S. at 512. The surgeon "may make fifty of these examinations in a year or none." *Id.* The surgeon was paid per patient, so "[n]o regular appropriation [was] made to pay his compensation, which [was] two dollars for every certificate of examination." *Id.* The Special Counsel's position is markedly different. "In contrast to the discrete, short-lived tasks civil surgeons [in *Germaine*] and merchant appraisers [in *Auffmordt*] undertake for any given case, the special prosecutor investigates and prosecutes a criminal case, which can last for years and encompass a wide array of assignments, such as executing search warrants, issuing subpoenas, granting immunity, entering into plea bargains, and representing the government in court both at trial and on appeal. Also unlike civil surgeons and merchant appraisers, the special prosecutor wields 'the power to employ the full machinery of the state' to vindicate the authority of the judiciary, which may include the awesome responsibility of depriving an individual of his liberty." *Donziger*, 38 F.4th at 299 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987)). By any measure, the Special Counsel's position is continuous and long-lasting, satisfying any sensible requirement that it be "continuous." Accordingly, as Mr. Trump concedes, the Special Counsel is an inferior officer.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant Trump's motion to dismiss the indictment based on the appointment of the Special Counsel.

April 1, 2024

Respectfully submitted,

CRISTINA ALONSO
Florida Bar No. 327580
ALONSO APPEALS
15757 Pines Boulevard, Suite 222
Pembroke Pines, FL 33027
Telephone: (954) 667-8675
alonso@alonsoappeals.com

MATTHEW A. SELIGMAN
STRIS & MAHER LLP
777 S Figueroa St, Suite 3850
Los Angeles, CA 90017
(213) 995-6873
mseligman@stris.com

*Counsel for Amici Curiae*

17

# EXHIBIT B

## LIST OF *AMICI CURIAE*

Institutional affiliations are included for identification purposes only.

**Donald Ayer** – Donald B. Ayer served as Deputy Attorney General in the George H.W. Bush Administration (1989-1990); Principal Deputy Solicitor General in the Reagan Administration (1986-1988); and U.S. Attorney for the Eastern District of California in the Reagan Administration (1981-1986).

**Louis Caldera** – Louis E. Caldera served as United States Secretary of the Army, (1998-2001); Director of the White House Military Office (2009); President, University of New Mexico (2003- 2006); California State Assembly member (1992-1997); United States Army officer (1978-1983); and serves currently as a Senior Lecturer of Business Administration, Harvard Business School.

**Tom Coleman** – Tom Coleman served as a Member of the U.S. House of Representatives (R-MO) (1976-1993) and as an assistant attorney general in Missouri (1969-1972).

**George T. Conway III** – George T. Conway III serves as Board President for the Society for the Rule of Law.

**Patrick Fitzgerald** – Patrick J. Fitzgerald served as U.S. Attorney for the Northern District of Illinois in the George W. Bush and Obama Administrations, appointed by President George W. Bush (2001-2012); and Special Counsel for the U.S. Department of Justice (2003-2007).

**Stuart M. Gerson** – Stuart M. Gerson served as Acting Attorney General (1993); Assistant Attorney General for the Civil Division (1989–1993); and Assistant United States Attorney for the District of Columbia (1972–1975).

**Philip Allen Lacovara** – Philip Allen Lacovara served as Deputy Solicitor General in the Nixon Administration (1972-1973); Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office (1973-1974); and drafted the brief for the United States and presented argument in *United States v. Nixon*, 418 U.S. 683 (1974).

**John McKay** – John McKay served as U.S. Attorney for the Western District of Washington in the George W. Bush Administration (2001-2007).

**Trevor Potter** – Trevor Potter served as Chairman of the Federal Election Commission (1994); Commissioner of the Federal Election Commission, appointed by President George H.W. Bush (1991-1995); and an attorney in the Office of Legal Policy at the Department of Justice (1982-1984).

