**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,                    **Case No. 23-80101-CR**
                                             **CANNON/REINHART**
vs.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

             Defendants.

_____

**PRESIDENT TRUMP'S REPLY BRIEF IN FURTHER SUPPORT OF**
**MOTION TO DISMISS THE INDICTMENT BASED ON**
**PROSECUTORIAL MISCONDUCT AND DUE PROCESS VIOLATIONS**

**TABLE OF CONTENTS**

Discussion ................................................................................................................................. 1

I.    The Special Counsel's Office Overlooked Key Authorities Supporting The Motion Regarding Improper Collusion ................................................................................................ 1

II.    The Special Counsel's Office Has Not Substantiated Its Claims Regarding Preindictment Delay ................................................................................................................. 3

III.    Evidence Of Grand Jury Abuses And Discovery Violations Continues To Pile Up ...... 5

IV.    Factual Disputes Require A Hearing On These Motions ............................................... 6

    A.    The September 1, 2021 NARA Email Regarding Contact With DOJ .......................... 6

    B.    The September 15, 2021 Emails Reflecting Improper Coordination ........................... 8

    C.    The February 9, 2022 Sham Referral ........................................................................... 8

    D.    May 19, 2022 Email Expressing Concerns Above Venue ........................................... 9

    E.    May 4, 2023 Meeting ................................................................................................. 10

Conclusion ............................................................................................................................ 10

President Donald J. Trump respectfully submits this reply in support of his motion to dismiss the Superseding Indictment based on prosecutorial misconduct (the "Motion"), and in response to the opposition brief filed by the Special Counsel's Office (the "Opposition").

## DISCUSSION

I.  **The Special Counsel's Office Overlooked Key Authorities Supporting The Motion Regarding Improper Collusion**

The Supreme Court's decisions in *Kordel* and *LaSalle National Bank* are important components of President Trump's motion to dismiss based on due process violations arising from improper coordination between NARA, DOJ, the Biden Administration, and the Special Counsel's Office. *See* Mot. at 2, 4. The Office largely ignored these authorities.

In *Kordel*, the Supreme Court stated that a due process violation could result from the government bringing a civil action "solely to obtain evidence for its criminal prosecution," "fail[ing] to advise the defendant in its civil proceeding that it contemplates his criminal prosecution," or based on "other special circumstances that might suggest the unconstitutionality or even the impropriety of [such a] criminal prosecution." 397 U.S. 1, 11-12 (1970). NARA, DOJ, the Biden Administration, and the Special Counsel's Office worked together to do all three of these things. These entities colluded to misuse the Presidential Records Act ("PRA") to collect evidence from a former President, for the first time in the nation's history, and they did so intending to use that evidence in an equally unprecedented criminal prosecution. The Court's observation that NARA—decidedly not a law enforcement agency—invoked FOIA's law enforcement exception in January 2022 emails is significant in this regard. *See* 3/14/22 Tr. 111; *see also* Compel Mot. Ex. 13. In fact, NARA contemplated a prosecution by at least September 2021, but

failed to advise President Trump and his PRA representatives of that intention.[1]  As discussed in more detail in our selective and vindictive prosecution submissions, the driving force of the Biden Administration's political motivations is an example of the type of "special circumstances" that further "suggest the unconstitutionality" and "impropriety" of this case.  *Kordel*, 397 U.S. at 12.

In *LaSalle National Bank*, the Supreme Court again addressed due process limits on investigative coordination in the context of an IRS summons.  437 U.S. 298 (1978).   The Court reiterated that it would "not countenance delay in submitting a recommendation to the Justice Department when there is an *institutional commitment to make the referral*," as such a delay "would permit the Government to expand its criminal discovery rights."  *Id.* at 316-17 (emphasis added).  The *LaSalle* Court elaborated that "the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice," and an agency cannot collect evidence for prosecutors where it has "abandon[ed] in an institutional sense . . . the pursuit" of its statutory mandate.  437 U.S. at 317-18.  Here, NARA delayed NARA-OIG's transmission of the sham referral to DOJ in order to use the PRA to collect evidence, despite the fact that there was an "institutional commitment to make the referral" as demonstrated by, *inter alia*, the Archivist's June 2021 "out of patience" email and the NARA General Counsel "informally" contacting DOJ in September 2021.

