# EXHIBIT 10



Subject to Protective Order



Subject to Protective Order



Subject to Protective Order



Subject to Protective Order

USA-00806247



Subject to Protective Order



Subject to Protective Order

USA-00806249



Subject to Protective Order



Subject to Protective Order

USA-00806251



Subject to Protective Order

USA-00806252

Subject to Protective Order

USA-00806253



USA-00806254

Subject to Protective Order

USA-00806255



Subject to Protective Order

Subject to Protective Order

USA-00806257



Subject to Protective Order

# EXHIBIT 11

| | |
|---|---|
| **From:** | ████ |
| **To:** | Per. 18 |
| **Cc:** | |
| **Subject:** | FW: Subpoena for Video Footage |
| **Date:** | Wednesday, June 22, 2022 11:46:34 AM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.png |
| | Trump Organization GJS.pdf |

Per. 18 – Please see below and attached and let me know your thoughts.  Thanks. ████



725 5th Avenue, New York, NY 10022
P ████

**From:** Bratt, Jay (NSD) [mailto: ████@usdoj.gov]
**Sent:** Wednesday, June 22, 2022 11:38 AM
**To:** ████@trumporg.com
**Cc:** Edelstein, Julie (NSD) <████@usdoj.gov>; Reynolds, Brett (NSD) ████
**Subject:** Subpoena for Video Footage

████

Thank you for returning my call.  Attached is a draft of the subpoena.  I am also copying my two colleagues on this matter, Julie Edelstein and Brett Reynolds.  I look forward to discussing this with you further.

Jay

Jay I. Bratt
Chief
Counterintelligence and Export Control
  Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530

@usdoj.gov



Fed. R. Crim. P. 6(e) Materials
Confidential Treatment Requested

P. 18-PRIV-029

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
for the

**District of Columbia**

**SUBPOENA TO TESTIFY BEFORE A GRAND JURY**

To:   Custodian of Records
      The Trump Organization
      725 Fifth Avenue
      New York, NY 10022

   **YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA | Date and Time: |
|---|---|
| U.S. Courthouse, 2nd Floor      Grand Jury # 22-03<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Thursday, June 30, 2022 at 9:00 AM |

You must also bring with you the following documents, electronically stored information, or objects:

Any and all surveillance records, videos, images, photographs and/or CCTV from internal cameras located on ground floor (basement) and outside the room known as "Pine Hall" on the Mar-a-Lago property located at 1100 S Ocean Blvd, Palm Beach, FL 33480 from the time period of January 10, 2022 to present.

Date:   June 22, 2022

                                          CLERK OF COURT

                                          _____
                                          Signature of Clerk or Deputy Clerk

The name, address, telephone number and email of the prosecutor who requests this subpoena are:

Jay I. Bratt, Chief                                          Subpoena
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

████████@usdoj.gov

Fed. R. Crim. P. 6(e) Materials
Confidential Treatment Requested                                          P. 18-PRIV-030

Subject to Protective Order

CO 293 (Rev. 8/91) Subpoena to Testify Before Grand Jury

| RETURN OF SERVICE (1) | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | |
| SERVED BY (PRINT NAME) | | TITLE |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

**DECLARATION OF SERVER (2)**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
                    Date

_____
Signature of Server

_____
Address of Server

ADDITIONAL INFORMATION

(1) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.
(2) "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

Fed. R. Crim. P. 6(e) Materials
Confidential Treatment Requested

■-PRIV-030

Subject to Protective Order

USA-00806263

# EXHIBIT 12

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
### for the

### District of Columbia

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:  **Per. 18**

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br>U.S. Courthouse, 2nd Floor     Grand Jury # 22-06<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Date and Time:<br>Tuesday, December 8, 2022 at 9:00 AM |
|---|---|

In addition to appearing in order to provide testimony, you must also bring with you the documents, electronically stored information, and objects listed in Attachment A. You may make arrangements to provide any such documents in advance by contacting the attorney listed below.

Date: November 21, 2022

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, telephone number and email of the prosecutor who requests this subpoena are:

Julie A. Edelstein, Deputy Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530

_____@usdoj.gov

Subpoena 42-17

CO 293 (Rev. 8/91) Subpoena to Testify Before Grand Jury



Subject to Protective Order

USA-00806076

| RETURN OF SERVICE (1) | | | |
|---|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE | |
| **SERVED** | DATE | PLACE | |
| SERVED ON (PRINT NAME) | | | |
| SERVED BY (PRINT NAME) | | TITLE | |

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

### DECLARATION OF SERVER (2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing  information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
            Date

_____
Signature of Server

_____
Address of Server

ADDITIONAL INFORMATION

(1) As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.
(2) "Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

Subject to Protective Order

**Attachment A**

**List of Documents, Information, and Objects Subpoenaed by Grand Jury**

- Any and all documents or communications providing instructions or guidance to you related to compliance with the May 11 Subpoena, including but not limited to the location(s) that should be searched (or not searched) in response to the Subpoena and the criteria for determining a responsive document.

- Any and all documents or communications related to your search of the basement storage room at Mar-a-Lago.

- Any and all documents or communications with ███████████ Per. 12 ███████, or with any other person concerning ███████████ selection and role as custodian of records.

- Any and all billing records and records reflecting payments received related to your work pertaining to compliance by the custodian of records for the Office of Donald J. Trump with the May 11 Subpoena.

The time period for this request is May 11, 2022, until August 1, 2022.

This subpoena does not call for the production of documents protected by a valid claim of privilege, although any document over which privilege is being asserted must be preserved. Any documents withheld on grounds of privilege must be identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter.

Subject to Protective Order

# EXHIBIT 13

**Grand Jury Subpoena dated November 21, 2022**

**Privilege Log**

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| Undated | ███ Per. 18 ███ | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| Undated | ███ Per. 18 ███ | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| Undated | ███ Per. 18 ███n | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| Undated | ███ Per. 18 ███ | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| Undated | ███████ | Jay Bratt | | Draft correspondence regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| Undated | ███ Per. 18 ███ | | | Draft document regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/11/22 | Alternately Per. 18 Per. 18 and ███████ | Alternately Per. 18 Per. 18 and ███████ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication  Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 5/11/22 – 5/23/22 | Per. 18 | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/12/22 5/16/22 | Alternately Per. 18 Per. 18 and ▓▓▓▓ | Alternately Per. 18 Per. 18 and ▓▓▓▓ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/12/22 | Alternately Per. 18 Per. 18 and ▓▓▓▓ | Alternately Per. 18 Per. 18 and ▓▓▓▓ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/13/22 | Per. 18 | ▓▓▓▓ | | Email with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/13/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/13/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|---|---|---|---|---|---|
| 5/16/22 5/17/22 | Alternately Per. 18 Per. 18 and ▮▮▮▮▮▮ | Alternately Per. 18 Per. 18 and ▮▮▮▮▮▮ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication  Attorney Work Product |
| 5/17/22 5/18/22 | Alternately Per. 18 Per. 18 and ▮▮▮▮▮▮ | Alternately Per. 18 Per. 18 and ▮▮▮▮▮▮ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication  Attorney Work Product |
| 5/20/22 | Per. 18 | ▮▮▮▮▮▮ | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/20/22 | ▮▮▮▮▮▮ | Per. 18 | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/22/22 | ▮▮▮▮▮▮ | Per. 18 | | Email with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order                                                                    USA-00041230

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|---|---|---|---|---|---|
| 5/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/23/22 | ███████ | Per. 18 | | Email regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/23/22 5/24/22 | Alternately Per. 18 Per. 18 and Per. 5 ██████ | Alternately Per. 18 Per. 18 and Per. 5 ██████ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/24/22 | ██████████ | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | Alternately Per. 18 Per. 18 and Per. 5 ██████ | Alternately Per. 18 Per. 18 and Per. 5 ██████ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|----------------------|-------------------|
| 5/25/22 | ███ Per. 18 ███ | Jay Bratt | Matthew G. Olsen | Draft letter regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | ███ Per. 18 ███ | Jay Bratt | | Draft letter regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | ███████ | ███ Per. 18 ███ | | Email chain with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | ███████ | ███ Per. 18 ███ | | Email chain with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|---|---|---|---|---|---|
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | Per. 18 | ███████ | | Email with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | Per. 18 | ███████ | ███████ | Email with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication\n\nAttorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

