# EXHIBIT 16

  
# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE GRAND JURY SUBPOENA | ) | CASE NO. 23-gj-10 |
| GJ 42-17 and GJ 42-69 | ) | |
| | ) | UNDER SEAL |
| | ) | |
| | ) | GRAND JURY NO. 22-06 |

## <u>UNITED STATES' SEALED REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL</u>

The crime-fraud exception forecloses two of President Donald J. Trump's attorneys, ███ Per. 18 ███ and ███████, from withholding evidence about their communications and consultations with the former President on the six topics identified in the government's motion to compel. The government has conclusively demonstrated, appropriately supported by an *ex parte* submission, that the former President or those working for him or on his behalf communicated and consulted with these attorneys to further or facilitate a crime, fraud, or other fundamental misconduct. Nothing in the former President's or ███ Per. 18 ███ oppositions undermines that showing. Nonetheless, because ███ Per. 18 ███ independent assertion of the work-product privilege raises unsettled questions about the application of the crime-fraud exception to opinion work product, the government seeks only ███ Per. 18 ███ fact work product, which in any event constitutes most, if not all, of what the government's motion to compel seeks. Absent this narrow exception, however, the Court should order ███ Per. 18 ███ and ████ to provide to the grand jury all other testimony and documents regarding communications or consultations on the identified topics.

I.      **The Crime-Fraud Exception Vitiates Any Claims of Attorney-Client or Work-Product Privilege in This Case**

The attorney-client privilege and work-product privilege cede to a grand jury subpoena for testimony or documents when the attorney-client "relationship is used to further a crime, fraud, or other fundamental misconduct." *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982). To obtain evidence under the crime-fraud exception, the government must first make a prima facie showing of a crime, fraud, or other fundamental misconduct, which is satisfied if the government offers evidence that, if believed by a trier of fact, would establish a crime or fraud. *See, e.g.*, *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985). The government must then establish "some relationship" between the otherwise privileged material and the prima facie violation. *Id.*; *see In re Sealed Case*, 676 F.2d at 814-15. With respect to communications otherwise covered by the attorney-client privilege, this requirement is satisfied if the client communicated with or sought the advice of counsel to further the crime or fraud. *See In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997); *In re Sealed Case*, 754 F.2d at 399. With respect to work-product material, this requirement is satisfied if the government establishes that "the client consult[ed] the lawyer or use[d] the material for the purpose of committing [the] crime or fraud." *In re Sealed Case*, 107 F.3d at 51.

In short, neither the attorney-client privilege nor the work-product privilege provides a basis to keep attorney-client communications and consultations secret "when the client uses the attorney to further a crime or fraud." *In re Sealed Case*, 107 F.3d at 51. The crime-fraud exception recognizes that there is a strong "public

Subject to Protective Order                                                         USA-01288437

interest in preventing clients from attempting to misuse the client-lawyer relationship for seriously harmful ends." Restatement (Third) of the Law Governing Lawyers § 82 cmt. b (2000) (hereafter "Restatement"); *see id.* § 93 cmt. b ("[T]he crime-fraud exception for work-product immunity recognizes that crime and fraud do not warrant such protection.").

The former President's and **Per. 18** arguments in opposition to the government's motion fail to undermine the government's showing that the crime-fraud exception compels **Per. 18** and ▮▮▮▮ to provide testimony and documents on the six identified topics. Both contend that the government cannot use an *ex parte* submission to support application of the crime-fraud exception. The former President also argues that the motion is not ripe as to ▮▮▮ and that the government has failed to satisfy either component of the two-part crime-fraud standard. And **Per. 18** contends that his separate assertion of the work-product privilege forecloses application of the crime-fraud exception to testimony and documents covered by that privilege. These arguments do not withstand scrutiny.

