```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                       CASE NO. 23-cr-80101-AMC
 3

 4   UNITED STATES OF AMERICA,              Fort Pierce, Florida

 5                 Plaintiff,               May 22, 2024

 6          vs.
                                            10:02 a.m. - 3:23 p.m.
 7
     DONALD J. TRUMP, WALTINE NAUTA, CARLOS
 8   DE OLIVEIRA,

 9                 Defendants.              Pages 1 to 200
     _____.
10
                     TRANSCRIPT OF MOTION HEARING
11              BEFORE THE HONORABLE AILEEN M. CANNON
                     UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     FOR THE GOVERNMENT:
14
                              U. S. DEPARTMENT OF JUSTICE
15                            JAY I. BRATT, ESQ.
                              DAVID HARBACH, ESQ.
16                            National Security Division
                              950 Pennsylvania Avenue, NW
17                            Washington, DC 20530

18

19

20

21

22

23

24

25
```

```
 1   FOR THE DEFENDANTS:

 2   Donald J. Trump
                             BLANCHE LAW
 3                           TODD BLANCHE, ESQ.
                             99 Wall Street
 4                           Suite 4460
                             New York, New York 10005
 5
                             CHRIS KISE & ASSOCIATES, P.A.
 6                           CHRISTOPHER M. KISE, ESQ.
                             201 East Park Avenue
 7                           5th Floor
                             Tallahassee, Florida 32301
 8   Waltine Nauta
                             DADAN LAW FIRM
 9                           SASHA DADAN, ESQ.
                             201 S. 2nd Street
10                           Suite 202
                             Fort Pierce, Florida 34950
11
                             BRAND WOODWARD LAW, LP
12                           STANLEY WOODWARD, ESQ.
                             400 Fifth Street
13                           Northwest Suite 300
                             Washington, DC 20001
14   Carlos De Oliveira

15                           L.D. MURRELL, PA
                             LARRY DONALD MURRELL JR., ESQ.
16                           400 Executive Center Drive
                             Suite 201
17                           West Palm Beach, Florida 33401

18
     STENOGRAPHICALLY REPORTED BY:
19
                             LAURA E. MELTON, RMR, CRR, FPR
20                           Official Court Reporter to the
                             Honorable Aileen M. Cannon
21                           United States District Court
                             Fort Pierce, Florida
22

23

24

25
```

```
1           (Call to the order of the Court.)
2           THE COURT:  Good morning.  Welcome.  You may all be
3      seated.  Let's call the case.
4           COURTROOM DEPUTY:  United States of
5      America vs. Donald J. Trump, Waltine Nauta, and
6      Carlos De Oliveira, case number 23-cr-80101.
7           Will parties please make your appearance, starting with
8      Special Counsel.
9           MR. BRATT:  Good morning, Your Honor.  Jay Bratt,
10     David Harbach, Michael Thakur, and Anne McNamara on behalf of
11     the United States.
12          THE COURT:  Good morning to all of you.
13          Let's see.  Who is here for President Trump?
14          MR. BLANCHE:  Good morning, Your Honor.  Todd Blanche
15     and Chris Kise for President Trump, who is not here but was
16     excused by the Court because of a pre-scheduled trial outside
17     of the district.  Good morning, Your Honor.
18          THE COURT:  Good morning.
19          All right.  Who is here for Mr. Waltine Nauta?
20          MR. WOODWARD:  Good morning, Your Honor.
21     Stanley Woodward and Sasha Dadan on behalf of Mr. Nauta who is
22     also present.  And then, also with us is my law clerk,
23     Ashleigh Bondoc.
24          THE COURT:  All right.  Good morning to all of you.
25          And, finally, who is here for Mr. De Oliveira?
```

1        MR. MURRELL:  Good morning, Judge.  Donnie Murrell on

2   behalf of Mr. De Oliveira who is present.

3        THE COURT:  All right.  Mr. Irving is not here;

4   correct?

5        MR. MURRELL:  That's right.  He is attending a

6   graduation.

7        THE COURT:  All right.  Okay.  Well, as usual, I will

8   go over the standard admonitions.  No use of any electronic

9   equipment in any way.  No leaving the courtroom while the court

10  is in session, except in cases of emergency.  Please use the

11  lectern when presenting argument.  And, as usual, we have the

12  overflow room set up on the second floor.

13       Set for argument this morning is at docket entry 485.

14  This is titled "Defendant Waltine Nauta's Motion to Dismiss the

15  Superseding Indictment For Selective and Vindictive

16  Prosecution."  That is a public motion, and it is brought by

17  Defendant Nauta only.

18       For record clarity, there is a corresponding sealed

19  version of that same motion, which is filed on the docket at

20  entry 493.  The Special Counsel's opposition is publicly

21  docketed at 486, and it comes associated with a sealed exhibit

22  which is filed at entry 482.

23       I will note, and correct me if I'm wrong, Mr. Bratt,

24  that there doesn't appear to be a fully unredacted, sealed

25  equivalent to 486 on this --

1          MR. BRATT:  That is -- that's correct, Your Honor.

2          THE COURT:  Okay.  And so for record completeness, I'm

3     going to ask the Special Counsel's Office to file that fully

4     unredacted version on the docket by this Friday.  Any

5     questions?

6          MR. BRATT:  No, Your Honor.

7          THE COURT:  Okay.  Next, we have the reply in support

8     of the motion that's filed publicly at 487, and there is a

9     corresponding fully unredacted version of that reply at 494.

10          And then, finally, there is the Special Counsel's

11     authorized surreply; that's at 488.  And the same note I have

12     here, is that correct, Mr. Bratt, there is no corresponding

13     fully unredacted version of the surreply; is that correct?

14          MR. BRATT:  That's correct, Your Honor.

15          THE COURT:  Okay.  So same request, please, by this

16     Friday.

17          MR. BRATT:  Yes.

18          THE COURT:  Now, to round out the Court's consideration

19     of the present motion, we have docket entries 101, 115, 116,

20     and 118.  These were all previously sealed, but now are

21     unsealed following the Special Counsel's unopposed

22     representations on those items.  Those four entries consist of:

23     First, an order by this Court entered in August of 2023,

24     requiring sealed briefing on allegations raised by counsel for

25     Defendant Nauta against Mr. Bratt of the Special Counsel's

1    Office regarding a meeting held on August 24th of 2022, between

2    Mr. Woodward and prosecutors.  That bunch of documents also

3    contains the briefing following that order, and those are

4    contained in unsealed versions at 115, 116, and 118.

5         All right.  Now, one final point -- and speaking in

6    general terms only to maintain grand jury secrecy -- there is

7    also entry 481.  This is a sealed notice containing a motion

8    for disclosure and transfer, which Defendant Nauta filed in the

9    U.S. District Court in D.C., in April of this year, seeking

10   materials described by him as pertinent to the Court's

11   consideration of this pending motion to dismiss for selective

12   and vindictive prosecution.  That motion for disclosure and

13   transfer has since been denied by the U.S. District Court in

14   D.C.; so no additional materials sought in that motion have

15   been presented or reviewed by this Court in its preparation for

16   today's hearing.

17        Now, let me just ask a general question of defense

18   counsel.  At this point, sitting here today, are there any

19   pending motions for disclosure or transfer before the D.C.

20   Court in any respect?  First, Mr. Woodward?  Related to this

21   case.

22        MR. WOODWARD:  No -- no, Your Honor.

23        THE COURT:  All right.  Mr. Blanche?

24        MR. BLANCHE:  No, Your Honor.

25        THE COURT:  Okay.  All right.  Mr. Murrell?

1          MR. MURRELL:  No, ma'am.

2          THE COURT:  Okay.  All right.  So that is the lay of

3    the land, at least from a docket perspective for the motion set

4    to be heard this morning.  We, of course, have our separate

5    motion to be heard this afternoon related to pleading issues.

6    And that motion, I understand, is brought by all defendants.

7    So we will address that later today.

8          That covers my preliminary remarks.  So, Mr. Woodward,

9    I understand you will be taking the lead this morning; is that

10   correct?

11         MR. WOODWARD:  Yes, Your Honor.

12         THE COURT:  Okay.  Then, as usual, please come to the

13   lectern and present your argument.  I will have some questions

14   as you go along.

15         MR. WOODWARD:  Thank you, Your Honor.  Can you hear me

16   okay?

17         THE COURT:  Yes.

18         MR. WOODWARD:  Your Honor, I will begin by

19   acknowledging the high bar for defense counsel in bringing a

20   motion for selective or vindictive prosecution.  And in so

21   doing, will make a concession, which is that no court has ever

22   found that a presumptive -- that a presumption of vindictive

23   prosecution applies pretrial.  And although we think that this

24   Court could do that, we also readily acknowledge that it is

25   premature for the Court to do that.

 1            If I may, why could the Court find that a presumption

 2    of vindictive prosecution is appropriate here?  Because the

 3    facts and circumstances are sufficiently unique to allow such a

 4    conclusion.

 5            What the Supreme Court has said is that a presumption

 6    of vindictive prosecution arises in the context of a defendant

 7    who challenges a conviction on appeal, is successful, and then

 8    in retaliation for that success, the government brings more

 9    stringent charges as against that defendant.  Obviously here,

10    we're pretrial.  There has been no conviction; there has been

11    no appeal.

12            What did happen here, however, is that Mr. Nauta

13    exercised his rights under the Constitution, not to appear

14    voluntarily before a grand jury and testify again.  And

15    when -- when threatened or apprised of charges he was facing,

16    namely, perjury before the grand jury, he challenged the

17    sufficiency of those charges and, ultimately, of all the counts

18    that were brought against him in either the indictment or the

19    superseding indictment, perjury before the grand jury is not

20    one of the charges that was brought against him.  He was

21    successful in his appeal, if you will, as against that charge.

22            So the facts and circumstances here are somewhat

23    comparable to where the Supreme Court has found that a

24    presumption of vindictive prosecution arises.  However, as I

25    concede, it would be premature for the Court to make that

 1    conclusion here because it need not, given the availability of

 2    discovery that has yet to be addressed or provided in this case

 3    concerning the prosecutorial acts that were taken, both at the

 4    investigative stage and thereafter.

 5         The standard, of course, as the Court is aware, is that

 6    the -- is that prosecutors may not bring a charge as against a

 7    defendant to punish that defendant for the exercise of their

 8    constitutional rights.  That is, per se, vindictive

 9    prosecution.  We cite Bonilla, a district court case in

10    this -- in this District that -- it goes through a litany of

11    other circuits to have addressed that standard.

12         Among those, United States vs. Sanders acknowledges the

13    high bar -- that is from the Second Circuit -- acknowledges the

14    high bar that defense counsel face in bringing a vindictive

15    prosecution claim, and then goes through what and when -- when

16    and where discovery is appropriate to support that claim.  And

17    I quote:  "Some evidence tending to show the essential elements

18    of the defense."

19         Here, Your Honor, we submit there is more than some

20    evidence of a vindictive prosecution.  And I begin with my very

21    first interaction with the prosecutors concerning Mr. Nauta's

22    prosecution, and that is the now infamous meeting that I had at

23    the Department of Justice.  It's been well-documented.  The

24    Court alluded to ECF 101, 115, 116, and 118, where that was

25    originally documented.

1          And the Court will recall that when we initially had a

2     hearing on those papers, the Court inquired of defense counsel

3     whether there was anything we were asking the Court to do at

4     that time, and we said no.  And that's because we had not yet

5     made a motion for vindictive prosecution.  Now, here we are,

6     and we are asking the Court to do something about that

7     interaction.  We are asking the Court to explore whether there

8     is proof of vindictive prosecution that arose in that meeting

9     and in the interactions that Mr. Nauta and his counsel had with

10    the prosecutors following that meeting.  What we've laid out in

11    our papers is what we believe is a campaign of aggressive

12    posturing that resulted in --

13         THE COURT:  What -- I guess, what specific discovery

14    are you looking for?

15         MR. WOODWARD:  Well, for -- for starters, we would love

16    to know -- we would love to know whether there are any

17    communications between and among the prosecutors that either

18    established the veracity of their claim that this was an

19    innocent mistake based on inadvertent googling, or that

20    contradict the assertion that a -- a Google search and a review

21    of a website explains why there was a mistaken belief that I

22    served on a commission that I never served on.

23         If there are no such communications, then it's

24    obviously no burden to the government or the Special Counsel's

25    Office to confirm that.  If there are communications about that

1    interaction, those would be telling in either refuting my

2    personal claim that -- that what happened happened, or not.

3    And if there are no communications, then there are

4    other -- there are other things -- other steps the Court can

5    take to get to the bottom of this.  An evidentiary hearing, for

6    example, as we requested, would be appropriate to find out

7    whether all of the other prosecutors in that meeting

8    are -- would say under oath that what Mr. Bratt claims

9    happened, actually happened.

10          That hasn't been done yet.  There are no sworn

11   affidavits from any of the prosecutors that say that his

12   characterization of the website that he reviewed is -- was

13   their understanding, or what was said in that meeting is

14   correct.

15          We -- I certainly can put on --

16          THE COURT:  At this point, what do you bring to the

17   table in terms of a credible showing that would even entitle

18   you to a request for discovery?

19          MR. WOODWARD:  Well, again, the Court uses the word

20   "credible."  I will use the word "colorable."  I think that's

21   what the case law has said.

22          The circumstantial evidence that Mr. Nauta was

23   vindictively prosecuted supports a conclusion that there is

24   more there, there.  So, for example, in that meeting with

25   prosecutors, back in August of 2023, the only charge that was

1   discussed as against Mr. Nauta was perjury before the grand

2   jury.

3           THE COURT:  I thought it was August '22.

4           MR. WOODWARD:  Forgive me, Your Honor.  The indictment

5   was in June, so it had to be have been August of '22.

6           THE COURT:  Okay.  Please continue.

7           MR. WOODWARD:  The only charge that was discussed as to

8   Mr. Nauta was perjury before the grand jury.  That is why we

9   requested an opportunity to review his grand jury transcript;

10  that is why, following that meeting, we -- we contended, we

11  laid out our case for why they could not pursue a charge of

12  perjury before the grand jury.  And, in fact, they did not.

13          As the Court is now aware, Mr. Nauta also participated

14  in a recorded and transcribed voluntary interview with the FBI.

15  If we had been told that the charge he was facing was lying to

16  the FBI, a 1001 charge, in that May interview, we would have

17  requested the transcript of that interview.

18          The first time we learned -- the first time we learned

19  that the government was considering a charge of either 1001 or

20  corruption was when they sent a target letter advising

21  Mr. Nauta that he was the target of a grand jury investigation,

22  in a totally different district.  Right?  All of our

23  interactions occurred in the District of Columbia, and the

24  first time we learned that there was a obstruction charge

25  potentially coming against Mr. Nauta was when we received that

1    target letter.

2         So backing up, in May of '22, Mr. Nauta voluntarily

3    agrees to an interview with the FBI.  He is asked about the

4    boxes at Mar-a-Lago.  Following that voluntary interview, the

5    prosecutors come to Mar-a-Lago to review or to look at the

6    storage room where the boxes are kept.  Unbeknownst to

7    Mr. Nauta, unbeknownst to even President Trump's counsel at

8    that time, the prosecutors come with a photograph that they had

9    obtained in their investigation.

10        This photograph depicts the storage room circa January

11   of 2022.  And what they believe, what Mr. Bratt believes, as he

12   enters the storage room in June of '22, just a week or so after

13   Mr. Nauta's voluntary interview, what Mr. Bratt believes when

14   he sees the storage room on June 3rd of '22, is that there are

15   missing boxes.  And that as a result, Mr. Trump's lawyer could

16   not have possibly reviewed all of the boxes containing

17   materials, including potentially documents with classification

18   markings.

19        As this Court knows, we take issue with the fact that

20   we still don't know how the boxes got back into the storage

21   room for the August 8th search.

22        THE COURT:  I know.  I know the -- the -- I don't want

23   to get confused on that.

24        MR. WOODWARD:  So in June -- in June of '22, on

25   June 3rd, when Mr. Bratt walks into the storage room, he has a

1   photograph of what the room looked like in January.  This is in

2   the affidavit in support of a search warrant for Mar-a-Lago

3   that was unsealed by the Court yesterday.  They then interview

4   a number of witnesses, including Person 32, who explains to the

5   Special Counsel's Office -- excuse me -- to the prosecutors, at

6   that point, that boxes have been moved.

7        They also come to believe that Mr. Nauta was untruthful

8   in his voluntary interview with the FBI.  And despite all of

9   this information, they put Mr. Nauta in the grand jury without

10  advising either him or his counsel that he is anything more

11  than a witness in this investigation.  At best, he is a

12  subject.  And at that point, he is really a target of the

13  investigation.

14        Now, when Mr. Nauta retained new counsel, again, he is

15  told not that he is a subject of an investigation involving the

16  obstruction of the grand jury, not that he is the subject of an

17  investigation involving false statements to the FBI in May of

18  '22, but that he is a subject of an investigation for perjury

19  before the grand jury in June.

20        And then in all of the interactions that we have with

21  the prosecutors leading up to the indictment -- extremely

22  cordial interactions with the prosecutors leading up to the

23  indictment, no mention is made that, in fact, he is the target

24  of an investigation for obstruction under 1512.  And with

25  respect to the prosecutors, that is a fact that we would have

1    taken seriously because, as the papers made clear, we were in

2    the middle of a trial of conspiracy of 1512 -- under 1512(k)

3    and we're well aware of what a 1512 charge looks like and how

4    the government proves it.  It's an entirely different charge.

5         THE COURT:  Okay.  When did you get the target letter?

6         MR. WOODWARD:  The target letter was delivered to us

7    late in the evening, I believe, early June of 2023.  I can pull

8    that up, though.

9         THE COURT:  And that target letter, you say, indicated

10   only a -- a perjury --

11        MR. WOODWARD:  No, ma'am.  If I said that, I misspoke.

12   That target letter did confirm that he was the target of an

13   investigation for obstruction of the grand jury investigation.

14        THE COURT:  Okay.  But that's -- that's within a week

15   or so of the indictment being returned here?

16        MR. WOODWARD:  That is correct.  That is correct.

17        The target letter arrived on May 24th of 2022.

18   May 20 -- thank you, folks.  May 24th of 2023.  The indictment

19   followed about two weeks later.

20        THE COURT:  Okay.

21        MR. WOODWARD:  And, again, two significant facts about

22   the target letter:

23        One is that it was the first time we were advised that

24   he was the subject -- the target of an investigation for

25   obstruction.

1          Two, that that investigation was being conducted in the

2    Southern District of Florida.  And what we know --

3          THE COURT:  And why -- okay.  This chronology that you

4    have laid out, why would it support, as you say, a colorable

5    basis for vindictive prosecution?  In other words, is it

6    necessary or prudent or warranted for the government to advise

7    a potential witness before the grand jury that they are looking

8    into more allegations than the ones they've previously

9    identified?

10          MR. WOODWARD:  Well, certainly the prosecutors have an

11    obligation to inform a -- to inform a grand jury witness if

12    they are a target of an investigation.  And, in fact, the

13    Justice Manual lays out specific steps that they are to take in

14    advance of putting a target before the grand jury.

15          THE COURT:  And so, in your view, what should -- what

16    should you have been made aware of?

17          MR. WOODWARD:  In my view, they should -- in my view,

18    they weren't looking at Mr. Nauta as a target of an obstruction

19    investigation.  They were looking at him as a cooperator in

20    their case.  And when he refused to cooperate in their case,

21    when he exercised his Fifth Amendment right not to testify,

22    they retaliated against him by bringing an obstruction -- or

23    multiple obstruction charges against him in the -- in the first

24    federal indictment of a former president of the United States.

25          Charges, which we will talk about this afternoon, are

1    spurious on their face by the way that they're pleaded.  They

2    shoehorn Mr. Nauta without alleging any knowledge of the

3    contents of the boxes, without, as the Court is aware, alleging

4    how the boxes got into the storage room that purportedly

5    contained these classified documents, by basing false statement

6    charges on testimony that they previously have not flagged for

7    defense counsel.

8         THE COURT:  What do you mean?

9         MR. WOODWARD:  The -- again, it wasn't until the target

10   letter had come forward that the prosecutors advised defense

11   counsel that they believed Mr. Nauta had been untruthful in his

12   testimony -- or, excuse me, not testimony, but in the

13   statements to the FBI.

14        In fact, in his grand jury appearance, he's asked about

15   those statements that he's later charged for making.  And he

16   explains his answers.  And that's -- you know, that's -- that's

17   probably a question for the jury, I appreciate that.  But

18   certainly it's circumstantial evidence of why the way in which

19   the prosecutors pursued their investigation of this case,

20   presents a colorable claim of -- of vindictive prosecution.

21        And, Your Honor, I can't help -- I can't help but

22   observe that, right now, we are totally blind as to what

23   happened in the investigation in D.C.  And we have been through

24   and we have reviewed how that investigation was presented to

25   the grand jury in Florida, and it is unconventional, to say the

1    least.

2            Among other things --

3            THE COURT:  So what is your understanding of that?

4    When did the proceedings begin in earnest here?

5            MR. WOODWARD:  The proceedings began in earnest here in

6    early May of 2023.

7            THE COURT:  So about a month before the indictment?

8            MR. WOODWARD:  And it -- exactly the same time that

9    Mr. Nauta is receiving a target letter.  The first FBI --

10           THE COURT:  And why do you say it's unconventional?

11           MR. WOODWARD:  Well, because it is unconventional to

12   bring -- to investigate a case in a faraway district, take

13   aggressive investigative tactics in that faraway district, get

14   the blessing of the district court there to do things like

15   enter a crime fraud order, to improperly seek immunity and then

16   correct that process.

17           All of these things are happening in this faraway

18   district without the oversight of the court that eventually is

19   going to ensure the proper prosecution in that indictment.  And

20   then time and again, we have seen the prosecutors, and now the

21   Special Counsel's Office, admit that they didn't follow

22   Rule 6(e) in this investigation.  At least three times, I -- I

23   was -- I was made privy to grand jury transcripts without court

24   authorization.

25           My reading of Rule 6(e) suggests that a court was

1    required to authorize the transfer of any grand jury materials

2    down to the Southern District of Florida.  We don't have any

3    authorization in discovery about that transfer.  They simply

4    rolled down here and started presenting information that they

5    had gathered in the District of Columbia to a grand jury.

6           And -- and how did they do that?  Did they sit and read

7    transcripts from what occurred in D.C.?  No.  We -- we have

8    summary testimony which the Supreme Court in

9    United States vs. Helstoski has admonished prosecutors from

10   presenting.  I'm going into a tangent.  I know this isn't in

11   the briefings, and I don't mean to surprise the Court, but I

12   just wanted to answer the Court's question about why this is

13   unusual.  It is unusual, let alone in the prosecution -- in the

14   first federal prosecution of a former president of the

15   United States.

16          But in -- in any case, for the entirety of an

17   investigation to occur in the -- in the District of Columbia,

18   and then be transferred to the Southern District of Florida,

19   with a -- with a target letter -- I'm just putting this

20   together, frankly -- with a target letter following what looks

21   like less than a week after the investigation begins in the

22   Southern District of Florida.

23          And -- and the last point I will make on the -- the

24   investigation here is that there are just three substantive

25   witnesses.  The Court has seen, in the sealed filing, all of

 1    the witnesses that appeared before the grand jury, all of the

 2    subpoenas to third-party entities that were issued by the -- by

 3    the D.C. grand jury.  I will find -- or if Ms. Bondoc would

 4    help me find the ECF number for that sealed filing for the

 5    record.

 6           All of those witnesses appear before the D.C. grand

 7    jury.  Three substantive witnesses appear before the Florida

 8    grand jury.  Two of those -- excuse me -- four substantive

 9    witnesses appear before the Florida grand jury.  Two of those

10    are in furtherance of the superseding indictment.

11           And so for the underlying indictment, two substantive

12    witnesses; the rest are -- are FBI agents who provide summary

13    testimony.

14           THE COURT:  When you say "two substantive witnesses,"

15    you mean in addition to an agent's summary testimony?

16           MR. WOODWARD:  That's correct, Your Honor.  Two -- two

17    human beings that don't work for the government.

18           THE COURT:  So how many witnesses in total appeared

19    before the Florida grand jury, including law enforcement agents

20    summarizing previously provided testimony?

21           MR. WOODWARD:  So one agent appeared multiple times,

22    but there were three agents who appeared before the Florida

23    grand jury.  And then preceding the original indictment, there

24    were two civilian witnesses.

25           THE COURT:  Okay.  So five total?

1          MR. WOODWARD:  That's my understanding, yes.

2          THE COURT:  Okay.  All right.  So let's just get back,

3     though.  In terms of the showing that you have made thus far to

4     support your request for discovery as to vindictive

5     prosecution, so far you have not made any arguments this

6     morning about selective; is that correct?

7          MR. WOODWARD:  I have not addressed selective

8     prosecution.

9          THE COURT:  Okay.  So let's stop there.

10         On vindictiveness alone, what does the record contain

11    at this point that you think supports discovery on this issue?

12    Because there is --

13         MR. WOODWARD:  I think all the Court need do is

14    acknowledge that as an officer of the Court, I'm representing

15    that I was told that I shouldn't do anything to mess up my

16    pending potential nomination for a judgeship.  And when

17    Mr. Nauta, through counsel, refused to cooperate -- and when I

18    say "cooperate," I mean, capital C, 5K letter, right.  This was

19    not -- this was not -- as most defense counsel will tell the

20    Court, we are cooperative at all times.  We provide testimony

21    when required to do so.  I hope the prosecutors behind me will

22    agree that generally, defense counsel, including myself, appear

23    in a cooperative posture.

24         This was capital C "cooperating" in pursuit of a 5K

25    letter at the result -- after the conviction of the target of

1    their investigation.  When he refused to do that, they sought a

2    way to prosecute him any how they could, bringing charges that

3    they had -- the conversations that we had would have been

4    materially different if they had uttered the word "obstruction

5    of an investigation" in advance of prosecuting Mr. Nauta.

6         THE COURT:  Okay.  So just so I understand.  The

7    specific discovery request that you are making is what?  And

8    have you made that previously to the Special Counsel's Office?

9    So slowly, what exactly are you asking for?

10        MR. WOODWARD:  All documents, communications,

11   concerning Mr. Woodward, because that is going to give us all

12   the communications that they had about that meeting, in August

13   of '22.

14        THE COURT:  But just concerning Mr. Woodward, just full

15   stop?  What do you -- what do you mean?

16        MR. WOODWARD:  Well, I would hope, Your Honor, that

17   there aren't a lot of communications about me, but if there

18   are, they can say that.  You know, what they have -- what they

19   have refused to do, Your Honor, is to provide us with the

20   proceedings before the grand jury in D.C.

21        THE COURT:  But even if there were such communications

22   about you, counsel, why would that be relevant to -- to a

23   vindictive prosecution claim that would be -- that would be

24   brought by the defendant?

25        MR. WOODWARD:  Well, so the -- the Special Counsel's

1    Office makes the argument that a vindictive prosecution claim

2    has to be retaliation as against the defendant himself or

3    herself -- but here, himself -- and not as against some

4    third party.

5         THE COURT:  Correct.

6         MR. WOODWARD:  But the cases they cite don't stand for

7    that proposition.  First of all, I would point out that we

8    stood before Your Honor at the beginning of this case, and at

9    length discussed the definition of "defendant."  And under CIPA

10   Section 3, the Special Counsel's Office is quick to tell

11   Your Honor that reference to "defendant," must mean defense

12   counsel.  And then in their briefing here, they say reference

13   to defendant must mean defendant.  So already they've made

14   the -- they've made --

15        THE COURT:  Right.  But I'm bound by the statutory

16   term, and we've discussed that issue.  And as far as the case

17   law is concerned, it's pretty clear that the references are to

18   defendant holding an interest in that claim, not counsel.

19        MR. WOODWARD:  And in -- in -- it cannot be -- and I

20   will -- and I will address the specific cases.  It cannot be

21   that communications with defense counsel are excluded because

22   they're not permitted to communicate with -- with the defendant

23   himself.  Once he is represented by counsel, they have to

24   communicate through his counsel, his agent.  And -- and so

25   the -- the -- the threat as against his agent, and the other

1   coercive tactics that are employed against his agent, also

2   apply as to defendant.

3         And so they cite, for example, obviously all cases that

4   are outside of this district.  But in

5   United States vs. Vincent, that is 2008, U.S. District, Lexis

6   90241.  There, the alleged retaliation was because of something

7   that the defense counsel had done in a prior prosecution.  But

8   as Mr. Bratt recognizes, he and I had not interacted.  This was

9   our first interaction.  So -- so that case is inapposite.

10        They also cite United States vs. Obie, 2018, U.S.

11   District, Lexis 206781, where the Court ultimately found that

12   there was no connection between an exercised constitutional

13   right and the prosecution at issue.  Not that -- that the

14   interactions with defense counsel were inappropriate.  There

15   wasn't an exercise of a constitutional right, which is sort of

16   the threshold bar we have to cross to get to a vindictive

17   prosecution claim.  Moreover, the only stated basis for

18   vindictiveness was a motion to disqualify defense counsel,

19   which the Court found not to be frivolous.

20        THE COURT:  All right.  So I understand your request.

21   It's, quote, "all documents, communications concerning

22   Mr. Woodward."

23        MR. WOODWARD:  Yeah.  With -- with the following

24   caveat, which is that I had absolutely no expectation that the

25   District Court would -- in D.C. would rule in the way that it

1   did.  I think this Court is absolutely entitled to see the

2   records that gave rise to this prosecution.  I think that the

3   grand jury proceedings are tantamount to an understanding of

4   whether this prosecution was, in fact, vindictive or not.  And

5   here is why, Your Honor:  Because if the prosecutors

6   investigating Former President Trump were that aggressive as to

7   every single witness that appeared before the grand jury, so be

8   it.  That -- that -- that may be a different claim entirely.

9   And we've seen other instances, and the letter and the motion

10  that Mr. Trusty brought on behalf of Former President Trump

11  reflects this.  There was an interaction with one witness in

12  which they were pressured to waive attorney-client privilege.

13          So it may be that for every witness to appear before

14  that D.C. grand jury, that there were harassing and retaliatory

15  interactions.  But if there is not, and if the only defense

16  counsel to have gone through everything that we went through in

17  those months during the investigation is Mr. Nauta's defense

18  counsel, then that -- that furthers the circumstantial evidence

19  that this was a vindictive prosecution because he refused to

20  cooperate against Former President Trump.

21          And so we think that pursuant to Rule 6(e),

22  when -- although they're permitted to transfer grand jury

23  materials to another -- for -- for purposes of another judicial

24  proceeding -- that's clear in the rule -- the rule also makes

25  clear that when that transfer is to another district, that this

1    Court was to be involved.  And we're aware of no petition for

2    transfer from D.C. to the Southern District of Florida, and

3    we're certainly not aware of whether Your Honor or any other

4    judge in this court having any oversight of the

5    investigation --

6          THE COURT:  Had the grand jury operated here, how would

7    that have changed the disclosure issues?  In other words, would

8    there have been greater access, in your view, by this Court to

9    those materials if everything had taken place here, either from

10   the beginning or closer to the beginning, when it became clear,

11   presumably, that venue lied here?

12         MR. WOODWARD:  Yes, Your Honor.  Because all we'd be

13   asking is for the materials to be provided to you in camera for

14   your review of those materials, and for you to make an

15   assessment as to whether they're discoverable.

16         THE COURT:  So having -- so -- so the Special Counsel's

17   decision to use the out-of-district grand jury -- just -- can

18   you clarify how, in your view, has that made disclosure in this

19   proceeding more challenging or more cumbersome?

20         MR. WOODWARD:  Well, I will take, for example, our

21   request to transfer the -- all of the materials concerning the

22   crime fraud petition in D.C.  We asked the District Court to

23   transfer all of those materials to this Court.  The D.C.

24   District Court refused.

25         What does this Court not have?  It does not have the

1   ex-parte submissions made by President Trump's counsel to the

2   District Court as part of its consideration of whether to enter

3   a crime fraud order.

4           In addition to an ex-parte submission, there was a -- I

5   think there were two hearings where it was just

6   President Trump's counsel and the District Court judge.

7           You have now been asked to review the sufficiency of

8   that motion, but you have been asked to do it with one hand

9   tied behind your back because you don't know what President

10  Trump's lawyers said to that judge when -- when she

11  issued the --

12          THE COURT:  But wouldn't the right person to seek

13  disclosure be, then, counsel for Former President Trump?  And I

14  understand there is no pending petition in D.C. to transfer

15  that full crime fraud docket to this Court.

16          MR. WOODWARD:  So, respectfully, that -- if you're

17  asking whether we have standing to request materials concerning

18  the crime fraud petition that was -- or the crime fraud order

19  that was entered in D.C., I think the answer is yes.  That

20  crime fraud order is part of the investigation that resulted in

21  the prosecution of Mr. Nauta.  To the extent that we are

22  challenging the sufficiency of that investigation, or the

23  validity of the indictment that followed, I submit, Your Honor,

24  that we have every right to seek the disclosure of those

25  materials and -- and -- and to join in a request to vacate the

1   crime fraud order.

2         THE COURT:  Okay.  All right.  Let's try to circle back

3   to the issues in this particular motion.

4         You've indicated a request for discovery.  Have you

5   made that sort of request to the Special Counsel's Office in

6   any sort of letter in discovery proceedings or in -- or

7   discussions in this case?

8         MR. WOODWARD:  Yes.

9         THE COURT:  Okay.  And when you made that request, what

10  specifically did you ask for?

11        MR. WOODWARD:  I'm sure they will correct me if I

12  mischaracterize this -- and I don't intend to do so -- but I

13  believe the request was for communications concerning me,

14  Mr. Woodward.  And that is the language that went into the

15  motion to compel that is pending before the Court.

16        THE COURT:  So that one particular compel request, is

17  that itemized clearly in the motion to compel?

18        MR. WOODWARD:  Yes, I believe there is a subheading

19  entitled:  "Communications concerning Mr. Woodward."

20        THE COURT:  Okay.  And then, what response, if any, did

21  you get from the Special Counsel as to that specific request,

22  only that one?

23        MR. WOODWARD:  I believe the generic response we

24  received to most discovery requests is, "We provided everything

25  that you are entitled to in discovery."

1          We also have made a specific request for the grand jury

2     proceedings in D.C., and the same response was, "We have

3     provided you everything that you are entitled to in discovery."

4          THE COURT:  Okay.  Now, you focus your discussion on

5     the comment about the potential judicial nomination.  Is

6     that -- is that the extent of your concern vis-á-vis that

7     meeting in August?  There is also additional discussion in the

8     papers about comments or descriptions of you as, quote, "not a

9     Trump lawyer," and something about giving up a lifestyle of

10    planes and golf courses.  Does any of that have anything to do

11    with the pending motion before the Court?

12         MR. WOODWARD:  Well, as offended as I may be not to be

13    a Trump lawyer, I'm not.  I don't represent the former

14    president.  So, no.

15         And two, as untoward as it is to threaten Mr. Nauta

16    with giving up a life of private planes and golf courses, no, I

17    don't think by itself that violates any of the ethical or other

18    applicable standards.  In total, however, it is, again,

19    circumstantial evidence of what was really happening in that

20    meeting.  The purpose of that meeting was to convince me to go

21    meet with my client for the very first time and tell him his

22    only option was to cooperate.  And -- and that -- the way that

23    that was done is improper and, by itself, is a colorable claim

24    of vindictive prosecution --

25         THE COURT:  But isn't that fairly standard, trying to

1   persuade attorneys to get their clients to cooperate?  Why is

2   that problematic in and of itself?

3        MR. WOODWARD:  Well, it's not.  I'm sorry, Your Honor,

4   it's not.  It's problematic when the defense attorney you're

5   meeting with is told that, "We wouldn't want to do anything to

6   screw up your potential nomination for a judgeship in the

7   District of Columbia."

8        THE COURT:  All right.  Now, there is some discussion

9   in the papers about the length of time that transpired from the

10  date of that meeting and any discomfort that you expressed

11  about that conversation.  So what are your, I guess, thoughts

12  about that?

13       MR. WOODWARD:  Sure.  That I should have apparently

14  turned around and immediately gone to ethics counsel and lodged

15  a complaint against a colleague whom I hope to try many, many

16  cases with, not just this one.  I think, Your Honor, we laid

17  that out in -- in our briefing as -- as ordered by this Court.

18  We try our cases in court, you know?  And respectfully,

19  Your Honor, I'm a big boy, and I can take it.

20       The answer -- the answer to your question is --

21  why -- why didn't we do anything?  Because this rose to the

22  level of misconduct when they retaliated against Mr. Nauta by

23  prosecuting him with charges that they have not previously

24  identified in their conversations with his defense counsel.

25  If, in that August 24, 2022, fateful meeting, they had said,

1    "We are investigating Mr. Nauta for obstruction of a grand

2    jury, under 1512(k)," among others, and then, in fact, they

3    indict him, maybe even in Florida, for obstruction of a grand

4    jury proceeding, then they -- then they would have laid all

5    their cards out about what they were doing.  But, in fact, they

6    said to defense counsel, "We've got Mr. Nauta, on -- on perjury

7    before the grand jury."

8           So we asked:  Prove it.  Let us see his grand jury

9    testimony.  And at first they said, no, we don't need to see

10   his grand jury testimony.  Then they called me back.  "We will

11   make it available to you.  How quickly can you get to the Main

12   Justice?"

13          And after we had reviewed the grand jury testimony,

14   after we had reviewed the law in D.C., and we had -- and we had

15   explained to the prosecutors that because Mr. Nauta's

16   statements in the grand jury were literally true, they could

17   not prove perjury before the grand jury.  And, in fact,

18   Your Honor, it is the only charge not in this indictment of a

19   former president.  They don't charge him with perjury before

20   the grand jury.  They say that they think he lied before the

21   grand jury.  They say that he was untruthful, both in his

22   testimony -- in his statements to the FBI and the subsequent

23   grand jury.  But they don't prosecute him with it.  Why?

24   Because they know they can't.

25          So what do they do?  They come up with a theory that

1   he -- that he aided and abetted Former President Trump, and

2   obstructing this investigation, without alleging that he knew

3   what was in the boxes, without clarifying how the boxes got

4   into the storage room.  And we will talk about all of this this

5   afternoon, and we will just respectfully ask Your Honor to bear

6   this morning's conversation in mind when we talk about what

7   this indictment says this afternoon.

8           But when you look at this -- when you look at this

9   holistically, it's clear that there was a campaign to get

10  Mr. Nauta to cooperate in the first prosecution -- first

11  federal prosecution of a former president.  And when he refused

12  to do so, they punished him, and that's a violation of his

13  constitutional rights.

14          THE COURT:  Okay.  So let's say the answer is, we have

15  no communications concerning you, Mr. Woodward.  Then what?

16  Then what happens to your motion for vindictive prosecution?

17          MR. WOODWARD:  Well, I'd like to see a sworn statement

18  from the prosecutors in the room that what Mr. Bratt represents

19  was said that day is, in fact, their recollection of what

20  was -- what was --

21          THE COURT:  But what relevance would that fact on its

22  own have anymore?  It's -- it's apparently being investigated

23  by OPR, although it appears that is fully stayed.  So I

24  don't -- I don't know if anything is going on there.

25          MR. WOODWARD:  It's -- it's not.  My understanding is

1   that OPR has stayed that investigation to allow Your Honor to

2   assess the implication of the allegation in this case.

3          THE COURT:  Well, I don't know.  I don't know the

4   extent of the stay.  It might just be an indefinite stay

5   pending full resolution of this criminal proceeding.  I don't

6   know.

7          MR. WOODWARD:  That's my understanding --

8          THE COURT:  Okay.

9          MR. WOODWARD:  -- that it will be stayed until the

10  resolution of this criminal proceeding.

11         THE COURT:  Okay.

12         MR. WOODWARD:  But they won't --

13         THE COURT:  Have you been contacted at all by anybody

14  at OPR to take your statement or otherwise preserve any

15  evidence?

16         MR. WOODWARD:  Have not.

17         THE COURT:  Okay.  Anything else you wish to add on

18  your motion?

19         MR. WOODWARD:  Well, I will just address the

20  selectiveness, because I think it is inextricably intertwined

21  with the vindictiveness insofar as one of the -- one of the

22  prongs of vindictive prosecution is that there are comparators.

23  We flagged in our briefing comparators.  And, again,

24  referencing the anonymized monikers that are now part of the

25  records here, there are a number of people who provided

1    information or testified before the grand jury that describes

2    conduct that is the same as what Mr. Nauta is alleged to have

3    done in the indictment, which is --

4         THE COURT:  Well, that's very contested.  The argument

5    on the other side is the quantum of evidence as to him is -- is

6    stronger.  And so they're not similarly situated.

7         MR. WOODWARD:  Well, the quantum of evidence is -- is

8    the same; it's the movement of boxes.  And there are other

9    persons who moved boxes who aren't being charged in this case.

10   The only difference is that they didn't refuse to testify

11   before the grand jury.  They didn't assert their Fifth

12   Amendment right under the constitution in the grand jury.

13        And we -- we also note that there -- in every

14   investigation -- in every investigation of the retention of

15   classified materials, there are supporters of the presidents

16   and former presidents and vice presidents and others

17   with -- that lawfully accessed that classified information.

18        We cite to the Hur report in our reply.  The Hur report

19   observes that President Biden's ghostwriter deleted a recorded

20   conversation with Biden that contained classification

21   information.  When asked about that deletion, he says, "I'm not

22   going to say how much of the percentage it was of my

23   motivation," when asked if -- if deleting the recordings

24   was -- was because of his awareness of the investigation.  No

25   prosecution.

1          When emails were deleted from Former Secretary

2      Clinton's infamous email server, the individual responsible for

3      deleting those emails asserted his Fifth Amendment before

4      Congress.  We know that because we represented him.  Was he

5      prosecuted as a result of deleting those emails?  No.  So

6      Mr. Nauta finds himself among a host of -- of Mar-a-Lago and of

7      Trump 45 Office, and others who serve Former President Trump to

8      have moved boxes in and around Mar-a-Lago and elsewhere, but

9      the -- but the only one to be prosecuted following his refusal

10     to cooperate.

11         THE COURT:  Is your position with respect to the

12     selective piece the same as to the vindictive?  In other words,

13     that it's premature, absent a potential request or order

14     granting a request for discovery?

15         MR. WOODWARD:  You know, Your Honor, the answer is yes.

16     And -- and, you know, we -- I have struggled with that answer

17     leading to today's hearing because as -- as zealous defense

18     counsel, I should come here and ask you to dismiss the

19     indictment and do it now, please, respectfully.

20         But also, Your Honor knows how seriously we take the

21     gravity of this indictment, and how important it is to us to do

22     what is right.  And given the availability of additional

23     discovery that would either support or refute claims of

24     selective and vindictive prosecution, we think -- we think the

25     right -- the right avenue here is -- is to make the Court aware

1    of all of that, make the record as fulsome as possible, and

2    after consideration of all of that evidence, to make a

3    determination as to whether selective and/or vindictive

4    prosecution is -- is --

5         THE COURT:  Is that request, on the selective piece

6    only, was that also contained as a stand-alone item in the

7    motion to compel?

8         MR. WOODWARD:  The request on the selective piece?  I'm

9    not following.  I apologize.

10        THE COURT:  In other words, you asked previously for

11   all docs, et cetera, and you said that that was contained in a

12   discovery request that is now still pending in the motion to

13   compel.  My question is basically the same thing, but vis-á-vis

14   the selective -- the evidence related to alleged selective

15   prosecution.  Is that also a specifically defined line item in

16   the motion to compel?

17        MR. WOODWARD:  Yes, Your Honor.  They are grouped

18   together, though.  I mean, there's one request in support of

19   both selective and vindictive prosecution, in small part

20   because the case law on discovery with respect to vindictive

21   prosecution is limited.  We cite the -- we cite the district

22   court case in this district, Bonilla, as -- as one that

23   discusses a defendant's potential right to discovery.  It, in

24   turn, cites a number of circuits, not the Eleventh Circuit.

25        And, of course, Armstrong, in the Supreme Court,

1    specifically addresses pretrial discovery with respect to

2    selective prosecution.  So in our motion to compel briefing, I

3    believe both -- I believe all of the defendants group together

4    selective and vindictive prosecution.

5        THE COURT:  Okay.  Now, one final question.  Do you

6    know why the grand jury in the Southern District of Florida was

7    in Miami -- was convened in Miami as opposed to West Palm Beach

8    where the indictment was returned -- or filed, I should say?

9        MR. WOODWARD:  No -- no.  Well -- no, of course not,

10   Your Honor.  There is a lot about -- there is a lot that we are

11   going to bring to the Court's attention in the coming days

12   about the investigation in the Southern District of Florida.

13   Among other things, we don't know why the grand jury was in

14   Miami.

15       THE COURT:  I'm sorry.  What do you mean there is a lot

16   that you are going to be coming forward with in the next few

17   days?  What do you mean?

18       MR. WOODWARD:  Well, I think -- again, returning to --

19   you know, the Special Counsel's Office has taken the position

20   that the District Court need not transfer any of the materials

21   to this Court.  We think, to make that claim, under seal, in

22   the District of Columbia, that's -- that's offensive, frankly.

23       And so if that's -- if that's their view of how this

24   ought to have gone --

25       THE COURT:  Are you referring to the already denied

1    petition?

2         MR. WOODWARD:  That's right.  But Your Honor, of

3    course, is well within her right to compel the Special

4    Counsel's Office to produce the materials to you.  And if, in

5    that instance, they want to cite grand jury secrecy in D.C. and

6    claim that they can't provide you these materials, well, you

7    can dismiss the case.

8         I mean, for them to -- for them to stand behind a

9    district court judge in D.C. and claim that -- that you

10   presiding -- respectfully, that this Court presiding over this

11   prosecution is not entitled to the -- to the -- to the

12   investigative steps that were taken, to the evidence of

13   potential abuse of a grand jury, because some other judge says

14   so?

15        THE COURT:  All right.  Well, let's -- let's move on.

16        The answer to my question is, you don't know why there

17   was a use of a Miami grand jury versus a West Palm one?

18        MR. WOODWARD:  No, Your Honor.

19        THE COURT:  Okay.  All right.  Now, I just have another

20   kind of thematic question, and that concerns -- there is some

21   arguments in the briefs about just, essentially, rushed

22   production deadlines and other related purportedly unreasonable

23   timelines.  Does that bear at all on your motion for vindictive

24   or selective prosecution?

25        There is some arguments about, for example, there being

1    one week between the submission of a grand jury submission to

2    another witness who is out of -- out of district, and the

3    request concerns documents that would take some time to

4    produce.  But, again, I'm just trying to make sense of whether

5    any of that has anything to do with the pending motion before

6    me, that you now -- that you're bringing at docket entry 493.

7         MR. WOODWARD:  Yes, it does, Your Honor.  And, again, I

8    can't -- I'm not sure that I'm permitted to talk about it,

9    because the judge in D.C. has ordered those materials sealed,

10   even from Your Honor.

11        And so we don't -- you know, respectfully to

12   Judge Boasberg, who I have known for -- for as long as I have

13   been practicing law, this was not a fishing expedition.  We

14   know what happened before that grand jury because, as has been

15   culled out before this Court many times, we represented a

16   number of witnesses in that grand jury.

17        And so when we make reference to improper prosecutorial

18   tactics in that grand jury, it's because we experienced that

19   firsthand, which is why we went, we thought procedurally

20   correctly, to the District Court in D.C. and asked for the

21   transfer of those materials to Your Honor.  If Your Honor

22   reviewed all of those briefings and reviewed all the materials

23   and said, "Respectfully, Mr. Woodward, this is a fishing

24   expedition," so be it.  And that's what we thought would

25   happen.

1          Now it appears that they're -- that they're using the

2   district court in D.C. as a shield in order to prevent

3   Your Honor from getting access to what gave rise to this

4   prosecution.  What are they trying to hide from Your Honor?

5          Now, again, as we reviewed Rule 6(e), we thought the

6   appropriate place was to make a request of the district court

7   presiding over that grand jury and have it transferred to you.

8   Now, given the posture of this case, we think we make that

9   request to you, Your Honor, and you order the Special Counsel's

10  Office to produce it, and they can decide what to do at that

11  point.

12         THE COURT:  Okay.  Well, I will address whatever

13  motions are brought --

14         MR. WOODWARD:  I understand.

15         THE COURT:  -- so long as they're procedurally proper,

16  but there is no such motion before me at this time.

17         MR. WOODWARD:  That's correct, Your Honor.

18         THE COURT:  So I think I have covered my questions.

19         Anything else you wish to add on your motion?  And if I

20  have any further questions, I'll come back to you after I hear

21  from government counsel.

22         MR. WOODWARD:  Thank you, Your Honor.

23         THE COURT:  Okay.  Thank you.

24         Okay.  Will it be Mr. Harbach?  Mr. Bratt?  Okay.

25         MR. HARBACH:  Good morning, Your Honor.

1          That was difficult to sit through for lots of reasons,

2    not least of which is I know -- I know that Your Honor,

3    maybe -- maybe more than any judge I have been before,

4    understands that we operate within a framework of rules and

5    doctrine, actual doctrine.  We are here this morning, and what

6    we were supposed to be arguing this morning is a motion to

7    dismiss the indictment for selective and vindictive

8    prosecution.

9          Now, in the papers that are before Your Honor,

10   Mr. Woodward has said repeatedly -- correction -- Mr. Woodward

11   on behalf of Mr. Nauta has said repeatedly, in at least two

12   pleadings, that this indictment should be dismissed because of

13   actual vindictiveness.  He has taken that position.

14         He has also taken the position that the indictment

15   should be dismissed for selective prosecution.  This morning,

16   the first words out of his mouth were about the presumption of

17   vindictiveness, which is an entirely different thing, and it's

18   no more appropriate a finding here than a finding of actual

19   vindictiveness for reasons I will get to in a moment.

20         More substantively, for the better part of an hour, we

21   heard all kinds of stuff, all kinds of stuff, not a word of

22   which is in any of his papers, nothing about whether the

23   government allegedly should have told Mr. Nauta before that

24   first meeting that they might be looking at him for 1001

25   charge.  It's a garbage argument to begin with, for the reasons

1    that Your Honor has already alluded to, but none of that is in

2    his papers.

3         It would have been nice -- it would have been nice, as

4    the government, to be able to respond in writing to a lot of

5    these allegations.  But we weren't given that opportunity.

6         Now, I'm going to do my best.  And I can respond to

7    every piece of the actual doctrine that's -- that's at issue

8    before the Court today, and I'm going to do that, but I just

9    want to mention a couple -- a couple little examples of why the

10   Court entertaining "seat of the pants" arguments at this podium

11   that are not in papers is dangerous.  Just a couple.

12        One, Mr. Woodward suggested that Mr. Nauta -- it would

13   have been inappropriate for the government not to advise

14   Mr. Nauta before his grand jury appearance that he was a

15   target.

16        Well -- and this is what we just came up with just

17   sitting there -- at the time Mr. Nauta appeared before the

18   grand jury, the government didn't have the video.  We had not

19   yet subpoenaed the CCTV that conclusively demonstrates what

20   Mr. Nauta did on June 2nd.  So that's just one reason why that

21   argument is nonsense.

22        Here is another example.  Mr. Woodward, in detailing

23   all of the alleged procedural violations that the government

24   engaged in in its grand jury practice in this case, he stated

25   as another example that the government never sought leave to

1    present any information to the Southern District of Florida

2    grand jury.  Federal Rule of Criminal Procedure 6(e)(C) --

3    3(C):  "An attorney for the government may disclose any

4    grand-jury matter to another federal grand jury."  Period.

5         So for Mr. Woodward to stand here and suggest to you

6    with the tone he did -- that's just one little example -- that

7    the government behaved inappropriately here --

8         THE COURT:  Well, I think what the - I think the

9    argument was that it wasn't disclosure to the grand jury, but

10   disclosure to defense counsel.

11        MR. HARBACH:  I'm not sure -- well, I think it may have

12   been both.

13        THE COURT:  Okay.

14        MR. HARBACH:  I think it -- I think it actually may

15   have been both.  But I -- I'm not going to dwell on those

16   because I just mentioned those as an example of the point I

17   made a minute ago.

18        You make a motion.  You make your arguments.  Now, in

19   this case, as I know Your Honor knows -- I'm not going to dwell

20   here long -- he made a couple of -- he made some arguments in

21   his initial motion about, for example, selective and vindictive

22   prosecution.  He tossed out a couple of comparators.  He made

23   arguments about -- sorry -- that was for selective prosecution,

24   if I misspoke.  He made a --

25        THE COURT:  No.  You said -- you said that.

1        MR. HARBACH:  Okay.  Thank you.

2        He made some arguments about vindictive prosecution

3   that were premised on a coffee chat he had with one of my

4   former colleagues, okay?  Said nothing at all about the August

5   meeting in his motion to dismiss the indictment, okay?  It

6   wasn't until the government responded and answered all of the

7   allegations that I just described, that he decided in his reply

8   to trot out the August 8th meeting.  So, again, I don't know

9   what's going on --

10       THE COURT:  All right.  But you have had the surreply;

11  it's briefed at this point.  I take your point.

12       MR. HARBACH:  Okay.

13       THE COURT:  But we have the authorized surreply.  So

14  this issue of the August 24, 2022, meeting is now part of the

15  motion --

16       MR. HARBACH:  Sure.

17       THE COURT:  -- and it's also briefed in the earlier

18  filings that I mentioned at the beginning of this hearing.

19       MR. HARBACH:  Yeah, and I'm -- and I'm -- I'm sorry,

20  Your Honor.  Yes, Your Honor.  And I'm going to -- I'm going to

21  get to the substance of all of that.  I hope I have made my

22  point about the procedural gamesmanship that's going on here.

23  It's inefficient and it's not fair.

24       THE COURT:  But by "gamesmanship," just specifically,

25  you are referring to the arguments about the timeline that had

1    he been -- had counsel been apprised of the charges being

2    investigated, there would have been a greater opportunity for

3    counsel, at the point that proceeding was still in D.C., to

4    work with -- with the prosecution in potential hopes of

5    dispelling those charges is, in general, I think maybe what I

6    heard.  But that it was only towards the very end when the

7    obstruction count was -- was clearly delineated about a month

8    before the indictment.

9         MR. HARBACH:  I'm -- I'm talking about that and

10   anything else that counselor for Mr. Nauta said in response to

11   Your Honor's question about, what is your evidence of

12   vindictive prosecution in this case?

13        There were -- there were dozens of minutes talking

14   about all kinds of stuff that's not alleged in his papers, some

15   of which I'm prepared to respond to today.  But all I'm saying

16   is this is no way to run a railroad.  If you're -- if you're

17   going to make a motion, make your motion, make your arguments.

18   Don't hold them until a reply.  Don't hold them until oral

19   argument.  So let's --

20        THE COURT:  All right.  Can we get -- can we get to the

21   substance?

22        MR. HARBACH:  Sure.

23        THE COURT:  What would you like to say in response to

24   those arguments if you wish to respond to them, and then in

25   response to any -- any other issues that were more meaningfully

1    briefed?

2         MR. HARBACH:  Does Your Honor have a preference about

3    starting with selective or vindictive?

4         THE COURT:  No.

5         MR. HARBACH:  Okay.  Then I will start with vindictive.

6         Again, Mr. Nauta has moved to dismiss the indictment

7    because he has alleged actual vindictiveness.  The standard for

8    that, according to the Eleventh Circuit in

9    United States vs. Barner, is he must prove that the prosecutor

10   acted with genuine animus toward the defendant to punish the

11   defendant for the exercise of a legal right.  That's the first

12   prong.  And the second prong is that the defendant would not

13   have been prosecuted but for that animus.

14        Now, it's our position that Mr. Nauta has come nowhere

15   close to presenting any evidence on either of those prongs, and

16   here is why.  Let's start with his motion.  In his motion, as I

17   mentioned before, he argues that he has established genuine

18   animus with a single paragraph that mentions the coffee meeting

19   I said -- I talked about earlier.  And he posits that because

20   the prosecutor told him that he wouldn't accept anything less

21   than full cooperation, and because the prosecutor declined an

22   offer of an attorney proffer by Mr. Woodward, that those facts,

23   he alleges, constitute genuine animus.  And he says -- and he

24   said this part here today also -- that the right that he

25   allegedly exercised was his decision not to testify before the

1    grand jury in response to the voluntary invitation contained in

2    the target letter.  That's the right he says that he was

3    punished for exercising.

4           In the first place, as the cases -- the cases

5    (indicating) that we have cited make quite clear in our papers,

6    Mr. Nauta was not exercising any Fifth Amendment right by not

7    testifying before the grand jury.  The Fifth Amendment is only

8    implicated when such testimony is compelled, and a -- a person

9    invokes the right in response to that compulsion.

10          There is no right that Mr. -- no cognizable right in

11   this doctrine that Mr. Woodward exercised by deciding not to

12   testify before the grand jury.  So that's the first thing.

13          Second, the idea that the government was punishing

14   Mr. Woodward -- excuse me -- Mr. Nauta or seeking to punish him

15   for not cooperating, that's plainly not the basis for a

16   vindictive prosecution claim.  Your Honor has already alluded

17   to this.  Bordenkircher alone dispels that proposition.  There

18   is an Eleventh Circuit case called Davis that does the same.

19          The government seeking to persuade a defendant to

20   cooperate and then charging the defendant afterward or even

21   augmenting the charges afterward -- which wasn't at issue

22   here -- that a vindictive prosecution claim does not make.  And

23   the cases make quite clear that that is the case.

24          Equally specious is the argument for the second prong,

25   which is the causation argument, the "but for" causation

1    argument.  This argument, again, in his motion is, again, a

2    single paragraph that, if you actually read it, does no more

3    than regurgitate the conclusory heading.  There is no evidence

4    in there; and what he alleges in that paragraph is no evidence

5    at all of causation.  So that's the motion.

6           Let's talk about the reply.  Again, this is the second

7    time that I -- the second occasion that I referred to earlier.

8    Crystal clear, he is urging dismissal of the indictment for

9    actual vindictiveness.  There is no question about it.  And he

10   relies this time on the August 2022 meeting that Your Honor has

11   spoken about.

12          The first and most important thing that I want to say

13   is that Mr. Woodward's story about what happened at that

14   meeting is a fantasy.  It did not happen.  But -- but you need

15   not even reach that question, and here is why.  There are

16   several problems with the argument, quite apart from whatever

17   happened at that meeting.  First, same question we have to ask

18   that -- that I mentioned earlier:  What is the legal right that

19   Mr. Nauta exercised for which he was allegedly and vindictively

20   prosecuted?  There is none.

21          Moreover, the animus that is alleged in the reply,

22   for -- that -- that relies on what happened at the August 2022

23   meeting, as well as the additional examples from Mr. Woodward's

24   other clients, all of that alleges animus as against

25   Mr. Woodward, not Mr. Nauta.  Now, why is that?  Because there

1   is no evidence whatsoever on this record of any animus against

2   Mr. Nauta.  I'm going to say that again.  There is not a single

3   bit of animus toward -- evidence of animus toward Mr. Nauta.

4   And, Your Honor, the reply doesn't even allege animus against

5   Mr. Nauta.

6        It says, quoting now from page 4 of the reply, "For

7   these reasons, Mr. Nauta is able to establish through objective

8   evidence that the Special Counsel's Office acted with genuine

9   animus toward defense counsel."

10        Now, what does the law say about that?  Mr. Woodward

11   mentioned this briefly in his remarks.  We have directed the

12   Court to cases in our papers -- this is in our surreply, which

13   I believe Your Honor said was ECF 488 -- it's at page 3 of the

14   surreply.  These are cases that illustrate that animus toward

15   an attorney does not make out a vindictive prosecution claim.

16        Now, Mr. Woodward took issue with how we characterize

17   those cases.  Your Honor could read them.  But the better

18   question is this:  Where is his case?  Where is any case that

19   says a vindictive prosecution claim for a defendant can be

20   based on animus toward the defendant's lawyer?  We haven't

21   found any.  We don't think there are any.  But at the very

22   least, Mr. Nauta hasn't directed Your Honor to any.  The Court

23   doesn't need to go any further.  There is no evidence --

24        THE COURT:  So is the answer to the question in the

25   motion to compel for all documents, et cetera, about

1   Mr. Woodward -- is -- the answer is, there are no such

2   documents?  Can you just -- I mean, what would -- it seems --

3   but what you're saying, that there would be no such responsive

4   information to that query?

5           MR. HARBACH:  No.  I'm -- that's not what I'm saying.

6   What I'm saying is that Mr. Nauta has not put any evidence

7   before this Court to even merit discovery, to even merit us

8   answering that question, much less that the indictment should

9   be dismissed.  And I'm going to turn to discovery in just a

10  minute because, admittedly, you know, the standard is a little

11  different.  And I'm going to turn to that.

12          But does that answer your question?

13          THE COURT:  Sort of.  So I guess what you are saying is

14  you're not sure or you're --

15          MR. HARBACH:  No.  I'm saying that -- I'm saying

16  that -- that Mr. Nauta has not presented enough -- any -- any

17  evidence to Your Honor to justify Your Honor compelling us to

18  answer that question.  That's what I'm saying.

19          THE COURT:  The argument is that the August 24, 2022,

20  allegations, which I know you dispute, qualify as such evidence

21  prompting the discovery request.  That -- that, I think, is

22  what the argument is.  So my question is, do you disagree that

23  the -- and I know you disagree with the factual recitation of

24  the August meeting.  But would that provide a basis for the

25  discovery request?

 1          MR. HARBACH:  No.  Because in our view -- this is what
 2    I was trying to say a moment ago.  Even -- even taking whatever
 3    Mr. Woodward says about what happened at that meeting at face
 4    value, the only allegation is that that demonstrated animus as
 5    against Mr. Woodward.  This is what I'm trying to tell you.
 6    There is no allegation that the animus was directed at
 7    Mr. Nauta.  There isn't.  And, you know, there is -- I will
 8    point Your Honor to one other opinion that may make -- shed
 9    light on what I'm trying to say here.  Just a moment, please.
10          And, of course, I can't find it.
11          THE COURT:  It's okay.
12          MR. HARBACH:  The upshot is this.  Here is the upshot.
13    Obviously, it goes back to what I said a moment ago
14    about -- about doctrine.  We can imagine some crazy scenario
15    where the government really did something outrageous that is
16    plainly government -- that's plainly prosecutorial misconduct.
17    That doesn't automatically mean it supports a claim of
18    vindictive prosecution.  It's the wrong vehicle.  It's the
19    wrong doctrine.  You don't -- you -- I think you understand
20    what I'm trying to say.  And obviously, I'm conceding nothing
21    about what happened at that meeting, but that's --
22          THE COURT:  I understand.  As far as the meeting --
23          MR. HARBACH:  -- that's the point.
24          THE COURT:  -- itself, is there a dispute that there
25    was a reference to Mr. Woodward not being a, quote, "Trump

 1   lawyer"?

 2          MR. HARBACH:  I'm not -- I'm not -- if Your Honor will

 3   indulge me for a minute, I would like to spend a little time

 4   explaining why Your Honor would be well positioned now, not

 5   just for the legal reason I said a moment ago --

 6          THE COURT:  Can you just answer the question, though?

 7   Is there a dispute about whether the characterization of

 8   Mr. Woodward as not being a Trump lawyer, did that

 9   actually -- was that actually said?

10          MR. HARBACH:  That is knowable, but I don't -- I,

11   standing here right now, do not know.

12          THE COURT:  Because in the papers, it seems like it's

13   not really challenged.

14          MR. HARBACH:  Well, I'm going to -- I'm going to be

15   very careful here.  I am reluctant to engage now in a detailed,

16   fact-by-fact discussion of what may or may not have happened at

17   that hearing except to say --

18          THE COURT:  But you're willing to say it's a fantasy.

19          MR. HARBACH:  I'm willing --

20          THE COURT:  And so what I'm saying is we need to be

21   careful with the characterizations here.  And I'm just

22   wondering why government counsel would use that phraseology.

23          MR. HARBACH:  I'm not prepared to say.  Because, again,

24   I -- I can't -- I personally can't confirm, one way or the

25   other, whether that was true, standing -- standing here.

1   But -- but, again -- again, at best, that's not animus against

2   Mr. Nauta.

3          THE COURT:  And I think you have a decent point there,

4   for sure.  But it just, you know, raises just a general

5   question that, you know, should comments like that be made?  Is

6   that fully consistent with the highest standards of

7   professionalism?

8          MR. HARBACH:  I'm not prepared to opine on whether the

9   statement was made, and if it was made, what the context was or

10  why it was made.

11         But Your Honor plainly not reached that question in

12  order to resolve this motion that is before Your Honor.

13         THE COURT:  Right.  Well, I still have inherent

14  authority to oversee this proceeding and ensure that

15  professionalism is maintained, and I think there is a basis to

16  ask those questions, which is why I'm asking them.

17         And then the next question concerns the issue of the --

18  the giving up the lifestyle, et cetera.  I don't know why the

19  evidence can't just speak for itself.

20         Why do those comments have to be made?

21         MR. HARBACH:  Excuse me one second, Your Honor.  May I

22  have a moment, please?

23         THE COURT:  Yes.

24         Tina, can you get some water for our deputy?  Thank

25  you.

1          MR. HARBACH:  May I continue, Your Honor?

2          THE COURT:  Yes.

3          MR. HARBACH:  My colleague advises me, really

4    reiterating something I already said, which is that

5    whatever -- to the extent those -- those fragmentary quotes may

6    have been said, and sounds like they may have been, they're

7    plainly fragmentary.  They're out of context, and they have

8    been reported to Your Honor in a way, this morning,

9    that -- that isn't fair, taking full stock of what was going on

10   at that meeting.

11         But I'll remind Your Honor that the reason that I have

12   reacted so forcefully to -- to what Mr. Nauta says happened at

13   that meeting and the reason I said that it's a fantasy is

14   because of how he has characterized it in his papers.  And

15   it's -- it's plainly untrue, and it's not -- it's not right.

16   And I want to -- if I can make just a --

17         THE COURT:  All right.  So at this point, I'm just --

18   in terms of the OPR, that is stayed.  Do you know if there has

19   been any effort to preserve any evidence, if it exists, of that

20   meeting for purposes of the OPR investigation?  My concern

21   is -- and, again, that's -- that's outside the purview.

22         But if -- but if there's an effort to conduct an

23   investigation, and it doesn't happen until years from now, what

24   evidence, if any, will exist at that point?  In other words,

25   statements of the prosecutors who were in the room, maybe the

1   Zoom video recording, if it existed, or any other materials.

2        MR. HARBACH:  I have already told Your Honor that no

3   recording exists.  I have told you that some time ago.  Your

4   question about whether there is an effort to preserve, you mean

5   by whom?

6        THE COURT:  OPR.

7        MR. HARBACH:  I can't speak for them.  I don't know

8   what efforts they have undertaken to preserve anything.  But I

9   can tell you this much --

10        THE COURT:  Mr. Harbach, I'm going to ask that you just

11   calm down.  I understand this is sensitive and it's difficult,

12   but these questions are briefed and they're before the Court,

13   so I'm having this hearing.

14        The answer is, I guess, there is no effort to preserve

15   any evidence that would be related to that meeting.

16        MR. HARBACH:  That is not true, and that's not what I

17   said.  That's not what I said.  What I've just said is I don't

18   know what efforts OPR has undertaken.  I did not say that there

19   were no efforts to preserve, Your Honor.  I didn't say that.

20        THE COURT:  Okay.  What I mean is the matter is stayed,

21   so there is no activity seeking to preserve; is that incorrect?

22        MR. HARBACH:  I don't know what efforts OPR is

23   undertaking, but this is what I can tell you.  That the

24   government has not destroyed --

25        THE COURT:  Thank you, Ms. Cassisi.

1          MR. HARBACH:  -- altered, or done anything with any

2     evidence relating to what happened at that meeting.  There has

3     been no -- there has been nothing like that.

4          THE COURT:  Okay.  And I'm sure that's accurate.  I

5     know that it is.

6          Let's move on beyond the August 24th meeting and

7     just -- just touch on a couple of the issues with the grand

8     jury.

9          Can you just -- when did the grand jury

10    proceeding -- and I know this is in the papers -- begin in

11    D.C.?

12         MR. HARBACH:  Your Honor, may I request that we remain

13    on the August meeting just for a moment?  There is a couple of

14    points I have been trying to make.

15         THE COURT:  Oh, sure.  Certainly.  I thought you were

16    of the view that it had no relevance and that it was not

17    credible to begin with.

18         MR. HARBACH:  Yes.  And -- and I'd like to elaborate

19    just for a minute about why it's not credible on the current

20    record.

21         THE COURT:  You are welcome to make your arguments.

22         MR. HARBACH:  Okay.  Your Honor has already made the

23    timing point, so I'm not going to dwell on that except to --

24    except --

25         THE COURT:  The "timing point," meaning the delay?

1          MR. HARBACH:  Yes.

2          THE COURT:  Okay.

3          MR. HARBACH:  Except to point out that Mr. Woodward's

4    answer to Your Honor's question was that once it rose to -- it

5    rose to the level of misconduct when they made the decision to

6    prosecute.

7          Now, this is -- this is a lawyer.  This is not the

8    client as much as the lawyer is anything right now who has made

9    allegations that really amount to his being extorted in that

10   meeting.

11         His answer to Your Honor was like it would have been

12   preposterous for him to have reported that, if it actually

13   happened, to some ethical board at the time.  His answer to

14   Your Honor was, "None of that really mattered until they

15   decided to charge my client."

16         Well, the facts bear that out because it wasn't until

17   the eve of a target letter being served that Defendant Trump --

18   not Mr. Nauta, Mr. Trump filed a motion in D.C. seeking

19   disclosure of these materials.  So our position is that that

20   timeline -- and this is all I'm going to say about it -- is one

21   factor Your Honor could take into account on this record

22   (indicating) to conclude that his allegation of what happened

23   at that meeting is not credible.  But there's more.

24         If we pull back just a little bit and take a tour of

25   how Mr. Nauta, via Mr. Woodward's pen, has characterized this

1    claim over the course of the -- the papers, it also illustrates

2    how all over the place this claim is.

3            In the letter that Mr. Woodward wrote in June of

4    2023 -- and this is --

5            THE COURT:  Yes, I know the letter.  I have that.

6            MR. HARBACH:  Okay.

7            THE COURT:  The "to the best of my recollection" line?

8            MR. HARBACH:  Oops.  Sorry, Judge.

9            THE COURT:  That's okay.

10           MR. HARBACH:  No.  No.  The line is -- the line I was

11   referring to is this:  "Mr. Bratt remarked that he was aware of

12   the fact that Mr. Woodward had been recommended for a

13   presidential nomination to the superior court of the District

14   of Columbia."

15           Next -- and then in the next paragraph:  "It was

16   inappropriate for Mr. Bratt to mention the fact that

17   Mr. Woodward had been recommended for a presidential nomination

18   to the court."  Then this is the key sentence:  "The only

19   rational inference to be drawn from this reference, combined

20   with the assertion that the government's case as against

21   Mr. Nauta was strong and that Mr. Woodward was not a so-called

22   Trump attorney, is that somehow Mr. Woodward's potential

23   nomination to the superior court would be implicated by

24   Mr. Nauta's decision not to cooperate."

25           My point is this:  At the time that that letter was

1    written, the basis for the allegation is, according to

2    Mr. Woodward, juxtaposition and inference.  That's the first

3    data point.

4            On August 14th of 2023, the filing that Mr. Nauta made

5    in response to Your Honor's sua sponte order -- I think this is

6    118.

7            THE COURT:  Yes, that's correct.

8            MR. HARBACH:  In that response -- hang on -- he noted

9    that Former President Trump had posted some messages on Truth

10   Social.  And according to his pleading -- this is at page 4:

11   "President Trump posted several messages on his Truth Social

12   media platform alleging prosecutors with the Special Counsel's

13   Office had attempted to 'bribe' and 'intimidate' a

14   lawyer" -- those -- "bribe" and "intimidate" were in quotes --

15   "a lawyer representing a witness in the case, and claimed that

16   the lawyer had been offered 'an important judgeship in the

17   Biden administration,' if the client 'flips on President

18   Trump.'"

19           The important part is three lines later.  When

20   Mr. Nauta writes, talking about himself, talking about his

21   lawyer, Mr. Woodward:  "Nor did defense counsel correct Former

22   President Trump's narrative."  Because, as he says, we litigate

23   our cases in court.

24           Now, that plainly presupposes that there was something

25   to correct.  And the government's suggestion is that the

1    correction is that there was no attempt to bribe and intimidate

2    Mr. -- Mr. Woodward by Mr. Bratt.  But, again, this is what

3    Mr. Woodward said.  That's the next data point.

4            The last one -- sorry.

5            THE COURT:  So there is the timing?

6            MR. HARBACH:  Yeah.

7            THE COURT:  Okay.  And then there's this correction

8    sentence?

9            MR. HARBACH:  Yeah.

10           And then if you look at -- if you look at his reply --

11   so we've gone from juxtaposition and inference to somebody

12   else -- President Trump says "bribe" and "intimidation,"

13   that -- that needs to be corrected.  And then we go to

14   Mr. Nauta's reply on the pending motion, and he can't even keep

15   straight, within this motion, what his theory is of what

16   happened.

17           On page 3, subparagraph 2, describing Exhibit B,

18   characterizing Mr. Trump's request for disclosure.  And here's

19   what it says:  "Discussed Mr. Woodward's meeting with the

20   government on August 24th, 2022, in which Mr. Bratt

21   threatened -- threatened Mr. Woodward's judicial application in

22   exchange for failure to precisely comply with the

23   investigation."  That's that characterization.

24           Now we're at threatened, okay, for failure to comply;

25   got to do something bad.  Paragraph -- and then page 4.  This

1   is what page 4 says:  "Mr. Bratt attempted to coerce

2   Mr. Nauta's compliance with the investigation by dangling

3   potential favorability on Mr. Woodward's potential judicial

4   nomination."

5         THE COURT:  You're reading from the reply?

6         MR. HARBACH:  Yes, ma'am.

7         THE COURT:  Okay.

8         MR. HARBACH:  So that's, like, kind of a carrot theory

9   of persuasion.  The point is this:  None of that happened.  I

10  mean, you might -- Your Honor will be well within your rights

11  to ask Mr. Woodward, "Well, which was it?  Was he threatening

12  to derail your judicial nomination?  Or was he dangling

13  something favorable in front of you in exchange for, you know,

14  helping?"

15        The point isn't that either one of those is better than

16  the other, or maybe even isn't that, you know, they're both

17  sides of the same coin.  The point is it didn't -- none of it

18  happened.  Neither one of those things happened.  And the fact

19  that he, Mr. Woodward, has characterized them all these

20  different ways on the -- on the -- across all of these

21  pleadings should suggest to Your Honor that there is something

22  rotten in Denmark and it didn't happen the way he said it did.

23        So that's the point I wanted to make that would enable

24  Your Honor to -- to make a finding, with facts in the record

25  before you, about why Mr. Woodward's story about what happened,

1    that meeting, is not credible.

2            Now, on the -- can I have just a second, please?

3            THE COURT:  Yes.  Just for planning, we're going to go

4    no later than 12:10 on this motion.

5            MR. HARBACH:  I forgot one other -- I forgot.  I found

6    the piece of paper I was looking for.  I forgot one other

7    thing.  So there are the three points that I made, and then the

8    fourth one is that in his actual motion for selective and

9    vindictive prosecution he says nothing, zero about this.  That

10   should also communicate to Your Honor the likelihood that it

11   actually happened the way he says it did.

12           THE COURT:  Okay.

13           MR. HARBACH:  So I can -- I can shift to talking about

14   the discovery standard for a moment before I --

15           THE COURT:  Well, I had a question about when did the

16   D.C. grand jury begin.

17           MR. HARBACH:  Oh, you did.  I am going to have to check

18   with my colleagues on that because that predates me.

19           THE COURT:  Okay.  Yes.  Please do that.

20           MR. HARBACH:  It's April 26, 2022, Your Honor.  And I'm

21   told that that's paragraph 56 of the superseding indictment --

22   excuse me, 52.

23           THE COURT:  Okay.

24           MR. HARBACH:  52.

25           THE COURT:  And then it began in Florida in -- in May

1   of 2023; is that right?

2          MR. HARBACH:  Sounds about right, Your Honor.  Let me

3   check.

4          Your Honor, I'm told it was approximately May 7th, was

5   our first appearance down here.

6          THE COURT:  Okay.  Do you know why it took so long to

7   come to Florida on a case related to retention of documents in

8   Florida?

9          MR. HARBACH:  So long in terms of the length of the

10  investigation?  Or...

11         THE COURT:  Right.  I mean, it just seems at some point

12  it became evident that the locus of the alleged crime was West

13  Palm Beach; correct?  And I'm just curious why the timeline,

14  going all the way to May, about a month before an indictment.

15         MR. HARBACH:  Well, there -- there -- there

16  were -- there was plenty of additional investigation going on

17  in the interim between April of '22 and May of 2023.

18         THE COURT:  Certainly, there was additional

19  investigation.  But I guess, my question -- why was that

20  investigation not being conducted via a Southern District of

21  Florida grand jury?

22         MR. HARBACH:  Well, I -- without going into too much

23  detail, I can say that the investigation that was ongoing

24  before the D.C. grand jury had -- had adequate nexus to

25  continue in Washington.  I'm not prepared to comment on the

1    date on which a decision to charge in Florida was made or what

2    the internal deliberations were on that subject.  But the

3    government's position is that there -- there was not remotely

4    anything untoward with our grand jury practice in this

5    instance.

6          THE COURT:  Are you aware of any other case where there

7    has been sort of the double use of grand juries in this way?  I

8    mean, maybe it's customary.  I'm just asking, are you aware of

9    any other cases where it's been done this way?

10         MR. HARBACH:  Well, I'm not sure what -- what -- I want

11   to be careful about reading too much into what Your Honor means

12   by "in this way," but --

13         THE COURT:  Using an out-of-district grand jury for an

14   investigation related to unlawful retention of documents in a

15   district other than the district associated with the grand

16   jury.

17         MR. HARBACH:  Well, I -- as so phrased, no.  But I've

18   personally been involved in cases where an investigation has

19   taken place, principally, in one district, and the -- and

20   the -- the indictment is presented to a grand jury in another

21   district.  That's not all that unusual.

22         THE COURT:  I guess the reason for part of the question

23   is that at this posture, the use of the out-of-district grand

24   jury has presented challenges in terms of the petitions for

25   disclosure.  And it makes it quite hard for this Court to know

1    what exists in terms of grand jury material because all that

2    litigation has to happen somewhere else.  And that's kind of

3    what I -- I think that's what is prompting the question is, if

4    the procedure had been brought down to Southern District of

5    Florida at an earlier point, then perhaps these issues wouldn't

6    have arisen.

7         MR. HARBACH:  Candidly, it might depend on at what

8    point they were brought down vis-á-vis whatever proceedings

9    that were taking place in D.C. that Mr. Woodward is half

10   complaining about, half seeking to get discovery about,

11   occurred.  Maybe, maybe not.  I'm not sure.  But if Your Honor

12   is suggesting that -- and you may not be, so I really --

13        THE COURT:  I'm not making any suggestions.  I'm just

14   trying to ask very simply, what was the chronology?  Why did

15   it -- why did the chronology pan out in the way that it did,

16   and -- and has this presented an issue or a concern at all in

17   terms of the disclosures for grand jury material?

18        MR. HARBACH:  I think maybe the best way to answer

19   Your Honor's question is to direct Your Honor to our -- our

20   responsive papers that we filed before Chief Judge Boasberg.

21   They make quite clear our position on the application of

22   Rule 6, the relative powers and duties of Your Honor, and of

23   Chief Judge Boasberg.  And I think we made it quite clear in

24   that response that we were attempting to follow the strictures

25   of the rule in -- in behaving as we did, and not because of any

1    preference one way or the other about who decided whether those

2    things should be disclosed.

3        Mr. Woodward, earlier today, in highlighting that the

4    relief he is seeking is nothing more than Your Honor to go

5    through whatever grand jury materials there might be and make a

6    judgment call about what should be disclosed and what isn't.

7        In our view, that -- that is plainly what Rule 6

8    forbids.  He -- he -- he hasn't made --

9        THE COURT:  Because it's not a pinpointed request?   In

10   other words, it's not narrow enough?

11       MR. HARBACH:  And it's not -- there is no -- there is

12   no -- it's not just an issue of narrowness, it's an issue of

13   justification.  He -- he -- he -- he hasn't -- he hasn't

14   justified the -- he did not justify the relief he sought before

15   Chief Judge Boasberg and --

16       THE COURT:  But what about, for example, on the crime

17   fraud proceeding?  That's directly related to a substantive

18   motion before this Court, and it appears I don't have the full

19   briefing associated with that grand jury proceeding.

20       MR. HARBACH:  Well, if what Your Honor is referring to

21   are materials that the government doesn't have, that -- that --

22   that may well be true, but --

23       THE COURT:  So --

24       MR. HARBACH:  -- we don't have anything that --

25       THE COURT:  Let me just understand then.  Everything

1   related to that proceeding has been disclosed to defense

2   counsel, except for things that the Special Counsel does not

3   have; would that be correct?

4          MR. HARBACH:  That is correct.

5          THE COURT:  Okay.  And so the stuff that I'm talking

6   about that you don't have, that's -- that's the ex-parte

7   segment of that proceeding that you weren't privy to?

8          MR. HARBACH:  Yes, Your Honor.

9          THE COURT:  Okay.  All right.

10          Okay.  Thank you.  That clarifies that.

11          All right.  Now, just one other question on the grand

12   jury.  Do you know why it was a Miami grand jury and not a West

13   Palm one?

14          MR. HARBACH:  Only because I just got the answer a few

15   minutes ago.  It was a matter of grand jury availability on the

16   dates that we were down here.

17          THE COURT:  Okay.  All right.

18          Okay.  All right.  So now, in terms of the discovery

19   requests on the -- with the doctrine in mind, could you present

20   your argument for why the discovery requests that Mr. Woodward

21   has described as pending in the motion to compel should be

22   denied --

23          MR. HARBACH:  Yes, Your Honor.

24          THE COURT:  -- in connection with the motion he has

25   brought this morning.

1          MR. HARBACH:  Yes, Your Honor.

2          So the -- the standard for discovery in -- let's start

3     with the selective prosecution claim.  I will come back to the

4     comparators in a moment, if Your Honor wants to hear about

5     that.

6          But the discovery standard for a selective prosecution

7     claim, as laid out in Armstrong and reiterated by the

8     Eleventh Circuit in United States vs. Cannon, is that it is a

9     rigorous standard.  It requires the defendant to produce some

10    evidence tending to show the existence of the essential

11    elements of the claim, both of them, discriminatory effect and

12    discriminatory purpose.  And obviously the threshold for the

13    first prong, the effect finding, is some evidence of

14    differential treatment of similarly-situated individuals.

15         Our position, both for the substantive relief that has

16    been sought, namely, dismissal of the indictment, and for the

17    request for discovery, is that Mr. Nauta has not come close to

18    satisfying that first criterion because none of the comparators

19    that he has proposed comes close to cutting the mustard.

20         The two Trump employees that he mentioned in his

21    motion, neither of them, even on his recitation of what

22    happened, did anything close to what Mr. Nauta did.  We lay

23    that out clearly in our papers.  I'm not going to rehash that.

24         And then in his reply Mr. Nauta says, well, wait a

25    minute, I wasn't just talking about those two.  I was actually

1    talking about this whole other -- what he calls a universe of

2    comparators.  So who were they?

3            First, he in his reply attempts to adopt President

4    Trump's comparators, and he mentions nine individuals

5    identified by name.  But that doesn't go anywhere for Mr. Nauta

6    because those aren't comparators as to Mr. Nauta.  Those

7    are at -- those are comparators that are alleged to have done

8    things similar to what President Trump did.  So that's the

9    first problem.

10           And then his -- his last attempt is to mention the Hur

11   report.  And quoting from his brief now, he says -- he is

12   referring to, quote, "other individuals, including but not

13   limited to, President Biden's former and/or current staff

14   members and associates who were, at a minimum, similarly

15   situated to Mr. Nauta."  That's the sum total of his

16   explanation.  He doesn't name anybody.  He doesn't talk about

17   anything that they did.  Just waving his hands at the Hur

18   report is not evidence.  It's not evidence of any

19   similarly-situated comparators.

20           He said this morning that the only difference between

21   the first two comparators and Mr. Nauta is that they didn't

22   exercise their right not to testify.  That's ridiculous.  And

23   more to the point, Mr. Nauta cannot point to anyone who lied to

24   agents, lied under oath to the grand jury, surreptitiously

25   obstructed justice, and then helped to try and have evidence

1   exposing that obstruction deleted.  He can't point to anybody

2   like that, which is what the standard in Smith -- which I

3   haven't read yet, but I'm sure Your Honor knows it -- requires.

4           Show me somebody who has done all of that, and I will

5   show you somebody who is indicted, because the only people who

6   are remotely comparable to him are his co-defendants.  There is

7   not clear and convincing evidence.  There is not some evidence

8   which is what discovery requires.  There is no evidence at all

9   of similarly-situated comparators.  That should end it.

10          THE COURT:  I think you say in your surreply something

11  about the ghostwriter in the -- in the Hur report?

12          MR. HARBACH:  Yes.  Yes.  And -- and this is one of

13  those occasions where we probably said something we shouldn't

14  have because we made a -- we -- we propped up an argument for

15  Mr. Nauta that he himself did not even make, and then he

16  attempted to latch onto this morning.

17          On that one, you can read our papers and you can read

18  the Hur report itself, which -- which, on its face, makes

19  crystal clear that the ghostwriter at issue there did nothing

20  like what Mr. -- Mr. Nauta did.  Not even close.

21          THE COURT:  So there was no deletion of relevant

22  materials?

23          MR. HARBACH:  You know, you can -- you can -- let me

24  say it this way.  That's not the right question.

25          THE COURT:  Well, you -- you said that there

1    is -- there is no -- nothing comparable.  So I -- I just want

2    to understand why you're saying that.

3           MR. HARBACH:  What I said is that there is no one who

4    did all the things Mr. Nauta did.  There is no one who

5    did -- who not only obstructed justice, lied to agents about

6    it, lied under oath to a grand jury about it, surreptitiously

7    did what he did moving the boxes, and then helped try to have

8    new -- try to have evidence in the form of these videotapes

9    that showed the obstruction deleted.  You don't just get to

10   pick one of those things and say, oh, there is somebody else

11   who did part C, that person is a similarly-situated individual.

12   It doesn't work that way, not under the Smith standard which

13   I'm going to read now.

14          The -- it requires identification of a comparator who

15   committed the same basic crime in substantially the same manner

16   as the defendant, so that any prosecution of that individual

17   would have the same deterrence value and would be related in

18   the same way to the government's enforcement priorities and

19   enforcement plan, and against whom the evidence was as strong

20   or stronger than that against the defendant.  That is the

21   standard.

22          The ghostwriter, the two former staffers or anyone else

23   that Mr. Nauta waves his hands at in the Hur report don't come

24   close.  That is our position.

25          THE COURT:  Based on the constellation of conduct that

1    you have gone through?

2             MR. HARBACH:  Yes.

3             THE COURT:  Okay.  All right.  No.  I understand your

4    argument.  Thank you.  Okay.

5             MR. HARBACH:  And -- sorry.

6             THE COURT:  Okay.

7             MR. HARBACH:  If I could briefly talk about discovery

8    on the vindictive side?

9             THE COURT:  Yes, please.

10            MR. HARBACH:  Okay.  So on that one, the case law

11   is -- it just requires one more step -- the Bonilla case that

12   Mr. Woodward, and I think we also have cited to Your Honor,

13   addresses this point.  The point being whether discovery is

14   authorized or appropriate on a claim of vindictive prosecution

15   at, looks like, star 5 of the opinion.  I have the Westlaw

16   version.  For the record, it's 2010 WL 11627259.

17            And the Court there concludes that -- or that the

18   standard for a vindictive prosecution is essentially the same

19   as for selective prosecution.  And it cites another case

20   Mr. Woodward mentioned earlier, the Sanders case out of the

21   Second Circuit, which itself directly found that the standard

22   for obtaining discovery in a vindictive prosecution case is the

23   same as in a selective prosecution case.

24            So Armstrong and all of those cases, they talk about

25   the rigorous standard that should be applied and, of the

1    government's view, also applies in the -- in the vindictiveness

2    context.  And for all of the reasons --

3              THE COURT:  So how would you articulate that standard,

4    the threshold showing that needs to be made for discovery

5    purposes?

6              MR. HARBACH:  Let's see.  I wrote that down.  It would

7    essentially be the same as the discovery standard for selective

8    prosecution without the last bit that requires some evidence of

9    differential treatment, obviously.  It would be some evidence

10   of vindictive prosecution.

11             THE COURT:  Okay.  So it's the "some evidence"?

12             MR. HARBACH:  Yes.

13             THE COURT:  Okay.

14             MR. HARBACH:  But -- but it must be as to both

15   elements.

16             THE COURT:  That's correct.

17             MR. HARBACH:  And it must be -- and it should be

18   applied in a rigorous manner for all the reasons that the Court

19   articulated in Armstrong.

20             I will -- well, I was about to say something about the

21   presumption of vindictiveness, which is where Mr. Nauta --

22   excuse me -- Mr. Woodward started today.  Would you like me to

23   spend some time on that, or is that something that's not of

24   interest to Your Honor?

25             THE COURT:  These issues are all of interest, so I

1    wouldn't rule anything out.  It's whatever is pertinent to

2    resolution of the motion.

3          MR. HARBACH:  Very good, Your Honor.

4          The reason I mentioned it at this juncture is that, in

5    the papers, it's only in the context of seeking discovery,

6    if that's the first time that the notion of a presumption of

7    vindictiveness appeared.  And it's not immediately apparent to

8    the government what the connection is there, but that's where

9    it appears in the papers.

10         So I think, given the context in which he mentioned it

11    in his papers, meaning -- meaning he mentions it for the first

12    time in his reply, in connection with his position -- his

13    position today, more or less conceding that these things are

14    premature, I -- I don't know if he is conceding that -- that he

15    has failed to make any showing of actual vindictiveness or

16    actual selective prosecution; that -- that -- that is for

17    Your Honor to decide.

18         But regardless, on the substance, what he relies on to

19    try and substantiate a claim of presumption of vindictiveness

20    is the same series of items that I have already described are,

21    actually, no evidence at all of vindictiveness.

22         So I want to make one thing clear that I think is --

23    has been misstated in the papers.  The government is not saying

24    that a -- the possibility of a presumption of vindictiveness

25    pretrial is foreclosed.  Mr. Nauta interprets our papers as

1    saying that.  We're not saying that.  We cite to Barner, just

2    like he did.  Barner makes clear that that, as a blanket rule,

3    is an open question.  So I just want Your Honor to know that

4    that's not what we're saying.

5         What we are saying is that -- what the Court also says

6    in Barner, the presumption of vindictiveness depends on whether

7    or not the defendant has exercised a protected right.  That's

8    the first thing.  And then the second thing is even -- and this

9    is also quoting from Barner.  I'm going to look at the opinion

10   on this one.  Just a second.

11        THE COURT:  And then I'm going to ask that you wrap up

12   in the next couple of minutes, please.

13        MR. HARBACH:  Will do.  Yes, Your Honor.

14        This is in United States vs. Barner at page 1318.  The

15   Court says that it's not necessary for them to decide whether

16   the presumption can ever arise in a pretrial setting, quoting

17   now, "because even assuming compelling facts could justify a

18   presumption in a pretrial setting, such facts would have to

19   form a realistic likelihood of vindictiveness."  That's at

20   1318.

21        And at 1320, this is said differently:  "Assuming a

22   presumption could arise in the pretrial context, in addition to

23   the threshold showing of exercise of rights, absent here,

24   followed by augmentation of charges, Barner would have to

25   identify other factors that would raise a realistic likelihood

1   of vindictiveness."

2          And he has -- Mr. Nauta has done none of that here.

3   This is plainly not the case where a presumption is

4   appropriate.  And -- oh, I'm not going to say that.

5          THE COURT:  Okay.  No, I think I understand your

6   argument.

7          MR. HARBACH:  Yes.  And so just to -- to recap, there

8   is no exercise of a legal right.  There is no evidence of

9   animus toward Mr. Nauta.  There is no evidence of actual

10  vindictiveness.  There is no evidence to suggest any likelihood

11  of a vindictiveness in the way that that term is used in the

12  cases, such that a presumption would be remotely appropriate.

13         And for all of the same reasons, Mr. Nauta is not

14  entitled to any discovery either.

15         THE COURT:  Okay.

16         MR. HARBACH:  I think that wraps it up, unless you have

17  some other questions for me.

18         THE COURT:  All right.  I guess one last question that

19  concerns the docket entry -- which one was it?  It's the 101

20  which ordered the sealed briefing.

21         Do you know why the motion for disclosure was filed on

22  an ex-parte basis in D.C.?

23         MR. HARBACH:  Can I catch up to you just one second,

24  Your Honor?

25         THE COURT:  Yes.

1          MR. HARBACH:  Oh, you're talking about the sua sponte

2     order?

3          THE COURT:  Yes, do you know why the application was

4     sought on an ex-parte basis if the order itself was directed to

5     both sides?

6          MR. HARBACH:  I suspect it was in abundance -- it was

7     in an abundance of caution because the government may have been

8     aware that there were certain ex-parte materials on that

9     docket.

10          THE COURT:  Okay.

11          MR. HARBACH:  But -- but, as Your Honor may recall,

12     when we were filing the substantive response to Mr. Trump,

13     you know, it preceded on two tracks.  And, ultimately, the

14     ex-parte version has been produced and produced to Your Honor.

15          THE COURT:  So were there ex-parte portions of

16     that -- I have the docket sheet; correct?

17          MR. HARBACH:  Yes, Your Honor.

18          THE COURT:  Okay.  So were there any ex-parte filings

19     on the docket that would be reflected in the docket sheet?  I

20     think that would be maybe 1- --

21          MR. HARBACH:  I don't have --

22          THE COURT:  I'm not sure of the number.

23          MR. HARBACH:  I don't have that in front of me,

24     Your Honor.  But hang on one second, please.

25          THE COURT:  Okay.

1          MR. HARBACH:  Your Honor, my colleague has given me a

2    couple of answers.  One is that that is -- that filing motions

3    like that, ex-parte, is standard practice in D.C.  But more

4    substantively, the -- there was a -- there was a concern

5    because the movant was Mr. Trump, not Mr. Nauta or

6    Mr. Woodward.

7          And so there was a concern from that standpoint also,

8    that -- that Mr. Woodward may not have been authorized, given

9    the posture of the proceedings in Washington and that his

10   client was not --

11         THE COURT:  Oh, so who was the movant?

12         MR. HARBACH:  The movant was President Trump.

13         THE COURT:  Oh, okay.  And you're saying because the

14   sua sponte order was directed to Mr. Nauta's, that there needed

15   to be an ex-parte application?

16         MR. HARBACH:  It was a -- it was a -- as I will say

17   again, it was a -- it was a confusing posture for us, and we

18   erred on the side of -- of what we did.  It wasn't -- it wasn't

19   any --

20         THE COURT:  It just was -- just struck me as a little

21   bit odd, because the order itself had been directed and had

22   been disseminated among counsel for all parties in this

23   proceeding.  And so then it was unclear why, then, the

24   application was sought on an ex-parte basis.

25         MR. HARBACH:  And I have -- I have answered your

1    question as best I know how.

2          THE COURT:  Which is that it was the customary practice

3    to do it in D.C. on an ex-parte basis and there was some

4    confusion about the movant?

5          MR. HARBACH:  Well, there wasn't confusion about the

6    movant.  There was no question that the movant was Mr. Trump,

7    that the -- the party who made these allegations in Washington

8    was Mr. Trump, and that neither Mr. Nauta, nor Mr. Woodward,

9    had anything to do with it.

10         THE COURT:  I'm sorry.  Can we circle back?  I'm still

11   confused.

12         There was an order here shared with counsel for all

13   parties requesting briefing --

14         MR. HARBACH:  Uh-huh.

15         THE COURT:  -- by a date certain.

16         MR. HARBACH:  Uh-huh.

17         THE COURT:  And then there was a request by the Special

18   Counsel for those materials in D.C., but that application was

19   filed ex-parte.

20         And I just want to understand.  Why was it done

21   ex-parte?

22         MR. HARBACH:  Again, the materials that

23   were -- that -- that the Court ordered us to produce and

24   ordered Mr. -- the Court's order is directed at the government

25   and Mr. Nauta.

1          THE COURT:  Okay.

2          MR. HARBACH:  Right?  And -- but Mr. Nauta is not a

3    party to those proceedings in Washington.

4          THE COURT:  All right.  But he's -- he's aware -- okay.

5    I guess your question is just a technicality that, even though

6    he was fully aware of the order here, he was not permitted to

7    be aware of the application when it was filed.

8          MR. HARBACH:  We were -- we were -- well, it

9    wasn't -- it wasn't just a naked application.  There's

10   substance to it.  It -- it was an awkward posture by virtue of

11   the fact that Mr. Trump had filed a motion making allegations

12   that Mr. Woodward had raised.

13         THE COURT:  Okay.  No, it just -- it's another little

14   wrinkle, I think, in the competing grand jury framework

15   that -- that is before me now.  So -- all right.  I have your

16   arguments.  Thank you for the citations to case law.

17         I'm going to give Mr. Woodward five minutes, if he

18   wishes, for any rebuttal, and then we will be in recess until

19   the next hearing.

20         MR. HARBACH:  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         MR. WOODWARD:  Thank you, Your Honor.

23         With only five minutes, I won't belabor the point, but

24   I will just -- I'll just pick up where you left off.

25         If -- ex-parte means just -- just the Special Counsel's

1    Office.  Rule 6(e) contemplates, in a petition for disclosure

2    like that, that all of the parties to that proceeding be

3    noticed.  Why wasn't it filed in a manner that gave Former

4    President Trump's counsel notice that the materials were being

5    disclosed?

6         Of course, we knew what was happening because the Court

7    had ordered the provision of materials, but this has happened

8    time and again.  I mean, in conjunction with the disclosure of

9    materials with respect to the crime fraud order, the Special

10   Counsel's Office did exactly the same thing.  In fact --

11        THE COURT:  Slow down.

12        MR. WOODWARD:  Thank you.

13        They went ex-parte to seek disclosure of those

14   materials, not once but twice, after being advised that they

15   had improperly done it the first time under Rule 6(e).  And it

16   was only after we reached out to the Special Counsel's Office

17   for explanation of what was going on that we were given access

18   to the subsequent petition for disclosure.

19        And if an abundance of caution is the reason why the

20   proceedings went that way, then why was defense counsel

21   provided with grand jury transcripts, not once, not twice, but

22   three times, in violation of the plain language of Rule 6(e)?

23        The only other point I will make about Rule 6(e) is

24   that I will apologize to the Court and to the government.

25   Mr. Harbach is correct in his reading of Rule 6.  They did not

1    need to seek -- they did not need to seek court approval to

2    present materials in the grand jury in Florida.

3         What I intended to refer to is this -- this interesting

4    dichotomy that they're quoting from grand jury materials in

5    Florida without seeking permission of the Court in the District

6    of Columbia --

7         THE COURT:  You mean in the superseding indictment?

8         MR. WOODWARD:  In -- in both the -- in both the

9    original indictment and the superseding indictment.

10        THE COURT:  Okay.  All right.

11        Now, getting to the substance of your motion, am I

12   correct that at this point, really, the only request on the

13   table is a request for discovery?

14        MR. WOODWARD:  That -- that's right, Your Honor.  And

15   the -- you know, the -- my colleague describes our

16   characterization as fantasy.  Plainly untrue, not right.  But

17   despite all of that rhetoric, we end up in agreement, I think,

18   which is that there has to be some evidence, some evidence --

19        THE COURT:  Okay.  And then your last chance to tell me

20   what your some evidence is.

21        MR. WOODWARD:  Was Mr. Nauta asked to cooperate?  Yes.

22   That's not disputed.  Was he threatened with a charge of

23   perjury before the grand jury?  Yes.  That's not disputed.  Was

24   he then -- did he then refuse to cooperate?  Yes.  Not

25   disputed.  Was he then charged with additional substantive

1    crimes that had never before been brought to his or his

2    counsel's attention?  That's not disputed.

3           And so, the only logical inference to draw -- the --

4    the August 24th meeting; that is not vindictive.  It's --

5    presumably, if Mr. Nauta had agreed to cooperate, we -- we

6    would all be friends here.  It's the fact that he'd refused to

7    cooperate after that meeting that led to a vindictive

8    prosecution in the form of the indictment.

9           THE COURT:  All right.  As far as case law, do you have

10   any case that would support a grant of discovery on the basis

11   of the sequence you have just laid out?

12          MR. WOODWARD:  Nor am I -- no.  And nor am I aware of

13   any instance in which an individual refusing to cooperate is

14   ultimately not charged with the offense that is dangled in

15   front of him, but charged with more serious felonies, 20-year

16   felonies as a consequence of his refusal to cooperate.

17          THE COURT:  Okay.  And then the legal right you say you

18   have asserted that would fit in with the doctrine is what?

19          MR. WOODWARD:  It -- I -- I also confessed to it being

20   confusing in our opening brief.  We tried to clarify that in

21   our reply.

22          THE COURT:  So what is it?

23          MR. WOODWARD:  The legal right is his Fifth Amendment

24   right not to testify in any grand jury proceeding.  Not -- not

25   the grand jury proceeding in Florida.  But what the -- the

1    invitation was -- in August of 2022 was for Mr. Nauta to return

2    to the grand jury in D.C.  And he respectfully refused to do

3    that.

4            THE COURT:  Okay.  Now, what about what I have heard is

5    some shifting descriptions of what happened during the

6    August 24th meeting?

7            MR. WOODWARD:  I think -- I think the shifting

8    descriptions invites what we have asked for, is an evidentiary

9    hearing about exactly what was said.  Our letter is

10   contemporaneous with -- is more -- most contemporaneous, and it

11   describes a discussion about the -- the -- the -- I have been

12   recommended for a judgeship in the District of Columbia.

13   That's -- that's beyond dispute.

14           The -- the, you know, in that meeting, there was an

15   envelope on the table that had printed materials about defense

16   counsel.  Those things happened.  What I understood at the time

17   is that Mr. Nauta's refusal to cooperate could be used against

18   him.  I had never met the prosecutors in that room before.  I

19   did not think that this was personal animus toward me.  I still

20   do not think that they harbor personal animus toward me.  This

21   is about the prosecution for the first time in history of a

22   former president and Mr. Nauta's refusal to cooperate in that

23   prosecution.

24           THE COURT:  All right.  So there is nothing more you

25   wish to add?  What I have heard from Mr. Harbach is that if you

1   go through the filings, that the descriptions about what

2   happened is -- is not entirely consistent, and so I should

3   discard those allegations, both because they came too late and

4   because it's -- it's not clear what they consist of.

5          MR. WOODWARD:  Well, I respectfully disagree that you

6   should discard inconsistent recitations of the -- the facts in

7   this case.  They are -- they are consistent, if not identical.

8   They do describe an improper interaction with government

9   counsel.  And -- and I'm here.  You know, if -- if Mr. Harbach

10  or Your Honor have questions about what I recall happened at

11  that meeting, Ms. Dadan is happy to come to the podium, and I

12  will sit in the witness stand.  We are requesting an

13  evidentiary hearing, Your Honor, and that's how we get to the

14  bottom of this.  If there are no --

15         THE COURT:  But even if we got down that road and we

16  went down that rabbit hole, what legal relevance would it have,

17  if any, on your pending motion?

18         MR. WOODWARD:  I think it's significantly -- if -- if

19  it -- if it didn't happen, it does significantly diminish our

20  claim of vindictive prosecution, because the government is

21  allowed to threaten charges.  The government is allowed to

22  supersede an indictment.  That's clear in the case law.

23  They're not allowed to do it because a defendant has exercised

24  his or her constitutional rights.  And in refusing to cooperate

25  in their investigation, he was exercising his constitutional

1    rights.  And there is some evidence of that.  And so as a

2    result, discovery is --

3            THE COURT:  It's not clear, though, the connection

4    between the allegations that you have brought about the alleged

5    comments made to you and how those comments would have impacted

6    Mr. Nauta's decision not to testify.

7            MR. WOODWARD:  I think the implication was that I was

8    to travel to meet Mr. Nauta and to persuade him to cooperate in

9    the investigation.  And if Mr. Nauta did not cooperate in the

10   investigation, that there would be ramifications.

11           THE COURT:  Okay.

12           MR. WOODWARD:  And that was borne out in the subsequent

13   conduct that occurred over the course of the

14   government's -- the prosecutor's investigation of this case.

15   And so, we would not submit that the August 24th meeting is the

16   only basis on which this Court should grant a motion to dismiss

17   for vindictive prosecution.  We submit that the August 24th

18   meeting is some evidence giving rise to a -- to a plausible

19   claim that's not -- or a realistic likelihood of

20   vindictiveness, and that -- that we've met the standard

21   necessary for the Court to order discovery on the question.

22           THE COURT:  Okay.  All right.  Is that all,

23   Mr. Woodward?

24           MR. WOODWARD:  Thank you, Your Honor.

25           THE COURT:  Okay.

 1              MR. HARBACH:  Your Honor --

 2              THE COURT:  Yes.

 3              MR. HARBACH:  I rise only to offer a factual

 4    clarification, if Your Honor is willing to hear me.

 5              THE COURT:  Yes.

 6              MR. HARBACH:  Okay.  One of my colleagues just pointed

 7    out to me that in November of 2022, our office sent

 8    Mr. Woodward a copy of the search warrant for one of

 9    Mr. Nauta's devices, which search warrant made it quite clear

10    that we were looking at him for obstruction charges.

11              THE COURT:  It's cited, this obstruction statute?

12              MR. HARBACH:  Yes, Your Honor.

13              THE COURT:  Okay.

14              MR. HARBACH:  And that's in November of 2022.  That's

15    all.  Thank you.

16              THE COURT:  And in terms of the chronology, that fits

17    in, can -- Mr. Harbach, can you remind me?  There was some

18    discussion of, okay, the May '22 voluntary interview, grand

19    jury in June of '22, some visits to Mar-a-Lago's storage room.

20              MR. HARBACH:  Your Honor --

21              THE COURT:  What's the point about the November date?

22              MR. HARBACH:  Well, you would have to ask Mr. -- you

23    would have to ask Mr. Woodward what his point was in alleging

24    that Mr. Nauta was unaware at some point in time that he might

25    be under investigation for obstruction.  And candidly, that was

1    not clear to me.

2        THE COURT:  Okay.  But you're saying there is a search

3    warrant for a device, dated November of 2022, that listed an

4    obstruction statute?

5        MR. HARBACH:  That is correct.  And it was produced to

6    Mr. Woodward in November of 2022.

7        THE COURT:  Okay.  All right.  Thank you.  Okay.

8        MR. WOODWARD:  Your Honor, I think there is a factual

9    discrepancy here.  I've looked at the search warrant in advance

10   of today's hearing because I wanted to make an accurate

11   representation.  The search warrant that was provided to

12   defense counsel did not reference the obstruction statute; the

13   one that was produced in discovery does.

14       THE COURT:  Well, can I see the one that was sent in

15   November?

16       MR. WOODWARD:  Yes.  We will make it available to the

17   Court over the lunch break.

18       THE COURT:  Okay.  Please send it to chambers, copying

19   government counsel.  Thank you.

20       We are in recess until 1:30.

21   (A recess was taken from 12:10 p.m. to 1:35 p.m.)

22       THE COURT:  Thank you.  Please be seated.  Everybody

23   looks to be here, so we will resume.  We don't need to take

24   appearances again.

25       Just as a follow-up, over the break I received the

1    search and seizure warrant sent by Mr. Woodward.

2         Mr. Woodward, this does refer to the obstruction

3    statute.  Is that correct?

4         MR. WOODWARD:  It does, Your Honor.  It does not make

5    clear that that's what they were investigating with respect to

6    Mr. Nauta.  It simply says that -- that the FBI is permitted to

7    seize materials that they deemed to be in furtherance of an

8    obstruction committed.

9         THE COURT:  Okay.  But this is a device under the

10   control of Mr. Nauta, and there is a citation clearly to the

11   obstruction of federal investigation statute; correct?  1519?

12        MR. WOODWARD:  Yes.  But the -- of course, the FBI,

13   with a proper warrant, can seize a device belonging to anyone

14   if they believe that it has evidence of a crime as to another

15   person.  Just because they seized Mr. Nauta's device does not

16   mean that that they were investigating Mr. Nauta for

17   obstruction.

18        THE COURT:  All right.  But I think there is at least

19   some basis to believe that there was obstruction being

20   investigated.  Would you not agree with that?

21        MR. WOODWARD:  100 percent, we understood that

22   obstruction was being investigated --

23        THE COURT:  Okay.  So then all the business earlier

24   about not having any clue and had they said the word

25   "obstruction," things might have been different, that doesn't

 1   necessarily square with the chronology; correct?

 2        MR. WOODWARD:  No.  Respectfully, Your Honor, I never

 3   meant to suggest that we did not understand Former President

 4   Trump to be being investigated.  We did not understand

 5   Mr. Nauta to be being investigated for obstruction.

 6        THE COURT:  Okay.

 7        MR. WOODWARD:  So there was an investigation for

 8   obstruction, yes.  I think that was clear to all.  It was not

 9   made clear that Mr. Nauta was being investigated for

10   obstruction.

11        THE COURT:  Okay.  But this device, whose device is

12   this, this Apple iPhone?

13        MR. WOODWARD:  One of the devices belonged to Mr. Nauta

14   personally; one of the devices belonged to the Trump 45 Office.

15        THE COURT:  Okay.  All right.  Thank you.  Okay.

16        Now, I did go back and look at the motion to compel

17   over the break.  There is a section in there -- I wanted to see

18   if it -- if it matched up at all with the request you're making

19   now for discovery.  There is a section in there about -- and

20   it's entitled:  "Production of all correspondence and/or

21   communications concerning counsel."  And there is a -- there is

22   a request here -- or, I guess, there is some discussion here of

23   a -- of a subpoena by the Special Counsel's Office for toll

24   records between you and another individual.  Is this -- is this

25   part of the motion that you have brought this morning, or is

1    this a separate request?

2         MR. WOODWARD:  No.  It's -- it's part.  The reference

3    to the -- the reference to the subpoena -- what we came to

4    learn in discovery is that, as the Court I'm sure is aware, the

5    prosecutors cannot obtain a subpoena for an attorney's records

6    easily.  The Justice Manual describes the efforts that

7    prosecutors have to go through.

8         What apparently was done in this case is that, to

9    obtain my personal phone records, they subpoenaed third parties

10   and then had an FBI agent look through a third party's phone

11   records to identify phone calls with me.  And so we cite that

12   prosecutorial prerogative or step as evidence that there is

13   likely to be communications between and among investigators

14   about Mr. Nauta's counsel.

15        THE COURT:  Okay.  But this was not made part of your

16   motion that we heard this morning.  So is this -- this is not

17   part of the evidentiary foundation which you say entitles you

18   to discovery on the motion that we heard this morning?

19        MR. WOODWARD:  That's correct.  I don't know anything

20   more than that a request was made to review a third party's

21   phone records.

22        THE COURT:  But that's not my question.  You didn't

23   make -- you didn't discuss the request for toll records of

24   contacts between you and other people in your motion on the

25   basis of selective and vindictive prosecution; correct?

1      MR. WOODWARD:  I did not discuss that, correct.

2      THE COURT:  Okay.  So that's not part of the threshold

3  showing that you think has been made for that motion for

4  purposes of your discovery request.

5      MR. WOODWARD:  That's correct, Your Honor.

6      THE COURT:  All right.  Okay.  Then let me just ask the

7  Special Counsel's Office.

8      Do you have any information about -- about why toll

9  records of contacts between Mr. Woodward and other people were

10  sought?

11      MR. BRATT:  Good afternoon, Your Honor.  Jay Bratt.

12      THE COURT:  Good afternoon.

13      MR. BRATT:  Mr. Woodward's calls with other people

14  appeared in toll records.  We did not seek to go around the

15  Justice Manual by finding third parties whom we believed were

16  likely to have calls with Mr. Woodward.

17      THE COURT:  So there was no -- there was no request for

18  toll records directed at Mr. Woodward's contacts; is that

19  correct?

20      MR. BRATT:  That's correct.  He showed up in records.

21  So I think we would dispute the characterization there.

22      THE COURT:  Okay.  So the subpoenas were for people

23  other than Mr. Woodward; is that right?

24      MR. BRATT:  That's correct.

25      THE COURT:  And in the course of receiving results from

1    those subpoenas, Mr. Woodward's phone number appeared?

2         MR. BRATT:  Correct.

3         THE COURT:  Okay.  But there was never any specific

4    requests for the toll records of Mr. Woodward's phone; is that

5    right?

6         MR. BRATT:  That's correct.

7         THE COURT:  Okay.  Okay.  That's all I have.

8         Then let's turn to the motion for this afternoon.

9         MR. WOODWARD:  Your Honor, I'm not -- I wasn't

10   suggesting that there was a subpoena for my phone records.

11   After the Special Counsel's Office received a third party's

12   phone records, there was a specific request for an FBI agent to

13   review those phone records for calls with me.  So this wasn't

14   an incidental review of phone records and my phone number

15   happened to come up.  There -- there is a -- there is --

16   discovery shows that there was a specific request of an agent

17   to review a third party's phone records for calls to me.

18        THE COURT:  And -- all right.  Well, because this

19   wasn't raised in your initial motion this morning and it's not

20   part of the evidentiary foundation for that motion, I don't

21   think it's appropriate to delve further into those details, but

22   it is included in the motion to compel, which remains pending.

23   So that is where we will leave that.

24        MR. WOODWARD:  Fair enough, Your Honor.

25        THE COURT:  All right.  Let's turn to the other motion.

1    This is a motion to dismiss indictment.  It's docket entry 352.

2    It's brought by all three defendants pursuant to Rule 12 for

3    failure to state an offense and for related pleading

4    deficiencies.  There is an opposition to that motion at 378,

5    followed by a reply in support of the motion at 556.

6           So let's hear argument on that.

7           MR. WOODWARD:  Thank you, Your Honor.

8           This is a -- this is a technical argument about what is

9    necessary in framing an indictment.  I'd like to start,

10   Your Honor, I think, with what is the strongest argument in the

11   motion, and that pertains to Counts 34 and Counts -- Count 34

12   and 36 of the indictment.

13          Why Counts 34 and 36 must be stricken is because those

14   counts duplicitously charge both Former President Trump and

15   Mr. Nauta.  Although citing the same criminal statute, they

16   allege different acts as to each of those defendants.  And so

17   with respect to Count 34, the indictment reads:  "Trump

18   attempted to persuade Trump Attorney 1 to hide and conceal

19   documents from a federal grand jury."

20          There is no dispute that that allegation does not apply

21   to Mr. Nauta.  That allegation is an allegation of a violation

22   of 1512 (b)(2)(A).

23          Two:  "Trump and Nauta misled Trump Attorney 1 by

24   moving boxes that contained documents with classified markings

25   so that Trump Attorney 1 would not find the documents and

1    produce them to a federal grand jury."  Again, that is an

2    allegation as to both Trump and Nauta of a violation as to

3    1512(b)(2)(A).

4         Had the indictment charged paragraph -- subparagraph 1

5    separately from subparagraph 2 in separate counts, I don't

6    think that the argument that we're making would apply.  But

7    here, they have grouped together two separate acts and charged

8    them as against Mr. Nauta.

9         There is no -- the Special Counsel's Office cites no

10   law that permits them to duplicitously charge multiple acts in

11   a single count in the way this is done.  Rule 8 doesn't even

12   read remotely close to what they suggest is permissible.

13        Count 36 is the same:  "Trump and Nauta hid, concealed,

14   and covered up from the FBI Trump's continued possession of

15   documents."  If that's all Count 36 said, then the indictment

16   would be properly pled.  But it goes on:  "Trump caused a false

17   certification to be submitted to the FBI."  That has nothing to

18   do with Mr. Nauta.  It is -- it is charging a separate act

19   under 1519 and alleging it as against Mr. Nauta.  So -- so

20   Count 36 is improperly pled.

21        Why does it matter?  The Special Counsel's Office

22   suggests that we can craft a jury instruction that would

23   allow --

24        THE COURT:  Before you move on to the "why does it

25   matter," on 36, what is the false -- does that require a false

1    entry as to both defendants?

2         MR. WOODWARD:  "Trump caused a false certification to

3    be submitted to the FBI."  I don't know.  I mean, I think --

4         THE COURT:  Is there a false entry alleged vis-á-vis

5    Mr. Nauta?

6         MR. WOODWARD:  No, Your Honor.

7         THE COURT:  Does count -- does the charge in Count 36

8    require there to be a false entry in any record or document?

9         MR. WOODWARD:  Yes, it does.  "Trump caused a

10   false -- a false certification to be submitted to the FBI."

11        THE COURT:  That's what I'm asking, on the statutory

12   text of 1519.

13        MR. WOODWARD:  Does not.  1519 does not require the

14   government to allege --

15        THE COURT:  It says, "Whoever knowingly alters,

16   destroys, mutilates, conceals, covers up, falsifies, or makes a

17   false entry in any record."

18        So my question is:  Does there need to be a false entry

19   in a record for a 1519 charge?

20        MR. WOODWARD:  No.  I mean, maybe I'm -- maybe

21   I'm -- maybe I'm wrong about that.

22        THE COURT:  No, no, no.  I'm not suggesting that you

23   are.  So there is -- there's no false entry requirement?

24        MR. WOODWARD:  Not if the allegation is that materials

25   are altered, destroyed, mutilated, concealed, covered up,

1   period.

2            THE COURT:  Okay.

3            MR. WOODWARD:  There are -- 1519 makes out various ways

4   in which the crime can be committed.

5            THE COURT:  Okay.  So your issue here is -- is that

6   this should have been broken up into two counts.

7            MR. WOODWARD:  It should have been broken up into two

8   counts, and because it was not, it violates the plain language

9   of Rule 8.  And it has to be dismissed because we cannot be

10  sure that the grand jury could have returned an indictment,

11  making out the allegations of Counts 36, without a claim that

12  Trump caused a false certification to be submitted to the FBI.

13           Because of the way in which it was presented to the

14  grand jury, we do not know what import the grand jury

15  attributed to that last sentence, which does not apply to

16  Mr. Nauta.  He is not alleged to have caused a false

17  certification to be submitted to the FBI.  And so 34 and 36

18  are, on their face, duplicitous, in that multiple crimes are

19  alleged in the same counts that should have been pleaded

20  separately.

21           THE COURT:  Are you aware of any other indictments

22  where you have this sort of one crime as to two defendant -- I

23  probably butchered that.

24           But anyhow, are you familiar with any other indictments

25  that employ this pleading format?

1          MR. WOODWARD:  I have seen other indictments in which

2     multiple defendants are charged in a single count for all

3     engaging in the same activity.

4          THE COURT:  Right.  And there are some counts that's in

5     the indictment that do this?

6          MR. WOODWARD:  That's correct.

7          THE COURT:  Okay.

8          MR. WOODWARD:  I have not seen Counts -- to

9     Your Honor's point, Counts 35 and 37 both charge that Mr. Trump

10    and Mr. Nauta were engaged in the same activity, which

11    violated --

12         THE COURT:  Okay.  So those -- those counts don't have

13    the defect you've -- or the purported defect you've identified?

14         MR. WOODWARD:  Those counts do not have that defect.

15    They do suffer from other defects.  But 34 and 37, as I say,

16    suffer the strongest defects.  The opposition of the Special

17    Counsel's Office simply does not address why we can charge two

18    defendants with different acts in the same count, nor can they

19    rely on the fact that the preceding paragraph simply quotes the

20    text of the statute as -- as the Court has now read from.

21    That -- that doesn't satisfy the pleading requirements where

22    they have gone out of their way to provide a speaking

23    indictment, which is what's happened here.

24         They allege specific acts by Defendants Trump and

25    Nauta; and they're, therefore, required to separately plead

1    those.  Otherwise, it is unclear what crimes Mr. Nauta and

2    Former President Trump are defending in discovery, at trial.

3    And crafting a jury instruction simply won't cure that

4    confusion when it comes to the jury's rendering a verdict in

5    this case.

6         Similarly, Count 36 is going to implicate a theme that

7    is persistent throughout the false -- or the improper -- the

8    deficiencies, if you will, of the indictment.  Count 36, as I

9    noted, alleges that Trump caused a false certification to be

10   submitted to the FBI.  That implicates Count 38.

11        Count 38 alleges that Former President Trump caused

12   Trump Attorney 3 to submit a sworn certification that was

13   false.  The problem with the way that the indictment is pleaded

14   is that that certification was not false, and there is no

15   argument to the contrary.  When Trump Attorney --

16        THE COURT:  What about -- what about Title 18, United

17   States Code, Section 2?

18        MR. WOODWARD:  If the statement itself is true, then an

19   individual cannot be alleged to have aided and abetted an act

20   that is not a crime.  Because Trump Attorney 3's statement was

21   accurate as to Trump Attorney 3, a separate individual cannot

22   be alleged to have aided and abetted Trump Attorney 3 in

23   affecting that crime.

24        THE COURT:  So is -- but is the argument that if Trump

25   had signed the certification, then it would have been subject

1   to criminal prohibition and, therefore, so long as he's

2   conceived of as the principal in that count, then it would be

3   okay?

4           MR. WOODWARD:  Well, that would be a different

5   argument, certainly.  If the argument by the Special Counsel's

6   Office was that Trump either signed or adopted the statement of

7   Trump Attorney 3, that then it's his -- yes, that he is now the

8   principal under 1001 liability, and the statement may be false

9   as to him.  But that, again, is not how the indictment is

10  pleaded.

11          It's pleaded as Former President Trump causing Trump

12  Attorney 3 to sign a statement that it is undisputed was true

13  as to Trump Attorney 3.

14          THE COURT:  1001 does not have the cause language.

15  It's just "making."

16          MR. WOODWARD:  Correct.

17          THE COURT:  So you need Title 18, United States Code,

18  Section 2 to -- for that causation language.

19          MR. WOODWARD:  I think that's right, Your Honor.  But

20  the case law is clear that where the -- and I think the cite to

21  that is -- bear with me.

22          The -- the case law is clear that you cannot aid and

23  abet an individual in committing an otherwise lawful act.

24          THE COURT:  Okay.  All right.

25          Anything further on Counts 34 and 36 and 38?

1          MR. WOODWARD:  Yes, Your Honor.

2          So once we accept the proposition that the statement by

3     Trump Attorney 3 is, in fact, true and, therefore, not -- not

4     a -- not a violation of law, we can then strike those

5     allegations from Count 33.

6          So, obviously, Count 33, paragraph 97 --

7          THE COURT:  Why would that be the natural consequence?

8          MR. WOODWARD:  Because Count 33, paragraph 97,

9     subparagraph E, provides that as means and manner of the

10    conspiracy, they caused a false certification to be submitted

11    to the FBI and grand jury, representing that all documents with

12    classification markings had been produced.  That's not, in

13    fact, what was done.

14         The statement -- the certification by Trump Attorney 3,

15    again, was accurate as to Trump Attorney 3.

16         THE COURT:  Well, even if -- even if you're correct on

17    the purported pleading deficiency as to Count 38 for purposes

18    of 1001, why would that necessarily take that conduct off the

19    table for purposes of the conspiracy charge?

20         MR. WOODWARD:  Because it's -- it's not a criminal act

21    in furtherance of a conspiracy.

22         THE COURT:  And it's, in your view, not criminal

23    because as to Trump Attorney 3, it wasn't false?

24         MR. WOODWARD:  That's correct.

25         THE COURT:  Okay.

```
 1          MR. WOODWARD:  That's correct.  Trump -- Trump

 2   Attorney 3 believed the certification -- oh, that's a good

 3   point of clarification, but I will finish my thought.

 4          Trump Attorney 3 signed a certification that provided

 5   that any and all documents accompanying this

 6   certification -- excuse me -- that a diligent search was

 7   conducted of the boxes that were moved from the White House to

 8   Florida; that the search was conducted after receipt of the

 9   subpoena, et cetera; and any and all responsive documents

10   accompanied the certification.  She believed that to be true at

11   the time that she provided the certification.

12          Your Honor, I -- I neglected to attach the

13   certification in our submission of the reply.  I have a copy

14   here today that I can pass up to the Court, and then I can file

15   that on the docket on my way back to --

16          THE COURT:  Sure.  I will receive that.

17          MR. WOODWARD:  I will --

18          THE COURT:  Again, this whole motion, though, is bound

19   by the allegations of the -- of the superseding indictment.

20          MR. WOODWARD:  That's correct, Your Honor.

21          THE COURT:  Okay.

22          MR. WOODWARD:  That's correct.  We reference it only

23   for --

24          THE COURT:  Mr. Harbach, can you just try to keep it

25   down so it's not distracting.
```

```
 1            MR. HARBACH:  Yes, Your Honor.  I'm sorry.

 2            THE COURT:  Thank you.

 3            MR. WOODWARD:  May I approach, Your Honor?

 4            THE COURT:  Yes.

 5            MR. WOODWARD:  I will note that this version is -- is

 6    unredacted.  I have already conferred with the Special

 7    Counsel's Office about the submission of a redacted version

 8    that removes PII and reference to the individuals.  And so we

 9    will file both.  One under seal -- with the Court's permission,

10    one under seal and one on the public docket.

11            THE COURT:  Any objection?  Hold on.

12            Any objection?

13            MR. BRATT:  No, Your Honor.  We already conveyed that

14    to Mr. Woodward.

15            THE COURT:  Okay.  Then make sure to do that,

16    Mr. Woodward, by this Friday.

17            MR. WOODWARD:  Understood, Your Honor.

18            All right.  So with respect to -- well, I --

19            THE COURT:  Before you keep going, are any other

20    defense attorneys wishing to be heard on this motion today?

21            MR. BLANCHE:  No, Your Honor.

22            MR. MURRELL:  No, ma'am.

23            THE COURT:  All right.  Anything more on Counts 34, 36,

24    or 38?

25            MR. WOODWARD:  I don't think so, Your Honor.
```

1          THE COURT:  Okay.  Well, then just so we don't get too

2     down the path without a chance to at least isolate some counts

3     in segments, then let me hear from the Special Counsel's Office

4     just for these three counts.

5          MR. WOODWARD:  Of course, Your Honor.

6          THE COURT:  Let's start with Count 38, which is where

7     we just finished with Mr. Woodward.

8          MR. BRATT:  So, Your Honor, we in no way concede that

9     the certification is true.  That is a jury issue, and that

10    should really end the inquiry right there.

11         THE COURT:  Right.  But I'm just looking at the way

12    this is pled.  It says:  "The statements and representations

13    set forth above were false as Trump knew."

14         MR. BRATT:  Correct.

15         THE COURT:  And then it talks about Trump causing

16    the --

17         MR. BRATT:  Right.

18         THE COURT:  -- certification to be made.  And I'm just

19    trying to understand from a pure pleading perspective how

20    this -- how this shakes out in light of the text of -- of 1001

21    which does not contain the causation language.

22         MR. BRATT:  18 U.S.C., Section 2(b) does.

23         THE COURT:  Okay.  So that's my argument, is, can you

24    explain to me your theory for how one would, I guess, abet?

25         MR. BRATT:  It's not abetting.  This is the causing

 1   prong of, 18 U.S.C., Section 2.

 2        THE COURT:  Right.  So you're not relying on an aiding

 3   and abetting theory.  The argument, as I take it, is that Trump

 4   is the principal.  He is liable even if he didn't cause -- if

 5   he didn't make the certification, because he caused it.

 6        MR. BRATT:  Correct.  And that's why, in paragraph 107,

 7   we allege caused.

 8        THE COURT:  And you don't see any issue in the case law

 9   with there being -- with there being, I guess, no falsity, at

10   least as alleged for the attorney who signed the certification?

11        MR. BRATT:  So we view the attorney who signed it as

12   the conduit by which the false information was conveyed to the

13   government and, ultimately, to the -- to the grand jury.  So

14   what the chain of events is:  Trump Attorney 1 conveys

15   information to Trump Attorney 2.  That that information is

16   information that Trump Attorney 1 believes to be correct.

17   Trump Attorney 1 believes that to be correct because Trump,

18   unbeknownst, did not reveal to him that boxes were removed from

19   the storage room before Trump Attorney 1 had the

20   opportunity -- or went in there to review them.

21        So -- and, you know, this is, again, this is partly why

22   it's a jury issue, but we expect that -- there to be testimony

23   at trial -- again, some of this contingent on the Court's

24   ruling on crime fraud -- but testimony at trial that the

25   importance of the certification was discussed with Former

 1    President Trump.

 2         So all this evidence lines up to, again, prove the

 3    falsity, which is a jury issue, but in terms of the way this is

 4    pled, it is pled entirely correctly.

 5         THE COURT:  All right.  But just to be clear, the

 6    falsity is alleged as to Trump --

 7         MR. BRATT:  Correct.

 8         THE COURT:  -- not the person who made the

 9    certification?

10         MR. BRATT:  Correct.

11         THE COURT:  But it's still okay in your view because of

12    the Section 2(b)?

13         MR. BRATT:  Yes, that's correct.

14         THE COURT:  All right.  Now, there is a citation to

15    Hendricks, a Fifth Circuit case from the '60s.  Does that have

16    any bearing on this discussion?  The parenthetical in the reply

17    is, quote, "Jury must still find the offense to have been

18    committed by a principal and that the principal was aided or

19    abetted by the accused."

20         MR. BRATT:  So, again, I -- I think -- don't want to

21    confuse 2(a) with 2(b) and what the Court will instruct -- and,

22    you know, I don't have --

23         THE COURT:  So is your argument that Hendricks is about

24    2(a)?

25         MR. BRATT:  Correct.

```
 1              THE COURT:  Okay.

 2              MR. BRATT:  Correct.

 3              THE COURT:  Mr. Woodward, do you have anything else to

 4    add on Hendricks?  Because that does seem to be an aiding and

 5    abetting case, not a Section 2(b) case.  And we've now heard

 6    that the way this is -- is supported is via the (b) route.

 7              MR. WOODWARD:  That's not what is alleged in the

 8    indictment.

 9              THE COURT:  Well, there is no -- there is no

10    qualification on Section 2 as pled.  It just says, 18, U.S.C.,

11    Section 2.

12              MR. BRATT:  And, Your Honor, I would add that under the

13    law, there is no requirement for us to even cite Section 2.

14    Aiding and abetting is a theory of liability.

15              THE COURT:  I thought you said you weren't doing aiding

16    and abetting.

17              MR. BRATT:  18, U.S.C., Section 2, aiding and

18    abetting/causation is a theory of liability, it's not a

19    substantive offense.  The circuits have uniformly held that we

20    don't even have to set it out in the indictment.  We have.

21              THE COURT:  Okay.  But you would agree that without the

22    (b), this wouldn't track 1001 by itself?

23              MR. BRATT:  That is not our theory here, correct.

24              THE COURT:  Okay.  All right.  Then let's turn to the

25    other counts, Mr. Bratt.
```

1          MR. BRATT:  Sure.

2          So for Counts 34 and 36, a couple of -- a couple of

3     things.  First of all, we didn't have to charge it in this way.

4     We set out in the counts the manner by which the defendants

5     committed the offense.  These were all part of the same series

6     of transactions or, really, one transaction, that occurred over

7     the span of a couple of days.  And under Rule 8(b) the

8     defendants are properly joined together.  Our principal

9     authority is the Felts case that we cite in our opposition.  In

10    Felts, the Eleventh Circuit held, again, consistent with other

11    circuits, that if a statute delineates different ways in which

12    it can be violated, you know, through subsections or otherwise,

13    that it is not duplicitous to include in one count the

14    different ways in which it is --

15         THE COURT:  That, I don't -- I think that's well

16    settled.  But I think the issue here is you have in one count

17    that starts off as to two defendants, breaking it out in terms

18    of actual conduct within that very same count.  It's a little

19    bit unusual.  I'm not -- I'm not -- I don't see this very

20    often.  I see -- I see the format you employ in Count 35 and in

21    37.  But the 34 and 36 technique of having, sort of, within one

22    count conduct as to two defendants in one segment, and then

23    conduct as to one defendant only in one segment, is that not

24    more confusing in the end --

25         MR. BRATT:  No.

1          THE COURT:  -- in terms of breaking this out element by

2     element?

3          MR. BRATT:  So, no, I don't think it is.  I will also

4     add, Your Honor, that we're not at this point, but we would

5     likely request a Pinkerton instruction so that Mr. Nauta, under

6     Pinkerton theory, has liability as a coconspirator with

7     Defendant Trump for Defendant Trump's actions in this count.

8     So they are properly joined together.  Mr. Nauta can be held

9     responsible for the activities that Mr. Trump did on his own.

10    They cite no case that says that this type of, what really is,

11    extra notice pleading renders the count duplicitous.

12         THE COURT:  So if you were to just break out and just

13    say to me, okay, what are the elements vis-á-vis Mr. Trump on

14    Count 34, and what are the elements for Mr. Nauta on Count 34,

15    what would they be?

16         MR. BRATT:  So I would -- the elements are the same as

17    to both.  The question is, what is the proof as to them?  And

18    the proof as to them is, in one manner, slightly different;

19    that is, that as to Count 34, the former president first tried

20    to persuade his former attorney not to turn over documents.  So

21    that's part of the proof.  Again, as a coconspirator of Former

22    President Trump, under Pinkerton Mr. Nauta has liability for

23    that under this count.

24         THE COURT:  Okay.  But you're -- you're now picking up

25    conspiracy liability, and I'm looking at 34.  So now I guess

1   you are saying we have to look at 33?

2        MR. BRATT:  33, yeah.  I mean, 33 would give us the

3   basis for a Pinkerton instruction as to 34.

4        THE COURT:  But would that then just convert all the

5   other counts into conspiracies in a way?

6        MR. BRATT:  No.  But it is not uncommon.  And this is

7   something that is done routinely and, perhaps, not without the

8   same level of detail that we included here.  But coconspirators

9   are often included in a count.  Properly so, under Rule 8(b),

10  coconspirators are often properly included in a count on a

11  Pinkerton theory for actions that are only taken by a different

12  coconspirator.

13       THE COURT:  Okay.  But this is not a conspiracy charge;

14  33 is.

15       MR. BRATT:  But the question is, is this a proper

16  charge?  Is it duplicitous?  They cite no case law that would

17  indicate that this is duplicitous.  That's their basis for

18  striking it.  And even -- even under the case law --

19       THE COURT:  Okay.  But just, like, if you were trying

20  to understand the elements --

21       MR. BRATT:  Yes.

22       THE COURT:  Okay.  You have -- you have two offenses.

23       MR. BRATT:  It's one offense.

24       THE COURT:  One is as to one defendant, one is as to

25  two in one count.  How would you break out the elements?  Would

1   there not be a need, then, for a special interrogatory that

2   requires the jury to answer which defendant did what vis-á-vis

3   34?

4          MR. BRATT:  So, again, given my familiarity, at least

5   with what the law requires for a special interrogatory, I don't

6   think so.  But that certainly is something the Court could take

7   up at the instruction.

8          THE COURT:  So if we were to have that discussion, what

9   kind of separate questions could you envision for Count 34,

10  just looking at Count 34?

11         MR. BRATT:  And I don't want to be held to this since

12  I'm just speaking off-the-cuff --

13         THE COURT:  That's fine.

14         MR. BRATT:  But one could be, does the jury find beyond

15  a reasonable doubt that Defendant Trump violated Count 34 by

16  attempting to persuade Trump Attorney 1 to hide and conceal

17  documents?  Did -- you know, 2, did -- and then the second

18  language incorporating the second one.

19         THE COURT:  So maybe there would be three total

20  questions.

21         MR. BRATT:  And I guess the third one could be -- but

22  it would be highly unusual in a Pinkerton setting, but a third

23  one could be:  Was this activity in the first part by Former

24  President Trump foreseeable to Mr. Nauta?

25         But in terms of pleading --

 1    THE COURT:  What authority do you have for a Pinkerton

 2    instruction on non-conspiracy counts?

 3    MR. BRATT:  But that's what every -- every

 4    substantive --

 5    THE COURT:  I'm just asking.  What authority?

 6    MR. BRATT:  So the authority is Pinkerton.  Pinkerton

 7    says that if you are a member of a conspiracy, you can be held

 8    liable for any substantive count that is reasonably foreseeable

 9    as part of the conspiracy.

10    THE COURT:  I would agree with you, for sure, as to

11    Counts 33.  I'm just not sure that it then sort of bleeds into

12    every other substantive count that's not a conspiracy.

13    MR. BRATT:  But that's Pinkerton, Your Honor.

14    THE COURT:  Okay.

15    MR. BRATT:  Pinkerton allows the government to charge

16    and a jury to find a defendant -- a coconspirator guilty for

17    any substantive offense that is reasonably foreseeable within

18    the scope of the conspiracy.

19    We can obviously brief it later --

20    THE COURT:  All right.  Mr. Nauta is not described in

21    Count 34 as a coconspirator, but I take your point that if you

22    find liability on 33, then you would reach that conclusion.

23    So, okay.

24    All right.  Can you point the Court to any other

25    examples of pleading where you have had this structure,

1   Mr. Bratt?

2       MR. BRATT:  I can't think of one offhand in my

3   experience.  But, again, looking at cases like Felts, looking

4   at --

5       THE COURT:  So Felts says you can do this exact

6   formulation?

7       MR. BRATT:  Felts -- Felts says that if there

8   are -- are different ways of violating a statute that is not

9   duplicitous to include in a count charging that statute, the

10  different manner -- ways in which a defendant can --

11      THE COURT:  That's different, though.  That's the

12  well-established principle that you can charge in the

13  conjunctive when you have multiple means of violating a

14  statute.  But what I'm hearing in the papers is that this is,

15  sort of, a different flavor; that this is putting different

16  acts in one count, some applicable to two defendants, and some

17  applicable to one only.

18      Why not just separate the counts so that there is no

19  confusion?

20      MR. BRATT:  And I think if we had done that, we would

21  have seen a multiplicity motion.

22      And, really, we could have just ended the sentence at

23  "official proceeding" and not delineate the ways in which the

24  defendants violated the statute.  That was not a requirement

25  for -- for how we charged this.  But we did provide some

1    additional --

2         THE COURT:  So you could have charged this without

3    identifying at all what the misleading conduct is?

4         MR. BRATT:  Yes.  Yes.  They made them sign a bill of

5    particulars on that.

6         THE COURT:  Okay.  And then you would have opposed

7    that, I'm sure.

8         At that point, then, there would have been no

9    understanding of what of purported misleading conduct is.

10        MR. BRATT:  Well, I would -- again, and this would

11   be --

12        THE COURT:  Other than the general allegations, which

13   are, I guess, 90 -- 90 -- one paragraph.

14        All right.  So Felts is your authority for this

15   technique of putting --

16        MR. BRATT:  Felts and Pinkerton for why it is

17   appropriate for Mr. Nauta to be in this count.

18        THE COURT:  Pinkerton speaks about pleading?

19        MR. BRATT:  Pinkerton speaks about liability.  And if a

20   defendant has Pinkerton liability, it is -- it is appropriate

21   to include the defendant under Rule 8(b) as part of the same

22   series and transaction in a count with another co-defendant.

23        THE COURT:  Okay.  So these arguments that you've made,

24   they apply equally to Count 36?

25        MR. BRATT:  Yes.

1          THE COURT:  Okay.  As far as that false entry question

2    that I had, do you agree with Mr. Woodward that Section 1519

3    does not require an actual false entry?

4          MR. BRATT:  I'm not quite -- I mean, we quoted the

5    statutory language.  False entry is in the statutory language.

6    And obviously, we cite different ways by which, here, that the

7    statute was violated --

8          THE COURT:  Uh-huh.

9          MR. BRATT:  -- by concealing, removing, et cetera.

10   So -- but we do include false entry as one of them, obviously

11   referring to the certification.

12         THE COURT:  But -- but what I'm saying is:  Is there a

13   false entry as to Mr. Nauta for Count 36?

14         MR. BRATT:  Not that he personally committed, no.  And,

15   again, the allegation is that Trump caused the false

16   certification to be submitted to the FBI.

17         THE COURT:  Okay.  But your reading of 1519 is that you

18   don't actually need a false entry to make out such an offense?

19         MR. BRATT:  Given what else is alleged here, I would

20   say that's correct, yes.

21         THE COURT:  Okay.

22         MR. BRATT:  But we do believe we have a false entry.

23         THE COURT:  The certification?

24         MR. BRATT:  Correct.

25         THE COURT:  But that one doesn't apply to Mr. Nauta?

1          MR. BRATT:  Not as the person who committed it.  As a

2     coconspirator, he would have liability for it.

3          THE COURT:  Okay.  All right.  Okay.  Then let me allow

4     Mr. Woodward to just respond to the arguments on these three

5     counts, and then we'll turn to the other counts.

6          MR. WOODWARD:  All right.  With respect to -- I think,

7     Your Honor, taking this back to sort of what -- what is

8     required.  We -- Rule 8(b) provides that an indictment may

9     charge two or more defendants if they are alleged to have

10     participated in the same act or transaction or in the same

11     series of acts or transactions constituting an offense or

12     offenses.

13          What I -- what I hear the Special Counsel's Office to

14     be alleging is that they could have pleaded Count 34, for

15     example, ending before paragraph 2.  So they -- they could have

16     pleaded "Donald J. Trump and Waltine Nauta did knowingly

17     engage...Trump attempted to persuade Trump Attorney 1 to hide

18     and conceal documents from a federal grand jury."  And that --

19     they could have pleaded it that way because, when it came time

20     for jury instructions, they would then be permitted to request

21     that the Court instruct the jury on a Pinkerton theory of

22     liability; that is, that Mr. Nauta conspired with Trump to

23     attempt to persuade Trump Attorney 1.

24          But I think that takes Pinkerton liability, which,

25     incidentally, is not in their opposition, and it puts it on its

1    head.  I mean, the purpose here is for Mr. Nauta to be put on

2    notice of the acts with which he has been charged.

3        And to say that Mr. Trump -- excuse me -- to say that

4    Mr. Nauta has been charged with Mr. Trump attempting to

5    persuade Trump Attorney 1 to hide and conceal documents from a

6    federal grand jury does not do that.  That misconstrues

7    Rule 8(b) which allows multiple defendants to be included in a

8    count alleging a criminal act.

9        What they've done here, without citing any example of

10   this ever having occurred before, is combine two separate

11   crimes and claimed that that satisfies Rule 8(b) because, at

12   jury instructions, this Court might -- might -- allow for a

13   Pinkerton theory of liability to be included in the jury

14   instructions.  But until --

15       THE COURT:  Well, but then they say:  Well, we could do

16   some special interrogatories and break it out that way to avoid

17   confusion.

18       MR. WOODWARD:  I don't believe they have a right to

19   special interrogatories.  Again, this is all -- this all

20   depends on a fair amount of assumptions on how the trial

21   shakes and how the evidence shakes out at trial, and what this

22   Court permits with respect to jury instructions.

23       On its face, on its face, the indictment is confusing

24   and prejudicial to Mr. Nauta, who is required to be put on

25   notice --

1          THE COURT:  Okay.  But on the notice point, I mean, the

2     notice is in the form of subsection 2 to Count 34.  That's the

3     factual conduct that is the subject of Count 34 in the

4     alleged -- in the allegations.  Is there really an absence of

5     notice?

6          MR. WOODWARD:  There is.  Because we're now learning

7     that they're -- they're going to allege that Mr. Nauta

8     conspired with Mr. Trump to persuade Trump Attorney 1, and that

9     under Count 34, he is separately liable for that act, in

10    violation of 1512(b)(2)(A).  That's not what the indictment

11    says.

12         THE COURT:  Okay.  But taking Pinkerton off the table

13    for just a moment, it's still the case that this states the

14    factual conduct in subsection 2.  So why wouldn't that be

15    enough notice for you to be able to defend against the charge?

16         MR. WOODWARD:  Because he is required to also defend

17    against Trump attempting to persuade Trump Attorney 1 to hide

18    and conceal.  We can't ignore that sentence of the indictment

19    when it comes to Mr. Nauta.  That's the whole purpose of Rule 7

20    and Rule 8 combined.  There needs to be a plain, concise

21    statement of the facts, and they've combined them here.

22         THE COURT:  But they say that if they had separated

23    out, then there would have been a multiplicity challenge.

24         MR. WOODWARD:  We'll see.

25         THE COURT:  So, then, is it really just a dispute --

1          MR. WOODWARD:  That's not the issue before the Court.

2     I mean, we can't hypothetically suggest that you would grant a

3     multiplicity challenge simply because they've -- they've pled

4     those separately.  We can't assume that a multiplicity

5     challenge would be brought.

6          We're -- we're talking in hypotheticals when all -- all

7     of this Court is required to do is examine the four corners of

8     the indictment; they have made that quite clear.

9          THE COURT:  Okay.  What is your argument on Felts?

10         MR. WOODWARD:  I think they're requiring us to assume

11    Pinkerton liability for Felts to apply.  This is not pleading

12    the same -- a violation of the same statute in the alternative

13    as to Mr. Nauta.  This is pleading the same statute in the

14    alternative as to Former President Trump.  And then Mr. Nauta

15    is -- is guilty by virtue of having participated in the

16    conspiracy not alleged in this count.

17         THE COURT:  Okay.  So if you were to crystallize the

18    alleged prejudice that your client faces by virtue of the

19    pleading format in Count 34, what would it be?

20         MR. WOODWARD:  That Mr. Nauta is not sufficiently put

21    on notice of how he is criminally liable for President Trump

22    attempting to persuade Trump Attorney 1 to hide and conceal

23    documents from a federal grand jury.

24         THE COURT:  Okay.  All right.  Okay.  Let's -- anything

25    further on Count 34?  And then Count 36, I think, is similarly

1    situated.

2            MR. WOODWARD:  No, Your Honor.  We -- we agree, and we

3    would just say that -- you know, I'm not sure that Felts stands

4    for the proposition either that Former President Trump can be

5    charged with two different acts in the way that he was here.

6    If -- if this -- even if -- I don't think you can simply

7    scratch Nauta and have a sufficient indictment because the

8    primary argument would be "we don't know what the grand jury

9    would have done."

10           But I also think that this is not a true reading of

11   Felts in Count 34; that they can simply allege two very

12   different acts, persuading an attorney to hide or conceal

13   documents and then moving boxes.

14           THE COURT:  Well, Count 34, both of those subsections

15   concern the attorney in some degree.

16           But anyhow, what is your argument, if any, on the

17   Count 38 issue, which Mr. Bratt has explained, pursuant to

18   Section 2(b) would be under the causation prong and, therefore,

19   there is no issue?

20           MR. WOODWARD:  Your Honor, that, again, was not clear

21   from the papers.  It would seem to us -- let me just pull up,

22   18 U.S.C., 2.

23           THE COURT:  Okay.  Well, I don't want to have you do

24   legal research on the fly.  So let's just potentially consider

25   any supplemental authority you wish on just that one Count 38

1    issue.  But it appears that Mr. Bratt's reading of that statute

2    would permit the method of pleading for Count 38.

3              MR. WOODWARD:  Very good, Your Honor.

4              THE COURT:  Okay.

5              MR. WOODWARD:  I'm happy to turn to the --

6              THE COURT:  I have one question for the Special Counsel

7    before we move on to the other counts, and that's for

8    Mr. Bratt.

9              For Count 34, can you explain to me what "knowingly

10   corruptly" means?  This says, "Did knowingly engage in

11   misleading conduct toward another person and knowingly

12   corruptly persuade."

13             MR. BRATT:  Correct.  So that tracks the statutory

14   language.

15             THE COURT:  But can you just help me walk through the

16   statutory language with the multiple mens reas overlaid upon

17   one another?  It gets a little confusing.

18             And, of course, this all assumes that we know what

19   "corruptly" means.

20             MR. BRATT:  That's what I was just about to say,

21   Your Honor, that --

22             THE COURT:  Okay.

23             MR. BRATT:  -- this kind of leads back to I know what

24   has been an ongoing discussion between the parties and the

25   Court about what "corruptly" means, and maybe the Supreme Court

1    will give some clarity to it in Fischer, maybe not.  That's

2    hard to tell.  But --

3              THE COURT:  Okay.  I'm looking at 15(b)(2)(a).

4              MR. BRATT:  Yes.  So the first prong is:  "Knowingly

5    engage in misleading conduct toward another person."

6    Knowingly --

7              THE COURT:  But I'm just looking at the statutory text.

8    I have "whoever knowingly."

9              MR. BRATT:  Right.

10             THE COURT:  I'm trying to isolate what would be the

11   elements for this count.

12             MR. BRATT:  So, for this count, it would be,

13   "knowingly" -- the Court will define elsewhere.

14             THE COURT:  Okay.

15             MR. BRATT:  There is a standard instruction on that,

16   and it's usually something that is done, you know, with --

17             THE COURT:  Yes, I know.

18             MR. BRATT:  -- with knowledge.

19             "Corruptly" --

20             THE COURT:  So we jump from "knowingly," but then where

21   do we go in the statute?  "Knowingly," and then we skip over --

22             MR. BRATT:  Hold on.  I'm sorry.

23             THE COURT:  -- the intermediate portion of...

24             MR. BRATT:  All right.

25             THE COURT:  I was trying to do this yesterday, actually

1    breaking it out, and it's really not as easy as you think.

2          MR. BRATT:  I'm not looking at anything at the moment,

3    other than why my notes are not consistent with what I'm

4    reading in the text.  I thought I had digested each of the...

5          THE COURT:  All right.  Maybe you could -- maybe it

6    would be useful for there to be some sort of element-by-element

7    recitation of these counts with potential special

8    interrogatories so that it's understandable what is going to

9    which defendant on the counts that are pled in this, sort of,

10   hybrid format, but I -- I'm going to consider that possibility.

11         So it just was -- it was hard for me to understand what

12   "knowingly corruptly" meant, and then trying to make sense of

13   the statutory language as pled in this count.

14         Anything else on that topic, Mr. Bratt?

15         MR. BRATT:  No, Your Honor.

16         THE COURT:  Okay.  All right.  Then, Mr. Woodward,

17   let's get back to the indictment and to the various challenges

18   you have in the motion.

19         MR. WOODWARD:  Your Honor, we, of course, have

20   separately challenged the constitutional vagueness of use of

21   "corruptly" in Counts 35 and Counts 37.  That's not, however,

22   our principal arguments in this brief.  Grouping together

23   Counts 35 and 37, we -- we argue that there are several

24   pleading deficiencies with respect to each.

25         The counts fail to show -- or the indictment, rather,

1    fail to show knowing concealment by Mr. Nauta.  They fail to

2    allege a proceeding that is official within the definition of

3    the statute.  They fail to allege a proceeding that is subject

4    to the jurisdictional requirements of the statute.  And

5    they -- they fail to show any knowledge by Mr. Nauta that the

6    boxes in question contain documents with classification

7    markings that are being hidden from the grand jury or that

8    Mr. Nauta himself is aware of the grand jury.

9         And so, absent specific allegations of Mr. Nauta's

10   knowledge with respect to those elements of the offenses, both

11   Counts 35 and 37 fail to put him on notice of the acts with

12   which he's alleged to have committed.  We -- you know, I won't

13   belabor the arguments that we presented with respect to a bill

14   of particulars, but there are -- there is some commonality

15   here.

16        Mr. Nauta cannot know what crimes he is to have

17   committed based on the way that this indictment is drafted.  It

18   is confusing.  And separately charging these substantive

19   obstruction counts in 35 and in 37, a scheme to conceal,

20   unnecessarily complicates the requirement that he have notice

21   of the offenses with which he is charged.

22        I think the exercise that the Court engaged in with the

23   Special Counsel's Office is instructive.  I mean, I -- I think

24   understanding exactly how this would be presented to a jury, or

25   struggling with how to understand this would be presented to a

1   jury overlooks a fundamental problem with the indictment

2   itself, which is, if we look at the four corners of the

3   indictment, do we understand exactly how these claims are made

4   out?  And the answer is we don't.  We have to have a charging

5   conference to understand that.  And that's not what Rule 7 and

6   8 contemplate, a clear and concise statement of facts.

7       THE COURT:  Well, there are a lot of alleged facts in

8   the first 91 paragraphs.  The question is trying to figure out

9   which ones apply to which counts, and then trying to understand

10  how the counts are different.

11      MR. WOODWARD:  Well, and, sure enough, Rule 7 permits

12  the adoption of allegations contained elsewhere in an

13  indictment.  But it -- it does not sanction a shotgun pleading

14  which is what this is.  Now, the Special Counsel's Office says

15  that there is not case law to support our theory with respect

16  to a criminal indictment, that that shotgun pleading has been

17  precluded only in the context of civil indictments.  Yet as

18  we -- as we make reference in our -- on our reply brief,

19  actually, the same -- the same theories that give rise to

20  precluding a shotgun pleading in a civil context apply equally

21  in the criminal context.  The rule is the same in civil court

22  as it is in criminal court.

23      And so, you know, the Special Counsel's Office is

24  correct; they didn't need to bring a speaking indictment in

25  this case, but they did.  And that's their prerogative.  And

1   now they're stuck with the complications that arise from

2   pleading the case in this way, and that -- that should not be

3   to the detriment of these defendants.  They are entitled to a

4   well-pleaded indictment.  And that's not what we have here.  It

5   is confusing.

6         THE COURT:  Okay.  I get it.  I understand your general

7   concerns.  But just drilling down into Counts 35 and Count 37,

8   what are -- what do you say are the specific issues, if any?

9         MR. WOODWARD:  How did Mr. Nauta conceal boxes?  How

10  did Mr. Nauta know that they --

11        THE COURT:  But those are all sort of questions for the

12  trier of fact to develop at trial.  What is wrong, from a

13  pleading perspective, in your view?

14        MR. WOODWARD:  Because, as Your Honor pointed out, the

15  elements of the offense required knowledge -- allegations of

16  knowledge of these things.  We can't simply say that he -- that

17  he concealed boxes, that he -- that they contained documents

18  with classification markings, and -- and not provide any

19  explanation for why that's true, not when we engage in a

20  speaking indictment process like we did here, where we have

21  voluntarily undertaken to fulfill, to provide 90 or a hundred

22  and whatever counts.  Then it becomes incumbent to assist

23  Mr. Nauta and his co-defendants in understanding exactly what

24  crimes they're alleged to have committed.

25        THE COURT:  Okay.  So I think what I heard you say was

1   that because there is no allegation in the indictment that

2   Mr. Nauta knew that the boxes contained documents with

3   classification markings, that it doesn't state an offense.

4   What exactly are you saying?

5           MR. WOODWARD:  How can he have corruptly concealed a

6   record with the -- with the intent to impair the object's

7   integrity and availability for use of an official proceeding

8   without any knowledge of what was in the box at all?

9           THE COURT:  Well, does it matter whether he knew what

10  was in the boxes or whether he knew that what was in the boxes

11  was the subject of the subpoena?  Could it have just been

12  anything else, stickers, and it doesn't really matter

13  whatsoever?

14          MR. WOODWARD:  Well, that's -- that's the question,

15  Your Honor.  It may not matter or it may --

16          THE COURT:  Well, if it doesn't matter, then your

17  knowledge argument fails.

18          MR. WOODWARD:  If it doesn't matter what was in the

19  boxes -- because, presumably, the Special Counsel's Office is

20  going to argue that Pinkerton liability means that if he moves

21  the boxes at the direction of a coconspirator for the purpose

22  of aiding that coconspirator in committing another crime,

23  they've satisfied their obligation.

24          But that's not what the indictment says.  The

25  indictment says Mr. Nauta hid and concealed boxes that

1    contained documents.  But it's not clear as to what he was

2    hiding and concealing because he doesn't know, according to the

3    indictment, what's in the boxes.

4            THE COURT:  Okay.  What about -- I think you said

5    something about his knowledge or lack of knowledge of the

6    official proceeding.  It's correct that he doesn't need to know

7    the specifics of the proceeding; right?

8            MR. WOODWARD:  That's correct.  But there has to have

9    been an official proceeding that applies under the statute.

10           THE COURT:  And there -- there was, as alleged --

11           MR. WOODWARD:  As alleged.

12           THE COURT:  -- via the grand jury subpoena.

13           MR. WOODWARD:  As alleged -- as alleged, the official

14   proceeding was the grand jury's investigation.  But we submit

15   that's simply a mischaracterization of what was actually

16   happening here; that that's bootstrapping.  And, again, that's

17   implicating the PRA motion that Former President --

18           THE COURT:  Okay.  But just looking at the pleadings.

19           MR. WOODWARD:  Just looking at the pleadings, that is

20   what is alleged, but I don't think that the Court can look at

21   pleadings in such a vacuum, given what we know in the context

22   of the other motions that have been brought.

23           THE COURT:  All right.  Anything else you want to add

24   on Count 37?

25           MR. WOODWARD:  Nor Count 35, Your Honor.

1          THE COURT:  That's what we're talking about right now

2    is Counts 35 and 37.

3          MR. WOODWARD:  Yeah.  No.  I think that the -- the

4    arguments apply equally as to Counts 35 and to 37.

5          You know, 37 is somewhat amplified by virtue of the

6    fact that it is a 1001 charge.  And it's not clear, again, from

7    the face of the indictment, it's not clear how Mr. Nauta is

8    concealing or otherwise not disclosing information and to whom,

9    right?  The general allegations of this superseding indictment

10   are realleged.  I suppose the Special Counsel's Office may

11   argue that, in not testifying before the grand jury, that he

12   had moved boxes in the days leading up to Trump Attorney 1's

13   search, that he -- that he concealed information from the grand

14   jury.  But that's a speculation that we're making based on the

15   benefit of discovery, and not from the face of the indictment.

16         THE COURT:  Okay.  Just in terms of -- you make this

17   argument in the motion about just the repeated allegations.

18   Can you explain what you mean?  Which counts do you say are

19   functionally the same?

20         MR. WOODWARD:  Well, each of the counts, from

21   Counts 34, 35, 36, 37, all allege some combination of

22   concealing, misleading, withholding.  I think those

23   verbs -- one of those verbs is in each of the counts

24   referenced.

25         THE COURT:  So do you know as a factual matter what is

1    different between 34, 35, 36, and 37?

2            MR. WOODWARD:  I don't think there is any difference,

3    as a factual matter, with respect to those counts.  I think

4    what the Special Counsel's Office will tell us is that they're

5    not precluded from bringing multiple charges that --

6            THE COURT:  For the same -- sorry.  I cut you off.

7            MR. WOODWARD:  You're welcome to do that, Your Honor.

8    It's --

9            THE COURT:  Well, just finish your answer.

10           MR. WOODWARD:  That criminalize the same conduct.

11           And that the elements of each of these offenses are

12   different under Blockburger and, therefore, this is not

13   "multiplicitous."  You know, you're right.  In part and parcel,

14   what we're arguing is that that is an extremely technical

15   reading of these statutes and was not the intent of

16   criminalizing behavior that happened to overlap as between

17   1512(b)(2), (C)(1), 1519, and, of course, 1001.

18           THE COURT:  Okay.  Thank you.

19           MR. WOODWARD:  Yeah.

20           THE COURT:  Let me hear from Mr. Bratt on these counts

21   that we've been talking about, 35 and 37, and, also, just my

22   general question about what is different from an elemental

23   standpoint between those four counts, because they look awfully

24   similar.

25           MR. BRATT:  I mean, the underlying -- it all arises out

1      of the same underlying conduct, but --

2          THE COURT:  Okay.  So what -- can you just pinpoint,

3      from an elements perspective, what is different, which word is

4      different?  What is making these different, if I were to break

5      out the elements for each of them?

6          MR. BRATT:  Right.  So in Count 34 there are two

7      different mens reas that could be applicable; one is the

8      engaging in misleading conduct, the other is corruptly

9      persuading or attempting to corruptly persuade.  And then there

10     is the different activity that is in the count as to

11     1512(b)2(B).

12         THE COURT:  Okay.  So then we jump to 35.  And now I

13     have the same thing.  "Corruptly conceal."

14         MR. BRATT:  Corruptly conceal, right, which is again --

15         THE COURT:  Is that the same thing as what you just

16     said in 34?

17         MR. BRATT:  No.  The elements --

18         THE COURT:  How is it different?

19         MR. BRATT:  The elements are -- are slightly different.

20         THE COURT:  But in what way?  In what real way that

21     anybody could ever make sense of?

22         MR. BRATT:  In the way that the Court will instruct.  I

23     mean, the Court will give a 1519 instruction.  The Court will

24     give a 1512(b)(2)(A) instruction.  The Court will give a

25     1512 --

1    THE COURT:  Well, I know you are saying that, but it

2    just -- real people have to decide these issues.  And so you're

3    saying knowingly corruptly, corruptly conceal, it's all the

4    same general adverb.

5    MR. BRATT:  So I think, then, the Court has a choice.

6    We think we appropriately charged different violations of these

7    statutes.  We think that we did not charge them in a

8    duplicitous fashion.  And it was entirely appropriate to charge

9    the three -- the three parts of 1512 and the conspiracy part,

10   and to charge 1519, and to charge the 1001 scheme to conceal.

11   THE COURT:  Okay.

12   MR. BRATT:  They're all -- they are all separate --

13   THE COURT:  They are definitely separate statutes.  So

14   if you were to just help me understand the elemental

15   difference -- I think what you are saying is it's in the

16   mens rea.

17   MR. BRATT:  Well, partially.  Because for --

18   "corruptly" applies in -- it applies in all three of the 1512

19   provisions.  But also in 1512(b)(2) -- (b)(2)(A), the jury

20   could also find that the person engaged in misleading conduct.

21   So there is a -- there are two different ways that the statute

22   could be violated.  So that is a mens rea difference.

23   THE COURT:  Okay.

24   MR. BRATT:  In terms of 36, you have "knowingly

25   conceal."  It does not have the "corruptly" language.  So there

1    are some differences in the mens rea.  There are some

2    differences in -- once you get beyond the mens rea, the conduct

3    that violates the statute; that is what separates each of these

4    counts.

5         THE COURT:  But the conduct that separates the statute,

6    how is that different across the spectrum of four counts?

7         MR. BRATT:  So it is described differently in each of

8    the -- each of the counts.  So you have, in (b)(2)(A), "Intend

9    to cause and induce a person to withhold a record document or

10   other object."  You have, in Count 35, 15(c)(1),

11   "Doing -- doing the act with the intent to impair the object's

12   integrity or availability for use in official proceeding."

13        For Count 36, you have, again, "Conceal, cover up,

14   falsify, make a false entry in a document, record, or tangible

15   object with the intent to impede, obstruct, or influence the

16   investigation and proper administration of any matter within

17   the jurisdiction or department -- or agency of the

18   United States."

19        So those are all different.  They're both different

20   mens reas amongst the three statutes, different -- and I'm

21   searching for the right word -- different, sort of, for lack of

22   a better word, object of how that mens rea is being applied.

23   And the conduct that was being -- that that --

24        THE COURT:  This seems very similar to me, but I take

25   your point.  I mean, we have "attempting to persuade, to hide

1    and conceal docs from a federal grand jury, moving boxes."  And

2    then that comes up again, "hiding and concealing boxes that

3    contain documents so attorney wouldn't see and produce."  And

4    then the same thing, "hiding and concealing and covering up

5    possession with markings."

6            But, anyhow, I understand your point.  These are all

7    separate statutes.  They have slightly different mens reas, and

8    so it's all sufficient.

9            MR. BRATT:  That's correct, yes.

10           THE COURT:  Okay.

11           MR. BRATT:  Yes.

12           THE COURT:  All right.  It's hard.  I think it's going

13   to be confusing for somebody to try to really detect what's

14   actually different between these and trying to make sense of

15   the mens reas that overlap significantly, especially given the

16   conduct that is repeated over the course of the four counts.

17   But that will be a project to -- to exercise with care as we

18   proceed further.

19           Let me understand your response to Mr. Woodward's

20   suggestion as to Count 35, that because there is no allegation

21   in the indictment that either of the co-defendants knew that

22   the boxes contained documents with classification markings,

23   that there is a, I guess, a failure to state an offense.

24           MR. BRATT:  Correct.  And I think we discussed this at

25   the April hearing with respect to Mr. De Oliveira's challenge

1    to, I think it's Count 41.

2         THE COURT:  Yes.

3         MR. BRATT:  And I think the Court agreed with us that

4    under "Friske" or Friske that what we have to show is that they

5    had knowledge of a proceeding.  They don't have to have

6    detailed knowledge of the proceeding, but they have to have

7    knowledge of the proceeding.  They do not have to have

8    knowledge that there were documents with classification

9    markings in the boxes.  And I think we've established that.

10        THE COURT:  Do they have to -- so they don't -- so

11   in -- on your theory, they do not have to have any knowledge

12   that there were documents with markings in the boxes; is that

13   correct?

14        MR. BRATT:  That's correct.

15        THE COURT:  Okay.  And is there any allegation in the

16   indictment that they knew that in the boxes, there were

17   documents with classification markings?

18        MR. BRATT:  So we alleged that, at least in one

19   instance, Mr. Nauta came into the storage room and saw a

20   spilled box.  And there was a very visible --

21        THE COURT:  And when did that -- when did that take

22   place again, allegedly?

23        MR. BRATT:  I'm going to have to look in the

24   indictment.  That was, I'm going to say, December/January,

25   December 2021, January 2022, in that time frame.

 1          Let me just...

 2          THE COURT:  Okay.  So if -- if -- if the theory is they

 3     don't need to know at all that there are documents with

 4     classification markings in the boxes, then what is the shared

 5     unlawful plan for purposes of Count 33?

 6          MR. BRATT:  The shared unlawful plan is to obstruct --

 7     for lack of a better word, to obstruct the investigation.

 8          THE COURT:  And that has no bearing whatsoever on the

 9     existence of classification markings?  It could have been

10     anything under the sun?

11          MR. BRATT:  As long as we can prove that they were

12     aware that there was a proceeding and that there was a request

13     to subpoena in relation to that proceeding, we don't have to go

14     more granular than that.

15          THE COURT:  But then, I guess, the trouble there is

16     that you have a purpose allegation, and then have you a manner

17     and means that picks up on the purpose.

18          MR. BRATT:  Yes.  And --

19          THE COURT:  So you have the purpose of the conspiracy

20     was for Trump to keep classified documents he had taken with

21     him from the White House and to hide and conceal them from a

22     federal grand jury.

23          Then you get to the manner and means paragraph, which

24     says, "The manner and means by which the defendant sought to

25     accomplish the objects and purpose of the conspiracy

1    included..."

2        And so I guess what I'm hearing is we should just, sort

3    of, close our eyes to anything related to documents with

4    classification markings because none of it is necessary?

5        MR. BRATT:  So -- and I know in one of our sealed

6    proceedings we had a discussion about the purpose language and

7    whether that is actually motive as opposed -- and we discussed

8    that in our brief, and we cited to the Third Circuit case,

9    Baroni.  And that's obviously going to be a discussion we are

10   going to have at a charging stage.

11       THE COURT:  Because normally -- my understanding of

12   conspiracy is that you have to join in that unlawful plan.  You

13   have to have a mutual purpose.  And if the co-defendants have

14   no knowledge of the existence of documents with markings in

15   them, then what is the joint purpose?

16       MR. BRATT:  So, again -- and, you know, this will

17   probably be further -- further briefed.  And I think, actually,

18   Your Honor may have given an instruction in, I think, the

19   healthcare fraud case that explained purpose being motive as

20   different from --

21       THE COURT:  Carver, are you talking about?

22       MR. BRATT:  I think so, yes.

23       THE COURT:  Okay.

24       MR. BRATT:  And so, you know, what the shared goal was

25   here, the shared scheme that they had was to obstruct the

1   investigation.  And we have to show that they knew that there

2   was an investigation.  We have to show --

3          THE COURT:  But the investigation -- the investigation,

4   of course, is seeking things.  What things?  They're seeking

5   documents with markings.  So they -- but they don't have to

6   know that?

7          MR. BRATT:  They don't.  They have to know that there

8   was an investigation, that the former president was somehow a

9   subject of that or somehow involved in that, and that they were

10  asked to engage in conduct that obstructed that investigation

11  and that they agreed to do so.

12         THE COURT:  So the case law on conspiracy that talks

13  about having that shared unlawful purpose, you're -- that's not

14  applicable?

15         MR. BRATT:  Not in terms of -- when you define

16  "purpose" as motive, that they don't have to have -- share the

17  motive that the former president did -- had, as set forth in

18  paragraph 96.

19         They do have to have the shared, for lack of a better

20  word, purpose of obstructing the investigation, yes.

21         THE COURT:  All right.

22         MR. BRATT:  They don't have to share his motive.

23         THE COURT:  It's somewhat curious, but all right.

24         Any rebuttal on this point, Mr. Woodward, on Count 33?

25         MR. WOODWARD:  Your Honor, I would observe that we

1    have -- we have gotten ourselves into Count 33 and away from

2    Counts 34, 35, 36, 37.  And so our principal argument was that

3    I think this analysis is somewhat different in a conspiracy

4    context, where we agree with Your Honor that they have to join

5    in this scheme, there has to be an overt act in furtherance.

6         THE COURT:  Well, there's no overt act requirement in

7    this case.

8         MR. WOODWARD:  Forgive me --

9         THE COURT:  My understanding is that that's incorrect.

10        MR. WOODWARD:  Forgive me, Your Honor.

11        With respect to the substantive charges under 1512,

12   there is no allegation in the indictment -- and I think that --

13   I hear the Special Counsel's Office to be conceding that

14   they're not alleging that either Mr. Nauta or -- well, let's

15   stick with Mr. Nauta -- was aware of how he was obstructing

16   this investigation.  And -- and so --

17        THE COURT:  Well, I don't know if they've said that.  I

18   think what they've said is there's no allegation in the

19   indictment that Mr. Nauta knew that the boxes contained

20   classification-marked documents except for the photograph

21   situation, post whenever that happened.

22        MR. WOODWARD:  Yes.  Okay.

23        THE COURT:  Okay.

24        MR. WOODWARD:  You are right, Your Honor.

25        And so without alleging that he knew that the documents

1    contained classification markings within the boxes, how is he

2    on notice that that is -- that the criminal obstructive act

3    that he's engaging in in [sic] violation of the statute?

4         We agree with Your Honor, that for him to interfere

5    with an official proceeding, that being the grand jury

6    proceeding and the grand jury's request for things, he has to

7    know what the things are.  He has to know that his actions are

8    affecting those -- those things.  And in the substantive

9    counts, that's -- that's not alleged.  And I don't hear any

10   argument to the contrary, that that is what they're alleging.

11        Your Honor, we would make one additional point with

12   respect to the multiplicity issue that arises in Counts 34, 35,

13   36, and 37, and that's our citation to Yates, both in our

14   underlying briefing and our reply briefing, in which the

15   Supreme Court admonished prosecutors from pursuing an

16   aggressive interpretation of statutes.  Yates dealing, of

17   course, with a 15 -- a 1517 or 1519 statute, and ultimately

18   overturning a conviction because of -- of aggressive

19   interpretation.

20        Now, it's a -- it's a parallel that we're making in a

21   very different context, which is that here they have these

22   multiple charges, 1512(b)(2), 1512(c)(1), 1519.  And our point,

23   as we make in our briefs, is that they should be forced to

24   choose between Counts 34 and 35, between Counts 36 and 37.

25             THE COURT:  Even though they're separate statutes and

1    they have slightly different wording and --

2          MR. WOODWARD:  That's an overly aggressive

3    interpretation, and the Supreme Court has admonished against

4    that.  And so that's our position.

5          THE COURT:  Okay.  I understand your argument.

6          All right.  Let's make sure we're not overlooking any

7    other counts that you have challenged in your motion.

8          MR. WOODWARD:  We've challenged Counts 42 insofar as

9    the indictment fails to specifically allege false statements --

10   excuse me, not 42.  39.

11         The Special Counsel's Office underlines certain

12   statements that they claim are false, that they will prove are

13   false.  Our -- our objection to the way that the indictment,

14   excuse me, is framed is, again, a technical one.  They sort

15   of -- they sort of interchangeably reference "residence" with

16   "Pine Hall" or --

17         THE COURT:  Is that the issue, ultimately, this

18   confusion between "residence" versus "Pine Hall"?  I'm trying

19   to understand what is really going on here.

20         MR. WOODWARD:  That's our -- that's our issue with the

21   indictment, is that it in -- nowhere is it clear that

22   Mr. Nauta's responses are actually false.  And as the Court is

23   aware, if they are true statements, then that changes the

24   nature of the law as applicable to him.

25         Where the boxes -- where the boxes were that he is

1   being asked about is critical, and where the questions being

2   asked are vague and the answers being given relate to the vague

3   questions, this circuit has held that that's an insufficient

4   pleading with respect to --

5        THE COURT:  But do those cases actually dismiss counts,

6   dismiss 1001 counts on the basis of vague questioning?

7        MR. WOODWARD:  I believe they do, Your Honor.  I

8   believe that in --

9        THE COURT:  While you're thinking about that, the first

10  half of the questioning, does this concern the boxes that were

11  delivered in January of 2022?

12       MR. WOODWARD:  Yes, Your Honor.

13       THE COURT:  And is that the same for the remainder of

14  the excerpt?  I'm just -- I'm trying to understand if this

15  whole exchange concerned boxes in January or if it's -- if it's

16  related to movement of boxes after that.

17       MR. WOODWARD:  I don't believe -- I don't believe it

18  relates to boxes after January.  I believe the entire exchange

19  related to the -- the 15 boxes that are provided to NARA in

20  January.  But I'm sure my colleagues will correct me if I'm

21  mistaken on that.

22       THE COURT:  So when you use the question in the middle

23  of 47 of the superseding indictment, it says:  "Do you have any

24  information that could -- that would -- that would help us

25  understand, like, where they were kept, how they were kept,

1  where they were secured?," that's a reference to the -- to

2  which boxes?

3          MR. WOODWARD:  The boxes that were provided to NARA in

4  January of 2022.

5          THE COURT:  Okay.  All right.  Now, so why wouldn't

6  this just be an issue for a trier of fact, that they could

7  determine if there was, in fact, a false statement?

8          MR. WOODWARD:  Because -- because in -- in this

9  District, the Eleventh Circuit has reversed a Court's failure

10  to dismiss an indictment that lacks essential elements.  And

11  where the question and answer are so vague that it is unclear

12  how the -- the answer itself is false, then this -- the

13  prosecutors have failed to plead a 1001 charge.

14          THE COURT:  Okay.  Let's stop there and turn back to

15  Mr. Bratt, just on this last remaining portion.  I think we

16  still have a little bit more to go.  But for now, Mr. Bratt,

17  we're talking about Count 39.

18          MR. BRATT:  Correct, Your Honor.  And I think the Court

19  essentially has ruled on this in its ruling on

20  Mr. De Oliveira's attack on Count 42.  These are all jury

21  issues.  I believe the cases that Mr. Woodward is citing are

22  cases where a conviction was overturned.  But, you know,

23  whether or not, as he alleges in the brief, the answers are

24  literally true, whether or not the questions are sufficiently

25  clear, those are all arguments he can make to the jury.  We

1    obviously believe that, given all of the evidence in the case,

2    that Mr. -- we can establish that Mr. Nauta understood the

3    questions he was asked, and that his answers were false.

4         THE COURT:  And then, just so I understand, this 1001

5    is based only on the voluntary FBI interview in May; correct?

6         MR. BRATT:  Correct.

7         THE COURT:  Okay.  Now, as far as the question that

8    is -- that is referenced on page 46, where it says, "Does

9    any -- are you aware of any boxes being brought to his home" --

10        MR. BRATT:  Yes.

11        THE COURT:  -- are those boxes that went straight from

12   the White House to Mar-a-Lago, or is that some other set of

13   boxes?

14        MR. BRATT:  So all the boxes originated in the

15   White House and came down to Mar-a-Lago.

16        THE COURT:  So it went from the White House straight to

17   Mar-a-Lago?

18        MR. BRATT:  And as laid out in the indictment, they

19   had, sort of, their journey within Mar-a-Lago before they ended

20   up first in the storeroom.  And as to the 15 or so -- the 15

21   that were returned to NARA, brought up to the residential

22   suite.

23        THE COURT:  Okay.  Just so -- so just so I understand,

24   the boxes that are the subject of this indictment went straight

25   from the White House to Mar-a-Lago?

1          MR. BRATT:  Correct.

2          THE COURT:  Okay.  All right.  Okay.  So your point is

3     similar to the De Oliveira arguments that I previously

4     rejected, that all these issues should just be addressed by the

5     jury?

6          MR. BRATT:  Correct.

7          THE COURT:  Okay.

8          MR. BRATT:  There is nothing defective in the way in

9     which it's -- it's charged.

10         THE COURT:  Okay.  All right.  Thank you.  I think

11    that's all for now for this count, 39.

12         So let's turn back to Mr. Woodward.  And I apologize

13    for the musical chairs.

14         Mr. Woodward, now I think we have covered all the

15    substantive counts except for 41.

16         MR. WOODWARD:  I misunderstood the Court's question

17    with -- with -- you asked:  Can you cite a case in which an

18    indictment was dismissed, and I -- and I said yes.

19         And I -- I was mistaken.  I think I agree with

20    Mr. Bratt.  Those were all cases in which a conviction was

21    overturned.  And so, first, I apologize for that

22    misunderstanding and that misstatement.

23         But what I would say is, those cases are, nevertheless,

24    applicable where the argument is that the indictment is -- and

25    we have to take the indictment on its face -- where the

1    indictment is failing to make out a charge of a false

2    statement, given that the falsity of the statement isn't clear,

3    again, on its face.  And where it's uncertain --

4         THE COURT:  But it's alleged that it is false in

5    paragraph 112.

6         MR. WOODWARD:  Well, it says that it's false.

7         THE COURT:  And I have to accept that.

8         MR. WOODWARD:  Your Honor, I don't think you do have to

9    assume that every statement in here ignores all of the other

10   statements in context.  When we look at the indictment as a

11   whole and the -- the differing ways in which we're referring to

12   his home, his residence, Pine Hall, that all adds ambiguity to

13   the indictment as a whole that makes it unclear as to Mr. Nauta

14   what he is alleged to have done wrong.

15        Now, the prosecutors can claim that when they come to

16   court and they present evidence, that they will prove that that

17   statement was false based on what they can prove Mr. Nauta knew

18   at the time or what have you, but that's not where we are right

19   now.  Where we are is understanding from the indictment what he

20   is alleged to have done.  So I won't belabor the point, but I

21   just -- I wanted to apologize for the misstatement and make

22   that clarification.

23        THE COURT:  Okay.  So, now we are at Count 40; correct?

24        MR. WOODWARD:  We are.  And we grouped Count 40 and 41

25   together, and I'm -- I'm happy to do the same.

1     THE COURT:  So let's treat those together.

2     MR. WOODWARD:  And the issue with Count 40 and 41 is

3  similar to that of Count 38, which is that there is no criminal

4  acts alleged to have occurred.  What the indictment pleads is

5  that there was an effort to conceal -- that there was an effort

6  to "knowingly corruptly persuade and attempt to persuade

7  another person to destroy, mutilate, conceal an object."  41 is

8  "corruptly alter, destroy, mutilate and conceal a record."  But

9  the indictment acknowledges and the Special Counsel's Office

10  has conceded that nothing, in fact, is destroyed.  There is no

11  destruction of any video evidence.

12     THE COURT:  But it's an attempt.

13     MR. WOODWARD:  It is an attempt insofar as there is a

14  conversation alleged to have occurred -- we dispute that -- as

15  between two people.  But that's not a criminal act.  It is not

16  criminal, for example, to ask about the purchase of drugs

17  and then not to purchase the drugs.

18     They approach a third party.  And the allegation,

19  specifically, is that that third party says that the video in

20  question cannot be deleted.  Period.  There -- there is no

21  effort.  There is no -- there is no action --

22     THE COURT:  Well, there is a little bit more, if you go

23  back.  I'm not sure where it is, but there is some --

24     MR. WOODWARD:  Page 27, I think you may be referencing,

25  of the indictment; at least the beginning of the attempt to

1    delete security camera footage.

2         But all of this discussion about whether or not

3    security camera footage can be deleted, that's not criminal in

4    and of itself.  The discussion of criminal acts is not itself a

5    crime.  Other than "speak to Trump Employee 4 about" -- other

6    than allegedly speaking to Trump Attorney 4 about the

7    possibility of deleting the footage, there is -- there

8    is -- there is, in fact, no allegation that any effort was

9    taken.  There is a lot of surplusage in here about the comings

10   and goings of people on the weekend in question, but not that

11   anybody did anything of any substance in order to affect the

12   deletion of video.

13        There is no discussion of accessing the server.  There

14   is no discussion of understanding the technical -- what would

15   be required to delete the video.  There is simply a discussion

16   about deleting video.  Trump Employee 4 says it's not possible,

17   and they go about their business.

18        And, in fact, what is crucial to this -- to the failure

19   of these counts is that no video, in fact, was deleted.  They

20   had a conversation.  The video can't be deleted.  Stop.

21        THE COURT:  But if you read this as just the attempt to

22   persuade another person, why is that not adequately alleged?

23        MR. WOODWARD:  Well, now it's an attempt to attempt.

24        THE COURT:  Well, that's what the statute permits,

25   doesn't it?  Attempt to persuade another person under

1    1512(b)(2)(B)?

2            MR. WOODWARD:  With the intent to cause an -- that's

3    not how I read the statute.  I take -- I take Your Honor's

4    point.

5            THE COURT:  1512(b)(2)(B).

6            MR. WOODWARD:  Right.  1512(b)(2)(B).

7            THE COURT:  Attempts to do.  So it's an attempt to

8    persuade another person to impair an object for use.

9            All right.

10           MR. WOODWARD:  That's not what I read the Special

11   Counsel to be arguing, but I will give that some thought.

12   The -- it would -- that would seem to have too many layers

13   as -- as required -- that would seem to criminalize any

14   otherwise innocent conversation that may be -- if the act is

15   undertaken that may be -- that may itself be criminal.

16           And so, if the Special Counsel's position is that

17   1512(b)(2)(B) stands for the proposition that if I ask a

18   colleague whether they are able to destroy evidence and they

19   say no, and that's the end of the conversation, and I have

20   committed the offense under 1512(b)(2), then you're right,

21   perhaps my argument would need to be different, that that is

22   not a -- a constitutional reading of 1512.

23           THE COURT:  12.

24           MR. WOODWARD:  1512(b)(2)(B).

25           THE COURT:  Okay.

1          MR. WOODWARD:  Because that's an overly expansive

2     interpretation of the statute.  But that's -- that's not the

3     argument we made now; that's not what I hear the Special

4     Counsel's Office to be arguing in its --

5          THE COURT:  Okay.  Well, I will see what Mr. Bratt's

6     thoughts are on Count 40.

7          Is your argument the same for Count 41?

8          MR. WOODWARD:  Yes, Your Honor.  That in both counts

9     we're alleging, as a criminal act, speaking with a third party

10    about the possibility of deleting video evidence and that --

11    that nothing is, in fact, done in furtherance of that idea.

12    And that it cannot be that simply having a conversation about

13    the deletion of video footage is itself a violation of

14    1512(b)(2)(B) or 1512(c)(1).

15         THE COURT:  Factually, the basis for Counts 40 and 41,

16    is there any difference to your understanding?

17         MR. WOODWARD:  Not to my understanding, Your Honor.

18         THE COURT:  Okay.  All right.  Now before you sit down,

19    let's just discuss -- you have an array of other criticisms

20    that are laid out in chart format in your motion.  I have a few

21    questions.

22         MR. WOODWARD:  Yes.  I think I have -- I think I have

23    addressed the shotgun pleading criticism, but I'm happy to

24    answer questions.

25         THE COURT:  That's not my -- it's the charts that

1    you -- with paragraphs, and then you have a table.

2          MR. WOODWARD:  Yes, Your Honor.  That's in our opening

3    brief.  Beginning on page 5, we have gone through and

4    highlighted all of what we submit are statements that amount to

5    mere surplusage and are precluded by Rule 7(d) of the Federal

6    Rules of Criminal Procedure.  There is simply no need for the

7    repeated -- I'm trying to be artful -- characterization of the

8    conduct that is alleged here.  And I think what this discussion

9    bears out is that it has amounted to causing confusion about

10   the criminal acts that are actually being charged.

11         Mr. Bratt concedes they weren't required to bring a

12   speaking indictment.  They did so, and they now must bear the

13   consequences of the same.

14         THE COURT:  Okay.  I have just a couple of specific

15   questions.  You say there was improper hearsay about Nauta in

16   paragraph 28.

17         MR. WOODWARD:  Yes.

18         THE COURT:  Can you explain what you mean.

19         MR. WOODWARD:  You --

20         THE COURT:  This is an exchange between two Trump

21   employees.  What's your argument?

22         MR. WOODWARD:  I'm sorry, Your Honor.  I don't

23   remember, but bear with me one second.

24         THE COURT:  Okay.  Well, if you don't remember, then

25   you should have been prepared to address this.

1          MR. WOODWARD:  Yes, Your Honor.  I --

2          THE COURT:  Okay.

3          MR. WOODWARD:  -- I fully recognize that.

4          THE COURT:  Next would be, then, the quotations from

5    content that you say is protected by the former president's

6    attorney-client privilege.

7          MR. WOODWARD:  I think it was -- we submit that it was

8    wholly improper to include potentially privileged

9    communications in the indictment.  That -- whether those

10   communications ultimately are determined not to be privileged

11   for purposes of a trial in this matter is a -- is a separate

12   and distinct argument from whether they could be disclosed as

13   part of the prosecutors' investigation in this case.

14         THE COURT:  But, of course, they would say they

15   obtained a court order that authorized the piercing of the

16   privilege, and, therefore, they were free to use that

17   information in an indictment.

18         MR. WOODWARD:  And we would submit that -- that, A, was

19   not litigated in this district.  That goes back to our argument

20   this morning about whether it was permissible to disclose grand

21   jury materials without getting permission from the district

22   court in which those materials were garnered; and B, that the

23   standard for piercing attorney-client privilege at the

24   investigatory stage is different from in a public forum like

25   this.

1          THE COURT:  Okay.  And then some of this other stuff

2     that you would take issue with, even assuming it were viewed as

3     unduly prejudicial, perhaps would the solution be courts have

4     discretion whether to give juries a copy of the indictment

5     during deliberations?

6          MR. WOODWARD:  If it were concluded that it was unduly

7     prejudicial, then I think where we again are, is not about

8     "unduly prejudicial to the jury," but it's unduly prejudicial

9     to Mr. Nauta and should not have been presented to the grand

10    jury as such.

11         THE COURT:  Okay.  All right.  Anything further?  I

12    will hear from Mr. Bratt, and then we will be winding down.

13         And then, perhaps, I will give you just a couple of

14    minutes, because this is your motion joined by the other two

15    defendants.  So, okay.

16         MR. WOODWARD:  Thank you, Your Honor.

17         THE COURT:  Thank you.

18         Mr. Bratt, I want to make sure I keep track of where we

19    were.  This last piece concerned Count 40, I believe.

20         MR. BRATT:  40 and 41, Your Honor.

21         THE COURT:  Okay.

22         MR. BRATT:  Yes.  So our response to that is similar to

23    the response with respect to the false statement challenges

24    that they're making.  What Mr. Woodward articulated to the

25    Court may turn out to be a persuasive closing argument, but

1    those are all factual issues for the jury.  The indictment does

2    not charge people with having a conversation or merely

3    discussing.  Our view is that if you take all the facts that we

4    have detailed in the indictment, plus whatever additional

5    evidence on the activities particularly Mr. Nauta took with

6    respect to the video footage, that we can convince a jury that

7    the defendants violated what -- violated the provisions of 1512

8    that are set forth in Counts 40 and 41.

9         THE COURT:  Going back to the statutory text for a

10   moment, the 1512(b)(2)(B).

11        MR. BRATT:  Yes.

12        THE COURT:  Am I correct how I -- how I attempted to

13   jump through the language to get to the charge?

14        MR. BRATT:  Yes.

15        THE COURT:  It would be -- how do you get "knowingly

16   corruptly"?  "Knowingly corruptly persuade" and then "attempt

17   to persuade," can you explain that to me?  Again, I'm having

18   trouble with these multiple mens reas stacked on top of each

19   other with the statutory language.

20        MR. BRATT:  So we get it from the statute.  And we --

21        THE COURT:  Because this says, "Whoever knowingly uses

22   intimidation, threatens" --

23        MR. BRATT:  And I guess --

24        THE COURT:  -- "or corruptly persuades," so does

25   "knowingly" go with the "corrupt" portion?

1        MR. BRATT:  So our -- having once been an English

2    major, the way I read this is that the "knowingly" modifies the

3    "corruptly" in this sentence.  My grammar may be off, but --

4        THE COURT:  Okay.  So we bring the "knowingly" over --

5        MR. BRATT:  Right.

6        THE COURT:  -- and we get "to."  Okay.  And then keep

7    going.

8        MR. BRATT:  And then "knowingly corruptly persuades

9    another person or attempts to do so."  And our theory here is

10   an attempt to -- and I don't want to mangle the language, so I

11   will go back to the indictment and stop looking at the

12   statute -- "to persuade another person with intent to cause and

13   induce any person to alter, destroy, mutilate, and conceal an

14   object with intent to impair the object's integrity and

15   availability for use in the official proceeding."

16       THE COURT:  Okay.  And is this intended to say that all

17   three defendants made the request of Trump Employee 4?

18       MR. BRATT:  So in this particular count, Former

19   President Trump is charged as a principal.  He is also charged

20   as a coconspirator.  And as set forth in the indictment, the

21   two individuals that carried out the request were Mr. Nauta and

22   Mr. De Oliveira.

23       THE COURT:  Okay.  The paragraphs, the factual

24   allegation paragraphs that principally go to this charge are

25   which ones?

1       MR. BRATT:  So paragraph 74 through paragraph 87.

2       THE COURT:  Okay.

3       MR. WOODWARD:  I'm sorry, Your Honor.  I didn't hear

4   that.

5       THE COURT:  74 through 87.

6       Is that correct, Mr. Bratt?

7       MR. BRATT:  That's correct, yes, Your Honor.

8       THE COURT:  Okay.  Okay.

9       Okay.  What's your best case, I'm just curious, for

10  this concept of that you don't really need to know what the

11  grand jury wants, you just need to know that they want

12  something and that there is a grand jury?

13      MR. BRATT:  Give me one second, Your Honor.

14      So it is the Beach case, United States vs. Beach.  I

15  don't have the citation right at the tip of my fingers.

16      THE COURT:  Beach.  Okay.  That's an Eleventh Circuit

17  case?

18      MR. BRATT:  Yes, Your Honor.  Yes.

19      THE COURT:  Okay.  Spelled like "the beach, we go to

20  the beach"?

21      MR. BRATT:  Yes.  Common spelling.

22      THE COURT:  All right.  Okay.

23      Now, just -- just to handle the potpourri of -- of

24  criticisms of various paragraphs, I had a couple of questions

25  on -- on the hearsay --

1          MR. BRATT:  Yes.

2          THE COURT:  -- paragraph.  This is 28.

3          MR. BRATT:  Correct.

4          THE COURT:  What's your argument on that?

5          MR. BRATT:  Our argument is that it's admissible under

6     Rule 801(d) -- small (d), (2), capital (D) -- that these were

7     statements of agents of the former president made within the

8     scope of their employment.

9          THE COURT:  Okay.  In general, would you agree with the

10    proposition that inadmissible evidence shouldn't be contained

11    in an indictment?

12         MR. BRATT:  In general, I would.  And, again, I don't

13    think we've put anything in here that we believe is

14    inadmissible.

15         THE COURT:  Okay.

16         MR. BRATT:  The Court may, obviously, disagree at some

17    point, but we have theories for admissibility as to the facts

18    that are in the indictment.

19         THE COURT:  There is some suggestion in this -- this

20    breakdown of criticisms, for example, as to uncharged offense

21    allegations related, for example, to alleged discussions.  And

22    this, of course, is not a transmission case, it's a retention

23    case.

24         MR. BRATT:  Sure.

25         THE COURT:  So I would like to hear your argument on

1  why those allegations are included in the superseding

2  indictment.

3          MR. BRATT:  Yes.  So I have to get the paragraph that

4  they're referring -- paragraphs they're referring to.

5          THE COURT:  The chart says 6, and then 34 through 36.

6          MR. BRATT:  Yes.  The bulk of it's 34 through 36.

7          And so our theory of -- so first, for 34 and 35, we

8  believe that's direct proof of Count 32.  That's part of our

9  direct proof of Count 32.

10          THE COURT:  You mean for intent?

11          MR. BRATT:  Not just for intent; that the documents

12  that he showed that are at Bedminster --

13          THE COURT:  Okay.  Count 32.  Okay.

14          MR. BRATT:  That that's part of our direct proof in

15  conjunction with other --

16          THE COURT:  What about the other section that concerns,

17  I guess --

18          MR. BRATT:  36.

19          THE COURT:  -- 36 and --

20          MR. BRATT:  Right, the PAC representative.  So that

21  would be something we would be submitting to the Court as

22  Rule 404(b) evidence.

23          THE COURT:  Do you normally include 404(b) in

24  indictments?

25          MR. BRATT:  I have, yes.

1          THE COURT:  Okay.

2          MR. BRATT:  In fact, I once had a whole case that was

3   premised on Rule 404(b).  If we didn't get it in, we didn't

4   have a case.

5          THE COURT:  Typically, though, it comes in the form of

6   notice in a motion, not necessarily in the indictment itself.

7   And that's what I'm wondering.

8          MR. BRATT:  But I -- yes, I have done it before.

9          THE COURT:  Is that proper?

10          MR. BRATT:  Nobody said it was improper.  And,

11   particularly in the case of which I'm thinking, we could not

12   have proved the case without the 404(b).  If --

13          THE COURT:  Okay.  So just so I understand, the theory

14   of admissibility for paragraph 36, for example, would be under

15   a 404(b) rationale?

16          MR. BRATT:  Yes, that's correct.

17          THE COURT:  Okay.  What about the other various

18   allegations concerning just, the Mar-a-Lago in general --

19          MR. BRATT:  Yes.

20          THE COURT:  -- it being a club?  Is that actually

21   relevant to the retention counts?

22          MR. BRATT:  Yes, it is.

23          THE COURT:  Okay.  Explain.

24          MR. BRATT:  So first, the former president has

25   publicly -- and I believe there is also some references in the

1   pleadings that, essentially, Mar-a-Lago was a fortress; and so

2   no harm, no foul.

3          And so, one, it rebuts that defense.  But, two, we are

4   now in agreement with the defense --

5          THE COURT:  But, I guess, stop there for a minute.

6          It wasn't my understanding that indictments were really

7   intended to sort of preview and rebut any anticipated defense.

8          MR. BRATT:  Right.

9          THE COURT:  That's not generally the format and purpose

10  of an indictment.

11         MR. BRATT:  But I have a more important point.

12         THE COURT:  Okay.

13         MR. BRATT:  And the more important point is that, as

14  we've now discussed in defining National Defense information,

15  the potential for harm is part of what we're going to have to

16  show.  And so showing evidence of what the unauthorized

17  location was like and the ability for people to get improper

18  access to the -- to the documents is highly relevant.

19         THE COURT:  Explain the "potential for harm" argument.

20  Is that part of the elements on the 793(e)?

21         MR. BRATT:  Both sides have agreed that -- we didn't

22  agree much on our proposed jury instructions, but that if --

23         THE COURT:  Because I didn't see that in your

24  submission, that there was an intent -- was that -- was that

25  briefed that you -- that that element has now been concededly

1   added?

2          MR. BRATT:  Yes, yes.

3          THE COURT:  Okay.  Where is that and which filing?

4   Well, I guess that would be unfair to ask you for a docket

5   entry number, but --

6          MR. BRATT:  Right.  I mean, it is -- the Court asked

7   for proposed jury instructions, but we also have -- we

8   discussed it at one of the hearings in March and Judge Ellis'

9   opinion in Rosen.  And we -- the gloss -- the Morison gloss

10  that -- that has been adopted by several courts.  And

11  Your Honor asked me some questions about it.

12         THE COURT:  The answer at that time was, "We're not

13  sure."  So I -- "we're not sure if we're going to be seeking

14  that extra element."

15         MR. BRATT:  I wasn't -- it was kind of an odd answer.

16  But because this is an issue that comes up, we had wanted to

17  consult with the National Security Division.  But it was

18  certainly something that we've always had in mind as something

19  that we may have to prove.

20         THE COURT:  Okay.  Because I don't recall that being

21  added as an element in that excerpt, but I might have just

22  missed that.

23         MR. BRATT:  They have asked for it, and we included

24  that language in our proposal.

25         THE COURT:  In the written filing?

1          MR. BRATT:  Yes, yes.

2          THE COURT:  Okay.  All right.  So how many total

3    glosses, then, would there be added on the 793(e) counts?

4          You have the closely-held gloss --

5          MR. BRATT:  This is part of the definition of closely

6    held.  Or actually, it's not, I'm sorry.  It's closely held

7    that -- it would be easier if I had the instruction in front of

8    me.  I --

9          THE COURT:  Okay.

10         MR. BRATT:  I don't want to mangle it.

11         THE COURT:  I just want to make sure we stay fairly

12   close to what is in the statute.

13         MR. BRATT:  Yes.

14         THE COURT:  So, okay.  All right.  So any other

15   comments to make about the various items in the chart?  I don't

16   think I have anything else.

17         MR. BRATT:  No.  I mean, I think Your Honor picked up

18   on what is an important point.  This really is not something

19   the Court needs to decide now.  It is -- and the Court may or

20   may not decide to send the indictment back to the jury.  If, as

21   the trial comes out and the Court decides that the indictment

22   is going back to the jury, but there is something that we

23   didn't prove, that the Court then feels should not be in the

24   indictment, obviously we can address that then.

25         THE COURT:  Okay.  Thank you, Mr. Bratt.

1          It's 3:18.

2          Mr. Woodward, I want to give you five minutes or so to

3     wrap up, and then we will be in recess.

4          MR. WOODWARD:  Thank you, Your Honor.

5          I don't -- I hope we don't need five minutes.  I think

6     the Court understands our position.  I apologize for being

7     flat-footed with respect to the hearsay.  But the Court

8     understood what our objection was, that is inadmissible hearsay

9     as against Mr. Nauta.

10          And as a -- as a broad matter, you know, again, we

11     submit that your colloquy with the Special Counsel's Office

12     underscores our point that this indictment is including all

13     sorts of allegations unnecessary to establish the elements of

14     the offense, which, again, we submit aren't clear on the face

15     of the indictment to begin with.  And it's just overly

16     complicating things.  Whether this goes to the -- whether the

17     indictment goes to the grand jury or not is a separate issue

18     from whether or not it meets the pleading standard of Rule 7.

19          And, you know, where the Special Counsel's Office is

20     standing here explaining to you how there might be an

21     additional gloss on the 793 count, and so for that reason, we

22     included maybe this additional language in the indictment, I

23     mean, that just -- that defies credulity.  I mean, they

24     included these statements about Mar-a-Lago being a fortress or

25     lack thereof because it was attention-grabbing at the time.

1          It's now been over a year and -- or just about a year,

2    and we're finally getting to the heart of the matter with the

3    disclosure of some of these materials on a public docket.

4          So, you know, it would be an undertaking, to be sure,

5    to rewrite this indictment.  But, you know, again, they elected

6    to bring a speaking indictment.  And if the -- if the Special

7    Counsel's Office is going to do that, if prosecutors are going

8    to be doing that, they should be held to a standard in which

9    the indictment reflects the accuracy of the evidence that will

10   be presented and the charges that have been brought.

11         THE COURT:  Okay.  Thank you.  All right.  Then by

12   Friday, please make sure to do the housekeeping I asked for in

13   the beginning.

14         I wish you all --

15         MR. WOODWARD:  In addition, my preliminary research at

16   counsel's table suggests that the requirement that the act be a

17   crime under 2(B) persists.  And so, if the principal is being

18   caused to -- to do something that is also not a crime as to the

19   principal, then 2(B) doesn't apply.  So with the Court's

20   permission, I will submit something brief by Friday as well,

21   just giving the Court the case that we're --

22         THE COURT:  Okay.  I will permit a letter of

23   supplemental authority in accordance with the local rules,

24   which has a strict word limit.

25         MR. WOODWARD:  Okay.  Thank you.

1              THE COURT:  So please keep that in mind by Friday.

2              And then Friday is also the deadline for just the

3      housekeeping of the -- of the docketing that I asked for.

4              As far as the two motions are concerned, they're taken

5      under advisement.  And I believe that's all I have for now.

6              So safe travels to your respective homes.  The Court is

7      in recess.

8              (These proceedings concluded at 3:23 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4     I hereby certify that the foregoing is an accurate

 5     transcription of the proceedings in the above-entitled matter.

 6

 7
       DATE:  05-23-2024         /s/Laura Melton
 8                               LAURA E. MELTON, RMR, CRR, FPR
                                 Official Court Reporter
 9                               United States District Court
                                 Southern District of Florida
10                               Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

'

'22 [11]_ - 1:12:3_, 1:12:5_,
1:13:2_, 1:13:12_, 1:13:14_,
1:13:24_, 1:14:18_, 1:22:13
_, 1:63:17_, 1:87:18_,
1:87:19

'60s [1]_ - 1:106:15

'an [1]_ - 1:59:16

'bribe' [1]_ - 1:59:13

'flips [1]_ - 1:59:17

'intimidate' [1]_ - 1:59:13

## 1

1 [16]_ - 1:77:20_, 1:94:18_,
1:94:23_, 1:94:25_, 1:95:4_,
1:105:14_, 1:105:16_,
1:105:17_, 1:105:19_,
1:111:16_, 1:116:17_,
1:116:23_, 1:117:5_, 1:118:8
_, 1:118:17_, 1:119:22

1's [1]_ - 1:129:12

100 [1]_ - 1:89:21

1001 [14]_ - 1:12:16_,
1:12:19_, 1:41:24_, 1:100:8
_, 1:100:14_, 1:101:18_,
1:104:20_, 1:107:22_,
1:129:6_, 1:130:17_,
1:132:10_, 1:142:6_,
1:143:13_, 1:144:4

101 [3]_ - 1:5:19_, 1:9:24_,
1:76:19

107 [1]_ - 1:105:6

112 [1]_ - 1:146:5

115 [3]_ - 1:5:19_, 1:6:4_,
1:9:24

116 [3]_ - 1:5:19_, 1:6:4_,
1:9:24

11627259 [1]_ - 1:72:16

118 [4]_ - 1:5:20_, 1:6:4_,
1:9:24_, 1:59:6

12 [2]_ - 1:94:2_, 1:149:23

12:10 [2]_ - 1:62:4_,
1:88:21

1318 [2]_ - 1:75:14_,
1:75:20

1320 [1]_ - 1:75:21

14th [1]_ - 1:59:4

15 [4]_ - 1:140:17_,
1:142:19_, 1:144:20

15(b)(2)(a) [1]_ - 1:122:3

15(c)(1 [1]_ - 1:133:10

1512 [10]_ - 1:14:24_,

1:15:2_, 1:15:3_, 1:94:22_,
1:131:25_, 1:132:9_,
1:132:18_, 1:139:11_,
1:149:22_, 1:154:7

1512(b)(2 [4]_ - 1:130:17
_, 1:132:19_, 1:140:22_,
1:149:20

1512(b)(2)(A [1]_ -
1:131:24

1512(b)(2)(A) [2]_ -
1:95:3_, 1:118:10

1512(b)(2)(B [3]_ -
1:149:1_, 1:149:17_,
1:150:14

1512(b)(2)(B) [4]_ -
1:149:5_, 1:149:6_, 1:149:24
_, 1:154:10

1512(b)2(B) [1]_ -
1:131:11

1512(c)(1 [1]_ - 1:140:22

1512(c)(1) [1]_ - 1:150:14

1512(k [2]_ - 1:15:2_,
1:31:2

1517 [1]_ - 1:140:17

1519 [13]_ - 1:89:11_,
1:95:19_, 1:96:12_, 1:96:13
_, 1:96:19_, 1:97:3_, 1:115:2
_, 1:115:17_, 1:130:17_,
1:131:23_, 1:132:10_,
1:140:17_, 1:140:22

18 [7]_ - 1:99:16_, 1:100:17
_, 1:104:22_, 1:105:1_,
1:107:10_, 1:107:17_,
1:120:22

1:30 [1]_ - 1:88:20

1:35 [1]_ - 1:88:21

## 2

2 [16]_ - 1:60:17_, 1:95:5_,
1:99:17_, 1:100:18_, 1:105:1
_, 1:105:15_, 1:107:10_,
1:107:11_, 1:107:13_,
1:107:17_, 1:111:17_,
1:116:15_, 1:118:2_,
1:118:14_, 1:120:22_,
1:157:6

2(a [2]_ - 1:106:21_,
1:106:24

2(B [2]_ - 1:164:17_,
1:164:19

2(b [5]_ - 1:104:22_,
1:106:12_, 1:106:21_,
1:107:5_, 1:120:18

20 [1]_ - 1:15:18

20-year [1]_ - 1:83:15

2008 [1]_ - 1:24:5

2010 [1]_ - 1:72:16

2018 [1]_ - 1:24:10

2021 [1]_ - 1:135:25

2022 [18]_ - 1:6:1_,
1:13:11_, 1:15:17_, 1:30:25
_, 1:44:14_, 1:48:10_,
1:48:22_, 1:50:19_, 1:60:20
_, 1:62:20_, 1:84:1_, 1:87:7_,
1:87:14_, 1:88:3_, 1:88:6_,
1:135:25_, 1:142:11_,
1:143:4

2023 [9]_ - 1:5:23_,
1:11:25_, 1:15:7_, 1:15:18_,
1:18:6_, 1:58:4_, 1:59:4_,
1:63:1_, 1:63:17

206781 [1]_ - 1:24:11

23-cr-80101 [1]_ - 1:3:6

24 [3]_ - 1:30:25_, 1:44:14
_, 1:50:19

24th [9]_ - 1:6:1_, 1:15:17
_, 1:15:18_, 1:56:6_, 1:60:20
_, 1:83:4_, 1:84:6_, 1:86:15_,
1:86:17

26 [1]_ - 1:62:20

27 [1]_ - 1:147:24

28 [2]_ - 1:151:16_, 1:157:2

2nd [1]_ - 1:42:20

## 3

3 [15]_ - 1:23:10_, 1:49:13_,
1:60:17_, 1:99:12_, 1:99:21
_, 1:99:22_, 1:100:7_,
1:100:12_, 1:100:13_,
1:101:3_, 1:101:14_,
1:101:15_, 1:101:23_,
1:102:2_, 1:102:4

3's [1]_ - 1:99:20

3(C [1]_ - 1:43:3

32 [4]_ - 1:14:4_, 1:158:8_,
1:158:9_, 1:158:13

33 [12]_ - 1:101:5_, 1:101:6
_, 1:101:8_, 1:110:1_,
1:110:2_, 1:110:14_,
1:112:11_, 1:112:22_,
1:136:5_, 1:138:24_, 1:139:1
_, 1:140:22

34 [39]_ - 1:94:11_, 1:94:13
_, 1:94:17_, 1:97:17_,
1:98:15_, 1:100:25_,
1:103:23_, 1:108:2_,
1:108:21_, 1:109:14_,
1:109:19_, 1:109:25_,
1:110:3_, 1:111:3_, 1:111:9
_, 1:111:10_, 1:111:15_,
1:112:21_, 1:116:14_,

1:118:2_, 1:118:3_, 1:118:9
_, 1:119:19_, 1:119:25_,
1:120:11_, 1:120:14_,
1:121:9_, 1:129:21_, 1:130:1
_, 1:131:6_, 1:131:16_,
1:139:2_, 1:140:12_,
1:140:24_, 1:158:5_, 1:158:6
_, 1:158:7

35 [20]_ - 1:98:9_, 1:108:20
_, 1:123:21_, 1:123:23_,
1:124:11_, 1:124:19_,
1:126:7_, 1:128:25_, 1:129:2
_, 1:129:4_, 1:129:21_,
1:130:1_, 1:130:21_,
1:131:12_, 1:133:10_,
1:134:20_, 1:139:2_,
1:140:12_, 1:140:24_,
1:158:7

352 [1]_ - 1:94:1

36 [30]_ - 1:94:12_, 1:94:13
_, 1:95:13_, 1:95:15_,
1:95:20_, 1:95:25_, 1:96:7_,
1:97:11_, 1:97:17_, 1:99:6_,
1:99:8_, 1:100:25_, 1:103:23
_, 1:108:2_, 1:108:21_,
1:114:24_, 1:115:13_,
1:119:25_, 1:129:21_,
1:130:1_, 1:132:24_,
1:133:13_, 1:139:2_,
1:140:13_, 1:140:24_,
1:158:5_, 1:158:6_, 1:158:18
_, 1:158:19_, 1:159:14

37 [18]_ - 1:98:9_, 1:98:15_,
1:108:21_, 1:123:21_,
1:123:23_, 1:124:11_,
1:124:19_, 1:126:7_,
1:128:24_, 1:129:2_, 1:129:4
_, 1:129:5_, 1:129:21_,
1:130:1_, 1:130:21_, 1:139:2
_, 1:140:13_, 1:140:24

378 [1]_ - 1:94:4

38 [10]_ - 1:99:10_, 1:99:11
_, 1:100:25_, 1:101:17_,
1:103:24_, 1:104:6_,
1:120:17_, 1:120:25_,
1:121:2_, 1:147:3

39 [3]_ - 1:141:10_,
1:143:17_, 1:145:11

3:18 [1]_ - 1:163:1

3:23 [1]_ - 1:165:8

3rd [2]_ - 1:13:14_, 1:13:25

## 4

4 [8]_ - 1:49:6_, 1:59:10_,
1:60:25_, 1:61:1_, 1:148:5_,
1:148:6_, 1:148:16_,
1:155:17

40 [8]– - 1:146:23–, 1:146:24–, 1:147:2–, 1:150:6 –, 1:150:15–, 1:153:19–, 1:153:20–, 1:154:8

404(b [3]– - 1:158:22–, 1:158:23–, 1:159:15

404(b) [2]– - 1:159:3–, 1:159:12

41 [9]– - 1:135:1–, 1:145:15 –, 1:146:24–, 1:147:2–, 1:147:7–, 1:150:7–, 1:150:15 –, 1:153:20–, 1:154:8

42 [3]– - 1:141:8–, 1:141:10 –, 1:143:20

45 [2]– - 1:35:7–, 1:90:14

46 [1]– - 1:144:8

47 [1]– - 1:142:23

481 [1]– - 1:6:7

482 [1]– - 1:4:22

485 [1]– - 1:4:13

486 [2]– - 1:4:21–, 1:4:25

487 [1]– - 1:5:8

488 [2]– - 1:5:11–, 1:49:13

493 [1]– - 1:4:20–, 1:39:6

494 [1]– - 1:5:9

---

5

5 [2]– - 1:72:15–, 1:151:3

52 [2]– - 1:62:22–, 1:62:24

556 [1]– - 1:94:5

56 [1]– - 1:62:21

5K [2]– - 1:21:18–, 1:21:24

---

6

6 [4]– - 1:65:22–, 1:66:7–, 1:81:25–, 1:158:5

6(e [7]– - 1:18:22–, 1:18:25 –, 1:25:21–, 1:40:5–, 1:81:1–, 1:81:22–, 1:81:23

6(e) [1]– - 1:81:15

6(e)(C [1]– - 1:43:2

---

7

7 [4]– - 1:118:19–, 1:125:5–, 1:125:11–, 1:163:18

7(d [1]– - 1:151:5

74 [2]– - 1:156:1–, 1:156:5

793 [1]– - 1:163:21

793(e [2]– - 1:160:20–, 1:162:3

---

7th [1]– - 1:63:4

---

8

8 [4]– - 1:95:11–, 1:97:9–, 1:118:20–, 1:125:6

8(b [6]– - 1:108:7–, 1:110:9 –, 1:114:21–, 1:116:8–, 1:117:7–, 1:117:11

801(d [1]– - 1:157:6

87 [2]– - 1:156:1–, 1:156:5

8th [2]– - 1:13:21–, 1:44:8

---

9

90 [3]– - 1:114:13–, 1:126:21

90241 [1]– - 1:24:6

91 [1]– - 1:125:8

96 [1]– - 1:138:18

97 [2]– - 1:101:6–, 1:101:8

---

A

abet [2]– - 1:100:23–, 1:104:24

abetted [4]– - 1:32:1–, 1:99:19–, 1:99:22–, 1:106:19

abetting [5]– - 1:104:25–, 1:105:3–, 1:107:5–, 1:107:14 –, 1:107:16

abetting/causation [1]– - 1:107:18

ability [1]– - 1:160:17

able [4]– - 1:42:4–, 1:49:7–, 1:118:15–, 1:149:18

absence [1]– - 1:118:4

absent [3]– - 1:35:13–, 1:75:23–, 1:124:9

absolutely [2]– - 1:24:24–, 1:25:1

abundance [3]– - 1:77:6–, 1:77:7–, 1:81:19

abuse [1]– - 1:38:13

accept [3]– - 1:46:20–, 1:101:2–, 1:146:7

access [4]– - 1:26:8–, 1:40:3–, 1:81:17–, 1:160:18

accessed [1]– - 1:34:17

accessing [1]– - 1:148:13

accompanied [1]– - 1:102:10

accompanying [1]– - 1:102:5

---

accomplish [1]– - 1:136:25

accordance [1]– - 1:164:23

according [4]– - 1:46:8–, 1:59:1–, 1:59:10–, 1:128:2

account [1]– - 1:57:21

accuracy [1]– - 1:164:9

accurate [4]– - 1:56:4–, 1:88:10–, 1:99:21–, 1:101:15

accused [1]– - 1:106:19

acknowledge [1]– - 1:7:24–, 1:21:14

acknowledges [3]– - 1:9:12–, 1:9:13–, 1:147:9

acknowledging [1]– - 1:7:19

act [15]– - 1:95:18–, 1:99:19–, 1:100:23–, 1:101:20–, 1:116:10–, 1:117:8–, 1:118:9–, 1:133:11 –, 1:139:5–, 1:139:6–, 1:140:2–, 1:147:15–, 1:149:14–, 1:150:9–, 1:164:16

acted [2]– - 1:46:10–, 1:49:8

action [1]– - 1:147:21

actions [3]– - 1:109:7–, 1:110:11–, 1:140:7

activities [2]– - 1:109:9–, 1:154:5

activity [5]– - 1:55:21–, 1:98:3–, 1:98:10–, 1:111:23 –, 1:131:10

acts [15]– - 1:9:3–, 1:94:16 –, 1:95:7–, 1:95:10–, 1:98:18 –, 1:98:24–, 1:113:16–, 1:116:11–, 1:117:2–, 1:120:5 –, 1:120:12–, 1:124:11–, 1:147:4–, 1:148:4–, 1:151:10

actual [12]– - 1:41:5–, 1:41:13–, 1:41:18–, 1:42:7–, 1:46:7–, 1:48:9–, 1:62:8–, 1:74:15–, 1:74:16–, 1:76:9–, 1:108:18–, 1:115:3

add [7]– - 1:33:17–, 1:40:19–, 1:84:25–, 1:107:4 –, 1:107:12–, 1:109:4–, 1:128:23

added [3]– - 1:161:1–, 1:161:21–, 1:162:3

addition [4]– - 1:20:15–, 1:27:4–, 1:75:22–, 1:164:15

additional [12]– - 1:6:14–,

---

1:29:7–, 1:35:22–, 1:48:23–, 1:63:16–, 1:63:18–, 1:82:25 –, 1:114:1–, 1:140:11–, 1:154:4–, 1:163:21–, 1:163:22

address [7]– - 1:7:7–, 1:23:20–, 1:33:19–, 1:40:12 –, 1:98:17–, 1:151:25–, 1:162:24

addressed [5]– - 1:9:2–, 1:9:11–, 1:21:7–, 1:145:4–, 1:150:23

addresses [2]– - 1:37:1–, 1:72:13

adds [1]– - 1:146:12

adequate [1]– - 1:63:24

adequately [1]– - 1:148:22

administration [2]– - 1:59:17–, 1:133:16

admissibility [2]– - 1:157:17–, 1:159:14

admissible [1]– - 1:157:5

admit [1]– - 1:18:21

admittedly [1]– - 1:50:10

admonished [3]– - 1:19:9 –, 1:140:15–, 1:141:3

admonitions [1]– - 1:4:8

adopt [1]– - 1:69:3

adopted [2]– - 1:100:6–, 1:161:10

adoption [1]– - 1:125:12

advance [3]– - 1:16:14–, 1:22:5–, 1:88:9

adverb [1]– - 1:132:4

advise [2]– - 1:16:6–, 1:42:13

advised [3]– - 1:15:23–, 1:17:10–, 1:81:14

advisement [1]– - 1:165:5

advises [1]– - 1:54:3

advising [2]– - 1:12:20–, 1:14:10

affect [1]– - 1:148:11

affecting [2]– - 1:99:23–, 1:140:8

affidavit [1]– - 1:14:2

affidavits [1]– - 1:11:11

afternoon [7]– - 1:7:5–, 1:16:25–, 1:32:5–, 1:32:7–, 1:92:11–, 1:92:12–, 1:93:8

agency [1]– - 1:133:17

agent [7]– - 1:20:21–,

1:23:24_, 1:23:25_, 1:24:1_, 1:91:10_, 1:93:12_, 1:93:16

agent's [1]_ - 1:20:15

agents [6]_ - 1:20:12_, 1:20:19_, 1:20:22_, 1:69:24 _, 1:71:5_, 1:157:7

aggressive [6]_ - 1:10:11 _, 1:18:13_, 1:25:6_, 1:140:16_, 1:140:18_, 1:141:2

ago [6]_ - 1:43:17_, 1:51:2 _, 1:51:13_, 1:52:5_, 1:55:3_, 1:67:15

agree [11]_ - 1:21:22_, 1:89:20_, 1:107:21_, 1:112:10_, 1:115:2_, 1:120:2 _, 1:139:4_, 1:140:4_, 1:145:19_, 1:157:9_, 1:160:22

agreed [4]_ - 1:83:5_, 1:135:3_, 1:138:11_, 1:160:21

agreement [2]_ - 1:82:17 _, 1:160:4

agrees [1]_ - 1:13:3

aid [1]_ - 1:100:22

aided [4]_ - 1:32:1_, 1:99:19_, 1:99:22_, 1:106:18

aiding [6]_ - 1:105:2_, 1:107:4_, 1:107:14_, 1:107:15_, 1:107:17_, 1:127:22

allegation [20]_ - 1:33:2_, 1:51:4_, 1:51:6_, 1:57:22_, 1:59:1_, 1:94:20_, 1:94:21_, 1:95:2_, 1:96:24_, 1:115:15 _, 1:127:1_, 1:134:20_, 1:135:15_, 1:136:16_, 1:139:12_, 1:139:18_, 1:147:18_, 1:148:8_, 1:155:24

allegations [24]_ - 1:5:24 _, 1:16:8_, 1:42:5_, 1:44:7_, 1:50:20_, 1:57:9_, 1:79:7_, 1:80:11_, 1:85:3_, 1:86:4_, 1:97:11_, 1:101:5_, 1:102:19 _, 1:114:12_, 1:118:4_, 1:124:9_, 1:125:12_, 1:126:15_, 1:129:9_, 1:129:17_, 1:157:21_, 1:158:1_, 1:159:18_, 1:163:13

allege [11]_ - 1:49:4_, 1:94:16_, 1:96:14_, 1:98:24 _, 1:105:7_, 1:118:7_, 1:120:11_, 1:124:2_, 1:124:3 _, 1:129:21_, 1:141:9

alleged [41]_ - 1:24:6_, 1:34:2_, 1:36:14_, 1:42:23_, 1:45:14_, 1:46:7_, 1:48:21_, 1:63:12_, 1:69:7_, 1:86:4_, 1:96:4_, 1:97:16_, 1:97:19_, 1:99:19_, 1:99:22_, 1:105:10 _, 1:106:6_, 1:107:7_, 1:115:19_, 1:116:9_, 1:118:4 _, 1:119:16_, 1:119:18_, 1:124:12_, 1:125:7_, 1:126:24_, 1:128:10_, 1:128:11_, 1:128:13_, 1:128:20_, 1:135:18_, 1:140:9_, 1:146:4_, 1:146:14 _, 1:146:20_, 1:147:4_, 1:147:14_, 1:148:22_, 1:151:8_, 1:157:21

allegedly [5]_ - 1:41:23_, 1:46:25_, 1:48:19_, 1:135:22 _, 1:148:6

alleges [6]_ - 1:46:23_, 1:48:4_, 1:48:24_, 1:99:9_, 1:99:11_, 1:143:23

alleging [12]_ - 1:17:2_, 1:17:3_, 1:32:2_, 1:59:12_, 1:87:23_, 1:95:19_, 1:116:14 _, 1:117:8_, 1:139:14_, 1:139:25_, 1:140:10_, 1:150:9

allow [5]_ - 1:8:3_, 1:33:1_, 1:95:23_, 1:116:3_, 1:117:12

allowed [3]_ - 1:85:21_, 1:85:23

allows [2]_ - 1:112:15_, 1:117:7

alluded [3]_ - 1:9:24_, 1:42:1_, 1:47:16

alone [4]_ - 1:19:13_, 1:21:10_, 1:36:6_, 1:47:17

alter [2]_ - 1:147:8_, 1:155:13

altered [2]_ - 1:56:1_, 1:96:25

alternative [2]_ - 1:119:12 _, 1:119:14

alters [1]_ - 1:96:15

ambiguity [1]_ - 1:146:12

Amendment [6]_ - 1:16:21_, 1:34:12_, 1:35:3_, 1:47:6_, 1:47:7_, 1:83:23

America [1]_ - 1:3:5

amount [3]_ - 1:57:9_, 1:117:20_, 1:151:4

amounted [1]_ - 1:151:9

amplified [1]_ - 1:129:5

analysis [1]_ - 1:139:3

animus [19]_ - 1:46:10_, 1:46:13_, 1:46:18_, 1:46:23 _, 1:48:21_, 1:48:24_, 1:49:1 _, 1:49:3_, 1:49:4_, 1:49:9_, 1:49:14_, 1:49:20_, 1:51:4_, 1:51:6_, 1:53:1_, 1:76:9_, 1:84:19_, 1:84:20

Anne [1]_ - 1:3:10

anonymized [1]_ - 1:33:24

answer [27]_ - 1:19:12_, 1:27:19_, 1:30:20_, 1:32:14 _, 1:35:15_, 1:35:16_, 1:38:16_, 1:49:24_, 1:50:1_, 1:50:12_, 1:50:18_, 1:52:6_, 1:55:14_, 1:57:4_, 1:57:11_, 1:57:13_, 1:65:18_, 1:67:14 _, 1:111:2_, 1:125:4_, 1:130:9_, 1:143:11_, 1:143:12_, 1:150:24_, 1:161:12_, 1:161:15

answered [1]_ - 1:44:6_, 1:78:25

answering [1]_ - 1:50:8

answers [5]_ - 1:17:16_, 1:78:2_, 1:142:2_, 1:143:23 _, 1:144:3

anticipated [1]_ - 1:160:7

anyhow [1]_ - 1:97:24_, 1:120:16_, 1:134:6

apart [1]_ - 1:48:16

apologize [6]_ - 1:36:9_, 1:81:24_, 1:145:12_, 1:145:21_, 1:146:21_, 1:163:6

apparent [1]_ - 1:74:7

appeal [3]_ - 1:8:7_, 1:8:11_, 1:8:21

appear [7]_ - 1:4:24_, 1:8:13_, 1:20:6_, 1:20:7_, 1:20:9_, 1:21:22_, 1:25:13

appearance [4]_ - 1:3:7_, 1:17:14_, 1:42:14_, 1:63:5

appearances [1]_ - 1:88:24

appeared [9]_ - 1:20:1_, 1:20:18_, 1:20:21_, 1:20:22 _, 1:25:7_, 1:42:17_, 1:74:7_, 1:92:14_, 1:93:1

Apple [1]_ - 1:90:12

applicable [7]_ - 1:29:18_, 1:113:16_, 1:113:17_, 1:131:7_, 1:138:14_, 1:141:24_, 1:145:24

application [8]_ - 1:60:21 _, 1:65:21_, 1:77:3_, 1:78:15 _, 1:78:24_, 1:79:18_, 1:80:7 _, 1:80:9

applied [3]_ - 1:72:25_, 1:73:18_, 1:133:22

applies [5]_ - 1:7:23_, 1:73:1_, 1:128:9_, 1:132:18

apply [11]_ - 1:24:2_, 1:94:20_, 1:95:6_, 1:97:15_, 1:114:24_, 1:115:25_, 1:119:11_, 1:125:9_, 1:125:20_, 1:129:4_, 1:164:19

appreciate [1]_ - 1:17:17

apprised [2]_ - 1:8:15_, 1:45:1

approach [2]_ - 1:103:3_, 1:147:18

appropriate [12]_ - 1:8:2_, 1:9:16_, 1:11:6_, 1:40:6_, 1:41:18_, 1:72:14_, 1:76:4_, 1:76:12_, 1:93:21_, 1:114:17 _, 1:114:20_, 1:132:8

appropriately [1]_ - 1:132:6

approval [1]_ - 1:82:1

April [4]_ - 1:6:9_, 1:62:20 _, 1:63:17_, 1:134:25

argue [3]_ - 1:123:23_, 1:127:20_, 1:129:11

argues [1]_ - 1:46:17

arguing [4]_ - 1:41:6_, 1:130:14_, 1:149:11_, 1:150:4

argument [51]_ - 1:4:11_, 1:4:13_, 1:7:13_, 1:23:1_, 1:34:4_, 1:41:25_, 1:42:21_, 1:43:9_, 1:45:19_, 1:47:24_, 1:47:25_, 1:48:1_, 1:48:16_, 1:50:19_, 1:50:22_, 1:67:20 _, 1:70:14_, 1:72:4_, 1:76:6_, 1:94:6_, 1:94:8_, 1:94:10_, 1:95:6_, 1:99:15_, 1:99:24_, 1:100:5_, 1:104:23_, 1:105:3 _, 1:106:23_, 1:119:9_, 1:120:8_, 1:120:16_, 1:127:17_, 1:129:17_, 1:139:2_, 1:140:10_, 1:141:5 _, 1:145:24_, 1:149:21_, 1:150:3_, 1:150:7_, 1:151:21 _, 1:152:12_, 1:152:19_, 1:153:25_, 1:157:4_, 1:157:5 _, 1:157:25_, 1:160:19

arguments [20]_ - 1:21:5 _, 1:38:21_, 1:38:25_,

1:42:10_, 1:43:18_, 1:43:20
_, 1:43:23_, 1:44:2_, 1:44:25
_, 1:45:17_, 1:45:24_,
1:56:21_, 1:80:16_, 1:114:23
_, 1:116:4_, 1:123:22_,
1:124:13_, 1:129:4_,
1:143:25_, 1:145:3
arise [3]_ - 1:75:16_,
1:75:22_, 1:126:1
arisen [1]_ - 1:65:6
arises [4]_ - 1:8:6_, 1:8:24
_, 1:130:25_, 1:140:12
Armstrong [4]_ - 1:36:25
_, 1:68:7_, 1:72:24_, 1:73:19
arose [1]_ - 1:10:8
array [1]_ - 1:150:19
arrived [1]_ - 1:15:17
artful [1]_ - 1:151:7
articulate [1]_ - 1:73:3
articulated [2]_ - 1:73:19
_, 1:153:24
Ashleigh [1]_ - 1:3:23
assert [1]_ - 1:34:11
asserted [2]_ - 1:35:3_,
1:83:18
assertion [2]_ - 1:10:20_,
1:58:20
assess [1]_ - 1:33:2
assessment [1]_ -
1:26:15
assist [1]_ - 1:126:22
associated [3]_ - 1:4:21_,
1:64:15_, 1:66:19
associates [1]_ - 1:69:14
assume [3]_ - 1:119:4_,
1:119:10_, 1:146:9
assumes [1]_ - 1:121:18
assuming [3]_ - 1:75:17_,
1:75:21_, 1:153:2
assumptions [1]_ -
1:117:20
attach [1]_ - 1:102:12
attack [1]_ - 1:143:20
attempt [14]_ - 1:60:1_,
1:69:10_, 1:116:23_, 1:147:6
_, 1:147:12_, 1:147:13_,
1:147:25_, 1:148:21_,
1:148:23_, 1:148:25_,
1:149:7_, 1:154:16_,
1:155:10
attempted [6]_ - 1:59:13_,
1:61:1_, 1:70:16_, 1:94:18_,
1:116:17_, 1:154:12

attempting [7]_ - 1:65:24
_, 1:111:16_, 1:117:4_,
1:118:17_, 1:119:22_,
1:131:9_, 1:133:25
attempts [3]_ - 1:69:3_,
1:149:7_, 1:155:9
attending [1]_ - 1:4:5
attention [3]_ - 1:37:11_,
1:83:2_, 1:163:25
attention-grabbing [1]_ -
1:163:25
attorney [14]_ - 1:25:12_,
1:30:4_, 1:43:3_, 1:46:22_,
1:49:15_, 1:58:22_, 1:105:10
_, 1:105:11_, 1:109:20_,
1:120:12_, 1:120:15_,
1:134:3_, 1:152:6_, 1:152:23
Attorney [31]_ - 1:94:18_,
1:94:23_, 1:94:25_, 1:99:12
_, 1:99:15_, 1:99:20_,
1:99:21_, 1:99:22_, 1:100:7
_, 1:100:12_, 1:100:13_,
1:101:3_, 1:101:14_,
1:101:15_, 1:101:23_,
1:102:2_, 1:102:4_, 1:105:14
_, 1:105:15_, 1:105:16_,
1:105:17_, 1:105:19_,
1:111:16_, 1:116:17_,
1:116:23_, 1:117:5_, 1:118:8
_, 1:118:17_, 1:119:22_,
1:129:12_, 1:148:6
attorney's [1]_ - 1:91:5
attorney-client [3]_ -
1:25:12_, 1:152:6_, 1:152:23
attorneys [2]_ - 1:30:1_,
1:103:20
attributed [1]_ - 1:97:15
augmentation [1]_ -
1:75:24
augmenting [1]_ -
1:47:21
August [25]_ - 1:5:23_,
1:6:1_, 1:11:25_, 1:12:3_,
1:12:5_, 1:13:21_, 1:22:12_,
1:29:7_, 1:30:25_, 1:44:4_,
1:44:8_, 1:44:14_, 1:48:10_,
1:48:22_, 1:50:19_, 1:50:24
_, 1:56:6_, 1:56:13_, 1:59:4_,
1:60:20_, 1:83:4_, 1:84:1_,
1:84:6_, 1:86:15_, 1:86:17
authority [8]_ - 1:53:14_,
1:108:9_, 1:112:1_, 1:112:5
_, 1:112:6_, 1:114:14_,
1:120:25_, 1:164:23
authorization [2]_ -
1:18:24_, 1:19:3

authorize [1]_ - 1:19:1
authorized [5]_ - 1:5:11_,
1:44:13_, 1:72:14_, 1:78:8_,
1:152:15
automatically [1]_ -
1:51:17
availability [6]_ - 1:9:1_,
1:35:22_, 1:67:15_, 1:127:7
_, 1:133:12_, 1:155:15
available [2]_ - 1:31:11_,
1:88:16
avenue [1]_ - 1:35:25
avoid [1]_ - 1:117:16
aware [23]_ - 1:9:5_,
1:12:13_, 1:15:3_, 1:16:16_,
1:17:3_, 1:26:1_, 1:26:3_,
1:35:25_, 1:58:11_, 1:64:6_,
1:64:8_, 1:77:8_, 1:80:4_,
1:80:6_, 1:80:7_, 1:83:12_,
1:91:4_, 1:97:21_, 1:124:8_,
1:136:12_, 1:139:15_,
1:141:23_, 1:144:9
awareness [1]_ - 1:34:24
awfully [1]_ - 1:130:23
awkward [1]_ - 1:80:10

B

b)(2)(A [2]_ - 1:132:19_,
1:133:8
b)(2)(A) [1]_ - 1:94:22
backing [1]_ - 1:13:2
bad [1]_ - 1:60:25
bar [4]_ - 1:7:19_, 1:9:13_,
1:9:14_, 1:24:16
Barner [7]_ - 1:46:9_,
1:75:1_, 1:75:2_, 1:75:6_,
1:75:9_, 1:75:14_, 1:75:24
Baroni [1]_ - 1:137:9
based [7]_ - 1:10:19_,
1:49:20_, 1:71:25_, 1:124:17
_, 1:129:14_, 1:144:5_,
1:146:17
basic [1]_ - 1:71:15
basing [1]_ - 1:17:5
basis [18]_ - 1:16:5_,
1:24:17_, 1:47:15_, 1:50:24
_, 1:53:15_, 1:59:1_, 1:76:22
_, 1:77:4_, 1:78:24_, 1:79:3_,
1:83:10_, 1:86:16_, 1:89:19
_, 1:91:25_, 1:110:3_,
1:110:17_, 1:142:6_,
1:150:15
Beach [3]_ - 1:37:7_,
1:63:13_, 1:156:14

beach [4]_ - 1:156:14_,
1:156:16_, 1:156:19_,
1:156:20
bear [6]_ - 1:32:5_, 1:38:23
_, 1:57:16_, 1:100:21_,
1:151:12_, 1:151:23
bearing [2]_ - 1:106:16_,
1:136:8
bears [1]_ - 1:151:9
became [2]_ - 1:26:10_,
1:63:12
becomes [1]_ - 1:126:22
Bedminster [1]_ -
1:158:12
began [2]_ - 1:18:5_,
1:62:25
begin [8]_ - 1:7:18_, 1:9:20
_, 1:18:4_, 1:41:25_, 1:56:10
_, 1:56:17_, 1:62:16_,
1:163:15
beginning [7]_ - 1:23:8_,
1:26:10_, 1:44:18_, 1:147:25
_, 1:151:3_, 1:164:13
begins [1]_ - 1:19:21
behalf [5]_ - 1:3:10_,
1:3:21_, 1:4:2_, 1:25:10_,
1:41:11
behaved [1]_ - 1:43:7
behaving [1]_ - 1:65:25
behavior [1]_ - 1:130:16
behind [3]_ - 1:21:21_,
1:27:9_, 1:38:8
beings [1]_ - 1:20:17
belabor [3]_ - 1:80:23_,
1:124:13_, 1:146:20
belief [1]_ - 1:10:21
believes [4]_ - 1:13:11_,
1:13:13_, 1:105:16_,
1:105:17
belonged [2]_ - 1:90:13_,
1:90:14
belonging [1]_ - 1:89:13
benefit [1]_ - 1:129:15
best [7]_ - 1:14:11_, 1:42:6
_, 1:53:1_, 1:58:7_, 1:65:18_,
1:79:1_, 1:156:9
better [6]_ - 1:41:20_,
1:49:17_, 1:61:15_, 1:133:22
_, 1:136:7_, 1:138:19
between [21]_ - 1:6:1_,
1:10:17_, 1:24:12_, 1:39:1_,
1:63:17_, 1:69:20_, 1:86:4_,
1:90:24_, 1:91:13_, 1:91:24
_, 1:92:9_, 1:121:24_,

1:130:1-, 1:130:16-, 1:130:23-, 1:134:14-, 1:140:24-, 1:141:18-, 1:147:15-, 1:151:20

beyond [4]- - 1:56:6-, 1:84:13-, 1:111:14-, 1:133:2

Biden [2]- - 1:34:20-, 1:59:17

Biden's [1]- - 1:34:19-, 1:69:13

big [1]- - 1:30:19

bill [2]- - 1:114:4-, 1:124:13

bit [7]- - 1:49:3-, 1:57:24-, 1:73:8-, 1:78:21-, 1:108:19-, 1:143:16-, 1:147:22

BLANCHE [3]- - 1:3:14-, 1:6:24-, 1:103:21

Blanche [2]- - 1:3:14-, 1:6:23

blanket [1]- - 1:75:2

bleeds [1]- - 1:112:11

blessing [1]- - 1:18:14

blind [1]- - 1:17:22

Blockburger [1]- - 1:130:12

board [1]- - 1:57:13

Boasberg [4]- - 1:39:12-, 1:65:20-, 1:65:23-, 1:66:15

Bondoc [1]- - 1:3:23-, 1:20:3

Bonilla [3]- - 1:9:9-, 1:36:22-, 1:72:11

bootstrapping [1]- - 1:128:16

Bordenkircher [1]- - 1:47:17

borne [1]- - 1:86:12

bottom [2]- - 1:11:5-, 1:85:14

bound [2]- - 1:23:15-, 1:102:18

box [2]- - 1:127:8-, 1:135:20

boxes [52]- - 1:13:4-, 1:13:6-, 1:13:15-, 1:13:16-, 1:13:20-, 1:14:6-, 1:17:3-, 1:17:4-, 1:32:3-, 1:34:8-, 1:34:9-, 1:35:8-, 1:71:7-, 1:94:24-, 1:102:7-, 1:105:18-, 1:120:13-, 1:124:6-, 1:126:9-, 1:126:17-, 1:127:2-, 1:127:10-, 1:127:19-, 1:127:21-, 1:127:25-,

1:128:3-, 1:129:12-, 1:134:1-, 1:134:2-, 1:134:22-, 1:135:9-, 1:135:12-, 1:135:16-, 1:136:4-, 1:139:19-, 1:140:1-, 1:141:25-, 1:142:10-, 1:142:15-, 1:142:16-, 1:142:18-, 1:142:19-, 1:143:2-, 1:143:3-, 1:144:9-, 1:144:11-, 1:144:13-, 1:144:14-, 1:144:24

boy [1]- - 1:30:19

BRATT [156]- - 1:3:9-, 1:5:1-, 1:5:6-, 1:5:14-, 1:5:17-, 1:92:11-, 1:92:13-, 1:92:20-, 1:92:24-, 1:93:2-, 1:93:6-, 1:103:13-, 1:104:8-, 1:104:14, 1:104:17-, 1:104:22-, 1:104:25-, 1:105:6-, 1:105:11, 1:106:7, 1:106:10-, 1:106:13-, 1:106:20-, 1:106:25-, 1:107:2-, 1:107:12-, 1:107:17-, 1:107:23-, 1:108:1, 1:108:25-, 1:109:3-, 1:109:16-, 1:110:2-, 1:110:6-, 1:110:15-, 1:110:21-, 1:110:23-, 1:111:4-, 1:111:11-, 1:111:14-, 1:111:21-, 1:112:3-, 1:112:6-, 1:112:13-, 1:112:15-, 1:113:2-, 1:113:7-, 1:113:20-, 1:114:4-, 1:114:10-, 1:114:16-, 1:114:19-, 1:114:25-, 1:115:4-, 1:115:9-, 1:115:14-, 1:115:19-, 1:115:22-, 1:115:24-, 1:116:1-, 1:121:13-, 1:121:20-, 1:121:23-, 1:122:4-, 1:122:9-, 1:122:12-, 1:122:15-, 1:122:18-, 1:122:22-, 1:122:24-, 1:123:2-, 1:123:15-, 1:130:25-, 1:131:6-, 1:131:14-, 1:131:17-, 1:131:19-, 1:131:22-, 1:132:5-, 1:132:12-, 1:132:17-, 1:132:24-, 1:133:7-, 1:134:9-, 1:134:11-, 1:134:24-, 1:135:3-, 1:135:14-, 1:135:18-, 1:135:23-, 1:136:6-, 1:136:11-, 1:136:18-, 1:137:5-, 1:137:16-, 1:137:22-, 1:137:24-, 1:138:7-, 1:138:15-, 1:138:22-, 1:143:18-, 1:144:6-, 1:144:10-, 1:144:14-, 1:144:18-, 1:145:1-, 1:145:6

1:145:8-, 1:153:20-, 1:153:22-, 1:154:11-, 1:154:14-, 1:154:20-, 1:154:23-, 1:155:1-, 1:155:5-, 1:155:8-, 1:155:18-, 1:156:1-, 1:156:7-, 1:156:13-, 1:156:18-, 1:156:21-, 1:157:1-, 1:157:3-, 1:157:5-, 1:157:12-, 1:157:16, 1:157:24-, 1:158:3-, 1:158:6-, 1:158:11-, 1:158:14-, 1:158:18-, 1:158:20-, 1:158:25-, 1:159:2-, 1:159:8-, 1:159:10-, 1:159:16-, 1:159:19-, 1:159:22-, 1:159:24, 1:160:8-, 1:160:11-, 1:160:13-, 1:160:21-, 1:161:2-, 1:161:6-, 1:161:15-, 1:161:23-, 1:162:1-, 1:162:5-, 1:162:10-, 1:162:13-, 1:162:17

Bratt [31]- - 1:3:9-, 1:4:23-, 1:5:12-, 1:5:25-, 1:11:8-, 1:13:11-, 1:13:13-, 1:13:25-, 1:24:8-, 1:32:18-, 1:40:24-, 1:58:11-, 1:58:16-, 1:60:2-, 1:60:20-, 1:61:1-, 1:92:11-, 1:107:25-, 1:113:1-, 1:120:17-, 1:121:8-, 1:123:14-, 1:130:20-, 1:143:15-, 1:143:16-, 1:145:20-, 1:151:11-, 1:153:12-, 1:153:18-, 1:156:6-, 1:162:25

Bratt's [2]- - 1:121:1-, 1:150:5

break [7]- - 1:88:17-, 1:88:25-, 1:90:17-, 1:109:12-, 1:110:25-, 1:117:16-, 1:131:4

breakdown [1]- - 1:157:20

breaking [3]- - 1:108:17-, 1:109:1-, 1:123:1

bribe [3]- - 1:59:14-, 1:60:1-, 1:60:12

brief [9]- - 1:69:11-, 1:83:20-, 1:112:19-, 1:123:22-, 1:125:18-, 1:137:8-, 1:143:23-, 1:151:3-, 1:164:20

briefed [6]- - 1:44:11-, 1:44:17-, 1:46:1-, 1:55:12-, 1:137:17-, 1:160:25

briefing [11]- - 1:5:24-, 1:6:3-, 1:23:12-, 1:30:17-, 1:33:23-, 1:37:2-, 1:66:19-, 1:76:20-, 1:79:13-, 1:140:14

briefings [2]- - 1:19:11-, 1:39:22

briefly [2]- - 1:49:11-, 1:72:7

briefs [2]- - 1:38:21-, 1:140:23

bring [8]- - 1:9:6-, 1:11:16-, 1:18:12-, 1:37:11-, 1:125:24-, 1:151:11-, 1:155:4-, 1:164:6

bringing [6]- - 1:7:19-, 1:9:14-, 1:16:22-, 1:22:2-, 1:39:6-, 1:130:5

brings [1]- - 1:8:8

broad [1]- - 1:163:10

broken [2]- - 1:97:6-, 1:97:7

brought [19]- - 1:4:16-, 1:7:6-, 1:8:18-, 1:8:20-, 1:22:24-, 1:25:10-, 1:40:13-, 1:65:4-, 1:65:8-, 1:67:25-, 1:83:1-, 1:86:4-, 1:90:25-, 1:94:2-, 1:119:5-, 1:128:22-, 1:144:9-, 1:144:21-, 1:164:10

bulk [1]- - 1:158:6

bunch [1]- - 1:6:2

burden [1]- - 1:10:24

business [2]- - 1:89:23-, 1:148:17

butchered [1]- - 1:97:23

C

C)(1 [1]- - 1:130:17

calm [1]- - 1:55:11

camera [3]- - 1:26:13-, 1:148:1-, 1:148:3

campaign [2]- - 1:10:11-, 1:32:9

candidly [2]- - 1:65:7-, 1:87:25

Cannon [1]- - 1:68:8

cannot [11]- - 1:23:19-, 1:23:20-, 1:69:23-, 1:91:5-, 1:97:9-, 1:99:19-, 1:99:21-, 1:100:22-, 1:124:16-, 1:147:20-, 1:150:12

capital [3]- - 1:21:18-, 1:21:24-, 1:157:6

cards [1]- - 1:31:5

care [1]- - 1:134:17

careful [3]- - 1:52:15-, 1:52:21-, 1:64:11

Carlos [1]– - 1:3:6
carried [1]– - 1:155:21
carrot [1]– - 1:61:8
carver [1]– - 1:137:21
case [79]– - 1:3:3–, 1:3:6–, 1:6:21–, 1:9:2–, 1:9:9–, 1:11:21–, 1:12:11–, 1:16:20 –, 1:17:19–, 1:18:12–, 1:19:16–, 1:23:8–, 1:23:16–, 1:24:9–, 1:28:7–, 1:33:2–, 1:34:9–, 1:36:20–, 1:36:22–, 1:38:7–, 1:40:8–, 1:42:24–, 1:43:19–, 1:45:12–, 1:47:18 –, 1:47:23–, 1:49:18–, 1:58:20–, 1:59:15–, 1:63:7–, 1:64:6–, 1:72:10–, 1:72:11–, 1:72:19–, 1:72:20–, 1:72:22 –, 1:72:23–, 1:76:3–, 1:80:16 –, 1:83:9–, 1:83:10–, 1:85:7–, 1:85:22–, 1:86:14–, 1:91:8–, 1:99:5–, 1:100:20–, 1:100:22 –, 1:105:8–, 1:106:15–, 1:107:5–, 1:108:9–, 1:109:10 –, 1:110:16–, 1:110:18–, 1:118:13–, 1:125:15–, 1:125:25–, 1:126:2–, 1:137:8 –, 1:137:19–, 1:138:12, 1:139:7–, 1:144:1–, 1:145:17 –, 1:152:13–, 1:156:9–, 1:156:14–, 1:156:17–, 1:157:22–, 1:157:23–, 1:159:2–, 1:159:4–, 1:159:11 –, 1:159:12–, 1:164:21
cases [23]– - 1:4:10–, 1:23:6–, 1:23:20–, 1:24:3–, 1:30:16–, 1:30:18–, 1:47:4–, 1:47:23–, 1:49:12–, 1:49:14 –, 1:49:17–, 1:59:23–, 1:64:9 –, 1:64:18–, 1:72:24–, 1:76:12–, 1:113:3–, 1:142:5 –, 1:143:21–, 1:143:22–, 1:145:20–, 1:145:23
Cassisi [1]– - 1:55:25
catch [1]– - 1:76:23
causation [6]– - 1:47:25–, 1:48:5–, 1:100:18–, 1:104:21 –, 1:120:18
caused [12]– - 1:95:16–, 1:96:2–, 1:96:9–, 1:97:12–, 1:97:16–, 1:99:9–, 1:99:11–, 1:101:10–, 1:105:5–, 1:105:7 –, 1:115:15–, 1:164:18
causing [4]– - 1:100:11–, 1:104:15–, 1:104:25–, 1:151:9
caution [2]– - 1:77:7–, 1:81:19

caveat [1]– - 1:24:24
CCTV [1]– - 1:42:19
certain [3]– - 1:77:8–, 1:79:15–, 1:141:11
certainly [9]– - 1:11:15–, 1:16:10–, 1:17:18–, 1:26:3–, 1:56:15–, 1:63:18–, 1:100:5 –, 1:111:6–, 1:161:18
certification [26]– - 1:95:17–, 1:96:2–, 1:96:10–, 1:97:12–, 1:97:17–, 1:99:9–, 1:99:12–, 1:99:14–, 1:99:25 –, 1:101:10–, 1:101:14–, 1:102:2–, 1:102:4–, 1:102:6 –, 1:102:10–, 1:102:11–, 1:102:13–, 1:104:9–, 1:104:18–, 1:105:5–, 1:105:10–, 1:105:25–, 1:106:9–, 1:115:11–, 1:115:16–, 1:115:23
cetera [5]– - 1:36:11–, 1:49:25–, 1:53:18–, 1:102:9 –, 1:115:9
chain [1]– - 1:105:14
chairs [1]– - 1:145:13
challenge [4]– - 1:118:23 –, 1:119:3–, 1:119:5–, 1:134:25
challenged [5]– - 1:8:16–, 1:52:13–, 1:123:20–, 1:141:7 –, 1:141:8
challenges [4]– - 1:8:7–, 1:64:24–, 1:123:17–, 1:153:23
challenging [2]– - 1:26:19 –, 1:27:22
chambers [1]– - 1:88:18
chance [2]– - 1:82:19–, 1:104:2
changed [1]– - 1:26:7
changes [1]– - 1:141:23
characterization [6]– - 1:11:12–, 1:52:7–, 1:60:23–, 1:82:16–, 1:92:21–, 1:151:7
characterizations [1]– - 1:52:21
characterize [1]– - 1:49:16
characterized [3]– - 1:54:14–, 1:57:25–, 1:61:19
characterizing [1]– - 1:60:18
charge [41]– - 1:8:21–, 1:9:6–, 1:11:25–, 1:12:7–, 1:12:11–, 1:12:15–, 1:12:16

–, 1:12:19–, 1:12:24–, 1:15:3 –, 1:15:4–, 1:31:18–, 1:31:19 –, 1:41:25–, 1:57:15–, 1:64:1 –, 1:82:22–, 1:94:14–, 1:95:10–, 1:96:7–, 1:96:19–, 1:98:9–, 1:98:17–, 1:101:19 –, 1:108:3–, 1:110:13–, 1:110:16–, 1:112:15–, 1:113:12–, 1:116:9–, 1:118:15–, 1:129:6–, 1:132:7 –, 1:132:8–, 1:132:10–, 1:143:13–, 1:146:1–, 1:154:2 –, 1:154:13–, 1:155:24
charged [19]– - 1:17:15–, 1:34:9–, 1:82:25–, 1:83:14–, 1:83:15–, 1:95:4–, 1:95:7–, 1:98:2–, 1:113:25–, 1:114:2 –, 1:117:2–, 1:117:4–, 1:120:5–, 1:124:21–, 1:132:6 –, 1:145:9–, 1:151:10–, 1:155:19
charges [19]– - 1:8:9–, 1:8:15–, 1:8:17–, 1:8:20–, 1:16:23–, 1:16:25–, 1:17:6–, 1:22:2–, 1:30:23–, 1:45:1–, 1:45:5–, 1:47:21–, 1:75:24–, 1:85:21–, 1:87:10–, 1:130:5 –, 1:139:11–, 1:140:22–, 1:164:10
charging [6]– - 1:47:20–, 1:95:18–, 1:113:9–, 1:124:18 –, 1:125:4–, 1:137:10
chart [3]– - 1:150:20–, 1:158:5–, 1:162:15
charts [1]– - 1:150:25
chat [1]– - 1:44:3
check [2]– - 1:62:17–, 1:63:3
Chief [3]– - 1:65:20–, 1:65:23–, 1:66:15
choice [1]– - 1:132:5
choose [1]– - 1:140:24
Chris [1]– - 1:3:15
chronology [5]– - 1:16:3–, 1:65:14–, 1:65:15–, 1:87:16 –, 1:90:1
CIPA [1]– - 1:23:9
circa [1]– - 1:13:10
circle [2]– - 1:28:2–, 1:79:10
circuit [1]– - 1:142:3
Circuit [11]– - 1:9:13–, 1:36:24–, 1:46:8–, 1:47:18–, 1:68:8–, 1:72:21–, 1:106:15 –, 1:108:10–, 1:137:8–, 1:143:9–, 1:156:16

circuits [4]– - 1:9:11–, 1:36:24–, 1:107:19–, 1:108:11
circumstances [2]– - 1:8:3–, 1:8:22
circumstantial [1]– - 1:11:22–, 1:17:18–, 1:25:18 –, 1:29:19
citation [4]– - 1:89:10–, 1:106:14–, 1:140:13–, 1:156:15
citations [1]– - 1:80:16
cite [17]– - 1:9:9–, 1:23:6–, 1:24:3–, 1:24:10–, 1:34:18–, 1:36:21–, 1:38:5–, 1:75:1–, 1:91:11–, 1:100:20–, 1:107:13–, 1:108:9–, 1:109:10–, 1:110:16–, 1:115:6–, 1:145:17
cited [4]– - 1:47:5–, 1:72:12–, 1:87:11–, 1:137:8
cites [3]– - 1:36:24–, 1:72:19–, 1:95:9
citing [3]– - 1:94:15–, 1:117:9–, 1:143:21
civil [3]– - 1:125:17–, 1:125:20–, 1:125:21
civilian [1]– - 1:20:24
claim [31]– - 1:9:15–, 1:9:16–, 1:10:18–, 1:11:2–, 1:17:20–, 1:22:23–, 1:23:1–, 1:23:18–, 1:24:17–, 1:25:8–, 1:29:23–, 1:37:21–, 1:38:6–, 1:38:9–, 1:47:16–, 1:47:22–, 1:49:15–, 1:49:19–, 1:51:17 –, 1:58:1–, 1:58:2–, 1:68:3–, 1:68:7–, 1:68:11–, 1:72:14–, 1:74:19–, 1:85:20–, 1:86:19 –, 1:97:11–, 1:141:12–, 1:146:15
claimed [2]– - 1:59:15–, 1:117:11
claims [3]– - 1:11:8–, 1:35:23–, 1:125:3
clarification [3]– - 1:87:4 –, 1:102:3–, 1:146:22
clarifies [1]– - 1:67:10
clarify [2]– - 1:26:18–, 1:83:20
clarifying [1]– - 1:32:3
clarity [2]– - 1:4:18–, 1:122:1
classification [14]– - 1:13:17–, 1:34:20–, 1:101:12 –, 1:124:6–, 1:126:18–,

1:127:3_, 1:134:22_, 1:135:8
_, 1:135:17_, 1:136:4_,
1:136:9_, 1:137:4_, 1:139:20
_, 1:140:1

classification-marked
[1]_ - 1:139:20

classified [5]_ - 1:17:5_,
1:34:15_, 1:34:17_, 1:94:24
_, 1:136:20

clear [36]_ - 1:15:1_,
1:23:17_, 1:25:24_, 1:25:25
_, 1:26:10_, 1:32:9_, 1:47:5_,
1:47:23_, 1:48:8_, 1:65:21_,
1:65:23_, 1:70:7_, 1:70:19_,
1:74:22_, 1:75:2_, 1:85:4_,
1:85:22_, 1:86:3_, 1:87:9_,
1:88:1_, 1:89:5_, 1:90:8_,
1:90:9_, 1:100:20_, 1:100:22
_, 1:106:5_, 1:119:8_,
1:120:20_, 1:125:6_, 1:128:1
_, 1:129:6_, 1:129:7_,
1:141:21_, 1:143:25_,
1:146:2_, 1:163:14

clearly [4]_ - 1:28:17_,
1:45:7_, 1:68:23_, 1:89:10

clerk [1]_ - 1:3:22

client [9]_ - 1:25:12_,
1:29:21_, 1:57:8_, 1:57:15_,
1:59:17_, 1:78:10_, 1:119:18
_, 1:152:6_, 1:152:23

clients [2]_ - 1:30:1_,
1:48:24

Clinton's [1]_ - 1:35:2

close [9]_ - 1:46:15_,
1:68:17_, 1:68:19_, 1:68:22
_, 1:70:20_, 1:71:24_,
1:95:12_, 1:137:3_, 1:162:12

closely [3]_ - 1:162:4_,
1:162:5_, 1:162:6

closely-held [1]_ -
1:162:4

closer [1]_ - 1:26:10

closing [1]_ - 1:153:25

club [1]_ - 1:159:20

clue [1]_ - 1:89:24

co [5]_ - 1:70:6_, 1:114:22
_, 1:126:23_, 1:134:21_,
1:137:13

co-defendant [1]_ -
1:114:22

co-defendants [4]_ -
1:70:6_, 1:126:23_, 1:134:21
_, 1:137:13

coconspirator [9]_ -
1:109:6_, 1:109:21_,
1:110:12_, 1:112:16_,

1:112:21_, 1:116:2_,
1:127:21_, 1:127:22_,
1:155:20

coconspirators [2]_ -
1:110:8_, 1:110:10

Code [2]_ - 1:99:17_,
1:100:17

coerce [1]_ - 1:61:1

coercive [1]_ - 1:24:1

coffee [2]_ - 1:44:3_,
1:46:18

cognizable [1]_ - 1:47:10

coin [1]_ - 1:61:17

colleague [5]_ - 1:30:15_,
1:54:3_, 1:78:1_, 1:82:15_,
1:149:18

colleagues [4]_ - 1:44:4_,
1:62:18_, 1:87:6_, 1:142:20

colloquy [1]_ - 1:163:11

colorable [4]_ - 1:11:20_,
1:16:4_, 1:17:20_, 1:29:23

Columbia [8]_ - 1:12:23_,
1:19:5_, 1:19:17_, 1:30:7_,
1:37:22_, 1:58:14_, 1:82:6_,
1:84:12

combination [1]_ -
1:129:21

combine [1]_ - 1:117:10

combined [3]_ - 1:58:19_,
1:118:20_, 1:118:21

coming [1]_ - 1:12:25_,
1:37:11_, 1:37:16

comings [1]_ - 1:148:9

comment [2]_ - 1:29:5_,
1:63:25

comments [6]_ - 1:29:8_,
1:53:5_, 1:53:20_, 1:86:5_,
1:162:15

commission [1]_ -
1:10:22

committed [11]_ - 1:71:15
_, 1:89:8_, 1:97:4_, 1:106:18
_, 1:108:5_, 1:115:14_,
1:116:1_, 1:124:12_,
1:124:17_, 1:126:24_,
1:149:20

committing [2]_ -
1:100:23_, 1:127:22

common [1]_ - 1:156:21

commonality [1]_ -
1:124:14

communicate [3]_ -
1:23:22_, 1:23:24_, 1:62:10

communications [17]_ -

1:10:17_, 1:10:23_, 1:10:25
_, 1:11:3_, 1:22:10_, 1:22:12
_, 1:22:17_, 1:22:21_,
1:23:21_, 1:24:21_, 1:28:13
_, 1:28:19_, 1:32:15_,
1:90:21_, 1:91:13_, 1:152:9
_, 1:152:10

comparable [3]_ - 1:8:23
_, 1:70:6_, 1:71:1

comparator [1]_ - 1:71:14

comparators [12]_ -
1:33:22_, 1:33:23_, 1:43:22
_, 1:68:4_, 1:68:18_, 1:69:2_,
1:69:4_, 1:69:6_, 1:69:7_,
1:69:19_, 1:69:21_, 1:70:9

compel [12]_ - 1:28:15_,
1:28:16_, 1:28:17_, 1:36:7_,
1:36:13_, 1:36:16_, 1:37:2_,
1:38:3_, 1:49:25_, 1:67:21_,
1:90:16_, 1:93:22

compelled [1]_ - 1:47:8

compelling [2]_ - 1:50:17
_, 1:75:17

competing [1]_ - 1:80:14

complaining [1]_ -
1:65:10

complaint [1]_ - 1:30:15

completeness [1]_ -
1:5:2

compliance [1]_ - 1:61:2

complicates [1]_ -
1:124:20

complicating [1]_ -
1:163:16

complications [1]_ -
1:126:1

comply [2]_ - 1:60:22_,
1:60:24

compulsion [1]_ - 1:47:9

conceal [20]_ - 1:94:18_,
1:111:16_, 1:116:18_,
1:117:5_, 1:118:18_,
1:119:22_, 1:120:12_,
1:124:19_, 1:126:9_,
1:131:13_, 1:131:14_,
1:132:3_, 1:132:10_,
1:132:25_, 1:134:1_,
1:136:21_, 1:147:5_, 1:147:7
_, 1:147:8_, 1:155:13

Conceal [1]_ - 1:133:13

concealed [6]_ - 1:95:13
_, 1:96:25_, 1:126:17_,
1:127:5_, 1:127:25_,
1:129:13

concealing [6]_ - 1:115:9

1:128:2_, 1:129:8_,
1:129:22_, 1:134:2_, 1:134:4
_, 1:124:1

concealment [1]_ -
1:124:1

conceals [1]_ - 1:96:16

concede [2]_ - 1:8:25_,
1:104:8

conceded [1]_ - 1:147:10

concededly [1]_ -
1:160:25

concedes [1]_ - 1:151:11

conceding [4]_ - 1:51:20
_, 1:74:13_, 1:74:14_,
1:139:13

conceived [1]_ - 1:100:2

concept [1]_ - 1:156:10

concern [7]_ - 1:29:6_,
1:54:20_, 1:65:16_, 1:78:4_,
1:78:7_, 1:120:15_, 1:142:10

concerned [4]_ - 1:23:17
_, 1:142:15_, 1:153:19_,
1:165:4

concerning [12]_ - 1:9:3_,
1:9:21_, 1:22:11_, 1:22:14_,
1:24:21_, 1:26:21_, 1:27:17
_, 1:28:13_, 1:28:19_,
1:32:15_, 1:90:21_, 1:159:18

concerns [6]_ - 1:38:20_,
1:39:3_, 1:53:17_, 1:76:19_,
1:126:7_, 1:158:16

concession [1]_ - 1:7:21

concise [2]_ - 1:118:20_,
1:125:6

conclude [1]_ - 1:57:22

concluded [2]_ - 1:153:6
_, 1:165:8

concludes [1]_ - 1:72:17

conclusion [4]_ - 1:8:4_,
1:9:1_, 1:11:23_, 1:112:22

conclusively [1]_ -
1:42:19

conclusory [1]_ - 1:48:3

conduct [24]_ - 1:34:2_,
1:54:22_, 1:71:25_, 1:86:13
_, 1:101:18_, 1:108:18_,
1:108:22_, 1:108:23_,
1:114:3_, 1:114:9_, 1:118:3
_, 1:118:14_, 1:121:11_,
1:122:5_, 1:130:10_, 1:131:1
_, 1:131:8_, 1:132:20_,
1:133:2_, 1:133:5_, 1:133:23
_, 1:134:16_, 1:138:10_,
1:151:8

conducted [4]_ - 1:16:1_,
1:63:20_, 1:102:7_, 1:102:8

conduit [1] - 1:105:12

conference [1] - 1:125:5

conferred [1] - 1:103:6

confessed [1] - 1:83:19

confirm [3] - 1:10:25.., 1:15:12.., 1:52:24

confuse [1] - 1:106:21

confused [1] - 1:13:23.., 1:79:11

confusing [8] - 1:78:17.., 1:83:20.., 1:108:24.., 1:117:23.., 1:121:17.., 1:124:18.., 1:126:5.., 1:134:13

confusion [7] - 1:79:4.., 1:79:5.., 1:99:4.., 1:113:19.., 1:117:17.., 1:141:18.., 1:151:9

Congress [1] - 1:35:4

conjunction [2] - 1:81:8.., 1:158:15

conjunctive [1] - 1:113:13

connection [5] - 1:24:12.., 1:67:24.., 1:74:8.., 1:74:12.., 1:86:3

consequence [2] - 1:83:16.., 1:101:7

consequences [1] - 1:151:13

consider [2] - 1:120:24.., 1:123:10

consideration [4] - 1:5:18.., 1:6:11.., 1:27:2.., 1:36:2

considering [1] - 1:12:19

consist [2] - 1:5:22.., 1:85:4

consistent [5] - 1:53:6.., 1:85:2.., 1:85:7.., 1:108:10.., 1:123:3

conspiracies [1] - 1:110:5

conspiracy [18] - 1:15:2.., 1:101:10.., 1:101:19.., 1:101:21.., 1:109:25.., 1:110:13.., 1:112:2.., 1:112:7.., 1:112:9.., 1:112:12.., 1:112:18.., 1:119:16.., 1:132:9.., 1:136:19.., 1:136:25.., 1:137:12.., 1:138:12.., 1:139:3

conspired [2] - 1:116:22.., 1:118:8

constellation [1] - 1:71:25

constitute [1] - 1:46:23

constituting [1] - 1:116:11

Constitution [1] - 1:8:13

constitution [1] - 1:34:12

constitutional [8] - 1:9:8.., 1:24:12.., 1:24:15.., 1:32:13.., 1:85:24.., 1:85:25.., 1:123:20.., 1:149:22

consult [1] - 1:161:17

contacted [1] - 1:33:13

contacts [3] - 1:91:24.., 1:92:9.., 1:92:18

contain [4] - 1:21:10.., 1:104:21.., 1:124:6.., 1:134:3

contained [1] - 1:6:4.., 1:17:5.., 1:34:20.., 1:36:6.., 1:36:11.., 1:47:1.., 1:94:24.., 1:125:12.., 1:126:17.., 1:127:2.., 1:128:1.., 1:134:22.., 1:139:19.., 1:140:1.., 1:157:10

containing [1] - 1:6:7.., 1:13:16

contains [1] - 1:6:3

contemplate [1] - 1:125:6

contemplates [1] - 1:81:1

contemporaneous [2] - 1:84:10

contended [1] - 1:12:10

content [1] - 1:152:5

contents [1] - 1:17:3

contested [1] - 1:34:4

context [14] - 1:8:6.., 1:53:9.., 1:54:7.., 1:73:2.., 1:74:5.., 1:74:10.., 1:75:22.., 1:125:17.., 1:125:20.., 1:125:21.., 1:128:21.., 1:139:4.., 1:140:21.., 1:146:10

contingent [1] - 1:105:23

continue [3] - 1:12:6.., 1:54:1.., 1:63:25

continued [1] - 1:95:14

contradict [1] - 1:10:20

contrary [2] - 1:99:15.., 1:140:10

control [1] - 1:89:10

convened [1] - 1:37:7

conversation [9] - 1:30:11.., 1:32:6.., 1:34:20.., 1:147:14.., 1:148:20.., 1:149:14.., 1:149:19.., 1:150:12.., 1:154:2

conversations [2] - 1:22:3.., 1:30:24

convert [1] - 1:110:4

conveyed [2] - 1:103:13.., 1:105:12

conveys [1] - 1:105:14

conviction [6] - 1:8:7.., 1:8:10.., 1:21:25.., 1:140:18.., 1:143:22.., 1:145:20

convince [1] - 1:29:20.., 1:154:6

convincing [1] - 1:70:7

cooperate [21] - 1:16:20.., 1:21:17.., 1:21:18.., 1:25:20.., 1:29:22.., 1:30:1.., 1:32:10.., 1:35:10.., 1:47:20.., 1:58:24.., 1:82:21.., 1:82:24.., 1:83:5.., 1:83:7.., 1:83:13.., 1:83:16.., 1:84:17.., 1:84:22.., 1:85:24.., 1:86:8.., 1:86:9

cooperating [2] - 1:21:24.., 1:47:15

cooperation [1] - 1:46:21

cooperative [2] - 1:21:20.., 1:21:23

cooperator [1] - 1:16:19

copy [3] - 1:87:8.., 1:102:13.., 1:153:4

copying [1] - 1:88:18

cordial [1] - 1:14:22

corners [2] - 1:119:7.., 1:125:2

correct [78] - 1:4:4.., 1:4:23.., 1:5:1.., 1:5:12.., 1:5:13.., 1:5:14.., 1:7:10.., 1:11:14.., 1:15:16.., 1:18:16.., 1:20:16.., 1:21:6.., 1:23:5.., 1:28:11, 1:40:17.., 1:59:7.., 1:59:21.., 1:59:25.., 1:63:13.., 1:67:3.., 1:67:4.., 1:73:16.., 1:77:16.., 1:81:25.., 1:82:12.., 1:88:5.., 1:89:3.., 1:89:11.., 1:90:1.., 1:91:19.., 1:91:25.., 1:92:1.., 1:92:5.., 1:92:19.., 1:92:20.., 1:92:24.., 1:93:2.., 1:93:6.., 1:98:6.., 1:100:16.., 1:101:16.., 1:101:24.., 1:102:1.., 1:102:20.., 1:102:22.., 1:104:14..,

1:105:6.., 1:105:16.., 1:105:17, 1:106:7, 1:106:10.., 1:106:13.., 1:106:25.., 1:107:2.., 1:107:23.., 1:115:20.., 1:115:24.., 1:121:13.., 1:125:24.., 1:128:6.., 1:128:8.., 1:134:9.., 1:134:24.., 1:135:13.., 1:135:14.., 1:142:20.., 1:143:18.., 1:144:5.., 1:144:6.., 1:145:1.., 1:145:6.., 1:146:23.., 1:154:12.., 1:156:6.., 1:156:7.., 1:157:3.., 1:159:16

corrected [1] - 1:60:13

correction [3] - 1:41:10.., 1:60:1.., 1:60:7

correctly [2] - 1:39:20.., 1:106:4

correspondence [1] - 1:90:20

corresponding [3] - 1:4:18.., 1:5:9.., 1:5:12

corrupt [1] - 1:154:25

corruption [1] - 1:12:20

corruptly [23] - 1:121:10.., 1:121:12.., 1:121:19.., 1:121:25.., 1:122:19.., 1:123:12.., 1:123:21.., 1:127:5.., 1:131:8.., 1:131:9.., 1:131:13.., 1:131:14.., 1:132:3.., 1:132:18.., 1:132:25.., 1:147:6.., 1:147:8.., 1:154:16.., 1:154:24.., 1:155:3.., 1:155:8

Counsel [6] - 1:3:8.., 1:28:21.., 1:67:2.., 1:79:18.., 1:121:6.., 1:149:11

counsel [50] - 1:5:24.., 1:6:18.., 1:7:19.., 1:9:14.., 1:10:2.., 1:10:9.., 1:13:7.., 1:14:10.., 1:14:14.., 1:17:7.., 1:17:11.., 1:21:17.., 1:21:19.., 1:21:22.., 1:22:22.., 1:23:12.., 1:23:18.., 1:23:21.., 1:23:23.., 1:23:24.., 1:24:7.., 1:24:14.., 1:24:18.., 1:25:16.., 1:25:18.., 1:27:1.., 1:27:6.., 1:27:13.., 1:30:14.., 1:30:24.., 1:31:6.., 1:35:18.., 1:40:21.., 1:43:10.., 1:45:1.., 1:45:3.., 1:49:9.., 1:52:22.., 1:59:21.., 1:67:2.., 1:78:22.., 1:79:12.., 1:81:4.., 1:81:20.., 1:84:16.., 1:85:9.., 1:88:12.., 1:88:19.., 1:90:21.., 1:91:14

counsel's [2] - 1:83:2.., 1:164:16

Counsel's [45].. - 1:4:20.., 1:5:3.., 1:5:10.., 1:5:21.., 1:5:25.., 1:10:24.., 1:14:5.., 1:18:21.., 1:22:8.., 1:22:25.., 1:23:10.., 1:26:16.., 1:28:5.., 1:37:19.., 1:38:4.., 1:40:9.., 1:49:8.., 1:59:12.., 1:80:25.., 1:81:10.., 1:81:16.., 1:90:23 .., 1:92:7.., 1:93:11.., 1:95:9.., 1:95:21.., 1:98:17.., 1:100:5 .., 1:103:7.., 1:104:3.., 1:116:13.., 1:124:23.., 1:125:14.., 1:125:23.., 1:127:19.., 1:129:10.., 1:130:4.., 1:139:13.., 1:141:11.., 1:147:9.., 1:149:16.., 1:150:4.., 1:163:11.., 1:163:19.., 1:164:7

counselor [1].. - 1:45:10

Count [61].. - 1:94:11.., 1:94:17.., 1:95:13.., 1:95:15 .., 1:95:20.., 1:96:7.., 1:99:6.., 1:99:8.., 1:99:10.., 1:99:11.., 1:101:5.., 1:101:6.., 1:101:8 .., 1:101:17.., 1:104:6.., 1:108:20.., 1:109:14.., 1:109:19.., 1:111:9.., 1:111:10.., 1:111:15.., 1:112:21.., 1:114:24.., 1:115:13.., 1:116:14.., 1:118:2.., 1:118:3.., 1:118:9 .., 1:119:19.., 1:119:25.., 1:120:11.., 1:120:14.., 1:120:17.., 1:120:25.., 1:121:2.., 1:121:9.., 1:126:7 .., 1:128:24.., 1:128:25.., 1:131:6.., 1:133:10.., 1:133:13.., 1:134:20.., 1:135:1.., 1:136:5.., 1:138:24 .., 1:139:1.., 1:143:17.., 1:143:20.., 1:146:23.., 1:146:24.., 1:147:2.., 1:147:3 .., 1:150:6.., 1:150:7.., 1:153:19.., 1:158:8.., 1:158:9 .., 1:158:13

count [31].. - 1:45:7.., 1:95:11.., 1:96:7.., 1:98:2.., 1:98:18.., 1:100:2.., 1:108:13 .., 1:108:16.., 1:108:18.., 1:108:22.., 1:109:7.., 1:109:11.., 1:109:23.., 1:110:9.., 1:110:10.., 1:110:25.., 1:112:8.., 1:112:12.., 1:113:9.., 1:113:16.., 1:114:17.., 1:114:22.., 1:117:8.., 1:119:16.., 1:122:11.., 1:122:12.., 1:123:13.., 1:131:10.., 1:145:11..,

1:155:18.., 1:163:21

Counts [25].. - 1:94:11.., 1:94:13.., 1:97:11.., 1:98:8.., 1:98:9.., 1:100:25.., 1:103:23 .., 1:108:2.., 1:112:11.., 1:123:21.., 1:123:23.., 1:124:11.., 1:126:7.., 1:129:2 .., 1:129:4.., 1:129:21.., 1:139:2.., 1:140:12.., 1:140:24.., 1:141:8.., 1:150:15.., 1:154:8

counts [45].. - 1:8:17.., 1:94:14.., 1:95:5.., 1:97:6.., 1:97:8.., 1:97:19.., 1:98:4.., 1:98:12.., 1:98:14.., 1:104:2 .., 1:104:4.., 1:107:25.., 1:108:4.., 1:110:5.., 1:112:2 .., 1:113:18.., 1:116:5.., 1:121:7.., 1:123:7.., 1:123:9 .., 1:123:25.., 1:124:19.., 1:125:9.., 1:125:10.., 1:126:22.., 1:129:18.., 1:129:20.., 1:129:23.., 1:130:3.., 1:130:20.., 1:130:23.., 1:133:4.., 1:133:6 .., 1:133:8.., 1:134:16.., 1:140:9.., 1:141:7.., 1:142:5 .., 1:142:6.., 1:145:15.., 1:148:19.., 1:150:8.., 1:159:21.., 1:162:3

couple [15].. - 1:42:9.., 1:42:11.., 1:43:20.., 1:43:22 .., 1:56:7.., 1:56:13.., 1:75:12 .., 1:78:2.., 1:108:2.., 1:108:7 .., 1:151:14.., 1:153:13.., 1:156:24

course [20].. - 1:7:4.., 1:9:5 .., 1:36:25.., 1:37:9.., 1:38:3.., 1:51:10.., 1:58:1.., 1:81:6.., 1:86:13.., 1:89:12.., 1:92:25 .., 1:104:5.., 1:121:18.., 1:123:19.., 1:130:17.., 1:134:16.., 1:138:4.., 1:140:17.., 1:152:14.., 1:157:22

courses [2].. - 1:29:10.., 1:29:16

Court [112].. - 1:3:1.., 1:3:16.., 1:5:23.., 1:6:9.., 1:6:13.., 1:6:15.., 1:6:20.., 1:7:24.., 1:7:25.., 1:8:1.., 1:8:5.., 1:8:23.., 1:8:25.., 1:9:5.., 1:9:24.., 1:10:1.., 1:10:2.., 1:10:3.., 1:10:6.., 1:10:7.., 1:11:4.., 1:11:19.., 1:12:13.., 1:13:19.., 1:14:3.., 1:17:3.., 1:19:8.., 1:19:11.., 1:19:25.., 1:21:13.., 1:21:14 .., 1:21:20.., 1:24:11..,

1:24:19.., 1:24:25.., 1:25:1.., 1:26:1.., 1:26:8.., 1:26:22.., 1:26:23.., 1:26:24.., 1:26:25 .., 1:27:2.., 1:27:6.., 1:27:15.., 1:28:15.., 1:29:11.., 1:30:17 .., 1:35:25.., 1:36:25.., 1:37:20.., 1:37:21.., 1:38:10 .., 1:39:15.., 1:39:20.., 1:42:8 .., 1:42:10.., 1:49:12.., 1:49:22.., 1:50:7.., 1:55:12.., 1:64:25.., 1:66:18.., 1:72:17 .., 1:73:18.., 1:75:5.., 1:75:15 .., 1:79:23.., 1:81:6.., 1:81:24 .., 1:82:5.., 1:86:16.., 1:86:21 .., 1:88:17.., 1:91:4.., 1:98:20 .., 1:102:14.., 1:106:21.., 1:111:6.., 1:112:24.., 1:116:21.., 1:117:12.., 1:117:22.., 1:119:1.., 1:119:7 .., 1:121:25.., 1:122:13.., 1:124:22.., 1:128:20.., 1:131:22.., 1:131:23.., 1:131:24.., 1:132:5.., 1:135:3 .., 1:140:15.., 1:141:3.., 1:141:22.., 1:143:18.., 1:153:25.., 1:157:16.., 1:158:21.., 1:161:6.., 1:162:19.., 1:162:21.., 1:162:23.., 1:163:6.., 1:163:7 .., 1:164:21.., 1:165:6

court [23].. - 1:4:9.., 1:7:21 .., 1:9:9.., 1:18:14.., 1:18:18.., 1:18:23.., 1:18:25.., 1:26:4.., 1:30:18.., 1:36:22.., 1:38:9.., 1:40:2.., 1:40:6.., 1:58:13.., 1:58:18.., 1:58:23.., 1:59:23 .., 1:82:1.., 1:125:21.., 1:125:22.., 1:146:16.., 1:152:15.., 1:152:22

COURT [462].. - 1:3:2.., 1:3:12.., 1:3:18.., 1:3:24.., 1:4:3.., 1:4:7.., 1:5:2.., 1:5:7.., 1:5:15.., 1:5:18.., 1:6:23.., 1:6:25.., 1:7:2.., 1:7:12.., 1:7:17.., 1:10:13.., 1:11:16.., 1:12:3.., 1:12:6.., 1:13:22.., 1:15:5.., 1:15:9.., 1:15:14.., 1:15:20.., 1:16:3.., 1:16:15.., 1:17:8.., 1:18:3.., 1:18:7.., 1:18:10.., 1:20:14.., 1:20:18 .., 1:20:25.., 1:21:2.., 1:21:9.., 1:22:6.., 1:22:14.., 1:22:21.., 1:23:5.., 1:23:15.., 1:24:20.., 1:26:6.., 1:26:16.., 1:27:12.., 1:28:2.., 1:28:9.., 1:28:16.., 1:28:20.., 1:29:4.., 1:29:25.., 1:30:8.., 1:32:14.., 1:32:21.., 1:33:3.., 1:33:8.., 1:33:11.., 1:33:13.., 1:33:17.., 1:34:4.., 1:35:11.., 1:36:5.., 1:36:10..,

1:37:5.., 1:37:15.., 1:37:25.., 1:38:15.., 1:38:19.., 1:40:12 .., 1:40:15.., 1:40:18.., 1:40:23.., 1:43:8.., 1:43:13.., 1:43:25.., 1:44:10.., 1:44:13 .., 1:44:17.., 1:44:24.., 1:45:20.., 1:45:23.., 1:46:4.., 1:49:24.., 1:50:13.., 1:50:19 .., 1:51:11.., 1:51:22.., 1:51:24.., 1:52:6.., 1:52:12.., 1:52:18.., 1:52:20.., 1:53:3.., 1:53:13.., 1:53:23.., 1:54:2.., 1:54:17.., 1:55:6.., 1:55:10.., 1:55:20.., 1:55:25.., 1:56:4.., 1:56:15.., 1:56:21.., 1:56:25 .., 1:57:2.., 1:58:5.., 1:58:7.., 1:58:9.., 1:59:7.., 1:60:5.., 1:60:7.., 1:61:5.., 1:61:7.., 1:62:3.., 1:62:12.., 1:62:15.., 1:62:19.., 1:62:23.., 1:62:25 .., 1:63:6.., 1:63:11.., 1:63:18 .., 1:64:6.., 1:64:13.., 1:64:22 .., 1:65:13.., 1:66:9.., 1:66:16 .., 1:66:23.., 1:66:25.., 1:67:5 .., 1:67:9.., 1:67:17.., 1:67:24 .., 1:70:10.., 1:70:21.., 1:70:25.., 1:71:25.., 1:72:3.., 1:72:6.., 1:72:9.., 1:73:3.., 1:73:11.., 1:73:13.., 1:73:16 .., 1:73:25.., 1:75:11.., 1:76:5, 1:76:15.., 1:76:18.., 1:76:25.., 1:77:3.., 1:77:10.., 1:77:15.., 1:77:18.., 1:77:22 .., 1:77:25.., 1:78:11.., 1:78:13.., 1:78:20.., 1:79:2.., 1:79:10.., 1:79:15.., 1:79:17 .., 1:80:1.., 1:80:4.., 1:80:13.., 1:80:21.., 1:81:11.., 1:82:7.., 1:82:10.., 1:82:19.., 1:83:9.., 1:83:17.., 1:83:22.., 1:84:4.., 1:84:24.., 1:85:15.., 1:86:3.., 1:86:11.., 1:86:22.., 1:86:25 .., 1:87:2.., 1:87:5.., 1:87:11.., 1:87:13.., 1:87:16.., 1:87:21 .., 1:88:2.., 1:88:7.., 1:88:14.., 1:88:18.., 1:88:22.., 1:88:9.., 1:89:18.., 1:89:23.., 1:90:6.., 1:90:11.., 1:90:15.., 1:91:15 .., 1:91:22.., 1:92:2.., 1:92:6.., 1:92:12.., 1:92:17.., 1:92:22 .., 1:92:25.., 1:93:3.., 1:93:7.., 1:93:18.., 1:93:25.., 1:95:24 .., 1:96:4.., 1:96:7.., 1:96:11.., 1:96:15.., 1:96:22.., 1:97:2.., 1:97:5.., 1:97:21.., 1:98:4.., 1:98:7.., 1:98:12.., 1:99:16.., 1:99:24.., 1:100:14.., 1:100:17.., 1:100:24.., 1:101:7.., 1:101:16.., 1:101:22.., 1:101:25.., 1:102:16.., 1:102:18..,

1:102:21_, 1:102:24_, 1:103:2_, 1:103:4_, 1:103:11_, 1:103:15_, 1:103:19_, 1:103:23_, 1:104:1_, 1:104:6_, 1:104:11_, 1:104:15_, 1:104:18_, 1:104:23_, 1:105:2_, 1:105:8_, 1:106:5_, 1:106:8_, 1:106:11_, 1:106:14_, 1:106:23_, 1:107:1_, 1:107:3_, 1:107:9_, 1:107:15_, 1:107:21_, 1:107:24_, 1:108:15_, 1:109:1_, 1:109:12_, 1:109:24_, 1:110:4_, 1:110:13_, 1:110:19_, 1:110:22_, 1:110:24_, 1:111:8_, 1:111:13_, 1:111:19_, 1:112:1_, 1:112:5_, 1:112:10_, 1:112:14_, 1:112:20_, 1:113:5_, 1:113:11_, 1:114:2_, 1:114:6_, 1:114:12_, 1:114:18_, 1:114:23_, 1:115:1_, 1:115:8_, 1:115:12_, 1:115:17_, 1:115:21_, 1:115:23_, 1:115:25_, 1:116:3_, 1:117:15_, 1:118:1_, 1:118:12_, 1:118:22_, 1:118:25_, 1:119:9_, 1:119:17_, 1:119:24_, 1:120:14_, 1:120:23, 1:121:4_, 1:121:6_, 1:121:15_, 1:121:22_, 1:122:3_, 1:122:7_, 1:122:10_, 1:122:14_, 1:122:17_, 1:122:20_, 1:122:23_, 1:122:25_, 1:123:5_, 1:123:16_, 1:125:7_, 1:126:6_, 1:126:11_, 1:126:25_, 1:127:9_, 1:127:16_, 1:128:4_, 1:128:10_, 1:128:12_, 1:128:18_, 1:128:23_, 1:129:1_, 1:129:16_, 1:129:25_, 1:130:6_, 1:130:9_, 1:130:18_, 1:130:20_, 1:131:2_, 1:131:12_, 1:131:15_, 1:131:18_, 1:131:20_, 1:132:1_, 1:132:11_, 1:132:13_, 1:132:23_, 1:133:5_, 1:133:24_, 1:134:10_, 1:134:12_, 1:135:2_, 1:135:10_, 1:135:15_, 1:135:21_, 1:136:2_, 1:136:8_, 1:136:15_, 1:136:19_, 1:137:11_, 1:137:21, 1:137:23_, 1:138:3_, 1:138:12_, 1:138:21_, 1:138:23_, 1:139:6_, 1:139:9_, 1:139:17_, 1:139:23_, 1:140:25_, 1:141:5_,

1:141:17_, 1:142:5_, 1:142:9_, 1:142:13_, 1:142:22_, 1:143:5_, 1:143:14_, 1:144:4_, 1:144:7_, 1:144:11_, 1:144:16_, 1:144:23_, 1:145:2_, 1:145:7_, 1:145:10_, 1:146:4_, 1:146:7_, 1:146:23_, 1:147:1_, 1:147:12_, 1:147:22_, 1:148:21_, 1:148:24_, 1:149:5_, 1:149:7_, 1:149:23_, 1:149:25_, 1:150:5_, 1:150:15_, 1:150:18_, 1:150:25_, 1:151:14_, 1:151:18_, 1:151:20_, 1:151:24_, 1:152:2_, 1:152:4_, 1:152:14_, 1:153:1_, 1:153:11_, 1:153:17_, 1:153:21_, 1:154:9_, 1:154:12_, 1:154:15_, 1:154:21_, 1:154:24_, 1:155:4_, 1:155:6_, 1:155:16_, 1:155:23_, 1:156:2_, 1:156:5_, 1:156:8_, 1:156:16_, 1:156:19_, 1:156:22_, 1:157:2_, 1:157:4_, 1:157:9_, 1:157:15_, 1:157:19_, 1:157:25_, 1:158:5_, 1:158:10_, 1:158:13_, 1:158:16_, 1:158:19_, 1:158:23_, 1:159:1_, 1:159:5_, 1:159:9_, 1:159:13_, 1:159:17_, 1:159:20_, 1:159:23_, 1:160:5_, 1:160:9_, 1:160:12_, 1:160:19_, 1:160:23_, 1:161:3_, 1:161:12_, 1:161:20_, 1:161:25_, 1:162:2_, 1:162:9_, 1:162:11_, 1:162:14_, 1:162:25_, 1:164:11_, 1:164:22_, 1:165:1

Court's [10]_ - 1:5:18_, 1:6:10_, 1:19:12_, 1:37:11_, 1:79:24_, 1:103:9_, 1:105:23_, 1:143:9_, 1:145:16_, 1:164:19

COURTROOM [1]_ - 1:3:4

courtroom [1]_ - 1:4:9

courts [2]_ - 1:153:3_, 1:161:10

cover [1]_ - 1:133:13

covered [4]_ - 1:40:18_, 1:95:14_, 1:96:25_, 1:145:14

covering [1]_ - 1:134:4

covers [2]_ - 1:7:8_, 1:96:16

craft [1]_ - 1:95:22

crafting [1]_ - 1:99:3

crazy [1]_ - 1:51:14

credible [6]_ - 1:11:17_, 1:11:20_, 1:56:17_, 1:56:19_, 1:57:23_, 1:62:1

credulity [1]_ - 1:163:23

crime [22]_ - 1:18:15_, 1:26:22_, 1:27:3_, 1:27:15_, 1:27:18_, 1:27:20_, 1:28:1_, 1:63:12_, 1:66:16_, 1:71:15_, 1:81:9_, 1:89:14_, 1:97:4_, 1:97:22_, 1:99:20_, 1:99:23_, 1:105:24_, 1:127:22_, 1:148:5_, 1:164:17_, 1:164:18

crimes [6]_ - 1:83:1_, 1:97:18_, 1:99:1_, 1:117:11_, 1:124:16_, 1:126:24

Criminal [2]_ - 1:43:2_, 1:151:6

criminal [19]_ - 1:33:5_, 1:33:10_, 1:94:15_, 1:100:1_, 1:101:20_, 1:101:22_, 1:117:8_, 1:125:16_, 1:125:21_, 1:125:22_, 1:140:2_, 1:147:3_, 1:147:15_, 1:147:16_, 1:148:3_, 1:148:4_, 1:149:15_, 1:150:9_, 1:151:10

criminalize [2]_ - 1:130:10_, 1:149:13

criminalizing [1]_ - 1:130:16

criminally [1]_ - 1:119:21

criterion [1]_ - 1:68:18

critical [1]_ - 1:142:1

criticism [1]_ - 1:150:23

criticisms [3]_ - 1:150:19_, 1:156:24_, 1:157:20

cross [1]_ - 1:24:16

crucial [1]_ - 1:148:18

crystal [2]_ - 1:48:8_, 1:70:19

crystallize [1]_ - 1:119:17

cuff [1]_ - 1:111:12

culled [1]_ - 1:39:15

cumbersome [1]_ - 1:26:19

cure [1]_ - 1:99:3

curious [3]_ - 1:63:13_, 1:138:23_, 1:156:9

current [2]_ - 1:56:19_, 1:69:13

customary [2]_ - 1:64:8_,

1:79:2

cut [1]_ - 1:130:6

cutting [1]_ - 1:68:19

D

D.C [33]_ - 1:6:9_, 1:6:14_, 1:6:19_, 1:17:23_, 1:19:7_, 1:20:3_, 1:20:6_, 1:22:20_, 1:24:25_, 1:25:14_, 1:26:2_, 1:26:22_, 1:26:23_, 1:27:14_, 1:27:19_, 1:29:2_, 1:31:14_, 1:38:5_, 1:38:9_, 1:39:9_, 1:39:20_, 1:40:2_, 1:45:3_, 1:56:11_, 1:57:18_, 1:62:16_, 1:63:24_, 1:65:9_, 1:76:22_, 1:78:3_, 1:79:3_, 1:79:18_, 1:84:2

Dadan [2]_ - 1:3:21_, 1:85:11

dangerous [1]_ - 1:42:11

dangled [1]_ - 1:83:14

dangling [2]_ - 1:61:2_, 1:61:12

data [2]_ - 1:59:3_, 1:60:3

date [4]_ - 1:30:10_, 1:64:1_, 1:79:15_, 1:87:21

dated [1]_ - 1:88:3

dates [1]_ - 1:67:16

David [1]_ - 1:3:10

Davis [1]_ - 1:47:18

days [4]_ - 1:37:11_, 1:37:17_, 1:108:7_, 1:129:12

De [7]_ - 1:3:6_, 1:3:25_, 1:4:2_, 1:134:25_, 1:143:20_, 1:145:3_, 1:155:22

deadline [1]_ - 1:165:2

deadlines [1]_ - 1:38:22

dealing [1]_ - 1:140:16

December [1]_ - 1:135:25

December/January [1]_ - 1:135:24

decent [1]_ - 1:53:3

decide [6]_ - 1:40:10_, 1:74:17_, 1:75:15_, 1:132:2_, 1:162:19_, 1:162:20

decided [3]_ - 1:44:7_, 1:57:15_, 1:66:1

decides [1]_ - 1:162:21

deciding [1]_ - 1:47:11

decision [6]_ - 1:26:17_, 1:46:25_, 1:57:5_, 1:58:24_, 1:64:1_, 1:86:6

declined [1]_ - 1:46:21

deemed [1]- - 1:89:7

defect [3]- - 1:98:13-, 1:98:14

defective [1]- - 1:145:8

defects [2]- - 1:98:15-, 1:98:16

defend [2]- - 1:118:15-, 1:118:16

defendant [35]- - 1:8:6-, 1:8:9-, 1:9:7-, 1:22:24-, 1:23:2-, 1:23:9-, 1:23:11-, 1:23:13-, 1:23:18-, 1:23:22 -, 1:24:2-, 1:46:10-, 1:46:11 -, 1:46:12-, 1:47:19-, 1:47:20-, 1:49:19-, 1:68:9-, 1:71:16-, 1:71:20-, 1:75:7-, 1:85:23-, 1:97:22-, 1:108:23 -, 1:110:24-, 1:111:2-, 1:112:16-, 1:113:10-, 1:114:20-, 1:114:21-, 1:114:22-, 1:123:9-, 1:136:24

Defendant [8]- - 1:4:14-, 1:4:17-, 1:5:25-, 1:6:8-, 1:57:17-, 1:109:7-, 1:111:15

defendant's [2]- - 1:36:23 -, 1:49:20

Defendants [1]- - 1:98:24

defendants [23]- - 1:7:6-, 1:37:3-, 1:70:6-, 1:94:2-, 1:94:16-, 1:96:1-, 1:98:2-, 1:98:18-, 1:108:4-, 1:108:8 -, 1:108:17-, 1:108:22-, 1:113:16-, 1:113:24-, 1:116:9-, 1:117:7-, 1:126:3 -, 1:126:23-, 1:134:21-, 1:137:13-, 1:153:15-, 1:154:7-, 1:155:17

defending [1]- - 1:99:2

Defense [1]- - 1:160:14

defense [31]- - 1:6:17-, 1:7:19-, 1:9:14-, 1:9:18-, 1:10:2-, 1:17:7-, 1:17:10-, 1:21:19-, 1:21:22-, 1:23:11 -, 1:23:21-, 1:24:7-, 1:24:14 -, 1:24:18-, 1:25:15-, 1:25:17-, 1:30:4-, 1:30:24-, 1:31:6-, 1:35:17-, 1:43:10-, 1:49:9-, 1:59:21-, 1:67:1-, 1:81:20-, 1:84:15-, 1:88:12 -, 1:103:20-, 1:160:3-, 1:160:4-, 1:160:7

deficiencies [3]- - 1:94:4 -, 1:99:8-, 1:123:24

deficiency [1]- - 1:101:17

defies [1]- - 1:163:23

define [2]- - 1:122:13-, 1:138:15

defined [1]- - 1:36:15

defining [1]- - 1:160:14

definitely [1]- - 1:132:13

definition [3]- - 1:23:9-, 1:124:2-, 1:162:5

degree [1]- - 1:120:15

delay [1]- - 1:56:25

delete [2]- - 1:148:1-, 1:148:15

deleted [8]- - 1:34:19-, 1:35:1-, 1:70:1-, 1:71:9-, 1:147:20-, 1:148:3-, 1:148:19-, 1:148:20

deleting [6]- - 1:34:23-, 1:35:3-, 1:35:5-, 1:148:7-, 1:148:16-, 1:150:10

deletion [4]- - 1:34:21-, 1:70:21-, 1:148:12-, 1:150:13

deliberations [2]- - 1:64:2-, 1:153:5

delineate [1]- - 1:113:23

delineated [1]- - 1:45:7

delineates [1]- - 1:108:11

delivered [2]- - 1:15:6-, 1:142:11

delve [1]- - 1:93:21

demonstrated [1]- - 1:51:4

demonstrates [1]- - 1:42:19

denied [3]- - 1:6:13-, 1:37:25-, 1:67:22

Denmark [1]- - 1:61:22

Department [1]- - 1:9:23

department [1]- - 1:133:17

depicts [1]- - 1:13:10

DEPUTY [1]- - 1:3:4

deputy [1]- - 1:53:24

derail [1]- - 1:61:12

describe [1]- - 1:85:8

described [6]- - 1:6:10-, 1:44:7-, 1:67:21-, 1:74:20-, 1:112:20-, 1:133:7

describes [4]- - 1:34:1-, 1:82:15-, 1:84:11-, 1:91:6

describing [1]- - 1:60:17

descriptions [4]- - 1:29:8 -, 1:84:5-, 1:84:8-, 1:85:1

despite [1]- - 1:14:8-, 1:82:17

destroy [4]- - 1:147:7-, 1:147:8-, 1:149:18-, 1:155:13

destroyed [3]- - 1:55:24-, 1:96:25-, 1:147:10

destroys [1]- - 1:96:16

destruction [1]- - 1:147:11

detail [1]- - 1:63:23-, 1:110:8

detailed [3]- - 1:52:15-, 1:135:6-, 1:154:4

detailing [1]- - 1:42:22

details [1]- - 1:93:21

detect [1]- - 1:134:13

determination [1]- - 1:36:3

determine [1]- - 1:143:7

determined [1]- - 1:152:10

deterrence [1]- - 1:71:17

detriment [1]- - 1:126:3

develop [1]- - 1:126:12

device [6]- - 1:88:3-, 1:89:9-, 1:89:13-, 1:89:15-, 1:90:11

devices [3]- - 1:87:9-, 1:90:13-, 1:90:14

dichotomy [1]- - 1:82:4

difference [6]- - 1:34:10-, 1:69:20-, 1:132:13-, 1:132:15 -, 1:132:22-, 1:150:16

differences [2]- - 1:133:1 -, 1:133:2

different [49]- - 1:12:22-, 1:15:4-, 1:22:4-, 1:25:8-, 1:41:17-, 1:50:11-, 1:61:20 -, 1:89:25-, 1:94:16-, 1:98:18-, 1:100:4-, 1:108:11 -, 1:108:14-, 1:109:18-, 1:110:11-, 1:113:8-, 1:113:10-, 1:113:11-, 1:113:15-, 1:115:6-, 1:120:5 -, 1:120:12-, 1:125:10-, 1:130:1-, 1:130:12-, 1:130:22-, 1:131:3-, 1:131:4 -, 1:131:7-, 1:131:10-, 1:131:18-, 1:131:19-, 1:132:6-, 1:132:21-, 1:133:6 -, 1:133:19-, 1:133:20-, 1:133:21-, 1:134:7-, 1:134:14-, 1:137:20-, 1:139:3-, 1:140:21-, 1:141:1

-, 1:149:21-, 1:152:24

differential [2]- - 1:68:14 -, 1:73:9

differently [1]- - 1:75:21-, 1:133:7

differing [1]- - 1:146:11

difficult [2]- - 1:41:1-, 1:55:11

digested [1]- - 1:123:4

diligent [1]- - 1:102:6

diminish [1]- - 1:85:19

direct [4]- - 1:65:19-, 1:158:8-, 1:158:9-, 1:158:14

directed [8]- - 1:49:11-, 1:49:22-, 1:51:6-, 1:77:4-, 1:78:14-, 1:78:21-, 1:79:24 -, 1:92:18

direction [1]- - 1:127:21

directly [2]- - 1:66:17-, 1:72:21

disagree [4]- - 1:50:22-, 1:50:23-, 1:85:5-, 1:157:16

discard [2]- - 1:85:3-, 1:85:6

disclose [2]- - 1:43:3-, 1:152:20

disclosed [5]- - 1:66:2-, 1:66:6-, 1:67:1-, 1:81:5-, 1:152:12

disclosing [1]- - 1:129:8

disclosure [18]- - 1:6:8-, 1:6:12-, 1:6:19-, 1:26:7-, 1:26:18-, 1:27:13-, 1:27:24 -, 1:43:9-, 1:43:10-, 1:57:19 -, 1:60:18-, 1:64:25-, 1:76:21-, 1:81:1-, 1:81:8-, 1:81:13-, 1:81:18-, 1:164:3

disclosures [1]- - 1:65:17

discomfort [1]- - 1:30:10

discoverable [1]- - 1:26:15

discovery [50]- - 1:9:2-, 1:9:16-, 1:10:13-, 1:11:18-, 1:19:3-, 1:21:4-, 1:21:11-, 1:22:7-, 1:28:4-, 1:28:6-, 1:28:24-, 1:28:25-, 1:29:3-, 1:35:14-, 1:35:23-, 1:36:12 -, 1:36:20-, 1:36:23-, 1:37:1 -, 1:50:7-, 1:50:9-, 1:50:21-, 1:50:25-, 1:62:14-, 1:65:10 -, 1:67:18-, 1:67:20-, 1:68:2 -, 1:68:6-, 1:68:17-, 1:70:8-, 1:72:7-, 1:72:13-, 1:72:22-, 1:73:4-, 1:73:7-, 1:74:5-, 1:76:14-, 1:82:13-, 1:83:10

_, 1:86:2_, 1:86:21_, 1:88:13
_, 1:90:19_, 1:91:4_, 1:91:18
_, 1:92:4_, 1:93:16_, 1:99:2_,
1:129:15

discrepancy [1]_ - 1:88:9

discretion [1]_ - 1:153:4

discriminatory [2]_ -
1:68:11_, 1:68:12

discuss [3]_ - 1:91:23_,
1:92:1_, 1:150:19

discussed [10]_ - 1:12:1_,
1:12:7_, 1:23:9_, 1:23:16_,
1:60:19_, 1:105:25_,
1:134:24_, 1:137:7_,
1:160:14_, 1:161:8

discusses [1]_ - 1:36:23

discussing [1]_ - 1:154:3

discussion [18]_ - 1:29:4
_, 1:29:7_, 1:30:8_, 1:52:16_,
1:84:11_, 1:87:18_, 1:90:22
_, 1:106:16_, 1:111:8_,
1:121:24_, 1:137:6_, 1:137:9
_, 1:148:2_, 1:148:4_,
1:148:13_, 1:148:14_,
1:148:15_, 1:151:8

discussions [2]_ - 1:28:7
_, 1:157:21

Dismiss [1]_ - 1:4:14

dismiss [11]_ - 1:6:11_,
1:35:18_, 1:38:7_, 1:41:7_,
1:44:5_, 1:46:6_, 1:86:16_,
1:94:1_, 1:142:5_, 1:142:6_,
1:143:10

dismissal [2]_ - 1:48:8_,
1:68:16

dismissed [5]_ - 1:41:12_,
1:41:15_, 1:50:9_, 1:97:9_,
1:145:18

dispelling [1]_ - 1:45:5

dispels [1]_ - 1:47:17

dispute [8]_ - 1:50:20_,
1:51:24_, 1:52:7_, 1:84:13_,
1:92:21_, 1:94:20_, 1:118:25
_, 1:147:14

disputed [4]_ - 1:82:22_,
1:82:23_, 1:82:25_, 1:83:2

disqualify [1]_ - 1:24:18

disseminated [1]_ -
1:78:22

distinct [1]_ - 1:152:12

distracting [1]_ - 1:102:25

District [31]_ - 1:6:9_,
1:6:13_, 1:9:10_, 1:12:23_,
1:16:2_, 1:19:2_, 1:19:5_,
1:19:17_, 1:19:18_, 1:19:22

_, 1:24:5_, 1:24:11_, 1:24:25
_, 1:26:2_, 1:26:22_, 1:26:24
_, 1:27:2_, 1:27:6_, 1:30:7_,
1:37:6_, 1:37:12_, 1:37:20_,
1:37:22_, 1:39:20_, 1:43:1_,
1:58:13_, 1:63:20_, 1:65:4_,
1:82:5_, 1:84:12_, 1:143:9

district [24]_ - 1:3:17_,
1:9:9_, 1:12:22_, 1:18:12_,
1:18:13_, 1:18:14_, 1:18:18
_, 1:24:4_, 1:25:25_, 1:26:17
_, 1:36:21_, 1:36:22_, 1:38:9
_, 1:39:2_, 1:40:2_, 1:40:6_,
1:64:13_, 1:64:15_, 1:64:19
_, 1:64:21_, 1:64:23_,
1:152:19_, 1:152:21

Division [1]_ - 1:161:17

docket [17]_ - 1:4:13_,
1:4:19_, 1:5:4_, 1:5:19_,
1:7:3_, 1:27:15_, 1:39:6_,
1:76:19_, 1:77:9_, 1:77:16_,
1:77:19_, 1:94:1_, 1:102:15
_, 1:103:10_, 1:161:4_,
1:164:3

docketed [1]_ - 1:4:21

docketing [1]_ - 1:165:3

docs [2]_ - 1:36:11_,
1:134:1

doctrine [8]_ - 1:41:5_,
1:42:7_, 1:47:11_, 1:51:14_,
1:51:19_, 1:67:19_, 1:83:18

document [3]_ - 1:96:8_,
1:133:9_, 1:133:14

documented [2]_ - 1:9:23
_, 1:9:25

documents [41]_ - 1:6:2_,
1:13:17_, 1:17:5_, 1:22:10_,
1:24:21_, 1:39:3_, 1:49:25_,
1:50:2_, 1:63:7_, 1:64:14_,
1:94:19_, 1:94:24_, 1:94:25
_, 1:95:15_, 1:101:11_,
1:102:5_, 1:102:9_, 1:109:20
_, 1:111:17_, 1:116:18_,
1:117:5_, 1:119:23_,
1:120:13_, 1:124:6_,
1:126:17_, 1:127:2_, 1:128:1
_, 1:134:3_, 1:134:22_,
1:135:8_, 1:135:12_,
1:135:17_, 1:136:3_,
1:136:20_, 1:137:3_,
1:137:14_, 1:138:5_,
1:139:20_, 1:139:25_,
1:158:11_, 1:160:18

Donald [2]_ - 1:3:5_,
1:116:16

done [23]_ - 1:11:10_,
1:24:7_, 1:29:23_, 1:34:3_,
1:56:1_, 1:64:9_, 1:69:7_,

_, 1:70:4_, 1:76:2_, 1:79:20_,
1:81:15_, 1:91:8_, 1:95:11_,
1:101:13_, 1:110:7_,
1:113:20_, 1:117:9_, 1:120:9
_, 1:122:16_, 1:146:14_,
1:146:20_, 1:150:11_,
1:159:8

Donnie [1]_ - 1:4:1

double [1]_ - 1:64:7

doubt [1]_ - 1:111:15

down [17]_ - 1:19:2_,
1:19:4_, 1:55:11_, 1:63:5_,
1:65:4_, 1:65:8_, 1:67:16_,
1:73:6_, 1:81:11_, 1:85:15_,
1:85:16_, 1:102:25_, 1:104:2
_, 1:126:7_, 1:144:15_,
1:150:18_, 1:153:12

dozens [1]_ - 1:45:13

drafted [1]_ - 1:124:17

draw [1]_ - 1:83:3

drawn [1]_ - 1:58:19

drilling [1]_ - 1:126:7

drugs [2]_ - 1:147:16_,
1:147:17

duplicitous [7]_ - 1:97:18
_, 1:108:13_, 1:109:11_,
1:110:16_, 1:110:17_,
1:113:9_, 1:132:8

duplicitously [2]_ -
1:94:14_, 1:95:10

during [3]_ - 1:25:17_,
1:84:5_, 1:153:5

duties [1]_ - 1:65:22

dwell [3]_ - 1:43:15_,
1:43:19_, 1:56:23

────────────

E

early [2]_ - 1:15:7_, 1:18:6

earnest [2]_ - 1:18:4_,
1:18:5

easier [1]_ - 1:162:7

easily [1]_ - 1:91:6

easy [1]_ - 1:123:1

ECF [3]_ - 1:9:24_, 1:20:4
_, 1:49:13

effect [2]_ - 1:68:11_,
1:68:13

effort [8]_ - 1:54:19_,
1:54:22_, 1:55:4_, 1:55:14_,
1:147:5_, 1:147:21_, 1:148:8
_, 1:91:6

efforts [5]_ - 1:55:8_,
1:55:18_, 1:55:19_, 1:55:22
_, 1:91:6

either [14]_ - 1:8:18_,
1:10:17_, 1:11:1_, 1:12:19_,
1:14:10_, 1:26:9_, 1:35:23_,
1:46:15_, 1:61:15_, 1:76:14
_, 1:100:6_, 1:120:4_,
1:134:21_, 1:139:14

elaborate [1]_ - 1:56:18

elected [1]_ - 1:164:5

electronic [1]_ - 1:4:8

element [7]_ - 1:109:1_,
1:109:2_, 1:123:6_, 1:160:25
_, 1:161:14_, 1:161:21

element-by-element [1]
- 1:123:6

elemental [1]_ - 1:130:22
_, 1:132:14

elements [19]_ - 1:9:17_,
1:68:11_, 1:73:15_, 1:109:13
_, 1:109:14_, 1:109:16_,
1:110:20_, 1:110:25_,
1:122:11_, 1:124:10_,
1:126:15_, 1:130:11_,
1:131:3_, 1:131:5_, 1:131:17
_, 1:131:19_, 1:143:10_,
1:160:20_, 1:163:13

Eleventh [7]_ - 1:36:24_,
1:46:8_, 1:47:18_, 1:68:8_,
1:108:10_, 1:143:9_,
1:156:16

Ellis' [1]_ - 1:161:8

elsewhere [3]_ - 1:35:8_,
1:122:13_, 1:125:12

email [1]_ - 1:35:2

emails [3]_ - 1:35:1_,
1:35:3_, 1:35:5

emergency [1]_ - 1:4:10

employ [2]_ - 1:97:25_,
1:108:20

employed [1]_ - 1:24:1

Employee [3]_ - 1:148:5_,
1:148:16_, 1:155:17

employees [2]_ - 1:68:20
_, 1:151:21

employment [1]_ -
1:157:8

enable [1]_ - 1:61:23

end [6]_ - 1:45:6_, 1:70:9_,
1:82:17_, 1:104:10_,
1:108:24_, 1:149:19

ended [2]_ - 1:113:22_,
1:144:19

ending [1]_ - 1:116:15

enforcement [3]_ -
1:20:19_, 1:71:18_, 1:71:19

engage [5]_ - 1:52:15_, 1:121:10_, 1:122:5_, 1:126:19_, 1:138:10

engage...Trump [1]_ - 1:116:17

engaged [4]_ - 1:42:24_, 1:98:10_, 1:124:22_, 1:132:20

engaging [3]_ - 1:98:3_, 1:131:8_, 1:140:3

English [1]_ - 1:155:1

ensure [2]_ - 1:18:19_, 1:53:14

enter [2]_ - 1:18:15_, 1:27:2

entered [2]_ - 1:5:23_, 1:27:19

enters [1]_ - 1:13:12

entertaining [1]_ - 1:42:10

entire [1]_ - 1:142:18

entirely [6]_ - 1:15:4_, 1:25:8_, 1:41:17_, 1:85:2_, 1:106:4_, 1:132:8

entirety [1]_ - 1:19:16

entities [1]_ - 1:20:2

entitle [1]_ - 1:11:17

entitled [8]_ - 1:25:1_, 1:28:19_, 1:28:25_, 1:29:3_, 1:38:11_, 1:76:14_, 1:90:20 _, 1:126:3

entitles [1]_ - 1:91:17

entries [2]_ - 1:5:19_, 1:5:22

envelope [1]_ - 1:84:15

envision [1]_ - 1:111:9

equally [4]_ - 1:47:24_, 1:114:24_, 1:125:20_, 1:129:4

equipment [1]_ - 1:4:9

equivalent [1]_ - 1:4:25

erred [1]_ - 1:78:18

especially [1]_ - 1:134:15

essential [3]_ - 1:9:17_,

1:68:10_, 1:143:10

essentially [5]_ - 1:38:21 _, 1:72:18_, 1:73:7_, 1:143:19_, 1:160:1

establish [3]_ - 1:49:7_, 1:144:2_, 1:163:13

established [4]_ - 1:10:18 _, 1:46:17_, 1:113:12_, 1:135:9

et [5]_ - 1:36:11_, 1:49:25_, 1:53:18_, 1:102:9_, 1:115:9

ethical [2]_ - 1:29:17_, 1:57:13

ethics [1]_ - 1:30:14

eve [1]_ - 1:57:17

evening [1]_ - 1:15:7

events [1]_ - 1:105:14

eventually [1]_ - 1:18:18

evidence [64]_ - 1:9:17_, 1:9:20_, 1:11:22_, 1:17:18_, 1:25:18_, 1:29:19_, 1:33:15 _, 1:34:5_, 1:34:7_, 1:36:2_, 1:36:14_, 1:38:12_, 1:45:11 _, 1:46:15_, 1:48:3_, 1:48:4_, 1:49:1_, 1:49:3_, 1:49:8_, 1:49:23_, 1:50:6_, 1:50:17_, 1:50:20_, 1:53:19_, 1:54:19 _, 1:54:24_, 1:55:15_, 1:56:2 _, 1:68:10_, 1:68:13_, 1:69:18_, 1:69:25_, 1:70:7_, 1:70:8_, 1:71:8_, 1:71:19_, 1:73:8_, 1:73:9_, 1:73:11_, 1:74:21_, 1:76:8_, 1:76:9_, 1:76:10_, 1:82:18_, 1:82:20 _, 1:86:1_, 1:86:18_, 1:89:14 _, 1:91:12_, 1:106:2_, 1:117:21_, 1:144:1_, 1:146:16_, 1:147:11_, 1:149:18_, 1:150:10_, 1:154:5_, 1:157:10_, 1:158:22_, 1:160:16_, 1:164:9

evident [1]_ - 1:63:12

evidentiary [5]_ - 1:11:5_, 1:84:8_, 1:85:13_, 1:91:17_, 1:93:20

ex [17]_ - 1:27:1_, 1:27:4_, 1:67:6_, 1:76:22_, 1:77:4_, 1:77:8_, 1:77:14_, 1:77:15_, 1:77:18_, 1:78:3_, 1:78:15_, 1:78:24_, 1:79:3_, 1:79:19_, 1:79:21_, 1:80:25_, 1:81:13

ex-parte [17]_ - 1:27:1_, 1:27:4_, 1:67:6_, 1:76:22_, 1:77:4_, 1:77:8_, 1:77:14_, 1:77:15_, 1:78:3_, 1:78:15_, 1:78:24_, 1:79:3_,

1:79:19_, 1:79:21_, 1:80:25_, 1:81:13

exact [1]_ - 1:113:5

exactly [8]_ - 1:18:8_, 1:22:9_, 1:81:10_, 1:84:9_, 1:124:24_, 1:125:3_, 1:126:23_, 1:127:4

examine [1]_ - 1:119:7

example [17]_ - 1:11:6_, 1:11:24_, 1:24:3_, 1:26:20_, 1:38:25_, 1:42:22_, 1:42:25 _, 1:43:6_, 1:43:16_, 1:43:21 _, 1:66:16_, 1:116:15_, 1:117:9_, 1:147:16_, 1:157:20_, 1:157:21_, 1:159:14

examples [3]_ - 1:42:9_, 1:48:23_, 1:112:25

except [8]_ - 1:4:10_, 1:52:17_, 1:56:23_, 1:56:24 _, 1:57:3_, 1:67:2_, 1:139:20 _, 1:145:15

excerpt [2]_ - 1:142:14_, 1:161:21

exchange [5]_ - 1:60:22_, 1:61:13_, 1:142:15_, 1:142:18_, 1:151:20

excluded [1]_ - 1:23:21

excuse [11]_ - 1:14:5_, 1:17:12_, 1:20:8_, 1:47:14_, 1:53:21_, 1:62:22_, 1:73:22 _, 1:102:6_, 1:117:3_, 1:141:10_, 1:141:14

excused [1]_ - 1:3:16

exercise [8]_ - 1:9:7_, 1:24:15_, 1:46:11_, 1:69:22 _, 1:75:23_, 1:76:8_, 1:124:22_, 1:134:17

exercised [8]_ - 1:8:13_, 1:16:21_, 1:24:12_, 1:46:25 _, 1:47:11_, 1:48:19_, 1:75:7 _, 1:85:23

exercising [3]_ - 1:47:3_, 1:47:6_, 1:85:25

exhibit [1]_ - 1:4:21

Exhibit [1]_ - 1:60:17

exist [1]_ - 1:54:24

existed [1]_ - 1:55:1

existence [3]_ - 1:68:10_, 1:136:9_, 1:137:14

exists [3]_ - 1:54:19_, 1:55:3_, 1:65:1

expansive [1]_ - 1:150:1

expect [1]_ - 1:105:22

expectation [1]_ - 1:24:24

expedition [2]_ - 1:39:13_, 1:39:24

experience [1]_ - 1:113:3

experienced [1]_ - 1:39:18

explain [7]_ - 1:104:24_, 1:121:9_, 1:129:18_, 1:151:18_, 1:154:17_, 1:159:23_, 1:160:19

explained [3]_ - 1:31:15_, 1:120:17_, 1:137:19

explaining [2]_ - 1:52:4_, 1:163:20

explains [3]_ - 1:10:21_, 1:14:4_, 1:17:16

explanation [3]_ - 1:69:16 _, 1:81:17_, 1:126:19

explore [1]_ - 1:10:7

exposing [1]_ - 1:70:1

expressed [1]_ - 1:30:10

extent [4]_ - 1:27:21_, 1:29:6_, 1:33:4_, 1:54:5

extorted [1]_ - 1:57:9

extra [2]_ - 1:109:11_, 1:161:14

extremely [2]_ - 1:14:21_, 1:130:14

eyes [1]_ - 1:137:3

**F**

face [12]_ - 1:9:14_, 1:17:1 _, 1:51:3_, 1:70:18_, 1:97:18 _, 1:117:23_, 1:129:7_, 1:129:15_, 1:145:25_, 1:146:3_, 1:163:14

faces [1]_ - 1:119:18

facing [2]_ - 1:8:15_, 1:12:15

fact [33]_ - 1:12:12_, 1:13:19_, 1:14:23_, 1:14:25 _, 1:16:12_, 1:17:14_, 1:25:4 _, 1:31:2_, 1:31:5_, 1:31:17_, 1:32:19_, 1:32:21_, 1:52:16 _, 1:58:12_, 1:58:16_, 1:61:18_, 1:80:11_, 1:81:10 _, 1:83:6_, 1:98:19_, 1:101:3 _, 1:101:13_, 1:126:12_, 1:129:6_, 1:143:6_, 1:143:7 _, 1:147:10_, 1:148:8_, 1:148:18_, 1:148:19_, 1:150:11_, 1:159:2

fact-by-fact [1]_ - 1:52:16

factor [1]_ - 1:57:21

factors [1]_ - 1:75:25

facts [14]– - 1:8:3–, 1:8:22 –, 1:15:21–, 1:46:22–, 1:57:16–, 1:61:24–, 1:75:17 –, 1:75:18–, 1:85:6–, 1:118:21–, 1:125:6–, 1:125:7 –, 1:154:3–, 1:157:17

factual [9]– - 1:50:23–, 1:87:3–, 1:88:8–, 1:118:3–, 1:118:14–, 1:129:25–, 1:130:3–, 1:154:1–, 1:155:23

factually [1]– - 1:150:15

fail [6]– - 1:123:25–, 1:124:1–, 1:124:3–, 1:124:5 –, 1:124:11

failed [2]– - 1:74:15–, 1:143:13

failing [1]– - 1:146:1

fails [2]– - 1:127:17–, 1:141:9

failure [6]– - 1:60:22–, 1:60:24–, 1:94:3–, 1:134:23 –, 1:143:9–, 1:148:18

fair [4]– - 1:44:23–, 1:54:9–, 1:93:24–, 1:117:20

fairly [2]– - 1:29:25–, 1:162:11

false [45]– - 1:14:17–, 1:17:5–, 1:95:16–, 1:95:25–, 1:96:2–, 1:96:4–, 1:96:8–, 1:96:10–, 1:96:17–, 1:96:18 –, 1:96:23–, 1:97:12–, 1:97:16–, 1:99:7–, 1:99:9–, 1:99:13–, 1:99:14–, 1:100:8 –, 1:101:10–, 1:101:23–, 1:104:13–, 1:105:12–, 1:115:1–, 1:115:3–, 1:115:5 –, 1:115:10–, 1:115:13–, 1:115:15–, 1:115:18–, 1:115:22–, 1:133:14–, 1:141:9–, 1:141:12–, 1:141:13–, 1:141:22–, 1:143:7–, 1:143:12–, 1:144:3 –, 1:146:1–, 1:146:4–, 1:146:6–, 1:146:17–, 1:153:23

falsifies [1]– - 1:96:16

falsify [1]– - 1:133:14

falsity [4]– - 1:105:9–, 1:106:3–, 1:106:6–, 1:146:2

familiar [1]– - 1:97:24

familiarity [1]– - 1:111:4

fantasy [4]– - 1:48:14–, 1:52:18–, 1:54:13–, 1:82:16

far [8]– - 1:21:3–, 1:21:5–, 1:23:16–, 1:51:22–, 1:83:9–, 1:115:1–, 1:144:7–, 1:165:4

faraway [3]– - 1:18:12–, 1:18:13–, 1:18:17

fashion [1]– - 1:132:8

fateful [1]– - 1:30:25

favorability [1]– - 1:61:3

favorable [1]– - 1:61:13

FBI [23]– - 1:12:14–, 1:12:16–, 1:13:3–, 1:14:8–, 1:14:17–, 1:17:13–, 1:18:9–, 1:20:12–, 1:31:22–, 1:89:6–, 1:89:12–, 1:91:10–, 1:93:12 –, 1:95:14–, 1:95:17–, 1:96:3 –, 1:96:10–, 1:97:12–, 1:97:17–, 1:99:10–, 1:101:11 –, 1:115:16–, 1:144:5

federal [13]– - 1:16:24–, 1:19:14–, 1:32:11–, 1:43:2–, 1:43:4–, 1:89:11–, 1:94:19–, 1:95:1–, 1:116:18–, 1:117:6 –, 1:119:23–, 1:134:1–, 1:136:22

Federal [1]– - 1:151:5

felonies [2]– - 1:83:15–, 1:83:16

Felts [10]– - 1:108:9–, 1:108:10–, 1:113:3–, 1:113:5 –, 1:113:7–, 1:114:14–, 1:119:9–, 1:119:11–, 1:120:3 –, 1:120:11

felts [2]– - 1:113:7–, 1:114:16

few [3]– - 1:37:16–, 1:67:14 –, 1:150:20

Fifth [7]– - 1:16:21–, 1:34:11–, 1:35:3–, 1:47:6–, 1:47:7–, 1:83:23–, 1:106:15

figure [1]– - 1:125:8

file [3]– - 1:5:3–, 1:102:14–, 1:103:9

filed [12]– - 1:4:19–, 1:4:22 –, 1:5:8–, 1:6:8–, 1:37:8–, 1:57:18–, 1:65:20–, 1:76:21 –, 1:79:19–, 1:80:7–, 1:80:11 –, 1:81:3

filing [7]– - 1:19:25–, 1:20:4 –, 1:59:4–, 1:77:12–, 1:78:2–, 1:161:3–, 1:161:25

filings [3]– - 1:44:18–, 1:77:18–, 1:85:1

final [2]– - 1:6:5–, 1:37:5

finally [3]– - 1:3:25–, 1:5:10–, 1:164:2

fine [1]– - 1:111:13

fingers [1]– - 1:156:15

finish [2]– - 1:102:3–,

1:130:9

finished [1]– - 1:104:7

first [45]– - 1:5:23–, 1:6:20 –, 1:9:21–, 1:12:18–, 1:12:24 –, 1:15:23–, 1:16:23–, 1:18:9 –, 1:19:14–, 1:23:7–, 1:24:9–, 1:29:21–, 1:31:9–, 1:32:10–, 1:41:16–, 1:41:24–, 1:46:11 –, 1:47:4–, 1:47:12–, 1:48:12 –, 1:48:17–, 1:59:2–, 1:63:5–, 1:68:13–, 1:68:18–, 1:69:3–, 1:69:9–, 1:69:21–, 1:74:6–, 1:74:11–, 1:75:8–, 1:81:15–, 1:84:21–, 1:108:3–, 1:109:19 –, 1:111:23–, 1:122:4–, 1:125:8–, 1:142:9–, 1:144:20 –, 1:145:21–, 1:158:7–, 1:159:24

firsthand [1]– - 1:39:19

Fischer [1]– - 1:122:1

fishing [2]– - 1:39:13–, 1:39:23

fit [1]– - 1:83:18

fits [1]– - 1:87:16

five [5]– - 1:20:25–, 1:80:17 –, 1:80:23–, 1:163:2–, 1:163:5

flagged [2]– - 1:17:6–, 1:33:23

flat [1]– - 1:163:7

flat-footed [1]– - 1:163:7

flavor [1]– - 1:113:15

floor [1]– - 1:4:12

Florida [24]– - 1:16:2–, 1:17:25–, 1:19:2–, 1:19:18–, 1:19:22–, 1:20:7–, 1:20:9–, 1:20:19–, 1:20:22–, 1:26:2–, 1:31:3–, 1:37:6–, 1:37:12–, 1:43:1–, 1:62:25–, 1:63:7–, 1:63:8–, 1:63:21–, 1:64:1–, 1:65:5–, 1:82:2–, 1:82:5–, 1:83:25–, 1:102:8

fly [1]– - 1:120:24

focus [1]– - 1:29:4

folks [1]– - 1:15:18

follow [3]– - 1:18:21–, 1:65:24–, 1:88:25

follow-up [1]– - 1:88:25

followed [4]– - 1:15:19–, 1:27:23–, 1:75:24–, 1:94:5

following [9]– - 1:5:21–, 1:6:3–, 1:10:10–, 1:12:10–, 1:13:4–, 1:19:20–, 1:24:23–, 1:35:9–, 1:36:9

footage [5]– - 1:148:1–,

1:148:3–, 1:148:7–, 1:150:13 –, 1:154:6

footed [1]– - 1:163:7

forbids [1]– - 1:66:8

forced [1]– - 1:140:23

forcefully [1]– - 1:54:12

foreclosed [1]– - 1:74:25

foreseeable [1]– - 1:111:24–, 1:112:8–, 1:112:17

forgive [3]– - 1:12:4, 1:139:8–, 1:139:10

forgot [3]– - 1:62:5–, 1:62:6

form [5]– - 1:71:8–, 1:75:19 –, 1:83:8–, 1:118:2–, 1:159:5

format [6]– - 1:97:25–, 1:108:20–, 1:119:19–, 1:123:10–, 1:150:20–, 1:160:9

Former [22]– - 1:25:6–, 1:25:10–, 1:25:20–, 1:27:13 –, 1:32:1–, 1:35:1–, 1:35:7–, 1:59:9–, 1:59:21–, 1:81:3–, 1:90:3–, 1:94:14–, 1:99:2–, 1:99:11–, 1:100:11–, 1:105:25–, 1:109:21–, 1:111:23–, 1:119:14–, 1:120:4–, 1:128:17–, 1:155:18

former [17]– - 1:16:24–, 1:19:14–, 1:29:13–, 1:31:19 –, 1:32:11–, 1:34:16–, 1:44:4 –, 1:69:13–, 1:71:22–, 1:84:22–, 1:109:19–, 1:109:20–, 1:138:8–, 1:138:17–, 1:152:5–, 1:157:7 –, 1:159:24

formulation [1]– - 1:113:6

forth [4]– - 1:104:13–, 1:138:17–, 1:154:8–, 1:155:20

fortress [2]– - 1:160:1–, 1:163:24

forum [1]– - 1:152:24

forward [2]– - 1:17:10–, 1:37:16

foul [1]– - 1:160:2

foundation [1]– - 1:91:17 –, 1:93:20

four [7]– - 1:5:22–, 1:20:8–, 1:119:7–, 1:125:2–, 1:130:23 –, 1:133:6–, 1:134:16

fourth [1]– - 1:62:8

fragmentary [2]– - 1:54:5

_, 1:54:7
frame [1]_ - 1:135:25
framed [1]_ - 1:141:14
framework [2]_ - 1:41:4_, 1:80:14
framing [1]_ - 1:94:9
frankly [2]_ - 1:19:20_, 1:37:22
fraud [12]_ - 1:18:15_, 1:26:22_, 1:27:3_, 1:27:15_, 1:27:18_, 1:27:20_, 1:28:1_, 1:66:17_, 1:81:9_, 1:105:24 _, 1:137:19
free [1]_ - 1:152:16
Friday [7]_ - 1:5:4_, 1:5:16 _, 1:103:16_, 1:164:12_, 1:164:20_, 1:165:1_, 1:165:2
friends [1]_ - 1:83:6
Friske [2]_ - 1:135:4
frivolous [1]_ - 1:24:19
front [4]_ - 1:61:13_, 1:77:23_, 1:83:15_, 1:162:7
fulfill [1]_ - 1:126:21
full [6]_ - 1:22:14_, 1:27:15 _, 1:33:5_, 1:46:21_, 1:54:9_, 1:66:18
fully [8]_ - 1:4:24_, 1:5:3_, 1:5:9_, 1:5:13_, 1:32:23_, 1:53:6_, 1:80:6_, 1:152:3
fulsome [1]_ - 1:36:1
functionally [1]_ - 1:129:19
fundamental [1]_ - 1:125:1
furtherance [5]_ - 1:20:10 _, 1:89:7_, 1:101:21_, 1:139:5_, 1:150:11
furthers [1]_ - 1:25:18

G

gamesmanship [2]_ - 1:44:22_, 1:44:24
garbage [1]_ - 1:41:25
garnered [1]_ - 1:152:22
gathered [1]_ - 1:19:5
general [12]_ - 1:6:6_, 1:6:17_, 1:45:5_, 1:53:4_, 1:114:12_, 1:126:6_, 1:129:9 _, 1:130:22_, 1:132:4_, 1:157:9_, 1:157:12_, 1:159:18
generally [2]_ - 1:21:22_, 1:160:9

generic [1]_ - 1:28:23
genuine [4]_ - 1:46:10_, 1:46:17_, 1:46:23_, 1:49:8
ghostwriter [4]_ - 1:34:19 _, 1:70:11_, 1:70:19_, 1:71:22
given [16]_ - 1:9:1_, 1:35:22_, 1:40:8_, 1:42:5_, 1:74:10_, 1:78:1_, 1:78:8_, 1:81:17_, 1:111:4_, 1:115:19 _, 1:128:21_, 1:134:15_, 1:137:18_, 1:142:2_, 1:144:1 _, 1:146:2
gloss [4]_ - 1:161:9_, 1:162:4_, 1:163:21
glosses [1]_ - 1:162:3
goal [1]_ - 1:137:24
goings [1]_ - 1:148:10
golf [1]_ - 1:29:10_, 1:29:16
Google [1]_ - 1:10:20
googling [1]_ - 1:10:19
government [36]_ - 1:8:8 _, 1:10:24_, 1:12:19_, 1:15:4 _, 1:16:6_, 1:20:17_, 1:40:21 _, 1:41:23_, 1:42:4_, 1:42:13 _, 1:42:18_, 1:42:23_, 1:42:25_, 1:43:3_, 1:43:7_, 1:44:6_, 1:47:13_, 1:47:19_, 1:51:15_, 1:51:16_, 1:52:22 _, 1:55:24_, 1:60:20_, 1:66:21_, 1:74:8_, 1:74:23_, 1:77:7_, 1:79:24_, 1:81:24_, 1:85:8_, 1:85:20_, 1:85:21_, 1:88:19_, 1:96:14_, 1:105:13
government's [6]_ - 1:58:20_, 1:59:25_, 1:64:3_, 1:71:18_, 1:73:1_, 1:86:14
grabbing [1]_ - 1:163:25
graduation [1]_ - 1:4:6
grammar [1]_ - 1:155:3
grand [125]_ - 1:6:6_, 1:8:14_, 1:8:16_, 1:8:19_, 1:12:1_, 1:12:8_, 1:12:9_, 1:12:12_, 1:12:21_, 1:14:9_, 1:14:16_, 1:14:19_, 1:15:13 _, 1:16:7_, 1:16:11_, 1:16:14 _, 1:17:14_, 1:17:25_, 1:18:23_, 1:19:1_, 1:19:5_, 1:20:1_, 1:20:3_, 1:20:6_, 1:20:8_, 1:20:9_, 1:20:19_, 1:20:23_, 1:22:20_, 1:25:3_, 1:25:7_, 1:25:14_, 1:25:22_, 1:26:6_, 1:26:17_, 1:29:1_, 1:31:1_, 1:31:3_, 1:31:7_, 1:31:8_, 1:31:10_, 1:31:13_,

1:31:16_, 1:31:17_, 1:31:20 _, 1:31:21_, 1:31:23_, 1:34:1 _, 1:34:11_, 1:34:12_, 1:37:6 _, 1:37:13_, 1:38:5_, 1:38:13 _, 1:38:17_, 1:39:1_, 1:39:14 _, 1:39:16_, 1:39:18_, 1:40:7 _, 1:42:14_, 1:42:18_, 1:42:24_, 1:43:2_, 1:43:4_, 1:43:9_, 1:47:1_, 1:47:7_, 1:47:12_, 1:56:7_, 1:56:9_, 1:62:16_, 1:63:21_, 1:63:24 _, 1:64:4_, 1:64:7_, 1:64:13_, 1:64:15_, 1:64:20_, 1:64:23 _, 1:65:1_, 1:65:17_, 1:66:5_, 1:66:19_, 1:67:11_, 1:67:12 _, 1:67:15_, 1:69:24_, 1:71:6 _, 1:80:14_, 1:81:21_, 1:82:2 _, 1:82:4_, 1:82:23_, 1:83:24 _, 1:83:25_, 1:84:2_, 1:87:18 _, 1:94:19_, 1:95:1_, 1:97:10 _, 1:97:14_, 1:101:11_, 1:105:13_, 1:116:18_, 1:117:6_, 1:119:23_, 1:120:8 _, 1:124:7_, 1:124:8_, 1:128:12_, 1:128:14_, 1:129:11_, 1:129:13_, 1:134:1_, 1:136:22_, 1:140:5 _, 1:140:6_, 1:152:20_, 1:153:9_, 1:156:11_, 1:156:12_, 1:163:17
grand-jury [1]_ - 1:43:4
grant [3]_ - 1:83:10_, 1:86:16_, 1:119:2
granting [1]_ - 1:35:14
granular [1]_ - 1:136:14
gravity [1]_ - 1:35:21
greater [2]_ - 1:26:8_, 1:45:2
group [1]_ - 1:37:3
grouped [3]_ - 1:36:17_, 1:95:7_, 1:146:24
grouping [1]_ - 1:123:22
guess [21]_ - 1:10:13_, 1:30:11_, 1:50:13_, 1:55:14 _, 1:63:19_, 1:64:22_, 1:76:18_, 1:80:5_, 1:90:22_, 1:104:24_, 1:105:9_, 1:109:25_, 1:111:21_, 1:114:13_, 1:134:23_, 1:136:15_, 1:137:2_, 1:154:23_, 1:158:17_, 1:160:5_, 1:161:4
guilty [2]_ - 1:112:16_, 1:119:15

H

half [3]_ - 1:65:9_, 1:65:10

1:142:10
Hall [3]_ - 1:141:16_, 1:141:18_, 1:146:12
hand [1]_ - 1:27:8
handle [1]_ - 1:156:23
hands [2]_ - 1:69:17_, 1:71:23
hang [2]_ - 1:59:8_, 1:77:24
happy [4]_ - 1:85:11_, 1:121:5_, 1:146:25_, 1:150:23
harassing [1]_ - 1:25:14
HARBACH [106]_ - 1:40:25_, 1:43:11_, 1:43:14 _, 1:44:1_, 1:44:12_, 1:44:16 _, 1:44:19_, 1:45:9_, 1:45:22 _, 1:46:2_, 1:46:5_, 1:50:5_, 1:50:15_, 1:51:1_, 1:51:12_, 1:51:23_, 1:52:2_, 1:52:10_, 1:52:14_, 1:52:19_, 1:52:23 _, 1:53:8_, 1:53:21_, 1:54:1_, 1:54:3_, 1:55:2_, 1:55:7_, 1:55:16_, 1:55:22_, 1:56:1_, 1:56:12_, 1:56:18_, 1:56:22 _, 1:57:1_, 1:57:3_, 1:58:6_, 1:58:8_, 1:58:10_, 1:59:8_, 1:60:6_, 1:60:9_, 1:61:6_, 1:61:8_, 1:62:5_, 1:62:13_, 1:62:17_, 1:62:20_, 1:62:24 _, 1:63:2_, 1:63:9_, 1:63:15_, 1:63:22_, 1:64:10_, 1:64:17 _, 1:65:7_, 1:65:18_, 1:66:11 _, 1:66:20_, 1:66:24_, 1:67:4 _, 1:67:8_, 1:67:14_, 1:67:23 _, 1:68:1_, 1:70:12_, 1:70:23 _, 1:71:3_, 1:72:2_, 1:72:5_, 1:72:7_, 1:72:10_, 1:73:6_, 1:73:12_, 1:73:14_, 1:73:17 _, 1:74:3_, 1:75:13_, 1:76:7_, 1:76:16_, 1:76:23_, 1:77:1_, 1:77:6_, 1:77:11_, 1:77:17_, 1:77:21_, 1:77:23_, 1:78:1_, 1:78:12_, 1:78:16_, 1:78:25 _, 1:79:5_, 1:79:14_, 1:79:16 _, 1:79:22_, 1:80:2_, 1:80:8_, 1:80:20_, 1:87:1_, 1:87:3_, 1:87:6_, 1:87:12_, 1:87:14_, 1:87:20_, 1:87:22_, 1:88:5_, 1:103:1
Harbach [8]_ - 1:3:10_, 1:40:24_, 1:55:10_, 1:81:25 _, 1:84:25_, 1:85:9_, 1:87:17 _, 1:102:24
harbor [1]_ - 1:84:20
hard [4]_ - 1:64:25_, 1:122:2_, 1:123:11_, 1:134:12

harm [3] – 1:160:2 ., 1:160:15 ., 1:160:19

head [1] – 1:117:1

heading [1] – 1:48:3

healthcare [1] – 1:137:19

hear [14] – 1:7:15 ., 1:40:20 ., 1:68:4 ., 1:87:4 ., 1:94:6 ., 1:104:3 ., 1:116:13 ., 1:130:20 ., 1:139:13 ., 1:140:9 ., 1:150:3 ., 1:153:12 ., 1:156:3 ., 1:157:25

heard [11] – 1:7:4 ., 1:7:5 ., 1:41:21 ., 1:45:6 ., 1:84:4 ., 1:84:25 ., 1:91:16 ., 1:91:18 ., 1:103:20 ., 1:107:5 ., 1:126:25

hearing [14] – 1:6:16 ., 1:10:2 ., 1:11:5 ., 1:35:17 ., 1:44:18 ., 1:52:17 ., 1:55:13 ., 1:80:19 ., 1:84:9 ., 1:85:13 ., 1:88:10 ., 1:113:14 ., 1:134:25 ., 1:137:2

hearings [2] – 1:27:5 ., 1:161:8

hearsay [4] – 1:151:15 ., 1:156:25 ., 1:163:7 ., 1:163:8

heart [1] – 1:164:2

held [11] – 1:6:1 ., 1:107:19 ., 1:108:10 ., 1:109:8 ., 1:111:11 ., 1:112:7 ., 1:142:3 ., 1:162:4 ., 1:162:6 ., 1:164:8

help [6] – 1:17:21 ., 1:20:4 ., 1:121:15 ., 1:132:14 ., 1:142:24

helped [2] – 1:69:25 ., 1:71:7

helping [1] – 1:61:14

Helstoski [1] – 1:19:9

Hendricks [3] – 1:106:15 ., 1:106:23 ., 1:107:4

herself [1] – 1:23:3

hid [2] – 1:95:13 ., 1:127:25

hidden [1] – 1:124:7

hide [10] – 1:40:4 ., 1:94:18 ., 1:111:16 ., 1:116:17 ., 1:117:5 ., 1:118:17 ., 1:119:22 ., 1:120:12 ., 1:133:25 ., 1:136:21

hiding [3] – 1:128:2 ., 1:134:2 ., 1:134:4

high [3] – 1:7:19 ., 1:9:13 ., 1:9:14

highest [1] – 1:53:6

highlighted [1] – 1:151:4

highlighting [1] – 1:66:3

highly [2] – 1:111:22 ., 1:160:18

himself [7] – 1:23:2 ., 1:23:3 ., 1:23:23 ., 1:35:6 ., 1:59:20 ., 1:70:15 ., 1:124:8

history [1] – 1:84:21

hold [4] – 1:45:18 ., 1:103:11 ., 1:122:22

holding [1] – 1:23:18

hole [1] – 1:85:16

holistically [1] – 1:32:9

home [2] – 1:144:9 ., 1:146:12

homes [1] – 1:165:6

Honor [178] – 1:3:9 ., 1:3:14 ., 1:3:17 ., 1:3:20 ., 1:5:1 ., 1:5:6 ., 1:5:14 ., 1:6:22 ., 1:6:24 ., 1:7:11 ., 1:7:15 ., 1:7:18 ., 1:9:19 ., 1:12:4 ., 1:17:21 ., 1:20:16 ., 1:22:16 ., 1:22:19 ., 1:23:8 ., 1:23:11 ., 1:25:5 ., 1:26:3 ., 1:26:12 ., 1:27:23 ., 1:30:3 ., 1:30:16 ., 1:30:19 ., 1:31:18 ., 1:32:5 ., 1:33:1 ., 1:35:15 ., 1:35:20 ., 1:36:17 ., 1:37:10 ., 1:38:2 ., 1:38:18 ., 1:39:7 ., 1:39:10 ., 1:39:21 ., 1:40:3 ., 1:40:4 ., 1:40:9, 1:40:17 ., 1:40:22 ., 1:40:25 ., 1:41:2 ., 1:41:9 ., 1:42:1 ., 1:43:19 ., 1:44:20 ., 1:46:2 ., 1:47:16 ., 1:48:10 ., 1:49:4 ., 1:49:13 ., 1:49:17 ., 1:49:22 ., 1:50:17 ., 1:51:8 ., 1:52:2 ., 1:52:4 ., 1:53:11 ., 1:53:12 ., 1:53:21 ., 1:54:1 ., 1:54:8 ., 1:54:11 ., 1:55:2 ., 1:55:19 ., 1:56:12 ., 1:56:22 ., 1:57:11 ., 1:57:14 ., 1:57:21 ., 1:61:10 ., 1:61:21 ., 1:61:24 ., 1:62:10 ., 1:62:20 ., 1:63:2 ., 1:63:4 ., 1:64:11 ., 1:65:11 ., 1:65:19 ., 1:65:22 ., 1:66:4 ., 1:66:20 ., 1:67:8, 1:67:23 ., 1:68:1 ., 1:68:4 ., 1:70:3 ., 1:72:12 ., 1:73:24 ., 1:74:3 ., 1:74:17 ., 1:75:3 ., 1:75:13 ., 1:76:24 ., 1:77:11 ., 1:77:14 ., 1:77:17 ., 1:77:24 ., 1:78:1 ., 1:80:20 ., 1:80:22 ., 1:82:14 ., 1:85:10 ., 1:85:13 ., 1:86:24 ., 1:87:1 ., 1:87:4 ., 1:87:12 ., 1:87:20 ., 1:88:8 ., 1:89:4 .,

1:90:2 ., 1:92:5 ., 1:92:11 ., 1:93:9 ., 1:93:24 ., 1:94:7 ., 1:94:10 ., 1:96:6 ., 1:100:19 ., 1:101:1 ., 1:102:12 ., 1:102:20 ., 1:103:1 ., 1:103:3 ., 1:103:13 ., 1:103:17 ., 1:103:21 ., 1:103:25 ., 1:104:5 ., 1:104:8 ., 1:107:12 ., 1:109:4 ., 1:112:13 ., 1:116:7 ., 1:120:2 ., 1:120:20 ., 1:121:3 ., 1:121:21 ., 1:123:15 ., 1:123:19 ., 1:126:14 ., 1:127:15 ., 1:128:25 ., 1:130:7 ., 1:137:18 ., 1:138:25 ., 1:139:4 ., 1:139:10 ., 1:139:24 ., 1:140:4 ., 1:140:11 ., 1:142:7 ., 1:142:12 ., 1:143:18 ., 1:146:8 ., 1:150:8 ., 1:150:17 ., 1:151:2 ., 1:151:22 ., 1:152:1 ., 1:153:16 ., 1:153:20 ., 1:156:3 ., 1:156:7 ., 1:156:13 ., 1:156:18 ., 1:161:11 ., 1:162:17 ., 1:163:4

Honor's [6] – 1:45:11 ., 1:57:4 ., 1:59:5 ., 1:65:19 ., 1:98:9 ., 1:149:3

hope [5] – 1:21:21 ., 1:22:16 ., 1:30:15 ., 1:44:21 ., 1:163:5

hopes [1] – 1:45:4

host [1] – 1:35:6

hour [1] – 1:41:20

House [6] – 1:102:7 ., 1:136:21 ., 1:144:12 ., 1:144:15 ., 1:144:16 ., 1:144:25

housekeeping [2] – 1:164:12 ., 1:165:3

human [1] – 1:20:17

hundred [1] – 1:126:21

Hur [7] – 1:34:18 ., 1:69:10 ., 1:69:17 ., 1:70:11 ., 1:70:18 ., 1:71:23

hybrid [1] – 1:123:10

hypothetically [1] – 1:119:2

hypotheticals [1] – 1:119:6

---

**I**

idea [2] – 1:47:13 ., 1:150:11

identical [1] – 1:85:7

identification [1] – 1:71:14

identified [4] – 1:16:9 ., 1:30:24 ., 1:69:5 ., 1:98:13

identify [2] – 1:75:25 ., 1:91:11

identifying [1] – 1:114:3

ignore [1] – 1:118:18

ignores [1] – 1:146:9

illustrate [1] – 1:49:14

illustrates [1] – 1:58:1

imagine [1] – 1:51:14

immediately [2] – 1:30:14 ., 1:74:7

immunity [1] – 1:18:15

impacted [1] – 1:86:5

impair [4] – 1:127:6 ., 1:133:11 ., 1:149:8 ., 1:155:14

impede [1] – 1:133:15

implicate [1] – 1:99:6

implicated [2] – 1:47:8 ., 1:58:23

implicates [1] – 1:99:10

implicating [1] – 1:128:17

implication [2] – 1:33:2 ., 1:86:7

import [1] – 1:97:14

importance [1] – 1:105:25

important [7] – 1:35:21 ., 1:48:12 ., 1:59:16 ., 1:59:19 ., 1:160:11 ., 1:160:13 ., 1:162:18

improper [8] – 1:29:23 ., 1:39:17 ., 1:85:8 ., 1:99:7 ., 1:151:15 ., 1:152:8 ., 1:159:10 ., 1:160:17

improperly [3] – 1:18:15 ., 1:81:15 ., 1:95:20

inadmissible [3] – 1:157:10 ., 1:157:14 ., 1:163:8

inadvertent [1] – 1:10:19

inapposite [1] – 1:24:9

inappropriate [3] – 1:24:14 ., 1:42:13 ., 1:58:16

inappropriately [1] – 1:43:7

incidental [1] – 1:93:14

incidentally [1] – 1:116:25

include [6]₋ - 1:108:13₋, 1:113:9₋, 1:114:21₋, 1:115:10₋, 1:152:8₋, 1:158:23

included [10]₋ - 1:93:22₋, 1:110:8₋, 1:110:9₋, 1:110:10 ₋, 1:117:7₋, 1:117:13₋, 1:158:1₋, 1:161:23₋, 1:163:22₋, 1:163:24

included.. [1]₋ - 1:137:1

including [6]₋ - 1:13:17₋, 1:14:4₋, 1:20:19₋, 1:21:22₋, 1:69:12₋, 1:163:12

inconsistent [1]₋ - 1:85:6

incorporating [1]₋ - 1:111:18

incorrect [2]₋ - 1:55:21₋, 1:139:9

incumbent [1]₋ - 1:126:22

indefinite [1]₋ - 1:33:4

indicate [1]₋ - 1:110:17

indicated [2]₋ - 1:15:9₋, 1:28:4

indicating [2]₋ - 1:47:5₋, 1:57:22

indict [1]₋ - 1:31:3

indicted [1]₋ - 1:70:5

Indictment [1]₋ - 1:4:15

indictment [120]₋ - 1:8:18 ₋, 1:8:19₋, 1:12:4₋, 1:14:21₋, 1:14:23₋, 1:15:15₋, 1:15:18 ₋, 1:16:24₋, 1:18:7₋, 1:18:19 ₋, 1:20:10₋, 1:20:11₋, 1:20:23₋, 1:27:23₋, 1:31:18 ₋, 1:32:7₋, 1:34:3₋, 1:35:19₋, 1:35:21₋, 1:37:8₋, 1:41:7₋, 1:41:12₋, 1:41:14₋, 1:44:5₋, 1:45:8₋, 1:46:6₋, 1:48:8₋, 1:50:8₋, 1:62:21₋, 1:63:14₋, 1:64:20₋, 1:68:16₋, 1:82:7₋, 1:82:9₋, 1:83:8₋, 1:85:22₋, 1:94:1₋, 1:94:9₋, 1:94:12₋, 1:94:17₋, 1:95:4₋, 1:95:15₋, 1:97:10₋, 1:98:5₋, 1:98:23₋, 1:99:8₋, 1:99:13₋, 1:100:9₋, 1:102:19₋, 1:107:8₋, 1:107:20₋, 1:116:8₋, 1:117:23₋, 1:118:10₋, 1:118:18₋, 1:119:8₋, 1:120:7 ₋, 1:123:17₋, 1:123:25₋, 1:124:17₋, 1:125:1₋, 1:125:3 ₋, 1:125:13₋, 1:125:16₋, 1:125:24₋, 1:126:4₋, 1:126:20₋, 1:127:1₋, 1:127:24₋, 1:127:25₋, 1:128:3₋, 1:129:7₋, 1:129:9

₋, 1:129:15₋, 1:134:21₋, 1:135:16₋, 1:135:24₋, 1:139:12₋, 1:139:19₋, 1:141:9₋, 1:141:13₋, 1:141:21₋, 1:142:23₋, 1:143:10₋, 1:144:18₋, 1:144:24₋, 1:145:18₋, 1:145:24₋, 1:145:25₋, 1:146:1₋, 1:146:10₋, 1:146:13₋, 1:146:19₋, 1:147:4₋, 1:147:9₋, 1:147:25 ₋, 1:151:12₋, 1:152:9₋, 1:152:17₋, 1:153:4₋, 1:154:1 ₋, 1:154:4₋, 1:155:11₋, 1:155:20₋, 1:157:11₋, 1:157:18₋, 1:158:2₋, 1:159:6 ₋, 1:160:10₋, 1:162:20₋, 1:162:21₋, 1:162:24₋, 1:163:12₋, 1:163:15₋, 1:163:17₋, 1:163:22₋, 1:164:5₋, 1:164:6₋, 1:164:9

indictments [6]₋ - 1:97:21 ₋, 1:97:24₋, 1:98:1₋, 1:125:17₋, 1:158:24₋, 1:160:6

individual [8]₋ - 1:35:2₋, 1:71:11₋, 1:71:16₋, 1:83:13 ₋, 1:90:24₋, 1:99:19₋, 1:99:21₋, 1:100:23

individuals [5]₋ - 1:68:14 ₋, 1:69:4₋, 1:69:12₋, 1:103:8 ₋, 1:155:21

induce [2]₋ - 1:133:9₋, 1:155:13

indulge [1]₋ - 1:52:3

inefficient [1]₋ - 1:44:23

inextricably [1]₋ - 1:33:20

infamous [2]₋ - 1:9:22₋, 1:35:2

inference [4]₋ - 1:58:19₋, 1:59:2₋, 1:60:11₋, 1:83:3

influence [1]₋ - 1:133:15

inform [2]₋ - 1:16:11

information [17]₋ - 1:14:9 ₋, 1:19:4₋, 1:34:1₋, 1:34:17₋, 1:34:21₋, 1:43:1₋, 1:50:4₋, 1:92:8₋, 1:105:12₋, 1:105:15 ₋, 1:105:16₋, 1:129:8₋, 1:129:13₋, 1:142:24₋, 1:152:17₋, 1:160:14

inherent [1]₋ - 1:53:13

initial [1]₋ - 1:43:21₋, 1:93:19

innocent [2]₋ - 1:10:19₋, 1:149:14

inquired [1]₋ - 1:10:2

inquiry [1]₋ - 1:104:10

insofar [3]₋ - 1:33:21₋, 1:141:8₋, 1:147:13

instance [4]₋ - 1:38:5₋, 1:64:5₋, 1:83:13₋, 1:135:19

instances [1]₋ - 1:25:9

instruct [3]₋ - 1:106:21₋, 1:116:21₋, 1:131:22

instruction [11]₋ - 1:95:22 ₋, 1:99:3₋, 1:109:5₋, 1:110:3 ₋, 1:111:7₋, 1:112:2₋, 1:122:15₋, 1:131:23₋, 1:131:24₋, 1:137:18₋, 1:162:7

instructions [6]₋ - 1:116:20₋, 1:117:12₋, 1:117:14₋, 1:117:22₋, 1:160:22₋, 1:161:7

instructive [1]₋ - 1:124:23

insufficient [1]₋ - 1:142:3

integrity [3]₋ - 1:127:7₋, 1:133:12₋, 1:155:14

intend [1]₋ - 1:28:12

Intend [1]₋ - 1:133:8

intended [3]₋ - 1:82:3₋, 1:155:16₋, 1:160:7

intent [10]₋ - 1:127:6₋, 1:130:15₋, 1:133:11₋, 1:133:15₋, 1:149:2₋, 1:155:12₋, 1:155:14₋, 1:158:10₋, 1:158:11₋, 1:160:24

interacted [1]₋ - 1:24:8

interaction [6]₋ - 1:9:21₋, 1:10:7₋, 1:11:1₋, 1:24:9₋, 1:25:11₋, 1:85:8

interactions [6]₋ - 1:10:9 ₋, 1:12:23₋, 1:14:20₋, 1:14:22₋, 1:24:14₋, 1:25:15

interchangeably [1]₋ - 1:141:15

interest [3]₋ - 1:23:18₋, 1:73:24₋, 1:73:25

interesting [1]₋ - 1:82:3

interfere [1]₋ - 1:140:4

interim [1]₋ - 1:63:17

intermediate [1]₋ - 1:122:23

internal [1]₋ - 1:64:2

interpretation [4]₋ - 1:140:16₋, 1:140:19₋, 1:141:3₋, 1:150:2

interprets [1]₋ - 1:74:25

interrogatories [3]₋ -

1:117:16₋, 1:117:19₋, 1:123:8

interrogatory [2]₋ - 1:111:1₋, 1:111:5

intertwined [1]₋ - 1:33:20

interview [10]₋ - 1:12:14₋, 1:12:16₋, 1:12:17₋, 1:13:3₋, 1:13:4₋, 1:13:13₋, 1:14:3₋, 1:14:8₋, 1:87:18₋, 1:144:5

intimidate [2]₋ - 1:59:14₋, 1:60:1

intimidation [2]₋ - 1:60:12 ₋, 1:154:22

investigate [1]₋ - 1:18:12

investigated [7]₋ - 1:32:22₋, 1:45:2₋, 1:89:20₋, 1:89:22₋, 1:90:4₋, 1:90:5₋, 1:90:9

investigating [4]₋ - 1:25:6 ₋, 1:31:1₋, 1:89:5₋, 1:89:16

investigation [63]₋ - 1:12:21₋, 1:13:9₋, 1:14:11₋, 1:14:13₋, 1:14:15₋, 1:14:17 ₋, 1:14:18₋, 1:14:24₋, 1:15:13₋, 1:15:24₋, 1:16:1₋, 1:16:12₋, 1:16:19₋, 1:17:19 ₋, 1:17:23₋, 1:17:24₋, 1:18:22₋, 1:19:17₋, 1:19:21 ₋, 1:19:24₋, 1:22:1₋, 1:22:5₋, 1:25:17₋, 1:26:5₋, 1:27:20₋, 1:27:22₋, 1:32:2₋, 1:33:1₋, 1:34:14₋, 1:34:24₋, 1:37:12 ₋, 1:54:20₋, 1:54:23₋, 1:60:23₋, 1:61:2₋, 1:63:10₋, 1:63:16₋, 1:63:19₋, 1:63:20 ₋, 1:63:23₋, 1:64:14₋, 1:64:18₋, 1:85:25₋, 1:86:9₋, 1:86:10₋, 1:86:14₋, 1:87:25 ₋, 1:89:11₋, 1:90:7₋, 1:128:14₋, 1:133:16₋, 1:136:7₋, 1:138:1₋, 1:138:2 ₋, 1:138:3₋, 1:138:8₋, 1:138:10₋, 1:138:20₋, 1:139:16₋, 1:152:13

investigative [3]₋ - 1:9:4 ₋, 1:18:13₋, 1:38:12

investigators [1]₋ - 1:91:13

investigatory [1]₋ - 1:152:24

invitation [2]₋ - 1:47:1₋, 1:84:1

invites [1]₋ - 1:84:8

invokes [1]₋ - 1:47:9

involved [3]₋ - 1:26:1₋, 1:64:18₋, 1:138:9

involving [2]- - 1:14:15-, 1:14:17

iPhone [1]- - 1:90:12

Irving [1]- - 1:4:3

isolate [2]- - 1:104:2-, 1:122:10

issue [31]- - 1:13:19-, 1:21:11-, 1:23:16-, 1:24:13 -, 1:42:7-, 1:44:14-, 1:47:21 -, 1:49:16-, 1:53:17-, 1:65:16-, 1:66:12-, 1:70:19 -, 1:97:5-, 1:104:9-, 1:105:8 -, 1:105:22-, 1:106:3-, 1:108:16-, 1:119:1-, 1:120:17-, 1:120:19-, 1:121:1-, 1:140:12-, 1:141:17-, 1:141:20-, 1:143:6-, 1:147:2-, 1:153:2 -, 1:161:16-, 1:163:17

issued [2]- - 1:20:2-, 1:27:11

issues [12]- - 1:7:5-, 1:26:7-, 1:28:3-, 1:45:25-, 1:56:7-, 1:65:5-, 1:73:25-, 1:126:8-, 1:132:2-, 1:143:21 -, 1:145:4-, 1:154:1

item [2]- - 1:36:6-, 1:36:15

itemized [1]- - 1:28:17

items [3]- - 1:5:22-, 1:74:20-, 1:162:15

itself [18]- - 1:29:17-, 1:29:23-, 1:30:2-, 1:51:24-, 1:53:19-, 1:70:18-, 1:72:21 -, 1:77:4-, 1:78:21-, 1:99:18 -, 1:107:22-, 1:125:2-, 1:143:12-, 1:148:4-, 1:149:15-, 1:150:13-, 1:159:6

---

## J

January [8]- - 1:13:10-, 1:14:1-, 1:135:25-, 1:142:11 -, 1:142:15-, 1:142:18-, 1:142:20-, 1:143:4

Jay [2]- - 1:3:9-, 1:92:11

join [3]- - 1:27:25-, 1:137:12-, 1:139:4

joined [3]- - 1:108:8-, 1:109:8-, 1:153:14

joint [1]- - 1:137:15

journey [1]- - 1:144:19

Judge [7]- - 1:4:1-, 1:39:12-, 1:58:8-, 1:65:20-, 1:65:23-, 1:66:15-, 1:161:8

judge [7]- - 1:26:4-, 1:27:6

-, 1:27:10-, 1:38:9-, 1:38:13 -, 1:39:9-, 1:41:3

judgeship [4]- - 1:21:16-, 1:30:6-, 1:59:16-, 1:84:12

judgment [1]- - 1:66:6

judicial [5]- - 1:25:23-, 1:29:5-, 1:60:21-, 1:61:3-, 1:61:12

jump [3]- - 1:122:20-, 1:131:12-, 1:154:13

juncture [1]- - 1:74:4

June [11]- - 1:12:5-, 1:13:12-, 1:13:14-, 1:13:24 -, 1:13:25-, 1:14:19-, 1:15:7 -, 1:42:20-, 1:58:3-, 1:87:19

juries [2]- - 1:64:7-, 1:153:4

jurisdiction [1]- - 1:133:17

jurisdictional [1]- - 1:124:4

Jury [1]- - 1:106:17

jury [149]- - 1:6:6-, 1:8:14-, 1:8:16-, 1:8:19-, 1:12:2-, 1:12:8-, 1:12:9-, 1:12:12-, 1:12:21-, 1:14:9-, 1:14:16-, 1:14:19-, 1:15:13-, 1:16:7-, 1:16:11-, 1:16:14-, 1:17:14 -, 1:17:17-, 1:17:25-, 1:18:23-, 1:19:1-, 1:19:5-, 1:20:1-, 1:20:3-, 1:20:7-, 1:20:8-, 1:20:9-, 1:20:19-, 1:20:23-, 1:22:20-, 1:25:3-, 1:25:7-, 1:25:14-, 1:25:22-, 1:26:6-, 1:26:17-, 1:29:1-, 1:31:2-, 1:31:4-, 1:31:7-, 1:31:8-, 1:31:10-, 1:31:13-, 1:31:16-, 1:31:17-, 1:31:20 -, 1:31:21-, 1:31:23-, 1:34:1 -, 1:34:11-, 1:34:12-, 1:37:6 -, 1:37:13-, 1:38:5-, 1:38:13 -, 1:38:17-, 1:39:1-, 1:39:14 -, 1:39:16-, 1:39:18-, 1:40:7 -, 1:42:14-, 1:42:18-, 1:42:24-, 1:43:2-, 1:43:4-, 1:43:9-, 1:47:1-, 1:47:7-, 1:47:12-, 1:56:8-, 1:56:9-, 1:62:16-, 1:63:21-, 1:63:24 -, 1:64:4-, 1:64:13-, 1:64:16 -, 1:64:20-, 1:64:24-, 1:65:1 -, 1:65:17-, 1:66:5-, 1:66:19 -, 1:67:12-, 1:67:15-, 1:69:24-, 1:71:6-, 1:80:14-, 1:81:21-, 1:82:2-, 1:82:4-, 1:82:23-, 1:83:24-, 1:83:25 -, 1:84:2-, 1:87:19-, 1:94:19 -, 1:95:1-, 1:95:22-, 1:97:10 -, 1:97:14-, 1:99:3-,

-, 1:101:11-, 1:104:9-, 1:105:13-, 1:105:22-, 1:106:3-, 1:111:2-, 1:111:14 -, 1:112:16-, 1:116:18-, 1:116:20-, 1:116:21-, 1:117:6-, 1:117:12-, 1:117:13-, 1:117:22-, 1:119:23-, 1:120:8-, 1:124:7 -, 1:124:8-, 1:124:24-, 1:125:1-, 1:128:12-, 1:129:11-, 1:129:14-, 1:132:19-, 1:134:1-, 1:136:22-, 1:140:5-, 1:143:20-, 1:143:25-, 1:145:5-, 1:152:21-, 1:153:8 -, 1:153:10-, 1:154:1-, 1:154:6-, 1:156:11-, 1:156:12-, 1:160:22-, 1:161:7-, 1:162:20-, 1:162:22-, 1:163:17

jury's [3]- - 1:99:4-, 1:128:14-, 1:140:6

just.. [1]- - 1:136:1

Justice [5]- - 1:9:23-, 1:16:13-, 1:31:12-, 1:91:6-, 1:92:15

justice [2]- - 1:69:25-, 1:71:5

justification [1]- - 1:66:13

justified [1]- - 1:66:14

justify [3]- - 1:50:17-, 1:66:14-, 1:75:17

juxtaposition [2]- - 1:59:2 -, 1:60:11

---

## K

keep [7]- - 1:60:14-, 1:102:24-, 1:103:19-, 1:136:20-, 1:153:18-, 1:155:6-, 1:165:1

kept [3]- - 1:13:6-, 1:142:25

key [1]- - 1:58:18

kind [6]- - 1:38:20-, 1:61:8 -, 1:65:2-, 1:111:9-, 1:121:23-, 1:161:15

kinds [3]- - 1:41:21-, 1:45:14

Kise [1]- - 1:3:15

knowable [1]- - 1:52:10

knowing [1]- - 1:124:1

knowingly [22]- - 1:96:15 -, 1:116:16-, 1:121:9-, 1:121:10-, 1:121:11-, 1:122:4-, 1:122:6-, 1:122:8

1:122:13-, 1:122:20-, 1:122:21-, 1:123:12-, 1:132:3-, 1:132:24-, 1:147:6 -, 1:154:15-, 1:154:16-, 1:154:21-, 1:154:25-, 1:155:2-, 1:155:4-, 1:155:8

knowledge [16]- - 1:17:2 -, 1:122:18-, 1:124:5-, 1:124:10-, 1:126:15-, 1:126:16-, 1:127:8-, 1:127:17-, 1:128:5-, 1:135:5 -, 1:135:6-, 1:135:7-, 1:135:8-, 1:135:11-, 1:137:14

known [1]- - 1:39:12

knows [4]- - 1:13:19-, 1:35:20-, 1:43:19-, 1:70:3

---

## L

lack [5]- - 1:128:5-, 1:133:21-, 1:136:7-, 1:138:19-, 1:163:25

lacks [1]- - 1:143:10

Lago [13]- - 1:13:4-, 1:13:5-, 1:14:2-, 1:35:6-, 1:35:8-, 1:144:12-, 1:144:15 -, 1:144:17-, 1:144:19-, 1:144:25-, 1:159:18-, 1:160:1-, 1:163:24

Lago's [1]- - 1:87:19

laid [9]- - 1:10:10-, 1:12:11 -, 1:16:4-, 1:30:16-, 1:31:4-, 1:68:7-, 1:83:11-, 1:144:18 -, 1:150:20

land [1]- - 1:7:3

language [19]- - 1:28:14-, 1:81:22-, 1:97:8-, 1:100:14 -, 1:100:18-, 1:104:21-, 1:111:18-, 1:115:5-, 1:121:14-, 1:121:16-, 1:123:13-, 1:132:25-, 1:137:6-, 1:154:13-, 1:154:19-, 1:155:10-, 1:161:24-, 1:163:22

last [9]- - 1:19:23-, 1:60:4 -, 1:69:10-, 1:73:8-, 1:76:18 -, 1:82:19-, 1:97:15-, 1:143:15-, 1:153:19

latch [1]- - 1:70:16

late [2]- - 1:15:7-, 1:85:3

law [24]- - 1:3:22-, 1:11:21 -, 1:20:19-, 1:23:17-, 1:31:14-, 1:36:20-, 1:39:13 -, 1:49:10-, 1:72:10-, 1:80:16-, 1:83:9-, 1:85:22-, 1:95:10-, 1:100:20-,

1:100:22_, 1:101:4_, 1:105:8
_, 1:107:13_, 1:110:16_,
1:110:18_, 1:111:5_,
1:125:15_, 1:138:12_,
1:141:24

lawful [1]_ - 1:100:23

lawfully [1]_ - 1:34:17

lawyer [12]_ - 1:13:15_,
1:29:9_, 1:29:13_, 1:49:20_,
1:52:1_, 1:52:8_, 1:57:7_,
1:57:8_, 1:59:14_, 1:59:15_,
1:59:16_, 1:59:21

lawyers [1]_ - 1:27:10

lay [2]_ - 1:7:2_, 1:68:22

layers [1]_ - 1:149:12

lays [1]_ - 1:16:13

lead [1]_ - 1:7:9

leading [4]_ - 1:14:21_,
1:14:22_, 1:35:17_, 1:129:12

leads [1]_ - 1:121:23

learn [1]_ - 1:91:4

learned [3]_ - 1:12:18_,
1:12:24

learning [1]_ - 1:118:6

least [12]_ - 1:7:3_, 1:18:1
_, 1:18:22_, 1:41:2_, 1:41:11
_, 1:49:22_, 1:89:18_,
1:104:2_, 1:105:10_, 1:111:4
_, 1:135:18_, 1:147:25

leave [2]_ - 1:42:25_,
1:93:23

leaving [1]_ - 1:4:9

lectern [2]_ - 1:4:11_,
1:7:13

led [1]_ - 1:83:7

left [1]_ - 1:80:24

legal [8]_ - 1:46:11_,
1:48:18_, 1:52:5_, 1:76:8_,
1:83:17_, 1:83:23_, 1:85:16
_, 1:120:24

length [3]_ - 1:23:9_,
1:30:9_, 1:63:9

less [4]_ - 1:19:21_,
1:46:20_, 1:50:8_, 1:74:13

letter [23]_ - 1:12:20_,
1:13:1_, 1:15:5_, 1:15:6_,
1:15:9_, 1:15:12_, 1:15:17_,
1:15:22_, 1:17:10_, 1:18:9_,
1:19:19_, 1:19:20_, 1:21:18
_, 1:21:25_, 1:25:9_, 1:28:6_,
1:47:2_, 1:57:17_, 1:58:3_,
1:58:5_, 1:58:25_, 1:84:9_,
1:164:22

level [3]_ - 1:30:22_, 1:57:5

_, 1:110:8

Lexis [2]_ - 1:24:5_,
1:24:11

liability [15]_ - 1:100:8_,
1:107:14_, 1:107:18_,
1:109:6_, 1:109:22_,
1:109:25_, 1:112:22_,
1:114:19_, 1:114:20_,
1:116:2_, 1:116:22_,
1:116:24_, 1:117:13_,
1:119:11_, 1:127:20

liable [4]_ - 1:105:4_,
1:112:8_, 1:118:9_, 1:119:21

lied [6]_ - 1:26:11_, 1:31:20
_, 1:69:23_, 1:69:24_, 1:71:5
_, 1:71:6

life [1]_ - 1:29:16

lifestyle [2]_ - 1:29:9_,
1:53:18

light [2]_ - 1:51:9_,
1:104:20

likelihood [5]_ - 1:62:10_,
1:75:19_, 1:75:25_, 1:76:10
_, 1:86:19

likely [3]_ - 1:91:13_,
1:92:16_, 1:109:5

limit [1]_ - 1:164:24

limited [2]_ - 1:36:21_,
1:69:13

line [4]_ - 1:36:15_, 1:58:7
_, 1:58:10

lines [2]_ - 1:59:19_,
1:106:2

listed [1]_ - 1:88:3

litany [1]_ - 1:9:10

literally [2]_ - 1:31:16_,
1:143:24

litigate [1]_ - 1:59:22

litigated [1]_ - 1:152:19

litigation [1]_ - 1:65:2

local [1]_ - 1:164:23

location [1]_ - 1:160:17

locus [1]_ - 1:63:12

lodged [1]_ - 1:30:14

logical [1]_ - 1:83:3

look [14]_ - 1:13:5_, 1:32:8
_, 1:60:10_, 1:75:9_, 1:90:16
_, 1:91:10_, 1:110:1_,
1:125:2_, 1:128:20_,
1:130:23_, 1:135:23_,
1:146:10

looked [2]_ - 1:14:1_,
1:88:9

looking [18]_ - 1:10:14_,

1:16:7_, 1:16:18_, 1:16:19_,
1:41:24_, 1:62:6_, 1:87:10_,
1:104:11_, 1:109:25_,
1:111:10_, 1:113:3_, 1:122:3
_, 1:122:7_, 1:123:2_,
1:128:18_, 1:128:19_,
1:155:11

looks [4]_ - 1:15:3_,
1:19:20_, 1:72:15_, 1:88:23

love [2]_ - 1:10:15_,
1:10:16

lunch [1]_ - 1:88:17

lying [1]_ - 1:12:15

## M

ma'am [4]_ - 1:7:1_,
1:15:11_, 1:61:6_, 1:103:22

Main [1]_ - 1:31:11

maintain [1]_ - 1:6:6

maintained [1]_ - 1:53:15

major [1]_ - 1:155:2

mangle [2]_ - 1:155:10_,
1:162:10

manner [10]_ - 1:71:15_,
1:73:18_, 1:81:3_, 1:101:9_,
1:108:4_, 1:109:18_,
1:113:10_, 1:136:16_,
1:136:23_, 1:136:24

Manual [3]_ - 1:16:13_,
1:91:6_, 1:92:15

Mar [14]_ - 1:13:4_, 1:13:5
_, 1:14:2_, 1:35:6_, 1:35:8_,
1:87:19_, 1:144:12_,
1:144:15_, 1:144:17_,
1:144:19_, 1:144:25_,
1:159:18_, 1:160:1_,
1:163:24

Mar-a-Lago [13]_ - 1:13:4
_, 1:13:5_, 1:14:2_, 1:35:6_,
1:35:8_, 1:144:12_, 1:144:15
_, 1:144:17_, 1:144:19_,
1:144:25_, 1:159:18_,
1:160:1_, 1:163:24

Mar-a-Lago's [1]_ -
1:87:19

March [1]_ - 1:161:8

marked [1]_ - 1:139:20

markings [17]_ - 1:13:18_,
1:94:24_, 1:101:12_, 1:124:7
_, 1:126:18_, 1:127:3_,
1:134:5_, 1:134:22_, 1:135:9
_, 1:135:12_, 1:135:17_,
1:136:4_, 1:136:9_, 1:137:4
_, 1:137:14_, 1:138:5_,
1:140:1

matched [1]_ - 1:90:18

material [2]_ - 1:65:1_,
1:65:17

materially [1]_ - 1:22:4

materials [39]_ - 1:6:10_,
1:6:14_, 1:13:17_, 1:19:1_,
1:25:23_, 1:26:9_, 1:26:13_,
1:26:14_, 1:26:21_, 1:26:23
_, 1:27:17_, 1:27:25_,
1:34:15_, 1:37:20_, 1:38:4_,
1:38:6_, 1:39:9_, 1:39:21_,
1:39:22_, 1:55:1_, 1:57:19_,
1:66:5_, 1:66:21_, 1:70:22_,
1:77:8_, 1:79:18_, 1:79:22_,
1:81:4_, 1:81:7_, 1:81:9_,
1:81:14_, 1:82:2_, 1:82:4_,
1:84:15_, 1:89:7_, 1:96:24_,
1:152:21_, 1:152:22_,
1:164:3

matter [16]_ - 1:43:4_,
1:55:20_, 1:67:15_, 1:95:21
_, 1:95:25_, 1:127:9_,
1:127:12_, 1:127:15_,
1:127:16_, 1:127:18_,
1:129:25_, 1:130:3_,
1:133:16_, 1:152:11_,
1:163:10_, 1:164:2

mattered [1]_ - 1:57:14

McNamara [1]_ - 1:3:10

mean [39]_ - 1:17:8_,
1:19:11_, 1:20:15_, 1:21:18
_, 1:22:15_, 1:23:11_,
1:23:13_, 1:36:18_, 1:37:15
_, 1:37:17_, 1:38:8_, 1:50:2_,
1:51:17_, 1:55:4_, 1:55:20_,
1:61:10_, 1:63:11_, 1:64:8_,
1:81:8_, 1:82:7_, 1:89:16_,
1:96:3_, 1:96:20_, 1:110:2_,
1:115:4_, 1:117:1_, 1:118:1
_, 1:119:2_, 1:124:23_,
1:129:18_, 1:130:25_,
1:131:23_, 1:133:25_,
1:151:18_, 1:158:10_,
1:161:6_, 1:162:17_,
1:163:23

meaning [3]_ - 1:56:25_,
1:74:11

meaningfully [1]_ -
1:45:25

means [11]_ - 1:64:11_,
1:80:25_, 1:101:9_, 1:113:13
_, 1:121:10_, 1:121:19_,
1:121:25_, 1:127:20_,
1:136:17_, 1:136:23_,
1:136:24

meant [2]_ - 1:90:3_,
1:123:12

media [1]_ - 1:59:12
meet [2]_ - 1:29:21_, 1:86:8
meeting [46]_ - 1:6:1_, 1:9:22_, 1:10:8_, 1:10:10_, 1:11:7_, 1:11:13_, 1:11:24_, 1:12:10_, 1:22:12_, 1:29:7_, 1:29:20_, 1:30:5_, 1:30:10_, 1:30:25_, 1:41:24_, 1:44:5_, 1:44:8_, 1:44:14_, 1:46:18_, 1:48:10_, 1:48:14_, 1:48:17 _, 1:48:23_, 1:50:24_, 1:51:3 _, 1:51:21_, 1:51:22_, 1:54:10_, 1:54:13_, 1:54:20 _, 1:55:15_, 1:56:2_, 1:56:6_, 1:56:13_, 1:57:10_, 1:57:23 _, 1:60:19_, 1:62:1_, 1:83:4_, 1:83:7_, 1:84:6_, 1:84:14_, 1:85:11_, 1:86:15_, 1:86:18
meets [1]_ - 1:163:18
member [1]_ - 1:112:7
members [1]_ - 1:69:14
mens [11]_ - 1:121:16_, 1:131:7_, 1:132:16_, 1:132:22_, 1:133:1_, 1:133:2 _, 1:133:20_, 1:133:22_, 1:134:7_, 1:134:15_, 1:154:18
mention [4]_ - 1:14:23_, 1:42:9_, 1:58:16_, 1:69:10
mentioned [9]_ - 1:43:16 _, 1:44:18_, 1:46:17_, 1:48:18_, 1:49:11_, 1:68:20 _, 1:72:20_, 1:74:4_, 1:74:10
mentions [3]_ - 1:46:18_, 1:69:4_, 1:74:11
mere [1]_ - 1:151:5
merely [1]_ - 1:154:2
merit [2]_ - 1:50:7
mess [1]_ - 1:21:15
messages [2]_ - 1:59:9_, 1:59:11
met [2]_ - 1:84:18_, 1:86:20
method [1]_ - 1:121:2
Miami [5]_ - 1:37:7_, 1:37:14_, 1:38:17_, 1:67:12
Michael [1]_ - 1:3:10
middle [2]_ - 1:15:2_, 1:142:22
might [11]_ - 1:33:4_, 1:41:24_, 1:61:10_, 1:65:7_, 1:66:5_, 1:87:24_, 1:89:25_, 1:117:12_, 1:161:21_, 1:163:20

mind [4]_ - 1:32:6_, 1:67:19_, 1:161:18_, 1:165:1
minimum [1]_ - 1:69:14
minute [6]_ - 1:43:17_, 1:50:10_, 1:52:3_, 1:56:19_, 1:68:25_, 1:160:5
minutes [8]_ - 1:45:13_, 1:67:15_, 1:75:12_, 1:80:17 _, 1:80:23_, 1:153:14_, 1:163:2_, 1:163:5
mischaracterization [1] _ - 1:128:15
mischaracterize [1]_ - 1:28:12
misconduct [3]_ - 1:30:22 _, 1:51:16_, 1:57:5
misconstrues [1]_ - 1:117:6
misleading [7]_ - 1:114:3 _, 1:114:9_, 1:121:11_, 1:122:5_, 1:129:22_, 1:131:8 _, 1:132:20
misled [1]_ - 1:94:23
missed [1]_ - 1:161:22
missing [1]_ - 1:13:15
misspoke [2]_ - 1:15:11_, 1:43:24
misstated [1]_ - 1:74:23
misstatement [2]_ - 1:145:22_, 1:146:21
mistake [1]_ - 1:10:19
mistaken [3]_ - 1:10:21_, 1:142:21_, 1:145:19
misunderstanding [1]_ - 1:145:22
misunderstood [1]_ - 1:145:16
modifies [1]_ - 1:155:2
moment [12]_ - 1:41:19_, 1:51:2_, 1:51:9_, 1:51:13_, 1:52:5_, 1:53:22_, 1:56:13_, 1:62:14_, 1:68:4_, 1:118:13 _, 1:123:2_, 1:154:10
monikers [1]_ - 1:33:24
month [3]_ - 1:18:7_, 1:45:7_, 1:63:14
months [1]_ - 1:25:17
moreover [2]_ - 1:24:17_, 1:48:21
Morison [1]_ - 1:161:9
morning [26]_ - 1:3:2_, 1:3:9_, 1:3:12_, 1:3:14_, 1:3:17_, 1:3:18_, 1:3:20_, 1:3:24_, 1:4:1_, 1:4:13_,

1:7:4_, 1:7:9_, 1:21:6_, 1:40:25_, 1:41:5_, 1:41:6_, 1:41:15_, 1:54:8_, 1:67:25_, 1:69:20_, 1:70:16_, 1:90:25 _, 1:91:16_, 1:91:18_, 1:93:19_, 1:152:20
morning's [1]_ - 1:32:6
most [4]_ - 1:21:19_, 1:28:24_, 1:48:12_, 1:84:10
Motion [1]_ - 1:4:14
motion [83]_ - 1:4:16_, 1:4:19_, 1:5:8_, 1:5:19_, 1:6:7_, 1:6:11_, 1:6:12_, 1:6:14_, 1:7:3_, 1:7:5_, 1:7:6 _, 1:7:20_, 1:10:5_, 1:24:18_, 1:25:9_, 1:27:8_, 1:28:3_, 1:28:15_, 1:28:17_, 1:29:11 _, 1:32:16_, 1:33:18_, 1:36:7 _, 1:36:12_, 1:36:16_, 1:37:2 _, 1:38:23_, 1:39:5_, 1:40:16 _, 1:40:19_, 1:41:6_, 1:43:18 _, 1:43:21_, 1:44:5_, 1:44:15 _, 1:45:17_, 1:46:16_, 1:48:1 _, 1:48:5_, 1:49:25_, 1:53:12 _, 1:57:18_, 1:60:14_, 1:60:15_, 1:62:4_, 1:62:8_, 1:66:18_, 1:67:21_, 1:67:24 _, 1:68:21_, 1:74:2_, 1:76:21 _, 1:80:11_, 1:82:11_, 1:85:17_, 1:86:16_, 1:90:16 _, 1:90:25_, 1:91:16_, 1:91:18_, 1:91:24_, 1:92:3_, 1:93:8_, 1:93:19_, 1:93:20_, 1:93:22_, 1:93:25_, 1:94:1_, 1:94:4_, 1:94:5_, 1:94:11_, 1:102:18_, 1:103:20_, 1:113:21_, 1:123:18_, 1:128:17_, 1:129:17_, 1:141:7_, 1:150:20_, 1:153:14_, 1:159:6
motions [5]_ - 1:6:19_, 1:40:13_, 1:78:2_, 1:128:22 _, 1:165:4
motivation [1]_ - 1:34:23
motive [5]_ - 1:137:7_, 1:137:19_, 1:138:16_, 1:138:17_, 1:138:22
mouth [1]_ - 1:41:16
movant [6]_ - 1:78:5_, 1:78:11_, 1:78:12_, 1:79:4_, 1:79:6
move [4]_ - 1:38:15_, 1:56:6_, 1:95:24_, 1:121:7
moved [5]_ - 1:14:6_, 1:34:9_, 1:35:8_, 1:46:6_, 1:102:7_, 1:129:12
movement [2]_ - 1:34:8_, 1:142:16

moves [1]_ - 1:127:20
moving [4]_ - 1:71:7_, 1:94:24_, 1:120:13_, 1:134:1
MR [461]_ - 1:3:9_, 1:3:14_, 1:3:20_, 1:4:1_, 1:4:5_, 1:5:1 _, 1:5:6_, 1:5:14_, 1:5:17_, 1:6:22_, 1:6:24_, 1:7:1_, 1:7:11_, 1:7:15_, 1:7:18_, 1:10:15_, 1:11:19_, 1:12:4_, 1:12:7_, 1:13:24_, 1:15:6_, 1:15:11_, 1:15:16_, 1:15:21 _, 1:16:10_, 1:16:17_, 1:17:9 _, 1:18:5_, 1:18:8_, 1:18:11_, 1:20:16_, 1:20:21_, 1:21:1_, 1:21:7_, 1:21:13_, 1:22:10_, 1:22:16_, 1:22:25_, 1:23:6_, 1:23:19_, 1:24:23_, 1:26:12 _, 1:26:20_, 1:27:16_, 1:28:8 _, 1:28:11_, 1:28:18_, 1:28:23_, 1:29:12_, 1:30:3_, 1:30:13_, 1:32:17_, 1:32:25 _, 1:33:7_, 1:33:9_, 1:33:12_, 1:33:16_, 1:33:19_, 1:34:7_, 1:35:15_, 1:36:8_, 1:36:17_, 1:37:9_, 1:37:18_, 1:38:2_, 1:38:18_, 1:39:7_, 1:40:14_, 1:40:17_, 1:40:22_, 1:40:25 _, 1:43:11_, 1:43:14_, 1:44:1_, 1:44:12_, 1:44:16_, 1:44:19_, 1:45:9_, 1:45:22_, 1:46:2_, 1:46:5_, 1:50:5_, 1:50:15_, 1:51:1_, 1:51:12_, 1:51:23_, 1:52:2_, 1:52:10_, 1:52:14_, 1:52:19_, 1:52:23 _, 1:53:8_, 1:53:21_, 1:54:1_, 1:54:3_, 1:55:2_, 1:55:7_, 1:55:16_, 1:55:22_, 1:56:1_, 1:56:12_, 1:56:18_, 1:56:22 _, 1:57:1_, 1:57:3_, 1:58:6_, 1:58:8_, 1:58:10_, 1:59:8_, 1:60:6_, 1:60:9_, 1:61:6_, 1:61:8_, 1:62:5_, 1:62:13_, 1:62:17_, 1:62:20_, 1:62:24 _, 1:63:2_, 1:63:9_, 1:63:15_, 1:63:22_, 1:64:10_, 1:64:17 _, 1:65:7_, 1:65:18_, 1:66:11 _, 1:66:20_, 1:66:24_, 1:67:4 _, 1:67:8_, 1:67:14_, 1:67:23 _, 1:68:1_, 1:70:12_, 1:70:23 _, 1:71:3_, 1:72:2_, 1:72:5_, 1:72:7_, 1:72:10_, 1:73:6_, 1:73:12_, 1:73:14_, 1:73:17 _, 1:74:3_, 1:75:13_, 1:76:7_, 1:76:16_, 1:76:23_, 1:77:1_, 1:77:6_, 1:77:11_, 1:77:17, 1:77:21_, 1:77:23_, 1:78:1_, 1:78:12_, 1:78:16_, 1:78:25 _, 1:79:5_, 1:79:14_, 1:79:16 _, 1:79:22_, 1:80:2_, 1:80:8_, 1:80:20_, 1:80:22_, 1:81:12

_, 1:82:8_, 1:82:14_, 1:82:21
_, 1:83:12_, 1:83:19_,
1:83:23_, 1:84:7_, 1:85:5_,
1:85:18_, 1:86:7_, 1:86:12_,
1:86:24_, 1:87:1_, 1:87:3_,
1:87:6_, 1:87:12_, 1:87:14_,
1:87:20_, 1:87:22_, 1:88:5_,
1:88:8_, 1:88:16_, 1:89:4_,
1:89:12_, 1:89:21_, 1:90:2_,
1:90:7_, 1:90:13_, 1:91:2_,
1:91:19_, 1:92:1_, 1:92:5_,
1:92:11_, 1:92:13_, 1:92:20
_, 1:92:24_, 1:93:2_, 1:93:6_,
1:93:9_, 1:93:24_, 1:94:7_,
1:96:2_, 1:96:6_, 1:96:9_,
1:96:13_, 1:96:20_, 1:96:24
_, 1:97:3_, 1:97:7_, 1:98:1_,
1:98:6_, 1:98:8_, 1:98:14_,
1:99:18_, 1:100:4_, 1:100:16
_, 1:100:19_, 1:101:1_,
1:101:8_, 1:101:20_,
1:101:24_, 1:102:1_,
1:102:17_, 1:102:20_,
1:102:22_, 1:103:1_, 1:103:3
_, 1:103:5_, 1:103:13_,
1:103:17_, 1:103:21_,
1:103:22_, 1:103:25_,
1:104:5_, 1:104:8_,
1:104:14, 1:104:17_,
1:104:22_, 1:104:25_,
1:105:6_, 1:105:11, 1:106:7,
1:106:10_, 1:106:13_,
1:106:20_, 1:106:25_,
1:107:2_, 1:107:7_, 1:107:12
_, 1:107:17_, 1:107:23_,
1:108:1, 1:108:25_, 1:109:3
_, 1:109:16_, 1:110:2_,
1:110:6_, 1:110:15_,
1:110:21_, 1:110:23_,
1:111:4_, 1:111:11_,
1:111:14_, 1:111:21_,
1:112:3_, 1:112:6_, 1:112:13
_, 1:112:15_, 1:113:2_,
1:113:7_, 1:113:20_, 1:114:4
_, 1:114:10_, 1:114:16_,
1:114:19_, 1:114:25_,
1:115:4_, 1:115:9_, 1:115:14
_, 1:115:19_, 1:115:22_,
1:115:24_, 1:116:1_, 1:116:6
_, 1:117:18_, 1:118:6_,
1:118:16_, 1:118:24_,
1:119:1_, 1:119:10_,
1:119:20_, 1:120:2_,
1:120:20_, 1:121:3_, 1:121:5
_, 1:121:13_, 1:121:20_,
1:121:23_, 1:122:4_, 1:122:9
_, 1:122:12_, 1:122:15_,
1:122:18_, 1:122:22_,
1:122:24_, 1:123:2_,
1:123:15_, 1:123:19_,
1:125:11_, 1:126:9_,

1:126:14_, 1:127:5_,
1:127:14_, 1:127:18_,
1:128:8_, 1:128:11_,
1:128:13_, 1:128:19_,
1:128:25_, 1:129:3_,
1:129:20_, 1:130:2_, 1:130:7
_, 1:130:10_, 1:130:19_,
1:130:25_, 1:131:6_,
1:131:14_, 1:131:17_,
1:131:19_, 1:131:22_,
1:132:5_, 1:132:12_,
1:132:17_, 1:132:24_,
1:133:7_, 1:134:9_, 1:134:11
_, 1:134:24_, 1:135:3_,
1:135:14_, 1:135:18_,
1:135:23_, 1:136:6_,
1:136:11_, 1:136:18_,
1:137:5_, 1:137:16_,
1:137:22_, 1:137:24_,
1:138:7_, 1:138:15_,
1:138:22_, 1:138:25, 1:139:8
_, 1:139:10_, 1:139:22_,
1:139:24_, 1:141:2_, 1:141:8
_, 1:141:20_, 1:142:7_,
1:142:12_, 1:142:17_,
1:143:3_, 1:143:8_, 1:143:18
_, 1:144:6_, 1:144:10_,
1:144:14_, 1:144:18_,
1:145:1_, 1:145:6_, 1:145:8
_, 1:145:16_, 1:146:6_,
1:146:8_, 1:146:24_, 1:147:2
_, 1:147:13_, 1:147:24_,
1:148:23_, 1:149:2_, 1:149:6
_, 1:149:10_, 1:149:24_,
1:150:1_, 1:150:8_, 1:150:17
_, 1:150:22_, 1:151:2_,
1:151:17_, 1:151:19_,
1:151:22_, 1:152:1_, 1:152:3
_, 1:152:7_, 1:152:18_,
1:153:6_, 1:153:16_,
1:153:20_, 1:153:22_,
1:154:11_, 1:154:14_,
1:154:20_, 1:154:23_,
1:155:1_, 1:155:5_, 1:155:8
_, 1:155:18_, 1:156:1_,
1:156:3_, 1:156:7_, 1:156:13
_, 1:156:18_, 1:156:21_,
1:157:1_, 1:157:3_, 1:157:5
_, 1:157:12_, 1:157:16,
1:157:24_, 1:158:3_, 1:158:6
_, 1:158:11_, 1:158:14_,
1:158:18_, 1:158:20_,
1:158:25_, 1:159:2_, 1:159:8
_, 1:159:10_, 1:159:16_,
1:159:19_, 1:159:22_,
1:159:24, 1:160:8_, 1:160:11
_, 1:160:13_, 1:160:21_,
1:161:2_, 1:161:6_, 1:161:15
_, 1:161:23_, 1:162:1_,
1:162:5_, 1:162:10_,
1:162:13_, 1:162:17_,

1:163:4_, 1:164:15, 1:164:25
   multiple [11]_ - 1:16:23_,
1:20:21_, 1:95:10_, 1:97:18
_, 1:98:2_, 1:113:13_,
1:117:7_, 1:121:16_, 1:130:5
_, 1:140:22_, 1:154:18
   multiplicitous [1]_ -
1:130:13
   multiplicity [5]_ - 1:113:21
_, 1:118:23_, 1:119:3_,
1:119:4_, 1:140:12
   MURRELL [4]_ - 1:4:1_,
1:4:5_, 1:7:1_, 1:103:22
   Murrell [2]_ - 1:4:1_,
1:6:25
   musical [1]_ - 1:145:13
   must [8]_ - 1:23:11_,
1:23:13_, 1:46:9_, 1:73:14_,
1:73:17_, 1:94:13_, 1:106:17
_, 1:151:12
   mustard [1]_ - 1:68:19
   mutilate [3]_ - 1:147:7_,
1:147:8_, 1:155:13
   mutilated [1]_ - 1:96:25
   mutilates [1]_ - 1:96:16
   mutual [1]_ - 1:137:13

# N

   naked [1]_ - 1:80:9
   name [2]_ - 1:69:5_,
1:69:16
   namely [2]_ - 1:8:16_,
1:68:16
   NARA [3]_ - 1:142:19_,
1:143:3_, 1:144:21
   narrative [1]_ - 1:59:22
   narrow [1]_ - 1:66:10
   narrowness [1]_ - 1:66:12
   National [2]_ - 1:160:14_,
1:161:17
   natural [1]_ - 1:101:7
   nature [1]_ - 1:141:24
   Nauta [149]_ - 1:3:5_,
1:3:19_, 1:3:21_, 1:4:17_,
1:5:25_, 1:6:8_, 1:8:12_,
1:10:9_, 1:11:22_, 1:12:1_,
1:12:8_, 1:12:13_, 1:12:21_,
1:12:25_, 1:13:2_, 1:13:7_,
1:14:7_, 1:14:9_, 1:14:14_,
1:16:18_, 1:17:2_, 1:17:11_,
1:18:9_, 1:21:17_, 1:22:5_,
1:27:21_, 1:29:15_, 1:30:22
_, 1:31:1_, 1:31:6_, 1:32:10_,
1:34:2_, 1:35:6_, 1:41:11_,

1:41:23_, 1:42:12_, 1:42:14
_, 1:42:17_, 1:42:20_,
1:45:10_, 1:46:6_, 1:46:14_,
1:47:6_, 1:47:14_, 1:48:19_,
1:48:25_, 1:49:2_, 1:49:3_,
1:49:5_, 1:49:7_, 1:49:22_,
1:50:6_, 1:50:16_, 1:51:7_,
1:53:2_, 1:54:12_, 1:57:18_,
1:57:25_, 1:58:21_, 1:59:4_,
1:59:20_, 1:68:17_, 1:68:22
_, 1:68:24_, 1:69:5_, 1:69:6_,
1:69:15_, 1:69:21_, 1:69:23
_, 1:70:15_, 1:70:20_, 1:71:4
_, 1:71:23_, 1:73:21_,
1:74:25_, 1:76:2_, 1:76:9_,
1:76:13_, 1:78:5_, 1:79:8_,
1:79:25_, 1:80:2_, 1:82:21_,
1:83:5_, 1:84:1_, 1:86:8_,
1:86:9_, 1:87:24_, 1:89:6_,
1:89:10_, 1:89:16_, 1:90:5_,
1:90:9_, 1:90:13_, 1:94:15_,
1:94:21_, 1:94:23_, 1:95:2_,
1:95:8_, 1:95:13_, 1:95:18_,
1:95:19_, 1:96:5_, 1:97:16_,
1:98:10_, 1:98:25_, 1:99:1_,
1:109:5_, 1:109:8_, 1:109:14
_, 1:109:22_, 1:111:24_,
1:112:20_, 1:114:17_,
1:115:13_, 1:115:25_,
1:116:16_, 1:116:22_,
1:117:1_, 1:117:4_, 1:117:24
_, 1:118:7_, 1:118:19_,
1:119:13_, 1:119:14_,
1:119:20_, 1:120:7_, 1:124:1
_, 1:124:5_, 1:124:8_,
1:124:16_, 1:126:9_,
1:126:10_, 1:126:23_,
1:127:2_, 1:127:25_, 1:129:7
_, 1:135:19_, 1:139:14_,
1:139:15_, 1:139:19_,
1:144:2_, 1:146:13_,
1:146:17_, 1:151:15_,
1:153:9_, 1:154:5_, 1:155:21
_, 1:163:9
   Nauta's [17]_ - 1:4:14_,
1:9:21_, 1:13:13_, 1:25:17_,
1:31:15_, 1:58:24_, 1:60:14
_, 1:61:2_, 1:78:14_, 1:84:17
_, 1:84:22_, 1:86:6_, 1:87:9_,
1:89:15_, 1:91:14_, 1:124:9
_, 1:141:22
   necessarily [3]_ - 1:90:1_,
1:101:18_, 1:159:6
   necessary [5]_ - 1:16:6_,
1:75:15_, 1:86:21_, 1:94:9_,
1:137:4
   need [22]_ - 1:9:1_,
1:21:13_, 1:31:9_, 1:37:20_,
1:48:14_, 1:49:23_, 1:52:20
_, 1:82:1_, 1:88:23_, 1:96:18

..., 1:100:17..., 1:111:1...,
1:115:18..., 1:125:24...,
1:128:6..., 1:136:3..., 1:149:21
..., 1:151:6..., 1:156:10...,
1:156:11..., 1:163:5

needed [1]- - 1:78:14

needs [4]- - 1:60:13...,
1:73:4..., 1:118:20..., 1:162:19

neglected [1]- - 1:102:12

never [6]- - 1:10:22...,
1:42:25..., 1:83:1..., 1:84:18...,
1:90:2.., 1:93:3

nevertheless [1]- -
1:145:23

new [2]- - 1:14:14..., 1:71:8

next [9]- - 1:5:7.., 1:37:16...,
1:53:17..., 1:58:15.., 1:60:3...,
1:75:12..., 1:80:19.., 1:152:4

nexus [1]- - 1:63:24

nice [2]- - 1:42:3

nine [1]- - 1:69:4

nobody [1]- - 1:159:10

nomination [8]- - 1:21:16
..., 1:29:5.., 1:30:6.., 1:58:13...,
1:58:17.., 1:58:23.., 1:61:4...,
1:61:12

non [1]- - 1:112:2

non-conspiracy [1]- -
1:112:2

None [1]- - 1:57:14

none [7]- - 1:42:1..,
1:48:20.., 1:61:9.., 1:61:17...,
1:68:18.., 1:76:2.., 1:137:4

nonsense [1]- - 1:42:21

normally [2]- - 1:137:11...,
1:158:23

note [4]- - 1:4:23.., 1:5:11
..., 1:34:13.., 1:103:5

noted [2]- - 1:59:8.., 1:99:9

notes [1]- - 1:123:3

nothing [13]- - 1:41:22...,
1:44:4..., 1:51:20.., 1:56:3...,
1:62:9.., 1:66:4.., 1:70:19...,
1:71:1.., 1:84:24.., 1:95:17...,
1:145:8.., 1:147:10...,
1:150:11

notice [14]- - 1:6:7...,
1:81:4.., 1:109:11.., 1:117:2
..., 1:117:25.., 1:118:1...,
1:118:2.., 1:118:5.., 1:118:15
..., 1:119:21.., 1:124:11...,
1:124:20.., 1:140:2.., 1:159:6

noticed [1]- - 1:81:3

notion [1]- - 1:74:6

November [6]- - 1:87:7...,
1:87:14..., 1:87:21..., 1:88:3...,
1:88:6.., 1:88:15

nowhere [2]- - 1:46:14...,
1:141:21

number [10]- - 1:3:6...,
1:14:4..., 1:20:4.., 1:33:25...,
1:36:24.., 1:39:16.., 1:77:22
..., 1:93:1.., 1:93:14.., 1:161:5

## O

oath [3]- - 1:11:8.., 1:69:24
..., 1:71:6

obie [1]- - 1:24:10

object [6]- - 1:133:10...,
1:133:15.., 1:133:22...,
1:147:7.., 1:149:8.., 1:155:14

object's [3]- - 1:127:6...,
1:133:11.., 1:155:14

objection [4]- - 1:103:11...,
1:103:12.., 1:141:13...,
1:163:8

objective [1]- - 1:49:7

objects [1]- - 1:136:25

obligation [2]- - 1:16:11...,
1:127:23

observe [2]- - 1:17:22...,
1:138:25

observes [1]- - 1:34:19

obstruct [4]- - 1:133:15...,
1:136:6.., 1:136:7.., 1:137:25

obstructed [3]- - 1:69:25
.., 1:71:5.., 1:138:10

obstructing [3]- - 1:32:2...,
1:138:20.., 1:139:15

obstruction [30]- -
1:12:24.., 1:14:16.., 1:14:24
..., 1:15:13.., 1:15:25...,
1:16:18.., 1:16:22.., 1:16:23
..., 1:22:4.., 1:31:1.., 1:31:3...,
1:45:7.., 1:70:1.., 1:71:9...,
1:87:10.., 1:87:11.., 1:87:25
..., 1:88:4.., 1:88:12.., 1:89:2...,
1:89:8.., 1:89:11.., 1:89:17...,
1:89:19.., 1:89:22.., 1:89:25
..., 1:90:5.., 1:90:8.., 1:90:10...,
1:124:19

obstructive [1]- - 1:140:2

obtain [2]- - 1:91:5...,
1:91:9

obtained [2]- - 1:13:9...,
1:152:15

obtaining [1]- - 1:72:22

obviously [15]- - 1:8:9...,

1:10:24..., 1:24:3.., 1:51:13...,
1:51:20.., 1:68:12.., 1:73:9...,
1:101:6.., 1:112:19.., 1:115:6
..., 1:115:10.., 1:137:9...,
1:144:1.., 1:157:16...,
1:162:24

occasion [1]- - 1:48:7

occasions [1]- - 1:70:13

occur [1]- - 1:19:17

occurred [8]- - 1:12:23...,
1:19:7.., 1:65:11.., 1:86:13...,
1:108:6.., 1:117:10.., 1:147:4
..., 1:147:14

odd [2]- - 1:78:21...,
1:161:15

of.. [1]- - 1:122:23

off-the-cuff [1]- -
1:111:12

offended [1]- - 1:29:12

offense [15]- - 1:83:14...,
1:94:3.., 1:106:17.., 1:107:19
..., 1:108:5.., 1:110:23...,
1:112:17.., 1:115:18...,
1:116:1.., 1:126:15...,
1:127:3.., 1:134:23...,
1:149:20.., 1:157:20...,
1:163:14

offenses [5]- - 1:110:22...,
1:116:12.., 1:124:10...,
1:124:21.., 1:130:11

offensive [1]- - 1:37:22

offer [2]- - 1:46:22.., 1:87:3

offered [1]- - 1:59:16

offhand [1]- - 1:113:2

Office [42]- - 1:5:3.., 1:6:1
..., 1:10:25.., 1:14:5.., 1:18:21
..., 1:22:8.., 1:23:1.., 1:23:10...,
1:28:5.., 1:35:7.., 1:37:19...,
1:38:4.., 1:40:10.., 1:49:8...,
1:59:13.., 1:81:1.., 1:81:10...,
1:81:16.., 1:90:14.., 1:90:23
..., 1:92:7.., 1:93:11.., 1:95:9...,
1:95:21.., 1:98:17.., 1:100:6
..., 1:103:7.., 1:104:3...,
1:116:13.., 1:124:23...,
1:125:14.., 1:125:23...,
1:127:19.., 1:129:10...,
1:130:4.., 1:139:13...,
1:141:11.., 1:147:9.., 1:150:4
..., 1:163:11.., 1:163:19...,
1:164:7

office [1]- - 1:87:7

officer [1]- - 1:21:14

official [9]- - 1:113:23...,
1:124:2.., 1:127:7.., 1:128:6
..., 1:128:9.., 1:128:13...,

1:133:12.., 1:140:5...,
1:155:15

often [3]- - 1:108:20...,
1:110:9.., 1:110:10

Oliveira [5]- - 1:3:6...,
1:3:25.., 1:4:2.., 1:145:3...,
1:155:22

Oliveira's [2]- - 1:134:25...,
1:143:20

once [8]- - 1:23:23...,
1:57:4.., 1:81:14.., 1:81:21...,
1:101:2.., 1:133:2.., 1:155:1
..., 1:159:2

one [96]- - 1:6:5.., 1:8:20...,
1:15:23.., 1:20:21.., 1:25:11
..., 1:27:8.., 1:28:16.., 1:28:22
..., 1:30:16.., 1:33:21.., 1:35:9
..., 1:36:18.., 1:36:22.., 1:37:5
..., 1:38:17.., 1:39:1.., 1:42:12
..., 1:42:20.., 1:43:6.., 1:44:3...,
1:51:8.., 1:52:24.., 1:53:21...,
1:57:20.., 1:60:4.., 1:61:15...,
1:61:18.., 1:62:5.., 1:62:6...,
1:62:8.., 1:64:19.., 1:66:1...,
1:67:11.., 1:67:13.., 1:70:12
..., 1:70:17.., 1:71:3.., 1:71:4...,
1:71:10.., 1:72:10.., 1:72:11
..., 1:74:22.., 1:75:10...,
1:76:18.., 1:76:19.., 1:76:23
..., 1:77:24.., 1:78:2.., 1:87:6...,
1:87:8.., 1:88:13.., 1:88:14...,
1:90:13.., 1:90:14.., 1:97:22
..., 1:103:9.., 1:103:10...,
1:104:24.., 1:108:6...,
1:108:13.., 1:108:16...,
1:108:21.., 1:108:22...,
1:108:23.., 1:109:18...,
1:110:23.., 1:110:24...,
1:110:25.., 1:111:14...,
1:111:18.., 1:111:21...,
1:111:23.., 1:113:2...,
1:113:16.., 1:113:17...,
1:114:13.., 1:115:10...,
1:115:25.., 1:120:25...,
1:121:6.., 1:121:17...,
1:129:23.., 1:131:7...,
1:135:18.., 1:137:5...,
1:140:11.., 1:141:14...,
1:151:23.., 1:156:13...,
1:160:3.., 1:161:8

ones [3]- - 1:16:8...,
1:125:9.., 1:155:25

ongoing [2]- - 1:63:23...,
1:121:24

oops [1]- - 1:58:8

open [1]- - 1:75:3

opening [2]- - 1:83:20...,
1:151:2

operate [1]₋ - 1:41:4
operated [1]₋ - 1:26:6
opine [1]₋ - 1:53:8
opinion [4]₋ - 1:51:8₋, 1:72:15₋, 1:75:9₋, 1:161:9
opportunity [4]₋ - 1:12:9₋, 1:42:5₋, 1:45:2₋, 1:105:20
opposed [3]₋ - 1:37:7₋, 1:114:6₋, 1:137:7
opposition [5]₋ - 1:4:20₋, 1:94:4₋, 1:98:16₋, 1:108:9₋, 1:116:25
OPR [8]₋ - 1:32:23₋, 1:33:1₋, 1:33:14₋, 1:54:18₋, 1:54:20₋, 1:55:6₋, 1:55:18₋, 1:55:22
option [1]₋ - 1:29:22
or.. [1]₋ - 1:63:10
oral [1]₋ - 1:45:18
order [24]₋ - 1:3:1₋, 1:5:23₋, 1:6:3₋, 1:18:15₋, 1:27:3₋, 1:27:18₋, 1:27:20₋, 1:28:1₋, 1:35:13₋, 1:40:2₋, 1:40:9₋, 1:53:12₋, 1:59:5₋, 1:77:2₋, 1:77:4₋, 1:78:14₋, 1:78:21₋, 1:79:12₋, 1:79:24₋, 1:80:6₋, 1:81:9₋, 1:86:21₋, 1:148:11₋, 1:152:15
ordered [6]₋ - 1:30:17₋, 1:39:9₋, 1:76:20₋, 1:79:23₋, 1:79:24₋, 1:81:7
original [2]₋ - 1:20:23₋, 1:82:9
originally [1]₋ - 1:9:25
originated [1]₋ - 1:144:14
otherwise [6]₋ - 1:33:14₋, 1:99:1₋, 1:100:23₋, 1:108:12₋, 1:129:8₋, 1:149:14
ought [1]₋ - 1:37:24
ourselves [1]₋ - 1:139:1
out-of-district [3]₋ - 1:26:17₋, 1:64:13₋, 1:64:23
outrageous [1]₋ - 1:51:15
outside [3]₋ - 1:3:16₋, 1:24:4₋, 1:54:21
overflow [1]₋ - 1:4:12
overlaid [1]₋ - 1:121:16
overlap [2]₋ - 1:130:16₋, 1:134:15
overlooking [1]₋ - 1:141:6
overlooks [1]₋ - 1:125:1
overly [3]₋ - 1:141:2₋, 1:150:1₋, 1:163:15

oversee [1]₋ - 1:53:14
oversight [2]₋ - 1:18:18₋, 1:26:4
overt [1]₋ - 1:139:5₋, 1:139:6
overturned [2]₋ - 1:143:22₋, 1:145:21
overturning [1]₋ - 1:140:18
own [2]₋ - 1:32:22₋, 1:109:9

## P

p.m [3]₋ - 1:88:21₋, 1:165:8
PAC [1]₋ - 1:158:20
page [10]₋ - 1:49:6₋, 1:49:13₋, 1:59:10₋, 1:60:17₋, 1:60:25₋, 1:61:1₋, 1:75:14₋, 1:144:8₋, 1:147:24₋, 1:151:3
Palm [4]₋ - 1:37:7₋, 1:38:17₋, 1:63:13₋, 1:67:13
pan [1]₋ - 1:65:15
pants [1]₋ - 1:42:10
paper [1]₋ - 1:62:6
papers [26]₋ - 1:10:2₋, 1:10:11₋, 1:15:1₋, 1:29:8₋, 1:30:9₋, 1:41:9₋, 1:41:22₋, 1:42:2₋, 1:42:11₋, 1:45:14₋, 1:47:5₋, 1:49:12₋, 1:52:12₋, 1:54:14₋, 1:56:10₋, 1:58:1₋, 1:65:20₋, 1:68:23₋, 1:70:17₋, 1:74:5₋, 1:74:9₋, 1:74:11₋, 1:74:23₋, 1:74:25₋, 1:113:14₋, 1:120:21
paragraph [22]₋ - 1:46:18₋, 1:48:2₋, 1:48:4₋, 1:58:15₋, 1:60:25₋, 1:62:21₋, 1:95:4₋, 1:98:19₋, 1:101:6₋, 1:101:8₋, 1:105:6₋, 1:114:13₋, 1:116:15₋, 1:136:23₋, 1:138:18₋, 1:146:5₋, 1:151:16₋, 1:156:1₋, 1:157:2₋, 1:158:3₋, 1:159:14
paragraphs [6]₋ - 1:125:8₋, 1:151:1₋, 1:155:23₋, 1:155:24₋, 1:156:24₋, 1:158:4
parallel [1]₋ - 1:140:20
parcel [1]₋ - 1:130:13
parenthetical [1]₋ - 1:106:16
part [29]₋ - 1:27:2₋, 1:27:20₋, 1:33:24₋, 1:36:19₋,

1:41:20₋, 1:44:14₋, 1:46:24₋, 1:59:19₋, 1:64:22₋, 1:71:11₋, 1:90:25₋, 1:91:2₋, 1:91:15₋, 1:91:17₋, 1:92:2₋, 1:93:20₋, 1:108:5₋, 1:109:21₋, 1:111:23₋, 1:112:9₋, 1:114:21₋, 1:130:13₋, 1:132:9₋, 1:152:13₋, 1:158:8₋, 1:158:14₋, 1:160:15₋, 1:160:20₋, 1:162:5
parte [17]₋ - 1:27:1₋, 1:27:4₋, 1:67:6₋, 1:76:22₋, 1:77:4₋, 1:77:8₋, 1:77:14₋, 1:77:15₋, 1:77:18₋, 1:78:3₋, 1:78:15₋, 1:78:24₋, 1:79:3₋, 1:79:19₋, 1:79:21₋, 1:80:25₋, 1:81:13
partially [1]₋ - 1:132:17
participated [3]₋ - 1:12:13₋, 1:116:10₋, 1:119:15
particular [3]₋ - 1:28:3₋, 1:28:16₋, 1:155:18
particularly [2]₋ - 1:154:5₋, 1:159:11
particulars [2]₋ - 1:114:5₋, 1:124:14
parties [7]₋ - 1:3:7₋, 1:78:22₋, 1:79:13₋, 1:81:2₋, 1:91:9₋, 1:92:15₋, 1:121:24
partly [1]₋ - 1:105:21
parts [1]₋ - 1:132:9
party [7]₋ - 1:20:2₋, 1:23:4₋, 1:79:7₋, 1:80:3₋, 1:147:18₋, 1:147:19₋, 1:150:9
party's [4]₋ - 1:91:10₋, 1:91:20₋, 1:93:11₋, 1:93:17
pass [1]₋ - 1:102:14
path [1]₋ - 1:104:2
pen [1]₋ - 1:57:25
pending [13]₋ - 1:6:11₋, 1:6:19₋, 1:21:16₋, 1:27:14₋, 1:28:15₋, 1:29:11₋, 1:33:5₋, 1:36:12₋, 1:39:5₋, 1:60:14₋, 1:67:21₋, 1:85:17₋, 1:93:22
people [11]₋ - 1:33:25₋, 1:70:5₋, 1:91:24₋, 1:92:9₋, 1:92:13₋, 1:92:22₋, 1:132:2₋, 1:147:15₋, 1:148:10₋, 1:154:2₋, 1:160:17
per [1]₋ - 1:9:8
percent [1]₋ - 1:89:21
percentage [1]₋ - 1:34:22
perhaps [5]₋ - 1:65:5₋, 1:110:7₋, 1:149:21₋, 1:153:3₋,

1:153:13
period [3]₋ - 1:43:4₋, 1:97:1₋, 1:147:20
perjury [11]₋ - 1:8:16₋, 1:8:19₋, 1:12:1₋, 1:12:8₋, 1:12:12₋, 1:14:18₋, 1:15:10₋, 1:31:6₋, 1:31:17₋, 1:31:19₋, 1:82:23
permissible [2]₋ - 1:95:12₋, 1:152:20
permission [4]₋ - 1:82:5₋, 1:103:9₋, 1:152:21₋, 1:164:20
permit [2]₋ - 1:121:2₋, 1:164:22
permits [4]₋ - 1:95:10₋, 1:117:22₋, 1:125:11₋, 1:148:24
permitted [6]₋ - 1:23:22₋, 1:25:22₋, 1:39:8₋, 1:80:6₋, 1:89:6₋, 1:116:20
persistent [1]₋ - 1:99:7
persists [1]₋ - 1:164:17
person [17]₋ - 1:27:12₋, 1:47:8₋, 1:71:11₋, 1:89:15₋, 1:106:8₋, 1:116:1₋, 1:121:11₋, 1:122:5₋, 1:132:20₋, 1:133:9₋, 1:147:7₋, 1:148:22₋, 1:148:25₋, 1:149:8₋, 1:155:9₋, 1:155:12₋, 1:155:13
Person [1]₋ - 1:14:4
personal [4]₋ - 1:11:2₋, 1:84:19₋, 1:84:20₋, 1:91:9
personally [4]₋ - 1:52:24₋, 1:64:18₋, 1:90:14₋, 1:115:14
persons [1]₋ - 1:34:9
perspective [4]₋ - 1:7:3₋, 1:104:19₋, 1:126:13₋, 1:131:3
persuade [23]₋ - 1:30:1₋, 1:47:19₋, 1:86:8₋, 1:94:18₋, 1:109:20₋, 1:111:16₋, 1:116:17₋, 1:116:23₋, 1:117:5₋, 1:118:8₋, 1:118:17₋, 1:119:22₋, 1:121:12₋, 1:131:9₋, 1:133:25₋, 1:147:6₋, 1:148:22₋, 1:148:25₋, 1:149:8₋, 1:154:16₋, 1:154:17₋, 1:155:12
persuades [2]₋ - 1:154:24₋, 1:155:8
persuading [2]₋ - 1:120:12₋, 1:131:9
persuasion [1]₋ - 1:61:9

persuasive [1] - 1:153:25

pertains [1] - 1:94:11

pertinent [2] - 1:6:10-, 1:74:1

petition [7] - 1:26:1-, 1:26:22-, 1:27:14-, 1:27:18 -, 1:38:1-, 1:81:1-, 1:81:18

petitions [1] - 1:64:24

phone [12] - 1:91:9-, 1:91:10-, 1:91:11-, 1:91:21 -, 1:93:1-, 1:93:4-, 1:93:10-, 1:93:12-, 1:93:13-, 1:93:14 -, 1:93:17

photograph [4] - 1:13:8 -, 1:13:10-, 1:14:1-, 1:139:20

phrased [1] - 1:64:17

phraseology [1] - 1:52:22

pick [2] - 1:71:10-, 1:80:24

picked [1] - 1:162:17

picking [1] - 1:109:24

picks [1] - 1:136:17

piece [6] - 1:35:12-, 1:36:5-, 1:36:8-, 1:42:7-, 1:62:6-, 1:153:19

piercing [1] - 1:152:15-, 1:152:23

PII [1] - 1:103:8

Pine [3] - 1:141:16-, 1:141:18-, 1:146:12

Pinkerton [21] - 1:109:5 -, 1:109:6-, 1:109:22-, 1:110:3-, 1:110:11-, 1:111:22-, 1:112:1-, 1:112:6 -, 1:112:13-, 1:112:15-, 1:114:16-, 1:114:18-, 1:114:19-, 1:114:20-, 1:116:21-, 1:116:24-, 1:117:13-, 1:118:12-, 1:119:11-, 1:127:20

pinpoint [1] - 1:131:2

pinpointed [1] - 1:66:9

place [7] - 1:26:9-, 1:40:6 -, 1:47:4-, 1:58:2-, 1:64:19-, 1:65:9-, 1:135:22

plain [3] - 1:81:22-, 1:97:8-, 1:118:20

plainly [10] - 1:47:15-, 1:51:16-, 1:53:11-, 1:54:7-, 1:54:15-, 1:59:24-, 1:66:7-, 1:76:3-, 1:82:16

plan [4] - 1:71:19-, 1:136:5-, 1:136:6-, 1:137:12

planes [2] - 1:29:10-, 1:29:16

planning [1] - 1:62:3

platform [1] - 1:59:12

plausible [1] - 1:86:18

plead [2] - 1:98:25-, 1:143:13

pleaded [9] - 1:17:1-, 1:97:19-, 1:99:13-, 1:100:10 -, 1:100:11-, 1:116:14-, 1:116:16-, 1:116:19-, 1:126:4

pleading [24] - 1:7:5-, 1:59:10-, 1:94:3-, 1:97:25-, 1:98:21-, 1:101:17-, 1:104:19-, 1:109:11-, 1:111:25-, 1:112:25-, 1:114:18-, 1:119:11-, 1:119:13-, 1:119:19-, 1:121:2-, 1:123:24-, 1:125:13-, 1:125:16-, 1:125:20-, 1:126:2-, 1:126:13-, 1:142:4-, 1:150:23-, 1:163:18

pleadings [6] - 1:41:12-, 1:61:21-, 1:128:18-, 1:128:19-, 1:128:21-, 1:160:1

pleads [1] - 1:147:4

pled [9] - 1:95:16-, 1:95:20-, 1:104:12-, 1:106:4 -, 1:107:10-, 1:119:3-, 1:123:9-, 1:123:13

plenty [1] - 1:63:16

plus [1] - 1:154:4

podium [2] - 1:42:10-, 1:85:11

point [63] - 1:6:5-, 1:6:18 -, 1:11:16-, 1:14:6-, 1:14:12 -, 1:19:23-, 1:21:11-, 1:23:7 -, 1:40:11-, 1:43:16-, 1:44:11-, 1:44:22-, 1:45:3-, 1:51:8-, 1:51:23-, 1:53:3-, 1:54:17-, 1:54:24-, 1:56:23 -, 1:56:25-, 1:57:3-, 1:58:25 -, 1:59:3-, 1:60:3-, 1:61:9-, 1:61:15-, 1:61:17-, 1:61:23 -, 1:63:11-, 1:65:5-, 1:65:8-, 1:69:23-, 1:70:1-, 1:72:13-, 1:80:23-, 1:81:23-, 1:82:12 -, 1:87:21-, 1:87:23-, 1:87:24-, 1:98:9-, 1:102:3-, 1:109:4-, 1:112:21-, 1:112:24-, 1:114:8-, 1:118:1 -, 1:133:25-, 1:134:6-,

1:138:24-, 1:140:11-, 1:140:22-, 1:145:2-, 1:146:20-, 1:149:4-, 1:157:17-, 1:160:11-, 1:160:13-, 1:162:18-, 1:163:12

pointed [2] - 1:87:6-, 1:126:14

points [2] - 1:56:14-, 1:62:7

portion [3] - 1:122:23-, 1:143:15-, 1:154:25

portions [1] - 1:77:15

position [15] - 1:35:11-, 1:37:19-, 1:41:13-, 1:41:14 -, 1:46:14-, 1:57:19-, 1:64:3 -, 1:65:21-, 1:68:15-, 1:71:24-, 1:74:12-, 1:74:13 -, 1:141:4-, 1:149:16-, 1:163:6

positioned [1] - 1:52:4

posits [1] - 1:46:19

possession [2] - 1:95:14 -, 1:134:5

possibility [4] - 1:74:24-, 1:123:10-, 1:148:7-, 1:150:10

possible [2] - 1:36:1-, 1:48:16

possibly [1] - 1:13:16

post [1] - 1:139:21

posted [2] - 1:59:9-, 1:59:11

posture [6] - 1:21:23-, 1:40:8-, 1:64:23-, 1:78:9-, 1:78:17-, 1:80:10

posturing [1] - 1:10:12

potential [14] - 1:16:7-, 1:21:16-, 1:29:5-, 1:30:6-, 1:35:13-, 1:36:23-, 1:38:13 -, 1:45:4-, 1:58:22-, 1:61:3-, 1:123:7-, 1:160:15-, 1:160:19

potentially [4] - 1:12:25-, 1:13:17-, 1:120:24-, 1:152:8

potpourri [1] - 1:156:23

powers [1] - 1:65:22

PRA [1] - 1:128:17

practice [4] - 1:42:24-, 1:64:4-, 1:78:3-, 1:79:2

practicing [1] - 1:39:13

pre [1] - 1:3:16

pre-scheduled [1] - 1:3:16

preceded [1] - 1:77:13

preceding [2] - 1:20:23-, 1:98:19

precisely [1] - 1:60:22

precluded [3] - 1:125:17 -, 1:130:5-, 1:151:5

precluding [1] - 1:125:20

predates [1] - 1:62:18

preference [2] - 1:46:2-, 1:66:1

prejudice [1] - 1:119:18

prejudicial [5] - 1:117:24 -, 1:153:3-, 1:153:7-, 1:153:8

preliminary [2] - 1:7:8-, 1:164:15

premature [4] - 1:7:25-, 1:8:25-, 1:35:13-, 1:74:14

premised [2] - 1:44:3-, 1:159:3

preparation [1] - 1:6:15

prepared [5] - 1:45:15-, 1:52:23-, 1:53:8-, 1:63:25-, 1:151:25

preposterous [1] - 1:57:12

prerogative [2] - 1:91:12 -, 1:125:25

present [8] - 1:3:22-, 1:4:2-, 1:5:19-, 1:7:13-, 1:43:1-, 1:67:19-, 1:82:2-, 1:146:16

presented [12] - 1:6:15-, 1:17:24-, 1:50:16-, 1:64:20 -, 1:64:24-, 1:65:16-, 1:97:13-, 1:124:13-, 1:124:24-, 1:124:25-, 1:153:9-, 1:164:10

presenting [4] - 1:4:11-, 1:19:4-, 1:19:10-, 1:46:15

presents [1] - 1:17:20

preserve [7] - 1:33:14-, 1:54:19-, 1:55:4-, 1:55:8-, 1:55:14-, 1:55:19-, 1:55:21

President [36] - 1:3:13-, 1:3:15-, 1:13:7-, 1:25:6-, 1:25:10-, 1:25:20-, 1:27:1-, 1:27:6-, 1:27:9-, 1:27:13-, 1:32:1-, 1:34:19-, 1:35:7-, 1:59:9-, 1:59:11-, 1:59:17-, 1:59:22-, 1:60:12-, 1:69:3-, 1:69:8-, 1:69:13-, 1:78:12-, 1:81:4-, 1:90:3-, 1:94:14-, 1:99:2-, 1:99:11-, 1:100:11 -, 1:106:1-, 1:109:22-,

1:111:24 .., 1:119:14 .., 1:119:21 .., 1:120:4 .., 1:128:17 .., 1:155:19
president [11] .. - 1:16:24 .., 1:19:14 .., 1:29:14 .., 1:31:19 .., 1:32:11 .., 1:84:22 .., 1:109:19 .., 1:138:8 .., 1:138:17 .., 1:157:7 .., 1:159:24
president's [1] .. - 1:152:5
presidential [2] .. - 1:58:13 .., 1:58:17
presidents [3] .. - 1:34:15 .., 1:34:16
presiding [3] .. - 1:38:10 .., 1:40:7
pressured [1] .. - 1:25:12
presumably [3] .. - 1:26:11 .., 1:83:5 .., 1:127:19
presumption [15] .. - 1:7:22 .., 1:8:1 .., 1:8:5 .., 1:8:24 .., 1:41:16 .., 1:73:21 .., 1:74:6 .., 1:74:19 .., 1:74:24 .., 1:75:6 .., 1:75:16 .., 1:75:18 .., 1:75:22 .., 1:76:3 .., 1:76:12
presumptive [1] .. - 1:7:22
presupposes [1] .. - 1:59:24
pretrial [7] .. - 1:7:23 .., 1:8:10 .., 1:37:1 .., 1:74:25 .., 1:75:16 .., 1:75:18 .., 1:75:22
pretty [1] .. - 1:23:17
prevent [1] .. - 1:40:2
preview [1] .. - 1:160:7
previously [8] .. - 1:5:20 .., 1:16:8 .., 1:17:6 .., 1:20:20 .., 1:22:8 .., 1:30:23 .., 1:36:10 .., 1:145:3
primary [1] .. - 1:120:8
principal [11] .. - 1:100:2 .., 1:100:8 .., 1:105:4 .., 1:106:18 .., 1:108:8 .., 1:123:22 .., 1:139:2 .., 1:155:19 .., 1:164:17 .., 1:164:19
principally [2] .. - 1:64:19 .., 1:155:24
principle [1] .. - 1:113:12
printed [1] .. - 1:84:15
priorities [1] .. - 1:71:18
private [1] .. - 1:29:16
privilege [4] .. - 1:25:12 .., 1:152:6 .., 1:152:16 .., 1:152:23
privileged [2] .. - 1:152:8 ..,

1:152:10
privy [2] .. - 1:18:23 .., 1:67:7
problem [3] .. - 1:69:9 .., 1:99:13 .., 1:125:1
problematic [2] .. - 1:30:2 .., 1:30:4
problems [1] .. - 1:48:16
procedural [2] .. - 1:42:23 .., 1:44:22
procedurally [2] .. - 1:39:19 .., 1:40:15
procedure [1] .. - 1:65:4
Procedure [2] .. - 1:43:2 .., 1:151:6
proceed [1] .. - 1:134:18
proceeding [33] .. - 1:25:24 .., 1:26:19 .., 1:31:4 .., 1:33:5 .., 1:33:10 .., 1:45:3 .., 1:53:14 .., 1:56:10 .., 1:66:17 .., 1:66:19 .., 1:67:1 .., 1:67:7 .., 1:78:23 .., 1:81:2 .., 1:83:24 .., 1:83:25 .., 1:113:23 .., 1:124:2 .., 1:124:3 .., 1:127:7 .., 1:128:6 .., 1:128:7 .., 1:128:9 .., 1:128:14 .., 1:133:12 .., 1:135:5 .., 1:135:6 .., 1:135:7 .., 1:136:12 .., 1:136:13 .., 1:140:5 .., 1:140:6 .., 1:155:15
proceedings [12] .. - 1:18:4 .., 1:18:5 .., 1:22:20 .., 1:25:3 .., 1:28:6 .., 1:29:2 .., 1:65:8 .., 1:78:9 .., 1:80:3 .., 1:81:20 .., 1:137:6 .., 1:165:8
process [2] .. - 1:18:16 .., 1:126:20
produce [7] .. - 1:38:4 .., 1:39:4 .., 1:40:10 .., 1:68:9 .., 1:79:23 .., 1:95:1 .., 1:134:3
produced [5] .. - 1:77:14 .., 1:88:5 .., 1:88:13 .., 1:101:12
production [2] .. - 1:38:22 .., 1:90:20
professionalism [2] .. - 1:53:7 .., 1:53:15
proffer [1] .. - 1:46:22
prohibition [1] .. - 1:100:1
project [1] .. - 1:134:17
prompting [2] .. - 1:50:21 .., 1:65:3
prong [7] .. - 1:46:12 .., 1:47:24 .., 1:68:13 .., 1:105:1 .., 1:120:18 .., 1:122:4
prongs [2] .. - 1:33:22 .., 1:46:15
proof [7] .. - 1:10:8 ..,

1:109:17 .., 1:109:18 .., 1:109:21 .., 1:158:8 .., 1:158:9 .., 1:158:14
proper [6] .. - 1:18:19 .., 1:40:15 .., 1:89:13 .., 1:110:15 .., 1:133:16 .., 1:159:9
properly [5] .. - 1:95:16 .., 1:108:8 .., 1:109:8 .., 1:110:9 .., 1:110:10
proposal [1] .. - 1:161:24
proposed [3] .. - 1:68:19 .., 1:160:22 .., 1:161:7
proposition [6] .. - 1:23:7 .., 1:47:17 .., 1:101:2 .., 1:120:4 .., 1:149:17 .., 1:157:10
propped [1] .. - 1:70:14
prosecute [3] .. - 1:22:2 .., 1:31:23 .., 1:57:6
prosecuted [5] .. - 1:11:23 .., 1:35:5 .., 1:35:9 .., 1:46:13 .., 1:48:20
prosecuting [2] .. - 1:22:5 .., 1:30:23
prosecution [74] .. - 1:6:12 .., 1:7:20 .., 1:7:23 .., 1:8:2 .., 1:8:6 .., 1:8:24 .., 1:9:9 .., 1:9:15 .., 1:9:20 .., 1:9:22 .., 1:10:5 .., 1:10:8 .., 1:16:5 .., 1:17:20 .., 1:18:19 .., 1:19:13 .., 1:19:14 .., 1:21:5 .., 1:21:8 .., 1:22:23 .., 1:23:1 .., 1:24:7 .., 1:24:13 .., 1:24:17 .., 1:25:2 .., 1:25:4 .., 1:25:19 .., 1:27:21 .., 1:29:24 .., 1:32:10 .., 1:32:11 .., 1:32:16 .., 1:33:22 .., 1:34:25 .., 1:35:24 .., 1:36:4 .., 1:36:15 .., 1:36:19 .., 1:36:21 .., 1:37:2 .., 1:37:4 .., 1:38:11 .., 1:38:24 .., 1:40:4 .., 1:41:8 .., 1:41:15 .., 1:43:22 .., 1:43:23 .., 1:44:2 .., 1:45:4 .., 1:45:12 .., 1:47:16 .., 1:47:22 .., 1:49:15 .., 1:49:19 .., 1:51:18 .., 1:62:9 .., 1:68:3 .., 1:68:6 .., 1:71:16 .., 1:72:14 .., 1:72:18 .., 1:72:19 .., 1:72:22 .., 1:72:23 .., 1:73:8 .., 1:73:10 .., 1:74:16 .., 1:83:8 .., 1:84:21 .., 1:84:23 .., 1:85:20 .., 1:86:17 .., 1:91:25
Prosecution [1] .. - 1:4:16
prosecutor [3] .. - 1:46:9 .., 1:46:20 .., 1:46:21
prosecutor's [1] .. - 1:86:14
prosecutorial [4] .. - 1:9:3 .., 1:39:17 .., 1:51:16 .., 1:91:12

prosecutors [32] .. - 1:6:2 .., 1:9:6 .., 1:9:21 .., 1:10:10 .., 1:10:17 .., 1:11:7 .., 1:11:11 .., 1:11:25 .., 1:13:5 .., 1:13:8 .., 1:14:5 .., 1:14:21 .., 1:14:22 .., 1:14:25 .., 1:16:10 .., 1:17:10 .., 1:17:19 .., 1:18:20 .., 1:19:9 .., 1:21:21 .., 1:25:5 .., 1:31:15 .., 1:32:18 .., 1:54:25 .., 1:59:12 .., 1:84:18 .., 1:91:5 .., 1:91:7 .., 1:140:15 .., 1:143:13 .., 1:146:15 .., 1:164:7
prosecutors' [1] .. - 1:152:13
protected [2] .. - 1:75:7 .., 1:152:5
prove [10] .. - 1:31:8 .., 1:31:17 .., 1:46:9 .., 1:106:2 .., 1:136:11 .., 1:141:12 .., 1:146:16 .., 1:146:17 .., 1:161:19 .., 1:162:23
proved [1] .. - 1:159:12
proves [1] .. - 1:15:4
provide [9] .. - 1:20:12 .., 1:21:20 .., 1:22:19 .., 1:38:6 .., 1:50:24 .., 1:98:22 .., 1:113:25 .., 1:126:18 .., 1:126:21
provided [12] .. - 1:9:2 .., 1:20:20 .., 1:26:13 .., 1:28:24 .., 1:29:3 .., 1:33:25 .., 1:81:21 .., 1:88:11 .., 1:102:4 .., 1:102:11 .., 1:142:19 .., 1:143:3
provides [2] .. - 1:101:9 .., 1:116:8
provision [1] .. - 1:81:7
provisions [2] .. - 1:132:19 .., 1:154:7
prudent [1] .. - 1:16:6
public [4] .. - 1:4:16 .., 1:103:10 .., 1:152:24 .., 1:164:3
publicly [3] .. - 1:4:20 .., 1:5:8 .., 1:159:25
pull [3] .. - 1:15:7 .., 1:57:24 .., 1:120:21
punish [3] .. - 1:9:7 .., 1:46:10 .., 1:47:14
punished [2] .. - 1:32:12 .., 1:47:3
punishing [1] .. - 1:47:13
purchase [2] .. - 1:147:16 .., 1:147:17
pure [1] .. - 1:104:19
purported [3] .. - 1:98:13 ..,

1:101:17_, 1:114:9
purportedly [2]_ - 1:17:4_, 1:38:22
purpose [17]_ - 1:29:20_, 1:68:12_, 1:117:1_, 1:118:19 _, 1:127:21_, 1:136:16_, 1:136:17_, 1:136:19_, 1:136:25_, 1:137:6_, 1:137:13_, 1:137:15_, 1:137:19_, 1:138:13_, 1:138:16_, 1:138:20_, 1:160:9
purposes [8]_ - 1:25:23_, 1:54:20_, 1:73:5_, 1:92:4_, 1:101:17_, 1:101:19_, 1:136:5_, 1:152:11
pursuant [3]_ - 1:25:21_, 1:94:2_, 1:120:17
pursue [1]_ - 1:12:11
pursued [1]_ - 1:17:19
pursuing [1]_ - 1:140:15
pursuit [1]_ - 1:21:24
purview [1]_ - 1:54:21
put [8]_ - 1:11:15_, 1:14:9_, 1:50:6_, 1:117:1_, 1:117:24 _, 1:119:20_, 1:124:11_, 1:157:13
puts [1]_ - 1:116:25
putting [4]_ - 1:16:14_, 1:19:19_, 1:113:15_, 1:114:15

## Q

qualification [1]_ - 1:107:10
qualify [1]_ - 1:50:20
quantum [2]_ - 1:34:5_, 1:34:7
query [1]_ - 1:50:4
questioning [2]_ - 1:142:6 _, 1:142:10
questions [20]_ - 1:5:5_, 1:7:13_, 1:40:18_, 1:40:20_, 1:53:16_, 1:55:12_, 1:76:17 _, 1:85:10_, 1:111:9_, 1:111:20_, 1:126:11_, 1:142:1_, 1:142:3_, 1:143:24 _, 1:144:3_, 1:150:21_, 1:150:24_, 1:151:15_, 1:156:24_, 1:161:11
quick [1]_ - 1:23:10
quickly [1]_ - 1:31:11
quite [9]_ - 1:47:5_, 1:47:23_, 1:48:16_, 1:64:25

_, 1:65:21_, 1:65:23_, 1:87:9 _, 1:115:4_, 1:119:8
quotations [1]_ - 1:152:4
quote [6]_ - 1:9:17_, 1:24:21_, 1:29:8_, 1:51:25_, 1:69:12_, 1:106:17
quoted [1]_ - 1:115:4
quotes [3]_ - 1:54:5_, 1:59:14_, 1:98:19
quoting [5]_ - 1:49:6_, 1:69:11_, 1:75:9_, 1:75:16_, 1:82:4

## R

rabbit [1]_ - 1:85:16
railroad [1]_ - 1:45:16
raise [1]_ - 1:75:25
raised [3]_ - 1:5:24_, 1:80:12_, 1:93:19
raises [1]_ - 1:53:4
ramifications [1]_ - 1:86:10
rather [1]_ - 1:123:25
rational [1]_ - 1:58:19
rationale [1]_ - 1:159:15
rea [5]_ - 1:132:16_, 1:132:22_, 1:133:1_, 1:133:2 _, 1:133:22
reach [2]_ - 1:48:15_, 1:112:22
reached [2]_ - 1:53:11_, 1:81:16
reacted [1]_ - 1:54:12
read [13]_ - 1:19:6_, 1:48:2 _, 1:49:17_, 1:70:3_, 1:70:17 _, 1:71:13_, 1:95:12_, 1:98:20_, 1:148:21_, 1:149:3 _, 1:149:10_, 1:155:2
readily [1]_ - 1:7:24
reading [10]_ - 1:18:25_, 1:61:5_, 1:64:11_, 1:81:25_, 1:115:17_, 1:120:10_, 1:121:1_, 1:123:4_, 1:130:15 _, 1:149:22
reads [1]_ - 1:94:17
real [2]_ - 1:131:20_, 1:132:2
realistic [3]_ - 1:75:19_, 1:75:25_, 1:86:19
realleged [1]_ - 1:129:10
really [22]_ - 1:14:12_, 1:29:19_, 1:51:15_, 1:52:13 _, 1:54:3_, 1:57:9_, 1:57:14_,

1:65:12_, 1:82:12_, 1:104:10 _, 1:108:6_, 1:109:10_, 1:113:22_, 1:118:4_, 1:118:25_, 1:123:1_, 1:127:12_, 1:134:13_, 1:141:19_, 1:156:10_, 1:160:6_, 1:162:18
reas [6]_ - 1:121:16_, 1:131:7_, 1:133:20_, 1:134:7 _, 1:134:15_, 1:154:18
reason [8]_ - 1:42:20_, 1:52:5_, 1:54:11_, 1:54:13_, 1:64:22_, 1:74:4_, 1:81:19_, 1:163:21
reasonable [1]_ - 1:111:15
reasonably [2]_ - 1:112:8 _, 1:112:17
reasons [7]_ - 1:41:1_, 1:41:19_, 1:41:25_, 1:49:7_, 1:73:2_, 1:73:18_, 1:76:13
rebut [1]_ - 1:160:7
rebuts [1]_ - 1:160:3
rebuttal [2]_ - 1:80:18_, 1:138:24
recap [1]_ - 1:76:7
receipt [1]_ - 1:102:8
receive [1]_ - 1:102:16
received [4]_ - 1:12:25_, 1:28:24_, 1:88:25_, 1:93:11
receiving [2]_ - 1:18:9_, 1:92:25
recess [5]_ - 1:80:18_, 1:88:20_, 1:88:21_, 1:163:3 _, 1:165:7
recitation [3]_ - 1:50:23_, 1:68:21_, 1:123:7
recitations [1]_ - 1:85:6
recognize [1]_ - 1:152:3
recognizes [1]_ - 1:24:8
recollection [2]_ - 1:32:19 _, 1:58:7
recommended [3]_ - 1:58:12_, 1:58:17_, 1:84:12
record [71]_ - 1:4:18_, 1:5:2_, 1:20:5_, 1:21:10_, 1:36:1_, 1:49:1_, 1:56:20_, 1:57:21_, 1:61:24_, 1:72:16 _, 1:96:8_, 1:96:17_, 1:96:19 _, 1:127:6_, 1:133:9_, 1:133:14_, 1:147:8
recorded [2]_ - 1:12:14_, 1:34:19
recording [2]_ - 1:55:1_, 1:55:3

recordings [1]_ - 1:34:23
records [18]_ - 1:25:2_, 1:33:25_, 1:90:24_, 1:91:5_, 1:91:9_, 1:91:11_, 1:91:21_, 1:91:23_, 1:92:9_, 1:92:14_, 1:92:18_, 1:92:20_, 1:93:4_, 1:93:10_, 1:93:12_, 1:93:13 _, 1:93:14_, 1:93:17
redacted [1]_ - 1:103:7
refer [2]_ - 1:82:3_, 1:89:2
reference [13]_ - 1:23:11 _, 1:23:12_, 1:39:17_, 1:51:25_, 1:58:19_, 1:88:12 _, 1:91:2_, 1:91:3_, 1:102:22 _, 1:103:8_, 1:125:18_, 1:141:15_, 1:143:1
referenced [2]_ - 1:129:24_, 1:144:8
references [2]_ - 1:23:17 _, 1:159:25
referencing [2]_ - 1:33:24 _, 1:147:24
referred [1]_ - 1:48:7
referring [9]_ - 1:37:25_, 1:44:25_, 1:58:11_, 1:66:20 _, 1:69:12_, 1:115:11_, 1:146:11_, 1:158:4
reflected [1]_ - 1:77:19
reflects [2]_ - 1:25:11_, 1:164:9
refusal [4]_ - 1:35:9_, 1:83:16_, 1:84:17_, 1:84:22
refuse [1]_ - 1:34:10_, 1:82:24
refused [9]_ - 1:16:20_, 1:21:17_, 1:22:1_, 1:22:19_, 1:25:19_, 1:26:24_, 1:32:11 _, 1:83:6_, 1:84:2
refusing [1]_ - 1:83:13_, 1:85:24
refute [1]_ - 1:35:23
refuting [1]_ - 1:11:1
regarding [1]_ - 1:6:1
regardless [1]_ - 1:74:18
regurgitate [1]_ - 1:48:3
rehash [1]_ - 1:68:23
reiterated [1]_ - 1:68:7
reiterating [1]_ - 1:54:4
rejected [1]_ - 1:145:4
relate [1]_ - 1:142:2
related [15]_ - 1:6:20_, 1:7:5_, 1:36:14_, 1:38:22_, 1:55:15_, 1:63:7_, 1:64:14_, 1:66:17_, 1:67:1_, 1:71:17_,

1:94:3_, 1:137:3_, 1:142:10
_, 1:142:19_, 1:157:21

relates [1]_ - 1:142:18

relating [1]_ - 1:56:2

relation [1]_ - 1:136:13

relative [1]_ - 1:65:22

relevance [3]_ - 1:32:21_,
1:56:16_, 1:85:16

relevant [4]_ - 1:22:22_,
1:70:21_, 1:159:21_,
1:160:18

relief [3]_ - 1:66:4_,
1:66:14_, 1:68:15

relies [3]_ - 1:48:10_,
1:48:22_, 1:74:18

reluctant [1]_ - 1:52:15

rely [1]_ - 1:98:19

relying [1]_ - 1:105:2

remain [1]_ - 1:56:12

remainder [1]_ - 1:142:13

remaining [1]_ - 1:143:15

remains [1]_ - 1:93:22

remarked [1]_ - 1:58:11

remarks [2]_ - 1:7:8_,
1:49:11

remember [2]_ - 1:151:23
_, 1:151:24

remind [2]_ - 1:54:11_,
1:87:17

remotely [4]_ - 1:64:3_,
1:70:6_, 1:76:12_, 1:95:12

removed [1]_ - 1:105:18

removes [1]_ - 1:103:8

removing [1]_ - 1:115:9

rendering [1]_ - 1:99:4

renders [1]_ - 1:109:11

repeated [3]_ - 1:129:17_,
1:134:16_, 1:151:7

repeatedly [2]_ - 1:41:10
_, 1:41:11

reply [21]_ - 1:5:7_, 1:5:9_,
1:34:18_, 1:44:7_, 1:45:18_,
1:48:6_, 1:48:21_, 1:49:4_,
1:49:6_, 1:60:10_, 1:60:14_,
1:61:5_, 1:68:24_, 1:69:3_,
1:74:12_, 1:83:21_, 1:94:5_,
1:102:13_, 1:106:16_,
1:125:18_, 1:140:14

report [7]_ - 1:34:18_,
1:69:11_, 1:69:18_, 1:70:11
_, 1:70:18_, 1:71:23

reported [1]_ - 1:54:8_,
1:57:12

represent [1]_ - 1:29:13

representation [1]_ -
1:88:11

representations [2]_ -
1:5:22_, 1:104:12

representative [1]_ -
1:158:20

represented [3]_ -
1:23:23_, 1:35:4_, 1:39:15

representing [3]_ -
1:21:14_, 1:59:15_, 1:101:11

represents [1]_ - 1:32:18

request [48]_ - 1:5:15_,
1:11:18_, 1:21:4_, 1:22:7_,
1:24:20_, 1:26:21_, 1:27:17
_, 1:27:25_, 1:28:4_, 1:28:5_,
1:28:9_, 1:28:13_, 1:28:16_,
1:28:21_, 1:29:1_, 1:35:13_,
1:35:14_, 1:36:5_, 1:36:8_,
1:36:12_, 1:36:18_, 1:39:3_,
1:40:6_, 1:40:9_, 1:50:21_,
1:50:25_, 1:56:12_, 1:60:18
_, 1:66:9_, 1:68:17_, 1:79:17
_, 1:82:12_, 1:82:13_,
1:90:18_, 1:90:22_, 1:91:1_,
1:91:20_, 1:91:23_, 1:92:4_,
1:92:17_, 1:93:12_, 1:93:16
_, 1:109:5_, 1:116:20_,
1:136:12_, 1:140:6_,
1:155:17_, 1:155:21

requested [3]_ - 1:11:6_,
1:12:9_, 1:12:17

requesting [2]_ - 1:79:13
_, 1:85:12

requests [4]_ - 1:28:24_,
1:67:19_, 1:67:20_, 1:93:4

require [4]_ - 1:95:25_,
1:96:8_, 1:96:13_, 1:115:3

required [11]_ - 1:19:1_,
1:21:21_, 1:98:25_, 1:116:8
_, 1:117:24_, 1:118:16_,
1:119:7_, 1:126:15_,
1:148:15_, 1:149:13_,
1:151:11

requirement [6]_ -
1:96:23_, 1:107:13_,
1:113:24_, 1:124:20_,
1:139:6_, 1:164:16

requirements [2]_ -
1:98:21_, 1:124:4

requires [1]_ - 1:68:9_,
1:70:3_, 1:70:8_, 1:71:14_,
1:72:11_, 1:73:8_, 1:111:2_,
1:111:5

requiring [2]_ - 1:5:24_,
1:119:10

research [2]_ - 1:120:24_,
1:164:15

residence [3]_ - 1:141:15
_, 1:141:18_, 1:146:12

residential [1]_ - 1:144:21

resolution [3]_ - 1:33:5_,
1:33:10_, 1:74:2

resolve [1]_ - 1:53:12

respect [23]_ - 1:6:20_,
1:14:25_, 1:35:11_, 1:36:20
_, 1:37:1_, 1:81:9_, 1:89:5_,
1:94:17_, 1:103:18_, 1:116:6
_, 1:117:22_, 1:123:24_,
1:124:10_, 1:124:13_,
1:125:15_, 1:130:3_,
1:134:25_, 1:139:11_,
1:140:12_, 1:142:4_,
1:153:23_, 1:154:6_, 1:163:7

respectfully [9]_ - 1:27:16
_, 1:30:18_, 1:32:5_, 1:35:19
_, 1:38:10_, 1:39:11_, 1:84:2
_, 1:85:5_, 1:90:2

Respectfully [1]_ -
1:39:23

respective [1]_ - 1:165:6

respond [5]_ - 1:42:4_,
1:42:6_, 1:45:15_, 1:45:24_,
1:116:4

responded [1]_ - 1:44:6

response [15]_ - 1:28:20_,
1:28:23_, 1:29:2_, 1:45:10_,
1:45:23_, 1:45:25_, 1:47:1_,
1:47:9_, 1:59:5_, 1:59:8_,
1:65:24_, 1:77:12_, 1:134:19
_, 1:153:22_, 1:153:23

responses [1]_ - 1:141:22

responsible [2]_ - 1:35:2
_, 1:109:9

responsive [3]_ - 1:50:3_,
1:65:20_, 1:102:9

rest [1]_ - 1:20:12

result [4]_ - 1:13:15_,
1:21:25_, 1:35:5_, 1:86:2

resulted [2]_ - 1:10:12_,
1:27:20

results [1]_ - 1:92:25

resume [1]_ - 1:88:23

retained [1]_ - 1:14:14

retaliated [2]_ - 1:16:22_,
1:30:22

retaliation [3]_ - 1:8:8_,
1:23:2_, 1:24:6

retaliatory [1]_ - 1:25:14

retention [5]_ - 1:34:14_,

1:63:7_, 1:64:14_, 1:157:22
_, 1:159:21

return [1]_ - 1:84:1

returned [4]_ - 1:15:15_,
1:37:8_, 1:97:10_, 1:144:21

returning [1]_ - 1:37:18

reveal [1]_ - 1:105:18

reversed [1]_ - 1:143:9

review [10]_ - 1:10:20_,
1:12:9_, 1:13:5_, 1:26:14_,
1:27:7_, 1:91:20_, 1:93:13_,
1:93:14_, 1:93:17_, 1:105:20

reviewed [9]_ - 1:6:15_,
1:11:12_, 1:13:16_, 1:17:24
_, 1:31:13_, 1:31:14_,
1:39:22_, 1:40:5

rewrite [1]_ - 1:164:5

rhetoric [1]_ - 1:82:17

ridiculous [1]_ - 1:69:22

rights [7]_ - 1:8:13_, 1:9:8
_, 1:32:13_, 1:61:10_,
1:75:23_, 1:85:24_, 1:86:1

rigorous [3]_ - 1:68:9_,
1:72:25_, 1:73:18

rise [5]_ - 1:25:2_, 1:40:3_,
1:86:18_, 1:87:3_, 1:125:19

road [1]_ - 1:85:15

rolled [1]_ - 1:19:4

room [16]_ - 1:4:12_,
1:13:6_, 1:13:10_, 1:13:12_,
1:13:14_, 1:13:21_, 1:13:25
_, 1:14:1_, 1:17:4_, 1:32:4_,
1:32:18_, 1:54:25_, 1:84:18
_, 1:87:19_, 1:105:19_,
1:135:19

rose [3]_ - 1:30:21_, 1:57:4
_, 1:57:5

Rosen [1]_ - 1:161:9

rotten [1]_ - 1:61:22

round [1]_ - 1:5:18

route [1]_ - 1:107:6

routinely [1]_ - 1:110:7

rule [7]_ - 1:24:25_,
1:25:24_, 1:65:25_, 1:74:1_,
1:75:2_, 1:125:21

Rule [30]_ - 1:18:22_,
1:18:25_, 1:25:21_, 1:40:5_,
1:43:2_, 1:65:22_, 1:66:7_,
1:81:1_, 1:81:15_, 1:81:22_,
1:81:23_, 1:81:25_, 1:94:2_,
1:95:11_, 1:97:9_, 1:108:7_,
1:110:9_, 1:114:21_, 1:116:8
_, 1:117:7_, 1:117:11_,
1:118:19_, 1:118:20_,

1:125:5_, 1:125:11_, 1:151:5
_, 1:157:6_, 1:158:22_,
1:159:3_, 1:163:18

ruled [1]_ - 1:143:19

Rules [1]_ - 1:151:6

rules [2]_ - 1:41:4_,
1:164:23

ruling [2]_ - 1:105:24_,
1:143:19

run [1]_ - 1:45:16

rushed [1]_ - 1:38:21

**S**

safe [1]_ - 1:165:6

sanction [1]_ - 1:125:13

Sanders [2]_ - 1:9:12_,
1:72:20

Sasha [1]_ - 1:3:21

satisfied [1]_ - 1:127:23

satisfies [1]_ - 1:117:11

satisfy [1]_ - 1:98:21

satisfying [1]_ - 1:68:18

saw [1]_ - 1:135:19

scenario [1]_ - 1:51:14

scheduled [1]_ - 1:3:16

scheme [4]_ - 1:124:19_,
1:132:10_, 1:137:25_,
1:139:5

scope [2]_ - 1:112:18_,
1:157:8

scratch [1]_ - 1:120:7

screw [1]_ - 1:30:6

se [1]_ - 1:9:8

seal [3]_ - 1:37:21_,
1:103:9_, 1:103:10

sealed [11]_ - 1:4:18_,
1:4:21_, 1:4:24_, 1:5:20_,
1:5:24_, 1:6:7_, 1:19:25_,
1:20:4_, 1:39:9_, 1:76:20_,
1:137:5

search [12]_ - 1:10:20_,
1:13:21_, 1:14:2_, 1:87:8_,
1:87:9_, 1:88:2_, 1:88:9_,
1:88:11_, 1:89:1_, 1:102:6_,
1:102:8_, 1:129:13

searching [1]_ - 1:133:21

seat [1]_ - 1:42:10

seated [2]_ - 1:3:3_,
1:88:22

second [16]_ - 1:4:12_,
1:46:12_, 1:47:13_, 1:47:24
_, 1:48:6_, 1:48:7_, 1:53:21_,

1:62:2_, 1:75:8_, 1:75:10_,
1:76:23_, 1:77:24_, 1:111:17
_, 1:111:18_, 1:151:23_,
1:156:13

Second [2]_ - 1:9:13_,
1:72:21

secrecy [2]_ - 1:6:6_,
1:38:5

Secretary [1]_ - 1:35:1

Section [13]_ - 1:23:10_,
1:99:17_, 1:100:18_,
1:104:22_, 1:105:1_,
1:106:12_, 1:107:5_,
1:107:10_, 1:107:11_,
1:107:13_, 1:107:17_,
1:115:2_, 1:120:18

section [3]_ - 1:90:17_,
1:90:19_, 1:158:16

secured [1]_ - 1:143:1

Security [1]_ - 1:161:17

security [2]_ - 1:148:1_,
1:148:3

see [16]_ - 1:3:13_, 1:25:1
_, 1:31:8_, 1:31:9_, 1:32:17_,
1:73:6_, 1:88:14_, 1:90:17_,
1:105:8_, 1:108:19_,
1:108:20_, 1:118:24_,
1:134:3_, 1:150:5_, 1:160:23

seek [7]_ - 1:18:15_,
1:27:12_, 1:27:24_, 1:81:13
_, 1:82:1_, 1:92:14

seeking [12]_ - 1:6:9_,
1:47:14_, 1:47:19_, 1:55:21
_, 1:57:18_, 1:65:10_, 1:66:4
_, 1:74:5_, 1:82:5_, 1:138:4_,
1:161:13

seem [4]_ - 1:107:4_,
1:120:21_, 1:149:12_,
1:149:13

sees [1]_ - 1:13:14

segment [3]_ - 1:67:7_,
1:108:22_, 1:108:23

segments [1]_ - 1:104:3

seize [2]_ - 1:89:7_,
1:89:13

seized [1]_ - 1:89:15

seizure [1]_ - 1:89:1

Selective [1]_ - 1:4:15

selective [28]_ - 1:6:11_,
1:7:20_, 1:21:6_, 1:21:7_,
1:35:12_, 1:35:24_, 1:36:3_,
1:36:5_, 1:36:8_, 1:36:14_,
1:36:19_, 1:37:2_, 1:37:4_,
1:38:24_, 1:41:7_, 1:41:15_,
1:43:21_, 1:43:23_, 1:46:3_,

1:62:8_, 1:68:3_, 1:68:6_,
1:72:19_, 1:72:23_, 1:73:7_,
1:74:16_, 1:91:25

selectiveness [1]_ -
1:33:20

send [2]_ - 1:88:18_,
1:162:20

sense [4]_ - 1:39:4_,
1:123:12_, 1:131:21_,
1:134:14

sensitive [1]_ - 1:55:11

sent [4]_ - 1:12:20_, 1:87:7
_, 1:88:14_, 1:89:1

sentence [6]_ - 1:58:18_,
1:60:8_, 1:97:15_, 1:113:22
_, 1:118:18_, 1:155:3

separate [15]_ - 1:7:4_,
1:91:1_, 1:95:5_, 1:95:7_,
1:95:18_, 1:99:21_, 1:111:9
_, 1:113:18_, 1:117:10_,
1:132:12_, 1:132:13_,
1:134:7_, 1:140:25_,
1:152:11_, 1:163:17

separated [1]_ - 1:118:22

separately [7]_ - 1:95:5_,
1:97:20_, 1:98:25_, 1:118:9
_, 1:119:4_, 1:123:20_,
1:124:18

separates [2]_ - 1:133:3_,
1:133:5

sequence [1]_ - 1:83:11

series [4]_ - 1:74:20_,
1:108:5_, 1:114:22_,
1:116:11

serious [1]_ - 1:83:15

seriously [2]_ - 1:15:1_,
1:35:20

serve [1]_ - 1:35:7

served [3]_ - 1:10:22_,
1:57:17

server [2]_ - 1:35:2_,
1:148:13

session [1]_ - 1:4:10

set [10]_ - 1:4:12_, 1:4:13_,
1:7:3_, 1:104:13_, 1:107:20
_, 1:108:4_, 1:138:17_,
1:144:12_, 1:154:8_,
1:155:20

setting [3]_ - 1:75:16_,
1:75:18_, 1:111:22

settled [1]_ - 1:108:16

several [4]_ - 1:48:16_,
1:59:11_, 1:123:23_,
1:161:10

shakes [3]_ - 1:104:20_,

1:117:21

share [2]_ - 1:138:16_,
1:138:22

shared [7]_ - 1:79:12_,
1:136:4_, 1:136:6_, 1:137:24
_, 1:137:25_, 1:138:13_,
1:138:19

shed [1]_ - 1:51:8

sheet [2]_ - 1:77:16_,
1:77:19

shield [1]_ - 1:40:2

shift [1]_ - 1:62:13

shifting [2]_ - 1:84:5_,
1:84:7

shoehorn [1]_ - 1:17:2

shotgun [4]_ - 1:125:13_,
1:125:16_, 1:125:20_,
1:150:23

show [11]_ - 1:9:17_,
1:68:10_, 1:70:4_, 1:70:5_,
1:123:25_, 1:124:1_, 1:124:5
_, 1:135:4_, 1:138:1_,
1:138:2_, 1:160:16

showed [3]_ - 1:71:9_,
1:92:20_, 1:158:12

showing [7]_ - 1:11:17_,
1:21:3_, 1:73:4_, 1:74:15_,
1:75:23_, 1:92:3_, 1:160:16

shows [1]_ - 1:93:16

sic [1]_ - 1:140:3

side [3]_ - 1:34:5_, 1:72:8_,
1:78:18

sides [3]_ - 1:61:17_,
1:77:5_, 1:160:21

sign [2]_ - 1:100:12_,
1:114:4

signed [5]_ - 1:99:25_,
1:100:6_, 1:102:4_, 1:105:10
_, 1:105:11

significant [1]_ - 1:15:21

significantly [3]_ - 1:85:18
_, 1:85:19_, 1:134:15

similar [6]_ - 1:69:8_,
1:130:24_, 1:133:24_,
1:145:3_, 1:147:3_, 1:153:22

similarly [8]_ - 1:34:6_,
1:68:14_, 1:69:14_, 1:69:19
_, 1:70:9_, 1:71:11_, 1:99:6_,
1:119:25

similarly-situated [4]_ -
1:68:14_, 1:69:19_, 1:70:9_,
1:71:11

simply [14]_ - 1:19:3_,
1:65:14_, 1:89:6_, 1:98:17_,

1:98:19_, 1:99:3_, 1:119:3_, 1:120:6_, 1:120:11_, 1:126:16_, 1:128:15_, 1:148:15_, 1:150:12_, 1:151:6

single [6]_ - 1:25:7_, 1:46:18_, 1:48:2_, 1:49:2_, 1:95:11_, 1:98:2

sit [4]_ - 1:19:6_, 1:41:1_, 1:85:12_, 1:150:18

sitting [2]_ - 1:6:18_, 1:42:17

situated [7]_ - 1:34:6_, 1:68:14_, 1:69:15_, 1:69:19 _, 1:70:9_, 1:71:11_, 1:120:1

situation [1]_ - 1:139:21

skip [1]_ - 1:122:21

slightly [4]_ - 1:109:18_, 1:131:19_, 1:134:7_, 1:141:1

slow [1]_ - 1:81:11

slowly [1]_ - 1:22:9

small [2]_ - 1:36:19_, 1:157:6

Smith [2]_ - 1:70:2_, 1:71:12

so-called [1]_ - 1:58:21

Social [2]_ - 1:59:10_, 1:59:11

solution [1]_ - 1:153:3

somewhat [4]_ - 1:8:22_, 1:29:5_, 1:138:23_, 1:139:3

somewhere [1]_ - 1:65:2

sorry [14]_ - 1:30:3_, 1:37:15_, 1:43:23_, 1:44:19 _, 1:58:8_, 1:60:4_, 1:72:5_, 1:79:10_, 1:103:1_, 1:122:22 _, 1:130:6_, 1:151:22_, 1:156:3_, 1:162:6

sort [19]_ - 1:24:15_, 1:28:5 _, 1:28:6_, 1:50:13_, 1:64:7_, 1:97:22_, 1:108:21_, 1:112:11_, 1:113:15_, 1:116:7_, 1:123:6_, 1:123:9 _, 1:126:11_, 1:133:21_, 1:137:2_, 1:141:14_, 1:141:15_, 1:144:19_, 1:160:7

sorts [1]_ - 1:163:13

sought [9]_ - 1:6:14_, 1:22:1_, 1:42:25_, 1:66:14_, 1:68:16_, 1:77:4_, 1:78:24_, 1:92:10_, 1:136:24

sounds [2]_ - 1:54:6_, 1:63:2

Southern [10]_ - 1:16:2_,

1:19:2_, 1:19:18_, 1:19:22_, 1:26:2_, 1:37:6_, 1:37:12_, 1:43:1_, 1:63:20_, 1:65:4

span [1]_ - 1:108:7

speaking [9]_ - 1:6:5_, 1:98:22_, 1:111:12_, 1:125:24_, 1:126:20_, 1:148:6_, 1:150:9_, 1:151:12 _, 1:164:6

speaks [2]_ - 1:114:18_, 1:114:19

Special [51]_ - 1:3:8_, 1:4:20_, 1:5:3_, 1:5:10_, 1:5:21_, 1:5:25_, 1:10:24_, 1:14:5_, 1:18:21_, 1:22:8_, 1:22:25_, 1:23:10_, 1:26:16 _, 1:28:5_, 1:28:21_, 1:37:19 _, 1:38:3_, 1:40:9_, 1:49:8_, 1:59:12_, 1:67:2_, 1:79:17_, 1:80:25_, 1:81:9_, 1:81:16_, 1:90:23_, 1:92:7_, 1:93:11_, 1:95:9_, 1:95:21_, 1:98:16_, 1:100:5_, 1:103:6_, 1:104:3 _, 1:116:13_, 1:121:6_, 1:124:23_, 1:125:14_, 1:125:23_, 1:127:19_, 1:129:10_, 1:130:4_, 1:139:13_, 1:141:11_, 1:147:9_, 1:149:10_, 1:149:16_, 1:150:3_, 1:163:11_, 1:163:19_, 1:164:6

special [5]_ - 1:111:1_, 1:111:5_, 1:117:16_, 1:117:19_, 1:123:7

specific [13]_ - 1:10:13_, 1:16:13_, 1:22:7_, 1:23:20_, 1:28:21_, 1:29:1_, 1:93:3_, 1:93:12_, 1:93:16_, 1:98:24 _, 1:124:9_, 1:126:8_, 1:151:14

specifically [6]_ - 1:28:10 _, 1:36:15_, 1:37:1_, 1:44:24 _, 1:141:9_, 1:147:19

specifics [1]_ - 1:128:7

specious [1]_ - 1:47:24

spectrum [1]_ - 1:133:6

speculation [1]_ - 1:129:14

spelled [1]_ - 1:156:19

spelling [1]_ - 1:156:21

spend [2]_ - 1:52:3_, 1:73:23

spilled [1]_ - 1:135:20

spoken [1]_ - 1:48:11

sponte [3]_ - 1:59:5_,

1:77:1_, 1:78:14

spurious [1]_ - 1:17:1

square [1]_ - 1:90:1

stacked [1]_ - 1:154:18

staff [1]_ - 1:69:13

staffers [1]_ - 1:71:22

stage [3]_ - 1:9:4_, 1:137:10_, 1:152:24

stand [5]_ - 1:23:6_, 1:36:6 _, 1:38:8_, 1:43:5_, 1:85:12

stand-alone [1]_ - 1:36:6

standard [24]_ - 1:4:8_, 1:9:5_, 1:9:11_, 1:29:25_, 1:46:7_, 1:50:10_, 1:62:14_, 1:68:2_, 1:68:6_, 1:68:9_, 1:70:2_, 1:71:12_, 1:71:21_, 1:72:18_, 1:72:21_, 1:72:25 _, 1:73:3_, 1:73:7_, 1:78:3_, 1:86:20_, 1:122:15_, 1:152:23_, 1:163:18_, 1:164:8

standards [2]_ - 1:29:18_, 1:53:6

standing [5]_ - 1:27:17_, 1:52:11_, 1:52:25_, 1:163:20

standpoint [2]_ - 1:78:7_, 1:130:23

stands [2]_ - 1:120:3_, 1:149:17

Stanley [1]_ - 1:3:21

star [1]_ - 1:72:15

start [5]_ - 1:46:5_, 1:46:16 _, 1:68:2_, 1:94:9_, 1:104:6

started [2]_ - 1:19:4_, 1:73:22

starters [1]_ - 1:10:15

starting [2]_ - 1:3:7_, 1:46:3

starts [1]_ - 1:108:17

state [3]_ - 1:94:3_, 1:127:3_, 1:134:23

statement [19]_ - 1:17:5_, 1:32:17_, 1:33:14_, 1:53:9_, 1:99:18_, 1:99:20_, 1:100:6 _, 1:100:8_, 1:100:12_, 1:101:2_, 1:101:14_, 1:118:21_, 1:125:6_, 1:143:7 _, 1:146:2_, 1:146:9_, 1:146:17_, 1:153:23

statements [14]_ - 1:14:17_, 1:17:13_, 1:17:15 _, 1:31:16_, 1:31:22_, 1:54:25_, 1:104:12_, 1:141:9 _, 1:141:12_, 1:141:23_, 1:146:10_, 1:151:4_, 1:157:7

states [1]_ - 1:118:13

States [15]_ - 1:3:4_, 1:3:11_, 1:9:12_, 1:16:24_, 1:19:9_, 1:19:15_, 1:24:5_, 1:24:10_, 1:46:9_, 1:68:8_, 1:75:14_, 1:99:17_, 1:100:17 _, 1:133:18_, 1:156:14

statute [31]_ - 1:87:11_, 1:88:4_, 1:88:12_, 1:89:3_, 1:89:11_, 1:94:15_, 1:98:20 _, 1:108:11_, 1:113:8_, 1:113:9_, 1:113:14_, 1:113:24_, 1:115:7_, 1:119:12_, 1:119:13_, 1:121:1_, 1:122:21_, 1:124:3 _, 1:124:4_, 1:128:9_, 1:132:21_, 1:133:3_, 1:133:5 _, 1:140:3_, 1:140:17_, 1:148:24_, 1:149:3_, 1:150:2 _, 1:154:20_, 1:155:12_, 1:162:12

statutes [7]_ - 1:130:15_, 1:132:7_, 1:132:13_, 1:133:20_, 1:134:7_, 1:140:16_, 1:140:25

statutory [10]_ - 1:23:15_, 1:96:11_, 1:115:5_, 1:121:13 _, 1:121:16_, 1:122:7_, 1:123:13_, 1:154:9_, 1:154:19

stay [3]_ - 1:33:4_, 1:162:11

stayed [5]_ - 1:32:23_, 1:33:1_, 1:33:9_, 1:54:18_, 1:55:20

step [2]_ - 1:72:11_, 1:91:12

steps [3]_ - 1:11:4_, 1:16:13_, 1:38:12

stick [1]_ - 1:139:15

stickers [1]_ - 1:127:12

still [10]_ - 1:13:20_, 1:36:12_, 1:45:3_, 1:53:13_, 1:79:10_, 1:84:19_, 1:106:11 _, 1:106:17_, 1:118:13_, 1:143:16

stock [1]_ - 1:54:9

stood [1]_ - 1:23:8

stop [6]_ - 1:21:9_, 1:22:15 _, 1:143:14_, 1:148:20_, 1:155:11_, 1:160:5

storage [11]_ - 1:13:6_, 1:13:10_, 1:13:12_, 1:13:14 _, 1:13:20_, 1:13:25_, 1:17:4 _, 1:32:4_, 1:87:19_,

1:105:19_, 1:135:19

storeroom [1]_ - 1:144:20

story [2]_ - 1:48:13_, 1:61:25

straight [4]_ - 1:60:15_, 1:144:11_, 1:144:16_, 1:144:24

stricken [1]_ - 1:94:13

strict [1]_ - 1:164:24

strictures [1]_ - 1:65:24

strike [1]_ - 1:101:4

striking [1]_ - 1:110:18

stringent [1]_ - 1:8:9

strong [2]_ - 1:58:21_, 1:71:19

stronger [2]_ - 1:34:6_, 1:71:20

strongest [2]_ - 1:94:10_, 1:98:16

struck [1]_ - 1:78:20

structure [1]_ - 1:112:25

struggled [1]_ - 1:35:16

struggling [1]_ - 1:124:25

stuck [1]_ - 1:126:1

stuff [5]_ - 1:41:21_, 1:45:14_, 1:67:5_, 1:153:1

sua [3]_ - 1:59:5_, 1:77:1_, 1:78:14

subheading [1]_ - 1:28:18

subject [12]_ - 1:14:12_, 1:14:15_, 1:14:16_, 1:14:18 _, 1:15:24_, 1:64:2_, 1:99:25 _, 1:118:3_, 1:123:4_, 1:127:11_, 1:138:9_, 1:144:24

submission [6]_ - 1:27:4 _, 1:39:1_, 1:102:13_, 1:103:7_, 1:160:24

submissions [1]_ - 1:27:1

submit [12]_ - 1:9:19_, 1:27:23_, 1:86:15_, 1:86:17 _, 1:99:12_, 1:128:14_, 1:151:4_, 1:152:7_, 1:152:18 _, 1:163:11_, 1:163:14_, 1:164:20

submitted [8]_ - 1:95:17_, 1:96:3_, 1:96:10_, 1:97:12_, 1:97:17_, 1:99:10_, 1:101:10 _, 1:115:16

submitting [1]_ - 1:158:21

subparagraph [4]_ - 1:60:17_, 1:95:4_, 1:95:5_, 1:101:9

subpoena [8]_ - 1:90:23_, 1:91:3_, 1:91:5_, 1:93:10_, 1:102:9_, 1:127:11_, 1:128:12_, 1:136:13

subpoenaed [2]_ - 1:42:19_, 1:91:9

subpoenas [3]_ - 1:20:2_, 1:92:22_, 1:93:1

subsection [2]_ - 1:118:2 _, 1:118:14

subsections [2]_ - 1:108:12_, 1:120:14

subsequent [3]_ - 1:31:22_, 1:81:18_, 1:86:12

substance [6]_ - 1:44:21 _, 1:45:21_, 1:74:18_, 1:80:10_, 1:82:11_, 1:148:11

substantially [1]_ - 1:71:15

substantiate [1]_ - 1:74:19

substantive [18]_ - 1:19:24_, 1:20:7_, 1:20:8_, 1:20:11_, 1:20:14_, 1:66:17 _, 1:68:15_, 1:77:12_, 1:82:25_, 1:107:19_, 1:112:4 _, 1:112:8_, 1:112:12_, 1:112:17_, 1:124:18_, 1:139:11_, 1:140:8_, 1:145:15

substantively [2]_ - 1:41:20_, 1:78:4

success [1]_ - 1:8:8

successful [2]_ - 1:8:7_, 1:8:21

suffer [2]_ - 1:98:15_, 1:98:16

sufficiency [3]_ - 1:8:17_, 1:27:7_, 1:27:22

sufficient [2]_ - 1:120:7_, 1:134:8

sufficiently [3]_ - 1:8:3_, 1:119:20_, 1:143:24

suggest [6]_ - 1:43:5_, 1:61:21_, 1:76:10_, 1:90:3_, 1:95:12_, 1:119:2

suggested [1]_ - 1:42:12

suggesting [3]_ - 1:65:12 _, 1:93:10_, 1:96:22

suggestion [3]_ - 1:59:25 _, 1:134:20_, 1:157:19

suggestions [1]_ - 1:65:13

suggests [3]_ - 1:18:25_, 1:95:22_, 1:164:16

suite [1]_ - 1:144:22

sum [1]_ - 1:69:15

summarizing [1]_ - 1:20:20

summary [3]_ - 1:19:8_, 1:20:12_, 1:20:15

sun [1]_ - 1:136:10

superior [2]_ - 1:58:13_, 1:58:23

supersede [1]_ - 1:85:22

Superseding [1]_ - 1:4:15

superseding [9]_ - 1:8:19 _, 1:20:10_, 1:62:21_, 1:82:7 _, 1:82:9_, 1:102:19_, 1:129:9_, 1:142:23_, 1:158:1

supplemental [2]_ - 1:120:25_, 1:164:23

support [10]_ - 1:5:7_, 1:9:16_, 1:14:2_, 1:16:4_, 1:21:4_, 1:35:23_, 1:36:18_, 1:83:10_, 1:94:5_, 1:125:15

supported [1]_ - 1:107:6

supporters [1]_ - 1:34:15

supports [3]_ - 1:11:23_, 1:21:11_, 1:51:17

suppose [1]_ - 1:129:10

supposed [1]_ - 1:41:6

Supreme [7]_ - 1:8:5_, 1:8:23_, 1:19:8_, 1:36:25_, 1:121:25_, 1:140:15_, 1:141:3

surplusage [2]_ - 1:148:9 _, 1:151:5

surprise [1]_ - 1:19:11

surreply [7]_ - 1:5:11_, 1:5:13_, 1:44:10_, 1:44:13_, 1:49:12_, 1:49:14_, 1:70:10

surreptitiously [2]_ - 1:69:24_, 1:71:6

suspect [1]_ - 1:77:6

sworn [3]_ - 1:11:10_, 1:32:17_, 1:99:12

---

T

table [7]_ - 1:11:17_, 1:82:13_, 1:84:15_, 1:101:19 _, 1:118:12_, 1:151:1_, 1:164:16

tactics [3]_ - 1:18:13_, 1:24:1_, 1:39:18

talks [3]_ - 1:104:15_, 1:138:12

tangent [1]_ - 1:19:10

tangible [1]_ - 1:133:14

tantamount [1]_ - 1:25:3

target [24]_ - 1:12:20_, 1:12:21_, 1:13:1_, 1:14:12_, 1:14:23_, 1:15:5_, 1:15:6_, 1:15:9_, 1:15:12_, 1:15:17_, 1:15:22_, 1:15:24_, 1:16:12 _, 1:16:14_, 1:16:18_, 1:17:9 _, 1:18:9_, 1:19:19_, 1:19:20 _, 1:21:25_, 1:42:15_, 1:47:2 _, 1:57:17

technical [4]_ - 1:94:8_, 1:130:14_, 1:141:14_, 1:148:14

technicality [1]_ - 1:80:5

technique [2]_ - 1:108:21 _, 1:114:15

tending [2]_ - 1:9:17_, 1:68:10

term [2]_ - 1:23:16_, 1:76:11

terms [17]_ - 1:6:6_, 1:11:17_, 1:21:3_, 1:54:18_, 1:63:9_, 1:64:24_, 1:65:1_, 1:65:17_, 1:67:18_, 1:87:16 _, 1:106:3_, 1:108:17_, 1:109:1_, 1:111:25_, 1:129:16_, 1:132:24_, 1:138:15

testified [1]_ - 1:34:1

testify [8]_ - 1:8:14_, 1:16:21_, 1:34:10_, 1:46:25 _, 1:47:12_, 1:69:22_, 1:83:24_, 1:86:6

testifying [2]_ - 1:47:7_, 1:129:11

testimony [15]_ - 1:17:6_, 1:17:12_, 1:19:8_, 1:20:13_, 1:20:15_, 1:20:20_, 1:21:20 _, 1:31:9_, 1:31:10_, 1:31:13 _, 1:31:22_, 1:47:8_, 1:105:22_, 1:105:24

text [6]_ - 1:96:12_, 1:98:20 _, 1:104:20_, 1:122:7_, 1:123:4_, 1:154:9

Thakur [1]_ - 1:3:10

THE [462]_ - 1:3:2_, 1:3:12 _, 1:3:18_, 1:3:24_, 1:4:3_, 1:4:7_, 1:5:2_, 1:5:7_, 1:5:15 _, 1:5:18_, 1:6:23_, 1:6:25_, 1:7:2_, 1:7:12_, 1:7:17_, 1:10:13_, 1:11:16_, 1:12:3_, 1:12:6_, 1:13:22_, 1:15:5_, 1:15:9_, 1:15:14_, 1:15:20_, 1:16:3_, 1:16:15_, 1:17:8_,

1:18:3_, 1:18:7_, 1:18:10_,
1:20:14_, 1:20:18_, 1:20:25
_, 1:21:2_, 1:21:9_, 1:22:6_,
1:22:14_, 1:22:21_, 1:23:5_,
1:23:15_, 1:24:20_, 1:26:6_,
1:26:16_, 1:27:12_, 1:28:2_,
1:28:9_, 1:28:16_, 1:28:20_,
1:29:4_, 1:29:25_, 1:30:8_,
1:32:14_, 1:32:21_, 1:33:3_,
1:33:8_, 1:33:11_, 1:33:13_,
1:33:17_, 1:34:4_, 1:35:11_,
1:36:5_, 1:36:10_, 1:37:5_,
1:37:15_, 1:37:25_, 1:38:15
_, 1:38:19_, 1:40:12_,
1:40:15_, 1:40:18_, 1:40:23
_, 1:43:8_, 1:43:13_, 1:43:25
_, 1:44:10_, 1:44:13_,
1:44:17_, 1:44:24_, 1:45:20
_, 1:45:23_, 1:46:4_, 1:49:24
_, 1:50:13_, 1:50:19_,
1:51:11_, 1:51:22_, 1:51:24
_, 1:52:6_, 1:52:12_, 1:52:18
_, 1:52:20_, 1:53:3_, 1:53:13
_, 1:53:23_, 1:54:2_, 1:54:17
_, 1:55:6_, 1:55:10_, 1:55:20
_, 1:55:25_, 1:56:4_, 1:56:15
_, 1:56:21_, 1:56:25_, 1:57:2
_, 1:58:5_, 1:58:7_, 1:58:9_,
1:59:7_, 1:60:5_, 1:60:7_,
1:61:5_, 1:61:7_, 1:62:3_,
1:62:12_, 1:62:15_, 1:62:19
_, 1:62:23_, 1:62:25_, 1:63:6
_, 1:63:11_, 1:63:18_, 1:64:6
_, 1:64:13_, 1:64:22_,
1:65:13_, 1:66:9_, 1:66:16_,
1:66:23_, 1:66:25_, 1:67:5_,
1:67:9_, 1:67:17_, 1:67:24_,
1:70:10_, 1:70:21_, 1:70:25
_, 1:71:25_, 1:72:3, 1:72:6_,
1:72:9_, 1:73:3_, 1:73:11_,
1:73:13_, 1:73:16_, 1:73:25
_, 1:75:11_, 1:76:5, 1:76:15
_, 1:76:18_, 1:76:25_, 1:77:3
_, 1:77:10_, 1:77:15_,
1:77:18_, 1:77:22_, 1:77:25
_, 1:78:11_, 1:78:13_,
1:78:20_, 1:79:2_, 1:79:10_,
1:79:15_, 1:79:17_, 1:80:1_,
1:80:4_, 1:80:13_, 1:80:21_,
1:81:11_, 1:82:7_, 1:82:10_,
1:82:19_, 1:83:9_, 1:83:17_,
1:83:22_, 1:84:4_, 1:84:24_,
1:85:15_, 1:86:3_, 1:86:11_,
1:86:22_, 1:86:25_, 1:87:2_,
1:87:5_, 1:87:11_, 1:87:13_,
1:87:16_, 1:87:21_, 1:88:2_,
1:88:7_, 1:88:14_, 1:88:18_,
1:88:22_, 1:89:9_, 1:89:18_,
1:89:23_, 1:90:6_, 1:90:11_,
1:90:15_, 1:91:15_, 1:91:22
_, 1:92:2_, 1:92:6_, 1:92:12_,

1:92:17_, 1:92:22_, 1:92:25
_, 1:93:3_, 1:93:7_, 1:93:18_,
1:93:25_, 1:95:24_, 1:96:4_,
1:96:7_, 1:96:11_, 1:96:15_,
1:96:22_, 1:97:2_, 1:97:5_,
1:97:21_, 1:98:4_, 1:98:7_,
1:98:12_, 1:99:16_, 1:99:24
_, 1:100:14_, 1:100:17_,
1:100:24_, 1:101:7_,
1:101:16_, 1:101:22_,
1:101:25_, 1:102:16_,
1:102:18_, 1:102:21_,
1:102:24_, 1:103:2_, 1:103:4
_, 1:103:11_, 1:103:15_,
1:103:19_, 1:103:23_,
1:104:1_, 1:104:6_, 1:104:11
_, 1:104:15_, 1:104:18_,
1:104:23_, 1:105:2_, 1:105:8
_, 1:106:5_, 1:106:8_,
1:106:11_, 1:106:14_,
1:106:23_, 1:107:1_, 1:107:3
_, 1:107:9_, 1:107:15_,
1:107:21_, 1:107:24_,
1:108:15_, 1:109:1_,
1:109:12_, 1:109:24_,
1:110:4_, 1:110:13_,
1:110:19_, 1:110:22_,
1:110:24_, 1:111:8_,
1:111:13_, 1:111:19_,
1:112:1_, 1:112:5_, 1:112:10
_, 1:112:14_, 1:112:20_,
1:113:5_, 1:113:11_, 1:114:2
_, 1:114:6_, 1:114:12_,
1:114:18_, 1:114:23_,
1:115:1_, 1:115:8_, 1:115:12
_, 1:115:17_, 1:115:21_,
1:115:23_, 1:115:25_,
1:116:3_, 1:117:15_, 1:118:1
_, 1:118:12_, 1:118:22_,
1:118:25_, 1:119:9_,
1:119:17_, 1:119:24_,
1:120:14_, 1:120:23, 1:121:4
_, 1:121:6_, 1:121:15_,
1:121:22_, 1:122:3_, 1:122:7
_, 1:122:10_, 1:122:14_,
1:122:17_, 1:122:20_,
1:122:23_, 1:122:25_,
1:123:5_, 1:123:16_, 1:125:7
_, 1:126:6_, 1:126:11_,
1:126:25_, 1:127:9_,
1:127:16_, 1:128:4_,
1:128:10_, 1:128:12_,
1:128:18_, 1:128:23_,
1:129:1_, 1:129:16_,
1:129:25_, 1:130:6_, 1:130:9
_, 1:130:18_, 1:130:20_,
1:131:2_, 1:131:12_,
1:131:15_, 1:131:18_,
1:131:20_, 1:132:1_,
1:132:11_, 1:132:13_,
1:132:23_, 1:133:5_,

1:133:24_, 1:134:10_,
1:134:12_, 1:135:2_,
1:135:10_, 1:135:15_,
1:135:21_, 1:136:2_, 1:136:8
_, 1:136:15_, 1:136:19_,
1:137:11_, 1:137:21,
1:137:23_, 1:138:3_,
1:138:12_, 1:138:21_,
1:138:23_, 1:139:6_, 1:139:9
_, 1:139:17_, 1:139:23_,
1:140:25_, 1:141:5_,
1:141:17_, 1:142:5_, 1:142:9
_, 1:142:13_, 1:142:22_,
1:143:5_, 1:143:14_, 1:144:4
_, 1:144:7_, 1:144:11_,
1:144:16_, 1:144:23_,
1:145:2_, 1:145:7_, 1:145:10
_, 1:146:4_, 1:146:7_,
1:146:23_, 1:147:1_,
1:147:12_, 1:147:22_,
1:148:21_, 1:148:24_,
1:149:5_, 1:149:7_, 1:149:23
_, 1:149:25_, 1:150:5_,
1:150:15_, 1:150:18_,
1:150:25_, 1:151:14_,
1:151:18_, 1:151:20_,
1:151:24_, 1:152:2_, 1:152:4
_, 1:152:14_, 1:153:1_,
1:153:11_, 1:153:17_,
1:153:21_, 1:154:9_,
1:154:12_, 1:154:15_,
1:154:21_, 1:154:24_,
1:155:4_, 1:155:6_, 1:155:16
_, 1:155:23_, 1:156:2_,
1:156:5_, 1:156:8_, 1:156:16
_, 1:156:19_, 1:156:22_,
1:157:2_, 1:157:4_, 1:157:9
_, 1:157:15_, 1:157:19_,
1:157:25_, 1:158:5_,
1:158:10_, 1:158:13_,
1:158:16_, 1:158:19_,
1:158:23_, 1:159:1_, 1:159:5
_, 1:159:9_, 1:159:13_,
1:159:17_, 1:159:20_,
1:159:23_, 1:160:5_, 1:160:9
_, 1:160:12_, 1:160:19_,
1:160:23_, 1:161:3_,
1:161:12_, 1:161:20_,
1:161:25_, 1:162:2_, 1:162:9
_, 1:162:11_, 1:162:14_,
1:162:25_, 1:164:11_,
1:164:22_, 1:165:1

**the..** [1]_ - 1:123:4

**thematic** [1]_ - 1:38:20

**theme** [1]_ - 1:99:6

**theories** [2]_ - 1:125:19_,
1:157:17

**theory** [18]_ - 1:31:25_,
1:60:15_, 1:61:8_, 1:104:24

1:105:3_, 1:107:14_,
1:107:18_, 1:107:23_,
1:109:6_, 1:110:11_,
1:116:21_, 1:117:13_,
1:125:15_, 1:135:11_,
1:136:2_, 1:155:9_, 1:158:7
_, 1:159:13

**thereafter** [1]_ - 1:9:4

**therefore** [6]_ - 1:98:25_,
1:100:1_, 1:101:3_, 1:120:18
_, 1:130:12_, 1:152:16

**thereof** [1]_ - 1:163:25

**they've** [10]_ - 1:16:8_,
1:23:13_, 1:23:14_, 1:117:9
_, 1:118:21_, 1:119:3_,
1:127:23_, 1:139:17_,
1:139:18

**thinking** [2]_ - 1:142:9_,
1:159:11

**Third** [1]_ - 1:137:8

**third** [13]_ - 1:20:2_, 1:23:4
_, 1:91:9_, 1:91:10_, 1:91:20
_, 1:92:15_, 1:93:11_,
1:93:17_, 1:111:21_,
1:111:22_, 1:147:18_,
1:147:19_, 1:150:9

**third-party** [1]_ - 1:20:2

**thoughts** [2]_ - 1:30:11_,
1:150:6

**threat** [1]_ - 1:23:25

**threaten** [2]_ - 1:29:15_,
1:85:21

**threatened** [5]_ - 1:8:15_,
1:60:21_, 1:60:24_, 1:82:22

**threatening** [1]_ - 1:61:11

**threatens** [1]_ - 1:154:22

**three** [16]_ - 1:18:22_,
1:19:24_, 1:20:7_, 1:20:22_,
1:59:19_, 1:62:7_, 1:81:22_,
1:94:2_, 1:104:4_, 1:111:19
_, 1:116:4_, 1:132:9_,
1:132:18_, 1:133:20_,
1:155:17

**threshold** [5]_ - 1:24:16_,
1:68:12_, 1:73:4_, 1:75:23_,
1:92:2

**throughout** [1]_ - 1:99:7

**tied** [1]_ - 1:27:9

**timeline** [3]_ - 1:44:25_,
1:57:20_, 1:63:13

**timelines** [1]_ - 1:38:23

**timing** [3]_ - 1:56:23_,
1:56:25_, 1:60:5

**Tina** [1]_ - 1:53:24

**tip** [1]_ - 1:156:15

Title [2]- - 1:99:16-, 1:100:17

titled [1]- - 1:4:14

today [10]- - 1:6:18-, 1:7:7 -, 1:42:8-, 1:45:15-, 1:46:24 -, 1:66:3-, 1:73:22-, 1:74:13 -, 1:102:14-, 1:103:20

today's [3]- - 1:6:16-, 1:35:17-, 1:88:10

Todd [1]- - 1:3:14

together [9]- - 1:19:20-, 1:36:18-, 1:37:3-, 1:95:7-, 1:108:8-, 1:109:8-, 1:123:22 -, 1:146:25-, 1:147:1

toll [6]- - 1:90:23-, 1:91:23 -, 1:92:8-, 1:92:14-, 1:92:18 -, 1:93:4

tone [1]- - 1:43:6

took [3]- - 1:49:16-, 1:63:6 -, 1:154:5

top [1]- - 1:154:18

topic [1]- - 1:123:14

tossed [1]- - 1:43:22

total [6]- - 1:20:18-, 1:20:25-, 1:29:18-, 1:69:15 -, 1:111:19-, 1:162:2

totally [2]- - 1:12:22-, 1:17:22

touch [1]- - 1:56:7

tour [1]- - 1:57:24

toward [11]- - 1:46:10-, 1:49:3-, 1:49:9-, 1:49:14-, 1:49:20-, 1:76:9-, 1:84:19-, 1:84:20-, 1:121:11-, 1:122:5

towards [1]- - 1:45:6

track [2]- - 1:107:22-, 1:153:18

tracks [2]- - 1:77:13-, 1:121:13

transaction [3]- - 1:108:6 -, 1:114:22-, 1:116:10

transactions [2]- - 1:108:6-, 1:116:11

transcribed [1]- - 1:12:14

transcript [2]- - 1:12:9-, 1:12:17

transcripts [3]- - 1:18:23 -, 1:19:7-, 1:81:21

transfer [13]- - 1:6:8-, 1:6:13-, 1:6:19-, 1:19:1-, 1:19:3-, 1:25:22-, 1:25:25-, 1:26:2-, 1:26:21-, 1:26:23-, 1:27:14-, 1:37:20-, 1:39:21

transferred [2]- - 1:19:18

-, 1:40:7

transmission [1]- - 1:157:22

transpired [1]- - 1:30:9

travel [1]- - 1:86:8

travels [1]- - 1:165:6

treat [1]- - 1:147:1

treatment [2]- - 1:68:14-, 1:73:9

trial [10]- - 1:3:16-, 1:15:2 -, 1:99:2-, 1:105:23-, 1:105:24-, 1:117:20-, 1:117:21-, 1:126:12-, 1:152:11-, 1:162:21

tried [2]- - 1:83:20-, 1:109:19

trier [2]- - 1:126:12-, 1:143:6

trot [1]- - 1:44:8

trouble [2]- - 1:136:15-, 1:154:18

true [13]- - 1:31:16-, 1:52:25-, 1:55:16-, 1:66:22 -, 1:99:18-, 1:100:12-, 1:101:3-, 1:102:10-, 1:104:9 -, 1:120:10-, 1:126:19-, 1:141:23-, 1:143:24

Trump [108]- - 1:3:5-, 1:3:13-, 1:3:15-, 1:25:6-, 1:25:10-, 1:25:20-, 1:27:13 -, 1:29:9-, 1:29:13-, 1:32:1-, 1:35:7-, 1:51:25-, 1:52:8-, 1:57:17-, 1:57:18-, 1:58:22 -, 1:59:9-, 1:59:11, 1:59:18 -, 1:60:12-, 1:68:20-, 1:69:8 -, 1:77:12-, 1:78:5-, 1:78:12 -, 1:79:6-, 1:79:8-, 1:80:11-, 1:90:4-, 1:90:14-, 1:94:14-, 1:94:17-, 1:94:18-, 1:94:23 -, 1:94:25-, 1:95:2-, 1:95:13 -, 1:95:16-, 1:96:2-, 1:96:9-, 1:97:12-, 1:98:9-, 1:98:24-, 1:99:2-, 1:99:9-, 1:99:11-, 1:99:12-, 1:99:15-, 1:99:20 -, 1:99:21-, 1:99:22-, 1:99:24-, 1:100:6-, 1:100:7 -, 1:100:11-, 1:100:13-, 1:101:3-, 1:101:14-, 1:101:15-, 1:101:23-, 1:102:1-, 1:102:4-, 1:104:13 -, 1:104:15-, 1:105:3-, 1:105:14-, 1:105:15-, 1:105:16-, 1:105:17-, 1:105:19-, 1:106:1-, 1:106:6 -, 1:109:7-, 1:109:9-, 1:109:13-, 1:109:22-, 1:111:15-, 1:111:16-,

1:111:24-, 1:115:15-, 1:116:16-, 1:116:17-, 1:116:22-, 1:116:23-, 1:117:3-, 1:117:4-, 1:117:5 -, 1:118:8-, 1:118:17-, 1:119:14-, 1:119:21-, 1:119:22-, 1:120:4-, 1:129:12-, 1:136:20-, 1:148:5-, 1:148:6-, 1:148:16 -, 1:151:20-, 1:155:17-, 1:155:19

Trump's [11]- - 1:13:7-, 1:13:15-, 1:27:1-, 1:27:6-, 1:27:10-, 1:59:22-, 1:60:18 -, 1:69:4-, 1:81:4-, 1:95:14-, 1:109:7

trusty [1]- - 1:25:10

Truth [2]- - 1:59:9-, 1:59:11

try [9]- - 1:28:2-, 1:30:15-, 1:30:18-, 1:69:25-, 1:71:7-, 1:71:8-, 1:74:19-, 1:102:24 -, 1:134:13

trying [20]- - 1:29:25-, 1:39:4-, 1:40:4-, 1:51:2-, 1:51:5-, 1:51:9-, 1:51:20-, 1:56:14-, 1:65:14-, 1:104:19 -, 1:110:19-, 1:122:10-, 1:122:25-, 1:123:12-, 1:125:8-, 1:125:9-, 1:134:14 -, 1:141:18-, 1:142:14-, 1:151:7

turn [12]- - 1:36:24-, 1:50:9 -, 1:50:11-, 1:93:8-, 1:93:25 -, 1:107:24-, 1:109:20-, 1:116:5-, 1:121:5-, 1:143:14 -, 1:145:12-, 1:153:25

turned [1]- - 1:30:14

twice [2]- - 1:81:14-, 1:81:21

two [41]- - 1:15:19-, 1:15:21-, 1:16:1-, 1:20:8-, 1:20:9-, 1:20:11-, 1:20:14-, 1:20:16-, 1:20:24-, 1:27:5-, 1:29:15-, 1:41:11-, 1:68:20 -, 1:68:25-, 1:69:21-, 1:71:22-, 1:77:13-, 1:94:23 -, 1:95:7-, 1:97:6-, 1:97:7-, 1:97:22-, 1:98:17-, 1:108:17 -, 1:108:22-, 1:110:22-, 1:110:25-, 1:113:16-, 1:116:9-, 1:117:10-, 1:120:5 -, 1:120:11-, 1:131:6-, 1:132:21-, 1:147:15-, 1:151:20-, 1:153:14-, 1:155:21-, 1:160:3-, 1:165:4

type [1]- - 1:109:10

typically [1]- - 1:159:5

U

U.S [4]- - 1:6:9-, 1:6:13-, 1:24:5-, 1:24:10

U.S.C [5]- - 1:104:22-, 1:105:1-, 1:107:10-, 1:107:17-, 1:120:22

ultimately [8]- - 1:8:17-, 1:24:11-, 1:77:13-, 1:83:14 -, 1:105:13-, 1:140:17-, 1:141:17-, 1:152:10

unauthorized [1]- - 1:160:16

unaware [1]- - 1:87:24

unbeknownst [3]- - 1:13:6-, 1:13:7-, 1:105:18

uncertain [1]- - 1:146:3

uncharged [1]- - 1:157:20

unclear [4]- - 1:78:23-, 1:99:1-, 1:143:11-, 1:146:13

uncommon [1]- - 1:110:6

unconventional [3]- - 1:17:25-, 1:18:10-, 1:18:11

under [39]- - 1:8:13-, 1:11:8-, 1:14:24-, 1:15:2-, 1:23:9-, 1:31:2-, 1:34:12-, 1:37:21-, 1:69:24-, 1:71:6-, 1:71:12-, 1:81:15-, 1:87:25 -, 1:89:9-, 1:95:19-, 1:100:8 -, 1:103:9-, 1:103:10-, 1:107:12-, 1:108:7-, 1:109:5 -, 1:109:22-, 1:109:23-, 1:110:9-, 1:110:18-, 1:114:21-, 1:118:9-, 1:120:18-, 1:128:9-, 1:130:12-, 1:135:4-, 1:136:10-, 1:139:11-, 1:148:25-, 1:149:20-, 1:157:5-, 1:159:14-, 1:164:17-, 1:165:5

underlines [1]- - 1:141:11

underlying [4]- - 1:20:11 -, 1:130:25-, 1:131:1-, 1:140:14

underscores [1]- - 1:163:12

understandable [1]- - 1:123:8

understood [5]- - 1:84:16 -, 1:89:21-, 1:103:17-, 1:144:2-, 1:163:8

undertaken [4]- - 1:55:8 -, 1:55:18-, 1:126:21-, 1:149:15

undertaking [2]- -

1:55:23_, 1:164:4
undisputed [1]_ -
1:100:12
unduly [4]_ - 1:153:3_,
1:153:6_, 1:153:8
unfair [1] - 1:161:4
uniformly [1]_ - 1:107:19
unique [1]_ - 1:8:3
United [15]_ - 1:3:4_,
1:3:11_, 1:9:12_, 1:16:24_,
1:19:9_, 1:19:15_, 1:24:5_,
1:24:10_, 1:46:9_, 1:68:8_,
1:75:14_, 1:99:16_, 1:100:17
_, 1:133:18_, 1:156:14
universe [1]_ - 1:69:1
unlawful [5]_ - 1:64:14_,
1:136:5_, 1:136:6_, 1:137:12
_, 1:138:13
unless [1]_ - 1:76:16
unnecessarily [1]_ -
1:124:20
unnecessary [1]_ -
1:163:13
unopposed [1]_ - 1:5:21
unreasonable [1]_ -
1:38:22
unredacted [5]_ - 1:4:24
_, 1:5:4_, 1:5:9_, 1:5:13_,
1:103:6
unsealed [3]_ - 1:5:21_,
1:6:4_, 1:14:3
untoward [2]_ - 1:29:15_,
1:64:4
untrue [2]_ - 1:54:15_,
1:82:16
untruthful [3]_ - 1:14:7_,
1:17:11_, 1:31:21
unusual [5]_ - 1:19:13_,
1:64:21_, 1:108:19_,
1:111:22
up [42]_ - 1:4:12_, 1:13:2_,
1:14:21_, 1:14:22_, 1:15:8_,
1:21:15_, 1:29:9_, 1:29:16_,
1:30:6_, 1:31:25_, 1:42:16_,
1:53:18_, 1:70:14_, 1:75:11
_, 1:76:16_, 1:76:23_,
1:80:24_, 1:82:17_, 1:88:25
_, 1:90:18_, 1:92:20_,
1:93:15_, 1:95:14_, 1:96:16
_, 1:96:25_, 1:97:6_, 1:97:7_,
1:102:14_, 1:106:2_,
1:109:24_, 1:111:7_,
1:120:21_, 1:129:12_,
1:133:13_, 1:134:2_, 1:134:4
_, 1:136:17_, 1:144:20_,

1:144:21_, 1:161:16_,
1:162:17_, 1:163:3
upshot [2]_ - 1:51:12
urging [1]_ - 1:48:8
useful [1]_ - 1:123:6
uses [2]_ - 1:11:19_,
1:154:21
usual [3]_ - 1:4:7_, 1:4:11
_, 1:7:12
uttered [1]_ - 1:22:4

V

vacate [1]_ - 1:27:25
vacuum [1]_ - 1:128:21
vague [4]_ - 1:142:2_,
1:142:6_, 1:143:11
vagueness [1]_ -
1:123:20
validity [1]_ - 1:27:23
value [2]_ - 1:51:4_,
1:71:17
various [5]_ - 1:97:3_,
1:123:17_, 1:156:24_,
1:159:17_, 1:162:15
vehicle [1]_ - 1:51:18
venue [1]_ - 1:26:11
veracity [1]_ - 1:10:18
verbs [2]_ - 1:129:23
verdict [1]_ - 1:99:4
version [8]_ - 1:4:19_,
1:5:4_, 1:5:9_, 1:5:13_,
1:72:16_, 1:77:14_, 1:103:5
_, 1:103:7
versions [1]_ - 1:6:4
versus [2]_ - 1:38:17_,
1:141:18
via [4]_ - 1:57:25_, 1:63:20
_, 1:107:6_, 1:128:12
vice [1]_ - 1:34:16
video [12]_ - 1:42:18_,
1:55:1_, 1:147:11_, 1:147:19
_, 1:148:12_, 1:148:15_,
1:148:16_, 1:148:19_,
1:148:20_, 1:150:10_,
1:150:13_, 1:154:6
videotapes [1]_ - 1:71:8
view [15]_ - 1:16:15_,
1:16:17_, 1:26:8_, 1:26:18_,
1:37:23_, 1:51:1_, 1:56:16_,
1:66:7_, 1:73:1_, 1:101:22_,
1:105:11_, 1:106:11_,
1:126:13_, 1:154:3
viewed [1]_ - 1:153:2

Vincent [1]_ - 1:24:5
Vindictive [1]_ - 1:4:15
vindictive [51]_ - 1:6:12_,
1:7:20_, 1:7:22_, 1:8:2_,
1:8:6_, 1:8:24_, 1:9:8_,
1:9:14_, 1:9:20_, 1:10:5_,
1:10:8_, 1:16:5_, 1:17:20_,
1:21:4_, 1:22:23_, 1:23:1_,
1:24:16_, 1:25:4_, 1:25:19_,
1:29:24_, 1:32:16_, 1:33:22
_, 1:35:12_, 1:35:24_, 1:36:3
_, 1:36:19_, 1:36:20_, 1:37:4
_, 1:38:23_, 1:41:7_, 1:43:21
_, 1:44:2_, 1:45:12_, 1:46:3_,
1:46:5_, 1:47:16_, 1:47:22_,
1:49:15_, 1:49:19_, 1:51:18
_, 1:62:9_, 1:72:8_, 1:72:14_,
1:72:18_, 1:72:22_, 1:73:10
_, 1:83:4_, 1:83:7_, 1:85:20_,
1:86:17_, 1:91:25
vindictively [2]_ - 1:11:23
_, 1:48:19
vindictiveness [21]_ -
1:21:10_, 1:24:18_, 1:33:21
_, 1:41:13_, 1:41:17_,
1:41:19_, 1:46:7_, 1:48:9_,
1:73:1_, 1:73:21_, 1:74:7_,
1:74:15_, 1:74:19_, 1:74:21
_, 1:74:24_, 1:75:6_, 1:75:19
_, 1:76:1_, 1:76:10_, 1:76:11
_, 1:86:20
violated [8]_ - 1:98:11_,
1:108:12_, 1:111:15_,
1:113:24_, 1:115:7_,
1:132:22_, 1:154:7
violates [3]_ - 1:29:17_,
1:97:8_, 1:133:3
violating [1]_ - 1:113:8_,
1:113:13
violation [9]_ - 1:32:12_,
1:81:22_, 1:94:21_, 1:95:2_,
1:101:4_, 1:118:10_,
1:119:12_, 1:140:3_,
1:150:13
violations [2]_ - 1:42:23_,
1:132:6
virtue [4]_ - 1:80:10_,
1:119:15_, 1:119:18_,
1:129:5
vis-á-vis [6]_ - 1:29:6_,
1:36:13_, 1:65:8_, 1:96:4_,
1:109:13_, 1:111:2
visible [1]_ - 1:135:20
visits [1]_ - 1:87:19
voluntarily [3]_ - 1:8:14_,
1:13:2_, 1:126:21

voluntary [7]_ - 1:12:14_,
1:13:4_, 1:13:13_, 1:14:8_,
1:47:1_, 1:87:18_, 1:144:5
vs [9]_ - 1:3:5_, 1:9:12_,
1:19:9_, 1:24:5_, 1:24:10_,
1:46:9_, 1:68:8_, 1:75:14_,
1:156:14

W

wait [1]_ - 1:68:24
waive [1]_ - 1:25:12
walk [1]_ - 1:121:15
walks [1]_ - 1:13:25
Waltine [4]_ - 1:3:5_,
1:3:19_, 1:4:14_, 1:116:16
wants [2]_ - 1:68:4_,
1:156:11
warrant [8]_ - 1:14:2_,
1:87:8_, 1:87:9_, 1:88:3_,
1:88:9_, 1:88:11_, 1:89:1_,
1:89:13
warranted [1]_ - 1:16:6
Washington [4]_ -
1:63:25_, 1:78:9_, 1:79:7_,
1:80:3
water [1]_ - 1:53:24
waves [1]_ - 1:71:23
waving [1]_ - 1:69:17
ways [10]_ - 1:61:20_,
1:97:3_, 1:108:11_, 1:108:14
_, 1:113:8_, 1:113:10_,
1:113:23_, 1:115:6_,
1:132:21_, 1:146:11
website [2]_ - 1:10:21_,
1:11:12
week [4]_ - 1:13:12_,
1:15:14_, 1:19:21_, 1:39:1
weekend [1]_ - 1:148:10
weeks [1]_ - 1:15:19
welcome [3]_ - 1:3:2_,
1:56:21_, 1:130:7
well-documented [1]_ -
1:9:23
well-established [1]_ -
1:113:12
well-pleaded [1]_ -
1:126:4
West [4]_ - 1:37:7_,
1:38:17_, 1:63:12_, 1:67:12
Westlaw [1]_ - 1:72:15
whatsoever [3]_ - 1:49:1
_, 1:127:13_, 1:136:8
White [6]_ - 1:102:7_,

1:136:21₋, 1:144:12₋, 1:144:15₋, 1:144:16₋, 1:144:25

whole [7]₋ - 1:69:1₋, 1:102:18₋, 1:118:19₋, 1:142:15₋, 1:146:11₋, 1:146:13₋, 1:159:2

wholly [1]₋ - 1:152:8

willing [3]₋ - 1:52:18₋, 1:52:19₋, 1:87:4

winding [1]₋ - 1:153:12

wish [6]₋ - 1:33:17₋, 1:40:19₋, 1:45:24₋, 1:84:25 ₋, 1:120:25₋, 1:164:14

wishes [1]₋ - 1:80:18

wishing [1]₋ - 1:103:20

withhold [1]₋ - 1:133:9

withholding [1]₋ - 1:129:22

witness [9]₋ - 1:14:11₋, 1:16:7₋, 1:16:11₋, 1:25:7₋, 1:25:11₋, 1:25:13₋, 1:39:2₋, 1:59:15₋, 1:85:12

witnesses [11]₋ - 1:14:4₋, 1:19:25₋, 1:20:1₋, 1:20:6₋, 1:20:7₋, 1:20:9₋, 1:20:12₋, 1:20:14₋, 1:20:18₋, 1:20:24 ₋, 1:39:16

WL [1]₋ - 1:72:16

wondering [2]₋ - 1:52:22 ₋, 1:159:7

WOODWARD [192]₋ - 1:3:20₋, 1:6:22₋, 1:7:11₋, 1:7:15₋, 1:7:18₋, 1:10:15₋, 1:11:19₋, 1:12:4₋, 1:12:7₋, 1:13:24₋, 1:15:6₋, 1:15:11₋, 1:15:16₋, 1:15:21₋, 1:16:10 ₋, 1:16:17₋, 1:17:9₋, 1:18:5₋, 1:18:8₋, 1:18:11₋, 1:20:16₋, 1:20:21₋, 1:21:1₋, 1:21:7₋, 1:21:13₋, 1:22:10₋, 1:22:16 ₋, 1:22:25₋, 1:23:6₋, 1:23:19 ₋, 1:24:23₋, 1:26:12₋, 1:26:20₋, 1:27:16₋, 1:28:8₋, 1:28:11₋, 1:28:18₋, 1:28:23 ₋, 1:29:12₋, 1:30:3₋, 1:30:13 ₋, 1:32:17₋, 1:32:25₋, 1:33:7 ₋, 1:33:9₋, 1:33:12₋, 1:33:16 ₋, 1:33:19₋, 1:34:7₋, 1:35:15 ₋, 1:36:8₋, 1:36:17₋, 1:37:9₋, 1:37:18₋, 1:38:2₋, 1:38:18₋, 1:39:7₋, 1:40:14, 1:40:17₋, 1:40:22₋, 1:80:22₋, 1:81:12 ₋, 1:82:8₋, 1:82:14₋, 1:82:21 ₋, 1:83:12₋, 1:83:19₋, 1:83:23₋, 1:84:7₋, 1:85:5₋, 1:85:18₋, 1:86:7₋, 1:86:12₋,

1:86:24₋, 1:88:8₋, 1:88:16₋, 1:89:4₋, 1:89:12₋, 1:89:21₋, 1:90:2₋, 1:90:7₋, 1:90:13₋, 1:91:2₋, 1:91:19₋, 1:92:1₋, 1:92:5₋, 1:93:9₋, 1:93:24₋, 1:94:7₋, 1:96:2₋, 1:96:6₋, 1:96:9₋, 1:96:13₋, 1:96:20₋, 1:96:24₋, 1:97:3₋, 1:97:7₋, 1:98:1₋, 1:98:6₋, 1:98:8₋, 1:98:14₋, 1:99:18₋, 1:100:4 ₋, 1:100:16₋, 1:100:19₋, 1:101:1₋, 1:101:8₋, 1:101:20 ₋, 1:101:24₋, 1:102:1₋, 1:102:17₋, 1:102:20₋, 1:102:22₋, 1:103:3₋, 1:103:5 ₋, 1:103:17₋, 1:103:25₋, 1:104:5₋, 1:107:7₋, 1:116:6 ₋, 1:117:18₋, 1:118:6₋, 1:118:16₋, 1:118:24₋, 1:119:1₋, 1:119:10₋, 1:119:20₋, 1:120:2₋, 1:120:20₋, 1:121:3₋, 1:121:5 ₋, 1:123:19₋, 1:125:11₋, 1:126:9₋, 1:126:14₋, 1:127:5 ₋, 1:127:14₋, 1:127:18₋, 1:128:8₋, 1:128:11₋, 1:128:13₋, 1:128:19₋, 1:128:25₋, 1:129:3₋, 1:129:20₋, 1:130:2₋, 1:130:7 ₋, 1:130:10₋, 1:130:19₋, 1:138:25, 1:139:8₋, 1:139:10 ₋, 1:139:22₋, 1:139:24₋, 1:141:2₋, 1:141:8₋, 1:141:20 ₋, 1:142:7₋, 1:142:12₋, 1:142:17₋, 1:143:3₋, 1:143:8 ₋, 1:145:16₋, 1:146:6₋, 1:146:8₋, 1:146:24₋, 1:147:2 ₋, 1:147:13₋, 1:147:24₋, 1:148:23₋, 1:149:2₋, 1:149:6 ₋, 1:149:10₋, 1:149:24₋, 1:150:1₋, 1:150:8₋, 1:150:17 ₋, 1:150:22₋, 1:151:2₋, 1:151:17₋, 1:151:19₋, 1:151:22₋, 1:152:1₋, 1:152:3 ₋, 1:152:7₋, 1:152:18₋, 1:153:6₋, 1:153:16₋, 1:156:3 ₋, 1:163:4₋, 1:164:15₋, 1:164:25

Woodward [70]₋ - 1:3:21 ₋, 1:6:2₋, 1:6:20₋, 1:7:8₋, 1:22:11₋, 1:22:14₋, 1:24:22 ₋, 1:28:14₋, 1:28:19₋, 1:32:15₋, 1:39:23₋, 1:41:10 ₋, 1:42:12₋, 1:42:22₋, 1:43:5 ₋, 1:46:22₋, 1:47:11₋, 1:47:14₋, 1:48:25₋, 1:49:10 ₋, 1:49:16₋, 1:50:1₋, 1:51:3₋, 1:51:5₋, 1:51:25₋, 1:52:8₋, 1:58:3₋, 1:58:12₋, 1:58:17₋, 1:58:21₋, 1:59:2₋, 1:59:21₋,

1:60:2₋, 1:60:3₋, 1:61:11₋, 1:61:19₋, 1:65:9₋, 1:66:3₋, 1:67:20₋, 1:72:12₋, 1:72:20 ₋, 1:73:22₋, 1:78:6₋, 1:78:8₋, 1:79:8₋, 1:80:12₋, 1:80:17₋, 1:86:23₋, 1:87:8₋, 1:87:23₋, 1:88:6₋, 1:89:1₋, 1:89:2₋, 1:92:9₋, 1:92:16₋, 1:92:23₋, 1:103:14₋, 1:103:16₋, 1:104:7₋, 1:107:3₋, 1:115:2 ₋, 1:116:4₋, 1:123:16₋, 1:138:24₋, 1:143:21₋, 1:145:12₋, 1:145:14₋, 1:153:24₋, 1:163:2

Woodward's [14]₋ - 1:48:13₋, 1:48:23₋, 1:57:3₋, 1:57:25₋, 1:58:22₋, 1:60:19 ₋, 1:60:21₋, 1:61:3₋, 1:61:25 ₋, 1:92:13₋, 1:92:18₋, 1:93:1 ₋, 1:93:4₋, 1:134:19

word [11]₋ - 1:11:19₋, 1:11:20₋, 1:22:4₋, 1:41:21₋, 1:89:24₋, 1:131:3₋, 1:133:21 ₋, 1:133:22₋, 1:136:7₋, 1:138:20₋, 1:164:24

wording [1]₋ - 1:141:1

words [7]₋ - 1:16:5₋, 1:26:7₋, 1:35:12₋, 1:36:10₋, 1:41:16₋, 1:54:24₋, 1:66:10

wrap [2]₋ - 1:75:11₋, 1:163:3

wraps [1]₋ - 1:76:16

wrinkle [1]₋ - 1:80:14

writes [1]₋ - 1:59:20

writing [1]₋ - 1:42:4

written [2]₋ - 1:59:1₋, 1:161:25

wrote [2]₋ - 1:58:3₋, 1:73:6

## Y

Yates [2]₋ - 1:140:13₋, 1:140:16

year [3]₋ - 1:6:9₋, 1:164:1

years [1]₋ - 1:54:23

yesterday [2]₋ - 1:14:3₋, 1:122:25

## Z

zealous [1]₋ - 1:35:17

zero [1]₋ - 1:62:9

Zoom [1]₋ - 1:55:1