UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

## PRESIDENT DONALD J. TRUMP'S MOTION TO STRIKE AND REQUEST FOR SANCTIONS BASED ON THE SPECIAL COUNSEL'S MAY 24, 2024 MOTION

President Donald J. Trump respectfully submits this procedural opposition to the May 24, 2024 filing by the Special Counsel's Office, which improperly asks the Court to impose an unconstitutional gag order on President Trump, as a condition of his pretrial release, based on vague and unsupported assertions about threats to law enforcement personnel whose names have been redacted from public filings and whose identities are already subject to a protective order. *See* ECF No. 581 (the "Motion").[1]  For the reasons set forth below, in light of the Office's blatant violation of Local Rule 88.9 and related warnings from the Court, the Court should strike the Motion, make civil contempt findings as to all government attorneys who participated in the decision to file the Motion without meaningful conferral, and impose sanctions after holding an evidentiary hearing regarding the purpose and intent behind the Office's decision to willfully disregard required procedures.

---

[1] On May 26, 2024, we notified the Special Counsel's Office via email that we planned to file this application.  The Office responded that they oppose the relief we are seeking.  We reserve the right to oppose the Motion on substantive grounds, after the Motion is filed in a procedurally appropriate fashion following meaningful conferral with defense counsel.

Following a string of procedural abuses and misrepresentations over the course of many months, at a May 22, 2024 hearing on pending pretrial motions, the Court admonished the Special Counsel's Office to "just calm down." Far from it, the Office contacted defense counsel about filing the Motion at 5:30 p.m. on Friday evening before Memorial Day Weekend, as President Trump and counsel prepared to deliver the defense summation in *People v. Trump* on the morning of Tuesday, May 28. We responded immediately. But the Office declined our request to discuss the Motion on Monday, May 27, so that we could meet with our client beforehand, and the Office did not specifically identify any of the evidence cited in the Motion until about 15 minutes before filing. As with prior filings by the Office, the Motion fails to identify any direct evidence of the purported safety risks they claim exist. The Office did not even dare seek emergency relief in the filing, as no such relief is warranted. Thus, there was no basis for rushing to file the Motion on Friday night. This is bad-faith behavior, plain and simple.

The misconduct by the Special Counsel's Office is even more worthy of sanctions in light of the context. The Motion is an extraordinary, unprecedented, and unconstitutional censorship application. The Motion unjustly targets President Trump's campaign speech while he is the leading candidate for the presidency. The Motion also treads new—extremely problematic—ground as a requested prior restraint that is different in kind from the unconstitutional gag orders that prosecutors have sought in New York and Washington, D.C. Specifically, the Office seeks to condition President Trump's liberty on his conformance with the views of Jack Smith and Smith's associates about what constitutes appropriate argument based on the record in this case, and to require the Probation Office and the Court to mediate disputes against a backdrop of potentially imprisoning a political opponent who is successfully defeating Smith's boss and preferred candidate.

For purposes of this application, that all matters because there can be no reasonable dispute that the issues raised in the Motion are, to put it mildly, complex. Pursuant to the Local Rules, the Special Counsel's Office was required to meaningfully confer with us regarding those issues prior to filing the Motion. They did not. Instead, they persisted with a troubling pattern of pursuing media coverage rather than justice. Such an approach, by prosecutors sworn to uphold the law, should have no place in Your Honor's courtroom. Such an approach requires consequences to ensure fundamental fairness. And that is what we are seeking here.

## BACKGROUND

### I. The Refusal To Meet And Confer

At 5:30 p.m. on Friday, May 24, 2024, the Special Counsel's Office emailed defense counsel stating that they intended to file the Motion. Ex. 1 at 5-6. At the conclusion of the email, Jay Bratt asserted: "We plan to file the motion later this evening. If you would like to discuss further, please let us know." *Id.* at 6.

Ten minutes later, at approximately 5:40 p.m., defense counsel notified the Special Counsel's Office that we objected to the timing of the request and the filing of the motion. Ex. 1 at 5. We noted the suspicious timing of the communication, the Court's prior warnings regarding the need for meaningful conferral, and the fact that there was no basis for the Office's suggestion that anyone faced imminent danger. *Id.* We notified the Office that we were "available to meet and confer on Monday afternoon," which would allow "time to meet with our client and discuss whatever position we believe appropriate." *Id.*

The Special Counsel's Office responded approximately one hour later, at 6:43 p.m., and referred to conferral as a "fruitless exercise." Ex. 1 at 4-5. Bratt made vague reference to alleged statements by President Trump on May 21, May 23, and May 24, and suggested that filing the

motion after business hours on the Friday of a holiday weekend would somehow "mitigate" the completely unsubstantiated "dangers" the Office contends exist. *Id.*

