# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DONALD J. TRUMP, et al.,

*Defendants.*

## AFFIDAVIT OF HILDA TOBIAS KENNEDY'S STATEMENT OF INTEREST IN THE CASE IN SUPPORT OF DONALD TRUMP [ECF 326] TO MOTION TO DISMISS.

I, Hilda Tobias Kennedy, state that I am 93 years old; legally blind; My husband was kidnapped and soon adjuicated[1], which caused my entire nuclear family suffered a great deal of stress due to it, including PTSD due to the cruelty of it; And in 2013, a 14,000-pound bus (jitney) crushed me in Atlantic City and caused me horrific disfigurments, pain, and cost a million dollars over time. The judge allowed the defendant to ask me 22 times the distance between when I got off the jitney to the curb. I am legally blind and could not do it. The defendant presented no case, and the driver died. The judge gave a directed verdict against me. My attorney failed to defend me for my disabilities and did not protect me or my rights or preserve my rights on appeal, causing me suffering[2]. Because of the problems I have had, my family has almost become homeless and has suffered economically loss and much pain and suffering since.

Because the above I have become a more inspired advocate for fairness than ever before, as Martin Luther King has also inspired me; *"injustice somewhere is a threat to justoce everywhere"*. This is why I apply my amici request here for government funds misused, which must be stopped.

This amicus motion is privately funded: An amicus brief [motion] is most impactful when it is not funded or authored by a party or a party's counsel. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). But of course, "by the nature of things an amicus is not normally impartial . . . there is no rule that amici must be totally disinterested." *Tafas*, 511 F. Supp. 2d at 661 (cleaned up).

It is respectfully submitted under the penalty of Perjury.

HILDA TOBIAS KENNEDY 5.28.2024

---

[1] Northern District of Texas District 3:23-cv-02603-N-BT (active)
2 New Jersey, Law Division, Atlantic County: ATL- L-1167-15; APPELLATE DIVISION DOCKET NO. A-0845-17T4
Atl-L-3744-21 (active); And NJ District Court: 22-05797-KMW-MJS (active)

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON-REINHART**

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DONALD J. TRUMP, et al.,

*Defendants.*

**AFFIDAVIT OF JESSICA NAN BERK STATEMENT OF INTEREST IN SUPPORT
OF DONALD TRUMP [ECF 326] TO MOTION TO DISMISS.**

I, Jessica Nan Berk, am a disabled, indigent, pro se, and I state that my family has survived the Holocost to come to this courty for justice for all.

I have interaction with an Arthur Schwartz of *Advocates for Justice*, who is a crucial fundraiser for several prominent Democratic political offices, including the District Attorney for the New York City and the Attorney General of the State of New York.

I have explained to the New York District Attorney, the New York Attorney General, the F.B.I., and the United States District Attorney that Mr. Schwartz wields political power and uses it to conduct illegal activity, such as creating false wills by the fraud of an older woman, like as my mother after he gained our trust. I have suffered economical loss because no one has replied and resolved the matter:

I'm sharing a copy of my mother's will and Mr. Schwartz's irrevocable trust after he was appointed my mother's guardian to prove that my claims are more eaily proven and severe than those against the Defendant in the case, given the similar past cases. My case is more eaily proven yet the state chooses to overlook my needs, negligently use public funds. This makes my interest in this case a matter of public interest.

It is respectfully submitted under the penalty of Perjury.

JESSICA NAN BERK 3.25.2024

**CERTIFICATE OF SERVICE**

I, Hilda Tobias Kennedy, hereby certify that on this 28th day of March, 2024, I mailed a

true and correct copy of the foregoing counsel of record in this matter by first class mail. Under

penalty of Perjury.

Christopher Michael Kise
Chris Kise & Associates, P.A.
201 East Park Avenue
Ste 5th Floor
Tallahassee, FL 32301
850-270-0566
Email: chris@ckise.net

Michael Thakur
US Attorney's Office, Southern District of Florida
99 N.E. 4th St
Miami, FL 33132

Hilda Tobias Kennedy 5.28.2024

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DONALD J. TRUMP, et al.,

*Defendants.*

**ORDER GRANTING MOTION FOR LEAVE TO PRESENT ORAL ARGUMENTS BY JESSICA NAN BERK AND HILDA TOBIAS KENNEDY AS *AMICI* IN SUPPORT OF DEFENDANT PRESIDENT TRUMP'S MOTION TO DISMISS [ECF 326] PURSUANT TO THE COURT ORDER: *"Any Amici wishing to present oral argument during this ring must seek leave of Court to do so no later than June 3, 2024."* WITH Americans With Disabilies REASONABLE REQUEST**

THIS CAUSE having come before the Court on the Motion for Leave present Oral Arguments by Jessica Nan Berk and Hilda Tobias Kenendy as *Amici Curiae* in Support of Defendant President Trump's Motion to Dismiss [E.C.F. No. 326] (the "Motion"), it is hereby:

ORDERED AND ADJUDGED that:

The Motion is GRANTED.  The oral arguments by Jessica Nan Berk and Hilda Tobias Kenendy as *Amici Curiae* in Support of Defendant President Trump's Motion to Dismiss is ordered to be filed.

DONE AND ORDERED in Chambers at _____, Florida, this day of _____, 2024.

_____

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

               *Plaintiff,*

    v.

DONALD J. TRUMP, et al.,

               *Defendants.*

---

**MOTION FOR LEAVE TO PRESENT ORAL ARGUMENTS BY JESSICA NAN BERK AND HILDA TOBIAS KENNEDY AS *AMICI* IN SUPPORT OF DEFENDANT PRESIDENT TRUMP'S MOTION TO DISMISS [ECF 326] PURSUANT TO THE COURT ORDER: *"Any Amici wishing to present oral argument during this ring must seek leave of Court to do so no later than June 3, 2024."* WITH Americans With Disabilities REASONABLE REQUEST**

Jessica Nan Berk, and Hilda Tobias Kennedy, disabled, *pro se*, indigent, private citizens, elderly, respectfully submit this informal motion for leave to present oral arguments as *amici* in support of President Trump's Motion to Dismiss the Indictment Based on the Unlawful Appointment and Funding of Special Counsel Jack Smith and submit an alternative resolution [E.C.F. No. 326] pursuant to THE COURT ORDER: *"Any Amici wishing to present oral argument during this ring must seek leave of Court to do so no later than June 3, 2024."*:

Amicus briefs [MOTIONS] filed in district court should adhere to the same requirements as those applicable in the Court of Appeals. *See* Fed. R. App. P. 29; *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136-37 (D.D.C. 2008). Unless the amicus is the government or its agency, the amicus must file with consent or court permission. Fed. R. App. P. 29(a)(2).

The motion must be accompanied by the proposed amicus brief [if required], and a statement of the movant's interest [AFFIDAVITS ATTACHED] and how the brief [ORAL ARGUMENT] will assist the Court. *Id.* R. 29(a)(3)(A)-(B). An amicus brief should be filed as promptly as possible to avoid prejudicing the parties [by June 2, 2024]. *Tafas v. Dudas*, 511 F. Supp. 2d 652, 660 (E.D. Va. 2007).

The affidavits attached are our statement(s)of interest for filing this motion.

We have the knowledge and experience the Court may find helpful.

