UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.

_____/

**GOVERNMENT'S SUPPLEMENTAL BRIEF ADDRESSING THE SUPREME COURT'S DECISION IN** *CONSUMER FINANCIAL PROTECTION BUREAU V. COMMUNITY FINANCIAL SERVICES OF AMERICA, LTD.*

TABLE OF CONTENTS

I. Background ................................................................................................................. 1

II. Argument .................................................................................................................... 3

   A. The *CFPB* Decision Does Not Support Trump's Challenge to the Special Counsel's Funding ........................................................................................................................ 4

   B. No Factual Development Is Merited for Trump's Challenges to the Special Counsel's Authority or Funding ................................................................................................... 6

III. Conclusion .................................................................................................................11

The Court has directed the Government and defendant Donald J. Trump to submit supplemental briefs addressing: (1) the impact, if any, of the Supreme Court's decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024), on Trump's claim (ECF No. 326 at 7-12) that the Special Counsel is not lawfully funded; and (2) whether "factual development is warranted or necessary to resolve" either that funding claim or Trump's separate claim (ECF No. 326 at 1-7) that the Special Counsel lacks legal authority to prosecute this case. ECF No. 588. The Supreme Court's recent decision, which held that the mechanism by which Congress funded the Consumer Financial Protection Bureau complies with the Appropriations Clause, 601 U.S. at 421, lends no support to Trump's claim that the funding for the Special Counsel is unlawful. To the extent that decision is relevant, it makes clear that the appropriation used to fund the Special Counsel readily comports with the Constitution. And no factual development is warranted or necessary to resolve the purely legal claims that the Special Counsel lacks the lawful authority or funding to prosecute this case. The Court should deny Trump's motion without an evidentiary hearing.

I.  Background[1]

In a single motion, Trump contends (ECF No. 326 at 1-7) that the Special Counsel's appointment violates the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and (ECF No. 326 at 7-12) that the "permanent indefinite appropriation," Pub. L. No. 100-202, Tit. II, 101 Stat. 1329, 1329-9 (1987) (28 U.S.C. § 591 note), used to fund the Special Counsel is "not available" and therefore "violates the Appropriations Clause," ECF No. 326 at 7, which provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."

---

[1] This supplemental brief incorporates the background provided in the Government's opposition to Trump's motion to dismiss based on the appointment and funding of the Special Counsel. *See* ECF No. 374 at 1-3.

1

U.S. Const. art. I, § 9, cl. 7. But beyond citing the Appropriations Clause, *see* ECF No. 326 at 1, 7-8, the motion does not explain how Trump's challenge to the Special Counsel's funding implicates that constitutional provision. Trump did not contend that Congress violated the Appropriations Clause when it established a permanent indefinite appropriation to fund "investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." 101 Stat. 1329-9. Instead, he raised the statutory claim that the language of the appropriation does not apply to the Special Counsel. Although Trump sought evidentiary hearings to develop the factual record for certain pretrial motions, *see* ECF No. 328, he did not request a hearing on his motion raising Appointments Clause and funding claims.

After that motion was fully briefed, the Supreme Court in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Ltd.*, 601 U.S. 416 (2024) ("*CFPB* decision"), decided the "narrow question" of whether Congress's decision to allow the Consumer Financial Protection Bureau ("CFPB" or "Bureau") to draw funds from the Federal Reserve System up to an inflation-adjusted cap comported with the Appropriations Clause. *Id.* at 421. Assessing constitutional text, preratification history, and early congressional practice, the Supreme Court determined that "appropriations need only identify a source of public funds and authorize the expenditure of those funds for designated purposes to satisfy the Appropriations Clause." *Id.* at 426. As a textual matter, an appropriation connoted "a law authorizing the expenditure of particular funds for specified ends." *Id.* at 427; *accord id.* at 424 ("[A]n appropriation is simply a law that authorizes expenditures from a specified source of public money for designated purposes."). And both pre-founding history and post-ratification practice confirmed that appropriations need only "designate particular revenues for identified purposes." *Id.* at 431. The Court held that the CFPB's funding statute satisfied the Appropriations Clause because it

2

"authorize[d] the Bureau to draw public funds from a particular source" and "specifie[d] the objects for which the Bureau can use those funds." *Id.* at 435.

