# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 9:23-cr-80101-AMC |
| **DONALD J. TRUMP, WALTINE NAUTA, AND CARLOS DE OLIVEIRA**. | |
| Defendants. | |

**BRIEF FOR AMICI CURIAE IOWA, FLORIDA, WEST VIRGINIA, ALABAMA, ALASKA, ARKANSAS, IDAHO, INDIANA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, AND WYOMING OPPOSING SPECIAL PROSECUTOR'S MOTION TO MODIFY CONDITIONS OF RELEASE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTEREST OF AMICI STATES ................................................................ 1

SUMMARY OF ARGUMENT .................................................................. 3

ARGUMENT ........................................................................................... 6

I.    The request for a prior restraint is vague and overbroad. .............. 6

II.   The special prosecutor cannot meet the heavy burden
      required for a content-based prior restraint. .................................. 9

III.  Interference with the ongoing presidential election weighs
      against a prior restraint................................................................ 17

CONCLUSION ...................................................................................... 19

ADDITIONAL COUNSEL ..................................................................... 21

CERTIFICATE OF SERVICE................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................... 19

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ................................. 15

*Bush v. Gore*, 531 U.S. 98 (2000) (per curiam) ....................................... 18

*Citizens United v. FEC*, 558 U.S. 310 (2010) .......................................... 18

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ............................. 8

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................... 7

*In re A Minor*, 537 N.E.2d 292 (Ill. 1989) ................................................. 14

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) .................. 9, 16

*Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829 (1978) .......... 5, 9, 10

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) ..................... 2

*Morse v. Frederick*, 551 U.S. 393 (2007) ..................................................... 2

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ............... 2, 9, 10, 17

*Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001) ..................................... 17

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002) ................. 2, 19

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ................................................. 4

*Stinnett v. Reg'l Transp. Dist.*, 477 F. Supp. 3d 1187 (D. Colo. 2020) ....................................................................................................... 16

*United States v. Brewster*, 408 U.S. 501 (1972) ....................................... 11

*United States v. Carmichael*, 326 F. Supp. 2d 1267 (M.D. Ala. 2004) ........................................................................................................ 11

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987) ...............................11

*United States v. Parker*, 696 F. App'x 443 (11th Cir. 2017) ....................6

*United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023) ................. passim

*Virginia v. Black*, 538 U.S. 343 (2003) ...............................................2, 15

*Watts v. United States*, 394 U.S. 705 (1969)...........................................15

*Wilson v. Moore*, 193 F. Supp. 2d 1290 (S.D. Fla. 2002)........................11

**Statutes**

18 U.S.C. § 3142...................................................................................6, 8

**Constitutional Provisions**

U.S. Const. amend. I...................................................................................1

**Law Review Articles**

Fred C. Zacharias & Bruce A. Green, *Federal Court Authority to Regulate Lawyers: A Practice in Search of A Theory*, 56 Vand. L. Rev. 1303 (2003) ...................................................................................16

**Other Sources**

Brett L. Tolman, *Trump trial shows the ominous evolution of our criminal justice system. Who's next?,* Fox News (June 6, 2024), https://perma.cc/D7TH-RZ8E ................................................................8

Carol D. Leonnig et. al., *Showdown Before the Raid: FBI Agents and DOJ Prosecutors Argued Over Trump*, Wash. Post (Mar. 1, 2023), https://perma.cc/TKB2-H42P ..................................................12

Charlie Savage, *Convictions of Biden's Son and Trump Put the Justice System on Trial*, N.Y. Times (June 11, 2024), https://perma.cc/7744-7944 ...............................................................8

Paul P. Murphy et al., *Account bearing Ohio FBI standoff suspect's name encouraged violence against the agency in posts on Trump social media platform*, CNN (Aug. 12, 2022), https://bit.ly/ 3VcTGqF ..............................................................................13

## INTEREST OF AMICI STATES

Free and fair elections in the United States depend on candidates' ability to speak about important issues of the day. Attempts to stop a candidate from speaking out harm more than just the candidate. They also hurt the voters, who are denied access to crucial information, and the States, which are responsible for managing elections. And when agents of one candidate seek a court order to muzzle discussion on matters relating to important electoral issues, that restraint raises even more fundamental First Amendment concerns.

The States of Iowa, Florida, West Virginia, Alabama, Alaska, Arkansas, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, and Wyoming stand four-square behind the protections of the First Amendment of the Constitution. Each branch of government, even the judiciary, should be cautious about abridging core political speech—especially core political speech relating to a presidential election. U.S. Const. amend. I. Unfortunately, the special prosecutor's request here does not reflect that caution.

The free-speech right is at its strongest when it protects political speech. Indeed, "[p]olitical speech . . . is 'at the core of what the First Amendment is designed to protect.'" *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003) (plurality opinion)); *see also Republican Party of Minn. v. White*, 536 U.S. 765, 793 (2002) (Kennedy, J., concurring) ("The political speech of candidates is at the heart of the First Amendment, and direct restrictions on the content of candidate speech are simply beyond the power of government to impose."). "Political speech is the primary object of First Amendment protection and the lifeblood of a self-governing people." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 228 (2014) (Thomas, J., concurring in the judgment) (quotation omitted).

Yet special prosecutor Jack Smith, on behalf of the United States, asks this Court to curtail that right by ordering a prior restraint on President Trump's constitutionally protected speech. Such an order is presumptively unconstitutional. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976). If granted, this request would prevent the presumptive Republican nominee for President of the United States from speaking out against "the prosecution and the criminal trial process that seek to take away his

liberty." *United States v. Trump*, 88 F.4th 990, 1008 (D.C. Cir. 2023). That prosecution, of course, is led by a Department that President Trump's political opponent controls.

As administrators of free and fair elections, the Amici States have an interest in ensuring no illegal prior restraint is entered against any major political candidate. Our citizens have an interest in hearing from major political candidates in the upcoming presidential election. With these interests in mind, the Amici States believe that this Court should not order a restriction on President Trump's speech.

Accordingly, the Amici States file this brief in support of President Trump and ask this Court to deny the United States' motion to amend his conditions of release.

## SUMMARY OF ARGUMENT

President Donald Trump is the presumptive Republican nominee for President of the United States and is being prosecuted by a Department controlled by his chief political rival and presumptive opponent in this fall's election, President Joe Biden. But attempting to take away President Trump's liberty is seemingly not enough. The Administration now also seeks to silence him from criticizing the prosecution. The

government's request is an unprecedented assault on President Trump's First Amendment rights, as well as on the American people's essential reciprocal right to hear what he has to say about the most heated political issue of the day.

Although President Trump is also currently a defendant in this case, that status does not justify issuing a prior restraint against him. Courts no doubt must ensure that they "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966). But criticism of how an investigation or prosecution is proceeding should not be enough to trigger such steps.

For several reasons, the United States' request is unjustified.

First, the federal government's request for a prior restraint is vague and overbroad. It asks the district court to gag President Trump from making "statements that pose a significant, imminent, and foreseeable danger to law enforcement agents participating in the investigation and prosecution of this case." Gov't Mot. at 1, ECF No. 592. But it does not explain what those statements may be. Judging from what the special prosecutor deems to be "threats" in his motion, it is fair to infer that

covered statements could include *any* criticism of the prosecution team in this case. But that request captures "core political speech entitled to the strongest form of First Amendment protection." *Trump*, 88 F.4th at 1022.

Second, the federal government cannot meet the heavy burden required for a prior restraint. Restricting speech about ongoing judicial proceedings requires a "clear and present danger to the administration of justice." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 844 (1978). The special prosecutor cannot make that showing because he has not demonstrated that President Trump's comments have threatened law enforcement or that his comments have resulted in threats to law enforcement.

Third, the presidential campaign is in full swing. As Americans turn their attention to the upcoming presidential election, courts should take special care to ensure voters can judge the candidates on their own merits. A prior restraint that might limit a candidate's ability to campaign must meet exacting standards. The proposed order here would not meet those standards.

## ARGUMENT

### I.   The request for a prior restraint is vague and overbroad.

The request for a prior restraint is vague and overbroad. If the Court were to enter it, it would certainly invite only more complications and headaches in an already challenging case.

The federal government asks the district court to gag President Trump from making "statements that pose a significant, imminent, and foreseeable danger to law enforcement agents participating in the investigation and prosecution of [his] case." Gov't Mot. at 1, ECF No. 592. But what are those statements? The federal government does not explain.

That's reason enough alone to deny the request. Generally, orders that could give rise to punitive sanctions should be "clear, definite, and unambiguous in requiring . . . action." *United States v. Parker*, 696 F. App'x 443, 447 (11th Cir. 2017) (cleaned up); *see also* 18 U.S.C. § 3142(h)(1) (requiring that pretrial release conditions be "sufficiently clear and specific to serve as a guide for the person's conduct"). But the special prosecutor's proposed order fails that test, as President Trump would be left to guess how third parties might respond to even the most

6

innocuous statements about his case. Worse still, he would likely be compelled to "steer far wider of the unlawful zone than if the boundaries of the forbidden area were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (cleaned up).

Reading between the lines, the federal government's request sweeps too broadly. The special prosecutor identifies no comments by President Trump that facially "pose a significant, imminent, and foreseeable danger to law enforcement agents." Gov't's Mot. at 1, ECF No. 592. It is not alleged, for instance, that he called for violence or targeted specific individuals. Rather, the special prosecutor points to general criticisms President Trump has made regarding the United States' seizure of evidence from his private residence. The special prosecutor thus argues that *any* comment the former President may make about the prosecution and investigation could potentially "pose a significant, imminent, and foreseeable danger" to them. *Id*.

That reasoning does not pass constitutional muster. Criminal defendants "have a greater constitutional claim than other trial participants to criticize and speak out against the prosecution and the criminal trial process that seek to take away his liberty." *Trump*, 88 F.4th at 1008;

7

*see also Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991) ("[S]peech critical of the exercise of the State's power," including speech concerning purported "police corruption," "lies at the very center of the First Amendment."). And President Trump's comments about the seizure of evidence from his private residence that led to his indictment is a prime example of that type of protected speech. Indeed, one of the most important public debates during this process has been the role of the justice system and its potential weaponization to target political opponents. *See* Brett L. Tolman, *Trump trial shows the ominous evolution of our criminal justice system. Who's next?,* Fox News (June 6, 2024), https://perma.cc/D7TH-RZ8E; Charlie Savage, *Convictions of Biden's Son and Trump Put the Justice System on Trial*, N.Y. Times (June 11, 2024), https://perma.cc/7744-7944. To the extent the government is genuinely concerned with real threats to its personnel, this order would go far beyond the narrow circumstances in which it can be assumed that speech *will* give rise to genuine danger.

Granting the request would place a thumb on the political scale and turn standard protections for criminal defendants on their head. *See* 18 U.S.C. § 3142(c)(1)(B) (requiring that pretrial release conditions be the

"least restrictive" means of achieving the statutory objectives). Other candidates and their supporters will be free to characterize and attack President Trump relating to this investigation and prosecution. He, however, would not be able to directly respond without fear of incurring a contempt sanction (or worse) for violating a gag order. Silencing one side of a contentious political debate would turn the First Amendment on its head.

## II.   The special prosecutor cannot meet the heavy burden required for a content-based prior restraint.

"[G]ag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press*, 427 U.S. at 559. Restricting speech about ongoing judicial proceedings thus requires a "clear and present danger to the administration of justice." *Landmark*, 435 U.S. at 844. Indeed, *Nebraska Press* rejected prior restraints imposed on press coverage of a high-profile murder trial—even at the risk of prejudicing a small-town jury pool. 427 U.S. at 561–62.

9

Given the serious disfavor towards such restrictive orders, the party seeking one pending a criminal trial bears "the heavy burden of demonstrating, in advance of trial, that without prior restraint a fair trial will be denied." *Id.* at 569. When the record lacks "evidence to support" such an order, the order should not issue and will not be upheld. *Id.* at 565; *see Landmark,* 435 U.S. at 843.

In holding the already-narrowed restraint in *Nebraska Press* unconstitutional, the Supreme Court set forth three factors governing whether a prior restraint is justified: (1) whether the publicity would "impair the defendant's right to a fair trial;" (2) whether "measures short of an order" of restraint might have impaired a fair trial; and (3) whether the restraint would be effective in ensuring a fair trial. 427 U.S. at 562–65. The Court could not determine there "that the restraining order actually entered would serve its intended purpose." *Id.* at 569. It held that the record did not demonstrate "the degree of certainty our cases on prior restraint require." *Id.* The Court concluded that while "the guarantees of freedom of expression are not an absolute prohibition under all circumstances[,] . . . the heavy burden imposed as a condition to securing a prior restraint was not met." *Id.* at 570.

The Sixth Circuit, too, employed the "clear and present danger" test when considering whether a politician-defendant could express himself outside the courtroom. *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987). That "defendant, a Democrat," was "entitled to attack the alleged political motives of the Republican administration" he claimed was "persecuting him because of his political views and his race." *Id.* at 600–01. The Sixth Circuit recognized that "separation of powers—a unique feature of our constitutional system designed to insure that political power is divided and shared—would be undermined if the judicial branch should attempt to control political communication between a congressman and his constituents." *Id.* at 601. A politician's role "includes communications with the electorate." *Id.* (citing *United States v. Brewster*, 408 U.S. 501, 524 (1972)); *see also, e.g.*, *United States v. Carmichael*, 326 F. Supp. 2d 1267, 1294 (M.D. Ala. 2004) (applying a "serious and imminent threat" standard to a gag order that "would burden only the defense"); *Wilson v. Moore*, 193 F. Supp. 2d 1290, 1291 (S.D. Fla. 2002) (explaining that the "clear and present danger" standard applies to gag orders against defendants).

Here, the special prosecutor argues that President Trump's "mischaracterization" of facts surrounding the seizure of evidence from his private residence "has endangered law enforcement officers" and "threatened the integrity of the[] proceedings." Gov't Mot. at 11, ECF No. 592. But that reasoning does not justify curtailing his protected speech for three reasons.

First, the special prosecutor has not shown that President Trump's comments are a "mischaracterization" of the circumstances involving the execution of the search warrant at his private residence. Indeed, there were "[m]onths of disputes between the Justice Department prosecutors and FBI agents over how best to try to recover classified documents from [President] Trump's Mar-a-Lago club." Carol D. Leonnig et. al., *Showdown before the raid: FBI agents and DOJ prosecutors argued over Trump*, Wash. Post (Mar. 1, 2023), https://perma.cc/TKB2-H42P. President Trump is justified in questioning the FBI's decision to engage in the raid—questions that were raised by senior FBI officials as well. And President Trump is justified in highlighting that the raid invoked the FBI's use-of-force policy rather than taking an approach that would not have needed such authorization.

In arguing otherwise, the special prosecutor resorts to unsupported insinuation. President Trump has never said, for instance, that "federal law enforcement agents . . . were complicit in a plot to assassinate him." Gov't's Mot. at 1, ECF No. 592. Likewise, the special prosecutor says that an "armed attack . . . was carried out by one of [President Trump's] supporters in the wake of Trump's Truth Social statements" on the raid, *id.* at 8—implying, without any evidence at all, that President Trump is to blame for the actions of a man who was already "known to the FBI." Paul P. Murphy et al., *Account bearing Ohio FBI standoff suspect's name encouraged violence against the agency in posts on Trump social media platform*, CNN (Aug. 12, 2022), https://bit.ly/3VcTGqF. And he alleges that President Trump's perspective on the raid already "*has* endangered law enforcement officers," but he offers not one single example of a person who faced danger from the statements at issue. Gov't's Mot. at 11, ECF No. 592 (emphasis added).

In any event, precluding President Trump from discussing the terms of the authorized raid on his residence is improper. Indeed, President Trump's ability to question the federal government's motive behind the search is an essential part of speaking out "against the prosecution

13

and the criminal trial process that seek to take away his liberty." *Trump*, 88 F.4th at 1008. Nothing in the record shows that President Trump made "intentionally false and inflammatory statements" regarding the search. Gov't's Mot. at 1, ECF No. 592. It is essential that he be able to "voice his opinion" about how those who served in "high-level government positions . . . performed their public duties." *Trump*, 88 F.4th at 1022.

Second, President Trump's speech did not endanger law enforcement officials. The special prosecutor argues that President Trump's criticism of the search of his private residence invites "threats and harassment" against law enforcement. Gov't's Mot. at 3, ECF No. 592. But he offers no evidence of actual threats that have emerged since President Trump's commentary on the seizure of evidence from his private residence. *See Trump*, 88 F.4th at 1027 (noting that the First Amendment does not protect "true threats"). It is not even clear how such threats *could* arise given that the identities of the persons involved in the raid are largely not public. Hypothetical and conjectural threats—that is, worries—are not enough to show an "obstruct[ion] of the justice process" worthy of encroaching on President Trump's core political speech. *Id.*; *see also, e.g.*, *In re A Minor*, 537 N.E.2d 292, 302 (Ill. 1989) (evidence of

14

"certain threats . . . circulating in the community" was not "sufficient[]" to justify a gag order (quotation omitted)).   "Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it *may* encourage [others] to engage in illegal conduct." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253–54 (2002) (emphasis added).

Third, nothing President Trump has said can be construed as direct threats towards law enforcement. "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. "[P]olitical hyperbole" doesn't count. *Watts v. United States*, 394 U.S. 705, 708 (1969). Although President Trump will sometimes use colorful rhetoric to communicate his intent to fight hard for Americans, he has never threatened the law-enforcement officials involved in this case, nor has he invited others to do so. Without evidence of definite "obstruct[ions of] the justice process," any prior restraint like the one proposed by the special prosecutor would unfairly prejudice President Trump and encroach on the public's interest in the fair administration of criminal justice. *Trump*, 88 F.4th at 1027.

Fourth, though the government repeatedly invokes the "integrity of the proceedings," Gov't Mot. at 1, 3, 7, 11, ECF No. 592, it never explains with any specificity how President Trump's comments have endangered the judicial process itself. For example, the special prosecutor never offers proof that the Court will be unable to sit a fair jury because of any comments from President Trump. Though he speaks in generalities about "messages . . . to potential juries," *id.* at 3, voir dire and other tools can ferret out any issues with jurors, *Murphy-Brown*, 907 F.3d at 799; *see also Stinnett v. Reg'l Transp. Dist.*, 477 F. Supp. 3d 1187, 1193 (D. Colo. 2020) (collecting authorities). Nor does the special prosecutor allege (let alone prove) that any comments will sway witnesses or otherwise color the evidence. *See* Fred C. Zacharias & Bruce A. Green, *Federal Court Authority to Regulate Lawyers: A Practice in Search of A Theory*, 56 Vand. L. Rev. 1303, 1330 (2003) (listing "witness bribery or subornation of perjury" as examples of actions that "impact[] . . . the integrity of the proceedings"). Merely invoking a platitude cannot be enough to justify such a severe restraint on President Trump's First Amendment rights.

16

No evidence shows that any "restraining order actually entered would serve its intended purpose." *Nebraska Press*, 427 U.S. at 569. The request cannot be granted.

## III. Interference with the ongoing presidential election weighs against a prior restraint.

If granted, the special prosecutor's request will prohibit President Trump from discussing major campaign issues during a presidential election year. But "[l]ike any other criminal defendant, Mr. Trump has a constitutional right to speak," and "his millions of supporters, as well as his millions of detractors, have a right to hear what he has to say." *Trump*, 88 F.4th at 1007. Indeed, the citizens of our States have a right to hear from presidential candidates on these important issues—including when one of those issues is an ongoing prosecution against that candidate. *See Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001) (describing how a listener can be constitutionally injured by his or her "inability to receive speech from a willing speaker").

Issuing a prior restraint against President Trump here would set an unsettling precedent for future political candidates. Political opponents and opportunistic litigators may seek to stymie debate by relying on whatever order is issued here. Such an outcome would be an

unwelcome burden on the democratic process. Even more so when it comes to the highest stakes battle in American politics, a presidential election.

Elections are a prime opportunity for elected officials to hear from their constituents. Depriving "the electorate . . . of information, knowledge, and opinion vital to its function," and suppressing "views and viewpoints from reaching the public" in an election violates core First Amendment principles. *Citizens United v. FEC*, 558 U.S. 310, 354 (2010) (cleaned up). And gagging a candidate means that constituents cannot hear how the candidate will reply to a given issue of concern—a concern like the weaponization of prosecutorial processes against political opponents. Yet the "Constitution's design . . . leave[s] the selection of the President to the people, through their legislatures, and to the political sphere." *Bush v. Gore*, 531 U.S. 98, 111 (2000) (per curiam).

To be sure, there are times when a gag order, even of a political candidate, may be justified. But this Court need not find the distant boundary of when such an order is justified because the facts here do not justify such an extraordinary restraint.

All Americans are entitled to have their free-speech rights respected. The presidential election is a key component in our democratic republic—one "implicat[ing] a uniquely important national interest." *Anderson v. Celebrezze*, 460 U.S. 780, 794–95 (1983). A prior restraint on one of the major party candidates for President will impede Americans' ability to communicate and to receive communication from those who might lead an entire branch of the federal government. President Trump is being gagged from discussing matters of importance with his constituents—and they are being prohibited from learning from those conversations about how President Trump proposes to lead. But in the end, a government may not "censor what the people hear as they undertake to decide for themselves which candidate is most likely to be an exemplary . . . officer. Deciding the relevance of candidate speech is the right of the voters, not the [government]." *Republican Party*, 536 U.S. at 794 (Kennedy, J., concurring).

## CONCLUSION

The Court should deny the special prosecutor's request to modify President Trump's conditions of release to restrict his First Amendment rights.

Respectfully submitted,

ASHLEY MOODY
Attorney General of Florida

/s/ Henry C. Whitaker
HENRY C. WHITAKER
  (FBN 1031175)
*Solicitor General*

JAMES H. PERCIVAL
  (FBN 1016188)
*Chief of Staff*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@
  myfloridalegal.com
james.percival@
  myfloridalegal.com

ATTORNEYS FOR
  AMICI CURIAE

June 16, 2024

BRENNA BIRD
Attorney General of Iowa

ERIC H. WESSAN
*Solicitor General*

1305 E. Walnut Street
Des Moines, IA 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

PATRICK MORRISEY
Attorney General of West Virginia

MICHAEL R. WILLIAMS
*Solicitor General*

State Capitol Complex,
  Bldg. 1, Rm. E-26
1900 Kanawha Blvd. E.
Charleston, WV 25305
304-558-2021
304-558-0140 (fax)
michael.r.williams@wvago.gov

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General of Alabama

TREG TAYLOR
Attorney General of Alaska

TIM GRIFFIN
Attorney General of Arkansas

RAÚL LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

KRIS KOBACH
Attorney General of Kansas

RUSSELL COLEMAN
Attorney General of Kentucky

LIZ MURRILL
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

ANDREW T. BAILEY
Attorney General of Missouri

AUSTIN KNUDSEN
Attorney General of Montana

MIKE HILGERS
Attorney General of Nebraska

DREW WRIGLEY
Attorney General of North Dakota

DAVE YOST
Attorney General of Ohio

GENTNER DRUMMOND
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARTY JACKLEY
Attorney General of South Dakota

JONATHAN SKRMETTI
Attorney General of Tennessee

KEN PAXTON
Attorney General of Texas

SEAN D. REYES
Attorney General of Utah

BRIDGET HILL
Attorney General of Wyoming

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of June, 2024, this

brief was electronically filed with the Clerk of Court using the CM/ECF

system, which will serve all counsel of record.

/s/ *Henry C. Whitaker*
Solicitor General