

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
(Cannon/Reinhart)

---

### BRIEF IN SUPPORT OF GOOD LAWGIC, LLC'S MOTION SEEKING LEAVE TO APPEAR *PRO HAC VICE* AND TO FILE *AMICUS CURIAE* BRIEF

---

**MURRAY-NOLAN BERUTTI LLC**
*Pro Hac Vice Attorneys (Motion Pending)*
136 Central Avenue
2nd Floor
Clark, New Jersey 07066
(908) 508-2111
N.J. Bar No.: 023361992
Ron@MNBlawfirm.com

**CHAMBERLIN LAW FIRM**
*Local Counsel*
3630 W Kennedy Blvd
Tampa, FL 33609
(813) 444-4777
Fl. Bar No.: 527793
Hunter@Chamberlinlawfirm.com

# **TABLE OF CONTENTS**

                                                                                                                              **Page**

TABLE OF CONTENTS..................................................................................................... i

STATEMENT OF THE CASE...........................................................................................1

LEGAL ARGUMENT ......................................................................................................2

Point I: The Gag Orders would prevent Good Lawgic from engaging in critical news
gathering related to issues that are central to the fairness of the criminal
trial..................................................................................................................................2

    A. The First Amendment right to freedom of speech on issues of public
    importance is entitled to the highest of protections. ...........................................2

    B.     The Freedom of the Press is of the highest value to a free society.........................3

    C.     There is no standard for gag orders of criminal defendants whose speech is
    political and newsworthy, thus compelling the strictest of limitations on the ability to
    impose such a gag order under the United States Constitution.........................................4

Point II: Leave to File a Brief as Amicus Curiae Should be Granted............................................8

CONCLUSION....................................................................................................................9

## TABLE OF AUTHORITIES

**Cases:**

*Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963)................................................................3

*Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 499 (1984).......................6

*Branzburg v. Hayes,* 408 U.S. 665, 704-705 (1972).....................................................................3

*Bridges v. California*, 314 U.S. 252, 268 (1941)......................................................................4,7,8

*Chambers v. Florida*, 309 U.S. 227, 236-237 (1940)....................................................................4

*Connick v. Myers,* 461 U.S. 138, 145 (1983)................................................................................2

*Garrison v. La.,* 379 U.S. 64, 73 (1964)........................................................................................2

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1035 (1991).........................................................5,6,7

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995)....................................................3

*News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515 (11th Cir. 1991).........................................7

*News & Sun-Sentinel Co. v. Cox*, 700 F. Supp. 30, 31 (S.D.Fl. 1988)...........................................8

*New York Times Co. v. Sullivan*, 376 U.S. 254, 284-286 (1964)...................................................6

*New York Times Co. v. United States*, 403 U.S. 713, 714 (1971)...................................................3

*Organization for a Better Austin* v. *Keefe*, 402 U.S. 415, 419 (1971)...........................................3

*Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D.Fl. 1991).......................8

*Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)...........................................................................4

*Snyder v. Phelps,* 562 U.S. 443, 451-452 (2011)...........................................................................3

*303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2311 (2023)............................................................2

*United States v. McGregor*, 838 F. Supp. 2d 1256, 1261 (M.D. Al 2012).......................................5

*United States v. Ford,* 830 F.2d 596, 600 (6th Cir. 1987)...............................................................5

**Publications:**

Madison, *Annals of Congress 1789-1790*, 434.................................................................7

*Writings of James Madison*, 1790-1802, 387...........................................................8

**<u>Rules:</u>**

*Fed.R.App.P.* 29.............................................................................................8

*Supreme Court Rule* 37..................................................................................8

## STATEMENT OF THE CASE

Good Lawgic, LLC ("Good Lawgic") is a media company which covers trial and legal issues on an almost-nightly podcast which has thousands of listeners and followers. Good Lawgic is owned by Joseph Nierman who hosts the podcast and is an official member of the New York press. (Nierman Dec. ¶¶2-8  ) Good Lawgic has previously endeavored to obtain comment from President Donald J. Trump regarding important matters related to his criminal trial in New York, and also to interview President Trump related to his criminal trials. (Id. ¶9  ) Good Lawgic has already once turned down for media requests due to the gag order imposed on President Trump  in New York. (Id. ¶10) Good Lawgic anticipates making further media inquiries of President Trump related to this matter as it proceeds which will likewise result in President Trump being compelled to turn down Good Lawgic's media requests should a Special Counsel Jack Smith's gag order request be granted. (Id. ¶12) Such outcome would violate Good Lawgic's First Amendment Free Press rights under the circumstances and will cause it irreparable harm. It also will violate President Trump's Sixth Amendment rights.

Under the circumstances, Good Lawgic moves this Court to permit it to file this *amicus curiae* brief. Good Lawgic believes that its brief will help this Court to fully consider the constitutional dimensions of Mr. Smith's request in terms of its adverse impact on third party rights which are sacrosanct and which must not be abridged in the manner he seeks, and how such abridgement would violate President Trump's Sixth Amendment rights to a fair trial, such that a gag order likely would necessitate retrial in the future.

## **LEGAL ARGUMENT**

**Point I:** The Gag Orders would prevent Good Lawgic from engaging in critical news gathering related to issues that are central to the fairness of the criminal trial.

>    ***A.***      ***The First Amendment right to freedom of speech on issues of public importance is entitled to the highest of protections.***

In light of the profound newsworthiness and national importance of the criminal defendant, and the unprecedented nature of a federal trial of former President of the United States who may be subject to a gag order, it is essential to recognize that everything that President Trump says is newsworthy and is entitled to the highest available constitutional protection.

"If there is any fixed star in our constitutional constellation, it is the principle that the government may not interfere with an uninhibited marketplace of ideas." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2311 (2023) (quotations omitted, cleaned up). "The First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided,' and likely to cause 'anguish' or 'incalculable grief.'" *Ibid* at 2312 (cleaned up). "Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." *Garrison v. La.*, 379 U.S. 64, 73 (1964). "Moreover, in the case of charges against a popular political figure it may be almost impossible to show freedom from ill-will or selfish political motives." *Ibid.* at 74 (quotation omitted).

The United States Supreme Court "has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quotations omitted). "Although political

speech by its nature will sometimes have unpalatable consequences, ... in general, our society accords greater weight to the value of free speech than to the dangers of its misuse." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). "Speech on matters of public concern is at the heart of the First Amendment's protection." *Snyder v. Phelps*, 562 U.S. 443, 451-452 (2011) (cleaned up).

### B. The Freedom of the Press is of the highest value to a free society.

Like the general principles of free speech on matters of public concern, the right to a robust free press is entitled to the highest of constitutional protections. "Freedom of the press is a 'fundamental personal right' which 'is not confined to newspapers and periodicals. It necessarily embraces pamphlets and leaflets ... The press in its historic connotation comprehends 'every sort of publication which affords a vehicle of information and opinion.'" *Branzburg v. Hayes*, 408 U.S. 665, 704-705 (1972) (*quoting Lovell v. Griffin*, 303 U.S. 444, 452). "[N]ews gathering is not without its First Amendment protections." *Id.* 408 U.S. at 707. "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." *Id.* at 681

One needs to look no further than *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971), to understand the wide berth that the First Amendment provides to the freedom of the press. Widely known as the *Pentagon Papers* case, the Supreme Court rejected efforts by the government to restrain publication of a stolen classified study entitled "History of U.S. Decision-Making Process on Viet Nam Policy," as that war raged.

"Any system of prior restraints of expression comes to this Court bearing **a heavy presumption against its constitutional validity.**" *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 70 (1963) (emphasis added). "The Government 'thus carries a heavy burden of showing justification for the imposition of such a restraint.'" *Pentagon Pagers*, 403 U.S. at 714 (*quoting*

*Organization for a Better Austin* v. *Keefe*, 402 U.S. 415, 419 (1971)). "It must be recognized that public interest is much more likely to be kindled by a controversial event of the day than by a generalization, however penetrating, of the historian or scientist." *Bridges v. California*, 314 U.S. 252, 268. "No suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression." *Id.* at 269.

  **C.**   *There is no standard for gag orders of criminal defendants whose speech is political and newsworthy, thus compelling the strictest of limitations on the ability to impose such a gag order under the United States Constitution.*

  The law has taken extra precautions to ensure that all activities surrounding a criminal trial consider, first and foremost, the criminal defendant's right to a fair trial under the Sixth Amendment.

  In *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966), the Supreme Court limited speech because its form of expression was damaging **to the criminal defendant's ability to obtain to a fair trial** and thereby violated the Defendant's Fourteenth Amendment right. That is contrary to the issues involved herein. Notably, in *Sheppard,* the Supreme Court quoted *Chambers* v. *Florida*, 309 U.S. 227, 236-237 (1940), when writing that "the Court has insisted that **no one be punished for a crime** without 'a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power.'" *Sheppard,* 384 U.S. at 350 (emphasis added). In other words, the United States Supreme Court's concern when restricting speech at a trial is not related to a criminal defendant's speech so that the *prosecution* is deprived of a smooth trial which is not subject to scrutiny, *but rather is concerned with the defendant being deprived of his rights to a fair trial.*

To that point, the Sixth Circuit Court of Appeals has written: **"it is individuals, not the government, to whom First Amendment interests attach. To the extent that publicity is a disadvantage for the government, the government must tolerate it. The government is our servant, not our master."** *United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987) (emphasis added); *see also United States v. McGregor*, 838 F. Supp. 2d 1256, 1261 (M.D. Al 2012) (citing *Ford* for the principal that "there must be a 'clear and present danger' of prejudice before a court may issue a prior restraint against the media.")

Further, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1035 (1991), concerned the standard for placing restrictions on attorney speech related to pretrial publicity. Again, the question of whether a criminal defendant could be gagged during a trial was not an issue, but rather whether a standard that the attorney's speech presented a "substantial likelihood of material prejudice," as opposed to the long-held standard that such speech presented a "clear and present danger," violated the attorney's First Amendment protection. The Supreme Court ruled that the standard itself did not violation the attorney's First Amendment protection, but that the State had not demonstrated that the attorney's speech (which was the subject of a disciplinary hearing after the conclusion of trial) had, in fact, demonstrated a substantial likelihood of material prejudice.

*Gentile* is highly pertinent in this context to the extent that it defeats a claim that a gag order is warranted in the present setting. For instance, the Supreme Court noted that regardless of whether a "serious and imminent threat" or a "substantial likelihood of material prejudice" standard is applied, each requires an assessment of **proximity and degree** of harm." *Ibid* at 1037 (emphasis added). The Special Counsel offers no evidence that President Trump's words have proximity to any real time harm of any degree, but rather, is entirely anecdotal and lacking in proximation. Thus, granting a gag order under such circumstances would violate *Gentile*.

5

Moreover, *Gentile* concerned an issue of significant public concern, causing the Supreme Court to assert, "[p]ublic awareness and criticism have even greater importance where, as here, they concern allegations of police corruption." *Id.* at 1035. The Supreme Court further expounded on the grave importance of the First Amendment with respect to trials as follows, *Ibid.* (emphasis added; cleaned up; citations omitted):

> The judicial system, and in particular our criminal justice courts, play a vital part in a democratic state, and the public has a legitimate interest in their operations. It would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted. Public vigilance serves us well, for **the knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power. Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account.** As we said in *Bridges* ... **limits upon public comment about pending cases are "likely to fall not only a crucial time but upon the most important topics of discussion."**

> No suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression.

As for appellate review of gag orders, the Supreme Court wrote: "We have held that 'in cases raising First Amendment issues . . . **an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'"** *Id.* at 1038 (*quoting Bose Corp.* v. *Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984); *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 284-286 (1964)).

If anything, rather than supporting imposition of gag orders, *Gentile* and its progeny hold to the contrary. Restriction of free speech at trials is to be extremely circumscribed as related to parties ***other than*** the criminal defendant. Efforts to gag a criminal defendant are to be even more

narrowly tailored because the criminal defendant has a Sixth Amendment right to a fair trial which weighs heavier in balance than does the State's rights to prosecution.

The Eleventh Circuit has also weighed in. In *News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1515 (11th Cir. 1991), the Court limited the restriction of free press rights in a criminal trial to instances where interviews of trial participants and subsequent reporting created what the trial judge saw as a "potential inability of impaneling an impartial jury." In determining whether such conditions existed, the trial judge first "conducted a full hearing before entering the restrictive order," before concluding that that "there was no less restrictive means **of safeguarding the defendants' Sixth Amendment rights.**" (emphasis added)

Given the Supreme Court being very reticent to permit a defense attorney's speech in a police corruption case in *Gentile* to be curtailed, one can only imagine what the Supreme Court would think about curtailing the speech of a former President of the United States during the first-ever criminal trial of a former President in federal court. The public's perception of the criminal trial is magnified multiple times more than that of a police corruption trial, especially since that former President is also the presumptive nominee for President of the political party in opposition to the prosecution's political party. If the gag in *Gentile* did not persuade the Supreme Court as to its constitutionality, it is impossible to see how the Supreme Court could find otherwise here.

Moreover, since the United States Supreme Court noted that the "clear and present danger" test versus the "substantial likelihood of material prejudice" standard, it is worthwhile examining the seminal "clear and present danger" case that predated *Gentile*. "What finally emerges from the 'clear and present danger' cases **is a working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished.**" *Bridges*, *supra*, 314 U.S. at 264. "The freedom of press and rights of conscience," are

7

the "choicest privileges of the people." *Ibid* (*quoting* Madison, *Annals of Congress* 1789-1790, 434). Continuing in examining the "clear and present danger" standard, the *Bridges* Court noted "the state of the press under the common law, cannot be the standard of freedom in the United States." *Ibid* (*quoting Writings of James Madison*, 1790-1802, 387). Thus, "the power of the courts to protect themselves from disorder and disturbances in the court room by use of contempt proceedings could seriously be challenged as conflicting with constitutionally secured guarantees of liberty." *Id.* at 266. "It must be recognized that public interest is much more likely to be kindled by a controversial event of the day than by a generalization, however penetrating, of the historian or scientist." *Id.* at 269 "[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And enforced silence, no matter how limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect." *Id.* at 270-71. So too does silencing the former President of the United States as he is faced with a criminal trial being prosecuted by his political adversary during his campaign for re-election.

**Point II: Leave to File a Brief as *Amicus Curiae* Should be Granted.**

"While *Fed.R.App.P.* 29 and *Supreme Court Rule* 37 provide for the filing of *amicus curiae* briefs, the *Federal Rules of Civil Procedure* lack a parallel provision regulating *amicus* appearances at the trial level." *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500 (S.D.Fl. 1991). However, the District Court "has the inherent authority to appoint *amici curiae*, or 'friends of the court,' to assist it in a proceeding." *Id.* "Inasmuch as an *amicus* is not a party and does not represent the parties but participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of

participation by the *amicus*." *Id.* (*quoting News & Sun-Sentinel Co. v. Cox*, 700 F. Supp. 30, 31 (S.D.Fl. 1988).

In the present case, Good Lawgic's application should be granted since neither party to this motion has briefed the First Amendment free press implications of the Special Counsel's motion, and how such implications may affect President Trump's Sixth Amendment rights. Such questions are of critical importance herein since the failure to consider them may indeed result in a gag order, a trial, and a reversal for violation of the press' First Amendment rights and a related violation of President Trump's Sixth Amendment rights.

## CONCLUSION

For the reasons set forth above it is respectfully urged that this Court grant Good Lawgic, LLC's motion granting leave to file as *amicus curiae*, and for Ronald A. Berutti, Esq., to appear *pro hac vice* with respect to this motion.

**MURRAY-NOLAN BERUTTI LLC**
Ronald A. Berutti,
*Pro Hac Vice (motion pending)*
*Attorneys for Good Lawgic, LLC*
136 Central Avenue
2nd Floor
Clark, New Jersey 07066
(908) 588-2111
NJ Bar Id: 023361992
Ron@MNBlawfirm.com

**CHAMBERLIN LAW FIRM**

*s/ Hunter H. Chamberlin*

By:_____
　　　Hunter H. Chamberlin
　　　*Local Counsel*
　　　3630 W Kennedy Blvd
　　　Tampa, FL 33609 l
　　　(813) 444-4777 l
　　　Fl. Bar No.: 527793
　　　Hunter@Chamberlinlawfirm.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2024, I had the foregoing documents hand-delivered with

the Clerk of the Court, 101 South U.S. Hwy 1, Room 1016, Fort Pierce, Florida, for review and
filing by CM/ECF, which in turn serves all counsel of record via transmission
of Notices of Electronic Filing.

/s/ *Hunter H. Chamberlin*

Hunter H. Chamberlin

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA,
vs.
DONALD J. TRUMP, *et al.*,
Defendants.

Case No. 23-80101-CR
(Cannon/Reinhart)

**DECLARATION OF**
**JOSEPH NIERMAN**

JOSEPH NIERMAN, being of full age, declares the following under penalty of perjury:

1.      I am the owner of Good Lawgic, LLC ("Good Lawgic"), a New Jersey Limited Liability Company. Iam fully familiar with the facts set forth below. I make this Declaration in support of Good Lawgic's motion seeking leave to file a brief as *amicus curiae* herein.

2.      I am a duly licensed attorney-at-law of the State of New York and have practiced law for about 25 years. My background primarily is in commercial litigation.

3.      In or around 2021 I began podcasting under the YouTube channel called "Good Lawgic. On or about September 6, 2022, I formed Good Lawgic, a New Jersey limited liability company and began operating my podcast to benefit that corporate entity. The focus of my podcast is law and legal cases, and it can be found on the YouTube and Rumble social media platforms.

4.      As of today, I have 96,500 subscribers on YouTube. On Rumble I have over 11,000 followers. I do a podcast five or six days a week and routinely have over 10,000 views per episode . I have routinely appeared on various podcasts that have had over a million views.

5.      During the trial of Kyle Rittenhouse, I joined the Rekieta Law channel with a panel of attorneys and we provided daily coverage that regularly received over one million views.  The

opportunity to live watch trials with real-time commentary provided by litigation experts created a new and exciting genre which instantly exploded on social media. This was the birth of a genre popularly referred to as "LawTube." When the Rittenhouse verdict was read, we had 130,000 people live watching that event with us. Our live coverage dwarfed the views received by CBS, CNN, Law & Crime, or any other legacy media outlet's live coverage in the world.

6.      During the *Depp v. Heard* trial, I regularly appeared on a channel called Legal Bytes, Her trial watch episodes too, regularly received in excess of one million views. Additionally, I have appeared on a multitude of other popular "legal themed" social media channels including Emily D. Baker, Viva Frei, Richard Hoeg, "Runkle Of The Bailey," Law and Lumber and countless other popular legal podcasts.

7.      I  am also an official member of the City of New York Press, card number 42797. Attached hereto as **Exhibit A** is a true copy of my press badge, which remains active.

8.      Good Lawgic continues to cover legal issues and trials. The criminal trials of President Trump is of international interest and, thus, of interest to Good Lawgic and me.

9.      In the New York state court trial of President Trump, Good Lawgic submitted an official request for comment by President Trump and a request for an interview concerning his thoughts on the information provided to me by my anonymous source. A true copy of that official request for comment is attached hereto as **Exhibit B.**

10.     Very shortly after making the official request for comment by President Trump and a request for an interview, my request was declined since President Trump was prohibited from commenting or being interviewed on the subject because of a gag order which had been entered against him. A true copy of such declination of my request for comment on behalf of Good Lawgic and is attached hereto as **Exhibit C.**

11.     As a result, not only are Good Lawgic and I harmed as members of the press on a story of local, national, and international importance which is the very type of story that Good Lawgic covers for its audience, but Good Lawgic and I have specifically been harmed since the President was unable to comment or be interviewed regarding our newsworthy inquiry.

12.     Moreover, Good Lawgic is interested in covering this matter as it progresses. It is anticipated that if a gag order is entered, Good Lawgic's First Amendment free press rights will be violated, which will irreparably injure Good Lawgic and the remainder of the press, as well as the rights of the people at large to receive news coverage of the trial, including comment from President Trump.

Joseph Nierman

Dated: June 18, 2024

# EXHIBIT A



**PRESS IDENTIFICATION**
# City of New York

2025  CARD NUMBER
42797

**P** **R** **E** **S** **S**



JOSEPH NIERMAN
GOOD LAWGIC, LLC
EXPIRES:
01/15/2025

**P** **R** **E** **S** **S**

PRESS  PRESS

# EXHIBIT B

# GOOD LAWGIC, LLC

May 3, 2024

Aaron Harison
Communications Advisor
VIA EMAIL:     Aaron.Harison@djtfp24.com
                       Press@djtfp24.com

Dear Mr. Harison,

I am the founder of Good Lawgic, LLC, a company that provides news as well as legal and political analysis on social media. Thank you for the opportunity to relay a couple of questions that I have for President Donald Trump regarding the ongoing New York criminal action.

I have three questions:

1. Can President Trump please identify any and all specific decisions, issued by Judge Juan Merchan during the trial, that he believes may have been meaningfully influenced by Judge Merchan's daughter Loren Merchan and her financial connections to the Democratic party?

2. Please identify any Assistant District Attorneys, prosecuting the case against you, who you believe are motivated by political bias or corrupt personal interest rather than obtaining justice.

3. An anonymous source claims that a person closely related to or working with a trial participant (besides Loren Merchan) may play a significant role in affecting the course of the prosecution and/or trial. I wish to interview President Trump briefly on the subject so I can run a story on this topic. Can you arrange a brief interview for me to ask President Trump about this issue?

Thank you for your anticipated response.

Very truly yours,

Joseph Nierman

**157 MINERAL SPRING AVENUE, PASSAIC, NEW JERSEY 07055
(516) 523-3803**

EXHIBIT C

5/6/24, 8:32 AM                                          Re: Questions For President Trump

Mon May 06 2024 08:32:39 GMT-0400 (Eastern Daylight Time)

**Subject:** Re: Questions For President Trump
**From:** Aaron.Harison@djtfp24.com
**Date:** 5/3/2024 7:59 PM
**To:** joenierman@gmail.com
**Cc:** press@djtfp24.com, ron@mnblawfirm.com
**Matter:** 01214-Good Lawgic LLC -Civil Rights Law

Please consider the below on record response to your inquiry, attributable to Steven Cheung, Trump Campaign Spokesman:

"Due to the unconstitutional gag order imposed by Judge Juan Merchan on President Trump and his winning campaign, we cannot comment on the specifics of your inquiry. The overbroad and ill-defined gag order is blatant election interference and is part of a partisan Witch Hunt that we have fought from the very beginning and will continue to fight."—Steven Cheung, Trump Campaign Spokesman

Sent from my iPhone

> On May 3, 2024, at 7:08 PM, Good Lawgic <joenierman@gmail.com> wrote:
>
> Dear Mr. Harison,
>
> Please see the attached letter.
>
> Thank you for your courteous response.
>
> Very truly yours,
> Joseph Nierman
> (516) 523-3803
> <Letter.Aaron.Harison-5-3-24.pdf>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,
vs.
DONALD J. TRUMP, *et al.*,
Defendants.

Case No. 23-80101-CR
(Cannon/Reinhart)

NOTICE OF MOTION SEEKING
LEAVE TO APPEAR *PRO HAC
VICE* AND TO FILE BRIEF AS
*AMICUS CURIAE.*

To: JACK SMITH
    Special Counsel
    950 Pennsylvania Avenue, NW
    Washington, D.C. 20530
    *Special Counsel*

    Todd Blanche, Esq.
    BLANCHE LAW PLLC
    99 Wall Street, Suite 4460
    New York, New York 10005
    *Counsel to President Donald J. Trump*

    Christopher M. Kise, Esq.
    CONTINENTAL PLLC
    255 Alhambra Circle, Suite 640
    Coral Gables, Florida 33134
    *Counsel to President Donald J. Trump*

PLEASE TAKE NOTICE that as soon as the undersigned may be heard, Good Lawgic,

LLC shall move this Court to permit Ronald A. Berutti, Esq., of Murray-Nolan Berutti LLC, to

appear *pro hac vice*, and for leave to file a brief as *amicus curiae* herein.

PLEASE TAKE FURTHER NOTICE that in support of this motion, the undersigned shall

rely on the accompanying Declaration of Ronald A. Berutti, the Declaration of Joseph Nierman,

and a Brief in support of the motion.

REQUEST FOR ARGUMENT: Please take further notice that the applicant requests oral

argument for 15 minutes since the movant presents issues that previously have not been briefed

and which are of potentially critical importance to the impact of the Special Counsel's motion on the First Amendment free press rights of Good Lawgic, LLC and other members of the press, and on the Sixth Amendment rights of President Trump.

MURRAY-NOLAN BERUTTI LLC
*Pro Hac Vice Attorneys (Motion Pending)*

*s/ Ronald A. Berutti*

By:_____
        Ronald A. Berutti
        136 Central Avenue
        2nd Floor
        Clark, New Jersey 07066
        (908) 508-2111
        N.J. Bar No.: 023361992
        Ron@MNBlawfirm.com

CHAMBERLIN LAW FIRM
*Local Counsel*

*s/ Hunter H. Chamberlain*

By:_____
        3630 W Kennedy Blvd
        Tampa, FL 33609 1
        (813) 444-4777 1
        Fl. Bar No.: 527793
        Hunter@Chamberlinlawfirm.com

Dated: June 18, 2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,
vs.
DONALD J. TRUMP, *et al.*,
Defendants.

Case No. 23-80101-CR
(Cannon/Reinhart)

DECLARATION OF
RONALD A. BERUTTI

RONALD A. BERUTTI, being of full age, declares the following under penalty of perjury:

1.    I am an attorney-at-law who is licensed to practice and am in good standing in New Jersey (Bar No. 023361992), New York (Bar No. 2637718), and Kentucky (Bar No. 97175), as well as in the United States Supreme Court, the Second, Third, and Sixth Circuit Courts of Appeals, the U.S. District Courts for the District of New Jersey, the Northern, Southern, Eastern, and Western Districts of New York, and the Eastern District of Kentucky. I also am presently admitted *pro hac vice* in the U.S. District Court for the Southern District of Ohio. I make this Declaration in support of my application to be admitted to this Court *pro hac vice* for the limited purpose of bringing this motion.

2.    I have studied the Local Rules and have not filed more than three *pro hac vice* motions in different cases in this District within the last 365 days.

3.    Upon payment of the required fee, I respectfully request admission to this Court *pro hac vice*.

*s/ Ronald A. Berutti*
_____
Ronald A. Berutti

Dated: June 18, 2024