```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                        CASE NO. 23-cr-80101-AMC
 3
      UNITED STATES OF AMERICA,            Fort Pierce, Florida
 4
                   Plaintiff,              June 24, 2024
 5
             vs.
 6                                         10:03 a.m. - 11:42 a.m.

 7    DONALD J. TRUMP, WALTINE NAUTA, CARLOS
      DE OLIVEIRA,
 8
                   Defendant.              Pages 1 to 90
 9    _____

10                    TRANSCRIPT OF MOTIONS
                 BEFORE THE HONORABLE AILEEN M. CANNON
11                 UNITED STATES DISTRICT JUDGE
      APPEARANCES:
12
      FOR THE GOVERNMENT:
13                             U. S. DEPARTMENT OF JUSTICE
                               JAY I. BRATT, ESQ.
14                             JAMES PEARCE, ESQ.
                               National Security Division
15                             950 Pennsylvania Avenue, NW
                               Washington, DC 20530
16    For the DEFENDANT:

17    Donald J. Trump
                               BLANCHE LAW
18                             EMIL BOVE, ESQ.
                               TODD BLANCHE, ESQ.
19                             99 Wall Street
                               Suite 4460
20                             New York, New York 10005

21                             CONTINENTAL PLLC
                               LAZARO P. FIELDS, ESQ.
22                             255 Alhambra Circle
                               Suite 640
23                             Coral Gables, Florida

24                             KENDRA L. WHARTON
                               500 S. Australian Avenue
25                             West Palm Beach, Florida 33401
```

```
 1   Waltine Nauta

 2                            DADAN LAW FIRM
                             SASHA DADAN, ESQ.
 3                           201 S. 2nd Street
                             Suite 202
 4                           Fort Pierce, Florida 34950

 5
                             BRAND WOODWARD LAW, LP
 6                           STANLEY WOODWARD, ESQ.
                             400 Fifth Street
 7                           Northwest Suite 300
                             Washington, DC 20001
 8   Carlos De Oliveira

 9                            L.D. MURRELL, PA
                             LARRY DONALD MURRELL JR., ESQ.
10                           400 Executive Center Drive
                             Suite 201
11                           West Palm Beach, Florida 33401

12                           E&W LAW
                             JOHN S. IRVING, ESQ.
13                           1455 Pennsylvania Avenue, NW
                             Suite 1400
14                           Washington, DC 20004

15
     STENOGRAPHICALLY REPORTED BY:
16
                             LAURA E. MELTON, RMR, CRR, FPR
17                           Official Court Reporter to the
                             Honorable Aileen M. Cannon
18                           United States District Court
                             Fort Pierce, Florida
19

20

21

22

23

24

25
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  Good morning.  You may all be seated.

 3          Please call the case.

 4          COURTROOM DEPUTY:  United States of

 5  America v. Donald J. Trump, Waltine Nauta, and

 6  Carlos De Oliveira.  Case Number 23-cr-80101.

 7          Will parties please state your appearance, starting

 8  with Special Counsel.

 9          MR. BRATT:  Good morning, Your Honor.  Jay Bratt and

10  James Pearce on behalf of the United States.

11          THE COURT:  Good morning.

12          MR. BOVE:  Good morning, Your Honor.  Emil Bove,

13  Todd Blanche, Kendra Wharton, and Lazaro Fields, here for

14  President Trump, who is not here this morning with leave of the

15  Court.

16          THE COURT:  Good morning to all of you.

17          MR. WOODWARD:  Good morning, Your Honor.

18  Stanley Woodward and Sasha Dadan, on behalf of Mr. Nauta, who

19  also is not present, with leave of the Court.  And then, my law

20  clerk, Ashleigh Bondoc, is here with us as well.

21          THE COURT:  Good morning.

22          MR. IRVING:  Good morning, Your Honor.  John Irving and

23  Donnie Murrell on behalf of Mr. De Oliveira, who is also not

24  here.

25          THE COURT:  All right.  Good morning to everybody.
```

1          I hope everybody had a good weekend.  We are set this

2   morning to hear argument on the second half of the motion

3   discussed on Friday.  This is styled as President Trump's

4   motion to dismiss the indictment, based on unlawful funding of

5   Special Counsel Jack Smith.  There is an opposition and reply,

6   along with some supplemental briefs with respect to a recent

7   Supreme Court decision on the Appropriations Clause.  I have

8   reviewed all of those materials and I'm prepared to hear

9   argument.

10          I do want to note we have, as usual, our live feed

11   setup to the second-floor overflow room, for any additional

12   folks wishing to view this proceeding.

13          And so with that, Mr. Bove, are you going to be arguing

14   this morning?

15          MR. BOVE:  Yes, Your Honor.

16          THE COURT:  All right.  Let me hear from you then, from

17   the lectern.

18          MR. BOVE:  Thank you, Judge.

19          In this case, the Special Counsel's Office from its

20   inception, should not have been accessing the -- the permanent

21   and definite appropriation, and they should not be able to

22   access it going forward.  In this criminal case, in this

23   setting, the Appropriations Clause operates as an important

24   restraint on the executive branch and their ability to make

25   cases like this.

1          Big picture, and I think some of this draws on some of

2     the things that we talked about on Friday, there are two main

3     flaws in the government's opposition to this motion.  One is

4     that they're persisting in strained interpretations -- and I

5     think interpretations is generous -- of statutory text; and

6     second, there is irreconcilable tension between the position

7     with respect to the Appointments Clause and the independence of

8     Jack Smith.  Textually with this appropriation, there is really

9     two terms I would like to cover this morning; one is the term

10    "other law," and the other is the term "independent counsel."

11         "Other law," I think, we spent a lot of time on on

12    Friday, Judge, because we're in -- are almost exclusively

13    talking about the same series of statutes that was at issue in

14    the Appointments Clause motion, 515, 533, and the interplay

15    between those statutes and, for example, 543 and 519.

16         THE COURT:  So would you argue that -- would you agree

17    that the arguments travel together in terms of the other law

18    inquiry?

19         MR. BOVE:  Yes, Judge.  And I think what is important

20    here with respect to this piece of the -- the appropriation

21    that we're talking about, the text of the statute that we're

22    looking at, is that it requires a present, current analysis of

23    whether or not there is a valid appointment pursuant to, quote,

24    "other law."  And so I will just incorporate the arguments that

25    we made in our briefing, and on Friday, with respect to the

 1    relevant provisions of Title 28.

 2         THE COURT:  Before you jump into the merits, there is a

 3    suggestion in the opposition and, I think, reasserted in the

 4    supplemental brief by the Special Counsel, that you lack

 5    standing to pursue this challenge.  Can you address that issue?

 6         MR. BOVE:  Yes, Judge.  I think that the one core that

 7    is addressed -- the closest version of this argument to the one

 8    that we're making, Stone -- looked at the standing question and

 9    looked at it relative to whether injunctive relief was

10    available, and said that the appropriate means for vindicating

11    the types of concerns that we have on behalf of a criminal

12    defendant is a Rule 12(b) motion.

13         So I think the Stone case supports our -- the fact that

14    we have standing and the ability to bring a motion to dismiss

15    here on this basis.  And that the McIntosh case from the Ninth

16    Circuit certainly supports that.  And I think, in both cases,

17    they track through some other decisions, where -- I -- I --

18    look, I think there was a strategic decision in Stone to pursue

19    both injunctive relief -- to pursue both injunctive relief and

20    dismissal.  We looked at the analysis and the -- the Younger

21    abstention analysis in Stone and decided that dismissal is the

22    appropriate avenue, but I think it's clear from Stone and

23    McIntosh that we can proceed this way.

24         THE COURT:  So what is the -- what is the cognizable

25    injury that you're suffering that is fairly traceable to the

1    appropriation?

2         MR. BOVE:  It is the imminent threat of the liberty

3    restraint on President Trump that would result from a

4    conviction in this case.  And I think that McIntosh looks at it

5    exactly that way because there are defendants in that case who

6    had not been convicted yet, who were pursuing the appeal as

7    a mandamus petition.  And the analysis of the Ninth Circuit in

8    McIntosh was basically -- there is a liberty interest at issue

9    here, and it's -- the threat of losing it is imminent in the

10   context of an ongoing criminal prosecution.

11        And so I -- my two best cases there are McIntosh and

12   Stone, and I think they squarely support what we're doing here.

13   And the cases -- especially the D.C. Circuit cases that the

14   Stone court walked through, although not criminal cases, the

15   abstention doctrine analysis there supports this manner of

16   proceeding as well.

17        THE COURT:  Another preliminary question is:  There is

18   also a suggestion that you're not actually raising a challenge

19   under the Appropriations Clause, because you're not challenging

20   the underlying constitutionality of the Appropriations Act in

21   1987 and, perhaps, for other reasons.  Can you address whether

22   you are, in fact, bringing a challenge under the Appropriations

23   Clause and why you are, if that is the case?

24        MR. BOVE:  Yes, Judge.  We are -- this motion is

25   pursuant to the Appropriations Clause.  Some of our arguments

 1   which we'll get into rely on the text of the appropriation

 2   itself.  But ultimately, the Appropriations Clause functions in

 3   two ways.  There is a Congressional obligation to make

 4   appropriations where necessary, but there is also a restriction

 5   on the executive to only act in a way where there is a valid

 6   appropriation.  And I think that, as a general proposition,

 7   this concept that the Appropriations Clause operates

 8   as a -- on -- as a -- as relevant to both branches is made

 9   pretty clear in one of the cases that the Special Counsel's

10   Office cites in their brief, OPM v. Richmond.  This is the

11   Supreme Court at 496 U.S. 414.

12          "Any exercise of a power granted by the Constitution to

13   one of the other branches of government is limited by a valid

14   reservation of Congressional control over funds in the

15   Treasury."

16          And so our argument here, under that type -- that type

17   of analysis and the separation of powers concerns that it

18   implicates, is that there is not a valid appropriation that

19   authorizes what's going on here.  So that is very much a

20   constitutional argument based on the Appropriations Clause with

21   the separation of powers implications that I have referenced

22   grounded in the text of the appropriation itself which does not

23   apply here.

24          THE COURT:  Okay.  So just so I understand it, your

25   argument is that the payment of money has to be authorized by

1    statute, and it's not authorized in this case, and, therefore,

2    it implicates the Appropriations Clause?

3              MR. BOVE:  Correct, yes.

4              THE COURT:  Okay.  All right.  Okay.  Now, in terms of

5    the actual Appropriations Act, what we're dealing with -- and I

6    just want to hone in on the specific statutory language.  Where

7    does it start and where does it end?  There is a "provided

8    further" with a quotation to 28 U.S.C. 591 note, and then there

9    is some other references to what appear to be irrelevant

10   material such as Interpol.  So I just want to make sure we're

11   talking about the same statutory appropriation.

12             MR. BOVE:  Yes, Judge.  So I -- our motion is focused

13   on Public Law 100-202.  The main text of the motion -- the main

14   text that the motion is based on is the language that

15   begins -- begins:  "Provided further, 28 U.S.C. 591 note" --

16   and ends with "other law."

17             There is some context in that paragraph that I think is

18   relevant to the Court's consideration of what Congress meant

19   when it chose those terms.

20             THE COURT:  Does it include the next sentence:

21   "Provided further, that the comptroller general shall perform

22   semi-annual financial reviews of expenditures from the

23   independent counsel, permanent indefinite appropriation, and

24   report their findings to the committees on appropriations of

25   the House and Senate"?

1          MR. BOVE:  That language is in the 1987 Public Law, but

2     when it was struck by Congress in 2009, pursuant to Public Law

3     111-68 -- and I was hoping to touch on that at some point this

4     morning.  And I will just do it, I think, relatively quickly

5     here because there is, I think, some suggestion that Congress

6     having -- some suggestion that that Public Law in 2009

7     indicates that Congress revisited the appropriation and was

8     comfortable with the state of affairs, and so there is no need

9     for Your Honor -- I don't think that is right at all.

10          If Your Honor looks at Public Law 111-68, and this is

11     in Section 1501, what's really going on there is Congress went

12     through and struck a series of five audit requirements that GAO

13     was subject to.  And the title of that section is:  "Repeal of

14     Certain Audits, Studies, and Reviews of the Government

15     Accountability Office."

16          And so I -- you know, we got here in response to the

17     question of:  Is that GAO language still a part of the

18     appropriation?  It's not.  And I'm just -- what I'm endeavoring

19     to do is to clarify that I think that the relevance of that

20     decision by Congress to strike that language is only that,

21     since 2009, the GAO has not been tasked with taking any kind of

22     look at what is going on with the -- the appropriations

23     language that precedes it.

24          THE COURT:  So the two GAO reports, I think, that have

25     been issued, one with respect to Mr. Durham and one,

1    Mr. Fitzgerald, were those evaluating pre- or post-2009?

2          MR. BOVE:  So I'm familiar with some analysis of the

3    Danforth appointment.  Pursuant to this language, the GAO has

4    an independent obligation to look at and review expenditures

5    and conduct financial audits like this.  It's cited -- it's a

6    provision of Title 31 that is cited in the Fitzgerald GAO

7    opinion.

8          And so the two opinions -- there is this argument about

9    the GAO looked at some of the Danforth expenditures immediately

10   after the Reno Regulations.  Our position on that is that there

11   was nobody here with the types of interests that President

12   Trump has in this case to make the arguments that we're making.

13   And so that -- that review was -- was really just based

14   on -- was focused on the financial aspects of what was being

15   spent in connection with the Danforth investigation, which I

16   don't think led to criminal prosecutions and never created the

17   type of situation that we have here.

18         And then the analysis of the Fitzgerald appointment,

19   from what we submit, strongly supports our position here,

20   because that was a situation where 515(b) arguably applied

21   because Patrick Fitzgerald was a U.S. attorney who had been

22   appointed into this -- into that position.  And so there was a

23   very different analysis on the statutory questions that we

24   talked about on Friday.

25         And in addition to that, in that case -- I think that

 1    it was James Comey as acting -- struck -- or said

 2    Mr. Fitzgerald is not subject to the Reno Regulations, which

 3    are the relevant restriction on the independence of Jack Smith

 4    that is, I think, a powerful part of our motion.

 5          THE COURT:  Okay.  So, now, that we've isolated the

 6    particular statute, my question is:  Is there any cap to the

 7    funding?

 8          MR. BOVE:  No.  And I think that's part of the reason,

 9    from a separation of powers perspective, to be very wary of

10    how -- who can access this and why, and especially in the

11    context of a criminal defendant with important rights in a

12    proceeding like this, for the Court to take a hard look, a look

13    that, we submit, has not been taken, based on some of the

14    arguments we've made, in any other case.

15          THE COURT:  Are you familiar with any authority on the

16    constitutionality of fully unbounded appropriations?

17          MR. BOVE:  I -- we -- especially following the CFPB

18    decision, which, I think, gives a -- "no" is the short answer,

19    that we're not making an argument that the --

20          THE COURT:  In CFPB, was there some degree of a cap --

21          MR. BOVE:  Yes.

22          THE COURT:  -- for a percentage?

23          MR. BOVE:  Yes.

24          THE COURT:  Does that play at all into your argument?

25          MR. BOVE:  We -- it does in the sense that

1    it -- it's -- it highlights the separation of powers problem

2    that the Special Counsel's Office is able to access an

3    indefinite, infinite budget to fund at least, you know, at this

4    point, two prosecutions in different districts.  And it's

5    exactly the types of concerns that were raised in the hearings

6    that preceded the Reno Regulations, that there's no check on

7    the scope of what's going on here.

8          And so it's relevant -- the lack of a cap is relevant

9    to the separation of powers point that we're making.

10          THE COURT:  All right.  Okay.  You can resume your

11    argument.

12          MR. BOVE:  So with other -- the phrase "other law" --

13    as I said, we are just going to incorporate our statutory

14    arguments.  But there's one piece here that the government is

15    making an argument that's a little bit different than some of

16    the things that we talked about on Friday.  And the argument is

17    that the Reno Regulations can serve as, quote, "other law" for

18    purposes of this appropriation.  And I just want to talk a

19    little bit about that, because that's just not right.

20          On Friday, the government's argument at the Reno

21    Regulations, I think, was that they can be rescinded at any

22    time, and that's one of the reasons that the Attorney General

23    has a check on the autonomy and the authority of Jack Smith.

24    But that very same feature of these regulations mean that they

25    are not, quote, "other law" for purposes of this appropriation.

 1    And this is really an Administrative Procedures Act issue, and

 2    it goes to the difference between a substantive regulation and

 3    a regulation that is intended to serve as not a substantive

 4    rule, which is the language in the Federal Register relating to

 5    the Reno Regulations.

 6          And if Your Honor looks at Chrysler v. Brown, this is a

 7    Supreme Court case from 1979, the cite is 441 U.S. 281.  That's

 8    a case that talks about this distinction and goes to great

 9    length to address the issue of what types of regulations have

10    the force of law, a phrase that I'm mindful the Nixon court

11    used with respect to the Watergate regulations.  Those

12    regulations did not have this language about, "This is not a

13    substantive rule."

14          And so because of that carveout, that Attorney General

15    Reno placed on the current regulations that are at issue, these

16    regulations cannot be other law for purposes of the

17    appropriation under Chrysler.  And there is similar language in

18    a case called Perez by the Supreme Court at 575 U.S. 92.

19          And so that's just, sort of, a technical point that I

20    wanted to make, that I think that that's a foreclosed argument.

21    That the government, to establish the appropriateness of

22    accessing this appropriation, based on other law, has to look

23    to these Title 28 statutes.  For the reasons we discussed on

24    Friday, we submit that they cannot do that.

25          THE COURT:  In the GAO report, was there some

1   discussion of the regulations and some characterization of the

2   regulations as not substantive?  I'm summarizing, but I believe

3   there was some comment on the regulations in the direction that

4   you're speaking.

5       MR. BOVE:  I -- so I don't think that the -- at least

6   the GAO was not focused on this argument directly, but there is

7   a footnote in the GAO report, Footnote 4, that makes an

8   important distinction between the old part 600 regulations, the

9   regulations that preceded the Reno Regulations, and the current

10  ones.  And the distinction being -- the way that the GAO framed

11  it was, they're looking at the D.C. circuit's analysis, and the

12  D.C. circuit is saying basically, well, the Iran-Contra

13  regulations, which included the promulgation of the old part of

14  600 --

15      THE COURT:  Uh-huh.

16      MR. BOVE:  -- those basically mirror the Ethics in

17  Government Act.  We don't see any support for the proposition

18  that the Reno Regulations do the same thing.  The GAO is, of

19  course, exactly right.  The Reno Regulations, in most respects,

20  do the opposite.

21      THE COURT:  When you say "do the opposite," you mean

22  what?

23      MR. BOVE:  They are restrictions on the independence of

24  any Special Counsel appointed pursuant to that authority that

25  did not exist at all in the Ethics in Government Act and in the

1    prior version of part 600 that was at issue in the Iran-Contra

2    regulations, in the Nofziger regulations, and in the savings

3    and loan regulations.

4          Because that -- that old 600, which mirrored the Ethics

5    in Government Act, granted the -- the regulatory Special

6    Counsel sort of appointed pursuant to those regs when the EGA

7    had lapsed.  It was giving them authority that mirrored, almost

8    identically, the independent counsel from the Ethics in

9    Government Act.

10         THE COURT:  Okay.

11         All right.  Okay.  Anything further with -- with

12   respect to the "other law"?

13         MR. BOVE:  No, Judge.

14         THE COURT:  What cases exist on the subject of

15   potential remedies in the area of Appropriations Clause

16   matters?

17         MR. BOVE:  We are -- we are focused in the same -- I

18   think this is why it came up in the context of standing.  A few

19   minutes ago, we were focused on McIntosh, the 9th Circuit, and

20   Stone, which obviously came out against us in the District of

21   Columbia.

22         I think --

23         THE COURT:  Well, you're seeking dismissal here, but I

24   don't understand your motion to be seeking any sort of

25   injunction on continued spending.  Is that correct?

```
 1            MR. BOVE:  That's correct.

 2            THE COURT:  Okay.  So you're seeking one remedy less

 3    than what was sought in McIntosh; correct?

 4            MR. BOVE:  Well, I think that what happened in McIntosh

 5    is that, at the end of the opinion, the 9th Circuit says:  We

 6    defer to the district courts on the issue of remedy, but this

 7    appropriations language under Appropriations Clause analysis

 8    restricts the ability of DOJ to spend money on continued

 9    prosecutions.

10            And so DOJ and the district courts will have to make a

11    decision about -- in that case, there was an evidentiary -- a

12    fact question about whether compliance with state law warranted

13    access to the appropriation that was at issue.  And if that

14    fact question was answered in favor of the defendants, what is

15    going to happen next?

16            And we took a look at what happened next, because there

17    is ten cases consolidated in McIntosh and one of them, docketed

18    in the Eastern District of California at 13-cr-294, led to the

19    government dismissing the charges against three defendants

20    pursuant to Rule 48.  And if you look at that filing, which is

21    at ECF Number 170 on that ED CAL docket, what you see is the

22    government saying:  We can't meet our evidentiary burden.  We

23    can't establish that we should have access to this

24    appropriation and, therefore, we acknowledge that we can't

25    proceed with the case."
```

1      And so our position is that the McIntosh 9th Circuit
2   analysis foreshadowed that type of outcome, and that that's
3   ultimately what happened when the government recognized that it
4   should not be accessing the appropriation in -- after the
5   courts interpreted the way it applied.
6          THE COURT:  Okay.  Are you -- I think there is some
7   discussion in your brief about comparing the degree of
8   independence of the -- the independent counsel under the
9   Independent Counsel Act versus the degree of independence under
10  the current regulatory framework.
11         Are you still persisting in that position, that there's
12  a mismatch in the degree of independence?
13         MR. BOVE:  Yes.  There's a mismatch and, as I said, an
14  irreconcilable difference between the government's position on
15  independence under the Appointments Clause the Appropriations
16  Clause.  They have to say, on Friday, that they are not
17  independent; and today, they have to say that they are
18  independent to be able access this appropriation.
19         And our position is that both cannot be true.  And I'd
20  would like to, if I could --
21         THE COURT:  So setting that potential tension aside for
22  a moment, what, in fact, though, is the comparison?  If you
23  were to do a side-by-side of the Special Counsel regulations
24  versus the Independent Counsel Act, what do you say is more or
25  less restrictive in the current posture?

1          MR. BOVE:  So a few things, Judge.  The -- start out

2     with the -- who's appointing the special prosecutor?

3     In -- under the EGA, it is the Special Division in the District

4     of Columbia ultimately making the appointment.  And in at least

5     one example, when it was time -- when -- when the EGA was

6     renewed and it was time to decide what was going to happen with

7     Bob Fiske, that panel coming out differently than DOJ.

8          So that's -- under the Ethics in Government Act, judges

9     decide who the Special Counsel will be.  Under the Reno

10    Regulations, the Attorney General decides.  So that's one.

11         The second is the -- the authority that is sort of

12    invested in whoever is appointed into that role.  And so under

13    the Ethics in Government Act, under 594(a), I think it's pretty

14    clear that Congress contemplated giving Special Counsel,

15    appointed pursuant to that provision, the full and independent

16    authority to exercise all investigative and prosecutorial

17    functions and powers of DOJ and the Attorney General.  So that

18    the Ethics in Government Act created what was, in effect, a

19    parallel Attorney General, somebody with that level of

20    authority, appointed by courts, not the Attorney General who

21    was in power at the time.

22         The Reno Regulations are very different in this

23    respect.  And so this is -- you know, I'm at point two of the

24    differences in independence.  It's comparing 594(a) to a couple

25    of provisions in the Reno Regulations.

```
 1              One is that the introductory -- introductory language
 2      in the Federal Register, which says -- and this is for the Reno
 3      Regulations -- says that:  "Ultimate responsibility for the
 4      matter and how it is handled will continue to rest with the
 5      Attorney General."
 6              THE COURT:  That language doesn't feature in the
 7      ultimate codified rule; correct?
 8              MR. BOVE:  That's correct.  There are some features of
 9      it that I think --
10              THE COURT:  But what to make of that?  Does it actually
11      form part of the regulation?
12              MR. BOVE:  It informs the analysis -- it's not part of
13      the regulation, but it informs the analysis of what these terms
14      that I'm about to describe mean, and how both the DOJ and
15      Congress felt at this important period, for our motion, in
16      1999.  A period where there was a hearing on whether or not to
17      renew the Ethics in Government Act, a period where Eric Holder
18      went to that hearing and said:  The Department of Justice
19      thinks that the Ethics in Government Act should not be renewed
20      because the special prosecutors appointed to that provision,
21      among other things, are too independent.
22              And here the restrictions -- well, they didn't get that
23      far at the hearing, but the point was that was very much
24      language in the Federal Register that's consistent with the
25      hearing that led to the EGA not being renewed.
```

1      And so where do we see that that's a relevant

2  comparison to 549(a) in the Reno Regulations?  600.6 on the

3  books right now gives the Special Counsel, appointed pursuant

4  to that reg, the authority of all investigative and

5  prosecutorial functions of any United States attorney.  So

6  the -- you know, instead of the full scope of the authority of

7  the Attorney General under the EGA -- that's 594(a) -- 600.6

8  restricts this to the authority of a United States attorney.

9      And there is another part that I think is important

10  here; it's 600.7, paragraph B.  That paragraph contemplates a

11  situation where the Attorney General can review action by a

12  special counsel appointed pursuant to the Reno Regulations, and

13  decide that -- that the action, quote, "should not be pursued."

14      That is that countermanding concept, the veto concept

15  that came up on Friday and it's relevant here.  This -- this is

16  part of it.  This is point 2 on why a Special Counsel appointed

17  pursuant to the Reno Regulations is not independent for

18  purposes of the appropriation that we're talking about.

19      Point 3, this is a --

20      THE COURT:  But you've argued that the Special Counsel

21  is taking inconsistent positions.  But are you just doing the

22  same thing flip-flopped?  So for appropriations, you want to

23  say there is insufficient independence, but on the Appointments

24  Clause matter with respect to superior/inferior, you're taking

25  the opposite view?

1          MR. BOVE:  No.  I -- our principal point -- and the

2    record, I think, is largely unrebutted.  And there was an

3    exchange at the rebuttal on Friday, where no information was

4    provided about whether the Attorney General is actually

5    overseeing this.

6          Our principal point is on the Appointments Clause.

7    But -- because we understand that this motion and the text --

8    it has two alternative bases.  And I think, you know, we're

9    very focused on the other law part, which is, the positions are

10   consistent there.  This is an alternative argument.  I have

11   given you our points --

12         THE COURT:  Okay.  So on the -- so this is -- I

13   understand that your position on other law is the same, but

14   with respect to the degree of independence, what I'm hearing is

15   that it's an alternative argument to the principal submission

16   which is that there is no other law; is that correct?

17         MR. BOVE:  Correct.

18         And just that these things can't mean two separate

19   outcomes on the -- based on the text that we're dealing with

20   and the body of law that we're dealing with.  Our position is

21   that there is not sufficient oversight; our position is on the

22   Appointments Clause.

23         THE COURT:  But for the appropriations issue, if

24   the -- if the prosecutor had to be equal to the independent

25   counsel in the statutory scheme, then why would Congress have

1    referenced other law?  Presumably, they don't need to be exact.

2         MR. BOVE:  I think that the context of what Congress

3    was doing in this appropriation, historically, is important.

4    And I was hoping to cover some of that to get -- because I

5    think it does bear on what they meant by "other law."  And at

6    the headline level, what was going on when this appropriation

7    went on the books, is that there was, admittedly, some

8    litigation over the Ethics in Government Act.  But a week

9    before this appropriation went on the books, the Ethics in

10   Government Act had been renewed.  And so it's in that setting

11   that Congress uses some other language, I think, with some --

12   with full confidence that the law -- that the EGA would be on

13   the books for another five years.

14        And what else was going on?  The other law that was in

15   play mirrored exactly the Ethics in Government Act.  What was

16   going on was that the Watergate regulations gave the full scope

17   of the type of independence that the Ethics in Government Act

18   ultimately adopted.  And I have said, the Iran-Contra

19   regulations, which gave rise to that version of part 600, the

20   predecessor version that mirrors the Ethics in Government Act

21   were on the books.  It happened again with the appointment of

22   James McKay and the Nofziger regulations and then, I think,

23   once more, with Bob Fiske, a regulatory independent counsel

24   appointed pursuant to the old part 600 that had the similar

25   levels of independence.

1          So when Congress, in 1987 in this appropriation, uses

2     the term "other law," they are saying that in the context of a

3     series of regulatory actions and litigation in court over what

4     it means to be independent.  And at that point, there was every

5     suggestion that the political balance -- the people involved in

6     that were comfortable with the level of independence that was

7     reflected in the Ethics in Government Act.  There

8     wasn't -- it's not as if when this appropriation went on the

9     books, that the Reno Regulations were in play and Congress was

10    contemplating that at some point, years later, there would be a

11    discussion about whether this was really the right path.  That

12    wasn't foreseeable to them at all.

13         And I think that that historical context, all of these

14    regulations, the version of part 600 that was on the books at

15    the time, the fact that the Ethics in Government Act had just

16    been renewed, all of those features very much bear on, what did

17    Congress mean by independent counsel in 1987?

18         And that's the ultimate question.  And I drill a little

19    bit of a temporal distinction with respect to how we think the

20    Court should look at "other law," which is a present

21    analysis -- analysis at present of whether there is another law

22    that allowed for this appointment, versus what it means to be

23    independent counsel, lowercase, in this appropriation.

24         We think "other law" is not an ambiguous statutory term

25    in the appropriation, and so what has to happen is basically

 1    the analysis that we talked a little bit this morning and on

 2    Friday, is there another law in November of 2022 that justified

 3    this appointment?  But on -- when you get to this question,

 4    independent counsel, lowercase, there is ambiguity.  And so

 5    then the question is:  What did Congress mean when this

 6    appropriation was put on the books?

 7            And so I won't go back through it, but I've talked a

 8    little bit about the historical context.  But another place to

 9    look is the conference report that accompanied this

10    appropriation, and that conference report is numbered 100-498.

11    And there are two parts of it that I want to flag.  And this

12    is -- it's a very long report.  I don't have the page numbers,

13    but it's at the very end.

14            And Congress -- the conference addresses the two -- we

15    talked about three textual provisions of this appropriation at

16    the very beginning.  The first refers to -- it starts:  "That

17    of the funds appropriated to DOJ."  And there is a specific

18    reference to activities of any independent counsel.  It's the

19    language that precedes the "provided further."  The conference

20    report makes clear that that money was intended to basically

21    refund expenditures that had been made on continuing

22    resolutions while DOJ was waiting for the Ethics in Government

23    Act to be renewed.  And so that explains what Congress meant at

24    the first -- for that first --

25            THE COURT:  Why is there a need to resort to

1   legislative history?

2          MR. BOVE:  Because it's, we submit, an ambiguous term.

3   So we need to look at the context, the historical context of

4   what Congress would have been thinking about, the issues they

5   were grappling with when they chose the phrase, lowercase,

6   "independent counsel," and then, also, to look to the committee

7   report to get a very specific sense, the compromises that led

8   to these languages choices.

9          And I think that the next part of the conference report

10  bears directly on the question of this note to 28 U.S.C. 591.

11  And the conference report there is -- the discussion is limited

12  to the Ethics in Government Act.  They don't even address what

13  other law might or could mean.  And I think that's because at

14  this point, as I said, the Ethics in Government Act had been

15  renewed, and every regulatory action from DOJ contemplated the

16  same level of independence that Congress had implemented in the

17  Ethics in Government Act.

18          And so who cares?  We care about that, Judge, because

19  looking at what "independent counsel" means in this

20  appropriation, we submit it's not consistent with what -- what

21  we have under the Reno Regulations.

22          THE COURT:  All right.  You had identified your view as

23  to some of the distinctions between the statutory framework and

24  the Special Counsel regulations.  I think you'd addressed 600.6

25  and 600.7(b).

1          Any other areas to identify?

2          MR. BOVE:  Yes, Judge.

3          The third that I would flag relates to the policies and

4     procedures to which special counsel are subject.  And so under

5     the Ethics in Government Act at 594(f)(1), that restricted

6     independent counsel to complying with, quote, "written or other

7     established policies of DOJ" -- quote, "respecting enforcement

8     of the criminal laws."

9          So the Ethics in Government Act restricted policy

10    compliance to written policies, and not -- not all DOJ

11    policies, only DOJ policies that concerned enforcement of the

12    criminal laws.

13         In the Reno Regulations, at 607, paragraph A, the

14    Department of Justice expanded that language to cover rules,

15    regulations, procedures, practices, and policies.  And I think

16    practices, in particular, is a very important limitation on a

17    special counsel's ability to operate in a way that is

18    consistent with the Reno Regulations, relevant to what was

19    required under the Ethics in Government Act, written or other

20    established policies.  And, for example, practices is very much

21    an issue in our selective prosecution motion; practices is very

22    much an issue for the Justice Manual provisions that we have

23    raised relating to election interference; and practices is

24    especially an issue with respect to the distinct election

25    interference we've raised regarding the 90-day rule that's

1    discussed in the Horowitz Report.  And these are the kinds of

2    things that we're told, pursuant to the Reno Regulations, this

3    special counsel is subject to, that are very different from

4    what was going on under the Ethics in Government Act.

5          And what happens when there is a conflict?  I think

6    that's another important question.  From -- as best I can read,

7    the Ethics in Government Act really conferred discretion on the

8    Special Counsel to make decisions about when, whether, and how

9    they were in compliance with the policies that were at issue

10   under the EGA.  The Reno Regulations in the same paragraph,

11   607, paragraph A, contemplate a consultation with the Attorney

12   General, and they contemplate that there may be situations

13   where the Attorney General sort of chooses -- charts a

14   different course for the -- for the Special Counsel.  And so I

15   think that that's another important consideration.

16         The last distinction between the two that I would like

17   to draw, relates to the removal provisions.  And so the removal

18   provision of the Ethics in Government Act is 596(a), and it's

19   focused on removal for good cause, disability, and conditions

20   that substantially impair performance.  It really -- I -- the

21   text of that provision, 596(a), does not contemplate removal

22   over disagreements between the Attorney General and the Special

23   Counsel relating to how a case should proceed, disagreements

24   relating to, you know, within the bounds of prosecutorial

25   discretion, how that discretion should be exercised.

1          The -- the removal provisions -- and sorry.  One more

2    point on that.

3          Justice Scalia talked about what good cause meant under

4    the Ethics in Government Act in his dissent in Morrison, and

5    talked about how that was a restriction.  And he cited to a

6    report that related to the recent renewal of the Ethics in

7    Government Act in '87 that I referenced, that basically equated

8    good cause with misconduct.  So that's -- that's a very high

9    bar and hard to imagine reaching that in most situations.  But

10   the Reno Regulations do use that same phrase "good cause," but

11   they include that the -- good cause will -- can consist of a

12   violation of DOJ policy, which is, I think, a lower threshold

13   for -- excuse me -- for removal than what we had in the Ethics

14   in Government Act.

15         THE COURT:  Okay.  All right.  Anything further on the

16   motion?

17         MR. BOVE:  The last point, Judge, on terms of remedy --

18   we've talked about McIntosh and what I think are important

19   subsequent district court proceedings.  The other case that,

20   sort of, at least in its reasoning, does -- operates in a

21   similar way to McIntosh is -- I apologize to the court

22   reporter -- Bilodeau, B-I-L-O-D-E-A-U, which is a First Circuit

23   case from 2022 that cites McIntosh at 24 F.4th 705.  And the

24   language I'm focused on there is:  We agree with this reading

25   of the rider and conclude, as the Ninth Circuit did, that the

1    "DOJ may not spend funds to bring prosecutions if doing so

2    prevents a state from giving practical effect to its medical

3    marijuana laws."  In other words, if doing so is inconsistent

4    with the restrictions that are in the appropriation.

5          And I don't think there -- there is no substantive or

6    material distinction to be drawn between the affirmative

7    restriction on expenditures at issue in cases like McIntosh and

8    Bilodeau, and in the language of the appropriation that we're

9    focused on here.  The bottom line, for purposes of our motion,

10   is that under the Appropriations Clause, in order for the

11   separation of powers to operate as it must under the

12   Constitution, the Special Counsel can only draw an

13   appropriation where his conduct, his activities, meet the text

14   of what the appropriation authorized.  And because there is no

15   other law, and because for purposes of this motion we also

16   think that independence is a real problem, this appropriation

17   should not be accessed.

18          THE COURT:  All right.  Thank you, Mr. Bove.

19          Let me hear from counsel for the Special Counsel.

20          Good morning.

21          MR. PEARCE:  Good morning.  May it please the Court.

22   James Pearce for the United States.

23          Consistent with long-standing Department of Justice

24   practice, the government has funded the Special Counsel through

25   a Congressionally-enacted permanent and definite appropriation

1    passed in December of 1987.  Under the plain terms of that law,

2    the Special Counsel is an independent counsel appointed by

3    other law, including 28, United States Code, 515(b) and 533(1),

4    as we discussed extensively last week.  But even if the

5    permanent and definite appropriations were not available --

6         THE COURT:  So you agree that the "other law" is a

7    statutory law that you've pointed to elsewhere?

8         MR. PEARCE:  We do.  I think I heard my friend on the

9    other say -- side suggest we were relying on the regulations.

10   We think it is the statutory law.

11        THE COURT:  Okay.

12        MR. PEARCE:  And the regulations don't provide

13   the -- independently for the appointment, but certainly, as we

14   discussed last week, once in place, are binding while extant.

15        THE COURT:  And you agree this is -- this is a

16   limitless appropriation?

17        MR. PEARCE:  Consistent with the idea of a permanent

18   indefinite appropriation, when Congress enacted it using that

19   term, that is the function that it had.  There are a handful of

20   other permanent and definite appropriations.  It does have that

21   function.

22        THE COURT:  Can you point me to any comparable

23   limitless appropriation?

24        MR. PEARCE:  Yes.  So 31, United States Code -- I think

25   it's 1504 has one.  Let me see if I can find it.  There are two

1    in 31, United States Code.  One has to do with refunding moneys

2    that were improperly deposited into the treasury, and the other

3    is for paying of judgments.  I can give the Court the statutory

4    cites.

5          THE COURT:  I have the first one.  31 U.S.C. 1504.

6          MR. PEARCE:  Yeah.  I apologize, because I had it on

7    hand and I cannot seem to find it.

8          THE COURT:  That's okay.  We'll revisit this.

9          MR. PEARCE:  Yeah.  But the point is there are at

10   least -- so, the GAO has issued something called the -- it's

11   something like "The Handbook on Federal Appropriations Law"

12   where it defines a permanent indefinite appropriation,

13   explaining that it is not limited by time or limited by amount,

14   and gives some examples, including the two that I have

15   mentioned.

16         THE COURT:  Okay.  And neither of those examples

17   contains any other formula or percentage or other means by

18   which to impose at least some degree of a cap.  And I know in

19   the CFPB case, most recently, there was a percentage threshold

20   which features in that decision as one reason why it wasn't

21   problematic.

22         MR. PEARCE:  So a couple of different responses, but I

23   found the cites, if I can give them --

24         THE COURT:  Okay.

25         MR. PEARCE:  -- to the Court, and then address the

1   question.

2           THE COURT:  Let's do that.

3           MR. PEARCE:  So at 31 U.S.C. 1304 -- I think I said

4   1504 -- so 1304 addresses the payment of judgments against the

5   United States.  And then 31, United States Code, 1322(b)(2) is

6   the provision that deals with refunding amounts erroneously

7   collected and deposited into the treasury.

8           I think the Court's question involved whether there's

9   any other authority that addresses situations where there is

10  not some kind of a cap.  I'm not aware of any law, and I don't

11  read, actually, the Supreme Court's decision in the recent CFPB

12  case to rely on the fact that there was the inflation -- the

13  cap that was adjusted for inflation that came out of the

14  federal -- the -- I think it was the Federal Reserve Board.

15  The Court described that by way of background, but certainly it

16  just said source and purpose is what's required to comply with

17  the Appropriations Clause.

18          THE COURT:  Well, the thrust of that decision does seem

19  to be repeatedly focused on the existence of a cap,

20  which -- which does play into the majority opinions rationale.

21  But setting that aside for a moment, as far as the

22  current -- the current appropriation, do you agree with your

23  friend on the other side that the statutory language that we're

24  looking at is the -- provided further, ending with the words

25  "other law"?

1          MR. PEARCE:  Yes.  I think there's other pieces that

2    are relevant; for example, the reference earlier to -- you

3    know, capital letter, Independent Counsel, and then the later

4    reference to independent counsel in lowercase that suggests

5    that -- the difference between the two.

6          THE COURT:  Okay.  So -- but I want to make sure that I

7    have exactly -- what are we talking about when we say 28 U.S.C.

8    591 note?  What's actually in the note?  What is surviving

9    statutory text?

10          MR. PEARCE:  So I'm not sure precisely what remains in

11    the note, but I can tell you that "a permanent and definite

12    appropriation established," that is still, you know, operative

13    language on which the -- the appropriation is based.

14          THE COURT:  So is it just what I have indicated?

15    Starts with "provided further, 28 U.S.C. 591 note," and it ends

16    with the words "other law"?

17          MR. PEARCE:  That is what I understand my friends on

18    the other side to challenge, and I think that is the core of

19    what the Court is to focus on.  I don't under -- frankly,

20    the -- in between the quotation marks, the 28 U.S.C. 591 note,

21    I don't think that that plays any role in the analysis here.

22          The only point that I was making was where -- earlier

23    in this appropriation, there was the specific appropriation of

24    an amount not to exceed $1 million that says "related to the

25    activities of any independent counsel."  That just furthers the

1    distinction between the statutory independent counsel under the

2    Ethics in Government Act from independent counsel appointed

3    pursuant to other law, which is, of course, what we in the

4    Justice Department, for at least eight special counsels, has

5    relied on in using the permanent indefinite appropriation.

6         THE COURT:  Okay.  I'm still not entirely clear on what

7    statutory language survives for the appropriation.  And I just

8    want to make sure that I'm looking at the surviving codified

9    text --

10        MR. PEARCE:  Uh-huh.

11        THE COURT:  -- in current law.  So is it -- is it that

12   one reference, or is it some broader public law?  Because I

13   understand there's been various amendments over the years to

14   the language.

15        So can you just clarify for the Court what specific

16   statutory language encompasses the appropriation that we're

17   discussing?

18        MR. PEARCE:  "Provided further, 28 U.S.C. 591 note,

19   that a permanent indefinite appropriation is established within

20   the Department of Justice to pay all necessary expenses of

21   investigations and prosecutions by independent counsel

22   appointed pursuant to the provisions of 28 U.S.C. 591, et seq,

23   or other law."

24        THE COURT:  Okay.  Thank you.  All right.

25        MR. PEARCE:  So we think the principal question -- it

 1    really boils down to what is an independent counsel?  And the

 2    regulations, the GAO opinions, the two courts' decisions that

 3    have addressed this, both in the Stone and the Hunter Biden

 4    case, as well as the longstanding practice of the department

 5    funding eight special counsels under this appropriation with

 6    Congressional acquiescence, all answers that in the

 7    affirmative, that the Special Counsel is an independent

 8    counsel.

 9         Now, I'm not going to --

10         THE COURT:  The Doctrine of Congressional Acquiescence

11    is not the most robust doctrine, I think case law would

12    indicate.  So can we just focus on the text of the "other law"

13    and just confirm -- I take your position to be that your

14    arguments carry over completely from -- from the -- from the

15    Appointments Clause context.

16         MR. PEARCE:  Yes.  And I have no reason to repeat them,

17    unless the Court wants to hear them.

18         THE COURT:  No, no.  That's okay.

19         Okay.  And you agree, of course, that Special Counsel

20    in this case was not appointed pursuant to 28 U.S.C. 591, which

21    doesn't exist; so we're focused again on the other law piece.

22         MR. PEARCE:  Yes.  And relying on the same statutes we

23    discussed on Friday.

24         THE COURT:  Okay.  Now, I noticed there were some

25    reports on the Special Counsel's Office web page indicating the

1    expenditures for six months.  Is this a six-month practice, to

2    issue statements of expenditures?

3           MR. PEARCE:  Yes.  It's my understanding that for

4    six-month periods that run from March to September, Special

5    Counsel's Offices -- and one can find them for, I believe, all

6    eight that I have mentioned -- issue their expenditure reports.

7    The precise timing of it, I think, is not always identical, but

8    they do come out in six-month increments.

9           THE COURT:  So the last report would have been issued

10   when?

11          MR. PEARCE:  I believe the last report covers the

12   period ending in September 2023.  There is a report that is

13   due -- that ends of March 2024 that has not been made public

14   yet.

15          THE COURT:  How long does it take for the reports to

16   become public?  Because we're in June now.

17          MR. PEARCE:  That's what I was just alluding to a

18   moment ago.  That is something that is, I think, outside of our

19   office's control, that there is -- the GAO -- well, actually,

20   I'm not sure if the GAO is involved in that specific portion of

21   it.  I think, from just looking at the past reports, and this

22   is not a scientific answer, but sometimes it's taken as long as

23   a year.  I think in -- in -- for this Special Counsel, it is

24   considerably less of a period of that.

25          But, for example, in our supplemental brief, we, I

1   think, cited a report that involved a report of four different

2   independent counsels, three under the Ethics in Government Act,

3   one independent regulatory counsel.  And that had issued a full

4   year after the period that it covered.  These come out more

5   quickly, but I cannot give the Court a more precise date.

6          THE COURT:  And that's because -- what is the review

7   process?  I know the regulations reference the initial

8   establishment of a budget and review by the Attorney General,

9   but what is the continuing review process for the budget

10  proposals and the expenditures?

11         MR. PEARCE:  I am -- I don't know precisely, other

12  than -- what I just understand is generally accounting --

13  generally accepted accounting practices, to track the funds and

14  make sure that they are enumerated for purposes of identifying

15  an expenditure.

16         Beyond that, I don't have anything I can share with the

17  Court.

18         THE COURT:  Okay.  So, then, in terms of looking at the

19  actual expenditures, just taking one as an example, there is

20  one from the period of November 18th of '22 through March of

21  2023 with total SCO expenditures at 5.4 million.  And then if

22  you refer further down in the report, there's a reference to

23  DOJ component expenses for another 3.8 million, again, for the

24  six-month period.

25         I just have a clarifying factual question.  The

1   3.81 million coming for, what is described as, expenses

2   supporting the Special Counsel's Office, are those also being

3   paid for through the permanent indefinite appropriation?

4        MR. PEARCE:  Top line answer, I don't know.  I believe

5   it is true that that -- that -- well, it is paid -- everything

6   is paid for under the permanent indefinite appropriation, with

7   the caveat that -- and I'm not sure if this is in the

8   regulation -- but there is some sense that for individuals,

9   like myself, who are on detail from other parts of the Justice

10  Department, consistent with the regulations saying, "All parts

11  of the Justice Department should support the Special Counsel,"

12  I believe that those individuals are funded by their existing

13  components.  But I don't want to say I'm certain about that.

14  That is my understanding, however.

15       THE COURT:  So I'm just trying to just get a sense,

16  just monetarily, for that six-month period.  It says, "Total

17  SCO expenditures, 5.4 million," but is it really more like 9

18  when you include the expenditures for the DOJ component

19  expenses that are also being paid for by the indefinite

20  appropriation?

21       MR. PEARCE:  I -- I am not sure, is the -- is the

22  precise answer.  I mean, we can certainly give the Court

23  something supplementally to enumerate with more precision, to

24  the extent that's consistent with our role in providing

25  information to the Court.

     1              But I don't know the answer --

     2          THE COURT:  I think it would be helpful, since these

     3     are public documents, just trying to understand what the full

     4     universe of expenditures looks like.  Since this is an

     5     Appropriations Clause challenge, I do think it provides some

     6     helpful context for the amount of money that is actually being

     7     spent.

     8          MR. PEARCE:  I think that's fair.  But just to be

     9     clear, there is certainly no case, of which I'm aware, where

    10     any court has suggested -- or at least any court that hasn't

    11     been overruled or reversed -- that the total amount of the

    12     expenditure is relevant to an Appropriations Clause challenge.

    13              I agree with the Court --

    14          THE COURT:  But when it's limitless, I think that there

    15     is a separation of powers concern that one needs to take a look

    16     at.

    17              Don't interrupt, please.

    18          MR. PEARCE:  I'm sorry, Your Honor.

    19          THE COURT:  And so that's the nature of my question.

    20          MR. PEARCE:  Could I just address that with one point,

    21     Your Honor?  If not, I'm happy to just respond, but I -- there

    22     is one thing I would like to say in response to that.

    23          THE COURT:  You may.

    24          MR. PEARCE:  So I agree that that is absolutely -- what

    25     you have just described is absolutely the thrust of the 5th

 1   Circuit's opinion in the CFPB case that the Court then -- that

 2   the Supreme Court then reversed.

 3          And so I do think that there was that very separation

 4   of powers concern there, but I read the Supreme Court's

 5   decision saying what we are focused on is source and purpose.

 6   And simply describing the cap is actually, essentially,

 7   entirely doing away with the rationale that there is a

 8   separation of powers problem.

 9          THE COURT:  Well, the Supreme Court, did it have

10   occasion to address the remedy, however, in CFPB, because it

11   found a lawful appropriation, and then -- so it didn't really

12   need to cover what to do about it?  Would you agree with that?

13          MR. PEARCE:  I would certainly agree that there was no

14   cause to address remedy there.

15          THE COURT:  Okay.  All right.  Now, let's see here.

16   You've mentioned in your opposition that DOJ could readily fund

17   this through an alternative source.  I wanted to give you an

18   opportunity to identify what that other alternative would be.

19          MR. PEARCE:  So it's at a relatively high level of

20   generality, but the Department of Justice has appropriated, at

21   least in the 2023 appropriation cycle, over a billion dollars.

22   And I can represent to the Court that the government is

23   prepared to use money from -- money that is appropriated to the

24   Department of Justice to fund the -- the activities and

25   operations of the Special Counsel.

1          A more specific --

2          THE COURT:  And that's just through the standard

3     Department of Justice allotment for, let's say, fiscal year

4     2024?

5          MR. PEARCE:  That is my understanding, yes, Your Honor.

6          THE COURT:  What are your views, if any, on any prior

7     expenditures?  So to the extent you're -- to the extent, A,

8     there is a need to even tap an alternative funding source,

9     which, again, is to be determined, then what to do, if

10    anything, about the prior expenditures, in your view?

11         MR. PEARCE:  Just so I -- to clarify so I understand

12    the question, on the assumption or on the -- kind of, the

13    operating hypothesis that we were -- the Special Counsel

14    was -- had not been entitled to; correct?

15         THE COURT:  That's correct.

16         MR. PEARCE:  So I think that retrospectively, there

17    should be no effect or change whatsoever.  And there are a

18    couple of different places that I draw from in making that

19    point.  One, I think the Court, the Supreme Court in a couple

20    of different contexts has suggested that you don't go

21    retrospectively -- look retrospectively to try to undo acts

22    that have happened.  Most recently -- this is a decision a week

23    from Friday -- the United States Trustee v. John Hammond [sic]

24    involved a challenge under the Constitution's requirement that

25    bankruptcy laws be uniform.  And there was a disuniformity

1    because there were fees that had been assessed in one place and

2    not in others.  And the question was all about remedy there,

3    and it was, do we have some sort of retro- --

4          THE COURT:  And I'm sorry.  Where is that decision

5    coming out of?

6          MR. PEARCE:  The United States Supreme Court.

7          THE COURT:  In the Hammons case?

8          MR. PEARCE:  The Hammons case, yes.

9          THE COURT:  Yes.

10         MR. PEARCE:  And the decision was -- or the question

11   for decision was:  Do we look retrospectively or retroactively,

12   or is it a question of prospective parity?  And the Court there

13   decided prospective parity was appropriate.

14         In addition -- and there was some reference in this,

15   actually, in some of the amicus filing, and we had a footnote

16   on it -- but the de facto officer doctrine which provides --

17   and this is cases like Ryder and Nguyen, although those come up

18   in the adjudicative context.  There is a much older body of law

19   starting with a Supreme Court case called Norton v. Shelby

20   County from 1885 [sic], that basically says courts

21   don't -- it's a -- it's a common law approach because the

22   Constitution doesn't prescribe remedies for its own violation.

23   But courts don't go back and sort of undo -- if there's a

24   violation -- undo everything that has happened before it.

25         THE COURT:  On that de facto piece, I didn't see a

1    substantive response in your opposition or to the Tillman

2    brief.  It was, I think, flagged in a footnote but not

3    addressed.  So what is the position of the Special Counsel on

4    application of the de facto officer doctrine?  Because it

5    wasn't briefed.

6         MR. PEARCE:  And just to be clear, that obviously came

7    up in the context of an Appointments Clause or employee

8    challenge.

9         I think it's -- it's twofold.  One is the top-line

10   position that I just gave with respect to appropriations, which

11   is that we believe that de facto officer doctrine, to the

12   extent the Court were to find error or some sort of

13   constitutional, or, frankly, statutory violation with either

14   the appointments or the appropriations funding clause; but

15   then, second, to the extent that the Court is seriously

16   entertaining the notion that there is a constitutional or

17   funding problem, I actually think it would behoove the Court

18   and the parties to have some additional briefing.

19        I heard my friend on the other side mention a couple of

20   different things that weren't, I think, in their brief or their

21   reply.  And so to the extent they would rely --

22        THE COURT:  So this would be supplemental briefing on

23   what exactly?

24        MR. PEARCE:  So if the Court -- and I would -- I think

25   the Court should -- should decide the top-line question, and if

1    there is a serious -- if the Court is seriously considering

2    finding a violation of --

3        THE COURT:  I'm not indicating anything.  I'm simply

4    just trying to cover the scope of what's been briefed here.

5    One piece was the de facto officer doctrine, and it was

6    conspicuously not answered by the Special Counsel in the

7    opposition or in the response to the Tillman -- excuse me --

8    the constitutional -- well, no, excuse me -- the Tillman brief,

9    as I said initially.  That's why I'm asking what the position

10   is on the de facto officer doctrine.  I hear you say that you

11   think it would apply if it ever needed to come into the

12   picture.  And your best authorities for that are?

13       MR. PEARCE:  As I -- as I was giving sort of.  Norton

14   v. Shelby County from 1885 is -- is, I think, widely seen as

15   the leading case.  The more modern versions of it are Ryder and

16   Nguyen.

17       Again, because this hasn't been briefed, I can let the

18   Court know the position of the United States was articulated

19   starting at page 26 of the -- of the government's brief in the

20   PROMESA Supreme Court case.  There is a long discussion of it.

21       But if the Court were interested in more information on

22   this, then I -- I could -- I do think that some sort of

23   supplemental briefing would be appropriate.

24       THE COURT:  Why was it not included in the initial

25   submission if it was -- if it was discussed, at least

1    peripherally in the briefing?  I just -- it just seemed -- I

2    wasn't sure why it wasn't addressed, and it was just footnoted

3    but then not developed.

4         MR. PEARCE:  So the only place that it was meaningfully

5    raised was in the Tillman brief, which argued, of course, that

6    the Special Counsel is an employee and not an officer at all.

7    To be candid with the Court, we find that to be not a

8    frivolous, but a -- an argument that finds no support in case

9    law and, thus, didn't warrant a developed substantive response

10   in that context.

11        THE COURT:  Okay.

12        MR. PEARCE:  You obviously have addressed the question

13   of remedy for the Appointments Clause.  You had some discussion

14   with my friend on the other side; perhaps we will have some

15   discussion as well.  But that is why we didn't see that it was

16   appropriate, given space constraints --

17        THE COURT:  Understood.

18        MR. PEARCE:  -- to develop it further.

19        THE COURT:  Okay.  Now, let's return to some of those

20   initial questions I asked Mr. Bove.  There is an argument about

21   standing, sort of, in quotes, and I wanted to hear your view on

22   that.  And I also wanted to hear your view on whether this is,

23   in fact, a constitutional challenge.

24        MR. PEARCE:  So I will go in that order.  The standing

25   in quotes is because we don't think that while the -- while the

1    defendants can raise a motion to dismiss, the relief they seek,

2    namely dismissal -- and this ties in, actually, with the

3    conversation that we were just having -- doesn't follow from

4    a -- a challenge to the -- the funding or Appropriations

5    Clause; that's the second question.  And there is no Court

6    that, I think, has -- has discussed this; right?

7           So there was -- Stone had no reason to address the --

8    kind of, the remedy question, whether someone was -- because it

9    disagreed on the substantive question.

10          THE COURT:  Of course.

11          MR. PEARCE:  As to McIntosh, I think that's just a --

12    really, a very different case.  That was an -- of course, as

13    the Court is aware, an appropriations rider.  Rather than

14    saying:  Is there an appropriation that funds the prosecution,

15    it was, instead, a -- a rider that prevented the expenditure of

16    any federal funds to -- to prosecute.

17          THE COURT:  But either way, there was an argument that

18    there lacked statutory authorization for the expenditure.  So

19    meaningfully, how do you differentiate the standing inquiry

20    between this situation and what the Court in the McIntosh case

21    encountered?

22          MR. PEARCE:  And this is why I'm trying to -- to walk

23    back a little bit, this notion of standing.  I -- I don't --

24    we're not trying to take the position that they can't get up

25    here and argue that there is some sort of a problem with the

1    funding.  It's just it does not flow from that, that there is

2    dismissal, if that is, in fact, correct.  Frankly, we think

3    nothing should happen given the representation that we can fund

4    it alternatively.

5           Now, I -- I --

6           THE COURT:  Now, on the -- on the representation that

7    you can fund it alternatively, what sort of substantiation can

8    you offer about, sort of, the ease with which the Department

9    could -- could locate what is not an insignificant number as

10   we -- as we mentioned earlier?

11          MR. PEARCE:  I can't stand before the Court and say it

12   would be done in one day, two days, five days.  I can say that

13   it is the full commitment of the Department of Justice to

14   ensure that the Special Counsel has the funding that it needs

15   to continue in -- in this prosecution.

16          THE COURT:  Okay.  So you're not pursuing a traditional

17   standing objection, it's more in the vein of the remedy to be

18   sought?

19          MR. PEARCE:  And the -- hence, that's why, in our

20   brief, we didn't start it.  I mean, naturally, a standing

21   question would be one that what -- that would be addressed

22   first.  It was -- after we addressed the substantive question,

23   it was to make the point that the defendants cannot

24   get -- or -- or should not be entitled to the relief that they

25   seek.

 1          THE COURT:  Okay.  Now, so what about the -- there is

 2   an argument in the supplemental brief about how the -- the

 3   motion doesn't present a constitutional challenge to begin

 4   with.  And I wanted to hear your view, in light of some of the

 5   Supreme Court characterizations of these challenges, as

 6   instances in which the payment of money needs to be authorized

 7   by a statute.

 8          MR. PEARCE:  So I -- I guess I don't see a whole lot

 9   turning on the answer to this question one way or the other.

10   We still take the view that what they are challenging is the --

11   that application of this particular statute, and whether or

12   not, principally, the Special Counsel is an independent

13   counsel, also, the -- the "other law" piece.  And, in our view,

14   that is a question of statutory interpretation and, thus, a

15   statutory issue.

16          To the extent that -- that they would like --

17          THE COURT:  But that's what I want to develop here.  I

18   mean, how is it not a constitutional challenge, when you have

19   the Appropriations Clause requiring or indicating that no money

20   shall be drawn from the Treasury.  But in consequence of

21   appropriations made by law, you have Supreme Court cases saying

22   that in assessing this question, we have to determine whether

23   payment of money was authorized by a statute, and that's the

24   argument being raised.  How is it not a constitutional

25   challenge under the Appropriations Clause?

1          MR. PEARCE:  I don't want to fight this too much

2    because, as I said, I don't think it -- much actually turns on

3    it.  I think our position would be, there are clearly moneys

4    appropriated to the Department of Justice that can be expended

5    on behalf of a special counsel.  The fact that we draw from the

6    permanent indefinite appropriation, as opposed to, as I've

7    represented to the Court, some other place, is sort of an

8    allocation question, not necessarily --

9          THE COURT:  But do you have any basis to believe that

10   it's not a constitutional challenge?  On the one hand, you

11   could have a constitutional challenge, and then a

12   nonconstitutional one.  And I want to just make sure that the

13   answer to that question is clear.

14          I haven't heard anything in your presentation to

15   dissuade from the view that it is, in fact, a constitutional

16   challenge.

17          MR. PEARCE:  Again, I -- I don't need to fight it.  I

18   think that -- the fact that there -- that what we are trying to

19   figure out is statutes make it statutory.  The Court isn't

20   persuaded.  Again, it's not something -- it's not a hill on

21   which I feel inclined to die.  So...

22          THE COURT:  Well, I certainly don't want that to

23   happen, Mr. Pearce.  You're doing a very fine job arguing.  So,

24   all right.

25          Let's see.  Any other matters to raise with the Court

1    on the funding challenge?

2           MR. PEARCE:  So to -- to kind of get back to the

3    arguments that I think my friend on the other side sort of

4    really focused on is whether the Special Counsel is an

5    independent counsel.  In our view, that -- the answer to that

6    is yes.  It flows from the regulations, GAO opinions, the two

7    courts that have looked at it.  I know the Court -- I mentioned

8    also Congressional acquiescence, but I do think it is relevant

9    that all eight of the Special Counsels -- one independent

10   regulatory counsel, all seven of the special counsels that have

11   existed have been funded under the permanent indefinite

12   appropriation.  I will say I --

13          THE COURT:  All of those -- all of those funding

14   approvals, they all sort of trace back to the same -- same

15   statutory basis that you're bringing forward now; correct?  The

16   515 and the 533?

17          MR. PEARCE:  Yes, that's -- that is my understanding.

18   Yes.

19          THE COURT:  Okay.

20          MR. PEARCE:  And I -- and I'm -- I will stipulate I

21   agree that under the Ethics in Government Act, that independent

22   counsel had greater independence than the Special Counsel does

23   under the Special Counsel regulations.  But, again, consistent

24   with the things I have just mentioned, GAO, the -- sorry -- the

25   regulations themselves, GAO, and the two courts that have

1    looked at this, it's -- it's our view that there is sufficient

2    independence.  There's no day-to-day supervision.  There is the

3    fact that under 600.6, the Special Counsel has the full

4    independent authority -- I think my friend on the other side

5    quoted it, but omitted the word "independent."  And the very

6    purpose, of course, of the regulations was to strike that

7    balance between independence, but not so much independence that

8    became problematic under the EGA, some degree of accountability

9    as well.

10           THE COURT:  So you acknowledge there is some -- some

11   reduction in the independence, compared to the independent

12   counsel's statute framework.  But in your view, there's still

13   sufficient independence under the regulatory framework.

14           Is that a fair characterization?

15           MR. PEARCE:  That is a fair characterization.  I

16   believe that characterization also applies to the GAO's views

17   as of 2004 and going forward.  GAO, of course, a part of

18   Congress.  As well as the views of the judges overseeing the

19   Stone and the Hunter Biden matters.

20           THE COURT:  So if you were to address more

21   particularly, though, let's say, taking the -- the removal

22   mechanism, how would you -- how would you say the independence

23   is comparable?

24           MR. PEARCE:  Yeah.  I mean, that's -- I think that's an

25   interesting question.  Because on the one hand, there was for

1    cause removal under the Ethics in Government Act, and there was

2    for cause removal under the regulations as well.  And I think

3    those two are -- there's no difference between the two.

4            But, of course, as we did mention when we discussed

5    this on Friday, unlike under the old EGA regime, there is the

6    possibility for the Attorney General to rescind the

7    regulations, to modify or rescind the order.  I don't think

8    that that means that there is, therefore, less -- or that there

9    is no independence.  It just makes sure that the Attorney

10   General is, in fact, the principal officer supervising and

11   overseeing the Special Counsel.

12           THE COURT:  Are you aware of any regulation in the

13   space ever being rescinded?

14           MR. PEARCE:  Any regulation, sorry, in the --

15           THE COURT:  In this space, in this special prosecutor

16   arena.

17           MR. PEARCE:  I believe that the various, kind of,

18   one-off regulations have been rescinded or certainly repealed

19   as new ones have come into place.

20           THE COURT:  But no recision of the regulation in this

21   midstream appointment; correct?

22           MR. PEARCE:  I am -- I am not aware of that, no.

23           THE COURT:  Okay.  So -- because there's a lot of

24   reliance on history and historical practices, and then there's

25   this -- this suggestion that, because the regulation can be

1    repealed at any time, there's -- there's a degree of control

2    there.

3              But in reality, has a regulation like this or an

4    appointment order ever actually been rescinded?

5              MR. PEARCE:  So as I said, I'm not familiar with any

6    rescission of a regulation.  There certainly have been special

7    prosecutors who have been fired, not only the sort of famous

8    Saturday night massacre, but going back historically --

9              THE COURT:  But in the end, in that scenario, there was

10   a prosecutor that was ultimately reinstalled who completed his

11   work or her work; correct?

12             MR. PEARCE:  That's correct, yes.

13             THE COURT:  So, then, this notion of rescission is a

14   potential vacatur, so to speak, of appointment orders.  Is it

15   really, sort of, an illusory possibility?

16             MR. PEARCE:  I think that's not in the least correct,

17   and I think that --

18             THE COURT:  Why not?

19             MR. PEARCE:  So I think I addressed this when we talked

20   about it on Friday.  I think the way that courts, and most

21   importantly the Supreme Court, have discussed this is not

22   looking at, you know, was there the exercise of the potential

23   powers of the principal officer or supervisor or director?  It

24   was:  Did that principal officer or supervisor or director have

25   the ability to do it?

1          I think I quoted or cited the penultimate paragraph

2     from the Arthrex decision, where the Chief Justice, I think,

3     said something like where the director had the discretion to

4     overrule the administrative patent judges.  It's not a

5     question, thus, of what happens, you know, in reality every

6     day.  It is:  What are the, sort of -- under the statutory or

7     regulatory or relevant legal framework, what are the -- how is

8     power and -- sort of, structured?

9          THE COURT:  I recall in Attorney General Reno's

10    statement in 1999, going through some of the pitfalls with the

11    former statute, one concern was that, realistically, the

12    political pressure was just too enormous to -- to ever -- ever

13    yank, so to speak, a special prosecutor.

14          But it seems, that in terms of historical practice,

15    that there hasn't really been any change because there's no

16    example of any special prosecutor ever being removed from

17    office.

18          MR. PEARCE:  Well, again, there is some that predates

19    the Reno Regulations.  But I think the answer to that is, under

20    the Armstrong case, the, sort of, presumption of regularity,

21    the notion, as I represented in court, that special counsels --

22    I'm not going to speak for those, but I will speak for ours --

23    have complied with -- whether it was a regulatory -- whatever

24    the specific framework was, typically regulatory, to ensure

25    that they are following Justice Department policy, that they

1    are complying with any, kind of, consultation or other

2    requirements.

3         I think that's the best account as to why there hasn't

4    been a termination of a special prosecutor.  Again, I will

5    speak only on behalf of ours, but I think that's probably the

6    best way to understand that history.

7         THE COURT:  So I think you have used the term

8    "regulatory Special Counsel," and I have heard that term in

9    some of the materials.  Is that -- what does that mean, a

10   regulatory Special Counsel?

11        MR. PEARCE:  So I think it's actually a little bit of a

12   misnomer.  I think what it -- what it specifically was applied

13   to, as I -- as I understand, it was really Robert Fiske,

14   because he was the one special prosecutor, special counsel, who

15   was appointed at a time when the Ethics in Government Act had

16   lapsed and before it was reauthorized, that period from the end

17   of 1992 through -- I think it was June 30th of 1994.

18        And so he was appointed there -- I say a misnomer

19   because, as our conversations have -- today and Friday have

20   indicated, I think there has to be a statute backing that up.

21   So I think it has to have been under 515(b) or 533.  But then I

22   understand the term "regulatory Special Counsel" -- or I think

23   it was "regulatory independent counsel," to differentiate

24   between a counsel who had been appointed under the statute,

25   that is the Ethics in Government Act, from someone who had been

1    appointed under the Attorney General's independent statutory

2    authority, and then operating under regulations of the Justice

3    Department as opposed to the EGA.

4         THE COURT:  So are you saying the term "regulatory

5    Special Counsel," for example, in the GAO reports would concern

6    only those folks who had particular regulations passed during

7    those periods of time when the statute was constitutionally in

8    question?

9         MR. PEARCE:  I -- I read the GAO reports to refer to

10   regulatory independent counsel as sort of synonymous with

11   Special Counsel in the modern era; meaning we distinguish it

12   from those people who were made independent counsel, capital I,

13   capital C, under the statute from those who have been come into

14   power because of the independent statutory appointment by the

15   Attorney General, and then that Special Counsel's operation

16   under the operative regulations.

17        THE COURT:  Well, it's just interesting.  I mean, why

18   would you call them a regulatory Special Counsel?  It just kind

19   of begs the question:  Well, where is the statutory authority

20   if we're describing them as such?

21        MR. PEARCE:  So I think it's -- I think it's actually

22   independent -- and probably was my mistake to say it -- I think

23   it's independent regulatory counsel, not independent Special

24   Counsel.  And that's -- I think the question you just asked is

25   why I think it's a misnomer; right?  Because I think it is

1   making -- it is drawing a quick and easy --

2        THE COURT:  But maybe it's telling.

3        MR. PEARCE:  Well, I mean, first of all, it applies

4   just to Robert Fiske.  But I think it's a --

5        THE COURT:  Why does it apply only to him?

6        MR. PEARCE:  Well, you know, it actually could apply to

7   the three also from former Attorney General Bill Barr that we

8   identified in our supplemental briefing -- our supplemental

9   notice last night.

10       For the reason I think I just gave, but to make sure

11  I'm clear, Robert Fiske was not appointed under the EGA

12  statute.  It didn't exist at the time.  It had lapsed.  It

13  hadn't been expired.  I think you would also say that with

14  respect to Frederick Lacey, Malcolm Wilke, and Nicholas Bua.

15  Although the IC statute, the EGA, was in existence, the

16  Attorney General there decided to use his own statutory

17  authority and make them -- and sort of have -- have supervision

18  over them through the regulations.  So there was -- they were

19  independent regulatory counsel.

20       THE COURT:  What's your best resource for this, kind

21  of, historical survey of special prosecutors, sometimes

22  referred to as independent counsels and, you know -- or

23  regulatory special counsels?  Where is there the most

24  comprehensive historical survey of each of these individuals?

25       MR. PEARCE:  I'm glad you asked.  You asked that a

1   couple of times.  You didn't ask me, and I wanted to give you

2   my recommendations.

3       I think there is a book by Terry Eastland, I think

4   called "Ethics" -- I can't remember the next part -- "and the

5   Independent Counsel."  It was written in 1989, so it's somewhat

6   dated.  But I think it has a very -- I'm not sure I'd call it

7   comprehensive, but certainly a more developed historical

8   discussion than a lot of the other sources.

9       THE COURT:  It's cited, I think, by Justice Kavanaugh.

10      MR. PEARCE:  Exactly.  That was going to be my next --

11      THE COURT:  Okay.

12      MR. PEARCE:  Justice Kavanaugh cites it in that

13  independent counsel and the presidency article, which I think

14  also has some helpful history.  But a lot of it is derivative

15  on the Eastland book.

16      THE COURT:  Point.  Okay.  All right.

17      Now, what do you say to the suggestion that there is

18  this inherent tension, in your argument, between sort of

19  distancing from -- from pure independence and the discussion as

20  between principal and inferior versus in this appropriations

21  context, where greater independence is more consistent with the

22  appropriation?

23      MR. PEARCE:  I think that is true of both sides in this

24  matter, and I think that's something -- you just mentioned the

25  Justice Kavanaugh article.  It's something that he points up in

1    his piece on independent counsel and the presidency.  It is

2    inherent in the effort to, on the one hand, ensure that --

3    whether we call it a independent counsel or a Special

4    Counsel -- has adequate independence when a situation presents

5    itself that requires the avoidance of conflict or somebody who

6    can operate outside of the typical Justice Department, sort of,

7    operations because it's investigating the Justice Department

8    itself or it's investigating some sort of high-ranking or

9    high-level political official.

10          And so wanting to balance that need for independence,

11   while, at the same time, not shifting so far over into a kind

12   of independent or Special Counsel that has sort of the kind of

13   free reign and sort of overly investigating that became the

14   concern that, I think, led to the lapse in the expiration of

15   the Independent Counsel Act.

16          Striking the balance between accountability and

17   independence, as Attorney General Reno said, in promulgating

18   the 1999 regulations.

19          THE COURT:  Okay.  Just a quick case law follow-up

20   from -- from Friday.  Are you familiar or aware of any circuit

21   case law addressing whether a U.S. attorney is a superior or

22   inferior officer?  I know there was a reference to Hilario, and

23   I think there's another case called Gantt, but I want to make

24   sure I have a full understanding of the current circuit law on

25   that question.

1      MR. PEARCE:  Sure.  And if I can mention one Supreme

2  Court case as well, which is the 1926 -- the Myers, M-Y-E-R-S,

3  case.

4      THE COURT:  But did that address U.S. attorneys being

5  inferior?

6      MR. PEARCE:  It -- so this is dicta.  We don't have to

7  fight about whether dicta or not.  But in dicta, the Court

8  there says some version of a district attorney, which at the

9  time was the modern U.S. attorney, is something like a --

10  clearly an inferior officer.  So I think that's relevant to the

11  Court's question.

12      Beyond that, the cases that the Court just cited,

13  Hilario from the 1st circuit, Gantt from the 9th Circuit, I

14  believe, is --

15      THE COURT:  One of those concerns an interim U.S.

16  attorney.

17      MR. PEARCE:  Actually, honestly, I think both of them

18  discuss interims, in part.  But I understand part of the

19  Court's rationale in both of those to decide that a U.S.

20  attorney is an inferior officer --

21      THE COURT:  If they're exercising direction and

22  supervision, tracking Edmond.

23      MR. PEARCE:  I think that's right.  I'm pausing only --

24  yeah.  So I think both were decided after -- after Edmond was.

25  But, yes, I mean, it is certainly, those courts' decisions

1   since 1978, the position of the United States as well, that

2   United States attorneys are inferior officers.

3        THE COURT:  So am I correct that there would be only

4   one superior officer in the Department of Justice, and that's

5   the Attorney General?

6        MR. PEARCE:  So the -- I -- I think that is the logical

7   conclusion that -- that flows from our argument.  I am not

8   aware of the -- of the Department having taken a -- a position.

9   We have taken the position that United States attorneys are

10  inferior officers.  We haven't had to take the position with --

11  I think the amicus for constitutional lawyers made a

12  representation to the Court that the Solicitor General is a

13  principal officer, and that the deputy attorney general is a

14  principal officer.  That -- that is not a position on which the

15  United States has -- that is not a position the United States

16  has taken.  And I --  and the consistent view from what -- what

17  I have told the Court is that the principal officer -- the

18  Attorney General would be the sole principal officer.

19       But I don't think the Court has to reach -- go that far

20  to -- to -- certainly, to resolve this motion and to deny it.

21       THE COURT:  Is there anything question-producing about

22  that proposition that there would be only one principal officer

23  in the entire Department of Justice?

24       MR. PEARCE:  I don't think that there would be anything

25  question-producing.  I mean, for example, if you take the

1    handful of times that the Constitution has used the term

2    "principal officer," there is one in the opinions clause that

3    certainly suggests the president can get one opinion from a

4    principal officer; that's used twice in the 25th Amendment that

5    has to do with the incapacity of a president.  And it

6    identifies a meeting of -- I don't have the precise language

7    here -- but the principal officers of all the executive

8    branches, which, certainly, Congress has understood as meaning

9    the cabinet, i.e., the top person in these executive branches.

10   So --

11        THE COURT:  And what to make of the various

12   statute -- statutes that require, for example, U.S. attorneys

13   and the Solicitor General to go through the presidential

14   nomination and Senate confirmation process?  What to make of

15   that statutory Congressional judgment for such high-level

16   individuals?

17        MR. PEARCE:  So I think that that is Congress playing

18   an oversight role that it is fully statutorily entitled to do.

19   Certainly, Alexander Hamilton talks about that in the

20   76 Federalist Papers, saying that that kind of default -- and

21   that's my second point -- that kind of default process produces

22   better officers.  Congress could certainly be of -- be of the

23   view that it produces better-quality officers when you have got

24   somebody who is not only nominated by the president, but

25   ultimately confirmed by the Senate.  But that doesn't transform

1   it into a constitutional requirement; that is statutory.

2        I mean, there are plenty of individuals, as I think the

3   Court just said, for whom Congress provides for presidential

4   nomination/Senate confirmation, where the government has long

5   taken the position they're not U.S. attorneys is the best

6   example.

7        THE COURT:  Assuming U.S. attorneys are not principal

8   officers --

9        MR. PEARCE:  Certainly --

10       THE COURT:  -- of course.

11       MR. PEARCE:  -- which has, again, been our -- the

12   government's position since 1978.

13       THE COURT:  Okay.  There has been some discussion about

14   deference to Congressional judgments and certainly wouldn't be

15   a dispositive signal about the status of an officer

16   constitutionally.  But what do you have to say about that, that

17   at some point, when you see Congress repeatedly subjecting

18   certain positions to that degree of process, that we would then

19   reach the inference that someone tantamount to that position

20   would also, necessarily, have to go through that same

21   procedure?

22       MR. PEARCE:  So again, two responses.  One is -- I

23   think the Court, a few minutes ago, raised the question about

24   how much weight and analysis, whatnot, to give Congressional

25   deference or -- or acquiescence.  I think --

1        THE COURT:  Well, I don't know if I would collapse the

2   two in that sense.  Acquiescence is, essentially, inaction; and

3   what to make of that.  And I'm saying, Congressional judgments

4   requiring, for example, U.S. attorneys to go through that

5   formal process, same with SGs.

6        MR. PEARCE:  So two responses separate from the one

7   I -- I just made.  One is, that is -- the idea of presidential

8   appointment or presidential nomination/Senate confirmation is

9   the default under the Constitution.  But that isn't the test

10  for what makes somebody a principal officer.  And so the fact

11  that Congress has done that, again, leads to better-quality

12  officers.  But even just at a more practical level, I mean,

13  it's certainly my understanding that there are certain -- so,

14  officers in the military, where, the way the process works is

15  that there are lists of names that are just given, and then,

16  you know, the president says, okay, I nominate all these

17  people.  Congress just says, check.  And so it is a -- very

18  much a pro forma process, which --

19        THE COURT:  But there is still a Congressional role,

20  however -- however quick.  There is still Congress taking

21  advantage of its constitutional responsibility and entitlement

22  in the Appointments Clause; would you agree?

23        MR. PEARCE:  I would certainly agree.  And I think

24  Congress can -- probably, with some constitutional limits,

25  could probably do that.  I don't think Congress could say, for

1  example, a president, him or herself, has to be

2  presidentially -- it wouldn't make any sense.  But certainly,

3  Congress has its authority to do that.

4          But I just go back to the point that I made before,

5  that doesn't define -- or the scope of the constitutional

6  question.

7          THE COURT:  Okay.  All right.  That's all I have.

8  Thank you, Mr. Pearce.

9          MR. PEARCE:  Thank you very much.

10          THE COURT:  All right.  Mr. Bove.

11          MR. BOVE:  Thank you, Judge.

12          There are just a few points that I would like to touch

13  on in response.  The first -- I would like to start with the

14  text of the appropriation and the -- the language that precedes

15  it, and in particular, the significance of these two references

16  to the -- to the Ethics in Government Act, and the -- the

17  citations to 28 U.S.C.

18          And this is -- I'm not sure if it was an argument that

19  was presented to Judge Jackson in the District of Columbia, but

20  it's not one that made -- was analyzed in any meaningful way.

21  And I do think it's important, as the Court grapples with what

22  do these terms in the relevant appropriation mean?

23          But the language that precedes it -- and this is clear

24  from the conference report at 485 and 486 -- referred to money

25  that had already been spent, and referred to the idea that

1    there was going to be a reimbursement for money that had been

2    spent pursuant to these continuing resolutions,

3    while the -- while the DOJ was waiting for the EGA to be -- to

4    be renewed.

5         And so the significance of that is, that is why, in the

6    appropriation and that first paragraph, that's not the

7    operative paragraph, Congress referred to the EGA only and not

8    to other law.  And I don't think that that -- that distinction,

9    the need to refund money that had already been spent, supports

10   the argument that there is -- this more restrictive view should

11   be provided to the -- the operative appropriation language.  It

12   really just gets us back to what -- our main point, which is

13   that "other law" can't mean what the government is saying that

14   it means.

15        The -- the second point that I wanted to make, Judge,

16   is that Your Honor asked a question about -- have there been

17   situations where one of the sets of regulations has been

18   rescinded?  As a practical matter, is this a real check?

19        And I agree that the answer is no; and that as a

20   practical matter, the answer is no.  And I just wanted to sort

21   of re-highlight and draw the Court's attention that the one

22   thing that we have seen DOJ do with respect to these

23   regulations is that when the GAO was looking at Mr. Fitzgerald,

24   James Comey went back to the implementing order for Fitzgerald,

25   and -- and struck the application of the Reno Regulations in

 1    order to convince, I submit, the GAO that Mr. Fitzgerald was

 2    sufficiently independent to be able to access the

 3    appropriation.

 4         So the one example that's in the record of a time when

 5    somebody acting with the authority of the Attorney General

 6    modified one of these implementing orders, it supports our

 7    position, not -- not harms it.

 8         On the issue of remedy, I -- I think that Your Honor

 9    hit this on the head, and I just wanted to -- to point back to

10    our citation to Judge Jones' concurrence in All American Check

11    Cashing in the Fifth Circuit, where I think, in a very

12    persuasive way, she walks through all of the different types of

13    ways that you can see in the Supreme Court's cases that

14    separate -- the specifics of a separation of powers problem can

15    bear on what the appropriate remedy is.

16         And we can see it in our supplemental briefing about

17    CFPB that there is some language about separation of powers

18    rejecting an argument that the associations in that case were

19    making.  But what they were making was, I submit, a -- a

20    different type of argument.  They're saying, generally

21    speaking, there is a problem with this appropriation --

22    it -- and there is a general separation of powers issue, not

23    necessarily linked to the enforcement actions that we are

24    facing, but categorically.

25         We are -- I submit, have a different situation here

1    with a very specific Special Counsel, taking a very specific

2    set of actions.  And we laid out a position on behalf of a

3    defendant, who is very much aggrieved in these proceedings with

4    a liberty interest that is imminently threatened in all kinds

5    of ways, where that type of -- the type of relief we are

6    seeking, dismissal, is appropriate based on what Judge Jones

7    said and the -- and the authorities she laid out, and that the

8    Supreme Court, as Your Honor noted, didn't really have -- have

9    occasion to address in CFPB.

10            Another point on this topic of remedy.  I provided to

11    Your Honor a citation to an Eastern District of California

12    case, where, following McIntosh, the defendants in McIntosh

13    went back to the district court.  And the government -- the

14    Department of Justice -- voluntarily dismissed the charges

15    because, based on the reasoning of McIntosh, there wasn't

16    funding for the prosecution.  And the language of the -- the

17    Rule 48 filing that's on the docket there, in substance, says:

18    We can't meet our evidentiary burden of establishing that we

19    should be able to access the appropriated funds for purposes of

20    this prosecution.

21            I already said all that.  But my point is, Judge, we're

22    at this two-day hearing talking about whether and to what

23    extent Special Counsel's Office is acting in a way that is

24    consistent with and bound by DOJ practices?  Did they talk to

25    them?  Did they find -- did they find out why in the Eastern

 1    District of California based on the reasoning in McIntosh, the

 2    government -- the prosecutors, you know, in place under the

 3    supervision of a U.S. attorney, decided to dismiss a case,

 4    understanding fully, I submit, that if they hadn't chosen that

 5    course, the Court would have done that for them?  And instead,

 6    based on that record in -- and literally, no representations to

 7    Your Honor about the degree of oversight and whether things are

 8    consistent with practices, just come in here and say dismissal

 9    is not appropriate.  I mean, this has happened, and it should

10    happen here.

11          This issue of the alternative sources of funding, I

12    just -- it's -- it's difficult for me to imagine how that is a

13    basis to resolve this motion, and I think what it really does

14    is highlight the separation of powers issues that we're talking

15    about.  Because the Special Counsel's Office should not be able

16    to say, hypothetically, there are other appropriations that we

17    may be able to access; so, Your Honor, you shouldn't look

18    carefully at whether this permanent indefinite appropriation

19    with no cap, as Your Honor has observed, should apply here.

20          Because I submit, that if -- if Your Honor made a

21    ruling that -- that for the -- either or both of the two

22    reasons we've identified, that appropriation should not be

23    accessible to this Special Counsel -- and I think we have given

24    the Court all kinds of reasons that that is true.  And I think

25    the Special Counsel's Office has provided legal argument but no

 1    factual basis in the record to -- to really contest us -- I
 2    think there would be a very strong political response to
 3    actions by the Department of Justice, to say, actually, no,
 4    we're going to take a mulligan on the permanent indefinite
 5    appropriation, and we're going to take a look at another.
 6         I think Congress would have a response.  And certainly,
 7    we might have another motion.  Not just President Trump.  We
 8    have co-defendants here.  And so we would react to that
 9    differently as well.  So that hypothetical, I think, only
10    highlights that this is a process governed by the
11    Appropriations Clause that requires -- that should require --
12    that contemplates real interaction between Congress looking at
13    these things and prosecutors carrying out their duties.  And --
14    and what we have going on here is not that.
15         And, lastly, Your Honor's touched, with both sides,
16    on there is some inherent tension in this idea of what
17    independence means on Friday and what it means today.  Well,
18    here is what I think it really means to us.  Our position is
19    that more oversight from Congress is required for the
20    extraordinary things that are going on in these -- these
21    prosecutions.  Extraordinary and unprecedented.  And whether
22    that is more oversight on the front end, as contemplated for
23    principal officers, or at this point, based on a real
24    appropriations process, where current Congressmen are looking
25    at what is actually going on.  That's our position.  More is

1    required here, given what is at -- at stake.

2         The government's position, in contrast, is that much,

3    much less is required, that not much at all is required.  And

4    that is, I think, disrespectful and an unacceptable way to the

5    separation of powers issues that we're talking about.

6         And I -- you know, one -- one way to really highlight

7    this, Judge, is we're going to come back this afternoon to talk

8    about -- just speaking for President Trump -- what is a truly

9    extraordinary effort -- extraordinary -- to gag his ability to

10   speak, including at -- at a debate, on the campaign trail?

11        Who -- who authorized that, Judge?  Who authorized --

12   did the Attorney General authorize that motion o be filed?  Is

13   that what you were told on Friday in vague terms but without

14   specifics?  And I think it really brings to the head -- to a

15   head exactly what we're dealing with here and why at each and

16   every juncture in this case, we will push for that oversight

17   and try and illustrate ways that it is really falling apart.

18        THE COURT:  All right.  Thank you.  That will conclude

19   our arguments this morning on the motion to dismiss.  We will

20   resume at 3:00 p.m. to address the other bond modification

21   motion.

22        I wish you all a pleasant lunch, and we will see each

23   other at 3:00.  Thank you.

24        (These proceedings concluded at 11:42 a.m.)

25

```
 1                    C E R T I F I C A T E

 2

 3

 4    I hereby certify that the foregoing is an accurate

 5    transcription of the proceedings in the above-entitled matter.

 6

 7
      DATE:  06-24-2024        /s/Laura Melton
 8                             LAURA E. MELTON, RMR, CRR, FPR
                               Official Court Reporter
 9                             United States District Court
                               Southern District of Florida
10                             Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

'22 [1]_ - 1:38:20
'87 [1]_ - 1:29:7

**1**

1 [1]_ - 1:34:24
100-202 [1]_ - 1:9:13
100-498 [1]_ - 1:25:10
111-68 [2]_ - 1:10:3_, 1:10:10
11:42 [1]_ - 1:72:24
12(b [1]_ - 1:6:12
13-cr-294 [1]_ - 1:17:18
1304 [2]_ - 1:33:3_, 1:33:4
1322(b)(2 [1]_ - 1:33:5
1501 [1]_ - 1:10:11
1504 [3]_ - 1:31:25_, 1:32:5_, 1:33:4
170 [1]_ - 1:17:21
1885 [2]_ - 1:43:20_, 1:45:14
18th [1]_ - 1:38:20
1926 [1]_ - 1:61:2
1978 [2]_ - 1:62:1_, 1:64:12
1979 [1]_ - 1:14:7
1987 [5]_ - 1:7:21_, 1:10:1_, 1:24:1_, 1:24:17_, 1:31:1
1989 [1]_ - 1:59:5
1992 [1]_ - 1:56:17
1994 [1]_ - 1:56:17
1999 [3]_ - 1:20:16_, 1:55:10_, 1:60:18
1st [1]_ - 1:61:13

**2**

2 [1]_ - 1:21:16
2004 [1]_ - 1:52:17
2009 [3]_ - 1:10:2_, 1:10:6_, 1:10:21
2022 [2]_ - 1:25:2_, 1:29:23
2023 [3]_ - 1:37:12_, 1:38:21_, 1:41:21
2024 [2]_ - 1:37:13_, 1:42:4
23-cr-80101 [1]_ - 1:3:6
24 [1]_ - 1:29:23
25th [1]_ - 1:63:4

26 [1]_ - 1:45:19
28 [13]_ - 1:6:1_, 1:9:8_, 1:9:15_, 1:14:23_, 1:26:10_, 1:31:3_, 1:34:7_, 1:34:15_, 1:34:20_, 1:35:18_, 1:35:22_, 1:36:20_, 1:66:17
281 [1]_ - 1:14:7

**3**

3 [1]_ - 1:21:19
3.8 [1]_ - 1:38:23
3.81 [1]_ - 1:39:1
30th [1]_ - 1:56:17
31 [6]_ - 1:11:6_, 1:31:24_, 1:32:1_, 1:32:5_, 1:33:3_, 1:33:5
3:00 [2]_ - 1:72:20_, 1:72:23

**4**

4 [1]_ - 1:15:7
414 [1]_ - 1:8:11
441 [1]_ - 1:14:7
48 [2]_ - 1:17:20_, 1:69:17
485 [1]_ - 1:66:24
486 [1]_ - 1:66:24
496 [1]_ - 1:8:11

**5**

5.4 [2]_ - 1:38:21_, 1:39:17
515 [2]_ - 1:5:14_, 1:51:16
515(b [3]_ - 1:11:20_, 1:31:3_, 1:56:21
519 [1]_ - 1:5:15
533 [3]_ - 1:5:14_, 1:51:16_, 1:56:21
533(1 [1]_ - 1:31:3
543 [1]_ - 1:5:15
549(a [1]_ - 1:21:2
575 [1]_ - 1:14:18
591 [9]_ - 1:9:8_, 1:9:15_, 1:26:10_, 1:34:8_, 1:34:15_, 1:34:20_, 1:35:18_, 1:35:22_, 1:36:20
594(a [3]_ - 1:19:13_, 1:19:24_, 1:21:7
594(f)(1 [1]_ - 1:27:5
596(a [2]_ - 1:28:18_, 1:28:21
5th [1]_ - 1:40:25

**6**

600 [7]_ - 1:15:8_, 1:15:14_, 1:16:1_, 1:16:4_, 1:23:19_, 1:23:24_, 1:24:14
600.6 [4]_ - 1:21:2_, 1:21:7_, 1:26:24_, 1:52:3
600.7 [1]_ - 1:21:10
600.7(b) [1]_ - 1:26:25
607 [2]_ - 1:27:13_, 1:28:11

**7**

705 [1]_ - 1:29:23
76 [1]_ - 1:63:20

**9**

9 [1]_ - 1:39:17
90-day [1]_ - 1:27:25
92 [1]_ - 1:14:18
9th [4]_ - 1:16:19_, 1:17:5_, 1:18:1_, 1:61:13

**A**

a.m [1]_ - 1:72:24
ability [6]_ - 1:4:24_, 1:6:14_, 1:17:8_, 1:27:17_, 1:54:25_, 1:72:9
able [7]_ - 1:4:21_, 1:13:2_, 1:18:16_, 1:68:2_, 1:69:19_, 1:70:15_, 1:70:17
absolutely [2]_ - 1:40:24_, 1:40:25
abstention [2]_ - 1:6:21_, 1:7:15
accepted [1]_ - 1:38:13
access [9]_ - 1:4:22_, 1:12:10_, 1:13:2_, 1:17:13_, 1:17:23_, 1:18:18_, 1:68:2_, 1:69:19_, 1:70:17
accessed [1]_ - 1:30:17
accessible [1]_ - 1:70:23
accessing [3]_ - 1:4:20_, 1:14:22_, 1:18:4
accompanied [1]_ - 1:25:9
account [1]_ - 1:56:3
Accountability [1]_ - 1:10:15
accountability [2]_ - 1:52:8_, 1:60:16

accounting [2]_ - 1:38:12_, 1:38:13
acknowledge [2]_ - 1:17:24_, 1:52:10
acquiescence [4]_ - 1:36:6_, 1:51:8_, 1:64:25_, 1:65:2
Acquiescence [1]_ - 1:36:10
Act [42]_ - 1:7:20_, 1:9:5_, 1:14:1_, 1:15:17_, 1:15:25_, 1:16:5_, 1:16:9_, 1:18:9_, 1:18:24_, 1:19:8_, 1:19:13_, 1:19:18_, 1:20:17_, 1:20:19_, 1:23:8_, 1:23:10_, 1:23:15_, 1:23:17_, 1:23:20_, 1:24:7_, 1:24:15_, 1:25:23_, 1:26:12_, 1:26:14_, 1:26:17_, 1:27:5_, 1:27:9_, 1:27:19_, 1:28:4_, 1:28:7_, 1:28:18_, 1:29:4_, 1:29:7_, 1:29:14_, 1:35:2_, 1:38:2_, 1:51:21_, 1:53:1_, 1:56:15_, 1:56:25_, 1:60:15_, 1:66:16
act [1]_ - 1:8:5
acting [3]_ - 1:12:1_, 1:68:5_, 1:69:23
action [3]_ - 1:21:11_, 1:21:13_, 1:26:15
actions [4]_ - 1:24:3_, 1:68:23_, 1:69:2_, 1:71:3
activities [4]_ - 1:25:18_, 1:30:13_, 1:34:25_, 1:41:24
acts [1]_ - 1:42:21
actual [2]_ - 1:9:5_, 1:38:19
addition [2]_ - 1:11:25_, 1:43:14
additional [2]_ - 1:4:11_, 1:44:18
address [13]_ - 1:6:5_, 1:7:21_, 1:14:9_, 1:26:12_, 1:32:25_, 1:40:20_, 1:41:10_, 1:41:14_, 1:47:7_, 1:52:20_, 1:61:4_, 1:69:9_, 1:72:20
addressed [9]_ - 1:6:7_, 1:26:24_, 1:36:3_, 1:44:3_, 1:46:2_, 1:46:12_, 1:48:21_, 1:48:22_, 1:54:19
addresses [3]_ - 1:25:14_, 1:33:4_, 1:33:9
addressing [1]_ - 1:60:21
adequate [1]_ - 1:60:4
adjudicative [1]_ - 1:43:18

adjusted [1]_ - 1:33:13

administrative [1]_ - 1:55:4

Administrative [1]_ - 1:14:1

admittedly [1]_ - 1:23:7

adopted [1]_ - 1:23:18

advantage [1]_ - 1:65:21

affairs [1]_ - 1:10:8

afternoon [1]_ - 1:72:7

aggrieved [1]_ - 1:69:3

ago [3]_ - 1:16:19_, 1:37:18_, 1:64:23

agree [14]_ - 1:5:16_, 1:29:24_, 1:31:6_, 1:31:15_, 1:33:22_, 1:36:19_, 1:40:13 _, 1:40:24_, 1:41:12_, 1:41:13_, 1:51:21_, 1:65:22 _, 1:65:23_, 1:67:19

Alexander [1]_ - 1:63:19

allocation [1]_ - 1:50:8

allotment [1]_ - 1:42:3

allowed [1]_ - 1:24:22

alluding [1]_ - 1:37:17

almost [2]_ - 1:5:12_, 1:16:7

alternative [7]_ - 1:22:8_, 1:22:10_, 1:22:15_, 1:41:17 _, 1:41:18_, 1:42:8_, 1:70:11

alternatively [2]_ - 1:48:4 _, 1:48:7

ambiguity [1]_ - 1:25:4

ambiguous [2]_ - 1:24:24 _, 1:26:2

Amendment [1]_ - 1:63:4

amendments [1]_ - 1:35:13

America [1]_ - 1:3:5

American [1]_ - 1:68:10

amicus [2]_ - 1:43:15_, 1:62:11

amount [4]_ - 1:32:13_, 1:34:24_, 1:40:6_, 1:40:11

amounts [1]_ - 1:33:6

analysis [19]_ - 1:5:22_, 1:6:20_, 1:6:21_, 1:7:7_, 1:7:15_, 1:8:17_, 1:11:2_, 1:11:18_, 1:11:23_, 1:15:11 _, 1:17:7_, 1:18:2_, 1:20:12_, 1:20:13_, 1:24:21_, 1:25:1_, 1:34:21_, 1:64:24

analyzed [1]_ - 1:66:20

annual [1]_ - 1:9:22

answer [11]_ - 1:12:18_, 1:37:22_, 1:39:4_, 1:39:22_, 1:40:1_, 1:49:9_, 1:50:13_, 1:51:5_, 1:55:19_, 1:67:19_, 1:67:20

answered [2]_ - 1:17:14_, 1:45:6

answers [1]_ - 1:36:6

apart [1]_ - 1:72:17

apologize [2]_ - 1:29:21_, 1:32:6

appeal [1]_ - 1:7:6

appear [1]_ - 1:9:9

appearance [1]_ - 1:3:7

application [3]_ - 1:44:4_, 1:49:11_, 1:67:25

applied [3]_ - 1:11:20_, 1:18:5_, 1:56:12

applies [2]_ - 1:52:16_, 1:58:3

apply [5]_ - 1:8:23_, 1:45:11_, 1:58:5_, 1:58:6_, 1:70:19

appointed [20]_ - 1:11:22 _, 1:15:24_, 1:16:6_, 1:19:12 _, 1:19:15_, 1:19:20_, 1:20:20_, 1:21:3_, 1:21:12_, 1:21:16_, 1:23:24_, 1:31:2_, 1:35:2_, 1:35:22_, 1:36:20_, 1:56:15_, 1:56:18_, 1:56:24 _, 1:57:1_, 1:58:11

appointing [1]_ - 1:19:2

appointment [13]_ - 1:5:23_, 1:11:3_, 1:11:18_, 1:19:4_, 1:23:21_, 1:24:22_, 1:25:3_, 1:31:13_, 1:53:21_, 1:54:4_, 1:54:14_, 1:57:14_, 1:65:8

appointments [1]_ - 1:44:14

Appointments [10]_ - 1:5:7_, 1:5:14_, 1:18:15_, 1:21:23_, 1:22:6_, 1:22:22_, 1:36:15_, 1:44:7_, 1:46:13_, 1:65:22

approach [1]_ - 1:43:21

appropriate [8]_ - 1:6:10 _, 1:6:22_, 1:43:13_, 1:45:23 _, 1:46:16_, 1:68:15_, 1:69:6 _, 1:70:9

appropriated [5]_ - 1:25:17_, 1:41:20_, 1:41:23 _, 1:50:4_, 1:69:19

appropriateness [1]_ - 1:14:21

appropriation [70]_ - 1:4:21_, 1:5:8_, 1:5:20_, 1:7:1_, 1:8:1_, 1:8:6_, 1:8:18 _, 1:8:22_, 1:9:11_, 1:9:23_, 1:10:7_, 1:10:18_, 1:13:18_, 1:13:25_, 1:14:17_, 1:14:22 _, 1:17:13_, 1:17:24_, 1:18:4 _, 1:18:18_, 1:21:18_, 1:23:3 _, 1:23:6_, 1:23:9_, 1:24:1_, 1:24:8_, 1:24:23_, 1:24:25_, 1:25:6_, 1:25:10_, 1:25:15_, 1:26:20_, 1:30:4_, 1:30:8_, 1:30:13_, 1:30:14_, 1:30:16 _, 1:30:25_, 1:31:16_, 1:31:18_, 1:31:23_, 1:32:12 _, 1:33:22_, 1:34:12_, 1:34:13_, 1:34:23_, 1:35:5_, 1:35:7_, 1:35:16_, 1:35:19_, 1:36:5_, 1:39:3_, 1:39:6_, 1:39:20_, 1:41:11_, 1:41:21 _, 1:47:14_, 1:50:6_, 1:51:12 _, 1:59:22_, 1:66:14_, 1:66:22_, 1:67:6_, 1:67:11_, 1:68:3_, 1:68:21_, 1:70:18_, 1:70:22_, 1:71:5

appropriations [16]_ - 1:8:4_, 1:9:24_, 1:10:22_, 1:12:16_, 1:17:7_, 1:21:22_, 1:22:23_, 1:31:5_, 1:31:20_, 1:44:10_, 1:44:14_, 1:47:13 _, 1:49:21_, 1:59:20_, 1:70:16_, 1:71:24

Appropriations [23]_ - 1:4:7_, 1:4:23_, 1:7:19_, 1:7:20_, 1:7:22_, 1:7:25_, 1:8:2_, 1:8:7_, 1:8:20_, 1:9:2 _, 1:9:5_, 1:16:15_, 1:17:7_, 1:18:15_, 1:30:10_, 1:32:11 _, 1:33:17_, 1:40:5_, 1:40:12 _, 1:47:4_, 1:49:19_, 1:49:25 _, 1:71:11

approvals [1]_ - 1:51:14

area [1]_ - 1:16:15

areas [1]_ - 1:27:1

arena [1]_ - 1:53:16

arguably [1]_ - 1:11:20

argue [2]_ - 1:5:16_, 1:47:25

argued [2]_ - 1:21:20_, 1:46:5

arguing [2]_ - 1:4:13_, 1:50:23

argument [29]_ - 1:4:2_, 1:4:9_, 1:6:7_, 1:8:16_, 1:8:20_, 1:8:25_, 1:11:8_, 1:12:19_, 1:12:24_, 1:13:11 _, 1:13:15_, 1:13:16_, 1:13:20_, 1:14:20_, 1:15:6_,

1:22:10_, 1:22:15_, 1:46:8_, 1:46:20_, 1:47:17_, 1:49:2_, 1:49:24_, 1:59:18_, 1:62:7_, 1:66:18_, 1:67:10_, 1:68:18 _, 1:68:20_, 1:70:25

arguments [9]_ - 1:5:17_, 1:5:24_, 1:7:25_, 1:11:12_, 1:12:14_, 1:13:14_, 1:36:14 _, 1:51:3_, 1:72:19

Armstrong [1]_ - 1:55:20

Arthrex [1]_ - 1:55:2

article [2]_ - 1:59:13_, 1:59:25

articulated [1]_ - 1:45:18

Ashleigh [1]_ - 1:3:20

aside [2]_ - 1:18:21_, 1:33:21

aspects [1]_ - 1:11:14

assessed [1]_ - 1:43:1

assessing [1]_ - 1:49:22

associations [1]_ - 1:68:18

assuming [1]_ - 1:64:7

assumption [1]_ - 1:42:12

attention [1]_ - 1:67:21

attorney [10]_ - 1:11:21_, 1:21:5_, 1:21:8_, 1:60:21_, 1:61:8_, 1:61:9_, 1:61:16_, 1:61:20_, 1:62:13_, 1:70:3

Attorney [26]_ - 1:13:22_, 1:14:14_, 1:19:10_, 1:19:17 _, 1:19:19_, 1:19:20_, 1:20:5 _, 1:21:7_, 1:21:11_, 1:22:4_, 1:28:11_, 1:28:13_, 1:28:22 _, 1:38:8_, 1:53:6_, 1:53:9_, 1:55:9_, 1:57:1_, 1:57:15_, 1:58:7_, 1:58:16_, 1:60:17_, 1:62:5_, 1:62:18_, 1:68:5_, 1:72:12

attorneys [7]_ - 1:61:4_, 1:62:2_, 1:62:9_, 1:63:12_, 1:64:5_, 1:64:7_, 1:65:4

audit [1]_ - 1:10:12

Audits [1]_ - 1:10:14

audits [1]_ - 1:11:5

authorities [2]_ - 1:45:12 _, 1:69:7

authority [17]_ - 1:12:15_, 1:13:23_, 1:15:24_, 1:16:7_, 1:19:11_, 1:19:16_, 1:19:20 _, 1:21:4_, 1:21:6_, 1:21:8_, 1:33:9_, 1:52:4_, 1:57:2_, 1:57:19_, 1:58:17_, 1:66:3_, 1:68:5

authorization [1]_ -

1:47:18
authorize [1]_ - 1:72:12
authorized [7]_ - 1:8:25_,
1:9:1_, 1:30:14_, 1:49:6_,
1:49:23_, 1:72:11
authorizes [1]_ - 1:8:19
autonomy [1]_ - 1:13:23
available [2]_ - 1:6:10_,
1:31:5
avenue [1]_ - 1:6:22
avoidance [1]_ - 1:60:5
aware [7]_ - 1:33:10_,
1:40:9_, 1:47:13_, 1:53:12_,
1:53:22_, 1:60:20_, 1:62:8

## B

background [1]_ -
1:33:15
backing [1]_ - 1:56:20
balance [4]_ - 1:24:5_,
1:52:7_, 1:60:10_, 1:60:16
bankruptcy [1]_ - 1:42:25
bar [1]_ - 1:29:9
Barr [1]_ - 1:58:7
based [13]_ - 1:4:4_,
1:8:20_, 1:9:14_, 1:11:13_,
1:12:13_, 1:14:22_, 1:22:19
_, 1:34:13_, 1:69:6_, 1:69:15
_, 1:70:1_, 1:70:6_, 1:71:23
bases [1]_ - 1:22:8
basis [5]_ - 1:6:15_, 1:50:9
_, 1:51:15_, 1:70:13_, 1:71:1
bear [3]_ - 1:23:5_, 1:24:16
_, 1:68:15
bears [1]_ - 1:26:10
became [2]_ - 1:52:8_,
1:60:13
become [1]_ - 1:37:16
begin [1]_ - 1:49:3
beginning [1]_ - 1:25:16
begins [2]_ - 1:9:15
begs [1]_ - 1:57:19
behalf [7]_ - 1:3:10_,
1:3:18_, 1:3:23_, 1:6:11_,
1:50:5_, 1:56:5_, 1:69:2
behoove [1]_ - 1:44:17
best [7]_ - 1:7:11_, 1:28:6_,
1:45:12_, 1:56:3_, 1:56:6_,
1:58:20_, 1:64:5
better [3]_ - 1:63:22_,
1:63:23_, 1:65:11
better-quality [2]_ -

1:63:23_, 1:65:11
between [20]_ - 1:5:6_,
1:5:15_, 1:14:2_, 1:15:8_,
1:18:14_, 1:26:23_, 1:28:16
_, 1:28:22_, 1:30:6_, 1:34:5_,
1:34:20_, 1:35:1_, 1:47:20_,
1:52:7_, 1:53:3_, 1:56:24_,
1:59:18_, 1:59:20_, 1:60:16
_, 1:71:12
beyond [2]_ - 1:38:16_,
1:61:12
Biden [2]_ - 1:36:3_,
1:52:19
big [1]_ - 1:5:1
Bill [1]_ - 1:58:7
billion [1]_ - 1:41:21
Bilodeau [2]_ - 1:29:22_,
1:30:8
BILODEAU [1]_ - 1:29:22
binding [1]_ - 1:31:14
bit [7]_ - 1:13:15_, 1:13:19
_, 1:24:19_, 1:25:1_, 1:25:8_,
1:47:23_, 1:56:11
Blanche [1]_ - 1:3:13
Board [1]_ - 1:33:14
Bob [2]_ - 1:19:7_, 1:23:23
body [2]_ - 1:22:20_,
1:43:18
boils [1]_ - 1:36:1
bond [1]_ - 1:72:20
Bondoc [1]_ - 1:3:20
book [2]_ - 1:59:3_,
1:59:15
books [8]_ - 1:21:3_,
1:23:7_, 1:23:9_, 1:23:13_,
1:23:21_, 1:24:9_, 1:24:14_,
1:25:6
bottom [1]_ - 1:30:9
bound [1]_ - 1:69:24
bounds [1]_ - 1:28:24
BOVE [35]_ - 1:3:12_,
1:4:15_, 1:4:18_, 1:5:19_,
1:6:6_, 1:7:2_, 1:7:24_, 1:9:3
_, 1:9:12_, 1:10:1_, 1:11:2_,
1:12:8_, 1:12:17_, 1:12:21_,
1:12:23_, 1:12:25_, 1:13:12
_, 1:15:5_, 1:15:16_, 1:15:23
_, 1:16:13_, 1:16:17_, 1:17:1
_, 1:17:4_, 1:18:13_, 1:19:1_,
1:20:8_, 1:20:12_, 1:22:1_,
1:22:17_, 1:23:2_, 1:26:2_,
1:27:2_, 1:29:17_, 1:66:11
Bove [5]_ - 1:3:12_, 1:4:13
_, 1:30:18_, 1:46:20_,

1:66:10
branch [1]_ - 1:4:24
branches [4]_ - 1:8:8_,
1:8:13_, 1:63:8_, 1:63:9
BRATT [1]_ - 1:3:9
Bratt [1]_ - 1:3:9
brief [11]_ - 1:6:4_, 1:8:10_,
1:18:7_, 1:37:25_, 1:44:2_,
1:44:20_, 1:45:8_, 1:45:19_,
1:46:5_, 1:48:20_, 1:49:2
briefed [3]_ - 1:44:5_,
1:45:4_, 1:45:17
briefing [7]_ - 1:5:25_,
1:44:18_, 1:44:22_, 1:45:23
_, 1:46:1_, 1:58:8_, 1:68:16
briefs [1]_ - 1:4:6
bring [2]_ - 1:6:14_, 1:30:1
bringing [2]_ - 1:7:22_,
1:51:15
brings [1]_ - 1:72:14
broader [1]_ - 1:35:12
brown [1]_ - 1:14:6
Bua [1]_ - 1:58:14
budget [3]_ - 1:13:3_,
1:38:8_, 1:38:9
burden [2]_ - 1:17:22_,
1:69:18

## C

cabinet [1]_ - 1:63:9
CAL [1]_ - 1:17:21
California [3]_ - 1:17:18_,
1:69:11_, 1:70:1
campaign [1]_ - 1:72:10
candid [1]_ - 1:46:7
cannot [6]_ - 1:14:16_,
1:14:24_, 1:18:19_, 1:32:7_,
1:38:5_, 1:48:23
cap [9]_ - 1:12:6_, 1:12:20
_, 1:13:8_, 1:32:18_, 1:33:10
_, 1:33:13_, 1:33:19_, 1:41:6
_, 1:70:19
capital [3]_ - 1:34:3_,
1:57:12_, 1:57:13
care [1]_ - 1:26:18
carefully [1]_ - 1:70:18
cares [1]_ - 1:26:18
Carlos [1]_ - 1:3:6
carry [1]_ - 1:36:14
carrying [1]_ - 1:71:13
carveout [1]_ - 1:14:14

case [46]_ - 1:3:3_, 1:3:6_,
1:4:19_, 1:4:22_, 1:6:13_,
1:6:15_, 1:7:4_, 1:7:5_,
1:7:23_, 1:9:1_, 1:11:12_,
1:11:25_, 1:12:14_, 1:14:7_,
1:14:8_, 1:14:18_, 1:17:11_,
1:17:25_, 1:28:23_, 1:29:19
_, 1:29:23_, 1:32:19_,
1:33:12_, 1:36:4_, 1:36:11_,
1:36:20_, 1:40:9_, 1:41:1_,
1:43:7_, 1:43:8_, 1:43:19_,
1:45:15_, 1:45:20_, 1:46:8_,
1:47:12_, 1:47:20_, 1:55:20
_, 1:60:19_, 1:60:21_,
1:60:23_, 1:61:2_, 1:61:3_,
1:68:18_, 1:69:12_, 1:70:3_,
1:72:16
cases [14]_ - 1:4:25_,
1:6:16_, 1:7:11_, 1:7:13_,
1:7:14_, 1:8:9_, 1:16:14_,
1:17:17_, 1:30:7_, 1:43:17_,
1:49:21_, 1:61:12_, 1:68:13
Cashing [1]_ - 1:68:11
categorically [1]_ -
1:68:24
caveat [1]_ - 1:39:7
Certain [1]_ - 1:10:14
certain [3]_ - 1:39:13_,
1:64:18_, 1:65:13
certainly [22]_ - 1:6:16_,
1:31:13_, 1:33:15_, 1:39:22
_, 1:40:9_, 1:41:13_, 1:50:22
_, 1:53:18_, 1:54:6_, 1:59:7_,
1:61:25_, 1:62:20_, 1:63:3_,
1:63:8_, 1:63:19_, 1:63:22_,
1:64:9_, 1:64:14_, 1:65:13_,
1:65:23_, 1:66:2_, 1:71:6
CFPB [8]_ - 1:12:17_,
1:12:20_, 1:32:19_, 1:33:11
_, 1:41:1_, 1:41:10_, 1:68:17
_, 1:69:9
challenge [17]_ - 1:6:5_,
1:7:18_, 1:7:22_, 1:34:18_,
1:40:5_, 1:40:12_, 1:42:24_,
1:44:8_, 1:46:23_, 1:47:4_,
1:49:3_, 1:49:18_, 1:49:25_,
1:50:10_, 1:50:11_, 1:50:16
_, 1:51:1
challenges [1]_ - 1:49:5
challenging [2]_ - 1:7:19
_, 1:49:10
change [2]_ - 1:42:17_,
1:55:15
characterization [4]_ -
1:15:1_, 1:52:14_, 1:52:15_,
1:52:16
characterizations [1]_ -

1:49:5
charges [2]‑ - 1:17:19‑,
1:69:14
charts [1]‑ - 1:28:13
check [4]‑ - 1:13:6‑,
1:13:23‑, 1:65:17‑, 1:67:18
Check [1]‑ - 1:68:10
Chief [1]‑ - 1:55:2
choices [1]‑ - 1:26:8
chooses [1]‑ - 1:28:13
chose [2]‑ - 1:9:19‑,
1:26:5
chosen [1]‑ - 1:70:4
Chrysler [2]‑ - 1:14:6‑,
1:14:17
Circuit [10]‑ - 1:6:16‑,
1:7:7‑, 1:7:13‑, 1:16:19‑,
1:17:5‑, 1:18:1‑, 1:29:22‑,
1:29:25‑, 1:61:13‑, 1:68:11
circuit [4]‑ - 1:15:12‑,
1:60:20‑, 1:60:24‑, 1:61:13
Circuit's [1]‑ - 1:41:1
circuit's [1]‑ - 1:15:11
citation [1]‑ - 1:68:10‑,
1:69:11
citations [1]‑ - 1:66:17
cite [1]‑ - 1:14:7
cited [7]‑ - 1:11:5‑, 1:11:6
‑, 1:29:5‑, 1:38:1‑, 1:55:1‑,
1:59:9‑, 1:61:12
cites [5]‑ - 1:8:10‑, 1:29:23
‑, 1:32:4‑, 1:32:23‑, 1:59:12
clarify [3]‑ - 1:10:19‑,
1:35:15‑, 1:42:11
clarifying [1]‑ - 1:38:25
clause [2]‑ - 1:44:14‑,
1:63:2
Clause [30]‑ - 1:4:7‑,
1:4:23‑, 1:5:7‑, 1:5:14‑,
1:7:19‑, 1:7:23‑, 1:7:25‑,
1:8:2‑, 1:8:7‑, 1:8:20‑, 1:9:2
‑, 1:16:15‑, 1:17:7‑, 1:18:15
‑, 1:18:16‑, 1:21:24‑, 1:22:6
‑, 1:22:22‑, 1:30:10‑,
1:33:17‑, 1:36:15‑, 1:40:5‑,
1:40:12‑, 1:44:7‑, 1:46:13‑,
1:47:5‑, 1:49:19‑, 1:49:25‑,
1:65:22‑, 1:71:11
clear [10]‑ - 1:6:22‑, 1:8:9
‑, 1:19:14‑, 1:25:20‑, 1:35:6
‑, 1:40:9‑, 1:44:6‑, 1:50:13‑,
1:58:11‑, 1:66:23
clearly [2]‑ - 1:50:3‑,
1:61:10

clerk [1]‑ - 1:3:20
closest [1]‑ - 1:6:7
co [1]‑ - 1:71:8
co-defendants [1]‑ -
1:71:8
Code [4]‑ - 1:31:3‑,
1:31:24‑, 1:32:1‑, 1:33:5
codified [2]‑ - 1:20:7‑,
1:35:8
cognizable [1]‑ - 1:6:24
collapse [1]‑ - 1:65:1
collected [1]‑ - 1:33:7
Columbia [3]‑ - 1:16:21‑,
1:19:4‑, 1:66:19
Comey [2]‑ - 1:12:1‑,
1:67:24
comfortable [2]‑ - 1:10:8
‑, 1:24:6
coming [3]‑ - 1:19:7‑,
1:39:1‑, 1:43:5
comment [1]‑ - 1:15:3
commitment [1]‑ -
1:48:13
committee [1]‑ - 1:26:6
committees [1]‑ - 1:9:24
common [1]‑ - 1:43:21
comparable [1]‑ -
1:31:22‑, 1:52:23
compared [1]‑ - 1:52:11
comparing [2]‑ - 1:18:7‑,
1:19:24
comparison [2]‑ -
1:18:22‑, 1:21:2
completed [1]‑ - 1:54:10
completely [1]‑ - 1:36:14
compliance [3]‑ - 1:17:12
‑, 1:27:10‑, 1:28:9
complied [1]‑ - 1:55:23
comply [1]‑ - 1:33:16
complying [1]‑ - 1:27:6‑,
1:56:1
component [2]‑ - 1:38:23
‑, 1:39:18
components [1]‑ -
1:39:13
comprehensive [2]‑ -
1:58:24‑, 1:59:7
compromises [1]‑ -
1:26:7
comptroller [1]‑ - 1:9:21
concept [3]‑ - 1:8:7‑,
1:21:14

concern [5]‑ - 1:40:15‑,
1:41:4‑, 1:55:11‑, 1:57:5‑,
1:60:14
concerned [1]‑ - 1:27:11
concerns [4]‑ - 1:6:11‑,
1:8:17‑, 1:13:5‑, 1:61:15
conclude [2]‑ - 1:29:25‑,
1:72:18
concluded [1]‑ - 1:72:24
conclusion [1]‑ - 1:62:7
concurrence [1]‑ -
1:68:10
conditions [1]‑ - 1:28:19
conduct [2]‑ - 1:11:5‑,
1:30:13
conference [7]‑ - 1:25:9‑,
1:25:10‑, 1:25:14‑, 1:25:19
‑, 1:26:9‑, 1:26:11‑, 1:66:24
conferred [1]‑ - 1:28:7
confidence [1]‑ - 1:23:12
confirm [1]‑ - 1:36:13
confirmation [3]‑ -
1:63:14‑, 1:64:4‑, 1:65:8
confirmed [1]‑ - 1:63:25
conflict [2]‑ - 1:28:5‑,
1:60:5
Congress [36]‑ - 1:9:18‑,
1:10:2‑, 1:10:5‑, 1:10:7‑,
1:10:11‑, 1:10:20‑, 1:19:14
‑, 1:20:15‑, 1:22:25‑, 1:23:2
‑, 1:23:11‑, 1:24:1‑, 1:24:9‑,
1:24:17‑, 1:25:5‑, 1:25:14‑,
1:25:23‑, 1:26:4‑, 1:26:16‑,
1:31:18‑, 1:52:18‑, 1:63:8‑,
1:63:17‑, 1:63:22‑, 1:64:3‑,
1:64:17‑, 1:65:11‑, 1:65:17
‑, 1:65:20‑, 1:65:24‑,
1:65:25‑, 1:66:3‑, 1:67:7‑,
1:71:6‑, 1:71:12‑, 1:71:19
Congressional [10]‑ -
1:8:3‑, 1:8:14‑, 1:36:6‑,
1:36:10‑, 1:51:8‑, 1:63:15‑,
1:64:14‑, 1:64:24‑, 1:65:3‑,
1:65:19
Congressionally [1]‑ -
1:30:25
Congressionally-
enacted [1]‑ - 1:30:25
Congressmen [1]‑ -
1:71:24
connection [1]‑ - 1:11:15
consequence [1]‑ -
1:49:20
considerably [1]‑ -

1:37:24
consideration [2]‑ -
1:9:18‑, 1:28:15
considering [1]‑ - 1:45:1
consist [1]‑ - 1:29:11
consistent [13]‑ - 1:20:24
‑, 1:22:10‑, 1:26:20‑,
1:27:18‑, 1:30:23‑, 1:31:17
‑, 1:39:10‑, 1:39:24‑,
1:51:23‑, 1:59:21‑, 1:62:16
‑, 1:69:24‑, 1:70:8
consolidated [1]‑ -
1:17:17
conspicuously [1]‑ -
1:45:6
Constitution [5]‑ - 1:8:12
‑, 1:30:12‑, 1:43:22‑, 1:63:1
‑, 1:65:9
Constitution's [1]‑ -
1:42:24
constitutional [16]‑ -
1:8:20‑, 1:44:13‑, 1:44:16‑,
1:45:8‑, 1:46:23‑, 1:49:3‑,
1:49:18‑, 1:49:24‑, 1:50:10
‑, 1:50:11‑, 1:50:15‑,
1:62:11‑, 1:64:1‑, 1:65:21‑,
1:65:24‑, 1:66:5
constitutionality [2]‑ -
1:7:20‑, 1:12:16
constitutionally [2]‑ -
1:57:7‑, 1:64:16
constraints [1]‑ - 1:46:16
consultation [2]‑ -
1:28:11‑, 1:56:1
contains [1]‑ - 1:32:17
contemplate [3]‑ -
1:28:11‑, 1:28:12‑, 1:28:21
contemplated [3]‑ -
1:19:14‑, 1:26:15‑, 1:71:22
contemplates [2]‑ -
1:21:10‑, 1:71:12
contemplating [1]‑ -
1:24:10
contest [1]‑ - 1:71:1
context [16]‑ - 1:7:10‑,
1:9:17‑, 1:12:11‑, 1:16:18‑,
1:23:2‑, 1:24:2‑, 1:24:13‑,
1:25:8‑, 1:26:3‑, 1:36:15‑,
1:40:6‑, 1:43:18‑, 1:44:7‑,
1:46:10‑, 1:59:21
contexts [1]‑ - 1:42:20
continue [2]‑ - 1:20:4‑,
1:48:15
continued [2]‑ - 1:16:25‑,
1:17:8

continuing [3] - 1:25:21, 1:38:9, 1:67:2

Contra [3] - 1:15:12, 1:16:1, 1:23:18

contrast [1] - 1:72:2

control [3] - 1:8:14, 1:37:19, 1:54:1

conversation [1] - 1:47:3

conversations [1] - 1:56:19

convicted [1] - 1:7:6

conviction [1] - 1:7:4

convince [1] - 1:68:1

core [2] - 1:6:6, 1:34:18

correct [17] - 1:9:3, 1:16:25, 1:17:1, 1:17:13, 1:20:7, 1:20:8, 1:22:16, 1:22:17, 1:42:14, 1:42:15, 1:48:2, 1:51:15, 1:53:21, 1:54:11, 1:54:12, 1:54:16, 1:62:3

counsel [41] - 1:5:10, 1:9:23, 1:16:8, 1:18:8, 1:21:12, 1:22:25, 1:23:23, 1:24:17, 1:24:23, 1:25:4, 1:25:18, 1:26:6, 1:26:19, 1:27:4, 1:27:6, 1:28:3, 1:30:19, 1:31:2, 1:34:4, 1:34:25, 1:35:1, 1:35:2, 1:35:21, 1:36:1, 1:36:8, 1:38:3, 1:49:13, 1:50:5, 1:51:5, 1:51:10, 1:51:22, 1:56:14, 1:56:23, 1:56:24, 1:57:10, 1:57:12, 1:57:23, 1:58:19, 1:59:13, 1:60:1, 1:60:3

Counsel [51] - 1:3:8, 1:4:5, 1:6:4, 1:15:24, 1:16:6, 1:18:9, 1:18:23, 1:18:24, 1:19:9, 1:19:14, 1:21:3, 1:21:16, 1:21:20, 1:26:24, 1:28:8, 1:28:14, 1:28:23, 1:30:12, 1:30:19, 1:30:24, 1:31:2, 1:34:3, 1:36:7, 1:36:19, 1:37:23, 1:39:11, 1:41:25, 1:42:13, 1:44:3, 1:45:6, 1:46:6, 1:48:14, 1:49:12, 1:51:4, 1:51:22, 1:51:23, 1:52:3, 1:53:11, 1:56:8, 1:56:10, 1:56:22, 1:57:5, 1:57:11, 1:57:18, 1:57:24, 1:59:5, 1:60:4, 1:60:12, 1:60:15, 1:69:1, 1:70:23

Counsel's [10] - 1:4:19, 1:8:9, 1:13:2, 1:36:25,

1:37:5, 1:39:2, 1:57:15, 1:69:23, 1:70:15, 1:70:25

counsel's [2] - 1:27:17, 1:52:12

counsels [7] - 1:35:4, 1:36:5, 1:38:2, 1:51:10, 1:55:21, 1:58:22, 1:58:23

Counsels [1] - 1:51:9

countermanding [1] - 1:21:14

County [2] - 1:43:20, 1:45:14

couple [6] - 1:19:24, 1:32:22, 1:42:18, 1:42:19, 1:44:19, 1:59:1

course [12] - 1:15:19, 1:28:14, 1:35:3, 1:36:19, 1:46:5, 1:47:10, 1:47:12, 1:52:6, 1:52:17, 1:53:4, 1:64:10, 1:70:5

Court [63] - 1:3:1, 1:3:15, 1:3:19, 1:4:7, 1:8:11, 1:12:12, 1:14:7, 1:14:18, 1:24:20, 1:30:21, 1:32:3, 1:32:25, 1:33:15, 1:34:19, 1:35:15, 1:36:17, 1:38:5, 1:38:17, 1:39:22, 1:39:25, 1:40:13, 1:41:1, 1:41:2, 1:41:9, 1:41:22, 1:42:19, 1:43:6, 1:43:12, 1:43:19, 1:44:12, 1:44:15, 1:44:17, 1:44:24, 1:44:25, 1:45:1, 1:45:18, 1:45:20, 1:45:21, 1:46:7, 1:47:5, 1:47:13, 1:47:20, 1:48:11, 1:49:5, 1:49:21, 1:50:7, 1:50:19, 1:50:25, 1:51:7, 1:54:21, 1:61:2, 1:61:7, 1:61:12, 1:62:12, 1:62:17, 1:62:19, 1:64:3, 1:64:23, 1:66:21, 1:69:8, 1:70:5, 1:70:24

court [9] - 1:7:14, 1:14:10, 1:24:3, 1:29:19, 1:29:21, 1:40:10, 1:55:21, 1:69:13

COURT [124] - 1:3:2, 1:3:11, 1:3:16, 1:3:21, 1:3:25, 1:4:16, 1:5:16, 1:6:2, 1:6:24, 1:7:17, 1:8:24, 1:9:4, 1:9:20, 1:10:24, 1:12:5, 1:12:15, 1:12:20, 1:12:22, 1:12:24, 1:13:10, 1:14:25, 1:15:15, 1:15:21, 1:16:10, 1:16:14, 1:16:23, 1:17:2, 1:18:6, 1:18:21, 1:20:6, 1:20:10, 1:21:20, 1:22:12

1:22:23, 1:25:25, 1:26:22, 1:29:15, 1:30:18, 1:31:6, 1:31:11, 1:31:15, 1:31:22, 1:32:5, 1:32:8, 1:32:16, 1:32:24, 1:33:2, 1:33:18, 1:34:6, 1:34:14, 1:35:6, 1:35:11, 1:35:24, 1:36:10, 1:36:18, 1:36:24, 1:37:9, 1:37:15, 1:38:6, 1:38:18, 1:39:15, 1:40:2, 1:40:14, 1:40:19, 1:40:23, 1:41:9, 1:41:15, 1:42:2, 1:42:6, 1:42:15, 1:43:4, 1:43:7, 1:43:9, 1:43:25, 1:44:22, 1:45:3, 1:45:24, 1:46:11, 1:46:17, 1:46:19, 1:47:10, 1:47:17, 1:48:6, 1:48:16, 1:49:1, 1:49:17, 1:50:9, 1:50:22, 1:51:13, 1:51:19, 1:52:10, 1:52:20, 1:53:12, 1:53:15, 1:53:20, 1:53:23, 1:54:9, 1:54:13, 1:54:18, 1:55:9, 1:56:7, 1:57:4, 1:57:17, 1:58:2, 1:58:5, 1:58:20, 1:59:9, 1:59:11, 1:59:16, 1:60:19, 1:61:4, 1:61:15, 1:61:21, 1:62:3, 1:62:21, 1:63:11, 1:64:7, 1:64:10, 1:64:13, 1:65:1, 1:65:19, 1:66:7, 1:66:10, 1:72:18

Court's [8] - 1:9:18, 1:33:8, 1:33:11, 1:41:4, 1:61:11, 1:61:19, 1:67:21, 1:68:13

COURTROOM [1] - 1:3:4

courts [9] - 1:17:6, 1:17:10, 1:15:19, 1:43:20, 1:43:23, 1:51:7, 1:51:25, 1:54:20

courts' [1] - 1:36:2, 1:61:25

cover [5] - 1:5:9, 1:23:4, 1:27:14, 1:41:12, 1:45:4

covered [1] - 1:38:4

covers [1] - 1:37:11

created [2] - 1:11:16, 1:19:18

criminal [8] - 1:4:22, 1:6:11, 1:7:10, 1:7:14, 1:11:16, 1:12:11, 1:27:8, 1:27:12

current [10] - 1:5:22, 1:14:15, 1:15:9, 1:18:10, 1:18:25, 1:33:22, 1:35:11, 1:60:24, 1:71:24

cycle [1] - 1:41:21

D

D.C [3] - 1:7:13, 1:15:11, 1:15:12

Dadan [1] - 1:3:18

Danforth [3] - 1:11:3, 1:11:9, 1:11:15

date [1] - 1:38:5

dated [1] - 1:59:6

day-to-day [1] - 1:52:2

days [2] - 1:48:12

De [2] - 1:3:6, 1:3:23

de [6] - 1:43:16, 1:43:25, 1:44:4, 1:44:11, 1:45:5, 1:45:10

dealing [4] - 1:9:5, 1:22:19, 1:22:20, 1:72:15

deals [1] - 1:33:6

debate [1] - 1:72:10

December [1] - 1:31:1

decide [5] - 1:19:6, 1:19:9, 1:21:13, 1:44:25, 1:61:19

decided [5] - 1:6:21, 1:43:13, 1:58:16, 1:61:24, 1:70:3

decides [1] - 1:19:10

decision [14] - 1:4:7, 1:6:18, 1:10:20, 1:12:18, 1:17:11, 1:32:20, 1:33:11, 1:33:18, 1:41:5, 1:42:22, 1:43:4, 1:43:10, 1:43:11, 1:55:2

decisions [4] - 1:6:17, 1:28:8, 1:36:2, 1:61:25

default [3] - 1:63:20, 1:63:21, 1:65:9

defendant [3] - 1:6:12, 1:12:11, 1:69:3

defendants [7] - 1:7:5, 1:17:14, 1:17:19, 1:47:1, 1:48:23, 1:69:12, 1:71:8

defer [1] - 1:17:6

deference [2] - 1:64:14, 1:64:25

define [1] - 1:66:5

defines [1] - 1:32:12

definite [5] - 1:4:21, 1:30:25, 1:31:5, 1:31:20, 1:34:11

degree [10] - 1:12:20, 1:18:7, 1:18:9, 1:18:12, 1:22:14, 1:32:18, 1:52:8, 1:54:1, 1:64:18, 1:70:7

deny [1]_ - 1:62:20

department [1]_ - 1:36:4

Department [22]_ - 1:20:18_, 1:27:14_, 1:30:23 _, 1:35:4_, 1:35:20_, 1:39:10 _, 1:39:11_, 1:41:20_, 1:41:24_, 1:42:3_, 1:48:8_, 1:48:13_, 1:50:4_, 1:55:25_, 1:57:3_, 1:60:6_, 1:60:7_, 1:62:4_, 1:62:8_, 1:62:23_, 1:69:14_, 1:71:3

deposited [1]_ - 1:32:2_, 1:33:7

deputy [1]_ - 1:62:13

DEPUTY [1]_ - 1:3:4

derivative [1]_ - 1:59:14

describe [1]_ - 1:20:14

described [3]_ - 1:33:15_, 1:39:1_, 1:40:25

describing [2]_ - 1:41:6_, 1:57:20

detail [1]_ - 1:39:9

determine [1]_ - 1:49:22

determined [1]_ - 1:42:9

develop [2]_ - 1:46:18_, 1:49:17

developed [3]_ - 1:46:3_, 1:46:9_, 1:59:7

dicta [3]_ - 1:61:6_, 1:61:7

die [1]_ - 1:50:21

difference [4]_ - 1:14:2_, 1:18:14_, 1:34:5_, 1:53:3

differences [1]_ - 1:19:24

different [15]_ - 1:11:23_, 1:13:4_, 1:13:15_, 1:19:22_, 1:28:3_, 1:28:14_, 1:32:22_, 1:38:1_, 1:42:18_, 1:42:20_, 1:44:20_, 1:47:12_, 1:68:12 _, 1:68:20_, 1:68:25

differentiate [2]_ - 1:47:19_, 1:56:23

differently [2]_ - 1:19:7_, 1:71:9

difficult [1]_ - 1:70:12

direction [2]_ - 1:15:3_, 1:61:21

directly [2]_ - 1:15:6_, 1:26:10

director [3]_ - 1:54:23_, 1:54:24_, 1:55:3

disability [1]_ - 1:28:19

disagreed [1]_ - 1:47:9

disagreements [2]_ -

1:28:22_, 1:28:23

discretion [4]_ - 1:28:7_, 1:28:25_, 1:55:3

discuss [1]_ - 1:61:18

discussed [10]_ - 1:4:3_, 1:14:23_, 1:28:1_, 1:31:4_, 1:31:14_, 1:36:23_, 1:45:25 _, 1:47:6_, 1:53:4_, 1:54:21

discussing [1]_ - 1:35:17

discussion [10]_ - 1:15:1 _, 1:18:7_, 1:24:11_, 1:26:11 _, 1:45:20_, 1:46:13_, 1:46:15_, 1:59:8_, 1:59:19_, 1:64:13

dismiss [1]_ - 1:4:4_, 1:6:14_, 1:47:1_, 1:70:3_, 1:72:19

dismissal [7]_ - 1:6:20_, 1:6:21_, 1:16:23_, 1:47:2_, 1:48:2_, 1:69:6_, 1:70:8

dismissed [1]_ - 1:69:14

dismissing [1]_ - 1:17:19

dispositive [1]_ - 1:64:15

disrespectful [1]_ - 1:72:4

dissent [1]_ - 1:29:4

dissuade [1]_ - 1:50:15

distancing [1]_ - 1:59:19

distinct [1]_ - 1:27:24

distinction [8]_ - 1:14:8_, 1:15:8_, 1:15:10_, 1:24:19_, 1:28:16_, 1:30:6_, 1:35:1_, 1:67:8

distinctions [1]_ - 1:26:23

distinguish [1]_ - 1:57:11

District [6]_ - 1:16:20_, 1:17:18_, 1:19:3_, 1:66:19_, 1:69:11_, 1:70:1

district [5]_ - 1:17:6_, 1:17:10_, 1:29:19_, 1:61:8_, 1:69:13

districts [1]_ - 1:13:4

disuniformity [1]_ - 1:42:25

Division [1]_ - 1:19:3

docket [2]_ - 1:17:21_, 1:69:17

docketed [1]_ - 1:17:17

Doctrine [1]_ - 1:36:10

doctrine [7]_ - 1:7:15_, 1:36:11_, 1:43:16_, 1:44:4_, 1:44:11_, 1:45:5_, 1:45:10

documents [1]_ - 1:40:3

DOJ [19]_ - 1:17:8_, 1:17:10_, 1:19:7_, 1:19:17_, 1:20:14_, 1:25:17_, 1:25:22 _, 1:26:15_, 1:27:7_, 1:27:10 _, 1:27:11_, 1:29:12_, 1:30:1 _, 1:38:23_, 1:39:18_, 1:41:16_, 1:67:3_, 1:67:22_, 1:69:24

dollars [1]_ - 1:41:21

Donald [1]_ - 1:3:5

done [3]_ - 1:48:12_, 1:65:11_, 1:70:5

Donnie [1]_ - 1:3:23

down [2]_ - 1:36:1_, 1:38:22

draw [5]_ - 1:28:17_, 1:30:12_, 1:42:18_, 1:50:5_, 1:67:21

drawing [1]_ - 1:58:1

drawn [2]_ - 1:30:6_, 1:49:20

draws [1]_ - 1:5:1

drill [1]_ - 1:24:18

due [1]_ - 1:37:13

Durham [1]_ - 1:10:25

during [1]_ - 1:57:6

duties [1]_ - 1:71:13

E

ease [1]_ - 1:48:8

Eastern [3]_ - 1:17:18_, 1:69:11_, 1:69:25

Eastland [2]_ - 1:59:3_, 1:59:15

easy [1]_ - 1:58:1

ECF [1]_ - 1:17:21

ED [1]_ - 1:17:21

Edmond [2]_ - 1:61:22_, 1:61:24

effect [3]_ - 1:19:18_, 1:30:2_, 1:42:17

effort [2]_ - 1:60:2_, 1:72:9

EGA [14]_ - 1:16:6_, 1:19:3 _, 1:19:5_, 1:20:25_, 1:21:7_, 1:23:12_, 1:28:10_, 1:52:8_, 1:53:5_, 1:57:3_, 1:58:11_, 1:58:15_, 1:67:3_, 1:67:7

eight [4]_ - 1:35:4_, 1:36:5 _, 1:37:6_, 1:51:9

either [3]_ - 1:44:13_, 1:47:17_, 1:70:21

election [2]_ - 1:27:23_,

1:27:24

elsewhere [1]_ - 1:31:7

Emil [1]_ - 1:3:12

employee [2]_ - 1:44:7_, 1:46:6

enacted [2]_ - 1:30:25_, 1:31:18

encompasses [1]_ - 1:35:16

encountered [1]_ - 1:47:21

end [6]_ - 1:9:7_, 1:17:5_, 1:25:13_, 1:54:9_, 1:56:16_, 1:71:22

endeavoring [1]_ - 1:10:18

ending [2]_ - 1:33:24_, 1:37:12

ends [3]_ - 1:9:16_, 1:34:15_, 1:37:13

enforcement [3]_ - 1:27:7 _, 1:27:11_, 1:68:23

enormous [1]_ - 1:55:12

ensure [3]_ - 1:48:14_, 1:55:24_, 1:60:2

entertaining [1]_ - 1:44:16

entire [1]_ - 1:62:23

entirely [1]_ - 1:35:6_, 1:41:7

entitled [3]_ - 1:42:14_, 1:48:24_, 1:63:18

entitlement [1]_ - 1:65:21

enumerate [1]_ - 1:39:23

enumerated [1]_ - 1:38:14

equal [1]_ - 1:22:24

equated [1]_ - 1:29:7

era [1]_ - 1:57:11

Eric [1]_ - 1:20:17

erroneously [1]_ - 1:33:6

error [1]_ - 1:44:12

especially [4]_ - 1:7:13_, 1:12:10_, 1:12:17_, 1:27:24

essentially [2]_ - 1:41:6_, 1:65:2

establish [2]_ - 1:14:21_, 1:17:23

established [4]_ - 1:27:7 _, 1:27:20_, 1:34:12_, 1:35:19

establishing [1]_ - 1:69:18

establishment [1]_ - 1:38:8

et [1]_ - 1:35:22

Ethics [37]_ - 1:15:16_, 1:15:25_, 1:16:4_, 1:16:8_, 1:19:8_, 1:19:13_, 1:19:18_, 1:20:17_, 1:20:19_, 1:23:8_, 1:23:9_, 1:23:15_, 1:23:17_, 1:23:20_, 1:24:7_, 1:24:15_, 1:25:22_, 1:26:12_, 1:26:14 _, 1:26:17_, 1:27:5_, 1:27:9_, 1:27:19_, 1:28:4_, 1:28:7_, 1:28:18_, 1:29:4_, 1:29:6_, 1:29:13_, 1:35:2_, 1:38:2_, 1:51:21_, 1:53:1_, 1:56:15_, 1:56:25_, 1:59:4_, 1:66:16

evaluating [1]_ - 1:11:1

evidentiary [3]_ - 1:17:11 _, 1:17:22_, 1:69:18

exact [1]_ - 1:23:1

exactly [8]_ - 1:7:5_, 1:13:5_, 1:15:19_, 1:23:15_, 1:34:7_, 1:44:23_, 1:59:10_, 1:72:15

example [14]_ - 1:5:15_, 1:19:5_, 1:27:20_, 1:34:2_, 1:37:25_, 1:38:19_, 1:55:16 _, 1:57:5_, 1:62:25_, 1:63:12 _, 1:64:6_, 1:65:4_, 1:66:1_, 1:68:4

examples [2]_ - 1:32:14_, 1:32:16

exceed [1]_ - 1:34:24

exchange [1]_ - 1:22:3

exclusively [1]_ - 1:5:12

excuse [3]_ - 1:29:13_, 1:45:7_, 1:45:8

executive [4]_ - 1:4:24_, 1:8:5_, 1:63:7_, 1:63:9

exercise [3]_ - 1:8:12_, 1:19:16_, 1:54:22

exercised [1]_ - 1:28:25

exercising [1]_ - 1:61:21

exist [4]_ - 1:15:25_, 1:16:14_, 1:36:21_, 1:58:12

existed [1]_ - 1:51:11

existence [2]_ - 1:33:19_, 1:58:15

existing [1]_ - 1:39:12

expanded [1]_ - 1:27:14

expanded [1]_ - 1:50:4

expenditure [5]_ - 1:37:6 _, 1:38:15_, 1:40:12_, 1:47:15_, 1:47:18

expenditures [15]_ - 1:9:22_, 1:11:4_, 1:11:9_, 1:25:21_, 1:30:7_, 1:37:1_, 1:37:2_, 1:38:10_, 1:38:19_, 1:38:21_, 1:39:17_, 1:39:18 _, 1:40:4_, 1:42:7_, 1:42:10

expenses [4]_ - 1:35:20_, 1:38:23_, 1:39:1_, 1:39:19

expiration [1]_ - 1:60:14

expired [1]_ - 1:58:13

explaining [1]_ - 1:32:13

explains [1]_ - 1:25:23

extant [1]_ - 1:72:12

extensively [1]_ - 1:31:4

extent [8]_ - 1:39:24_, 1:42:7_, 1:44:12_, 1:44:15_, 1:44:21_, 1:49:16_, 1:69:23

extraordinary [4]_ - 1:71:20_, 1:71:21_, 1:72:9

F

F.4th [1]_ - 1:29:23

facing [1]_ - 1:68:24

fact [15]_ - 1:6:13_, 1:7:22 _, 1:17:12_, 1:17:14_, 1:18:22_, 1:24:15_, 1:33:12 _, 1:46:23_, 1:48:2_, 1:50:5_, 1:50:15_, 1:50:18_, 1:52:3_, 1:53:10_, 1:65:10

facto [6]_ - 1:43:16_, 1:43:25_, 1:44:4_, 1:44:11_, 1:45:5_, 1:45:10

factual [2]_ - 1:38:25_, 1:71:1

fair [3]_ - 1:40:8_, 1:52:14_, 1:52:15

fairly [1]_ - 1:6:25

falling [1]_ - 1:72:17

familiar [4]_ - 1:11:2_, 1:12:15_, 1:54:5_, 1:60:20

famous [1]_ - 1:54:7

far [4]_ - 1:20:23_, 1:33:21 _, 1:60:11_, 1:62:19

favor [1]_ - 1:17:14

feature [2]_ - 1:13:24_, 1:20:6

features [3]_ - 1:20:8_, 1:24:16_, 1:32:20

federal [1]_ - 1:33:14_, 1:47:16

Federal [5]_ - 1:14:4_, 1:20:2_, 1:20:24_, 1:32:11_, 1:33:14

Federalist [1]_ - 1:63:20

feed [1]_ - 1:4:10

fees [1]_ - 1:43:1

felt [1]_ - 1:20:15

few [4]_ - 1:16:18_, 1:19:1 _, 1:64:23_, 1:66:12

Fields [1]_ - 1:3:13

Fifth [1]_ - 1:68:11

fight [3]_ - 1:50:1_, 1:50:17 _, 1:61:7

figure [1]_ - 1:50:19

filed [1]_ - 1:72:12

filing [3]_ - 1:17:20_, 1:43:15_, 1:69:17

financial [3]_ - 1:9:22_, 1:11:5_, 1:11:14

findings [1]_ - 1:9:24

fine [1]_ - 1:50:23

fired [1]_ - 1:54:7

First [1]_ - 1:29:22

first [8]_ - 1:25:16_, 1:25:24 _, 1:32:5_, 1:48:22_, 1:58:3_, 1:66:13_, 1:67:6

fiscal [1]_ - 1:42:3

Fiske [5]_ - 1:19:7_, 1:23:23_, 1:56:13_, 1:58:4_, 1:58:11

Fitzgerald [8]_ - 1:11:1_, 1:11:6_, 1:11:18_, 1:11:21_, 1:12:2_, 1:67:23_, 1:67:24_, 1:68:1

five [3]_ - 1:10:12_, 1:23:13 _, 1:48:12

flag [2]_ - 1:25:11_, 1:27:3

flagged [1]_ - 1:44:2

flaws [1]_ - 1:5:3

flip [1]_ - 1:21:22

flip-flopped [1]_ - 1:21:22

floor [1]_ - 1:4:11

flopped [1]_ - 1:21:22

flow [1]_ - 1:48:1

flows [2]_ - 1:51:6_, 1:62:7

focus [2]_ - 1:34:19_, 1:36:12

focused [13]_ - 1:9:12_, 1:11:14_, 1:15:6_, 1:16:17_, 1:16:19_, 1:22:9_, 1:28:19_, 1:29:24_, 1:30:9_, 1:33:19_, 1:36:21_, 1:41:5_, 1:51:4

folks [2]_ - 1:4:12_, 1:57:6

follow [2]_ - 1:47:3_, 1:60:19

follow-up [1]_ - 1:60:19

following [3]_ - 1:12:17_, 1:55:25_, 1:69:12

footnote [3]_ - 1:15:7_, 1:43:15_, 1:44:2

Footnote [1]_ - 1:15:7

footnoted [1]_ - 1:46:2

force [1]_ - 1:14:10

foreclosed [1]_ - 1:14:20

foreseeable [1]_ - 1:24:12

foreshadowed [1]_ - 1:18:2

form [1]_ - 1:20:11

forma [1]_ - 1:65:18

formal [1]_ - 1:65:5

former [2]_ - 1:55:11_, 1:58:7

formula [1]_ - 1:32:17

forward [3]_ - 1:4:22_, 1:51:15_, 1:52:17

four [1]_ - 1:38:1

framed [1]_ - 1:15:10

framework [6]_ - 1:18:10 _, 1:26:23_, 1:52:12_, 1:52:13_, 1:55:7_, 1:55:24

frankly [3]_ - 1:34:19_, 1:44:13_, 1:48:2

Frederick [1]_ - 1:58:14

free [1]_ - 1:60:13

Friday [20]_ - 1:4:3_, 1:5:2 _, 1:5:12_, 1:5:25_, 1:11:24_, 1:13:16_, 1:13:20_, 1:14:24 _, 1:18:16_, 1:21:15_, 1:22:3 _, 1:25:2_, 1:36:23_, 1:42:23 _, 1:53:5_, 1:54:20_, 1:56:19 _, 1:60:20_, 1:71:17_, 1:72:13

friend [6]_ - 1:31:8_, 1:33:23_, 1:44:19_, 1:46:14 _, 1:51:3_, 1:52:4

friends [1]_ - 1:34:17

frivolous [1]_ - 1:46:8

front [1]_ - 1:71:22

full [9]_ - 1:19:15_, 1:21:6_, 1:23:12_, 1:23:16_, 1:38:3_, 1:40:3_, 1:48:13_, 1:52:3_, 1:60:24

fully [3]_ - 1:12:16_, 1:63:18_, 1:70:4

function [2]_ - 1:31:19_, 1:31:21

functions [3]_ - 1:8:2_,

1:19:17_, 1:21:5
fund [5]_ - 1:13:3_, 1:41:16
_, 1:41:24_, 1:48:3_, 1:48:7
funded [3]_ - 1:30:24_,
1:39:12_, 1:51:11
funding [13]_ - 1:4:4_,
1:12:7_, 1:36:5_, 1:42:8_,
1:44:14_, 1:44:17_, 1:47:4_,
1:48:1_, 1:48:14_, 1:51:1_,
1:51:13_, 1:69:16_, 1:70:11
funds [7]_ - 1:8:14_,
1:25:17_, 1:30:1_, 1:38:13_,
1:47:14_, 1:47:16_, 1:69:19
furthers [1]_ - 1:34:25

### G

gag [1]_ - 1:72:9
Gantt [2]_ - 1:60:23_,
1:61:13
GAO [24]_ - 1:10:12_,
1:10:17_, 1:10:21_, 1:10:24
_, 1:11:3_, 1:11:6_, 1:11:9_,
1:14:25_, 1:15:6_, 1:15:7_,
1:15:10_, 1:15:18_, 1:32:10
_, 1:36:2_, 1:37:19_, 1:37:20
_, 1:51:6_, 1:51:24_, 1:51:25
_, 1:52:17_, 1:57:5_, 1:57:9_,
1:67:23_, 1:68:1
GAO's [1]_ - 1:52:16
general [4]_ - 1:8:6_,
1:9:21_, 1:62:13_, 1:68:22
General [27]_ - 1:13:22_,
1:14:14_, 1:19:10_, 1:19:17
_, 1:19:19_, 1:19:20_, 1:20:5
_, 1:21:7_, 1:21:11_, 1:22:4_,
1:28:12_, 1:28:13_, 1:28:22
_, 1:38:8_, 1:53:6_, 1:53:10_,
1:55:9_, 1:57:15_, 1:58:7_,
1:58:16_, 1:60:17_, 1:62:5_,
1:62:12_, 1:62:18_, 1:63:13
_, 1:68:5_, 1:72:12
General's [1]_ - 1:57:1
generality [1]_ - 1:41:20
generally [3]_ - 1:38:12_,
1:38:13_, 1:68:20
generous [1]_ - 1:5:5
given [6]_ - 1:22:11_,
1:46:16_, 1:48:3_, 1:65:15_,
1:70:23_, 1:72:1
glad [1]_ - 1:58:25
governed [1]_ - 1:71:10
Government [37]_ -
1:10:14_, 1:15:17_, 1:15:25
_, 1:16:5_, 1:16:9_, 1:19:8_,
1:19:13_, 1:19:18_, 1:20:17

_, 1:20:19_, 1:23:8_, 1:23:10
_, 1:23:15_, 1:23:17_,
1:23:20_, 1:24:7_, 1:24:15_,
1:25:22_, 1:26:12_, 1:26:14
_, 1:26:17_, 1:27:5_, 1:27:9_,
1:27:19_, 1:28:4_, 1:28:7_,
1:28:18_, 1:29:4_, 1:29:7_,
1:29:14_, 1:35:2_, 1:38:2_,
1:51:21_, 1:53:1_, 1:56:15_,
1:56:25_, 1:66:16
government [12]_ -
1:8:13_, 1:13:14_, 1:14:21_,
1:17:19_, 1:17:22_, 1:18:3_,
1:30:24_, 1:41:22_, 1:64:4_,
1:67:13_, 1:69:13_, 1:70:2
government's [6]_ - 1:5:3
_, 1:13:20_, 1:18:14_,
1:45:19_, 1:64:12_, 1:72:2
granted [2]_ - 1:8:12_,
1:16:5
grapples [1]_ - 1:66:21
grappling [1]_ - 1:26:5
great [1]_ - 1:14:8
greater [2]_ - 1:51:22_,
1:59:21
grounded [1]_ - 1:8:22
guess [1]_ - 1:49:8

### H

half [1]_ - 1:4:2
Hamilton [1]_ - 1:63:19
Hammond [1]_ - 1:42:23
Hammons [2]_ - 1:43:7_,
1:43:8
hand [4]_ - 1:32:7_,
1:50:10_, 1:52:25_, 1:60:2
Handbook [1]_ - 1:32:11
handful [1]_ - 1:31:19_,
1:63:1
handled [1]_ - 1:20:4
happy [1]_ - 1:40:21
hard [2]_ - 1:12:12_, 1:29:9
harms [1]_ - 1:68:7
head [3]_ - 1:68:9_,
1:72:14_, 1:72:15
headline [1]_ - 1:23:6
hear [9]_ - 1:4:2_, 1:4:8_,
4:16_, 1:30:19_, 1:36:17_,
1:45:10_, 1:46:21_, 1:46:22
_, 1:49:4
heard [4]_ - 1:31:8_,
1:44:19_, 1:50:14_, 1:56:8
hearing [6]_ - 1:20:16_,

1:20:18_, 1:20:23_, 1:20:25
_, 1:22:14_, 1:69:22
hearings [1]_ - 1:13:5
helpful [3]_ - 1:40:2_,
1:40:6_, 1:59:14
hence [1]_ - 1:48:19
herself [1]_ - 1:66:1
high [5]_ - 1:29:8_, 1:41:19
_, 1:60:8_, 1:60:9_, 1:63:15
high-level [2]_ - 1:60:9_,
1:63:15
high-ranking [1]_ - 1:60:8
highlight [3]_ - 1:67:21_,
1:70:14_, 1:72:6
highlights [2]_ - 1:13:1_,
1:71:10
Hilario [1]_ - 1:60:22_,
1:61:13
hill [1]_ - 1:50:20
historical [8]_ - 1:24:13_,
1:25:8_, 1:26:3_, 1:53:24_,
1:55:14_, 1:58:21_, 1:58:24
_, 1:59:7
historically [2]_ - 1:23:3_,
1:54:8
history [4]_ - 1:26:1_,
1:53:24_, 1:56:6_, 1:59:14
hit [1]_ - 1:68:9
Holder [1]_ - 1:20:17
hone [1]_ - 1:9:6
honestly [1]_ - 1:61:17
Honor [19]_ - 1:3:9_,
1:3:12_, 1:3:17_, 1:3:22_,
1:4:15_, 1:10:9_, 1:10:10_,
1:14:6_, 1:40:18_, 1:40:21_,
1:42:5_, 1:67:16_, 1:68:8_,
1:69:8_, 1:69:11_, 1:70:7_,
1:70:17_, 1:70:19_, 1:70:20
Honor's [1]_ - 1:71:15
hope [1]_ - 1:4:1
hoping [2]_ - 1:10:3_,
1:23:4
Horowitz [1]_ - 1:28:1
House [1]_ - 1:9:25
Hunter [2]_ - 1:36:3_,
1:52:19
hypothesis [1]_ - 1:42:13
hypothetical [1]_ - 1:71:9
hypothetically [1]_ -
1:70:16

### I

i.e [1]_ - 1:63:9
IC [1]_ - 1:58:15
idea [4]_ - 1:31:17_, 1:65:7
_, 1:66:25_, 1:71:16
identical [1]_ - 1:37:7
identically [1]_ - 1:16:8
identified [3]_ - 1:26:22_,
1:58:8_, 1:70:22
identifies [1]_ - 1:63:6
identify [2]_ - 1:27:1_,
1:41:18
identifying [1]_ - 1:38:14
illusory [1]_ - 1:54:15
illustrate [1]_ - 1:72:17
imagine [2]_ - 1:29:9_,
1:70:12
immediately [1]_ - 1:11:9
imminent [2]_ - 1:7:2_,
1:7:9
imminently [1]_ - 1:69:4
impair [1]_ - 1:28:20
implemented [1]_ -
1:26:16
implementing [2]_ -
1:67:24_, 1:68:6
implicates [2]_ - 1:8:18_,
1:9:2
implications [1]_ - 1:8:21
important [12]_ - 1:4:23_,
1:5:19_, 1:12:11_, 1:15:8_,
1:20:15_, 1:21:9_, 1:23:3_,
1:27:16_, 1:28:6_, 1:28:15_,
1:29:18_, 1:66:21
importantly [1]_ - 1:54:21
impose [1]_ - 1:32:18
improperly [1]_ - 1:32:2
inaction [1]_ - 1:65:2
incapacity [1]_ - 1:63:5
inception [1]_ - 1:4:20
inclined [1]_ - 1:50:21
include [3]_ - 1:9:20_,
1:29:11_, 1:39:18
included [2]_ - 1:15:13_,
1:45:24
including [3]_ - 1:31:3_,
1:32:14_, 1:72:10
inconsistent [2]_ -
1:21:21_, 1:30:3
incorporate [2]_ - 1:5:24
_, 1:13:13

increments [1]_- 1:37:8
indefinite [13]_- 1:9:23_,
1:13:3_, 1:31:18_, 1:32:12_,
1:35:5_, 1:35:19_, 1:39:3_,
1:39:6_, 1:39:19_, 1:50:6_,
1:51:11_, 1:70:18_, 1:71:4
independence [29]_-
1:5:7_, 1:12:3_, 1:15:23_,
1:18:8_, 1:18:9_, 1:18:12_,
1:18:15_, 1:19:24_, 1:21:23
_, 1:22:14_, 1:23:17_,
1:23:25_, 1:24:6_, 1:26:16_,
1:30:16_, 1:51:22_, 1:52:2_,
1:52:7_, 1:52:11_, 1:52:13_,
1:52:22_, 1:53:9_, 1:59:19_,
1:59:21_, 1:60:4_, 1:60:10_,
1:60:17_, 1:71:17
Independent [5]_- 1:18:9
_, 1:18:24_, 1:34:3_, 1:59:5_,
1:60:15
independent [52]_-
1:5:10_, 1:9:23_, 1:11:4_,
1:16:8_, 1:18:8_, 1:18:17_,
1:18:18_, 1:19:15_, 1:20:21
_, 1:21:17_, 1:22:24_,
1:23:23_, 1:24:4_, 1:24:17_,
1:24:23_, 1:25:4_, 1:25:18_,
1:26:6_, 1:26:19_, 1:27:6_,
1:31:2_, 1:34:4_, 1:34:25_,
1:35:1_, 1:35:2_, 1:35:21_,
1:36:1_, 1:36:7_, 1:38:2_,
1:38:3_, 1:49:12_, 1:51:5_,
1:51:9_, 1:51:21_, 1:52:4_,
1:52:5_, 1:52:11_, 1:56:23_,
1:57:1_, 1:57:10_, 1:57:12_,
1:57:14_, 1:57:22_, 1:57:23
_, 1:58:19_, 1:58:22_,
1:59:13_, 1:60:1_, 1:60:3_,
1:60:12_, 1:68:2
independently [1]_-
1:31:13
indicate [1]_- 1:36:12
indicated [1]_- 1:34:14_,
1:56:20
indicates [1]_- 1:10:7
indicating [3]_- 1:36:25_,
1:45:3_, 1:49:19
indictment [1]_- 1:4:4
individuals [5]_- 1:39:8_,
1:39:12_, 1:58:24_, 1:63:16
_, 1:64:2
inference [1]_- 1:64:19
inferior [7]_- 1:59:20_,
1:60:22_, 1:61:5_, 1:61:10_,
1:61:20_, 1:62:2_, 1:62:10
infinite [1]_- 1:13:3

inflation [2]_- 1:33:12_,
1:33:13
information [3]_- 1:22:3_,
1:39:25_, 1:45:21
informs [1]_- 1:20:12_,
1:20:13
inherent [3]_- 1:59:18_,
1:60:2_, 1:71:16
initial [3]_- 1:38:7_,
1:45:24_, 1:46:20
injunction [1]_- 1:16:25
injunctive [3]_- 1:6:9_,
1:6:19
injury [1]_- 1:6:25
inquiry [2]_- 1:5:18_,
1:47:19
insignificant [1]_- 1:48:9
instances [1]_- 1:49:6
instead [3]_- 1:21:6_,
1:47:15_, 1:70:5
insufficient [1]_- 1:21:23
intended [2]_- 1:14:3_,
1:25:20
interaction [1]_- 1:71:12
interest [2]_- 1:7:8_,
1:69:4
interested [1]_- 1:45:21
interesting [2]_- 1:52:25
_, 1:57:17
interests [1]_- 1:11:11
interference [2]_-
1:27:23_, 1:27:25
interim [1]_- 1:61:15
interims [1]_- 1:61:18
interplay [1]_- 1:5:14
Interpol [1]_- 1:9:10
interpretation [1]_-
1:49:14
interpretations [2]_-
1:5:4_, 1:5:5
interpreted [1]_- 1:18:5
interrupt [1]_- 1:40:17
introductory [2]_- 1:20:1
invested [1]_- 1:19:12
investigating [3]_- 1:60:7
_, 1:60:8_, 1:60:13
investigation [1]_-
1:11:15
investigations [1]_-
1:35:21
investigative [2]_-
1:19:16_, 1:21:4

involved [5]_- 1:24:5_,
1:33:8_, 1:37:20_, 1:38:1_,
1:42:24
Iran [3]_- 1:15:12_, 1:16:1
_, 1:23:18
Iran-Contra [3]_- 1:15:12
_, 1:16:1_, 1:23:18
irreconcilable [2]_- 1:5:6
_, 1:18:14
irrelevant [1]_- 1:9:9
IRVING [1]_- 1:3:22
Irving [1]_- 1:3:22
isolated [1]_- 1:12:5
issue [21]_- 1:5:13_, 1:6:5
_, 1:7:8_, 1:14:1_, 1:14:9_,
1:14:15_, 1:16:1_, 1:17:6_,
1:17:13_, 1:22:23_, 1:27:21
_, 1:27:22_, 1:27:24_, 1:28:9
_, 1:30:7_, 1:37:2_, 1:37:6_,
1:49:15_, 1:68:8_, 1:68:22_,
1:70:20
issued [4]_- 1:10:25_,
1:32:10_, 1:37:9_, 1:38:3
issues [3]_- 1:26:4_,
1:70:14_, 1:72:5
itself [4]_- 1:8:2_, 1:8:22_,
1:60:5_, 1:60:8

J

Jack [4]_- 1:4:5_, 1:5:8_,
1:12:3_, 1:13:23
Jackson [1]_- 1:66:19
James [5]_- 1:3:10_,
1:12:1_, 1:23:22_, 1:30:22_,
1:67:24
Jay [1]_- 1:3:9
job [1]_- 1:50:23
John [2]_- 1:3:22_,
1:42:23
Jones [1]_- 1:69:6
Jones' [1]_- 1:68:10
Judge [19]_- 1:4:18_,
1:5:12_, 1:5:19_, 1:6:6_,
1:7:24_, 1:9:12_, 1:16:13_,
1:19:1_, 1:26:18_, 1:27:2_,
1:29:17_, 1:66:11_, 1:66:19
_, 1:67:15_, 1:68:10_, 1:69:6
_, 1:69:21_, 1:72:7_, 1:72:11
judges [3]_- 1:19:8_,
1:52:18_, 1:55:4
judgment [1]_- 1:63:15
judgments [4]_- 1:32:3_,
1:33:4_, 1:64:14_, 1:65:3

jump [1]_- 1:6:2
juncture [1]_- 1:72:16
June [2]_- 1:37:16_,
1:56:17
justice [1]_- 1:29:3
Justice [25]_- 1:20:18_,
1:27:14_, 1:27:22_, 1:30:23
_, 1:35:4_, 1:35:20_, 1:39:9_,
1:39:11_, 1:41:20_, 1:41:24
_, 1:42:3_, 1:48:13_, 1:50:4_,
1:55:2_, 1:55:25_, 1:57:2_,
1:59:9_, 1:59:12_, 1:59:25_,
1:60:6_, 1:60:7_, 1:62:4_,
1:62:23_, 1:69:14_, 1:71:3
justified [1]_- 1:25:2

K

Kavanaugh [3]_- 1:59:9
_, 1:59:12_, 1:59:25
Kendra [1]_- 1:3:13
kind [13]_- 1:10:21_,
1:33:10_, 1:42:12_, 1:47:8_,
1:51:2_, 1:53:17_, 1:56:1_,
1:57:18_, 1:58:20_, 1:60:11
_, 1:60:12_, 1:63:20_,
1:63:21
kinds [3]_- 1:28:1_, 1:69:4
_, 1:70:24

L

Lacey [1]_- 1:58:14
lack [2]_- 1:6:4_, 1:13:8
lacked [1]_- 1:47:18
laid [2]_- 1:69:2_, 1:69:7
language [30]_- 1:9:6_,
1:9:14_, 1:10:1_, 1:10:17_,
1:10:20_, 1:10:23_, 1:11:3_,
1:14:4_, 1:14:12_, 1:14:17_,
1:17:7_, 1:20:1_, 1:20:6_,
1:20:24_, 1:23:11_, 1:25:19
_, 1:27:14_, 1:29:24_, 1:30:8
_, 1:33:23_, 1:34:13_, 1:35:7
_, 1:35:14_, 1:35:16_, 1:63:6
_, 1:66:14_, 1:66:23_,
1:67:11_, 1:68:17_, 1:69:16
languages [1]_- 1:26:8
lapse [1]_- 1:60:14
lapsed [3]_- 1:16:7_,
1:56:16_, 1:58:12
largely [1]_- 1:22:2
last [7]_- 1:28:16_, 1:29:17
_, 1:31:4_, 1:31:14_, 1:37:9_,
1:37:11_, 1:58:9

lastly [1]– - 1:71:15
Law [6]– - 1:9:13–, 1:10:1–,
1:10:2–, 1:10:6–, 1:10:10–,
1:32:11
law [54]– - 1:3:19–, 1:5:10–,
1:5:11–, 1:5:17–, 1:5:24–,
1:9:16–, 1:13:12–, 1:13:17–,
1:13:25–, 1:14:10–, 1:14:16
–, 1:14:22–, 1:16:12–,
1:17:12–, 1:22:9–, 1:22:13–,
1:22:16–, 1:22:20–, 1:23:1–,
1:23:5–, 1:23:12–, 1:23:14–,
1:24:2–, 1:24:20–, 1:24:21–,
1:24:24–, 1:25:2–, 1:26:13–,
1:30:15–, 1:31:1–, 1:31:3–,
1:31:6–, 1:31:7–, 1:31:10–,
1:33:10–, 1:33:25–, 1:34:16
–, 1:35:3–, 1:35:11–, 1:35:12
–, 1:35:23–, 1:36:11–,
1:36:12–, 1:36:21–, 1:43:18
–, 1:43:21–, 1:46:9–, 1:49:13
–, 1:49:21–, 1:60:19–,
1:60:21–, 1:60:24–, 1:67:8–,
1:67:13
lawful [1]– - 1:41:11
laws [4]– - 1:27:8–, 1:27:12
–, 1:30:3–, 1:42:25
lawyers [1]– - 1:62:11
Lazaro [1]– - 1:3:13
leading [1]– - 1:45:15
leads [1]– - 1:65:11
least [11]– - 1:13:3–, 1:15:5
–, 1:19:4–, 1:29:20–, 1:32:10
–, 1:32:18–, 1:35:4–, 1:40:10
–, 1:41:21–, 1:45:25–,
1:54:16
leave [2]– - 1:3:14–, 1:3:19
lectern [1]– - 1:4:17
led [5]– - 1:11:16–, 1:17:18
–, 1:20:25–, 1:26:7–, 1:60:14
legal [2]– - 1:55:7–,
1:70:25
legislative [1]– - 1:26:1
length [1]– - 1:14:9
less [5]– - 1:17:2–, 1:18:25
–, 1:37:24–, 1:53:8–, 1:72:3
letter [1]– - 1:34:3
level [8]– - 1:19:19–, 1:23:6
–, 1:24:6–, 1:26:16–, 1:41:19
–, 1:60:9–, 1:63:15–, 1:65:12
levels [1]– - 1:23:25
liberty [3]– - 1:7:2–, 1:7:8–,
1:69:4
light [1]– - 1:49:4
limitation [1]– - 1:27:16

limited [4]– - 1:8:13–,
1:26:11–, 1:32:13
limitless [3]– - 1:31:16–,
1:31:23–, 1:40:14
limits [1]– - 1:65:24
line [4]– - 1:30:9–, 1:39:4–,
1:44:9–, 1:44:25
linked [1]– - 1:68:23
lists [1]– - 1:65:15
literally [1]– - 1:70:6
litigation [2]– - 1:23:8–,
1:24:3
live [1]– - 1:4:10
loan [1]– - 1:16:3
locate [1]– - 1:48:9
logical [1]– - 1:62:6
long-standing [1]– -
1:30:23
longstanding [1]– -
1:36:4
look [17]– - 1:6:18–,
1:10:22–, 1:11:4–, 1:12:12–,
1:14:22–, 1:17:16–, 1:17:20
–, 1:24:20–, 1:25:9–, 1:26:3–,
1:26:6–, 1:40:15–, 1:42:21–,
1:43:11–, 1:70:17–, 1:71:5
looked [6]– - 1:6:8–, 1:6:9
–, 1:6:20–, 1:11:9–, 1:51:7–,
1:52:1
looking [11]– - 1:5:22–,
1:15:11–, 1:26:19–, 1:33:24
–, 1:35:8–, 1:37:21–, 1:38:18
–, 1:54:22–, 1:67:23–,
1:71:12–, 1:71:24
looks [4]– - 1:7:4–, 1:10:10
–, 1:14:6–, 1:40:4
losing [1]– - 1:7:9
lower [1]– - 1:29:12
lowercase [4]– - 1:24:23–,
1:25:4–, 1:26:5–, 1:34:4
lunch [1]– - 1:72:22

## M

main [4]– - 1:5:2–, 1:9:13–,
1:67:12
majority [1]– - 1:33:20
Malcolm [1]– - 1:58:14
mandamus [1]– - 1:7:7
manner [1]– - 1:7:15
Manual [1]– - 1:27:22
March [3]– - 1:37:4–,
1:37:13–, 1:38:20

marijuana [1]– - 1:30:3
marks [1]– - 1:34:20
massacre [1]– - 1:54:8
material [2]– - 1:9:10–,
1:30:6
materials [2]– - 1:4:8–,
1:56:9
matter [5]– - 1:20:4–,
1:21:24–, 1:59:24–, 1:67:18
–, 1:67:20
matters [3]– - 1:16:16–,
1:50:25–, 1:52:19
McIntosh [20]– - 1:6:15–,
1:6:23–, 1:7:4–, 1:7:8–,
1:7:11–, 1:16:19–, 1:17:3–,
1:17:4–, 1:17:17–, 1:18:1–,
1:29:18–, 1:29:21–, 1:29:23
–, 1:30:7–, 1:47:11–, 1:47:20
–, 1:69:12–, 1:69:15–, 1:70:1
McKay [1]– - 1:23:22
mean [21]– - 1:13:24–,
1:15:21–, 1:20:14–, 1:22:18
–, 1:24:17–, 1:25:5–, 1:26:13
–, 1:39:22–, 1:48:20–,
1:49:18–, 1:52:24–, 1:56:9–,
1:57:17–, 1:58:3–, 1:61:25–,
1:62:25–, 1:64:2–, 1:65:12–,
1:66:22–, 1:67:13–, 1:70:9
meaning [2]– - 1:57:11–,
1:63:8
meaningful [1]– - 1:66:20
meaningfully [2]– -
1:46:4–, 1:47:19
means [10]– - 1:6:10–,
1:24:4–, 1:24:22–, 1:26:19–,
1:32:17–, 1:53:8–, 1:67:14–,
1:71:17–, 1:71:18
meant [4]– - 1:9:18–,
1:23:5–, 1:25:23–, 1:29:3
mechanism [1]– - 1:52:22
medical [1]– - 1:30:2
meet [3]– - 1:17:22–,
1:30:13–, 1:69:18
meeting [1]– - 1:63:6
mention [3]– - 1:44:19–,
1:53:4–, 1:61:1
mentioned [7]– - 1:32:15
–, 1:37:6–, 1:41:16–, 1:48:10
–, 1:51:7–, 1:51:24–, 1:59:24
merits [1]– - 1:6:2
midstream [1]– - 1:53:21
might [2]– - 1:26:13–,
1:71:7
military [1]– - 1:65:14

million [5]– - 1:34:24–,
1:38:21–, 1:38:23–, 1:39:1–,
1:39:17
mindful [1]– - 1:14:10
minutes [2]– - 1:16:19–,
1:64:23
mirror [1]– - 1:15:16
mirrored [3]– - 1:16:4–,
1:16:7–, 1:23:15
mirrors [1]– - 1:23:20
misconduct [1]– - 1:29:8
mismatch [2]– - 1:18:12–,
1:18:13
misnomer [3]– - 1:56:12–,
1:56:18–, 1:57:25
mistake [1]– - 1:57:22
modern [3]– - 1:45:15–,
1:57:11–, 1:61:9
modification [1]– -
1:72:20
modified [1]– - 1:68:6
modify [1]– - 1:53:7
moment [3]– - 1:18:22–,
1:33:21–, 1:37:18
monetarily [1]– - 1:39:16
money [12]– - 1:8:25–,
1:17:8–, 1:25:20–, 1:40:6–,
1:41:23–, 1:49:6–, 1:49:19–,
1:49:23–, 1:66:24–, 1:67:1–,
1:67:9
moneys [2]– - 1:32:1–,
1:50:3
month [5]– - 1:37:1–,
1:37:4–, 1:37:8–, 1:38:24–,
1:39:16
months [1]– - 1:37:1
morning [18]– - 1:3:2–,
1:3:9–, 1:3:11–, 1:3:12–,
1:3:14–, 1:3:16–, 1:3:17–,
1:3:21–, 1:3:22–, 1:3:25–,
1:4:2–, 1:4:14–, 1:5:9–,
1:10:4–, 1:25:1–, 1:30:20–,
1:30:21–, 1:72:19
Morrison [1]– - 1:29:4
most [7]– - 1:15:19–,
1:29:9–, 1:32:19–, 1:36:11–,
1:42:22–, 1:54:20–, 1:58:23
motion [26]– - 1:4:2–, 1:4:4
–, 1:5:3–, 1:5:14–, 1:6:12–,
1:6:14–, 1:7:24–, 1:9:12–,
1:9:13–, 1:9:14–, 1:12:4–,
1:16:24–, 1:20:15–, 1:22:7–,
1:27:21–, 1:29:16–, 1:30:9–,
1:30:15–, 1:47:1–, 1:49:3–,

1:62:20_, 1:70:13_, 1:71:7_,
1:72:12_, 1:72:19_, 1:72:21
MR [123]_ - 1:3:9_, 1:3:12_,
1:3:17_, 1:3:22_, 1:4:15_,
1:4:18_, 1:5:19_, 1:6:6_,
1:7:2_, 1:7:24_, 1:9:3_,
1:9:12_, 1:10:1_, 1:11:2_,
1:12:8_, 1:12:17_, 1:12:21_,
1:12:23_, 1:12:25_, 1:13:12
_, 1:15:5_, 1:15:16_, 1:15:23
_, 1:16:13_, 1:16:17_, 1:17:1
_, 1:17:4_, 1:18:13_, 1:19:1_,
1:20:8_, 1:20:12_, 1:22:1_,
1:22:17_, 1:23:2_, 1:26:2_,
1:27:2_, 1:29:17_, 1:30:21_,
1:31:8_, 1:31:12_, 1:31:17_,
1:31:24_, 1:32:6_, 1:32:9_,
1:32:22_, 1:32:25_, 1:33:3_,
1:34:1_, 1:34:10_, 1:34:17_,
1:35:10_, 1:35:18_, 1:35:25
_, 1:36:16_, 1:36:22_, 1:37:3
_, 1:37:11_, 1:37:17_,
1:38:11_, 1:39:4_, 1:39:21_,
1:40:8_, 1:40:18_, 1:40:20_,
1:40:24_, 1:41:13_, 1:41:19
_, 1:42:5_, 1:42:11_, 1:42:16
_, 1:43:6_, 1:43:8_, 1:43:10_,
1:44:6_, 1:44:24_, 1:45:13_,
1:46:4_, 1:46:12_, 1:46:18_,
1:46:24_, 1:47:11_, 1:47:22
_, 1:48:11_, 1:48:19_, 1:49:8
_, 1:50:1_, 1:50:17_, 1:51:2_,
1:51:17_, 1:51:20_, 1:52:15
_, 1:52:24_, 1:53:14_,
1:53:17_, 1:53:22_, 1:54:5_,
1:54:12_, 1:54:16_, 1:54:19
_, 1:55:18_, 1:56:11_, 1:57:9
_, 1:57:21_, 1:58:3_, 1:58:6_,
1:58:25_, 1:59:10_, 1:59:12
_, 1:59:23_, 1:61:1_, 1:61:6_,
1:61:17_, 1:61:23_, 1:62:6_,
1:62:24_, 1:63:17_, 1:64:9_,
1:64:11_, 1:64:22_, 1:65:6_,
1:65:23_, 1:66:9_, 1:66:11
mulligan [1]_ - 1:71:4
Murrell [1]_ - 1:3:23
must [1]_ - 1:30:11
Myers [1]_ - 1:61:2
MYERS [1]_ - 1:61:2

N

namely [1]_ - 1:47:2
names [1]_ - 1:65:15
naturally [1]_ - 1:48:20
nature [1]_ - 1:40:19
Nauta [2]_ - 1:3:5_, 1:3:18
necessarily [3]_ - 1:50:8_,

1:64:20_, 1:68:23
necessary [2]_ - 1:8:4_,
1:35:20
need [9]_ - 1:10:8_, 1:23:1
_, 1:25:25_, 1:26:3_, 1:41:12
_, 1:42:8_, 1:50:17_, 1:60:10
_, 1:67:9
needed [1]_ - 1:45:11
needs [3]_ - 1:40:15_,
1:48:14_, 1:49:6
never [1]_ - 1:11:16
new [1]_ - 1:53:19
next [6]_ - 1:9:20_, 1:17:15
_, 1:17:16_, 1:26:9_, 1:59:4_,
1:59:10
Nguyen [2]_ - 1:43:17_,
1:45:16
Nicholas [1]_ - 1:58:14
night [6]_ - 1:54:8_, 1:58:9
Ninth [1]_ - 1:6:15_, 1:7:7_,
1:29:25
Nixon [1]_ - 1:14:10
nobody [1]_ - 1:11:11
Nofziger [2]_ - 1:16:2_,
1:23:22
nominate [1]_ - 1:65:16
nominated [1]_ - 1:63:24
nomination [1]_ - 1:63:14
nomination/Senate [2]_
- 1:64:4_, 1:65:8
nonconstitutional [1]_ -
1:50:12
Norton [2]_ - 1:43:19_,
1:45:13
note [10]_ - 1:4:10_, 1:9:8_,
1:9:15_, 1:26:10_, 1:34:8_,
1:34:11_, 1:34:15_, 1:34:20
_, 1:35:18
noted [1]_ - 1:69:8
nothing [1]_ - 1:48:3
notice [1]_ - 1:58:9
noticed [1]_ - 1:36:24
notion [4]_ - 1:44:16_,
1:47:23_, 1:54:13_, 1:55:21
November [2]_ - 1:25:2_,
1:38:20
Number [2]_ - 1:3:6_,
1:17:21
number [1]_ - 1:48:9
numbered [1]_ - 1:25:10
numbers [1]_ - 1:25:12

O

objection [1]_ - 1:48:17
obligation [2]_ - 1:8:3_,
1:11:4
observed [1]_ - 1:70:19
obviously [3]_ - 1:16:20_,
1:44:6_, 1:46:12
occasion [2]_ - 1:41:10_,
1:69:9
offer [1]_ - 1:48:8
Office [9]_ - 1:4:19_,
1:8:10_, 1:10:15_, 1:13:2_,
1:36:25_, 1:39:2_, 1:69:23_,
1:70:15_, 1:70:25
office [1]_ - 1:55:17
office's [1]_ - 1:37:19
officer [22]_ - 1:43:16_,
1:44:4_, 1:44:11_, 1:45:5_,
1:45:10_, 1:46:6_, 1:53:10_,
1:54:23_, 1:54:24_, 1:60:22
_, 1:61:10_, 1:61:20_, 1:62:4
_, 1:62:13_, 1:62:14_,
1:62:17_, 1:62:18_, 1:62:22
_, 1:63:2_, 1:63:4_, 1:64:15_,
1:65:10
officers [9]_ - 1:62:2_,
1:62:10_, 1:63:7_, 1:63:22_,
1:63:23_, 1:64:8_, 1:65:12_,
1:65:14_, 1:71:23
Offices [1]_ - 1:37:5
official [1]_ - 1:60:9
old [5]_ - 1:15:8_, 1:15:13_,
1:16:4_, 1:23:24_, 1:53:5
older [1]_ - 1:43:18
Oliveira [2]_ - 1:3:6_,
3:23
omitted [1]_ - 1:52:5
once [2]_ - 1:23:23_,
1:31:14
one [59]_ - 1:5:3_, 1:5:9_,
1:6:6_, 1:6:7_, 1:8:9_, 1:8:13
_, 1:10:25_, 1:13:14_,
1:13:22_, 1:17:2_, 1:17:17_,
1:19:5_, 1:19:10_, 1:20:1_,
1:29:1_, 1:31:25_, 1:32:1_,
1:32:5_, 1:32:20_, 1:35:12_,
1:37:5_, 1:38:3_, 1:38:19_,
1:38:20_, 1:40:15_, 1:40:20
_, 1:40:22_, 1:42:19_, 1:43:1
_, 1:44:9_, 1:45:5_, 1:48:12_,
1:48:21_, 1:49:9_, 1:50:10_,
1:50:12_, 1:51:9_, 1:52:25_,
1:53:18_, 1:55:11_, 1:56:14
_, 1:60:2_, 1:61:1_, 1:61:15_,
1:62:4_, 1:62:22_, 1:63:2_,

1:63:3_, 1:64:22_, 1:65:6_,
1:65:7_, 1:66:20_, 1:67:17_,
1:67:21_, 1:68:4_, 1:68:6_,
1:72:6
one-off [1]_ - 1:53:18
ones [2]_ - 1:15:10_,
1:53:19
ongoing [1]_ - 1:7:10
operate [3]_ - 1:27:17_,
1:30:11_, 1:60:6
operates [3]_ - 1:4:23_,
1:8:7_, 1:29:20
operating [2]_ - 1:42:13_,
1:57:2
operation [1]_ - 1:57:15
operations [2]_ - 1:41:25
_, 1:60:7
operative [4]_ - 1:34:12_,
1:57:16_, 1:67:7_, 1:67:11
opinion [4]_ - 1:11:7_,
1:17:5_, 1:41:1_, 1:63:3
opinions [5]_ - 1:11:8_,
1:33:20_, 1:36:2_, 1:51:6_,
1:63:2
OPM [1]_ - 1:8:10
opportunity [1]_ - 1:41:18
opposed [2]_ - 1:50:6_,
1:57:3
opposite [3]_ - 1:15:20_,
1:15:21_, 1:21:25
opposition [6]_ - 1:4:5_,
1:5:3_, 1:6:3_, 1:41:16_,
1:44:1_, 1:45:7
order [7]_ - 1:3:1_, 1:30:10
_, 1:46:24_, 1:53:7_, 1:54:4_,
1:67:24_, 1:68:1
orders [2]_ - 1:54:14_,
1:68:6
outcome [1]_ - 1:18:2
outcomes [1]_ - 1:22:19
outside [2]_ - 1:37:18_,
1:60:6
overflow [1]_ - 1:4:11
overly [1]_ - 1:60:13
overrule [1]_ - 1:55:4
overruled [1]_ - 1:40:11
overseeing [1]_ - 1:22:5_,
1:52:18_, 1:53:11
oversight [6]_ - 1:22:21_,
1:63:18_, 1:70:7_, 1:71:19_,
1:71:22_, 1:72:16
own [2]_ - 1:43:22_,
1:58:16

P

p.m [1]– 1:72:20
page [3]– 1:25:12–,
1:36:25–, 1:45:19
paid [4]– 1:39:3–, 1:39:5–,
1:39:6–, 1:39:19
panel [1]– 1:19:7
Papers [1]– 1:63:20
paragraph [9]– 1:9:17–,
1:21:10–, 1:27:13–, 1:28:10
–, 1:28:11–, 1:55:1–, 1:67:6–,
1:67:7
parallel [1]– 1:19:19
parity [2]– 1:43:12–,
1:43:13
part [19]– 1:10:17–, 1:12:4
–, 1:12:8–, 1:15:8–, 1:15:13–,
1:16:1–, 1:20:11–, 1:20:12–,
1:21:9–, 1:21:16–, 1:22:9–,
1:23:19–, 1:23:24–, 1:24:14
–, 1:26:9–, 1:52:17–, 1:59:4–,
1:61:18
particular [5]– 1:12:6–,
1:27:16–, 1:49:11–, 1:57:6–,
1:66:15
particularly [1]– 1:52:21
parties [2]– 1:3:7–,
1:44:18
parts [3]– 1:25:11–,
1:39:9–, 1:39:10
passed [2]– 1:31:1–,
1:57:6
past [1]– 1:37:21
patent [1]– 1:55:4
path [1]– 1:24:11
Patrick [1]– 1:11:21
pausing [1]– 1:61:23
pay [1]– 1:35:20
paying [1]– 1:32:3
payment [4]– 1:8:25–,
1:33:4–, 1:49:6–, 1:49:23
Pearce [4]– 1:3:10–,
1:30:22–, 1:50:23–, 1:66:8
PEARCE [85]– 1:30:21–,
1:31:8–, 1:31:12–, 1:31:17–,
1:31:24–, 1:32:6–, 1:32:9–,
1:32:22–, 1:32:25–, 1:33:3–,
1:34:1–, 1:34:10–, 1:34:17–,
1:35:10–, 1:35:18–, 1:35:25
–, 1:36:16–, 1:36:22–, 1:37:3
–, 1:37:11–, 1:37:17–,
1:38:11–, 1:39:4–, 1:39:21–,
1:40:8–, 1:40:18–, 1:40:20–,

1:40:24–, 1:41:13–, 1:41:19
–, 1:42:5–, 1:42:11–, 1:42:16
–, 1:43:6–, 1:43:8–, 1:43:10–,
1:44:6–, 1:44:24–, 1:45:13–,
1:46:4–, 1:46:12–, 1:46:18–,
1:46:24–, 1:47:11–, 1:47:22
–, 1:48:11–, 1:48:19–, 1:49:8
–, 1:50:1–, 1:50:17–, 1:51:2–,
1:51:17–, 1:51:20–, 1:52:15
–, 1:52:24–, 1:53:14–,
1:53:17–, 1:53:22–, 1:54:5–,
1:54:12–, 1:54:16–, 1:54:19
–, 1:55:18–, 1:56:11–, 1:57:9
–, 1:57:21–, 1:58:3–, 1:58:6–,
1:58:25–, 1:59:10–, 1:59:12
–, 1:59:23–, 1:61:1–, 1:61:6–,
1:61:17–, 1:61:23–, 1:62:6–,
1:62:24–, 1:63:17–, 1:64:9–,
1:64:11–, 1:64:22–, 1:65:6–,
1:65:23–, 1:66:9
penultimate [1]– 1:55:1
people [3]– 1:24:5–,
1:57:12–, 1:65:17
percentage [3]– 1:12:22
–, 1:32:17–, 1:32:19
Perez [1]– 1:14:18
perform [1]– 1:9:21
performance [1]–
1:28:20
perhaps [2]– 1:7:21–,
1:46:14
period [10]– 1:20:15–,
1:20:16–, 1:20:17–, 1:37:12
–, 1:37:24–, 1:38:4–, 1:38:20
–, 1:38:24–, 1:39:16–,
1:56:16
periods [2]– 1:37:4–,
1:57:7
peripherally [1]– 1:46:1
permanent [16]– 1:4:20
–, 1:9:23–, 1:30:25–, 1:31:5–,
1:31:17–, 1:31:20–, 1:32:12
–, 1:34:11–, 1:35:5–, 1:35:19
–, 1:39:3–, 1:39:6–, 1:50:6–,
1:51:11–, 1:70:18–, 1:71:4
persisting [2]– 1:5:4–,
1:18:11
person [1]– 1:63:9
perspective [1]– 1:12:9
persuaded [1]– 1:50:20
persuasive [1]– 1:68:12
petition [1]– 1:7:7
phrase [4]– 1:13:12–,
1:14:10–, 1:26:5–, 1:29:10
picture [2]– 1:5:1–,
1:45:12

piece [7]– 1:5:20–,
1:13:14–, 1:36:21–, 1:43:25
–, 1:45:5–, 1:49:13–, 1:60:1
pieces [1]– 1:34:1
pitfalls [1]– 1:55:10
place [7]– 1:25:8–,
1:31:14–, 1:43:1–, 1:46:4–,
1:50:7–, 1:53:19–, 1:70:2
placed [1]– 1:14:15
places [1]– 1:42:18
plain [1]– 1:31:1
play [4]– 1:12:24–,
1:23:15–, 1:24:9–, 1:33:20
playing [1]– 1:63:17
plays [1]– 1:34:21
pleasant [1]– 1:72:22
plenty [1]– 1:64:2
point [31]– 1:10:3–, 1:13:4
–, 1:13:9–, 1:14:19–, 1:19:23
–, 1:20:23–, 1:21:16–,
1:21:19–, 1:22:1–, 1:22:6–,
1:24:4–, 1:24:10–, 1:26:14–,
1:29:2–, 1:29:17–, 1:31:22–,
1:32:9–, 1:34:22–, 1:40:20–,
1:42:19–, 1:48:23–, 1:59:16
–, 1:63:21–, 1:64:17–, 1:66:4
–, 1:67:12–, 1:67:15–, 1:68:9
–, 1:69:10–, 1:69:21–,
1:71:23
pointed [1]– 1:31:7
points [3]– 1:22:11–,
1:59:25–, 1:66:12
policies [8]– 1:27:3–,
1:27:7–, 1:27:10–, 1:27:11–,
1:27:15–, 1:27:20–, 1:28:9
policy [3]– 1:27:9–,
1:29:12–, 1:55:25
political [4]– 1:24:5–,
1:55:12–, 1:60:9–, 1:71:2
portion [1]– 1:37:20
position [32]– 1:5:6–,
1:11:10–, 1:11:19–, 1:11:22
–, 1:18:1–, 1:18:11–, 1:18:14
–, 1:18:19–, 1:22:13–,
1:22:20–, 1:22:21–, 1:36:13
–, 1:44:3–, 1:44:10–, 1:45:9–,
1:45:18–, 1:47:24–, 1:50:3–,
1:62:1–, 1:62:8–, 1:62:9–,
1:62:10–, 1:62:14–, 1:62:15
–, 1:64:5–, 1:64:12–, 1:64:19
–, 1:68:7–, 1:69:2–, 1:71:18–,
1:71:25–, 1:72:2
positions [3]– 1:21:21–,
1:22:9–, 1:64:18
possibility [2]– 1:53:6–,

1:54:15
post-2009 [1]– 1:11:1
posture [1]– 1:18:25
potential [4]– 1:16:15–,
1:18:21–, 1:54:14–, 1:54:22
power [4]– 1:8:12–,
1:19:21–, 1:55:8–, 1:57:14
powerful [1]– 1:12:4
powers [16]– 1:8:17–,
1:8:21–, 1:12:9–, 1:13:1–,
1:13:9–, 1:19:17–, 1:30:11–,
1:40:15–, 1:41:4–, 1:41:8–,
1:54:23–, 1:68:14–, 1:68:17
–, 1:68:22–, 1:70:14–, 1:72:5
practical [4]– 1:30:2–,
1:65:12–, 1:67:18–, 1:67:20
practice [4]– 1:30:24–,
1:36:4–, 1:37:1–, 1:55:14
practices [9]– 1:27:15–,
1:27:16–, 1:27:20–, 1:27:21
–, 1:27:23–, 1:38:13–,
1:53:24–, 1:69:24–, 1:70:8
pre [1]– 1:11:1
preceded [2]– 1:13:6–,
1:15:9
precedes [4]– 1:10:23–,
1:25:19–, 1:66:14–, 1:66:23
precise [4]– 1:37:7–,
1:38:5–, 1:39:22–, 1:63:6
precisely [2]– 1:34:10–,
1:38:11
precision [1]– 1:39:23
predates [1]– 1:55:18
predecessor [1]–
1:23:20
preliminary [1]– 1:7:17
prepared [2]– 1:4:8–,
1:41:23
prescribe [1]– 1:43:22
present [5]– 1:3:19–,
1:5:22–, 1:24:20–, 1:24:21–,
1:49:3
presentation [1]–
1:50:14
presented [1]– 1:66:19
presents [1]– 1:60:4
presidency [2]– 1:59:13
–, 1:60:1
President [6]– 1:3:14–,
1:4:3–, 1:7:3–, 1:11:11–,
1:71:7–, 1:72:8
president [5]– 1:63:3–,
1:63:5–, 1:63:24–, 1:65:16–,
1:66:1

presidential [4] - 1:63:13 ..., 1:64:3..., 1:65:7..., 1:65:8

presidentially [1] - 1:66:2

pressure [1] - 1:55:12

presumably [1] - 1:23:1

presumption [1] - 1:55:20

pretty [2] - 1:8:9..., 1:19:13

prevented [1] - 1:47:15

prevents [1] - 1:30:2

principal [19] - 1:22:1..., 1:22:6..., 1:22:15..., 1:35:25..., 1:53:10..., 1:54:23..., 1:54:24 ..., 1:59:20..., 1:62:13..., 1:62:14..., 1:62:17..., 1:62:18 ..., 1:62:22..., 1:63:2..., 1:63:4..., 1:63:7..., 1:64:7..., 1:65:10..., 1:71:23

principally [1] - 1:49:12

pro [1] - 1:65:18

problem [7] - 1:13:1..., 1:30:16..., 1:41:8..., 1:44:17..., 1:47:25..., 1:68:14..., 1:68:21

problematic [2] - 1:32:21..., 1:52:8

procedure [1] - 1:64:21

Procedures [1] - 1:14:1

procedures [2] - 1:27:4 ..., 1:27:15

proceed [3] - 1:6:23..., 1:17:25..., 1:28:23

proceeding [3] - 1:4:12..., 1:7:16..., 1:12:12

proceedings [3] - 1:29:19..., 1:69:3..., 1:72:24

process [10] - 1:38:7..., 1:38:9..., 1:63:14..., 1:63:21..., 1:64:18..., 1:65:5..., 1:65:14..., 1:65:18..., 1:71:10..., 1:71:24

produces [2] - 1:63:21..., 1:63:23

producing [2] - 1:62:21..., 1:62:25

PROMESA [1] - 1:45:20

promulgating [1] - 1:60:17

promulgation [1] - 1:15:13

proposals [1] - 1:38:10

proposition [3] - 1:8:6..., 1:15:17..., 1:62:22

prosecute [1] - 1:47:16

prosecution [6] - 1:7:10 ..., 1:27:21..., 1:47:14..., 1:48:15..., 1:69:16..., 1:69:20

prosecutions [6] - 1:11:16..., 1:13:4..., 1:17:9..., 1:30:1..., 1:35:21..., 1:71:21

prosecutor [8] - 1:19:2..., 1:22:24..., 1:53:15..., 1:54:10 ..., 1:55:13..., 1:55:16..., 1:56:4 ..., 1:56:14

prosecutorial [3] - 1:19:16..., 1:21:5..., 1:28:24

prosecutors [5] - 1:20:20..., 1:54:7..., 1:58:21..., 1:70:2..., 1:71:13

prospective [2] - 1:43:12 ..., 1:43:13

provide [1] - 1:31:12

provided [11] - 1:9:7..., 1:9:15..., 1:9:21..., 1:22:4..., 1:25:19..., 1:33:24..., 1:34:15 ..., 1:35:18..., 1:67:11..., 1:69:10..., 1:70:25

provides [3] - 1:40:5..., 1:43:16..., 1:64:3

providing [1] - 1:39:24

provision [6] - 1:11:6..., 1:19:15..., 1:20:20..., 1:28:18 ..., 1:28:21..., 1:33:6

provisions [7] - 1:6:1..., 1:19:25..., 1:25:15..., 1:27:22 ..., 1:28:17..., 1:29:1..., 1:35:22

Public [5] - 1:9:13..., 1:10:1..., 1:10:2..., 1:10:6..., 1:10:10

public [4] - 1:35:12..., 1:37:13..., 1:37:16..., 1:40:3

pure [1] - 1:59:19

purpose [3] - 1:33:16..., 1:41:5..., 1:52:6

purposes [8] - 1:13:18..., 1:13:25..., 1:14:16..., 1:21:18 ..., 1:30:9..., 1:30:15..., 1:38:14 ..., 1:69:19

pursuant [17] - 1:5:23..., 1:7:25..., 1:10:2..., 1:11:3..., 1:15:24..., 1:16:6..., 1:17:20..., 1:19:15..., 1:21:3..., 1:21:12..., 1:21:17..., 1:23:24..., 1:28:2..., 1:35:3..., 1:35:22..., 1:36:20..., 1:67:2

pursue [3] - 1:6:5..., 1:6:18..., 1:6:19

pursued [1] - 1:21:13

pursuing [2] - 1:7:6...,

1:48:16

push [1] - 1:72:16

put [1] - 1:25:6

Q

quality [2] - 1:63:23..., 1:65:11

question-producing [2] - 1:62:21..., 1:62:25

questions [2] - 1:11:23..., 1:46:20

quick [3] - 1:58:1..., 1:60:19..., 1:65:20

quickly [2] - 1:10:4..., 1:38:5

quotation [2] - 1:9:8..., 1:34:20

quote [6] - 1:5:23..., 1:13:17..., 1:13:25..., 1:21:13 ..., 1:27:6..., 1:27:7

quoted [2] - 1:52:5..., 1:55:1

quotes [2] - 1:46:21..., 1:46:25

R

raise [2] - 1:47:1..., 1:50:25

raised [6] - 1:13:5..., 1:27:23..., 1:27:25..., 1:46:5..., 1:49:24..., 1:64:23

raising [1] - 1:7:18

ranking [1] - 1:60:8

rather [1] - 1:47:13

rationale [3] - 1:33:20..., 1:41:7..., 1:61:19

re [1] - 1:67:21

re-highlight [1] - 1:67:21

reach [2] - 1:62:19..., 1:64:19

reaching [1] - 1:29:9

react [1] - 1:71:8

read [4] - 1:28:6..., 1:33:11 ..., 1:41:4..., 1:57:9

readily [1] - 1:41:16

reading [1] - 1:29:24

real [4] - 1:30:16..., 1:67:18..., 1:71:12..., 1:71:23

realistically [1] - 1:55:11

reality [2] - 1:54:3..., 1:55:5

really [23] - 1:5:8..., 1:10:11..., 1:11:13..., 1:14:1..., 1:24:11..., 1:28:7..., 1:28:20..., 1:36:1..., 1:39:17..., 1:41:11..., 1:47:12..., 1:51:4..., 1:54:15..., 1:55:15..., 1:56:13..., 1:67:12 ..., 1:69:8..., 1:70:13..., 1:71:1..., 1:71:18..., 1:72:6..., 1:72:14..., 1:72:17

reason [5] - 1:12:8..., 1:32:20..., 1:36:16..., 1:47:7..., 1:58:10

reasoning [3] - 1:29:20..., 1:69:15..., 1:70:1

reasons [5] - 1:7:21..., 1:13:22..., 1:14:23..., 1:70:22 ..., 1:70:24

reasserted [1] - 1:6:3

reauthorized [1] - 1:56:16

rebuttal [1] - 1:22:3

recent [3] - 1:4:6..., 1:29:6 ..., 1:33:11

recently [2] - 1:32:19..., 1:42:22

recision [1] - 1:53:20

recognized [1] - 1:18:3

recommendations [1] - 1:59:2

record [4] - 1:22:2..., 1:68:4..., 1:70:6..., 1:71:1

reduction [1] - 1:52:11

refer [2] - 1:38:22..., 1:57:9

reference [8] - 1:25:18..., 1:34:2..., 1:34:4..., 1:35:12..., 1:38:7..., 1:38:22..., 1:43:14..., 1:60:22

referenced [2] - 1:8:21..., 1:23:1..., 1:29:9

references [2] - 1:9:9..., 1:66:15

referred [4] - 1:58:22..., 1:66:24..., 1:66:25..., 1:67:7

refers [1] - 1:25:16

reflected [1] - 1:24:7

refund [2] - 1:25:21..., 1:67:9

refunding [1] - 1:32:1..., 1:33:6

reg [1] - 1:21:4

regarding [1] - 1:27:25

regime [1] - 1:53:5

Register [3] - 1:14:4..., 1:20:2..., 1:20:24

regs [1]– - 1:16:6
regularity [1]– - 1:55:20
regulation [11]– - 1:14:2–, 1:14:3–, 1:20:11–, 1:20:13–, 1:39:8–, 1:53:12–, 1:53:14–, 1:53:20–, 1:53:25–, 1:54:3–, 1:54:6
Regulations [25]– - 1:11:10–, 1:12:2–, 1:13:6–, 1:13:17–, 1:13:21–, 1:14:5–, 1:15:9–, 1:15:18–, 1:15:19–, 1:19:10–, 1:19:22–, 1:19:25–, 1:20:3–, 1:21:2–, 1:21:12–, 1:21:17–, 1:24:9–, 1:26:21–, 1:27:13–, 1:27:18–, 1:28:2–, 1:28:10–, 1:29:10–, 1:55:19–, 1:67:25
regulations [41]– - 1:13:24–, 1:14:9–, 1:14:11–, 1:14:12–, 1:14:15–, 1:14:16–, 1:15:1–, 1:15:2–, 1:15:3–, 1:15:8–, 1:15:9–, 1:15:13–, 1:16:2–, 1:16:3–, 1:18:23–, 1:23:16–, 1:23:19–, 1:23:22–, 1:24:14–, 1:26:24–, 1:27:15–, 1:31:9–, 1:31:12–, 1:36:2–, 1:38:7–, 1:39:10–, 1:51:6–, 1:51:23–, 1:51:25–, 1:52:6–, 1:53:2–, 1:53:7–, 1:53:18–, 1:57:2–, 1:57:6–, 1:57:16–, 1:58:18–, 1:60:18–, 1:67:17–, 1:67:23
regulatory [21]– - 1:16:5–, 1:18:10–, 1:23:23–, 1:24:3–, 1:26:15–, 1:38:3–, 1:51:10–, 1:52:13–, 1:55:7–, 1:55:23–, 1:55:24–, 1:56:8–, 1:56:10–, 1:56:22–, 1:56:23–, 1:57:4–, 1:57:10–, 1:57:18–, 1:57:23–, 1:58:19–, 1:58:23
reign [1]– - 1:60:13
reimbursement [1]– - 1:67:1
reinstalled [1]– - 1:54:10
rejecting [1]– - 1:68:18
related [2]– - 1:29:6–, 1:34:24
relates [2]– - 1:27:3–, 1:28:17
relating [4]– - 1:14:4–, 1:27:23–, 1:28:23–, 1:28:24
relative [1]– - 1:6:9
relatively [1]– - 1:10:4–, 1:41:19
relevance [1]– - 1:10:19
relevant [15]– - 1:6:1–,

8:8–, 1:9:18–, 1:12:3–, 1:13:8–, 1:21:1–, 1:21:15–, 1:27:18–, 1:34:2–, 1:40:12–, 1:51:8–, 1:55:7–, 1:61:10–, 1:66:22
reliance [1]– - 1:53:24
relied [1]– - 1:35:5
relief [6]– - 1:6:9–, 1:6:19–, 1:47:1–, 1:48:24–, 1:69:5
rely [3]– - 1:8:1–, 1:33:12–, 1:44:21
relying [2]– - 1:31:9–, 1:36:22
remains [1]– - 1:34:10
remedies [2]– - 1:16:15–, 1:43:22
remedy [12]– - 1:17:2–, 1:17:6–, 1:29:17–, 1:41:10–, 1:41:14–, 1:43:2–, 1:46:13–, 1:47:8–, 1:48:17–, 1:68:8–, 1:68:15–, 1:69:10
remember [1]– - 1:59:4
removal [9]– - 1:28:17–, 1:28:19–, 1:28:21–, 1:29:1–, 1:29:13–, 1:52:21–, 1:53:1–, 1:53:2
removed [1]– - 1:55:16
renew [1]– - 1:20:17
renewal [1]– - 1:29:6
renewed [3]– - 1:19:6–, 1:20:19–, 1:20:25–, 1:23:10–, 1:24:16–, 1:25:23–, 1:26:15–, 1:67:4
Reno [27]– - 1:11:10–, 1:12:2–, 1:13:6–, 1:13:17–, 1:13:20–, 1:14:5–, 1:14:15–, 1:15:9–, 1:15:18–, 1:15:19–, 1:19:9–, 1:19:22–, 1:19:25–, 1:20:2–, 1:21:2–, 1:21:12–, 1:21:17–, 1:24:9–, 1:26:21–, 1:27:13–, 1:27:18–, 1:28:2–, 1:28:10–, 1:29:10–, 1:55:19–, 1:60:17–, 1:67:25
Reno's [1]– - 1:55:9
Repeal [1]– - 1:10:13
repealed [2]– - 1:53:18–, 1:54:1
repeat [1]– - 1:36:16
repeatedly [2]– - 1:33:19–, 1:64:17
reply [2]– - 1:4:5–, 1:44:21
Report [1]– - 1:28:1
report [18]– - 1:9:24–, 1:14:25–, 1:15:7–, 1:25:9–, 1:25:10–, 1:25:12–, 1:25:20

–, 1:26:7–, 1:26:9–, 1:26:11–, 1:29:6–, 1:37:9–, 1:37:11–, 1:37:12–, 1:38:1–, 1:38:22–, 1:66:24
reporter [1]– - 1:29:22
reports [7]– - 1:10:24–, 1:36:25–, 1:37:6–, 1:37:15–, 1:37:21–, 1:57:5–, 1:57:9
represent [1]– - 1:41:22
representation [3]– - 1:48:3–, 1:48:6–, 1:62:12
representations [1]– - 1:70:6
represented [2]– - 1:50:7–, 1:55:21
require [2]– - 1:63:12–, 1:71:11
required [6]– - 1:27:19–, 1:33:16–, 1:71:19–, 1:72:1–, 1:72:3
requirement [2]– - 1:42:24–, 1:64:1
requirements [2]– - 1:10:12–, 1:56:2
requires [3]– - 1:5:22–, 1:60:5–, 1:71:11
requiring [2]– - 1:49:19–, 1:65:4
rescind [2]– - 1:53:6–, 1:53:7
rescinded [5]– - 1:13:21–, 1:53:13–, 1:53:18–, 1:54:4–, 1:67:18
rescission [2]– - 1:54:6–, 1:54:13
reservation [1]– - 1:8:14
Reserve [1]– - 1:33:14
resolutions [2]– - 1:25:22–, 1:67:2
resolve [2]– - 1:62:20–, 1:70:13
resort [1]– - 1:25:25
resource [1]– - 1:58:20
respect [15]– - 1:4:6–, 1:5:7–, 1:5:20–, 1:5:25–, 1:10:25–, 1:14:11–, 1:16:12–, 1:19:23–, 1:21:24–, 1:27:6–, 1:27:24–, 1:44:10–, 1:58:14–, 1:67:22
respecting [1]– - 1:27:7
respects [1]– - 1:15:19
respond [1]– - 1:40:21
response [8]– - 1:10:16–,

1:40:22–, 1:44:1–, 1:45:7–, 1:46:9–, 1:66:13–, 1:71:2–, 1:71:6
responses [3]– - 1:32:22–, 1:64:22–, 1:65:6
responsibility [2]– - 1:20:3–, 1:65:21
rest [1]– - 1:20:4
restraint [2]– - 1:4:24–, 1:7:3
restricted [2]– - 1:27:5–, 1:27:9
restriction [4]– - 1:8:4–, 1:12:3–, 1:29:5–, 1:30:7
restrictions [3]– - 1:15:23–, 1:20:22–, 1:30:4
restrictive [2]– - 1:18:25–, 1:67:10
restricts [2]– - 1:17:8–, 1:21:8
result [1]– - 1:7:3
resume [2]– - 1:13:10–, 1:72:20
retro [1]– - 1:43:3
retroactively [1]– - 1:43:11
retrospectively [4]– - 1:42:16–, 1:42:21–, 1:43:11
return [1]– - 1:46:19
reversed [2]– - 1:40:11–, 1:41:2
review [6]– - 1:11:4–, 1:11:13–, 1:21:11–, 1:38:6–, 1:38:8–, 1:38:9
reviewed [1]– - 1:4:8
reviews [1]– - 1:9:22
Reviews [1]– - 1:10:14
revisit [1]– - 1:32:8
revisited [1]– - 1:10:7
Richmond [1]– - 1:8:10
rider [3]– - 1:29:25–, 1:47:13–, 1:47:15
rights [1]– - 1:12:11
rise [1]– - 1:23:19
Robert [3]– - 1:56:13–, 1:58:4–, 1:58:11
robust [1]– - 1:36:11
role [5]– - 1:19:12–, 1:34:21–, 1:39:24–, 1:63:18–, 1:65:19
room [1]– - 1:4:11
rule [4]– - 1:14:4–, 1:14:13–, 1:20:7–, 1:27:25

Rule [3]_ - 1:6:12_, 1:17:20
_, 1:69:17
rules [1]_ - 1:27:14
ruling [1]_ - 1:70:21
run [1]_ - 1:37:4
Ryder [2]_ - 1:43:17_,
1:45:15

**S**

Sasha [1]_ - 1:3:18
Saturday [1]_ - 1:54:8
savings [1]_ - 1:16:2
Scalia [1]_ - 1:29:3
scenario [1]_ - 1:54:9
scheme [1]_ - 1:22:25
scientific [1]_ - 1:37:22
SCO [2]_ - 1:38:21_,
1:39:17
scope [5]_ - 1:13:7_,
1:21:6_, 1:23:16_, 1:45:4_,
1:66:5
seated [1]_ - 1:3:2
second [8]_ - 1:4:2_,
1:4:11_, 1:5:6_, 1:19:11_,
1:44:15_, 1:47:5_, 1:63:21_,
1:67:15
second-floor [1]_ - 1:4:11
Section [1]_ - 1:10:11
section [1]_ - 1:10:13
see [13]_ - 1:15:17_,
1:17:21_, 1:21:1_, 1:31:25_,
1:41:15_, 1:43:25_, 1:46:15
_, 1:49:8_, 1:50:25_, 1:64:17
_, 1:68:13_, 1:68:16_,
1:72:22
seek [2]_ - 1:47:1_,
1:48:25
seeking [4]_ - 1:16:23_,
1:16:24_, 1:17:2_, 1:69:6
seem [2]_ - 1:32:7_,
1:33:18
selective [1]_ - 1:27:21
semi [1]_ - 1:9:22
semi-annual [1]_ - 1:9:22
Senate [3]_ - 1:9:25_,
1:63:14_, 1:63:25
sense [6]_ - 1:12:25_,
1:26:7_, 1:39:8_, 1:39:15_,
1:65:2_, 1:66:2
sentence [1]_ - 1:9:20
separate [3]_ - 1:22:18_,
1:65:6_, 1:68:14

separation [14]_ - 1:8:17
_, 1:8:21_, 1:12:9_, 1:13:1_,
1:13:9_, 1:30:11_, 1:40:15_,
1:41:3_, 1:41:8_, 1:68:14_,
1:68:17_, 1:68:22_, 1:70:14
_, 1:72:5
September [2]_ - 1:37:4_,
1:37:12
seq [1]_ - 1:35:22
series [3]_ - 1:5:13_,
1:10:12_, 1:24:3
serious [1]_ - 1:45:1
seriously [2]_ - 1:44:15_,
1:45:1
serve [2]_ - 1:13:17_,
1:14:3
set [2]_ - 1:4:1_, 1:69:2
sets [1]_ - 1:67:17
setting [4]_ - 1:4:23_,
1:18:21_, 1:23:10_, 1:33:21
setup [1]_ - 1:4:11
seven [1]_ - 1:51:10
SGs [1]_ - 1:65:5
shall [2]_ - 1:9:21_, 1:49:20
share [1]_ - 1:38:16
Shelby [2]_ - 1:43:19_,
1:45:14
shifting [1]_ - 1:60:11
short [1]_ - 1:12:18
sic [2]_ - 1:42:23_, 1:43:20
side [9]_ - 1:18:23_, 1:31:9
_, 1:33:23_, 1:34:18_,
1:44:19_, 1:46:14_, 1:51:3_,
1:52:4
side-by-side [1]_ -
1:18:23
sides [2]_ - 1:59:23_,
1:71:15
signal [1]_ - 1:64:15
significance [2]_ -
1:66:15_, 1:67:5
similar [3]_ - 1:14:17_,
1:23:24_, 1:29:21
simply [2]_ - 1:41:6_,
1:45:3
situation [6]_ - 1:11:17_,
1:11:20_, 1:21:11_, 1:47:20
_, 1:60:4_, 1:68:25
situations [4]_ - 1:28:12_,
1:29:9_, 1:33:9_, 1:67:17
six [6]_ - 1:37:1_, 1:37:4_,
1:37:8_, 1:38:24_, 1:39:16
six-month [5]_ - 1:37:1_,

1:37:4_, 1:37:8_, 1:38:24_,
1:39:16
Smith [4]_ - 1:4:5_, 1:5:8_,
1:12:3_, 1:13:23
so.. [1]_ - 1:50:21
sole [1]_ - 1:62:18
Solicitor [2]_ - 1:62:12_,
1:63:13
someone [3]_ - 1:47:8_,
1:56:25_, 1:64:19
sometimes [2]_ - 1:37:22
_, 1:58:21
somewhat [1]_ - 1:59:5
sorry [5]_ - 1:29:1_,
1:40:18_, 1:43:4_, 1:51:24_,
1:53:14
sort [31]_ - 1:14:19_, 1:16:6
_, 1:16:24_, 1:19:11_,
1:28:13_, 1:29:20_, 1:43:3_,
1:43:23_, 1:44:12_, 1:45:13
_, 1:45:22_, 1:46:21_,
1:47:25_, 1:48:7_, 1:48:8_,
1:50:7_, 1:51:3_, 1:51:14_,
1:54:7_, 1:54:15_, 1:55:6_,
1:55:8_, 1:55:20_, 1:57:10_,
1:58:17_, 1:59:18_, 1:60:6_,
1:60:8_, 1:60:12_, 1:60:13_,
1:67:20
sought [2]_ - 1:17:3_,
1:48:18
source [4]_ - 1:33:16_,
1:41:5_, 1:41:17_, 1:42:8
sources [2]_ - 1:59:8_,
1:70:11
space [3]_ - 1:46:16_,
1:53:13_, 1:53:15
speaking [3]_ - 1:15:4_,
1:68:21_, 1:72:8
Special [58]_ - 1:3:8_,
1:4:5_, 1:4:19_, 1:6:4_, 1:8:9
_, 1:13:2_, 1:15:24_, 1:16:5_,
1:18:23_, 1:19:3_, 1:19:9_,
1:19:14_, 1:21:3_, 1:21:16_,
1:21:20_, 1:26:24_, 1:28:8_,
1:28:14_, 1:28:22_, 1:30:12
_, 1:30:19_, 1:30:24_, 1:31:2
_, 1:36:7_, 1:36:19_, 1:36:25
_, 1:37:4_, 1:37:23_, 1:39:2_,
1:39:11_, 1:41:25_, 1:42:13
_, 1:44:3_, 1:45:6_, 1:46:6_,
1:48:14_, 1:49:12_, 1:51:4_,
1:51:9_, 1:51:22_, 1:51:23_,
1:52:3_, 1:53:11_, 1:56:8_,
1:56:10_, 1:56:22_, 1:57:5_,
1:57:11_, 1:57:15_, 1:57:18
_, 1:57:23_, 1:60:3_, 1:60:12
_, 1:69:1_, 1:69:23_, 1:70:15

_, 1:70:23_, 1:70:25
special [20]_ - 1:19:2_,
1:20:20_, 1:21:12_, 1:27:4_,
1:27:17_, 1:28:3_, 1:35:4_,
1:36:5_, 1:50:5_, 1:51:10_,
1:53:15_, 1:54:6_, 1:55:13_,
1:55:16_, 1:55:21_, 1:56:4_,
1:56:14_, 1:58:21_, 1:58:23
specific [10]_ - 1:9:6_,
1:25:17_, 1:26:7_, 1:34:23_,
1:35:15_, 1:37:20_, 1:42:1_,
1:55:24_, 1:69:1
specifically [1]_ - 1:56:12
specifics [2]_ - 1:68:14_,
1:72:14
spend [2]_ - 1:17:8_,
1:30:1
spending [1]_ - 1:16:25
spent [2]_ - 1:5:11_,
1:11:15_, 1:40:7_, 1:66:25_,
1:67:2_, 1:67:9
squarely [1]_ - 1:7:12
stake [1]_ - 1:72:1
stand [1]_ - 1:48:11
standard [1]_ - 1:42:2
standing [11]_ - 1:6:5_,
1:6:8_, 1:6:14_, 1:16:18_,
1:30:23_, 1:46:21_, 1:46:24
_, 1:47:19_, 1:47:23_,
1:48:17_, 1:48:20
Stanley [1]_ - 1:3:18
start [4]_ - 1:9:7_, 1:19:1_,
1:48:20_, 1:66:13
starting [3]_ - 1:3:7_,
1:43:19_, 1:45:19
starts [2]_ - 1:25:16_,
1:34:15
state [4]_ - 1:3:7_, 1:10:8_,
1:17:12_, 1:30:2
statement [1]_ - 1:55:10
statements [1]_ - 1:37:2
States [18]_ - 1:3:4_,
1:3:10_, 1:21:5_, 1:21:8_,
1:30:22_, 1:31:3_, 1:31:24_,
1:32:1_, 1:33:5_, 1:42:23_,
1:43:6_, 1:45:18_, 1:62:1_,
1:62:2_, 1:62:9_, 1:62:13
status [1]_ - 1:64:15
statute [15]_ - 1:5:21_,
1:9:1_, 1:12:6_, 1:49:7_,
1:49:11_, 1:49:23_, 1:52:12
_, 1:55:11_, 1:56:20_,
1:56:24_, 1:57:7_, 1:57:13_,
1:58:12_, 1:58:15_, 1:63:12
statutes [6]_ - 1:5:13_,

1:5:15..., 1:14:23..., 1:36:22...,
1:50:19..., 1:63:12

statutorily [1]... - 1:63:18

statutory [29]... - 1:5:5...,
1:9:6..., 1:9:11..., 1:11:23...,
1:13:13..., 1:22:25..., 1:24:24
..., 1:26:23..., 1:31:7..., 1:31:10
..., 1:32:3..., 1:33:23..., 1:34:9...,
1:35:1..., 1:35:7..., 1:35:16...,
1:44:13..., 1:47:18..., 1:49:14
..., 1:49:15..., 1:50:19...,
1:51:15..., 1:55:6..., 1:57:1...,
1:57:14..., 1:57:19..., 1:58:16
..., 1:63:15..., 1:64:1

still [8]... - 1:10:17..., 1:18:11
..., 1:34:12..., 1:35:6..., 1:49:10
..., 1:52:12..., 1:65:19...,
1:65:20

stipulate [1]... - 1:51:20

Stone [11]... - 1:6:8..., 1:6:13
..., 1:6:18..., 1:6:21..., 1:6:22...,
1:7:12..., 1:7:14..., 1:16:20...,
1:36:3..., 1:47:7..., 1:52:19

strained [1]... - 1:5:4

strategic [1]... - 1:6:18

strike [2]... - 1:10:20...,
1:52:6

striking [1]... - 1:60:16

strong [1]... - 1:71:2

strongly [1]... - 1:11:19

struck [4]... - 1:10:2...,
1:10:12..., 1:12:1..., 1:67:25

structured [1]... - 1:55:8

Studies [1]... - 1:10:14

styled [1]... - 1:4:3

subject [5]... - 1:10:13...,
1:12:2..., 1:16:14..., 1:27:4...,
1:28:3

subjecting [1]... - 1:64:17

submission [2]... - 1:22:15
..., 1:45:25

submit [10]... - 1:11:19...,
1:12:13..., 1:14:24..., 1:26:2...,
1:26:20..., 1:68:1..., 1:68:19...,
1:68:25..., 1:70:4..., 1:70:20

subsequent [1]... -
1:29:19

substance [1]... - 1:69:17

substantially [1]... -
1:28:20

substantiation [1]... -
1:48:7

substantive [9]... - 1:14:2
..., 1:14:3..., 1:14:13..., 1:15:2...,

1:30:5..., 1:44:1..., 1:46:9...,
1:47:9..., 1:48:22

suffering [1]... - 1:6:25

sufficient [3]... - 1:22:21...,
1:52:1..., 1:52:13

sufficiently [1]... - 1:68:2

suggest [1]... - 1:31:9

suggested [2]... - 1:40:10
..., 1:42:20

suggestion [7]... - 1:6:3...,
1:7:18..., 1:10:5..., 1:10:6...,
1:24:5..., 1:53:25..., 1:59:17

suggests [2]... - 1:34:4...,
1:63:3

summarizing [1]... -
1:15:2

superior [2]... - 1:60:21...,
1:62:4

superior/inferior [1]... -
1:21:24

supervising [1]... - 1:53:10

supervision [4]... - 1:52:2
..., 1:58:17..., 1:61:22..., 1:70:3

supervisor [2]... - 1:54:23
..., 1:54:24

supplemental [9]... - 1:4:6
..., 1:6:4..., 1:37:25..., 1:44:22...,
1:45:23..., 1:49:2..., 1:58:8...,
1:68:16

supplementally [1]... -
1:39:23

support [4]... - 1:7:12...,
1:15:17..., 1:39:11..., 1:46:8

supporting [1]... - 1:39:2

supports [6]... - 1:6:13...,
1:6:16..., 1:7:15..., 1:11:19...,
1:67:9..., 1:68:6

Supreme [18]... - 1:4:7...,
1:8:11..., 1:14:7..., 1:14:18...,
1:33:11..., 1:41:2..., 1:41:4...,
1:41:9..., 1:42:19..., 1:43:6...,
1:43:19..., 1:45:20..., 1:49:5...,
1:49:21..., 1:54:21..., 1:61:1...,
1:68:13..., 1:69:8

survey [2]... - 1:58:21...,
1:58:24

survives [1]... - 1:35:7

surviving [2]... - 1:34:8...,
1:35:8

synonymous [1]... -
1:57:10

T

talks [2]... - 1:14:8..., 1:63:19

tantamount [1]... - 1:64:19

tap [1]... - 1:42:8

tasked [1]... - 1:10:21

technical [1]... - 1:14:19

temporal [1]... - 1:24:19

ten [1]... - 1:17:17

tension [4]... - 1:5:6...,
1:18:21..., 1:59:18..., 1:71:16

term [11]... - 1:5:9..., 1:5:10...,
1:24:2..., 1:24:24..., 1:26:2...,
1:31:19..., 1:56:7..., 1:56:8...,
1:56:22..., 1:57:4..., 1:63:1

termination [1]... - 1:56:4

terms [11]... - 1:5:9..., 1:5:17
..., 1:9:4..., 1:9:19..., 1:20:13...,
1:29:17..., 1:31:1..., 1:38:18...,
1:55:14..., 1:66:22..., 1:72:13

Terry [1]... - 1:59:3

test [1]... - 1:65:9

text [14]... - 1:5:5..., 1:5:21...,
1:8:1..., 1:8:22..., 1:9:13...,
1:9:14..., 1:22:7..., 1:22:19...,
1:28:21..., 1:30:13..., 1:34:9...,
1:35:9..., 1:36:12..., 1:66:14

textual [1]... - 1:25:15

textually [1]... - 1:5:8

THE [124]... - 1:3:2..., 1:3:11
..., 1:3:16..., 1:3:21..., 1:3:25...,
1:4:16..., 1:5:16..., 1:6:2...,
1:6:24..., 1:7:17..., 1:8:24...,
1:9:4..., 1:9:20..., 1:10:24...,
1:12:5..., 1:12:15..., 1:12:20...,
1:12:22..., 1:12:24..., 1:13:10
..., 1:14:25..., 1:15:15...,
1:15:21..., 1:16:10..., 1:16:14
..., 1:16:23..., 1:17:2..., 1:18:6...,
1:18:21..., 1:20:6..., 1:20:10...,
1:21:20..., 1:22:12..., 1:22:23
..., 1:25:25..., 1:26:22...,
1:29:15..., 1:30:18..., 1:31:6...,
1:31:11..., 1:31:15..., 1:31:22
..., 1:32:5..., 1:32:8..., 1:32:16...,
1:32:24..., 1:33:2..., 1:33:18...,
1:34:6..., 1:34:14..., 1:35:6...,
1:35:11..., 1:35:24..., 1:36:10
..., 1:36:18..., 1:36:24..., 1:37:9
..., 1:37:15..., 1:38:6..., 1:38:18
..., 1:39:15..., 1:40:2..., 1:40:14
..., 1:40:19..., 1:40:23..., 1:41:9
..., 1:41:15..., 1:42:2..., 1:42:6...,
1:42:15..., 1:43:4..., 1:43:7...,
1:43:9..., 1:43:25..., 1:44:22...,
1:45:3..., 1:45:24..., 1:46:11...,
1:46:17..., 1:46:19..., 1:47:10
..., 1:47:17..., 1:48:6..., 1:48:16
..., 1:49:1..., 1:49:17..., 1:50:9...,

1:50:22..., 1:51:13..., 1:51:19
..., 1:52:10..., 1:52:20...,
1:53:12..., 1:53:15..., 1:53:20
..., 1:53:23..., 1:54:9..., 1:54:13
..., 1:54:18..., 1:55:9..., 1:56:7...,
1:57:4..., 1:57:17..., 1:58:2...,
1:58:5..., 1:58:20..., 1:59:9,
1:59:11..., 1:59:16..., 1:60:19
..., 1:61:4..., 1:61:15..., 1:61:21
..., 1:62:3..., 1:62:21..., 1:63:11
..., 1:64:7..., 1:64:10..., 1:64:13
..., 1:65:1..., 1:65:19..., 1:66:7...,
1:66:10..., 1:72:18

themselves [1]... - 1:51:25

therefore [3]... - 1:9:1...,
1:17:24..., 1:53:8

thinking [1]... - 1:26:4

thinks [1]... - 1:20:19

third [1]... - 1:27:3

threat [2]... - 1:7:2..., 1:7:9

threatened [1]... - 1:69:4

three [4]... - 1:17:19...,
1:25:15..., 1:38:2..., 1:58:7

threshold [2]... - 1:29:12...,
1:32:19

thrust [2]... - 1:33:18...,
1:40:25

ties [1]... - 1:47:2

Tillman [4]... - 1:44:1...,
1:45:7..., 1:45:8..., 1:46:5

timing [1]... - 1:37:7

title [1]... - 1:10:13

Title [3]... - 1:6:1..., 1:11:6...,
1:14:23

today [3]... - 1:18:17...,
1:56:19..., 1:71:17

Todd [1]... - 1:3:13

together [1]... - 1:5:17

took [1]... - 1:17:16

top [4]... - 1:39:4..., 1:44:9...,
1:44:25..., 1:63:9

top-line [2]... - 1:44:9...,
1:44:25

topic [1]... - 1:69:10

total [2]... - 1:38:21...,
1:40:11

Total [1]... - 1:39:16

touch [2]... - 1:10:3...,
1:66:12

touched [1]... - 1:71:15

trace [1]... - 1:51:14

traceable [1]... - 1:6:25

track [2]... - 1:6:17...,

1:38:13
tracking [1]– - 1:61:22
traditional [1]– - 1:48:16
trail [1]– - 1:72:10
transform [1]– - 1:63:25
travel [1]– - 1:5:17
Treasury [2]– - 1:8:15–,
1:49:20
treasury [2]– - 1:32:2–,
1:33:7
true [4]– - 1:18:19–, 1:39:5
–, 1:59:23–, 1:70:24
truly [1]– - 1:72:8
Trump [6]– - 1:3:5–, 1:3:14
–, 1:7:3–, 1:11:12–, 1:71:7–,
1:72:8
Trump's [1]– - 1:4:3
Trustee [1]– - 1:42:23
try [2]– - 1:42:21–, 1:72:17
trying [6]– - 1:39:15–,
1:40:3–, 1:45:4–, 1:47:22–,
1:47:24–, 1:50:18
turning [1]– - 1:49:9
turns [1]– - 1:50:2
twice [1]– - 1:63:4
two [28]– - 1:5:2–, 1:5:9–,
1:7:11–, 1:8:3–, 1:10:24–,
1:11:8–, 1:13:4–, 1:19:23–,
1:22:8–, 1:22:18–, 1:25:11–,
1:25:14–, 1:28:16–, 1:31:25
–, 1:32:14–, 1:34:5–, 1:36:2–,
1:48:12–, 1:51:6–, 1:51:25–,
1:53:3–, 1:64:22–, 1:65:2–,
1:65:6–, 1:66:15–, 1:69:22–,
1:70:21
two-day [1]– - 1:69:22
twofold [1]– - 1:44:9
type [8]– - 1:8:16–, 1:11:17
–, 1:18:2–, 1:23:17–, 1:68:20
–, 1:69:5
types [5]– - 1:6:11–,
1:11:11–, 1:13:5–, 1:14:9–,
1:68:12
typical [1]– - 1:60:6
typically [1]– - 1:55:24

U

U.S [14]– - 1:8:11–, 1:11:21
–, 1:14:7–, 1:14:18–, 1:60:21
–, 1:61:4–, 1:61:9–, 1:61:15–,
1:61:19–, 1:63:12–, 1:64:5–,
1:64:7–, 1:65:4–, 1:70:3
U.S.C [12]– - 1:9:8–,

1:9:15–, 1:26:10–, 1:32:5–,
1:33:3–, 1:34:7–, 1:34:15–,
1:34:20–, 1:35:18–, 1:35:22
–, 1:36:20–, 1:66:17
Ultimate [1]– - 1:20:3
ultimate [2]– - 1:20:7–,
1:24:18
ultimately [6]– - 1:8:2–,
1:18:3–, 1:19:4–, 1:23:18–,
1:54:10–, 1:63:25
unacceptable [1]– -
1:72:4
unbounded [1]– - 1:12:16
under [50]– - 1:7:19–,
1:7:22–, 1:8:16–, 1:14:17–,
1:17:7–, 1:18:8–, 1:18:9–,
1:18:15–, 1:19:3–, 1:19:8–,
1:19:9–, 1:19:12–, 1:19:13–,
1:21:7–, 1:26:21–, 1:27:4–,
1:27:19–, 1:28:4–, 1:28:10–,
1:29:3–, 1:30:10–, 1:30:11–,
1:31:1–, 1:34:19–, 1:35:1–,
1:36:5–, 1:38:2–, 1:39:6–,
1:42:24–, 1:49:25–, 1:51:11
–, 1:51:21–, 1:51:23–, 1:52:3
–, 1:52:8–, 1:52:13–, 1:53:1–,
1:53:2–, 1:53:5–, 1:55:6–,
1:55:19–, 1:56:21–, 1:56:24
–, 1:57:1–, 1:57:2–, 1:57:13–,
1:57:16–, 1:58:11–, 1:65:9–,
1:70:2
underlying [1]– - 1:7:20
understood [2]– - 1:46:17
–, 1:63:8
undo [3]– - 1:42:21–,
1:43:23–, 1:43:24
uniform [1]– - 1:42:25
United [18]– - 1:3:4–,
1:3:10–, 1:21:5–, 1:21:8–,
1:30:22–, 1:31:3–, 1:31:24–,
1:32:1–, 1:33:5–, 1:42:23–,
1:43:6–, 1:45:18–, 1:62:1–,
1:62:2–, 1:62:9–, 1:62:15
universe [1]– - 1:40:4
unlawful [1]– - 1:4:4
unless [1]– - 1:36:17
unlike [1]– - 1:53:5
unprecedented [1]– -
1:71:21
unrebutted [1]– - 1:22:2
up [8]– - 1:16:18–, 1:21:15
–, 1:43:17–, 1:44:7–, 1:47:24
–, 1:56:20–, 1:59:25–,
1:60:19
uses [2]– - 1:23:11–,
1:24:1

usual [1]– - 1:4:10

V

vacatur [1]– - 1:54:14
vague [1]– - 1:72:13
valid [4]– - 1:5:23–, 1:8:5–,
1:8:13–, 1:8:18
various [3]– - 1:35:13–,
1:53:17–, 1:63:11
vein [1]– - 1:48:17
version [6]– - 1:6:7–,
1:16:1–, 1:23:19–, 1:23:20–,
1:24:14–, 1:61:8
versions [1]– - 1:45:15
versus [4]– - 1:18:9–,
1:18:24–, 1:24:22–, 1:59:20
veto [1]– - 1:21:14
view [16]– - 1:4:12–,
1:21:25–, 1:26:22–, 1:42:10
–, 1:46:21–, 1:46:22–, 1:49:4
–, 1:49:10–, 1:49:13–,
1:50:15–, 1:51:5–, 1:52:1–,
1:52:12–, 1:62:16–, 1:63:23
–, 1:67:10
views [3]– - 1:42:6–,
1:52:16–, 1:52:18
vindicating [1]– - 1:6:10
violation [5]– - 1:29:12–,
1:43:22–, 1:43:24–, 1:44:13
–, 1:45:2
voluntarily [1]– - 1:69:14

W

waiting [2]– - 1:25:22–,
1:67:3
walk [1]– - 1:47:22
walked [1]– - 1:7:14
walks [1]– - 1:68:12
Waltine [1]– - 1:3:5
wants [1]– - 1:36:17
warrant [1]– - 1:46:9
warranted [1]– - 1:17:12
wary [1]– - 1:12:9
Watergate [2]– - 1:14:11
–, 1:23:16
ways [4]– - 1:8:3–, 1:68:13
–, 1:69:5–, 1:72:17
web [1]– - 1:36:25
week [4]– - 1:23:8–, 1:31:4
–, 1:31:14–, 1:42:22
weekend [1]– - 1:4:1

weight [1]– - 1:64:24
Wharton [1]– - 1:3:13
whatnot [1]– - 1:64:24
whatsoever [1]– - 1:42:17
whole [1]– - 1:49:8
widely [1]– - 1:45:14
Wilke [1]– - 1:58:14
wish [1]– - 1:72:22
wishing [1]– - 1:4:12
WOODWARD [1]– -
1:3:17
Woodward [1]– - 1:3:18
word [1]– - 1:52:5
words [3]– - 1:30:3–,
1:33:24–, 1:34:16
works [1]– - 1:65:14
written [4]– - 1:27:6–,
1:27:10–, 1:27:19–, 1:59:5

Y

yank [1]– - 1:55:13
year [3]– - 1:37:23–, 1:38:4
–, 1:42:3
years [3]– - 1:23:13–,
1:24:10–, 1:35:13
Younger [1]– - 1:6:20