```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                        CASE NO. 23-cr-80101-AMC
 3
    UNITED STATES OF AMERICA,            Fort Pierce, Florida
 4
                   Plaintiff,            June 25, 2024
 5
             vs.
 6                                       1:06 p.m. - 2:38 p.m.

 7  DONALD J. TRUMP, WALTINE NAUTA, CARLOS
    DE OLIVEIRA,
 8
                   Defendant.            Pages 1 to 81
 9  _____

10                    TRANSCRIPT OF MOTIONS
                 BEFORE THE HONORABLE AILEEN M. CANNON
11                 UNITED STATES DISTRICT JUDGE
    APPEARANCES:
12
    FOR THE GOVERNMENT:
13                              U. S. DEPARTMENT OF JUSTICE
                                JAY I. BRATT, ESQ.
14                              MICHAEL THAKUR, ESQ.
                                JOHN PELLETTIERI, ESQ.
15                              National Security Division
                                950 Pennsylvania Avenue, NW
16                              Washington, DC 20530

17  FOR THE DEFENDANT:

18  Donald J. Trump
                                BLANCHE LAW
19                              EMIL BOVE, ESQ.
                                TODD BLANCHE, ESQ.
20                              99 Wall Street
                                Suite 4460
21                              New York, New York 10005

22
                                KENDRA L. WHARTON
23                              500 S. Australian Avenue
                                West Palm Beach, Florida 33401
24                              561-406-4630

25
```

```
 1   Waltine Nauta

 2                              DADAN LAW FIRM
                               SASHA DADAN, ESQ.
 3                             201 S. 2nd Street
                               Suite 202
 4                             Fort Pierce, Florida 34950

 5                             BRAND WOODWARD LAW, LP
                               STANLEY WOODWARD, ESQ.
 6                             400 Fifth Street
                               Northwest Suite 300
 7                             Washington, DC 20001
     Carlos De Oliveira
 8
                               L.D. MURRELL, PA
 9                             LARRY DONALD MURRELL JR., ESQ.
                               400 Executive Center Drive
10                             Suite 201
                               West Palm Beach, Florida 33401
11
                               E&W LAW
12                             JOHN S. IRVING, ESQ.
                               1455 Pennsylvania Avenue, NW
13                             Suite 1400
                               Washington, DC 20004
14

15   STENOGRAPHICALLY REPORTED BY:

16                             LAURA E. MELTON, RMR, CRR, FPR
                               Official Court Reporter to the
17                             Honorable Aileen M. Cannon
                               United States District Court
18                             Fort Pierce, Florida

19

20

21

22

23

24

25
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  Good afternoon.  Please be seated.  This is

 3     Case Number 23-80101, United States of America v. Donald J.

 4     Trump, Waltine Nauta, and Carlos De Oliveira.

 5          We were in session, previously, in a sealed format.  So

 6     to get us started, let's get appearances again.

 7          Mr. Bratt.

 8          MR. BRATT:  Good afternoon, Your Honor.  Jay Bratt,

 9     David Harbach, and Michael Thakur and John Pellettieri on

10     behalf of the United States.

11          THE COURT:  Thank you.

12          Mr. Bove.

13          MR. BOVE:  Good afternoon, Your Honor.  Emil Bove,

14     Todd Blanche, Kendra Wharton, and Lazaro Fields for President

15     Trump, who is not here today, with leave of the Court.

16          THE COURT:  Thank you.

17          Mr. Woodward or Ms. Dadan.

18          MS. DADAN:  Sasha Dadan on behalf of Waltine Nauta,

19     along with Stanley Woodward, co-counsel.

20          THE COURT:  Thank you.

21          MR. IRVING:  Good afternoon, Your Honor.  John Irving

22     and Donnie Murrell on behalf of Mr. De Oliveira.

23          THE COURT:  Thank you.

24          All right.  As I indicated a moment ago, we had a

25     sealed session to discuss certain presumptively privileged
```

1   material and, also, Grand Jury material stemming from Defendant

2   Trump's motion to suppress at docket entry 566.

3         We are now going to hear argument starting from --

4   Mr. Bove, are you going to be handling this portion as well --

5         MR. BOVE:  Yes, Judge.

6         THE COURT:  -- on the remaining aspects of that motion,

7   which include Defendant Trump's arguments with respect to his

8   entitlement to a Franks hearing, based on alleged

9   misrepresentations or material omissions in the search warrant

10  affidavit, and also arguments related to the alleged lack of

11  particularity of the warrant under the Fourth Amendment and the

12  good faith exception to the exclusionary rule.  Should a need

13  arise for future evidentiary hearing on either of those topics,

14  the Court will schedule a hearing in due course, which is what

15  I indicated at docket entry 605.

16        So with that basic background, Mr. Bove, I will hear

17  from you first.

18        MR. BOVE:  Thank you, Judge.

19        What I would like to do, if it is acceptable, is

20  address the parts of the motion in this order:  First, the

21  defect in Attachment B of the warrant with respect to the

22  things to be seized under the Fourth Amendment.  Second, the

23  defect in Attachment A of the warrant with respect to the

24  places to be searched.  Then I would turn to the third, the

25  Franks issue, and, finally, address the need for fact-finding.

1          THE COURT:  Okay.  Let's proceed in that fashion,

2    starting with Attachment B.

3          MR. BOVE:  So Attachment B and our challenge to it

4    relates to the part of the Fourth Amendment that requires

5    particularity with respect to the things to be seized.  And I

6    think in prior civil litigation relating to the execution of

7    this warrant, Your Honor found and the government conceded that

8    the agents who executed the warrant used Attachment B to seize

9    some personal effects without evidentiary value.  That's in the

10   Trump civil decision at 625 F.Supp 1265.  That included medical

11   documents, tax documents, accounting information, and

12   passports.  And so that is -- that, to me, sort of sets the

13   scene for:  Why did that happen?

14         And I think that part of the reason -- we can get to

15   the culpability of the agents -- but part of the reason is that

16   the warrant itself didn't provide sufficient specificity with

17   respect to what could be seized.  And that starts in, sort of,

18   the introductory language of Attachment B, which authorized the

19   seizure of, quote, "all evidence of statutory violations that

20   the warrant itself, Attachment B, did not describe, or

21   summarize in any way.  The government" --

22         THE COURT:  Well, is that correct?  It has

23   Subsections A through D with further descriptions.

24         MR. BOVE:  That is a non-exhaustive list, from our

25   standpoint, of things that the government suggested to the

 1   seizing agents would be examples of the types of evidence.  But

 2   our argument starts at the top of Attachment B, with respect to

 3   this authorization and the use of the word "all," and in

 4   particular, the failure to provide the searching agents with

 5   any guidance about what these statutory provisions actually

 6   prohibit.  And that failure to do so in Attachment B is in

 7   stark contrast to what happened in the warrant application,

 8   where each of those provisions was quoted and described to the

 9   magistrate judge who issued the warrant, presumably because the

10   government felt that these were the types of statutes that are

11   not so commonplace that they require that type of description.

12   And it is a failing with constitutional significance of

13   Attachment B to not provide similar guidance with -- to the

14   seizing agents.

15        THE COURT:  Well, why is the guidance not already

16   described in A, B, C, and D?

17        MR. BOVE:  Because those are not limiting on the -- the

18   word "all."  That, as I said, is a non-exhaustive list as

19   indicated by the use of the word "including."

20        But I do want to talk about defects in each of those

21   paragraphs, and I will move on to those --

22        THE COURT:  Before you go -- so your -- your contention

23   is, so that, what more needed to be contained in Attachment B,

24   specifically, with respect to the statutory violations?

25        MR. BOVE:  There are things that should -- from -- our

1    argument is that there's things that should have been included,

2    and things --

3         THE COURT:  Okay.  What things should have been

4    included?

5         MR. BOVE:  Descriptions of what it means to violate

6    Section 793, 207 --

7         THE COURT:  So the elements of those offenses?

8         MR. BOVE:  Or, I have seen it with just narrative text

9    summaries that are a little more standard and, sort of, in

10   commonplace, non-legalese language that agents could use, but

11   something that offers some guidance, at least some of the

12   guidance that the government felt was important enough to offer

13   to the judge who issued the warrant.

14        THE COURT:  But why is the guidance not enough where it

15   says, "any physical documents with classification markings"?

16        MR. BOVE:  Because that's not a restriction on

17   the -- on the top -- the language that I'm talking about.

18        THE COURT:  Right.  But it has to be read in context,

19   and one would -- one would naturally look to Subsections A

20   through D to determine what it is that the agents were looking

21   for.  And it's clearly delineated there to search for physical

22   documents with classification markings.

23        MR. BOVE:  Well, Judge, those are examples, but it's

24   not an exhaustive list.  And so my point here is that the

25   Fourth Amendment requires particularity, and this top language

1    before the paragraphs doesn't -- the paragraphs that follow

2    don't serve as a restriction.

3          And the context, I think, is important.  In addition to

4    these -- these statutes not being described in the warrant as

5    they were in the warrant application, these are particularly

6    complicated statutes.  We've had extensive litigation about

7    what 793 means.  There are also some interesting restrictions

8    in the case law on what 2071 means.  The Rosner case out of

9    S.D.N.Y. in 1972.  This is at 35 --

10         THE COURT:  Is this cited in your papers?

11         MR. BOVE:  I don't believe so, Your Honor.

12         THE COURT:  Then let's move on.  You can file a notice

13   of supplemental authority later, limited to the word limit.

14   But I don't want to receive, at this point, a string citation

15   of cases that weren't briefed.

16         MR. BOVE:  My point, though, without the citation is

17   that 2071 has a specific meaning that is actually more limited

18   than even the text of the statute that is quoted in the

19   application itself.  And that is why -- or part of our argument

20   is that in order to be effective and permissible under the

21   Fourth Amendment, the introductory language needed to give the

22   searching agents some guidance about what these statutes

23   actually meant.

24         Now let's talk about --

25         THE COURT:  So if you were to have written the

1    description, what would you have included?  I'm still a bit

2    unclear as far as what kind of introductory language you think

3    would have been more adequate.

4         MR. BOVE:  So for 793, something along the lines of,

5    "unlawful retention of National Defense Information."  Or I

6    think, more appropriately -- I don't think it was appropriate

7    to use the term "NDI," and I want to talk about that.  So

8    something like "unlawful retention of documents bearing

9    classification markings."

10        THE COURT:  But "NDI," that -- why would it be

11   inappropriate to include that term?  I mean, it's a critical

12   term in the decisional law for 793.

13        MR. BOVE:  Exactly, Judge.  In the decisional law,

14   because it is virtually contentless on its face.  And the only

15   thing that this warranted was offer some guide -- used the

16   term, a term that the government felt necessary to define and

17   limit in footnote 2 of the warrant application, another example

18   of a place where there was a legal gloss on a term that was --

19   that was relevant to what the agents were going to be doing, a

20   term that the agent -- that the government felt was appropriate

21   to define for the issuing magistrate but not for the searching

22   agents, and that matters in particularity analysis.  And so

23   this --

24        THE COURT:  Do you have any case law to suggest that

25   for purposes of itemizing property to be seized, there needs to

1    be the equivalent, essentially, of a legal brief going through

2    each essential element of an offense, and other complexities

3    that arise from those elements?

4         MR. BOVE:  No, but that's not my argument either.  My

5    argument is that it warrants particularity requirement.  It

6    obligates the government to provide sufficient guidance to the

7    searching agents about what some of these technical terms mean.

8    It doesn't need -- it's not our position that it needs to be

9    element by element, but some guidance is necessary.  And it is

10   telling, I think, it's -- it bears repeating that the

11   government felt that it was important to give that guidance to

12   the issuing magistrate but not to the searching -- the agents

13   who participated in the search.

14        THE COURT:  And so, again, the guidance that you think

15   is missing and should have been included -- if you were to just

16   come up with it now, what sort of paragraph would you have

17   looked for?

18        MR. BOVE:  I would have provided -- it's not what I

19   would have done, obviously, but what we think is missing from

20   this warrant is at least some type of guidance about what these

21   statutes actually prohibit.  Our position on NDI is that it

22   should not have been included in the warrant, in Attachment B,

23   period, because it doesn't provide guidance to the agents who

24   participated in the search, as reflected in the government

25   feeling that it was necessary to define the term and to provide

1    the judicial glosses that Your Honor is familiar with from the

2    vagueness litigation in the body of the warrant itself.

3            So that's a place where, telling the agents they can go

4    make determinations on the fly about what constitutes NDI --

5    our argument is that is -- that is not consistent with this

6    part of the particularity restriction under the Fourth

7    Amendment.

8            THE COURT:  Okay.  Let's move on then.

9            MR. BOVE:  The next phrase that is the focus of our

10   motion is in paragraph C, Government Records.  And this

11   is -- this is a place we think that is -- it's overly broad.

12   It's not clear what that means.  There is actually two

13   definitions or references to that term in the application, but

14   not in the warrant.  At paragraph 21 of the warrant, there is a

15   block quotation of Section 207, 1.  Then at paragraph 23, there

16   is a definition of, quote, "records" under Title 44, which I

17   believe is the Federal Records Act.

18           And so this is a place where, one, again, the

19   government providing guidance to the Court, because these terms

20   are ambiguous -- to help the issuing magistrate decide what

21   their -- think about what their arguments were, but didn't

22   provide that guidance to the searching agents.  But, two, even

23   the guidance that they provided to the judge --

24           THE COURT:  Quick question:  Were the agents directed

25   to review the full affidavit prior to executing the search?

 1          MR. BOVE:  I think that's a fact question that requires

 2     a hearing, Judge; it's not something that can be resolved on

 3     the face of these papers.  That's what --

 4          THE COURT:  Is that in the operational plan, though,

 5     that is an attachment to your motion, that all of the agents

 6     were -- were asked to review it?

 7          MR. BOVE:  I think --

 8          THE COURT:  I believe there is some reference to that.

 9          MR. BOVE:  I think there is some reference to that,

10     Judge.  But that's a document about what people contemplated

11     beforehand.  It's not -- it may be some evidence of what

12     happened in connection with the search.  We don't know who

13     reviewed it.  We don't know what -- what they made of it.  And

14     that's something that is disputed by President Trump and would

15     have to be established at a hearing.  In the basic --

16          THE COURT:  But "dispute" being whether agents actually

17     followed the instruction to review the full packet?

18          MR. BOVE:  Yes.  And whether the FBI implemented that

19     instruction in the first place.

20          THE COURT:  Okay.  All right.  Keep going.

21          MR. BOVE:  So that's -- that's our issue with

22     government records.  And so we've talked about the use of the

23     term "all" in the absence of statutory definitions.  We have

24     talked about the problems with using the term "NDI" in a

25     warrant like this, in light of the "void for vagueness"

 1    briefing that we submitted, and courts' decades of struggling

 2    to define that term.  It wasn't something that was permissible

 3    to allow the agents to implement as they executed the search.

 4    The problems with the term "government records," and especially

 5    in light of overlapping and, arguably, to some extent,

 6    conflicting definitions in the warrant application itself.  If

 7    the government wasn't sure what it meant in the application,

 8    how could the agents be sure what it meant as they're executing

 9    the search?

10         Then there is the reference to presidential records in

11    paragraphs C and D.  And for all the reasons that we've cited

12    in our PRA motion to dismiss, there are complexities associated

13    with this term that -- that made it, I think, self-evident,

14    that FBI agents executing a search at a former President's

15    house are in no position under the text of the definition of

16    "presidential records" and the decisional case law around the

17    implementation of that term for agents to decide on the fly by

18    looking at a document whether it is a presidential record.

19         Why do I say that?  Because the definition of

20    presidential records, at 44 U.S.C. 2201, excludes extra copies

21    of documents.  And so this is -- this was a term that the

22    agents -- they could not apply.  It is, just based on the

23    definition of itself, not capable of application in connection

24    with a search.

25         And it's not -- it's not our position that any one of

1   these defects is necessarily a constitutional violation.  But

2   collectively, what happened here was that there was,

3   essentially, a warrant issued to search Mar-a-Lago that

4   authorized the agents to search each and every piece of paper

5   that they encountered.  And that is made, I think, even more

6   clear in paragraph A, where the attachment -- where

7   Attachment A authorizes the seizure of containers/boxes,

8   including any other contents.  And so the combination of all of

9   these issues that I have flagged, in Attachment B, cumulatively

10  resulted in a violation of the particularity requirement.

11          THE COURT:  All right.  Please continue.

12          MR. BOVE:  I think I had some errant references there

13  to Attachment A.  I was talking about Attachment B.

14          THE COURT:  Yes.

15          MR. BOVE:  Attachment A is the part of the warrant that

16  describes the places to be searched.  Taking a look at the

17  warrant application, we think that it established probable

18  cause with respect to the six locations that we identified in

19  our brief at page 3.  The White & Gold Ballroom; the storage

20  room; the anteroom to the storage room.  And then, there are

21  two that relate to, sort of, the President's Residential Suite,

22  and the anteroom to that in Pine Hall; and then, lastly,

23  President Trump's office, referred to as The 45 Office.

24          And so that -- you know, to decide what a Court could

25  have potentially authorized to be searched, we obviously looked

1   to the application and the references in the application to

2   "where could evidence potentially be found in these premises

3   that the government is seeking to penetrate, to conduct a

4   search like this?"

5          And context here matters also.  This was an enormous

6   piece of property.  We're not talking about the search of a

7   single-family home in the suburbs.  We are not talking about

8   the search of an apartment in the city.  I think the attachment

9   itself describes Mar-a-Lago as a 17-acre property, with 58

10  bedrooms and 33 bathrooms.

11         THE COURT:  But what's your point?  I mean, it's a

12  large property.

13         MR. BOVE:  That the government has to establish

14  probable cause to search the areas that they identified in

15  Attachment A, and that they did not do so.  And instead,

16  they -- that application, at most -- at most, established

17  probable cause with respect to six locations, bulleted out

18  at -- at page 3 of our brief, the ones that I just summarized.

19         And then there are -- again, there is a part of

20  Attachment A, like Attachment B conferred an unamountable --

21  excuse me -- unacceptable amount of discretion on the searching

22  agents, that the area to be searched, the definition of that,

23  includes rooms, quote, "available to be used by both President

24  Trump and," quote, "his staff."

25         There are fact questions relating to this motion about

1    how that language was implemented on the ground that bear on

2    the manner in which this search was executed and whether it was

3    constitutionally reasonable.   That's one of the parts of the

4    discretion that we think was unfettered that was conferred by

5    Attachment A.

6         The second is that the warrant excludes rooms, quote,

7    "used by third parties."   And there is some information in the

8    operations order about how the FBI planned on the front end to

9    implement that language, but factual disputes about how it

10   actually happened on the ground, and whether or not -- I mean,

11   ultimately, we are talking about Fourth Amendment

12   reasonableness here.   And so there is a question about, did the

13   application establish probable cause for the scope of a search

14   defined in Attachment A?   We say no.   And even if it did, what

15   kind of discretion did it give to the agents where -- in a

16   context where the Fourth Amendment requires that agents not be

17   permitted to go on a rummaging.   And a "rummaging" is a word

18   that the Supreme Court uses, not me.   And that is the issue

19   here when you look at Attachment A that authorizes a search of

20   the entire property when the application only speaks to

21   specific areas.

22        And what happened during this search?   Agents were --

23   searched and photographed the First Lady's bedroom.   They

24   searched the bedroom of President Trump's youngest son.

25   They -- they purported to look for classification documents in

1   a gym and in a kitchen, and took photographs of those

2   locations.  And just like with respect to Attachment B, when

3   the Court's considering:  Did this warrant with sufficient

4   particularity --

5        THE COURT:  Were any items recovered from those extra

6   locations that you have just referenced?

7        MR. BOVE:  Not to my knowledge.

8        THE COURT:  So then what -- what's the prejudice if

9   there was -- if there was searching of locations, and no

10   evidence seized as a result, then what's your legal claim?

11        MR. BOVE:  The legal claim is that there was an

12   impermissibly broad search that hit rooms all over Mar-a-Lago

13   that there was not probable cause to search, and that the

14   overbreadth of that search violated President Trump's rights.

15   There are factual questions about the scope of the search and

16   the manner in which it was executed that bear on the

17   suppression remedy.  But the fact that the agents went into and

18   photographed and documented rooms where there -- there was not

19   probable cause to be searching, and in -- a child to -- to

20   search, Judge?  We think that bears on the conduct of the

21   agents in the search, and it is relevant to this --

22        THE COURT:  You would agree that the paperwork, though,

23   is a sort of thing that can be located anywhere?

24        MR. BOVE:  Generally speaking, yes.  But it had to be,

25   for purposes of this warrant, the types of paperwork that were

1    at issue in this case.  And there was no -- no evidence, for

2    example, that somebody had stored documents bearing

3    classification markings in the -- in the room where President

4    Trump's son kept his Peloton bike, or the gym, or the kitchen.

5    And that's the -- that's an important part of our argument,

6    that the agents fanned out and they conducted this search in an

7    unconstitutional way.

8              THE COURT:  Okay.  Anything further?  We talked about

9    Attachment B.  Anything further on Attachment A?

10             MR. BOVE:  No, Your Honor.

11             THE COURT:  Okay.

12             MR. BOVE:  Now, on the Franks issue.  We have

13   identified a series of what we think are omissions and, to some

14   extent, misrepresentations to the magistrate judge that would

15   have affected the probable cause determination and for which a

16   hearing is necessary to look at the mental state of the agents

17   and the -- at least the agent who signed the affidavit, and the

18   reasons that these things were not included.

19             First, we have some evidence and some public statements

20   by FBI personnel that they did not think that this -- that a

21   search pursuant to a warrant was necessary, and that they felt

22   it was inconsistent with historical practice.

23             Exhibit 1 to our motion identifies a request by the FBI

24   to the government to seek consent to conduct a search.  And

25   then we've also identified the June 2023 Congressional

1  testimony of ADIC D'Antuono on this issue.  And I think that

2  the Congressional testimony is important because, by his

3  description, there are communications bearing on this issue up

4  to the level of a deputy director at the FBI.  He says, quote,

5  "there are emails that I have written back and forth that my

6  view is -- what we -- is that we want consent."  And I

7  don't -- the government has not produced those.  And these are

8  things -- these -- those positions --

9      THE COURT:  But why would that matter legally to the

10  veracity of the affidavit?  Whether there was another

11  alternative that would have been more collaborative, why does

12  that entitle you to a Franks hearing?

13      MR. BOVE:  Because at paragraph 80 of the search

14  warrant application, the affiants swore that premature

15  disclosure of the facts in the government's intentions could

16  have a significant and negative impact on the continuing

17  investigation and lead to the destruction of evidence.  And I

18  think that -- there is at least a factual dispute, based on

19  Exhibit 1, in the Congressional testimony, about whether that

20  was accurate, and it bears on the judge's analysis of the types

21  of risks that are posed by the -- by the picture the government

22  is painting in that application.

23      THE COURT:  Could it just be that -- that reasonable

24  minds can disagree, and one agent believes that one alternative

25  is superior, and somebody else thinks another avenue is better?

1      MR. BOVE:  That could certainly be the practical

2   reality, Your Honor.

3      THE COURT:  So then why would that lead us to conclude

4   that there is a material misrepresentation in the search

5   warrant?

6      MR. BOVE:  Because ADIC D'Antuono is the affiant's

7   boss, and if that was his view and a lower-level agent swore

8   out this warrant with that statement, there are factual

9   questions about why it was made, the intent behind it, and why

10  a decision was made to keep this under seal and make false

11  claims about risks of flight and destruction of evidence that

12  FBI leadership, at least at some relatively high level, did not

13  share.

14     THE COURT:  What specific paragraph are you pointing to

15  in the affidavit?

16     MR. BOVE:  80.

17     THE COURT:  This concerns a request for sealing.  Does

18  that really go to the substantive probable cause determination?

19     MR. BOVE:  I think it does with respect to 793, Judge.

20  And the government has conceded at this point that the risk of

21  potential harm is an element to be considering.  They made

22  representations in this affidavit about whether or not it was

23  safe to be storing the types of documents that they allege

24  existed at Mar-a-Lago under those circumstances.  And so a

25  representation about risks to destruction of evidence and

1    flight, it is relevant to what the judge is considering.

2          I take your point about --

3          THE COURT:  Is there any other statement in this

4    affidavit that you think meets the level of a material

5    misrepresentation in the way that paragraph 80, you say, does?

6          MR. BOVE:  No.  I think the rest of our points are

7    omissions points.

8          THE COURT:  Okay.  So 80 is the only

9    allegedly -- alleged misrepresentation that you include in your

10   submission?

11         MR. BOVE:  Yes, Your Honor.

12         THE COURT:  Okay.  All right.  Then let's turn to the

13   omissions -- or the purported omissions.

14         MR. BOVE:  The omissions that we've identified, the

15   first two relate to the fact that while the President was the

16   President of the United States, it is undisputed that he was

17   not required to maintain the security clearance.  And I think

18   it's also -- it was known to the FBI and undisputed here that

19   there were very sensitive briefings provided to the President

20   at Mar-a-Lago while he was in office.  And those things bear on

21   the circumstantial evidence of intent that the government laid

22   out in this application, and we think, undercut it to such an

23   extent that at least a hearing is necessary.

24         THE COURT:  But why?  So you would have added in, let's

25   say:  During the presidency he received classification

 1   briefings.  How would that have changed anything?

 2          MR. BOVE:  Because the government's theory of this

 3   search is that the -- the storage of these alleged documents

 4   was intentional and willful under 793, and that it created

 5   risks of harm to the national --

 6          THE COURT:  Right.  Post-presidency.

 7          MR. BOVE:  Yes, Your --

 8          THE COURT:  So I'm not -- I'm failing to see why adding

 9   into this affidavit, the fairly undisputed and obvious point

10   that an executive would be receiving classified briefings

11   during a presidency would have made any difference in the PC

12   inquiry.

13          MR. BOVE:  The fact that the President wasn't required

14   to obtain a security clearance while he was in office was --

15   was new to me when I started this case.  I'm not sure it would

16   have been obvious to the issuing magistrate.  And our point

17   is --

18          THE COURT:  But the key is post-presidency.

19          MR. BOVE:  I agree.  But it bears on his intent.  And

20   the part of what the government has to establish to show

21   probable cause to justify their search is that the President

22   had a state of mind that supports the statutory allegations in

23   the warrant.  And so our position with respect to these

24   omissions is that both these things bear on the evidence of his

25   intent and should have been included.

1          THE COURT:  Okay.  What's your next omission argument?

2          MR. BOVE:  The next one -- the next omission argument

3    relates to the description of the way -- I think what the

4    government describes in the application as the referral from

5    NARA.  And we think that the dispute that's queued up in the

6    motions to compel about how and when this investigation

7    started, and the way that NARA was implementing the

8    Presidential Records Act was relevant to the search warrant

9    application because part of what the government relies on

10   extensively is the collection of the 15 boxes.  And if that was

11   done in an unlawful way, or if it was described in a way that

12   omitted material facts about the government's intent or the

13   level of coordination between the people involved, then that is

14   something that bears on the legality of the collection of those

15   15 boxes, and -- either could have undercut the evidence

16   relating to -- that they described relating to those boxes and

17   potentially undercut the entire probable cause.

18          And this is one of the places where, you know, the

19   motions to compel have sort of caught up to the pretrial

20   motions, and it's one of the reasons that we think we're

21   entitled to additional evidence about the genesis of the

22   investigation.

23          THE COURT:  So, hypothetically, the sentence or

24   paragraph that you think should have been added would be what

25   exactly?

1    MR. BOVE:  Well, these are facts that are undisclosed

2  to us at this point, but at the very least, we have identified

3  evidence in the motions to compel of coordination with the

4  Department of Justice dating back to September of 2021.

5    THE COURT:  Okay.  So let's say that had been written

6  into this -- this affidavit, "there was coordination starting

7  in September," why would that have changed anything for

8  purposes of the magistrate's determination of probable cause?

9    MR. BOVE:  Because it's part of our argument that

10  the -- that NARA and DOJ lacked authority to demand documents

11  from President Trump that led to the collection of those

12  15 boxes, and the 15 boxes are core to the theory of probable

13  cause in the application.

14    THE COURT:  Okay.  Those might be valid defenses.  Who

15  knows?  But the bottom line is, why would they have undercut

16  the probable cause at the point this affidavit was reviewed?

17    MR. BOVE:  Because if the 15 boxes were collected in an

18  unlawful manner, then that evidence should not have been relied

19  on by the magistrate as a basis for probable cause to conduct

20  the search at Mar-a-Lago.

21    THE COURT:  Okay.  All right.  Next argument, please.

22    MR. BOVE:  The next argument relates to the inclusion

23  of the statutory citations, the Presidential Records Act that I

24  have talked about, but not the decisional case law around the

25  President's discretion to identify and -- excuse

1   me -- designate presidential versus personal records.

2   Acknowledging that there is overlap here between the motion

3   that we have filed in this warrant, this is the type of thing

4   where it is being suggested to the magistrate judge that the

5   agents can -- that, first of all, that the President did not

6   have the discretion to make these designations, which we think,

7   as a matter of law and practice, is false.  But it's

8   also -- this omission also leads to the suggestion in the

9   warrant that the agents can go onto these premises and conduct

10  this incredibly broad search and take any piece of paper that

11  they feel meets the definition, including by not applying the

12  copies exclusion in the definition of "presidential records."

13          And so we think that the omission, especially given the

14  inclusion of other decisional case law, for example, about the

15  NDI element, the omission of the decisional case law about the

16  Presidential Records Act.

17          THE COURT:  So which case would you have liked to see

18  cited in the affidavit?

19          MR. BOVE:  We think Judicial Watch -- we think that

20  they were obligated to --

21          THE COURT:  And if that case had been cited, why do you

22  think it would have made a difference, ultimately, in the

23  issuance of the affidavit?

24          MR. BOVE:  We think, because, as a matter of law, the

25  President had -- was able to designate records as personal.

1  And so when you are -- the judge, understanding that, would not

2  have authorized agents to go into Mar-a-Lago and seek purported

3  presidential records.

4          But in addition to that, even if --

5          THE COURT:  Even if they bore classification markings?

6  Even accepting your proposition that they're designated

7  personal, they still, ultimately, would have had the

8  classification markings; right?

9          MR. BOVE:  I think that could be a different argument.

10  And I -- you will note that we haven't challenged the part of

11  the warrant that authorizes the seizure of documents with

12  classification markings.  I'm sure you're also aware that the

13  agents seized every piece of paper anywheres near documents

14  bearing classification markings.  And so that is part of our

15  argument about why this search was executed in an

16  unconstitutional way.  And so, I think on this --

17          THE COURT:  But are any of those other materials sought

18  to be introduced at trial?

19          MR. BOVE:  This -- that issue, Judge, is -- is one that

20  is bound up in what we think is the necessary suppression

21  hearing.  It's also going to be an issue in the CIPA

22  litigation, and so that -- that is going to be a theme in a

23  number of motions that are going to come up.

24          THE COURT:  Okay.  Any other omission arguments you

25  would like to make?

1          MR. BOVE:  No.  Those are the omissions arguments.  And

2     we understand that any kind of Franks motion entails a

3     materiality analysis.  The questions that you have been putting

4     to me about, essentially -- wouldn't this warrant have still

5     established probable cause even if you cut -- excuse me -- even

6     if you added in the omissions and corrected the

7     misrepresentation, in paragraph 80?

8          And here, we have identified a couple of arguments that

9     we think undercut the probable cause showing, generally, and at

10    least require fact-finding with respect to this issue in -- on

11    the materiality point.

12         The first is that there is a staleness argument here.

13    This warrant focused on what we talked about earlier as the

14    choreography of the boxes in May and June of '22.  It's months

15    later.  There is not much evidence about where, specifically,

16    these things were in that warrant in July, moving into August.

17    And that is -- that comes to play in paragraph 75 and 76 of the

18    warrant application, where witnesses are -- are -- I think

19    these were exculpatory disclosures in the application, saying,

20    "I did not see boxes in President Trump's residential suite."

21         So I understand that the government feels very strongly

22    about their showing of probable cause in this application, and

23    they will have a lot to say about that.  Our point is, there

24    are some things here that undercut that, and then there are

25    some very serious omissions.  And the question is, is

1    this -- does this warrant fact-finding about the intent behind

2    those admissions?

3         We have identified some things here between

4    ADIC D'Antuono's testimony, whatever was going on at NARA and

5    the coordination with the DOJ that bear on the conduct of the

6    investigation, things that bear on the legality of the

7    collection of the 15 boxes that were so central, I think, to

8    this warrant application.

9         And so, looking at it collectively, we think these

10   omissions and the one misrepresentation do warrant a Franks

11   hearing.

12        THE COURT:  Okay.  Thank you.  If you're finished with

13   your presentation, then I will hear from counsel for the

14   Special Counsel.

15        MR. BOVE:  I have -- I have a couple points about the

16   hearing framing itself, about -- about some of the case law

17   around that.

18        THE COURT:  Okay.  I will hear that.

19        MR. BOVE:  So one question is, how to apply the good

20   faith exception in this setting.  And obviously, there are

21   plenty of decisions where courts look -- look beyond or assume,

22   sort of, the issues that I've just described about

23   particularity or Franks -- Franks problems, and say:  In any

24   event, the agents acted in good faith, so there's no Fourth

25   Amendment violation here.

1          We understand that that is a potential route of

2    analysis.  We don't think that that can happen under Leon

3    without fact-finding.  And so what type of fact-finding?

4          Our position is that this is one of those warrants that

5    it is so facially deficient that it could not have been relied

6    on because of the use of the word "all," the authorization to

7    search any -- excuse me -- to seize any piece of paper in any

8    of these boxes, the fact that that's actually what happened.

9    And I think, importantly here, Judge, our -- the pending

10   spoliation motion, which is not fully briefed yet, very much

11   overlaps with the fact-finding that is necessary about search

12   execution.

13         And so I -- I don't -- I'm not prepared to talk about

14   that.  The opposition was filed late last night.  But I think

15   it is relevant as Your Honor considers what's going to happen

16   here for fact-finding about whether this search was conducted

17   in a legal way and in a way that accounted appropriately for

18   President Trump's rights.

19         And so footnote 23 of Leon itself says that all of the

20   circumstances may be considered in connection with the

21   application of the good faith exception.  The Supreme Court's

22   Herring decision talks about looking to -- those circumstances

23   frequently include a particular officer's knowledge and

24   experience.

25         Knowledge and experience of the searching agents is

1    very relevant here to the extent that we are thinking about

2    searching -- the agents being asked to apply terms like "NDI,"

3    and even the context -- the concept of, what are the

4    classification markings that could warrant seizure?  In this

5    specific setting, knowledge and experience is relevant and

6    disputed.

7         THE COURT:  So is your position that any investigation

8    searching for classified information in investigating under

9    793(e), they're just -- the terms are too ill-defined, and

10   absent an exhaustive legal brief, who would be capable of even

11   conducting such a search?

12        MR. BOVE:  I wish.  It would make my job a lot easier.

13   But that's not our argument.

14        Our argument is that one way or another, the government

15   obviously has an obligation to conduct a reasonable search.

16   That can be implemented through the training of the agents who

17   go out and do it.  It can be implemented because the agents are

18   articulately experienced in the national security space.  It

19   can be implemented because there are instructions given to the

20   agents before they would do that.  It can be implemented on the

21   face of the warrant itself.

22        THE COURT:  It just seems like you're making policy

23   arguments about training and experience, and it seems far

24   afield from the legal inquiry whether the affidavit itself

25   contained the essential elements to meet the probable cause

 1    standard.  I'm unclear as far as what -- what you -- what you

 2    think should have been included in the affidavit or what was in

 3    there that shouldn't have been in there from a good faith

 4    perspective.

 5         MR. BOVE:  From a good faith perspective, more guidance

 6    was required so that when -- if you look at the face of that

 7    attachment and you start with the word "all," and then you go

 8    to subparagraph A that talks about seizing any box, any

 9    container, any piece of paper adjacent to a piece of evidence,

10    then that on its -- that is a -- that is a warrant that

11    authorizes way too much.  And nobody with, I don't think,

12    pretty basic Fourth Amendment training could understand, from

13    those two pieces of this, that this is something that -- that I

14    can go in and execute in a way it was executed.

15         With -- so that's our -- you know, we have this -- what

16    I think of as more of a merits-particularity argument.  But on

17    good faith, Herring itself says, look to the officer's, quote,

18    "knowledge and experience."  Martin from the Eleventh Circuit

19    talks about looking at facts outside the affidavit.

20         And so, for the government to establish that this is a

21    warrant that was executed in good faith, there are disputes

22    about that.  How -- what were the instructions that were

23    provided to them?  What happened from the staging area before

24    the search was executed?  What happened while they were

25    conducting the search?  There were attorneys on the set.  What

1    questions were put to them?  How was that treated?

2           There are all kinds of things that bear on the manner

3    in which this search was executed that have to be resolved,

4    that are disputed, that we don't know about right now, before

5    the Court could find that the exclusionary rule doesn't apply

6    under Leon.

7           THE COURT:  Okay.  All right.  Anything further?

8           MR. BOVE:  The last point -- and I will be quick.

9    There is a legal dispute in our papers about whether the good

10   faith inquiry includes analysis of the officer, the searching

11   officers' subjective intent.  And so, I understand -- from my

12   perspective, there is, sort of, conflicting language or

13   language that's in tension between Leon and some of the other

14   cases that talk about looking to the deterrence value of

15   applying the exclusionary rule.  And in those cases, when

16   you're assessing the deterrent value, you have to look at

17   whether the conduct that's challenged was negligent or reckless

18   or some other type of mental state that led these things to

19   happen.

20          And so Herring itself talks about differences between

21   isolated negligence, systemic error, and reckless disregard of

22   constitution requirements.  Davis is another Supreme Court case

23   that talks about the degree of, quote, "police culpability."

24          And so those are standards that require some kind of

25   inquiry, even if it's not an inquiry about just, you know --

 1    what was the specific motivation of the searching agent?  Some

 2    kind of inquiry into what was going on in the heads of the

 3    agents who conducted these searches, as informed by the

 4    circumstances under which they conducted them.

 5         THE COURT:  But what sort of evidence do you have that

 6    would rise to the level of that -- of that harsh sanction of

 7    exclusion?  Referencing the Davis case, for example, you would

 8    need clear reckless behavior and things of that nature.  What

 9    in the record, as far as you're aware, would even rise to that

10    level?

11         MR. BOVE:  Well, I think it's -- first of all, I think

12    it's the government's burden to establish good faith and not

13    our burden to disprove it.  But even with respect to what

14    evidence is there in the record, our position is that the

15    things -- the factual disputes that you're starting to see

16    percolate in the spoliation motion are very much a part of a

17    showing of recklessness, at minimum, with respect to the

18    execution of this search.

19         The failure to keep these boxes intact, I think,

20    was -- was -- we will just leave it at "a significant failure"

21    from our perspective that does bear on the application of good

22    faith exception.

23         But, in any event, the government can't ask you to look

24    past the particularity issues that we talked about, and not

25    have a hearing and, say, apply Leon without establishing this

1   themselves.  And so it's their showing to make.  And we think,

2   especially once this spoliation motion is fully briefed, that's

3   a threshold we've crossed and will require fact-finding.

4           THE COURT:  Thank you.  Okay.  Mr. Harbach.

5           MR. HARBACH:  Good afternoon, Your Honor.

6           THE COURT:  Good afternoon.

7           MR. HARBACH:  If it's all right with Your Honor, I

8   would like to begin with the Franks discussion.

9           THE COURT:  Okay.

10          MR. HARBACH:  But I would also like to make the point,

11  to just put a marker down for Your Honor that I will come back

12  to a little bit later, that in the last several minutes of

13  Mr. Bove's argument there was some real conflation of the

14  necessity -- they're arguing their alleged necessity of a

15  hearing in connection with the Leon good faith requirement and

16  the necessity of the hearing under the Franks rubric.  Those

17  are -- those are in separate silos.

18          So for the moment, I just would like to focus on the

19  Franks hearing.  And, just for the record, I would like to

20  reiterate the standard that the defendant was -- must -- must

21  satisfy -- and I'm confident Your Honor knows this, but just

22  for the record -- from Franks, it's required that the defendant

23  make a substantial preliminary showing that the affiant made

24  false statements; furthermore, that the affiant did so either

25  intentionally or with reckless disregard for the truth.  So

1    it's not a question of good faith.  That is the showing that

2    the defendant must make.

3         And, furthermore, the Kapordelis case makes explicit,

4    which was something that was implicit otherwise, namely, that

5    the defendant bears the burden of showing that, absent the

6    omissions or misrepresentations, probable cause would have been

7    lacking.

8         I will also direct the Court to the Graham case which

9    we have cited in our papers.  And it states -- makes a point of

10   stating that a Franks hearing is warranted in cases of

11   omissions in -- quoting now -- "rare instances," closed quote.

12        So the last thing I would like to say is just to

13   reiterate what the Court said in Franks itself.  This is at

14   page 26-84 of the Supreme Court Reporter version of the

15   opinion.

16        It says:  "To mandate an evidentiary hearing, the

17   challenger's attack must be more than conclusory, and must be

18   supported by more than a mere desire to cross-examine."  There

19   must be allegations of deliberate falsehood or of reckless

20   disregard for the truth, and those allegations must be

21   accompanied by an offer of proof.

22        So a couple of times this morning, you heard Mr. Bove

23   suggest that they've made a substantial threshold showing about

24   false statements, and that, therefore, a hearing is required to

25   explore things like recklessness, and the state of mind of the

1    affiant.

2         And our position is that that's just wrong; that the

3    defendant is required to make a substantial showing on both

4    counts that is more than speculative, more than conclusory, and

5    requires an offer of proof, which, we submit, their papers

6    woefully fail to do.

7         So turning to the four items in the brief.  And just a

8    bit of table-setting here.  Your Honor asked Mr. Bove whether

9    the first item in their papers -- in their original motion was

10   the only affirmative misrepresentation in the warrant that they

11   were alleging.  What confused me about that is that the papers

12   don't -- the papers themselves, the defendant's motion, don't

13   characterize that as a misrepresentation; they characterize it

14   as an omission.  In other words, missed as -- the affiant's

15   omitting to include this allegation about what was

16   happening -- what other people in the FBI may have thought

17   about the search.

18        So I don't know whether Your Honor needs to clarify

19   with them or not, but their -- their papers are quite clear

20   that the allegation concerning paragraph 80 is an omission, not

21   an affirmative misrepresentation.

22        Your Honor has already made a point that I was going to

23   make, which is that the presence of -- that their argument for

24   why it matters is paragraph 80 that appears in the request for

25   sealing section, which, in our view, utterly undercuts the

 1    notion that this had anything to do with probable cause;

 2    Your Honor has already recognized that.

 3            And I will further say that if you look at the actual

 4    language of the affidavit in paragraph 80, the

 5    sentence -- Your Honor read it a little while ago to

 6    yourself -- that the sentence that precedes the sentence that

 7    they're talking about, about the necessity of secrecy, makes it

 8    clear what the actual reason for the request for sealing was,

 9    and that it had nothing to do -- the point being, there

10    was no -- there wasn't even any conflict, factual or otherwise,

11    between these allegations about what other people on the Bureau

12    thought, and what was put in the affidavit.  And --

13            THE COURT:  Do you agree that the "other people" we're

14    talking about is the superior of the -- of the affiant?

15            MR. HARBACH:  The person who's -- who is specifically

16    mentioned by name in the defendant's briefing was a superior;

17    that's true.  That's true.

18            THE COURT:  So --

19            MR. HARBACH:  Quite -- quite far up the chain.

20            THE COURT:  Hold on.  Is it correct that the affiant's

21    superior took the position that a consent search was preferable

22    to what ultimately took place on August 8th?

23            MR. HARBACH:  I -- I personally don't know the answer

24    to that, nor do I think it is remotely necessary to resolve

25    that question for all the reasons I have just said.

1          Any alleged tension between that -- that fact, even if

2     true, and what the affiant put in the affidavit -- there is

3     none.  There is no tension between those two things.  So there

4     is -- there is no falsity in having omitted that fact.  And

5     even if there were --

6          THE COURT:  So if it had said, for example:  My

7     superior thinks we can go through a consent route, but I

8     disagree for these reasons, would that have made a difference,

9     you think, in the issuance of the warrant or in the probable

10    cause determination?

11         MR. HARBACH:  Definitely not.

12         THE COURT:  Okay.  Why?

13         MR. HARBACH:  Because, among other things, remember the

14    context of where this appears in the affidavit.  Again, the

15    only place in the affidavit that they say this even hits the

16    ground is a request for sealing.  It wasn't even part of the

17    probable cause that the magistrate judge had to consider.

18         And -- and as I have said already, there is

19    nothing -- there is no -- there is no falsity about it.  There

20    is nothing about it that remotely even touches on whether there

21    was probable cause in this case.  And I will -- I will further

22    say that there is nothing in the papers.  There is nothing in

23    their papers suggesting or arguing about what -- what would

24    happen had this been disclosed, other than a generic reference

25    to staleness, which I will get to in a moment.  But my point is

1    they don't even try to make that showing.

2         So I would like to move on to the second item, which is

3    this notion that I don't think I spent -- need to spend too

4    much time on, the alleged failure to disclose that presidents

5    are not required to obtain clearances, and that Mr. Trump had

6    received classified briefings at Mar-a-Lago while he was

7    President.

8         Now, one -- one important point I would like to make

9    about this, is that this is the first of two rationales they've

10   offered that involve alleged omissions about a defense theory,

11   essentially.  There is this one, and then there is the one that

12   relates to the PRA.  And really important point to note up

13   front, is that there is a letter from Mr. Trump's then counsel

14   that he requested be included in any application to a judicial

15   officer, and so the affiant included it.

16        In that letter, there are various theories articulated,

17   including emphasizing, among other things, the President's

18   authority to declassify.  And as Your Honor knows from the

19   exhibits, that letter is part of the packet; it remains part of

20   the packet to this day.

21        Two points about why that matters.  Number one, it

22   means that -- that Mr. Trump had an extraordinary opportunity,

23   quite rare, unprecedented in my personal experience, to say

24   whatever he wanted to about what was important to the defense

25   in the context of the investigation at that stage.  And that

 1   was included in the search warrant application that was

 2   presented to the magistrate.  Now, why does that matter?  Most

 3   principally, because that fact alone is totally inconsistent,

 4   totally inconsistent with any alleged intent on the part of the

 5   affiant to mislead the Court about what Mr. Trump's defense

 6   theories were or what Mr. Trump was worried about or what

 7   Mr. Trump's position was on anything.

 8          And, by the way, it's not just attached; the search

 9   warrant actually references it in paragraph 52.  So it's overt,

10   the text of the warrant mentions it, it's included.  There is

11   no way that they could make their required showing about

12   intentional intent to deceive or reckless disregard in light of

13   that fact.

14          Second, as we discussed in our brief, and as you

15   pointed out, so I will stay here briefly, whatever

16   authorization he had while he was President -- it doesn't

17   matter when it's post-presidency.  Your Honor has already made

18   that point.  So I won't dwell there.  But that is among the

19   reasons why.  It's another way of saying this would not affect

20   probable cause at all.

21          A related point, before I forget, is that to the extent

22   Your Honor is assessing the showing, the lack of showing that

23   they have made about what the affiant's intention -- intent

24   was, the second reason the letter bears on that, apart from

25   just the fact that -- its inclusion in the packet, is that

1   neither of these defenses that the defendant now claims were

2   allegedly omitted was made in that letter.  The point being, if

3   we're talking about an intentional misrepresentation or

4   reckless disregard, there is every reason to believe that the

5   affiant had no reason to suspect that those things were

6   remotely relevant to what he was preparing the affidavit about.

7       So moving on to the third one.  The alleged

8   misrepresentation about the initiation date of the

9   investigation.  This won't take me long.  I'm not going to

10  digress into the briefing we've done elsewhere and the argument

11  we've had elsewhere about why that argument is totally wrong.

12      Regardless, it plainly does not affect probable cause

13  here, and they make no allegation that it does.  So it's false.

14  Even if it were true, it would not remotely affect probable

15  cause.  And that's all I'm going to say about that.

16      THE COURT:  Can you just develop that a bit more.  I

17  mean, the argument is that if it had been revealed in the

18  affidavit that the investigation really started in September,

19  that it would have called into -- called into question the

20  legality of the initial request for the documents.

21      And I'm summarizing.  But can you explain your view as

22  to why even accepting the date of the commencement of the

23  investigation, it wouldn't alter the probable cause calculus?

24      MR. HARBACH:  Well, sure.  But I would also like to

25  point out that -- what did the affiant swear to?  The affiant

1    swore to the date that NARA referred the matter to the

2    Department of Justice.

3         The argument that the defense has developed

4    post-indictment in the context of all sorts of motions,

5    this -- this conspiratorial theory that there was something

6    brewing behind the scenes at the Department is nothing that one

7    could have expected the agent to even be aware of at the time.

8         And so, the premise of your question assumes a

9    mischaracterization of what actually happened.  And, as I said,

10   it's false.

11        THE COURT:  Well --

12        MR. HARBACH:  It didn't happen that way --

13        THE COURT:  -- please try not to put words in my mouth.

14   All I'm saying is if we accept the contention of the defense

15   that the investigation happened well before the formal

16   referral, then why, still, would it or would it not make a

17   difference for the probable cause inquiry?  That's really the

18   nub of my question.

19        MR. HARBACH:  I understand.  And I -- I didn't mean to

20   try and put words in your mouth, Your Honor.  All I meant was

21   your question made the assumption that you're just making

22   now --

23        THE COURT:  Okay.  So assuming that, would it make a

24   difference to probable cause?

25        MR. HARBACH:  It would not, and the reason it would not

1   is because it doesn't remotely bear on any of the elements.

2   Had -- I hesitate to hypothesize about it because I'm not even

3   sure I can articulate the full scope of their theory.  But if

4   it is as simple as, the FBI was doing some investigation

5   related to this case before the NARA referral letter came over,

6   then I think, obviously, that would have nothing to do with

7   probable cause.  There is not much more I can say about that.

8           THE COURT:  Okay.  Then let's turn to any additional

9   arguments you wish to make on the purported omissions.

10          MR. HARBACH:  The last one is the -- the omission of

11  the definition of personal records in the affidavit.  A couple

12  of points I would like to make here is, A, it's nowhere in

13  their letter which the affiant attached to -- sorry, I didn't

14  mean to say "their."  It's nowhere in Mr. Trump's counsel's

15  letter which we attached -- which the affiant attached to the

16  affidavit.  And that proves the potentially more salient point

17  that Trump himself did not come up with this defense until

18  almost a year and a half later.  There is no way that the

19  affiant could have known, much less should have known at the

20  time he swore out the warrant, that this idea of the

21  Presidential Records Act operating in a way to authorize the

22  President to retain classification information, that is --

23  that's way outside any reasonable bounds for what we would

24  expect an affiant to know at that time.  More substantively, as

25  we have briefed and argued elsewhere, the PRA --

1           THE COURT:  Just curious, why are there references in

2    the affidavit to the Presidential Records Act at all?

3           MR. HARBACH:  It probably -- well, the answer is:  In

4    order to explain the background of why the National Archives

5    was interested in the return of boxes in the first place.

6    That's why.

7           THE COURT:  Okay.  Please continue.

8           MR. HARBACH:  Okay.  Thank you.

9           And my colleague also reminds me that another reason

10   it's in there is that among the statutes that was

11   charged -- correction -- that was offered as justification for

12   the search warrant is, 18 U.S.C. 2071, which is the retention

13   of government records.  So that's also -- it was also relevant

14   for that.  That, of course, was not charged in the indictment,

15   but that answers your question, I think, in part about why it

16   was included.

17          So I have already said a lot about their lack of

18   showing any mental state.  Their showing is pretty much

19   nonexistent.  So I'm not going to dwell there, except to

20   reiterate that this is their burden.  They don't get to wave

21   their hands and say, well, there is some things that should

22   have been in the -- in the affidavit, and so we need to get the

23   agent in here for a hearing so that we can explore what his

24   mental state was.  Wrong.

25          THE COURT:  Okay.  I think I have heard sufficient

1   argument on the Franks hearing.  Let's get to particularity,

2   please.

3        MR. HARBACH:  I'm happy to.  May I make one brief point

4   about staleness?

5        THE COURT:  Okay.

6        MR. HARBACH:  It's only something that -- that occurred

7   to me today as I was listening to Mr. Bove, because what I

8   heard -- for the first time, what I heard them say is that they

9   conceded that there was probable cause for the six areas that

10  were named in -- in the warrant affidavit.  If that -- in light

11  of that concession, it cannot be their claim that had the

12  things that were omitted been included, there would have been a

13  staleness problem.  If they're going to concede that there is

14  PC, even for just those six places, then it has to mean that

15  there is no staleness problem.  So our -- our position now is

16  that that concession ends that discussion.

17       THE COURT:  Okay.  Well, we will clarify with Mr. Bove

18  if that's the scope of his statement on that issue.  Okay.

19       MR. HARBACH:  And the last thing I will say on

20  staleness is that, to the extent it is even part of the

21  discussion, which it shouldn't be, paragraph 78 of the search

22  warrant specifically says:  Additionally, no witness has

23  indicated that boxes have left the premises since the provision

24  of the 15 boxes to NARA on January 17, 2022.

25            Our view is that that is plainly sufficient to

1    substantiate probable cause to believe that the boxes remained

2    on the property.  And that -- that's another reason

3    there's -- that's what I was going to argue first, before what

4    Mr. Bove said today.  So no staleness problem.

5            Turning to the validity of the warrant.  I will

6    start -- I will take them in A, B order, if that's okay with

7    Your Honor, starting with the place to be searched.

8            Now, with respect to A and B, there -- there is an

9    effort in the papers, and there was also an effort here today

10   to suggest that the manner of execution of the search somehow

11   bears on these two questions.  It does not for lots of reasons

12   I'm going to get into, but that's a point I want to make up

13   front.

14           Under the particularity heading, as so far as the

15   description of the property is concerned, he makes some

16   arguments about the -- the six places.  He argues that -- and

17   conceded this morning that there was PC to search the six

18   places that the affiant named in the warrant.  But he also

19   suggested wrongly that that should somehow limit the areas that

20   the agents were authorized to search.  It plainly doesn't.

21           In the first place, I think all of us in here have

22   encountered search warrants of a home or an apartment or even

23   a -- a business, where documents are only alleged to have

24   appeared in one room, and the warrant authorizes searching of

25   the entire property.  That's particularly appropriate here,

1   where, as Your Honor observed, A, it's a big property; B, the

2   items that the agents were looking for are papers, documents,

3   essentially, and are quite small.  And -- and, furthermore, the

4   agents, to the extent that the manner of execution of the

5   search is even relevant -- and it's not -- the agents didn't go

6   everywhere on the property.

7          Mr. Bove did acknowledge that the warrant on its face

8   did not allow agents to go into, for example, guest rooms where

9   there were other people staying at the club, or other places

10  that -- that Mr. Trump didn't have access to.

11         But Mr. Trump did have access to his wife's quarters,

12  to his son's quarters, and so there was nothing remotely

13  inappropriate about agents searching those places.  They were

14  plainly within the scope of the warrant.  And as Your Honor

15  pointed out --

16         THE COURT:  Was there any evidence to suggest that

17  documents with classified markings would have been located in

18  the former president's -- the bedroom of his child?

19         MR. HARBACH:  Well, there -- there was probable cause

20  to search because of the -- the two reasons I said.  A, that

21  the magistrate was amply within -- within his rights to

22  conclude that documents of the type that are covered by the

23  warrant could be located anywhere in the premises; and 2, the

24  warrant's limitation -- other limitation was about where

25  President Trump had access.  So President Trump plainly had

1    access to those two places.

2            The last thing I will add that I think gets to your

3    question, is there was some evidence that these boxes moved.

4    And so, to suggest that the --

5            THE COURT:  But was there any evidence to suggest that

6    the boxes moved to the child's room?

7            MR. HARBACH:  No.  No direct evidence of that, but --

8            THE COURT:  Any indirect evidence?

9            MR. HARBACH:  But -- only insofar as the boxes moved.

10   Can we say definitively every place the boxes moved?  I mean,

11   at one point the boxes were in a -- were in a shower in a

12   bathroom.

13           I mean, but -- but here is the point.  Your Honor has

14   already hit on this.  There was no rummaging anywhere, least of

15   all, in either of those two places.  The agents did

16   a -- a -- they carried out their duties professionally,

17   expeditiously.  And as Your Honor has already pointed out,

18   nothing was seized from either of those locations.  But it

19   would have been irresponsible for them not to search there,

20   especially when they -- they were plainly within the scope of

21   the warrant.

22           THE COURT:  In terms of where information with

23   classification markings was ultimately found, can you clarify?

24   I know there is -- there is a 302 that -- that lists out some

25   of that information.  But I just wanted to clarify.  Other

1    than -- other than the storage room?

2          MR. HARBACH:  And the -- and the President's office,

3    Former President's office.

4          THE COURT:  Those two locations?

5          MR. HARBACH:  That is correct.

6          Can I have a moment, please, to make sure I get this

7    right?

8          THE COURT:  Yes.

9          MR. HARBACH:  To answer the question that I think

10    Your Honor is getting at:  The storage room and the office

11    area; those are the two places.

12          But -- but what I want to bring the Court back to is

13    something that you've already hit on, which is -- the question

14    is whether the place to be searched is adequately described.

15          There is no question that it is.  And -- and that

16    should end the analysis for Part A.

17          Part B, whether the items to be seized are described

18    with sufficient particularity in Attachment B.  Now, this

19    proves the point that I just made a moment ago.  Mr. Bove's

20    argument began with the allegation that the manner of execution

21    of the search bears on this inquiry, and that's why we need to

22    have an evidentiary hearing.  So, again, I will just put a pin

23    in that for the moment, and I will come back to it, but that's

24    the framework that they're trying to suggest to the Court.

25          THE COURT:  Before you get there, in terms of the

1    affidavit, where -- can you point me to any paragraph that

2    would have supplied probable cause to believe that information

3    with classified markings would have been contained anywhere

4    other than the storage room and the office?

5            MR. HARBACH:  If -- if Your Honor's question is, was

6    there a particularized discussion about probable cause existing

7    in other places within Mar-a-Lago --

8            THE COURT:  That's what I'm -- yes.  I'm hoping you can

9    provide some actual paragraph numbers.

10           MR. HARBACH:  Well, there isn't.  There isn't a

11   specific articulation of other places at Mar-a-Lago where there

12   might be documents, if I'm understanding Your Honor's question

13   correctly.

14           What there -- what there is evidence of, is that there

15   are -- there is reason to believe that at Mar-a-Lago there are

16   documents.  And there is also reason to believe that boxes of

17   documents have moved at the President's direction -- again,

18   just based on the allegations in the warrant -- and those two

19   things together amply justified probable cause to search the

20   entire property.

21           THE COURT:  Regardless of whether there is any evidence

22   to suggest that the items are in locations within the

23   property --

24           MR. HARBACH:  Un --

25           THE COURT:  -- is your submission?

 1          MR. HARBACH:  I'm sorry, Your Honor.

 2          Under the principles that I just stated, yes.  And I

 3    will also mention that -- well, no, I'm going to stop there.

 4    Yes is the answer.

 5          THE COURT:  Okay.  All right.  Then I think you wanted

 6    to mention Attachment B?

 7          MR. HARBACH:  Yes.

 8          So I would like to start with just the -- the list of

 9    items and whether it's adequate.

10          Mr. Bove's first argument spent some time talking

11    about -- these are -- these are arcane statutes that an agent

12    would have no idea what they mean, and, therefore, just listing

13    the statutes isn't enough.  Your Honor asked a question about

14    whether he had any case saying that that was improper.  We

15    actually have an Eleventh Circuit case on the other side.  And

16    my colleagues and I have joked about whether I'm going to

17    pronounce this the right way, but I'm going to say "Wuagneux."

18    And the record won't reflect that, but it's W-U-A-G-N-E-U-X.

19          THE COURT:  Is this in your opposition?

20          MR. HARBACH:  Oh, yes.

21          THE COURT:  Okay.  Thank you.

22          MR. HARBACH:  And in this case, I will direct the Court

23    to -- the citation is 683 F.2d 1343; the pincite is 1350.  Now,

24    in this opinion, the Court was entertaining a particularity

25    challenge to a search warrant.  And they make a point that is

1   salient here by way of example.

2          At the beginning of headnote 6 -- well, take that back.

3          In footnote 5, which is also at page 1350, it lays out

4   the list of things that that warrant authorized to be seized.

5          The -- the last two categories, which, in the opinion

6   are labeled 10 and 11, Number 10 is:  Records of any financial

7   transactions between labor union trust funds and Sage

8   Corporation or its subsidiaries which are evidence of

9   violations of 26 U.S.C. 7201, 7203, and 7206(1), 18 U.S.C. 664,

10  18 U.S.C. 1954, 1962, and 29 U.S.C. 501.

11         And then Item 11 is:  Property that constitutes

12  evidence of the above-enumerated offenses, fruits of the crimes

13  named above, and property which is or has been used to commit

14  the crimes enumerated herein.

15         The Court states at the top of headnote 6:  At the

16  outset, we find Categories 2 through 11 unobjectionable under

17  the principles just reviewed, which are the principles that

18  govern the particularity inquiry.

19         I offer this to the Court as an example where the

20  Eleventh Circuit has plainly sanctioned just listing statutes

21  and authorizing agents to seize evidence that it -- seize items

22  that are evidence or fruits thereof.

23         THE COURT:  I mean, I think you're generally right.

24  And that's totally correct.  I think the submission is that

25  because 793(e) is uniquely maybe more challenging to

1    understand, given the ambiguity and some of the elements, that

2    in this particular context, more description would have been

3    necessary or at least preferable.

4         MR. HARBACH:  I understand the argument.  And our

5    answer is that -- I mean, I confess I did not look up all of

6    these statutes, but any one of them could be somewhat esoteric

7    and difficult to understand for an agent.  And to make

8    Your Honor's point or a variation of the point I think you were

9    suggesting when you were questioning Mr. Bove, it can't be that

10   a search warrant is required to include, you know, a legal

11   brief or a mini dissertation about the elements of offenses in

12   order to make a warrant sufficiently particular.

13        I will also point out that in the -- in the Wuagneux

14   opinion, the Court stated that it was also reasonable -- this

15   is at page 1353:  It was also reasonable for the agents to move

16   intact files, books, and folders when a particular document

17   within the files was identified as falling within the scope of

18   the warrant.

19        So this gets to the point about seizure of the boxes

20   and the things around --

21        THE COURT:  Uh-huh.

22        MR. HARBACH:  -- the classification documents and

23   presidential records.  And our view is that if -- if it was

24   proper in this case, Wuagneux, for agents to take surrounding

25   files and folders, even when that wasn't included in the

1   warrant, that it can't be when agents are in possession of a

2   warrant that specifically authorizes surrounding materials to

3   be seized, that -- that the warrant -- that the scope of the

4   warrant was overly broad.

5           I will also direct the Court on this score -- the score

6   of particularity in general, to the Eleventh Circuit --

7           THE COURT:  Just curious -- you talked about this, sort

8   of, the periphery.  Is that -- what you are referring to as

9   Attachment B, Subsection A?

10          MR. HARBACH:  Bear with me one second.  Yes.  Yes,

11  the --

12          THE COURT:  So that refers to any other

13  container/boxes.  And so I'm wondering, for example, something

14  like a medical record, why would that have been seized?

15          MR. HARBACH:  Well, I'm glad -- I'm glad Your Honor

16  asked that question.  It's a fair question.

17          In part, because the warrant -- the warrant authorized

18  the seizure of those -- of those containers.  That's the answer

19  to your question.  And if those containers happen to include

20  materials that were not the target of the warrant, i.e.,

21  governmental records, presidential records or documents with

22  classification markings, that -- that doesn't render

23  their -- their seizure any less appropriate.

24          As Your Honor will -- will learn at some point, the

25  boxes contained all sorts of things besides those two

1   categories of items.  There was nothing inappropriate about the

2   seizure of them.  And I will also point out that in connection

3   with the -- this is a brief point.  In connection with the

4   filter team's review, materials like medical records and some

5   other items that I confess I don't have off the top of my head,

6   were returned to the defendant, as were the defendant's -- as

7   was the defendant's passport, I think, immediately after the

8   search.

9          THE COURT:  Okay.  All right.  But the catch-all

10  language is located there in Subsection A?

11         MR. HARBACH:  Yes, Your Honor.

12         THE COURT:  Okay.  All right.  Anything further?

13         MR. HARBACH:  Two -- two more points, and I'm -- I'm

14  going to try to do them efficiently.

15         The other case that I think it would be instructive for

16  Your Honor to -- to digest thoroughly is

17  United States v. Santarelli.

18         THE COURT:  If it's cited in your papers, I will digest

19  it.  But I want to move along, so -- so reading from the

20  decision, I think, can be done at another time.

21         MR. HARBACH:  Very good.

22         THE COURT:  If you want to distill the main point, I'm

23  happy to hear it.

24         MR. HARBACH:  Well, the main point is that it is -- it

25  is yet another case where, you know, broad language was used to

1    describe what needed to be seized.  It's another example of,

2    you know, all property constituting evidence of certain crimes.

3          There is also language in there that -- that also is

4    mentioned in Wuagneux about the flexibility that agents -- that

5    there is a certain amount of flexibility, depending on the

6    case, and so forth; that agents -- that -- such that the

7    description -- this is quoting from the Eleventh Circuit in

8    Wuagneux:  A description of the property will be acceptable if

9    it is as specific as the circumstances and nature of activity

10   under investigation permit.  Santarelli is of a piece with

11   Wuagneux for both those propositions.  And I will move on.

12         The last thing I would like to talk about is the

13   applicability of Leon here, and the extent to which an

14   evidentiary hearing under Leon is required.  In the first

15   place, again, just for the record, our position is that the

16   warrant was more than amply particular, both in terms of the

17   description of the property to be searched and the items to be

18   seized.  But if the Court were to conclude otherwise, for

19   example, that it was overly broad in terms of the items to be

20   seized, just as an example, then the -- the question is whether

21   the warrant was so facially deficient that the executing

22   officers cannot reasonably presume it to be valid.

23         Again -- and this is the -- this is the main place

24   where they do it.  Mr. Trump's argument here is that how the

25   FBI executed the search is important because they did it in an

1   egregious fashion.

2          A couple of comments about that.  One, it's false.  And

3   I'm going to go through, quickly, their specific allegations

4   about egregiousness.  But there was nothing egregious about how

5   the search was conducted at all.  Moreover, none of that has

6   anything to do with the appropriate test here, which is the one

7   I just read a moment ago from Leon.

8          So, quickly, the four things they say.  We've already

9   talked about the first one, the search of the -- of the

10  bedrooms of Mrs. Trump and the Trumps' son.  That was within

11  the scope of the warrant; there was nothing egregious about it.

12          Second, they allege that the agents had no reason to

13  bring firearms into Mar-a-Lago and suggested that that was

14  somehow egregious.  These are FBI agents who carry firearms as

15  a matter of course.  It's how they're trained.  And their

16  possessing firearms, carrying out duties and executing a

17  search, is not remotely egregious; it's -- it's part of

18  protocol.

19          Three, they allege that -- they make this point about

20  improperly seized items, like medical records and so forth.

21  This is not unusual.  It happens all the time.  And as I said a

22  moment ago, the boxes and their contents, apart from the

23  documents marked classified, and the government and

24  presidential papers were authorized to be seized by the

25  warrant.  There was nothing remotely egregious about the fact

1    that there were other types of documents in those boxes.

2            And then finally -- and this is where I think they have

3    spent the most ink trying to justify a hearing -- is this

4    question about whether there was politically motivated animus

5    and their suggestion that that justifies additional discovery.

6            Excuse me.

7            That is wrong -- I'm sorry, Your Honor.

8            That is wrong for the same reason that the

9    egregiousness of the search is out of place here.

10           I will direct Your Honor to the Chief Justice's opinion

11   in Herring which Mr. Bove mentioned, but he did not mention

12   what we think is the most important part of it, which is that

13   the pertinent analysis of deterrence and culpability that he

14   mentioned is an objective one.

15           I will also specifically point out to the Court a

16   little bit of language from that opinion.  At page 701, the

17   Chief Justice writes:  We, perhaps confusingly, have called

18   this objectively reasonable reliance good faith.

19           I will come in reading the entire opinion to

20   Your Honor, because it clarifies lots of things, not least what

21   the appropriate standard is.  But one of the key pages is

22   page 703 of the opinion, and that's from the Supreme Court

23   Reporter, 129 S.Ct. 695 at 703, in which it says:  The

24   pertinent analysis of deterrence and culpability is objective,

25   not an inquiry into the subjective awareness of arresting

1    officers.

2          And then they say:  We have already held that our good

3    faith inquiry is confined to the objectively ascertainable

4    question whether a reasonably well-trained officer would have

5    known that the search was illegal in light of all of the

6    circumstances.

7          And they do say:  These circumstances frequently

8    include a particular officer's knowledge and experience, but

9    that does not make the test any more subjective than the one

10   for probable cause, which looks to an officer's knowledge and

11   experience but not his subjective intent.

12          So why does all that matter?  All that matters because

13   there is nothing about any of the other extraneous allegations

14   about how the search was executed, or the allegations of

15   official animus.  None of that bears on the question for the

16   Court under the rubric in which they have challenged the

17   warrant, which is the particularity of the language.

18          THE COURT:  All right.  Thank you very much.

19          Rebuttal.

20          MR. HARBACH:  May I --

21          THE COURT:  I'm all set.  Thank you, Mr. Harbach.

22          You will have a few minutes, Mr. Bove, and then we will

23   be in recess.

24          MR. BOVE:  Thank you, Judge.

25          Just to clarify, the six bulleted locations, we don't

1    concede that there was probable cause for those either.  My

2    point is just that, with respect to those locations, there is

3    at least references to them in the warrant application.  That's

4    all.

5           THE COURT:  Okay.

6           MR. BOVE:  That's all that I meant.

7           Point two, the Wuagneux case, Your Honor.  The

8    Eleventh Circuit there specifically noted that the warrant

9    referenced company names, individuals, and financial

10   transactions.  You will see that when you look at -- at

11   footnote 5.

12          That is also the case that is very relevant to the

13   spoliation motion.  Because there was language there that

14   authorized the agents to seize something analogous to entire

15   boxes.  You will see that in that case, as should be the case

16   here, there was a hearing held regarding the execution of the

17   search, and that the agents testified at that hearing that they

18   did keep the boxes intact, as should have happened here.

19          Point three.  In several respects, Mr. Harbach just

20   testified from this podium about the manner in which the search

21   was executed.  That's why a hearing is necessary here.

22   Statements like:  The agents didn't go everywhere on the

23   property.

24          Says who?

25          There was no rummaging, says Mr. Harbach.

1          Agents carried out their duties professionally,

2     expeditiously.

3          Respectfully, Judge, we disagree.  There was nothing

4     egregious about how this search was conducted.  The fact that

5     that representation has been made to you, and the fact that we

6     have put forth evidence that is in tension with it requires a

7     hearing.

8          Point four that I would like to make:  There was some

9     questions by Your Honor about the public testimony from

10    the -- the FBI assistant director in charge, whose testimony is

11    cited at footnote 3 of our brief.  And I think to summarize,

12    Mr. Harbach said, again, in substance:  I'm not sure what his

13    communications say.

14         THE COURT:  Well, I think the point is that it's

15    just -- really, it's neither here nor there.  That at the end

16    of the day, whether a superior or a colleague felt differently

17    or offered a different alternative really doesn't change the

18    fact that this affiant felt otherwise and provided a lengthy

19    affidavit in support of the warrant.

20         MR. BOVE:  I understand that Your Honor might reach

21    that conclusion with respect to Franks, but what I wanted to

22    raise was the discovery point.  The fact that these

23    prosecutors, for months, have told you that they are in

24    compliance with the Justice Manual and their discovery

25    obligations --

1          THE COURT:  Can we just stay focused on this motion,

2    please?

3          MR. BOVE:  I am focused, though, Judge, because if

4    there is evidence -- and he testified that there were

5    communications about division in the ranks in the FBI about

6    whether and how this search could be conducted, that's

7    extremely relevant to the factual disputes about this -- that

8    relate to this motion.

9          Finally, in the same way that they cannot make

10   straightforward representations to you about what actually

11   happened in those communications, they cannot make

12   straightforward representations to you about whether and to

13   what extent the communications between these agents reflect

14   animus.  If that happened, Judge, that is relevant to the good

15   faith exception.  It would be relevant to any agent who

16   testifies here.  It would be Giglio material for those agents.

17         So the fact that there is some case law and some

18   tension about whether these standards are objective or not, you

19   don't have, right now, a clear record.  You don't have reliable

20   representations from these prosecutors that we have what we're

21   entitled to have.

22         THE COURT:  Your challenge is a particularity

23   challenge.  And the -- so I look at the face of the affidavit,

24   and I determine if it's particular enough.  And it seems like

25   it is, based on the case law that's been submitted.  I have a

1    hard time seeing what more language needed to be included in

2    either Attachment A or B.

3         MR. BOVE:  Well, I think when you compare the

4    attachment to the attachment that's quoted in the case that

5    they gave you, you will see that there was far more factual

6    detail in that attachment than the one here.  My point bears on

7    good faith, though, and that that's an exception that they are

8    invoking, and that they should -- they should not be able to

9    make these representations to you, Judge, without being able to

10   say, we've looked at these communications and run them to

11   ground, and we know what happened here with the agents that

12   we're talking about.

13        THE COURT:  Okay.  Thank you.

14        MR. BOVE:  We appreciate the time today, Judge, and

15   over the last three days.  Thank you.

16        THE COURT:  All right.

17        MR. HARBACH:  Your Honor, may I please respond briefly?

18        THE COURT:  Okay, Mr. Harbach, we have had a lengthy

19   hearing.  I will give you 30 seconds, please.

20        MR. HARBACH:  Thank you, Your Honor.

21        Two things.  It's not just some case law.  It's an

22   opinion of the Supreme Court authored by a Chief Justice of the

23   United States --

24        THE COURT:  I don't want to get into this sort of tit

25   for tat thing.  I understand there is an objective test, and I

1    think I'm satisfied.

2         MR. HARBACH:  Very good.

3         THE COURT:  Anything further?

4         MR. HARBACH:  Yes.  The last thing I would like to say

5    is that this is part -- this -- this attempt to -- to hijack

6    the hearing and turn it into --

7         THE COURT:  There is no hijacking going on.  It's about

8    to end, so --

9         MR. HARBACH:  There was an attempt to, Judge.

10        THE COURT:  No, no, no.

11        Do you have any legal authority you wish to raise or a

12   particular factual point you want to make?

13        MR. HARBACH:  I -- I would like to make a factual

14   point --

15        THE COURT:  Okay.

16        MR. HARBACH:  -- about the tactics of the defense.  And

17   I will be brief.

18        THE COURT:  What does it concern?

19        MR. HARBACH:  It concerns the -- the defense's repeated

20   attempts to use hearings like this to import allegations that

21   have nothing to do with what is before the Court.

22        THE COURT:  All right.  Thank you.  I will be

23   concluding --

24        MR. HARBACH:  It's not fair --

25        THE COURT:  Thank you.  I will be concluding this

1    hearing.  I appreciate everybody's assistance.  The motion is

2    taken under advisement.  Have a nice rest of your week.

3         (These proceedings concluded at 2:38 p.m.)

```
1                    C E R T I F I C A T E

2

3

4    I hereby certify that the foregoing is an accurate

5    transcription of the proceedings in the above-entitled matter.

6

7
     DATE:  06-26-2024          /s/Laura Melton
8                               LAURA E. MELTON, RMR, CRR, FPR
                                Official Court Reporter
9                               United States District Court
                                Southern District of Florida
10                              Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**'**

'22 [1] - 1:27:14

---

**1**

1 [3] - 1:11:15 , 1:18:23 , 1:19:19
10 [2] - 1:52:6
11 [3] - 1:52:6 , 1:52:11 , 1:52:16
1265 [1] - 1:5:10
129 [1] - 1:58:23
1343 [1] - 1:51:23
1350 [2] - 1:51:23 , 1:52:3
1353 [1] - 1:53:15
15 [7] - 1:23:10 , 1:23:15 , 1:24:12 , 1:24:17 , 1:28:7 , 1:45:24
17 [1] - 1:45:24
17-acre [1] - 1:15:9
18 [3] - 1:44:12 , 1:52:9 , 1:52:10
1954 [1] - 1:52:10
1962 [1] - 1:52:10
1972 [1] - 1:8:9

---

**2**

2 [3] - 1:9:17 , 1:47:23 , 1:52:16
2021 [1] - 1:24:4
2022 [1] - 1:45:24
2023 [1] - 1:18:25
207 [2] - 1:7:6 , 1:11:15
2071 [3] - 1:8:8 , 1:8:17 , 1:44:12
21 [1] - 1:11:14
2201 [1] - 1:13:20
23 [2] - 1:11:15 , 1:29:19
23-80101 [1] - 1:3:3
26 [1] - 1:52:9
26-84 [1] - 1:35:14
29 [1] - 1:52:10
2:38 [1] - 1:65:3

---

**3**

3 [3] - 1:14:19 , 1:15:18 , 1:61:11
30 [1] - 1:63:19

---

302 [1] - 1:48:24
33 [1] - 1:15:10
35 [1] - 1:8:9

---

**4**

44 [2] - 1:11:16 , 1:13:20
45 [1] - 1:14:23

---

**5**

5 [2] - 1:52:3 , 1:60:11
501 [1] - 1:52:10
52 [1] - 1:40:9
566 [1] - 1:4:2
58 [1] - 1:15:9

---

**6**

6 [2] - 1:52:2 , 1:52:15
605 [1] - 1:4:15
625 [1] - 1:5:10
664 [1] - 1:52:9
683 [1] - 1:51:23
695 [1] - 1:58:23

---

**7**

701 [1] - 1:58:16
703 [2] - 1:58:22 , 1:58:23
7201 [1] - 1:52:9
7203 [1] - 1:52:9
7206(1 [1] - 1:52:9
75 [1] - 1:27:17
76 [1] - 1:27:17
78 [1] - 1:45:21
793 [6] - 1:7:6 , 1:8:7 , 1:9:4 , 1:9:12 , 1:20:19 , 1:22:4
793(e [2] - 1:30:9 , 1:52:25

---

**8**

80 [8] - 1:19:13 , 1:20:16 , 1:21:5 , 1:21:8 , 1:27:7 , 1:36:20 , 1:36:24 , 1:37:4
8th [1] - 1:37:22

---

**A**

able [3] - 1:25:25 , 1:63:8 , 1:63:9

above-enumerated [1] - 1:52:12
absence [1] - 1:12:23
absent [2] - 1:30:10 , 1:35:5
accept [1] - 1:42:14
acceptable [2] - 1:4:19 , 1:56:8
accepting [2] - 1:26:6 , 1:41:22
access [4] - 1:47:10 , 1:47:11 , 1:47:25 , 1:48:1
accompanied [1] - 1:35:21
accounted [1] - 1:29:17
accounting [1] - 1:5:11
accurate [1] - 1:19:20
acknowledge [1] - 1:47:7
acknowledging [1] - 1:25:2
Act [6] - 1:11:17 , 1:23:8 , 1:24:23 , 1:25:16 , 1:43:21 , 1:44:2
acted [1] - 1:28:24
activity [1] - 1:56:9
actual [2] - 1:37:3 , 1:37:8 , 1:50:9
add [1] - 1:48:2
added [3] - 1:21:24 , 1:23:24 , 1:27:6
adding [1] - 1:22:8
addition [2] - 1:8:3 , 1:26:4
additional [3] - 1:23:21 , 1:43:8 , 1:58:5
additionally [1] - 1:45:22
address [2] - 1:4:20 , 1:4:25
adequate [2] - 1:9:3 , 1:51:9
adequately [1] - 1:49:14
ADIC [3] - 1:19:1 , 1:20:6 , 1:28:4
adjacent [1] - 1:31:9
admissions [1] - 1:28:2
advisement [1] - 1:65:2
affect [3] - 1:40:19 , 1:41:12 , 1:41:14
affected [1] - 1:18:15
affiant [16] - 1:34:23 , 1:34:24 , 1:36:1 , 1:37:14 ,

1:38:2 , 1:39:15 , 1:40:5 , 1:41:5 , 1:41:25 , 1:43:13 , 1:43:15 , 1:43:19 , 1:43:24 , 1:46:18 , 1:61:18
affiant's [4] - 1:20:6 , 1:36:14 , 1:37:20 , 1:40:23
affiants [1] - 1:19:14
affidavit [30] - 1:4:10 , 1:11:25 , 1:18:17 , 1:19:10 , 1:20:15 , 1:20:22 , 1:21:4 , 1:22:9 , 1:24:6 , 1:24:16 , 1:25:18 , 1:25:23 , 1:30:24 , 1:31:2 , 1:31:19 , 1:37:4 , 1:37:12 , 1:38:2 , 1:38:14 , 1:38:15 , 1:41:6 , 1:41:18 , 1:43:11 , 1:43:16 , 1:44:2 , 1:44:22 , 1:45:10 , 1:50:1 , 1:61:19 , 1:62:23
afield [1] - 1:30:24
afternoon [6] - 1:3:2 , 1:3:8 , 1:3:13 , 1:3:21 , 1:34:5 , 1:34:6
agent [10] - 1:9:20 , 1:18:17 , 1:19:24 , 1:20:7 , 1:33:1 , 1:42:7 , 1:44:23 , 1:51:11 , 1:53:7 , 1:62:15
agents [65] - 1:5:8 , 1:5:15 , 1:6:1 , 1:6:4 , 1:6:14 , 1:7:10 , 1:7:20 , 1:8:22 , 1:9:19 , 1:9:22 , 1:10:7 , 1:10:12 , 1:10:23 , 1:11:3 , 1:11:22 , 1:11:24 , 1:12:5 , 1:12:16 , 1:13:3 , 1:13:8 , 1:13:14 , 1:13:17 , 1:13:22 , 1:14:4 , 1:15:22 , 1:16:15 , 1:16:16 , 1:16:22 , 1:17:17 , 1:17:21 , 1:18:6 , 1:18:16 , 1:25:5 , 1:25:9 , 1:26:2 , 1:26:13 , 1:28:24 , 1:29:25 , 1:30:2 , 1:30:16 , 1:30:17 , 1:30:20 , 1:33:3 , 1:46:20 , 1:47:2 , 1:47:4 , 1:47:5 , 1:47:8 , 1:47:13 , 1:48:15 , 1:52:21 , 1:53:15 , 1:53:24 , 1:54:1 , 1:56:4 , 1:56:6 , 1:57:12 , 1:57:14 , 1:60:14 , 1:60:17 , 1:60:22 , 1:61:1 , 1:62:13 , 1:62:16 , 1:63:11
ago [5] - 1:3:24 , 1:37:5 , 1:49:19 , 1:57:7 , 1:57:22
agree [3] - 1:17:22 , 1:22:19 , 1:37:13
allegation [4] - 1:36:15 , 1:36:20 , 1:41:13 , 1:49:20
allegations [9] - 1:22:22 , 1:35:19 , 1:35:20 , 1:37:11 , 1:50:18 , 1:57:3 ,

1:59:13_, 1:59:14_, 1:64:20

allege [3]_ - 1:20:23_, 1:57:12_, 1:57:19

alleged [11]_ - 1:4:8_, 1:4:10_, 1:21:9_, 1:22:3_, 1:34:14_, 1:38:1_, 1:39:4_, 1:39:10_, 1:40:4_, 1:41:7_, 1:46:23

allegedly [2]_ - 1:21:9_, 1:41:2

alleging [1]_ - 1:36:11

allow [2]_ - 1:13:3, 1:47:8

almost [1]_ - 1:43:18

alone [1]_ - 1:40:3

alter [1]_ - 1:41:23

alternative [3]_ - 1:19:11 _, 1:19:24_, 1:61:17

ambiguity [1]_ - 1:53:1

ambiguous [1]_ - 1:11:20

Amendment [10]_ - 1:4:11_, 1:4:22_, 1:5:4_, 1:7:25_, 1:8:21_, 1:11:7_, 1:16:11_, 1:16:16_, 1:28:25 _, 1:31:12

America [1]_ - 1:3:3

amount [2]_ - 1:15:21_, 1:56:5

amply [3]_ - 1:47:21_, 1:50:19_, 1:56:16

analogous [1]_ - 1:60:14

analysis [8]_ - 1:9:22_, 1:19:20_, 1:27:3_, 1:29:2_, 1:32:10_, 1:49:16_, 1:58:13 _, 1:58:24

animus [3]_ - 1:58:4_, 1:59:15_, 1:62:14

answer [6]_ - 1:37:23_, 1:44:3_, 1:49:9_, 1:51:4_, 1:53:5_, 1:54:18

answers [1]_ - 1:44:15

anteroom [2]_ - 1:14:20_, 1:14:22

anywheres [1]_ - 1:26:13

apart [2]_ - 1:40:24_, 1:57:22

apartment [2]_ - 1:15:8_, 1:46:22

appearances [1]_ - 1:3:6

appeared [1]_ - 1:46:24

applicability [1]_ - 1:56:13

application [29]_ - 1:6:7_, 1:8:5_, 1:8:19_, 1:9:17_, 1:11:13_, 1:13:6_, 1:13:7_,

1:13:23_, 1:14:17_, 1:15:1_, 1:15:16_, 1:16:13_, 1:16:20 _, 1:19:14_, 1:19:22_, 1:21:22_, 1:23:4_, 1:23:9_, 1:24:13_, 1:27:18_, 1:27:19 _, 1:27:22_, 1:28:8_, 1:29:21 _, 1:33:21_, 1:39:14_, 1:40:1 _, 1:60:3

apply [5]_ - 1:13:22_, 1:28:19_, 1:30:2_, 1:32:5_, 1:33:25

applying [2]_ - 1:25:11_, 1:32:15

appreciate [2]_ - 1:63:14 _, 1:65:1

appropriate [6]_ - 1:9:6_, 1:9:20_, 1:46:25_, 1:54:23_, 1:57:6_, 1:58:21

appropriately [2]_ - 1:9:6 _, 1:29:17

arcane [1]_ - 1:51:11

Archives [1]_ - 1:44:4

area [3]_ - 1:15:22_, 1:31:23_, 1:49:11

areas [4]_ - 1:15:14_, 1:16:21_, 1:45:9_, 1:46:19

arguably [1]_ - 1:13:5

argue [1]_ - 1:46:3

argued [1]_ - 1:43:25

argues [1]_ - 1:46:16

arguing [2]_ - 1:34:14_, 1:38:23

argument [30]_ - 1:4:3_, 1:6:2_, 1:7:1_, 1:8:19_, 1:10:4_, 1:10:5_, 1:11:5_, 1:18:5_, 1:23:1_, 1:23:2_, 1:24:9_, 1:24:21_, 1:24:22_, 1:26:9_, 1:26:15_, 1:27:12_, 1:30:13_, 1:30:14_, 1:31:16 _, 1:34:13_, 1:36:23_, 1:41:10_, 1:41:11_, 1:41:17 _, 1:42:3_, 1:45:1_, 1:49:20_, 1:51:10_, 1:53:4_, 1:56:24

arguments [9]_ - 1:4:7_, 1:4:10_, 1:11:21_, 1:26:24_, 1:27:1_, 1:27:8_, 1:30:23_, 1:43:9_, 1:46:16

arise [2]_ - 1:4:13_, 1:10:3

arresting [1]_ - 1:58:25

articulate [1]_ - 1:43:3

articulated [1]_ - 1:39:16

articulately [1]_ - 1:30:18

articulation [1]_ - 1:50:11

ascertainable [1] - 1:59:3

aspects [1]_ - 1:4:6

assessing [2]_ - 1:32:16_, 1:40:22

assistance [1]_ - 1:65:1

assistant [1]_ - 1:61:10

associated [1]_ - 1:13:12

assume [1]_ - 1:28:21

assumes [1]_ - 1:42:8

assuming [1]_ - 1:42:23

assumption [1]_ - 1:42:21

attached [4]_ - 1:40:8_, 1:43:13_, 1:43:15

Attachment [29]_ - 1:4:21 _, 1:4:23_, 1:5:2_, 1:5:3_, 1:5:8_, 1:5:18_, 1:5:20_, 1:6:2_, 1:6:6_, 1:6:13_, 1:6:23_, 1:10:22_, 1:14:7_, 1:14:9_, 1:14:13_, 1:15:15_, 1:15:20_, 1:16:5_, 1:16:14_, 1:16:19_, 1:17:2_, 1:18:9_, 1:49:18_, 1:51:6_, 1:54:9_, 1:63:2

attachment [8]_ - 1:12:5_, 1:14:6_, 1:14:15_, 1:15:8_, 1:31:7_, 1:63:4_, 1:63:6

attack [1]_ - 1:35:17

attempt [2]_ - 1:64:5, 1:64:9

attempts [1]_ - 1:64:20

attorneys [1]_ - 1:31:25

August [2]_ - 1:27:16_, 1:37:22

authored [1]_ - 1:63:22

authority [4]_ - 1:8:13_, 1:24:10_, 1:39:18_, 1:64:11

authorization [3]_ - 1:6:3 _, 1:29:6_, 1:40:16

authorize [1]_ - 1:43:21

authorized [9]_ - 1:5:18_, 1:14:4_, 1:14:25_, 1:26:2_, 1:46:20_, 1:52:4_, 1:54:17_, 1:57:24_, 1:60:14

authorizes [6]_ - 1:14:7_, 1:16:19_, 1:26:11_, 1:31:11 _, 1:46:24_, 1:54:2

authorizing [1]_ - 1:52:21

available [1]_ - 1:15:23

avenue [1]_ - 1:19:25

aware [3]_ - 1:26:12_, 1:33:9_, 1:42:7

awareness [1]_ - 1:58:25

**B**

background [2]_ - 1:4:16 _, 1:44:4

Ballroom [1]_ - 1:14:19

based [5]_ - 1:4:8_, 1:13:22_, 1:19:18_, 1:50:18 _, 1:62:25

basic [3]_ - 1:4:16_, 1:12:15_, 1:31:12

basis [1]_ - 1:24:19

bathroom [1]_ - 1:48:12

bathrooms [1]_ - 1:15:10

bear [10]_ - 1:16:1_, 1:17:16_, 1:21:20_, 1:22:24 _, 1:28:5_, 1:28:6_, 1:32:2_, 1:33:21_, 1:43:1_, 1:54:10

bearing [4]_ - 1:9:8_, 1:18:2_, 1:19:3_, 1:26:14

bears [11]_ - 1:10:10_, 1:17:20_, 1:19:20_, 1:22:19 _, 1:23:14_, 1:35:5_, 1:40:24 _, 1:46:11_, 1:49:21_, 1:59:15_, 1:63:6

bedroom [3]_ - 1:16:23_, 1:16:24_, 1:47:18

bedrooms [2]_ - 1:15:10_, 1:57:10

beforehand [1]_ - 1:12:11

began [1]_ - 1:49:20

begin [1]_ - 1:34:8

beginning [1]_ - 1:52:2

behalf [3]_ - 1:3:10_, 1:3:18_, 1:3:22

behavior [1]_ - 1:33:8

behind [3]_ - 1:20:9_, 1:28:1_, 1:42:6

believes [1]_ - 1:19:24

better [1]_ - 1:19:25

between [10]_ - 1:23:13_, 1:25:2_, 1:28:3_, 1:32:13_, 1:32:20_, 1:37:11_, 1:38:1_, 1:38:3_, 1:52:7_, 1:62:13

beyond [1]_ - 1:28:21

big [1]_ - 1:47:1

bike [1]_ - 1:18:4

bit [5]_ - 1:9:1_, 1:34:12_, 1:36:8_, 1:41:16_, 1:58:16

Blanche [1]_ - 1:3:14

block [1]_ - 1:11:15

body [1]_ - 1:11:2

books [1]_ - 1:53:16

bore [1]_ - 1:26:5

boss [1] – 1:20:7

bottom [1] – 1:24:15

bound [1] – 1:26:20

bounds [1] – 1:43:23

Bove [13] – 1:3:12, 1:3:13, 1:4:4, 1:4:16, 1:35:22, 1:36:8, 1:45:7, 1:45:17, 1:46:4, 1:47:7, 1:53:9, 1:58:11, 1:59:22

BOVE [65] – 1:3:13, 1:4:5, 1:4:18, 1:5:3, 1:5:24, 1:6:17, 1:6:25, 1:7:5, 1:7:8, 1:7:16, 1:7:23, 1:8:11, 1:8:16, 1:9:4, 1:9:13, 1:10:4, 1:10:18, 1:11:9, 1:12:1, 1:12:7, 1:12:9, 1:12:18, 1:12:21, 1:14:12, 1:14:15, 1:15:13, 1:17:7, 1:17:11, 1:17:24, 1:18:10, 1:18:12, 1:19:13, 1:20:1, 1:20:6, 1:20:16, 1:20:19, 1:21:6, 1:21:11, 1:21:14, 1:22:2, 1:22:7, 1:22:13, 1:22:19, 1:23:2, 1:24:1, 1:24:9, 1:24:17, 1:24:22, 1:25:19, 1:25:24, 1:26:9, 1:26:19, 1:27:1, 1:28:15, 1:28:19, 1:30:12, 1:31:5, 1:32:8, 1:33:11, 1:59:24, 1:60:6, 1:61:20, 1:62:3, 1:63:3, 1:63:14

Bove's [3] – 1:34:13, 1:49:19, 1:51:10

box [1] – 1:31:8

boxes [27] – 1:23:10, 1:23:15, 1:23:16, 1:24:12, 1:24:17, 1:27:14, 1:27:20, 1:28:7, 1:29:8, 1:33:19, 1:44:5, 1:45:23, 1:45:24, 1:46:1, 1:48:3, 1:48:6, 1:48:9, 1:48:10, 1:48:11, 1:50:16, 1:53:19, 1:54:25, 1:57:22, 1:58:1, 1:60:15, 1:60:18

Bratt [2] – 1:3:7, 1:3:8

BRATT [1] – 1:3:8

brewing [1] – 1:42:6

brief [11] – 1:10:1, 1:14:19, 1:15:18, 1:30:10, 1:36:7, 1:40:14, 1:45:3, 1:53:11, 1:55:3, 1:61:11, 1:64:17

briefed [4] – 1:8:15, 1:29:10, 1:34:2, 1:43:25

briefing [3] – 1:13:1, 1:37:16, 1:41:10

briefings [4] – 1:21:19, 1:22:1, 1:22:10, 1:39:6

briefly [2] – 1:40:15, 1:63:17

bring [2] – 1:49:12, 1:57:13

broad [6] – 1:11:11, 1:17:12, 1:25:10, 1:54:4, 1:55:25, 1:56:19

bulleted [2] – 1:15:17, 1:59:25

burden [4] – 1:33:12, 1:33:13, 1:35:5, 1:44:20

Bureau [1] – 1:37:11

business [1] – 1:46:23

### C

calculus [1] – 1:41:23

cannot [4] – 1:45:11, 1:56:22, 1:62:9, 1:62:11

capable [2] – 1:13:23, 1:30:10

Carlos [1] – 1:3:4

carried [2] – 1:48:16, 1:61:1

carry [1] – 1:57:14

carrying [1] – 1:57:16

Case [1] – 1:3:3

case [33] – 1:8:8, 1:9:24, 1:13:16, 1:18:1, 1:22:15, 1:24:24, 1:25:14, 1:25:15, 1:25:17, 1:25:21, 1:28:16, 1:32:22, 1:33:7, 1:35:3, 1:35:8, 1:38:21, 1:43:5, 1:51:14, 1:51:15, 1:51:22, 1:53:24, 1:55:15, 1:55:25, 1:56:6, 1:60:7, 1:60:12, 1:60:15, 1:62:17, 1:62:25, 1:63:4, 1:63:21

cases [4] – 1:8:15, 1:32:14, 1:32:15, 1:35:10

catch [1] – 1:55:9

catch-all [1] – 1:55:9

categories [2] – 1:52:5, 1:55:1

Categories [1] – 1:52:16

caught [1] – 1:23:19

central [1] – 1:28:7

certain [3] – 1:3:25, 1:56:2, 1:56:5

certainly [1] – 1:20:1

chain [1] – 1:37:19

challenge [4] – 1:5:3, 1:51:25, 1:62:22, 1:62:23

challenged [3] – 1:26:10, 1:32:17, 1:59:16

challenger's [1] – 1:35:17

challenging [1] – 1:52:25

change [1] – 1:61:17

changed [2] – 1:22:1, 1:24:7

characterize [2] – 1:36:13

charge [1] – 1:61:10

charged [2] – 1:44:11, 1:44:14

Chief [3] – 1:58:10, 1:58:17, 1:63:22

child [2] – 1:17:19, 1:47:18

child's [1] – 1:48:6

choreography [1] – 1:27:14

CIPA [1] – 1:26:21

Circuit [6] – 1:31:18, 1:51:15, 1:52:20, 1:54:6, 1:56:7, 1:60:8

circumstances [7] – 1:20:24, 1:29:20, 1:29:22, 1:33:4, 1:56:9, 1:59:6, 1:59:7

circumstantial [1] – 1:21:21

citation [3] – 1:8:14, 1:8:16, 1:51:23

citations [1] – 1:24:23

cited [7] – 1:8:10, 1:13:11, 1:25:18, 1:25:21, 1:35:9, 1:55:18, 1:61:11

city [1] – 1:15:8

civil [2] – 1:5:6, 1:5:10

claim [3] – 1:17:10, 1:17:11, 1:45:11

claims [2] – 1:20:11, 1:41:1

clarifies [1] – 1:58:20

clarify [5] – 1:36:18, 1:45:17, 1:48:23, 1:48:25, 1:59:25

classification [15] – 1:7:15, 1:7:22, 1:9:9, 1:16:25, 1:18:3, 1:21:25, 1:26:5, 1:26:8, 1:26:12, 1:26:14, 1:30:4, 1:43:22, 1:48:23, 1:53:22, 1:54:22

classified [6] – 1:22:10, 1:30:8, 1:39:6, 1:47:17, 1:50:3, 1:57:23

clear [6] – 1:11:12, 1:14:6, 1:33:8, 1:36:19, 1:37:8, 1:62:19

clearance [2] – 1:21:17, 1:22:14

clearances [1] – 1:39:5

clearly [1] – 1:7:21

closed [1] – 1:35:11

club [1] – 1:47:9

co [1] – 1:3:19

co-counsel [1] – 1:3:19

collaborative [1] – 1:19:11

colleague [1] – 1:44:9, 1:61:16

colleagues [1] – 1:51:16

collected [1] – 1:24:17

collection [4] – 1:23:10, 1:23:14, 1:24:11, 1:28:7

collectively [2] – 1:14:2, 1:28:9

combination [1] – 1:14:8

commencement [1] – 1:41:22

comments [1] – 1:57:2

commit [1] – 1:52:13

commonplace [2] – 1:6:11, 1:7:10

communications [6] – 1:19:3, 1:61:13, 1:62:5, 1:62:11, 1:62:13, 1:63:10

company [1] – 1:60:9

compare [1] – 1:63:3

compel [3] – 1:23:6, 1:23:19, 1:24:3

complexities [2] – 1:10:2, 1:13:12

compliance [1] – 1:61:24

complicated [1] – 1:8:6

concede [2] – 1:45:13, 1:60:1

conceded [4] – 1:5:7, 1:20:20, 1:45:9, 1:46:17

concept [1] – 1:30:3

concern [1] – 1:64:18

concerned [1] – 1:46:15

concerning [1] – 1:36:20

concerns [2] – 1:20:17, 1:64:19

concession [2]_ - 1:45:11 _, 1:45:16

conclude [3]_ - 1:20:3_, 1:47:22_, 1:56:18

concluded [1]_ - 1:65:3

concluding [2]_ - 1:64:23 _, 1:64:25

conclusion [1]_ - 1:61:21

conclusory [2]_ - 1:35:17 _, 1:36:4

conduct [8]_ - 1:15:3_, 1:17:20_, 1:18:24_, 1:24:19 _, 1:25:9_, 1:28:5_, 1:30:15_, 1:32:17

conducted [7]_ - 1:18:6_, 1:29:16_, 1:33:3_, 1:33:4_, 1:57:5_, 1:61:4_, 1:62:6

conducting [2]_ - 1:30:11 _, 1:31:25

conferred [2]_ - 1:15:20_, 1:16:4

confess [2]_ - 1:53:5_, 1:55:5

confident [1]_ - 1:34:21

confined [1]_ - 1:59:3

conflation [1]_ - 1:34:13

conflict [1]_ - 1:37:10

conflicting [2]_ - 1:13:6_, 1:32:12

confused [1]_ - 1:36:11

confusingly [1]_ - 1:58:17

Congressional [3]_ - 1:18:25_, 1:19:2_, 1:19:19

connection [6]_ - 1:12:12 _, 1:13:23_, 1:29:20_, 1:34:15_, 1:55:2_, 1:55:3

consent [4]_ - 1:18:24_, 1:19:6_, 1:37:21_, 1:38:7

consider [1]_ - 1:38:17

considered [1]_ - 1:29:20

considering [3]_ - 1:17:3 _, 1:20:21_, 1:21:1

considers [1]_ - 1:29:15

consistent [1]_ - 1:11:5

conspiratorial [1]_ - 1:42:5

constitutes [2]_ - 1:11:4_, 1:52:11

constituting [1]_ - 1:56:2

constitution [1]_ - 1:32:22

constitutional [1]_ - 1:6:12_, 1:14:1

constitutionally [1]_ - 1:16:3

contained [4]_ - 1:6:23_, 1:30:25_, 1:50:3_, 1:54:25

container [1]_ - 1:31:9

container/boxes [1]_ - 1:54:13

containers [2]_ - 1:54:18 _, 1:54:19

containers/boxes [1]_ - 1:14:7

contemplated [1]_ - 1:12:10

contention [2]_ - 1:6:22_, 1:42:14

contentless [1]_ - 1:9:14

contents [2]_ - 1:14:8_, 1:57:22

context [9]_ - 1:7:18_, 1:8:3_, 1:15:5_, 1:16:16_, 1:30:3_, 1:38:14_, 1:39:25_, 1:42:4_, 1:53:2

continue [2]_ - 1:14:11_, 1:44:7

continuing [1]_ - 1:19:16

contrast [1]_ - 1:6:7

coordination [4]_ - 1:23:13_, 1:24:3_, 1:24:6_, 1:28:5

copies [2]_ - 1:13:20_, 1:25:12

core [1]_ - 1:24:12

Corporation [1]_ - 1:52:8

correct [4]_ - 1:5:22_, 1:37:20_, 1:49:5_, 1:52:24

corrected [1]_ - 1:27:6

correction [1]_ - 1:44:11

correctly [1]_ - 1:50:13

counsel [3]_ - 1:3:19_, 1:28:13_, 1:39:13

Counsel [1]_ - 1:28:14

counsel's [1]_ - 1:43:14

counts [1]_ - 1:36:4

couple [5]_ - 1:27:8_, 1:28:15_, 1:35:22_, 1:43:11 _, 1:57:2

course [3]_ - 1:4:14_, 1:44:14_, 1:57:15

Court [26]_ - 1:3:1_, 1:3:15 _, 1:4:14_, 1:11:19_, 1:14:24 _, 1:16:18_, 1:32:5_, 1:32:22 _, 1:35:8_, 1:35:13_, 1:35:14 _, 1:40:5_, 1:49:12_, 1:49:24

_, 1:51:22_, 1:51:24_, 1:52:15_, 1:52:19_, 1:53:14 _, 1:54:5_, 1:56:18_, 1:58:15 _, 1:58:22_, 1:59:16_, 1:63:22_, 1:64:21

COURT [118]_ - 1:3:2_, 1:3:11_, 1:3:16_, 1:3:20_, 1:3:23_, 1:4:6_, 1:5:1_, 1:5:22_, 1:6:15_, 1:6:22_, 1:7:3_, 1:7:7_, 1:7:14_, 1:7:18_, 1:8:10_, 1:8:12_, 1:8:25_, 1:9:10_, 1:9:24_, 1:10:14_, 1:11:8_, 1:11:24_, 1:12:4_, 1:12:8_, 1:12:16_, 1:12:20_, 1:14:11_, 1:14:14 _, 1:15:11_, 1:17:5_, 1:17:8_, 1:17:22_, 1:18:8_, 1:18:11_, 1:19:9_, 1:19:23_, 1:20:3_, 1:20:14_, 1:20:17_, 1:21:3_, 1:21:8_, 1:21:12_, 1:21:24_, 1:22:6_, 1:22:8_, 1:22:18_, 1:23:1_, 1:23:23_, 1:24:5_, 1:24:14_, 1:24:21_, 1:25:17 _, 1:25:21_, 1:26:5_, 1:26:17 _, 1:26:24_, 1:28:12_, 1:28:18_, 1:30:7_, 1:30:22_, 1:32:7_, 1:33:5_, 1:34:4_, 1:34:6_, 1:34:9_, 1:37:13_, 1:37:18_, 1:37:20_, 1:38:6_, 1:38:12_, 1:41:16, 1:42:11_, 1:42:13_, 1:42:23_, 1:43:8_, 1:44:1_, 1:44:7_, 1:44:25_, 1:45:5_, 1:45:17_, 1:47:16_, 1:48:5_, 1:48:8_, 1:48:22_, 1:49:4_, 1:49:8_, 1:49:25_, 1:50:8_, 1:50:21_, 1:50:25_, 1:51:5_, 1:51:19_, 1:51:21_, 1:52:23_, 1:53:21_, 1:54:7_, 1:54:12_, 1:55:9_, 1:55:12_, 1:56:18_, 1:55:22_, 1:59:18 _, 1:59:21_, 1:60:5_, 1:61:14 _, 1:62:1_, 1:62:22_, 1:63:13 _, 1:63:16_, 1:63:18_, 1:63:24, 1:64:3_, 1:64:7_, 1:64:10_, 1:64:15_, 1:64:18 _, 1:64:22_, 1:64:25

Court's [1]_ - 1:17:3_, 1:29:21

courts [1]_ - 1:28:21

courts' [1]_ - 1:13:1

covered [1]_ - 1:47:22

created [1]_ - 1:22:4

crimes [3]_ - 1:52:12_, 1:52:14_, 1:56:2

critical [1]_ - 1:9:11

cross [1]_ - 1:35:18

cross-examine [1]_ - 1:35:18

crossed [1]_ - 1:34:3

culpability [4]_ - 1:5:15_, 1:32:23_, 1:58:13_, 1:58:24

cumulatively [1]_ - 1:14:9

curious [2]_ - 1:44:1_, 1:54:7

cut [1]_ - 1:27:5

D

D'Antuono [2]_ - 1:19:1_, 1:20:6

D'Antuono's [1]_ - 1:28:4

Dadan [2]_ - 1:3:17_, 1:3:18

DADAN [1]_ - 1:3:18

date [3]_ - 1:41:8_, 1:41:22 _, 1:42:1

dating [1]_ - 1:24:4

David [1]_ - 1:3:9

Davis [2]_ - 1:32:22_, 1:33:7

days [1]_ - 1:63:15

De [2]_ - 1:3:4_, 1:3:22

decades [1]_ - 1:13:1

deceive [1]_ - 1:40:12

decide [3]_ - 1:11:20_, 1:13:17_, 1:14:24

decision [4]_ - 1:5:10_, 1:20:10_, 1:29:22_, 1:55:20

decisional [6]_ - 1:9:12_, 1:9:13_, 1:13:16_, 1:24:24_, 1:25:14_, 1:25:15

decisions [1]_ - 1:28:21

declassify [1]_ - 1:39:18

defect [2]_ - 1:4:21_, 1:4:23

defects [2]_ - 1:6:20_, 1:14:1

defendant [7]_ - 1:34:20_, 1:34:22_, 1:35:2_, 1:35:5_, 1:36:3_, 1:41:1_, 1:55:6

Defendant [2]_ - 1:4:1_, 1:4:7

defendant's [4]_ - 1:36:12 _, 1:37:16_, 1:55:6_, 1:55:7

defense [7]_ - 1:39:10_, 1:39:24_, 1:40:5_, 1:42:3_, 1:42:14_, 1:43:17_, 1:64:16

Defense [1]_ - 1:9:5

defense's [1]_ - 1:64:19

defenses [2]_ - 1:24:14_, 1:41:1

deficient [2]– - 1:29:5_.,
1:56:21

define [4]– - 1:9:16_.,
1:9:21_, 1:10:25_., 1:13:2

defined [2]– - 1:16:14_.,
1:30:9

definitely [1]– - 1:38:11

definition [8]– - 1:11:16_.,
1:13:15_, 1:13:19_., 1:13:23
_, 1:15:22_., 1:25:11_.,
1:25:12_., 1:43:11

definitions [3]– - 1:11:13_.,
1:12:23_., 1:13:6

definitively [1]– - 1:48:10

degree [1]– - 1:32:23

deliberate [1]– - 1:35:19

delineated [1]– - 1:7:21

demand [1]– - 1:24:10

Department [3]– - 1:24:4
_, 1:42:2_, 1:42:6

deputy [1]– - 1:19:4

describe [2]– - 1:5:20_.,
1:56:1

described [8]– - 1:6:8_.,
1:6:16_., 1:8:4_., 1:23:11_.,
1:23:16_, 1:28:22_., 1:49:14
_, 1:49:17

describes [3]– - 1:14:16_.,
1:15:9_, 1:23:4

description [9]– - 1:6:11_.,
1:9:1_., 1:19:3_., 1:23:3_.,
1:46:15_., 1:53:2_., 1:56:7_.,
1:56:8_., 1:56:17

descriptions [2]– - 1:5:23
_, 1:7:5

designate [2]– - 1:25:1_.,
1:25:25

designated [1]– - 1:26:6

designations [1]– -
1:25:6

desire [1]– - 1:35:18

destruction [3]– - 1:19:17
_, 1:20:11_., 1:20:25

detail [1]– - 1:63:6

determination [4]– -
1:18:15_, 1:20:18_., 1:24:8_.,
1:38:10

determinations [1]– -
1:11:4

determine [2]– - 1:7:20_.,
1:62:24

deterrence [3]– - 1:32:14
_, 1:58:13_., 1:58:24

deterrent [1]– - 1:32:16

develop [1]– - 1:41:10

developed [1]– - 1:42:3

difference [5]– - 1:22:11_.,
1:25:22_, 1:38:8_., 1:42:17_.,
1:42:24

differences [1]– - 1:32:20

different [2]– - 1:26:9_.,
1:61:17

differently [1]– - 1:61:16

difficult [1]– - 1:53:7

digest [2]– - 1:55:16_.,
1:55:18

digress [1]– - 1:41:10

direct [5]– - 1:35:8_., 1:48:7
_, 1:51:22_., 1:54:5_., 1:58:10

directed [1]– - 1:11:24

direction [1]– - 1:50:17

director [2]– - 1:19:4_.,
1:61:10

disagree [3]– - 1:19:24_.,
1:38:8_., 1:61:3

disclose [1]– - 1:39:4

disclosed [1]– - 1:38:24

disclosure [1]– - 1:19:15

disclosures [1]– - 1:27:19

discovery [3]– - 1:58:5_.,
1:61:22_, 1:61:24

discretion [1]– - 1:15:21_.,
1:16:4_, 1:16:15_., 1:24:25_.,
1:25:6

discuss [1]– - 1:3:25

discussed [1]– - 1:40:14

discussion [4]– - 1:34:8_.,
1:45:16_., 1:45:21_., 1:50:6

dismiss [1]– - 1:13:12

disprove [1]– - 1:33:13

dispute [4]– - 1:12:16_.,
1:19:18_., 1:23:5_., 1:32:9

disputed [1]– - 1:12:14_.,
1:30:6_., 1:32:4

disputes [4]– - 1:16:9_.,
1:31:21_., 1:33:15_., 1:62:7

disregard [5]– - 1:32:21_.,
1:34:25_., 1:35:20_., 1:40:12
_., 1:41:4

dissertation [1]– - 1:53:11

distill [1]– - 1:55:22

division [1]– - 1:62:5

docket [2]– - 1:4:2_., 1:4:15

document [3]– - 1:12:10_.,
1:13:18_., 1:53:16

documented [1]– -
1:17:18

documents [25]– - 1:5:11
_, 1:7:15_., 1:7:22_., 1:9:8_.,
1:13:21_., 1:16:25_., 1:18:2_.,
1:20:23_., 1:22:3_., 1:24:10_.,
1:26:11_., 1:26:13_., 1:41:20
_., 1:46:23_., 1:47:2_., 1:47:17
_., 1:47:22_., 1:50:12_.,
1:50:16_., 1:50:17_., 1:53:22
_., 1:54:21_., 1:57:23_., 1:58:1

DOJ [2]– - 1:24:10_., 1:28:5

Donald [1]– - 1:3:3

done [4]– - 1:10:19_.,
1:23:11_., 1:41:10_., 1:55:20

Donnie [1]– - 1:3:22

down [1]– - 1:34:11

due [1]– - 1:4:14

during [3]– - 1:16:22_.,
1:21:25_., 1:22:11

duties [3]– - 1:48:16_.,
1:57:16_., 1:61:1

dwell [2]– - 1:40:18_.,
1:44:19

E

easier [1]– - 1:30:12

effective [1]– - 1:8:20

effects [1]– - 1:5:9

efficiently [1]– - 1:55:14

effort [2]– - 1:46:9

egregious [7]– - 1:57:1_.,
1:57:4_., 1:57:11_., 1:57:14_.,
1:57:17_., 1:57:25_., 1:61:4

egregiousness [2]– -
1:57:4_., 1:58:9

either [8]– - 1:4:13_., 1:10:4
_., 1:23:15_., 1:34:24_.,
1:48:15_., 1:48:18_., 1:60:1_.,
1:63:2

element [5]– - 1:10:2_.,
1:10:9_., 1:20:21_., 1:25:15

elements [6]– - 1:7:7_.,
1:10:3_., 1:30:25_., 1:43:1_.,
1:53:1_., 1:53:11

Eleventh [6]– - 1:31:18_.,
1:51:15_., 1:52:20_., 1:54:6_.,
1:56:7_., 1:60:8

elsewhere [3]– - 1:41:10_.,
1:41:11_., 1:43:25

emails [1]– - 1:19:5

Emil [1]– - 1:3:13

emphasizing [1]– -

1:39:17

encountered [2]– - 1:14:5
_., 1:46:22

end [4]– - 1:16:8_., 1:49:16
_., 1:61:15_, 1:64:8

ends [1]– - 1:45:16

enormous [1]– - 1:15:5

entails [1]– - 1:27:2

entertaining [1]– -
1:51:24

entire [6]– - 1:16:20_.,
1:23:17_., 1:46:25_., 1:50:20
_., 1:58:19_., 1:60:14

entitle [1]– - 1:19:12

entitled [2]– - 1:23:21_.,
1:62:21

entitlement [1]– - 1:4:8

entry [2]– - 1:4:2_., 1:4:15

enumerated [2]– -
1:52:12_., 1:52:14

equivalent [1]– - 1:10:1

errant [1]– - 1:14:12

error [1]– - 1:32:21

esoteric [1]– - 1:53:6

especially [4]– - 1:13:4_.,
1:25:13_., 1:34:2_., 1:48:20

essential [2]– - 1:10:2_.,
1:30:25

essentially [5]– - 1:10:1_.,
1:14:3_., 1:27:4_., 1:39:11_.,
1:47:3

establish [5]– - 1:15:13_.,
1:16:13_., 1:22:20_., 1:31:20
_., 1:33:12

established [4]– - 1:12:15
_., 1:14:17_., 1:15:16_., 1:27:5

establishing [1]– -
1:33:25

event [2]– - 1:28:24_.,
1:33:23

everywhere [2]– - 1:47:6
_., 1:60:22

evidence [34]– - 1:5:19_.,
1:6:1_., 1:12:11_., 1:15:2_.,
1:17:10_., 1:18:1_., 1:18:19_.,
1:19:17_., 1:20:11_., 1:20:25
_., 1:21:21_., 1:22:24_.,
1:23:15_., 1:23:21_., 1:24:3_.,
1:24:18_., 1:27:15_., 1:31:9_.,
1:33:5_., 1:33:14_., 1:47:16_.,
1:48:3_., 1:48:5_., 1:48:7_.,
1:48:8_., 1:50:14_., 1:50:21_.,
1:52:8_., 1:52:12_., 1:52:21_.,
1:52:22_., 1:56:2_., 1:61:6_.,

1:62:4
  evident [1]– 1:13:13
  evidentiary [5]– 1:4:13–,
1:5:9–, 1:35:16–, 1:49:22–,
1:56:14
  exactly [2]– 1:9:13–,
1:23:25
  examine [1]– 1:35:18
  example [12]– 1:9:17–,
1:18:2–, 1:25:14–, 1:33:7–,
1:38:6–, 1:47:8–, 1:52:1–,
1:52:19–, 1:54:13–, 1:56:1–,
1:56:19–, 1:56:20
  examples [2]– 1:6:1–,
1:7:23
  except [1]– 1:44:19
  exception [6]– 1:4:12–,
1:28:20–, 1:29:21–, 1:33:22
–, 1:62:15–, 1:63:7
  excludes [2]– 1:13:20–,
1:16:6
  exclusion [2]– 1:25:12–,
1:33:7
  exclusionary [3]– 1:4:12
–, 1:32:5–, 1:32:15
  exculpatory [1]– 1:27:19
  excuse [5]– 1:15:21–,
1:24:25–, 1:27:5–, 1:29:7–,
1:58:6
  execute [1]– 1:31:14
  executed [12]– 1:5:8–,
1:13:3–, 1:16:2–, 1:17:16–,
1:26:15–, 1:31:14–, 1:31:21
–, 1:31:24–, 1:32:3–, 1:56:25
–, 1:59:14–, 1:60:21
  executing [5]– 1:11:25–,
1:13:8–, 1:13:14–, 1:56:21–,
1:57:16
  execution [7]– 1:5:6–,
1:29:12–, 1:33:18–, 1:46:10
–, 1:47:4–, 1:49:20–, 1:60:16
  executive [1]– 1:22:10
  exhaustive [4]– 1:5:24–,
1:6:18–, 1:7:24–, 1:30:10
  Exhibit [2]– 1:18:23–,
1:19:19
  exhibits [1]– 1:39:19
  existed [1]– 1:20:24
  existing [1]– 1:50:6
  expect [1]– 1:43:24
  expected [1]– 1:42:7
  expeditiously [2]–
1:48:17–, 1:61:2
  experience [8]– 1:29:24

–, 1:29:25–, 1:30:5–, 1:30:23
–, 1:31:18–, 1:39:23–, 1:59:8
–, 1:59:11
  experienced [1]–
1:30:18
  explain [2]– 1:41:21–,
1:44:4
  explicit [1]– 1:35:3
  explore [2]– 1:35:25–,
1:44:23
  extensive [1]– 1:8:6
  extensively [1]– 1:23:10
  extent [9]– 1:13:5–,
1:18:14–, 1:21:23–, 1:30:1–,
1:40:21–, 1:45:20–, 1:47:4–,
1:56:13–, 1:62:13
  extra [2]– 1:13:20–,
1:17:5
  extraneous [1]– 1:59:13
  extraordinary [1]–
1:39:22
  extremely [1]– 1:62:7

## F

  F.2d [1]– 1:51:23
  F.Supp [1]– 1:5:10
  face [6]– 1:9:14–, 1:12:3–,
1:30:21–, 1:31:6–, 1:47:7–,
1:62:23
  facially [2]– 1:29:5–,
1:56:21
  fact [25]– 1:4:25–, 1:12:1
–, 1:15:25–, 1:17:17–,
1:21:15–, 1:22:13–, 1:27:10
–, 1:28:1–, 1:29:3–, 1:29:8–,
1:29:11–, 1:29:16–, 1:34:3–,
1:38:1–, 1:38:4–, 1:40:3–,
1:40:13–, 1:40:25–, 1:57:25
–, 1:61:4–, 1:61:5–, 1:61:18–,
1:61:22–, 1:62:17
  fact-finding [8]– 1:4:25–,
1:27:10–, 1:28:1–, 1:29:3–,
1:29:11–, 1:29:16–, 1:34:3
  facts [4]– 1:19:15–,
1:23:12–, 1:24:1–, 1:31:19
  factual [10]– 1:16:9–,
1:17:15–, 1:19:18–, 1:20:8–,
1:33:15–, 1:37:10–, 1:62:7–,
1:63:5–, 1:64:12–, 1:64:13
  fail [1]– 1:36:6
  failing [2]– 1:6:12–,
1:22:8
  failure [5]– 1:6:4–, 1:6:6–,
1:33:19–, 1:33:20–, 1:39:4

  fair [1]– 1:54:16–, 1:64:24
  fairly [1]– 1:22:9
  faith [17]– 1:4:12–,
1:28:20–, 1:28:24–, 1:29:21
–, 1:31:3–, 1:31:5–, 1:31:17–,
1:31:21–, 1:32:10–, 1:33:12
–, 1:33:22–, 1:34:15–, 1:35:1
–, 1:58:18–, 1:59:3–, 1:62:15
–, 1:63:7
  falling [1]– 1:53:17
  false [7]– 1:20:10–,
1:25:7–, 1:34:24–, 1:35:24–,
1:41:13–, 1:42:10–, 1:57:2
  falsehood [1]– 1:35:19
  falsity [2]– 1:38:4–,
1:38:19
  familiar [1]– 1:11:1
  family [1]– 1:15:7
  fanned [1]– 1:18:6
  far [7]– 1:9:2–, 1:30:23–,
1:31:1–, 1:33:9–, 1:37:19–,
1:46:14–, 1:63:5
  fashion [2]– 1:5:1–,
1:57:1
  FBI [14]– 1:12:18–,
1:13:1–, 1:16:8–, 1:18:20–,
1:18:23–, 1:19:4–, 1:20:12–,
1:21:18–, 1:36:16–, 1:43:4–,
1:56:25–, 1:57:14–, 1:61:10
–, 1:62:5
  Federal [1]– 1:11:17
  felt [8]– 1:6:10–, 1:7:12–,
1:9:16–, 1:9:20–, 1:10:11–,
1:18:21–, 1:61:16–, 1:61:18
  few [1]– 1:59:22
  Fields [1]– 1:3:14
  file [1]– 1:8:12
  filed [2]– 1:25:3–, 1:29:14
  files [3]– 1:53:16–,
1:53:17–, 1:53:25
  filter [1]– 1:55:4
  finally [3]– 1:4:25–,
1:58:2–, 1:62:9
  financial [1]– 1:52:6–,
1:60:9
  finished [1]– 1:28:12
  firearms [3]– 1:57:13–,
1:57:14–, 1:57:16
  first [17]– 1:4:17–, 1:4:20
–, 1:12:19–, 1:18:19–,
1:21:15–, 1:25:5–, 1:27:12–,
1:33:11–, 1:36:9–, 1:39:9–,
1:44:5–, 1:45:8–, 1:46:3–,
1:46:21–, 1:51:10–, 1:56:14

–, 1:57:9
  First [1]– 1:16:23
  flagged [1]– 1:14:9
  flexibility [2]– 1:56:4–,
1:56:5
  flight [1]– 1:20:11–,
1:21:1
  fly [2]– 1:11:4–, 1:13:17
  focus [1]– 1:11:9–,
1:34:18
  focused [3]– 1:27:13–,
1:62:1–, 1:62:3
  folders [2]– 1:53:16–,
1:53:25
  follow [1]– 1:8:1
  followed [1]– 1:12:17
  footnote [5]– 1:9:17–,
1:29:19–, 1:52:3–, 1:60:11–,
1:61:11
  forget [1]– 1:40:21
  formal [1]– 1:42:15
  format [1]– 1:3:5
  former [2]– 1:13:14–,
1:47:18
  Former [1]– 1:49:3
  forth [4]– 1:19:5–, 1:56:6
–, 1:57:20–, 1:61:6
  four [3]– 1:36:7–, 1:57:8–,
1:61:8
  Fourth [10]– 1:4:11–,
1:4:22–, 1:5:4–, 1:7:25–,
1:8:21–, 1:11:6–, 1:16:11–,
1:16:16–, 1:28:24–, 1:31:12
  framework [1]– 1:49:24
  framing [1]– 1:28:16
  Franks [16]– 1:4:8–,
1:4:25–, 1:18:12–, 1:19:12–,
1:27:2–, 1:28:10–, 1:28:23–,
1:34:8–, 1:34:16–, 1:34:19–,
1:34:22–, 1:35:10–, 1:35:13
–, 1:45:1–, 1:61:21
  frequently [1]– 1:29:23–,
1:59:7
  front [3]– 1:16:8–, 1:39:13
–, 1:46:13
  fruits [2]– 1:52:12–,
1:52:22
  full [3]– 1:11:25–, 1:12:17
–, 1:43:3
  fully [2]– 1:29:10–, 1:34:2
  funds [1]– 1:52:7
  furthermore [3]–
1:34:24–, 1:35:3–, 1:47:3

future [1]_ - 1:4:13

**G**

general [1]_ - 1:54:6
generally [3]_ - 1:17:24_, 1:27:9_, 1:52:23
generic [1]_ - 1:38:24
genesis [1]_ - 1:23:21
Giglio [1]_ - 1:62:16
given [3]_ - 1:25:13_, 1:30:19_, 1:53:1
glad [2]_ - 1:54:15
gloss [1]_ - 1:9:18
glosses [1]_ - 1:11:1
Gold [1]_ - 1:14:19
govern [1]_ - 1:52:18
Government [1]_ - 1:11:10
government [30]_ - 1:5:7 _, 1:5:21_, 1:5:25_, 1:6:10_, 1:7:12_, 1:9:16_, 1:9:20_, 1:10:6_, 1:10:11_, 1:10:24_, 1:11:19_, 1:12:22_, 1:13:4_, 1:13:7_, 1:15:3_, 1:15:13_, 1:18:24_, 1:19:7_, 1:19:21_, 1:20:20_, 1:21:21_, 1:22:20 _, 1:23:4_, 1:23:9_, 1:27:21_, 1:30:14_, 1:31:20_, 1:33:23 _, 1:44:13_, 1:57:23
government's [4]_ - 1:19:15_, 1:22:2_, 1:23:12_, 1:33:12
governmental [1]_ - 1:54:21
Graham [1]_ - 1:35:8
Grand [1]_ - 1:4:1
ground [4]_ - 1:16:1_, 1:16:10_, 1:38:16_, 1:63:11
guest [1]_ - 1:47:8
guidance [17]_ - 1:6:5_, 1:6:13_, 1:6:15_, 1:7:11_, 1:7:12_, 1:7:14_, 1:8:22_, 1:10:6_, 1:10:9_, 1:10:11_, 1:10:14_, 1:10:20_, 1:10:23 _, 1:11:19_, 1:11:22_, 1:11:23_, 1:31:5
guide [1]_ - 1:9:15
gym [2]_ - 1:17:1_, 1:18:4

**H**

half [1]_ - 1:43:18
Hall [1]_ - 1:14:22

handling [1]_ - 1:4:4
hands [1]_ - 1:44:21
happy [2]_ - 1:45:3_, 1:55:23
Harbach [7]_ - 1:3:9_, 1:34:4_, 1:59:21_, 1:60:19_, 1:60:25_, 1:61:12_, 1:63:18
HARBACH [49]_ - 1:34:5 _, 1:34:7_, 1:34:10_, 1:37:15 _, 1:37:19_, 1:37:23_, 1:38:11_, 1:38:13_, 1:41:24 _, 1:42:12_, 1:42:19_, 1:42:25_, 1:43:10_, 1:44:3_, 1:44:8_, 1:45:3_, 1:45:6_, 1:45:19_, 1:47:19_, 1:48:7_, 1:48:9_, 1:49:2_, 1:49:5_, 1:49:9_, 1:50:5_, 1:50:10_, 1:50:24_, 1:51:1_, 1:51:7_, 1:51:20_, 1:51:22_, 1:53:4_, 1:53:22_, 1:54:10_, 1:54:15 _, 1:55:11_, 1:55:13, 1:55:21 _, 1:55:24, 1:59:20_, 1:63:17 _, 1:63:20_, 1:64:2_, 1:64:4_, 1:64:9_, 1:64:13_, 1:64:16_, 1:64:19_, 1:64:24
hard [1]_ - 1:63:1
harm [2]_ - 1:20:21_, 1:22:5
harsh [1]_ - 1:33:6
head [1]_ - 1:55:5
heading [1]_ - 1:46:14
headnote [2]_ - 1:52:2_, 1:52:15
heads [1]_ - 1:33:2
hear [5]_ - 1:4:3_, 1:4:16_, 1:28:13_, 1:28:18_, 1:55:23
heard [4]_ - 1:35:22_, 1:44:25_, 1:45:8
hearing [30]_ - 1:4:8_, 1:4:13_, 1:4:14_, 1:12:2_, 1:12:15_, 1:18:16_, 1:19:12 _, 1:21:23_, 1:26:21_, 1:28:11_, 1:28:16_, 1:33:25 _, 1:34:15_, 1:34:16_, 1:34:19_, 1:35:10_, 1:35:16 _, 1:35:24_, 1:44:23_, 1:45:1 _, 1:49:22_, 1:56:14_, 1:58:3 _, 1:60:16_, 1:60:17_, 1:60:21_, 1:61:7_, 1:63:19_, 1:64:6_, 1:65:1
hearings [1]_ - 1:64:20
held [2]_ - 1:59:2_, 1:60:16
help [1]_ - 1:11:20
herein [1]_ - 1:52:14
Herring [4]_ - 1:29:22_,

1:31:17_, 1:32:20_, 1:58:11
hesitate [1]_ - 1:43:2
high [1]_ - 1:20:12
hijack [1]_ - 1:64:5
hijacking [1]_ - 1:64:7
himself [1]_ - 1:43:17
historical [1]_ - 1:18:22
hit [3]_ - 1:17:12_, 1:48:14 _, 1:49:13
hits [1]_ - 1:38:15
hold [1]_ - 1:37:20
home [2]_ - 1:15:7_, 1:46:22
Honor [43]_ - 1:3:8_, 1:3:13_, 1:3:21_, 1:5:7_, 1:8:11_, 1:11:1_, 1:18:10_, 1:20:2_, 1:21:11_, 1:29:15_, 1:34:5_, 1:34:7_, 1:34:11_, 1:34:21_, 1:36:8_, 1:36:18_, 1:36:22_, 1:37:2_, 1:37:5_, 1:39:18_, 1:40:17_, 1:40:22 _, 1:42:20_, 1:46:7_, 1:47:1_, 1:47:14_, 1:48:13_, 1:48:17 _, 1:49:10_, 1:51:1_, 1:51:13 _, 1:54:15_, 1:54:24_, 1:55:11_, 1:55:16_, 1:58:7_, 1:58:10_, 1:58:20_, 1:60:7_, 1:61:9_, 1:61:20_, 1:63:17_, 1:63:20
Honor's [3]_ - 1:50:5_, 1:50:12_, 1:53:8
hoping [1]_ - 1:50:8
house [1]_ - 1:13:15
hypothesize [1]_ - 1:43:2
hypothetically [1]_ - 1:23:23

**I**

i.e [1]_ - 1:54:20
idea [2]_ - 1:43:20_, 1:51:12
identified [9]_ - 1:14:18_, 1:15:14_, 1:18:13_, 1:18:25 _, 1:21:14_, 1:24:2_, 1:27:8_, 1:28:3_, 1:53:17
identifies [1]_ - 1:18:23
identify [1]_ - 1:24:25
ill [1]_ - 1:30:9
ill-defined [1]_ - 1:30:9
illegal [1]_ - 1:59:5
immediately [1]_ - 1:55:7
impact [1]_ - 1:19:16
impermissibly [1]_ -

1:17:12
implement [2]_ - 1:13:3_, 1:16:9
implementation [1]_ - 1:13:17
implemented [6]_ - 1:12:18_, 1:16:1_, 1:30:16_, 1:30:17_, 1:30:19_, 1:30:20
implementing [1]_ - 1:23:7
implicit [1]_ - 1:35:4
import [1]_ - 1:64:20
important [10]_ - 1:7:12_, 1:8:3_, 1:10:11_, 1:18:5_, 1:19:2_, 1:39:8_, 1:39:12_, 1:39:24_, 1:56:25_, 1:58:12
importantly [1]_ - 1:29:9
improper [1]_ - 1:51:14
improperly [1]_ - 1:57:20
inappropriate [3]_ - 1:9:11_, 1:47:13_, 1:55:1
include [8]_ - 1:4:7_, 1:9:11_, 1:21:9_, 1:29:23_, 1:36:15_, 1:53:10_, 1:54:19 _, 1:59:8
included [17]_ - 1:5:10_, 1:7:1_, 1:7:4_, 1:9:1_, 1:10:15_, 1:10:22_, 1:18:18 _, 1:22:25_, 1:31:2_, 1:39:14 _, 1:39:15_, 1:40:1_, 1:40:10 _, 1:44:16_, 1:45:12_, 1:53:25_, 1:63:1
includes [2]_ - 1:15:23_, 1:32:10
including [4]_ - 1:6:19_, 1:14:8_, 1:25:11_, 1:39:17
inclusion [3]_ - 1:24:22_, 1:25:14_, 1:40:25
inconsistent [1]_ - 1:18:22_, 1:40:3_, 1:40:4
incredibly [1]_ - 1:25:10
indicated [4]_ - 1:3:24_, 1:4:15_, 1:6:19_, 1:45:23
indictment [2]_ - 1:42:4_, 1:44:14
indirect [1]_ - 1:48:8
individuals [1]_ - 1:60:9
information [7]_ - 1:5:11_, 1:16:7_, 1:30:8_, 1:43:22_, 1:48:22_, 1:48:25_, 1:50:2
Information [1]_ - 1:9:5
informed [1]_ - 1:33:3
initial [1]_ - 1:41:20
initiation [1]_ - 1:41:8

ink [1] - 1:58:3
inquiry [11] - 1:22:12 ,
1:30:24 , 1:32:10 , 1:32:25
 , 1:33:2 , 1:42:17 , 1:49:21
 , 1:52:18 , 1:58:25 , 1:59:3
insofar [1] - 1:48:9
instances [1] - 1:35:11
instead [1] - 1:15:15
instruction [2] - 1:12:17
 , 1:12:19
instructions [2] - 1:30:19
 , 1:31:22
instructive [1] - 1:55:15
intact [3] - 1:33:19 ,
1:53:16 , 1:60:18
intent [11] - 1:20:9 ,
1:21:21 , 1:22:19 , 1:22:25
 , 1:23:12 , 1:28:1 , 1:32:11
 , 1:40:4 , 1:40:12 , 1:40:23
 , 1:59:11
intention [1] - 1:40:23
intentional [3] - 1:22:4 ,
1:40:12 , 1:41:3
intentionally [1] -
1:34:25
intentions [1] - 1:19:15
interested [1] - 1:44:5
interesting [1] - 1:8:7
introduced [1] - 1:26:18
introductory [3] - 1:5:18
 , 1:8:21 , 1:9:2
investigating [1] - 1:30:8
investigation [12] -
1:19:17 , 1:23:6 , 1:23:22 ,
1:28:6 , 1:30:7 , 1:39:25 ,
1:41:9 , 1:41:18 , 1:41:23 ,
1:42:15 , 1:43:4 , 1:56:10
invoking [1] - 1:63:8
involve [1] - 1:39:10
involved [1] - 1:23:13
irresponsible [1] -
1:48:19
IRVING [1] - 1:3:21
Irving [1] - 1:3:21
isolated [1] - 1:32:21
issuance [1] - 1:25:23 ,
1:38:9
issue [11] - 1:4:25 ,
1:12:21 , 1:16:18 , 1:18:1 ,
1:18:12 , 1:19:1 , 1:19:3 ,
1:26:19 , 1:26:21 , 1:27:10
 , 1:45:18
issued [3] - 1:6:9 , 1:7:13

 , 1:14:3
issues [3] - 1:14:9 ,
1:28:22 , 1:33:24
issuing [4] - 1:9:21 ,
1:10:12 , 1:11:20 , 1:22:16
item [2] - 1:36:9 , 1:39:2
Item [1] - 1:52:11
itemizing [1] - 1:9:25
items [12] - 1:17:5 ,
1:36:7 , 1:47:2 , 1:49:17 ,
1:50:22 , 1:51:9 , 1:52:21 ,
1:55:1 , 1:55:5 , 1:56:17 ,
1:56:19 , 1:57:20
itself [14] - 1:5:16 , 1:5:20
 , 1:8:19 , 1:11:2 , 1:13:6 ,
1:13:23 , 1:15:9 , 1:28:16 ,
1:29:19 , 1:30:21 , 1:30:24
 , 1:31:17 , 1:32:20 ,
1:35:13

## J

January [1] - 1:45:24
Jay [1] - 1:3:8
job [1] - 1:30:12
John [2] - 1:3:9 , 1:3:21
joked [1] - 1:51:16
judge [8] - 1:6:9 , 1:7:13
 , 1:11:23 , 1:18:14 , 1:21:1
 , 1:25:4 , 1:26:1 , 1:38:17
Judge [17] - 1:4:5 ,
1:4:18 , 1:7:23 , 1:9:13 ,
1:12:2 , 1:12:10 , 1:17:20 ,
1:20:19 , 1:26:19 , 1:29:9 ,
1:59:24 , 1:61:3 , 1:62:3 ,
1:62:14 , 1:63:9 , 1:63:14 ,
1:64:9
judge's [1] - 1:19:20
Judicial [1] - 1:25:19
judicial [2] - 1:11:1 ,
1:39:14
July [1] - 1:27:16
June [2] - 1:18:25 ,
1:27:14
Jury [1] - 1:4:1
Justice [5] - 1:24:4 ,
1:42:2 , 1:58:17 , 1:61:24 ,
1:63:22
Justice's [1] - 1:58:10
justification [1] - 1:44:11
justified [1] - 1:50:19
justifies [1] - 1:58:5
justify [2] - 1:22:21 ,
1:58:3

## K

Kapordelis [1] - 1:35:3
keep [4] - 1:12:20 ,
1:20:10 , 1:33:19 , 1:60:18
Kendra [1] - 1:3:14
kept [1] - 1:18:4
key [2] - 1:22:18 , 1:58:21
kind [5] - 1:9:2 , 1:16:15 ,
1:27:2 , 1:32:24 , 1:33:2
kinds [1] - 1:32:2
kitchen [2] - 1:17:1 ,
1:18:4
knowledge [7] - 1:17:7 ,
1:29:23 , 1:29:25 , 1:30:5 ,
1:31:18 , 1:59:8 , 1:59:10
known [4] - 1:21:18 ,
1:43:19 , 1:59:5
knows [3] - 1:24:15 ,
1:34:21 , 1:39:18

## L

labeled [1] - 1:52:6
labor [1] - 1:52:7
lack [3] - 1:4:10 , 1:40:22
 , 1:44:17
lacked [1] - 1:24:10
lacking [1] - 1:35:7
Lady's [1] - 1:16:23
Lago [12] - 1:14:3 ,
1:15:9 , 1:17:12 , 1:20:24 ,
1:21:20 , 1:24:20 , 1:26:2 ,
1:39:6 , 1:50:7 , 1:50:11 ,
1:50:15 , 1:57:13
laid [1] - 1:21:21
language [18] - 1:5:18 ,
1:7:10 , 1:7:17 , 1:7:25 ,
1:8:21 , 1:9:2 , 1:16:1 ,
1:16:9 , 1:32:12 , 1:32:13 ,
1:37:4 , 1:55:10 , 1:55:25 ,
1:56:3 , 1:58:16 , 1:59:17 ,
1:60:13 , 1:63:1
large [1] - 1:15:12
last [11] - 1:29:14 , 1:32:8
 , 1:34:12 , 1:35:12 ,
1:43:10 , 1:45:19 , 1:48:2 ,
1:52:5 , 1:56:12 , 1:63:15 ,
1:64:4
lastly [1] - 1:14:22
late [1] - 1:29:14
law [14] - 1:8:8 , 1:9:12 ,
1:9:13 , 1:9:24 , 1:13:16 ,
1:24:24 , 1:25:7 , 1:25:14 ,

1:25:15 , 1:25:24 , 1:28:16
 , 1:62:17 , 1:62:25 ,
1:63:21
lays [1] - 1:52:3
Lazaro [1] - 1:3:14
lead [2] - 1:19:17 , 1:20:3
leadership [1] - 1:20:12
leads [1] - 1:25:8
learn [1] - 1:54:24
least [12] - 1:7:11 ,
1:10:20 , 1:18:17 , 1:19:18
 , 1:20:12 , 1:21:23 , 1:24:2
 , 1:27:10 , 1:48:14 , 1:53:3
 , 1:58:20 , 1:60:3
leave [2] - 1:3:15 ,
1:33:20
led [2] - 1:24:11 , 1:32:18
left [1] - 1:45:23
legal [10] - 1:9:18 , 1:10:1
 , 1:17:10 , 1:17:11 ,
1:29:17 , 1:30:10 , 1:30:24
 , 1:32:9 , 1:53:10 , 1:64:11
legalese [1] - 1:7:10
legality [3] - 1:23:14 ,
1:28:6 , 1:41:20
legally [1] - 1:19:9
lengthy [2] - 1:61:18 ,
1:63:18
Leon [9] - 1:29:2 ,
1:29:19 , 1:32:6 , 1:32:13 ,
1:33:25 , 1:34:15 , 1:56:13
 , 1:56:14 , 1:57:7
less [2] - 1:43:19 ,
1:54:23
letter [8] - 1:39:13 ,
1:39:16 , 1:39:19 , 1:40:24
 , 1:41:2 , 1:43:5 , 1:43:13 ,
1:43:15
level [7] - 1:19:4 , 1:20:7
 , 1:20:12 , 1:21:4 , 1:23:13
 , 1:33:6 , 1:33:10
light [5] - 1:12:25 , 1:13:5
 , 1:40:12 , 1:45:10 , 1:59:5
limit [3] - 1:8:13 , 1:9:17 ,
1:46:19
limitation [2] - 1:47:24
limited [2] - 1:8:13 ,
1:8:17
limiting [1] - 1:6:17
line [1] - 1:24:15
lines [1] - 1:9:4
list [5] - 1:5:24 , 1:6:18 ,
1:7:24 , 1:51:8 , 1:52:4

listening [1]_ - 1:45:7
listing [2]_ - 1:51:12_, 1:52:20
lists [1]_ - 1:48:24
litigation [4]_ - 1:5:6_, 1:8:6_, 1:11:2_, 1:26:22
located [4]_ - 1:17:23_, 1:47:17_, 1:47:23_, 1:55:10
locations [10]_ - 1:14:18_, 1:15:17_, 1:17:2_, 1:17:6_, 1:17:9_, 1:48:18_, 1:49:4_, 1:50:22_, 1:59:25_, 1:60:2
look [15]_ - 1:7:19_, 1:14:16_, 1:16:19_, 1:16:25 _, 1:18:16_, 1:28:21_, 1:31:6 _, 1:31:17_, 1:32:16_, 1:33:23_, 1:37:3_, 1:53:5_, 1:60:10_, 1:62:23
looked [3]_ - 1:10:17_, 1:14:25_, 1:63:10
looking [7]_ - 1:7:20_, 1:13:18_, 1:28:9_, 1:29:22_, 1:31:19_, 1:32:14_, 1:47:2
looks [1]_ - 1:59:10
lower [1]_ - 1:20:7
lower-level [1]_ - 1:20:7

**M**

magistrate [11]_ - 1:6:9_, 1:9:21_, 1:10:12_, 1:11:20_, 1:18:14_, 1:22:16_, 1:24:19 _, 1:25:4_, 1:38:17_, 1:40:2_, 1:47:21
magistrate's [1]_ - 1:24:8
main [3]_ - 1:55:22_, 1:55:24_, 1:56:23
maintain [1]_ - 1:21:17
mandate [1]_ - 1:35:16
manner [8]_ - 1:16:2_, 1:17:16_, 1:24:18_, 1:32:2_, 1:46:10_, 1:47:4_, 1:49:20_, 1:60:20
Manual [1]_ - 1:61:24
Mar [12]_ - 1:14:3_, 1:15:9 _, 1:17:12_, 1:20:24_, 1:21:20_, 1:24:20_, 1:26:2_, 1:39:6_, 1:50:7_, 1:50:11_, 1:50:15_, 1:57:13
Mar-a-Lago [12]_ - 1:14:3 _, 1:15:9_, 1:17:12_, 1:20:24 _, 1:21:20_, 1:24:20_, 1:26:2 _, 1:39:6_, 1:50:7_, 1:50:11_, 1:50:15_, 1:57:13
marked [1]_ - 1:57:23

marker [1]_ - 1:34:11
markings [13]_ - 1:7:15_, 1:7:22_, 1:9:9_, 1:18:3_, 1:26:5_, 1:26:8_, 1:26:12_, 1:26:14_, 1:30:4_, 1:47:17_, 1:48:23_, 1:50:3_, 1:54:22
Martin [1]_ - 1:31:18
material [7]_ - 1:4:1_, 1:4:9_, 1:20:4_, 1:21:4_, 1:23:12_, 1:62:16
materiality [2]_ - 1:27:3_, 1:27:11
materials [4]_ - 1:26:17_, 1:54:2_, 1:54:20_, 1:55:4
matter [8]_ - 1:19:9_, 1:25:7_, 1:25:24_, 1:40:2_, 1:40:17_, 1:42:1_, 1:57:15_, 1:59:12
matters [5]_ - 1:9:22_, 1:15:5_, 1:36:24_, 1:39:21_, 1:59:12
mean [13]_ - 1:9:11_, 1:10:7_, 1:15:11_, 1:16:10_, 1:41:17_, 1:42:19_, 1:43:14 _, 1:45:14_, 1:48:10_, 1:48:13_, 1:51:12_, 1:52:23 _, 1:53:5
meaning [1]_ - 1:8:17
means [5]_ - 1:7:5_, 1:8:7 _, 1:8:8_, 1:11:12_, 1:39:22
meant [5]_ - 1:8:23_, 1:13:7_, 1:13:8_, 1:42:20_, 1:60:6
medical [4]_ - 1:5:10_, 1:54:14_, 1:55:4_, 1:57:20
meet [1]_ - 1:30:25
meets [2]_ - 1:21:4_, 1:25:11
mental [4]_ - 1:18:16_, 1:32:18_, 1:44:18_, 1:44:24
mention [3]_ - 1:51:3_, 1:51:6_, 1:58:11
mentioned [4]_ - 1:37:16 _, 1:56:4_, 1:58:11_, 1:58:14
mentions [1]_ - 1:40:10
mere [1]_ - 1:35:18
merits [1]_ - 1:31:16
merits-particularity [1] - 1:31:16
Michael [1]_ - 1:3:9
might [3]_ - 1:24:14_, 1:50:12_, 1:61:20
mind [2]_ - 1:22:22_, 1:35:25

minds [1]_ - 1:19:24
mini [1]_ - 1:53:11
minimum [1]_ - 1:33:17
minutes [2]_ - 1:34:12_, 1:59:22
mischaracterization [1] _ - 1:42:9
mislead [1]_ - 1:40:5
misrepresentation [10]_ - 1:20:4_, 1:21:5_, 1:21:9_, 1:27:7_, 1:28:10_, 1:36:10_, 1:36:13_, 1:36:21_, 1:41:3_, 1:41:8
misrepresentations [3]_ - 1:4:9_, 1:18:14_, 1:35:6
missed [1]_ - 1:36:14
missing [2]_ - 1:10:15_, 1:10:19
moment [8]_ - 1:3:24_, 1:34:18_, 1:38:25_, 1:49:6_, 1:49:19_, 1:49:23_, 1:57:7_, 1:57:22
months [2]_ - 1:27:14_, 1:61:23
moreover [1]_ - 1:57:5
morning [2]_ - 1:35:22_, 1:46:17
most [5]_ - 1:15:16_, 1:40:2_, 1:58:3_, 1:58:12
motion [19]_ - 1:4:2_, 1:4:6 _, 1:4:20_, 1:11:10_, 1:12:5_, 1:13:12_, 1:15:25_, 1:18:23 _, 1:25:2_, 1:27:2_, 1:29:10_, 1:33:16_, 1:34:2_, 1:36:9_, 1:36:12_, 1:60:13_, 1:62:1_, 1:62:8_, 1:65:1
motions [6]_ - 1:23:6_, 1:23:19_, 1:23:20_, 1:24:3_, 1:26:23_, 1:42:4
motivated [1]_ - 1:58:4
motivation [1]_ - 1:33:1
mouth [2]_ - 1:42:13_, 1:42:20
move [7]_ - 1:6:21_, 1:8:12 _, 1:11:8_, 1:39:2_, 1:53:15_, 1:55:19_, 1:56:11
moved [5]_ - 1:48:3_, 1:48:6_, 1:48:9_, 1:48:10_, 1:50:17
moving [2]_ - 1:27:16_, 1:41:7
MR [116]_ - 1:3:8_, 1:3:13_, 1:3:21_, 1:4:5_, 1:4:18_, 1:5:3_, 1:5:24_, 1:6:17_,

1:6:25_, 1:7:5_, 1:7:8_, 1:7:16_, 1:7:23_, 1:8:11_, 1:8:16_, 1:9:4_, 1:9:13_, 1:10:4_, 1:10:18_, 1:11:9_, 1:12:1_, 1:12:7_, 1:12:9_, 1:12:18_, 1:12:21_, 1:14:12 _, 1:14:15_, 1:15:13_, 1:17:7 _, 1:17:11_, 1:17:24_, 1:18:10_, 1:18:12_, 1:19:13 _, 1:20:1_, 1:20:6_, 1:20:16_, 1:20:19_, 1:21:6_, 1:21:11_, 1:21:14_, 1:22:2_, 1:22:7_, 1:22:13_, 1:22:19_, 1:23:2_, 1:24:1_, 1:24:9_, 1:24:17_, 1:24:22_, 1:25:19_, 1:25:24 _, 1:26:9_, 1:26:19_, 1:27:1_, 1:28:15_, 1:28:19_, 1:30:12 _, 1:31:5_, 1:32:8_, 1:33:11_, 1:34:5_, 1:34:7_, 1:34:10_, 1:37:15_, 1:37:19_, 1:37:23 _, 1:38:11_, 1:38:13_, 1:41:24_, 1:42:12_, 1:42:19 _, 1:42:25_, 1:43:10_, 1:44:3 _, 1:44:8_, 1:45:3_, 1:45:6_, 1:45:19_, 1:47:19_, 1:48:7_, 1:48:9_, 1:49:2_, 1:49:5_, 1:49:9_, 1:50:5_, 1:50:10_, 1:50:24_, 1:51:1_, 1:51:7_, 1:51:20_, 1:51:22_, 1:53:4_, 1:53:22_, 1:54:10_, 1:54:15 _, 1:55:11_, 1:55:13_, 1:55:21 _, 1:55:24_, 1:59:20_, 1:59:24 _, 1:60:6_, 1:61:20_, 1:62:3_, 1:63:3_, 1:63:14_, 1:63:17_, 1:63:20_, 1:64:2_, 1:64:4_, 1:64:9_, 1:64:13_, 1:64:16_, 1:64:19_, 1:64:24
MS [1]_ - 1:3:18
Murrell [1]_ - 1:3:22
must [7]_ - 1:34:20_, 1:35:2_, 1:35:17_, 1:35:19_, 1:35:20

**N**

name [1]_ - 1:37:16
named [3]_ - 1:45:10_, 1:46:18_, 1:52:13
namely [1]_ - 1:35:4
names [1]_ - 1:60:9
NARA [7]_ - 1:23:5_, 1:23:7_, 1:24:10_, 1:28:4_, 1:42:1_, 1:43:5_, 1:45:24
narrative [1]_ - 1:7:8
National [2]_ - 1:9:5_, 1:44:4
national [2]_ - 1:22:5_, 1:30:18

naturally [1]– 1:7:19
nature [2]– 1:33:8–, 1:56:9
Nauta [7]– 1:3:4–, 1:3:18
NDI [7]– 1:9:7–, 1:9:10–, 1:10:21–, 1:11:4–, 1:12:24–, 1:25:15–, 1:30:2
near [1]– 1:26:13
necessarily [1]– 1:14:1
necessary [11]– 1:9:16–, 1:10:9–, 1:10:25–, 1:18:16–, 1:18:21–, 1:21:23–, 1:26:20–, 1:29:11–, 1:37:24–, 1:53:3–, 1:60:21
necessity [4]– 1:34:14–, 1:34:16–, 1:37:7
need [7]– 1:4:12–, 1:4:25–, 1:10:8–, 1:33:8–, 1:39:3–, 1:44:22–, 1:49:21
needed [4]– 1:6:23–, 1:8:21–, 1:56:1–, 1:63:1
needs [3]– 1:9:25–, 1:10:8–, 1:36:18
negative [1]– 1:19:16
negligence [1]– 1:32:21
negligent [1]– 1:32:17
new [1]– 1:22:15
next [6]– 1:11:9–, 1:23:1–, 1:23:2–, 1:24:21–, 1:24:22
nice [1]– 1:65:2
night [1]– 1:29:14
nobody [1]– 1:31:11
non [3]– 1:5:24–, 1:6:18–, 1:7:10
non-exhaustive [2]– 1:5:24–, 1:6:18
non-legalese [1]– 1:7:10
none [3]– 1:38:3–, 1:57:5–, 1:59:15
nonexistent [1]– 1:44:19
note [2]– 1:26:10–, 1:39:12
noted [1]– 1:60:8
nothing [16]– 1:37:9–, 1:38:19–, 1:38:20–, 1:38:22–, 1:42:6–, 1:43:6–, 1:47:12–, 1:48:18–, 1:55:1–, 1:57:4–, 1:57:11–, 1:57:25–, 1:59:13–, 1:61:3–, 1:64:21
notice [1]– 1:8:12
notion [2]– 1:37:1–, 1:39:3

nowhere [2]– 1:43:12–, 1:43:14
nub [1]– 1:42:18
number [1]– 1:26:23
Number [3]– 1:3:3–, 1:39:21–, 1:52:6
numbers [1]– 1:50:9

O

objective [4]– 1:58:14–, 1:58:24–, 1:62:18–, 1:63:25
objectively [2]– 1:58:18–, 1:59:3
obligated [1]– 1:25:20
obligates [1]– 1:10:6
obligation [1]– 1:30:15
obligations [1]– 1:61:25
observed [1]– 1:47:1
obtain [2]– 1:22:14–, 1:39:5
obvious [2]– 1:22:9–, 1:22:16
obviously [5]– 1:10:19–, 1:14:25–, 1:28:20–, 1:30:15–, 1:43:6
occurred [1]– 1:45:6
offense [1]– 1:10:2
offenses [3]– 1:7:7–, 1:52:12–, 1:53:11
offer [5]– 1:7:12–, 1:9:15–, 1:35:21–, 1:36:5–, 1:52:19
offered [3]– 1:39:10–, 1:44:11–, 1:61:17
offers [1]– 1:7:11
office [7]– 1:14:23–, 1:21:20–, 1:22:14–, 1:49:2–, 1:49:3–, 1:49:10–, 1:50:4
Office [1]– 1:14:23
officer [3]– 1:32:10–, 1:39:15–, 1:59:4
officer's [4]– 1:29:23–, 1:31:17–, 1:59:8–, 1:59:10
officers [2]– 1:56:22–, 1:59:1
officers' [1]– 1:32:11
official [1]– 1:59:15
Oliveira [2]– 1:3:4–, 1:3:22
omission [9]– 1:23:1–, 1:23:2–, 1:25:8–, 1:25:13–, 1:25:15–, 1:26:24–, 1:36:14–, 1:36:20–, 1:43:10

omissions [15]– 1:4:9–, 1:18:13–, 1:21:7–, 1:21:13–, 1:21:14–, 1:22:24–, 1:27:1–, 1:27:6–, 1:27:25–, 1:28:10–, 1:35:6–, 1:35:11–, 1:39:10–, 1:43:9
omitted [4]– 1:23:12–, 1:38:4–, 1:41:2–, 1:45:12
omitting [1]– 1:36:15
once [1]– 1:34:2
one [35]– 1:7:19–, 1:11:18–, 1:13:25–, 1:16:3–, 1:19:24–, 1:23:2–, 1:23:18–, 1:23:20–, 1:26:19–, 1:28:10–, 1:28:19–, 1:29:4–, 1:30:14–, 1:39:8–, 1:39:11–, 1:39:21–, 1:41:7–, 1:42:6–, 1:43:10–, 1:45:3–, 1:46:24–, 1:48:11–, 1:53:6–, 1:54:10–, 1:57:2–, 1:57:6–, 1:57:9–, 1:58:14–, 1:58:21–, 1:59:9–, 1:63:6
ones [1]– 1:15:18
operating [1]– 1:43:21
operational [1]– 1:12:4
operations [1]– 1:16:8
opinion [9]– 1:35:15–, 1:51:24–, 1:52:5–, 1:53:14–, 1:58:10–, 1:58:16–, 1:58:19–, 1:58:22–, 1:63:22
opportunity [1]– 1:39:22
opposition [2]– 1:29:14–, 1:51:19
order [7]– 1:3:1–, 1:4:20–, 1:8:20–, 1:16:8–, 1:44:4–, 1:46:6–, 1:53:12
original [1]– 1:36:9
otherwise [4]– 1:35:4–, 1:37:10–, 1:56:18–, 1:61:18
outset [1]– 1:52:16
outside [2]– 1:31:19–, 1:43:23
overbreadth [1]– 1:17:14
overlap [1]– 1:25:2
overlapping [1]– 1:13:5
overlaps [1]– 1:29:11
overly [3]– 1:11:11–, 1:54:4–, 1:56:19
overt [1]– 1:40:9

P

p.m [1]– 1:65:3
packet [4]– 1:12:17–,

1:39:19–, 1:39:20–, 1:40:25
page [7]– 1:14:19–, 1:15:18–, 1:35:14–, 1:52:3–, 1:53:15–, 1:58:16–, 1:58:22
pages [1]– 1:58:21
painting [1]– 1:19:22
paper [5]– 1:14:4–, 1:25:10–, 1:26:13–, 1:29:7–, 1:31:9
papers [15]– 1:8:10–, 1:12:3–, 1:32:9–, 1:35:9–, 1:36:5–, 1:36:9–, 1:36:11–, 1:36:12–, 1:36:19–, 1:38:22–, 1:38:23–, 1:46:9–, 1:47:2–, 1:55:18–, 1:57:24
paperwork [2]– 1:17:22–, 1:17:25
paragraph [18]– 1:10:16–, 1:11:10–, 1:11:14–, 1:11:15–, 1:14:6–, 1:19:13–, 1:20:14–, 1:21:5–, 1:23:24–, 1:27:7–, 1:27:17–, 1:36:20–, 1:36:24–, 1:37:4–, 1:40:9–, 1:45:21–, 1:50:1–, 1:50:9
paragraphs [4]– 1:6:21–, 1:8:1–, 1:13:11
part [25]– 1:5:4–, 1:5:14–, 1:5:15–, 1:8:19–, 1:11:6–, 1:14:15–, 1:15:19–, 1:18:5–, 1:22:20–, 1:23:9–, 1:24:9–, 1:26:10–, 1:26:14–, 1:33:16–, 1:38:16–, 1:39:19–, 1:40:4–, 1:44:15–, 1:45:20–, 1:49:17–, 1:54:17–, 1:57:17–, 1:58:12–, 1:64:5
Part [1]– 1:49:16
participated [2]– 1:10:13–, 1:10:24
particular [9]– 1:6:4–, 1:29:23–, 1:53:2–, 1:53:12–, 1:53:16–, 1:56:16–, 1:59:8–, 1:62:24–, 1:64:12
particularity [19]– 1:4:11–, 1:5:5–, 1:7:25–, 1:9:22–, 1:10:5–, 1:11:6–, 1:14:10–, 1:17:4–, 1:28:23–, 1:31:16–, 1:33:24–, 1:45:1–, 1:46:14–, 1:49:18–, 1:51:24–, 1:52:18–, 1:54:6–, 1:59:17–, 1:62:22
particularized [1]– 1:50:6
particularly [2]– 1:8:5–, 1:46:25
parties [1]– 1:16:7
parts [2]– 1:4:20–, 1:16:3
passport [1]– 1:55:7

passports [1]₋ - 1:5:12

past [1]₋ - 1:33:24

PC [3]₋ - 1:22:11₋, 1:45:14 ₋, 1:46:17

Pellettieri [1]₋ - 1:3:9

Peloton [1]₋ - 1:18:4

pending [1]₋ - 1:29:9

penetrate [1]₋ - 1:15:3

people [6]₋ - 1:12:10₋, 1:23:13₋, 1:36:16₋, 1:37:11 ₋, 1:37:13₋, 1:47:9

percolate [1]₋ - 1:33:16

perhaps [1]₋ - 1:58:17

period [1]₋ - 1:10:23

periphery [1]₋ - 1:54:8

permissible [2]₋ - 1:8:20 ₋, 1:13:2

permit [1]₋ - 1:56:10

permitted [1]₋ - 1:16:17

person [1]₋ - 1:37:15

personal [6]₋ - 1:5:9₋, 1:25:1₋, 1:25:25₋, 1:26:7₋, 1:39:23₋, 1:43:11

personally [1]₋ - 1:37:23

personnel [1]₋ - 1:18:20

perspective [4]₋ - 1:31:4 ₋, 1:31:5₋, 1:32:12₋, 1:33:21

pertinent [1]₋ - 1:58:13₋, 1:58:24

photographed [2]₋ - 1:16:23₋, 1:17:18

photographs [1]₋ - 1:17:1

phrase [1]₋ - 1:11:9

physical [1]₋ - 1:7:15₋, 1:7:21

picture [1]₋ - 1:19:21

piece [8]₋ - 1:14:4₋, 1:15:6 ₋, 1:25:10₋, 1:26:13₋, 1:29:7 ₋, 1:31:9₋, 1:56:10

pieces [1]₋ - 1:31:13

pin [1]₋ - 1:49:22

pincite [1]₋ - 1:51:23

Pine [1]₋ - 1:14:22

place [15]₋ - 1:9:18₋, 1:11:3₋, 1:11:11₋, 1:11:18₋, 1:12:19₋, 1:37:22₋, 1:38:15 ₋, 1:44:5₋, 1:46:7₋, 1:46:21₋, 1:48:10₋, 1:49:14₋, 1:56:15 ₋, 1:56:23₋, 1:58:9

places [13]₋ - 1:4:24₋, 1:14:16₋, 1:23:18₋, 1:45:14 ₋, 1:46:16₋, 1:46:18₋, 1:47:9

₋, 1:47:13₋, 1:48:1₋, 1:48:15 ₋, 1:49:11₋, 1:50:7₋, 1:50:11

plainly [7]₋ - 1:41:12₋, 1:45:25₋, 1:46:20₋, 1:47:14 ₋, 1:47:25₋, 1:48:20₋, 1:52:20

plan [1]₋ - 1:12:4

planned [1]₋ - 1:16:8

play [1]₋ - 1:27:17

plenty [1]₋ - 1:28:21

podium [1]₋ - 1:60:20

point [52]₋ - 1:7:24₋, 1:8:14 ₋, 1:8:16₋, 1:15:11₋, 1:20:20 ₋, 1:21:2₋, 1:22:9₋, 1:22:16₋, 1:24:2₋, 1:24:16₋, 1:27:11₋, 1:27:23₋, 1:32:8₋, 1:34:10₋, 1:35:9₋, 1:36:22₋, 1:37:9₋, 1:38:25₋, 1:39:8₋, 1:39:12₋, 1:40:18₋, 1:40:21₋, 1:41:2₋, 1:41:25₋, 1:43:16₋, 1:45:3₋, 1:46:12₋, 1:48:11₋, 1:48:13 ₋, 1:49:19₋, 1:50:1₋, 1:51:25 ₋, 1:53:8₋, 1:53:13₋, 1:53:19 ₋, 1:54:24₋, 1:55:2₋, 1:55:3₋, 1:55:22₋, 1:55:24₋, 1:57:19 ₋, 1:58:15₋, 1:60:2₋, 1:60:7₋, 1:60:19₋, 1:61:8₋, 1:61:14₋, 1:61:22₋, 1:63:6₋, 1:64:12₋, 1:64:14

pointed [3]₋ - 1:40:15₋, 1:47:15₋, 1:48:17

pointing [1]₋ - 1:20:14

points [6]₋ - 1:21:6₋, 1:21:7₋, 1:28:15₋, 1:39:21₋, 1:43:12₋, 1:55:13

police [1]₋ - 1:32:23

policy [1]₋ - 1:30:22

politically [1]₋ - 1:58:4

portion [1]₋ - 1:4:4

posed [1]₋ - 1:19:21

position [13]₋ - 1:10:8₋, 1:10:21₋, 1:13:15₋, 1:13:25 ₋, 1:22:23₋, 1:29:4₋, 1:30:7₋, 1:33:14₋, 1:36:2₋, 1:37:21₋, 1:40:7₋, 1:45:15₋, 1:56:15

positions [1]₋ - 1:19:8

possessing [1]₋ - 1:57:16

possession [1]₋ - 1:54:1

post [4]₋ - 1:22:6₋, 1:22:18 ₋, 1:40:17₋, 1:42:4

post-indictment [1]₋ - 1:42:4

post-presidency [3]₋ - 1:22:6₋, 1:22:18₋, 1:40:17

potential [2]₋ - 1:20:21₋,

1:29:1

potentially [4]₋ - 1:14:25₋, 1:15:2₋, 1:23:17₋, 1:43:16

PRA [3]₋ - 1:13:12₋, 1:39:12₋, 1:43:25

practical [1]₋ - 1:20:1

practice [2]₋ - 1:18:22₋, 1:25:7

precedes [1]₋ - 1:37:6

preferable [2]₋ - 1:37:21₋, 1:53:3

prejudice [1]₋ - 1:17:8

preliminary [1]₋ - 1:34:23

premature [1]₋ - 1:19:14

premise [1]₋ - 1:42:8

premises [4]₋ - 1:15:2₋, 1:25:9₋, 1:45:23₋, 1:47:23

prepared [1]₋ - 1:29:13

preparing [1]₋ - 1:41:6

presence [1]₋ - 1:36:23

presentation [1]₋ - 1:28:13

presented [1]₋ - 1:40:2

presidency [5]₋ - 1:21:25 ₋, 1:22:6₋, 1:22:11₋, 1:22:18 ₋, 1:40:17

President [22]₋ - 1:3:14₋, 1:12:14₋, 1:14:23₋, 1:15:23 ₋, 1:16:24₋, 1:17:14₋, 1:18:3 ₋, 1:21:15₋, 1:21:16₋, 1:21:19₋, 1:22:13₋, 1:22:21 ₋, 1:24:11₋, 1:25:5₋, 1:25:25 ₋, 1:27:20₋, 1:29:18₋, 1:39:7 ₋, 1:40:16₋, 1:43:22₋, 1:47:25

President's [7]₋ - 1:13:14 ₋, 1:14:21₋, 1:24:25₋, 1:39:17₋, 1:49:2₋, 1:49:3₋, 1:50:17

president's [1]₋ - 1:47:18

Presidential [5]₋ - 1:23:8 ₋, 1:24:23₋, 1:25:16₋, 1:43:21₋, 1:44:2

presidential [10]₋ - 1:13:10₋, 1:13:16₋, 1:13:18 ₋, 1:13:20₋, 1:25:1₋, 1:25:12 ₋, 1:26:3₋, 1:53:23₋, 1:54:21 ₋, 1:57:24

presidents [1]₋ - 1:39:4

presumably [1]₋ - 1:6:9

presume [1]₋ - 1:56:22

presumptively [1]₋ - 1:3:25

pretrial [1]₋ - 1:23:19

pretty [2]₋ - 1:31:12₋, 1:44:18

previously [1]₋ - 1:3:5

principally [1]₋ - 1:40:3

principles [3]₋ - 1:51:2₋, 1:52:17

privileged [1]₋ - 1:3:25

probable [38]₋ - 1:14:17₋, 1:15:14₋, 1:15:17₋, 1:16:13 ₋, 1:17:13₋, 1:17:19₋, 1:18:15₋, 1:20:18₋, 1:22:21 ₋, 1:23:17₋, 1:24:8₋, 1:24:12 ₋, 1:24:16₋, 1:24:19₋, 1:27:5 ₋, 1:27:9₋, 1:27:22₋, 1:30:25 ₋, 1:35:6₋, 1:37:1₋, 1:38:9₋, 1:38:17₋, 1:38:21₋, 1:40:20 ₋, 1:41:12₋, 1:41:14₋, 1:41:23₋, 1:42:17₋, 1:42:24 ₋, 1:43:7₋, 1:45:9₋, 1:46:1₋, 1:47:19₋, 1:50:2₋, 1:50:6₋, 1:50:19₋, 1:59:10₋, 1:60:1

problem [3]₋ - 1:45:13₋, 1:45:15₋, 1:46:4

problems [3]₋ - 1:12:24₋, 1:13:4₋, 1:28:23

proceed [1]₋ - 1:5:1

proceedings [1]₋ - 1:65:3

produced [1]₋ - 1:19:7

professionally [1]₋ - 1:48:16₋, 1:61:1

prohibit [1]₋ - 1:6:6₋, 1:10:21

pronounce [1]₋ - 1:51:17

proof [2]₋ - 1:35:21₋, 1:36:5

proper [1]₋ - 1:53:24

property [18]₋ - 1:9:25₋, 1:15:6₋, 1:15:9₋, 1:15:12₋, 1:16:20₋, 1:46:2₋, 1:46:15₋, 1:46:25₋, 1:47:1₋, 1:47:6₋, 1:50:20₋, 1:50:23₋, 1:52:11 ₋, 1:52:13₋, 1:56:2₋, 1:56:8₋, 1:56:17₋, 1:60:23

proposition [1]₋ - 1:26:6

propositions [1]₋ - 1:56:11

prosecutors [2]₋ - 1:61:23₋, 1:62:20

protocol [1]₋ - 1:57:18

proves [2]₋ - 1:43:16₋, 1:49:19

provide [8]₋ - 1:5:16₋, 1:6:4₋, 1:6:13₋, 1:10:6₋, 1:10:23₋, 1:10:25₋, 1:11:22 ₋, 1:50:9

provided [5] - 1:10:18_, 1:11:23_, 1:21:19_, 1:31:23 _, 1:61:18

providing [1] - 1:11:19

provision [1] - 1:45:23

provisions [2] - 1:6:5_, 1:6:8

public [2] - 1:18:19_, 1:61:9

purported [4] - 1:16:25_, 1:21:13_, 1:26:2_, 1:43:9

purposes [3] - 1:9:25_, 1:17:25_, 1:24:8

pursuant [1] - 1:18:21

put [8] - 1:32:1_, 1:34:11_, 1:37:12_, 1:38:2_, 1:42:13_, 1:42:20_, 1:49:22_, 1:61:6

putting [1] - 1:27:3

Q

quarters [2] - 1:47:11_, 1:47:12

questioning [1] - 1:53:9

questions [7] - 1:15:25_, 1:17:15_, 1:20:9_, 1:27:3_, 1:32:1_, 1:46:11_, 1:61:9

queued [1] - 1:23:5

quick [2] - 1:11:24_, 1:32:8

quickly [2] - 1:57:3_, 1:57:8

quite [5] - 1:36:19_, 1:37:19_, 1:39:23_, 1:47:3

quotation [1] - 1:11:15

quote [9] - 1:5:19_, 1:11:16_, 1:15:23_, 1:15:24 _, 1:16:6_, 1:19:4_, 1:31:17_, 1:32:23_, 1:35:11

quoted [3] - 1:6:8_, 1:8:18_, 1:63:4

quoting [2] - 1:35:11_, 1:56:7

R

raise [2] - 1:61:22_, 1:64:11

ranks [1] - 1:62:5

rare [2] - 1:35:11_, 1:39:23

rationales [1] - 1:39:9

reach [1] - 1:61:20

read [3] - 1:7:18_, 1:37:5

_, 1:57:7

reading [2] - 1:55:19_, 1:58:19

real [1] - 1:34:13

reality [1] - 1:20:2

really [6] - 1:20:18_, 1:39:12_, 1:41:18_, 1:42:17 _, 1:61:15_, 1:61:17

reason [13] - 1:5:14_, 1:5:15_, 1:37:8_, 1:40:24_, 1:41:4_, 1:41:5_, 1:42:25_, 1:44:9_, 1:46:2_, 1:50:15_, 1:50:16_, 1:57:12_, 1:58:8

reasonable [7] - 1:16:3_, 1:19:23_, 1:30:15_, 1:43:23 _, 1:53:14_, 1:53:15_, 1:58:18

reasonableness [1] - 1:16:12

reasonably [2] - 1:56:22 _, 1:59:4

reasons [8] - 1:13:11_, 1:18:18_, 1:23:20_, 1:37:25 _, 1:38:8_, 1:40:19_, 1:46:11 _, 1:47:20

rebuttal [1] - 1:59:19

receive [1] - 1:8:14

received [2] - 1:21:25_, 1:39:6

receiving [1] - 1:22:10

recess [1] - 1:59:23

reckless [7] - 1:32:17_, 1:32:21_, 1:33:8_, 1:34:25_, 1:35:19_, 1:40:12_, 1:41:4

recklessness [2] - 1:33:17_, 1:35:25

recognized [1] - 1:37:2

record [9] - 1:13:18_, 1:33:9_, 1:33:14_, 1:34:19_, 1:34:22_, 1:51:18_, 1:54:14 _, 1:56:15_, 1:62:19

Records [7] - 1:11:10_, 1:11:17_, 1:23:8_, 1:24:23_, 1:25:16_, 1:43:21_, 1:44:2

records [18] - 1:11:16_, 1:12:22_, 1:13:4_, 1:13:10_, 1:13:16_, 1:13:20_, 1:25:1_, 1:25:12_, 1:25:25_, 1:26:3_, 1:43:11_, 1:44:13_, 1:52:6_, 1:53:23_, 1:54:21_, 1:55:4_, 1:57:20

recovered [1] - 1:17:5

reference [4] - 1:12:8_, 1:12:9_, 1:13:10_, 1:38:24

referenced [2] - 1:17:6_,

1:60:9

references [6] - 1:11:13 _, 1:14:12_, 1:15:1_, 1:40:9_, 1:44:1_, 1:60:3

referencing [1] - 1:33:7

referral [3] - 1:23:4_, 1:42:16_, 1:43:5

referred [2] - 1:14:23_, 1:42:1

referring [1] - 1:54:8

refers [1] - 1:54:12

reflect [2] - 1:51:18_, 1:62:13

reflected [1] - 1:10:24

regarding [1] - 1:60:16

regardless [2] - 1:41:12 _, 1:50:21

reiterate [3] - 1:34:20_, 1:35:13_, 1:44:20

relate [3] - 1:14:21_, 1:21:15_, 1:62:8

related [3] - 1:4:10_, 1:40:21_, 1:43:5

relates [4] - 1:5:4_, 1:23:3_, 1:24:22_, 1:39:12

relating [4] - 1:5:6_, 1:15:25_, 1:23:16

relatively [1] - 1:20:12

relevant [14] - 1:9:19_, 1:17:21_, 1:21:1_, 1:23:8_, 1:29:15_, 1:30:1_, 1:30:5_, 1:41:6_, 1:44:13_, 1:47:5_, 1:60:12_, 1:62:7_, 1:62:14_, 1:62:15

reliable [1] - 1:62:19

reliance [1] - 1:58:18

relied [2] - 1:24:18_, 1:29:5

relies [1] - 1:23:9

remained [1] - 1:46:1

remaining [1] - 1:4:6

remains [1] - 1:39:19

remedy [1] - 1:17:17

remember [1] - 1:38:13

reminds [1] - 1:44:9

remotely [8] - 1:37:24_, 1:38:20_, 1:41:6_, 1:41:14_, 1:43:1_, 1:47:12_, 1:57:17_, 1:57:25

render [1] - 1:54:22

repeated [1] - 1:64:19

repeating [1] - 1:10:10

Reporter [2] - 1:35:14_, 1:58:23

representation [2] - 1:20:25_, 1:61:5

representations [5] - 1:20:22_, 1:62:10_, 1:62:12 _, 1:62:20_, 1:63:9

request [6] - 1:18:23_, 1:20:17_, 1:36:24_, 1:37:8_, 1:38:16_, 1:41:20

requested [1] - 1:39:14

require [4] - 1:6:11_, 1:27:10_, 1:32:24_, 1:34:3

required [10] - 1:21:17_, 1:22:13_, 1:31:6_, 1:34:22_, 1:35:24_, 1:36:3_, 1:39:5_, 1:40:11_, 1:53:10_, 1:56:14

requirement [3] - 1:10:5 _, 1:14:10_, 1:34:15

requirements [1] - 1:32:22

requires [6] - 1:5:4_, 1:7:25_, 1:12:1_, 1:16:16_, 1:36:5_, 1:61:6

residential [1] - 1:27:20

Residential [1] - 1:14:21

resolve [1] - 1:37:24

resolved [2] - 1:12:2_, 1:32:3

respect [18] - 1:4:7_, 1:4:21_, 1:4:23_, 1:5:5_, 1:5:17_, 1:6:2_, 1:6:24_, 1:14:18_, 1:15:17_, 1:17:2_, 1:20:19_, 1:22:23_, 1:27:10 _, 1:33:13_, 1:33:17_, 1:46:8 _, 1:60:2_, 1:61:21

respectfully [1] - 1:61:3

respects [1] - 1:60:19

respond [1] - 1:63:17

rest [2] - 1:21:6_, 1:65:2

restriction [3] - 1:7:16_, 1:8:2_, 1:11:6

restrictions [1] - 1:8:7

result [1] - 1:17:10

resulted [1] - 1:14:10

retain [1] - 1:43:22

retention [3] - 1:9:5_, 1:9:8_, 1:44:12

return [1] - 1:44:5

returned [1] - 1:55:6

revealed [1] - 1:41:17

review [4] - 1:11:25_, 1:12:6_, 1:12:17_, 1:55:4

reviewed [3]₋ - 1:12:13₋, 1:24:16₋, 1:52:17

rights [3]₋ - 1:17:14₋, 1:29:18₋, 1:47:21

rise [2]₋ - 1:33:6₋, 1:33:9

risk [1]₋ - 1:20:20

risks [4]₋ - 1:19:21₋, 1:20:11₋, 1:20:25₋, 1:22:5

room [8]₋ - 1:14:20₋, 1:18:3₋, 1:46:24₋, 1:48:6₋, 1:49:1₋, 1:49:10₋, 1:50:4

rooms [5]₋ - 1:15:23₋, 1:16:6₋, 1:17:12₋, 1:17:18₋, 1:47:8

Rosner [1]₋ - 1:8:8

route [2]₋ - 1:29:1₋, 1:38:7

rubric [2]₋ - 1:34:16₋, 1:59:16

rule [3]₋ - 1:4:12₋, 1:32:5₋, 1:32:15

rummaging [4]₋ - 1:16:17₋, 1:48:14₋, 1:60:25

run [1]₋ - 1:63:10

## S

S.Ct [1]₋ - 1:58:23

S.D.N.Y [1]₋ - 1:8:9

safe [1]₋ - 1:20:23

Sage [1]₋ - 1:52:7

salient [2]₋ - 1:43:16₋, 1:52:1

sanction [1]₋ - 1:33:6

sanctioned [1]₋ - 1:52:20

Santarelli [2]₋ - 1:55:17₋, 1:56:10

Sasha [1]₋ - 1:3:18

satisfied [1]₋ - 1:64:1

satisfy [1]₋ - 1:34:21

scene [1]₋ - 1:5:13

scenes [1]₋ - 1:42:6

schedule [1]₋ - 1:4:14

scope [9]₋ - 1:16:13₋, 1:17:15₋, 1:43:3₋, 1:45:18₋, 1:47:14₋, 1:48:20₋, 1:53:17₋, 1:54:3₋, 1:57:11

score [2]₋ - 1:54:5

seal [1]₋ - 1:20:10

sealed [2]₋ - 1:3:5₋, 1:3:25

sealing [4]₋ - 1:20:17₋, 1:36:25₋, 1:37:8₋, 1:38:16

search [75]₋ - 1:4:9₋,

1:7:21₋, 1:10:13₋, 1:10:24₋, 1:11:25₋, 1:12:12₋, 1:13:3₋, 1:13:9₋, 1:13:14₋, 1:13:24₋, 1:14:3₋, 1:14:4₋, 1:15:4₋, 1:15:6₋, 1:15:8₋, 1:15:14₋, 1:16:2₋, 1:16:13₋, 1:16:19₋, 1:16:22₋, 1:17:12₋, 1:17:13₋, 1:17:14₋, 1:17:15₋, 1:17:20₋, 1:17:21₋, 1:18:6₋, 1:18:21₋, 1:18:24₋, 1:19:13₋, 1:20:4₋, 1:22:3₋, 1:22:21₋, 1:23:8₋, 1:24:20₋, 1:25:10₋, 1:26:15₋, 1:29:7₋, 1:29:11₋, 1:29:16₋, 1:30:11₋, 1:30:15₋, 1:31:24₋, 1:31:25₋, 1:32:3₋, 1:33:18₋, 1:36:17₋, 1:37:21₋, 1:40:1₋, 1:40:8₋, 1:44:12₋, 1:45:21₋, 1:46:10₋, 1:46:17₋, 1:46:20₋, 1:46:22₋, 1:47:5₋, 1:47:20₋, 1:48:19₋, 1:49:21₋, 1:50:19₋, 1:51:25₋, 1:53:10₋, 1:55:8₋, 1:56:25₋, 1:57:5₋, 1:57:9₋, 1:57:17₋, 1:58:9₋, 1:59:5₋, 1:59:14₋, 1:60:17₋, 1:60:20₋, 1:61:4₋, 1:62:6

searched [9]₋ - 1:4:24₋, 1:14:16₋, 1:14:25₋, 1:15:22₋, 1:16:23₋, 1:16:24₋, 1:46:7₋, 1:49:14₋, 1:56:17

searches [1]₋ - 1:33:3

searching [16]₋ - 1:6:4₋, 1:8:22₋, 1:9:21₋, 1:10:7₋, 1:10:12₋, 1:11:22₋, 1:15:21₋, 1:17:9₋, 1:17:19₋, 1:29:25₋, 1:30:2₋, 1:30:8₋, 1:32:10₋, 1:33:1₋, 1:46:24₋, 1:47:13

seated [1]₋ - 1:3:2

second [7]₋ - 1:4:22₋, 1:16:6₋, 1:39:2₋, 1:40:14₋, 1:40:24₋, 1:54:10₋, 1:57:12

seconds [1]₋ - 1:63:19

secrecy [1]₋ - 1:37:7

Section [2]₋ - 1:7:6₋, 1:11:15

section [1]₋ - 1:36:25

security [3]₋ - 1:21:17₋, 1:22:14₋, 1:30:18

see [7]₋ - 1:22:8₋, 1:25:17₋, 1:27:20₋, 1:33:15₋, 1:60:10₋, 1:60:15₋, 1:63:5

seeing [1]₋ - 1:63:1

seek [2]₋ - 1:18:24₋, 1:26:2

seeking [1]₋ - 1:15:3

seize [5]₋ - 1:5:8₋, 1:29:7₋, 1:52:21₋, 1:60:14

seized [16]₋ - 1:4:22₋, 1:5:5₋, 1:5:17₋, 1:9:25₋, 1:17:10₋, 1:26:13₋, 1:48:18₋, 1:49:17₋, 1:52:4₋, 1:54:3₋, 1:54:14₋, 1:56:1₋, 1:56:18₋, 1:56:20₋, 1:57:20₋, 1:57:24

seizing [3]₋ - 1:6:1₋, 1:6:14₋, 1:31:8

seizure [8]₋ - 1:5:19₋, 1:14:7₋, 1:26:11₋, 1:30:4₋, 1:53:19₋, 1:54:18₋, 1:54:23₋, 1:55:2

self [1]₋ - 1:13:13

self-evident [1]₋ - 1:13:13

sensitive [1]₋ - 1:21:19

sentence [4]₋ - 1:23:23₋, 1:37:5₋, 1:37:6

separate [1]₋ - 1:34:17

September [3]₋ - 1:24:4₋, 1:24:7₋, 1:41:18

series [1]₋ - 1:18:13

serious [1]₋ - 1:27:25

serve [1]₋ - 1:8:2

session [2]₋ - 1:3:5₋, 1:3:25

set [2]₋ - 1:31:25₋, 1:59:21

sets [1]₋ - 1:5:12

setting [3]₋ - 1:28:20₋, 1:30:5₋, 1:36:8

several [2]₋ - 1:34:12₋, 1:60:19

share [1]₋ - 1:20:13

show [1]₋ - 1:22:20

shower [1]₋ - 1:48:11

showing [15]₋ - 1:27:9₋, 1:27:22₋, 1:33:17₋, 1:34:1₋, 1:34:23₋, 1:35:1₋, 1:35:5₋, 1:35:23₋, 1:36:3₋, 1:39:1₋, 1:40:11₋, 1:40:22₋, 1:44:18

side [1]₋ - 1:51:15

signed [1]₋ - 1:18:17

significance [1]₋ - 1:6:12

significant [2]₋ - 1:19:16₋, 1:33:20

silos [1]₋ - 1:34:17

similar [1]₋ - 1:6:13

simple [1]₋ - 1:43:4

single [1]₋ - 1:15:7

single-family [1]₋ - 1:15:7

six [7]₋ - 1:14:18₋, 1:15:17₋, 1:45:9₋, 1:45:14₋, 1:46:16₋, 1:46:17₋, 1:59:25

small [1]₋ - 1:47:3

somewhat [1]₋ - 1:53:6

son [3]₋ - 1:16:24₋, 1:18:4₋, 1:57:10

son's [1]₋ - 1:47:12

sorry [3]₋ - 1:43:13₋, 1:51:1₋, 1:58:7

sort [12]₋ - 1:5:12₋, 1:5:17₋, 1:7:9₋, 1:10:16₋, 1:14:21₋, 1:17:23₋, 1:23:19₋, 1:28:22₋, 1:32:12₋, 1:33:5₋, 1:54:7₋, 1:63:24

sorts [2]₋ - 1:42:4₋, 1:54:25

sought [1]₋ - 1:26:17

space [1]₋ - 1:30:18

speaking [1]₋ - 1:17:24

speaks [1]₋ - 1:16:20

Special [1]₋ - 1:28:14

specific [8]₋ - 1:8:17₋, 1:16:21₋, 1:20:14₋, 1:30:5₋, 1:33:1₋, 1:50:11₋, 1:56:9₋, 1:57:3

specifically [7]₋ - 1:6:24₋, 1:27:15₋, 1:37:15₋, 1:45:22₋, 1:54:2₋, 1:58:15₋, 1:60:8

specificity [1]₋ - 1:5:16

speculative [1]₋ - 1:36:4

spend [1]₋ - 1:39:3

spent [3]₋ - 1:39:3₋, 1:51:10₋, 1:58:3

spoliation [4]₋ - 1:29:10₋, 1:33:16₋, 1:34:2₋, 1:60:13

staff [1]₋ - 1:15:24

stage [1]₋ - 1:39:25

staging [1]₋ - 1:31:23

staleness [7]₋ - 1:27:12₋, 1:38:25₋, 1:45:4₋, 1:45:13₋, 1:45:15₋, 1:45:20₋, 1:46:4

standard [4]₋ - 1:7:9₋, 1:31:1₋, 1:34:20₋, 1:58:21

standards [2]₋ - 1:32:24₋, 1:62:18

standpoint [1]₋ - 1:5:25

Stanley [1]₋ - 1:3:19

stark [1]₋ - 1:6:7

start [3]₋ - 1:31:7₋, 1:46:6₋, 1:51:8

started [4]₋ - 1:3:6₋, 1:22:15₋, 1:23:7₋, 1:41:18

starting [5]₋ - 1:4:3₋, 1:5:2₋, 1:24:6₋, 1:33:15₋, 1:46:7

starts [2]_ - 1:5:17_, 1:6:2

state [6]_ - 1:18:16_, 1:22:22_, 1:32:18_, 1:35:25 _, 1:44:18_, 1:44:24

statement [3]_ - 1:20:8_, 1:21:3_, 1:45:18

statements [4]_ - 1:18:19 _, 1:34:24_, 1:35:24_, 1:60:22

states [2]_ - 1:35:9_, 1:52:15

States [5]_ - 1:3:3_, 1:3:10 _, 1:21:16_, 1:55:17_, 1:63:23

stating [1]_ - 1:35:10

statute [1]_ - 1:8:18

statutes [10]_ - 1:6:10_, 1:8:4_, 1:8:6_, 1:8:22_, 1:10:21_, 1:44:10_, 1:51:11 _, 1:51:13_, 1:52:20_, 1:53:6

statutory [1]_ - 1:5:19_, 1:6:5_, 1:6:24_, 1:12:23_, 1:22:22_, 1:24:23

stay [2]_ - 1:40:15_, 1:62:1

staying [1]_ - 1:47:9

stemming [1]_ - 1:4:1

still [4]_ - 1:9:1_, 1:26:7_, 1:27:4_, 1:42:16

stop [1]_ - 1:51:3

storage [6]_ - 1:14:19_, 1:14:20_, 1:22:3_, 1:49:1_, 1:49:10_, 1:50:4

stored [1]_ - 1:18:2

storing [1]_ - 1:20:23

straightforward [2]_ - 1:62:10_, 1:62:12

string [1]_ - 1:8:14

strongly [1]_ - 1:27:21

struggling [1]_ - 1:13:1

subjective [4]_ - 1:32:11_, 1:58:25_, 1:59:9_, 1:59:11

submission [3]_ - 1:21:10 _, 1:50:25_, 1:52:24

submit [1]_ - 1:36:5

submitted [2]_ - 1:13:1_, 1:62:25

subparagraph [1]_ - 1:31:8

Subsection [2]_ - 1:54:9_, 1:55:10

Subsections [2]_ - 1:5:23 _, 1:7:19

subsidiaries [1]_ - 1:52:8

substance [1]_ - 1:61:12

substantial [3]_ - 1:34:23 _, 1:35:23_, 1:36:3

substantiate [1]_ - 1:46:1

substantive [1]_ - 1:20:18

substantively [1]_ - 1:43:24

suburbs [1]_ - 1:15:7

sufficient [6]_ - 1:5:16_, 1:10:6_, 1:17:3_, 1:44:25_, 1:45:25_, 1:49:18

sufficiently [1]_ - 1:53:12

suggest [8]_ - 1:9:24_, 1:35:23_, 1:46:10_, 1:47:16 _, 1:48:4_, 1:48:5_, 1:49:24_, 1:50:22

suggested [4]_ - 1:5:25_, 1:25:4_, 1:46:19_, 1:57:13

suggesting [2]_ - 1:38:23 _, 1:53:9

suggestion [2]_ - 1:25:8_, 1:58:5

Suite [1]_ - 1:14:21

suite [1]_ - 1:27:20

summaries [1]_ - 1:7:9

summarize [2]_ - 1:5:21_, 1:61:11

summarized [1]_ - 1:15:18

summarizing [1]_ - 1:41:21

superior [6]_ - 1:19:25_, 1:37:14_, 1:37:16_, 1:37:21 _, 1:38:7_, 1:61:16

supplemental [1]_ - 1:8:13

supplied [1]_ - 1:50:2

support [1]_ - 1:61:19

supported [1]_ - 1:35:18

supports [1]_ - 1:22:22

suppress [1]_ - 1:4:2

suppression [2]_ - 1:17:17_, 1:26:20

Supreme [6]_ - 1:16:18_, 1:29:21_, 1:32:22_, 1:35:14 _, 1:58:22_, 1:63:22

surrounding [2]_ - 1:53:24_, 1:54:2

suspect [1]_ - 1:41:5

swear [1]_ - 1:41:25

swore [4]_ - 1:19:14_, 1:20:7_, 1:42:1_, 1:43:20

systemic [1]_ - 1:32:21

T

table [1]_ - 1:36:8

table-setting [1]_ - 1:36:8

tactics [1]_ - 1:64:16

talks [5]_ - 1:29:22_, 1:31:8 _, 1:31:19_, 1:32:20_, 1:32:23

target [1]_ - 1:54:20

tat [1]_ - 1:63:25

tax [1]_ - 1:5:11

team's [1]_ - 1:55:4

technical [1]_ - 1:10:7

tension [5]_ - 1:32:13_, 1:38:1_, 1:38:3_, 1:61:6_, 1:62:18

term [16]_ - 1:9:7_, 1:9:11_, 1:9:12_, 1:9:16_, 1:9:18_, 1:9:20_, 1:10:25_, 1:11:13_, 1:12:23_, 1:12:24_, 1:13:2_, 1:13:4_, 1:13:13_, 1:13:17_, 1:13:21

terms [8]_ - 1:10:7_, 1:11:19_, 1:30:2_, 1:30:9_, 1:48:22_, 1:49:25_, 1:56:16 _, 1:56:19

test [3]_ - 1:57:6_, 1:59:9_, 1:63:25

testified [3]_ - 1:60:17_, 1:60:20_, 1:62:4

testifies [1]_ - 1:62:16

testimony [6]_ - 1:9:1_, 1:19:2_, 1:19:19_, 1:28:4_, 1:61:9_, 1:61:10

text [1]_ - 1:7:8_, 1:8:18_, 1:13:15_, 1:40:10

Thakur [1]_ - 1:3:9

THE [118]_ - 1:3:2_, 1:3:11 _, 1:3:16_, 1:3:20_, 1:3:23_, 1:4:6_, 1:5:1_, 1:5:22_, 1:6:15_, 1:6:22_, 1:7:3_, 1:7:7_, 1:7:14_, 1:7:18_, 1:8:10_, 1:8:12_, 1:8:25_, 1:9:10_, 1:9:24_, 1:10:14_, 1:11:8_, 1:11:24_, 1:12:4_, 1:12:8_, 1:12:16_, 1:12:20_, 1:14:11_, 1:14:14_, 1:15:11 _, 1:17:5_, 1:17:8_, 1:17:22_, 1:18:8_, 1:18:11_, 1:19:9_, 1:19:23_, 1:20:3_, 1:20:14_, 1:20:17_, 1:21:3_, 1:21:8_, 1:21:12_, 1:21:24_, 1:22:6_, 1:22:8_, 1:22:18_, 1:23:1_, 1:23:23_, 1:24:5_, 1:24:14_,

1:24:21_, 1:25:17_, 1:25:21 _, 1:26:5_, 1:26:17_, 1:26:24 _, 1:28:12_, 1:28:18_, 1:30:7 _, 1:30:22_, 1:32:7_, 1:33:5_, 1:34:4_, 1:34:6_, 1:34:9_, 1:37:13_, 1:37:18_, 1:37:20 _, 1:38:6_, 1:38:12_, 1:41:16_, 1:42:11_, 1:42:13_, 1:42:23_, 1:43:8_, 1:44:1_, 1:44:7_, 1:44:25_, 1:45:5_, 1:45:17_, 1:47:16_, 1:48:5_, 1:48:8_, 1:48:22_, 1:49:4_, 1:49:8_, 1:49:25_, 1:50:8_, 1:50:21_, 1:50:25_, 1:51:5_, 1:51:19_, 1:51:21_, 1:52:23 _, 1:53:21_, 1:54:7_, 1:54:12 _, 1:55:9_, 1:55:12_, 1:55:18 _, 1:55:22_, 1:59:18_, 1:59:21_, 1:60:5_, 1:61:14_, 1:62:1_, 1:62:22_, 1:63:13_, 1:63:16_, 1:63:18_, 1:63:24_, 1:64:3_, 1:64:7_, 1:64:10_, 1:64:15_, 1:64:18_, 1:64:22 _, 1:64:25

theme [1]_ - 1:26:22

themselves [2]_ - 1:34:1 _, 1:36:12

theories [2]_ - 1:39:16_, 1:40:6

theory [5]_ - 1:22:2_, 1:24:12_, 1:39:10_, 1:42:5_, 1:43:3

therefore [2]_ - 1:35:24_, 1:51:12

thereof [1]_ - 1:52:22

they've [2]_ - 1:35:23_, 1:39:9

thinking [1]_ - 1:30:1

thinks [1]_ - 1:19:25_, 1:38:7

third [3]_ - 1:4:24_, 1:16:7 _, 1:41:7

thoroughly [1]_ - 1:55:16

three [3]_ - 1:57:19_, 1:60:19_, 1:63:15

threshold [2]_ - 1:34:3_, 1:35:23

tit [1]_ - 1:63:24

Title [1]_ - 1:11:16

today [5]_ - 1:3:15_, 1:45:7 _, 1:46:4_, 1:46:9_, 1:63:14

Todd [1]_ - 1:3:14

together [1]_ - 1:50:19

took [3]_ - 1:17:1_, 1:37:21 _, 1:37:22

top [5]₋ - 1:6:2₋, 1:7:17₋, 1:7:25₋, 1:52:15₋, 1:55:5

topics [1]₋ - 1:4:13

totally [4]₋ - 1:40:3₋, 1:40:4₋, 1:41:11₋, 1:52:24

touches [1]₋ - 1:38:20

trained [2]₋ - 1:57:15₋, 1:59:4

training [3]₋ - 1:30:16₋, 1:30:23₋, 1:31:12

transactions [2]₋ - 1:52:7₋, 1:60:10

treated [1]₋ - 1:32:1

trial [1]₋ - 1:26:18

true [4]₋ - 1:37:17₋, 1:38:2₋, 1:41:14

Trump [15]₋ - 1:3:4₋, 1:3:15₋, 1:5:10₋, 1:12:14₋, 1:15:24₋, 1:24:11₋, 1:39:5₋, 1:39:22₋, 1:40:6₋, 1:43:17₋, 1:47:10₋, 1:47:11₋, 1:47:25₋, 1:57:10

Trump's [13]₋ - 1:4:2₋, 1:4:7₋, 1:14:23₋, 1:16:24₋, 1:17:14₋, 1:18:4₋, 1:27:20₋, 1:29:18₋, 1:39:13₋, 1:40:5₋, 1:40:7₋, 1:43:14₋, 1:56:24

Trumps' [1]₋ - 1:57:10

trust [1]₋ - 1:52:7

truth [2]₋ - 1:34:25₋, 1:35:20

try [4]₋ - 1:39:1₋, 1:42:13₋, 1:42:20₋, 1:55:14

trying [2]₋ - 1:49:24₋, 1:58:3

turn [4]₋ - 1:4:24₋, 1:21:12₋, 1:43:8₋, 1:64:6

turning [2]₋ - 1:36:7₋, 1:46:5

two [21]₋ - 1:11:12₋, 1:11:22₋, 1:14:21₋, 1:21:15₋, 1:31:13₋, 1:38:3₋, 1:39:9₋, 1:39:21₋, 1:46:11₋, 1:47:20₋, 1:48:1₋, 1:48:15₋, 1:49:4₋, 1:49:11₋, 1:50:18₋, 1:52:5₋, 1:54:25₋, 1:55:13₋, 1:60:7₋, 1:63:21

type [6]₋ - 1:6:11₋, 1:10:20₋, 1:25:3₋, 1:29:3₋, 1:32:18₋, 1:47:22

types [6]₋ - 1:6:1₋, 1:6:10₋, 1:17:25₋, 1:19:20₋, 1:20:23₋, 1:58:1

## U

U.S.C [6]₋ - 1:13:20₋, 1:44:12₋, 1:52:9₋, 1:52:10

ultimately [5]₋ - 1:16:11₋, 1:25:22₋, 1:26:7₋, 1:37:22₋, 1:48:23

unacceptable [1]₋ - 1:15:21

unamountable [1]₋ - 1:15:20

unclear [2]₋ - 1:9:2₋, 1:31:1

unconstitutional [2]₋ - 1:18:7₋, 1:26:16

under [21]₋ - 1:4:11₋, 1:4:22₋, 1:8:20₋, 1:11:6₋, 1:11:16₋, 1:13:15₋, 1:20:10₋, 1:20:24₋, 1:22:4₋, 1:29:2₋, 1:30:8₋, 1:32:6₋, 1:33:4₋, 1:34:16₋, 1:46:14₋, 1:51:2₋, 1:52:16₋, 1:56:10₋, 1:56:14₋, 1:59:16₋, 1:65:2

undercut [6]₋ - 1:21:22₋, 1:23:15₋, 1:23:17₋, 1:24:15₋, 1:27:9₋, 1:27:24

undercuts [1]₋ - 1:36:25

undisclosed [1]₋ - 1:24:1

undisputed [3]₋ - 1:21:16₋, 1:21:18₋, 1:22:9

unfettered [1]₋ - 1:16:4

union [1]₋ - 1:52:7

uniquely [1]₋ - 1:52:25

United [5]₋ - 1:3:3₋, 1:3:10₋, 1:21:16₋, 1:55:17₋, 1:63:23

unlawful [4]₋ - 1:9:5₋, 1:9:8₋, 1:23:11₋, 1:24:18

unobjectionable [1]₋ - 1:52:16

unprecedented [1]₋ - 1:39:23

unusual [1]₋ - 1:57:21

up [11]₋ - 1:10:16₋, 1:19:3₋, 1:23:5₋, 1:23:19₋, 1:26:20₋, 1:26:23₋, 1:37:19₋, 1:39:12₋, 1:43:17₋, 1:46:12₋, 1:53:5

uses [1]₋ - 1:16:18

utterly [1]₋ - 1:36:25

## V

vagueness [2]₋ - 1:11:2₋, 1:12:25

valid [2]₋ - 1:24:14₋, 1:56:22

validity [1]₋ - 1:46:5

value [3]₋ - 1:5:9₋, 1:32:14₋, 1:32:16

variation [1]₋ - 1:53:8

various [1]₋ - 1:39:16

veracity [1]₋ - 1:19:10

version [1]₋ - 1:35:14

versus [1]₋ - 1:25:1

view [6]₋ - 1:19:6₋, 1:20:7₋, 1:36:25₋, 1:41:21₋, 1:45:25₋, 1:53:23

violate [1]₋ - 1:7:5

violated [1]₋ - 1:17:14

violation [3]₋ - 1:14:1₋, 1:14:10₋, 1:28:25

violations [3]₋ - 1:5:19₋, 1:6:24₋, 1:52:9

virtually [1]₋ - 1:9:14

void [1]₋ - 1:12:25

## W

W-U-A-G-N-E-U-X [1]₋ - 1:51:18

Waltine [2]₋ - 1:3:4₋, 1:3:18

warrant [84]₋ - 1:4:9₋, 1:4:11₋, 1:4:21₋, 1:4:23₋, 1:5:7₋, 1:5:8₋, 1:5:16₋, 1:5:20₋, 1:6:7₋, 1:6:9₋, 1:7:13₋, 1:8:4₋, 1:8:5₋, 1:9:17₋, 1:10:20₋, 1:10:22₋, 1:11:2₋, 1:11:14₋, 1:12:25₋, 1:13:6₋, 1:14:3₋, 1:14:15₋, 1:14:17₋, 1:16:6₋, 1:17:3₋, 1:17:25₋, 1:18:21₋, 1:19:14₋, 1:20:5₋, 1:20:8₋, 1:22:23₋, 1:23:8₋, 1:25:3₋, 1:25:9₋, 1:26:11₋, 1:27:4₋, 1:27:13₋, 1:27:16₋, 1:27:18₋, 1:28:1₋, 1:28:8₋, 1:28:10₋, 1:30:4₋, 1:30:21₋, 1:31:10₋, 1:31:21₋, 1:36:10₋, 1:38:9₋, 1:40:1₋, 1:40:9₋, 1:40:10₋, 1:43:20₋, 1:44:12₋, 1:45:10₋, 1:45:22₋, 1:46:5₋, 1:46:18₋, 1:46:24₋, 1:47:7₋, 1:47:14₋, 1:47:23₋, 1:48:21₋, 1:50:18₋, 1:51:25₋, 1:52:4₋, 1:53:10₋, 1:53:12₋, 1:53:18₋, 1:54:1₋, 1:54:2₋, 1:54:3₋, 1:54:4₋, 1:54:17₋, 1:54:20₋, 1:56:16₋, 1:56:21₋, 1:57:11₋, 1:57:25₋, 1:59:17₋, 1:60:3₋,

1:60:8₋, 1:61:19

warrant's [1]₋ - 1:47:24

warranted [2]₋ - 1:9:15₋, 1:35:10

warrants [3]₋ - 1:10:5₋, 1:29:4₋, 1:46:22

Watch [1]₋ - 1:25:19

wave [1]₋ - 1:44:20

week [1]₋ - 1:65:2

well-trained [1]₋ - 1:59:4

Wharton [1]₋ - 1:3:14

White [1]₋ - 1:14:19

wife's [1]₋ - 1:47:11

willful [1]₋ - 1:22:4

wish [3]₋ - 1:30:12₋, 1:43:9₋, 1:64:11

witness [1]₋ - 1:45:22

witnesses [1]₋ - 1:27:18

woefully [1]₋ - 1:36:6

wondering [1]₋ - 1:54:13

Woodward [2]₋ - 1:3:17₋, 1:3:19

word [7]₋ - 1:6:3₋, 1:6:18₋, 1:6:19₋, 1:8:13₋, 1:16:17₋, 1:29:6₋, 1:31:7

words [3]₋ - 1:36:14₋, 1:42:13₋, 1:42:20

worried [1]₋ - 1:40:6

writes [1]₋ - 1:58:17

written [3]₋ - 1:8:25₋, 1:19:5₋, 1:24:5

wrongly [1]₋ - 1:46:19

Wuagneux [7]₋ - 1:51:17₋, 1:53:13₋, 1:53:24₋, 1:56:4₋, 1:56:8₋, 1:56:11₋, 1:60:7

## Y

year [1]₋ - 1:43:18

youngest [1]₋ - 1:16:24

yourself [1]₋ - 1:37:6