# EXHIBIT 9A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 23-cr-257 (TSC) |
| | * | |
| DONALD J. TRUMP, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**GOVERNMENT'S OPPOSED MOTION TO ENSURE THAT EXTRAJUDICIAL**
**STATEMENTS DO NOT PREJUDICE THESE PROCEEDINGS**

Since the grand jury returned an indictment in this case, the defendant has repeatedly and widely disseminated public statements attacking the citizens of the District of Columbia, the Court, prosecutors, and prospective witnesses. Through his statements, the defendant threatens to undermine the integrity of these proceedings and prejudice the jury pool, in contravention of the "undeviating rule" that in our justice system a jury's verdict is to "be induced only by evidence and argument in open court, and not by any outside influence." *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966) (quotations omitted). In accordance with the Court's duty to "protect [its] processes from prejudicial outside interferences," *id.* at 363, the Government requests that the Court take the following immediate measures to ensure the due administration of justice and a fair and impartial jury: (1) enter a narrowly tailored order pursuant to Local Criminal Rule 57.7(c) that restricts certain prejudicial extrajudicial statements; and (2) enter an order through which the Court can ensure that if either party conducts a jury study involving contact with the citizens of this District, the jury study is conducted in a way that will not prejudice the venire. The Government obtained the defendant's position from counsel for the defendant, and he opposes this motion.

## I.    Background

As set forth in the indictment, after election day in 2020, the defendant launched a disinformation campaign in which he publicly and widely broadcast knowingly false claims that there had been outcome-determinative fraud in the presidential election, and that he had actually won.  ECF No. 1 at ¶¶ 2, 4.  In service of his criminal conspiracies, through false public statements, the defendant sought to erode public faith in the administration of the election and intimidate individuals who refuted his lies.  ECF No. 1 at ¶¶ 2, 28, 31-32, 42, 44, 74, 97, 100, 104, 111.  The defendant is now attempting to do the same thing in this criminal case—to undermine confidence in the criminal justice system and prejudice the jury pool through disparaging and inflammatory attacks on the citizens of this District, the Court, prosecutors, and prospective witnesses.  The defendant's conduct presents a "substantial likelihood of material prejudice" to these proceedings, and the Court can and should take steps to restrict such harmful extrajudicial statements.  *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991).

### A.  <u>The Defendant Has a History of Inflammatory and Misleading Statements That He Knew or Should Have Known Would Cause Others to Harass and Harm Perceived Critics or Adversaries</u>

The defendant has an established practice of issuing inflammatory public statements targeted at individuals or institutions that present an obstacle or challenge to him.  In the period between the presidential election on November 3, 2020, and the congressional certification proceeding on January 6, 2021, the defendant trained his focus on the election system, including election officials and other individuals carrying out civic duties to implement fair elections in various states.  As a result, the defendant engendered widespread mistrust in the administration of the election, and the individuals whom he targeted were subject to threats and harassment.

Examples of this pattern, from the indictment and the Government's investigation, include the following:

- ████████████████████████████████████ whom the defendant specifically targeted on the social media platform Twitter because ██████ had publicly stated that there was no evidence of election fraud. *See* ECF No. 1, Indictment, ¶ 42; https://twitter.com/realDonaldTrump/status/1326525851752656898. After the defendant's tweet, ██████ observed an increase in the volume and severity of threats against him and his family. *See* House Select Committee to Investigate the January 6th Attack on the United States Capitol ("House Select Committee"), 6/13/22 Hr'g, at 1:47:14–1:47:43 ("After the President tweeted at me by name, calling me out the way that he did, the threats became much more specific, much more graphic, and included not just me by name but included members of my family by name, their ages, our address, pictures of our home. Just every bit of detail that you could imagine. That was what changed with that tweet.").[1]

- ███████████████████████████████████████████ during the 2020 election, whose home address was listed on the internet and whose family was threatened with violence after the defendant and surrogates publicly derogated ████████ for certifying the election. *See* Exhibit 1 at 3-6.

- ███████████████████████████████████████ during the 2020 election, who received threatening communications after ████████ certified the election and the defendant issued public posts about them. *See* Exhibit 1 at 26-27 (████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████).

- ████████████████████████████████████ who required additional police protection after the defendant targeted ████████ on Twitter for ████████████ rejecting one of the defendant's election challenges. *See* Exhibit 1 at 41-44.

The defendant knows that when he publicly attacks individuals and institutions, he inspires others to perpetrate threats and harassment against his targets. On December 1, 2020, as the defendant was fueling an intense national atmosphere of mistrust and anger regarding the election, a Georgia election official held a widely televised press conference in which he pleaded with the

---

[1] *See* https://january6th-benniethompson.house.gov/legislation/hearings/06132022-select-committee-hearing.

defendant to stop, stating that if he did not, "Someone's going to get hurt, someone's going to get shot, someone's going to get killed."[2] The defendant did not stop. Instead, he continued—even to the present—to attack individuals whom he knows already suffered threats and harassment as a result of his words. For instance:

- On November 17, 2020, the defendant fired ███████, his appointed director of the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency after ████ made statements assuring the public of the integrity of the election. *See* ECF No. 1 ¶ 11(d). Later that month, after ████ appeared on a news program and again stated publicly that the presidential election had been secure, the defendant attacked him on Twitter, and on November 30, an agent of the defendant publicly stated that ████ "should be drawn and quartered. Taken out at dawn and shot."[3] This statement was so dangerous that the above-described Georgia election official mentioned it in his press conference when warning the defendant and others that such rhetoric would lead to violence.[4] ████ and his family received death threats and had to evacuate their home, and through a December 8, 2020 lawsuit put the defendant on explicit notice of the threats and harassment the defendant had caused.[5] The defendant continued to publicly attack ████ anyway.

- In 2020, the defendant and co-conspirators[6] spread false accusations of misconduct against ███████████, a Georgia election worker, and ████████████████████. As a result, ███████████ were inundated by threats. *See* ECF No. 1 ¶ 26. ████ subsequently described the pernicious threats and intimidation she endured as a result of these false allegations in an interview with the House Select Committee, which publicly released a transcript of the interview on December 29, 2022. *See* Select Committee Press

---

[2] *See* NBC News, Georgia Secretary of State Press Conference (Dec. 1, 2020), https://www.youtube.com/watch?v=nH9FnY0qvNI.

[3] *See* CBC News, 60 Minutes (Nov. 29, 2020), https://www.cbsnews.com/news/election-results-security-chris-krebs-60-minutes-2020-11-29/; Newsmax, Howie Carr Radio Show (Nov. 30, 2020).

[4] *See* NBC News, Georgia Secretary of State Press Conference (Dec. 1, 2020), https://www.youtube.com/watch?v=nH9FnY0qvNI.

[5] *See* Case No. 484243V (Montgomery County, Maryland Circuit Court), Complaint (Dec. 8, 2020).

[6] A court in this District recently entered a default judgment against one of the defendant's co-conspirators in a lawsuit filed against him by ███████████ for his defamatory false claims. *See* 21-cv-3354 (BAH), ECF No. 93, Order (Aug. 30, 2023).

Release, Release of Select Committee Materials (Dec. 29, 2022);[7] Select Committee Transcript at 8 ("Do you know how it feels to have the President of the United States to target you? The President of the United States is supposed to represent every American, not to target one. But he targeted me . . . a small-business owner, a mother, a proud American citizen who stood up to help Fulton County run an election in the middle of the pandemic. . . . And, lo and behold, when someone as powerful as the President of the United States eggs on a mob, that mob will come. They came for us with their cruelty, their threats, their racism, and their hats. They haven't stopped even today.").[8] Within ten days of the public release of ▆▆▆▆▆ interview transcript, the defendant—despite the known threats the election worker had received, and the established falsity of the claims of misconduct—publicly attacked ▆▆▆▆ again on Truth Social through a series of repeated false claims.[9]

- Likewise, the defendant recently renewed attacks on former Georgia Lieutenant Governor ▆▆▆▆▆, whose harassment the defendant inspired in the aftermath of the election. In December 2020, after Georgia's Governor and Lieutenant Governor rejected the defendant's calls to appoint the defendant's illegitimate electors in Georgia, the defendant issued a post labeling ▆▆▆▆ a "Rino Never Trumper" who was "dumb or corrupt" and urged, "We need every great Georgian to call him out!" *See* https://twitter.com/realDonaldTrump/status/ 1336148836495069185. Thereafter, ▆▆▆▆ reported, he received death threats.[10] Nonetheless, last month, on August 14, 2023, when it was publicly reported that ▆▆▆▆ had been called to testify before a state grand jury in Fulton County, Georgia, the defendant posted on Truth Social that "[h]e shouldn't" testify. *See* https://truthsocial.com/@realDonaldTrump/posts/110888087440060991.

The defendant continues these attacks on individuals precisely because he knows that in doing so, he is able to roil the public and marshal and prompt his supporters. As he acknowledged in a televised town hall on May 10, 2023, his supporters listen to him "like no one else."[11]

---

[7] *See* https://january6th-benniethompson.house.gov/news/press-releases/release-select-committee-materials-4.

[8] https://january6th-benniethompson.house.gov/sites/democrats.january6th.house.gov/files/20220531_▆▆▆▆▆▆.pdf.

[9] https://truthsocial.com/@realDonaldTrump/posts/109623460421938942; https://truthsocial.com/@realDonaldTrump/posts/109623536630848334; https://truthsocial.com/@realDonaldTrump/posts/109623623674619588.

[10] MSNBC, Morning Joe, https://www.msnbc.com/morning-joe/watch/georgia-s-lieutenant-governor-won-t-seek-reelection-turns-focus-to-gop-2-0-112276037799.

[11] *See* CNN, Transcript of CNN's Town Hall with Former President Donald Trump (May 11, 2023), https://www.cnn.com/2023/05/11/politics/transcript-cnn-town-hall-trump/index.html.

**B.** **Since the Indictment, the Defendant Has Deployed Misleading and Inflammatory Statements About this Case to Undermine Confidence in the Justice System and Prejudice the Jury Pool**

The defendant made clear his intent to issue public attacks related to this case when, the day after his arraignment, he posted a threatening message on Truth Social:



And he has made good on his threat. Since the indictment in this case, the defendant has spread disparaging and inflammatory public posts on Truth Social on a near-daily basis regarding the citizens of the District of Columbia, the Court, prosecutors, and prospective witnesses. Like his previous public disinformation campaign regarding the 2020 presidential election, the defendant's recent extrajudicial statements are intended to undermine public confidence in an institution—the judicial system—and to undermine confidence in and intimidate individuals—the Court, the jury pool, witnesses, and prosecutors. Below are select examples of the defendant's disparaging and inflammatory Truth Social posts.

    i.   <u>Posts Attacking, Undermining, and Attempting to Intimidate the Court and the Jury Pool</u>

The defendant has posted repeated, inflammatory attacks on the judicial system, the Court, and the citizens of the District of Columbia who comprise the jury pool in this case. The defendant has made baseless claims—cited or inserted below—that the justice system is "rigged"[12] against him; that the Court is "a fraud dressed up as a judge in Washington, D.C. who is a radical Obama

---

    [12] *See* https://truthsocial.com/@realDonaldTrump/posts/110857162338915853.

hack" or is a "biased, Trump-hating judge";[13] and that he cannot get a fair trial from the residents of this "filthy and crime ridden" District that "is over 95% anti-Trump."[14]



Donald J. Trump ✓
@realDonaldTrump

The Obama appointed Judge in the FREE SPEECH Indictment of me by my political opponent, Crooked Joe Biden's Department of InJustice, shared professional ties at the law firm that worked for Energy Company Burisma, based in Ukraine, of which Hunter Biden and his associate were "proud" MEMBERS OF THE BOARD, and were paid Millions of Dollars, even though Hunter knew almost NOTHING about Energy. How much was the law firm paid? So Horrible. This is a CLASSIC Conflict of Interest! "GATEWAY PUNDIT"

**6.85k** ReTruths   **19.6k** Likes                Aug 08, 2023, 4:47 PM



Donald J. Trump ✓
@realDonaldTrump

THERE IS NO WAY I CAN GET A FAIR TRIAL WITH THE JUDGE "ASSIGNED" TO THE RIDICULOUS FREEDOM OF SPEECH/FAIR ELECTIONS CASE. EVERYBODY KNOWS THIS, AND SO DOES SHE! WE WILL BE IMMEDIATELY ASKING FOR RECUSAL OF THIS JUDGE ON VERY POWERFUL GROUNDS, AND LIKEWISE FOR VENUE CHANGE, OUT IF D.C.

**11.2k** ReTruths   **42.6k** Likes                Aug 06, 2023, 9:26 AM

---

[13] *See* re-post of https://truthsocial.com/@marklevinshow/posts/110973488250507373; https://truthsocial.com/@realDonaldTrump/posts/110980188106641474.

[14] *See* https://truthsocial.com/@realDonaldTrump/posts/110823476578708544.



NO WAY I CAN GET A FAIR TRIAL, OR EVEN CLOSE TO A FAIR TRIAL, IN WASHINGTON, D.C. THERE ARE MANY REASONS FOR THIS, BUT JUST ONE IS THAT I AM CALLING FOR A FEDERAL TAKEOVER OF THIS FILTHY AND CRIME RIDDEN EMBARRASSMENT TO OUR NATION, WHERE MURDERS HAVE JUST SHATTERED THE ALL TIME RECORD, OTHER VIOLENT CRIMES HAVE NEVER NEEN WORSE, AND TOURISTS HAVE FLED. THE FEDERAL TAKEOVER IS VERY UNPOPULAR WITH POTENTIAL AREA JURORS, BUT NECESSARY FOR SAFETY, GREATNESS, & FOR ALL THE WORLD TO SEE!

7.43k ReTruths  27.2k Likes                    Aug 06, 2023, 9:06 AM

    ii.  <u>Posts Attacking, Undermining, and Attempting to Intimidate Prosecutors</u>

Similarly, the defendant has posted false and disparaging claims regarding the Department of Justice and prosecutors in the Special Counsel's Office in an attempt to undermine confidence in the justice system and prejudice the jury pool against the Government in advance of trial. In a video posted to Truth Social, the defendant called the Special Counsel's Office a "team of thugs."[15]



WE HAVE A DEPARTMENT OF INJUSTICE RIGGING THE ELECTION FOR CROOKED JOE BIDEN. UNLESS IT IS QUICKLY STOPPED, ALL FUTURE ELECTIONS WILL FOLLOW THE SAME PATH!

9.51k ReTruths  30.6k Likes                    Aug 21, 2023, 8:38 AM

---

    [15] *See* https://truthsocial.com/@realDonaldTrump/posts/110980188106641474.



Recently, the defendant has spread knowingly false accusations of misconduct against a prosecutor in the Special Counsel's Office working on the case in which the defendant was indicted in the Southern District of Florida in June 2023, *see United States v. Donald J. Trump, et al*, Case No. 9:23-cr-80101-AMC, ECF No. 30 at 1 (S.D. Fla. June 21, 2023), and connected those false accusations to this case in the District of Columbia by calling the Court a "biased, Trump Hating Judge," as shown below. In his posts on this topic, the defendant repeatedly makes the knowingly false claim that Special Counsel's Office prosecutors went to the White House in advance of the defendant's June 2023 indictment for improper reasons.



- 9 -



Donald J. Trump
@realDonaldTrump

It has just been reported that aides to TRUMP prosecutor,
Deranged Jack Smith, met with high officials at the White House
just prior to these political SleazeBags Indicating me OVER
NOTHING. If this is so, which it is, that means that Biden and his
Fascist Thugs knew and APPROVED of this Country dividing
Form of Election Interference, despite their insisting that they
"knew nothing." It's all a BIG LIE, just like Russia, Russia, Russia, &
not knowing about son's business dealings. DISMISS CASE!

8.52k ReTruths     28.2k Likes                    Aug 28, 2023, 8:07 AM

In fact, as the defendant well knows from the formal FBI FD-302 interview report and agent notes

that he received in discovery on June 21, 2023, in the Southern District of Florida case, on March

31, 2023, the Special Counsel's Office prosecutor conducted a routine investigative interview of a

career military official at that official's duty station—the White House.  The defendant's objective

in spreading a knowing lie to the contrary—including by re-posting others' Truth Social posts

naming the prosecutor and repeating the lie[16]—is an attempt to prejudice the public and the venire

in advance of trial.

    With that same goal, the defendant has posted misleading claims on Truth Social to

insinuate misconduct by the Special Counsel's Office in pursuing ordinary court-approved process

or seeking the indictment in this case.  Regarding a search warrant and non-disclosure order that

the Government received from the court consistent with the law, for instance, the defendant falsely

claimed that the Special Counsel's Office broke into his former Twitter account[17] in a "major 'hit'

on my civil rights" and queried whether the Special Counsel directed the Select Committee to

---

[16] On August 28, the defendant re-posted a Truth Social post doing exactly this.  *See*
https://truthsocial.com/@marklevinshow/110969977988667723.

[17] *See* https://truthsocial.com/@realDonaldTrump/posts/110886100439412597.

"DESTROY & DELETE all evidence."[18]  And on August 2, the defendant posted a quote alleging, without any basis, that the indictment that a federal grand jury in this case returned had been directed by the sitting president: "'Joe Biden directed his Attorney General to prosecute his rival. This is not an independent Justice Department, this is not an independent special counsel.  This is being directed by the Commander-in-Chief."[19]  Through such posts, the defendant is attempting to submit his false and inflammatory claims to the public and jury pool outside of court, because he knows that any such claims made before the Court in the form of motions to suppress or of vindictive prosecution will fail because they must be supported by evidence—of which there is none.

### iii.  Posts Bolstering or Attacking and Attempting to Intimidate Witnesses

The defendant has also posted publicly about individuals whom he has reason to believe will be witnesses in this trial.  For instance, on August 30, the defendant posted a video attacking the former Attorney General of the United States, a potential witness in this case, on the very subject of his testimony.[20]  Steadily since indictment, the defendant has publicly bolstered certain prospective witnesses in this case, while attacking others, in an effort to influence the public's and the jury pool's impressions of potential witnesses outside of the courtroom.  Examples of such posts are below.

---

[18] *See* https://truthsocial.com/@realDonaldTrump/posts/110860965885418709.

[19] *See* https://truthsocial.com/@realDonaldTrump/posts/110823008009285486.

[20] *See* https://truthsocial.com/@realDonaldTrump/posts/110980538393058556.



Donald J. Trump
@realDonaldTrump

The greatest Mayor in the history of New York City was just ARRESTED in Atlanta, Georgia, because he fought for Election Integrity. THE ELECTION WAS RIGGED & STOLLEN. HOW SAD FOR OUR COUNTRY. MAGA!

11.8k ReTruths    39.1k Likes                         Aug 23, 2023, 5:00 PM



Donald J. Trump
@realDonaldTrump

WOW, it's finally happened! Liddle' Mike Pence, a man who was about to be ousted as Governor Indiana until I came along and made him V.P., has gone to the Dark Side. I never told a newly emboldened (not based on his 2% poll numbers!) Pence to put me above the Constitution, or that Mike was "too honest." He's delusional, and now he wants to show he's a tough guy. I once read a major magazine article on Mike. It said he was not a very good person. I was surprised, but the article was right. Sad!

10.1k ReTruths    34k Likes                           Aug 05, 2023, 5:20 PM

**C.** **The Defendant's Public Posts Regarding this Case are Reasonably Likely to Prejudice the Jury Pool**

The defendant's relentless public posts marshaling anger and mistrust in the justice system, the Court, and prosecutors have already influenced the public.  For instance, on August 5, 2023, an individual was arrested because she called the Court's chambers and made racist death threats to the Court that were tied to the Court's role in presiding over the defendant's case.  *See United States v. Shry*, Case No. 4:23-mj-1602, ECF No. 1 at 3 (Criminal Complaint) (S.D. Tex. August 11, 2023).  In addition, the Special Counsel has been subject to multiple threats, and the specific Special Counsel's Office prosecutor that the defendant has targeted through recent, inflammatory public posts has been subject to intimidating communications.  Given the defendant's history described above and the nature of the threats to the Court and to the Government, it is clear that

the threats are prompted by the defendant's repeated and relentless posts. To the extent that the defendant's public posts reach the general public, they also reach the jury pool for this trial.

In addition, if unfettered, the way that the defendant is known to use public statements to intimidate individuals could affect potential jurors. A recent incident in this District illustrates the potential issue. Last week, in a trial against a self-professed supporter of the defendant who claimed to have been at the United States Capitol on January 6 because of the defendant's tweets, the jury sent the court a note expressing concern that the trial defendant (Fellows) might have information about the identity of jurors. *See United States v. Brandon Fellows*, Case No. 21-cr-83 (TNM) at ECF No. 141, Note ("We wanted to confirm that the defendent [sic] does not have any personal information on individual jurors, since he was defending himself. Includes name, address, etc."). This demonstrates the need to protect potential jurors from fear of threats and harassment that stem from the defendant's disparaging and inflammatory public statements.

## II. The Court Should Ensure That Public Statements by the Defendant and His Agents Do Not Prejudice These Criminal Proceedings

The defendant's repeated, inflammatory public statements regarding the District of Columbia, the Court, prosecutors, and potential witnesses are substantially likely to materially prejudice the jury pool, create fear among potential jurors, and result in threats or harassment to individuals he singles out. Put simply, those involved in the criminal justice process who read and hear the defendant's disparaging and inflammatory messages (from court personnel, to prosecutors, to witnesses, to potential jurors) may reasonably fear that they could be the next targets of the defendant's attacks. To protect the due administration of justice in these proceedings and ensure the impartiality of the venire, the Government proposes two narrowly tailored orders that impose modest, permissible restrictions on prejudicial extrajudicial conduct by the parties and counsel.

A.  **The Court Should Issue an Order Pursuant to Local Criminal Rule 57.7(c) That Prohibits Certain Narrowly Defined Statements**

The Court has recognized its "obligation to prevent what the Supreme Court called in *Sheppard v. Maxwell* 'a carnival atmosphere of unchecked publicity and trial by media rather than our constitutionally established system of trial by impartial jury.'" 8/11/23 Hr'g Tr. at 71.  To fulfill that obligation, the Court may "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences," including by "proscrib[ing] extrajudicial statements by any lawyer, party, witness, or court official which divulge[s] prejudicial matters." *Sheppard v. Maxwell*, 384 U.S. 333, 361 (1966).  Consistent with these principles, the Court should enter an order pursuant to this District's Local Criminal Rules imposing limited restrictions on certain extrajudicial public statements by the parties and attorneys in this case.

Local Criminal Rule 57.7 permits the Court, "[i]n a widely publicized or sensational criminal case," upon a motion or *sua sponte*, to "issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury."  LCrR 57.7(c); *see also* LCrR 57.7(b)(1), (3) (prohibiting pre-trial, public statements by lawyers that might prejudice the due administration of justice).  Courts in this District have exercised their authority under Local Criminal Rule 57.7(c) to issue orders restricting statements of counsel and parties in appropriate cases.  *See United States v. Stone*, No. 19-cr-18, ECF No. 36 at 3 (D.D.C. Feb. 15, 2019) (ordering, *inter alia*, attorneys to "refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case"); *United States v. Butina*, No. 18-cr-218, ECF No. 31 at 2 (D.D.C. Sept. 12, 2018) (ordering "all interested participants, in the matter, including the parties, any potential witnesses, and counsel for the parties and witnesses . . . to refrain from making statements to the media or in public settings that pose a substantial likelihood of material prejudice

to this case"). Other jurisdictions are in accord. *See United States v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000) (upholding district court order restricting extrajudicial statements, and reasoning that the rationale of *Gentile* applies equally to attorneys and parties).

The Government seeks a narrow, well-defined restriction that is targeted at extrajudicial statements that present a serious and substantial danger of materially prejudicing this case. The Government's proposed order specifies that such statements would include (a) statements regarding the identity, testimony, or credibility of prospective witnesses; and (b) statements about any party, witness, attorney, court personnel, or potential jurors that are disparaging and inflammatory, or intimidating. *See* Exhibit 2. The Government's order also specifies that, consistent with other clarifications in Local Criminal Rule 57.7, the order is not intended to prohibit quotation or reference to public court records of the case or the defendant's proclamations of innocence. *Id*. This proposal is consistent with the permissible balance approved by the Supreme Court in *Gentile*, 501 U.S. at 1074-75, and specific enough to provide adequate notice to the parties and counsel of prohibited statements.

The defendant's past conduct, including conduct that has taken place after and as a direct result of the indictment in this case, amply demonstrates the need for this order. As illustrated by the examples discussed above, the defendant's statements reasonably could have a material impact on the impartiality of the jury pool while simultaneously influencing witness testimony. The defendant's repeated posts that he cannot receive a fair trial from this Court or from a jury of his peers in this District are substantially likely to undermine confidence in the justice system, affect the jury pool, or otherwise prejudice the due administration of justice. His misleading statements regarding the Special Counsel's Office and its investigation are designed to do the same. And his

targeting of specific witnesses seeks to either bolster or impeach witnesses not before this Court but instead in the court of public opinion before trial begins.

A supplemental order that extends some of the prohibitions that apply to defense counsel to the defendant himself is particularly warranted. Shortly after the indictment in this case was unsealed, the defendant's lead counsel began a series of lengthy and detailed interviews in which he potentially tainted the jury pool by disseminating information and opinions about the case and a potential witness and described in detail legal defenses that he plans to mount, including defenses that may never be raised in court or that may be rejected by the Court before ever reaching the jury.[21] Many of these statements by lead counsel violated Local Criminal Rule 57.7(b), which prohibits attorneys from releasing public extrajudicial statements regarding, among other things, "the identity, testimony, or credibility of prospective witnesses" and the "merits of the case or the evidence in the case." In the time since the Court admonished the parties and counsel at the hearing regarding the motion for a protective order on August 11, 2023, *see* 8/11/23 Hr'g Tr. at 72, the Government is unaware of lead counsel making any additional public statements of this nature. The defendant, however, has persisted. The Court should therefore enter the order proposed by

---

[21] *See, e.g.*, CNN (August 1, 2023), https://www.youtube.com/watch?v=GW7Bixvkpc0; NPR (August 2, 2023), https://www.npr.org/2023/08/02/1191627739/trump-charges-indictment-attorney-jan-6-probe; CNN (August 6, 2023), https://www.cnn.com/videos/politics/2023/08/06/sotu-lauro-full.cnn; ABC, This Week (August 6, 2023), https://abcnews.go.com/ThisWeek/video/mike-pence-best-witnesses-trial-john-lauro-102054360; NBC, Meet the Press (August 6, 2023), https://www.nbcnews.com/meet-the-press/video/august-6-john-lauro-and-rep-jamie-raskin-190118469904; CBS, Face the Nation (August 6, 2023), https://www.cbsnews.com/video/face-the-nation-lauro-phillips-krebs/; Fox, Fox News Sunday (August 6, 2023), https://www.foxnews.com/video/6332525513112; CBS, Face the Nation (August 6, 2023); For the Defense with David Oscar Marcus (August 6, 2023), https://podcasts.apple.com/us/podcast/john-lauro-for-donald-j-trump/id1536699806?i=1000623609326.

the Government to ensure the defendant does not undermine the integrity of these proceedings by disseminating statements defense counsel cannot make.

**B.** **The Court Should Issue an Order That Prohibits Contacting the Citizens of This District to Conduct Jury Studies Without First Notifying and Receiving Authorization from the Court**

The Court has already taken steps to protect the venire related to polling of prospective jurors related to this case. At the status hearing on August 28, 2023, after the Government raised the issue of jury studies, and the defense suggested they may "sooner rather than later" conduct outreach to the jury pool to gather information for a potential change of venue motion, the Court instructed the defendant to notify the Court *ex parte* before conducting any polling in the District of Columbia in connection with a potential motion to change the trial venue. *See* 8/18/23 Hr'g Tr. at 59-60. In so doing, the Court noted that such polling "might affect the same jury pool you are claiming is not fair" and might "actually affect their ability to render a fair verdict by virtue of the kinds of questions you're asking, because questions can be phrased in all kinds of ways." *Id.*

Because of the potential prejudice that polling may cause, the Government respectfully requests that the Court set forth a process to review efforts by either party to engage in contacts with members of the jury venire in this District undertaken for the purpose of discussing case-specific facts, including any pretrial survey, poll, focus group, or similar study (hereinafter, "jury study").[22] Specifically, the Court should (1) require either party to notify the Court before the party—or any individual or entity acting at the party's direction or under its control—undertakes any jury study in this District; (2) require the completion of any such jury study no later than 30 days before jury selection begins; (3) require either party to submit the proposed questions and

---

[22] At a later date, the Government intends to file a motion regarding other issues related to the jury, including the use of a juror questionnaire.

methodology *ex parte* for the Court's review before undertaking any jury study; and (4) require filing under seal of the name and address of each participant contacted in any jury study at least two weeks before jury selection. A proposed order is attached as Exhibit 3.

Such an order is consistent with the Court's inherent authority to protect the "integrity and fairness" of the judicial system through preventing "comments that are likely to prejudice the jury venire." *Gentile*, 501 U.S. at 1075. Though pretrial surveys are neither inherently suspect nor uncommon in trial litigation, *see Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020); *see also* Ellen Kreitzberg & Mary Procaccio-Flowers, *The Law, Art & Science of Selecting a Jury* § 3:3 (2022) (noting the utility of pretrial surveys), courts nonetheless maintain the authority to supervise and oversee their use. *See United States v. Collins*, 972 F.2d 1385, 1398 (5th Cir. 1992) (district court reviewed materials related to Government's polling to determine whether it had compromised the integrity of jury selection); *Brewer v. Lennox Hearth Prod., LLC*, 546 S.W.3d 866, 877 (Tex. App. 2018) (finding that pretrial surveys are "subject to review by the presiding court in order to determine whether anything was done to compromise the integrity of the jury selection process"), *rev'd on other grounds*, 601 S.W.3d 704 (Tex. 2020). If questions in a pretrial survey are worded to advocate for a certain party's position, or test the effectiveness of a party's message in addition to gathering information, they can have a potentially prejudicial effect. *See Brewer*, 601 S.W.3d at 726 ("A campaign of disinformation, in whatever form, undermines the sanctity of the judicial process and is inimical to the constitutional promise of a fair and impartial jury trial.); *cf. United States v. Haldeman*, 559 F.2d 31, 64 n.43 (D.C. Cir. 1976) (finding that the district court did not err in relying more on comprehensive voir dire than "a poll taken in private by private pollsters and paid for by one side").

To guard against the damage that a pretrial survey could inflict on the venire—whether intentionally or not—this Court should exercise its inherent authority here. At least one district court has a standing order that requires the parties to provide advance notification "[w]hen the party decides that it will, or is likely to, commission" a pretrial mock trial, focus group, or similar study of the jury venire. *See* The Honorable Ron Clark, E.D. Tex. Standing Order RC-47 (Aug. 11, 2010). An order of this type "do[es] not *prohibit* use of surveys as a litigation tool" but instead "*regulate[s]* the practice . . . by (1) requir[ing] pretrial notice of intent to conduct such a study; (2) requir[ing] disclosure . . . of the methodology; (3) temporally limit[ing] proximity to trial; and (4) requir[ing] *in camera* submission of each participant's name and address in advance of the pretrial conference." *Brewer*, 601 S.W.3d at 726 (emphasis in original). The Government has attached a proposed order that contains these features.

## III. Conclusion

Consistent with its obligations to guard the integrity of these proceedings and prevent prejudice to the jury pool, while respecting the defendant's First Amendment rights, the Court should enter the proposed orders imposing certain narrow restrictions on the parties' public statements regarding this case and governing any jury studies the parties may undertake.

Respectfully submitted,

JACK SMITH
Special Counsel

By:    /s/Molly Gaston
       Molly Gaston
       Thomas P. Windom
       Senior Assistant Special Counsels
       950 Pennsylvania Avenue NW
       Room B-206
       Washington, D.C. 20530

# EXHIBIT 9B

**X Post from @realDonaldTrump (Nov. 11, 2020)**



https://x.com/realDonaldTrump/status/1326525851752656898

--------------------------------------------------------------------------------------------------------------------

**Excerpt of City Election Commissioner's Testimony Before the House Select Committee to Investigate the January 6th Attack on the United States Capitol (June 13, 2022)**

> After the President tweeted at me by name, calling me out the way that he did, the threats became much more specific, much more graphic, and included not just me by name but included members of my family by name, their ages, our address, pictures of our home. Just every bit of detail that you could imagine. That was what changed with that tweet.

https://january6th-benniethompson.house.gov/legislation/hearings/06132022-select-committee-hearing (at 1:47:14-1:47:43).

# EXHIBIT 9C



← **Truth Details**
2102 replies

🔥 Trending ⌄

**Donald J. Trump** ✓
@realDonaldTrump

Mark Milley, who led perhaps the most embarrassing moment in American history with his grossly incompetent implementation of the withdrawal from Afghanistan, costing many lives, leaving behind hundreds of American citizens, and handing over BILLIONS of dollars of the finest military equipment ever made, will be leaving the military next week. This will be a time for all citizens of the USA to celebrate! This guy turned out to be a Woke train wreck who, if the Fake News reporting is correct, was actually dealing with China to give them a heads up on the thinking of the President of the United States. This is an act so egregious that, in times gone by, the punishment would have been DEATH! A war between China and the United States could have been the result of this treasonous act. To be continued!!!

**6.93k** ReTruths  **20.6k** Likes                    Sep 22, 2023, 7:59 PM

🔍 Reply          🔁 ReTruth          ♡ Like          ⬆️          •••