No. 24-12311-J

In the United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

WALTINE NAUTA and
CARLOS DE OLIVEIRA,

Defendants-Appellees.

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTIVE RELIEF AND REMAND TO DISTRICT COURT FOR HEARING

| | |
|---|---|
| John S. Irving, IV<br>E&W LAW, LLC | Stanley E. Woodward, Jr.<br>BRAND WOODWARD LAW, LP |
| Larry Donald Murrell, Jr.<br>L.D. MURRELL, P.A. | Richard C. Klugh<br>KLUGH WILSON, LLC |
| Counsel for Defendant<br>Carlos De Oliveira | Counsel for Defendant<br>Waltine Nauta |

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

*United States v. Waltine Nauta, et al.*, **Case No. 24-12311-J**

Appellees file this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Advance Publications, Inc.

Alonso, Cristina

America First Legal Foundation

American Broadcasting Companies, Inc., d/b/a ABC News

Ayer, Donald

Blackman, Joshua

Blanche, Todd

Bloomberg, L.P.

Bove, Emil

Bowman, Chad

Bratt, Jay

Cable News Network, Inc.

Calabresi, Steven

Caldera, Louis

Cannon, Hon. Aileen

Cate, Matthew

C-1 of 6

**United States v. Waltine Nauta, Case No. 24-12311-J**
**Certificate of Interested Persons (Continued)**

CBS Broadcasting, Inc. o/b/o CBS News

Citizens for Responsibility and Ethics in Washington

Citizens United

Citizens United Foundation

CMG Media Corporation

Coleman, Tom

Conway, George

Cooney, J.P.

Couzo, Amber Aurora

Cox Enterprises, Inc. (COX) d/b/a The Atlanta Journal-Constitution

Dadan, Sasha

De Oliveira, Carlos

Dow Jones & Company, Inc., publisher of The Wall Street Journal

Dreeben, Michael

Edelstein, Julie

Fields, Lazaro

Fitzgerald, Patrick

Fort Myers Broadcasting Company

Fugate, Rachel Elise

**United States v. Waltine Nauta, Case No. 24-12311-J
Certificate of Interested Persons (Continued)**

Garland, Merrick B.

Gerson, Stuart

Gertner, Nancy

Gilbert, Karen E.

Gillers, Stephen

Goodman, Hon. Jonathan

Gray Media Group, Inc. (GTN)

Guardian News & Media Limited

Harbach, David

Hirsch, Steven A.

Hulser, Raymond

Insider, Inc.

Irving, John

Kise, Christopher

Klugh, Richard C.

Lacovara, Philip Allen

Landmark Legal Foundation

Lawson, Gary

Los Angeles Times Communications LLC, publisher of The Los
     Angeles Times

**United States v. Waltine Nauta, Case No. 24-12311-J**
**Certificate of Interested Persons (Continued)**

Maynard, Hon. Shaniek Mills

McElroy, Dana Jane

McKay, John

McNamara, Anne

Meese, Edwin

Mishkin, Maxwell

Mukasey, Hon. Michael B.

Murrell, Larry Donald

National Cable Satellite Corporation d/b/a C-SPAN

National Public Radio, Inc.

Nauta, Waltine

NBCUniversal Media, LLC d/b/a NBC News, a subsidiary of
   Comcast Corporation (CMCSA)

Orlando Sentinel Media Group, publisher of the Orlando Sentinel

Pearce, James

Pellettieri, John

Politico LLC

Potter, Trevor

Radio Television Digital News Association

Raskin, David

Raul, Alan Charles

**United States v. Waltine Nauta, Case No. 24-12311-J**
**Certificate of Interested Persons (Continued)**

Reeder, L. Martin Jr.

Reinhart, Hon. Bruce E.

Reuters News & Media, Inc.

Reynolds, Brett

Russell, Lauren

Salario, Samuel

Sample, James J.

Sasso, Michael

Schaerr, Gene

Seligman, Matthew A.

Smith, Abbe

Smith, Fern

Smith, Jack

State Democracy Defenders Action

Sun-Sentinel Company, LLC, publisher of the South Florida Sun Sentinel

TEGNA, Inc. (TGNA)

Telemundo Network Group, LLC d/b/a Noticias Telemundo

Thakur, Michael

The Associated Press

The E.W. Scripps Company (SSP)

**United States v. Waltine Nauta, Case No. 24-12311-J**
**Certificate of Interested Persons (Continued)**

The McClatchy Company, LLC (MNI) d/b/a the Miami Herald

The New York Times Company (NYT)

The Palm Beach Post and USA TODAY, publications operated by

    subsidiaries of Gannett Co., Inc. (GCI)

Thompson, Larry

Tillman, Seth Barrett

Tobin, Charles

Torres, Hon. Edwin

Trent, Edward H.

Tribe, Laurence

Troye, Olivia

Trump, President Donald J.

Trusty, James

Twardy, Stanley

United States of America

Univision Networks & Studios, Inc.

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Defendants request that this Court remand for a hearing in front of the district court. The government concedes that there is a substantial, if not guaranteed, risk of prejudice associated with public disclosure of the Final Report containing privileged material, grand jury material, and evidence in an ongoing criminal case. But the government suggests that this prejudice can be managed by disclosing the report only to the chairmen and ranking members of the House and Senate Judiciary Committees, subject to redaction only as the Department of Justice sees fit. This reflects an improper attempt to remove from the district court the responsibility to oversee and control the flow of information related to a criminal trial over which it presides, and to place that role instead in the hands of the prosecuting authority—who unlike the trial court has a vested interest in furthering its own narrative of culpability.

Defendants' motion does not present, as the government suggests, "a straightforward legal question" appropriate for this Court to address in the first instance. *Cf.* Doc. 90 at 17. Rather, the questions relating to with whom the report may be shared; the likelihood of public disclosure if the report is shared with Congress; and the appropriate level of redaction if the report is shared, are inherently fact-bound in nature, best left to the trial court. Although we dispute that the district court lacks jurisdiction to enforce its own orders, *United States v. Ellsworth*, 814

1

F.2d 613 (1987) makes clear this Court can relinquish jurisdiction to the district court for further proceedings.

The case law and the court rules do not contemplate the DOJ's independently determining what may be redacted and with whom a report may be shared; rather, that role lies firmly with the district court. This is a scenario where the district court is best suited to resolve the myriad factual disputes created by the government's response. By conceding the prejudice associated with public disclosure, the government illustrates the need for a hearing. This also is in the interests of judicial economy so the appellees are not back before the court in a week asking to dismiss the appeal based on violation of the disclosure limitations proffered now by the DOJ. Rather than extend the process, the government proposes a scenario that would in fact complicate and lengthen judicial proceedings.

There are significant problems with the government's proposed "middle ground," worthy of the district court's consideration at a hearing. In conceding that it must take steps to avoid public dissemination, the government argues it can mitigate that risk by disclosing the Final Report only to certain members of Congress. The DOJ's proposal does not adequately insulate against extremely prejudicial leaks—and it does not recognize the reality that, under separation of powers principles, neither the Court nor the Executive branch can bind Congress.

2

The government's proposed approach does not sufficiently address the threat of public dissemination, and that alone is a reason under S.D. Fla. Local Rule 77.2 to enjoin the Attorney General from further dissemination; indeed, "[i]t is the duty of the lawyer or law firm not to release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." S.D. Fla. L.R. 77.2(a) (emphasis added). This should not be the first case in which this Court pre-empts the district court from engaging its on-the-ground expertise regarding both the prejudicial matters at issue.

There is no way to restrain members of Congress from disclosing their opinions regarding the report, or from disclosing the contents thereof. Nor is there a way to prohibit them from disclosing the materials to members of their staff, or to prevent members of their staff from then leaking the contents of the report—or their prejudicial explanations. This country was founded on *individual liberty*, and those principles underlie the defense request. A hearing is necessary to prevent overreach of the federal government to serve political aims at the expense of the individual's right to a fair trial.

3

The government's "middle ground" removes from judicial oversight the flow of publicity regarding this pending criminal matter and risks disclosure of privileged material never meant to be made public at all, much less in a pending criminal matter, finds its way into public debate. The DOJ seeks to pillory the criminal defendants using special counsel's supposedly non-public advocacy. The government's proposed parameters are unclear—what, for example, are the restrictions on members of Congress who view the report? Are they permitted to publicly share their opinions on the report? Are they permitted to discuss the case *at all* publicly, now that have had access to confidential material that will inevitably shape how they view the case? Are they permitted to disclose their reactions to their own staff? Are they permitted to war against the defendants' fundraising activities for their defense? Does public discussion of the report by the DOJ and members of Congress relieve defense of its requirement to abide by the protective order? If the case is going to be tried in the court of public opinion, is the defense not at least entitled to an adversary process in that forum? These factual questions warrant consideration by the district court at a hearing.

The concern about leaks cannot be overlooked; Congress is a political body; its individual members have political aims; and this is a political case. The government's assertion that disclosure to Congress is sufficient to safeguard the defendants' rights falls short—for instance, comments to a *New York Times* article

4

predict an inevitable leak of the special counsel's report but also suggest the "bravery" required to do so and urge such leaking. *See* Comments, "Justice Dept. to Hold Off Releasing Report on Trump Documents Case," by Alan Feuer and Charlie Savage, *New York Times*, Jan. 8, 2025, available at https://www.nytimes.com/2025/01/08/us/politics/trump-documents-report-jack-smith.html. This is an era in which even a draft of a Supreme Court decision on a highly divisive political issue has been leaked. The functioning of the political press depends on leaks, and if such leaks occur here, there will be no recourse for the defendants whose due process rights are at stake.

Members of the House and Senate Judiciary Committees are *not* entitled to access evidence in a pending criminal case, especially not privileged and grand jury materials, and there is no reason to provide such access here. If such access is to be provided, it must be done pursuant to a court process and after a hearing—not unilaterally by the DOJ in disregard of all the rules, policies, and procedures in place to protect against unwarranted and improper pretrial prejudicial publicity that threatens due process.

A hearing is also essential because the government has conceded that redaction of some materials is necessary, and has asserted that it will redact some grand jury information. Undersigned counsel has reviewed the proposed redactions, and deems them insufficient to protect information that was obtained only via grand

jury subpoenas and that generally falls under Fed. R. Crim. P. 6, as well as the common-law rules governing grand jury secrecy. This dispute over the appropriate scope of redactions creates an issue of fact to be resolved by the district court after a hearing. Significantly, Rule 6 contemplates disclosure only pursuant to a court order, and repeatedly emphasizes the role of the court in overseeing matters related to grand jury records. *See, e.g.* Rule 6(c) ("the record may not be public unless the court so orders"); Rule 6(e)(1) ("Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes"); Rule 6(e)(3)(E) (contemplating court authorization of disclosure).

Rule 6 makes clear that disclosure should only be made in relation to federal criminal law enforcement, and not for other aims. The government's proposed disclosure here is unrelated to the government's duty to enforce federal criminal laws, and it represents a misuse of the grand jury process—amplified by the fact that the disqualified special counsel was not authorized to participate in that process. Moreover, the legislative history to Rule 6(e) especially "contemplated" an *ex parte* "judicial hearing in connection with an application for a court order by the government," to "preserve, to the maximum extent possible, grand jury secrecy." Advisory Committee Notes, Rule 6 (citing S. Rep. No. 95-354, 1977 U.S. Code Cong. & Admin. News p. 532). This situation does not fall into any of the disclosure

6

scenarios contemplated by Rule 6. Given the emphasis on the importance of grand jury secrecy, and the principle that trial courts must take care to ensure that secrecy, the unprecedented nature of the situation presented here *highlights* the need for a hearing; it does not remove the need. It is not for the DOJ to decide what grand jury information must be protected from disclosure to members of Congress. That discretionary responsibility lies solely with the Court under well-established principles of grand jury secrecy, *especially* during a pending criminal case. If *any* grand jury material is to be released to *anyone* not tasked with enforcing criminal laws, then there must be an adversarial hearing at which the district court determines if release is appropriate and what is appropriately released.

The government suggests that the question whether the special counsel was unconstitutionally appointed is a question irrelevant to determination of whether the Final Report may be lawfully released. *See* Doc. 90 at 13. This is wrong. Without the unconstitutional appointment, the special counsel never would have had access to the materials he now seeks to release. The special counsel never would have had access to the grand jury investigation but for the unconstitutional nature of his appointment. Most importantly, the government pretends that it can argue the appeal on the merits in response to this motion, but that is not an issue presented by this emergency motion. The issue is that the district court has entered an order—from which no stay has been sought—concluding that the Special Counsel has and had no

authority to act in this prosecution. That settles the matter for purposes of this motion, and the government cannot now rely on its exclusion from the case as a basis to be excluded from judicial review.

The government suggests that Attorney General Garland could have just hired the special counsel as a staff member. But that is not what he did. The Final Report stems from an unlawful appointment, was prepared unlawfully, and is thus a legal nullity under the binding order issued by the district court in this case. It is not subject to 28 CFR 600.9, and there is thus *no* obligation to release the report. Aside from the legal problems related to disqualification, the plain text of 28 CRF § 600.9 does not provide for the release of the report while the criminal case is still pending. That regulation provides that "[t]he Attorney General will notify the Chairman and Ranking Minority Member of the Judiciary Committees of each House of Congress, with an explanation for each action—(1) Upon appointing a Special Counsel; (2) Upon removing any Special Counsel; and (3) Upon conclusion of the Special Counsels investigation." § 600.9(a). The investigation has not concluded because the criminal case is still pending; the DOJ is attempting to find a loophole by suggesting that because the special counsel was disqualified, he may disclose all to Congress (who is outside the reach of the district court's ability to impose gag orders or other confidentiality measures), while the criminal investigation remains ongoing. The DOJ should not be permitted to exploit such a loophole, and it certainly should

8

not be permitted to do so without a hearing and oversight from the district court. Indeed, a separate subsection of § 600.9 explicitly contemplates there will at time be a need for secrecy *even where—unlike here—the criminal investigation has concluded*, by providing that "[t]he notification requirement in paragraph (a)(1) of this section may be tolled by the Attorney General upon a finding that legitimate investigative or privacy concerns require confidentiality." § 600.9(b). This case presents the unprecedented scenario of attempted release to Congress while the investigation is still ongoing. Such a scenario is not contemplated in the regulations, and thus demands court oversight, especially given the pending nature of the criminal case.

Where the special counsel has been improperly appointed, as in this case, the Attorney General lacks all authority, premised either on the applicable regulations or independently of such regulations, to transmit the report to specified members of Congress or to the public. Neither 28 U.S.C. § 509 nor *United States v. Nixon*, 418 U.S. 683 (1974), cited by the government, empowers the Attorney General to release the report prepared by a special counsel who was unconstitutionally appointed, as in this case. Indeed, the unconstitutionally appointed counsel did not even have the authority to author the Final Report, and doing so was directly contradictory to the district court's order. The Special Counsel read the district court's order as narrowly as possible and proceeded to act as if he were validly appointed counsel in this matter

9

in submitting information to the Attorney General. That level of disregard, and lack of adherence to the district court's orders, is pertinent. And it emphasizes the need for the district court's involvement at a hearing. The government's response leaves open questions regarding the contours of the government's proposed middle ground—and substantial areas of disagreement between the parties about the scope of redactions and the people with whom the report may be shared. The judicial branch, and not the executive branch, must resolve these questions, which bear directly on a pending criminal matter.

The government suggests that remand would cause further delay, but the government does not identify any urgency so great that the district court cannot hold a hearing. A hearing will only take a day at most, and it is essential to protect the due process interests at stake. Any delay caused by such a hearing would be de minimis. Nor would a remand cause further emergency litigation, where the emergency—that is, a threat to the defendants' fair trial rights—has already been quelled by the district court's temporary restraining order. The only counsel in this case now claiming urgency is the Attorney General, but the government's brief does not explain this urgency. The Attorney General is an office and not an individual: It will continue in perpetuity. The urgency of political activity is a fake urgency.

The government acknowledges that there are separate considerations with respect to Volumes I and II of the report by dividing it into subsections and by

10

proposing different conditions of release for the respective subsections. As the government acknowledges, Defendants' counsel have not been granted access to review Volume I of the Report. Without such review, Defendants cannot determine the nature of the materials contained therein and, thus, whether they bear any relevance to their respective constitutionally protected defenses in the criminal prosecution. To the extent that there is overlap between the two volumes, due process interests compel that defense counsel be permitted to review each volume and to lodge objections accordingly—objections that are best resolved by the district court.

## CONCLUSION

For those reasons, Defendants respectfully request that the Court remand to the district court for a hearing, and in the meantime enter an order precluding the United States and its officers and agents, including but not limited to Smith and members of the Special Counsel's team, Garland, and the DOJ from issuing the Final Report.

Dated: January 8, 2025

Respectfully submitted:

/s/ John S. Irving, IV
John S. Irving,
E&W LAW, LLC
1455 Pennsylvania Ave NW, Ste 400
Washington, DC 20004
(301) 807-5670
john.irving@earthandwatergroup.com

/s/ Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr.
Fla. Bar No. 326641
L.D. MURRELL, P.A.
400 Executive Center Drive, Ste 201
West Palm Beach, FL 33401
(561) 686-2700 (telephone)
ldmpa@bellsouth.net

Counsel for Defendant Carlos De Oliveira

/s/ Stanley E. Woodward, Jr.
Stanley E. Woodward, Jr
BRAND WOODWARD LAW, LP
400 Fifth Street NW, Ste 350
Washington, DC 20001
(202) 996-7447 (telephone)
stanley@brandwoodwardlaw.com

/s/ Richard C. Klugh
Richard C. Klugh
Fla. Bar No. 305294
KLUGH WILSON, LLC
40 N.W. 3rd Street, PH1
Miami, FL 33128
(305) 536-1191 (telephone)
klughlaw@gmail.com

Counsel for Defendant Waltine Nauta

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion contains 2,637 words and complies with the typeface and type-style requirement of Fed. R. App. P. 32(a)(5) and (6) because it was prepared in a WordPerfect proportionally spaced Times New Roman 14-point font.

/s/ Richard C. Klugh
Richard C. Klugh, Esq.

12