**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 23-CR-80101-AMC**

```
FILED BY _____ D.C.

MAR 3 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI
```

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

        Defendants.

**REPLY BY THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA**
**UNIVERSITY IN SUPPORT OF ITS MOTION TO INTERVENE**

The Knight Institute's motion to intervene is proper, both to seek rescission of this Court's

January 21, 2025 Order and to seek the public release of Volume II under the First Amendment

and the common law. The parties—Waltine Nauta and Carlos De Oliveira ("Ex-Defendants") and

the government—agree with the Knight Institute that intervention in a criminal case is proper to

assert a public right of access to judicial records. They dispute that Volume II is a judicial record,

but that goes to the merits of the Institute's First Amendment and common law arguments, not the

Court's authority to reach the merits. The Knight Institute's motion to intervene to seek rescission

of the Court's January 21, 2025 Order is also proper, because the Order stands directly in the way

of the Institute's ability to vindicate its rights under the Freedom of Information Act ("FOIA").

The Order's impact on the Institute's FOIA request is not "secondary" or "collateral," as the

government claims. By its terms, the Order enjoins the Department of Justice ("DOJ") from

"releasing, sharing, or transmitting Volume II . . . outside the Department of Justice." Order

1

Granting Defs.' Emergency Mot. to Preclude Release of Volume II of Special Counsel's Report ("January 21 Order") 13, ECF No. 714.

Ex-Defendants' assertion that the Institute's motion is untimely is without merit. There is no statute of limitations for a common law or constitutional right of access. More broadly, Ex-Defendants' attempt to rely on Federal Rule of Civil Procedure 24 is misplaced, because as the cases they cite show, timeliness under that rule is often measured in *years*, and intervention can be timely even if it occurs long after a case has concluded. The Knight Institute filed its motion to intervene shortly after DOJ informed the Institute that this Court's Order prevented the Department from taking action on the Institute's FOIA request, and shortly after the Eleventh Circuit dismissed the appeals with respect to Ex-Defendants.

This Court should lift the injunction because Ex-Defendants no longer face any jeopardy. The government has said that it "does not intend to revive the charges," and thus Ex-Defendants face no risk of prosecution during the current administration. Joint Status Report ("JSR") 2, ECF No. 738; United States's Resp. in Opp'n to Mots. to Intervene ("Gov't Br.") 5, ECF No. 740. There is also no risk that a future administration will re-file these charges against them, because the statute of limitations would bar it from doing so. The applicable five-year statute of limitations will run in 2028, during the present administration. Any risk of prejudicing Ex-Defendants in a future prosecution is not substantial enough to justify the Court leaving the injunction in place.

Volume II is subject to a strong presumption of public access under the First Amendment and the common law because it was submitted to the Court for *in camera* review in connection with Ex-Defendants' Emergency Motion, which invoked the Court's powers. The Court also stated in its January 21 Order that its review of Volume II was integral to deciding the motion. That Volume II contains references to Rule 16 discovery material has no bearing on its status as a

2

judicial record. Although the production of material in discovery does not generally give rise to a presumptive right of access, this does not mean that material that would otherwise be subject to a presumptive right of access loses that character because some parts of it were once produced to a party in discovery.

Ex-Defendants have not met their burden of showing good cause or a compelling interest sufficient to overcome the presumption of access. The public interest in the release of Volume II is paramount, because it concerns a public official of the highest rank and addresses a matter of public concern—the investigation and prosecution of a former president for the alleged willful retention of military secrets. Public access to Volume II will also promote public understanding of historically significant events and of our judicial system. Ex-Defendants' asserted interests in keeping Volume II confidential cannot overcome this extraordinary interest in access. Public release of Volume II will enhance rather than impair court functions by heightening public respect for the judicial process, and will not cause significant harm to Ex-Defendants' privacy interests, because, by their own account, the detailed allegations against them have received more than a year-and-a-half of publicity. Ex-Defendants' efforts to paint Volume II as "unreliable" is nothing more than a denial of the allegations against them, which is not a valid basis for keeping Volume II confidential. Finally, Ex-Defendants greatly exaggerate the burdens they would face in responding to the allegations in Volume II.

## I.      The Knight Institute's Motion to Intervene is Proper.

### A.      Intervention is Proper to Assert a Public Right of Access to Volume II.

The parties agree with the Knight Institute that intervention in a criminal case is proper in order to assert a First Amendment or common law right of access to judicial proceedings or records. Ex-Defs.' Resp. in Opp'n to Mots. to Intervene ("Ex-Defs.' Br.") 11, ECF No. 739

("[M]embers of the public generally are allowed to intervene to seek access to judicial records . . . ."); Gov't Br. 6–7 ("[T]o intervene, a third party must be seeking a ruling from the district court that directly affects their constitutional or federal rights, such as a ruling on a disputed First Amendment access or privilege issue."). The Eleventh Circuit made that clear in *In re Petition of the Tribune Co.*, which concerned a newspaper publisher's "post-trial petition to intervene in a criminal case in order to obtain transcripts of bench conferences which were held in open court but out of the hearing of the attending press and public." 784 F.2d 1518, 1519 (11th Cir. 1986). The court held that "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Id.* at 1521. The same is true of organizations like the Knight Institute, because the press's right of access under the First Amendment and the common law is in this context no greater than the public's right of access. *See, e.g., Nixon v. Warner Commc'ns*, 435 U.S. 589, 609 (1978).

Ex-Defendants argue, however, that because the Knight Institute is not a "media organization," it "deserve[s] less, not more, privilege than the legitimate press entities to which this Court already declined to grant intervenor status." Ex-Defs.' Br. 8. That assertion misstates the law and misconstrues the record. As noted, the press has no greater right of access than the public to judicial records under the First Amendment or the common law. And although the Court did not grant the Press Coalition's motions to intervene in this case, neither did the Court hold that intervention was improper. ECF Nos. 196, 283, 370. Instead, the Court *denied the motions as moot*, because the Court granted the relief the Press Coalition was seeking for other reasons, or because the premise for the motion—the possible closure of a hearing—did not occur. *Id.*

4

### B.      Intervention is Also Proper to Seek Rescission of the Court's January 21 Order.

The Knight Institute also has standing to intervene in this case because this Court's January 21 Order barring the release of Volume II implicates the Institute's federal rights under FOIA. *See, e.g., United States v. Atesiano*, Case No. 18-20479-CR-Moore/Simonton, 2018 WL 5831092, at *2–4 (S.D. Fla. Nov. 7, 2018) (explaining that intervention in a criminal case is proper when "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case" (citation omitted)); *United States v. Cox*, Case No. 8:14-cr-0140-T-23MAP, 2015 WL 13741738, at *3 (M.D. Fla. Oct. 7, 2015) (same).

The government argues that the Knight Institute's intervention to seek rescission of the Court's January 21 Order is improper, because "to intervene, a third party must be seeking a ruling from the district court that directly affects their constitutional or federal rights." Gov't Br. 6–7. But that is precisely what the Knight Institute is seeking here. Although the government describes the Court's January 21 Order as having only a "knock-on," "indirect," "secondary," "collateral," or "second-order" impact on the Knight Institute's rights under FOIA, Gov't Br. 6, that description cannot be squared with the plain text of the Court's Order: "the Department of Justice . . . [is] enjoined from . . . releasing, sharing, or transmitting Volume II of the Final Report . . . outside the Department of Justice." January 21 Order 13. The Court's injunction blocks the Institute from exercising its federal rights under FOIA. That is more than sufficient to satisfy the standard for intervention in a criminal case. *See, e.g., Atesiano*, 2018 WL 5831092, at *2–4; *Cox*, 2015 WL 13741738, at *3.

The Second Circuit's decision in *LaRouche v. FBI*, 677 F.2d 256 (2d Cir. 1982), is instructive. In that civil case, the district court entered an order enjoining public disclosure of

certain FBI documents, and a third party seeking those documents through FOIA moved to intervene. *Id.* at 257. The Second Circuit found that the intervenor had demonstrated "a recognizable interest in the litigation" because FOIA "creates in clear language a judicially enforceable public right to secure such information from possibly unwilling official hands." *Id.* at 258 (cleaned up). The court concluded that "[w]here, as here, a member of the public is being foreclosed from exercising that right by an order entered . . . in litigation to which she is not a party, her effective remedy, perhaps her only one, is by way of intervention." *Id.* (citing *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 378 (1980)). So too here.

Ex-Defendants and the government suggest that the Knight Institute's motion to intervene is improper because the Institute has not filed suit to enforce its FOIA request. Ex-Defs.' Br. 10 n.3 (faulting the Knight Institute for "not even bother[ing]" to "appeal[] DOJ's denial of its FOIA demand to the United States District Court for the District of Columbia"); Gov't Br. 6 (noting that the "Knight Institute has not even filed suit"). Under the applicable regulations, however, the Institute must administratively appeal DOJ's denial of its FOIA request before filing suit, and it has 90 days—or until May 7, 2025—to do so. *See* Ex. 3 at 2, Declaration of Anna Diakun, ECF No. 721. Because an administrative appeal would be futile while this Court's injunction remains in place, the Knight Institute has sought to intervene in this case to urge the Court to lift the injunction.

Taking a different tack, Ex-Defendants claim that the Knight Institute is an "offensive," and thus improper, intervenor under *Atesiano*. Ex-Defs.' Br. 7–8. But that is plainly incorrect, too. "Offensive" intervenors are "civil litigants [who seek] to advance their own civil action by intervening in a criminal action for purposes of obtaining discovery," even though they likely could obtain the information through the normal discovery process. *Atesiano*, 2018 WL 5831092 at *3–

4. But by asking the Court to lift its injunction, the Knight Institute is not asking the Court to affirmatively provide information the Institute could obtain elsewhere; the Institute is asking the Court to remove a barrier to the Institute vindicating its rights under FOIA. The Institute is thus much more akin to what *Atesiano* calls a "defensive" and thus proper intervenor—"a member of the public with an interest in open access to court records." *Id.* at *2.

**C.     The Knight Institute's Motion to Intervene is Timely.**

Ex-Defendants make the baseless assertion that the Knight Institute's motion to intervene is untimely. Ex-Defs.' Br. 5–6. Ex-Defendants rely on the timeliness requirement of Federal Rule of Civil Procedure 24, but as the cases they cite make clear, timeliness under Rule 24 is often measured in *years*, and "[i]ntervention may be timely filed even if it occurs after a case has concluded." *Comm'r, Ala. Dep't of Corrs. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019); *see also Miccosukee Tribe of Indians v. United States*, Case No. 04–21448–civ–Gold/McAliley, 2010 WL 11442638, at *2 (S.D. Fla. Aug. 2, 2010) (finding motion to intervene untimely because it was filed "approximately two years" after the intervenors became aware of their interests in the case).

Ex-Defendants fail to acknowledge the "special nature" of a motion to intervene for the limited purpose of asserting a public right of access to a document under seal, which weighs in favor of granting intervention even long after a case has been dismissed. *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) ("[O]rdinary principles applicable to intervention do not work well here" because "to the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as it does for lawsuits now in the early stages of

motions litigation." (alterations in original) (citation omitted)).[1] Ex-Defendants also ignore the actual timeline of the Knight Institute's intervention. It was not until the Court issued its January 21 Order enjoining the Department of Justice from releasing Volume II that anyone could have learned that the Court relied on the copy of Volume II that was delivered to the Court for *in camera review* in issuing the injunction. Knight First Amendment Institute Mot. to Intervene ("Knight Mot.") 6, 12, ECF No. 721. It was not until February 6, 2025, that DOJ informed the Knight Institute that the Court's January 21 Order prevented DOJ from acting on the Institute's FOIA request. *Id.* at 7–8. And it was not until February 11, 2025, that the Eleventh Circuit dismissed the appeals, ensuring that Ex-Defendants were no longer in jeopardy and there was no longer any reason for the injunction. *Id.* at 7. The Institute filed its motion to intervene shortly thereafter, on February 24, 2025. Ex-Defendants' assertion that the Knight Institute "should have intervened back in January," and that Ex-Defendants will suffer prejudice from the "delay" thus makes no sense. *See* Ex-Defs.' Br. 6.

## II.   The Court Should Lift the Injunction Because Ex-Defendants Face No Risk of Future Prosecution.

The Court should lift the injunction because Ex-Defendants do not face any risk of future prosecution. Ex-Defendants urge the Court to "maintain its supervision" over this case and "continue to enjoin the release of the Report" because "the statute of limitations has not yet expired in this matter." JSR 3, 5. But as Ex-Defendants concede, "the United States Attorney's Office for the Southern District of Florida does not intend to revive the charges." *Id.* at 2, 3. They thus face

---

[1] The Eleventh Circuit has recognized that "timeliness concerns may be less significant when intervention is 'not on the merits, but for the sole purpose of challenging a protective order.'" *Advance Loc. Media*, 918 F.3d 1161, 1171 n.9 (11th Cir. 2019) (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (allowing intervention three years after a case was settled)).

no risk of prosecution during the current administration. There is also no risk that a future administration will re-file these charges against them because the statute of limitations would bar it from doing so. The alleged criminal conduct in the Superseding Indictment took place in 2022 and 2023, *see* Superseding Indictment 38–43, 46–53, ECF No. 85, and each crime with which Ex-Defendants are charged has a five-year statute of limitations, *see* 18 U.S.C. §§ 1001, 1512, 1519, 3282; JSR 5–6. This means that the statute of limitations will run in 2028, during the present administration.

It is thus disingenuous for Ex-Defendants to represent that they remain in "jeopardy" and that as a result "their due process rights remain a serious concern that strongly outweighs any interest that the Government or the public might have in the release of the Special Counsel's Report." JSR 6. Lifting the injunction will not violate Ex-Defendants' due process or fair trial rights, nor will it violate Local Rule 77.2's prohibitions against releasing "information or opinion," because that prohibition only applies when there is a trial to protect. *See* S.D. Fla. 77.2(a) (limiting the rule to information released "in connection with pending or imminent criminal litigation"). The Knight Institute knows of no case in which a court has enjoined the government from releasing information on the grounds that the information might prejudice individuals who might be charged with crimes at some future date.

Accordingly, the injunction barring release of the report is no longer a necessary or appropriate exercise of this Court's supervisory authority. *See United States v. Moss*, No. 10-60264-CR-COHN, 2011 WL 2669159, at *9 (S.D. Fl. Mar. 21, 2011) (explaining that a defendant must "show that he has been prejudiced by the conduct of which he complains before he would be entitled to relief" through the Court's exercise of its supervisory powers) (citing *United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987)). That Ex-Defendants "remain concerned that [FOIA]

presents opportunities for mischief that might one day force the Attorney General's hand, despite her good faith intention to maintain the Report's confidential status," JSR 4, does not provide this Court with grounds to keep the injunction in place. The Knight Institute can find no case in which a court has enjoined the release of a document on the ground that someone might seek or obtain the document under FOIA—and an injunction issued for that purpose would be flagrantly improper. The same is true of Ex-Defendants' characterization of Volume II as "the biased ramblings of an unconstitutional prosecutor," Ex-Defs.' Br. 13, and their desire to "avoid the arduous task of dissecting Volume II . . . to identify and seek protection for additional 6(e) and other confidential information." JSR 3.

### III.   The Public Has a Right of Access to Volume II Under the First Amendment and the Common Law.

#### A.   Volume II is Subject to a Presumptive Right of Access.

Ex-Defendants argue that Volume II is not a judicial record because it "was never filed as part of the public record, and it was only submitted to this Court on an *ex parte*, *in camera* basis." Ex-Defs.' Br. 11. As explained in the Knight Institute's opening brief, however, a document need not be filed on the docket to be a judicial record. Knight Mot. 11–12. It is sufficient when, as here, a document is submitted for *in camera* review in connection with a motion that invokes the Court's powers. *Id.* Ex-Defendants cite no case to the contrary. Volume II in fact played a much more significant role. The Court directed that Volume II be submitted *in camera* to "facilitate" the Court's consideration of the motion, the Court discussed Volume II's contents with the parties' designated counsel during a closed portion of the hearing on the motion, and the Court stated in its January 21 Order that its review of Volume II was integral to deciding the motion. ECF Nos. 705; 714 at 2, 4 n.6, 5 n.8. Volume II is therefore a judicial record.

The government is thus simply incorrect in claiming that judicial records are limited to documents "that may help a court to resolve the merits of an action." Gov't Br. 8; *see also id.* at 11 (arguing that "Volume II was not critical to the Court's resolution of any of the underlying charges against the defendants"). In *Romero v. Drummond Co.*, for example, the Eleventh Circuit held that a presumptive right of access attached to declarations filed in connection with a motion that had nothing whatsoever to do with the court's resolution of the merits—a "Motion To Submit Pertinent Information To U.S. State & Justice Departments." 480 F.3d 1234, 1240, 1245–48 (11th Cir. 2007).

For similar reasons, there is no merit to Ex-Defendants' argument that Volume II is not a judicial record because it "was never filed as part of the public record, and it was only submitted to this Court on an *ex parte, in camera* basis for the sole purpose of this Court's enjoining its improper release." Ex-Defs.' Br. 11. That argument, however, was squarely and appropriately rejected in *United States v. Noriega*, 752 F. Supp. 1037 (S.D. Fla. 1990). In that case, the court held that transcripts of jailhouse recordings of the defendant speaking to his legal team were judicial records, even though the recordings were submitted to the court for *in camera* review for the sole purpose of determining whether their public release would impair the defendant's fair trial rights. *Id.* at 1038–42. The court reasoned as follows:

> [W]hether the transcripts were formally entered on the docket or placed in the court file is not dispositive as to whether they are judicial records to which the press has a right of access. The transcripts of Noriega's conversations were relied on by this court in reaching its determination as to whether disclosure of their contents would impair Noriega's right to a fair trial. Indeed, the entire purpose of requiring CNN to produce the tapes was to enable this court to make the factual findings necessary to rule on the merits of Noriega's motion for an injunction on publication. The tapes' contents therefore provided the basis for the court's decision to lift its restraining order on the tapes' broadcast. In this function, the transcripts served as an important part of the record before this court, and would have been submitted to the Eleventh Circuit and the Supreme Court as part of the record had this court's order vacating its restraint been appealed.

*Id.* at 1042 (citation omitted). Like the recordings at issue in *Noriega,* Volume II was submitted to the court for *in camera* review in connection with a motion to prevent its public release. It is a judicial record for this reason. That Volume II was not "used at trial or attached to a motion to suppress" makes no difference. Ex-Defs.' Br. 14.

Ex-Defendants claim that the Knight Institute is "suggest[ing] that by invoking a Court's powers to keep a document private, a document must become public." Ex-Defs.' Br. 11. This is incorrect. When Ex-Defendants submitted Volume II to the Court for *in camera* review in connection with their Emergency Motion, Volume II became subject to a *presumptive* right of access.[2] At that time, however, the criminal case against Ex-Defendants was ongoing and they faced the prospect of a criminal trial, and the necessity of protecting their due process and fair trial rights overcame the presumption of access. But "[w]hen the Eleventh Circuit dismissed the appeal as to [Ex-Defendants], the criminal case ended," Gov't Br. 13, and there was no longer good cause or a compelling reason for keeping Volume II confidential.

The parties argue, without merit, that the public has no presumptive right of access to Volume II, because it contains "myriad references" to pre-trial discovery material, which they claim is exempt from the First Amendment and common law rights of access unless it is filed on the docket in connection a substantive motion. Gov't Br. 9–10; *see also* Ex-Defs.' Br. 13–14. The Special Counsel's final report is not a discovery document and should not be treated like one. It has nothing to do with the pre-trial discovery process. Indeed, as the government emphasizes, "the

_____

[2] In *Noriega,* the court at one point observed that several cases stand for the "sound proposition" that the presumption of access to judicial records does not apply to materials "properly submitted to the court under seal" or *in camera. Id.* at 1042–43. Besides being dicta—the court said that those cases were "irrelevant" to its decision—the Eleventh Circuit has rejected that proposition in holding that a document submitted to the court for *in camera* review but not filed with the court was a judicial record. *See Advance Local Media,* 918 F.3d at 1167–68.

Court dismissed the criminal charges against the defendants well before the issuance of Volume II." Gov't Br. 11. The report was prepared to be released to the public, as has been the case with other Special Counsels' final reports, including the Mueller Report and, more recently, Special Counsel Hur's and Special Counsel Durham's final reports.[3]

In the civil discovery context, the rule is that the production of material in discovery does not give rise to a presumptive right of access. But this does not mean that material that would otherwise be subject to a presumptive right of access loses that character because some parts of it were once produced to a party in discovery. The parties also fail to recognize the distinction courts draw between civil discovery and Rule 16 discovery for purposes of the First Amendment and common law rights of access. "The process by which the government investigates and prosecutes its citizens is an important matter of public concern," which distinguishes discovery in criminal cases from "traditional civil discovery between private parties." *United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) (holding that *Brady* materials submitted to the court for *in camera* review were subject to the common law right of access).

## B.     The Presumptive Right of Access Cannot Be Overcome.

The public interest in Special Counsel Jack Smith's investigation and prosecution of President Trump is extraordinary. Ex-Defendants cannot meet their burden of showing that their interests in keeping Volume II confidential outweigh the public interest in disclosure. The criminal

---

[3] Special Couns. Robert S. Mueller, III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (2019), https://perma.cc/2K8N-Y4ZU; Special Couns. Robert K. Hur, *Report on the Investigation Into Unauthorized Removal, Retention, and Disclosure of Classified Documents Discovered at Locations Including the Penn Biden Center and the Delaware Private Residence of President Joseph R. Biden, Jr.* (2024), https://perma.cc/MSN6-XTVF; Special Couns. John H. Durham, *Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns* (2023), https://perma.cc/N9DN-HGJW.

case against Ex-Defendants is over, and they face no risk of future prosecution. None of the other interests Ex-Defendants assert could justify keeping Volume II confidential.

First, release of Volume II would not "impair court functions." Ex-Defs.' Br. 15. In fact, denying access to Volume II "may well diminish the public's regard for the court's role in an open society." *Kearney v. Auto–Owners Ins. Co.*, Case No. 8:06–cv–00595–T–24, 2009 WL 10664317, at *3 (M.D. Fla. Sept. 8, 2009). This Court's ruling that Jack Smith was unconstitutionally appointed does not change the calculus. Indeed, it underscores the public interest in Volume II, because releasing Volume II will assist the public in determining whether special counsels play a sufficiently important role in our system of justice to warrant "Congress . . . authoriz[ing] [their] appointment through enactment of positive statutory law consistent with the Appointments Clause." *United States v. Trump*, 740 F. Supp. 3d 1245, 1253 (S.D. Fla. 2024). And although Ex-Defendants repeatedly suggest that Jack Smith engaged in misconduct, the Eleventh Circuit has held that even if a court finds that an attorney engaged in misconduct in preparing or filing a judicial record, withholding the document from the public is not a proper sanction. *Romero*, 480 F.3d at 1247.

Second, Ex-Defendants' assertion that the release of Volume II would harm their privacy interests is undermined by the fact that the detailed allegations against them have already received "a year-and-a-half of rampant pretrial publicity." JSR at 4. The Eleventh Circuit has held that even "court files that instigate public scandal or libel" should not be sealed when they "support the already-public" allegations against the defendant. *Romero*, 480 F.3d at 1247. Moreover, "in cases involving public concerns like 'the citizen's desire to keep a watchful eye on . . . the operation of government,' documents—even sensitive ones—may speak to the 'heart of the interest protected

by the right of access,' making public disclosure paramount." *Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1257 (S.D. Fla. 2019) (quoting *Romero*, 480 F.3d at 1246).

Third, Ex-Defendants' assertion that Volume II is filled with "unreliable allegations," Ex-Defs.' Br. 15, is not a valid reason for withholding Volume II from the public. *Romero*, 480 F.3d at 1247 (holding that a party's "denial" of the allegations in a judicial record "is not a legitimate basis" for keeping the record confidential). Finally, Ex-Defendants greatly exaggerate the "hurdles" they would face in responding to the allegations in Volume II. Ex-Defs.' Br. 16. Responding to the report would not be "akin to defending the case at trial," nor would it require counsel to access and review the "massive" amounts of discovery that are "stored on a database." *Id.* at 15. Defendants cite no case for the proposition that the burdens of responding to allegations in a judicial record can overcome the strong presumption of access.

## CONCLUSION

For the foregoing reasons, the Court should grant the Knight Institute's Motion to Intervene, rescind the January 21 Order, and direct the clerk to file on the public docket the redacted version of Volume II that DOJ submitted to the Court in advance of the January 17, 2025 hearing on Defendants' Emergency Motion.

Dated: March 31, 2025

Respectfully submitted,

David M. Buckner, Esq.
Florida Bar No. 60550
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables FL 33134
Phone: (305) 964-8003
david@bucknermiles.com

Scott Wilkens (*pro hac vice* pending)
Anna Diakun (*pro hac vice* pending)
Jameel Jaffer (*pro hac vice* pending)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, N.Y. 10115
Phone: (646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Prospective Intervenor Knight
First Amendment Institute at Columbia
University*

16

## CERTIFICATE OF SERVICE

I, David Buckner, do hereby certify that I have filed the foregoing Reply by the Knight

First Amendment Institute at Columbia University in Support of its Motion to Intervene with the

Clerk of the Court for the United States District Court for the Southern District of Florida on March

31, 2025.

Respectfully submitted,

David M. Buckner, Esq.
Florida Bar No. 60550
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables FL 33134
(305) 964-8003

*Counsel for Prospective Intervenor*

17