## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cr-80101-CANNON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

_____/



## AMERICAN OVERSIGHT'S CONSOLIDATED REPLY
## TO FORMER DEFENDANTS' AND THE UNITED STATES' OPPOSITION TO ITS
## MOTION TO INTERVENE AND LIFT INJUNCTION

### INTRODUCTION

This Court should grant American Oversight's motion to intervene and dissolve the

January 21, 2025 Order ("the Order") barring the release of Volume II of the Final Report of the

Special Counsel ("the Report"). Prospective intervenor American Oversight properly requested

access to the Report, a document of significant national importance, under the Freedom of

Information Act ("FOIA"), yet has been denied that access solely because of this Court's Order,

and now seeks intervention in this matter for the limited purpose of seeking dissolution of the

Order so that it may enforce its own federal rights under FOIA.[1]

The Order was entered to protect the rights of individuals who were then facing a live

criminal appeal and possible trial; they no longer face either. The concerns of individuals who no

---

[1] American Oversight incorporates in this reply as background the procedural history of this case and its case in the District of Columbia, *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025), provided in its initial Motion, ECF No. 717.

longer have the prospect of a criminal case before this Court cannot be used to justify the extension of an injunction barring the release of an executive branch agency report when all risks of pre-trial publicity or prejudice have been extinguished. That would shield these *former* defendants, who face *no* criminal jeopardy, far beyond what *actual* criminal defendants are entitled to at the conclusion of a proceeding.

Denying American Oversight's motion to intervene and extending the injunction obstructs American Oversight from exercising its federal rights. Meanwhile, the Department of Justice ("DOJ") speaks from both sides of its mouth, telling another federal district court that the Order prohibits it from fulfilling its FOIA obligations, but telling *this* Court it takes no position on continuing that injunction. Extending the injunction would contradict the Court's reasoning supporting its earlier orders on both volumes of the Report, exceed the scope of its supervisory powers and Article III jurisdiction, interfere with American Oversight's federal rights, and obstruct the public's right to review the non-exempt portions of a report of significant national importance. As further explained below, this Court should grant American Oversight's Motion to Intervene and immediately lift the injunction barring the release of Volume II of the Report.

## MEMORANDUM OF LAW

**I.**     **American Oversight Should be Permitted to Intervene.**

      **A.**     American Oversight Has Established Standing Because Its Federal Rights Are Implicated and It Has No Option Outside of Intervention to Enforce those Rights.

American Oversight has a federal right to seek federal agency records under FOIA, and so long as the Order remains in effect and DOJ refuses to contest it, no option remains outside of intervention to enforce that right.

Although intervention in criminal cases is limited, it is permitted when "a third party's constitutional *or other federal rights* are implicated by the resolution of a particular motion,

request, or other issue during the course of a criminal case." *United States v. Carmichael*, 342 F.

Supp. 2d 1070, 1072 (M.D. Ala. 2004) (emphasis added); *see also United States v. Aref*, 533

F.3d 72, 81 (2d Cir. 2008) (holding that motion to intervene by a non-profit organization to

assert right to access is procedurally proper despite the "Federal Rules of Criminal Procedure

mak[ing] no reference to a motion to intervene in a criminal case").[2]

     American Oversight's federal rights are implicated by this Court's order barring the

release of Volume II of the report. Under FOIA, "[a]n agency must disclose agency records to

any person under [5 U.S.C.] § 552(a), 'unless they may be withheld pursuant to one of the nine

enumerated exemptions listed in § 552(b).'" *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136,

150–51 (1989) (*quoting U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988)); *see also Sikes v.

United States Dep't of Navy*, 896 F.3d 1227, 1234 (11th Cir. 2018); *Citizens for Resp. & Ethics

in Washington v. U.S Dep't of Just.*, 728 F. Supp. 3d 113, 121 (D.D.C. 2024) (internal citations

omitted) (noting that FOIA "seeks to permit access to official information long shielded

unnecessarily from public view and attempts to create a judicially enforceable public right to

secure such information form possibly unwilling hands").

     The DOJ dismissively characterizes the implication of American Oversight's federal

rights in this matter as "some secondary or collateral implications to [its] FOIA claims," United

States Opp'n Mots. to Intervene ("Gov. Opp'n"), ECF No. 740, at 6, while at the same time

ignoring its own transparency obligations[3] and wielding the Order to justify non-disclosure of

---

[2] Although the court in *Aref* ultimately affirmed the district court's denial of the prospective
intervenor's motion to intervene because the lower court had "fully consider[ed] the issue that
the [prospective intervenor] raised," it held that the prospective intervenor's motion to intervene
in a criminal case was the proper vehicle to raise its issues before that court. *Aref*, 533 F.3d at 81.
[3] *See* U.S. Dep't of Justice, Guide to the Freedom of Information Act (Dec. 3, 2024),
https://www.justice.gov/oip/page/file/1248371/dl?inline#page=11 ("The Guidelines make clear

Volume II in American Oversight's FOIA action. *See* Ex. 1, ¶¶ 9–10 to Def.s' Mot. to Dismiss in

*Am. Oversight v. Dep't of Justice*, No. 25-cv-383 (D.D.C. filed March 11, 2025), ECF No. 12-1

(stating that the DOJ informed American Oversight that it "lacks the authority to consider the

releasability of [Volume II]" under FOIA "because it is protected from disclosure by a court

injunction issued by the United States District Court for the Southern District of Florida, West

Palm Beach Division.").

The necessity of intervention here is demonstrated by DOJ's position in this proceeding.

Here, DOJ does not object to this Court extending its injunction and exercising jurisdiction,

*potentially indefinitely*, over a report created by an executive branch agency pertaining to issues

in this closed case but not drafted *for use* in this case. *See* J. Status Report, ECF No. 738, at 1.

The fact that Volume II is an important federal record which American Oversight and the public

it serves have a federal right to access distinguishes this case from all others involving extension

of a court seal or protective order beyond conclusion of a criminal case. Former defendants, for

their part, actively oppose dissolving the injunction. *See id.* at 3-6. No parties, other than the

prospective intervenors, are advocating for federal rights relating to government transparency

and access to otherwise public documents. American Oversight's federal "right of access,

enforceable in court, to federal agency records," *Hull v. I.R.S., U.S. Dep't of Treasury*, 656 F.3d

1174, 1177 (10th Cir. 2011), is not just implicated but, as a practical matter, extinguished by the

enforcement of an injunction barring disclosure of Volume II.

Despite the clear implication of American Oversight's federal right to non-exempt

agency records and the fact that no party before the bar seeks to defend those rights, DOJ and

---

that the Justice Department will apply the presumption of openness when determining whether to
defend an agency's nondisclosure decision and it will not defend . . . decisions that are
inconsistent with the FOIA or with these guidelines") (internal quotations omitted).

former defendants argue that American Oversight is an "offensive" prospective intervenor, relying heavily on an unreported magistrate judge opinion in *United States v. Atesiano*, 2018 WL 5831092 (S.D. Fla. 2018). Former defendants' laser focus on the judge's classification of "offensive" versus "defensive" prospective intervenors ignores almost wholly the rationale underpinning those characterizations. Former Defs.' Opp'n to Mots. to Intervene ("Former Defs.' Opp'n"), ECF No. 739, at 6-7. The *Atesiano* analysis does not support the categorization of American Oversight as an "offensive" prospective intervenor.

The cases that the *Atesiano* magistrate judge examined wherein the prospective intervenor was not entitled to intervention largely shared one common thread: the prospective intervenor would be able to obtain the relief sought through intervention in another forum. *Atesiano*, 2018 WL 5831092 at *2-4. For example, the magistrate highlighted *United States. v. Couch*, 2017 WL 3016923 (S.D. Ala. 2017), where a prospective intervenor was denied intervention in a criminal action that resulted in forfeited assets. *Id.* at *2. In that case, the prospective intervenor had previously brought her own *qui tam* action against the *Couch* defendants seeking recovery under the False Claims Act. *Id.* at *1. The court's decision rested on a question of statutory interpretation, *id.* at *1-2, but the court also noted that the prospective intervenor was a party seeking intervention "to pursue her FCA claims"—claims which she could pursue in another forum—as opposed to a "member of the public with an interest in open access to court records or as a private party to defend against the production of confidential or privileged documents," *id.* at *2 n.1.

The *Atesiano* opinion also examined *United States v. Moussaoui*, 483 F. 3d 220 (4th Cir. 2007), in which the Fourth Circuit reversed and vacated a lower court decision allowing victims of the September 11 terrorist attacks to intervene to "to access non-public discovery materials

related to the prosecution for use in their own civil action." *Atesiano*, 2018 WL 5831092 at *3. As the magistrate in *Atesiano* noted, the *Moussaoui* decision relied in part on the observation "that the materials sought by the plaintiffs in that case were in the Government's possession and were capable of being obtained by the civil plaintiffs in their federal civil action through the normal course of third-party civil discovery." *Id.* Similarly, when the *Atesiano* magistrate reviewed *United States v. Sikes*, 2017 WL 25460 (D. Neb. Jan. 3, 2017), a case in which a federal district judge affirmed a magistrate's recommendation to deny intervention in a criminal proceeding to a prospective intervenor who had a separate state civil action against the defendant and sought intervention to gain access to discovery documents, she highlighted that the prospective intervenor in that case "sought to eliminate an impediment to discovery, and had other means to obtain that information through the civil case." *Id.*

The magistrate judge distinguished these prospective intervenors from those she considered "defensive" intervenors, such "as a member of the public with an interest in open access to court records," or a party seeking intervention to "vindicate . . . privacy or privilege rights" whose federal rights reflected entitlement to intervention. *Id.* at *2-3. The magistrate judge considered the prospective intervenor in *Atesiano*, an individual with a civil case against the defendants seeking access to discovery materials covered by a protective order in the criminal case, to be "offensive" because "[s]uch information, to the extent it is relevant to his civil action, is likely available to him through civil discovery procedures." *Id.* at *4.

That does not apply here. American Oversight is more akin to the "defensive" intervenors seeking "open access to court records." *See id.* at *2. American Oversight is not seeking to access discovery materials in a criminal case that it could get later through a civil discovery

process. Nor is it, as former defendants suggest, requesting to intervene to "bootstrap [its] FOIA litigation into this closed criminal case." Former Defs.' Opp'n, ECF No. 739, at 10.

Rather, American Oversight seeks limited intervention in this case as a matter of sheer necessity to lift an injunction barring access to a public record. The DOJ, while not objecting to the continued withholding of Volume II, has explicitly relied on this Court's injunction in response to American Oversight's request for release of non-exempt portions of the Report—which, but for this Court's order, would be required to be released under FOIA[4]—as a bar preventing the government from releasing it. *See* Ex. 1, ¶¶ 9–10 to Def.s' Mot. to Dismiss in *Am. Oversight v. Dep't of Justice*, No. 25-cv-383 (D.D.C. filed March 11, 2025), ECF No. 12-1 (DOJ asserting it "lacks authority to consider the releasability of [Volume II] under the FOIA," because it is "protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division."). So long as the

---

[4] For example, in 2019 the federal government released a redacted version of former Special Counsel Robert Mueller's investigative report following a FOIA lawsuit by the Electronic Privacy Information Center ("EPIC"). *Elec. Priv. Info. Ctr. v. United States Dep't of Just.*, 18 F.4th 712, 715 (D.C. Cir. 2021). Although EPIC challenged redactions in the released report, the Court found that some redactions were appropriate. *Id* at *722. *See also* Special Couns. Off., U.S. Dep't of Just., Report on the Investigation into Russian Interference in the 2016 Presidential Election (Mueller Report), (April 18, 2019), https://www.govinfo.gov/app/details/GPO-SCREPORT-MUELLER. Additionally, the federal government routinely voluntarily releases documents and reports relating to investigations of national importance. *See e.g.*, U.S. Dep't of Justice, FBI Releases Documents in Hillary Clinton E-Mail Investigation (Sept. 2, 2016), https://www.fbi.gov/news/press-releases/fbi-releases-documents-in-hillary-clinton-e-mail-investigation (making publicly available documents related to investigation into former Secretary of State Hillary Clinton's use of a personal e-mail server "in the interest of transparency and in response to numerous Freedom of Information Act (FOIA) requests," with "[a]ppropriate redactions" pertaining to "classified information or other material exempt from disclosure under FOIA"; *See also* Off. of Inspector Gen., U.S. Dep't of Just., A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf (publishing a 568-page report detailing the Office of the Inspector General's review of federal investigations into former Secretary Clinton's use of a private email server).

government can continue to invoke this Court's order to justify continuing to withhold the Report in full, American Oversight has no opportunity to vindicate its federal right to access information subject to FOIA.

B.      American Oversight is Distinguishable from Prior Prospective Intervenors.

The former defendants point to this Court's denial of requests to intervene by the press and President Trump in this proceeding, and suggest, with scarce supporting analysis, that prospective intervenors "should fare no better," Former Defs.' Opp'n, ECF No. 739, at 2. But American Oversight is wholly distinguishable from prior prospective intervenors. For example, the Press Coalition sought intervention on the potential closure of the courtroom for upcoming hearings, which the Court had not yet ordered. ECF Nos. 175, 177. The Court decided that, "should a basis arise to warrant consideration of a temporary closure of the courtroom . . . Movant, through counsel, will be given an opportunity to be heard prior to any decision on closure." ECF No. 177. The motion was denied as moot after the hearings were held publicly. ECF No. 196. When the Press Coalition later sought intervention to be heard on issues relating to potential sealing and redactions in pre-trial documents, ECF No. 353, its motion was filed after the DOJ filed its motion for sealing and redactions, but before the Court decided the issue. *See id.* The former defendants then filed a response opposing the DOJ's motion and arguing for transparency. ECF No. 358. The Court permitted the Press Coalition to appear as amicus curiae at a hearing on the motion and present arguments, ECF No. 361,[5] and denied the motion as moot when those arguments were considered, ECF No. 370. Finally, when President Trump filed a motion to intervene to oppose the release of both volumes of the Report, the Court denied those

---

[5] A full transcript of the hearing, including amicus curiae's participation in the argument, is available at ECF No. 369.

motions, ECF Nos. 702, 714. At the time the motions were filed, the DOJ had dismissed its appeal as to President Trump. ECF No. 677. The denial of President Trump's request to intervene was included in the Court's opinion enjoining the government from releasing Volume II, during which the Court relied on its "duty to safeguard the accused," ECF No. 714 at 8, noting that "there are two individuals in this action, each with constitutional rights to a fair trial, each who remain subject to a live criminal appeal of this Court's Order Dismissing the Superseding Indictment," *id.* at 11.

Here, American Oversight is in a different position than the Press Coalition and President Trump. American Oversight has a federal right that is currently abridged by the Court's January 21, 2025 Order. American Oversight is not seeking intervention *prior* to the Court's decision to enjoin the release of Volume II, like the Press Coalition when it sought to be heard on closed proceedings when the Court had not made any such order, ECF No. 177, or in a circumstance where another party is already advocating for a position that would preserve the prospective intervenor's federal right, such as when the Press Coalition was granted amicus status at an argument where former defendants proffered similar arguments in support of transparency, ECF No. 361. Nor is American Oversight in a similar position to President Trump, whose constitutional rights to a fair trial were no longer at issue before the Court following the dismissal of his appeal, and whose position, like that of the Press Coalition's, was represented by other parties before the bar. American Oversight has a right to intervene because it has a federal right that is currently implicated by this Court's Order.

C.   American Oversight's Motion to Intervene Has Not Been Mooted by the Senate Confirmation of Kash Patel.

American Oversight's Motion to Intervene is not moot. Former defendants and the government mistakenly conflate American Oversight's stated reasons for requesting *expedited*

proceedings here and in the FOIA action—the then-approaching Senate confirmation vote on Kash Patel—with the *basis* for American Oversight's request to intervene in these proceedings. *See* Former Defs.' Opp'n, ECF No. 739, at 2-4; Gov. Opp'n, ECF No. 740, at 12-13.

The Senate's confirmation of Patel does not affect American Oversight's federal right implicated by this Court's enjoinment of the release of Volume II. The Report remains of vital national interest, and FOIA does not require a requester to justify its requests for non-exempt public documents. *See generally* 5 U.S.C. § 552.[6]

The only actions that could moot American Oversight's motion to intervene would be (1) American Oversight's rescission of its FOIA request, or (2) the full production of non-exempt documents by the federal government responsive to that request (i.e., Volume II). *See, e.g.*, *Bagwell v. U.S. Dep't of Just.*, 311 F. Supp. 3d 223, 231 (D.D.C. 2018) (finding requester's action mooted when agencies produced the documents or asserted exemptions to justify withholdings, and when the requester "received [the] records or was in a position to challenge the basis for their withholding"). Neither event has occurred here.

## II.     The Court Should Lift the Injunction Barring Release of Volume II.

### A.     Extending the Injunction Would Be Inconsistent with the Court's Previous Opinions as to Both Volumes of the Special Counsel's Report.

In denying a request to bar the release of Volume I, this Court noted that its authority "to enforce its own orders is . . . confined to this proceeding and to the *remaining* defendants in this proceeding." ECF No. 697 at 2 (emphasis added). Similarly, when the Court *did* enjoin the release of Volume II, it simultaneously denied the motion to intervene of a former defendant

---

[6] A request for *expedited* processing of a FOIA request requires a demonstration of urgency. *See* 5 U.S.C. § 552(a)(6)(E). But that only applies to requests for expedited processing, not the underlying FOIA request itself.

whose appeal had already been dismissed by the DOJ and invoked its supervisory powers to "remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials" as authority to enjoin Volume II's release. ECF No. 714 at 7 (internal citations omitted). The Court highlighted its obligations pertaining exclusively to then-Defendants Nauta and De Oliveira, including the duty to "tak[e] protective measures to ensure a fair trial and to minimize the effects of prejudicial pretrial publicity, even when such measures are not strictly and inescapably necessary," *id.* at 8 (internal citations omitted), and the significance that the release of Volume II could have on "two individuals in this action, each with constitutional rights to a fair trial, who remain subject to a live criminal appeal of this Court's Order Dismissing the Superseding Indictment," *id.* at 11. Further, the Court noted, the government had "not sought leave to dismiss that appeal, initiated by the Special Counsel, and there has been no indication by any government official in this case that the Department will not proceed on the Superseding Indictment should it prevail in the Eleventh Circuit or in subsequent proceedings." *Id.*

Those considerations are now moot. The DOJ moved to voluntarily dismiss the appeal as to the remaining two defendants with prejudice. 11th Cir. Appeal No. 24-12311, App. Doc. No. 111. The Eleventh Circuit granted the motion and dismissed the appeal. App. Doc. No. 113-2. Neither the Attorney General nor the Southern District of Florida intend to revive charges brought by the now-departed former Special Counsel. Gov. Opp'n, ECF No. 740, at 5. The Local Rule that the Court cited in its reasoning underlying the necessity of the Order applies

specifically to "*pending or imminent criminal litigation.*" Order, ECF No. 714, at 8 (citing S.D. Fla. L.R. 77.2) (emphasis added).[7] Neither exists here.

Lifting the injunction would also be consistent with the Court's supervisory powers, which are limited to the supervision of "the administration of criminal justice among the parties before the bar." *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980) (internal citations omitted); *see also United States v. Hasting*, 461 U.S. 499, 505 (1983) ("The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct") (internal citations omitted). Because there are no current defendants before the bar facing trial or the prospect of a live criminal appeal, the Court should lift the injunction.

Finally, because the Court's considerations justifying enjoining the release of Volume II are moot, and the criminal proceeding has completely and finally concluded, this Court lacks jurisdiction to extend the injunction. No one is on trial; no one *will be* on trial. Federal courts have limited jurisdiction. *See* U.S. Const., art. III; *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025). Once a prosecution has been dismissed, it has been *dismissed. See* Fed. R. Crim. P. 48; *cf. Absolute Activist Value Master Fund Ltd. v. Devine,* 998 F.3d 1258, 1265 (11th Cir. 2021) (under analogous civil procedure rule, "voluntary dismissal disposes of the *entire* action") (emphasis in original). Now that the indictments have been dismissed, with appeals exhausted, this Court lacks jurisdiction to ban release of agency records.

---

[7] Local Rule 77.2(c) further outlines the subject matter on which counsel is expected to refrain from disseminating information, and provides that the timeline under which attorneys are expected to comply with the Rule is "[f]rom the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial."

B.     Former Defendants' Concerns Cannot Overcome the Court's Obligation to Lift the Injunction.

The former defendants' arguments for extending the injunction are unpersuasive. First, former defendants claim that "[t]he Government might later argue that the case was dismissed without prejudice, and that Jeopardy therefore remains for all three defendants." Former Defs.' Opp'n, ECF No. 739, at 9. But the DOJ specifically sought dismissal as to the former defendants *with* prejudice, App. Doc. No. 111, and the DOJ represents now that neither the Attorney General nor the Southern District of Florida intend to revive the charges, Gov. Opp'n, ECF No. 740, at 5. Any concern that former defendants could face charges again before the statute of limitations runs out is therefore entirely speculative and contradicted by the undisputed record. Their concerns about the "public airing of such confidential discovery, which also includes large amounts of grand jury and privileged matter," Former Defs.' Opp'n, ECF No. 739, at 9, are also misplaced, given that American Oversight seeks only *non-exempt public documents* pursuant to FOIA—not "confidential" materials. In reviewing the Report under FOIA, the government would be permitted—and in some cases *obligated, see* 5 U.S.C. § 552(b)(3)—to redact any information subject to privilege or Rule 6(e).

Nor do former defendants' claims about the Rule 16 protective order governing discovery, ECF No. 27, provide any basis to extend the injunction. They claim the order has the effect of "prohibiting them from publicly defending themselves." Former Defs.' Opp'n, ECF No. 739, at 10. But, far from prohibiting former defendants from publicly defending themselves, the

order limits use of materials provided by the government to defendants, including the destruction or return of the materials following the conclusion of criminal proceedings. ECF No. 27.[8]

Finally, the former defendants' concerns about the "disclosure of a one-sided report," Former Defs.' Opp'n, ECF No. 739, at 4, are irrelevant. Agency records are subject to release under FOIA, except for "the nine enumerated exemptions listed in § 552(b)." *Tax Analysts*, 492 U.S. at 151 (cleaned up). These nine exemptions are "explicitly exclusive." *Id.* (cleaned up). The fact that an agency record may be embarrassing or "one-sided" is not one of the exemptions.[9]

Ultimately, regardless of the merits of any of these arguments, the former defendants' concerns are simply that—the concerns of *former* defendants—and cannot provide a basis for this Court to invoke its supervisory power to extend the Order barring release of Volume II.

American Oversight does not ask this Court to order the release of the Report or any part of it. Rather, American Oversight simply asks this Court to grant its limited motion to intervene and dissolve the injunction so that DOJ, and *other* courts, may determine which portions of the Report may be released.

---

[8] Notably, the entry of the protective order was not opposed by the former defendants, ECF No. 23, nor have former defendants appear to have sought at any time to modify the order, which expressly allows for modification upon agreement of the parties, ECF No. 27. In a hearing related to the government's request for sealing and redaction of pre-trial materials, the Court specifically inquired as to then-defendants complaints about the Rule 16 order, noting that a complaint about the order "was lukewarm," that it "didn't result in a motion before the Court," and that the Court was "left, at the end of the day, with a protective order that was entered without any opposition, as far as I can tell." Hearing Tr., ECF No. 369, 156:9-13.

[9] Of course, nothing in FOIA would prevent DOJ from releasing *additional* material beyond the Report itself, if it so chose. *See e.g.*, Letter from Attorney General William Barr to the Senate Committee on the Judiciary (April 18, 2019), https://www.justice.gov/d9/pages/attachments/2021/01/20/ag_letter_4.18.19.pdf (providing a synopsis of the Mueller Report and thoughts on the merits and conclusions of the investigation).

## **CONCLUSION**

For the foregoing reasons, American Oversight respectfully requests this Court grant its

motion to intervene and to lift the injunction.

Dated: March 31, 2025

Respectfully Submitted,

/s/

ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
BARBARA R. LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com


ELIZABETH HADDIX *(pro hac vice forthcoming)*
elizabeth.haddix@americanoversight.org
LOREE STARK *(pro hac vice forthcoming)*
loree.stark@americanoversight.org
AMERICAN OVERSIGHT
1030 15th Street, NW, B255
Washington, D.C. 20005
Telephone: 202-869-5246

*Counsel for Non-Party American Oversight*