UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA,<br><br>    Defendants. | Case No. 23-80101-CR<br>CANNON/REINHART<br><br>EXPEDITED MOTION |

**PRESIDENT DONALD J. TRUMP'S UNOPPOSED EXPEDITED MOTION FOR AN ORDER PROHIBITING THE RELEASE OF VOLUME II OF THE FINAL REPORT UNLAWFULLY PREPARED BY JACK SMITH AND HIS OFFICE**

President Donald J. Trump respectfully moves, in his individual capacity and as a former defendant in this since-dismissed criminal action, for an order prohibiting the release of Volume II of the Final Report prepared by so-called "Special Counsel" Jack Smith and his office (hereafter "Volume II"). This expedited motion is filed in response to the Court's December 22, 2025, order permitting current and former parties to seek appropriate relief before the February 24, 2026, expiration of the current injunction barring release.[1]

This motion follows from the Court's prior determinations that Smith's appointment and funding violated the Appointments and Appropriations Clauses of the United States Constitution, rendering all acts undertaken by Smith—including his preparation and submission of Volume II—*ultra vires* and void. The potential, improper release of Volume II would constitute an irreversible violation of this Court's constitutional rulings in the underlying criminal action and of bedrock principles of the separation of powers. Release would also lead to the public dissemination of

---

[1] This expedited motion is filed pursuant to Local Rule 7.1 to request a ruling before the February 24, 2026, expiration of the current order enjoining the release of Volume II.

1

sensitive grand jury materials, attorney-client privileged information, and other information derived from protected discovery materials, raising significant statutory, due process, and privacy concerns for President Trump and his former co-defendants.

Despite the Court's dismissal of Smith's indictment, this Court retains ancillary jurisdiction and supervisory authority to regulate the disclosure and other use of materials generated during the criminal proceedings. For these reasons, and as further explained below, President Trump respectfully requests that the Court exercise its jurisdiction under all federal law and its inherent supervisory powers to permanently prohibit the release of Volume II.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

A. **Smith's Unconstitutional Appointment and Funding**

On November 18, 2022, Attorney General Merrick Garland issued an order improperly appointing Jack Smith, an attorney from outside the United States Government, to serve as Special Counsel for the United States Department of Justice (the "Appointment Order"). *See* ECF No. 672 at 6-7. The Appointment Order cited authority "vested" in the Attorney General—namely, those authorities found at 28 U.S.C. §§ 509, 510, 515, and 533. *Id.* at 7. The Appointment Order also indicated the application of 28 C.F.R. §§ 600.4 to 600.10, known as the "Special Counsel Regulations," which stem from a final rule issued in 1999 to replace the statutory procedures of the then-expiring Independent Counsel Reauthorization Act of 1994. *Id.* at 8. Much like the Appointment Order, the extant Special Counsel Regulations cite 28 U.S.C. §§ 509, 510, 515-519 as authority for the appointment of a special counsel. *Id.*[2]

From its inception, the sprawling activities of Jack Smith's office were funded by a permanent, indefinite appropriation established by Congress in 1987 within the Department of

---

[2] As this Court noted, 28 U.S.C. § 533, cited in the Appointment Order, is not among the purported authorities listed in the final rule. *See* ECF No. 672 at 8 n.7.

2

Justice to pay all necessary expenses of investigations and prosecutions by "independent counsel" appointed pursuant to the statutory procedures of the since-expired Independent Counsel Act or "other law." ECF No. 672 at 85-86 (quoting Department of Justice Appropriations Act of 1988, Pub. L. No. 100-202, 101 Stat. 1329 (Dec. 22, 1987)).  As of March 31, 2024, the expenditures of Smith's office had already exceeded $19.4 million, and another $16.3 million had been expended by unspecified "DOJ components" in support of his investigation and protective detail. *See* Statements of Expenditures, Special Counsel Jack Smith, U.S. Department of Justice, *available at* https://www.justice.gov/archives/sco-smith ("Smith Statements of Expenditures").  No public accounting of Smith's expenditures has been provided for any period after March 2024.  It is our belief, however, that the Biden Justice Department and so-called Special Counsel spent more than $60 million in taxpayer money over the course of Smith's investigation.

      **B.**      **Smith's Unlawful Investigation and Prosecution of President Trump**

Over the course of Smith's various investigations of President Trump, his office issued an extraordinary number of subpoenas calling for testimony and documents from various persons and organizations, including testimony and documents protected by attorney-client privilege and attorney work product, and led aggressive, first-of-its-kind litigation in the District of Columbia to pierce those vital privileges belonging to President Trump. *See* ECF No. 566 at 15-26.[3]  By its own accounting, Smith's office spent more than $12.8 million on salaries and benefits, travel, information technology, and related expenses in just the *first eight months* of his investigation,

---

[3] *See also* Maggie Haberman et al., *Justice Dept. Intensifying Efforts to Determine if Trump Hid Documents*, N. Y. TIMES (May 4, 2023), https://www.nytimes.com/2023/05/04/us/politics/trump-documents-subpoenas-justice-department.html; Luke Barr, *Secret Service agents subpoenaed in special counsel's probe of Mar-a-Lago documents*, ABC NEWS (Apr. 3, 2023), https://abcnews.go.com/Politics/secret-service-agents-subpoenaed-special-counsels-probe-mar/story?id=98331631; Katelyn Polantz et al., *EXCLUSIVE: Dozens of Mar-a-Lago staff, from servers to aides, are subpoenaed in classified documents probe*, CNN (Mar. 17, 2023), https://www.cnn.com/2023/03/16/politics/mar-a-lago-trump-subpoenas/index.html.

with another $11 million having been spent by other components of the Department of Justice. *See* Smith Statements of Expenditures.  By contrast, Special Counsel Robert Hur, who was appointed shortly after Smith in January 2023 to investigate then-President Biden's treatment of classified documents discovered at his private residence in Delaware, the Penn Biden Center, and other personal locations, spent only $3.4 million over the same period of his investigation. *See* Statements of Expenditures, Special Counsel Robert K. Hur, U.S. Department of Justice, *available at* https://www.justice.gov/archives/sco-hur ("Hur Statements of Expenditures").  Another $3 million was reportedly spent by other Department of Justice components—approximately one-quarter of the amount spent in connection with Smith's investigation during the same period. *See id*.

On June 8, 2023, a grand jury in the Southern District of Florida returned an Indictment, signed by Smith, charging President Trump and a member of his staff, Waltine Nauta, with thirty-eight federal criminal charges. ECF No. 3.  On July 27, 2023, the grand jury returned a Superseding Indictment, also signed by Smith, increasing the number of total charges to forty-two and adding a third defendant, Carlos De Oliveira. ECF No. 85.  All accompanying filings were signed by staff of Smith's office. *See id*. (Certificate of Trial Attorney); ECF No. 86 (Notice of Superseding Indictment).

### C. The Court's July 15, 2024, Decision Invalidating Smith's Indictment

On July 15, 2024, this Court dismissed the Superseding Indictment, concluding that Smith's appointment violated the Appointments Clause and that the funding of his office violated the Appropriations Clause of the United States Constitution. ECF No. 672 at 1.  The Court's dismissal order stated that Smith's appointment was defective, as none of the authorities cited by the Department of Justice authorized the Attorney General to appoint a special counsel like Smith, and that all *ultra vires* actions taken by Smith pursuant to his purported authority must be set aside.

4

*Id*. at 22, 82-84 ("In such cases, which necessarily involve a Government actor's exercise of power that the actor did not lawfully possess, the proper remedy is invalidation of the *ultra vires* action. Invalidation follows directly from the government actor's lack of authority to take the challenged action in the first place.") (cleaned up).  The Court further held, with respect to the funding of Smith's office from the permanent, indefinite appropriation for independent counsels, that Smith was not lawfully appointed pursuant to "other law," but declined to reach the appropriate remedy for the Appropriations Clause violation. *Id*. at 87-91.

Smith subsequently appealed the Court's dismissal order, urging the Eleventh Circuit to reverse the dismissal based on the Attorney General's purported "broad" and "overarching authority" to appoint inferior officers, including a special counsel like Smith. Brief of Appellant at 22, *United States v. Trump*, No. 24-12311 (11th Cir. Aug. 26, 2024).  Only after President Trump's overwhelming victory in the November 2024 Presidential Election did Smith move to dismiss the appeal as to President Trump, citing Department of Justice policy forbidding the prosecution of a sitting President. Motion to Dismiss at 13, *United States v. Trump*, No. 24-12311 (11th Cir. Nov. 25, 2024) (citing Motion to Dismiss, *United States v. Trump*, No. 23-cr-257 (D.D.C. Nov. 25, 2024)).  Smith did so without prejudice, attempting to preserve the Department of Justice's ability to bring criminal charges against President Trump after he leaves office. *Id*.; *see also* Motion to Dismiss at 6, *United States v. Trump*, No. 23-cr-257 (D.D.C. Nov. 25, 2024) (claiming that "immunity from prosecution for a sitting President would not preclude such prosecution once the President's term is over or he is otherwise removed from office by resignation or impeachment").

On December 30, 2024, Smith and his staff moved to withdraw from the Eleventh Circuit appeal, indicating that Smith had referred the case to the United States Attorney's Office for the Southern District of Florida. Motion to Withdraw Appearances at 13, *United States v. Trump*, No.

24-12311 (11th Cir. Dec. 30, 2024). On January 29, 2025, the Department of Justice, through the United States Attorney, moved to dismiss the Eleventh Circuit appeal *with prejudice*. Unopposed Motion to Dismiss at 8, *United States v. Trump*, No. 24-12311 (11th Cir. Jan. 29, 2025).

### D. Smith's Unlawful Preparation and Transmittal of Volume II

Months after the Court's dismissal order, but before Smith withdrew from the Eleventh Circuit appeal, news reports indicated that Smith was preparing and would submit a "Final Report" to the Attorney General summarizing the findings of his unlawful investigation.[4] Smith's intent was to have the Attorney General release the Final Report to political allies in Congress and to the public pursuant to the Special Counsel Regulations. *See* 28 C.F.R. §§ 600.8(c), 600.9(c). Smith's plan was subsequently confirmed to defense counsel the week of December 9, 2024, by members of the media. ECF No. 679, Ex. A at 2.

On December 11, 2024, defense counsel contacted Smith's office to express concerns about these reports from the press. The office confirmed the accuracy of the reporting, and defense counsel were initially informed that they (1) would be permitted only to access a draft in Washington, D.C. during the week of Christmas, (2) would be permitted only to take handwritten notes, and (3) would have to submit any objections or comments to Smith's staff by December 29, 2024. ECF No. 679, Ex. A at 2-3. Smith's team eventually permitted counsel to review the two-volume report in a conference room at their office between January 3 and January 6, 2025, but without access to electronic devices or the internet. *Id*. at 3. Smith's team further demanded that defense counsel delete all prior discovery productions in advance of reviewing the Final Report. *Id*. at 1.

---

[4] Breanne Deppisch, *Special Counsel Jack Smith required to submit Trump findings to DOJ before leaving. What happens next?*, Fox News (Dec. 7, 2024), https://www.foxnews.com/politics/jack-smith-submit-trump-findings-doj-before-leaving-what-happens-next.

On January 6, 2025, counsel for President Trump submitted a letter to Attorney General Garland demanding that Smith terminate all efforts toward the preparation and release of the Final Report. ECF No. 679, Ex. A.  On the same day, counsel for Nauta and De Oliveira filed an emergency motion with this Court to prevent the Department of Justice from transmitting the Final Report and filed a similar emergency motion with the Eleventh Circuit on the next day. ECF No. 679; Emergency Motion for Injunction, *United States v. Trump*, No. 24-12311 (11th Cir. Jan. 7, 2025).

On January 7, 2025, this Court issued a temporary injunction prohibiting the Department of Justice from "releasing, sharing, or transmitting the Final Report or any drafts . . . outside the Department of Justice . . ., or from otherwise releasing, distributing, conveying, or sharing with anyone outside of the Department of Justice and information or conclusions in the Final Report or in drafts thereof." ECF No. 682 at 2.  On the same day, Smith transmitted the two-volume report to Attorney General Garland. ECF No. 685.  In a cover letter directed to the Attorney General, Smith stated that "[w]ith this Report, my service and the service of my staff is complete."[5]

### E. Collateral Litigation Concerning Volume II

Volume I of Smith's report, describing his unlawful investigation into supposed election interference, was subsequently released to the public.  After initially entering a temporary restriction encompassing both volumes of Smith's Final Report, ECF No. 682, this Court declined to extend its injunction to the first volume. ECF No. 697 at 2-3 ("[T]his Court's authority to enforce its own orders is . . . confined to this proceeding . . . .").  The Department of Justice, under the

---

[5] A copy of Volume I, including Smith's cover letter, was subsequently released by the Department of Justice and remains publicly available on an archived version of the Department of Justice's webpage for Smith's office: https://www.justice.gov/archives/sco-smith.

7

oversight of then-Attorney General Garland, publicly released Volume I on January 14, 2025. *See* ECF No. 760 at 4.

Volume II has been the subject of ongoing litigation. Following compressed briefing and oral argument, this Court entered an order on January 21, 2025, enjoining the Department of Justice from "releasing, sharing, or transmitting" Volume II or any drafts, or "otherwise releasing, distributing, conveying, or sharing" any information or conclusions in Volume II or in drafts, outside of the Department. ECF No. 714. The Court grounded its ruling on concerns regarding the due process rights of the remaining criminal defendants, Mr. Nauta and Mr. De Oliveira, *id*. at 12-13, and expressly stated that it did not take into consideration arguments concerning Smith's authority (or lack thereof) to prepare or issue Volume II due to the Department of Justice's then-pending appeal in the Eleventh Circuit. *Id*. at 2 n.2 ("[T]he Court has not considered those arguments in deciding the Emergency Motion . . . ."); *see also* ECF No. 760 at 6.

Since the Court's entry of the January 21, 2025, order, multiple liberal organizations, including American Oversight and Knight First Amendment Institute at Columbia University ("Knight Institute"), have sought access to Volume II through Freedom of Information Act ("FOIA") requests and federal litigation. *The New York Times* was the first to initiate federal litigation against the Department of Justice, filing a FOIA case in the Southern District of New York on the same day as this Court's January 21, 2025, order, alleging that the Department delayed and then denied its expedited FOIA request for Volume II. Complaint, *The New York Times Co. v. U.S. Dep't of Justice*, No. 25-cv-562 (S.D.N.Y. Jan. 21, 2025). American Oversight, a so-called "nonpartisan, non-profit section 501(c)(3) organization" led by a former senior aide to Rep. Jamie Raskin (D-MD), the Ranking Member of the House Judiciary Committee and a former member of

the January 6th Committee,[6] filed a parallel FOIA action in the District of Columbia on February 10, 2025, seeking immediate release of Volume II. Complaint at 1, 2, *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025). Underlining the political nature of their litigation, Raskin and other Democrats in Congress have reportedly "back[ed]" American Oversight's legal efforts and renewed their own calls for the unlawful public release of Volume II.[7]

The courts in both the Southern District of New York and the District of Columbia have treated this Court's injunction as dispositive. The District of Columbia court denied American Oversight's request for a preliminary injunction, holding that FOIA cannot compel an agency to violate another federal court's order. Mem. Op. at 12-13, *American Oversight v. DOJ*, No. 25-cv-383 (D.D.C. Feb. 20, 2025). The Southern District of New York initially stayed proceedings but later addressed the case against the backdrop of the Department of Justice's position that it lacks discretion to disclose Volume II while the Court's injunction remains in effect. Mem. Op. & Order at 15-16, *The New York Times v. DOJ*, No. 25-cv-562 (S.D.N.Y. Sept. 4, 2025).

American Oversight also sought to intervene in this closed criminal case on February 14, 2025, seeking immediate lifting of the Court's January 21, 2025, order. ECF No. 717. Knight Institute, a purported "non-partisan, not-for-profit" institute at Columbia University, followed suit on February 24, 2025, seeking recission of the Court's January 21, 2025, order and public release of Volume II. ECF No. 721. The Court denied their motions to intervene in the criminal action on December 22, 2025, ECF No. 760, and separately ruled that the January 21, 2025, order will

---

[6] *See* Legistorm, https://www.legistorm.com/person/bio/321091/Chioma_I_Chukwu.html (last visited Jan. 20, 2025).

[7] *See* Press Release, House Committee on the Judiciary, Ahead of Jack Smith Deposition, Judiciary Democrats Back Legal Challenge to Trump DOJ's Unjustified Withholding of Full Special Counsel Report (Dec. 12, 2025), https://democrats-judiciary.house.gov/media-center/press-releases/ahead-of-jack-smith-deposition-judiciary-democrats-back-legal-challenge-to-trump-doj-s-unjustified-withholding-of-full-special-counsel-report.

automatically expire on February 24, 2026. ECF No. 761.  The Court expressly stated that nothing in its December 22, 2025, order prohibits any "former or current party to this action from moving for leave to intervene, if warranted, and/or from timely seeking appropriate relief before that deadline." *Id*.  Both American Oversight and Knight Institute have appealed the Court's orders denying their requests for intervention. *See* ECF Nos. 764 & 765 (*appeals docketed*, No. 25-14507 (11th Cir. Dec. 31, 2025)).

      F.      **The Surviving Protective Orders and Rule 6(e) Protections**

Multiple protective orders remain in place governing President Trump's and his former co-defendants' use of discovery materials and classified information in this case—materials to which they and their counsel no longer have access.  On June 19, 2023, before Mr. De Oliveira was even a party to the case, this Court issued a Rule 16 protective order covering all non-classified discovery materials produced by Jack Smith's office "in preparation for, or in connection with, any stage of this case." ECF No. 27.  The protective order, which remains in force today, directs that "[t]he Discovery Materials, along with any information derived therefrom, shall not be disclosed to the public or the news media, or disseminated on any news or social media platform, without prior notice to and consent of the United States or approval of the Court." *Id*. at 3.  On September 13, 2023, the Court also entered protective orders applicable to each defendant prohibiting their unauthorized use, disclosure, or dissemination of classified national security information and documents made available in connection with the case. ECF Nos. 150-152.[8]  No comparable

---

[8] Smith repeatedly sought even further restraints on President Trump's public speech, arguing that a gag order was necessary to restrict his public commentary about the case, even where his speech did not disclose protected materials or information. *See, e.g.*, ECF No. 592 at 1, 10; ECF No. 665 at 7-8.  Although the Court declined to impose such a generalized gag order prior to dismissal, the Special Counsel's requests reflected a clear effort to unconstitutionally silence President Trump, who was at the time an active and leading presidential candidate.

restrictions presently apply to Smith and the Department of Justice. Rather, they are bound by federal rules governing grand jury secrecy and by this Court's expiring January 21, 2025, order.[9]

## II. ARGUMENT

### A. As a Former Defendant and Subject of Volume II, President Trump Has Direct and Substantial Interests in Preventing Its Future Release

Because President Trump is a former defendant in this since-dismissed criminal action, he unquestionably has direct, substantial, and compelling interests in obtaining a protective order to prevent the dissemination of Smith's *ultra vires* work product. It is also "settled law" that non-parties such as President Trump, who may be affected by the disclosure of attorney-client or other privileged materials, may intervene in criminal proceedings to seek such relief. *In re Sealed Search Warrant & Application for a Warrant*, 2020 U.S. Dist. LEXIS 198004, at *15 (S.D. Fl. Oct. 26, 2020) (quoting *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979)); *see also United States v. Feeney*, 641 F.2d 821, 824 (10th Cir. 1981) (acknowledging non-party's right to intervene to protect himself from "disclosure of accusations made against him before the grand jury"). As the D.C. Circuit recognized in *United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980), "[f]ederal courts have frequently permitted third parties to assert their interests in preventing disclosure of material sought in criminal proceedings or in preventing further access to materials already so disclosed."

This rule is particularly applicable here, where the *ultra vires* report at issue is derived from unlawfully obtained documents and grand jury testimony. As detailed in numerous filings in this case and related proceedings, Smith and his staff repeatedly and flagrantly undertook unlawful actions in this district and elsewhere to violate federal protections afforded to President Trump and

---

[9] *See* Transcript, Deposition of Jack Smith, Committee on the Judiciary, U.S. House of Representatives at 12-13 (Dec. 17, 2025) (addressing restrictions on Smith's congressional testimony).

11

his communications with his attorneys. *See* ECF Nos. 561 at 22, 566 at 13-25, 568 at 8-10, 679 at 1-15, 712 at 6, 738 at 6.  This Court has already acknowledged Smith's "myriad references" in Volume II to grand jury and other protected discovery materials, including "information as to which President[] Trump has asserted the attorney-client privilege in motions in this proceeding." ECF Nos. 714 at 5-6 & 760 at 16 n.13; *see also* ECF No. 760 at 3 (noting President Trump's "still-contested assertions of attorney-client privileged material contained within Volume II").  The *ultra vires* preparation and the public release of a report reflecting the fruits of such efforts would not only circumvent this Court's dismissal order but would also directly and substantially impair the constitutional and privacy interests of President Trump in ways that this Court must protect. *See* ECF No. 672 at 82-84 (concluding that Smith's lack of authority requires invalidation of *all* of his *ultra vires* acts).

      **B.**      **This Court Retains Jurisdiction and Inherent Supervisory Authority to Issue an Order Preventing the Release of Volume II**

As recognized by this Court in its January 21, 2025, order, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." ECF No. 714 at 7 (quoting *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985)); *see also* 28 U.S.C. § 1651 (empowering federal courts to issue all orders necessary to protect their respective jurisdictions and effectuate their judgments).  Most relevant here, absent contrary law, courts possess inherent supervisory power "to impose secrecy orders incident to matters occurring before them." *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005).  This "general power" is routinely exercised through orders limiting access to discovery materials, sealing sensitive filings, and regulating access to judicial proceedings. *Id.*; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing courts' supervisory power over their own records and files).

Dismissal of the underlying action does not divest the Court of authority over collateral matters arising from the criminal proceedings previously conducted before it. Courts retain jurisdiction over issues that are ancillary to, and inextricably linked with, their prior exercise of jurisdiction, including disputes concerning the protection or disclosure of materials generated in the case. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending."); *Zow v. Regions Fin. Corp.*, 595 Fed. Appx. 887, 889 (11th Cir. 2014) (district courts retain jurisdiction over collateral issues such as discovery and contempt). Consistent with these principles, courts may enter and enforce protective orders "under the inherent equitable powers . . . over their own process, to prevent abuses, oppression, and injustices." *United States v. Meyer*, 2023 U.S. Dist. LEXIS 53070, at *10 (S.D. Fl. Mar. 27, 2023) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984)). That authority survives dismissal. *See id.*; *see also* Fed. R. Crim. P. 16(d)(1) (authorizing discovery restrictions "[a]t any time"). Accordingly, this Court retains jurisdiction to address disputes concerning the disclosure and use of materials generated during the pendency of the criminal proceedings, including Volume II.

    **C.    The Court Should Exercise Its Authority to Issue an Order Preventing the Release of Volume II**

        **1.    Release of Volume II Would Improperly Give Legal Effect to Smith's *Ultra Vires* Acts**

The release of Volume II would improperly endorse and give legal effect to Smith's unlawful investigation and prosecution in the Southern District of Florida and would irreparably harm President Trump and his former co-defendants. The Court has already rightly determined that Smith was an unconstitutionally appointed and funded officer who could not, and did not, lawfully exercise executive power. The appropriate remedy is the invalidation of *all* of Smith's *ultra vires* acts, including his subsequent preparation and submission of Volume II. *See* ECF No.

13

672 at 83-84.[10] Having made a timely and successful challenge to the constitutional validity of Smith's appointment, President Trump and his former co-defendants are entitled to this relief. As the Supreme Court held in *Lucia v. SEC*, "one who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to relief." 585 U.S. 237, 251 (2018).

As established in the Court's July 15, 2024, dismissal order, Smith's appointment and the funding of his office violated the Appointments and Appropriations Clauses of the U.S. Constitution, rendering his investigation and all other official actions constitutionally invalid. ECF No. 672 at 81-85, 91.[11] The purported application of the Special Counsel Regulations is also therefore invalid. *See id*. at 84 ("[T]he problem is the absence of a statutorily created office to fill in the first place."). To permit the release of Volume II would effectively legitimize those *ultra vires* acts, undermining the Court's prior rulings and the separation of powers, and irreparably harm President Trump and his former co-defendants. This Court must therefore act to enforce its own judgment and protect the integrity of the constitutional role of the judiciary. *See Casa Express Corp. v. Bolivarian Republic of Venez.*, 158 F.4th 1176, 1184 (11th Cir. 2025) (discussing federal courts' ancillary jurisdiction to dispose of factually dependent claims and effectuate their decrees or judgments); *United States v. Mims*, 143 F.4th 1311, 1315 (11th Cir. 2025) ("[W]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would be

---

[10] Smith continued to advance his lawfare against President Trump even after this Court ruled that he was unconstitutionally appointed and funded from the permanent, indefinite appropriation. While there has not been a public accounting of Smith's expenditures since the Court's July 15, 2024, dismissal order, Smith continued to expend significant sums of taxpayer dollars to advance the preparation of his so-called "Final Report," including Volume II. Smith's apparent disdain and disrespect for this Court's rulings should not be tolerated.

[11] While reserving judgment on the appropriate remedy for the Appropriations Clause violation, the Court appropriately noted: "For more than 18 months, Special Counsel Smith's investigation and prosecution [was] financed by substantial funds drawn from the Treasury without statutory authorization, and to try to rewrite history at this point seems near impossible." ECF No. 672 at 91.

incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." (quoting P*eacock v. Thomas*, 516 U.S. 349, 356 (1996)).

### 2. Release Would Improperly Divulge Information Protected by Rule 6(e) and Attorney-Client Privilege

Disclosure of Volume II would also undermine a vital purpose of Rule 6(e): to protect those who are accused before a grand jury but exonerated. *See Pitch v. United States*, 2020 U.S. App. LEXIS 9619, at *11 (11th Cir. March 27, 2020) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979)). This Court has already found that Volume II contains detailed and voluminous discovery information, including various materials obtained by grand jury subpoena. *See* ECF No. 714 at 5-6; *see also* ECF No. 760 at 16 n.13. While Smith's staff claimed to have redacted all Rule 6(e) protected material, this Court previously expressed doubts, noting that current Department counsel have only secondhand information about the process that was undertaken by Smith and his office and its adequacy. ECF No. 714 at 6.

Rule 6(e) covers not only grand jury transcripts but also "anything that will reveal what transpired during the grand jury proceedings." *Phillips v. United States*, 843 F.2d 438, 441 (11th Cir. 1988); *United States v. Stanton*, 689 F. Supp. 1103, 1104 (S.D. Fla. 1988) (documents that would "reveal the pattern of investigation by the grand jury" were protected by Rule 6(e)). The release of Volume II would inappropriately risk violating this Court's obligations to ensure grand jury secrecy and to protect the integrity of grand jury proceedings. *See Pitch*, 2020 U.S. App. LEXIS 9619, at *20 (holding that district courts lack legal authority to authorize the disclosure of grand jury materials outside the bounds of Rule 6(e)).

The Court's protection of Rule 6(e) material is further complicated by the reality that defense counsel no longer have access to the very materials that would be necessary to assess the adequacy of Smith's redactions. In fact, defense counsel have not had access to discovery in this

15

case for more than a year because Smith's staff demanded that they delete all such productions before reviewing Volume II. ECF No. 679, Ex. A at 1.  Given this, it is virtually impossible for defense counsel to engage in a line-by-line analysis of Volume II.  Such a process would necessitate the restoration of extensive discovery materials and renewed access to Volume II, extensive steps that would improperly perpetuate the unauthorized and *ultra vires* actions of a disqualified prosecutor.

Further, this Court has already acknowledged that Volume II is derived from communications over which President Trump has consistently asserted attorney-client privilege. *See* ECF Nos. 714 at 5-6, 760 at 16 n.13.  President Trump's still-contested assertions of privilege were pending at the time of dismissal, and the disclosure of such sensitive materials without court approval would cause irreparable harm to President Trump's rights and compromise the integrity of these and future proceedings. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (protection of the privilege "promote[s] broader public interests in the observance of law and administration of justice"); *United States v. Stein*, 2023 U.S. Dist. LEXIS 47808, at *5 (S.D. Fla. Mar. 21, 2023) ("Traditionally, the attorney-client privilege, like the privilege extending to attorney work product, is sacrosanct." (internal quotations omitted)).

### 3. The Inherently Biased and One-Sided Nature of Volume II Further Supports an Order Barring Its Release

Volume II is an inherently biased and one-sided document that reflects the work product and opinions of an unconstitutionally appointed and funded federal official.  It relies on evidence unlawfully obtained and crafted to serve a specific, political purpose, which was to imprison and destroy the reputations of President Trump and his former co-defendants, thereby preventing President Trump from regaining the Presidency, which is exactly what he did.  Volume II contains "myriad references" to protected discovery information, including illegally obtained search

warrant materials, interview transcripts, business records, toll records, video footage, and other non-public information. ECF No. 714 at 5-6.  Yet, the former defendants, who remain bound by protective orders, no longer have access to these materials and are constrained in their ability to respond to Smith's false allegations and opinions.  This creates a fundamentally unfair situation in which Smith and his allies could publicize the report's allegations, giving them unwarranted credibility, while the individuals targeted by those accusations cannot defend themselves from Smith's false and baseless attacks.  For this reason, too, the Court should exercise its supervisory authority to prohibit the release of Volume II.

### III.   CONCLUSION

For the foregoing reasons, President Trump respectfully requests that this Court enter an order permanently enjoining the Department of Justice, as well as its current, former, and future officers, agents, officials, and employees, from (a) releasing, sharing, or transmitting Volume II or any drafts of Volume II outside of the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions contained in Volume II or its drafts.

Dated: January 20, 2026

Respectfully submitted,

*/s/ Kendra Wharton*
Kendra L. Wharton
Fla. Bar No. 1048540
WHARTON LAW PLLC
500 S Australian Ave., Ste. 600-1139
West Palm Beach, FL 33401
(561) 247-5279
k.wharton@whartonlawpllc.com

*Counsel for President Donald J. Trump*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on January 19 and 20, 2026, counsel for President Trump conferred with counsel for former defendants Waltine Nauta and Carlos De Oliveira and the United States. Counsel for Mr. Nauta and Mr. De Oliveira advised that they join in the arguments made by President Trump in this motion and the requested relief, and advised that they will separately move for relief, including on grounds specific to their individual cases. Counsel for the United States indicated that they consent to the filing of this motion and the relief requested herein. The United States also intends to submit a filing in response to the Court's December 22, 2025, order.

*/s/ Kendra L. Wharton*
Kendra L. Wharton

**CERTIFICATE OF SERVICE**

      I, Kendra L. Wharton, certify that on January 20, 2026, I electronically filed the foregoing motion with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton
