# EXHIBIT A

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 17, 2026

Alexander Abdo
Knight First Amendment Institute at Columbia University
475 RIVERSIDE DR STE 302
NEW YORK, NY 10115

David Marc Buckner
Buckner & Miles, PA
2020 SALZEDO ST STE 302
CORAL GABLES, FL 33134

Ronald Fein
American Oversight
1030 15TH ST NW STE B2555
WASHINGTON, DC 20005

Jameel Jaffer
Knight First Amendment Institute at Columbia University
475 RIVERSIDE DR STE 302
NEW YORK, NY 10115

Barbara R. Llanes
Gelber Schachter & Greenberg, PA
1 SE 3RD AVE STE 2600
MIAMI, FL 33131-1715

Daniel Havlir Martinez
American Oversight
1030 15TH ST NW STE B2555
WASHINGTON, DC 20005

Loree Stark
American Oversight
1030 15TH ST NW STE B2555
WASHINGTON, DC 20005

Scott B. Wilkens

Knight First Amendment Institute at Columbia University
475 RIVERSIDE DR STE 302
NEW YORK, NY 10115

Appeal Number:  26-10503-A
Case Style:  Knight First Amendment Institute at Columbia Uni, et al
District Court Docket No:  9:23-cr-80101-AMC-1

**PETITION FOR WRIT DOCKETING NOTICE**

Your petition for a writ of mandamus, a writ of prohibition, or an extraordinary writ has been filed.

Please use the appeal number for all filings in this Court.

Dismissal Notice for Failure to File a CIP
**The petition filed by you failed to include a CIP.** The petitioner must file a CIP at the same time it files the petition. 11th Cir. R. 26.1-1(a)(3).

Pursuant to 11th Cir. R. 42-1(b), **this appeal will be dismissed without further notice upon the expiration of 14 days from the date of this notice** unless the petitioner files a Certificate of Interested Persons (CIP) on the Court's docket. See 11th Cir. R. 26.1-1(a)(3).

Web-Based CIP
Only parties represented by counsel must complete the web-based Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Counsel must complete the web-based CIP, through the Web-Based CIP link on the Court's website, on the same day the CIP is first filed. See 11th Cir. R. 26.1-1(b).

Obligation to Notify Court of Change of Addresses
Each pro se party and attorney has a continuing obligation to notify this Court of any changes to the party's or attorney's addresses during the pendency of the case. See 11th Cir. R. 25-7.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

PRO-2B Mandamus deficiency letter

No. 26-_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

IN RE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA
UNIVERSITY AND AMERICAN OVERSIGHT,

*Petitioners.*

On Petition for Writ of Mandamus
to the United States District Court
for the Southern District of Florida
Case No. 9:23-cr-80101-AMC

## PETITION FOR WRIT OF MANDAMUS

David Buckner
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
(305) 964-8003

Scott Wilkens
Alex Abdo
Jameel Jaffer
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Petitioner Knight First
Amendment Institute at Columbia
University*

Barbara R. Llanes
Gelber Schachter & Greenberg, P.A.
One Southeast Third Ave., Ste. 2600
Miami, FL 33131
Tel: (305) 728-0950
bllanes@gsgpa.com

Loree Stark
Daniel Martinez
Ronald Fein
American Oversight
1030 15th Street NW, B255
(304)-913-6114
loree.stark@americanoversight.org

*Counsel for Petitioner American Oversight*

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Petitioners Knight First Amendment Institute at Columbia University and American Oversight, through their undersigned counsel, certify that the following have an interest in the outcome of this mandamus petition.

1. Abdo, Alex

2. American Oversight

3. Buckner & Miles, P.A.

4. Buckner, David

5. Cannon, Hon. Aileen

6. De Oliveira, Carlos

7. Delgado, Jorge

8. E & W Law

9. Fein, Ronald A.

10. Gelber Schachter & Greenberg, P.A.

11. Haddix, Elizabeth

12. Irving, John

13. Jaffer, Jameel

14. Kim, Noah

15. Klugh Jr., Richard

16. Knight First Amendment Institute at Columbia University

17. Llanes, Barbara

18. Martinez, Daniel

19. Murrell Jr., Larry

20. Nauta, Waltine

21. O'Byrne, Haden

22. Porter, Michael

23. Reboso, Manolo

24. Schachter, Adam

25. Stark, Loree

26. Siblesz, Alessandra M.

27. Smachetti, Emily

28. Trump, Donald

29. Wharton, Kendra

30. Wilkens, Scott

The Knight First Amendment Institute at Columbia University further certifies that it has no parent corporation and that no publicly held corporation owns 10 percent or more of its stock.

American Oversight further certifies that it has no parent corporation and that

no publicly held corporation owns 10 percent or more of its stock.

*/s/ Scott Wilkens*
Scott Wilkens

*Counsel for Knight First Amendment*
*Institute at Columbia University*

*/s/ Loree Stark*
Loree Stark

*Counsel for American Oversight*

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ................... 1

Table of Authorities ................................................................................................. iii

Petition for Writ of Mandamus ................................................................................ 1

I.    The Relief Sought .......................................................................... 3

II.   The Issue Presented ....................................................................... 3

III.  The Facts Necessary to Understand the Issues Presented ....................... 3

    A.   Special Counsel Jack Smith's final report on his investigations and prosecutions of President Trump .................... 3

    B.   Petitioners' efforts to access Volume II .......................................... 6

    C.   The district court's denial of Petitioners' motions to intervene ....................................................................... 8

    D.   Petitioners' appeals of the district court's order denying their motions to intervene ........................................ 9

    E.   Defendants' motions seeking equitable relief barring public access to Volume II ....................................................... 11

    F.   Petitioners' joint motion to intervene in the district court to seek a stay of proceedings pending appeal ................... 12

IV.   The Reasons Why the Writ Should Issue ...................................... 13

    A.   This Court has jurisdiction to issue the writ. ................................. 13

    B.   The Court should grant the Petition because all requirements for issuance of the writ are satisfied here. .................... 13

        1.   Petitioners have no other adequate means to obtain relief. ......................................................... 14

2.      Petitioners' entitlement to the writ is clear and
        indisputable. ......................................................................... 16

3.      Issuance of the writ is appropriate under the
        circumstances. ...................................................................... 19

Conclusion ........................................................................................................ 21

Certificate of Compliance ............................................................................... 22

# Table of Authorities

## Cases

*Am. Oversight v. U.S. Dep't of Just.*, 779 F. Supp. 3d 40 (D.D.C. 2025) ............................................................................................. 7

*Burke v. Ocwen Fin. Corp.*, No. 21-12160, 2022 WL 599153 (11th Cir. March 1, 2022) .................................................................. 17, 18

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367 (2004) ................................................................................................ 13, 14

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023) ........................................ 17

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161 (11th Cir. 2019) .................................................................. 10

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) .................................. 15

*In re A.H.*, 999 F.3d 98 (2d Cir. 2021) ..................................................... 14

*In re Associated Press*, 162 F.3d 503 (7th Cir. 1998) ............................. 15

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) .............................................. 19

*In re Perry*, 859 F.2d 1043 (1st Cir. 1988) .............................................. 14

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018) .................................................................. 16

*Lugosch v. Pyramid Co.*, 435 F.3d 110 (2d Cir. 2006) ............................ 15

*N.Y. Times v. Sullivan*, 376 U.S. 254 (1964) ........................................... 20

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ................ 13, 16, 19

*Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256 (11th Cir. 2021) ......... 13

*U.S. Dep't of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487 (1994) .......... 21

*United States v. Brown*, 438 F. App'x 871 (11th Cir. 2011) ................... 17

*United States v. U.S. Dist. Court for the S. Dist. of N.Y.*, 334 U.S. 258
(1948).......................................................................................................... 13

*United States v. Vicaria*, 963 F.2d 1412 (11th Cir. 1992) ...................................... 17

**Statutes**

28 U.S.C. § 1651.................................................................................................... 13

44 U.S.C. § 3101.................................................................................................... 13

5 U.S.C. § 552....................................................................................................... 16

**Other Authorities**

Alan Feuer, *Four Takeaways From the Special Counsel's Report on
the Trump Election Case*, N.Y. Times (Jan. 14, 2025),
https://perma.cc/PT99-YFZL ............................................................................. 4

Deposition of Jack Smith Before the H. Comm. on the Judiciary (Dec.
17, 2025), https://perma.cc/A6BY-Q28S ........................................................ 20

Glenn Thrush and Alan Feuer, *House Republicans Press Jack Smith
Over Investigations Into Trump*, N.Y. Times (Dec. 17, 2025),
https://perma.cc/L97X-8GLX............................................................................ 20

Jack Smith's prepared statement before the House Judiciary
Committee (Jan. 22, 2026) ............................................................................... 20

Letter from Special Couns. Jack Smith, to Att'y Gen. Merrick
Garland, Re: Final Report of the Special Counsel Under 28 C.F.R.
§ 600.8 (Jan. 7, 2025), https://perma.cc/8SWU-PKL7........................................ 4

## Petition for Writ of Mandamus

Petitioners Knight First Amendment Institute at Columbia University
("Knight Institute" or "Institute") and American Oversight respectfully petition this
Court for a writ of mandamus directing the district court to stay proceedings pending
this Court's resolution of Petitioners' appeals filed on December 23 and 29, 2025.
*See United States v. Knight First Amend. Inst., et al.,* No. 25-14507, ECF Nos. 1, 2
(11th Cir. Dec. 29 & 30, 2026).

The only issue remaining in this closed criminal case is public access to
Volume II of Special Counsel Jack Smith's final report, which details the
investigation and prosecution of then-former President Donald J. Trump and his
associates Walt Nauta and Carlos De Oliveira for the alleged mishandling of
classified documents after Trump left office in January 2021. Even though that issue
is currently before this Court, President Trump, Nauta, and De Oliveira
("Defendants"), with the support of the United States, have moved the district court
on an "expedited" basis for an order permanently enjoining Volume II's release and,
in the case of Nauta and De Oliveira, "requiring the destruction of all copies of
Volume II." Dkt. 774 at 1, 12–13; Dkt. 772 at 1, 17–18; Dkt. 773 at 1, 3. [1]

---

[1] Although President Trump did not request destruction of Volume II in his
motion, counsel for Nauta and De Oliveira represented in the certificate of conferral
accompanying their motion that "[c]ounsel for President Trump advised that
President Trump consents to the relief sought in this motion and joins in and adopts
the arguments set forth herein." Dkt. 774 at 13. Nauta and De Oliveira's counsel

Mandamus relief is urgently needed in aid of this Court's appellate jurisdiction and to ensure that Petitioners' statutory, common law, and First Amendment rights of access to Volume II are not irretrievably lost. Needless to say, if the district court orders the destruction of the document at issue in Petitioners' appeals, this Court's jurisdiction will effectively be thwarted and Petitioners' constitutional and statutory rights vitiated. Petitioners—as nonparties who have been denied intervention—will have no ability to appeal the district court's order to prevent it being carried out.

On February 9, 2026, Petitioners filed a joint expedited motion to intervene in the district court seeking a stay of proceedings. Petitioners conferred with Defendants and with the United States, indicating Petitioners' intent to seek intervention and a stay, and they represented that they opposed that relief. The court has not acted on Petitioner's motion, however, and it seems unlikely that it will consider Petitioner's substantive arguments given that it denied Petitioners' earlier intervention motions, Dkt. 760[2], and that it denied them only after "undue delay," *In re Knight First Amend. Inst. at Columbia Univ.* No. 25-13403, ECF No. 11 (11th

---

further represented that "[c]ounsel for the United States also indicated that they . . . do not oppose the requested relief." *Id.*

[2] Pursuant to 11th Cir. R. 28-5, citations to documents in the docket below are cited herein as "Dkt. [#] at [Page #]."

Cir. Sep. 30, 2025); *In re Am. Oversight*, No. 25-13400, ECF No. 11 (11th Cir. Sep. 30, 2025).

Petitioners respectfully ask that this Court issue a writ of mandamus directing the district court to issue the stay.

## I.      The Relief Sought

The Knight Institute and American Oversight respectfully petition this Court for a writ of mandamus directing the district court to stay proceedings pending appeal.

## II.      The Issue Presented

Whether the district court's imminent adjudication of the parties' unopposed expedited motions seeking the permanent suppression and destruction of Volume II of the Special Counsel's final report warrants the issuance of a writ of mandamus requiring the district court to stay proceedings pending this Court's resolution of Petitioners' appeals, which divested the district court of jurisdiction over the question of public access to Volume II.

## III.      The Facts Necessary to Understand the Issues Presented

### A.      Special Counsel Jack Smith's final report on his investigations and prosecutions of President Trump

On January 7, 2025, Special Counsel Jack Smith submitted a two-volume final report to Attorney General Merrick Garland regarding the Special Counsel's

investigations and prosecutions of President Trump.[3] Volume I addresses the investigation and prosecution of the President for his alleged interference with the lawful transfer of power following the 2020 presidential election.[4] Volume II, which is the focus of this petition and Petitioners' related appeals, addresses the Special Counsel's investigation and prosecution of then-former President Trump and his associates, Walt Nauta and Carlos De Oliveira, for the alleged unlawful retention of classified documents at the Mar-a-Lago Club after Trump left office ("Classified Documents Case").[5] Attorney General Garland released Volume I to the public on January 14, 2025.[6] Volume II has never been made public.

On January 6, 2025, the day before the Special Counsel transmitted his report to the Attorney General, Nauta and De Oliveira filed an emergency motion in the U.S. District Court for the Southern District of Florida, where the criminal charges against them were still pending, to enjoin DOJ from releasing the report to anyone outside the Department. Dkt. 679. In their motion, Nauta and De Oliveira argued that

---

[3] Letter from Special Couns. Jack Smith, to Att'y Gen. Merrick Garland, Re: Final Report of the Special Counsel Under 28 C.F.R. § 600.8 (Jan. 7, 2025), https://perma.cc/8SWU-PKL7.

[4] *Id.*

[5] *Id.*

[6] Alan Feuer, *Four Takeaways From the Special Counsel's Report on the Trump Election Case*, N.Y. Times (Jan. 14, 2025), https://perma.cc/PT99-YFZL.

DOJ's disclosure of the Special Counsel's report to the public or even to select members of Congress would prejudice their fair trial rights. *Id.*[7]

On January 7, 2025, the district court temporarily enjoined DOJ from releasing Volume II to anyone outside the Department. Dkt. 682. The court ordered expedited briefing on the emergency motion and ordered the government to hand deliver a copy of Volume II to the judge's chambers for *in camera* review. Dkt. 705. On January 21, 2025, following "a hearing and review of all relevant filings, including an *in camera* review of Volume II itself," the court granted Nauta and De Oliveira's emergency motion and enjoined the release of Volume II, based on the court's conclusion that public dissemination of Volume II would imperil their rights to a fair trial in the then-ongoing criminal proceedings against them. Dkt. 714 at 2. In issuing the Injunction, the court relied on its "supervisory powers" "'to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials.'" *Id.* at 7 (citation omitted). The court explained that its "independent judicial review" of Volume II was "important to make a considered determination" on Nauta and De Oliveira's Emergency Motion. *Id.* at 5 n.8.

---

[7] The charges against President Trump had been dismissed after he won reelection in November 2024. *United States v. Trump,* No. 24-12311, ECF No. 81-2 (11th Cir. Nov. 26, 2024).

On January 29, 2025, eight days after the district court issued the Injunction, the government moved to voluntarily dismiss the appeal with prejudice as to Nauta and De Oliveira.[8] This Court dismissed the appeal on February 11, 2025, which brought the criminal case to an end.[9]

### B.    Petitioners' efforts to access Volume II

In January 2025, Petitioners submitted Freedom of Information Act (FOIA) requests to the Department of Justice (DOJ) seeking the release of Volume II of Special Counsel Jack Smith's Report. *See* Dkt. 717 at 15; Dkt. 721 at 26–32 (Ex. 1). On February 6, 2025, DOJ denied the Knight Institute's request on the grounds that Volume II was protected from disclosure by the Injunction. *Id.* at 37 (Ex. 3). On February 10, 2025, after DOJ failed to respond to American Oversight's FOIA request and applicable statutory deadlines had passed, American Oversight filed a complaint and motion for preliminary injunction against DOJ in the United States District Court of the District of Columbia seeking relief under FOIA to compel production of Volume II. *See* Compl., *Am. Oversight v. U.S. Dep't of Just.*, No. 25-cv-383 (D.D.C. Feb. 10, 2025), ECF No. 1. Shortly after American Oversight filed its suit, DOJ denied its FOIA request on the same grounds as the Knight Institute's

---

[8] Mot. to Voluntarily Dismiss the Appeal, *United States v. Trump*, No. 24-12311, ECF No. 111 (11th Cir. Jan. 29, 2025).

[9] Order Granting Mot. to Dismiss the Appeal, *United States v. Trump*, No. 24-12311, ECF No. 113 (11th Cir. Feb. 11, 2025).

request—that Volume II was protected from disclosure because of the Injunction. Dkt. 717 at 15 (Ex. 1). The district court then denied American Oversight's motion for preliminary relief and dismissed the complaint, holding that DOJ lacked discretion to release Volume II because of the Injunction. *Am. Oversight v. U.S. Dep't of Just.*, 779 F. Supp. 3d 40, 45 (D.D.C. 2025).

In February 2025, shortly after this Court dismissed the government's appeal, bringing the criminal case to an end, Petitioners filed motions to intervene to challenge the Injunction. Dkt. 717; Dkt. 721. Both Petitioners argued that the Injunction prevented them from vindicating their statutory rights of access under FOIA. *Id.* The Knight Institute also moved to intervene to assert common law and First Amendment rights of access to the copy of Volume II that the district court ordered the government to deliver, reviewed *in camera* to "facilitate" adjudicating Nauta and De Oliveira's Emergency Motion, discussed with the parties at the hearing on the motion, and expressly relied on in resolving the motion on the merits and issuing the Injunction. Dkt. 721 at 11–17.

On September 30, 2025, more than six months after Petitioners filed their motions to intervene, they petitioned this Court for a writ of mandamus directing the district court to fully resolve the motions to intervene without further delay. *In re Knight First Amend. Inst. at Columbia Univ.*, No. 25-13403, ECF No. 1 (11th Cir. Sep. 30, 2025); *In re Am. Oversight*, No. 25-13400, ECF No. 1 (11th Cir. Sep. 30,

2025). This Court found that the Institute had established "undue delay" in the
resolution of its motion but held the mandamus petition "in abeyance for a period of
60 days to allow the district court to fully resolve the motion[]." *Id.*, ECF No. 11.

### C.   The district court's denial of Petitioners' motions to intervene

On December 22, 2025, just a few days before the expiry of the 60-day period,
the district court denied Petitioners' motions to intervene. Dkt. 760. The court held
that the copy of Volume II it reviewed *in camera* in deciding Nauta and De Oliveira's
motion is not a judicial record subject to the public right of access, because no party
attached Volume II to Nauta and De Oliveira's motion or any other substantive
motion for judicial relief, and because Volume II contains "myriad references" to
"nonpublic discovery information" and thus should be treated like attachments to
discovery motions, which are exempt from the public right of access. *Id.* at 15–17 &
n.13. The court also held that Petitioners could not intervene to vindicate their rights
under FOIA because no court has allowed intervention in a criminal case for that
purpose and allowing intervention here would "disregard[] the limits of intervention
in criminal cases; and risk[] havoc in criminal proceedings through FOIA-interested
parties." *Id.* at 14.

### D.    Petitioners' appeals of the district court's order denying their motions to intervene

On December 23 and December 29, 2025, the Knight Institute and American Oversight, respectively, filed notices of appeal from the district court's order denying their motions to intervene. *See United States v. Knight First Amend. Inst., et al.*, No. 25-14507, ECF Nos. 1, 2 (11th Cir. Dec. 29 & 30, 2026). On January 9, 2026, the Knight Institute filed a motion to expedite the appeal, *id.*, ECF No. 10 (11th Cir. Jan. 9, 2026), which this Court granted on February 4, 2026, *id.*, ECF No. 37 (11th Cir. Feb. 4, 2026). Petitioners filed their opening briefs on February 9, 2026. *Id.*, ECF Nos. 38, 39 (11th Cir. Feb. 9, 2026).

In its opening brief, the Knight Institute argued that, under this Court's decisions, the press and public have standing to intervene in criminal cases to assert a common law and First Amendment right of access. *United States v. Knight First Amend. Inst., et al.* No. 25-14507, ECF No. 38 (11th Cir. Feb. 9, 2026) at 1–2. It also argued that, in concluding otherwise, the district court erred by conflating the standing inquiry with the merits inquiry, insofar as it reasoned that the Institute lacks standing because Volume II is not a "judicial record" subject to the public rights of access. The Institute also argued that it has standing to challenge the Injunction blocking its FOIA rights because the Injunction effectively nullifies those rights and intervention is the Institute's only remedy.

Turning to the merits, the Institute argued that Volume II constitutes a judicial record subject to the common law right of access under this Court's decisions because it was submitted to the district and was "integral to the judicial resolution of the merits" of Nauta and De Oliveira's Emergency Motion. *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) (cleaned up). The district court ordered Volume II delivered to chambers, reviewed it *in camera*, discussed its contents at the hearing on the motion, and relied on it in its decision granting the Injunction. The Institute also argued that Volume II is subject to the First Amendment right of access because it was submitted to the district court in connection with the January 17, 2025 hearing.

The Institute argued, finally, that the presumptions favoring access cannot be overcome. The criminal case has been dismissed, the government has stated it will not revive the charges, and the charges against Nauta and De Oliveira will become time-barred in 2028. Any risk to fair trial rights is remote and vastly outweighed by the public interest in disclosure of a document concerning investigation of the President for serious crimes. Concerns about grand jury secrecy or attorney-client privileged material in Volume II should be addressed through discrete redactions rather than wholesale suppression. The Institute argued that the Injunction should be vacated because the district court's sole justification for exercising its supervisory

power—protecting fair trial rights—evaporated when this Court dismissed the appeal.

In its opening brief, American Oversight argued that this Court should reverse the district court's order denying intervention because it has a statutory right under FOIA to request and access non-exempt public records, the district court failed to apply directly relevant case law to American Oversight's stated federal interests, and the district court's denial of its motion to intervene means that no party will oppose motions by Defendants to permanently enjoin—and destroy all copies of—a public record of significant import. *United States v. Knight First Amend. Inst., et al.*, No. 25-14507, ECF No. 39 (11th Cir. Feb. 9, 2026) at 1.

### E.   Defendants' motions seeking equitable relief barring public access to Volume II

On December 22, 2025, shortly after denying the Institute's motion to intervene, the district court issued an order regarding the Injunction. Dkt. 761. Acknowledging that the "immediate basis" for the Injunction ceased to exist on February 11, 2025, when this Court dismissed the criminal appeal, the district court ordered that the Injunction will automatically expire on February 24, 2026, absent further order of the court. *Id.* At the same time, however, the district court invited the current parties and President Trump to seek "appropriate relief" before that deadline, and it specifically referenced Defendants' assertion that Volume II should

not be released because it is the work product of an unconstitutionally appointed Special Counsel. *Id.* at 1–2.

In late January 2026—almost a month after Petitioners filed their notices of appeal—Defendants sought additional relief from the district court to prevent the release of Volume II, based on the same assertion. Dkt. 772 & 774. They moved for a permanent injunction barring Volume II's release, and Nauta and De Oliveira also asked the court to order the destruction of all copies of Volume II. Dkt. 774 at 1. As noted earlier, according to Nauta and De Oliveira's counsel, President Trump consented to Nauta and De Oliveira's request for relief and the government did not oppose it. *See supra* n.1. The government submitted a response agreeing with Defendants that Volume II should not be released outside DOJ and stating that Volume II "belongs in the dustbin of history." Dkt. 773 at 1, 3.

### F.    Petitioners' joint motion to intervene in the district court to seek a stay of proceedings pending appeal

On February 9, 2026, the day they filed their opening briefs in this Court, Petitioners also filed a joint motion to intervene in the district court to seek a stay of proceedings pending appeal. Dkt. 775. Petitioners argued that their notices of appeal divested the district court of jurisdiction over public access to Volume II—the sole issue remaining in this closed criminal case. Petitioners also argued that Defendants' motions are without merit because none of the statutory, common law, or constitutional access rights to Volume II depends on the constitutionality of Smith's

appointment. *Id.* Finally, Petitioners argued that the relief Nauta and De Oliveira seek would violate the Federal Records Act, 44 U.S.C. §§ 3101 *et seq*. *Id.*

## IV.   The Reasons Why the Writ Should Issue

### A.   This Court has jurisdiction to issue the writ.

The All Writs Act authorizes this Court to issue "all writs necessary or appropriate in aid of [its appellate] jurisdiction." 28 U.S.C. § 1651. That authority includes "issuance of writs in aid of a jurisdiction already acquired by appeal." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943); *United States v. U.S. Dist. Court for the S. Dist. of N.Y.*, 334 U.S. 258, 263 (1948).

Accordingly, the Court has jurisdiction to issue a writ of mandamus in aid of Petitioners' pending appeals.

### B.   The Court should grant the Petition because all requirements for issuance of the writ are satisfied here.

Although mandamus is an "extraordinary remedy," issuance of the writ may be appropriate "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche*, 319 U.S. at 26; *see also Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1265 (11th Cir. 2021). For the writ to issue, the petitioner must satisfy three conditions. First, the petitioner "must have no other adequate means to attain the relief [the petitioner] desires—a condition designed to ensure that the writ will not be used as

a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380–81 (cleaned up). Second, the petitioner's "right to issuance of the writ [must be] clear and indisputable." *Id.* at 381 (cleaned up). Third, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

All three requisites for issuance of the writ are satisfied here.

### 1.    Petitioners have no other adequate means to obtain relief.

"When a petitioner faces significant 'irreversible, non-monetary harm' if forced to wait for an appeal to run its course, mandamus may issue to prevent that harm." *In re A.H.*, 999 F.3d 98, 106 (2d Cir. 2021) (citing *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 353 (5th Cir. 2017)); *see also In re Perry*, 859 F.2d 1043, 1046 (1st Cir. 1988) ("The writ is uniquely appropriate when interlocutory relief is necessary to prevent irreparable harm." (citation omitted)). In determining whether the harm is "significant enough to justify mandamus relief, [courts] give consideration to the severity and extent of this damage, and in particular to whether a petitioner has lost precious constitutional rights." *In re A.H.*, 999 F.3d at 106 (quoting *In re Halkin*, 598 F.2d 176, 198 (D.C. Cir. 1979), *abrogated on other grounds by Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).

The parties' unopposed, expedited motions currently pending before the district court seek relief that would, if granted, entirely foreclose Petitioners'

statutory, common law, and First Amendment rights of access to Volume II. A district court order directing the destruction of all copies of Volume II would result in the irretrievable loss of those rights. A permanent injunction barring Volume II's release would also seriously damage Petitioners' rights of access, because FOIA, the common law, and the First Amendment all guarantee a right of *timely* access to records that fall within their scope. The First Amendment, for example, guarantees a right of *contemporaneous* access to judicial documents, because "the public benefits attendant with open proceedings are compromised by delayed disclosure." *Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014). Access must be "immediate and contemporaneous" to fulfill the values that animate the access right—promoting community respect for the rule of law, providing a check on the activities of judges and litigants, and fostering more accurate fact finding. *In re Associated Press*, 162 F.3d 503, 506–07 (7th Cir. 1998) (internal quotation marks omitted). Given that "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment," the right of timely access to judicial documents necessarily encompasses a right to timely adjudication of access claims. *Doe v. Pub. Citizen*, 749 F.3d at 272*; see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006).

FOIA similarly prioritizes timely access to public records by prescribing deadlines under which the government must produce non-exempt public information, providing a method under which a requester can seek expedited

processing of time-sensitive requests, and granting requesters a private right of action when the government fails to comply with its obligations under the statute. *See* 5 U.S.C. § 552(a); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 775–76 (D.C. Cir. 2018) ("Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify its delay in making nonexempt records available upon request.").

### 2. Petitioners' entitlement to the writ is clear and indisputable.

Petitioners have a clear and indisputable right to a stay of district court proceedings because their notices of appeal divested the district court of jurisdiction over the issue remaining in this closed criminal case—public access to Volume II of the Special Counsel's report. Given the transfer of jurisdiction to this Court, the district court's adjudication of the parties' motions seeking permanent injunctive relief against Volume II's release would constitute an "abuse of judicial power." *Roche*, 319 U.S. at 27.

It is a "longstanding tenet of American procedure" that "an appeal divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). The district court retains

16

jurisdiction over "collateral matters that are separate and distinct from the questions presented on appeal." *Burke v. Ocwen Fin. Corp.*, No. 21-12160, 2022 WL 599153, at *1 (11th Cir. March 1, 2022) (citing *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 & n.4 (11th Cir. 1999)). When "the entire case is essentially involved in the appeal . . . the district court must stay its proceedings" while the appeal is ongoing. *Coinbase*, 599 U.S. at 740 (cleaned up). "Once divested of jurisdiction, a district court's authority is restored only upon remand from the appellate court." *United States v. Brown*, 438 F. App'x 871, 872 (11th Cir. 2011). If the district court takes actions in a case after being divested of jurisdiction, it is incumbent on the court of appeals to order a stay of district court proceedings. *See, e.g., United States v. Vicaria*, 963 F.2d 1412, 1415 (11th Cir. 1992).

Petitioners' notices of appeal completely divested the district court of jurisdiction, because "the entire case"—public access to Volume II—"is essentially involved in the appeal." *Coinbase*, 599 U.S. at 740 (cleaned up). But even if the divestiture of jurisdiction is not total, the district court lacks jurisdiction to adjudicate Defendants' pending motions because they are not "collateral matters that are separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1. Indeed, the pending motions in the district court are inextricable from the issues on appeal. On appeal, Petitioners seek access to Volume II and to a rescission of the injunction against its release. In the pending motions in the district

17

court, Defendants seek *destruction* of the report or, at the very least, a permanent injunction against its release. It is difficult to imagine a more direct conflict between parallel proceedings in the district court and on appeal.

Many of the specific arguments Defendants make in their pending motions are also inextricable from the issues on appeal. For example, the Knight Institute's appeal challenges the district court's supervisory authority to enjoin DOJ from releasing Volume II.[10] But Defendants' motions expressly invoke that authority in seeking an order from the district court directing Volume II's destruction and/or permanently enjoining its release. Dkt. 772 at 2, 12–13; Dkt. 774 at 3–4, 10. Another example: The Knight Institute's appeal asserts the presumptive common law and First Amendment right of access to Volume II and argues that Defendants cannot overcome the presumption.[11] Defendants' motions argue the opposite. Nauta and De Oliveira's motion argues that there is no public right of access to Volume II, Dkt. 774, at 5–6, and Defendants' motions advance many of the same justifications for suppressing the report that Defendants claim are sufficient to overcome the

---

[10] *United States v. Knight First Amend. Inst., et al.*, No. 25-14507, ECF No. 38 at 48–51 (11th Cir. Nov. 9, 2026). Although American Oversight's appeal does not directly challenge the district court's supervisory authority, the question raised by American Oversight's appeal is directly related to the district court's supervisory authority, which is in no way a "collateral matter[] that [is] separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1.

[11] *United States v. Knight First Amend. Inst., et al.*, No. 25-14507, ECF No. 38 at 28–48 (11th Cir. Nov. 9, 2026).

presumption of access—the risk of prejudice to Defendants' fair trial rights, the

burden to them of having to respond to the allegations in the report, and the report's

purported inclusion of unredacted grand jury material, information covered by the

attorney/client privilege, and undisclosed discovery material, Dkt. 739 at 15–16,

Dkt. 772, at 1–2, 15–16, Dkt. 774 at 3–5, 7–8.

Therefore, the district court's adjudication of Defendants' motions would

directly interfere with and potentially defeat this Court's appellate jurisdiction.

### 3. Issuance of the writ is appropriate under the circumstances.

The Petition raises "special circumstances" that further justify issuance of the

writ. *Roche*, 319 U.S. at 31. As Petitioners explain in their pending appeals, the

Special Counsel's report concerns allegations of grave criminal conduct by the

nation's highest official, and its disclosure would shed light on the President's

actions and character. *Cf. In re North*, 16 F.3d 1234, 1241 (D.C. Cir. 1994)

(concluding with respect to the final report of the Independent Counsel for the Iran-

Contra Affair that it "is in the national interest that the public, its representatives in

the political branches, and its surrogates in the media have as full an access to the

fruits of the investigation as possible"). The report's release would shed light on the

scope and integrity of the Special Counsel's investigation, which is a matter of

intense public and congressional interest. Notably, the House and Senate Judiciary

Committees have launched investigations into Jack Smith's conduct as Special

Counsel, but the Injunction has prevented him from testifying about the Classified

Documents Case, both in a closed-door deposition on December 17, 2025, and at a

public hearing of the House Judiciary Committee on January 22, 2026.[12] The

disclosure of the report would also inform the public about the Justice Department's

understanding of the Espionage Act, a statute with broad implications for free speech

and press freedom.

      The Supreme Court has emphasized that the First Amendment was meant to

protect the right of the public to freely examine "public characters and measures,"

*N.Y. Times v. Sullivan*, 376 U.S. 254, 274 (1964) (quoting Virginia Resolutions of

1798), and FOIA reflect the same goal, *U.S. Dep't of Def. v. Fed. Labor Rel. Auth.*,

510 U.S. 487, 497 (1994). The district court's adjudication of Defendants' motions

seeking the permanent suppression and destruction of Volume II of the Special

Counsel's report compromises the interests that FOIA and the First Amendment

were intended to protect.

---

[12] Glenn Thrush and Alan Feuer, *House Republicans Press Jack Smith Over Investigations Into Trump*, N.Y. Times (Dec. 17, 2025), https://perma.cc/L97X-8GLX; Deposition of Jack Smith Before the H. Comm. on the Judiciary at Tr. 13:12-25 (Dec. 17, 2025), https://perma.cc/A6BY-Q28S; Jack Smith's prepared statement before the House Judiciary Committee (Jan. 22, 2026), https://perma.cc/XB25-4J2D.

**Conclusion**

For all of these reasons, the Court should issue a writ of mandamus directing the district court to stay proceedings pending Petitioners' appeals.

February 13, 2026                    Respectfully submitted,

                                         /s/ Scott Wilkens

David Buckner                        Scott Wilkens
Buckner + Miles                      Alex Abdo
2020 Salzedo Street                  Jameel Jaffer
Suite 302                            Knight First Amendment Institute at
Coral Gables, FL 33134                 Columbia University
(305) 964-8003                       475 Riverside Drive, Suite 302
                                     New York, NY 10115
                                     (646) 745-8500
                                     scott.wilkens@knightcolumbia.org

                                     *Counsel for Petitioner Knight First
                                     Amendment Institute at Columbia
                                     University*

                                         */s/ Loree Stark*

Barbara R. Llanes                    Loree Stark
Gelber Schachter & Greenberg, P.A.   Daniel Martinez
One Southeast Third Ave., Ste. 2600  Ronald Fein
Miami, FL 33131                      American Oversight
Tel: (305) 728-0950                  1030 15th Street NW, B255
bllanes@gsgpa.com                    (304)-913-6114
                                     loree.stark@americanoversight.org

                                     *Counsel for Petitioner American
                                     Oversight*

21

**Certificate of Compliance**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), it contains 4,889 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: February 13, 2026                    */s/ Scott Wilkens*
                                            Scott Wilkens