UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

DONALD J. TRUMP, WALTINE NAUTA, and CARLOS DE OLIVEIRA

Defendants.

Case No. 9:23-cr-80101-AMC
Appeal Nos. 25-14507; 26-10674

**THE UNITED STATES' MOTION TO DISMISS WITNESSES' SECOND MOTION TO INTERVENE AND SEEK CLARIFICATION OF COURT'S PROTECTIVE ORDER**

## INTRODUCTION

The United States of America, by and through its undersigned counsel, responds to the motion to intervene and seek clarification of the Court's February 23, 2026 Protective Order, filed by former Federal Bureau of Investigation agents and analysts ("Witnesses"), who were involved in the criminal investigation that led to the unlawful and since dismissed prosecution of President Donald J. Trump, Waltine Nauta, and

Carlos De Oliveira. The motion should be dismissed for lack of jurisdiction.

The Witnesses' motion—styled as a motion to intervene to seek clarification—asks this Court for no such thing. Rather, in the guise of seeking clarification, the Witnesses actually seek to chip away at this Court's straightforward prohibition against the disclosure of Volume II and the improperly derived information and conclusions contained in the so-called Special Counsel Report. The Witnesses also seek to forestall—even dictate—what questions the grand jury can ask of them and to publicly telecast the details of those protected proceedings. Those asks alone are extraordinary.

But the Witnesses compound the audacity of these requests: They lasso their jurisdictional interest on an illusory future "injury" lacking any basis in law. *See* Motion, pp. 3–4. They insist the Court must "clarif[y] the application of the Order to their upcoming grand jury testimony," because their "imminent injury" is "'likely [going to be] caused by'" Department of Justice officials asking them, "questions pertaining to information in Volume II of the report, which *may or may not* fall within the scope of the [Protective] Order." Motion, pp. 3–4

(emphasis added) (citation omitted). And this speculative "injury"—which *may or may not happen*—they theorize, *may or may not* "forc[e] them to make the difficult choice" among facing "(1) possible contempt of the Order; (2) not providing full, unconstrained testimony to the grand jury in order to comply with the terms of the Order; or (3) invoking their Fifth Amendment right not to incriminate themselves." Motion, p. 3.

Three illusions cannot make an injury.

Under Article III of the Constitution, for a genuine case or controversy, a party must show he or she has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, *Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A "threatened injury must be *certainly impending* to constitute injury in fact," and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Parties "cannot manufacture standing merely *by inflicting harm on themselves based on their fears of hypothetical future harm* that is not certainly impending." *Id.* at 416 (emphasis added). Witnesses' bases for

standing—no matter how creative—should be dismissed for lack of jurisdiction.

## FACTUAL BACKGROUND

1. On June 8 and July 27, 2023, a grand jury, convened in the U.S. District Court for the Southern District of Florida, issued Indictments against President Trump, Waltine Nauta, and Carlos De Oliveira. [ECF Nos. 3 & 85].

2. On June 19, 2023, under Federal Rule of Criminal Procedure 16, this Court issued a Rule 16 Protective Order ("Rule 16 Order"), ordering that "[t]he Discovery Materials, along with any information derived therefrom, shall not be disclosed to the public or the news media, or disseminated on any news or social media platform, without prior notice to and consent of the United States or approval of the Court." [ECF No. 27, p. 3].

3. On July 15, 2024, this Court granted President Trump's motion to dismiss the Superseding Indictment. *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024); [*see* ECF Nos. 326, 672]. This Court determined that former Special Counsel Jack Smith's appointment violated the Appointments Clause of the United States Constitution, U.S.

Const., Art. II., § 2, cl. 2, warranting dismissal. *Trump*, 740 F. Supp. at 1252. This Court also concluded that Smith's use of a permanent indefinite appropriation violated the Appropriations Clause, U.S. Const. Art. I, § 9, cl. 7. *Trump*, 740 F. Supp. at 1252. This Court, however, did not impose a separate remedy for that violation. *Id.*

4. Despite the dismissal, Smith thereafter compiled the so-called Special Counsel Report, including Volume II, which concerns Smith's unlawful investigation and prosecution in this case. [*See* ECF No. 779, pp. 3–4].

5. On January 20, 2026, President Trump moved for an order permanently prohibiting the release of Volume II outside the Department of Justice. [ECF No. 772].

6. Three days later, the United States responded, also opposing any release of Volume II outside the Department of Justice. [ECF No. 773].

7. A week later, Nauta and De Oliveira moved similarly for an order permanently prohibiting the release of Volume II outside the Department of Justice. [ECF No. 774].

8. On February 23, 2026, this Court issued the Order permanently enjoining the release of Volume II, any drafts, and any information or conclusions contained in the unlawfully prepared Report or in its drafts. [ECF No. 779].

9. In the Protective Order, this Court ordered that "[then-] Attorney General Bondi or her successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, [be] enjoined from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof." [ECF No. 779, pp. 14–15].

10. While this case proceeded, the Court has also reviewed intervention motions advanced by the Knight First Amendment Institute at Columbia University and American Oversight. [*See* ECF Nos. 717, 721, 736, 737, 739, 740, 745, 750, 751, 760]. Even after this Court properly dismissed Smith's baseless charges due to his unconstitutional Special Counsel appointment, Smith prepared and sought to release

Volume II. [*See* ECF No. 779, pp. 3–4]. Asserting generalized rights of access to the Report under the Freedom of Information Act, common law, and the First Amendment, Knight Institute and American Oversight sought to intervene in this criminal case to challenge the Court's January 21, 2025 Order granting Nauta and De Oliveira's emergency motion to preclude the release of Volume II. [ECF Nos. 679, 714, 717, 721]. This Court denied those motions to intervene. [ECF No. 760]. Knight Institute and American Oversight subsequently appealed. [*See* ECF Nos. 762, 763; Appeal No. 25-14507 (11th Cir.)].

On the same day that Knight Institute and American Oversight filed their opening briefs in that appeal, they sought to intervene a second time in the District Court; this time, they sought a "stay of proceedings pending the Eleventh Circuit's resolution of their appeals." [ECF No. 775, p. 1; *see also* Appeal No. 25-14507, Dkt. Nos. 38, 39, 41]. Here, they argued that their first interventionist appeal "divested this Court of jurisdiction to take any action with respect to Volume II." [ECF No. 775, p. 5]. They also asserted standing based on the same theories this Court dismissed from before. [ECF No. 775, pp. 3–5]. This Court properly denied Knight Institute and American Oversight's joint motion to

intervene on February 23, 2026. [ECF No. 780]. The two institutions also appealed that order. [*See* ECF Nos. 783, 784; Appeal No. 26-10674 (11th Cir.)].

Those appeals are now consolidated and pending in the Eleventh Circuit. [*See* Appeal No. 25-14507, Dkt. 68; Appeal No. 26-10674, Dkt. No. 38]. Oral argument is pending scheduling. [*See* Appeal No. 25-14507, Dkt. 135; Appeal No. 26-10674, Dkt. No. 96].

11. A grand jury, empaneled in the Fort Pierce Division of the Southern District of Florida, is investigating potential criminal conduct. As part of this investigation, the United States has identified several former and current FBI agents and analysts—the Witnesses here—associated with FBI's investigation and resulting Indictments of President Trump, Nauta, and De Oliveira, as having knowledge and information relevant to the grand jury's investigation.

12. After expressing concern to the United States that the Witnesses' eventual testimonies might implicate the Court's Protective Order, on September 24, 2026, counsel for the Witnesses moved to intervene and seek clarification of the Court's Protective Order. [ECF 806]. Seven days later, this Court struck that motion, based on

Witnesses' counsel's failure to confer with Defendants' counsel. [ECF 808].

13. On October 7, the Witnesses refiled their formerly stricken motion. [*See* ECF 809].

## ARGUMENT

An investigative grand jury is now empaneled. The Witnesses, current and former FBI agents and analysts—who have knowledge of the underlying investigation in this case—have been, or may be, called to testify before the grand jury concerning certain matters that are separate and distinct from the preparation of Volume II and any improper information or conclusions that may be contained in that Report or its drafts. The scheduled dates and times for their requested testimonies have not yet occurred, and what the Witnesses may or may not be asked by the grand jury—and how they choose to respond at that time—remains conjecture. The Witnesses cannot establish an injury in fact based upon such a hypothetical theory of possible future harm.

### I. Witnesses Fail To Show Article III Standing.

Calling for "clarification," the Witnesses essentially ask this Court for a premature declaratory judgment about contingent, hypothetical

events that *may or may not* occur. In other words, the Witnesses seek an advisory opinion prohibited under Article III. But "[t]he province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. 137, 170 (1803).

"[W]hether the Plaintiff has made out a 'case or controversy' between himself and the Defendant within the meaning of Art. III … is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he irreducible constitutional minimum of standing contains three elements": (1) an "injury in fact"; (2) that is "fairly … trace[able] to the challenged action of the defendant," and (3) that is "likely" to be "redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted). The Witnesses thus have the burden of pleading sufficient factual information to show these elements. Their injury must be both "concrete and particularized."

*Spokeo*, 578 U.S. at 340; *see Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000).

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (citation omitted). "A 'concrete' injury must be '*de facto*'; that is, *it must actually exist*." *Id.* at 340 (emphasis added); *see Black's Law Dictionary* 479 (9th ed. 2009). A plaintiff must also allege facts showing that the alleged injury is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citation omitted). A "'threatened injury must be *certainly impending* to constitute injury in fact,' and … '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore*, 495 U.S. at 158). Parties who allege injuries premised on a *possibility or risk of future harm* lack Article III standing. They "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. at 416.

The Witnesses cannot "pass Go": They lack standing because they fail to allege *any* facts showing that, during the future grand jury proceedings, they will suffer "'an invasion of a legally protected interest'

that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). They, like any other witness subpoenaed for a grand jury investigation, will "suffer" no more than the short-lived uncertainty as to what *they may be* questioned about related to their involvement in the illegal investigation of President Trump's Mar-a-Lago residence. *See United States v. Richardson*, 418 U.S. 166, 174 (1974) ("[A] [party] may not 'employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System.'" (citation omitted)). So the Witnesses' hypothetical fears that they *may* be questioned about Volume II, rest on nothing more but conjecture, fear-mongering, and an apparent motive to delay. They cannot show—for good reason—what they actually will be questioned about. Only the grand jury can know that. At step one then, the Witnesses cannot show an injury that is "certainly impending." *Clapper*, 568 U.S. at 409

Consistent with these principles, the Supreme Court's and this Court's cases addressing standing based on future harm flowing from a government action require a plaintiff to allege sufficiently imminent and

substantial harm stemming from that action. For example, in *Golden v Zwickler*, 394 U.S. 103 (1969), the Supreme Court held that the plaintiff lacked standing to challenge the constitutionality of a New York law prohibiting the distribution of anonymous literature in connection with an election campaign. *Id.* at 109–10. There, the plaintiff alleged he had before, and intended again, to distribute such literature criticizing a certain Congressman during an upcoming election. *Id.* at 109. But because, at that point, the Congressman had left the House of Representatives to begin a multi-year term as a state court judge, it was "most unlikely that [he] would again be a candidate for Congress." *Id.* at 109 & n.4. It was also "wholly conjectural that another occasion might arise when [the plaintiff] might be prosecuted for distributing the handbills." *Id.* at 109. The Court therefore concluded that the plaintiff failed to show "sufficient immediacy and reality" warranting "the issuance of a declaratory judgment." *Id.* at 108–09 (internal quotation marks and citation omitted).

Various courts of appeal throughout this country agree—holding that plaintiffs' speculative fears of future injury and their alleged burdens of measures undertaken to avoid such risks—mirroring the very

types of "injuries" and risk-avoidance tactics that Witnesses allege here—are not cognizable "injuries in fact" for purposes of Article III standing. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262, 266–67 (4th Cir. 2017) (concluding alleged increased risk of future identity theft and cost of measures to protect against it are insufficient to establish Article III standing); *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 90 (2d Cir. 2017) (affirming dismissal for lack of standing where the plaintiff failed to allege actual damages from fraudulent use of her card); *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) ("[To find standing] would stretch the injury requirement past its breaking point," where the plaintiff failed to allege her personal data was actually accessed or misused by company); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (concluding allegations of possible future injury are insufficient to satisfy the requirements of Article III standing).

And, of course, the Witnesses cannot save themselves by floating their purported risk mitigation tactics—contempt, potentially disobeying the Order, or pleading the Fifth Amendment—based on their hypothetical fears. *See* Motion, p. 3. Self-imposed harms incurred in response to a speculative threat cannot confer standing. *See Beck*, 848

F.3d at 276 (concluding plaintiffs could not "bring this action based on costs they incurred in response to a speculative threat"); *In re. SuperValu, Inc., Customer Data Sec. Breach Litig.*, 870 F.3d at 763, 771 (8th Cir. 2017) ("Because plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury."); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 694 (7th Cir. 2015) ("Mitigation expenses do not qualify as actual injuries where the harm is not imminent."); *Reilly*, 664 F.3d at 46 ("[P]rophylactically spent money to ease fears of [speculative] future third-party criminality … is not sufficient to confer standing."); *cf. Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 390 (5th Cir. 2018) ("[T]o confer standing, allegations of chilled speech or self-censorship must arise from a fear of [future harm] that is not 'imaginary or wholly speculative.'" (citation omitted)).

Simply put, the Witnesses are no differently situated than any other witness facing any other grand jury proceeding. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75 (1982) (concluding federal courts may refuse on prudential grounds to entertain "generalized grievances," which are

"abstract questions of wide public significance … pervasively shared and most appropriately addressed in the representative branches" (internal quotation marks and citation omitted)); *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–21 (1974); *Richardson*, 418 U.S. at 175. Upon receipt of a grand jury subpoena, the Witnesses could properly raise true concerns by moving to quash the grand jury subpoena. They have not done so. During grand jury proceedings, they can either truthfully answer questions or they can invoke the Fifth Amendment. Should they encounter an unconstitutional question or procedural defect during those proceedings, they can then raise it with this Court. If the prosecution believes a refusal to answer to be contumacious, the United States can then seek a Court ruling. *See In re Grand Jury Proceedings*, 713 F.2d 616, 617–18 (11th Cir. 1983) (affirming contempt sanctions for witness' repeated refusal to answer questions without consulting attorney who was outside grand jury room). Only then would a matter related to these *future* grand jury proceedings become ripe.

## II. Witnesses Improperly Impose Themselves Into Secret Grand Jury Proceedings.

Aside from burdening this Court with phantom speculation and illusory jurisdictional claims, the Witnesses here try to entangle a

criminal grand jury within an ongoing civil cause of action: Their chosen vehicle is an improper forum for this grand jury issue.

Supreme Court precedent establishes that grand jury proceedings must remain highly confidential, insulated from outside influence, and limited in attendance to only those participants essential to its investigative function. That means "the public [is] excluded" and "the questioning [remains] secret in accordance with the traditional grand jury method." *In re Oliver*, 333 U.S. 257, 259 (1948); *see also Press-Enter. Co. v. Superior Ct. of California for Riverside Cnty.*, 478 U.S. 1, 9 (1986) ("[T]here are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" (citation omitted)). Of course, this secrecy serves a purpose: ensuring witness candor; preventing flight or interference by potential defendants; protecting innocent individuals from public scrutiny; and preserving the independence of the grand jury's deliberative process. *See Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979). Despite what the Witnesses appear to believe, "[t]his 'indispensable secrecy of grand jury proceedings,' must not

be broken except where there is a compelling necessity"; and any disclosure requires that such necessity "be shown with particularity." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citation omitted). But the Witnesses cannot show a particularized need. Instead, they strain—under the guise of a clarification motion—to thrust themselves into this secret, deliberative process and to preview, and even to veto, what the grand jury might ask of them.

But the Supreme Court says no.

Outside actors, including attorneys for the Witnesses, have never been permitted inside the grand jury room—either abstractly or physically. In *United States v. Mandujano*, the Court explained that a witness "could have the assistance of counsel, but that counsel *could not be inside* the grand jury room." 425 U.S. 564, 581 (1976) (emphasis added); *see also In re Groban*, 352 U.S. 330, 333 (1957). Yes, counsel may advise a witness outside the room, but the proceedings themselves must remain unimpeded by external participants—both *before and after they occur*. Such consultation should not be allowed to interfere with the grand jury proceedings and may be appropriately regulated. *In re Grand*

*Jury Proceedings*, 713 F.2d 616, 617–18 (11th Cir. 1983) (explaining that witnesses lack a right to consult counsel after each question).

The Supreme Court has also stressed that secrecy prevents interference with ongoing investigations. Allowing outside legal challenges or defenses to intrude on questioning "would unduly interfere with the effective and expeditious discharge of the grand jury's duties." *United States v. Calandra*, 414 U.S. 338, 349–50 (1974). The grand jury must operate swiftly, independently, and without adversarial litigation or external influence. *See id.* But here, this is exactly what the Witnesses' counsel devises to do: impede the independence and confidentiality of grand jury proceedings yet to occur. This Court should not allow any free sneak previews or negotiations about what the grand jury may or should ask.[1]

---

[1] Finally, the Witnesses assert that the Department's interpretation of the Protective Order is "inconsistent." Motion, p. 7. Yet the Witnesses offer no support for this assertion—because there is none. The scope of the Order is clear, and the Department's interpretation of its application remains consistent. [*See* ECF No. 779, pp. 14–15]. Any disclosure or dissemination of Volume II or its drafts, or any nonpublic information or conclusions in Volume II or its drafts, outside the Department of Justice, would implicate the prohibitions of this Court's Order. [ECF No. 779, pp. 14–15].

## CONCLUSION

Jurisdiction is absent. The motion is improper. This Court should deny the Witnesses' motion for intervention and clarification.

Dated: October 16, 2026

Respectfully submitted,

R. TRENT MCCOTTER
*Acting Deputy Attorney General*

JASON REDING QUIÑONES
*United States Attorney*

By:

/s/ *Courtney E. Albini*
COURTNEY E. ALBINI
*Assistant United States Attorney*
Southern District of Florida
Court ID No. A5503494
99 NE 4th Street
Miami, Florida 33132
(786) 338-6771
Courtney.Albini3@usdoj.gov

MICHAEL NIEMAN
*Senior Counsel*
Southern District of Florida
Florida Bar No. 64028
101 South U.S. 1, Suite 3100
Fort Pierce, Florida 34950
(772) 466-0899
Michael.Nieman@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing for the United States was electronically filed on this 16th day of October 2026, with the Clerk of the Court using CM/ECF, which will send notice of electronic filing to all counsel of record. Copies will also be served via email upon the following:

Margaret M. Donovan
Christopher M. Mattei
Koskoff Koskoff & Bieder, PC
350 Fairfield Ave., Suite 501
Bridgeport, CT 06604
mdonovan@koskoff.com
cmattei@koskoff.com

Abbe David Lowell
Lowell & Associates, PLLC
1250 H Street, N.W., Suite 250
Washington, DC 20005
ALowellpublicoutreach@lowellandassociates.com

Mark S. Zaid
Law Offices of Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, DC 20036
Mark@MarkZaid.com

Steve Bunnell
Raj Ferber PLLC
1629 K Street NW
Washington, DC 20006
steve@rajferber.com

Allison Duffie, Esq.
DUFFIE LAW, PLLC
2234 N. Federal Highway, #1196
Boca Raton, FL 33341
Allison@duffie.law;
legalassistant@duffie.law

/s/ *Courtney E. Albini*
COURTNEY E. ALBINI
*Assistant United States Attorney*