**Alan Charles Raul** – Alan Charles Raul served as Associate Counsel to the President (1986-1988); General Counsel of the Office of Management and Budget (1988-1989); General Counsel of the U.S. Department of Agriculture (1989-1993); Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006-2008); and currently serves as a Lecturer on Law at Harvard Law School and a member of the Society for the Rule of Law.

**Abbe Smith** – Abbe Smith is the Scott K. Ginsburg Professor of Law at Georgetown University Law Center, a member of the American Board of Criminal Lawyers, and was previously the Deputy Director of the Criminal Justice Institute at Harvard Law School.

**Fern Smith** – Fern M. Smith served as Judge of the U.S. District Court for the Northern District of California, appointed by President Reagan (1988-2005); and Director of the Federal Judicial Center (1999-2003).

**Larry Thompson** – Larry Thompson served as the Deputy Attorney General (2001- 2003); Independent Counsel to the Department of Justice (1995-1998); United States Attorney for the Northern District of Georgia (1982-1986); and currently serves as the John A. Sibley Chair of Corporate and Business Law at University of Georgia Law School and Of Counsel at Finch McCranie, LLC.

**Christine Todd Whitman** – Christine Todd Whitman served as the Governor of New Jersey (1994-2001) and Administrator of the Environmental Protection Agency in the George W. Bush Administration (2001-2003).

**Laurence H. Tribe** – Laurence H. Tribe is the Carl M. Loeb University Professor of Constitutional Law Emeritus at Harvard University and the former Director of the Office of Access to Justice in the U.S. Justice Department.

**Olivia Troye** – Olivia Troye served as Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence (2018-2020).

**William Weld** – William F. Weld served as U.S. Attorney for Massachusetts (1981-1986); Assistant U.S. Attorney General in charge of the Criminal Division (1986-1988); and Governor of Massachusetts (1991-1997).

**Stanley Twardy Jr.** – Stanley A. Twardy, Jr. served as a United States Attorney for the District of Connecticut (1985-1991) and Chief of Staff to Connecticut Governor Lowell P. Weicker, Jr (1991-1993).

**State Democracy Defenders Action** – State Democracy Defenders Action is a 501(c)(4) focused on defeating election sabotage and continuing the fight against autocratic risks to democracy.



Reusable En

# Alonso Appeals

CRISTINA ALONSO
*Board Certified in Appellate Practice*

15757 Pines Boulevard, Suite 222
Pembroke Pines, FL 33027
(954) 667-8675 | alonso@alonsoappeals.com

April 1, 2024

Clerk of the Court
101 South U.S. Highway 1
Room #1016
Ft. Pierce, FL 34950

> Re: *U.S.A. v. Donald J. Trump, et al.*
> Case No. 23-80101-CR-CANNON-REINHART

Dear Clerk of the Court,

I am enclosing for filing in the above styled case a Motion For Leave To File Brief By Constitutional Lawyers, Former Government Officials, And State Democracy Defenders Action As *Amici Curiae* In Opposition To Defendant Donald J. Trump's Motion To Dismiss [ECF NO. 326], as well as a proposed order thereon.

I am also enclosing a Motion To Appear Pro Hac Vice, Consent To Designation, And Request To Electronically Receive Notices Of Electronic Filing and proposed order thereon. The motion was mistakenly filed on March 29, 2024 on behalf of the Department of Justice [ECF No. 422], instead of on behalf of nonparties *Amici Curiae* Constitutional Lawyers, Former Government Officials, And State Democracy Defenders Action. The associated Pro Hac Vice filing fee was paid with the filing. At the time of filing, the Clerk's office was closed. Today, when the Clerk's Office opened, I called to notify the Clerk of the error and correct the filing. I was advised that I would receive a telephone call or email with further information as to whether such correction could be made or whether the filing would be stricken. I have not received any further information. As such, I am enclosing the motion and proposed order thereon in the event they are stricken from the docket and need to be refiled.

Sincerely,

Cristina Alonso