Parallel proceedings may typically be "unobjectionable," but they transgress constitutional boundaries where there is "substantial prejudice to the rights of the parties involved."  *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980).  Appropriate "administrative steps"

---

[1] No document supports the claim of the Special Counsel's Office that NARA "expressly advised [President] Trump's PRA representatives of that plan." Opp'n at 9 n.4. NARA instead misled the PRA representatives by suggesting that DOJ would be involved only to pursue civil recovery.

must be "followed." *United States v. Clower*, 666 F. App'x 869, 873 (11th Cir. 2016) (quoting, *inter alia*, *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).  In this case, NARA did not do so.

Biased NARA personnel abandoned decades of practice under the PRA, rushed to judgment of President Trump's record-keeping, worked to manipulate the PRA's special-access provisions, and coordinated with DOJ to route a sham referral via NARA-OIG.[2]  *See United States v. Grunewald*, 987 F.2d 531, 534 (8th Cir. 1993) (reasoning that "[i]t would be a flagrant disregard of individuals' rights to deliberately deceive, *or even lull*, taxpayers into incriminating themselves" (emphasis added)).  The strained contentions in footnote 5 of the Opposition prove the point. NARA directed Congress to the PRA in connection with a request for, *inter alia*, "any inventory prepared by NARA," while skipping the PRA's access-request process when the FBI asked for the very same document.  *See* Mot. at 9.  A NARA official essentially admitted that he was also seeking to avoid PRA notice to President Trump in a February 11, 2022 interview.  Compel Mot. Ex. 2 at USA-00813152.  This coordinated misconduct, in violation of longstanding norms and practices, violated President Trump's due process rights.

## II.    The Special Counsel's Office Has Not Substantiated Its Claims Regarding Preindictment Delay

The basis for President Trump's motion to dismiss based on preindictment delay is that the Special Counsel's Office timed this prosecution to (1) prejudice President Trump's ability to defend himself in simultaneous proceedings involving complex issues and voluminous discovery in this District and the District of Columbia by demanding unworkable trial schedules prior to the 2024 election, and (2) interfere with President Trump's ability to continue beating President Biden on the campaign trail in connection with that election.  *See* Mot. at 14-16.  The strategy violates

---

[2] Even in the Opposition brief, the Special Counsel's Office persists in the inaccurate claim that there was a "criminal referral from NARA in February 2022."  Opp'n at 21.

President Trump's Sixth Amendment and due process rights, as well as the First Amendment rights of President Trump and the American people. *See, e.g.*, Mot. at 14-17; ECF No. 300 at 8-9 & n.11.

The first page of the brief filed by the Special Counsel's Office in opposition to President Trump's suppression motions makes clear that, by August 2022, the Office had collected substantially all of the alleged information and purported evidence it is relying upon. They waited about 10 more months, however, to file the initial Indictment. Thus, the Office cannot defeat this motion with the conclusory claim that "no steps were taken to affect an election or confer an advantage on any candidate." Opp'n at 19. The evidence to the contrary is the same evidence that supports President Trump's selective and vindictive prosecution motions. As explained in those submissions, even prior to resolution of our motions to compel, there is already sufficient proof of politically motivated bias driving strategic decisions by the Special Counsel's Office to gain an improper tactical advantage. A recent part of that proof is the Office's indefensible claims at the March 1, 2024 hearing regarding DOJ's election-interference policy. *See* 3/1/24 Tr. 80-81. As explained in our selective and vindictive prosecution reply, those representations contradicted the text of Justice Manual § 9-85.500 and conflated § 9-85.500 with the separate "unwritten" 60-day rule.[3] Accordingly, the record supports an inference of strategic preindictment delay to gain an improper tactical advantage, and the Office must come forward with evidence at a hearing to rebut that showing.

---

[3] Inspector General, U.S. Dep't of Justice, A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election at 17 (June 2018) (the "Horowitz OIG Report"), *available at* https://www.oversight.gov/sites/default/files/oig-reports/o1804.pdf.

### III.    Evidence Of Grand Jury Abuses And Discovery Violations Continues To Pile Up

The Court should not rule on President Trump's motion regarding grand jury abuses until the Special Counsel's Office complies with its discovery obligations relating to these issues.

First, at the March 1, 2024 hearing, we learned that the Special Counsel's Office is in the process of unsealing "ancillary grand jury proceedings" in the District of Columbia.  3/1/24 Tr. 142.  The Office suggested they were being courteous by "volunteer[ing] to intervene to try and obtain" materials relating to grand jury proceedings they conducted.  *Id.* at 143.  To be clear, these materials are subject to Rule 16(a)(1)(E) because they support, for example, this motion.  The Office does the defense no favors by collecting and producing discoverable materials pursuant to their discovery obligations, and they should have done so long ago.

Second, on March 12, 2024, we learned that the Special Counsel's Office is still withholding relevant materials from grand jury proceedings, including *ex parte* submissions in those proceedings that should have been disclosed to the defense long ago.  *See* ECF No. 387 at 3-4.[4]  All of those materials are discoverable and relevant to this motion, the suppression motion, the motion based on selective and vindictive prosecution, and at trial.  The Office's conclusory assertions to the contrary demonstrate, yet again, that they are taking an improperly narrow and unsupportable approach to their obligations in this case.  *See id.* at 4.

Third, in addition to violating the Justice Manual, the presentation to two grand juries by the Special Counsel's Office appears to have also violated the Federal Grand Jury Manual.  *See* ECF No. 389 at 5.  The Office must produce the current version of this Manual governing their conduct, as it is relevant to assess intent and available remedies relating to the violations at issue.

---

[4] While we appreciate the Court's handling of these disclosures, we are perplexed that the Special Counsel's Office would seek to confine such unclassified matters to an *ex parte* classified CIPA § 4 filing.  We reiterate our concerns about the Office's abuses of *ex parte* proceedings.

Finally, as discussed below in Parts IV.D and IV.E, there remain factual disputes relating to the FBI's May 19, 2022 email questioning whether "[v]enue will be established," Mot. Ex. 9 at USA-00940263, and the May 4, 2023 meeting where the Special Counsel's Office made a strategic decision to leave responsive documents with NARA, Compel Mot. Exs. 57-58.

## IV.     Factual Disputes Require A Hearing On These Motions

The Special Counsel's Office has repeatedly and improperly asked the Court to draw inferences against Presidential Trump, and to resolve factual disputes based on their unsworn briefs.  Addressing the issues raised by President Trump is "a predominantly factbound enterprise." *United States v. Gertner*, 65 F.3d 963, 970 (1st Cir. 1995).[5]  "[C]ourts must always be sensitive to the problems of making credibility determinations on the cold record."  *United States v. Raddatz*, 447 U.S. 667, 679 (1980).  Thus, at minimum, a hearing is required to resolve factual disputes relating to the Office's abuse and violation of DOJ's election-interference policies; the extent of NARA's participation in classification reviews, *see* Compel Mot. Classified Supplement at 2 & Ex. 5 at 3160; and the additional factual disputes described below.

### A.  The September 1, 2021 NARA Email Regarding Contact With DOJ

The September 1, 2021 email by NARA's General Counsel memorializing that he had "informally reached out to DOJ counsel" is one of the earliest documented points of contact between NARA and DOJ that the Special Counsel's Office has disclosed to date.  Compel Mot. Ex. 5.  As a result of the pending dispute over prosecution-team scope, neither the Court nor President Trump can have any confidence that the Office has made all necessary disclosures relating to this issue.  For example, according to the White House website, Jay Bratt visited the

---

[5] *Accord Kordel*, 397 U.S. at 6 (noting "extensive evidentiary hearing"); *Grunewald*, 987 F.2d at 534 (describing "post-trial hearing" on suppression motion relating to "evidence . . . obtained in a criminal investigation, under the guise of a civil tax audit").

White House within weeks of the email, on September 20, 2021, for a meeting with an advisor to the White House Chief of Staff, and again on November 8, 2021[6]

In any event, the NARA General Counsel's email is sufficient to raise a factual dispute regarding the timing and nature of NARA's communications with prosecutors. The defense inference is even stronger in context. Two days earlier, on August 30, 2021, the Archivist sent an email indicating that he planned to "report" to DOJ based on the "assum[ption]" that the documents "have been destroyed." Compel Mot. Ex. 4 at USA-00359483. The August 30 email was sent by the out-of-patience Archivist who congratulated NARA for its role in the Mar-a-Lago raid in an August 2022 social media post. *See* ECF No. 300 at 5. Equally important, the language in the August 30, 2021 email envisioned a conversation about a potential criminal violation with a prosecutor, not a "document-recovery issue . . . with a civil attorney." Opp'n at 2.

The Special Counsel's Office cannot avoid a hearing on this issue based on an FBI report relating to a March 6, 2024 interview with NARA's General Counsel, which was conducted after President Trump filed the motion and done solely for the purpose of the Opposition brief. *See* Opp'n Ex. 1. The report does not "put to rest" what happened in September 2021. *Id.* at 14. Instead, according to the report, NARA's General Counsel said that he "did not specifically recall" who he was referencing, *id.* Ex. 1 at 1, when he wrote in the September 1, 2021 email that he "informally reached out to DOJ counsel about this," Compel Mot. Ex. 5. President Trump is entitled to disclosures and cross-examination with respect to the General Counsel's new claim—in response to leading questions from the prosecution—that he "absolutely" did "not" talk to a prosecutor in September 2021. Opp'n Ex. 1 at 1-2. In light of the General Counsel's recent claim,

---

[6] Visitor Logs (2021), The White House, *available at* https://www.whitehouse.gov/disclosures/visitor-logs.

the required discovery includes not only emails and text messages from August and September 2021 relating to this topic, but also similar communications from the period since President Trump first cited this email in motion practice.  Evidence demonstrating that the General Counsel was aware of President Trump's argument at the time of the March 2024 interview would severely undercut the claims reflected in the recently created report.

### B.  The September 15, 2021 Emails Reflecting Improper Coordination

There are also factual disputes regarding the import of the September 15, 2021 email exchanges involving NARA's General Counsel.  As with the September 1, 2021 email, *ipse dixit* from the Special Counsel's Office is not sufficient to avoid a hearing.

At 3:21 pm on September 15, 2021, NARA's General Counsel felt compelled to inform President Biden's Deputy Counsel how NARA would "normally" handle notification to a former President in connection with a PRA special access request.  Compel Mot. Ex. 6 at USA-00383678. The email would not have been necessary if the General Counsel believed the Biden Administration had suggested that NARA take the "normal" course.  Less than two hours later, the General Counsel noted in an internal email that "we cannot go to DOJ while we are engaged in ongoing discussions."  *Id.* Ex. 7 at USA-00383682.  Because the General Counsel had already gone to DOJ, as noted in his September 1 email, the communication all but confirms a contemporaneous understanding at NARA that what they were doing was improper.  Collectively, their misdeeds reflected an "institutional commitment" to manipulate the PRA process while pursuing criminal charges—without informing President Trump's PRA representatives—in violation of President Trump's due process rights.  *LaSalle Nat'l Bank*, 437 U.S. at 317.

### C.  The February 9, 2022 Sham Referral

Recent events have only added to the indicia of impropriety surrounding the purported referral that NARA-OIG sent to DOJ on February 9, 2022.  *See* Compel Mot. Ex. 18.  In a March

13, 2024 submission, the Special Counsel's Office suggested that 32 C.F.R. § 2001.48(a) served a "further basis" for the referral.  ECF No. 400 at 4; *see also* 3/14/24 Tr. 123.  In that submission, the Office claimed that NARA "had reasonable grounds to believe that there had been a violation of federal criminal law, and, through its Inspector General, it made a referral to the Attorney General, as the statute provides, by alerting the relevant supervisors within DOJ."  ECF No. 400 at 3-4.  The assertion is wrong in two relevant respects.

First, the Inspector General Act authorizes a referral when "the Inspector General," rather than the agency, "has reasonable grounds to believe" a crime occurred.  5 U.S.C. § 404(d). "Reasonable" is one of the key words.  Neither NARA nor its OIG could have reasonably believed in early 2022 that President Trump had committed a crime in light of the agency's long and previously unbroken history of not even relying on civil mechanisms to collect former Presidents' records. *See* 3/14/24 Tr. 21, 45.  Second, NARA did not "ma[k]e a referral" "through its Inspector General."  ECF No. 400 at 4.  NARA contacted DOJ directly in January 2022, never cited 32 C.F.R. § 2001.48(a) to our knowledge, and agreed with DOJ to re-route a sham referral through NARA-OIG to obscure the coordination that had already taken place in violation of President Trump's due process rights.  The witnesses who participated in these improper decisions and communications must address their purpose and intent at a hearing.

### D.  May 19, 2022 Email Expressing Concerns Above Venue

The Special Counsel's Office seeks to defend its multi-district grand jury presentation without addressing the facts.  Opp'n at 21.  The Office commenced a grand jury investigation in the District of Columbia on April 26, 2022.  ECF No. 85 ¶ 52.  Less than a month later, on May 19, an FBI agent noted in an email that the list of issues "To Determine" included "If Venue will be established."  Mot. Ex. 9 at USA-00940263.  This email is not based on a "hindsight . . . perspective."  Opp'n at 22 (cleaned up).  It is a contemporaneous communication supporting an

inference that the prosecution team knew they lacked venue.  President Trump's motion based on grand jury abuses cannot be resolved without fact-finding regarding other contemporaneous communications reflecting how the prosecution team addressed this problem.

### E.  May 4, 2023 Meeting

The Special Counsel's Office seeks to elide the significance of the Office's May 4, 2023 meeting with NARA without providing details about what happened.  *See* Opp'n at 24-25.

Based on meeting notes, the above-described NARA General Counsel spoke to Bratt about "procedures if [executive] priv. is asserted."  Compel Mot. Ex. 58.  Despite the fact that the subpoena had already been issued, they also discussed "GJ vs. normal process."  *Id.*  The meeting participants agreed to "use" only 15 of 81 documents that NARA had identified as responsive to the subpoena.  *Id.*  However, it appears that all of the 81 documents related to "declassification" and were therefore favorable to President Trump under *Brady*.  *Id.*  Tellingly, the FBI agents left many of the details of these conversations out of the written report.  Compel Mot. Ex. 57.  If the Special Counsel's Office wants to try to rebut the inference from these documents, which is that the meeting was another instance of NARA coordinating with prosecutors and law enforcement to circumvent the PRA and prejudice President Trump, then discovery and witness testimony are necessary to resolve factual disputes regarding the purpose and substance of the meeting.

## <u>CONCLUSION</u>

For the foregoing reasons, the Superseding Indictment must be dismissed after discovery and a hearing to resolve factual disputes presented by the motions described herein.

Dated: March 24, 2024                                Respectfully submitted,

*/s/ Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

<u>**CERTIFICATE OF SERVICE**</u>

I, Emil Bove, certify that on March 24, 2024, I filed the foregoing document via email to the Court and Counsel of Record.

<u>*/s/ Emil Bove*</u>
Emil Bove