USA-00041233

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|---|---|---|---|---|---|
| 5/25/22 | Per. 18 | Per. 64 | ███████ | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | Per. 18 | Per. 64 | ███████ | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 5/25/22 | Per. 64 | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | Per. 18 | Per. 64 | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 5/25/22 | ████████ | Per. 18 | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 5/25/22 | Per. 18 | ████████ | Per. 64 | Email with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/25/22 | ████████ | Per. 18 | Per. 64 | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/26/22 | Alternately Per. 18 Per. 18 and Per. 5 ████ | Alternately Per. 18 Per. 18 and Per. 5 ████ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

USA-00041235

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 5/26/22 | Alternately ▇Per. 18▇ ▇Per. 18▇ and ▇Per. 5▇ ▇▇▇▇ | Alternately ▇Per. 18▇ ▇Per. 18▇ and ▇Per. 5▇ ▇▇▇▇ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 5/26/22 | ▇Per. 18▇ | ▇Per. 5▇ | | Email chain with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 5/26/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 5/26/22 | ▇Per. 18▇ | ▇Per. 5▇ | | Email chain with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 5/26/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 6/2/22 to 6/3/22 | Alternately ▇Per. 18▇ ▇Per. 18▇ and ▇Per. 12▇ | Alternately ▇Per. 18▇ ▇Per. 18▇ and ▇Per. 12▇ | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena, ▇Per. 12▇ role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

USA-00041236

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 6/3/22 | Alternately Per. 18 Per. 18 and Per. 12 | Alternately Per. 18 Per. 18 and Per. 12 | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22, 6/29/22 | Alternately Per. 18 Per. 18 and Per. 12 | Alternately Per. 18 Per. 18 and Per. 12 | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22 | Per. 18 | Per. 12 | | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22 | Per. 18 | Per. 12 | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 6/3/22 | Per. 18 | Per. 12 | | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22 | Per. 18 | Per. 12 | | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/3/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |
| June 2022 | Per. 18 | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

USA-00041238

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|---------------------|
| 6/6/22 | Per. 18 | ████████ | | Email chain with attachments regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | | | | Email attachment regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | | | | Email attachment regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | ████████ | Per. 18 | ████████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | ████████ | Per. 18 | | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | | | | Email attachment regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | ████████ | Per. 18 | | Email with attachments regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 6/6/22 | | | | Email attachment regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | | | | Email attachment regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/6/22 | ██████████ ████ | President J. Trump & Save America PAC | | Draft invoice regarding billing records related to representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/9/22 | Per. 18 | ████████ | | Email chain with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/9/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |
| 6/22/22 | ████████ | Per. 18 | ████████ | Email chain with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 6/22/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 6/22/22 | Per. 18 | ███████ | ███████, ██ ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 6/23/33 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 6/23/22 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/24/22 | Per. 18 | ███████ | ███████ | Email regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/24/22 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/24/22 | Per. 18 | ███████ | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|---|---|---|---|---|---|
| 6/24/22 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/26/22 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/28/22 | ███████ | Per. 18 | ███████ | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/28/22 | Per. 18 | ███████,<br>███████ | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/29/22 | Alternately Per. 18 Per. 18 and Per. 12 | Alternately Per. 18 Per. 18 and Per. 12 | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena, Per. 12 role as custodian of records for the Office of Donald J. Trump | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

USA-00041242

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 6/30/22 | ██ Per. 18 ██ | ████ | | Email chain with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/30/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/30/22 | ████ | ██ Per. 18 ██ | | Email with attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/30/22 | | | | Email attachment regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 6/30/22 | ████ | ██ Per. 18 ██ | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 6/30/22 | ██ Per. 18 ██ | ████ | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication |
| 7/1/22 | ██ Per. 18 ██ | | | Attorney notes regarding representation of President Trump in connection with the May 11 Subpoena | Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

Subject to Protective Order

| Date | Author(s) | Recipient(s) | CC | General Subject Matter | Privilege Asserted |
|------|-----------|--------------|-----|------------------------|--------------------|
| 7/1/22 | ███████ | Per. 18 | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 7/6/22 | ███████ | Per. 29 | Per. 18<br>Per. 18 | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 7/7/22 | Per. 29 | ███████ | Per. 18<br>Per. 18 | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 7/7/22 | ███████ | Per. 29<br>Per. 18 | | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 7/7/22 | ███████ | Per. 29 | Per. 18<br>Per. 18 | Email chain regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |
| 7/30/22 | Alternately Per. 18 Per. 18 and Walt Nauta | Alternately Per. 18 Per. 18 and Walt Nauta | | Screenshot of text message exchange regarding representation of President Trump in connection with the May 11 Subpoena | Attorney-Client Communication<br><br>Attorney Work Product |

**Fed. R. Crim. P. 6(e) Materials**
**Confidential Treatment Requested**

# EXHIBIT 14

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
for the

**District of Columbia**

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To: ▮▮▮▮▮▮

**YOU ARE COMMANDED** to appear in this United States District Court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br>U.S. Courthouse, 2nd Floor        Grand Jury # 22-06<br>333 Constitution Avenue, N.W.<br>Washington, D.C. 20001 | Date and Time:<br>February 9, 2023<br>9:00 a.m. |
|---|---|

**In addition to appearing in order to provide testimony, you must also bring with you the documents, electronically stored information, and objects listed in Attachment A.** You may make arrangements to provide any such documents in advance by contacting the attorney listed below.

Date: January 25, 2023

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, telephone number and email of the prosecutor who requests this subpoena are:

David V. Harbach, II
Special Counsel's Office
U.S. Department of Justice
950 Pennsylvania Avenue, NW, Rm. B-206
Washington, D.C. 20530
▮▮▮▮▮@usdoj.gov

Subpoena 42-69

CO 293 (Rev. 8/91) Subpoena to Testify Before Grand Jury



USA-00808644

| RETURN OF SERVICE (1) | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |
| SERVED ON (PRINT NAME) | | |
| SERVED BY (PRINT NAME) | | TITLE |

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER (2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
                              Date

_____
Signature of Server

_____
Address of Server

ADDITIONAL INFORMATION

(1)As to who may serve a subpoena and the manner of its service see Rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.
(2)"Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

Subject to Protective Order

USA-00808645

**Attachment A**

**List of Documents, Information, and Objects Subpoenaed by Grand Jury**

- Any and all documents or communications related to the location or potential location of documents responsive to the subpoena served by the Department of Justice on the Office of Donald J. Trump on May 11, 2022 (the "May 11 Subpoena").

- Any and all documents or communications providing instructions or guidance from former President Trump or others to you and/or ███Per. 18███ related to compliance with the May 11 Subpoena, including but not limited to the location(s) that should be searched (or not searched) in response to the May 11 Subpoena and the criteria for determining a responsive document.

- Any and all documents or communications related to ███Per. 18███'s search of the basement storage room at Mar-a-Lago for documents responsive to the May 11 Subpoena.

- Any and all documents or communications with ███Per. 12███ concerning ██'s selection and role as ███Per. 12███████████████████████████, or with any other person concerning ██ ███Per. 12███'s selection and role as custodian of records.

The time period for this request is May 11, 2022, until August 1, 2022.

This subpoena does not call for the production of documents protected by a valid claim of privilege, although any document over which privilege is being asserted must be preserved. Any documents withheld on grounds of privilege must be identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter.

Subject to Protective Order

# EXHIBIT 15

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE GRAND JURY SUBPOENA | ) | CASE NO. 23-gj-_____ |
| GJ 42-17 and GJ 42-69 | ) | |
| | ) | UNDER SEAL AND EX PARTE |
| | ) | |
| | ) | GRAND JURY NO. 22-06 |

### UNITED STATES' EX PARTE MEMORANDUM
### <u>IN SUPPORT OF MOTION TO COMPEL</u>

A grand jury in this district is investigating whether former President Donald J. Trump orchestrated a scheme to hide from the government and the grand jury documents with classification markings that he unlawfully retained after the conclusion of his presidency. The government has developed proof that the former President misled his attorneys about the quantity and location of documents that he retained, and caused one of those attorneys, **Per. 18**, to draft and provide to the government a certification falsely claiming compliance with a grand jury subpoena commanding the production of all documents with classification markings in the former President's possession or the possession of his post-presidency office.

The grand jury subpoenaed **Per. 18** and ▮▮▮▮▮▮▮▮—attorneys for the former President and his post-presidential office (the Office of Donald J. Trump)—to appear and answer questions and produce documents about the steps that they and others took on behalf of the former President or his post-presidency office to comply with the grand jury subpoena. **Per. 18** appeared before the grand jury and withheld testimony and documents about those topics—including testimony about the information **Per. 18** received from the former President regarding his

USA-01287406

retention of documents from his presidency and their location—on the ground that the testimony and documents should be kept secret under the attorney-client and work-product privileges. ███ has confirmed through ██ attorney that ██ would also withhold testimony based on the attorney-client and work-product privileges.

The former President cannot shield ` Per. 18 `'s and ███'s testimony and documents from disclosure to the grand jury on privilege grounds. Even assuming the testimony and documents withheld by ` Per. 18 ` and ███ otherwise meet the requirements for the attorney-client or work-product privileges, they are non-privileged under the crime-fraud exception. The government accordingly moves this Court for an order compelling ` Per. 18 ` and ███ to appear before the grand jury and provide the withheld testimony. The Court should also direct ` Per. 18 ` to provide to the Court for *in camera* review the withheld documents that he listed in a privilege log he provided to the government, and the Court should order ` Per. 18 ` to produce any non-privileged documents.[1] A proposed order is attached.

## BACKGROUND

**A. Former President Trump Stores Dozens of Document-Filled Boxes at Mar-a-Lago that He Had Used as an Informal Filing System During His Presidency**

According to multiple witnesses, during his presidency, President Donald J. Trump had a practice of using boxes—typically the type of filing boxes known as

---

[1] The subpoena issued to ███ has a return date of February 9, 2023, and if ███ ultimately withholds documents on or before that date, the government expects to file a short supplement to this motion requesting that the Court order the production of those documents for *in camera* review as well.

- 2 -

                                                                 USA-01287407

"bankers boxes"—to accumulate and store records in an informal filing system. *See* Exhibit 1 (Search Warrant Aff.) ¶¶ 26-31. He preferred to handle paper documents and retain hard copies of documents to review at his convenience, and it was his practice to use the boxes to store collected documents—which included both unclassified documents, such as schedules, newspapers, and memoranda, as well as documents bearing classification markings. *Id.* at ¶ 28. By the end of his presidency, he had accumulated dozens of these boxes in the White House. *See id.* ¶ 32.

Around the end of his presidency in January 2021, approximately 85 to 95 of these boxes were removed from the White House and transported to Mar-a-Lago, the former President's residence in Palm Beach, Florida. *See id.* ¶¶ 30-33; *see also id.* ¶ 32 (media photo of the move out of the White House in January 2021 showing boxes being loaded onto Marine One during the former President's departure). The former President instructed his staff to find a permanent location to store the boxes at Mar-a-Lago, and the boxes were eventually placed in a storage room on the ground floor in a hallway with other offices and storage spaces. *See id.* at ¶¶ 33-37. Also kept in the storage room were boxes containing other material such as challenge coins and memorabilia. *See id.* at ¶ 36.

### B. The Former President Provides Fifteen of the Boxes to NARA But Knows There are Far More

The Presidential Records Act of 1978 makes presidential records the property of the United States and gives the Archivist of the United States responsibility to take custody and control of presidential records after the conclusion of a President's term of office. 44 U.S.C. § 2203; *see Trump v. United States*, 54 F.4th 689, 694 (11th

- 3 -

Subject to Protective Order                                          USA-01287408

Cir. 2022) (per curiam). Throughout 2021, the United States National Archives and Records Administration ("NARA") had ongoing communications with representatives of former President Trump in which it sought the transfer of what it perceived were missing records from his administration. *See* Letter from David S. Ferriero, Archivist of the United States, to the Hon. Carolyn B. Maloney, at 1 (Feb. 18, 2022), *available at* https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf; Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran, at 1 (May 10, 2022), *available at* https://www.archives.gov/files/foia/wall-letter-to-evan-corcoran-re-trump-boxes-05.10.2022.pdf ("Wall Letter"); *see also* Exhibit 1 ¶¶ 25, 39.

After NARA pressed for months for the provision of missing records, the former President wanted to review boxes of documents before providing them to NARA. Exhibit 1 ¶ 39. From as early as November 2021 through January 17, 2022, employees carried boxes from the storage room to the former President for his review, retrieving about two to four boxes at a time and leaving them in the vestibule of the former President's personal residential suite at Mar-a-Lago. *Id.* at ¶¶ 39-42; Exhibit 2 (Nauta Per. 34 Texts).[2] The employees selected boxes based on their proximity to the storage room door. Exhibit 1 ¶ 42. After the employees brought about 15 to 17 boxes to the former President, he instructed them to stop, telling them, "that's it." *Id.*

---

[2] The warrant affidavit stated that this process occurred during approximately January 1 to 17, 2022, but the government has since learned that the process commenced as early as November 2021.

Subject to Protective Order                                    USA-01287409

On January 17, 2022, employees carried 15 boxes from the vestibule of the former President's personal residential suite and handed them over to a NARA contract driver. *Id.* at ¶ 41. The former President indicated to his staff that the 15 boxes were the only boxes that would be going to NARA and "there [were] no more." *Id.* at ¶ 43. The former President instructed an employee to tell one of his lawyers that there were no more boxes at Mar-a-Lago. *Id.* at ¶ 44. The former President knew, however, there were many more boxes in the storage room; employees provided him with a photograph of the boxes in the storage room in November 2021, when he was reviewing boxes before providing them to NARA, for the purpose of showing him the volume of boxes that remained. Exhibit 2; Exhibit 1 ¶ 46 (attaching photo). About 70 to 80 boxes remained after the 15 boxes were removed from the storage room to provide to NARA. Exhibit 1 ¶ 45.

### C. NARA Finds Classified Documents in the Fifteen Boxes and Notifies the Department of Justice

"In its initial review of materials within those boxes, NARA identified items marked as classified national security information, up to the level of Top Secret and including Sensitive Compartmented Information and Special Access Program materials." Wall Letter at 1. NARA informed the Department of Justice, explaining that its preliminary review indicated that the 15 boxes contained "newspapers, magazines, printed news articles, photos, miscellaneous print-outs, notes, presidential correspondence, personal and post-presidential records, and a lot of classified records," and "[o]f most significant concern was that highly classified

- 5 -

Subject to Protective Order

USA-01287410

records were unfoldered, intermixed with other records, and otherwise unproperly

*[sic]* identified." Exhibit 1 ¶ 24 (internal quotation marks omitted).

The Department of Justice sought access to the 15 boxes through the procedures in the Presidential Records Act, both to conduct a criminal investigation and to "conduct an assessment of the potential damage resulting from the apparent manner in which these materials were stored and transported and take any necessary remedial steps." Wall Letter at 1-2 (quoting letter from Department of Justice to former President's counsel). The former President sought to delay the Department's access and prevent access by claiming executive privilege. *Id.* at 2-4. NARA eventually rejected those efforts, noting that with respect to the former President's attempt to assert executive privilege to prevent others within the Executive Branch from reviewing the documents, its decision was "not a close one." *Id.* at 3. NARA accordingly informed counsel for the former President that it would provide the Department with access to the records beginning as early as May 12, 2022. *Id.* at 4.  The former President did not seek legal relief. *See* 44 U.S.C. § 2204(e) ("The United States District Court for the District of Columbia shall have jurisdiction over any action initiated by the former President asserting that a determination made by the Archivist violates the former President's rights or privileges.").

### D.   A Grand Jury Issues a Subpoena for the Return of Any Additional Documents with Classification Markings in the Possession of the Former President or His Office

The government had concerns that additional documents with classification markings were in the possession of the former President or his post-presidential

- 6 -

Subject to Protective Order

USA-01287411

office, and on May 11, 2022, a grand jury in this district issued a subpoena directed to the custodian of records for the Office of Donald J. Trump. Exhibit 3 at 1 (May 11 Grand Jury Subpoena).[3] The subpoena requested "[a]ny and all documents or writings in the custody or control of Donald J. Trump and/or the Office of Donald J. Trump bearing classification markings [list of classification markings]." *Id.* The former President's counsel, ██Per. 18██, accepted service of the subpoena via email on May 11, accompanied by a letter to ██Per. 18██ stating that "the custodian may comply with the subpoena by providing any responsive documents to the FBI at the place of their location" and by providing a "sworn certification that the documents represent all responsive records." Exhibit 4 at 1 (5/11/22 Bratt Letter). The subpoena had a return date of May 24, 2022, which was later adjourned to June 7, 2022, by consent of the government. Exhibit 5 at 2 (6/2/22 Bratt Letter).

### E.   ██Per. 18██ Collects Documents from the Storage Room to Respond to the Subpoena

According to ██Per. 18██ he represented "President Trump, or the Office of President Donald J. Trump," Exhibit 6 at 13 (██Per. 18██ Grand Jury Tr.), for purposes of responding to the subpoena, *id.* at 21-22, and while he was lead counsel, he worked with two other lawyers on the matter, ███████ and ██Per. 5██ ███████, *id.* at 27-28. ██Per. 18██ spoke to the former President on the day he

---

[3] According to its own description, the former President's post-presidential office, the Office of Donald J. Trump, "is an organization made up of a small number of staff who assist President Trump." Memorandum Opinion, *In re Grand Jury Subpoena*, 22-gj-40, ECF No. 16, at 27 (D.D.C. Nov. 9, 2022) (internal quotation marks omitted).

Subject to Protective Order                    USA-01287412

received the subpoena (May 11), *id.* at 30, 32, ███████████████████

███████████████████████████████████████, *id.* at 37-39,

47, 51. Security footage from Mar-a-Lago shows that on the day before the May 23

meeting, the former President's "body man," Walt Nauta, removed one of the boxes

from the storage room.[4] ████████████████████████

████████████████████████████████████████████

████████████████████████████████. The next day, on May

24, the former President's assistant emailed the United States Secret Service and

the former President's staff that the former President's departure date from Mar-a-

Lago to Bedminster, New Jersey, for the summer was changed from May 28 to June

5. Exhibit 8 (Per. 34 Email); *see* Exhibit 7 (Nauta Interview Tr.) at 54 (testifying

that the departure date was delayed), Exhibit 9 (Per. 10 Interview Tr.) at 47-48

(same).[5]

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[4] According to Nauta, if the former President "needs something," "then [he's] there," Exhibit 7 (Nauta Interview Tr.) at 7, and he accompanies the former President "about 95 percent of the time," *id.* at 11.; *see* Exhibit 6 at 81.

[5] The former President ultimately left Mar-a-Lago on June 3, 2022. *See* Exhibit 10 (Per. 12 Grand Jury Tr.) at 123, 128.

- 8 -

███████████████████████████████████████████████████

██████████████████████████████████████████.

Security footage from Mar-a-Lago shows that between ▉Per. 18▉'s meeting

with the former President on May 23 and his return on June 2 to conduct a review

for responsive documents, Walt Nauta—the former President's "body man" and

perhaps "closest assistant" who is with the former President "all [the] time" and

"accompanies [him] everywhere"—removed approximately 64 boxes from the

storage room but brought only 25 to 30 boxes back to the room. Exhibit 1 ¶ 66;

Exhibit 6 at 81.[6] The substantial box movement began on May 24, 2022, the day

following ▉Per. 18▉ and ▉▉▉'s meeting with the former President. That day, Nauta

removed three boxes. Exhibit 1 ¶ 66. On May 30, 2022, four days after Nauta

submitted to a voluntary interview with the FBI during which the location of boxes

at Mar-a-Lago was a significant subject of questioning,[7] and within an hour after

---

[6] The government obtained footage from a security camera at Mar-a-Lago that recorded entry and exit into a room that leads to the storage room. Exhibit 1 ¶ 65.

[7] The FBI interviewed Nauta on May 26, 2022, asking him multiple questions about the 15 boxes provided to NARA, where those boxes had been stored at Mar-a-Lago, who moved them to the vestibule of the former President's residence, and whether any other boxes were stored at Mar-a-Lago. *See, e.g.*, Exhibit 7 at 24 (Question: "[I]s there any other place [other than the vestibule of the former President's residence] that the President could have kept boxes?" Answer: "Not—not to my knowledge."); *id.* at 25 (Question: "Okay, but as far as you know no rooms have held or did hold like boxes similar to what you brought, brought onto the truck [to NARA]." Answer: "As far as I know, no."); *id.* at 27 ("If we wanted to find out, hey are there like, were these boxes stored somewhere, like who would be the person to—to ask about?" Answer: "I wouldn't know."); *id.* at 37 (Question: "We were talking about a year, so can—can you guess where they [the 15 boxes] could have been or where they could have come from?" Answer: "I don't want to guess. I

Subject to Protective Order                                   USA-01287414

Nauta spoke on the phone with the former President,[8] he began removing approximately 50 bankers boxes. *Id.* The former President instructed Nauta to put the boxes in his residence, where he (the former President) intended to "pick from them." Exhibit 11 (Nauta-███ Per. 30 ███ Texts).[9] Two days later, on June 1, 2022, Nauta carried eleven brown cardboard boxes out of the storage room; one box did not have a lid on it and appeared to contain papers. Exhibit 1 ¶ 66. Nauta and a Mar-a-Lago employee (Carlos de Oliveira) then moved approximately 25 to 30 boxes—bankers boxes and brown cardboard boxes—back into the storage room from the former President's residential suite on June 2, 2022. *Id.*; Exhibit 12 (de Oliveira Grand Jury Tr.) at 52-55, 66-68.[10]

---

just, I just, my answer is I don't know."); *id.* at 38 (Question: "But even within Mar-a-Lago . . . [i]s there a place where boxes could be stored?" Answer: "There's many storage units that I haven't, you know that I assume that I haven't even, that could be places that aren't even storage units that I . . . You know? There's a lot of doors on Mar-a-Lago."); *id.* at 41 (Question: "So, you . . . had no idea how they [the 15 boxes] got there [in the vestibule of the former President's residence] before?" Answer: "No.").

[8] Phone toll records show that Nauta and the former President had a phone call lasting about 30 seconds at 9:08 a.m. on May 30, 2022, and the former President had a phone call with ███ Per. 5 ███ that lasted over two minutes at 9:29 a.m. on May 30. The time stamp from security footage at Mar-a-Lago shows that Nauta started moving the boxes from the storage room at 9:54 a.m. that day.

[9] When the former President's ███ Per. 30 ███ complained to Nauta that there would not be enough room on the plane for the boxes when they left Mar-a-Lago by plane for Bedminster on June 3, Nauta responded that it was his understanding that the former President "wanted to pick from them" and did not "want[] to take the boxes." Exhibit 11.

[10] ███ Per. 18 ███ talked to the former President by phone the day before, on June 1, 2022. Exhibit 6 at 66.

Subject to Protective Order                              USA-01287415

Per. 18 arrived at Mar-a-Lago a few hours after Nauta and de Oliveira had moved boxes—a smaller set than Nauta had previously removed—into the storage room on June 2. Exhibit 1 ¶ 66; Exhibit 6 at 77; Exhibit 12 at 52-55. After Per. 18 met with the former President for about ten minutes at approximately 3 p.m., Nauta escorted Per. 18 to the storage room. Exhibit 6 at 77-78, 85.

- 11 -

Subject to Protective Order                                                    USA-01287416

**F.     The Former President's Representatives Obtain a Certification from a Custodian with No Personal Knowledge**

That same evening, June 2, 2022, ███ Per. 5 ███ called ███ Per. 12 ███ and asked ██ to be at Mar-a-Lago the next morning. Exhibit 10 (███ Per. 12 ███ Jury Tr.) at 19-21, 25. ███████████ Per. 12 ███████████

███████████, when ██ left for work in television. *Id.* at 12. The former President then hired ██ ███████████ Per. 12 ███████████

███████████████████████

███████ where, according to ██ ██ "report[ed] to" and "work[ed] for" the former President. *Id.* at 8-9.

███ Per. 5 ███—whom ██ described as an ███████ Per. 5 ███████

███████████████████—told ██ that there was an open matter in Washington, D.C., and that "we," which ██ understood to mean ███ Per. 5 ███ and Save America, had hired ██ Per. 18 ██ to handle the matter. *Id.* at 19-21, 25, 28-29, 31-32. ███ Per. 5 ███ told ██ that ██ Per. 18 ██ had handled everything—a search had been conducted, the search for responsive documents had been completed, and responsive documents had been collected. *Id.* at 20-21, 25, 35. ███ Per. 5 ███ said that ██ did not need to do anything but that "we" (███ Per. 5 ███ and Save America) needed someone on site at Mar-a-Lago to meet with the FBI the next morning— even though ██ Per. 18 ██ was already there. *Id.* at 19-21, 25, 32-33, 35. ██ agreed, despite ██ lack of any prior knowledge of the subpoena or the location of documents responsive to the subpoena. *Id.* at 6-11, 18-19. According to ██ it was during this conversation with ███ Per. 5 ███ that ██ was "designated" to serve as the custodian of

Subject to Protective Order

USA-01287417

records. *Id.* at 19. ██████ then connected ██████ and ████ by text. *Id.* at 25, 36.



---

11 ████████████████████████████

- 13 -

USA-01287418



**G.** ████ **Per. 18** ████ **and** ████ **Per. 12** ████ **Provide the False Certification to the Government**

- 14 -

Subject to Protective Order

████████████████████████████████████████████████████

███████████████████████████████████.

    **Per. 18** and **Per. 12** met with three FBI agents and an attorney from the Department of Justice (Jay Bratt) and turned over the certification and the Redweld containing the documents. *See* Exhibit 1 ¶ 55. The certification signed by **Per. 12** (and drafted by **Per. 18** stated that "[b]ased upon the information that has been provided to me, I am authorized to certify, on behalf of the Office of Donald J. Trump," that "[a] diligent search was conducted of the boxes that were moved from the White House to Florida," the search was conducted "in order to locate any and all documents that are responsive to the subpoena," and "[a]ny and all responsive documents accompany this certification." Exhibit 13 (**Per. 12** Certification) at 1.

    At the meeting, **Per. 18** stated that the documents in the Redweld had been found during a review of the boxes located in Mar-a-Lago's basement storage room. Exhibit 1 ¶ 55; *see* Exhibit 6 at 172 (recollecting that he told Bratt that the storage room was the place searched "because that was the place where responsive documents would be found" since "that's where the boxes from the White House ended up"). **Per. 18** stated that he had been advised that all the records that came from the White House were stored in the basement storage room at Mar-a-Lago, which comprised the "remaining repository" of records from the White House. Exhibit 1 ¶ 56.

    The former President joined the meeting for a few minutes before leaving to fly to Bedminster for the summer. Exhibit 10 at 118-21, 123, 128; Exhibit 6 at 164-

Subject to Protective Order                                          USA-01287420

65. The former President indicated that he wanted to be cooperative with the FBI. Exhibit 10 at 118-19. After the former President left, Mr. Bratt asked if he and the agents could look at the storage room. Exhibit 6 at 166. ▮Per. 18▮ responded that he would not let them look in the storage room if it were up to him, but the former President had instructed him to allow it. Exhibit 10 at 122; Exhibit 6 at 166. ▮Per. 18▮ let Mr. Bratt and the agents observe the storage room but instructed them not to look inside the boxes. Exhibit 6 at 166-67, 175-76; Exhibit 10 at 123. The agents observed approximately 50-55 boxes. Exhibit 1 ¶ 56. ▮Per. 18▮ estimated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Exhibit 6 at 95.

Once in a secure government setting, the FBI conducted a review of the documents contained in the Redweld. That review revealed 38 unique documents bearing classification markings, most of which were marked SECRET or TOP SECRET. The FBI agents further observed markings reflecting sensitive compartments and dissemination controls.

### H.   Nauta Travels to Mar-a-Lago Shortly After ▮Per. 18▮ and the Former President Speak on June 24

On June 24, the grand jury issued a subpoena to the Trump Organization for security-camera footage from Mar-a-Lago. Exhibit 14 (Trump Org. Subpoena). Mr. Bratt had discussed the subpoena with the Trump Organization's ▮▮▮▮▮▮ ▮▮▮▮▮▮ on June 22 and emailed Garten a draft of the subpoena. Exhibit 15 (Bratt-▮▮▮ Email). According to the privilege log ▮Per. 18▮ has provided to the government, ▮▮▮ emailed ▮Per. 18▮ that day (June 22). Exhibit 16 (▮Per. 18▮

- 16 -

                                        USA-01287421

Privilege Log) at 13-14.[12] And on June 23, [Per. 18] emailed with Nauta and an assistant to the former President to set up a ten-minute call with the former President for the following day. Exhibit 17 ([Per. 34] - [Per. 18] -Nauta Emails). According to toll records, on June 24, the former President and [Per. 18] spoke on the phone beginning at 1:25 p.m. for nearly nine minutes.

At the time, Nauta was scheduled to travel with the former President the following day to a rally in Illinois, but after the phone call between the former President and [Per. 18] Nauta instead booked a flight to Florida. *See* Exhibit 18 (Nauta Illinois Travel Email); Exhibit 19 (Nauta Flight to Palm Beach Email). Nauta told others that he was rearranging his plans because of a family emergency, but he described the trip has work-related when seeking reimbursement for the travel. *See* Exhibit 20 (Nauta-███ Texts); Exhibit 21 (Nauta-[Per. 15] Texts); Exhibit 22 (Nauta-███ Texts).

Around 4:10 p.m. the following day (June 25), Nauta texted de Oliveira that he had just landed in Florida, and he asked de Oliveira to meet him at Mar-a-Lago around 5:15 p.m. Exhibit 23 (Nauta-de Oliveira Texts). Security footage from Mar-a-Lago shows Nauta and de Oliveira entering the area near the storage room for about 30-45 seconds at around 5:50 p.m.[13]

---

[12] June 22 is the earliest date of any communication between ███ and [Per. 18] listed on the privilege log, and according to the log, [Per. 18] and ███ continued to communicate through July 7. Exhibit 16 at 13-17.

[13] Nauta had testified before the grand jury four days earlier (before the government received the video footage showing Nauta moving boxes out of and into the storage room between May 22 and June 2, 2022), and the movement of boxes

Subject to Protective Order                                        USA-01287422

I.    **The Government Obtains and Executes a Warrant to Search Mar-a-Lago and Finds Over 100 Documents Bearing Classification Markings**

Through further investigation, the government uncovered multiple sources of evidence indicating that the response to the May 11 grand jury subpoena was incomplete and that classified documents remained at Mar-a-Lago, notwithstanding the sworn certification made to the government on June 3. Among other things, the government obtained the security footage from Mar-a-Lago showing that in the days leading up to Per. 18 's review for responsive documents, approximately 64 boxes had been removed from the storage room but only 25 to 30 boxes had been returned.

On August 5, 2022, the government applied in the Southern District of Florida for a warrant to search certain areas of Mar-a-Lago. A magistrate judge approved the warrant after finding probable cause that evidence of three crimes—willful retention of national defense information (18 U.S.C. § 793), concealment or removal of government records (18 U.S.C. § 2071), and obstruction of a federal investigation (18 U.S.C. § 1519)—would be found at Mar-a-Lago. Exhibit 1 at 4.

---

and the storage room were significant subjects of questioning. When asked to identify the occasions on which he had entered the storage room after October 2021, Nauta testified that "a lot of times" he would store "shirts, and hats, [and] stickers" in the storage room at the former President's behest. Exhibit 24 (Nauta Grand Jury Tr.) at 39. When asked if he had removed anything from the storage room at any time, he testified that "recently"—which, in context, referred to "within the last month" prior to his testimony on June 21, 2022—he had removed a box of "challenge coins" from the storage room that he took to the former President's office. *Id*. at 35-42; Exhibit 1 ¶¶ 68-69. He did not mention the movement of boxes during the prior month.

Subject to Protective Order                                                      USA-01287423

During the execution of the warrant on August 8, 2022, agents seized thirteen boxes or containers containing documents with classification markings, and in all, over 100 unique documents with classification markings. In the storage room alone, agents found 76 documents bearing classification markings, indicating that the documents had likely been transferred into that room only after  ██ Per. 18 ██ conducted his review. At the time of the search, 73 boxes were in the storage room.[14] And notwithstanding ██ Per. 18 ██'s prior representation that all materials from the White House were located in the storage room, the search located documents with classification markings not only in the storage room but also in the former President's office, including in the former President's desk and closet. Certain of the documents had conspicuous colored cover sheets indicating their classification status. The classification levels ranged from CONFIDENTIAL to TOP SECRET, and certain documents included additional sensitive compartments that signify very limited distribution.

██████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

---

[14] Notably, this number is higher than the number of boxes the FBI agents and ██ Per. 18 ██ estimated were in the storage room on June 3, *i.e.*, around 50 to 55 (the agents) or ██ ( ██ Per. 18 ██ The security footage reviewed by the government to date does not depict movement of boxes into the storage room between June 3 and August 8.

Subject to Protective Order  USA-01287424



**J.**    Per. 18    **Testifies Before the Grand Jury**

- 20 -

USA-01287425



- 21 -

USA-01287426



3.

- 22 -

Subject to Protective Order



**4.**

Subject to Protective Order

USA-01287428



**5.** ████████████████████████████

**6.** █████████████████

**K.** ██████████ **is Subpoenaed to Appear Before the Grand Jury**

Following ▆Per. 18▆'s testimony, on January 25, 2023, the government issued a grand jury subpoena to ██████████ for testimony and documents. ██████████ ██████████████████████████ ██████████████████████████ Through ██ attorney, ████ has informed the government that the former President will

- 24 -

assert attorney-client privilege and that █████ will withhold testimony from the grand jury based on that privilege assertion.

## ARGUMENT

The government seeks an order compelling ███Per. 18███ and ███████ to answer questions and produce documents on six topics: (1) ████████████████████████ ████████████████████████████████████████; (2) ████████████ ██████████████████████████████████████████████; (3) circumstances surrounding the selection of ███Per. 12███ as custodian of records; (4) ██████████████████████████████████████████████████████████ ████████████████████ (5) ████████████████████████████████ ██████████████████████████████; and (6) the phone call between ███Per. 18███ and the former President on June 24. The crime-fraud exception to the attorney-client and work-product privileges requires ███Per. 18███ and ████ to answer questions and produce documents on each of these topics.

The evidence summarized above, together with the attached supporting documents, shows that the former President, alone or with others acting with him or on his behalf, or on behalf of his post-presidential office, engaged in criminal conduct and communicated and consulted with ███Per. 18███ and ████ on these six topics in furtherance of that criminal conduct.[16] The Court should enter an order

---

[16] The government has reason to believe that █████ through ████ participation in the three-hour meeting on May 23, can testify about communications or consultations on at least the first two topics. Although the government does not currently have evidence directly indicating that █████ participated in communications or consultations on the remaining four topics, if █████ in fact can

- 25 -

compelling **Per. 18** and ███ to testify as set forth in the attached proposed order. The Court should also direct **Per. 18** to produce to the Court for *in camera* review the documents listed in the privilege log he provided to the government; and after conducting that review, the Court should—as set forth in the attached order—order **Per. 18** to provide to the government any non-privileged documents subject to the crime-fraud exception.[17]

## I. Legal Background

### A. The Attorney-Client and Work-Product Privileges

The "longstanding principle that the public has a right to every man's evidence . . . is particularly applicable to grand jury proceedings," which constitute a critical public means for ascertaining truth. *Branzburg v. Hayes,* 408 U.S. 665, 688 (1972) (ellipsis and internal quotation marks omitted). In criminal cases, "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974). "When the grand jury is performing its investigatory function into a general problem area[,] society's interest is best served by a thorough and extensive investigation," which requires "every available clue [to be] run down . . . to find if a crime has been committed." *Branzburg*, 408 U.S. at

---

testify on those topics, ███ testimony would be non-privileged under the crime-fraud exception for the reasons discussed herein.

[17] As described above, as of the date of this filing, ███ has not withheld documents from the grand jury, but if she does so after this motion is filed, the government expects to file a short supplement requesting that the Court order ███ to provide those documents to the Court for *in camera* review.

- 26 -

701 (internal quotation marks omitted). There are exceptions for "constitutional, common-law, or statutory privilege[s]," but "[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon*, 418 U.S. at 709-10 (internal quotation marks omitted). "[A]ny [evidentiary] privilege must 'be strictly construed.'" *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

The attorney-client privilege is a long-recognized common-law privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). The work-product privilege, first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), "is broader than the attorney-client privilege, but less absolute," *In re Sealed Case*, 107 F.3d 46, 51 (D.C. Cir. 1997), covering "tangible material or its intangible equivalent in unwritten or oral form, other than underlying facts, prepared by a lawyer for litigation then in progress or in reasonable anticipation of future litigation." Restatement (Third) of the Law Governing Lawyers § 87(1) (2000).

"It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d

- 27 -

740, 750 (D.C. Cir. 2006); *see In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (per curiam) (attorney-client privilege); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) (work-product privilege). Moreover, both the attorney-client and work-product privileges are subject to the crime-fraud exception. *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982); *see In re Sealed Case*, 107 F.3d at 51.

### B.   The Crime-Fraud Exception

The crime-fraud exception applies when "a privileged relationship is used to further a crime, fraud, or other fundamental misconduct." *In re Sealed Case*, 676 F.2d at 807. To overcome a claim of attorney-client privilege based on the crime-fraud exception, the government "must first make a prima facie showing of a violation sufficiently serious to defeat the privilege." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985). "[T]he government's burden of proof is satisfied 'if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud.'" *In re Grand Jury*, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (quoting *In re Sealed Case*, 754 F.2d at 399). Next, the government must "establish some relationship between the communication at issue and the prima facie violation." *In re Sealed Case*, 754 F.2d at 399. This requirement is satisfied if it is shown that the client communicated with the attorney "to further an unlawful or fraudulent act," *In re Sealed Case*, 107 F.3d at 49, or "sought the advice of counsel to further the [criminal or fraudulent] scheme," *In re Sealed Case*, 754 F.2d at 399.

With respect to the work-product privilege, the crime-fraud inquiry is "somewhat different." *In re Sealed Case*, 107 F.3d at 51. When determining whether

- 28 -

   USA-01287433

there is "some valid relationship between the work product under subpoena and the prima facie violation," *In re Sealed Case*, 676 F.2d at 814-15 (opinion of Wright, J.), the focus is "not on the client's intent regarding a particular communication, but on the client's intent in consulting the lawyer or in using the materials the lawyer prepared." *In re Sealed Case*, 107 F.3d at 51. "The question is: Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?" *Id.* "[A]s with the privilege, the interests in favor of work product immunity are overcome when the client uses the attorney to further a crime or fraud." *Id.*

The crime-fraud exception is not limited to abuse of the attorney-client relationship to further conduct that violates a criminal statute; it also applies when the privileged relationship is used to further a "fraud" or "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re Sealed Case*, 676 F.3d at 812 (opinion of Wright, J.); *see* 1 Paul R. Rice et al., *Attorney-Client Privilege in the United States* § 8:12 (2022) ("[T]he rationale for the exception—precluding clients from benefitting from their abuse of the attorney-client relationship—does not justify limiting its application to criminal activity.") (footnote omitted). Moreover, the focus is on the client's bad intent, *see In re Sealed Case*, 107 F.3d at 49, and the privilege is vitiated even if the attorney is entirely innocent or ignorant of the client's bad intent; "a guilty client may not use the innocence or ignorance of its attorney to claim the court's protection against a grand jury subpoena." *In re Sealed Case*, 676 F.2d at 812 (opinion of Wright, J.); *see Clark*

- 29 -

*v. United States*, 289 U.S. 1, 15 (1933) ("The attorney may be innocent, and still the guilty client must let the truth come out.").[18]

Courts have regularly ordered attorneys to provide documents or testimony under the crime-fraud exception, including when clients used their attorneys to convey false or misleading statements to the government or a grand jury. The D.C. Circuit affirmed an order, for example, requiring Monica Lewinsky's lawyer to provide documents and testimony about an affidavit containing false statements that Lewinsky signed and submitted in federal court. *In re Sealed Case*, 162 F.3d 670, 672-74 (D.C. Cir. 1998). The D.C. Circuit similarly affirmed an order requiring disclosure of conversations between a corporate executive and corporate counsel about "a back-dated fraudulent document produced to mislead the government in connection with its ongoing grand jury investigation." *In re Grand Jury*, 475 F.3d at 1305-06. And this Court ordered an attorney to provide testimony about her legal representation of two clients that caused her to submit two letters to the Department of Justice containing false and misleading information. *In re Grand*

---

[18] Similarly, "[t]he crime-fraud exception overcomes protection for both ordinary . . . and opinion . . . work product." Restatement (Third) of the Law Governing Lawyers § 93 cmt. a. Even "[i]f the client alone has the requisite criminal or fraudulent intent, work-product immunity is lost despite the innocence of the lawyer." *Id.* cmt. c; *cf. In re Sealed Case*, 162 F.3d 670, 672-73 (D.C. Cir. 1998) (affirming order to compel attorney testimony over claims of attorney-client and work-product privileges and dismissing attorney's appeal for lack of jurisdiction). "Once the required [crime-fraud] showing is made, opinion work product of an innocent lawyer is subject to disclosure along with opinion work product of the client and ordinary work product of both client and lawyer." Restatement (Third) of the Law Governing Lawyers § 93 cmt. c.

- 30 -

Subject to Protective Order

*Jury Investigation*, No. 17-MC-2336, 2017 WL 4898143, at *1, *7-*10 (D.D.C. Oct. 2, 2017).

## II. The Crime-Fraud Exception Forecloses ██Per. 18██ and ████ from Withholding Testimony and Documents About the Six Identified Topics

The crime-fraud exception forecloses ██Per. 18██ and ████ from withholding testimony and documents regarding the six topics. The evidence here establishes that the former President, either alone or in connection with others, engaged in a crime, fraud, or other fundamental misconduct—a scheme to hide from the FBI and the grand jury documents with classification markings that he unlawfully retained after the conclusion of his presidency. And the evidence further shows that the former President sought to further that criminal scheme when he, or others acting together with him or on his behalf, communicated and consulted with ██Per. 18██ and ████ [19]

This Court's "determination that a prima facie showing has been made lies within [its] sound discretion." *In re Sealed Case*, 754 F.2d at 399. In exercising that discretion, the Court can—and should—permit the former President and his post-

---

[19] It is also likely that much of the testimony withheld by ██Per. 18██ is not privileged because the attorney-client privilege covers "only communications that seek legal advice," *In re Lindsey*, 158 F.3d at 1270 (internal quotation marks omitted). "Since questions about the adequacy of the search" to locate documents in response to a grand jury subpoena "do not entail legal advice, the topic is not off limits just because an attorney plays a role." *In re Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988); *see In re Grand Jury Proceeding*, 68 F.3d 193, 196 (7th Cir. 1995). The attorney-client privilege does not attach to questions about the "who, how, when, where" of a search for responsive documents conducted by an attorney. *Feldberg*, 862 F.2d at 628. Many of the questions ██Per. 18██ refused to answer on the six topics identified by the government were unprotected communications of this sort.

- 31 -

Subject to Protective Order                                                     USA-01287436

presidential office to provide an explanation for their conduct through evidence and argument, which the Court should then consider when determining whether a prima facie showing has been made. *See* 1 Rice, *Attorney-Client Privilege in the United States* § 8:7 (discussing cases in which courts permitted the party invoking the privilege to provide explanations and "to present evidence and make arguments that should be considered with the content of the withheld communications"). The Court, however, should avoid minitrials that improperly increase the government's burden. *See In re Sealed Case*, 754 F.2d at 402 n.7. The Court should therefore require the former President and his post-presidential office to provide any evidence it wishes this Court to consider expeditiously and without undue delay.

Moreover, the Court can—and should—order `Per. 18` to produce to the Court for *in camera* review the withheld materials listed in his privilege log. That procedure is appropriate where, as here, the evidence establishes that *in camera* review of the materials may reveal evidence to establish application of the crime-fraud exception. *See United States v. Zolin*, 491 U.S. 554, 574-75 (1989); *In re Sealed Case*, 107 F.3d at 50 n.6. The court should consider those materials to determine whether the crime-fraud exception applies both to the withheld documents and testimony. And after conducting the review, the Court should order `Per. 18` to turn over any withheld documents subject to the exception. Although the following discussion focuses on the testimony that `Per. 18` withheld and that he should be ordered to provide, the same reasoning applies to the withheld documents listed in the privilege log. It is likely that most, if not all, of the

- 32 -

                                             USA-01287437

documents identified in the log are not shielded by the attorney-client or work-product privileges.

### 1. The Government Has Presented Ample Evidence Establishing a Crime, Fraud, or Other Fundamental Misconduct

The evidence summarized above—supported by the attached materials—establishes "a prima facie showing of a violation sufficiently serious to defeat the privilege." *In re Sealed Case*, 754 F.2d at 399. That evidence strongly supports a finding that the former President, and potentially those working for him or on his behalf, unlawfully retained classified documents containing national defense information, concealed or covered up his unlawful retention of documents with classified markings, and impeded or obstructed the government's efforts to locate and retrieve the documents with classified markings and investigate potential criminal violations arising from the former President's retention of the documents. *See* 18 U.S.C. §§ 793, 1001, 1512, 1519; *see also* 18 U.S.C. § 2 (commanding or inducing commission of an offense or "willfully caus[ing] an act to be done which if directly performed by him or another would be an offense against the United States").

A federal magistrate judge found that the government's affidavit submitted in support of a warrant to search Mar-a-Lago established that crimes have been committed—including violations of 18 U.S.C. § 793 and § 1519—and that evidence of those crimes would be found at Mar-a-Lago. According to the D.C. Circuit, "there is little practical difference between" the prima-facie standard and probable cause, as "[b]oth require that a prudent person have a reasonable basis to suspect the

- 33 -

perpetration or attempted perpetration of a crime or fraud." *In re Sealed Case*, 754 F.2d at 399 n.3 (internal quotation marks omitted). An independent review of the warrant affidavit, together with additional evidence discovered afterwards, establishes that the magistrate judge's probable-cause determination was correct. All of those facts support application of the crime-fraud exception here.

The former President knew that boxes containing documents with classification markings were held in the storage room at Mar-a-Lago. He had reviewed the 15 boxes that contained documents with classification markings before turning them over to NARA in January 2022, tasking his staff, including body man Walt Nauta, with bringing them to his residence for his review. In addition to his own review, NARA informed him that the 15 boxes contained documents with classification markings and that it had referred the matter to the Department of Justice. And the former President was provided with a photograph of the boxes in the storage room, which confirms he knew about the large volume of additional document-filled boxes that he retained.

The former President knew that his Office received a grand jury subpoena on May 11 for any other documents with classification markings in the possession of the former President or his post-presidential office. He met with ▮Per. 18▮ and ▮▮▮▮ for three hours on May 23 about the subpoena and by the next day had delayed his departure from Mar-a-Lago from May 28 to June 5▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ the former President's close assistant (Nauta) went to

- 34 -

Subject to Protective Order                    USA-01287439

the storage room containing the remaining boxes and removed 64 of them. Indeed, Nauta began removing 50 boxes from the storage room within an hour after a phone call with the former President on the morning of May 30, 2022. According to contemporaneous text messages between Nauta and the former ██Per. 30██████ the former President "told [Nauta] to put [the boxes] in the room," *i.e.*, the former President's residence, where the former President planned to "pick from them." Exhibit 11. Then, three days later, after the former President had an opportunity to "pick from" the boxes, Nauta and de Oliveira (the Mar-a-Lago employee) moved 25 to 30 boxes back into the storage room from the vestibule in the former President's residential suite, just a few hours before ██ Per. 18 ██ arrived to review for responsive documents.

Nauta, whose job was to perform whatever tasks the former President requested, would not have moved the boxes without the former President's knowledge and direction. Nauta brought ██ Per. 18 ██ to the storage room to search for responsive documents straight from a meeting with the former President, and according to ██ Per. 18 ██ ████████████████████████ ████████████. And when Nauta was interviewed by FBI agents and questioned in the grand jury about moving boxes at Mar-a-Lago, he dissembled. This series of events strongly reflects a scheme to retain documents with classification markings and avoid compliance with a subpoena for the production of all such documents in the possession of the former President and his post-presidential office.

- 35 -

The circumstances surrounding the certification signed by ███ Per. 12 ███

further reflect such a scheme. The certification falsely stated that "[a] diligent

search was conducted of the boxes that were moved from the White House to

Florida" and that "[a]ny and all responsive documents accompany this certification."

Exhibit 13 at 1. ███ Per. 18 ███ refused to sign the certification himself and instead found

someone else to sign it who ████████████████████████

████████████████████ and had no knowledge of the subpoena (indeed

never saw the subpoena prior to signing the certification), no knowledge about the

storage of documents at Mar-a-Lago, and no prior experience responding to grand

jury subpoenas. ████████████████████████

████████████████████████████████

████████ ████████████████

████████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████

This evidence readily establishes a prima facie showing of illegality that

justifies application of the crime-fraud exception. A prudent person would certainly

- 36 -

have a reasonable basis from this evidence to conclude that the former President, alone or possibly with others working for him or on his behalf, perpetrated or attempted to perpetrate an illegal scheme to continue to retain classified documents and obstruct and impede the government from finding and recovering those documents and investigating their unlawful retention.

> **2.    The Government Has Amply Demonstrated the Requisite Connection Between the Violation and Any Communications or Consultations with ███ Per. 18 ███ and ████ Within the Six Identified Subject Areas**

The evidence establishes a direct relationship between the prima facie violation and the attorney-client communications and attorney work product withheld by ███ Per. 18 ███ and ████ The evidence fully supports a conclusion that ███ Per. 18 ███s and ████ communications and consultations with the former President or those working on his behalf on the six topics the government has identified were intended to further or facilitate the unlawful retention of documents with classification markings and the obstruction of the government's efforts to recover those documents and investigate their unlawful retention. ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████. And the evidence shows that this representation was false and that the former President's communications and

Subject to Protective Order                                         USA-01287442

consultations with ███ Per. 18 ███ and ███ in late May and early June—either directly or through intermediaries—led directly to that false representation.[20]

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ And as confirmed by the government's subsequent search of Mar-a-Lago pursuant to the warrant, which uncovered over 100 additional documents with classified markings, the storage room was not the only place that documents with classified markings were located at the time ███ Per. 18 ███ conducted his search. The evidence thus easily sustains the conclusion that ███ Per. 18 ███'s and ████ communications and consultations about where responsive documents may be located, and ████████████████████████████████████

---

[20] ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

- 38 -

Subject to Protective Order

██████████████████████████████████ Those communications and consultations permitted the former President to retain the documents with classification markings despite the grand jury subpoena calling for their production and to obstruct the criminal investigation conducted by the grand jury and the government.

The evidence likewise supports a finding that the communications and consultations about the certification ▉Per. 12▉ signed were similarly intended to further criminal conduct. ▉Per. 12▉ had no personal knowledge of any efforts to comply with the grand jury's subpoena and was brought in at the last minute to sign a certification containing false and misleading statements regarding compliance with the subpoena. ████████████████████

████████████████████████████

██████████████████████████████████

██████████████████████████████

▉ Per. 18 ▉'s communications and consultations around ▉Per. 12▉ selection and the contents and use of the false certification facilitated obstruction of justice and the continued retention of documents with classification markings at Mar-a-Lago.

Finally, the evidence supports a finding that ▉ Per. 18 ▉'s communications with the former President during the nine-minute call on June 24 furthered the former President's criminal conduct. The evidence shows that boxes and classified documents went back into the storage room at Mar-a-Lago sometime between ▉ Per. 18 ▉██████ and the execution of the search warrant on August 8. ███

- 39 -

Subject to Protective Order                                          USA-01287444

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████. The former

President's closest assistant—Nauta, who had previously moved the boxes out of the

storage room prior to ██ Per. 18 ██'s review on June 2, presumably at the former

President's direction, and who had dissembled when the government questioned

him on the topic of boxes and the storage room—then changed his travel plans at

the last minute to redirect to Mar-a-Lago, misrepresenting the reason for his

change of plans. Nauta then went to the area near the storage room within an hour

of arriving at Mar-a-Lago. The government should be permitted to ask ██ Per. 18 ██

what he discussed with the former President on June 24 that prompted this series

of events, including whether ██ Per. 18 ██ informed the former President about the

government's request for security camera footage during that phone call.

## CONCLUSION

The Court should order ██ Per. 18 ██ and ████ to appear before the grand jury

and answer questions about (1) █████████████████████████

████████████████████████; (2) █████████████████

██████████████████████████████████████;

(3) the circumstances surrounding the selection of ██ Per. 12 ████ as the custodian

of records; (4) the circumstances surrounding the statements in the certification

signed by ██ Per. 12 ██ (5) the knowledge or approval of the certification by the former

President or anyone in his Office; and (6) the June 24 phone call between ██ Per. 18 ██

and the former President. The Court should also order ██ Per. 18 ██ and (if she

- 40 -

withholds documents) ▆▆▆▆ to produce any documents about the same subject matters. The crime-fraud exception vitiates any claim of attorney-client or work-product privilege with respect to ██Per. 18██'s and ▆▆▆▆ testimony and documents on those topics. A proposed order is attached.

<div style="margin-left: 40%">

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *John M. Pellettieri*
John M. Pellettieri
Assistant Special Counsel
Jay I. Bratt
Counselor to the Special Counsel
Julie A. Edelstein
Senior Assistant Special Counsel
Brett C. Reynolds
Assistant Special Counsel

</div>

February 7, 2023

Subject to Protective Order                                    USA-01287446