## A. *Ex Parte* Procedures Are Appropriate Here

A district court appropriately may ensure grand jury secrecy through "provisions for sealed, or when necessary *ex parte*, filings." *In re Grand Jury*, 121 F.3d 729, 757 (D.C. Cir. 1997). More than forty years ago, the D.C. Circuit recognized that a court adjudicating a crime-fraud motion "will not be able to receive a complete adversary presentation" because "one of the parties will not be privy to the information at hand." *In re Sealed Case*, 676 F.2d at 814. Indeed, "courts often use *in camera, ex parte* proceedings to determine the propriety of a

- 3 -

USA-01288438

grand jury subpoena or the existence of a crime-fraud exception to the attorney-client privilege when such proceedings are necessary to ensure the secrecy of ongoing grand jury proceedings." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1075 (D.C. Cir. 1998); *accord In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1151 (D.C. Cir. 2006). Every court of appeals to address the issue has rejected the argument that the government's use of an *ex parte* submission to support application of the crime-fraud exception in grand jury proceedings violates the client's due process rights. *See In re Grand Jury Subpoena*, 223 F.3d 213, 219 (3d Cir. 2000) ("We today join the ranks of our sister circuits in holding that it is within the district courts' discretion, and not violative of due process, to rely on an ex parte government affidavit to determine that the crime-fraud exception applies and thus compel a target-client's subpoenaed attorney to testify before the grand jury.") (citing cases).

These longstanding approved practices contradict the former President's claim (Opp. 4, 9, 10, 11, 13) that the government's *ex parte* submission is "extraordinary" and violates his due process rights. This precedent also forecloses the requests by the former President (Opp. 18) and **Per. 18** (Opp. 8, 11) to be granted access to the government's *ex parte* submission. The *ex parte* submission here appropriately safeguards the secrecy of an ongoing grand jury investigation, and neither the former President nor **Per. 18** should be permitted to review it. Indeed, this Court has appropriately followed these procedures when considering prior crime-fraud motions, *see, e.g.*, *In re Grand Jury Investigation*, No. 17-2336,

Subject to Protective Order                                          USA-01288439

2017 WL 4898143, at *7 (D.D.C. Oct. 2, 2017), and it should do the same here. What would be extraordinary would be to deviate from these established practices and permit the former President and [Per. 18] access to grand jury materials during an ongoing criminal investigation.

The sole case on which the former President relies (Opp. 9), *United States v. Rezaq*, 899 F. Supp. 2d 697 (D.D.C. 1995), lends no support to his claim that the *ex parte* submission here violates his due process rights. In *Rezaq*, the government sought reconsideration of an "absolute prohibition" on *ex parte* submissions for certain discovery matters. *Id.* at 706. While observing that *ex parte* communications between a party and the court are "greatly discouraged" and infrequently permitted, the district court nonetheless acknowledged that potential "national security issues" in that case could warrant such *ex parte* filings, and thus granted the government's reconsideration motion. *Id.* at 707. The *ex parte* submission here, filed to protect the secrecy of the grand jury's investigation, is entirely consistent with *Rezaq*, not to mention the precedent in this circuit and elsewhere repeatedly confirming the propriety of *ex parte* proceedings when the government seeks an order compelling testimony or document production for compliance with a grand jury subpoena.[1]

.

---

[1] As the government noted in its motion (Sealed Mot. at 15), the former President may also avail himself of *ex parte* procedures to offer evidence in opposition to the government's crime-fraud motion. It appears that he has chosen not to do so.

Subject to Protective Order                    USA-01288440

**B.      The Former President's Arguments Lack Merit**

Stripped of its recitation of largely uncontroversial legal principles and irrelevant invective, such as claims (Opp. 9-10) about the "public perception" of the Federal Bureau of Investigation, the former President's opposition appears to advance three arguments. First, he contends (Opp. 4-5) that any crime-fraud motion seeking testimony or documents from ██████ is unripe. Second, he claims (Opp. 11-12) that the government has failed to make a prima facie showing of a crime or fraud. Finally, he asserts (Opp. 12-15) that even if the government has demonstrated a prima facie violation, the government does not seek communications and consultations that were intended to further a crime or fraud. Each of these arguments fails.

**1.      The Government's Motion is Ripe as to ██████**

The government's motion to compel testimony and documents from ██████ is fully ready for this Court's resolution. After the grand jury issued a subpoena to ██████ for testimony and documents, the government conveyed to counsel for ██████ the categories of information about which it intended to question Little. Counsel for ██████ communicated to the government that ██████ after consulting with her client (the former President), would not waive any applicable attorney-client or work-product privileges that the former President continued to assert. ██████'s counsel also informed the government that ██████ would withhold a single document as privileged. That exchange of communications identifying the relevant fields of inquiry and ██████'s intention to withhold evidence on those topics is sufficient to enable the Court to decide the crime-fraud motion. *See In re Grand Jury*

Subject to Protective Order                                        USA-01288441

*Investigation*, 2017 WL 4898143, at *3-*5 (deciding crime-fraud motion because exchange of letters between the Special Counsel's Office and counsel for the witness was sufficient to establish the witness would invoke the attorney-client privilege to withhold testimony).

Neither of the cases the former President cites (Opp. 5) is apposite. In *Pursley v. City of Rockford*, No. 18-CV-50040, 2020 WL 4931394 (N.D. Ill. Aug. 20, 2020), the magistrate judge refused to accept a deponent's blanket assertion of the privilege against self-incrimination because Federal Rule of Civil Procedure 37(a)(3)(B)(i) permitted an order to compel testimony only after the deponent failed to answer a question, and that had not yet occurred. *Id.* at *3. But no similar rule governs in the grand-jury context, as this Court has recognized. *See In re Grand Jury Investigation*, 2017 WL 4898143, at *3-*5. Similarly, in *United States v. Moreno*, 536 F.2d 1042 (5th Cir. 1976), the court deemed a witness's "blanket refusal to testify" inadequate to invoke the privilege against self-incrimination, instead requiring a "particularized inquiry" to determine whether the invocation was "well-founded." *Id.* at 1049. By contrast here, the former President cannot meaningfully contend that ███'s assertion of attorney-client and work-product privileges was improper, any more than he could claim that ███Per. 18███ assertions were improper; the former President does not claim, for example, that ███ was mistaken or that he has actually waived the privileges. Moreover, the areas of the government's proposed inquiry with ███ are clearly identified and specific. No further particularization is necessary. The government filed the motion to compel

- 7 -

without requiring ███ to appear before the grand jury to avoid delay and preserve

judicial resources. No legal authority forecloses this procedure.

### 2. The Government Has Made a Prima Facie Showing of a Crime or Fraud

The evidence as set forth in the government's *ex parte* submission far exceeds

the threshold prima facie standard. That evidence amply establishes the

commission of a crime or fraud. The sealed motion alone explains that the former

President possessed boxes of documents at Mar-a-Lago containing documents with

classification markings (Sealed Mot. 2-4); ████████████████████

████████████████████████

████████████████████

████████████████████████

████████████████████████

██████████████████████

███████████████████

████████████████████████

████████████████ and evidence indicates that prior to ██Per. 18██'s search,

government records were removed from the storage room and were not returned

prior to ██Per. 18██ review (*id.* at 6). The evidence in the government's *ex parte*

submission provided extensive additional details regarding these events

demonstrating the commission of a crime or fraud. *See* 18 U.S.C. §§ 793, 1001, 1512,

1519; *see also* 18 U.S.C. § 2 (commanding or inducing commission of an offense or

- 8 -

"willfully caus[ing] an act to be done which if directly performed by him or another would be an offense against the United States").

The former President's efforts to explain away these inculpatory circumstances are divorced from the facts and unconvincing. The former President contends (Opp. 10-11), for example, that the government has merely demonstrated that "there are additional responsive documents that ███ Per. 18 ███'s initial search did not discover" and that the certification was "inaccurate." For the reasons described above and in the government's *ex parte* submission, that characterization of the facts is far from complete or correct. Rather, the evidence indicates intentional concealment and falsification. The former President similarly suggests (Opp. 3) that the government "effectively ended" a "compliance conversation" on June 8, 2022, but that assertion ignores both the outstanding May 11 grand jury subpoena that unambiguously required the production of all documents bearing classified markings *and* the demonstrably false certification that ███ Per. 18 ███ provided on June 3 that "*any and all* responsive documents accompany this certification." Sealed Mot., Ex. 1 ¶ 55 (quoting certification) (emphasis added). Additionally, the former President characterizes (Opp. 3) as "conflicting" and "inaccurate" statements ███ Per. 18 ███ made at the June 3 meeting between him and the government, but the statements in ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███—are not inconsistent, and the former President provides no basis for his claim

- 9 -

that they are both "inaccurate." The former President thus falls far short of demonstrating there is an innocuous interpretation of the evidence defeating a prima facie showing.

> **3.    The Government Has Demonstrated That the Evidence it Seeks to Compel Reflects Communications and Consultations Intended to Further the Crime or Fraud**

The evidence also amply supports the requisite connection between the former President's communications and consultations and the prima facie violation. As the government explained in its motion, the evidence fully supports a conclusion that ▇Per. 18▇'s and ▇▇▇▇'s communications and consultations with the former President or those working on his behalf on the six topics the government has identified were intended to further or facilitate a crime, fraud, or other fundamental misconduct.

The former President contends (Opp. 12) that a mere "temporal nexus" between a client's prima facie violation and that client's communications or consultations with his attorney is insufficient to satisfy the crime-fraud exception. The former President correctly states a legal principle that has no application to this case. The evidence discussed in the government's *ex parte* submission establishes far more than a mere temporal linkage between the crime and the former President's interactions with ▇Per. 18▇ and ▇▇▇▇ rather, it demonstrates how the former President or those working on his behalf consulted or communicated with those two attorneys in order to further or facilitate a crime, fraud, or other fundamental misconduct.

- 10 -

                                                 USA-01288445

Reiterating another "temporal" objection to the government's crime-fraud

showing, the former President argues (Opp. 14-15) that even if the crime-fraud

exception applies, the government is "not entitled to disclosure of communications

and work product simply because they were 'contemporaneous' with" a crime, fraud,

or other fundamental misconduct. *Id.* at 14. That argument takes on a strawman

not advanced in the government's motion. Rather, the motion to compel seeks

testimony and documents in six discrete categories while ▮Per. 18▮ and ▮▮▮

represented the former President, but does not target "prior acts or confessions

beyond the scope of the continuing fraud." *In re Sealed Case*, 754 F.2d at 403.

Finally, the former President's "bootstrap" argument (Opp. 13)

misapprehends controlling authority and the government's motion to compel. In the

former President's view, the government seeks testimony and documents from

▮Per. 18▮ and ▮▮▮ to make out the prima facie case for the crime-fraud exception,

a step that would, if permitted, render the attorney-client privilege "virtually

worthless." *Id.* (citing *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)). In fact,

the Supreme Court and the D.C. Circuit have recognized that subpoenaed

documents may, in appropriate circumstances, be considered by a court to

determine whether to apply the crime-fraud exception. *United States v. Zolin*, 491

U.S. 554, 572 (1989); *In re Sealed Case*, 676 F.2d at 814. In any event, the evidence

discussed in the *ex parte* submission does not rely on any privileged communications

or consultations from ▮Per. 18▮ and ▮▮▮ precisely because those attorneys have

invoked attorney-client and work-product privilege when asked about the six

- 11 -

Subject to Protective Order                                                                      USA-01288446

identified topics. The *ex parte* memorandum therefore describes evidence obtained through other investigative steps that is entirely independent of any asserted privileges—evidence that meets and surpasses the showing needed to make out a prima facie violation.

C.      Per. 18 's Arguments Lack Merit

Per. 18 contends that he can foreclose the government from obtaining work-product materials pursuant to the crime-fraud exception because he is innocent of wrongdoing[2] and possesses the ability to assert the work-product privilege on his own behalf separate from any assertion by the former President. The crime-fraud exception extends to all materials covered by the work-product privilege, both fact and opinion work product, though some courts have held that the crime-fraud exception only encompasses fact work product when a blameless attorney invokes the work-product privilege on his or her own behalf. Because most (if not all) of the work-product material the government seeks here will qualify as fact work product, in order to avoid unnecessary litigation that could delay its investigation, the government does not seek opinion work product. Per. 18 's separate assertion of the work-product privilege on his own behalf therefore provides no basis to withhold the lion's share of documents and testimony sought by the government.

---

[2] For the reasons discussed below, the Court need not resolve the issue of whether Per. 18 is complicit in the criminality described in the *ex parte* submission in order to decide the government's motion to compel.

- 12 -

Subject to Protective Order                                                    USA-01288447

1.      **Legal Background**

The work-product privilege covers "material 'obtained or prepared by an adversary's counsel' in the course of his legal duties, provided that the work was done 'with an eye toward litigation.'" *In re Sealed Case*, 676 F.2d at 809 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). "Unlike the attorney-client privilege, which exists solely for the benefit of the client, and can be asserted and waived exclusively by him, the work-product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer and client." *Moody v. IRS*, 654 F.2d 795, 801 (D.C. Cir. 1981). Moreover, courts distinguish between "ordinary" (or "fact") work product and "opinion" work product: "Opinion work product consists of the opinions or mental impressions of a lawyer; all other work product is ordinary work product." Restatement § 87(2). Whereas a party "can discover fact work product upon showing a substantial need for the materials and an undue hardship in acquiring the information any other way," opinion work product is "virtually undiscoverable." *Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

As set forth in the Restatement, "[t]he crime-fraud exception overcomes protection for both ordinary . . . and opinion . . . work product." Restatement § 93 cmt. a. Furthermore, even "[i]f the client alone has the requisite criminal or fraudulent intent, work-product immunity is lost despite the innocence of the lawyer." *Id.* cmt. c. "Once the required [crime-fraud] showing is made, opinion work product of an innocent lawyer is subject to disclosure along with opinion work product of the client and ordinary work product of both client and lawyer." *Id.*

- 13 -

Contrary to the Restatement, however, some courts have held that when the government seeks work-product material from a blameless attorney through the crime-fraud exception, and the blameless lawyer separately asserts the work-product privilege, the crime-fraud exception only covers ordinary work product and may not compel disclosure of opinion work product. *See, e.g.*, *In re: Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007). The D.C. Circuit has not addressed this issue, although its precedents suggest that, at least in some circumstances, opinion work product may be discoverable under the crime-fraud exception even when a blameless attorney asserts his own work-product privilege. *See Moody*, 654 F.2d at 801 (court must weigh competing interests when lawyer engaged in misconduct and the blameless client asserts the work-product privilege). Regardless, the case law is unanimous that even when the lawyer is blameless, the crime-fraud exception covers fact work product. *See, e.g.*, *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 252 (4th Cir. 2005).

    **2.    The Crime-Fraud Exception Applies to** ▆▆Per. 18▆▆ **Opinion Work Product, but the Government Here Seeks Only His Fact Work Product**

The Restatement is correct in "not accept[ing]" the position that "where the client alone is guilty waiver of the immunity for ordinary work product results from the client's complicity, but opinion work product of the innocent lawyer remains immune." Restatement § 93 cmt. c., reporter's note. "The public interest in deterring wrongful acts outweighs the innocent lawyer's interest in privacy." *Id.* cmt. c. As the D.C. Circuit has observed, the work-product privilege "is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other

- 14 -

Subject to Protective Order

person, but to protect the adversary trial process itself." *Moody*, 654 F.2d at 800 (internal citation and quotation marks omitted). And when the client uses an attorney to facilitate a crime or fraud, "the policy favoring disclosure outweighs the [lawyer's] legitimate interest in secrecy." *Id.* at 801 (discussing client's secrecy interests).

The government, however, does not request access to ▮Per. 18▮'s opinion work product. Most (if not all) of the testimony and documents that the government seeks from ▮Per. 18▮ regarding the six identified topics will not qualify as opinion work product, if it qualifies as work product at all. As a result, in the interest of avoiding unnecessary collateral litigation that will unduly delay the government's investigation, to the extent the government seeks ▮Per. 18▮'s work product pursuant to the crime-fraud exception, it only seeks ▮Per. 18▮'s fact work product.

Opinion work product consists of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 151 (D.C. Cir. 2015) (citation omitted). But "not every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion work product." *Id.* (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir.1988)). Where the attorney has not "sharply focused or weeded the materials," *In re Sealed Case*, 124 F.3d 230, 236 (D.C. Cir. 1997), *rev'd on other grounds sub nom. Swidler & Berlin v. United States*, 524 U.S. 399 (1998), and the materials do not otherwise "reflect[] the attorney's focus in a meaningful way," *Boehringer*

- 15 -

Subject to Protective Order                                          USA-01288450

*Ingelheim Pharms.*, 778 F.3d at 151, the materials do not qualify as opinion work product. Where materials may contain both fact and opinion work product, "the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions." *Boehringer Ingelheim Pharms.*, 778 F.3d at 152.

To the extent the information in the six categories sought from `Per. 18` qualifies as attorney work product at all, it would amount to fact work product. The analysis that follows addresses the six categories, combining the first two.

- ██████████████████████████████████████████████
  ██████████████████████████████████████████████
  ██████████████████████████████████
  ████████████████████████████████████████████
  ██████████████████████████████████████
  ████████████ *See In re Grand Jury Investigation*, 2017 WL 4898143, at *14. With respect to locating responsive documents, `Per. 18` functioned principally as a records custodian, and neither he nor the former President can "throw the veil of privilege over details of how files were searched, and by whom, through the expedient of involving a lawyer in the process." *In re Feldberg*, 862 F.2d 622, 628 (7th Cir. 1988). Although *Feldberg* addressed the attorney-client (and not attorney work-product) privilege, `Per. 18` cites no authority for the proposition that a lawyer undertaking the work of a records custodian thereby transforms "questions about the mechanics (who, how, when, where) of the search," *id.*, into questions that seek to elicit privileged attorney work product. At best, such information would amount to discoverable fact work product because it requires `Per. 18` to identify (i)

- 16 -

who provided him information about potentially responsive documents; (ii) the location(s) he was told that such documents would (or would not) be found; (iii) with whom he spoke about any such locations; and (iv) any other steps he took in order to locate such documents.

- (3) circumstances surrounding the selection of █Per. 12█ ████

  The questions related to the selection of █Per. 12█ █████████████ similarly call only for factual information. The government seeks to ask █Per. 18█ about the circumstances of ▪Per. 12▪'s selection through questions such as (i) who put █Per. 18█ in touch with ▪Per. 12▪ (ii) who selected █Per. 12███████████; (iii) who provided █Per. 12█ ███████████████ █Per. 18█ ; (iv) whether anyone other than █Per. 12████████; (v) ████████████ ████████████; and (vi) ██████████ █████████████. The factual content of █Per. 18█'s statement to ▪Per. 12▪ does not implicate or seek to elicit any mental impressions from █Per. 18█ who in any event "could be expressly instructed to omit any impressions from [his] responses." *In re Grand Jury Subpoena*, 870 F.3d 312, 322 (4th Cir. 2017) (Niemeyer, J., concurring in part and dissenting in part).

- (4) ████████████████████████ ████████████████

  In the June 3 meeting between █Per. 18█ ▪Per. 12▪ and the government, █Per. 18█ and ▪Per. 12▪ provided a certification that she had signed indicating that

- 17 -

"based on information that has been provided to [█Per. 12█]," she was "authorized to certify" that "[a] diligent search was conducted of the boxes that were moved from the White House to Florida" and that "[a]ny and all responsive documents accompany this certification." Sealed Mot., Exhibit 1 ¶ 55. The August 8 search, which recovered over 100 documents bearing classified markings, established that a diligent search had not occurred and that "any and all responsive documents" had not been produced. █Per. 18█ can testify regarding his discussions with █Per. 12█ about the certification, including what █Per. 18█ told █Per. 12█ about the search he conducted, without revealing any mental impressions or legal theories that █Per. 18█ may also have had in mind. He should also be compelled to answer factual questions related to the certification's creation and editing, such as (i) what language in the certification changed between the first and final drafts; (ii) the basis for his belief he had searched all the boxes moved from the White House to Florida; and (iii) the basis for representing that "[a]ny and all responsive documents accompany this certification." Those questions solely seek to elicit factual information and thus appropriately focus not on the importance, if any, that █Per. 18█ attributed to the conversation but instead on the information exchanged. *See In re Grand Jury Investigation*, 2017 WL 4898143, at *14.

- (5) ███████████████████████████████████
    ███████████████████████

    █Per. 18█ should be compelled to testify whether the former President knew that █Per. 18█ would be submitting a certification. The answer to that straightforward yes-or-no question, if privileged under the work-product doctrine at

- 18 -

all, would constitute fact work product. Equally permissible would be follow-up questions eliciting what the former President said about the certification and whether the former President authorized the filing.

- (6) the phone call between ▉Per. 18▉ and the former President on June 24

  Recounting factually what ▉Per. 18▉ and the former President discussed on June 24—while excising any mental impressions—would not implicate opinion work product.

***

Because the questions described above seek factual information that the crime-fraud exception exempts from any work-product privilege, this Court need not consider whether the government has established "a substantial need for the materials and an undue hardship in acquiring the information any other way," *Dir., Off. of Thrift Supervision*, 124 F.3d at 1307, which requires a "showing only that 'adequate reasons' exist to compel the [w]itness's testimony." *In re Grand Jury Investigation*, 2017 WL 4898143, at *14 (quoting *Boehringer Ingelheim Pharms.*, 778 F.3d at 152); *see In re Grand Jury Subpoena*, 870 F.3d at 320 n.5 (not addressing whether the government established substantial need or hardship because the crime-fraud exception exempted factual information). But even if such a showing were required, *see In re Grand Jury Investigation*, 2017 WL 4898143, at *14 (undertaking substantial need analysis), it is easily met here. "Nowhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." *In re Sealed Case*, 676 F.2d at 806. Accordingly, the government has satisfied its burden by showing that "any protected material is relevant to

- 19 -

Subject to Protective Order

establishing criminal activity" and that the other plausible source for the information—the former President himself—"likely would be unwilling to testify before the grand jury." *In re Grand Jury Investigation*, 2017 WL 4898143, at *14.

## II. The Court Should Order ▇Per. 18▇ and ▇▇▇ to Produce Documents for *In Camera* Review

As the government noted in its motion to compel, ▇Per. 18▇ produced a log listing the documents that he withheld from the grand jury based on the attorney-client or work-product privileges. Since the government filed its motion, ▇▇▇ has informed the government that ▇▇ possesses one responsive document that ▇▇ is withholding based on the former President's assertion of privilege. The Court should order ▇Per. 18▇ and ▇▇▇ to produce those documents—all documents from the original privilege log, not merely those in the revised log submitted with ▇Per. 18▇'s opposition—for *in camera* review. A proposed order that includes this requested relief is attached.

*In camera* review is appropriate when the government establishes a "factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572. Moreover, with respect to the documents withheld by ▇Per. 18▇—but not ▇▇▇ because she has not separately claimed the work-product privilege on her own behalf—*in camera* review is also

- 20 -

                                    USA-01288455

appropriate to separate out any opinion work product. *See Boehringer Ingelheim Pharms.*, 778 F.3d at 152.[3]

       **Per. 18** argues (Opp. 13-15) that the government's motion fails to satisfy the "[t]hreshold [s]howing" (*id.* at 13) required for this Court to review any documents *in camera*. As the Supreme Court has explained, however, the standard for *in camera* review "implicates a much more lenient standard of proof than the determination to apply the crime/fraud exception." *Zolin*, 491 U.S. at 572. Thus, because the government has established the prerequisites for application of the crime-fraud exception, it necessarily follows that *in camera* review is appropriate. The Court should enter the government's proposed order.

## III.   Conclusion

       The government has demonstrated that the former President and/or those working on his behalf communicated and consulted with **Per. 18** and ▮ to further a crime, fraud, or other fundamental misconduct. The Court should order **Per. 18** and ▮ to provide to the grand jury all testimony and documents regarding communications or consultations on the identified topics, other than those items from **Per. 18** that the Court determines constitute opinion work product.

---

[3] In a footnote, **Per. 18** contends (Opp. 13 n.4) that the government is not entitled to any notes that he drafted solely for his own use. To the extent those notes reflect factual information responsive to the six identified categories, they must be disclosed.

- 21 -

 USA-01288456

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084


By:    /s/ *James I. Pearce*_____
       James I. Pearce
       John M. Pellettieri
       Brett C. Reynolds
       Assistant Special Counsels
       Jay I. Bratt
       Counselor to the Special Counsel
       Julie A. Edelstein
       Senior Assistant Special Counsel

February 26, 2023

- 22 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN RE GRAND JURY SUBPOENA** | ) | **CASE NO. 23-gj-10** |
| **GJ 42-17 and GJ 42-69** | ) | |
| | ) | **UNDER SEAL** |
| | ) | |
| | ) | **GRAND JURY NO. 22-06** |

## <u>REVISED PROPOSED ORDER</u>

█████ Per. 18 █████ and ███████████, attorneys for former President Donald J.
Trump and his post-presidential office (the Office of Donald J. Trump), withheld
testimony and documents from the grand jury, citing the attorney-client privilege and
the work-product privilege, prompting the government to file the pending Motion to
Compel. Upon consideration of the government's motion and its *ex parte* supplement
and the exhibits thereto, the responses submitted by the former President and
██ Per. 18 ██ the government's reply brief, and the entire record herein, the Court finds
that (1) the government has established a prima facie showing of a violation
sufficiently serious to defeat the attorney-client and work-product privileges (a crime,
fraud, or other fundamental misconduct), and (2) the communications and/or
consultations on the six topics below were in furtherance of the crime, fraud, or other
fundament misconduct; and, accordingly, it is hereby—

    1.    **ORDERED** that the United States' Motion to Compel is **GRANTED**; it
is further

    2.    **ORDERED** that ████ Per. 18 ████ and ███████████ are ordered to
appear before the Grand Jury of the United States District Court for the District of
Columbia and give testimony, which they have previously withheld, relating to any

 USA-01288458

communications or consultations regarding the below topics, and any similar such communications or consultations, with the exception of testimony encompassing opinion work product by [Per. 18]

    a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    b. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮.

    c. The selection of [Per. 12] ▮▮▮▮▮▮ to respond to the May 11 subpoena, including the identities of the persons involved in the process of selecting [Per. 12] ▮▮▮, the reasons for [Per. 12]'s selection, and all communications between [Per. 18] and anyone else related to the selection of [Per. 12] ▮▮▮▮▮▮▮

    d. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- 2 -

USA-01288459

e. ███████████ ████████ █████████████ ████████ ███████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████;

f.      The June 24 call between the former President and ██Per. 18██ it is further

3.      **ORDERED** that the Court has reviewed the documents previously withheld by ██████ and ██Per. 18██ *in camera* and determined that the attached documents reflect communications or consultations that are unprivileged under the crime-fraud exception and do not constitute ██Per. 18██'s opinion work product; it is further

4.      **ORDERED** that the United States submit to the Court, by _____, any proposed redactions to the accompanying Memorandum Opinion that are necessary before disclosure of the Memorandum Opinion to the former President, the former President's post-presidential office, ██Per. 18██, ██████████, ██████ and their counsel.

**SO ORDERED.**

DATE:

_____
BERYL A. HOWELL
CHIEF JUDGE

- 3 -

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **IN RE GRAND JURY SUBPOENA** | ) | **CASE NO. 23-gj-10** |
| **GJ 42-17 and GJ 42-69** | ) | |
| | ) | **UNDER SEAL** |
| | ) | |
| | ) | **GRAND JURY NO. 22-06** |

<u>**PROPOSED ORDER FOR *IN CAMERA* REVIEW**</u>

▮Per. 18▮ and ▮▮▮▮▮, attorneys for former President Donald J.
Trump and his post-presidential office (the Office of Donald J. Trump), withheld
documents from the grand jury, citing the attorney-client privilege and the work-
product privilege, prompting the government to file the pending Motion to Compel.
Upon consideration of the government's motion and its *ex parte* supplement and the
exhibits thereto, the responses submitted by the former President and ▮Per. 18▮ the
government's reply brief, and the entire record herein, the Court finds that there is
factual basis adequate to support a good faith belief by a reasonable person that *in
camera* review of the withheld documents may reveal evidence to establish the claim
that the crime-fraud exception applies; and, accordingly, it is hereby—

1.     **ORDERED** that ▮Per. 18▮ will provide to the Court the documents
listed in the privilege log he provided to the government; it is further

2.     **ORDERED** that ▮▮▮ will provide to the Court the document that she
has withheld from the grand jury.

**SO ORDERED.**

DATE:

_____
BERYL A. HOWELL
CHIEF JUDGE

Subject to Protective Order

USA-01288462