At 6:55 p.m., defense counsel notified the Special Counsel's Office that we viewed the Office as having "completely failed to meet and confer." Ex. 1 at 3-4. We pointed out that the Office still had not specifically identified the alleged statements that caused them concern. *Id.* at 4. We added, accurately, that "the Local Rule requires you to do more than just inform us that something was said and that, based on that statement and prior positions of our client, you assume we would oppose." *Id.* Finally, concerned that the Office planned to file the Motion despite the Local Rules, we asked the Office to include a detailed statement regarding President Trump's position:

> Please include the following position from us in your motion: "At 5:30 p.m. on Friday evening, the Special Counsel informed us that they were seeking to modify President Trump's bail conditions based on as-yet-unidentified statements purportedly made by President Trump on Truth Social and in fundraising emails. They indicated that they were filing the motion tonight, without informing us of the statement(s) that they claim give rise to the relief sought, and without allowing defense to respond as required under Local Rules. Defense counsel has had no opportunity to confer with the Special Counsel's Office, nor have we had an opportunity to confer with our client, about the requested relief. Defense counsel indicated its availability over a holiday weekend on Monday, a holiday. The Special Counsel refused this good faith effort. This is a blatant violation of SDFL Local Rules and the prior orders of this Court. We oppose this motion being filed in this format and ask that it be summarily dismissed because of a lack of effort to meaningfully meet and confer."

*Id.*

In response, the Special Counsel's Office demeaned counsel and mocked the assertion that the Office should specifically identify the statements that served as the basis for the motion. *See* Ex. 1 at 3. In Bratt's view, it was incumbent on the defense to "discern" the social media posts and "campaign emails" that the Office would rely upon to seek unconstitutional restrictions on President Trump's First Amendment rights. *Id.* Bratt "[n]evertheless" attached the

-4-

communications to his 7:45 p.m. email. *Id.* He also informed the defense that he would not include our position in the Office's filing, but claimed that he would "fairly summarize" it. *Id.*

The Special Counsel's Office filed the Motion 15 minutes later. The Office failed to note that they first contacted the defense about the Motion at 5:30 p.m. and that they declined our invitation to discuss the issue on Memorial Day. *See* Mot. at 1 n.1. Despite attaching certain alleged statements to the 7:45 p.m. email, Bratt did not even attempt to confer regarding Exhibit 4 to the Motion, which we learned of for the first time after the Motion was filed.

### II. Previous Disregard Of Procedural Rules By The Special Counsel's Office

On July 18, 2023, the Court denied without prejudice a motion by the Special Counsel's Office "for lack of meaningful conferral." ECF No. 82; *see also* 7/18/2023 Tr. 13 ("THE COURT: All right. So you tried to confer on a Friday before filing on a Monday something that is presumably quite important. That seems a bit rushed.").

On November 3, 2023, the Court warned the Special Counsel's Office regarding a purported "Notice" filing. *See* ECF Nos. 203, 206. The Court noted that "[f]uture non-compliant notices or unauthorized filings will be stricken without further notice." ECF No. 206.

In addition to ongoing misrepresentations regarding the status and timing of discovery, *see, e.g.*, ECF No. 237 at 2-3 (summarizing the problems), the Special Counsel's Office has repeatedly made meritless arguments seeking sealing and *ex parte* proceedings, *see, e.g.*, ECF No. 41[2]; ECF

---

[2] "The Government's Motion does not explain why filing the list with the Court is necessary; it does not offer a particularized basis to justify sealing the list from public view; it does not explain why partial sealing, redaction, or means other than sealing are unavailable or unsatisfactory; and it does not specify the duration of any proposed seal. *See* S.D. Fla. L.R. 5.4(a), (c)(1)." ECF No. 41.

Nos. 228, 231; ECF No. 299[3]; ECF No. 440.[4]  The Court warned the Office about making "sweeping" and unsupported claims, and failing to substantiate their assertions concerning, among other things, witness safety.  ECF No. 438 at 18 (rejecting, in part, the Office's "broad-based" and "sweeping" requests to seal the substance of all Jencks Act material); *see also* 3/1/2024 Tr. at 138 ("So I was unable to find any cases that say that by virtue of being Jencks material – even if made part of a pretrial motion – it then warrants redaction.").

Last month, the Court found that the Office had "failed to offer a governing legal framework or any factual support for the relief sought" in connection with sealing requests relating to Defendants' motions to compel discovery.  ECF No. 438 at 8.[5]  "[I]nstead, it contained only conclusory and unsubstantiated assertions about witness safety, the integrity of the proceedings, and privacy interests." *Id.*  The Court also warned the Office about giving short shrift to the First Amendment where they "failed to engage with—let alone refute—the Press Coalition's argument that the First Amendment attached to the subject materials." *Id.*

The Special Counsel is not campaigning for any office, so far as we are aware, but his prosecutors have pandered to the media in public filings.  This has included gratuitous and prejudicial language in the Superseding Indictment, which Bratt recently admitted was presented based on Federal Rule of Evidence 404(b) despite its disputed admissibility.  *See* 5/22/2024 Tr.

---

[3] "Upon in camera review of the subject attachment, and mindful of the disfavored nature of ex parte proceedings, the Court reaffirms the Special Counsel's request to seal the attachment referenced in the Special Counsel's Motion for Leave [289] but finds an insufficient basis provided to deviate from the adversarial process in this instance."  ECF No. 299.

[4] "[T]he Court finds the Special Counsel's sweeping request and generalized rationales inadequate to overcome the public's common-law interest in access to these materials."  ECF No. 440.

[5] *Accord* ECF No. 283 at 6 ("Although substantiated witness safety and intimidation concerns can form a valid basis for overriding the strong presumption in favor of public access, the Special Counsel's sparse and undifferentiated Response fails to provide the Court with the necessary factual basis to justify sealing.").

160 ("THE COURT: That's not generally the format and purpose of an indictment."). The Office has also included lengthy explications of purported facts in public filings, "to set the record straight," "before turning to those arguments" from the defense that are actually being litigated before Your Honor. ECF No. 470 at 1. Attorney General Garland behaved in a similar fashion through extrajudicial statements in a January 2024 interview, arguing that a "speedy trial" was necessary while the Court was evaluating whether scheduling modifications were needed in response to the Office's discovery failures and related misrepresentations. *See* ECF No. 300 at 5. These tactics have also included a public filing threatening Your Honor with frivolous mandamus litigation and a lawless interlocutory appeal concerning hypothetical jury instructions. *See* ECF No. 428 at 2. The import of this behavior was plainly not lost on Your Honor, and the Court appropriately described the Office's contentions as "unprecedented and unjust." ECF No. 431 at 2.

On May 19, 2024, the Court "deem[ed] it necessary to express concern over the Special Counsel's treatment of certain sealed materials in this case." ECF No. 552 at 4. The Court's concerns included the Office's argument that some unsealing was appropriate "in order to publicly and transparently refute defense allegations of prosecutorial misconduct," but other sealing of similar materials was necessary to "simultaneously preserv[e] the witness-safety and Rule 6(e) concerns [the Office] has repeatedly told the Court, and maintains to this day, are of serious consequence . . . ." *Id.* at 4-5. The Court noted that it was "disappointed" with the Office's failure to seek sealing in a manner that could "be applied consistently and fairly upon a sufficient factual and legal showing," and instructed that the parties "should not make requests that undermine any prior representations or positions." *Id.* at 5.

Finally, just last week, in response to a troubling show of tone and demeanor at a hearing in Your Honor's courtroom, the Court admonished David Harbach to "just calm down." 5/22/2024 Tr. 55.

## APPLICABLE LAW

Local Rule 88.9(a) requires that "at the time of filing motions in criminal cases, counsel for the moving party shall file with the Clerk of the Court a statement certifying either: (1) that counsel have conferred in a good faith effort to resolve the issues raised in the motion and have been unable to do so; or (2) that counsel for the moving party has made reasonable effort (which shall be identified with specificity in the statement) to confer with the opposing party but has been unable to do so." S.D. Fla. L.R. 88.9(a)  Although this rule supersedes Local Rule 7.1(a)(3), both have similar language and a singular purpose, namely, the imposition of a specific and good faith conferral requirement prior to the filing of a motion in the Southern District.  "Sending an email . . . and then filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1299 n.2 (S.D. Fla. 2010); *see also Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 2008 WL 5427785, at *1 (S.D. Fla. 2008) ("Simply sending a letter without further follow-up does not constitute the type of effort to engage in a pre-filing conference anticipated by Local Rule 7.1").

The conferral requirement "is an integral part of our cooperative adversarial system and promotes efficient use of both the Court and the parties' time and resources." *KingdomWorks Studios, LLC v. Kingdom Studios, LLC*, 2020 WL 12182261, at *2 (S.D. Fla. 2020). Motions are appropriately denied for failure to abide by these requirements.  *See, e.g., United States v. Ubieta*, 2016 WL 8715673, at *1 (S.D. Fla. 2016); *see also United States v. Philippe*, 2017 WL 1035518,

at *9 (S.D. Fla. 2017) (denying motion *in limine* where government failed to confer with defense counsel).

Although Local Rule 88.9 is silent on sanctions, Local Rule 7.1(a)(3) indicates sanctions are appropriate for failure to confer with counsel. In this regard, the Rule provides as follows:

> Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

This same rationale should apply with equal force under Local Rule 88.9. Moreover, under Rule 4-3.4(c) of Florida's Rules of Professional Conduct, lawyers may not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 5.2 of Florida's Standards for Imposing Lawyer Sanctions notes that, "[a]bsent aggravating or mitigating circumstances, and on application of the factors to be considered in imposing sanctions," a host of sanctions may be "generally appropriate in cases involving public officials who engage in conduct that is prejudicial to the administration of justice . . . ."

Separately, "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also United States v. Barnette*, 129 F.3d 1179, 1182 n.7 (11th Cir. 1997) ("The ability to issue civil contempt orders is an inherent power of the courts.").

## **DISCUSSION**

The Special Counsel's Office violated the Local Rules by filing the Motion. The Court has warned the Office about this issue specifically, and more generally about a pattern of unprofessional conduct in this case. In order to deter such behavior as the case proceeds, the Court should strike the Motion, make civil contempt findings as to all government attorneys who

participated in the decision to file the Motion without meaningful conferral, and impose sanctions following an evidentiary hearing relating to the Office's motives and purpose in filing the Motion when they did. *See United States v. Spellissy*, 2009 WL 2421852, at *2 (M.D. Fla. 2009) (reasoning that "the Court must exercise its discretion to curb the improper tactics"), *aff'd*, 374 F. App'x 898, 900 (11th Cir. 2010).

Under no circumstances can an email exchange initiated at 5:30 p.m. on a Friday evening constitute the type of conferral required by Local Rule 88.9. For President Trump, the fact that the Special Counsel's Office initiated the exchange on the Friday preceding a holiday weekend is less important than the fact that the Office—well aware of the proceedings in *People v. Trump*—took these steps when President Trump's defense summation is scheduled to begin on the morning of May 28. Despite that schedule, defense counsel offered to consult President Trump over the weekend and to discuss the Motion with Bratt and Harbach on Memorial Day. The Office barely acknowledged the request.

The failure to meaningfully confer is even more troubling in light of the fact that the parties were assembled before the Court on Wednesday, May 22, 2024. The Special Counsel's Office cites in the motion a May 21, 2024 social media post by President Trump. Mot. Ex. 1. If the Office truly believed that President Trump's constitutionally protected speech posed the type of threat that they claim in the Motion, then they should have discussed the issue with counsel in person rather than raising it via email on a Friday evening two days later.

This timing is not justified by exigent circumstances following the May 22 hearing. Consistent with prior inaccurate claims, the Special Counsel's Office has failed entirely to substantiate the argument that President Trump's campaign speech "pose[d] a significant, imminent, and foreseeable danger to law enforcement agents participating in the investigation and

prosecution of this case." Mot. at 1. As we have noted throughout, President Trump and the defense team have great respect for law enforcement agents who do their jobs with integrity. We have not, and will not, stand in the way of credible assertions about the potential for safety risks to such individuals.[6] On the other hand, we will not acquiesce in unsupported histrionics from biased and reckless prosecutors who have shown no respect for the First Amendment, other constitutional protections, the Local Rules, and the Court's orders.

The Court is well aware of the prosecutors' failures in this regard because an extraordinary amount of attention has been devoted to arguments by the Special Counsel's Office regarding the need for sealing to protect witness safety. Pursuant to the Court's May 9, 2024 Order, ECF No. 539, between May 14 and May 16, 2024, defense counsel conferred extensively regarding redactions to President Trump's pretrial motions, including his suppression motion. That process resulted in the consented-to redaction of identifying information relating to potential witnesses, including agents who participated in the August 2022 raid at Mar-a-Lago. We invited the Office to propose other redactions that they believed necessary or appropriate. At no time did the prosecutors seek redactions relating to use-of-force information in the Operations Order concerning the search, or the discussion of that Order in our motion papers. To our knowledge, the unsealing of these materials did not result in credible safety risks to anyone.

The Special Counsel's Office presented no actual evidence of safety risks in the Motion, either. Especially after the Office's complete failure to substantiate safety claims in connection with sealing applications, their failure to submit an affidavit supporting the arguments is troubling

---

[6] *See* 3/1/24 Tr. 152 ("We're not going to blindly adopt their reasoning. We're not going to join in a submission to seal things from the Court that the Press Coalition then comes in and says President Trump wants to hide these things too. Because that's just not the case. If they can justify it, great. We're not here to cause harm, as I said.").

-11-

and worthy of adverse consequences. There was no basis for the Office to suggest that some sort of emerging risk required filing the Motion just after 8:00 p.m. on Friday rather than speaking with defense counsel on Monday. No one who signed the Motion could reasonably have expected the Court or its staff to act on the application before business hours resume on Tuesday. Nor could Smith himself. Rather, the Office plainly filed the Motion in pursuit of some other objective, which has not yet been identified but must be determined in order to craft appropriate sanctions for this most recent violation of the Local Rules.

For example, the Motion is not styled as an emergency application pursuant to Local Rule 7.1(d). As a result, Smith and his team could not possibly have expected the Court to act on the Motion over the weekend. Moreover, there is no indication in the Motion that the Office discussed the application with the Probation Office, which would be required to help enforce the patently unconstitutional modification the Office is seeking. In addition, the Bail Reform Act does not contemplate such a modification absent a hearing, *see* 18 U.S.C. § 3141(f), and not even Smith and his team dared suggest that the Court convene the parties on Memorial Day weekend to address it. Indeed, the Local Rules and basic professional norms contemplate that President Trump would be afforded a reasonable amount of time to respond to the Motion in writing. Despite their strained and inaccurate claims regarding urgency, the Office did not seek an expedited briefing schedule based on their purportedly exigent safety concerns. All of this is to say: the timing of the Motion reflects bad-faith behavior by everyone who was associated with filing it.

Finally, while we do not here address the merits of the Motion, a few preliminary points are in order. One of the senior officials who authorized the raid at Mar-a-Lago said he "frankly doesn't give a damn about the optics." ECF No. 566 at 2. But now the Special Counsel's Office seems to care about those optics very much. The Motion quotes liberally from the D.C. Circuit's

review of a separate unconstitutional gag order in the District of Columbia, but fails to address one of that court's key points: "Working in the criminal justice sphere fairly requires some thick skin." *United States v. Trump*, 88 F.4th 990, 1027 (D.C. Cir. 2023).

That Smith is, once again, attacking President Trump's protected campaign speech is conclusively established by the fact that the Special Counsel's Office attached a campaign email to the Motion. Once disfavored, but now in vogue for prosecutors driven by political animus against President Trump, gag orders reflect an extremely serious threat to our constitutional traditions—especially when they are applied to political candidates. The Motion goes one step further, however, in seeking to condition President Trump's liberty on his compliance with the views of Smith, Bratt, Harbach, and the other self-appointed Thought Police regarding what constitutes fair argument to the American people by the leading candidate in the 2024 presidential application. In that regard, the Motion is an unprecedented application, and the abuses that it reflects are manifest. If and when there is an appropriate time, we will forcefully address the Motion on the merits.

However, the point of this application is that the Motion should not have been filed on Friday night. The decision by the Special Counsel's Office to do so, when it did so, cannot be explained in a manner that is consistent with the need for prosecutorial ethics and public confidence in these proceedings. In order to craft appropriate sanctions, the Court should conduct an evidentiary hearing to determine why the Office chose this wrongful path. In addition, the bias and animus that are evident from the Office's recent course of action are relevant to the pending motions to dismiss based on selective and vindictive prosecution as well as prosecutorial misconduct. *See United States v. Armstrong*, 517 U.S. 456, 468 (1996) (reasoning that selective-prosecution discovery includes all evidence in the government's "own files" that "might

corroborate . . . the defendant's claim"). For that reason, too, the Court should make evidentiary determinations regarding the Office's intent in connection with the prosecutors' continued disregard of the Local Rules and the Court's prior warnings.

## CONCLUSION

For the reasons stated herein, the Court should strike the Motion, make civil contempt findings as to all government attorneys who participated in the decision to file the Motion without meaningful conferral, and impose sanctions after holding an evidentiary hearing regarding the purpose and intent behind the Office's decision to willfully disregard required procedures.

Dated: May 27, 2024

Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250


*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF CONFERRAL

Counsel for President Trump conferred in good faith with the Special Counsel's Office via email on May 26, 2024, to resolve the issues raised in this Motion and has been unable to do so. The Office opposes the relief sought in this Motion.

*/s/ Christopher M. Kise*
Christopher M. Kise

## CERTIFICATE OF SERVICE

I, Christopher M. Kise, certify that on May 27, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Christopher M. Kise*
Christopher M. Kise