We would want the Court to respectfully see that the funding the state has used, legal or not, to prosecute the Defendant is disproportional to the acts for which others in his same category and class have gone unpunished for the same crime as explained by the Defendant fillings without the semantics by the opposition.

Furthermore, our interest is in the misuse of government funds that do not support the people's interest of justice but is more political in nature. In contrast, funding is greatly needed for crimes against seniors and the disabled, veterans, the elderly, abused children/adults, etc, and the Department of Justice is grossly failing to use the people's money where it matters and should not be condoned for pursuing such a costly and dragged out litigation that could be quickly resolved cheaply [A fine and community service] but for the fact that the Department of Justice is operating in a manner that is prejudicial to the interest of the people in seeking to imprison former President Trump <u>only</u> for the period of the election cycle since it has no money to continue after this year. "*Justice Department projects a large drop in special counsel spending. President Joe Biden's budget proposal estimates that expenditures for special prosecutors will drip from 29 million this fiscal year (2023) to 4 million the next.*" By **JOSH GERSTEIN** and **KYLE CHENEY** 03/11/2024 03:49 PM EDT Updated: 03/11/2024 07:05 PM EDT, Politico

Hilda Tobias Kennedy and me, Jessica Nan Berk, are not only renowned activists for progressive issues and disabled rights, but we are victims of discrimination as a disabled person, as you can see in Exhibits/Affidavits "A" and "B" in support of the statement of interest.

We can not, in good conscience, see such a waste of money and miscarriage of justice go without words spoken, as we have suffered so greatly from our miscarriage of justice ourselves.

Under Rule 1 of this Court the parties are not meeting its objective. *Scope and Purpose: These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in <u>Rule 81</u>. They should be construed, administered, and employed by the Court and the parties to secure the just, speedy, and <u>inexpensive determination</u> of every action and proceeding.* The parties herein are not being subjected to this rule by the Court.

We would also like to urge Congress to make some common sense legislation to stop this continued violation of removing sensitive documents without some kind of order, putting us all at risk.

## <u>LEGAl MEMORANlUM</u>

## A.  MEANING AND HISTORY OF  AMICI

An amicus curiae [amici] (lit. 'friend of the court'; pl. amici curiae) is an  individual or organization that is not a party to a legal case, but that is permitted to assist a <u>court</u> by offering information, expertise or insight that has a bearing on the issues in the case.  Whether an amicus brief [oral arument] will be considered is typically under the Court's discretion. The phrase is legal Latin and the origin of the term has been dated to 1605–1615. The scope of amici curiae is generally found in the cases where broad public interests are involved and concerns regarding civil rights are in question.

In American law, an amicus curiae typically refers to what in some other jurisdictions is known as an intervenor: a person or organization who requests to provide legal submissions so as to offer a relevant alternative or additional perspective regarding the matters in dispute. In the American courts, the amicus may be referred to as an amicus brief. In other jurisdictions, such as <u>Canada</u>, an amicus curiae is a <u>lawyer</u> who is asked by the Court to provide legal submissions regarding issues that would otherwise not be aired properly, often because one or both of the parties is not represented by counsel. *Wikipedia.*

Amici curiae [Amici] have been successful in helping to persuade the Court in a number of recent high-profile civil rights matters. *See, e.g., California v. Azar*, No. 19-cv-01184-EMC, 2019 WL 1877392, at *2 (N.D. Cal. April 26, 2019) (medical providers' information for pregnant patients); *Regents of the Univ. of Cal.*, 279 F. Supp. 3d at 1046 (DACA's impact on the tech sector); *Duronslet v. Cty. of L.A.*, 266 F. Supp. 3d 1213 (C.D. Cal. 2017) (whether heightened scrutiny applied to transgender minor's claim regarding restroom access).

And amicus participation is not limited to civil rights cases. Amici have weighed in on thousands of district court cases with the potential to affect all manner of government and business interests. *See, e.g.*, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 593 (S.D.N.Y. 2018) (copyright); *Ohio Valley Envtl. Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 32 (S.D.W. Va. 2015) (environment); *In re BRCA1-, BRCA2-Based Hereditary Cancer Test Patent Litig.*, 3 F. Supp. 3d 1213, 1220 (D. Utah), *aff'd and remanded*, 774 F.3d 755 (Fed. Cir. 2014) (cancer patents); *United States v. S.B.C. Commc'ns, Inc.*, 489 F. Supp. 2d 1, 8 (D.D.C. 2007) (telecommunications antitrust).

### B.  IMPORTANCE OF AMICI

When litigating high-stakes cases—even in district court—parties should consider recruiting amici, who can provide a unique perspective about the broader social and business interests at stake. A well-written amicus brief can persuade the judge to pay closer attention to how a ruling may actually affect nonparties, and as a result, may ultimately impact the outcome of the case.

Potential amici are likely to be interested in the broader impact on the law, especially when the case involves novel legal questions or pertains to an issue of public interest. Paul M. Collins, Jr., *Who Participates as Amici Curiae in the U.S. Courts of Appeals?*, 94 Judicature 128, 134 (2010). Amici may provide new perspectives and educate the Court about the broader consequences its ruling may have.

For example, a group of amici weighed in on the district court case involving the termination of the Deferred Action for Childhood Arrivals (DACA) program. *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018) (Doc. 137-3). The amici were over a hundred tech companies, including Facebook and Microsoft, whose employees and businesses would be affected if DACA were terminated. The amici argued that terminating DACA would result in substantial economic damage to their businesses and the national G.D.P. The district court granted the injunction, finding irreparable harm to "organization interests, economic output, public health, and safety." *Id.* at 1046. *Summer Associate, Kayla Bowen, co-authored.*

## C.  AMERICANS WITH DISABILIES RESONABLE REQUEST

We did not see that a brief is required per the court order but as such we are disabled and could not have one done in the time of June 2, 2024, so as a reasonable request under A.D.A. Hilda Tobias Kennedy and I, Jessica Nan Berk are only submitting our request for oral argument. In the alternative, Jessica Nan Berk and Hilda Tobias Kennedy respectfully request additional time to file a brief in support of this motion.

## CONCLUSION

This amicus motion is privately funded: An amicus brief [motion] is most impactful when it is not funded or authored by a party or a party's counsel. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). But of course, "by the nature of things an amicus is not normally impartial . . . there is no rule that amici must be totally disinterested." *Tafas*, 511 F. Supp. 2d at 661 (cleaned up).

*We respectfully submit this motion to request oral arguments in the interest of justice under FRCP RULE 1 as stated above.*

*Respectfully Submitted,*

*Jessica Nan Berk*

*Hilda Tobias Kennedy*

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON-REINHART

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DONALD J. TRUMP, et al.,

*Defendants.*

## AFFIDAVIT OF HILDA TOBIAS KENNEDY'S STATEMENT OF INTEREST IN THE CASE IN SUPPORT OF DONALD TRUMP [ECF 326] TO MOTION TO DISMISS.

I, Hilda Tobias Kennedy, state that I am 93 years old; legally blind; My husband was kidnapped and soon adjuicated[1], which caused my entire nuclear family suffered a great deal of stress due to it, including PTSD due to the cruelty of it; And in 2013, a 14,000-pound bus (jitney) crushed me in Atlantic City and caused me horrific disfigurments, pain, and cost a million dollars over time. The judge allowed the defendant to ask me 22 times the distance between when I got off the jitney to the curb. I am legally blind and could not do it. The defendant presented no case, and the driver died. The judge gave a directed verdict against me. My attorney failed to defend me for my disabilities and did not protect me or my rights or preserve my rights on appeal, causing me suffering[2]. Because of the problems I have had, my family has almost become homeless and has suffered economically loss and much pain and suffering since.

Because the above I have become a more inspired advocate for fairness than ever before, as Martin Luther King has also inspired me; *"injustice somewhere is a threat to justoce everywhere"*. This is why I apply my amici request here for government funds misused, which must be stopped.

This amicus motion is privately funded: An amicus brief [motion] is most impactful when it is not funded or authored by a party or a party's counsel. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 304 (S.D.N.Y. 2000), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001). But of course, "by the nature of things an amicus is not normally impartial . . . there is no rule that amici must be totally disinterested." *Tafas*, 511 F. Supp. 2d at 661 (cleaned up).

It is respectfully submitted under the penalty of Perjury.

HILDA TOBIAS KENNEDY 5.28.2024

---

[1] Northern District of Texas District 3:23-cv-02603-N-BT (active)

[2] New Jersey, Law Division, Atlantic County: ATL- L-1167-15; APPELLATE DIVISION DOCKET NO. A-0845-17T4 Atl-L-3744-21 (active); And NJ District Court: 22-05797-KMW-MJS (active)

# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON-REINHART**

| |
|---|
| UNITED STATES OF AMERICA, |
| *Plaintiff,* |
| v. |
| DONALD J. TRUMP, et al., |
| *Defendants.* |

**AFFIDAVIT OF JESSICA NAN BERK STATEMENT OF INTEREST IN SUPPORT
OF DONALD TRUMP [ECF 326] TO MOTION TO DISMISS.**

I, Jessica Nan Berk, am a disabled, indigent, pro se, and I state that my family has survived the Holocost to come to this courty for justice for all.

I have interaction with an Arthur Schwartz of *Advocates for Justice*, who is a crucial fundraiser for several prominent Democratic political offices, including the District Attorney for the New York City and the Attorney General of the State of New York.

I have explained to the New York District Attorney, the New York Attorney General, the F.B.I., and the United States District Attorney that Mr. Schwartz wields political power and uses it to conduct illegal activity, such as creating false wills by the fraud of an older woman, like as my mother after he gained our trust. I have suffered economical loss because no one has replied and resolved the matter:

I'm sharing a copy of my mother's will and Mr. Schwartz's irrevocable trust after he was appointed my mother's guardian to prove that my claims are more eaily proven and severe than those against the Defendant in the case, given the similar past cases. My case is more eaily proven yet the state chooses to overlook my needs, negligently use public funds. This makes my interest in this case a matter of public interest.

It is respectfully submitted under the penalty of Perjury.

JESSICA NAN BERK 3.25.2024

.

## CERTIFICATE OF SERVICE

I, Hilda Tobias Kennedy, hereby certify that on this 28th day of March, 2024, I mailed a

true and correct copy of the foregoing counsel of record in this matter by first class mail. Under

penalty of Perjury.

Christopher Michael Kise
Chris Kise & Associates, P.A.
201 East Park Avenue
Ste 5th Floor
Tallahassee, FL 32301
850-270-0566
Email: chris@ckise.net

Michael Thakur
US Attorney's Office, Southern District of Florida
99 N.E. 4th St
Miami, FL 33132

Hilda Tobias Kennedy 5.28.2024

## IRREVOCABLE LIVING TRUST AGREEMENT

THIS IRREVOCABLE LIVING TRUST AGREEMENT, (hereinafter "Trust"), is being made this 1st day of October, 2017, by and between Ruth Berk of 95 Christopher Street, New York County, New York, as the Trustor, and Arthur Z. Schwartz serving as Trustee. This Trust shall be known as THE RUTH BERK IRREVOCABLE TRUST, and shall be administered in accordance with the following terms:

### ARTICLE I
### INTRODUCTION

(A)  TRUST PURPOSE

This Trust is being created to provide for the convenient administration of the assets of Ruth Berk without the necessity of court supervision in the event of the Trustor's incapacity or death. Any person shall deal with the Trustee without the approval of any court, the Trustor, or any beneficiary of any Trust created by this Trust, and shall assume that the Trustee has the same power and authority to act as an individual does in the management of his or her own affairs. Further, any person presented with a copy of this page and any other page of the Trust shall accept same as conclusive proof of the terms and authority granted by this Trust, and shall assume that no conflicting directions or terms are contained in the pages omitted.

(B)  TRUST ASSETS

Ruth Berk, as Trustor, does hereby assign, convey and deliver to the Trustee, all of the Trustor's right, title, and interest in and to all real and personal property, tangible or intangible, of any nature, in any location, which may be owned by the Trustor or later acquired by the Trustor, unless an exception to the conveyance of a particular property interest is made on Schedule A. Said property shall include, but shall not be limited to, the assets listed on Schedule A, which may be attached to this Trust. However, this general assignment shall not alter any beneficiary designation unless specifically listed on Schedule A. A voluntary conveyance by the Trustor of a Trust asset which may remain registered to the Trustor individually shall convey any interest held by this Trust.

(C)  ABSTRACT OF TRUST

In order to facilitate the convenient administration of the Trust, including the registration and transfer of assets to and from the Trust, the Trustee shall have the power to execute an Abstract of Trust describing any Trust matter, including but not limited to a description of the Trust terms, the administrative powers of the Trustee and the identity of any current Trustee. Any person who receives an original or photocopy of said Abstract of Trust shall be held harmless from relying on same, and shall not be obligated to inquire into the terms of the Trust or maintain a copy of the Trust.

(D)     SUGGESTED TRUST REGISTRATION

During the life of the Trustor, assets may be registered to the Trust as follows:

Arthur Schwartz, Trustee, or her successors in trust, under the Ruth Berk Irrevocable Trust dated the 1st day of October, 2017, and any amendments thereto.

Other forms of registration are permissible.

(E)     TAX IDENTIFICATION

During the life of the Trustor, the Trustee shall apply to the IRS for a tax identification number for the Trust and any other Trust created by this Trust Agreement.

## ARTICLE II
## ADMINISTRATION DURING THE LIFE OF THE TRUSTOR

(A)     TRUSTEE

The Trustee of this Trust shall be Arthur Z. Schwartz.  If the Trustee cannot continue to serve for any reason, the Successor Trustee shall be Laine Armstrong, and if she shall be not willing and/or able, then Elizabeth Turner shall serve as the Successor Trustee. The powers of the Trustee and the Successor Trustee are set forth in Article VI, below.

(B)     DISPOSITION OF INCOME AND PRINCIPAL

(1)     AT THE DIRECTION OF THE TRUSTOR

The Trustee shall manage the property of the Trust estate, collect the income, and shall pay from the income of the Trust such amounts and to such persons as the Trustor may from time to time direct.  In the absence of direction, the Trustee may accumulate the net income or may disburse any portion of the net income to or for the benefit of the Trustor, Ruth Berk.

In addition, the Trustee shall pay from the principal of the Trust such amounts and to such persons as said Trustor may direct.  In the absence of direction, the Trustee may pay from the principal of this Trust such amounts as may be necessary for the health or maintenance of the standard of living of Thomas Doyle.

(2)     DURING THE INCAPACITY OF THE TRUSTOR

In the event Ruth Berk is incapacitated as defined by this Trust Agreement, the Trustee or Successor Trustee may apply or expend all or a part of the income and

principal of this Trust, or both, for the health and maintenance of Ruth Berk in his accustomed manner of living.

During any period of incapacity of the Trustor, and provided sufficient resources exist for the care of the Trustor, the Successor Trustee is authorized to make distributions to or for the benefit of any issue of the Trustor who have no other financial resources and require said distribution for their health or support. In this regard the Successor Trustee shall consider all financial resources available to a beneficiary prior to making an invasion of this Trust, including, but not limited to, the ability of said beneficiary to earn a living and the ability of said beneficiary's spouse, if any, to earn a living. In no event may a Successor Trustee participate in the exercise of this power in favor of himself.

(C)    RIGHT TO ADD TO PRINCIPAL

The Trustor, Ruth Berk, or any other person may, at any time and from time to time add property acceptable to the Trustee to the Trust.

(D)    RIGHT TO REVOKE AND AMEND

The Trustor, Ruth Berk, does not reserve the right to revoke or amend this instrument.

## ARTICLE III
## ADMINISTRATION AFTER THE DEATH OF THE TRUSTOR

(A)    TRUSTEE

The Trustee or the Successor Trustee then acting as Trustee, shall continue to administer the assets of this Trust as well as any property received by this Trust under the terms of the Trustor's will or from any other source to the extent it is included in the Trustor's gross estate for Federal Estate Tax purposes, and shall distribute said assets as provided below.

(B)    COLLECTION OF PROCEEDS

The Trustee may take such action as is necessary to collect the proceeds of any life insurance policy, or provide for the payment of retirement plan, IRA, or other benefits payable to the Trust.  If probate administration has not or will not be commenced, the Trustee shall have the power to collect tax refunds, health insurance, proceeds, refunds under any contract, death benefits, or any other item which might otherwise be payable to the deceased Trustor's estate.

(C)     DEBTS AND EXPENSES

The Trustee may, in the Trustee's sole and absolute discretion, pay to the estate of the Trustor from the principal or income of the Trust prior to distribution to any trusts created hereunder or any other distributee, such amounts as may be needed to pay all or any part of the deceased Trustor's just debts, funeral expenses, and the administration expenses of the Trustor's estate.  Alternatively, the Trustee may, but shall not be obligated to, pay such expenses directly.

(D)     DEATH TAXES

The Trustee shall pay to the estate of the deceased Trustor or the appropriate tax authorities all estate and inheritance taxes that may become payable by reason of the Trustor's death in respect to all of the property comprising the Trustor's gross estate for death tax purposes, whether or not such property passes under this Trust, under the Trustor's will or otherwise. However, the Trustee shall have the right of contribution as provided in Sections 2207 and 2207A IRC, if it is applicable.

(E)     DISTRIBUTIONS TO THE TRUSTOR'S ESTATE

In addition to the distributions provided for in paragraphs C and D of this Article, the Trustee may pay to the Probate Estate of the deceased Trustor as much of the income and principal of this Trust as the Trustee deems necessary for any purpose.

(F)     SPECIFIC GIFTS OF TANGIBLE PERSONAL PROPERTY

Upon the death of the Trustor, the Trustee shall make such gifts of the tangible personal property of the Trustor held or acquired by the Trust as may be directed by the Trustor's Will, or as may be directed by a list, letter, or other writing of the Trustor permitted by the Will, or as may be directed by a list, letter or other writing designated as Schedule B of this Trust. The cost of storing, packing, shipping and insuring any tangible personal property gift prior to delivery to its intended recipient shall be paid by the Trust.

### ARTICLE IV
### DEATH OF THE TRUSTOR

(A)     DISTRIBUTIONS AND DISBURSEMENTS

Upon the death of the Trustor, and after the payment of the Trustor's just debts, funeral expenses and expenses of last illness, and the disbursements listed in Article III of this Trust, the distributions shall be made as per the Trustor's will.

(B)     PERPETUITIES CLAUSE

Notwithstanding any provision of this Trust to the contrary, all Trusts shall vest in their then beneficiary twenty-one years after the death of the last of the issue of the Trustor who was alive when the Trustor died.

## ARTICLE V
## INCAPACITY, REHABILITATION, AND GUARDIANSHIP

Throughout this Trust Agreement, where there have been references to "incapacity" and "rehabilitation", those two terms shall have the following meanings:

(A)     "INCAPACITATED"

If Arthur Z. Schwartz, as a Trustee, is under a legal disability or by reason of illness, or mental or physical disability is, in the written opinion of two doctors currently practicing medicine, unable to properly manage her affairs, he or she shall be deemed incapacitated for the purposes of this Trust Agreement.

(B)     "REHABILITATION"

Arthur Schwartz as a Trustee, once deemed  incapacitated under Paragraph (A) of this Article, shall be deemed  rehabilitated when he or she is no longer under a legal disability or when, in the written opinion of two doctors currently practicing medicine, he or she is able to properly manage her affairs. Upon rehabilitation, he or she shall resume the duties and powers he or she had prior to incapacity and her successors shall relinquish all powers and be relieved of all duties.

(C)     "GUARDIANSHIP"

In the event the Trustor is adjudicated incompetent by any court having jurisdiction, pursuant to New York State Statutes or similar provisions of the laws of any other state having jurisdiction, the Trustor does hereby nominate the same person(s) in name and order of succession who serve as Trustee as provided in Article 11(A) as Guardian of the property of the incompetent Trustor, and the same person(s) in name and order of succession as provided in Article IX(B) as Guardian of the person of the incompetent Trustor. The Trustor further directs that the Court honor Article 1(B) of the Trust by permitting the completion of the conveyance to the Trustee of any assets which remain registered to the Trustor.

## ARTICLE VI
## PROVISIONS REGARDING THE TRUSTEE

The following general provisions apply to the Trustee and any Successor Trustee of any Trust which is created by this Trust Agreement:

- 5 -

(A)    GENERAL PROVISIONS

    (1)    TRUSTEE'S POWER: It is the intention of the Trustor to grant to the Trustee the power to deal with all of the Trust property as freely as the Trustor could do individually, and the only requirement that the Trustor places upon the Trustee is that the Trustee act as a fiduciary in good faith. The Trustee shall have all the powers and protection granted to Trustees by statute at the time of application, including all of the powers enumerated below or contained in any Certificate of Trust signed by the Trustor; and the Trustor intends that such powers be construed in the broadest possible manner.

        Notwithstanding the foregoing, the Trustee shall not hold or exercise any power or any discretion granted by Article VII which creates unexpected or adverse tax consequences to the Trustor's estate, any Trust created by this agreement, or any beneficiary, or which causes taxation to the Trustee or her estate by virtue of the existence of the power. The Trustee's powers are ministerial in nature and are not intended to create or alter substantive rights. The limitations of this paragraph shall not affect the rights of any third person who deals with the Trustee.

(B)    SPECIFIC POWERS OF THE TRUSTEE

    (1)    RETAIN TRUST ESTATE: To retain, without liability for loss or depreciation resulting from such retention, the original assets and all other property later transferred, devised or bequeathed to the Trustee for such time as the Trustee shall deem advisable although such property may not be of the character prescribed by law or by the terms of this agreement for the investment of Trust assets and although it represents a large percentage of all of any Trust; said original property may accordingly be held as a permanent investment.

    (2)    HOLD UNINVESTED CASH AND UNDERPRODUCTIVE PROPERTY: For any periods deemed advisable, to hold cash, uninvested, even though the total amount so held is disproportionate under trust investment law or would not be permitted without this provision, and to retain or acquire and hold underproductive realty or personalty.

    (3)    INVEST AND ACQUIRE: To invest and reinvest Trust assets in any type of property or security or any interests in such property (including co-tenancies and remainders) without regard to the proportion that investments of the type selected may bear to the entire Trust estate, without limitation to the classes of trust investments authorized by law, and without regard to the possibility that the investments may be in new issues or in new or foreign enterprises, and to write options against long positions. The property acquired may be realty or personalty and may include life insurance, bonds, debentures, leaseholds, options, easements, mortgages, notes, mutual funds, investment trusts, common trust funds, voting trust certificates, limited partnership interests, U.S. Treasury obligations

redeemable at par in payment of Federal Estate Tax, and any class of stock or rights to subscribe for stock, regardless of whether the yield rate is high or low or whether or not the new asset produces any income at all. It is intended that the Trustee shall have the authority to act in any manner deemed in the best interests of the Trust involved, regarding it as a whole, even though certain investments considered alone might not otherwise be proper.

(4)    OPTIONS, WARRANTS, PUTS, CALLS, COMMODITY AND MARGIN ACCOUNTS: The Trustee is specifically authorized, in her discretion, to buy, sell or transfer options, warrants, puts, calls, commodities, futures contracts, repurchase contracts, and to maintain brokerage margin accounts.

(5)    EXERCISE OPTIONS AND CONVERSION PRIVILEGES: To exercise any options, rights, and conversion privileges pertaining to any securities held by the Trustee as Trust assets.

(6)    RECEIVE ADDITIONAL PROPERTY: To receive additional property from any source, including the Personal Representative of a Trustor's estate and the Trustee or beneficiary of any other trust, by whomsoever created, and to hold and administer this property as part of the Trust Estate.

(7)    SELL AND LEASE: To sell, convey, grant options to purchase, lease, transfer, exchange or otherwise dispose of any Trust asset on any terms deemed advisable, to execute and deliver deeds, leases, bills of sale, and other instruments of whatever character, and to take or cause to be taken all action deemed necessary or proper.

(8)    INSURANCE: To carry any insurance deemed advisable with any insurer against any hazards, including public liability, and to use insurance proceeds to repair or replace the asset insured. In addition, the Trustee may carry or purchase life insurance on the life of any Trust beneficiary, and exercise or release any rights in such policy.

(9)    LEND: On any terms deemed advisable, to lend Trust funds to any borrower, including the personal Representative of a Trustor's estate and the Trustee or beneficiary of any trust, by whomsoever created, and to change the terms of these loans. This authorization includes the power to extend them beyond maturity with or without renewal and without regard to the existence or value of any security, and to facilitate payment, to change the interest rate, and to consent to the modification of any guarantee.

(10)    BORROW: To borrow whatever money the Trustee deems desirable for any Trust on any terms from any lender, including the personal Representative a Trustor's estate, and the Trustee or beneficiary of any other trust, by whomsoever created, and to mortgage, pledge or otherwise encumber as security any assets of the borrowing Trust.

(11)  TERM OR DURATION OF OBLIGATION:  Incident to the exercise of any power, to initiate or change the terms of collection or of payment of any debt, security, or other obligation of or due to any Trust, upon any terms and for any period, including a period beyond the duration or the termination of any or all Trusts.

(12)  COMPROMISE OR ABANDONMENT OF CLAIMS: Upon whatever terms the Trustee deems advisable, to compromise, adjust, arbitrate, sue on, defend, or otherwise deal with any claims, including tax claims, against or in favor of any Trust, to abandon any asset the Trustee deems of no value or of insufficient value to warrant keeping or protecting; to refrain from paying taxes, assessments, or rents, and from repairing or maintaining any asset; and to permit any asset to be lost by tax sale or other proceeding.

(13)  DISTRIBUTION IN CASH OR IN PROPERTY: To distribute any shares in cash or in property, or partly in each, and the Trustee's valuations of and selection of assets upon making distribution shall, if made in good faith, be final and binding on all beneficiaries.

(14)  USE OF NOMINEE:  To hold any or all of the Trust assets, real or personal, in the Trustee's own name, or in the single name of any Co-Trustee, or in the name of any corporation, partnership, or other person as the Trustee's nominee for holding the assets, with or without disclosing the fiduciary relationship. A corporate Trustee shall have the power to appoint a Trustee to administer property in any jurisdiction in which it shall fail to qualify.

(15)  BID ON OR TAKE OVER WITHOUT FORECLOSURE:  To foreclose any mortgage, to bid on the mortgaged property at the foreclosure sale or acquire it from the mortgagor without foreclosure, and to retain it or dispose of it upon any terms deemed advisable.

(16)  PAY OFF ENCUMBRANCES: To pay off any encumbrance on any Trust asset and to invest additional amounts to preserve it or to increase its productivity.

(17)  VOTE STOCK: To vote stock for any purpose in person or by proxy, to enter into a voting trust, and to participate in corporate activities related to a trust in any capacity permitted by law, including service as officer or director.

(18)  PARTICIPATE IN REORGANIZATION:  To unite with other owners of property similar to any held in Trust in carrying out foreclosure, lease, sale, incorporation, dissolution, liquidation, reincorporation, reorganization, or readjustment of the capital or financial structure of any association or corporation in which any Trust has a financial interest, to serve as a member of any protective committee, to deposit Trust securities in accordance with any plan agreed upon; to pay any assessments, expenses, or other sums deemed expedient for the protection

- 8 -

or furtherance of the interests of the beneficiaries; and to receive and retain as Trust investments any new securities issued pursuant to the plan, even though these securities would not constitute authorized Trust investments without this provision.

(19)  PURCHASE PROPERTY FROM ESTATE OR TRUST: To purchase property, real or personal, from a Trustor's or a beneficiary's estate or trust for their benefit upon such terms and conditions, price and terms of payment as the Trustee and the respective personal Representative or Trustee shall agree upon, to hold the property so purchased in Trust although it may not qualify as an authorized Trust investment except for this provision, and to dispose of such property as and when the Trustee shall deem advisable.

(20)  EMPLOYMENT OF ASSISTANTS AND AGENTS: To any extent reasonably necessary, to employ attorneys-at-law, accountants, financial planners, brokers, investment advisors, realtors, managers for businesses or farms, technical consultants, attorneys-in-fact, agents and any other consultants and assistants the Trustee deems advisable for the proper administration of any Trust.

(21)  ESTABLISHMENT AND MAINTENANCE OF RESERVES: Out of the rents, profits, or other gross income received, to set aside and maintain reserves to the extent deemed advisable to meet present or future expenses, including taxes, assessments, insurance premiums, debt amortization, repairs, improvements, depreciation, obsolescence, general maintenance and reasonable compensation for services, including services of professional and other employees, as well as to provide for the effects of fluctuations in gross income and to equal or apportion payments for the benefit of beneficiaries entitled to receive income.

(22)  MANAGE REALTY: To deal with real and personalty, including oil, gas, and mineral rights in any manner lawful to an owner.  This authority includes the rights to manage, protect, and improve it, to raze, alter and repair improvements, to sell or contract to sell it in whole or in part, to partition it, to grant options to purchase it, to donate it, to convey it, to acquire it, release or grant easements or other rights relating to it, to dedicate parks and thoroughfares, to subdivide it, to vacate any subdivision or any part thereof and resubdivide it from time to time, to lease it in whole or in part, and to renew, extend, contract for, and grant options in connection with contract entered into by the Trustee can be made on any terms and for any period,  including a period beyond the duration or termination of any Trusts.

(23)  CARRY ON BUSINESS: With respect to any business that may be or become a part of any Trust whether organized as a sole proprietorship, limited partnership, partnership or corporation, upon such terms, for such time, and in such manner as the Trustee deems advisable:

- 9 -

a.   To hold, retain and continue to operate such business solely at the risk of the Trust estate and without liability on the Trustee's part for any resulting losses;

b.   To incorporate, dissolve, liquidate, or sell such business at such time and upon such terms as the Trustee deems advisable. In this regard the Trustee's decision may be based upon qualified appraisal, and the Trustee shall not be obligated to seek other offers in contracting for sale to any person including another shareholder, trust, or beneficiary;

c.   To borrow money for business purposes and to mortgage, pledge or otherwise encumber the assets of any Trust to secure the loan;

d.   To engage in the redemption of stock and take such actions as are necessary to qualify the redemption under Sections 302 or 303 IRC and the applicable requirements of state law.

e.   To create a special lien for the payment of deferred death taxes under 6324 IRC, or similar provisions of state law.

f.   To create, continue, or terminate an S-Corporation election.

(C)   DEALINGS WITH THE TRUSTEE

Any person who deals in good faith with the Trustee shall deal only with the Trustee and shall presume that the Trustee has full power and authority to act. No person shall require court confirmation or the approval of a beneficiary for any transaction with the Trustee. The signature of the Trustee shall bind the interest of any Trust beneficiary, including the Trustor, and no person need see the application of any property delivered to the Trustee.

(D)   COMPENSATION OF TRUSTEE

Any Trustee who is also a beneficiary hereunder shall serve without compensation for his or her services except that the Trustee shall be reimbursed for reasonable expenses incurred in the administration of the Trust. Any Trustee not a beneficiary hereunder shall receive as compensation for its services, unless waived, such amount of compensation as is customarily being charged by commercial trust companies for services as a trustee of an inter vivos trust in the State of New York.

(E)   BOND AND QUALIFICATIONS

No bond shall be required of the Trustee or any Successor Trustee. The Trustee and any Successor Trustee shall not be required to qualify in any court and are relieved of the filing of any document and accounting in any court.

- 10 -

(F)     SUCCESSOR TRUSTEE(S)

No Successor Trustee shall be responsible for acts of any prior Trustee.  In the event a Trustee of any Trust is unable to serve or continued to serve as Trustee for any reason and no successor has been provided, the Successor Trustee shall be elected in writing by any of the persons who have previously served as Trustee, with preference in the making of such appointment being determined in the same order of their succession as Trustee. If no appointment exists, the Successor Trustee shall be elected in writing by the majority in interest in the income of the Trust.  No person shall be required to apply to any court in any jurisdiction for confirmation of said appointment.  Any Successor Trustee so elected shall either be an issue of the Trustor or shall be a corporate Trustee qualified to exercise Trust powers.

(G)     REMOVAL OF SUCCESSOR TRUSTEES

In the event a Successor Trustee is administering any Trust created hereunder, the Successor Trustee may be removed by the last individual to serve as Trustee; however, if that person is deceased or incapacitated, the Successor Trustee may be removed by a majority vote in interest in Trust income. Said removal must be in writing, stating the reasons for removal and indicate the successor Trustee, which must be a corporate trustee.

Removal of a Successor Trustee shall be permitted only for the convenient administration of the Trust.  For example, a Successor Trustee may be removed in order to transfer administration to the place of residence of a primary beneficiary, or because of mismanagement of Trust funds, or because of excessive fees, or because of lack of attention to Trust matters, or other such reason.  Removal shall not be permitted for the purpose of influencing the exercise of discretion of a Successor Trustee which is granted by this instrument. For example, removal of a Successor Trustee that refuses to make a discretionary invasion of principal shall not be allowed.  Removal of a Successor Trustee shall be effective upon delivery of the notice of removal and the removed Trustee shall have a reasonable period of time to transfer assets to its successor.  In the event the successor Trustee believes that its removal is improper, it may, but shall not be required to, apply to a court of competent jurisdiction, at its expense, for a declaration of the propriety of the removal.  In that event, the removal shall be effective only upon the order of said court and after any appeal.  In the event the Successor Trustee prevails it shall be entitled to reimbursement from the Trust for its reasonable costs and attorneys fees.

(H)     DELEGATION

Any Trustee may delegate any management function of any Trust to any other Successor Trustee (even though the Successor Trustee is not then serving as Trustee) upon such terms as may be agreed by the Trustees.  In the event more than one Trustee is serving, Trust assets may be held in the name of one Trustee.

(I)     LIMITED POWER TO AMEND

The Trustee may amend this Trust to create or renounce management powers as may be required to facilitate the convenient administration of this Trust, deal with the unexpected or the unforeseen, or avoid unintended or adverse tax consequences.  The amendment shall be in writing and shall be consented to by the Trustor, if not then deceased or incapacitated, or the beneficiaries of any Trust. The amendment may be retroactive. This limited power may only be exercised to provide for the convenient administration of any Trust; and shall not affect the rights of any beneficiary to enjoy Trust income or principal without his consent, shall not alter the dispositive provisions of any Trust, and shall not be exercisable in such a manner as to create gift, estate, or income taxation to the Trustee or any beneficiary.  No amendment shall affect the rights of third persons who have dealt or may deal with the Trustee without their consent.

## ARTICLE VII
## ADMINISTRATIVE PROVISIONS

(A)     CARRYING SEVERAL TRUSTS AS ONE ESTATE

To the extent that division of any Trust is directed, the Trustee may administer any Trust physically undivided until actual division becomes necessary.  Further, the Trustee may add the assets of the Trust for any beneficiary to any other trust for such beneficiary having substantially the same provisions for the disposition of trust income and principal, whether or not such trust is created by this agreement.  The Trustee may commingle the assets of several trusts for the same beneficiary, whether or not created by this agreement, and account for whole or fractional trust shares as a single estate, making the division thereof by appropriate entries in the books of account only, and to allocate to each whole or fractional trust share its proportionate part of all receipts and expenses; provided, however, this carrying of several trusts as a single estate shall not defer the vesting of any whole or fractional share of a trust for its beneficiary at the times specified.

(B)     ALLOCATION TO PRINCIPAL AND INCOME

All receipts of money or property paid or delivered to the Trustee and all expenses may be allocated to principal or income in accordance with the laws of the State of New York or any other state in which a Trust is being administered.  However, the Trustee, in a reasonable and equitable manner, shall have the discretion to allocate, in whole or in part:

1.      Administration expenses to income or principal.

2.      Trustee's fees to income or principal.

3.      To income, any expense of the administration of the Trust or its assets which is deductible for Federal Income Tax purposes.

4.     To income, the gains or losses from option trading, and capital gains distributions from utility shares, on mutual funds, or tax managed funds; and

5.     To income or principal, distributions from qualified or non-qualified pension plans, profit sharing plans, IRA accounts or deferred compensation arrangements.

(C)     PROHIBITION OF ALIENATION

No income or principal beneficiary of any Trust (except the Trustor) shall have any right or power to anticipate, pledge, assign, sell, transfer, alienate or encumber his or her interest in the Trust, in any way. No interest in any Trust shall, in any manner, be liable for or subject to the debts, liabilities or obligations of such beneficiary or claims of any sort against such beneficiary.

(D)     SMALL TRUST TERMINATION

If, at any time, any Trust shall be in the aggregate principal value of Ten Thousand Dollars ($10,000.00) or less, the Trustee may, in her sole discretion, terminate such Trust and distribute the assets to the beneficiary, or beneficiaries, the share of each being in the same proportion as he or she is a beneficiary under the terms of the Trust.

(E)     DISCLAIMER

Any beneficiary of any Trust shall have the right to disclaim his or her interest in said Trust. Said disclaimer may be effected in compliance with the requirements of the laws of any jurisdiction in which any Trust may be administered. Alternatively, the Trustee may act upon any written disclaimer of any interest, in whole or in part, in any Trust. In the event any beneficiary is incapacitated, the Trustee may accept the disclaimer of a legal or natural guardian of said beneficiary; and if no such guardian exists, the Trustee of any Trust, acting on behalf of the beneficiary, shall have the power to disclaim all or a part of the property passing to said Trust.

(F)     ELECTIONS

The Trustee and the Personal Representative of the Trustor's estate will have various options in the exercise of discretionary powers, some of which being limited only by the requirement that the Trustee and the Personal Representative act in good faith and within the bounds of their fiduciary duty. Specifically, the Trustee or Personal Representative may make certain elections for Federal Income Tax and Estate Tax purposes which may affect the administration of Trust income or principal. The Trustee or Personal Representative may exercise any such discretion without incurring liability to any beneficiary, nor shall any beneficiary have the right to demand a reallocation or redistribution of Trust income or principal as a result of the proper action of the Trustee or Personal Representative.

- 13 -

(G)    CERTAIN DISTRIBUTIONS

The Trustee shall have the following options with regard to the distribution of principal or income to or for a beneficiary:

1.    Directly to the beneficiary such amounts as the Trustee may deem advisable as an allowance;

2.    To the Guardian of the person or of the property of the beneficiary.

3.    To a relative of the beneficiary upon the agreement of such relative to expend such income or principal solely for the benefit of the beneficiary, which agreement may include a custodianship under the Uniform Transfers (or Gift) to Minors Act of any state.

4.    By expending such income or principal directly for the beneficiary. After making a distribution as provided above, the Trustee shall have no further obligation regarding the distribution.

(H)    USE OF RESIDENCE

The Trustee may purchase or hold a residence to be occupied by the income beneficiary of any Trust (and/or her family) without rent, and the expense of maintaining the residence may be borne by the Trust, the beneficiary, or partly by each, as the Trustee may deem proper.

(I)    INVESTMENT ADVISOR

The Trustor or any person then having the power to remove and replace a corporate Trustee shall have the right to appoint an investment advisor who is duly registered with the Securities Exchange Commission. Such appointment shall be in writing effective upon delivery to the corporate Trustee. Upon receiving such appointment the corporate Trustee shall follow such investment directions regarding such Trust assets the investment discretion as to which has been delegated to the investment advisor. During such time as an investment advisor is acting, the corporate Trustee shall have absolutely no liability for investment decisions which have been delegated to the investment advisor. Such appointment shall not cause the reduction of the fees charged by the corporate Trustee, nor shall it create any new liabilities of the corporate Trustee without its consent.  The corporate Trustee may enter into such written agreements with the investment advisor or the person appointing the investment advisor as may be appropriate to carry out the intent of this paragraph.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

(A)    SURVIVORSHIP

This Agreement shall be binding upon the heirs, personal representatives, successors and assigns of the parties hereto.

(B)    CONTROLLING LAW

This Agreement shall be construed and regulated in all respects by the laws of the State of New York.  In the event any Trust or asset is being administered in another state, this Trust may be regulated by the laws of such state if required to avoid excessive administrative expense, or to uphold the validity of any of the terms of this Trust.

(C)    TRUSTEE AND TRUST

The term "Trustee" refers to the single, multiple and Successor Trustee, who at any time may be appointed and acting in a fiduciary capacity under the terms of this agreement. Where appropriate, the term "Trust" refers to any trust created by this agreement.

(D)    GENDER - SINGULAR AND PLURAL

Where appropriate, words of the masculine gender include the feminine and neuter; words of the feminine gender include the masculine and neuter; and words of the neuter gender include the masculine and feminine. Where appropriate, words used in the plural or collective sense include the singular and vice-versa.

(E)    IRC

The term "IRC" refers to the Internal Revenue Code and its valid regulations.

(F)    SERVE OR CONTINUE TO SERVE

A person cannot "serve or continue to serve" in a particular capacity if they are incapacitated, deceased, have resigned, or are removed by a court of competent jurisdiction.

(G)    ISSUE

The term "issue", unless otherwise designated herein, shall include adopted "issue" of descendants and lineal descendants, both natural and legally adopted indefinitely.  Such term shall specifically exclude individuals adopted out of the family of the Trustor or out of the family of a descendant of the Trustor.  The word "living" shall include unborn persons in the period of gestation.

- 15 -

(H)   NOTICE

No person shall have notice of any event or document until receipt of written notice. Absent written notice to the contrary, all persons shall rely upon the information in their possession, no matter how old, without recertification, verification, or further inquiry.

(I)   MERGER

The doctrine of merger shall not apply to any interests under any Trust.

(J)   REPRESENTATION

In any Trust matter a beneficiary whose interest is subject to a condition (such as survivorship) shall represent the interests in the Trust of those who would take in default of said condition. The members of a class shall represent the interests of those who may join the class in the future (e.g. living issue representing unborn issue). The legal natural guardian of a person under a legal disability shall represent the interests of the disabled person.

## ARTICLE IX
## POWER OF ATTORNEY

By virtue of the signing of this Trust below, the Trustor makes the following appointments of Attorneys-in-Fact:

(A)   FOR FINANCIAL MATTERS

The Trustor appoints Arthur Z. Schwartz, as Attorney-in-Fact for the Trustor for the purpose of signing any state or federal income or gift tax return on behalf of the Trustor, collecting and endorsing to the Trust any tax refund, making claims against any insurance policy, providing for the collection and payment to the Trust of any amount due on account of Social Security, Medicare, salary or other compensation, disability payments, contract, employee benefit program, IRA account or any other benefits payable to the Trustor. In the event that Arthur Z. Schwartz, is unable or unwilling to so serve, then Laine Armstrong shall serve in such capacity.

(B)   FOR CARE OF THE TRUSTOR

The Trustor first appoints Arthur Z. Schwartz, , if then alive and competent if the other of them has pre-deceased Trustor or is incompetent, as Attorney-in-Fact to make any and all decisions regarding the personal care of the Trustor during any period when the Trustor may be incapacitated.

(C)     DURABILITY

In the hands of a qualified holder, the appointments above, shall create a durable family power of attorney.  This durable family power of attorney shall not be affected by the disability of the Trustor except as provided by statute; and the powers in the hands of a qualified holder may not be delegated.

(D)     REVOCABILITY

The Trustor and the trustee shall have no right or power to terminate this trust.  The trustor shall likewise have no incident of ownership in regard to any of the trust property or money.

IN WITNESS WHEREOF, on this the 4th day of October, 2017, Ruth Berk, through her Guardian Arthur Schwartz, has signed this instrument as Trustor, and Arthur Z. Schwartz has signed this Instrument as Trustee, to evidence acceptance of the Trust Agreement.

_____
TRUSTOR

_____
TRUSTEE

STATE OF NEW YORK
COUNTY OF NEW YORK

Ruth Berk, through her Guardian Arthur Schwartz, as Trustor and Arthur Z. Schwartz, as Trustee, being first duly sworn, does hereby declare to the undersigned officer/notary public that the Trustor signed the instrument as the Trustor's Irrevocable Trust Agreement, that the Trustee accepted this instrument as such, that the Trustor and Trustee signed the Trust Agreement as their voluntary act and deed on the date and year shown therein.

_____
TRUSTOR

_____
TRUSTEE

    SUBSCRIBED and sworn before me by Ruth Berk and Arthur Z. Schwartz, the Trustor and Trustee, on this the 4th day of October, 2017.

_____
NOTARY PUBLIC

My commission expires:

TRACEY L KIERNAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02KI6356856
Qualified in New York County
My Commission Expires 04-10-2021

- 18 -

## THE RUTH BERK IRREVOCABLE TRUST

## SCHEDULE A

The proceeds from the forfeiture of Tenancy Rights to Apt 15H, 95 Christopher Street, New York, NY

TOGETHER WITH:

$20,000 from Trustor's Checking Account at Apple Bank.

Page Intentionally Left Blank

**SCHEDULE B**
**SEPARATE WRITTEN STATEMENT DISPOSING OF**
**TANGIBLE PERSONAL PROPERTY OF**

_____

My Living Trust, executed on the 1st day of October, 2017, refers to a written statement separate from my Living Trust that provides for the disposition of my non-business tangible personal property. I hereby make the separate written statement referred to in my Living Trust and dispose of my tangible personal property in the following manner:

Item of Tangible Personal Property          Name and Address of Person to Receive the Property
all                                         to my will beneficiaries who are my family members

_____
Ruth Berk, by her Guardian Arthur Schwartz
Date October 4, 2017

- 21 -

*LAST WILL AND TESTAMENT*

**RUTH BERK,** *residing at 95 Christopher Street, New York, New York 10014, which I declare to be my domicile, do make, publish and declare this to be my Last Will and Testament.*

**FIRST:**   *I revoke all Wills and Codicils heretofore made by me.*

**SECOND:**   *I direct my executor to pay the expenses of my funeral and the administration costs and expenses of my estate, as soon after my demise as may be practicable.*

**THIRD:**   *I give, devise and bequeath all the rest, residue and remainder of my estate as follows:*

*a) One tenth of my estate to Robert Driscoll*

*b) One half of the remainder, after Driscoll's share, to Jessica Berk;*

*c) One half of the remainder, after Driscoll's share, to Advocates for Justice, a 501(c)(3) foundation, to aid its work for seniors;*

**FOURTH:**   *I appoint Arthur Schwartz to be executor of my estate. I hereby authorize any executor appointed under this Will to serve without the necessity of filing any bond or security in Court.*

**FIFTH:**   *I give said executor the fullest power and authority in all matters and questions and to do all acts which I might or could do if living, including, without limitation, complete power and authority to sell, mortgage, lease and dispose of, and distribute in kind all property, real and personal, at such times and upon such terms and conditions as he may determine all without court order.*

**SIXTH:**     *The use of the singular shall be deemed to include the plural, and vice versa, whenever the context so requires. The use of the masculine gender shall be deemed to include the feminine gender, and vice versa, whenever the context so requires.*

    ***IN WITNESS WHEREOF,*** *I have signed this, my Last Will and Testament, on the ___ day of ~~April~~ May 2017.*

                                _____
                                        **RUTH BERK**

*The foregoing instrument, consisting of two (2) pages, (including this page) was subscribed at the end thereof by the above-named testator, and signed, published, and declared to be testator's Last Will and Testament in the presence of us and each of us, who thereupon at testator's request, in testator's presence, and in the presence of each other have hereunto subscribed our names as witnesses on the day and year last above written at 150 Riverside Drive, New York, New York 10024, this attestation clause having been read aloud.*

_____ residing at ___150 Riverside Drive___

                                           ___N, N___

_____ residing at ___150 Riverside Drive___

                                           ___N, Ny___

## *WITNESS AFFIDAVIT*

*STATE OF NEW YORK         )*
                                              *.:ss.*
*COUNTY OF NEW YORK    )*

*Each of the undersigned, individually and severally being duly sworn, deposes and states:*

*The within Last Will and Testament was subscribed in our presence and sight at the end thereof by **RUTH BERK**, the within named testator, on the ___6___ day of ~~April~~ May 2017, at 150 Riverside Drive, New York, New York 10024.*

*The testator at the time of making such subscription declared the instrument so subscribed to be testator's Last Will and Testament.*

*The undersigned thereupon individually signed their names as witnesses at the end of said Last Will and Testament at the request of the testator and in testator's presence and sight, and in the presence and sight of each other.*

*The testator, in the respective opinions of the undersigned, was upwards of 18 years of age and could read, write, and converse in the English language, was over the age of eighteen years old and was suffering from no defect of sight, hearing, or speech, or from any other physical or mental impairment which would affect testator's capacity to make a valid Last Will and Testament. The testator was to the best of my knowledge and belief, in all respects appearing to be of sound and disposing mind, memory and understanding, competent to make a Will and not under any restraint.*

*The Last Will and Testament was executed as a single, original instrument and was not executed in counterparts.*

*Each of the undersigned was acquainted with the testator at such time and makes this affidavit at testator's request.*

*The within Last Will and Testament was shown to the undersigned at the time this affidavit was made, and was examined by each of them as to the signatures of the testator and the undersigned.*

*The foregoing instrument was executed by the testator and witnessed by each of the undersigned affiants under the law,.*

*SWORN to before me on this*
*___6___ day of ~~April~~ 2017*
_____
*NOTARY PUBLIC*

ARTHUR ZACHARY SCHWARTZ
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #02SC4489236
COMM. EXP. 12/30/17

Advocates for Justice, Chartered Attorneys, 225 Broadway, Suite 1902, New York, New York 10007

U.S. POSTAGE PAID
PM
ATLANTIC CITY, NJ 08
MAY 29, 2024
**$10.75**
R2305H128438-55

Retail

RDC 03    0 Lb 11.60 Oz

34950

**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Visit us at usps.com

RAY-N-RAY
(llr:G-FTP
2024 AUG 03 NO:
RECEIVED

Honorable District Court Files Clerk
Criminal Division

AILTO LEE ADAMS SR. United States Courthouse
101 South US Highway 1   Room 1016
Fort Pierce Florida 34950

Jessica Noel Beall
8715 Boardwalk, 1511
Atlantic City NJ 08401
846 848 3589


**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107, January 2008

EXPECTED DELIVERY DAY: 06/01/24
USPS TRACKING® #