Several Justices wrote separately. Justice Kagan (joined by Justices Sotomayor, Kavanaugh, and Barrett) noted in a concurring opinion that longstanding congressional practice from the Founding Era through the modern day likewise supported the conclusion that "the CFPB's funding accords with the Constitution." *Id.* at 442 (Kagan, J., concurring). Justice Jackson observed in a concurrence that Congress had permissibly structured CFBP's funding to protect it "from the risk that powerful regulated entities might capture the annual appropriations process." *Id.* at 446 (Jackson, J., concurring). Justice Alito (joined by Justice Gorsuch) dissented. *Id.* at 447-71 (Alito, J., dissenting). In his view, upholding the CFPB's funding mechanism rendered the Appropriations Clause a "minor vestige" and enabled the Bureau to "bankroll its own agenda without any congressional control or oversight." *Id.* at 448.

On May 29, 2024, this Court directed the parties to address whether the *CFPB* decision had any impact on Trump's funding claim and whether any factual development for that funding claim or his Appointments Clause claim was appropriate.

**II.    Argument**

Nothing in the *CFPB* decision aids Trump's arguments. The Appropriations Clause issue in that case does not bear on Trump's statutory claim that the permanent indefinite appropriation is not available to fund the Special Counsel's prosecution in this case. To the extent that his funding claim could be read to raise a constitutional issue, however, the rationale in the *CFPB* decision makes clear that the use of the permanent indefinite appropriation to fund the Special Counsel's Office satisfies the Appropriations Clause. Moreover, as Trump has already acknowledged (ECF No. 328), no factual development is warranted to resolve either that funding claim or his separate challenge that the Special Counsel lacks the legal authority to prosecute this case. Both contentions

3

present legal claims that should be considered—and rejected—based solely on the relevant constitutional, statutory, and regulatory provisions.

### A. The *CFPB* Decision Does Not Support Trump's Challenge to the Special Counsel's Funding

The *CFPB* decision lends no support to Trump's funding claim. The payday lenders and credit-access businesses in that case argued that Congress lacked the authority under the Appropriations Clause to enact the CFPB funding statute. Specifically, they contended that the Bureau's funding structure undermined the separation of powers by removing congressional oversight of an executive agency's expenditure of federal funds and nullified Congress's appropriation power by permitting the agency to select its own funding stream. *See* Brief for Respondents, *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Ltd.*, No. 22-448, 2023 WL 4400760, at *11-*22 (filed July 3, 2023). Trump does not claim that Congress lacked the authority to enact the permanent indefinite appropriation for independent counsels. Indeed, he raises no *constitutional* challenge. *See* ECF No. 374 at 22 n.2. He instead contends (ECF No. 326 at 7-12; ECF No. 414 at 4-7) that the Special Counsel is not entitled to draw funds from the permanent indefinite appropriation because the Special Counsel does not constitute an "independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or *other law*." 101 Stat. 1329-9 (emphasis added).[2] The *CFPB* decision does not bear on that narrow issue of statutory interpretation.

Even if Trump's funding claim could be construed to invoke the Appropriations Clause, that claim would fail because the appropriation used to fund the Special Counsel, like the CFPB's funding mechanism, passes constitutional muster. The Appropriations Clause's "phrasing and

---

[2] That contention lacks merit for the reasons given in the Government's Opposition. *See* ECF No. 374 at 15-23.

4

location" makes clear that it requires no "more than a law that authorizes the disbursement of specified funds for identified purposes." *CFPB*, 601 U.S. at 438. The Bureau's funding statute "contain[ed]" those "requisite features": the relevant statute permitted the CFPB to obtain funding from a public source, namely, the Federal Reserve System, up to a certain amount and specified that that the funding was to be used to "'pay the expenses of the Bureau in carrying out its duties and responsibilities.'" *Id.* at 435 (quoting 12 U.S.C. § 5497(c)(1)). The Department of Justice funding statute likewise contains the requisite features: it "authorizes expenditures from a specified source of public money for designated purposes." *Id.* at 424. In 1987, Congress authorized the expenditure from a specific source, the Department of the Treasury, when it "established" a "permanent indefinite appropriation . . . within the Department of Justice." 101 Stat. 1329-9. It further designated the purpose of that newly established appropriation: "to pay all necessary expenses of investigations and prosecutions" carried out by a lawfully appointed "independent counsel." *Id.* That approach fell well within Congress's "broad discretion" over the past "200 years" to craft appropriations, *CFPB*, 601 U.S. at 442 (Kagan, J., concurring), and no more was required to comply with the Appropriations Clause. *See* ECF No 374 at 22 n.2.

The *CFPB* decision also undermines Trump's reliance on cases suggesting or holding that the Bureau's funding mechanism violated the Appropriations Clause. *See* ECF No. 326 at 12 (quoting *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 242 (5th Cir. 2022) ("*Check Cashing*") (Jones, J., concurring), for the proposition that the "proper remedy" is to "disregard the government action" because the CFPB's enforcement action depended on "funds derived without a constitutionally footed appropriation or oversight"); ECF No. 414 at 7 (citing *CFSA v. CFPB*, 51 F.4th 616, 641 (5th Cir. 2022), *rev'd*, 601 U.S. 416 (2024), for a similar claim). For example, one concurring judge on the Fifth Circuit, observing that Congress had "insulated" the CFPB "from

5

the ordinary congressional appropriations process" given the Bureau's "supposed need for 'independence' from the whims of politics," *Cash Checking*, 33 F.4th at 221-22 (Jones, J, concurring), reasoned that the Bureau's funding was not "constitutionally proper" but instead gave rise to a "separation of powers problem[]." *Id.* at 242. Declining to adopt the rationale or result of those cases, the Supreme Court rejected the argument that CFPB's funding structure "destroy[ed] the separation of powers" or "invite[d] tyranny by allowing the Executive to operate free of any meaningful fiscal check." *CFPB*, 601 U.S. at 437. The same is true for the permanent indefinite appropriation that funds the Special Counsel, which sought to ensure that an independent counsel could carry out sensitive investigations even as the Independent Counsel provision under the Ethics in Government Act faced criticism and was ultimately allowed to lapse. *See* ECF No. 374 at 3.

### B. No Factual Development Is Merited for Trump's Challenges to the Special Counsel's Authority or Funding

Trump requested evidentiary hearings in connection with five pretrial motions but, in declining to seek such a hearing for his Appointments Clause and funding claims, he correctly acknowledged that no factual development is warranted or necessary to resolve those claims. *See* ECF No. 328 at 2-4. Trump's decision not to seek an evidentiary hearing on these issues while simultaneously requesting factual development on several other issues should preclude him from making a belated request in his supplemental brief. *See United States v. May*, No. 10-cr-125, 2010 WL 2985899, at *2 n.2 (S.D. Ala. July 27, 2010) (denying evidentiary hearing where, *inter alia*, defendant did not request a hearing). But even if he had requested an evidentiary hearing, the Court should evaluate—and reject—those legal claims by reference solely to the constitutional, statutory, and regulatory provisions relevant to assessing whether the Special Counsel possesses the lawful authority and funding to prosecute this case.

No evidentiary hearing is required where a motion raises a "purely legal" claim. *See Marquez v. United States*, 684 F. Appx. 843, 857 (11th Cir. 2017); *United States v. Horne*, 198 F. App'x 865, 870 (11th Cir. 2006) (per curiam) (district court did not abuse its discretion when it declined to hold an evidentiary hearing on defendant's suppression motions where the motions "presented issues of law, not fact"); *United States v. Leatherman*, 580 F. Supp. 977, 978 (D.D.C. 1983) (where parties "asked that the issues be resolved on purely legal grounds," no evidentiary hearing was held); *cf. King v. United States*, No. 20-cv-20383, 2020 WL 7061590, at *2 (S.D. Fla. Sept. 14, 2020) ("[D]isputes involving purely legal issues can be resolved by the court without a hearing."). That principle applies here: the issues presented in Trump's motion to dismiss based on the purported "unlawful appointment and funding" of the Special Counsel, as ECF No. 326 is captioned (capitalization altered), constitute purely legal claims. Trump's principal Appointments Clause claim is that Congress has not provided "by law" for the Special Counsel's appointment. *See* ECF No. 326 at 3-7. Resolving that claim requires assessing the text of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, cases interpreting that constitutional provision, and the statutes on which the Attorney General relied in appointing the Special Counsel.[3] As described above, Trump's principal funding claim is that the permanent indefinite appropriation's reference to an "independent counsel" does not include the Special Counsel. *But see* Government Accountability Office ("GAO"), *Special Counsel and Permanent Indefinite Appropriation*, B-302582, 2004 WL 2213560, at *4 (Comp. Gen. Sept. 30, 2004) ("[W]e have not objected to the use of the permanent indefinite appropriation to fund expenses of regulatory independent counsels appointed from

---

[3] The Amici raise, albeit from differing angles, similarly legal claims: whether, based on the statutory and regulatory framework defining the Special Counsel's position, he should be considered a principal officer subject to presidential nomination and Senate confirmation, ECF No. 364-1, or instead an employee not entitled to wield the powers conferred upon him under the relevant statutes and regulations, ECF No. 410-2.

7

outside the government pursuant to such authority.").[4]  Resolving that claim requires assessing that statutory term in light of the statutory and regulatory framework within which the Special Counsel was appointed and operates.  Neither the Appointments Clause claim nor the funding claim implicates factual questions that should be resolved at an evidentiary hearing.

Resolving a challenge under the Appointments Clause without an evidentiary hearing is consistent with judicial practice in resolving analogous claims.  When concluding that the Special Prosecutor possessed the legal authority to seek evidence for a criminal trial of the Watergate conspirators from former President Nixon, including to challenge his claim of Executive Privilege, the Supreme Court relied entirely on the relevant statutes without drawing from a (nonexistent) factual record describing the Special Prosecutor's actions or interactions.  *See United States v. Nixon*, 418 U.S. 683, 694 (1974) (citing 28 U.S.C. §§ 515 and 533).  More recently, the D.C. Circuit adopted the same approach when reviewing and affirming district court decisions—which themselves did not involve evidentiary hearings—that Special Counsel Robert Mueller's appointment complied with the Appointments Clause.  *In re Grand Jury Investigation*, 916 F.3d 1047, 1053-54 (D.C. Cir. 2019); *accord In re Sealed Case*, 829 F.2d 50, 55 (D.C. Cir. 1987) (deciding the lawfulness of the Iran/Contra Independent Counsel's appointment by considering statutory provisions and a regulation promulgated by the Attorney General).[5]  The Appointments

---

[4] *See* GAO, Financial Audit, Independent Counsel Expenditures for the Six Months Ended March 31, 2003, 4-5 (Sep. 30, 2003) (discussing expenditures under the permanent indefinite appropriation by Special Counsel John C. Danforth); GAO, Financial Audit, Expenditures by Four Independent Counsels for the Six Months Ended March 31, 1994, 1-2, 16 (Mar. 31, 1995) (discussing expenditures under the permanent indefinite appropriation by regulatory independent counsel Robert B. Fiske, Jr.).

[5] As described in *Sealed Case*, Attorney General Edwin Meese III promulgated a regulation in 1987 "to make certain" that the Iran/Contra Independent Counsel could undertake "the necessary investigation and appropriate legal proceedings . . . in a timely manner." 829 F.2d at 59

8

Clause cases discussed in the parties' briefing on this issue provide further examples. *See, e.g.*, *Lucia v. SEC*, 585 U.S. 237, 246-47 (2018) (deciding that an administrative law judge ("ALJ") at the Securities and Exchange Commission qualified as an officer for purposes of the Appointments Clause by analyzing the relevant statutes and regulations under which ALJs at the SEC operate); *Edmond v. United States,* 520 U.S. 651, 662-64 (1997) (deciding that civilian members of the Coast Guard Court of Criminal Appeals were inferior officers under the Appointments Clause by analyzing the statutes defining the position); *see also United States v. Biden*, No. 2:23-cr-599, ECF No. 67 at 20-26 (C.D. Cal. Apr. 1, 2024) (deciding whether Special Counsel David Weiss's appointment complied with the Appointments Clause by analyzing the appointment order, relevant statutes, and the Special Counsel regulations).

Particularly instructive is the Supreme Court's decision in *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). That case presented the question whether an Administrative Patent Judge ("APJ") serving on the Patent Trial and Appeal Board constituted a principal officer under the Appointments Clause. *Id.* at 11. The party bringing that challenge raised it for the first time on appeal, after the time for any factual development had passed. *Id.* at 10. The Supreme Court nonetheless reviewed and resolved the Appointments Clause claim, assessing the power and discretion vested in APJs by reference to the statutory and regulatory framework within which

---

(internal quotation marks omitted); *see* Offices of Independent Counsel; General Powers and Establishment of Independent Counsel—Iran/Contra, 52 F.R. 7270-02, 1987 WL 131422 (Mar. 10, 1987). That regulation provided the Iran/Contra Independent Counsel "identical investigative and prosecutorial powers and jurisdiction" as was available under the Ethics in Government Act. *Sealed* Case, 829 F.2d at 58. In enacting the 1987 regulation, then Attorney General Meese relied on the same statutory authority as the later enacted 1999 regulations. *Compare id.* at 55 (noting that the 1987 regulation relied on 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515), *with* Ground for appointing a Special, 28 C.F.R. § 600.1 (citing as authority for the regulation 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, and 515-519). As an amicus in this case, however, Meese now takes the position that those statutory provisions on which he relied in 1987 do not authorize the appointment of a Special Counsel. *See* ECF No. 364-1 at 5-10.

they operated. *See id.* at 13-17. The same approach—focusing on the relevant constitutional, statutory, and regulatory provisions—is appropriate here to determine whether the Special Counsel possesses the lawful authority to prosecute this case.

Case law also demonstrates that Trump's funding claim does not warrant an evidentiary hearing. In the most analogous case, *United States v. Stone*, *supra*, the defendant argued (as Trump does here) that the permanent indefinite appropriation did not authorize the Special Counsel to investigate or prosecute that case. 394 F. Supp. 3d at 14. To resolve—and ultimately reject—that argument, the district court considered "the statute that authorizes the appointment of special counsel, the Department of Justice regulations governing the attorneys after they are appointed, and the history of the now-Expired Ethics in Government Act." *Id.* at 17. But neither the district court nor the parties considered the development of any factual or evidentiary record appropriate, let alone necessary, to resolve the funding claim. *See, e.g.*, Defendant's Motion to Dismiss, *United States v. Stone*, No. 19-cr-18, 2019 WL 6117554 (D.D.C. Apr. 12, 2019) (not requesting evidentiary hearing). Proceeding without an evidentiary hearing on this issue would also be consistent with the *CFPB* decision, which analyzed the Appropriations Clause issue presented in that case by reference solely to constitutional text, historical practice, and the specific statutory language that established the CFPB's funding mechanism. *See supra* at 2-3; *see also Biden*, *supra*, ECF No. 67 at 28 ("To determine whether Special Counsel Weiss, as appointed, is an 'independent counsel,' the Court must interpret the text of the statute.").[6]

---

[6] The Ninth Circuit remanded for an evidentiary hearing in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), to determine whether the defendants' conduct had "strictly complied" with state law, but only after the court had resolved the legal question concerning the scope of the funding prohibition on prosecutions of certain marijuana-related activities that may have been permitted under state law. *Id.* at 1179; *see* ECF No. 374 at 22 (explaining why *McIntosh* does not support Trump's funding claim). In deciding that legal question, the Ninth Circuit observed that

### III. Conclusion

For the foregoing reasons and those stated in the Government's opposition to Trump's motion to dismiss (ECF No. 374), the Court should deny Trump's motion to dismiss the Superseding Indictment on the grounds that the Special Counsel lacks authority or lawful funding to prosecute this case. The Court should also decline to hold an evidentiary hearing on the motion.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By: /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

James I. Pearce
Assistant Special Counsel
Special Bar ID #A5503077

June 11, 2024

---

it could "only consider the text of an appropriations rider," and not take account of other considerations such as "Congress' expectation of how the funds will be spent." 833 F.3d at 1178 (citing *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 200 (2012)). That reasoning militates against holding an evidentiary hearing on the funding claim presented here.

## CERTIFICATE OF SERVICE

I hereby certify that June 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt